UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v.   : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| : | |
| **Defendant.**   : | |

### REPLY TO DEFENDANT'S OPPOSITION
### TO MOTION FOR PROTECTIVE ORDER

Defendant Stephen K. Bannon's opposition to the protective order is misleading. It makes erroneous claims about the discovery the Government provided and the limited subset designated as "Sensitive," levies exaggerated assertions about the standard protective order's impact on his fair trial rights, and opposes the order wholesale with no justification. Moreover, had the defense responded to the Government's efforts to confer regarding a protective order—as the defense suggested to the Court it would at the November 18 status conference—the Government would have agreed to a clarified order expressly excluding any public source records and records that the defendant possesses through independent means. The defense's misleading claims, failure to confer, unexplained wholesale opposition, and extrajudicial statements make clear the defense's real purpose: to abuse criminal discovery to try this case in the media rather than in court. To safeguard witness privacy and the integrity of these proceedings, the Court should reject the defendant's opposition and enter the attached clarified protective order, Attachment 1.

### BACKGROUND

On November 15, 2021, the defendant was taken into custody and presented to a magistrate judge, and his counsel entered their appearances. Immediately, Government counsel conferred

with the defendant's counsel and provided them, by email, with the Government's standard protective order for consideration.

Upon release from custody, the defendant and his counsel gathered the press outside of the courthouse and made a five-minute statement about the pending charges. *See "Misdemeanor from Hell": Watch Bannon Speak Out After He's Released*, CNN, Nov. 15, 2021.[1] In their statement, counsel for the defendant first characterized the pending criminal case, stating, "This thing was a scam from the beginning." *Id*. at Minute 1:18. Later in the press conference, the defendant asserted that he would make this case "the misdemeanor from hell for Merrick Garland, Nancy Pelosi, and Joe Biden," *id*. at 3:15, and that "we're gonna go on the offense on this and stand by," *id*. at 3:28. When a media member asked the defendant what he meant by his statement that he was "going on offense," the defendant stated only, "stand by." *Id*. at 3:44.

Two days later, on November 17, 2021, when defense counsel had not responded to the Government regarding the proposed protective order, the Government followed up with another email. In response, defense counsel suggested a phone call; in that call, defense counsel suggested that the defense would likely have objections to a few of the proposed order's provisions. Counsel did not inform the Government that the defendant objected to the proposed order entirely, did not identify any specific provisions to which the defendant objected, and did not identify any fair trial concerns. Left with the impression that the defendant did not have substantial objections to the protective order—one to which parties in this district regularly agree—the Government filed its motion for an umbrella protective order that would expedite discovery.

---

[1] *Available at* https://www.youtube.com/watch?v=-diE7kCCidE (last accessed Nov. 28, 2021).

On November 18, 2021, the Court held a status hearing. When questioned by the Court, defense counsel again did not state a wholesale objection to the protective order and instead expressed an intention to confer further with the Government, stating, "With regard, obviously, to Grand Jury testimony, I think we are going to be able to reach agreement with the Government and come to a common position that we will be able to file," Status Hrg., Nov. 18, 2021, Tr. at 4:8-11, and that, with respect to the broader protective order, "Obviously, next steps on that are simply just going to be for us to talk further with Government counsel and file something with you," id. at 4:19-21. See also id. at 12:1-2 ("I think we should have further discussions with the prosecution."). Notably, defense counsel also suggested a desire to make public the discovery in this case, stating, "We want to make sure that any documents that are important to the determination of this matter be public, be on the public record." Id. at 4:13-16.

Later that day, the Government provided discovery to the defendant, comprising 65 documents and collectively containing approximately 1,092 pages of information. The production consisted of approximately six categories of information: 1) grand jury material, 2) law enforcement reports of witness interviews, 3) internal communications between Select Committee staff, 4) correspondence between the defendant and others, 5) law enforcement database information relating to the defendant, and 6) public source news reporting that the Government gathered in its investigation. With its discovery, the Government provided a detailed log, Attachment 2, indexing the material and designating certain material as "Sensitive" pursuant to the proposed protective order it filed with the Court on November 17, 2021.

On November 24, 2021, without any attempt to confer further with the Government, the defendant filed his opposition to the protective order, the first time he asserted his blanket opposition to discovery protections. Through a representative, the defendant then made a

statement to the *Washington Post*, asserting, "Members of the public should make their own independent judgment as to whether the U.S. Department of Justice is committed to a just result based upon all the facts." *Stephen K. Bannon files motion to request all documents in court case be made public*, WASH. POST, Nov. 25, 2021.[2] The statement further claimed that the defendant's opposition "asked the judge to follow the normal process and allow unfettered access to and use of the documents." *Id*.

## ARGUMENT

To obtain a protective order, the proponent must establish good cause based on a particularized, specific showing. *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019). Moreover, "a 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31-34 (1984) (noting that discovery rules are a matter of "legislative grace" and litigants have no inherent rights to disseminate what they only obtain through the discovery process). Given the defendant's demonstrated intention to share discovery materials widely and publicly to "go on offense," good cause exists for the modified proposed protective order here.

With the clarification that the protective order does not apply to publicly available information or other documents independently in the defendant's possession, the proposed protective order is narrowly tailored to protect sensitive witness and grand jury information. The material the Government has produced aside from public records or communications to which the

---

[2] *Available at* https://www.washingtonpost.com/politics/stephen-k-bannons-lawyers-file-opposition-to-keeping-documents-from-being-released/2021/11/25/29889174-4e3e-11ec-b73b-a00d6e559a6e_story.html (last accessed Nov. 28, 2021).

defendant was a party consists of grand jury testimony and exhibits, law enforcement reports of witness interviews, and internal Select Committee communications between committee staff, none of whom regularly carry out their communications or duties in a public forum. Specific harms will result if circulation of these materials is not limited to the individuals identified in the proposed protective order.

First, the defendant has indicated he intends to publicly disseminate the materials for an improper purpose: to make extrajudicial arguments about the merits of the case pending against him and the validity of the Government's decision to seek an indictment. Contrary to what the defendant told the *Washington Post*, allowing unfettered public access to discovery materials, regardless of their use or relevance to public judicial proceedings, is not the "normal process." It is the opposite of normal. *See, e.g.*, *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges), courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible.") (citing *Seattle Times*, 467 U.S. at 33). And restraining the release of discovery before it is made part of the public record in a case serves important public and judicial interests. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1070 (1991) ("The outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial . . . obviously threaten to undermine this basic tenant."). Moreover, the Supreme Court has emphasized that courts have an obligation to avoid the "carnival atmosphere" that might accompany a case receiving substantial public attention, as this one has already. *Shepherd v. Maxwell*, 384 U.S. 333, 357-58 (1966). Accordingly, a

protective order to preclude the defendant from using non-public information to attempt to do just that is warranted.

Second, allowing the defendant to publicly disseminate reports of witness statements will have the collateral effect of witness tampering because it will expose witnesses to public commentary on their potential testimony before trial and allow a witness to review summaries of other witnesses' statements recounting the same event or events. Moreover, the reports of interviews include personal background information about the witnesses that is unrelated to the pending charges. The defendant's threat of "going on offense" and making this case "hell" cannot be ignored when considering these witnesses' privacy interests in their personal background information.

The defendant raises two claims of prejudice he would suffer under a protective order: that it will prevent him from preparing a defense and that it will deny him a public trial. Def.'s Opp'n, ECF No. 11, at 7-9. Neither claim has merit, and they do not overcome the good cause for a protective order. As an initial matter, to support his claims of prejudice, the defendant cites only to the provisions of the proposed protective order outlining the handling of "Sensitive Materials," which is defined in the protective order to include only grand jury material and material including personal identifying information ("PII") as identified by Federal Rule of Criminal Procedure 49.1.[3] He makes no claim that the general terms of the protective order infringe on either his right to prepare a defense or to a public trial. Nor could he. The protective order allows the defendant and anyone employed to assist with his defense to make full use of non-sensitive materials to prepare for trial, including by showing the materials to potential witnesses. It also allows the

---

[3] To date, the only PII provided to the defendant is his own and the Government has no objection to the defendant disseminating his own PII.

6

parties to freely provide copies of the non-sensitive materials to the Court for the purposes of litigating matters in this case and as evidence at trial. Having provided no evidence or claim of prejudice, the defendant cannot counter the good cause justifying imposition of the general terms of the proposed protective order.

The defendant also has not shown prejudice negating the good cause for the "Sensitive Material" provisions of the proposed protective order. The defendant claims the provisions prejudice his ability to prepare a defense because it gives the Government "unfettered ability to declare that a document constitutes 'Sensitive Materials'" and thus improperly restrict the defendant's ability to use it. *Id*. at 8. As evidence of the Government's supposed "unfettered" abilities, the defendant asserts that the Government improperly marked the documents at Bates ranges US-000001 to US-000029 and US-000083 to US-000244 as "Sensitive" pursuant to the Government's proposed protective order. *Id*. at 3-4, 8.

The defendant's claims about the protective order and the Government's discovery are false. First, the protective order allows the Government to designate only grand jury material and material containing PII as "Sensitive Material." Further, without notification to either the Government or the Court, the protective order allows disclosure of Sensitive Materials to "the defendant, defense counsel, persons employed to assist the defense, or the person to whom the sensitive information solely and directly pertains."

Second, the Defendant's complaint about the sensitivity designation for one set of materials is misleading; he fails to tell the Court the reason for the designation, which is clear from the Government's production, and that copies of all but one of the documents were provided elsewhere in discovery without a "Sensitive" designation—most were provided multiple times elsewhere in discovery without the designation. *See* Att. 2 & 3.

In any event, the defendant's claim of prejudice establishes no prejudice at all. He makes the conclusory assertion that having to seek court authorization to share grand jury material and PII beyond those individuals outlined will somehow reveal a "roadmap" of the defense case to the Government. Def.'s Opp'n at 8. But the defendant does not explain why revealing to whom he shows materials to the Government and Court would "diminish defense counsel's ability to assist . . . , to obtain witnesses in his favor, and to develop cross-examination," the rights he claims are infringed.[4]  *Id*. at 7-8. To the contrary, the proposed order provides a clear mechanism for defense counsel to assist, obtain witnesses, and develop cross-examination with materials designated as "Sensitive."

The defendant also claims that the provisions of the protective order governing "Sensitive Materials" impedes his right to a public trial because it requires him to file grand jury material and unredacted PII under seal. *Id*. at 9. This argument borders on the absurd. As an initial matter, in the same pleading, the defendant acknowledges that he will abide by the redaction requirements of Fed. R. Crim. P. 49.1, *id*. at 3, which are the same requirements applicable under the proposed protective order. Moreover, the grand jury secrecy rules do not expire with indictment. *See* Fed. R. Crim. P. 6(e)(6) ("Records…relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury."); *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979) ("[I]nterests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities."); *McKeever v. Barr*, 920 F.3d 842, 843 (D.C. Cir. 2019) (holding,

---

[4] The Government is aware of no authority giving a defendant the right to surprise the Government at trial. To the contrary, defendants are subject to discovery rules and Jencks Act obligations, just like the Government, and courts regularly order both parties in criminal cases to exchange witness and exhibit lists before trial.

more than 50 years after an indictment, that the district court lacked authority to disclose grand jury records except under one of the specifically enumerated reasons in Federal Rule of Criminal Procedure 6(e)).  As with his first claim of prejudice, the defendant offers no basis to establish why his right to or the public interest in a public trial will be compromised by requiring the parties to file marked grand jury material or third parties' PII under seal.

The misleading and frivolous nature of the defendant's claims of prejudice demonstrate that they are just a cover for the real reason the defendant opposes a protective order in this case and which he and his counsel have expressed in their extrajudicial statements—that the defendant wishes to have trial through the press.  Courts consistently reject such a desire as a basis to refuse a protective order.  *See e.g.*, *United States v. Lindh*, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002) (A defendant "has no constitutional right to use the media to influence public opinion concerning his case so as to gain an advantage at trial.  No such right inheres in either the Sixth Amendment right to a public trial, or the public's First Amendment right to a free press.  . . . Given that defendant has no constitutional right to use the media for this purpose, his argument that a protective order would impede such a right is entirely unconvincing.").  The Court should similarly reject it here.

## CONCLUSION

Good cause exists for the Government's proposed protective order.  The Court should exercise its oversight authority and enter the attached proposed order to preclude the defendant from widely disseminating non-public information he receives through the discovery process and inflicting the harms described above.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    /s/ *Amanda R. Vaughn*
                J.P. Cooney (D.C. 494026)
                Molly Gaston (VA 78506)
                Amanda R. Vaughn (MD)
                Assistant United States Attorneys
                United States Attorney's Office
                555 4th Street, N.W.
                Washington, D.C. 20530
                (202) 252-1793 (Vaughn)
                amanda.vaughn@usdoj.gov