**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

STEVEN K. BANNON,

Defendant.

CABLE NEWS NETWORK, INC., AMERICAN BROADCASTING COMPANIES, INC. d/b/a ABC NEWS, BUZZFEED, INC. d/b/a BUZZFEED NEWS, CBS BROADCASTING INC. o/b/o CBS NEWS, DOW JONES & COMPANY, INC., publisher of THE WALL STREET JOURNAL, THE E.W. SCRIPPS COMPANY, GANNETT CO., INC., GRAY MEDIA GROUP, INC., LOS ANGELES TIMES COMMUNICATIONS LLC, publisher of LOS ANGELES COMMUNICATIONS LLC, NATIONAL PUBLIC RADIO, INC., NBCUNIVERSAL MEDIA, LLC d/b/a NBC NEWS, THE NEW YORK TIMES COMPANY, PRO PUBLICA, INC., TEGNA, INC., AND WP COMPANY LLC, d/b/a THE WASHINGTON POST,

Proposed Intervenors.

Case No. 21-cr-670

**THE PRESS COALITION'S MOTION TO INTERVENE AND**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to Local Criminal Rule 47, Proposed Intervenors Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post (together, the

"Press Coalition") respectfully move to intervene in this matter for the limited purpose of challenging the scope of the Government's proposed protective order (Dkt. 9-1). In support of this motion the Press Coalition states as follows.

**BACKGROUND**

This lawsuit is one of many cases arising out of the riot at the United States Capitol on January 6, 2021, an event "of deep national importance." *United States v. Munchel*, 2021 U.S. Dist. LEXIS 194604, *12 (D.D.C. Oct. 8, 2021) (internal marks omitted). But this particular action is unique: Unlike the vast majority of the Capitol riot cases, in which defendants are principally charged with participating in the riot itself, Defendant Stephen K. Bannon, a former senior White House official in the Administration of President Donald Trump, is charged with criminal contempt for refusing to cooperate with Congress's investigation into the riot's "facts, circumstances, and causes." *See* Indictment ¶¶ 2, 6 (Dkt. 1) (quoting H. Res. 503). The public thus has a powerful interest in monitoring this case, but the Government's proposed protective order would improperly limit the free flow of historically important information to the press and public. The Court should grant the Press Coalition's motion to intervene and reject the Government's request for the entry of an unconstitutional gag order.

**A. Defendant Bannon**

Defendant Bannon served as Chief Strategist and Counselor to the President in the Trump White House. *See* Indictment ¶ 6. During President Trump's first months in office, Bannon was a central figure in the Trump Administration with significant influence over the President and a seat on the National Security Council. *See, e.g.*, Maggie Haberman *et al.*, *Stephen Bannon Out at the White House After Turbulent Run*, The New York Times (Aug. 18, 2017), https://www.nytimes.com/2017/08/18/us/politics/steve-bannon-trump-white-house.html (noting Bannon's "outsized influence on the president"); Robert Costa & Abby Phillip, *Stephen Bannon*

*removed from National Security Council*, The Washington Post (Apr. 5, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/04/05/steven-bannon-no-longer-a-member-of-national-security-council/ (noting that "Bannon's place on the committee had been a subject of intense controversy").

Bannon resigned from the White House in August 2017 and returned to his former post as executive chair of Breitbart News. *See* Andrew Rafferty *et al.*, *Steve Bannon Out as White House Chief Strategist*, NBC News (Aug. 18, 2017), https://www.nbcnews.com/politics/politics-news/steve-bannon-out-white-house-chief-strategist-n793921. Bannon later appeared to fall out of the President's favor after the publication of Michael Wolff's book *Fire and Fury: Inside The Trump White House*, which included statements Bannon made that were critical of the Trump family. *See* Meghan Keneally, *'Sloppy Steve' Bannon becomes Trump's latest example of name-calling*, ABC News (Jan. 5, 2018), https://abcnews.go.com/Politics/sloppy-steve-bannon-trumps-latest-calling/story?id=52161329.

In October 2019, Bannon began hosting a six-day-a week podcast, featuring prominent right wing pundits discussing trending topics among those of his political affiliation. *See Bannon's War Room*, WarRoom.org, https://podcasts.apple.com/us/podcast/bannons-war-room/id1485351658. On January 5, 2021, the day before the riot, Bannon made several noteworthy statements on the podcast, including that "[a]ll hell is going to break loose tomorrow," that "[i]t's all converging, and now we're on the point of attack tomorrow," and that "all I can say is: Strap in. You have made this happen, and tomorrow it's game day." *See* Aaron Blake, *Who could have predicted the Capitol riot? Plenty of people — including Trump allies.*, The Washington Post (Jan. 28, 2021), https://www.washingtonpost.com/politics/2021/01/28/who-could-have-predicted-capitol-siege-plenty-people/. Bannon reportedly spoke directly with

the President that evening, and on January 6, Bannon joined a "command center" of the President's allies at the "Willard hotel a block from the White House." *See* Jacqueline Alemany *et al.*, *Ahead of Jan. 6, Willard hotel in downtown D.C. was a Trump team 'command center' for effort to deny Biden the presidency*, The Washington Post (Oct. 23, 2021), https://www.washingtonpost.com/investigations/willard-trump-eastman-giuliani-bannon/2021/10/23/c45bd2d4-3281-11ec-9241-aad8e48f01ff_story.html.

President Trump pardoned Bannon – who was facing federal fraud charges – on the President's last day in office. *See* Pamela Brown *et al.*, *Trump pardons Steve Bannon as one of his final acts in office*, CNN (Jan. 20, 2021) https://www.cnn.com/2021/01/19/politics/steve-bannon-pardoned-by-trump/index.html.

**B. The House Select Committee Subpoena**

In June 2021, the U.S. House of Representatives formed a Select Committee to investigate the "domestic terrorist attack upon the United States Capitol Complex" and "interference with the peaceful transfer of power." *See Select Committee to Investigate the January 6th Attack on the United States Capitol*, https://january6th.house.gov/about. Once its investigation is complete, the Select Committee will "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures . . . as it may deem necessary." *Id.* The Select Committee has issued dozens of subpoenas to date. *See, e.g.*, Annie Grayer, *A running list of who has received a subpoena from the House January 6 select committee*, CNN (Nov. 10, 2021), https://www.cnn.com/2021/11/10/politics/list-january-6-subpoenas/index.html.

On September 24, 2021, Bannon accepted service of a subpoena from the Select Committee commanding him to appear for a deposition. Indictment ¶¶ 10-14. Bannon did not

attend the deposition, however, and on October 7, 2021, Bannon's attorney sent the Select Committee a letter stating that, at former President Trump's direction, Bannon would not provide documents to the Select Committee or sit for a deposition. *Id.* ¶ 16.

On October 21, 2021, the U.S. House of Representatives cited Bannon for contempt of Congress for failing to comply with the Select Committee's subpoena. *See, e.g.*, Claudia Grisales, *The House votes to hold Steve Bannon in contempt for defying a subpoena*, NPR (Oct. 21, 2021), https://www.npr.org/2021/10/21/1048051026/u-s-house-approves-criminal-contempt-referral-for-steve-bannon. Ahead of the vote, the Select Committee's Chair, Rep. Bennie Thompson, stated that the Select Committee "need[s] to give the American people answers about what happened. There needs to be swift accountability." *Thompson & Cheney Remarks on Resolution Citing Steve Bannon for Contempt of Congress* (Oct. 21, 2021), https://january6th.house.gov/news/press-releases/thompson-cheney-remarks-resolution-citing-steve-bannon-contempt-congress. The Select Committee's Vice Chair, Rep. Elizabeth Cheney, "urge[d] all Americans to watch what Mr. Bannon said on his podcast on January 5th and 6th," specifically Bannon's prediction that "[a]ll hell is going to break loose." *Id.* Rep. Cheney further alleged that Bannon was part of a "plot" with President Trump and others to "attempt[] to halt or delay our count of electoral votes and reverse the outcome of the 2020 election." *Id.*

On November 12, 2021, the Government charged Bannon with contempt of Congress under 2 U.S.C. § 192 for failing to comply with the Select Committee's subpoena. Indictment ¶¶ 22-25. In recommending that the House find Bannon in contempt, the Select Committee reported:

> Mr. Bannon appears to have had multiple roles relevant to this investigation, including his role in constructing and participating in the ''stop the steal'' public relations effort that motivated the attack, his efforts to plan political and other activity in advance of January 6th, and his participation in the events of that day

> from a ''war room'' organized at the [Willard hotel]. Although he was a private citizen not employed by the White House at the time, he reportedly spoke with Mr. Trump directly regarding the plans for January 6th on at least one occasion. In short, Mr. Bannon appears to have played a multi-faceted role in the events of January 6th, and the American people are entitled to hear his first-hand testimony regarding his actions. The Select Committee expects that such testimony will be directly relevant to its report and recommendations for legislative and other action.

*See* H. Rep. 117-153, https://www.govinfo.gov/content/pkg/CRPT-117hrpt153/pdf/CRPT-117hrpt153.pdf.

Bannon has pleaded not guilty and retained as defense counsel David Schoen, who represented President Trump in his second impeachment trial. *See, e.g.*, Zachary Cohen et. al., *Trump ally Steve Bannon released from custody pending trial on contempt of Congress charges*, CNN (Nov. 15, 2021), https://www.cnn.com/2021/11/15/politics/steve-bannon/index.html.

**C. The Government's Proposed Protective Order**

On November 17, 2021, the Government moved for entry of a protective order to govern the exchange of discovery in this case. Mot. for Protective Order and to Disclose Grand Jury Testimony ("Motion"), Dkt. 9. The Government also submitted a proposed protective order, which would encompass "[a]ll materials provided by the United States in preparation for, or in connection with, any stage of this case," and would prohibit Bannon and his counsel from disclosing any such materials "or their contents directly or indirectly to any person or entity" who is not involved in Bannon's defense. Protective Order Governing Discovery and Authorizing Disclosure of Grand Jury Testimony ("Proposed Protective Order") ¶¶ 3-4, Dkt. 9-1. The Proposed Protective Order also provides for the designation of certain materials containing personal identifying information as "Sensitive Materials," prohibits disclosure of the Sensitive

Materials "without prior notice to the United States and authorization from the Court," and requires that such Sensitive Materials be filed under seal if not redacted. *Id.* ¶¶ 8-12.

On November 23, 2021, Bannon filed an opposition objecting to this Motion on grounds that the "expansive order" the Government seeks includes "elaborate prohibitions on copying, notetaking, and retention of '[a]ll materials.'" Def.'s Opp. to Gov't Mot. for Protective Order and to Disclosure of Grand Jury Testimony ("Opp.") at 1-2, Dkt. 11. Bannon also objects that in a November 18 discovery production to defense counsel, a number of documents already in the public domain were designated "sensitive," which "illustrates the breadth of the Government's sweeping proposed protective order." *Id.* at 4-5. Bannon argues that "[t]he public interest is served when the public can see that an accused is being provided a fair trial." *Id.* at 9.

The Press Coalition now moves to intervene to challenge the Proposed Protective Order as a gag order that unconstitutionally restricts the flow of information to the press and the public.

## ARGUMENT

### I. The Press May Intervene For The Purpose Of Challenging This Protective Order

It is well settled that members of the press, like members of the public, have standing to intervene to challenge protective orders and confidentiality designations that restrict access to materials of public concern. *See League of Women Voters of the United States v. Newby*, 963 F.3d 130, 135 (D.C. Cir. 2020) ("Every circuit court that has considered the question—including this one—has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders.") (internal marks omitted); *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (embracing a "flexible approach" to intervention given "our longstanding tradition of public access to court records" so that "third parties [can] have their day in court to contest the scope or need for confidentiality," and "hold[ing] that third parties may be allowed to permissively intervene under [the Federal Civil Rules] for the limited

purpose of seeking access to materials that have been shielded from public view either by seal or by a protective order") (citations and internal marks omitted); *In re Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 4 (D.D.C. 2009) (noting that the Court had granted press motion to intervene "for the limited purpose of opposing the government's motion" to designate unclassified material as "protected" under the Protective Order governing Guantanamo Bay prosecutions); *cf. United States v. Hubbard*, 650 F.2d 293, 311 n.67 (D.C. Cir. 1980) (noting that "[f]ederal courts have frequently permitted third parties to assert their interests in *preventing* disclosure of material sought in criminal proceedings") (emphasis added).

Moreover, while the D.C. Circuit has not required the press to identify a "willing speaker" before challenging a gag order, here Bannon himself challenges the entry of the order and is clearly a "willing speaker" whose communications with the press and public would be chilled. *Cf. United States v. Wecht*, 484 F.3d 194, 202 (3d Cir. 2007) (holding that press organizations may intervene to challenge a gag order "when there is reason to believe that the individual subject to the gag order is willing to speak and is being restrained from doing so"). Bannon, a former news executive, has a long record of speaking to the press. *See, e.g.*, *Steve Bannon: First interview with the Former Trump adviser*, Frontline, https://www.pbs.org/wgbh/frontline/interview/steve-bannon-3/. Bannon currently hosts a six-day-a week podcast, *see Bannon's War Room*, WarRoom.org, https://podcasts.apple.com/us/podcast/bannons-war-room/id1485351658, and after being indicted in this matter, Bannon and his lawyers have made public statements about the case against him, *see, e.g.*, Caroline Linton & Melissa Quinn, *Steve Bannon surrenders to face criminal contempt of Congress charges*, CBS News (Nov. 16, 2021), https://www.cbsnews.com/news/steve-bannon-surrenders-criminal-contempt-january-6-committee-subpoena/ ("Speaking to reporters outside the courthouse, Bannon vowed to fight the

charges. 'What we're doing is taking on this illegitimate Biden regime,' Bannon told reporters. He urged supporters not to 'ever let this noise up here take you off message.'"); *Keilar to attorney: Bannon is using executive privilege as a 'cop-out'*, CNN (Nov. 16, 2021), https://www.cnn.com/videos/politics/2021/11/16/bannon-attorney-david-schoen-trump-executive-privilege-keilar-newday-vpx.cnn (interview of "David Schoen, the attorney for Trump associate Steve Bannon, about his client's argument to invoke executive privilege in the January 6 investigation over conversations he had with people other than the former president").

Here, the Press Coalition seeks to intervene for the limited purpose of challenging the Government's attempt to use the Proposed Protective Order to prevent Bannon from making any information obtained through discovery in this action available to the public. Under the law of this Circuit, the Court should permit such intervention.

## II. The Proposed Protective Order Would Violate The First Amendment

Federal courts widely recognize that any restriction on the parties' ability to communicate about ongoing litigation must satisfy the First Amendment. *See United States v. Morrow*, 2005 U.S. Dist. LEXIS 8330, at *20 (D.D.C. Mar. 21, 2005) (collecting cases, denying requested gag order, and noting that "[m]ost courts that have analyzed the issue have required that pretrial publicity pose a 'reasonable likelihood' of prejudicing the defendant's right to a fair trial before entering a gag order").[1] Proper justification for a gag order necessarily includes a finding, in

---

[1] While the D.C. Circuit has not yet articulated the precise standard to assess the constitutionality of a gag order, the Fourth and Tenth Circuits have applied a "reasonable likelihood" of harm standard, *see In re Russell*, 726 F.2d 1007 (4th Cir. 1984); *United States v. Tijerina*, 412 F.2d 661 (10th Cir. 1969); the Third and Fifth Circuits have used a "substantial likelihood" of harm standard, *see Wecht*, 484 F.3d 194; *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000); and the Sixth, Seventh, and Ninth Circuits have adopted a "clear and present danger" standard, *see United States v. Ford*, 830 F.2d 596 (6th Cir. 1987); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975); *Levine v. U.S. Dist. Ct.*, 764 F.2d 590 (9th Cir. 1985).

advance of its entry, that no "less restrictive alternatives" can adequately prevent the perceived harm. *See id.* at *22 (concluding that the "drastic step" of a gag order "is not required" because "the Court's admonishment of counsel and direction to all counsel to Local Criminal Rule 57.7 has proven effective").

Here, the Government's Proposed Protective Order would prohibit Bannon and his counsel from communicating with the press and public about *any* materials that the Government provides during discovery – not just materials that the Government properly deems "sensitive." *See* Proposed Protective Order ¶¶ 2-3.[2] The Government has not shown, however, that no "less restrictive alternatives" – such as a more narrowly tailored restriction on disseminating only those materials that the Government reasonably deems confidential – could achieve its goal. Indeed, such a less restrictive provision is commonly found in the protective orders entered in many Capitol riot cases. *See, e.g.*, Protective Order Governing Discovery ¶ 1, *United States v. Fitchett*, No. 21-cr-41-CJN (D.D.C. Apr. 12, 2021), Dkt. 52 (restricting scope of protective order only to "materials provided by the United States at any stage of discovery during this case and which the United States has identified as either 'Sensitive' or 'Highly Sensitive.'").[3]

The Government also has not shown a "reasonable likelihood of prejudice" in the absence of the sweeping Proposed Protective Order. The public, however, *would* be prejudiced by entry of this broad gag order. In recently ordering the release of video from January 6 over the Government's objection in another Capitol riot case, Chief Judge Beryl A. Howell concluded

---

[2] As Bannon notes in his opposition, the Government has already shown the overbreadth of its gag order by designating as "Sensitive" and prohibiting Bannon's counsel from distributing information that is in the public interest and material that already is public, such as the current Rules of the House of Representatives, which are available at https://rules.house.gov/sites/democrats.rules.house.gov/files/117-House-Rules-Clerk.pdf. *See* Opp. 3-4.

[3] The Press Coalition does not seek, and a narrower restriction could still limit, disclosure of material properly protected by Rules 6(e) and 49.1 of the Federal Rules of Criminal Procedure.

that the need for public access to materials described in a Government filing "is very strong, as evidenced by the extraordinary public interest surrounding the events that took place at the U.S. Capitol on January 6." *United States v. Torrens,* 2021 U.S. Dist. LEXIS 174997, *17 (D.D.C. Sept. 15, 2021). As the Chief Judge explained, "[t]he public has an interest in understanding the conduct underlying the charges in these cases." *Id.*; *see also* Mem. Op. and Order at 5, *United States v. Lazar*, 21-cr-525-ABJ (D.D.C. Oct. 22, 2021), Dkt. 41 (where video evidence has been described in court filings but not yet released to the public, "viewing the [evidence] is necessary to the evaluation of the veracity and strength of the government's public filings," and the need for access weighs "heavily" in favor of disclosure).

The public has an overwhelming interest in the facts, circumstances, and causes of the January 6 riot. Bannon has been indicted in an investigation of the riot and has demonstrated his desire to communicate with the press and public about the Government's case against him. And the Government has failed to demonstrate any likelihood of prejudice in the absence of the Proposed Protective Order and also has not demonstrated the unavailability of any less restrictive alternative. All of these factors warrant the granting of this motion to intervene and the Court's rejection of the Government's Proposed Protective Order as unconstitutional.

**CONCLUSION**

For the foregoing reasons, the Press Coalition respectfully requests that the Court grant its motion to intervene, deny the Government's motion for a protective order, and grant such other and further relief as is just and proper.

Dated: November 26, 2021

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for the Press Coalition*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEVEN K. BANNON,<br><br>Defendant.<br><br>CABLE NEWS NETWORK, INC., et al.,<br><br>Proposed Intervenors. | Case No. 21-cr-670 |

**[PROPOSED] ORDER**

Upon consideration of the Press Coalition's Motion to Intervene, any response(s) thereto, and the entire record herein, it is hereby **ORDERED** that:

1. The Press Coalition's Motion to Intervene for the purpose of challenging the Government's Motion for Protective Order is **GRANTED**; and

2. The Government's Motion for Protective Order is **DENIED WITHOUT PREJUDICE.**

**SO ORDERED.**

______________________________
HON. CARL J. NICHOLS
United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of November 2021, I caused true and correct copies of the foregoing to be served via electronic mail and U.S. Mail on the following:

Amanda Rose Vaughn
J.P. Cooney
Molly Gulland Gaston
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street NW
Washington, DC 20001
amanda.vaughn@usdoj.gov
joseph.cooney@usdoj.gov
molly.gaston@usdoj.gov

*Counsel for the United States*

David I. Schoen
DAVID I. SCHOEN, ATTORNEY AT LAW
2800 Zelda Road, Suite 100-6
Montgomery, AL 36106
dschoen593@aol.com

Matthew Evan Corcoran
SILVERMAN THOMPSON SLUTKIN WHITE
201 N Charles Street
25th Floor
Baltimore, MD 21201
ecorcoran@silvermanthompson.com

*Counsel for Defendant Steven K. Bannon*

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)