IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : <br> : <br> : Criminal No. 21-670 (CJN) <br> : |
| v. | : <br> : |
| STEPHEN K. BANNON, | : <br> : |
| *Defendant*. | : <br> : |

**DEFENDANT'S MOTION TO COMPEL DISCLOSURE
OF GOVERNMENT EFFORTS TO OBTAIN TELEPHONE
AND EMAIL RECORDS OF MR. BANNON'S ATTORNEYS**

Defendant Stephen K. Bannon, by and through the undersigned counsel, hereby respectfully moves this Court for an Order compelling the Government to disclose additional information and materials concerning its efforts to obtain the personal and professional telephone and email records[1] of defense counsel, Robert J. Costello, Esquire.[2]

Mr. Bannon will set forth below the relevant facts surrounding this issue, to the extent they are known, his unsuccessful efforts at ascertaining this information directly from the Government

---

[1] The majority of the records provided were designated as "Sensitive" by Government counsel; so they are not being attached to this public filing nor are the email addresses and phone numbers or carriers at issue being disclosed herein. The documents are too voluminous to redact. Mr. Bannon will provide the materials to the Court under seal if the Court so directs.

[2] Mr. Bannon is filing under separate cover today a motion to compel discovery as provided for in the Court's Scheduling Order [Doc. 25]. The instant motion is directed exclusively to the Government's efforts to obtain defense counsel Costello's personal and professional telephone and email records and the materials and information it obtained through an *ex parte* process and with no notice or opportunity to object. The motion seeks only to compel the disclosure of the materials and information at issue. Mr. Bannon cannot evaluate the basis(es) for a motion seeking a substantive remedy or sanctions unless and until he is provided with the necessary underlying information. Consistent with the policies underlying Rules 12 and 16 of the Federal Rules of Criminal Procedure, the requested information must be provided now in order to allow Mr. Bannon an opportunity to make any appropriate pre-trial motion directed toward the Government's conduct as described herein.

to try to obviate the need for this motion, and some applicable legal principles for the Court's consideration.

## Currently Known Relevant Facts

On January 4, 2022, Government counsel produced to the defense team a set of documents, US-001093-001883, some 790 documents.[3] The undersigned counsel were shocked to learn, upon accessing these documents, that almost all of the documents reflected efforts by the Government to obtain, telephone records and email records from the personal and professional accounts of defense counsel, Robert J. Costello, Esquire.[4] It appears that during the time frame Mr. Costello was meeting with Government counsel in this case, as Mr. Bannon's attorney, in what he thought were good-faith pre-indictment discussions, the Government was busy seeking detailed information concerning defense counsel's personal and professional email and telephone records, on an *ex parte* basis and without any prior or contemporaneous notice that would have given Mr.

---

[3] It is curious that Government counsel delayed producing these documents until January 4, 2022. On November 18, 2021, the parties appeared before this Court. At that proceeding, Government counsel insisted that the Government was ready for trial, that this is a simple and straightforward case, and that it was ready immediately to provide Mr. Bannon with the discovery in the case, which it described as "less than 200 documents," with "most of" it purportedly comprised of "materials the defendant already has …." [11/18/2021 Hearing Tr. at 3].

The letters by which the 3rd party carriers transmitted the email and telephone records to the Government indicate that some of the materials were provided to the Government well in advance of the November 18, 2021 Hearing [*See e.g.* Bates 1093] and even the largest set of documents, the 623 documents reflecting IP activity, status (read or unread, inbox, etc.) and other details concerning emails and apparently other activity offered by the carrier [US 001145-001768], appear to have been transmitted to the Government on December 7, 2021, and reference is made to a Section 2703(d) Order dated November 11, 2021 [US 001733]. No explanation was provided as to why the Government delayed disclosing this troubling conduct until January 4, 2022.

[4] Defense counsel, Robert J. Costello, Esquire, is a long-time distinguished, respected member of the New York Bar. He served with distinction as an Assistant United States Attorney for the Southern District of New York, including his tenure as the Deputy Chief of the Criminal division. He has an unblemished disciplinary record, an AV peer rating, and his work has been recognized for excellence and integrity in a number of forums. He is a partner in the New York law firm Davidoff Hutcher & Citron, LLP. There are absolutely no exigent circumstances surrounding Mr. Costello that justified the Government's conduct described herein.

2

Costello or Mr. Bannon a chance to challenge this very troubling conduct, with significant implications for matters of privilege and constitutional rights.

At no time was Mr. Costello given any notice by the Government or any carrier that his personal and professional emails and telephone records, including personal and attorney-client communications, were being sought by the government through third-party subpoenas or an *ex parte* obtained court Order. Mr. Costello was given no chance to object to or move to quash any such subpoenas or court order or to raise any privilege claim or constitution-based claim. Similarly, Mr. Bannon was denied any opportunity to object or move to quash based on privilege or his constitutional rights. There is no indication that any taint team was ever put into place in this process; indeed, it appears that this was all carried out by the prosecutors assigned to this case and their staff, as well as by the FBI agents all assigned to this misdemeanor prosecution.

While the production and the evidence garnered so far through this outrageous and inappropriate Government conduct raises far more questions than it answers, a few things are quite apparent:

1. The Government sought to obtain records for Mr. Costello's emails for at least four (4) different email accounts with different carriers and telephone records for at least four (4) different phone numbers, including from his personal home phone, his law firm's landline, and from his personal cellphone. Telephone record requests included SMS (text-messaging) information as well, including the numbers to which texts were sent and from which they were received [*See e.g.* US 001872; 001874-001875]. Even defense counsel's payment information for his cell phone was obtained from the carrier [US 001863], apparently along with Mr. Costello's data usage [US 001866].

2. The Government used grand jury subpoenas to obtain defense counsel's email and phone records (including text messaging records) [*See e.g.* US 001093; 001765; 001872]. There is no indication that any warrant was sought or obtained.

3. At some point the Government, apparently sought and obtained, on an *ex parte* basis, and without any notice to Mr. Costello, an Order from an undisclosed court under 18 U.S.C. 2703(d) (Stored Communications Act), for Mr. Costello's emails, directed to a major third-

party carrier/provider.[5] The material sought from this carrier/provider was of extraordinary breadth. For example, US 001151-001249 (98 pages) reflect IP activity for the email account sought from March 5, 2021 through November 12, 2021 (more than an 8-month period). It appears further that the information sought from this carrier/provider extended to any and all information related to defense counsel's participation in many of its services beyond email, implicating his First Amendment right of association. [See Bates 1151]. This intrusion even includes reporting on the status of emails (*e.g.* unread, inbox, etc.).[6]

4. Reference is made in documents from carriers accompanying their production of the subpoenaed or ordered records to a case number and to Grand Jury subpoena or "summons" numbers [*See e.g.* US 001834 & 001842 (in Native Format only); US 001732-001735]. No information is provided about the subpoenas at issue or the case in which apparently the Section 2703(d) Order was issued, other than reference numbers which mean nothing without context. Government counsel has refused to provide any of the relevant Order(s), subpoenas, or applications for the same.

---

[5] This information is garnered from a series of letters written by a representative of the provider/carrier to the Government referring to its email and other account production, pursuant to a "2703(d) Order or Equivalent." [See e.g. US 001733, 001735, 001740, and 001742].

[6] From the relevant production made so far, it does not appear that the Government obtained the contents of the emails, triggering Sec. 2703(b)(1)'s protections; but that is one of the questions Mr. Bannon has that must be answered. In any event, however, in order to obtain the Section 2703(d) Order referred to by provider/carrier when it provided the voluminous attorney communications records, the Government had to provide the issuing court with "specific and articulable facts" that the records and information sought "are relevant and material to an ongoing criminal investigation." 18 U.S.C. Sec. 2703(d).

Mr. Bannon is entitled to know what Government representative made such a representation to the issuing court regarding the email account(s) for which the Sec. 2703(d) Order was issued, in what form it was made, what factual representation were made, and on what were they based. In addition, he is entitled to know what any such Order provided, what findings were made, based on what information, and was there a time frame limitation in the Order and, if so, what was it? Does the Government claim that there were exigent circumstances that justified proceeding in this manner, with no notice or other safeguard to protect privilege and constitutional rights related issues? *See e.g. Carpenter v. United States*, 138 S. Ct. 2206; 201 L. Ed. 2d 507 (2018). Answers to these fundamental questions are material to the instant issue before the Court and more broadly to the integrity of the investigation in this case and to the credibility of the prosecution team and Government witnesses. There is no indication that any warrant was sought.

Further, while Section 2703 (c) (3) provides that the Government is not required to provide notice to a subscriber or customer if it receives Sec. 2703 (c) type information (non-contents), it surely did not contemplate permitting an *ex parte* procedure without notice when, as here, the Government seeks an attorney's personal and professional email and telephone records, with emails sent and that could include clients, witnesses, and other indicia that relate to attorney-work product and the preparation of a defense in the instant case and for other clients – and especially in the absence of exigent circumstances.

Nowhere in the Government's production was a copy of a court order authorizing the Government's actions, nor was there a copy of any subpoena for the records, nor was there even any application for a court order or for authorization from the Department of Justice for subpoenas intended to obtain defense counsel's personal and professional telephone and email records.[7]

Furthermore, there was nothing in the production that indicated any effort to limit the access of the prosecutors assigned to this case to defense counsel's personal and professional records, nor was there any indication of any filter in place to distinguish between attorney-client privileged or work-product privileged information that could be garnered from the records the Government obtained and non-privileged materials, nor was there any indication of any filter intended to protect confidential and privileged related to other clients of Mr. Costello and his law firm or intended to keep the prosecutors handling this case from access to any such privileged material.

The Government's actions in seeking defense counsel's personal and professional email and telephone records in this case, on an *ex parte* basis, without any notice or any opportunity for defense counsel or the defendant to object, and without any filter or taint team or process in place poses a serious risk of impermissibly intruding on the attorney-client privilege (and of chilling the defendant's exercise of the same in his defense against these charges) and the attorney-work privilege. It also raises a serious risk to Mr. Bannon's Fifth and Sixth Amendment rights, as well as to Mr. Costello's First and Fourth Amendment rights and to the constitutional rights and

---

[7] *See* Section Department of Justice Manual Section 9-13.410 – *Guidelines for Issuing Subpoenas to Attorneys for Information Relating to the Representation of Clients*.

privileges of his other clients whose numbers appear on the obtained records, along with evidence of his legal strategy for Mr. Bannon and other clients.[8]

Additionally, it is quite possible that the Government's conduct ran afoul of the dictates set out in *Carpenter v. United States*, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018); but without seeing the application for the Section 2703(d) Order, the Order itself, and the subpoenas, and getting a further explanation of the codes reflected in the production, this cannot be evaluated.

### Government Silence in Response to Mr. Bannon's Effort to Get Answers to the Defense Requests

Upon receipt of this very troubling information, on January 6, 2022, counsel for Bannon wrote to Government counsel to express the privilege intrusion and constitutional rights concerns about the Government's actions vis a vis defense attorney Costello's email and telephone records and asked Government counsel to provide specific, relevant information regarding the same. [Exhibit 1]

In the letter to Government counsel, Bannon's counsel asked Government counsel to disclose, *inter alia*, (1) who was involved in the decision to seek defense attorney Costello's

---

[8] While *ex parte* submissions, with respect to grand jury matters, might be acceptable in some limited circumstances, a trial court must "vigorously test" any *ex parte* submissions. *In re Grand Jury Subpoena*, 223 F.3d 213 (3rd Cir. 2000).

Ironically, the government has argued elsewhere that the requirement that attorney subpoenas receive prior department of approval substantially eliminates the potential of abuse by requiring some showing of relevancy and specificity and otherwise reflecting oversight in the process. *See Unites States v. Grand Jury Matter*, 789 F.Supp. 693, 696 (D. MA. 1992). Yet Government counsel apparently did not seek approval here – or least refuses to disclose whether or not they did. At least one court has adopted a local rule requiring the judicial review of every subpoena they serve on an attorney. *United States v. Klubock*, 832, F.2d 649 (1st Cir. 1986). In the instant case Mr. Bannon has expressly requested on two occasions all evidence of government approval in this case consistent with the Department of Justice's own Manual. [*See e.g.* Exhibit 1]. However, government silence counsel has refused to respond to that request or to provide any such request for department of approval or receipt of departmental approval with respect to the subpoenas directed toward defense counsel Mr. Costello.

personal and professional email and telephone records; (2) who authorized the same; (3) on what was the decision and authorization based; (4) what, if any, specific law enforcement purpose was at issue; (5) what consideration was given to the potential effects on the attorney-client relationship (and what, if any, safeguards were put in place to protect privilege and constitutional rights); (6) whether there were any efforts made to obtain the information sought voluntarily, without the use of third party subpoenas or court Order; (7) what, if any, steps were taken to seek Department of Justice approval for the attorney subpoenas; (8) whether grand jury subpoenas were used; (9) whether the grand jury was informed about the effort and the information sought and materials obtained; and more. The letter also asked the Government to provide the defense with a copy of all subpoenas and other requests or applications for authority to obtain attorney Costello's personal and professional email and telephone records, as well as any and documents and information obtained in relation to Mr. Costello or any other attorney for Mr. Bannon [Exhibit 1].

## The Government's Response

On January 7, 2022, the Government responded with a letter to the undersigned which was dismissive, failed to answer any of the specific questions, and failed to provide any of the requested materials or additional information [Exhibit 2]. Government counsel simply stated that "… Mr. Costello represented Mr. Bannon before the January 6th Select Committee ("the Committee") in relation to the subpoena it issued to Mr. Bannon and is, therefore, a witness to the conduct charged in the Indictment." [Exhibit 2 at 1]. The letter then made reference to another attorney who served as co-counsel with Mr. Costello, Adam Katz, Esquire, as also a "potential witness."[9] [*Id*.] No

---

[9] The Government's representations now that it was appropriate to seek and obtain subpoenas and a Section 2703(d) court Order to obtain all of defense counsel's personal and professional email and telephone records because defense counsel will be a witness in this case is difficult to reconcile with Government counsel's representation to the Court on November 18, 2022, when trying to convince the Court to give an expedited trial date. At that hearing Government counsel advised the Court that this case is "… a very straightforward

7

recognition whatsoever was given in this purported justification, to the special role attorneys play in this process and to special considerations and safeguards our jurisprudence accords to attorney subpoenas, as discussed in some further measure hereinbelow.

The Government has assigned three experienced prosecutors and four FBI agents to this misdemeanor prosecution. It is difficult to imagine that this prosecution team failed to recognize the significance and potentially serious consequences for issues of privilege and constitutional rights, when they decided to seek email and telephone records for defense counsel, during the time

---

case about whether or not the defendant showed up." [11/18/2021 Hearing Tr. at 3]. Surely, the Government does not need to call either or both of Mr. Bannon's attorneys (Mr. Costello or Mr. Katz) as witnesses to prove that Mr. Bannon did not "show up;" nor is it at all clear why it would be necessary or appropriate to subpoena and get a court Order (on an *ex parte* basis, without notice) for Mr. Costello's personal and professional email and telephone records to prove whether or not Mr. Bannon appeared before the Committee. Did the Government present these materials to the grand jury and ask them to draw some conclusion from them? Did the Government instruct the grand jury on the application of advice of counsel to negate guilt for a charge of contempt? What justification in any event could the Government have had for the breadth of its all-encompassing efforts vis a vis Mr. Costello's email and telephone records, without limitation or filter?

Moreover, it cannot be that Government counsel believed it to be appropriate to take the extraordinarily intrusive step of obtaining defense counsel's personal and professional email and telephone records without notice because Messrs. Costello and Katz could be witnesses for the defense; for Government counsel has maintained all along that the defense's legal arguments, or any argument other than one focused on whether or not Mr. Bannon appeared before the Committee, will not be a part of this case [11/18/2021 at 11] and specifically, Government counsel has advised the Court that it does not believe any advice of counsel defense will apply and it intends to file a motion on February 4, 2022 barring any such defense [Doc. 25 at Para. 2].

Finally, in its January 7, 2022 [Exhibit 2] response to Mr. Bannon's request for information concerning the Government's actions with respect to Mr. Costello's records [Exhibit 1], Government counsel misrepresented the December 2, 2022 discussion among counsel. During that conference call, the discussion turned to the prospective motion for Mr. Costello to appear in this case *pro hac* vice and Government counsel asked whether the defense intended to rely on an advice of counsel defense and call Mr. Costello as a witness at trial. Defense counsel advised the Government that it was too early in the case to be able to answer that. The DOJ Manual expressly prohibits the use of grand jury subpoenas intended to "probe the possibility or viability of an advice of counsel defense that has not formally been claimed or asserted by a civil litigant or criminal defendant DOJ Manual 9-13.410 D. 1. e. Of course, defense counsel had no way of knowing on December 2, 2021, that weeks earlier, the Government already had issued subpoenas and obtained a court Order, without notice, for Mr. Costello's personal and professional emails and telephone records – at the very time Mr. Costello believed that he was voluntarily engaged in good faith discussions with the Government about his client's case.

period of his representation of the defendant, through third party subpoenas and a court Order sought and obtained on an *ex parte* basis, without providing any notice or opportunity to challenge the same, invoke privilege and interpose other objections.

The government's letter went on to assert that aside from disclosures made to the Government by Mr. Costello in his meetings with the prosecutors in which he expressed Mr. Bannon's efforts in relation to the subpoenas and the reasons for his position, "… the Government has not taken any steps to obtain any attorney work product relating to any attorney's representation of Mr. Bannon or to obtain any confidential communications between Mr. Bannon, Mr. Costello, and Mr. Katz, or between Mr. Bannon and any other attorneys." [Exhibit 2 at 2].

The Government's assertion is both absurd and demonstrably untrue, as reflected by its January 4, 2022 production. By definition, subpoenas by the Government designed to obtain a defense attorney's personal and professional phone records, without any apparent filter, infringes on both the attorney-client privilege and the attorney work privilege, and does far more damage than that, extending beyond just this case.

By seeking and ascertaining who the attorney has called and who has called him, or who he has emailed and who has emailed him, the Government learns what witnesses defense counsel might be interviewing, lining up, or preparing in the client's defense, any experts the defense attorney is consulting, and when the defense attorney is doing so. It is beyond disingenuous for the Government to even suggest that a defense attorney is just another ordinary witness, without special attending concerns related to issues of privilege and the defendant's constitutional rights, that must be assiduously safeguarded and that its actions here bear any semblance of normalcy. The Government also ignores the chilling effect such actions as it has undertaken have on the attorney-client relationship, with the client now concerned that every phone call or email

communication he has or has had with the attorney during the tenure of the representation is or will be known to Government counsel prosecuting the case.

Beyond all of the above, the Government's response ignores the damage its actions risked causing for other clients of Mr. Costello and his law firm, for telephone calls and emails to and from other clients and witnesses consulted in relation to their cases would now be exposed by the Government's efforts to obtain records for all of the attorney's emails and telephone records.

Finally, the Government's dismissive response begs the question by simply asserting that it has provided "all discoverable material" it has related to defense counsel's involvement in the conduct charged in the Indictment. [Exhibit 2 at 2]. Its analysis of its discovery obligations does not control and seeking all of defense counsel's personal and professional email and telephone records, without any filter, certainly was never designed or limited in any way to relate to their "involvement in the conduct charged in the Indictment." [*Id*.] It also never answers the question as to whether the records of Mr. Katz were sought and/or obtained as well.

The Government refused to provide copies of any of the subpoenas, requests for authorization, or evidence of any court order or other authorization in connection with its efforts to obtain Mr. Costello's email and telephone records. [Exhibit 2].

In his broader discovery demand to the Government of January 14, 2022, Mr. Bannon reiterated the requests made in his January 6, 2022 letter; but the Government refused to provide any additional information or address the matter in any meaningful way in its similarly dismissive January 28, 2022 response to the discovery demand. The Government has made any effort at getting to the bottom of this very serious and troubling matter informally, without the Court's intervention, an act of absolute futility, thereby making this motion necessary.

10

## Applicable Legal Principles

## Subpoenas For Attorney Records Raise Significant Issues

The "attorney-client privilege" 'is the oldest of the privileges for confidential communications known to the common law', *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  In light of the attorney-client privilege, subpoenas that are directed at attorneys "raise special concerns." See Sara Sun Beale et al., *Grand Jury Law and Practice* § 6:10 (2d ed., rev. Dec. 2018). *In re Grand Jury Investigation*, 2019 U.S. Dist. LEXIS 86801, *29-*30, 2019 WL 2179116 (D. D.C., March 4, 2019); *In re Public Defender Serv.*, 831 A.2d. 890, 900 (D.C. App. 2003), quoting from, Sw*idler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  Privileged communications are "traditionally deemed worthy of maximum legal protection." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3rd Cir. 1992).  The privilege derives from the recognition that "sound legal advice or advocacy serves public ends . . . ." *In re Ti.B.*, 762 A.2d 20, 28 (D.C. 2000) (quoting *Martin v. Lauer*, 222 U.S. App. D.C. 302, 310, 686 F.2d 24, 32 (1982)).

Lawyers cannot give sound legal advice without talking freely to all witnesses and being apprised of "all pertinent facts, no matter how embarrassing or inculpating these facts may be." *Wesp v. Everson*, 33 P.3d 191, 196 (Colo. 2001). Moreover, clients would be reluctant to share confidences "if their lawyers could be turned into witnesses against them or if they could be forced to disclose their conversations with their lawyers." *In re Sealed Case (Company)*, 107 F.3d 46, 49 (1997). By "encouraging full and frank discussions between attorneys and their clients," the attorney-client privilege "promotes broader public interests in the observance of law and the administration of justice." *Ti.B.*, 762 A.2d at 27-28. "In the criminal context," moreover, "the

11

privilege acquires Sixth Amendment protection." 831 A.2d at 899; *Neku v. United States*, 620 A.2d 259, 262 (D.C. 1993).

It is by now, axiomatic that, while there is no broad, blanket prohibition against the government issuing grand jury subpoenas for attorneys and their records, and, in the appropriate case, attorneys certainly can be made to testify or produce documents, they cannot be forced to do so when the subject is privileged or would otherwise violate the client's constitutional rights. *In re Public Defender Serv.*, 831 A.2d. 890, 899 (D.C. App. 2003), citing, *United States v. R. EnterPrises*, 498 U.S. 292, 297 (1991).

It is just as well settled that subpoenas for attorney records or testimony "implicate serious policy concerns." *In re Public Defender Serv.*, 831 A.2d. at 899 (D.C. App. 2003), citing, *In re Grand Jury Matters*, 751 F.2d. 13, 18 (1st Cir. 1984).

"Particularly when an attorney is representing the client in a pending case, 'the mere issuance of the subpoena may undermine the integrity of the attorney-client relationship.'" *Id*.; *In re Grand Jury Subpoena to Attorney (Under Seal)*, 679 F. Supp. 1403, 1411 (N.D.W. Va. 1988).

The very specter of a subpoena for an attorney's testimony or records "can raise doubts in the client's mind as to his lawyer's unfettered devotion to his client's interests and thus impair or at least impinge upon the attorney-client relationship." *In re Grand Jury Investigation (Sturgis)*, 412 F. Supp. 943, 946 (E.D. Pa. 1976).

"Precisely because privileges, such as the attorney-client privilege, are the only bulwarks to the grand jury's substantial authority to compel the attendance and testimony of witnesses, courts and prosecutors have developed procedures for determining whether the attorney-client privilege

12

applies, and, if so, whether an exception enables a person to testify." *In re Grand Jury Investigation*, 2019 U.S. Dist. LEXIS 86801, *30, 2019 WL 2179116 (D.D.C., March 4, 2019).

### Subpoenas For Attorney Records Require Authorization

The Department of Justice has long recognized the special concerns raised by attorney subpoenas. The Department's internal guidelines require the "*prior approval of the Assistant Attorney General of the Criminal Division . . . before a grand jury subpoena may be issued to an attorney for information relating to the representation of a client or the fees paid by such client.*" U.S. Attorney's Manual § 9-11.255[10] (emphasis added).  In determining whether the subpoena should issue, "the Assistant United States Attorney must strike a balance between an individual's right to the effective assistance of counsel and the public's interest in the fair administration of justice and effective law enforcement." U.S. Attorney's Manual § 9-13.410.[11]

Prior to granting a request for a subpoena, DOJ supervisors must consider, *inter alia*, whether a valid claim of privilege exists, whether the information is reasonably needed for the successful completion of the investigation or prosecution, and whether the subpoena is narrowly drawn.  2019 U.S. Dist. LEXIS 86801 at *30.  The Department of Justice, in recognition of the risks attending attorney subpoenas, must maintain "*close control*" over the matter, according to its Manual.  DOJ Manual 9-13.410 A.  Prosecutors are directed to make "*all reasonable attempts*" to

---

[10]  9-11.255 - PRIOR DEPARTMENT OF JUSTICE APPROVAL REQUIREMENTS—GRAND JURY SUBPOENAS TO LAWYERS AND MEMBERS OF THE NEWS MEDIA;

See also, Prior approval of the Assistant Attorney General or a Deputy Assistant Attorney General for the Criminal Division generally is required before a grand jury subpoena may be issued to an attorney for information relating to the representation of a client. See JM 9-13.410.
...
[updated April 2016]

[11] 9-13.410 – Guidelines for Issuing Subpoenas to Attorneys for Information Relating to the Representation of Clients.

obtain the information "*from alternative sources before issuing the subpoena . . . unless such efforts would compromise the investigation or case. These attempts shall include reasonable efforts to first obtain the information voluntarily.*" DOJ Manual 9-13.410 B (emphasis added).  In the instant case, no effort whatsoever was made to obtain the attorney materials and information at issue voluntarily and there was no impediment recognized in the Manual that mitigated against making such an effort.

The undersigned have asked Government counsel whether DOJ approval was sought or obtained and have asked for all documents reflecting the same to be produced, if they exist. Government counsel has refused to address this.

Similarly, the American Bar Association's Model Rules of Professional Conduct provide that a prosecutor should not use a grand jury subpoena to obtain an attorney's records related to a client unless the prosecutor reasonably believes that "*(*1) the information sought is not protected from disclosure by any applicable privilege; (2) the evidence is essential to the successful completion of an ongoing investigation or prosecution; and (3) there is no feasible alternative to obtain the information." *Model Rules of Professional Conduct*, 3.8(e).  *See also*, Formal Opinion 473 of the ABA Standing Committee on Ethics and Professional Responsibility: *Obligations Upon Receiving a Subpoena or Other Compulsory Process for Client Documents or Information* (February 17, 2016) (recognizing the sensitive nature of such subpoenas and the potential privilege and constitutional rights risks involved).

One court has identified five adverse consequences of grand jury subpoenas to attorneys seeking evidence against their clients.  Clearly the potential adverse consequences apply with at least equal force when the subpoena or court Order for the attorney's records are obtained on an

*ex parte* basis, without any notice to the attorney or the client, as was done here. Those five adverse consequences are:

The serving of a grand jury subpoena on an attorney to compel evidence concerning a client may: 1) chill the relationship between lawyer and client; 2) create an immediate conflict of interest for the attorney/witness; 3) divert the attorney's time and resources away from his client; 4) discourage attorneys from providing representation in controversial criminal cases; and 5) force attorneys to withdraw as counsel because of ethical rules prohibiting an attorney from testifying against his client. *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1354 (1st Cir. 1995).

In a case such as this one, moreover, the impact of the grand jury subpoena on the attorney-client relationship may have constitutional ramifications, for the Sixth Amendment entitles the accused in a criminal prosecution to the effective assistance of counsel for his defense and the guarantee depends on free and unfettered communication. Underlying the attorney-client privilege is the premise that "the lawyer and the law office are indispensable parts of our administration of justice." *Hickman v. Taylor*, 329 U.S. 495 (1947) (Jackson, J., concurring).

### Defense Counsel Must be Given the Information and Material Needed to Understand and Evaluate the Operative Facts and Impact of the Government's Conduct.

"The party asserting the attorney-client privilege has the burden of proving that communications are protected by that privilege." 831 A.2d. 890 at 902. *In re Lindsey*, 158 F.3d. 1263, 1270 (D.C. Cir. 1998). In order to establish that communications are presumptively protected by the attorney-client privilege, the attorney need only show that the communications were made in confidence between a client and his legal advisor, that they relate to legal advice, and that there is no indication of a waiver. *Id.* 831 A.2d. 902, citing 8 WIGMORE, EVIDENCE § 2292 (*McNaughton re v. 1961*). The privilege presumptively applies to both statements of the

attorney and the client and any documents conveyed by the client to the attorney for the purpose of securing legal advice. *Haines*, 975 F.2d. at 90. Once a presumptively valid attorney-client privilege has been asserted, the burden shifts to the government to overcome the privilege. *In re Sealed Case (Company)*, 107 F.3d. 46, 49 (D.C. Cir. 1997).

Mr. Costello certainly represents to the Court, as an officer of the Court, that he uses his personal and professional telephone and computer to make phone calls to and to send and receive text messages and emails that contain attorney-client privileged material. He further would represent that he makes calls, texts, and emails to witnesses and for other purposes that are directly related to litigation strategy, and relate to privileged subjects. He further would represent that knowing the identity of who he is calling, or texting, or emailing, or receiving the same from are matters that he reasonably expects to be maintained in privacy and that for the Government to know the same intrudes on privilege and risks revealing privilege matters and strategy that he had no intention of revealing outside of the privileged context.

Mr. Costello would also represent that such intrusions risk impacting his ability to meaningfully engage in the attorney-client relationship, given the realistic fear, in light of the Government's conduct here, that communications the client intends to maintain as privileged in connection with his defense, might no longer be confidential after the Government's intrusion and possible future intrusions.

Here, though, Messrs. Bannon and Costello have been denied the opportunity to which they are entitled to meaningfully assert their rights and seek the appropriate remedy because the Government proceeded *ex parte* and without notice and now refuses to answer basic questions as to the universe of material it has obtained, what facts it asserted to the court that issued a Section 2703(d) Order to obtain the same, what use has been made of the materials obtained, and

16

specifically what use has been made of them in connection with the grand jury whose subpoena power was used to obtain materials at issue, along with the rest of the information sought.

Unless and until that basic information is provided, Mr. Costello, Mr. Bannon, and the defense team cannot meaningfully evaluate the risk of harm from the Government's actions or consider and seek any appropriate remedies or sanctions.

## **CONCLUSION**

Based on the foregoing, Mr. Bannon respectfully requests an Order from this Honorable Court requiring the Government to:

1. Provide to defense counsel: A copy of any and all subpoenas and Orders that were issued and that were directed to third parties in an effort to obtain email and telephone records for Robert J. Costello, Esq. (and any other counsel for Mr. Bannon), along with all documents submitted in connection with any and all applications for any such court Order or so-ordered subpoena.

2. Provide to defense counsel: A list of all third parties on whom a subpoena, court Order or other process was served in the effort to obtain email and telephone records for Robert J. Costello, Esq. (and any other counsel for Mr. Bannon).

3. Provide to defense counsel: A list of all people in the Department of Justice from whom authorization to seek and obtain the email and telephone records for Robert J. Costello, Esq. (and any other counsel for Mr. Bannon) was sought and who provided any such authorization.

4. Disclose to defense counsel: Whether the email and telephone records obtained were shown or described or referred to before the grand jury and if so, provide to defense counsel

all relevant grand jury transcripts, along with a list of any and all other parties to whom these records were provided or described.

WHEREFORE, for the foregoing reasons, Defendant Stephen K. Bannon respectfully requests that this Court GRANT his MOTION TO COMPEL DISCLOSURES CONCERNING THE GOVERNMENT'S EFFORTS TO OBTAIN ATTORNEY TELEPHONE AND EMAIL RECORDS.

Dated: February 4, 2022						Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

/s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
210 N. Charles Street, 26th Floor
Baltimore, MD 21201
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

/s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

/s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of February, 2022, a copy of the foregoing Motion was served *via* the Court's CM/ECF system on all properly registered parties and counsel.

                                                     /s/ M. Evan Corcoran
                                                     M. Evan Corcoran (D.C. Bar No. 440027)