**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| STEPHEN K. BANNON, | : |
| | : |
| *Defendant.* | : |
| | : |

Criminal No. 21-670 (CJN)

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Defendant Stephen K. Bannon, through his undersigned counsel, respectfully moves this Court for an Order compelling the Government to comply with its obligations and provide discovery that is material to the preparation of Mr. Bannon's defense, based upon the following:

**Introduction**

To prevail on a motion to compel the search for and disclosure of additional discovery, we need not prove that it would lead to admissible evidence. The burden is much lower – we need only make a threshold showing that the information sought would tend to help in preparing a defense. Mr. Bannon's discovery requests were specific and tailored to the charges in this case. *See* Exhibit 1. Our seven-page letter provided controlling legal authority and requested 30 specific categories of discoverable information. The Government's three-paragraph response contended that they have nothing more to show to the defense. Exhibit 2 at 2. That curt response mirrors a scene from John Huston's film *The Treasure of the Sierra Madre,* where an American character played by Humphrey Bogart questions the legal authority of a group posing as law enforcement agents, only to get the reply: "Badges? . . . We don't need no badges. I don't have to show you any stinking badges!"

1

When an accused faces federal criminal charges, however, the Government cannot ignore legitimate requests for information pertinent to the preparation of a defense. Well-settled authority, and the local criminal rules, require the disclosure of a broad range of information that could potentially add to the quantum of evidence in a defendant's favor. A key aspect of the discovery rules is that the Government must disclose to the defense information that would allow it to *prepare* a defense. *See* Fed. R. Crim. P. 16(1)(1)(E).

The Government cannot avoid its discovery obligations by declining to search files they are required to search, or by taking a narrow view of what information might be helpful to the defense. As described in greater detail below, the Government has an obligation to conduct a broad search for information that tends to: be inconsistent with a defendant's guilt; negate an element of the crime; mitigate the charged offense; establish a defense theory; or cast doubt upon the credibility or accuracy of any witness or evidence. An accused has no ability to require the Government to search its files. While the Government's failure to meet its discovery obligations can result in reversal on appeal, and sanctions, such post-trial remedies do not help an accused who seeks a fair trial. Accordingly, we respectfully request that this Court compel the Government to meet its obligations in advance of trial, so that we can prepare a defense.[1]

### The Government's Allegations

On November 12, 2021, a grand jury charged Stephen K. Bannon in a two-count indictment. [Doc. 1] Count One charged him with Contempt of Congress, in violation of 2 U.S.C. § 192, alleging that "having been summoned as a witness by the authority of the U.S. House of Representatives to give testimony upon a matter under inquiry before a committee of the House,

---

[1] At the December 7, 2021, status hearing in this case, we outlined our need for discovery as it related to the preparation of pre-trial motions, and the preparation of a defense. *See* 12/7/2021 Tr. at 26-35.

did willfully make default – that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to appear to give testimony in response to a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to appear for a deposition at 10:00 a.m. on October 14, 2021." *Id*. at 8. Count Two also charged him with Contempt of Congress, in violation of 2 U.S.C. § 192, alleging that "having been summoned as a witness by the authority of the U.S. House of Representatives to produce papers upon a matter under inquiry before a committee of the House, did willfully make default – that is, in a matter under inquiry before the House Select Committee to Investigate the January 6th Attack on the United States Capitol, BANNON refused to produce documents and communications, provide a log of any withheld records, certify a diligent search for records, and comply in any way with a subpoena dated September 23, 2021, issued by the Select Committee and commanding BANNON to produce documents and communications as delineated therein." *Id*. at 9.

The statute states as follows:

Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months.

2 U.S.C. § 192.

The Government has the burden of proving, beyond a reasonable doubt, all elements of the offenses charged. A threshold issue involves whether the subpoena seeking testimony and documents was valid and issued pursuant to lawful authority. The Supreme Court has held, in reversing a 2 U.S.C. § 192 conviction, that "Courts administering the criminal law cannot apply

sanctions for violation of the mandate of an agency – here, the Subcommittee – unless that agency's authority is clear and has been conferred in accordance with law." *Gojack v. United States*, 384 U.S. 702, 714 (1966). The Government must prove that Congress had the constitutional power to investigate the matter at issue and make the specific inquiry. *Watkins v. United States*, 354 U.S. 178, 187 (1957). The Government must also prove that the Select Committee was authorized to conduct the specific investigation, and that the actions of the Select Committee were in accordance with the authority granted, and the authorized procedures. *United States v. Rumely*, 345 U.S. 41, 42-43 (1953).

The Supreme Court has held that a defendant prosecuted under 2 U.S.C. § 192 is entitled to "every safeguard which the law accords in all other federal criminal cases." *Russell v. United States*, 369 U.S. 749, 755 (1962). Any citizen facing criminal charges is entitled to due process of law. U.S. Const. Amend. V. Consistent with that constitutional guarantee, if the government officials and employees involved in this matter did not follow the rules of the U.S. House of Representatives, or the rules applicable to the Select Committee, pertaining to the September 23, 2021, subpoena, then there can be no conviction for a violation of 2 U.S.C. § 192. *Yellin v. United States*, 374 U.S. 109 (1963) (Section 192 conviction reversed where committee did not follow rules regarding executive session); *see also Gojack*, *supra*, 384 U.S. at 716 ("[t]he legislative history of § 192 makes plain that a clear chain of authority from the House to the questioning body is an essential element of the offense"); *see generally Christoffel v. United States*, 338 U.S. 84, 85-90 (1949) (perjury conviction reversed where committee did not follow rules regarding quorum). The Government will also have the burden of proving that the questions or documents sought were pertinent to the authorized inquiry. *Barenblatt v. United States*, 360 U.S. 109 (1959).

Significantly, the Government must prove that Mr. Bannon acted with criminal intent. There is no violation of the statute unless a person "willfully makes default." 2 U.S.C. § 192. Given the plain language of the statute, and controlling Supreme Court precedent, the Government must prove beyond a reasonable doubt that Mr. Bannon acted "willfully" to violate the statute that prohibits Contempt of Congress. Specifically, the Government must prove that Mr. Bannon knew that his conduct constituted "default," *knew that his conduct was unlawful*, and intended to do something that the law forbids. *See Bryan v. United States*, 524 U.S. 184, 191-192 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994); *United States v. Zeese*, 437 F. Supp. 3d 86, 95 (D.D.C. 2020).

## Applicable Discovery Principles

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i)     the item is material to preparing the defense;

(ii)     the government intends to use the item in its case-in-chief at trial; or

(iii)     the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)I. The D.C. Circuit has emphasized that the prosecution must disclose evidence which is material "to *the preparation of* the defendant's defense." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998) (emphasis in original). The government must disclose both inculpatory and exculpatory evidence. *Id*. "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths."

*Marshall*, 132 F.3d at 67; *accord United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (Apr. 27, 2007).

The discovery obligations of Rule 16 are "intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *O'Keefe*, 2007 WL 1239204, at *2 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden" – information is material and must be disclosed if it has the potential to play an "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (discovery materiality hurdle "is not a high one").

"As a general matter, Rule 16 establishes the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017); *see also United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003) Moreover, "the government cannot take a narrow reading of the term material in making its decisions on what to disclose under Rule 16." *O'Keefe*, *supra*, 2007 WL 1239204, at *2.

Government disclosure of exculpatory and impeachment evidence is essential to the constitutional guarantee to a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether the defendant makes a request for the

information. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Since it is sometimes difficult to assess the materiality of evidence before trial, prosecutors must err on the side of disclosure. *Kyles*, 514 U.S. at 439.

The Department of Justice ("DOJ") Manual, § 9-5.001, provides as follows:

**Disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required**. Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in Kyles v. Whitley, 514 U.S. 419 (1995), and Strickler v. Greene, 527 U.S. 263, 280-81 (1999). The policy recognizes, however, that a trial should not involve the consideration of information which is irrelevant or not significantly probative of the issues before the court and should not involve spurious issues or arguments which serve to divert the trial process from examining the genuine issues. Information that goes only to such matters does not advance the purpose of a trial and thus is7ubjectt to disclosure.

**Additional exculpatory information that must be disclosed**. A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

**Additional impeachment information that must be disclosed.** A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence — including but not limited to witness testimony — the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

**Information**. Unlike the requirements of Brady and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

**Cumulative impact of items of information**. While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

DOJ      Manual,      https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings (last visited on Feb. 4, 2022) (emphasis in original).

To ensure that prosecutors adhere to their discovery obligations, the United States District Court for the District of Columbia Local Rules of Criminal Procedure specify the types of information that must be disclosed. The rules provide, in pertinent part, that the Government must disclose to the defense:

> (1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;
>
> (2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty;
>
> (3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;
>
> (4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and
>
> (5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

Local Rule Crim. P. 5.1(b).

## ARGUMENT

Given the allegations in the indictment and applicable law, the Government must expand its search for information to additional sources of potentially discoverable information and must disclose all information that is material to the preparation of Mr. Bannon's defense.

### **Information That Tends To Show That The Indictment Is Invalid**

The Government takes the spurious position that grand jury secrecy only counts when they want selectively to withhold information. The Government in this case requested an order allowing disclosure of grand jury materials pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i), which allows a district

court to authorize disclosure "preliminarily to or in connection with a judicial proceeding." [Doc. 9] The Government acknowledged in its motion that "such an order is appropriate because grand jury testimony in this case constitutes material to which the defendant is entitled as part of his discovery." *Id*. at 2. The Court issued a protective order that authorized disclosure of grand jury witness transcripts and exhibits, subject to restrictions on the further disclosure of such "Sensitive Materials." [Doc. 20 at ¶¶ 10 -12]

As part of the discovery materials provided to the defense, the Government selectively included some, but not all, grand jury materials. We made additional requests for the following grand jury-related information:

2.  All documents and information obtained in response to any subpoena or investigative request relating to Mr. Bannon, and/or any person acting on his behalf or associated with him.

3.  All subpoenas or investigative requests relating to Mr. Bannon, and/or any person acting on his behalf or associated with him.

4.  All documents and information used in support of any subpoena or investigative request – including but not limited to affidavits – relating to Mr. Bannon, and/or any person acting on his behalf or associated with him.

\*   \*   \*

24. All documents and information that reflect how the grand jury was charged in this matter.

25. All documents and information of any kind that were presented to the grand jury in this matter.

26. All documents and information that were obtained pursuant to a grand jury subpoena, but not presented to a grand jury in this matter.

27. All documents and information reflecting consideration of, and/or the presentation of, any information to a grand jury in this matter which would tend to negate an element of the offenses charged.

28. All documents and information reflecting consideration of, and/or the presentation of, any information to a grand jury in this matter which would tend to cast doubt on the credibility or accuracy of any other evidence presented to the grand jury, including witness testimony.

29. All documents and information reflecting consideration of, and/or the presentation of, any information to a grand jury in this matter which would tend to establish a defense to the offenses charged, including but not limited to reliance on the advice of counsel, reliance on authority of the U.S. Department of Justice Office of Legal Counsel or U.S. Attorney's Office policies or any other public authority, and/or entrapment by estoppel.

Exhibit 1 at 3, 6. The Government rejected these requests without explanation.

Federal Rule of Criminal Procedure 6(e) provides a general rule of secrecy for matters occurring before a grand jury. The purpose of the rule is to: (1) encourage grand jury witnesses to be truthful and willing to testify; (2) prevent grand jury targets from fleeing or interfering with the grand jury; and (3) protect suspects who might later be exonerated. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). Where, as here, the Government has sought and obtained Court authorization for the disclosure of selective portions of the matters occurring before the grand jury, it should not be permitted to argue that secrecy concerns justify withholding additional information about matters occurring before that grand jury. The policy reasons underlying grand jury secrecy are no longer applicable. There is no chance that disclosure of the additional grand jury information in this case would discourage grand jury witnesses from testifying, cause targets to flee, or adversely affect suspects who were later exonerated. The grand jury has already returned an indictment.

Under these circumstances, the defense is entitled to a full picture of what was presented to the grand jury, what was not presented, how the prosecution team characterized the evidence and the proposed charges, and the instructions that were given on the law to be applied to the facts. There is no legitimate basis for the Government to be able to choose what material occurring before

this grand jury should be kept secret, when they have already sought authorization for, and disclosed, selective parts of the grand jury record.

Beyond that, there is a Protective Order in place that restricts defense counsel from further disclosing "Sensitive Materials" – including grand jury information received from the Government. [Doc. 20] Given those restrictions, there is no legitimate basis for the Government to withhold any additional grand jury materials. Any grand jury materials disclosed, and marked "Sensitive Material," will continue to be protected even after disclosure to the defense.

In addition, there is another particularized need for the disclosure of additional grand jury materials. Based upon information we have reviewed, grounds *may* exist to dismiss the indictment because of a matter that occurred before the grand jury. *See* Rule 6(e)(3)(E)(ii) (court may authorize disclosure "at the request of a defendant who shows that a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury") (emphasis added).

First, as is the subject of a separate motion filed today, the Government used grand jury subpoenas to investigate Mr. Bannon's attorney, Robert J. Costello, Esquire, *at the very time* that Mr. Costello was communicating with the prosecution team and advocating on Mr. Bannon's behalf. There are stringent rules that apply to the investigation of attorneys. Such rules exist because these types of investigations may constitute an impermissible interference with the attorney-client relationship, and the effective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution. If the Government failed to follow the applicable rules – which will be revealed through additional discovery – a ground may exist to dismiss the indictment. That separately filed motion explains the need for discovery on that troubling issue, so that the defense has sufficient information to evaluate whether some sanction, including dismissal, is appropriate.

Second, based upon information known to the defense that must be supplemented with additional discovery, grounds may exist to dismiss the indictment based upon the failure to properly charge the grand jury on applicable law. From the very start, this matter has involved lawyers. Mr. Bannon had no direct communication with the Select Committee. Communications were through his counsel, Robert J. Costello, Esquire. On October 7, 2021, Mr. Costello advised the Select Committee that "Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony." Exhibit 3 [US-000254]. In this and subsequent communications, Mr. Costello explained the reasons that Mr. Bannon could not legally comply with the subpoena at that time. These included, but were not limited to, the following:

- President Donald J. Trump, through his attorney, instructed Mr. Bannon to protect information covered by the executive and other privileges, to invoke these immunities and privileges, to not produce and documents concerning privileged material in response to the subpoena, and to not provide any testimony concerning privileged material in response to the subpoena. *Id*. at US-000253.

- President Donald J. Trump's attorney advised Mr. Bannon that President Donald J. Trump was "prepared to defend these fundamental privileges in court." *Id*.

- Mr. Costello advised that Mr. Bannon "will comply with the directions of the courts, when and if they rule on these claims of both executive and attorney client privileges." *Id*.

- Mr. Costello consistently informed the Select Committee that Mr. Bannon was acting in accordance with applicable law, as set forth in detailed official legal opinions issued by the Office of Legal Counsel, U.S. Department of Justice, which analyzed the legal issues under analogous circumstances. *See* Exhibit 4 (FBI Interview of Robert J. Costello, Esquire, on November 3, 2021). [US001769 to 001782]

Thus, the Select Committee knew from the outset that Mr. Bannon believed that he was acting in accordance with the law, as advised by his attorney, and that he welcomed the adjudication of any disputed interpretation of legal issues by a court of law.

On October 18, 2021, President Donald J. Trump filed a lawsuit in the U.S. District Court for the District of Columbia seeking the judicial determination of his assertion of executive

privilege in response to a request for documents from the Select Committee. The same day, Mr. Costello, on behalf of Mr. Bannon, communicated with the Select Committee seeking a one-week adjournment of the subpoena date. The communication stated, in pertinent part, as follows:

> We write on behalf of Stephen Bannon. We have just been advised of the filing of a lawsuit in federal court for the District of Columbia entitled Donald J. Trump v. Bennie Thompson, et al., 21-Civ-02769 (D.D.C. 2021).  In light of this late filing, we respectfully request a one-week adjournment of our response to your latest letter so that we might thoughtfully assess the impact of this pending litigation. (US-000290)

On October 19, 2021, the Select Committee rejected Mr. Bannon's reasonable request for a one-week adjournment to assess this legal development, and instead forwarded a resolution to the full House of Representatives recommending that Steven K. Bannon be found in Contempt of Congress. [US-000607-000652].

The grand jury, in considering whether to return an indictment for a violation of 2 U.S.C. § 192, would need to consider evidence that goes to the question whether Mr. Bannon "willfully [made] default." Grand jury materials already disclosed to the defense raise significant questions as to what evidence was presented on this issue, and what legal instructions were given. Mr. Bannon was clear in conveying his position to the Select Committee – he would testify if a court considered the legal issues involved and determined that no privilege prevented his testimony or production of documents. Another plausible option actually presented itself, with the filing of a lawsuit by President Donald J. Trump seeking a judicial determination of the privilege issue by a federal judge. At that juncture, Mr. Bannon sought a short adjournment to assess this development. Mr. Bannon's request for an adjournment while a federal court considered the executive privilege invocation by President Donald J. Trump is a critical piece of evidence. The grand jury was entitled to consider that evidence. In addition, the grand jury was entitled to clear and accurate instructions on the legal framework within which to consider that evidence, particularly as the grand jury

weighed the essential element of intent. This was at the heart of any decision on whether Mr. Bannon "willfully [made] default."

The selective grand jury materials provided to the defense leave critical questions on these topics unanswered. In testimony on November 12, 2021, the lead FBI agent in the case made no mention of Mr. Bannon's request for adjournment even when specifically questioned about the topic. *See* Exhibit 5 (filed under seal in accordance with Protective Order) [US-000061 to US-000065]. It is unlikely that this involved a lapse in memory because the same lead FBI agent was aware of the request for adjournment when he testified. Robert J. Costello, Esquire, had told him about it in a November 3, 2021, interview, and it is referenced in a report of that interview that the lead FBI agent finalized on November 11, 2021 – *just one day* before his grand jury appearance. *See* Exhibit 4 at 2 (November 11, 2021, FBI Report of Interview of Robert J. Costello, Esquire).

The letter seeking an adjournment on behalf of Mr. Bannon is not among the grand jury exhibits that were provided to the defense. Additional discovery is needed to assess whether the lead agent's testimony, viewed in conjunction with the grand jury instructions and any other information provided to the grand jury by the prosecution team, may be grounds for dismissal of the indictment. This discovery may tend to negate an element of the offense, since the Government must prove beyond a reasonable doubt that Mr. Bannon knew that his conduct was unlawful and intended to do something that the law forbids.

It cannot be contested that the Select Committee was aware that from the start that Mr. Bannon was relying upon legal advice provided by his attorney. The prosecution team also knew this from the start. On November 3, 2021, Robert J. Costello, Esquire, informed the prosecution team that he "advised that BANNON should wait to respond until an agreement was reached between the Select Committee and former President TRUMP or if a court defined what was

covered under Executive Privilege." Exhibit 4 at 4 (November 11, 2021, FBI Report of Interview of Robert J. Costello, Esquire) [US-001772]. In addition, Mr. Costello consistently advised the Government that Mr. Bannon was acting in accordance with legal opinions issued by the Office of Legal Counsel, U.S. Department of Justice, which analyzed the issues under analogous circumstances. *Id*. at 3.

Given that reliance on advice of counsel is central to this case, it is essential that the grand jury was properly instructed not only on the elements of the offense, but also on how to consider the legal significance of information presented regarding the advice of counsel. Available information suggests that the prosecution team may not have accurately instructed the grand jury on applicable law, which may present grounds for dismissal of the indictment as set forth in Rule 6(e)(3)(E)(ii). The Government has taken the position that, in their view, advice of counsel is inapplicable to this case. [Doc. 25 at ¶ 2] Given the Government's position, it is reasonable to question whether the grand jury was properly instructed on this essential legal concept.

A review of the grand jury materials already provided to the defense raises questions about whether the grand jury was properly instructed on the law. For instance, the lead FBI agent in the case appears to have provided information to the grand jury which suggests that a witness cannot not validly assert executive privilege before the Select Committee unless the President himself (or his representative) *directly* communicated the assertion of executive privilege to the Select Committee. *See* Exhibit 6 (filed under seal in accordance with Protective Order) [US-000073]. This could have misled the grand jury about a material legal concept. There is no authority for the proposition that an assertion of executive privilege is not valid unless the President himself, or his representative, communicates it to the Select Committee. Mr. Costello conveyed President Donald

J. Trump's invocation of executive privilege to the Select Committee, and the Select Committee had knowledge of President Donald J. Trump's invocation of the privilege from other sources.

Failure to instruct the grand jury properly on the legal principles of advice of counsel may be grounds for dismissal of the indictment. *See United States v. Stevens*, 771 F. Supp. 556, 567 (D. Md. 2011) (dismissing indictment based upon failure to properly instruct the grand jury regarding advice of counsel, finding that "good faith reliance on the advice of counsel negates a defendant's wrongful intent, and is therefore highly relevant to the decision to indict."); *see generally United States v. Peralta*, 763 F. Supp. 14 (S.D.N.Y. 1991) (dismissal of indictment based upon grand jury instructions that did not properly state the law). In addition, some district courts have ordered the disclosure of grand jury instructions without a showing of particularized need, given that the instructions are part of the ground rules under which the grand jury conducts its proceedings, and do not reveal the grand jury's deliberations. *See United States v. Belton*, 2015 U.S. Dist. LEXIS 52426, *7 (N.D. Cal. 2015) (citing cases). Accordingly, we request an order compelling disclosure of additional grand jury materials.

**Information That Tends To Show That The Subpoena Was Not Lawfully Authorized**

The Government must prove beyond a reasonable doubt that the subpoena seeking Mr. Bannon's testimony and documents was valid and was issued pursuant to lawful authority. Under the rules of discovery, the defense is entitled to any information that tends to negate Mr. Bannon's guilt as to this element of the offense. We are also entitled to any information that tends to cast doubt on the credibility or accuracy of any evidence – including witness testimony and tangible evidence – that the Government intends to rely upon at trial.

This prosecution was set in motion by the actions of officials, members, employees, and staff of the Select Committee. They communicated with Robert J. Costello, Esquire, regarding

service of the subpoena. They communicated with Mr. Costello regarding Mr. Bannon's response to the subpoena, orally and in writing. They took actions to create a record regarding Mr. Bannon's response to the subpoena. They drafted a resolution suggesting that the U.S. House of Representatives find Mr. Bannon in Contempt of Congress. Once that resolution passed, the Speaker of the House, and her staff, took action to effectuate a criminal prosecution of Mr. Bannon.

No criminal prosecution would have followed but for their actions. Accordingly, Mr. Bannon is entitled to information in the files of those individuals, so that he can prepare a defense. The Government has an obligation to search their files for discoverable material. We specifically requested the following information.

5. All documents and information regarding the establishment of the Select Committee, its membership, its staffing, its budget, its authority and functioning, and the authority of the Select Committee to issue subpoenas.

6. All documents and information in the possession of the Select Committee, or any of its officials, members, employees, or staff, regarding Mr. Bannon's appearance as a witness and/or production of documents.

7. All documents and information in the possession of the U.S. House of Representatives Rules Committee, Office of General Counsel, and Office of the Speaker, or any of its officials, members, employees, or staff, regarding Mr. Bannon's appearance as a witness and/or production of documents.

8. All documents and information in the possession of the Select Committee, or any of its officials, members, employees, or staff, regarding the issuance of a subpoena to Mr. Bannon.

9. All documents and information in the possession of the Select Committee, the main Department of Justice, the U.S. Attorney's Office, and the White House, or any of its officials, members, employees, or staff, regarding President Donald J. Trump's assertion of executive privilege in response to any request of the Select Committee.

10. All drafts of the October 8, 2021, letter from the Select Committee Chair referenced in Paragraph 17 of the Indictment.

11. All documents and information in the possession of the Select Committee, or any of its officials, members, employees, or staff, regarding attendance by members and staff at the October 14, 2021, hearing room, referenced in Paragraph 19 of the Indictment.

12. All drafts of the October 15, 2021, letter from the Select Committee Chair referenced in Paragraph 20 of the Indictment.

13. All documents and information in the possession of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, main Department of Justice (including but not limited to the Office of Legal Counsel), U.S. Attorney's Office, and the White House, or any of its officials, members, employees, or staff, regarding what constitutes a default by a witness in response to a subpoena, and/or what does not constitute a default by a witness in response to a subpoena.

14. All documents and information in the possession of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, main Department of Justice (including but not limited to the Office of Legal Counsel), U.S. Attorney's Office, and the White House, or any of its officials, members, employees, or staff, regarding whether the Select Committee would receive the testimony of any witness in a non-public deposition.

Exhibit 1 at 4 to 5. The Government declined to search the files or provide the information requested, contending that the officials, members, employees, and staff of the U.S. House of Representatives are not part of the prosecution team. Exhibit 2 at 1. This cramped interpretation is at odds with the Government's basic obligations in any criminal case. *See United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989) (Rule 16 intended to provide a defendant "the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case").

The Government must inquire whether witnesses are biased, and whether the tangible evidence provided by witnesses is valid. This is not limited to trial witnesses. As the Government is aware, there are numerous officials, members, employees, and staff of the U.S. House of

Representatives who were directly involved in this matter from the beginning. This criminal case was a direct result of their actions and omissions.

The limited information that the defense has received from the files of officials, members, employees, and staff of the U.S. House of Representatives indicates that the actions by the Select Committee were *not* in accordance with the authority conferred by the U.S. House of Representatives. Because valid legal authority is an element of the offense, we are entitled to any information that is inconsistent with or tends to negate the defendant's guilt as to this element. *See* Local Rule Crim. P. 5.1(b).

For instance, the Select Committee's legal authority to issue subpoenas and conduct depositions is limited by the resolution establishing the Select Committee, and the general Rules of the House of Representatives, which are incorporated by reference into that resolution. That authority limits certain actions with regard to subpoenas and depositions by requiring consultation with, and notice to, the ranking minority member of the Select Committee. *See* Exhibit 7 (H. Res. 503, Sec. 5(c)(6)(A) & (B)) [US-000268 to 000269], incorporating Exhibit 8 (procedures adopted by 117th Congress on January 4, 2021, Regulations For Use Of Deposition Authority, ¶ 2) [US-000963]. The Select Committee did not act within its legal authority with regard to the subpoena and the deposition of Mr. Bannon, because there was no consultation with the ranking minority member. Simply put, the Select Committee does *not have a ranking minority member*. *See* Exhibit 9 (November 2, 2021, FBI Interview of U.S. House of Representatives General Counsel Doug Letter). The top lawyer for the U.S. House of Representatives acknowledged this in an FBI interview, as follows:

> Paragraph one of 3(b) makes reference to ranking minority members, who are typically a part of House committees. In these House committees, there are particular rules at hearings set aside for the Chair and Ranking Member. The Ranking Member is generally the highest minority member in a House committee and typically possess [sic] procedural powers.

> LETTER explained that the Select Committee was specifically appointed by the Speaker of the House and there were no majority or ranking members. Representative LIZ CHENEY is acknowledged to be the Vice Chair of the Select Committee; since the Select Committee has a Chair and a Vice Chair, there are no express rules for the Vice Chair as there would be for a Ranking Member.

*Id*. at 4 [US-000248]. Mr. Bannon is entitled to all information along these lines, which would tend to negate an element of the offense.

Given the central role of the Select Committee, the Speaker of the House, and the U.S. House of Representatives, in initiating this prosecution, the Government is obligated to make inquiry of those whose actions precipitated this prosecution, and to disclose any information that is material to the preparation of Mr. Bannon's defense.

### Information That Tends To Negate Willfulness

The Government has an obligation to disclose information that tends to negate the intent element of this offense. Specifically, we believe that the Government is in possession of documents and communications which tend to establish that a person in Mr. Bannon's position – asserting a privilege in response to a Congressional subpoena – should not be criminally prosecuted under 2 U.S.C. § 192. Accordingly, we requested that the Government search for and disclose the following information:

19. All documents and information in the possession of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, main Department of Justice (including but not limited to the Office of Legal Counsel), and U.S. Attorney's Office, or any of its officials, members, employees, or staff, regarding the factors to be considered in determining whether to bring a civil or criminal action or other sanction for an alleged failure to comply with a Congressional subpoena, involving Mr. Bannon or any other individual.

20. All documents and information in the possession of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, main Department of Justice – including but not limited to the Office of Legal Counsel – and the U.S. Attorney's Office, or any of its officials, members, employees,

> or staff, regarding the applicability of the advice of counsel defense to an alleged failure to comply with a Congressional subpoena, involving Mr. Bannon or any other individual.

Exhibit 1 at 5.

Given that the United States Attorney General made a personal statement about the case on the day that Mr. Bannon was indicted, there is reason to believe that main Justice was involved with the prosecution team in initiating this case. We understand that the files at main Justice, the U.S. Attorney's Office, and the White House all contain documents analyzing the assertion of privilege in response to a congressional subpoena, and determining that a prosecution of someone in Mr. Bannon's position cannot be sustained.

For instance, in a memorandum explaining why the U.S. Attorney's Office would not pursue a under 2 U.S.C. § 192 prosecution of a former executive branch official who asserted privilege and refused to answer any questions based upon privilege, the U.S. Attorney for the District of Columbia at the time stated, in pertinent part, that:

> It has long been the position of the Department, across administrations of both political parties, that we will not prosecute an Executive Branch official under the contempt of Congress statute for withholding subpoenaed documents pursuant to a presidential assertion of executive privilege.

Exhibit 10 at 6 (Letter from Ronald C. Machen Jr., United States Attorney, to Speaker of the House John A. Bohner, (March 31, 2015)). Likewise, the Office of Legal Counsel, U.S. Department of Justice, has similar documents that tend to negate Mr. Bannon's guilt or establish a defense to the charges. For example, Theodore Olson, Assistant Attorney General, Office of Legal Counsel, wrote that:

> We believe that the Department's long-standing position that the contempt of Congress statute does not apply to executive officials who assert Presidential claims of executive privilege is sound, and we concur with it.

Exhibit 11 at 129 (*Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (1984)).

Another example of an Office of Legal Counsel document that tends to negate the element of willfulness involved a former White House employee who was subpoenaed to testify before a House Committee and who anticipated questions that were protected by executive privilege. In that matter, the Committee's rules allowed the former White House employee to be accompanied by private counsel, but did not allow the presence of agency counsel, who would represent the interests of the Executive Branch – the same procedure employed by the Select Committee here, to which Mr. Bannon objected through his attorney Robert J. Costello, Esquire. Under those circumstances, Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, concluded that:

> Congressional subpoenas that purport to require agency employees to appear without agency counsel are legally invalid and are not subject to civil or criminal enforcement.

Exhibit 12 at 1 (*Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, slip op. (May 23, 2019)).

Because the defense does not have the ability to search the files of the government actors involved in this prosecution that may possess additional such documents, we respectfully request that the Court compel the Government to meet its obligations in this regard.[2]

### Information That Tends To Show Bias Or The Invalidity Of Evidence

Available information suggests that political considerations played an impermissible role in the events leading to the prosecution of Mr. Bannon. Under Local Rule Crim. P. 5.1(b), Mr.

---

[2] Additional discovery will tend to support several defenses to the charges, such as a public authority defense, including the defenses of actual authority, implied authority, and entrapment by estoppel.

Bannon is entitled to information that tends to show the bias of any witness against him. Such information would tend to cast doubt on the credibility or accuracy of the Government's evidence. Mr. Bannon is also entitled to any information that tends to show that this prosecution was initiated or pursued because of political considerations. Such information would tend to establish an articulated and legally cognizable defense theory or recognized affirmative defense. Thus, the information must be disclosed pursuant to Local Rule of Criminal Procedure 5.1(b).

We requested the following information from the Government:

2. Any private or public statement by any member of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, or any of its officials, members, employees, or staff, regarding Mr. Bannon's interaction with the Select Committee.

3. Any private or public statement by any official, employee, or staff of the U.S. Department of Justice regarding Mr. Bannon's interaction with the Select Committee.

4. Any private or public statement by any official, employee, or staff of the U.S. Attorney's Office for the District of Columbia regarding Mr. Bannon's interaction with the Select Committee.

5. Any private or public statement by any official, employee, or staff of the White House regarding Mr. Bannon's interaction with the Select Committee.

\*   \*   \*

22. All documents and information in the possession of the Select Committee, Rules Committee, Office of General Counsel, and Office of the Speaker, main Department of Justice – including but not limited to the Office of Legal Counsel – the U.S. Attorney's Office, and the White House, or any of its officials, members, employees, or staff, that reference making an example of Mr. Bannon, punishing him, hoping to influence or affect the conduct of other potential witnesses before the Select Committee, or words of similar meaning and effect.

23. All documents and information in the possession of any Member of the Select Committee, or any Member of the U.S. House of Representatives, who voted in favor of a criminal referral of the matter involving Mr. Bannon, which tend to show that Member's bias (including animosity toward Mr. Bannon, or animosity toward a group with which Mr. Bannon is affiliated), or conflict of interest.

Exhibit 1 at 5-6. The Government declined to provide any such information, or even make the requested search for responsive documents.

Information obtained by the defense provides the basis for these discovery requests, as follows:

- Select Committee members were selected by the Speaker of the House, a Democrat, after she declined to appoint key Republican members recommended by the Republican Leader. *See* Lindsay Wise, *Pelosi Rejects Two GOP Picks for Jan. 6 Capitol Riot*, THE WALL STREET JOURNAL, updated July 21, 2021, https://www.wsj.com/articles/pelosi-rejects-two-gop-selections-for-jan-6-capitol-riot-committee-11626889294.

- The Select Committee noted that Mr. Bannon was the Chief Executive Officer of President Donald J. Trump's 2016 presidential campaign. [US-000611]

- The Select Committee noted that Mr. Bannon served in the White House as President Donald J. Trump's chief strategist. *Id.*

- The Select Committee noted that after Mr. Bannon left the White House, he remained active in media and politics. [US-000612]

- The Select Committee noted that Mr. Bannon was the host of a radio show and podcast focused on "rallying supporters" of President Donald J. Trump. *Id.*

- The Select Committee noted that before the 2020 Presidential election, Mr. Bannon made public efforts to explain "his belief that the Democrats are plotting to steal the 2020 election." *Id.*

- The Select Committee rejected Mr. Bannon's reasonable request for a judicial determination of his assertion of executive privilege. [US-000291 to 000294]

- The Select Committee rejected Mr. Bannon's reasonable request for a one-week adjournment of his appearance, after President Donald J. Trump filed a lawsuit seeking a judicial determination of the assertion of executive privilege. [US-000275]

- The U.S. House of Representatives voted largely along party lines in approving a resolution finding Mr. Bannon in contempt of Congress. *See* Claudia Grisales, *The House votes to hold Steve Bannon in contempt for defying a subpoena*, NPR, Oct. 21, 2021, https://www.npr.org/2021/10/21/1048051026/u-s-house-approves-criminal-contempt-referral-for-steve-bannon.

- Members of the Select Committee have made public statements regarding their desire to set an example through the criminal prosecution of Mr. Bannon. *See*, *e.g.*,

    o Mychael Schnell, *Schiff says holding Bannon in criminal contempt 'a way of getting people's attention*,' The Hill (Oct. 17, 2021) https://www.msn.com/en-us/news/politics/schiff-says-holding-bannon-in-criminal-contempt-a-way-of-getting-people-s-attention/ar-AAPDsOV

    o Jordan Williams, *Kinzinger says he hopes Bannon indictment sends 'chilling message*,' The Hill (Nov. 13, 2021) https://www.msn.com/en-us/news/politics/kinzinger-says-he-hopes-bannon-indictment-sends-chilling-message/ar-AAQFsJs "So, this is certainly a good thing, and I hope it sends a chilling message to anybody else who was going to follow through like this."

- The Speaker of the House, a Democrat, made a public statement regarding her desire to have Mr. Bannon criminally prosecuted. *See* "On Sunday, Pelosi addressed the issue during an interview on CNN's State of the Union, answering 'yes' when asked if Bannon should be prosecuted and jailed for refusing to submit documents and testimony for the investigation." Natalie Colarossi, *Steve Bannon's 1/5 Comments Resurface as Pelosi Says He Should Be Jailed Over Subpoena Refusal*, NEWSWEEK, https://www.newsweek.com/steve-bannons-1-5-comments-resurface-pelosi-says-he-should-jailed-over-subpoena-refusal-1642016.

- The President of the United States, a Democrat, made a public statement stating that those in Mr. Bannon's position should be criminally prosecuted. *See* Amy B. Wang, *Biden says Justice Department should prosecute those who refuse Jan. 6 Committee subpoenas*, WASHINGTON POST, Oct. 15, 2021, https://www.washingtonpost.com/politics/2021/10/15/biden-says-justice-department-should-prosecute-those-who-refuse-jan-6-committees-subpoenas/. "When asked Friday if the Justice Department should prosecute those who refuse the committee's subpoenas, Biden responded, 'I do. Yes.'"

- In indicting Mr. Bannon, the U.S. Department of Justice ignored long-standing policies that: (1) a former executive branch official cannot be prosecuted for contempt of Congress after asserting executive privilege; and (2) congressional subpoenas seeking the testimony of executive branch employees – where the committee does not allow the presence of agency counsel – are invalid and unenforceable.

- The Attorney General of the United States, nominated by the President, a Democrat, took the unusual step of including his personal opinion in a press release announcing Mr. Bannon's indictment. *See* Press Release, United States Department of Justice, *Stephen K. Bannon Indicted for Contempt of Congress* (Nov. 12, 2021) https://www.justice.gov/opa/pr/stephen-k-bannon-indicted-contempt-congress.

- To date, Mr. Bannon is the only individual who has been criminally prosecuted for interactions with the Select Committee.

Given these facts, Mr. Bannon is entitled to the disclosure of information tending to show the bias of any of individual who set in motion his criminal prosecution, and information tending to show that this prosecution is politically motivated.

## CONCLUSION

Wherefore, for the reasons set forth above, Mr. Stephen K. Bannon respectfully requests an Order compelling the Government to produce the requested discovery materials so that he may prepare a defense to the charges in this matter.

Dated: February 4, 2022                    Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
210 N. Charles Street, 26th Floor
Baltimore, MD 21201
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com


    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

/s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of February 2022, a copy of the foregoing DEFENDANT'S MOTION TO COMPEL DISCOVERY was served *via* the Court's CM/ECF system on registered parties and counsel.

 /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)