# EXHIBIT 10



U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

March 31, 2015

The Honorable John A. Boehner
Speaker
U.S. House of Representatives
Washington, DC 20515

Dear Mr. Speaker:

On May 7, 2014, you referred the matter of Lois G. Lerner, former Director, Exempt Organizations, Internal Revenue Service (IRS), to the United States Attorney's Office for the District of Columbia, after the U.S. House of Representatives voted to hold Ms. Lerner in contempt of Congress under 2 U.S.C. § 192. *See* H.R. Res. 574, 113th Cong. (2014). As you know, the House did so after Ms. Lerner, on March 5, 2014, asserted her Fifth Amendment privilege not to testify at a hearing held by the House Committee on Oversight and Government Reform. The Committee had previously determined that Ms. Lerner waived this privilege when she made an opening statement during an appearance before the Committee on May 22, 2013. *See* H.R. Rep. No. 113-415, at 11-12 (2014) (the "Committee Report").

Under 2 U.S.C. § 192, a person is guilty of contempt of Congress if he or she, "having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before . . . any committee of either House of Congress, willfully . . . refuses to answer any question pertinent to the question under inquiry." Where the House of Representatives has voted to find a witness in contempt, 2 U.S.C. § 194 directs the Speaker of the House to "certify" the matter "to the appropriate United States attorney, whose duty it shall be to bring the matter before the grand jury for its action."

Upon receipt of your referral, a team of experienced career prosecutors in this United States Attorney's Office was assigned to assess the matter. As discussed in more detail below, after extensive analysis of the facts of this matter and the applicable law, it was the team's conclusion that the Committee followed proper procedures in notifying Ms. Lerner that it had rejected her claim of privilege and gave her an adequate opportunity to answer the Committee's questions. Thus, Ms. Lerner's refusal to answer would be "willful" under Section 192 unless otherwise excused. However, the team also concluded that Ms. Lerner did not waive her Fifth Amendment privilege by making an opening statement on May 22, 2013, because she made only general claims of innocence. Thus, the Fifth Amendment to the Constitution would provide Ms.

Lerner with an absolute defense should she be prosecuted under Section 192 for her refusal to testify.

Given this assessment, we have further concluded that it is not appropriate for a United States Attorney to present a matter to the grand jury for action where, as here, the Constitution prevents the witness from being prosecuted for contempt. We respectfully inform you that we will therefore not bring the Congressional contempt citation before a grand jury or take any other action to prosecute Ms. Lerner for her refusal to testify on March 5, 2014.

## I. Factual and Procedural Background

The proceedings at issue arose from the Committee's investigation of complaints that IRS employees had delayed for partisan political reasons the approval of applications by certain organizations for status as tax-exempt entities. On May 14, 2013, the chairman of the Committee, Representative Darrell E. Issa, sent a letter inviting Ms. Lerner to testify at a hearing on May 22, 2013. After Ms. Lerner's counsel informed Committee staff members that Ms. Lerner would refuse to answer questions on Fifth Amendment grounds, Chairman Issa issued a subpoena on May 20, 2013, compelling Ms. Lerner to testify two days later.

Ms. Lerner appeared at the hearing on May 22, 2013, and gave an opening statement that included the following:

> I have not done anything wrong. I have not broken any laws. I have not violated any IRS rules or regulations, and I have not provided false information to this or any other congressional committee.
>
> And while I would very much like to answer the Committee's questions today, I've been advised by my counsel to assert my constitutional right not to testify or answer questions related to the subject matter of this hearing. After very careful consideration, I have decided to follow my counsel's advice and not testify or answer any of the questions today.

Chairman Issa responded that he believed Ms. Lerner had waived her Fifth Amendment privilege and asked her to reconsider her position on testifying. Ms. Lerner, however, continued to refuse to answer any questions, and the chairman excused her, reserving the right to recall her as a witness at a later date.

On June 28, 2013, the Committee held a business meeting at which it approved a resolution determining that the opening statement offered by Ms. Lerner constituted a waiver of her Fifth Amendment privilege. On February 25, 2014, Chairman Issa sent a letter informing Ms. Lerner that the Committee had rejected her Fifth Amendment privilege claim, and that she was expected to appear and answer the Committee's questions at a reconvened hearing on March 5, 2014. Ms. Lerner's counsel responded by letter, stating that although he and his client understood that the Committee believed that Ms. Lerner waived her rights, Ms. Lerner would

continue to assert her Fifth Amendment privilege at any subsequent hearing. The Committee, however, insisted that Ms. Lerner appear at the reconvened hearing.

When the hearing reconvened on March 5, 2014, with Ms. Lerner and her counsel present, Chairman Issa stated for the record that the Committee had voted and found that Ms. Lerner had waived her Fifth Amendment privilege by making a voluntary opening statement on May 22, 2013. *See The IRS: Targeting Americans for Their Political Beliefs, Hearing Before the H. Comm. on Oversight and Government Reform*, 113th Cong. 2 (Mar. 5, 2014) ("March 5, 2014 Hearing"). Chairman Issa added that "if Ms. Lerner continued to refuse to answer" the Committee's questions, the Committee "may proceed to consider whether she should be held in contempt." *Id.* at 3.

Chairman Issa then proceeded to ask a series of factual questions about the matters under investigation by the Committee. To each question, Ms. Lerner stated that she declined to answer based on the advice of her counsel that she had not waived her Fifth Amendment privilege. Each time Ms. Lerner provided such a response, Chairman Issa proceeded to his next question. Eventually, Chairman Issa adjourned the hearing upon determining that Ms. Lerner would not cooperate with the Committee. The May 7, 2014, referral to this Office followed.

## II. Legal Analysis

### A. The Committee Followed Proper Procedures in Notifying Ms. Lerner That It Had Rejected Her Claim of Privilege, and Thereafter Gave Her an Adequate Opportunity to Answer the Committee's Questions.

The Supreme Court has held that Section 192 "requires a criminal intent – in this instance, a deliberate, intentional refusal to answer." *Quinn v. United States*, 349 U.S. 155, 165 (1955). Thus, where a witness objects to a question, *e.g.*, by asserting a privilege, the questioning committee may either "sustain the objection and abandon the question, even though the objection might actually be without merit," or "disallow the objection and thus give the witness the choice of answering or not." *Id.* However, "unless the witness is clearly apprised that the committee demands his answer notwithstanding his objections, there can be no conviction under [Section] 192 for refusal to answer that question." *Id.* at 166.

Both Ms. Lerner's counsel and some Members of the Committee have argued that Ms. Lerner cannot be prosecuted under Section 192 because the Committee did not follow procedures designed to ensure that a witness is "clearly apprised" that her testimony is required. Specifically, they have argued that when a witness asserts a claim of privilege, the questioning committee should, with respect to each question, specifically overrule the claim, warn the witness that she will be held in contempt if she continues to refuse to answer, and then give the witness another opportunity to answer.

We agree with the view of the Committee majority, however, that Ms. Lerner was given notice that her claim of privilege had been rejected and sufficient opportunity to answer the Committee's questions after receiving that notice. In three Supreme Court cases relied upon by Ms. Lerner, the relevant Congressional committee never actually made a ruling disallowing the

claim of privilege. *See Quinn*, 349 U.S. at 166; *Emspak v. United States*, 349 U.S. 190, 202 (1955); *Bart v. United States*, 349 U.S. 219, 222 (1955). As the Court explained in *Quinn*, this meant the witness "was never confronted with a clear-cut choice between compliance and noncompliance, between answering the question and risking prosecution for contempt. At best he was left to guess whether or not the committee had accepted his objection." 349 U.S. at 166. The Court went on to state, however, that

> [j]ust as the witness need not use any particular form of words to present his objection, so also the committee is not required to resort to any fixed verbal formula to indicate its disposition of the objection. So long as the witness is not forced to guess the committee's ruling, he has no cause to complain.

*Id.* at 170.

The Supreme Court and other federal courts have accordingly reversed contempt convictions where defendants were not informed that their objections had been rejected before the relevant questions were asked, but generally affirmed them where defendants were so informed. *Compare, e.g.*, *Raley v. Ohio*, 360 U.S. 423, 437-42 (1959), and *Grossman v. United States*, 229 F.2d 775, 776 (D.C. Cir. 1956) *with Barenblatt v. United States*, 240 F.2d 875, 879-80 (D.C. Cir. 1957), *vacated and remanded on other grounds*, *Barenblatt v. United States*, 354 U.S. 930 (1957); *Davis v. United States*, 269 F.2d 357, 362-63 (6th Cir. 1959); *Wollam v. United States*, 244 F.2d 212, 215 (9th Cir. 1957), *rev'd on other grounds, Simpson v. United States*, 355 U.S. 7 (1957). In this matter, the Committee (1) informed Ms. Lerner, both in writing and in person, that it had rejected her claim of privilege; (2) warned Ms. Lerner that she could be held in contempt if she continued to refuse to answer; and (3) then posed questions to her (which she continued to refuse to answer on grounds of privilege). Thus, at the time the Committee posed the questions, Ms. Lerner was not "forced to guess" the Committee's position on her claim of privilege, and it would have been an unnecessary "form of words" for the Chairman to continue to repeat the Committee's ruling and warning for each question. Ms. Lerner's refusal thereafter to answer was accordingly "willful" under Section 192.

### B. Ms. Lerner Did Not Waive Her Fifth Amendment Privilege.

The Supreme Court has made clear that witnesses who testify before Congress are protected by the Fifth Amendment to the Constitution. *See Quinn*, 349 U.S. at 161. Thus, it is undisputed that Ms. Lerner had the right not to testify at the Committee hearing, given the possibility that her answers could be used against her in a subsequent criminal proceeding. *See, e.g., Hoffman v. United States*, 341 U.S. 479, 486 (1951); *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984); *United States v. Balsys*, 524 U.S. 666, 672 (1998). The only question is whether she waived that right by giving her opening statement on May 22, 2013.

In finding that Ms. Lerner waived her Fifth Amendment privilege, the Committee focused on her assertions that she had done nothing wrong, had broken no laws, had violated no IRS rules, and had provided no false information to Congress. Citing the Supreme Court's decisions in *Brown v. United States*, 356 U.S. 148, 154-55 (1958), and *Mitchell v. United States*,

526 U.S. 314, 321 (1999), the Committee found that these "four specific denials" amounted to voluntary testimony about the subject matter of the hearing, which Ms. Lerner could not then refuse to be questioned about. *See* Committee Report, at 11, 36-37.

We respectfully disagree with this conclusion, however, because case law establishes that Ms. Lerner's general denials of wrongdoing did not amount to "testimony" about the actual facts under the Committee's review. In *Brown*, the defendant in a civil immigration proceeding voluntarily took the stand and gave substantive testimony on direct examination, but refused to answer pertinent questions about that testimony on cross-examination. 356 U.S. at 150-52. The Court upheld the defendant's contempt conviction for that refusal, noting that a party may not put a "one-sided account of the matters in dispute" before the trier of fact, which could not be tested by adversarial cross-examination. *Id.* at 155. *See also Mitchell*, 526 U.S. at 321 (noting that "a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details").

Where witnesses do not offer *substantive* testimony, however, and instead merely make general denials or summary assertions, federal courts have been unwilling to infer a waiver of the Fifth Amendment privilege. *See, e.g., Isaacs v. United States*, 256 F.2d 654, 656-57, 660-61 (8th Cir. 1958) (witness before grand jury who repeatedly stated that he had committed no crime did not waive his Fifth Amendment privilege); *Ballantyne v. United States*, 237 F.2d 657, 665 (5th Cir. 1956) (concluding that "the United States Attorney could not, by thus skillfully securing from appellant a general claim of innocence, preclude him from thereafter relying upon his constitutional privilege when confronted with specific withdrawals"); *United States v. Hoag*, 142 F. Supp. 667, 669 (D.D.C. 1956) (witness who generally denied being a spy or saboteur before Congressional committee did not waive Fifth Amendment privilege).

In her opening statement before the Committee, Ms. Lerner offered no account or explanation of what occurred and revealed no facts about the matters under the Committee's review. Instead, she made general assertions lacking substantive content. She did not purport to explain why she believed she was innocent or why any information she had previously provided was not false. This matter therefore appears materially indistinguishable from cases like *Isaacs*, *Ballantyne*, and *Hoag*, in which defendants were held not to have waived Fifth Amendment protection simply by asserting general innocence or even denying guilt of specific offenses.

There is likely an additional barrier to finding that Ms. Lerner waived her Fifth Amendment privilege through her general denials of wrongdoing. Unlike the civil defendant in *Brown* and defendants in criminal cases (who similarly subject themselves to wide-ranging cross-examination if they voluntarily take the stand), Ms. Lerner was an ordinary witness who had been compelled to testify by subpoena. The Supreme Court has held that "where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him." *McCarthy v. Arndstein*, 262 U.S. 355, 359 (1923); *see also, e.g., United States v. Powell*, 226 F.2d 269, 276 (D.C. Cir. 1955); *accord Rogers v. United States*, 340 U.S. 367, 368, 373 (1951). Ms. Lerner did not testify to any incriminatory facts during her opening statement but, to the contrary, asserted her innocence. Thus, like the defendant in *Arndstein*, she had the right to "stop[] short" after making her self-exculpatory statement.

The Committee found that Ms. Lerner's opening statement was the equivalent of the "voluntary" testimony at issue in *Brown*, presumably because she did not have to make the statement at all. Although in theory this could render the *Arndstein* line of cases inapplicable, that conclusion is doubtful. Ms. Lerner was compelled by subpoena to appear before the Committee on May 22, 2013 after she declined an invitation to appear voluntarily and informed the Committee that she would invoke her Fifth Amendment privilege. Courts have not found waiver under such circumstances. *See, e.g., Hoag*, 142 F. Supp. at 669-71.

**C. A United States Attorney Retains Discretion To Decline To Present a Matter to the Grand Jury Under 18 U.S.C. § 194 When He Determines that a Witness Is Shielded From Prosecution by the Constitution.**

Because Ms. Lerner did not waive her Fifth Amendment privilege before refusing to answer the Committee's questions, a conviction under Section 192 for that refusal would be unconstitutional. The question thus arises whether Section 194 requires this matter to be presented to a grand jury even though no prosecution can constitutionally proceed. We have concluded that it does not.

This conclusion follows from the Justice Department's longstanding interpretation of Section 194 as preserving the exercise of prosecutorial discretion in the Executive Branch. It has long been the position of the Department, across administrations of both political parties, that we will not prosecute an Executive Branch official under the contempt of Congress statute for withholding subpoenaed documents pursuant to a presidential assertion of executive privilege. The fullest explanation of the legal basis for the Department's position was provided during the Reagan Administration by Assistant Attorney General for the Office of Legal Counsel Theodore Olson. *See Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (1984) (the "1984 Opinion"). Although the 1984 Opinion was issued to address the specific question of contempt citations made against Executive Branch officials asserting executive privilege, the opinion addressed the more general question of whether the United States Attorney is required to refer every contempt of Congress citation to a grand jury. As to that question, the opinion concluded that "as a matter of statutory construction strongly reinforced by constitutional separation of powers principles, we believe that the United States Attorney and the Attorney General, to whom the United States Attorney is responsible, retain their discretion not to refer a contempt of Congress citation to a grand jury." *Id.* at 128.

The 1984 Opinion reached this conclusion for several reasons. First, the opinion noted that the Department had previously taken the position, in a case where the President's executive privilege was not at issue, that it was not required to refer a contempt-of-Congress matter to a grand jury. *Id.* at 119-20. Second, the opinion noted that a number of judicial decisions implicitly recognized that a United States Attorney retained discretion not to make a referral to a grand jury, despite the apparently mandatory language of Section 194. *Id.* at 120-22. The opinion explained that the cited cases indicate that "prosecutorial discretion serves a vital purpose in protecting the rights of the accused in contempt cases by mitigating the otherwise stern consequences of asserting a right not to respond to a congressional subpoena." *Id.* at 122. Third,

the opinion cited the common-law doctrine of prosecutorial discretion, which precludes an interpretation that the statute requires automatic referral. *Id.* Because the "general rule is that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case[,]'" the opinion noted that "courts, as a matter of law, do not ordinarily interpret a statute to limit that discretion unless the intent to do so is clearly and unequivocally stated." *Id.* Finally, the opinion noted that interpreting Section 194 to require referral to a grand jury would raise serious constitutional problems in light of separation-of-powers principles. *Id.* at 124-25. The opinion cited cases in which courts had refused to issue, or overturned on appeal, orders purporting to compel United States Attorneys to prosecute individuals. *Id.* at 125-26. Noting the Supreme Court's admonition that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the opinion further stated that "[a] legislative effort to require prosecution of a specific individual has many of the attributes of a bill of attainder and would seem to be inconsistent with many of the policies upon which the Constitution's prohibition against bills of attainder was based." *Id.* at 126-27 (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)).

Thus, for at least three decades it has been the Department's position that Section 194 does not eliminate a United States Attorney's traditional prosecutorial discretion not to bring a specific matter before a grand jury. And, in light of the Department's criminal charging policy, which provides that a federal prosecutor should "commence or recommend Federal prosecution" of a person only "if he/she believes that the person's conduct constitutes a Federal offense and that the admissible evidence will probably be sufficient to obtain and sustain a conviction," *see* United States Attorneys' Manual § 9-27.220A, we have concluded it would not be proper to commence grand jury proceedings against a witness whose prosecution for contempt is barred by the Constitution.

## III. Conclusion

We wish to assure you that the Department of Justice does not question the authority of Congress "to summon witnesses before either House or before their committees," or "to pass laws 'necessary and proper' to carry into effect its power to get testimony." *See Adams v. Maryland*, 347 U.S. 179, 183 (1954) (citing U.S. Const. art. I, § 8). Thus, in appropriate circumstances, a United States Attorney's Office will refer to a grand jury under Section 192 witnesses who contumaciously withhold testimony or other information that Congress has legitimately sought to compel in the exercise of its legislative or oversight responsibilities. Because, however, the authority of any branch of the United States government to compel witness testimony is limited by the protections of the Constitution, and Ms. Lerner did not waive those protections in this matter, the United States Attorney's Office will not bring the instant contempt citation before a grand jury.

Sincerely,

Ronald C. Machen Jr.
United States Attorney