**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 21-cr-670** |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL**

The Defendant Stephen K. Bannon's Motions to Compel, ECF Nos. 26 and 28, reveal a fundamental misunderstanding of the stages of pre-trial litigation, the principles of criminal discovery, and what will be before the jury in his criminal trial.  As the Government has repeatedly advised him, the Government has exceeded its discovery obligations and already has provided the Defendant with all discoverable materials in its possession, custody, or control.  The Defendant's motions should be denied.

I.      **PROCEDURAL BACKGROUND**

On November 12, 2021, a federal grand jury in the District of Columbia returned an indictment charging the Defendant with two counts of contempt of Congress, in violation of 2 U.S.C. § 192, for refusing to comply in any way with a congressional subpoena commanding the Defendant to produce documents and appear before the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"). He made his initial appearance before U.S. Magistrate Judge Robin M. Meriweather on November 15, 2021.

Beginning on November 18, 2021—the date of his first appearance before this Court—the Government has provided the Defendant with discovery that has met and exceeded its obligations. This includes all testimony and exhibits presented to the grand jury in this matter; reports of all

witness interviews conducted during the Government's investigation, regardless of whether the witness will be called at trial; all documents that the Committee voluntarily produced to the Government during the investigation; and all records obtained pursuant to grand jury subpoenas and a court order issued pursuant to 18 U.S.C. § 2703(d).  *See* Ex. 1 (discovery index).  The Government has produced all discoverable material of which, to date, it is aware or that is in its possession, custody, or control, as well as material for which no discovery obligation exists.

The Defendant's motions to compel material that the Government does not have, or to which he is not entitled, reflect a misunderstanding of the controlling principles of criminal discovery, including by seeking substantial materials unrelated to any proof of guilt or innocence at trial.  Accordingly, the Government lodges this omnibus opposition, outlining the elements the Government must prove at trial, reviewing the applicable law controlling criminal discovery, and addressing each of the Defendant's specific requests and explaining why they are meritless.

## II.   THE CHARGES

Under Section 192, at trial, the Government will be required to prove to the jury the following elements: 1) that the Defendant was "summoned as a witness . . . to give testimony or produce papers"; 2) that the subpoena was issued "by the authority of [the Select Committee] upon [a] matter under inquiry"; 3) that the information sought was "pertinent to the question under inquiry"; and 4) that the Defendant "willfully [made] default."  2 U.S.C. § 192.

In his motion, the Defendant lists several additional "elements" he claims that the Government must prove at trial.  ECF No. 28 at 3-4.  Specifically, he claims the Government has to prove beyond a reasonable doubt whether the Committee's authority "has been conferred in accordance with the law," whether "Congress had the constitutional power to investigate the matter at issue and make the specific inquiry," and whether the Committee was following its rules.  *Id.* at

4. The Defendant's assumption that these are issues to be decided by the jury, however, is incorrect. The scope of Congress's and the Committee's authority, whether under the Constitution or some other law or rule, is a question of law, not fact. Questions of law are for the Court to decide, not the jury at trial. *United States v. Gaudin*, 515 U.S. 506, 513 (1995) (noting that the jury in a criminal case does not have the power to decide "pure questions of law") (citing *Sparf v. United States*, 156 U.S. 51, 105-106 (1895)). Indeed, the Government can find no congressional contempt case where a jury was asked to pass on these questions. Accordingly, while the Defendant certainly can challenge the indictment on any of these grounds, he must do so with the Court in advance of trial. *See* Fed. R. Crim. P. 12(b).

## III.     LEGAL STANDARDS GOVERNING CRIMINAL DISCOVERY

Despite the Government's full discovery, the Defendant has moved to compel production of substantial additional materials, claiming they are subject to discovery under Federal Rule of Criminal Procedure 16(a)(1)(E), *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the Department of Justice Manual, and Local Rule of Criminal Procedure 5.1(b). ECF No. 28 at 5-8 ("Applicable Discovery Principles"). Because the Defendant's motions reflect a misunderstanding of the parameters of criminal discovery, the Government reviews those principles below.

### A.     Federal Rule of Criminal Procedure 16(a)(1)(E)

Rule 16 does not entitle a criminal defendant to open-file discovery. *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017) ("Rule 16 does not authorize a blanket request to see the prosecution's file." (quoting *United States v. Maranzino*, 860 F.2d 981, 985-86 (10th Cir. 1988) (internal quotation marks omitted)). Instead, under Rule 16(a)(1)(E), the government must disclose case-related records in its "possession, custody, or control" in three circumstances: when

the record is material to preparing the defense; when the government intends to use the record in its case-in-chief; or when the record belongs to or was obtained from the defendant. Fed. R. Crim. Pro. 16(a)(1)(E).

Here, the Defendant argues the additional information he seeks is discoverable under Rule 16(a)(1)(E) because it is "material to preparing the defense." *See* ECF No. 28 at 5-6 (arguing for a broad reading of "material"). Under Rule 16, however, information is only material to the defense if it is related to the Defendant's "response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). In other words, it must relate to establishing or rebutting proof of his guilt at trial. Information is not "material" to the defense under Rule 16 if it relates only to some other attack on the prosecution or indictment. *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000) (finding Rule 16 did not entitle the defendant to discovery relating to his double jeopardy claim because the claim related "not to refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution"). Further, to the extent that the Defendant's demands call for the Government's internal deliberations or work product, Rule 16 expressly bars discovery of this material under Rule 16(a)(1)(E). *See* Fed. R. Crim. P. 16(a)(2) (Rule 16(a)(1)(E) "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."); *see also United States v. Safavian*, 233 F.R.D. 12, 20 (D.D.C. 2005) ("[T]he internal deliberative processes of the Department of Justice, the FBI, and the GSA-OIG are irrelevant to the preparation of a defense.").

In addition, Rule 16(a)(1)(E)'s requirements apply only to information that is "within the government's possession, custody, or control." The Defendant asserts that the "government"

includes "officials, members, employees, and staff of the U.S. House of Representatives." ECF No. 28 at 18. He is incorrect. Even where courts have applied the broadest definition of "government," they have also found "it is settled that the government generally need not produce documents that are in the possession, custody, or control of a separate branch of government such as Congress." *United States v. Libby*, 429 F. Supp 2d 1, 7 (D.D.C. 2006) (internal citations omitted); *see also Safavian*, 233 F.R.D. at 14 ("[The government] does not, however, include a committee of the United States Senate (or the House of Representatives) because the Congress is a separate branch of the government and was not intended by the Rules writers to be included within Rule 16."). Finally, information is deemed in the prosecution's "possession, custody, or control," and thus subject to disclosure under Rule 16, if the government either "knows or through due diligence could know" of the information's existence. *Safavian*, 233 F.R.D. at 14-15.

## B. *Brady*, *Giglio*, and Local Rule of Criminal Procedure 5.1(b)

The Supreme Court's decision in *Brady* requires the Government to produce to the Defendant any information favorable to the Defendant that is "material to either guilt or punishment." *Brady*, 373 U.S. at 87. *Brady* material includes information relevant to the impeachment of government trial witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence . . . falls within the *Brady* rule."); *Giglio*, 405 U.S. at 154-55. Information is material for *Brady* purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. Local Rule 5.1(b) articulates several categories of information subject to disclosure under *Brady*. *See* Local Rule 5.1(a). It nowhere purports to expand the Government's *Brady* obligations. Nor could it. *See generally* 28 U.S.C. § 2072(b); Fed. R. Crim. P. 57(a)(1).

Although the Defendant accurately reports the basic principles of *Brady*, he fails to acknowledge that several of the same limits that apply to Rule 16 discovery apply to discovery under *Brady*.  Like Rule 16, the Government's *Brady* obligations do not entitle the Defendant to open-file discovery.  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy.").  Instead, favorable information is only subject to disclosure under *Brady* if it relates to the Defendant's guilt or innocence at trial.  Information relevant to mounting a collateral attack or challenge to the indictment, such as those the Defendant may wish to raise under Federal Rule of Criminal Procedure 12, is not subject to discovery under *Brady*.  *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997) (finding *Brady* material is "not material that would only support jurisdictional challenges, claims of selective prosecution, or any other collateral attacks on the indictment, because prevailing on those claims would not prove defendant free from fault, guilt or blame").  Second, like Rule 16, *Brady* does not entitle the Defendant to the Government's internal deliberations and evaluation of the law or facts of the case.  *United States v. Naegele*, 468 F. Supp. 2d 150, 155 (D.D.C. 2007) ("To the extent that defendant seeks documents or records reflecting the internal deliberations of the Department of Justice leading to the decision to seek an indictment, he is not entitled to them under *Brady*, even if some prosecutor 'expressed doubts' that defendant's conduct 'amounts to a crime or warrants prosecution.'").  Finally, like Rule 16, records held by the U.S. Congress are not within the possession of the prosecution team for purposes of its *Brady* obligations.  *United States v. Trie,* 21 F. Supp. 2d 7, 25 n. 17 (D.D.C. 1998) ("The Congress is not an 'agency,' and the DOJ has no obligation under *Brady* to disclose information in the possession of Congress that is not also in the possession of the DOJ or [another Executive Branch agency].").  Moreover, while the Government certainly has an obligation to search for *Brady* material in the files of any agencies closely aligned

with the prosecution, *Brady* does not require the Government to go on a fishing expedition in far-flung government files that it has no reason to believe contain exculpatory material. *United States v. Brooks*, 966 F.2d 1500, 1504 (D.C. Cir. 1992) ("As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort.").

### C.    Department of Justice Manual

Finally, the Defendant cites the Justice Manual (formerly titled the U.S. Attorney's Manual or USAM) as a source of the Government's disclosure obligations in this case. ECF No. 28 at 7-8 (citing Justice Manual § 9-5.001). The Government certainly takes its obligations under internal Department policies seriously. However, those internal policies are irrelevant to the Defendant's motions to compel. The Justice Manual explicitly states that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Justice Manual § 1-1.200.[1]  And the D.C. Circuit has made clear that "we do not believe the general guidelines established by the Manual are judicially enforceable." *United States v. Kember*, 648 F.2d 1354, 1370 (D.C. Cir. 1980); *see also United States v. Williams*, 827 F.3d 1134, 1152 n.7 (D.C. Cir. 2016) (finding a policy in the Manual "is not judicially enforceable in a criminal case" (citing *Kember*)); *United States v. Blackley*, 167 F.3d 543, 549 (D.C. Cir. 1999) ("[V]iolations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant no enforceable rights.").

---

[1] *Available at* https://www.justice.gov/jm/jm-1-1000-introduction#1-1.200 (last accessed Feb. 25, 2022).

IV.    **ARGUMENT**

The Defendant's motions make broad, unsupported, and insufficient claims that he is entitled to additional discovery in this case.  His arguments are without merit and all of his requests should be denied.

A.    **The Defendant's Requests for Information that is Not Discoverable Under Rule 16 or *Brady* Should be Denied.**

In his motions, the Defendant demands several categories of information relating to the Government's internal deliberations and investigative steps, as well as impeachment information for individuals that may never be trial witnesses.  The information he seeks does not relate to proof of the Defendant's guilt or innocence at trial and, therefore, does not fall within the Government's Rule 16 or *Brady* obligations.  The Defendant's requests should be denied.

1.    **The Defendant is Not Entitled to the Government's Analysis of Whether and Under What Circumstances The Defendant and Others May Be Subject to Prosecution Under 2 U.S.C. § 192.**

The Defendant moves to compel disclosure of information in the Government's possession "regarding the factors to be considered in determining whether to bring a civil or criminal action or other sanction for an alleged failure to comply with a Congressional subpoena" and "regarding the applicability of the advice of counsel defense to an alleged failure to comply with a Congressional subpoena."  ECF No. 28 at 20-21.  The Defendant elaborates by asserting that "[w]e understand that the files at main Justice, the U.S. Attorney's Office, and the White House all contain documents analyzing the assertion of privilege in response to a congressional subpoena, and determining that a prosecution of someone in Mr. Bannon's position cannot be sustained." ECF No. 28 at 21.  He then cites a number of internal Department of Justice records that discuss

various issues relating to subpoenas directed at Executive Branch officials.  *Id*. at 21-22.[2]

The Defendant claims this material is discoverable because it relates to his intent, an element of the offense.  *See, e.g.*, *id*. at 20 ("The Government has an obligation to disclose information that tends to negate the intent element of this offense.").  As outlined in the Government's Motion in Limine to Exclude Evidence or Argument Relating to Good-Faith Reliance on Law or Advice of Counsel, ECF No. 29, the Defendant's erroneous reliance on the law is not a defense and cannot rebut evidence that he deliberately ignored the subpoena's clear instructions.  Even if it were, however, the Defendant's requests are not for information related to what was in his mind at the time he defaulted.  Yet, that is the only information that is even potentially relevant to the Defendant's intent were reliance on the law a defense.  *See, e.g.*, *United States v. Libby*, 475 F. Supp 2d 73, 87-88 (D.D.C. 2007) (finding that, without the defendant's testimony that certain issues were "in fact of concern" to him during the relevant time period, proffered state-of-mind evidence "had no relevance to this case"); *United States v. Passaro*, 577 F.3d 207, 220 n.7 (4th Cir. 2009) (excluding defendant's use of a Department of Justice document because "the record lacks any evidence that [the defendant] read or knew of, let alone relied" on it).  Instead, the Defendant's requests are for attorney work product or protected attorney-client material relating to the Department of Justice's evaluation of the law and available defenses under Section 192.  As described above, the Defendant is not entitled to this material under Rule 16 or *Brady*.  *Supra* Section III.A (*citing* Fed. R. Crim. P. 16(a)(2); *Safavian*, 233 F.R.D. at 20); Section III.B (*citing Naegele*, 468 F. Supp. 2d at 155).

---

[2] The Defendant makes requests for the Government's internal deliberations at other places in his motions as well.  *See, e.g.*, ECF No. 28 at 18 (asking for Government records "regarding what constitutes default by a witness in response to a subpoena, and/or what does not constitute a default by a witness in response to a subpoena").  Those requests are meritless for the same reasons discussed here.

In any event, the Defendant is simply wrong about what the Government's files contain. The Government is aware of no internal opinion or analysis that purports to excuse a private citizen from complying with a congressional subpoena because he used to work in the Executive Branch and a former President informed him of his belief that unidentified materials or information may be "potentially protected" by privilege.  *See* Ex. 2.  The Defendant was not subpoenaed in his capacity as a current or former Executive Branch official and the former President never properly asserted a privilege over any information sought by the subpoena directed at the Defendant.  His continued assertion that he hold a similar position to any of the officials referenced in the material he cites is completely without merit.

> **2.    The Defendant's Motion to Compel Production of the Government's Investigative Deliberations and Steps Relating to Robert Costello Should be Denied.**

The Defendant moves to compel disclosure of the Government's internal investigative deliberations and ex parte materials submitted to the court under 18 U.S.C. § 2703(d) that relate to toll records, email header information, and phone and email subscriber data for accounts believed to be used by Robert Costello that were obtained during the investigation.  ECF No. 26 at 17-18. To justify his request, the Defendant claims the material is necessary to determine "the risk of harm from the Government's actions," presumably in obtaining the toll and email header data, and to "consider and seek any appropriate remedies or sanctions."  *Id*. at 17.  Although somewhat unclear, the Defendant appears to be claiming that the Government has violated the attorney-client privilege, and that he needs discovery to investigate the extent of the Government's violation.  *See e.g.*, *id*. at 15-17 (reviewing caselaw governing assertions of attorney-client privilege and Robert Costello's claims regarding his communication practices).[3]  The Government, however, has never

---

[3] The Defendant also suggests Department of Justice approval was required to issue

obtained any records potentially protected by attorney-client privilege and neither Rule 16 nor *Brady* entitle the Defendant to go on a fishing expedition in the Government's files in the hopes of finding some misconduct.  His requests should be denied.

As an initial matter, the Government has never obtained, or even attempted to obtain, privileged material, as it informed the Defendant by letter on January 7, 2022, ECF No. 26-2.  He appears to concede as much, because, despite his obligation to assert with specificity what he believes to be privileged, he does not identify a single item of privileged information within the records the Government has obtained.  *See United States v. Legal Servs. for New York City*, 249 F.3d 1077, 1081–82 (D.C. Cir. 2001) ("[T]he burden of demonstrating the applicability of the privilege lies with those asserting it.  That burden requires a showing that the privilege applies to each communication for which it is asserted." (internal citations omitted)).

Instead, the Defendant misleadingly suggests that the Government has obtained or tried to obtain the content of text messages and emails between Mr. Costello and the Defendant or Mr. Costello and others by referring generally to the records as "telephone records" and "emails."  *See* ECF No. 26 at 3-4 (asserting without specificity that the Government sought "records for Mr. Costello's emails" and that "[t]elephone record requests included SMS (text-messaging) information as well").  What the Defendant knows—because he has all of the data collected by the Government[4]—but does not state with any clarity for the Court is that none of the information the

_____

subpoenas for this information.  ECF No. 26 at 13-14.  The guidelines he cites to support this claim, however, apply to subpoenas issued to attorneys directly, not to subpoenas directed at third-party phone or email service providers.  *See* Justice Manual § 9-13.410.  In any event, like other parts of the Justice Manual, the section the Defendant cites makes clear that it creates no enforceable rights.  *Id*. § 9-13.410(F).

[4] The Defendant asserts that he could not provide any of the records he claims were improperly obtained to the Court for the Court to review because the "majority of the records provided were designated as 'Sensitive' by Government counsel; so they are not being attached to this public filing . . . .  The documents are too voluminous to redact."  ECF No. 26 at 1 n.1.

Government obtained includes the content of any communications.  Instead, the Government obtained the following categories of data relating to email and phone accounts believed to be used by Robert Costello, which consists of third-party business records and the type of data that would typically appear on a privilege log:

1) Email header information (which does not include the content or subject line of emails) for one of Robert Costello's personal email accounts covering the time period September 22, 2021—the date the Committee first reached out to Robert Costello about the Defendant's subpoena—and October 21, 2021—the date that the U.S. House of Representatives referred the Defendant for contempt.

2) Toll records (which include the dates, times, sender number, and recipient number of phone calls and text messages, but no content of any calls or text messages) for phone numbers believed to be used by Mr. Costello covering the time period September 1, 2021, to October 21, 2021.

3) Subscriber information (which includes, names, addresses, recent login dates, recent login times, recent login IP addresses, payment source information, and other identifiers associated with the account) for phone and email accounts believed to be used by Mr. Costello.

With the exception of what the Defendant voluntarily provided to the Government during the investigation in this matter, the Government has not obtained or attempted to obtain any other records relating to any phone or email accounts held or used by Mr. Costello or any other attorneys.

Obtaining Mr. Costello's toll records, email header information, and subscriber information for the time period of September through October 21, 2021, was in no way improper. As outlined in the Government's motion in limine regarding advice of counsel, ECF No. 29, while any legal advice Mr. Costello provided the Defendant to refuse the subpoena is irrelevant in the face of the subpoena's demands, he is certainly a witness to the Defendant's deliberate decision to

---

Contrary to the Defendant's claims, only 11 pages within the materials relating to Robert Costello's phone and email accounts were designated "Sensitive" because they contained what appeared to be personal identifying information as defined under Fed. R. Crim. P. 49.1.  *See* Ex. 1 (highlighted lines).

ignore the subpoena's requirements.  Mr. Costello served as the Committee's point of contact for the Defendant, sent letters to the Committee on the Defendant's behalf, and communicated with former President Trump's attorney regarding the subpoena.  As he informed the Government during his interviews, he warned the Defendant to "beware" in not complying with the subpoena. ECF No. 28-4 at 13.

Further, none of the records outlined above contain information potentially protected by the attorney-client privilege, and there is no general prohibition on obtaining non-privileged records that relate to an attorney.  The attorney-client privilege only protects confidential communications between a client and his attorney made for the purpose of obtaining or providing legal advice.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014) (citations omitted).  The privilege is construed narrowly because it "obstructs the search for truth." *United States v. Singhal*, 800 F. Supp. 2d 1, 6 (D.D.C. 2011) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).  It is black-letter law, therefore, that the attorney-client privilege protects the substance of the communication, not the mere fact that the communication occurred.  *See, e.g.*, *United States ex rel. Barko v. Halliburton Company*, 74 F. Supp. 3d 183, 189 (D.D.C. 2014) ("[T]he mere fact of consultation with a lawyer about an issue is generally neither privileged nor protected."); *United States v. Suggs*, 531 F. Supp. 2d 13, 23 n.16 (D.D.C. 2008) ("It is the substance of the communications which is protected . . . not the fact that there have been communications." (quoting *United States v. Kendrick*, 331 F.2d 110, 113 (4th Cir. 1964)) (internal quotation marks omitted) (alteration in original))); *In re Grand Jury Proceedings-Gordon*, 722 F.2d 303, 308 (6th Cir. 1983) ("The mere 'fact of consultation including the component facts of . . . scope or object of employment' is not privileged." (alteration in original) (citations omitted)); *United States v. Weger*, 709 F.2d 1151, 1154 (7th Cir. 1983) ("[T]he privilege only 'prohibits the disclosure of the

substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice.'" (citations omitted)); *United States v. Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) ("The privilege does not extend, however, beyond the substance of the client's confidential communications to the attorney.").   In accordance with this well-established principle, courts consistently have found that records showing only the dates and times of contacts between an attorney and a client are not privileged because they do not reveal any confidential communications.  *See, e.g.*, *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352-53 (11th Cir. 1982) (finding a subpoena calling for records of dates, places, and times of meetings and communications, not the content of those communications, did not seek information protected by the attorney-client privilege); *Colton v. United States*, 306 F.2d 633, 636 (2d Cir. 1962) (finding questions posed to an attorney regarding the "date and general nature of the legal services performed . . . do not call for any confidential communication"); *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 350 (D. Mass. 1998) ("[T]he fact of the attorney-client relationship and the dates on which services were performed are not necessarily privileged.").

Because the records the Government has obtained include only the date and time of contacts between Mr. Costello and other individuals, and not the content of any communications, the records do not reveal any potentially privileged information.  Indeed, because they contain no content, the records do not even reveal whether any one phone call or email related to a privileged communication in the first place.  *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 294 (D.D.C. 2019) ("Communications from attorneys to their clients are covered only 'if they rest on confidential information obtained from the client.'" (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984))); *Suggs*, 531 F. Supp. 2d at 23 n.16 ("[C]ommunications that are not relevant to a client's legal problem are not shielded from

disclosure by the attorney-client privilege." (citation omitted)).

The nature and steps of the investigation leading to the charges in this case are irrelevant to the Defendant's factual guilt or innocence at trial—i.e., whether he deliberately refused to comply with a subpoena—and are not, therefore, discoverable under Rule 16 or *Brady*.  Unable to rely on these traditional avenues of criminal discovery, the Defendant must identify some authority on which he is entitled to the information for which he moves.  He identifies none.  Indeed, the Defendant concedes that he cannot even identify anything to which the material may be relevant. *See* ECF No. 26 at 1 n.2 (admitting he "cannot evaluate the basis(es) for a motion seeking a substantive remedy or sanctions unless and until" he receives the discovery).  The Defendant's claim that the Government has intruded on the attorney-client privilege being no more than mere speculation, a simple desire to look for misconduct is not enough to warrant discovery.  His motion for information relating to the Government's investigative steps and decisionmaking relating to Robert Costello must be denied.  *See Apodaca*, 287 F. Supp. 3d at 41 (denying defendant's request for all Title III intercepts of the defendant and his co-conspirators where the only support for the request was mere speculation that the government had not properly minimized).

**3.     To the Extent *Giglio* Material Exists in the Government's Possession Relating to Potential Trial Witnesses, the Government Has Provided It.**

The Defendant moves to compel production of "information that tends to show the bias of any witness against him," including statements made by various members of Congress and the Executive Branch.  ECF No. 28 at 23.  He also requests records relating to various offices and individuals' motives within the U.S House of Representatives in referring him for criminal contempt and records that may show member's bias or "conflict of interest."  *Id*. at 23-24.

As summarized above, the Government understands its obligations to produce impeachment information for witnesses it may call at trial, including information tending to show

their bias, to the Defendant.  *Supra* Sec. III.B (citing *Bagley*, 473 U.S. at 676; *Giglio*, 405 U.S. at 154-55).  The Government has not identified its trial witnesses yet.  Nevertheless, to the extent any impeachment information may exist relating to potential trial witnesses, the Government has produced everything of which it currently is aware, including statements made by Committee members and staff that are in the Government's possession.  Should the Government come into possession or become aware of additional impeachment information relating to its trial witnesses, it will produce it as soon as practicable in advance of the July 8, 2022, deadline the Defendant requested, ECF No. 22-1 at 2, and that the Court set, ECF No. 25 at 2, for the production of all *Brady* material.  The Defendant's motion to compel production of impeachment information should be denied as moot.

To the extent the Defendant is instead seeking impeachment material relating to other individuals who may be witnesses to the charged conduct, but are not government trial witnesses, *see* ECF No. 28 at 18 ("The Government must inquire whether witnesses are biased . . . .  This is not limited to trial witnesses."), his motion also must be denied.  As outlined above, the Government's *Brady* obligations, which include impeachment information, extends to favorable information relating to guilt or innocence at trial.  *Supra* Sec. III.B.  Discoverable impeachment information, therefore, is that which relates to the credibility of government trial witnesses, not just any witness who may have knowledge of the charged offense.  *See United States v. Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) (finding no *Brady* violation where the government did not disclose impeachment information about a defense witness because "[i]mpeaching the testimony of their own witness is not favorable to the defense, and does not raise the probability of a different verdict") (citing *Brady*, 373 U.S. at 87; *Bagley*, 473 U.S. at 682); *United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) (holding that *Giglio* was inapplicable to a witness the government did

not call as a witness).  The Defendant also suggests that impeachment information relating to members and staff of Congress that initiated the contempt referral must be disclosed.  ECF No. 28 at 18-19 (describing individuals from whose actions he claims "this criminal case was a direct result" as those for whom the Government must provide bias information).  He is incorrect. Congress sits in no better position than a complainant, and the circumstances in which a criminal investigation was initiated is irrelevant to whether the Defendant actually committed the offense. *Cf. Safavian*, 233 F.R.D. at 20 ("[T]he Court cannot conceive of how the reasons for the initiation of the GSA-OIG investigation of Mr. Safavian, the possibility that the anonymous complainant is a serial complainant who had less than honorable motivations in making the complaint . . . can be material to any defense to the false statements of [sic] obstruction charges.").

### B.     The Defendant's Requests for Material Outside the Government's Possession, Custody, or Control Must Be Denied.

The Defendant seeks to compel production of voluminous materials in the possession of the Committee, the U.S. House of Representatives, and their members, including information regarding the establishment, membership, staffing, budget, and authority of the Committee; information regarding the Defendant, the issuance of a subpoena to him, and his compliance; drafts of the Committee's official correspondence; the Committee's internal deliberations regarding whether the Defendant was in contempt; and information relating to members' opinions and views of the Defendant.  ECF No. 28 at 17-18, 20-21, 23-24.  The Government has already provided the Defendant with all records it has obtained from Congress, and his motion should be denied as moot.  Even to the extent that additional materials may exist in the possession of the Committee or the U.S. House of Representatives, they are not part of the "government" for discovery purposes. *See Supra* Sec. III.A (citing *Libby*, 429 F. Supp 2d at 7; *Safavian*, 233 F.R.D. at 14); Sec. III.B (citing *Trie,* 21 F. Supp. 2d at 25 n. 17).  The Government cannot be required, therefore, to retrieve

from a separate branch of government any information for the Defendant, even to the extent it may exist.

## C.     The Defendant Has Failed to Demonstrate Particularized Need for Secret Grand Jury Material.

The Defendant's motion requests a broad range of grand jury materials and "grand jury-related information," including all documents and information obtained in response to a grand jury subpoena, all documents and information presented to the grand jury, copies of all subpoenas issued by the grand jury, and documents and information reflecting how the grand jury was charged.  ECF No. 28 at 9-10; ECF No. 26 at 17-18.  As an initial matter, the Government has already provided the Defendant all records obtained in response to grand jury subpoenas and all witness testimony and exhibits presented to the grand jury.  His requests for any information falling within those two categories are thus moot.  In addition, all but three of the Defendant's remaining requests seek information relating to the Government's "consideration" of what to present to the grand jury, not actual grand jury material.  *See* ECF No. 28 at 9-10 (items 27-29).  As outlined above, neither Rule 16 nor *Brady* requires the Government to disclose its internal deliberations and this request should be denied.  *Supra* Sec. III.A (citing Fed. R. Crim. P. 16(a)(2); *Safavian*, 233 F.R.D. at 20), Sec. III.B (citing *Naegele*, 468 F. Supp. 2d at 155).  The Defendant's three remaining requests for grand jury material—specifically, the grand jury charge, copies of all grand jury subpoenas, and any information used in support of subpoenas (which the government assumes to be a reference to subpoena attachments),[5] ECF No. 28 at 9 (items 3-4, 24); ECF No. 26 at 17 (items 1-2)—also must be denied, because the Defendant has failed to meet his burden to show a

---

[5] The Defendant also asks for all "investigative requests" and affidavits.  Other than grand jury subpoenas, the Government filed no affidavits in this matter and obtained only one order under 18 U.S.C. § 2703(d), which it addresses in Section IV.A.2.

particularized need.

"Federal Rule of Criminal Procedure 6(e) 'makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule.'" *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) (citation omitted).  Accordingly, to pierce the secrecy of grand jury proceedings, the Defendant must demonstrate a particularized need for the material.  *United States v. Saffarinia*, 424 F. Supp. 3d 46, 81 (D.D.C. 2020); *Apodaca*, 287 F. Supp. 3d at 47; *United States v. Wilkerson*, 656 F. Supp. 2d 22, 34 (D.D.C. 2009) ("Fed. R. Crim. P. 6(e)(3)(E)(i) allows district courts to authorize disclosure of grand jury matters "in connection with a judicial proceeding" if the party requesting disclosure demonstrates a "particularized need" or "compelling necessity" for the testimony.").  "[D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure."  *United States v. Borda*, 905 F. Supp. 2d 201, 204 (D.D.C. 2012) (internal citation omitted).[6]  The Defendant does not meet his burden here.

The Defendant makes two claims of particularized need.  First, he suggests that he is entitled to the grand jury material he seeks because the Government has already sought and received permission from this Court to provide transcripts of grand jury testimony and related exhibits to him.  ECF No. 28 at 10-11; *see also* ECF No. 9 (Government's motion to disclose grand jury testimony and related exhibits pursuant to Rule 6(e)(3)(E)(i)).  In his view, "[t]here is no legitimate basis for the Government to be able to choose what material occurring before the grand

---

[6] Citing an out-of-circuit, unreported opinion, the Defendant suggests the particularized need standard does not apply to the grand jury charge.  *See* ECF No. 28 at 16 (citing *United States v. Belton*, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015)).  The unreported case's holding, however, runs contrary to longstanding precedent in this District.  *See, e.g.*, *United States v. Singhal*, 876 F. Supp. 2d 82, 99 (D.D.C. 2012) (refusing to require production of grand jury charge where defendants had not established particularized need); *Espy*, 23 F. Supp. 2d 1, 10 (D.D.C. 1998) (same).

jury should be kept secret." ECF No. 28 at 11. The Government is not the keeper of the keys for grand jury material, however, and the Defendant cites no authority for his extraordinary position that, just because one item of grand jury material can be disclosed under the Rules, another must be as well. Federal Rule of Criminal Procedure 6(e) controls grand jury secrecy requirements and the law is clear that, absent showing a particularized need, grand jury material is not discoverable. The fact that the Government sought permission to provide transcripts of grand jury testimony to comply with its potential obligations under the Jencks Act or *Giglio* does not change that standard with respect to other grand jury material.

Second, the Defendant claims that he is entitled to the material under Rule 6(e)(3)(E)(ii) because grounds "*may* exist to dismiss the indictment because of a matter that occurred before the grand jury"). ECF No. 28 at 11 (emphasis in original). The Defendant, however, fails to make any showing to support this conclusory claim, as he must to be entitled to the material. *Saffarinia*, 424 F. Supp. 3d at 81. To show that a ground may exist for dismissing the indictment because of an issue relating to the grand jury, the Defendant must meet a high bar. "Grand jury proceedings are 'accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *Borda*, 905 F. Supp. 2d at 204 (quoting *United States v. Mechanik,* 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)). "An indictment valid on its face may not be challenged on the ground that the grand jury acted on the basis of inadequate, unreliable or incompetent evidence." *Id*. (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988)). The standard for dismissal of an indictment for an error in the grand jury proceeding "is so high that dismissal of an otherwise valid indictment is inappropriate even where the government failed to disclose substantial exculpatory evidence it possessed at the time of the grand jury." *Id*. (internal citation omitted). Accordingly, "conclusory or speculative

allegations of misconduct do not meet the particularized need standard; a factual basis is required." *Naegele*, 474 F. Supp. 2d at 10.

The Defendant claims four errors that occurred before the grand jury to support his particularized need showing under Rule 6(e)(3)(ii): first, that grand jury subpoenas were used to obtain records relating to Robert Costello, ECF No. 28 at 11, ECF No. 26; second, that the Government did not provide the grand jury with an October 18, 2021, letter from the Defendant to the Committee, ECF No. 28 at 12-14; third, that the Government provided the grand jury with evidence relating to a letter the Committee sent the Defendant informing him that former President Trump had never asserted executive privilege to the Committee over the information sought by the subpoena, *id*. at 15-16; and fourth, that the Government "may not have accurately instructed the grand jury" on the law regarding the Defendant's advice of counsel defense, *id*. at 15, 16.

With respect to the first three supposed errors—grand jury subpoenas issued for records relating to Mr. Costello and the letters presented and not presented to the grand jury—the Defendant does not identify how, even if they constitute errors, any of them would support a motion to dismiss. As described above, this is fatal to the Defendant's claim of particularized need. *Saffarinia*, 424 F. Supp. 3d at 81.

Moreover, none of the four items the Defendant identifies constitute error in the first place. First, grand jury subpoenas for records relating to Robert Costello, a fact witness to the Defendant's deliberate default, did not constitute error. *See United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991) ("As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. . . . A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed." (internal citations and quotation marks omitted)). As described above in

Section IV.A.2, no information potentially protected by the attorney-client privilege was obtained with grand jury subpoenas and there is no per se bar to obtaining records relating to attorneys.

Second, not showing the October 18, 2021, letter to the grand jury was not error.  The Government is providing the letter to the Court with this opposition.  Ex. 3.  As the Defendant summarizes in his motion, ECF No. 28 at 13, in the letter, the Defendant's attorney wrote to the Committee requesting a "one-week adjournment" before responding further to the Committee. The Defendant does not, however, acknowledge that the letter was sent after the Defendant already was in default, Indictment, ECF No. 1, ¶¶ 15, 19, and after the Committee informed him as such by an October 15, 2021, letter, in which it also told him that the Committee would be meeting on October 19, 2021, to consider "initiating contempt," *id*. ¶ 20.  The letter thus has no relevance to whether the Defendant willfully defaulted.  The Defendant nevertheless claims that the letter was exculpatory and that the Government's error exists in not presenting it to the grand jury.  ECF No. 28 at 13-14.[7]  Even if the letter was exculpatory—and it is the Government's practice to present true, material exculpatory information to the grand jury—the law does not require the Government to present exculpatory evidence to the grand jury.  *United States v. Williams*, 504 U.S. 36, 52-53 (1992).  There was no error.

Third, the Defendant claims it was error to present to the grand jury a letter from the Committee to the Defendant in which it informed the Defendant that former President Trump had not notified the Committee of any assertions of privilege.  ECF No. 28 at 15.  It was not.  The Government provides the grand jury exhibit here.  Ex. 4.  The letter is inculpatory evidence that, despite being repeatedly told what he was required to do in response to the subpoena, the

---

[7] The Defendant also claims that the testifying witness in the grand jury was asked directly about the Defendant's request for an adjournment, ECF No. 28 at 14, but the Government does not know to what testimony the Defendant is referring.

Defendant ignored those instructions.  *See id*.  The Government also presented evidence regarding the factual assertion in the letter as to whether former President Trump asserted privilege to the Committee.  ECF No. 28, Ex. 6 at 44:8-12.  The Government is aware of no authority barring the Government from presenting inculpatory evidence and evidence regarding the veracity of a witness's statement to the grand jury.  According to the Defendant, the letter and information is proof that the Government "misled" the grand jury about the law on executive privilege.  *Id*. at 15.  How and under what circumstances a former President can properly invoke executive privilege is irrelevant, however, to the elements of the charged offenses.  *See supra* Sec. II.  And the Defendant does not explain how an assertion by a witness and the Government's investigation of that factual assertion indicates error in the instructions the grand jury was provided on the actual elements of the offense.  A conclusory claim that it does so is insufficient.

Fourth, the Defendant speculates that the Government "may" not have advised the grand jury properly with respect to an advice of counsel defense because the Government has taken the position pre-trial that it is not a defense.  ECF No. 28 at 15-16.  Setting aside the fact that an advice of counsel defense is not available to the Defendant in this case for the reasons articulated in the Government's motion in limine, ECF No. 29, even if it were, the Government was not required to affirmatively instruct the grand jury on specific defenses the Defendant may raise (of which he has identified many), *see United States v. North*, 708 F. Supp. 370, 371-72 (D.D.C. 1988) ("[T]here is no requirement that the grand jury be instructed on every aspect of the law.  . . . Never have prosecutors had to present all possible legal defenses to a grand jury.").  The Defendant cites *United States v. Stevens*, 771 F. Supp. 2d 556, 567 (D. Md. 2011) to argue otherwise, ECF No. 28 at 16, but the case does not assist him.  The court in *Stevens* never held that the government was required to instruct on an advice of counsel defense; indeed, it acknowledged that it was not.

*Stevens*, 771 F. Supp. 2d at 566-67.  Instead, the *Stevens* court found that, where the Government does instruct on the law governing a potential defense, if it does so incorrectly, it may be grounds for dismissing the indictment.  *Id*.  The Defendant has not identified anything in the indictment or otherwise indicating that the Government incorrectly instructed the grand jury on the elements of the charged offenses.  In the face of a valid indictment, the Defendant's mere conjecture about the grand jury charge does not amount to particularized need.  *See Trie*, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) ("[M]ere suspicion that the grand jury may not have been properly instructed . . . is insufficient to establish that [the defendant] is entitled either to dismissal of the indictment or to disclosure of grand jury materials.").

The Defendant has failed to meet his burden to show he is entitled to copies of grand jury subpoenas and the grand jury charge and his request for these materials must be denied.

> **D.** **The Defendant Has Failed to Meet His Burden to Establish He is Entitled to Discovery Relating to a Selective Prosecution Claim.**

The Defendant moves to compel various categories of material "that tends to show that this prosecution was initiated or pursued because of political considerations."  ECF No. 28 at 23-24. Although he does not identify it clearly, the Defendant's request appears to be one for discovery to support a claim of selective prosecution.

A selective prosecution claim is a collateral attack on an indictment unrelated to the Defendant's factual guilt or innocence.  Discovery related to that claim is not, therefore, authorized by Rule 16 or *Brady*.  Instead, to be entitled to discovery relating to a selective prosecution claim, the Defendant must offer "some evidence tending to show the existence of the essential elements of the defense," *Armstrong*, 517 U.S. at 468 (citation omitted), that is, "some evidence of both discriminatory effect and discriminatory intent," *United States v. Bass*, 536 U.S. 862, 863 (2002). The showing the Defendant must make is a "rigorous" one, *Armstrong*, 517 U.S. at 468, and "a

defendant must provide something more than mere speculation or 'personal conclusions based on anecdotal evidence,'" *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019) (quoting *Armstrong*, 517 U.S. at 470). Moreover, if the Defendant fails to show either prong, he is not entitled to discovery. *See United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997) (citing *Attorney General of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982)). The Defendant fails to make a showing of either element here and his motion to compel discovery relating to the Government's internal deliberations to support a selective prosecution claim should be denied.

First, the Defendant fails to show discriminatory effect. To show discriminatory effect, the Defendant must show some evidence "that the Government afforded 'different treatment' to persons 'similarly situated' to him." *United States v. Judd*, -- F. Supp. 3d --, 2021 WL 6134590, at *2 (D.D.C. 2021) (quoting *Armstrong*, 517 U.S. at 470). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)) (internal quotation marks omitted). The Defendant does not identify even a single person or group that is similarly situated to him. Having failed to do this, he cannot meet the first prong of the test. *See Blackley*, 986 F. Supp. at 619-20 (finding the defendant failed to show discriminatory effect where he "has not adequately demonstrated that there exists a group of unindicted persons similarly situated to him such that he can claim that he was 'singled out' from that group for prosecution"); *Irish People*, 684 F.2d at 946 ("If . . . there was no one to whom defendant could be compared in order to resolve the question of selection, then it follows that defendant has failed to make out one of the elements of its case."). Because he has failed to show discriminatory effect, the Defendant's motion to compel discovery relating to selective prosecution should be dismissed

without further analysis.

In any event, the Defendant also has failed to show discriminatory intent.  To do so, he must demonstrate that "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (internal citations and quotation marks omitted); *see also Wayte v. United States*, 470 U.S. 598, 610, (1985) (noting that discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" (citations and internal quotation marks omitted) (alteration in original)).

As evidence of his selective prosecution claim, the Defendant relies almost entirely on statements of members of Congress.  ECF No. 28 at 24-25.  Members of Congress are not part of the prosecution team and certainly have no role in the Department of Justice's prosecutorial decisionmaking.  Their statements, even to the extent they might comment on members' views of the Defendant's criminal exposure (although it does not appear many of the statements the Defendant cites contain such commentary), provide no evidence of the prosecutors' intent.

The remaining evidence the Defendant cites also fails to establish discriminatory intent.  First, he cites a statement by President Biden that those who refuse to comply with the Committee's subpoenas should be prosecuted.  *Id*. at 25 (citing Wang, *Biden says Justice Department should prosecute those who refuse Jan. 6 Committee subpoenas*, THE WASH. POST, Oct. 15, 2021).  But President Biden has nothing to do with the Department's prosecutorial decisionmaking.  The very article the Defendant cites acknowledges this.  The President's views, therefore, tell nothing of the decision to prosecute in the Defendant's case.  In any event, the President's statement does not

even indicate a distinction between the Defendant and any other individuals on the basis of a protected class or exercise of a right.

Second, the Defendant points to the fact that the Attorney General made a public statement about the Defendant's indictment. *Id*. at 26 (citing Press Release, U.S. Dep't of Justice, *Stephen K. Bannon Indicted for Contempt of Congress*, Nov. 12, 2021). Specifically, the Attorney General stated that the indictment reflected the Department's "steadfast commitment" to "adher[ing] to the rule of law, follow[ing] the facts and the law and pursu[ing] equal justice under the law." The content of the Attorney General's statement does not include any reference indicative of improper motive—indeed it appears to establish the opposite. Moreover, the Defendant does not explain how the Attorney General's mere decision to comment, by itself, establishes one.

Third, the Defendant asserts that the Government did not follow its policies by bringing the instant prosecution. ECF No. 28 at 25. The Defendant does not cite the sources of the specific "policies" he claims were violated, but, based on his claims elsewhere in his motion, the Government assumes he is referencing Office of Legal Counsel ("OLC") opinions relating to the prosecution of Executive Branch officials for refusing to comply with congressional subpoenas at a president's direction. OLC opinions are not policies that create rights or remedies for the Defendant, they are legal advice provided to the Department of Justice. *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 298 F. Supp. 3d 151, 155-56 (D.D.C. 2018) (collecting cases). Even if they were policies, however, the Defendant does not explain how following them or not following them reflects discriminatory intent. Policies might be followed or not followed for any number of reasons. In any event, the OLC opinions governing Executive Branch officials subpoenaed by Congress are irrelevant. The Defendant was not subpoenaed in relation to his time as an Executive Branch official to testify about his work in that

capacity.  His continued assertions that he somehow sits in a position similar to those who are subpoenaed in their capacity as Executive Branch officials is without merit.

Finally, the Defendant cites the fact that, to date, no other witness subpoenaed by the Committee has been prosecuted.  But this fact alone tells the Court nothing of the Government's intent in the absence of similarly situated individuals.  *Cf. Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 23 (D.D.C. 1999) ("[I]t is not sufficient for plaintiffs to assert that the lack of any other revocations must mean that the IRS had a discriminatory intent where, as here, plaintiffs have failed to provide any evidence that there are any similarly situated churches that retained their Section 501(c)(3) status.").

At bottom, the Defendant's claim of discriminatory intent, to the extent his pleading can be read to have made one, is based on speculation and conclusory assertions.  "If one seeks permission to embark on discovery related to selective prosecution, it is not enough to simply state that the prosecutor was biased.  Defendant must *show* that in his case, the decisionmaker acted with a discriminatory purpose."  *Stone*, 394 F. Supp. 3d at 36 (emphasis in original).  Having provided no evidence of discriminatory intent on the part of the decisionmakers here, the Defendant has failed to make the requisite showing and his motion to compel discovery must be denied on this ground as well.

## V.     CONCLUSION

The Defendant's discovery requests are based on speculative claims of misconduct, unsupported assertions of entitlement, and erroneous interpretations of law.  The Government has met and exceeded its discovery obligations under Rule 16, *Brady*, and *Giglio*.  The Defendant has failed to establish that he is entitled to more.  His motions to compel should be denied in their entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Amanda R. Vaughn*
        J.P. Cooney (D.C. 494026)
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Assistant United States Attorneys
        United States Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov