IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal No. 21-670 (CJN) |
| v. | : |
| STEPHEN K. BANNON, | : |
| *Defendant*. | : |

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

Defendant Stephen K. Bannon, through undersigned counsel, respectfully submits this Reply in support of his Motion To Compel Discovery [Doc. 28].[1]

**Summary**

The Government hopes that discovery is over.[2] With respect to grand jury materials, the Government argues that additional information sought by the defense should be kept secret. They rely on a general rule, but do not even attempt to dispute that the Protective Order issued in this case alleviates all secrecy concerns. Instead, the Government argues that the defense has not stated a particular need for the documents. This significantly undervalues the four separate bases for additional grand jury discovery, namely: (1) Government transgression of the rules on seeking attorney records; (2) Government misstatements of the law on intent; (3) misleading grand jury testimony on whether Mr. Bannon sought an adjournment; and (4) misleading grand jury testimony

---

[1] On the topic of attorney records, we have filed a separate Defendant's Reply To The Government's Opposition To The Defendant's Motion To Compel Disclosure Of Government Efforts To Obtain Telephone And Email Records of Mr. Bannon's Attorneys. The Government enfolds its opposition to the defense motion on that distinct topic at pages 10 to 15 of its omnibus opposition [Doc. 31].

[2] We attach Exhibit 1, a table that sets forth the positions taken by the Government and defense, in order to assist this Court in tracking the various categories of information at issue.

on what constitutes a valid assertion of executive privilege. Given the Protective Order, secrecy issues do not imbalance the scale. On the other side of the scale, however, are solid facts. Justice requires disclosure.

Moreover, the Government resists any search of U.S. Attorney's Office files – or the files of the White House, Main Justice, or Congress – for documents such as the OLC opinions we have cited that state that a person in Mr. Bannon's position has committed no crime. Although such OLC opinions are offered as sacred texts when they are helpful, here the Government tries to characterize them as water cooler musings. Controlling authority takes a different view. They are binding on the Executive Branch, and thus on the U.S. Attorney's Office. Local Rule 5.1(b) mandates the disclosure of such information to the defense in the circumstances here.

Likewise, the Government ignores Rule 5.1(b) in resisting the defense request that they search beyond the handful of documents given to them by Congress. The Select Committee is not like every other complainant. The statutory framework sets forth the specific steps Members of Congress must take to initiate a Section 192 prosecution. Thus, Congress is part of the "prosecution team" and the files of the people involved are discoverable. Any information found in those files that is inconsistent with Mr. Bannon's guilt as to an element of the offense (such as "willfully makes default"), or any information that casts doubt on the accuracy of evidence to be used by the Government to prove any element of the offense (such as the validity of the subpoena), must be disclosed pursuant to Local R. Crim. P. 5.1(b)(1) and (4).

Finally, the Government tries to recast the defense request for documents that show a politically motivated prosecution under the rubric of "selective prosecution." [Doc. 31, 24 to 28]. There is a high threshold to those discrimination claims. But contrary to the Government's position, the defense has made no "selective prosecution" claim. Thus, the caselaw on "selective

2

prosecution" is inapplicable. At this point, we have not asserted a defense of selective prosecution. Rather, the authority for our discovery request on this type of information is the local rule. We seek information that – among other things – tends to support any defense theory, and information that casts doubts on the credibility or accuracy of any evidence. *See* Local R. Crim. P. 5.1(b)(3) & (4). *Public statements* by the Select Committee members, the Speaker of the House, the Attorney General of the United States, and the President, all indicate that this is a politically motivated prosecution. Thus, it is not unreasonable for the defense to ask whether their *private statements* are along the same lines. If so, they are discoverable.

## The Protective Order Will Preserve Secrecy If Grand Jury Instructions And Argument Are Disclosed

The Government's contention that materials generated in the course of the grand jury proceeding should remain secret must be viewed with skepticism. For instance, the Government has refused to provide materials related to its request for records under the Stored Communications Act. What the Government fails to acknowledge, however, is that there is a "presumption of access" to Stored Communications Act materials. *Leopold v. United States*, 964 F.3d 1121, 1130 (D.C. Cir. 2020). Upon examination, the Government's secrecy claims pertaining to other materials are just as specious.

Distilled to their essence, grand jury disclosure cases turn on secrecy. Most are styled *In re Sealed Case* – even the party names are secret because the grand jury is still at work, or because it is a third party seeking disclosure. That is not the case here. Evidence has been presented and the grand jury returned an indictment. What secrecy interest remains? Given that we have a Protective Order in place, none. Secrecy is assured. Here the Government has provided everything but the argument of the AUSA and the legal instructions. This information can be disclosed to the defense,

3

under the terms of the Protective Order, without concerns about grand jury secrecy. A veil is a veil.

Beyond that, the defense has met the standard for disclosure where there is no protective order in place. We articulated the particular needs that we have for the information. What is a particularized need? It is shorthand for a stated reason that outweighs the general rule of secrecy. The defense has set forth its particular needs, any of which would be sufficient for disclosure of the instructions and AUSA argument, as follows:

- The Government improperly abused the grand jury process to obtain telephone and email records of Mr. Bannon's attorney, in violation of Mr. Bannon's 6th Amendment rights, Mr. Costello's privacy rights, the 6th Amendments right of Mr. Costello's other clients, and the privacy rights of other "Robert Costellos" who had that name, but were not Mr. Bannon's attorney;[3]

- The Government has taken the position that "willfully makes default" means "received a subpoena and did not appear" – which misstates the law;

- The Government presented misleading evidence to the grand jury about whether Mr. Bannon sought an adjournment, a key point to be considered in determining whether Mr. Bannon "willfully ma[de] default"; and

- The Government presented misleading evidence on what constitutes a valid assertion of executive privilege.

Given these particularized facts, disclosure of additional grand jury information – pursuant to the Protective Order – is warranted.[4]

## Documents Showing That Mr. Bannon Committed No Crime Must Be Disclosed

---

[3] As to the Government's actions to obtain Mr. Costello's records, and secure his unwitting participation in an FBI interview, we note that never in our collective experience have we seen so many lines crossed, so many rights trampled, so much smoke blown – all in the vain hope of obtaining information that at its best would be of the slightest evidentiary value.

[4] Even if this Court disagrees with our position on disclosure to the defense, we respectfully request that the Court conduct an *in camera* inspection of the AUSA argument to and instructions to the grand jury, to determine what steps are warranted under applicable law.

In our motion we quote several public documents where the U.S. Department of Justice informed the world that a person in Mr. Bannon's position has not committed a crime. The Government was aware of these documents before seeking an indictment, because Mr. Costello provided them as authority in seeking a declination. We also believe that many other similar documents exist in the Government's files. But the Government does not want to search for, much less turn over, these documents. The Government makes three arguments in support of its position that it need not turn over additional documents containing such information. The Governments argues that: (1) "reliance on the law is not a defense" [Doc. 31 at 9]; (2) even if reliance on the law was a defense, any documents in the Government's possession do not reflect what was in Mr. Bannon's mind [*id.*]; and (3) the Government is "aware of" no such documents within its files [*id.* at 10]. These arguments are without merit.

We address the first argument in our response to the Government's motion on advice of counsel and thus do not repeat it in full here. [Doc. 30] Suffice to say that if the Government loses on its gamble that a 60-year-old opinion based on over-ruled caselaw is still viable, then the Government must go back to the beginning and conduct a review of its files, and the files of the White House, Congress, and Main Justice, with a reformed view of what is discoverable.

The Government's second argument is also misplaced. First, contrary to the Government's position, information is discoverable even if it would not be deemed "relevant" at trial.[5] *See United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (documents not directly related to guilt or innocence are discoverable – they may lead to admissible evidence, aid in witness preparation, corroborate testimony, *etc.*). Second, *mens rea* is not the sole issue in the case. The evidence will not be limited to exactly what was in Mr. Bannon's mind at the time he sought and relied upon

---

[5] The Government's caselaw involving the relevance of trial evidence is inapposite. [Doc. 31 at 9] citing *United States v. Libby*, 475 F. Supp. 2d 73 (D.D.C. 2007) and *United States v. Passaro*, 577 F.3d 207 (4th Cir. 2009).

5

Mr. Costello's advice and the OLC's pronouncements in responding to the subpoena. The evidence will also include information that bears upon what it means to make a "default" after receiving a subpoena. Thus, any documents that discuss that issue – whether they bear upon whether someone in Mr. Bannon's position has committed a crime, or speak to whether the subpoena here was invalid – are discoverable. They tend to undermine the notion that Mr. Bannon's actions constituted "default."

Any document that supports the position that a former presidential advisor need not provide documents or testimony when the President they served has asserted executive privilege *tends to negate* Mr. Bannon's guilt as to the element of "default." This information *is inconsistent with* guilt. The local rules mandate disclosure of such information. Rule Crim. P. 5.1(b)(1) (information "to be disclosed" includes "[i]nformation that is *inconsistent with* or *tends to negate* the defendant's guilt as to any element . . . of the offense(s) with which the defendant is charged") (emphasis added).

Another basis for disclosure is Local Rule of Crim. P. 5.1(b)(3), which mandates disclosure of "[i]nformation that tends to establish an articulated and legally cognizable defense theory." We articulated several legally cognizable defense theories in our opposition [Doc. 30] to the Government's motion in limine on advice of counsel. Such defenses include public authority theories, including entrapment by estoppel. Any government document that supports the position that a former presidential advisor need not provide documents or testimony when the President they served has asserted executive privilege tends to establish an articulated and legally cognizable defense theory. Specifically, it would support the defense theory that Mr. Bannon has not committed a crime given that the Department of Justice has for decades, across administrations

representing both major political parties, announced that a person in his position is legally justified in acting as he did.

The Government takes a very narrow view of its obligations and suggests that only a document that sets out the precise factual scenario here could conceivably be discoverable. If the Government's position was correct, then they would have no obligation to turn over to the defense a government document that reads as follows:

> *A former presidential advisor who withholds documents and testimony from a congressional committee because the President they served has asserted executive privilege has not committed a crime.*

Withholding such a document does not seem just. Conduct cannot be deemed criminal just because a prior official pronouncement does not explicitly state every factual detail of the case in question. Reading authority in concert provides guidance about what the law is. As applicable here, OLC opinions and U.S. Attorney's Office documents, when read together, make clear that Mr. Bannon acted lawfully. *See*, *e.g.*, [Doc. 20, Ex. 10 at 6] ("we will not prosecute an Executive Branch official under the contempt of Congress statute for withholding subpoenaed documents pursuant to a presidential assertion of executive privilege"); [Doc. 20, Ex. 11 at 129] ("the contempt of Congress statute does not apply to executive officials who assert Presidential claims of executive privilege"). Under the local rules, a document containing the italicized sentence above is discoverable. *See* Local Rule of Crim. P. 5.1(b)(1) (inconsistent with or tends to negate the defendant's guilt as to any element) and 5.1(b)(3) (tends to establish an articulated and legally cognizable defense).

In passing, the Government suggests that it is aware of no document that supports Mr. Bannon's claim that official DOJ opinions hold that he has committed no crime. [Doc. 31 at 10]. Obviously, the Government has not exerted itself in seeking documents on this topic, since the defense has found many in the public domain. The Government contends that "the Defendant is

simply wrong about what the Government's files contain," since "the Government is aware of no internal opinion or analysis that purports to excuse a private citizen from complying with a congressional subpoena because he used to work in the Executive Branch and a former President informed him of his belief that unidentified materials or information may be 'potentially protected' by privilege." [Doc. 31 at 10]. Public sources – which we have cited – are exactly opposite to the Government's position in this case. In fact, Mr. Costello provided these very OLC opinions to the prosecutors. He hoped to convince the prosecutors not to indict his client. But, unbeknownst to Mr. Costello, his advocacy was foreclosed because the prosecutors deceived Mr. Costello into thinking his communications were being received as arguments of counsel, when in fact the prosecutors were surreptitiously treating him as a witness and a source of information against his client's interests.[6] It would take minimal effort for the Government to send an email to OLC, the White House, and the Office of the General Counsel, U.S. House of Representatives, simply attaching our document requests [Doc. 31, Ex. 1] and asking them to search their files for responsive documents. That the Government does not want to shake the tree suggests a fear of the fruit that will fall.

### Congressional Documents Showing The Invalidity Of The Subpoena Must Be Disclosed

The Government contends that the handful of congressional documents it has provided constitute the universe of documents to be considered in this case. We disagree. Congress cannot be permitted to initiate a prosecution under Section 192, *see* 2 U.S.C. § 194, and then unilaterally decide to limit access to documents that would otherwise be available to the defense in any other criminal prosecution. The Select Committee Members, and staff, the Speaker of the House, and

---

[6] The facts are set forth in our separate Reply on that issue, also filed today.

the General Counsel of the U.S. House of Representatives, all played a role in initiating this prosecution. Given our requests, their files must be reviewed.

Select Committee staff have selectively withheld key documents. For instance, under the House Rules:

> 11. A witness *shall not be required to testify* unless the witness has been provided with a copy of section 3(b) of H. Res. 8, 117th Congress, and these regulations.

[US-000010] (*117th Congress Regulations For Use Of Deposition Authority*, Jan. 4, 2021) (emphasis added). Mr. Bannon never received a copy of section 3(b) of H. Res. 8. [Doc. 28, Ex. 9 at 4] (November 10, 2021, FBI Report of Interview of Kristin Amerling) ("A copy of Section 3(b) was not provided to COSTELLO with the subpoena."). Select Committee Chief Counsel and Deputy Staff Director Kristin Amerling provided Mr. Bannon (though Mr. Costello) with 10 pages of detailed and arcane instructions, including the subpoena. But she did not provide the specific document required by the House Rules before a witness was required to testify. Why?

Rule 3(b) provides, in pertinent part, as follows:

> SEC. 3. SEPARATE ORDERS.
>
> (b) Deposition Authority.—
>
> (1) During the One Hundred Seventeenth Congress, the chair of a standing committee (other than the Committee on Rules), and the chair of the Permanent Select Committee on Intelligence, *upon consultation with the ranking minority member* of such committee, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee.
>
> (2) Depositions taken under the authority prescribed in this subsection shall be subject to regulations issued by the chair of the Committee on Rules and printed in the Congressional Record.

H. Res. 8, *Adopting the Rules of the House of Representatives for the One Hundred Seventeenth Congress, and for other purposes* (emphasis added). This requirement applies to Select Committee depositions. *See* Doc. 28, Ex. 7 at 12 (H. Res. 503, establishing the Select Committee)

("Depositions taken under the authority prescribed in this paragraph shall be governed by the procedures submitted by the chair of the Committee on Rules for printing in the Congressional Record on January 4, 2021.")

One could be forgiven for thinking that the reason that Ms. Amerling provided voluminous rules and instructions about the subpoena – but not the one key document required to be provided to a witness under the House rules – was because the withheld document referenced a key witness protection. The protection is that before taking a deposition, the chair of a committee must consult with the ranking minority member. That protection is not available to any Select Committee witness, because the Select Committee has no ranking minority member. [Doc. 28, Ex. 9 at 4].

The omission of this key document – which bears on whether Mr. Bannon committed a crime – provides support for the defense position that we are entitled to more from the files of the Select Committee and its staff than they selectively provided to the U.S. Attorney's Office.

The Government must prove at trial as an element of the offense that the subpoena was issued pursuant to valid authority. This means, among other things, that the rules of the U.S. House of Representatives, and the rules of the Select Committee, were followed. It also involves whether the Select Committee acted within its authority. In addition, valid authority involves the consideration of whether the Select Committee issued a valid subpoena in this case and could seek the testimony of Mr. Bannon without any consultation with a ranking minority member. We have requested, and are entitled to receive, any document that bears upon that issue. Any information that is inconsistent with Mr. Bannon's guilt as to this element, or any information that casts doubt on the accuracy of any evidence to be used by the Government to prove this element, must be disclosed. *See* Local R. Crim. P. 5.1(b)(1) and (4).

### Documents Showing Bias or An Improper
### Purpose In Prosecuting Mr. Bannon Must Be Disclosed

The Government contends that it need only reveal bias information in time for the defense to use it in the cross-examination of witnesses at trial. [Doc. 31 at 15 -17]. We disagree. The Government's obligations extend beyond *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Under the local rules, the Government must disclose "[i]nformation that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged." Local Rule Crim. P. 5.1(b)(3). It must also disclose "[i]nformation that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial." Local Rule Crim. P. 5.1(b)(4). The Government has not even attempted to explain how it could comply with those directives, yet not search for and disclose information that tends to show that Members and staff of the Select Committee were biased against him, or that they responded to political pressure in initiating this prosecution.

In the unusual statutory framework here, Congress initiated the prosecution. *See* 2 U.S.C. § 194. The evidence relied upon by the Government in obtaining the indictment was limited to the subpoena, and emails back and forth between Mr. Bannon's lawyer and counsel for the Select Committee (who sometimes included letters that on their face appear to be from the Chair of the Committee). If any of that "evidence" was influenced by a person's political bias against Mr. Bannon, we are entitled to information that tends to show that bias. *See* Local R. Crim. P. 5.1(b)(3) (tends to establish a defense theory) and (b)(4) (casts doubts on the credibility or accuracy of any evidence). The same is true of documents that reflect an improper, politically motivated purpose in prosecuting Mr. Bannon. *Id*.

While the Government devotes several pages to caselaw pertaining to selective prosecution, [Doc. 31 at 24 -28], that discussion misses the mark. Mr. Bannon has not, at this stage, raised a selective prosecution defense. There is no mention of that legal theory in our motion to compel. The authority that the Government discusses in the selective prosecution context – pertaining to discriminatory effect and discriminatory intent – simply are not applicable at this stage of discovery given that we are seeking information based upon different authority, for different purposes. Under Local R. Crim. P. 5.1(b)(3) & (b)(4) the Government must search for and disclose any information that tends to show that the prosecution was politically motivated or initiated or pursued by any person who was biased against Mr. Bannon.

## CONCLUSION

Wherefore, for the reasons set forth above, Mr. Stephen K. Bannon respectfully requests an Order compelling the Government to produce the requested discovery materials so that he may prepare a defense.

Dated: March 8, 2022    Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

   /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

      /s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of March 2022, a copy of the foregoing REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY was served *via* the Court's CM/ECF system on registered parties and counsel.

                                              /s/ M. Evan Corcoran
                                        M. Evan Corcoran (D.C. Bar No. 440027)