**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## <u>DECLARATION OF ROBERT J. COSTELLO, ESQUIRE</u>

Robert J. Costello declares the following:

1.   I am submitting this Declaration in support of the Defendant, Stephen K. Bannon's Reply to the Government's Opposition to the Defendant's Motion to Compel Disclosure of the Government's Efforts to Obtain Telephone and Email Records of Mr. Bannon's Attorneys in the above-captioned case.  This Declaration is based on my personal knowledge.

2.  I am a partner with the New York law firm Davidoff Hutcher & Citron LLP and I have been an attorney for almost fifty years.  I previously served as the Deputy Chief of the Criminal Division of the United States Attorney's Office for the Southern District of New York.

3.  I have no association whatsoever with email accounts with the addresses "RobertCostello@gmail.com," or "Robert.Costello@gmail.com," or "Robert.Costello@comcast.net" or "bobcostello@yahoo.com."

4.  At no time did I authorize the Government to obtain records for any of my telephones and I use the phones for which I now know the Government obtained records for attorney-client privileged calls and texts and for attorney-client work product tasks. I firmly believe that simply knowing who I am calling and who is calling me risks revealing  attorney-client privileged and work-product information I have intended to keep absolutely private and privileged.  Knowing who I am calling on these phones at issue could alert someone viewing the records as to my legal strategy in this case or for any of my other clients.

5.  As the chronology of my communications with the Government in this case support, I believe the Government acted deceptively and duplicitously and certainly not in good-faith with respect to our discussions.

The following is a chronology of my interaction with the Government in this matter as supported by the attached Exhibits, to which reference is made:

6. On October 25, 2021, I sent an email in my capacity as Mr. Bannon's attorney to both J.P. Cooney, Chief of the Public Integrity Unit of the USADOC and Channing Phillips, the Acting United States Attorney. **Ex. A**. The email stated:

> My name is Robert J. Costello and I am the attorney for Stephen K. Bannon. Recently, the House of representatives referred Stephen K. Bannon to your Office for consideration of filing criminal contempt of Congress charges. In an effort to convince your office that such charges would not be appropriate in light of the facts, law and Justice Department precedent, would you be kind enough to advise me of a contact person to correspond with.

*Id.*

7. Later that day, Mr. Cooney responded to my email by stating:
> Thank you for your email. My colleagues, Molly Gaston and Amanda Vaughn, and I would be please to meet with you. How is Wednesday at 10:00am? We are available to meet with you here at the U.S. Attorney's Office or by video conference.

*Id.*

8. I responded an hour later and requested that the meeting take place after October 27, 2021 so that I could finish preparing a legal memorandum which outlined the reasons why the U.S. Attorney's office should decline to prosecute Mr. Bannon. *Id.*

9. A WebEx videoconference meeting was ultimately set for November 3, 2021. **Ex. B.**

10. On November 1, 2021, two days before the scheduled meeting, I emailed Mr. Cooney my legal memorandum in support of Mr. Bannon's position that he should not be prosecuted for criminal contempt. **Ex. C.**

11. The invitation for the WebEx meeting only included myself and attorneys from the Government. [CITE]. In advance of the meeting, Mr. Costello informed that Government that Adam Katz, Esq. would also be joining the call on behalf of Mr. Bannon. **Ex. D.**

12. When myself and Mr. Katz joined the meeting, we were informed that four FBI agents, who did not appear on the video screen would be listening to the meeting. There was no statement made that this was an interview of myself and Mr. Katz by the FBI.

13. The FBI agents remained silent while the attorneys discussed Mr. Bannon's case.

14. After the meeting, on the evening of November 3, 2021, Mr. Cooney sent me a follow up email with Assistant U.S. Attorneys Molly Gaston and Amanda Vaughn copied thereto. **Ex. E.** The email stated:

> Thank you again for the memorandum you forwarded us on Monday and for meeting with us today. As promised, a list of the U.S. Attorney's Office and FBI participants in the meeting is below.
>
> Attached please find a letter memorializing our document requests. If you have any questions or concerns, please do not hesitate to email or call. Could you also please do us the favor of forwarding this to Adam Katz and letting us know his contact information?
>
> Thank you,
> J.P. Cooney
>
> U.S. Attorney's Office for the District of Columbia
> Public Corruption & Civil Rights Section
> J.P. Cooney, Chief
> Molly Gaston, Acting Deputy Chief
> Amanda Vaughn, Assistant United States Attorney
> Chad Byron, Paralegal
>
> FBI Washington Field Office
> SA Frank D'Amico
> SA Stephen Hart
> SA Matthew Lariccia
> SA Katherine Pattillo

*Id.*

15. In response, I sent Mr. Cooney an email attaching all of my communications with the Select Committee. **Exs. F-G.**

16. On the evening of November 4, 2021, Mr. Cooney sent me the following email:

> Enclosed, please find a cover letter, Bates stamped compilation of your production to us, and index. As inquired in the letter, could you please review and let us know if this constitutes your entire production?
>
> Thank you again for meeting with us yesterday. Are you and Mr. Katz available for another video conference? We have a few follow up questions. We can be available tomorrow (Friday) afternoon at or after 2:30; or Monday? Please let us know a time or times that work for you and Mr. Katz.

**Ex. H.**

17. Later that evening, I replied, in relevant part:

> As far as a follow up interview, I will check with Adam Katz for his availability, [b]ut mine would be Monday afternoon or Wednesday. As soon as I reach Adam, I will let you know.

> You are being very diligent in collecting documents, but that factual background is unnecessary according to the OLC opinions of May 13, 2019 and February 29, 2008. That being said, I will be happy to answer any follow up questions you have.

*Id.*

18. A follow up WebEx video meeting took place on November 8, 2021, and FBI agents again attended, not on the video and whose stated purpose was just to listen. *See* **US-001179-001782.**

19. Both myself and Mr. Katz were under the impression that the purpose of these meetings was to give the defense an opportunity to explain why prosecuting Mr. Bannon would be inconsistent with the law and Justice Department policy. However, as evidenced by the later received two FBI 302s detailing Mr. Costello's statements in these meetings, the FBI agents who attended these meetings treated them as formal witness interviews. *See* **US 001769-001782.**

20. Also unbeknownst to both myself and Mr. Katz, during the same two-week time period that I was communicating with Mr. Cooney in my capacity as Mr. Bannon's attorney, Mr. Cooney's team was surreptitiously subpoenaing my home, direct office line and cell phone records for the period September 1, 2021 to October 20, 2021. **US-001833-001878.**

21. The Government further issued numerous subpoenas for information regarding email accounts associated with persons named Robert Costello. Many of these subpoenas yielded information for private citizens who, though named Robert Costello, are not me and have no connection with this case. **U.S. 001093-1095, 001151-1768, 001808-1811.**

22. Despite the fact that the Government was aware as early as September of 2021 that I was representing Mr. Bannon in connection with this case, the Government did not disclose its attempts to subpoena my personal phone and email accounts until over four months later, on January 4, 2022. *See* **January 4, 2022, Letter from AUSA Matthew Graves to Defense Counsel Re:** *United States v. Stephen K. Bannon***, No 21-cr-00670 (CJN).**

23. The Government now attempts to belatedly justify its unlawful interference into Mr. Bannon and my attorney-client relationship, as well as its unjustified intrusion into the personal email accounts of private citizens, by putting forth the dubious contention that I am a witness against Mr. Bannon.

24. In hindsight and with the benefit of the limited discovery that has been made available, it is clear to me that the representatives of the United States Attorney's Office for the District of Columbia never had any intention of engaging in a lawyer like discussion of the legal merits of a prosecution of Mr. Bannon for criminal contempt of Congress. This position was and is shocking to me because of the many prior instances when this same Office declined to prosecute others, including sitting United States Attorney Generals based upon a referral from Congress.  Those prior cases did not have the benefit of several of the opinions I had from the Office of Legal Counsel.  Those opinions are binding upon the Executive Branch and the United States Attorney's Office is part of the Executive Branch.  Based upon that, and other legal obstacles, I believed the representatives of that Office would take these proposed discussions seriously in light of the past precedent.

25. The discovery has revealed that my belief was wrong.  The representatives of the United States Attorney's Office had no intention of not prosecuting Mr. Bannon.  The clearest proof of that is that on the very first day when I made contact with that office, on October 25, 2021, to find a contact person, they issued a grand jury subpoena for my cell phone records.  Their intent was to try and make me a witness against my own client, a factually absurd position, but one which they espoused as their excuse or justification when they had to reveal in discovery what they had done.

26. Simply stated, I can think of no greater example of interference with Mr. Bannon's Sixth Amendment right to counsel than to try and make it appear that Bannon's counsel of choice is now an adversary as a witness against him.  To further exacerbate this effort at interfering with Mr. Bannon's Sixth Amendment rights, the Government made an *in limine* motion to deny the admission of advice of counsel defense, essentially stating that the advice Mr. Bannon received from me about the Office of Legal Counsel's opinions was worthless.  Could the Government mount any more aggressive attack on the attorney client relationship than this.  I think not.  This kind of prosecutorial abuse cannot be tolerated.  I have been a federal prosecutor myself, having served as the Deputy Chief of the Criminal Division in the Southern District of New York.  I have never even heard of tactics like this.  This Court needs to intervene.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on March 8,  2022

New York, New York

/s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

# EXHIBIT A

**From:**               Costello, Robert J.
**Sent:**              Monday, October 25, 2021 3:14 PM
**To:**                 Cooney, Joseph (USADC)
**Subject:**          Re: Stephen K. Bannon

Dear Mr. Cooney,
   Thank you for the speedy response. I am currently preparing a memo that outlines our position. I think it would be most useful to all of us if you had that memo in advance of any discussion. I hope to be finished with the memo by Wednesday and we could schedule a videoconference for a time of your convenience after Wednesday. Is that an acceptable schedule for you?
               Bob Costello

Sent from my iPhone


On Oct 25, 2021, at 2:17 PM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> wrote:


**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Mr. Costello:

Thank you for your email. My colleagues, Molly Gaston and Amanda Vaughn, and I would be pleased to meet with you. How is Wednesday at 10:00am? We are available to meet with you here at the U.S. Attorney's Office or by videoconference.

J.P. Cooney

J.P. Cooney
Chief, Public Corruption & Civil Rights Section
U.S. Attorney's Office for the District of Columbia
C/ 202-469-4529; O/ 202-252-7281

**From:** Costello, Robert J. <rjc@dhclegal.com>
**Sent:** Monday, October 25, 2021 11:34 AM
**To:** Phillips, Channing (USADC) <CPhillips1@usa.doj.gov>; Cooney, Joseph (USADC) <JCooney@usa.doj.gov>
**Subject:** [EXTERNAL] Stephen K. Bannon


Gentlemen,
     My name is Robert J. Costello and I am the attorney for Stephen K. Bannon. Recently, the House of Representatives referred Stephen K. Bannon to your Office for consideration of filing criminal contempt of Congress charges. In an effort to convince your office that such charges would not be appropriate in

light of the facts, law and Justice Department precedent, would you be kind enough to advise me of a contact person to correspond with.

Thank you for your consideration,

Robert J. Costello

**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should <u>never</u>
wire money to any bank account that our office provides to you via email
without first speaking with our office. Further,<u>do not</u> accept emailed
wiring instructions from anyone else without voice verification from a known
employee of our office. Even if an email looks like it has come from this
office or someone involved in your transaction. <u>Please call us first at a number</u>
<u>you know to be correct for this office</u> to verify the information before wiring
any money. Be particularly wary of any request to change wiring instructions
you already received.
*************************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any
attachments to this message are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information.
If you are not the intended recipient, please notify us immediately
by email reply to sender or by telephone to Davidoff Hutcher & Citron
LLP at (800) 793-2843, ext. 3284, and destroy all copies of this
message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform
you that any discussion of a federal tax issue contained in this
communication (including any attachments) is not intended or written
to be used, and it cannot be used, by any recipient for the purpose of
(i) avoiding penalties that may be imposed on the recipient under
United States federal tax laws, or (ii) promoting, marketing or
recommending to another party any tax-related matters addressed herein.
*************************************************************************

# EXHIBIT B

**From:**          Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov>
**Sent:**          Friday, October 29, 2021 5:48 PM
**To:**            Costello, Robert J.
**Cc:**            Gaston, Molly (USADC); Vaughn, Amanda (USADC)
**Subject:**       RE: Steve Bannon


CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST

Thank you, Mr. Costello.  How about 12:00pm on Wednesday, November 3, for a videoconference?

J.P. Cooney

-----Original Message-----
From: Costello, Robert J. <rjc@dhclegal.com>
Sent: Friday, October 29, 2021 3:51 PM
To: Cooney, Joseph (USADC) <JCooney@usa.doj.gov>
Subject: [EXTERNAL] Re: Steve Bannon

Sure, whatever works for you, I will make myself available.
                 Bob Costello

Sent from my iPhone

> On Oct 29, 2021, at 3:00 PM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> wrote:
>
> CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU
> DO NOT TRUST
>
> Thank you.  We will look out for the memorandum on Monday morning.
>
> How about we set down a time to talk on Wednesday next week?
>
> J.P. Cooney
>
> -----Original Message-----
> From: Costello, Robert J. <rjc@dhclegal.com>
> Sent: Friday, October 29, 2021 2:36 PM
> To: Cooney, Joseph (USADC) <JCooney@usa.doj.gov>
> Cc: Gaston, Molly (USADC) <MGaston2@usa.doj.gov>; Vaughn, Amanda
> (USADC) <AVaughn@usa.doj.gov>
> Subject: [EXTERNAL] Re: Steve Bannon
>
>    Mr. Bannon has been traveling and difficult for me to pin down.  I have now done that and I will have the memorandum for you on Monday morning.  I appreciate your patience and understanding.
>                  Bob Costello
>
> Sent from my iPhone
>

>> On Oct 29, 2021, at 8:44 AM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> wrote:
>>
>> CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS
>> YOU DO NOT TRUST
>>
>> Mr. Costello:
>>
>> When can we expect to receive your written submission?
>>
>> J.P. Cooney
>>
>> -----Original Message-----
>> From: Costello, Robert J. <rjc@dhclegal.com>
>> Sent: Wednesday, October 27, 2021 6:02 PM
>> To: Cooney, Joseph (USADC) <JCooney@usa.doj.gov>
>> Subject: [EXTERNAL] Re: Steve Bannon
>>
>>    Thank you for your understanding.
>>                    Bob
>>
>> Sent from my iPhone
>>
>>>> On Oct 27, 2021, at 5:10 PM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> wrote:
>>>
>>> CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS
>>> YOU DO NOT TRUST
>>>
>>> Mr. Costello:
>>>
>>> We understand -- that is not problem.  We look forward to receiving the memorandum and then talking.
>>>
>>> J.P. Cooney
>>>
>>> -----Original Message-----
>>> From: Costello, Robert J. <rjc@dhclegal.com>
>>> Sent: Wednesday, October 27, 2021 5:08 PM
>>> To: Cooney, Joseph (USADC) <JCooney@usa.doj.gov>; Vaughn, Amanda
>>> (USADC) <AVaughn@usa.doj.gov>; Gaston, Molly (USADC)
>>> <MGaston2@usa.doj.gov>
>>> Subject: [EXTERNAL] Steve Bannon
>>>
>>>   I write to apologize that I am unable to deliver to you this evening, the memorandum I hoped to have ready. My client is reviewing the memo which has been drafted, and as soon as he signs off on it, I will email it to you.
>>>                    Bob Costello
>>>
>>>
>>> IMPORTANT NOTICE: Beware of Cyber Fraud. You should NEVER wire money to any bank account that our office provides to you via email without first speaking with our office. Further, DO NOT accept emailed wire instructions from anyone else without voice verification from a known employee of our office.
>>> Even if an email looks like it has come from this office or someone involved in your transaction, CALL US FIRST AT A NUMBER YOU KNOW TO BE CORRECT FOR THIS OFFICE to verify the information before wiring any money.
>>> Be particularly wary of any request to change wire instructions you already received.

# EXHIBIT C

| **From:** | Costello, Robert J. |
| **Sent:** | Monday, November 1, 2021 1:40 PM |
| **To:** | 'Joseph.Cooney@usdoj.gov' |
| **Subject:** | Final Declination (00935612-3x7F7DD).pdf |
| **Attachments:** | Final Declination (00935612-3x7F7DD).pdf |

Dear Mr. Cooney,

   Attached please find my memo outlining the reasons I believe your Office should decline prosecution of Stephen K. Bannon for criminal contempt of Congress.  We are still on schedule for a video conference call on Wednesday at 12 Noon.

Bob Costello

# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

———

(212) 557-7200
FAX (212) 286-1884
WWW.DHCLEGAL.COM

## MEMORANDUM

TO:       United States Attorney for the District of Columbia ("USAO-DC")

FROM:   Robert J. Costello

DATE:    October 29, 2021

RE:       Congressional Referral of Stephen K. Bannon for Criminal Contempt

---

## I — EXECUTIVE SUMMARY

This memo sets forth several legal bases for the USAO-DC to demonstrate that if this case were handled based upon the prevailing rules of the Justice Department, it would decline prosecution of Mr. Stephen K. Bannon, based on numerous opinions from the DOJ's Office of Legal Counsel ("OLC"), which, pursuant to well-settled law, are binding opinions on the Executive Branch of the United States, including the DOJ.

First, pursuant to a well-settled OLC opinion, the DOJ and USAO-DC in fact have discretion in deciding whether or not to prosecute Mr. Bannon, regardless of Congress's vote to recommend prosecution.

Second, pursuant to an OLC opinion, the subpoena, in this case, was *void ab initio*, because it specifically barred President Trump's counsel from appearing at Mr. Bannon's deposition or from reviewing the documents that Mr. Bannon was to produce, which violates the executive privilege because it prevented President Trump from protecting his executive privilege. Relatedly, the United States Supreme Court has held that a former president may invoke the executive privilege and there are several effective OLC holdings that a non-governmental, private citizen is bound by the President's invocation of the executive privilege.

Third, pursuant to another OLC opinion, the DOJ is not permitted to prosecute a former White House employee for contempt of Congress where the issue involves the invocation of executive privilege. Based on the foregoing, unless the Department wants to treat Mr. Bannon differently than the Justice Department rules set out for everyone else, the USAO-DC should decline to prosecute Mr. Bannon. A decision to decline would also go a long way to dispel the doubts about the Justice Department's independence, particularly in light of the inappropriate and inaccurate comments of a partisan Congress and the unfortunate interference by the President. It

would also uphold the Justice Department's traditional role of appropriately defending the prerogatives of the Executive Branch of government.

## II — FACTUAL BACKGROUND

Through counsel, Mr. Bannon had communicated by emailed letters to the Select Committee Chairman Bennie G. Thompson, as well as by telephone with Committee counsel Sean Tonolli that, acting in accordance with instructions received from President Trump's counsel, Mr. Bannon would be unable to comply.

As Mr. Bannon's counsel, on September 23, 2021, I was contacted by Committee Chief Counsel Kristin Amerling, to inquire whether I would accept service for Mr. Bannon via email. Mr. Bannon immediately agreed, but before I informed Ms. Amerling, I was contacted by the Associated Press, CNN and MSNBC, who already had copies of the subpoena. I then notified Ms. Amerling that we would accept service of the subpoena.

The subpoena called for the production of documents and a private deposition. In addition to the subpoena, I was provided with a copy of the rules that would govern the taking of testimony. Surprisingly, the rules called for only Mr. Bannon's private counsel to attend the deposition and that a copy of the transcript of that deposition would not be made available to the witness, Mr. Bannon.

After the Committee notified the media that they had served subpoenas for Mark Meadows, the former Chief of Staff to President Trump, Mr. Bannon and two others, on the evening of October 5, 2021, I received a telephone call from Justin Clark, Esq., who informed me that he was counsel to President Donald Trump and that President Trump was going to invoke executive privilege for the four named individuals and that he would be sending a letter to confirm the instructions. On October 6, 2021, Justin Clark emailed me a letter stating, in part:

"President Trump vigorously objects to the overbreadth and scope of these requests and believes they are a threat to the institution of the Presidency and the independence of the Executive Branch." Mr. Clark added that:

"Through the Subpoenas, the Select Committee seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by the executive and other privileges, including among others, the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court.

Therefore, to the fullest extent permitted by law, President Trump instructed Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena."

Faced with this instruction by counsel to President Trump, I advised Mr. Bannon that he should not provide documents or testify, because Mr. Bannon must be guided by President Trump's invocation of the privilege.

2

As a matter of professional courtesy, I took a call from Sean Tonolli, Staff Counsel to the Select Committee. Mr. Tonolli advised me that he was the Staff Counsel who would be questioning Mr. Bannon. I took the opportunity to ask Mr. Tonolli about the rule that stated that only Mr. Bannon and his personal counsel could attend the deposition. Mr. Tonolli confirmed "that was the position of the Select Committee." I asked that question because if that rule were followed, there would be no one to represent the interests of President Trump whose privileges were at stake at Mr. Bannon's private deposition. I was aware of the OLC Opinion issued on May 23, 2019, finding that where Congress, in a matter involving executive privilege, refuses to allow a representative of the Executive Branch to attend the private deposition and invoke the privileges of the President, the subpoenas were deemed by OLC to be illegal and invalid. In light of the OLC opinion, I wanted to know from staff counsel if the Select Committee intended to enforce that rule which would abrogate the validity of Mr. Bannon's subpoena. On October 7, 2021, the day before documents were due to the Committee from Mr. Bannon, and a day after receiving a letter of instructions from President Trump's counsel, on Mr. Bannon's behalf, I notified Chairman Thompson, that pursuant to President Trump's instruction, we would be unable to respond to the requests for documents or testimony. This was not a contemptuous refusal; we were simply following the instructions of President Trump's counsel regarding privileges which belonged to President Trump.

Chairman Thompson responded the next day, October 8, 2021, claiming that Mr. Bannon could not take advantage of the executive privilege because he was a private citizen on January 6th. Second, Chairman Thompson stated that the Committee had not received "any assertion, formal or otherwise, of any privilege from the (sic) Mr. Trump." Third, Chairman Thompson argued that "even if your client had been a senior aide to the President during the time period covered by the...testimony, which he was most assuredly not, he is not permitted by law to the type of immunity you suggest." As to points One and Two offered by the Chairman, both of his assertions are wrong and directly contradicted by opinions of the Office of Legal Counsel which are discussed more fully below. As to the third point, we did not claim any immunity in our initial response to Chairman Thompson and the Select Committee.

On October 13, 2021, on Mr. Bannon's behalf, I responded to some of the remarks made by Chairman Thompson in his October 8, 2021 letter, that his use of the word "defiance" to describe Mr. Bannon's behavior was inappropriate because Mr. Bannon was merely following the instructions of counsel for President Trump and being appropriately response to the Select Committee's request.

On October 15, 2021, at 2:05 p.m., the Chairman again wrote to me, claiming that the basis for Mr. Bannon's refusal to produce documents or testify, namely President Trump's assertion of executive privilege, had not been made, in the opinion of the Committee. Chairman Thompson again argued that Mr. Bannon did not have the immunity that we never claimed he had, and therefore, Chairman Thompson claimed that Mr. Bannon was in "willful non-compliance" of the Subpoena. That letter provided that we had until 6:00 p.m. on Monday, October 18, 2021, to respond. Slightly later that afternoon, President Biden interjected himself into this dispute by answering a reporter's question stating that the Justice Department should prosecute those who refused to comply with the Select Committee subpoenas. Within an hour, the Attorney General's spokesman was forced to state that the Justice Department would make "its own independent decisions in all prosecutions based solely on the facts and the law. Period. Full stop." The damage

had already been done.  The Select Committee would not vote for another three days, the entire House would not vote until the following Thursday, October 21, 2021, but the message had been sent and it was impossible to unring the bell.  The Select Committee would use the House to urge the Justice Department to make an example out of Stephen K. Bannon.

Late in the afternoon of October 18, 2021, as we were preparing to send our response to Chairman Thompson's October 15 letter as he provided, we were notified that President Trump filed a lawsuit in Federal Court in the District of Columbia, naming Chairman Thompson, in his official capacity, as well as the Select Committee.  Instead of sending the letter I had prepared, I wrote a short note to Chairman Thompson informing him that we had just become aware that President Trump had filed a lawsuit and therefore, I was requesting a one-week adjournment of our response, so we could review the lawsuit and determine its impact on Mr. Bannon's response.

After we sent in our request for an adjournment, at 6:50 p.m., I received an email from the Office of White House Counsel.  That letter stated that:

"Mr. Bannon's tenure as a White House employee ended in 2017.  To the extent any privileges could apply to Mr. Bannon's conversations with the (then) former (sic) President or White House staff, after the conclusion of his tenure, President Biden has already determined that an assertion of executive privilege is not in the public interest, and therefore is not justified…"

White House Counsel's letter fails to recognize that the conversations were with the *sitting* President and it continues to rely on the legally incorrect assertion that executive privilege only involves government employees, when the OLC, in an opinion by Solicitor General and then Acting Attorney General Paul Clement, states otherwise, as set forth *infra*.  The letter also wrongfully claims that President Biden has any authority whatsoever to waive executive privilege asserted by President Trump.

The next morning, October 19, 2021, Chairman Thompson  denied our request for a short adjournment, thereby terminating our ability to communicate before the Committee printed its conclusions and recommendations to the entire House that same day.  Later that evening, the Committee held a televised press event to conduct a live vote to recommend to the entire House that Stephen K. Bannon be held in criminal contempt of Congress.  In comments made by Committee members on television that night, they made clear that they intended to make an example out of Mr. Bannon.  Even after the televised vote, and the fact that Chairman Thompson had prohibited us from responding by turning down our request for an adjournment to review the Trump Lawsuit, Chairman Thompson sent me another long-winded letter late in the evening, urging Mr. Bannon to "change course", relying on the letter from White House Counsel that the Chairman believed demonstrated "the inappropriateness of Mr. Bannon's reliance on assertions of executive privilege…"

As noted in the paragraphs above, Mr. Bannon has been appropriately responsive to both the Committee and to counsel to President Trump and has been responsive to the instructions and directions of President Trump's counsel.  The response of the Committee, on the other hand, has been to leak to the press and issue grandstanding, legally incorrect press releases.  Adopting the

partisan Congress' position would do great damage to executive privilege and would do great harm to future Presidents.

## III — LEGAL BASES TO DECLINE PROSECUTION

The DOJ should decline to prosecute Mr. Bannon because a decision by the DOJ, a member of the Executive Branch, to prosecute Mr. Bannon would be violative of several binding OLC opinions. It is well settled that OLC opinions are entitled to considerable weight because they "reflect[] the legal position of the executive branch" and "provid[e] binding interpretive guidance for executive agencies." See *Casa de Maryland. v. United States Dep't of Homeland Sec.*, 924 F.3d 684, 718, n.1 (4th Cir. 2019); *see also, Cherichel v. Holder*, 591 F.3d 1002, 1016, n.17 (8th Cir. 2010) (noting that "while OLC opinions are generally binding on the Executive branch…courts are not bound by them") (citations omitted). An OLC memorandum is final when it serves as the OLC's last word on the subject matter that was provided to the decisionmaker who requested it. *Samahon v. United States DOJ*, 2015 U.S. Dist. LEXIS 23813, *45 (E.D. Pa. Feb. 27, 2015).

**A.     The U.S. Attorney/D.O.J. has discretion to decide whether to indict for misdemeanor criminal contempt.**

The United States Attorney and the Department of Justice retain the discretion to refuse to charge a referred criminal contempt of Congress matter.  On June 16, 2014, the Office of Legal Counsel ("OLC") issued an opinion letter for the United States Attorney for the District of Columbia, 38 Op. O.L.C. 1, on the issue of Prosecutorial Discretion regarding Citations for Contempt of Congress.  The 2014 opinion was issued when the United States Attorney considered the finding of an earlier, 1984 opinion of OLC, 8 Op. O.L.C. 101 (1984) which concluded that the United States Attorney is not required by "the criminal contempt of Congress statute, 2 U.S.C. Sections 192, 194…(to) prosecute or refer to a grand jury for contempt of Congress issued with respect to an Executive Branch official who has asserted a claim of privilege in response to written instructions from the President of the United States."  The 2014 OLC opinion affirmed the earlier 1984 opinion.  We now know from the OLC opinion of Solicitor General Paul Clement in 2007 that executive privilege is not limited to Executive Branch Officials but applies equally to individuals outside the Government such as Mr. Bannon.  Based on the foregoing, the United States Attorney and the DOJ have discretion to decline prosecution of Mr. Bannon and should do so in this instance.  This would be consistent with prior decisions involving Eric Holder, Lois Lerner and others.

**B.     The Subpoena issued by the Select Committee was illegal and invalid.**

The subpoena accepted by counsel for Mr. Bannon was illegal and therefore invalid because it contained rules that, in an executive privilege case, denied access to the private deposition to everyone except the witness and his personal counsel.  During a conversation with staff counsel Sean Tonolli, who stated that he was going to be the staff counsel questioning Mr. Bannon, I inquired about the written rule limiting attorney presence to Mr. Bannon's personal counsel.  Mr. Tonolli confirmed that the rule was the position of the Select Committee.  That rule, imposed by this Select Committee, knowing that it would encounter claims of executive privilege,

has been found by OLC to be unconstitutional and as a result, in the opinion of the OLC, the Subpoena issued by the Committee is illegal and invalid.

On May 13, 2019, the OLC issued an opinion regarding the constitutionality and enforceability of subpoenas issued by the House Committee on Oversight and Reform. The Committee sought to question the two witnesses subpoenaed "about matters that potentially involved communications that were protected by executive privilege. Although the Committee's Rule 15 (e) permitted the witnesses to be accompanied at the depositions by private counsel, who would owe duties to the witnesses themselves, the rule purported to bar the presence of agency counsel, who would represent the interests of the Executive Branch." In response to the request by the Attorney General, the OLC "advised that a congressional committee may not constitutionally compel an executive branch witness to testify about potentially privileged matters while depriving the witness of the assistance of agency counsel." While OLC speaks of "agency counsel" in the opinion, in a footnote, OLC adds that their "analysis applies equally to all counsel representing the interests of the Executive Branch, no matter whether the witness works for an "agency", as defined by statute."

With respect to the Constitutional question, the OLC stated: "we concluded that Congress may not compel an executive branch witness to appear without agency counsel and thereby compromise the President's constitutional authority to control the disclosure of privileged information and to supervise the Executive Branch's communications with congressional entities...Committee subpoenas purporting to require the witnesses to appear without agency counsel were legally invalid and not subject to civil or criminal enforcement."

This same provision is found in the rules attached to the subpoena served upon Mr. Bannon's counsel and as such, renders the subpoena illegal and invalid in accordance with the opinion of the Office of Legal Counsel. The rule provided to counsel for Mr. Bannon reads:

> "3. Witnesses may be accompanied at a deposition by personal, non-governmental counsel to advise them of their rights. Only members, committee staff designated by the Chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend."

C.    **The Department of Justice May Not Prosecute White House Officials or *former* White House Officials for Contempt of Congress.**

On February 29, 2008, the OLC issued an opinion to then Attorney General Michael B. Mukasey, who asked whether the Department of Justice may bring before a grand jury, criminal contempt of Congress citations, or take any other prosecutorial action, with respect to current or *former* White House officials who declined to provide documents or testimony, or who declined to appear to testify, in response to subpoenas from a congressional committee, based on the President's assertion of executive privilege or the immunity of senior presidential advisers from compelled congressional testimony. The OLC concluded it may not.

The opinion unequivocally explained that the:

"Department of Justice has long taken the position, *during administrations of both political parties*, that the criminal contempt of Congress statute does not apply to the President or presidential subordinates who exert executive privilege."

The opinion goes on to cite different examples of the Department of Justice adhering to that standard over the years, citing *opinions by Theodore Olson in 2008 during the George W. Bush Administration and Walter Dellinger during the Clinton Administration.*

**D.    Contrary to the position taken by Chairman Thompson, the Select Committee and current White House counsel, President Trump retains the right to exercise the invocation of executive privilege.**

The issue of whether President Trump can legally invoke executive privilege has plagued these proceedings, because the Committee, as well as certain sectors of the press, have consistently stated that Mr. Bannon could not invoke the executive privilege because executive privilege is held by the sitting President and not a former President; they add that even if President Trump could involve executive privilege, Mr. Bannon would not be covered because Mr. Bannon was not a government employee at the time of the communications. That position, embraced by the Select Committee, is wrong on both fronts. In *Nixon v. Adm'r of Gen Services,* 433 U.S. 425, 448-49 (1977), the Supreme Court stated:

"Nevertheless, we think that the Solicitor General states the sounder view and we adopt it. This Court held in *United States v. Nixon,* ... that the privilege is necessary to provide the confidentiality required for the President's conduct of office. Unless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends. The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; **the privilege is not for the benefit of the President as an individual, but for the Republic. Therefore, the privilege survives the individual President's tenure."** (emphasis supplied).

**E.    Contrary to Chairman Thompson's assertions, a non-governmental employee such as Stephen K. Bannon can invoke executive privilege.**

Although a theory that Mr. Bannon has no right to refuse to testify based upon executive privilege since he was not a government employee at the time has been bandied about by partisan members of the Select Committee and of Congress devoid of any knowledge of this area of the law, it is simply not accurate and not the policy of the DOJ.

On June 27, 2007, Paul Clement, who was at the time both the Solicitor General and Acting Attorney General of the United States, wrote a legal opinion for then President George W. Bush, concerning the issue of subpoenas that had been issued by the House Judiciary Committee, relating to the resignations of several United States Attorneys in 2006. The House sought documents in the possession of current or *former* White House officials. Additionally, testimony was sought from two *former* officials. The President requested guidance on whether he could assert executive

7

privilege with respect to *both* the current *and former* White House officials. Paul Clement found that:

> "communications between White House officials and individuals outside the Executive Branch, including with individuals in the Legislative Branch…fall within the scope of executive privilege…Naturally, in order for the President and his advisers to make an informed decision, presidential aides must sometimes solicit information from individuals outside the White House and the Executive Branch."

A prosecution of Mr. Bannon for criminal contempt of Congress would be in violation of years of precedent in cases involving the executive privilege and would fly in the face of the OLC opinions discussed above. It would only serve to satisfy the political agenda of the Select Committee and would not ensure answers to the questions they have posed. The Select Committee must first resolve their differences on executive privilege in Federal Court or with Donald Trump, rather than trying to utilize the Department of Justice to make an example of Mr. Bannon, as the Chairman of the Select Committee has stated on national television.

**F.     The Trump Lawsuit filed October 18, 2021 challenges the very existence of the Select Committee and therefore challenges its ability to issue subpoenas to anyone.**

On October 18, 2021, counsel for President Trump filed *Trump v. Bennie Thompson,* 21-Civ- 02769, ( D.D.C. 2021). That is the lawsuit we asked for time to review before responding to Chairman Thompson's letter of October 15, 2021. That lawsuit provides the Select Committee and counsel for President Trump with the Federal Court forum within which to decide the issues of the constitutionality of the Select Committee, President Trump's ability to invoke executive privilege and the scope of such invocation. The constitutionality of the Select Committee is challenged in the Trump lawsuit, because it has abrogated to itself investigative and prosecutorial powers that are the exclusive province of the Executive Branch. If President Trump prevails in that lawsuit, it will establish yet another basis to invalidate the subpoena issued to Mr. Bannon and indeed anyone else subpoenaed by the Select Committee. Simply put, President Trump argues that there is no legislative purpose to the Select Committee's actions. President Trump argues that the Select Committee's only purpose is to investigate. That investigative function belongs exclusively to the Executive Branch, more specifically, to the Federal Bureau of Investigation ("FBI"). The FBI has already investigated this event and reached conclusions that some Members of the House are not satisfied with, so they have unconstitutionally seized upon this to form a Select Committee to do that which is delegated solely to the Executive Branch. A favorable decision for President Trump will render all activities of the Select Committee unconstitutional and moot, including their referral for criminal prosecution.

## CONCLUSION

Any decision to go forward with a prosecution, would be contrary to all existing rules of the Justice Department and could appear to be based on the pressure being applied by a partisan Congress and unfortunately, by the President. A decision to decline would go a long way to demonstrate the Department of Justice and the Attorney General's desire to decide issues like this

solely on the law and the existing rules and regulations. Any decision to go forward would violate decades of opinions of the OLC under both Democrat and Republican Presidents.

As detailed above, Mr. Bannon's conduct here was far from contemptuous. In fact, he was acting on advice of counsel, consistent with the several opinions of the OLC which are outlined above. Mr. Bannon is not a witness who has flouted either the Congress or the Independent Counsel assigned to investigate specified matters. The law in the area of executive privilege is the basis of President Trump's current lawsuit in Federal Court against the Committee. Mr. Bannon is covered by executive privilege, in the opinion of the OLC. President Trump was entitled to invoke executive privilege according to the United States Supreme Court. President Trump through his counsel directed Mr. Bannon not to provide documents or testimony, citing executive privilege. The OLC has opined that under these circumstances, a current or former White House employee should not be indicted and charged with criminal contempt of Congress. As I stated to Chairman Thompson, since the rules set up by the Select Committee did not allow for any participation by the President's counsel to protect executive privileges, and as the OLC opinion states, in circumstances exactly like this one, where Congress has imposed rules which prohibit counsel for the President to be present and object to testimony based upon executive privilege, the subpoena itself is unconstitutional, illegal and invalid. That being the case, there is nothing for the United States Attorney's Office for the District of Columbia to consider. Accordingly, the USAO-DC should refuse to allow itself to be used as a political pawn to make an example of Mr. Bannon, who was acting on the advice of both his own counsel and the settled policy of the Office of Legal Counsel, in preserving President Trump's invocation of executive privilege. Therefore, the USAO-DC should decline to prosecute Mr. Bannon.

Respectfully submitted for your consideration,

Robert J. Costello
Counsel for Stephen K. Bannon

# EXHIBIT D

**From:**          Costello, Robert J.
**Sent:**          Wednesday, November 3, 2021 11:28 AM
**To:**            Joseph Cooney
**Subject:**       WebEx

Mr. Cooney,
   I just wanted to alert you that I will be joined today around 12:15 by Adam Katz Esq., who worked with me on the memo we provided to your office.  Mr. Katz is conducting a court ordered deposition which is why he will be a little late. We will not need to wait for him.
                Bob Costello

# EXHIBIT E

| | |
|---|---|
| **From:** | Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> |
| **Sent:** | Wednesday, November 3, 2021 5:57 PM |
| **To:** | Costello, Robert J. |
| **Cc:** | Gaston, Molly (USADC); Vaughn, Amanda (USADC) |
| **Subject:** | Meeting Follow-Up |
| **Attachments:** | Letter to Robert Costello-11.03.2021.pdf |

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Dear Mr. Costello:

Thank you again for the memorandum you forwarded us on Monday and for meeting with us today.  As promised, a list of the U.S. Attorney's Office and FBI participants in the meeting is below.

Attached, please find a letter memorializing our document requests.  If you have any questions or concerns, please do not hesitate to email or call.  Could you also please do us the favor of forwarding this to Adam Katz and letting us know his contact information?

Thank you,

J.P. Cooney

U.S. Attorney's Office for the District of Columbia, Public Corruption & Civil Rights Section
J.P. Cooney, Chief
Molly Gaston, Acting Deputy Chief
Amanda Vaughn, Assistant United States Attorney
Chad Byron, Paralegal

FBI, Washington Field Office
SA Frank D'Amico
SA Stephen Hart
SA Matthew Lariccia
SA Katherine Pattillo

J.P. Cooney
Chief, Public Corruption & Civil Rights Section
U.S. Attorney's Office for the District of Columbia
C/ 202-468-4529; O/ 202-252-7281



**U.S. Department of Justice**

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

November 3, 2021

**DELIVERY VIA EMAIL**
Mr. Robert J. Costello
Davidoff Hutcher & Citron LLP
605 3rd Ave.
New York, NY 10158
Email: rjc@dhclegal.com

   RE:  Stephen K. Bannon

Mr. Costello and Mr. Katz:

   Thank you for meeting with us today to discuss the U.S. House of Representatives' referral of House Resolution 730, concerning your client, Stephen K. Bannon, to the United States Attorney's Office for the District of Columbia. Per our discussion, in connection with our Office's independent examination of the referral, we request that you produce to us as soon as practicable the following documents and information for the period spanning September 22, 2021, to the present:

1. Correspondence between representatives of Mr. Bannon and representatives of the January 6 Select Committee, including but not limited to Chairman Bennie Thompson, Kristin Amerling, and Sean Tonolli;

2. Correspondence between representatives of Mr. Bannon and representatives of former President Donald Trump, including but not limited to Justin Clark;

3. Correspondence between representatives of Mr. Bannon and representatives of President Joseph Biden, including but not limited to the White House Counsel's Office and Jonathan Su; and,

4. The letter that you, on Mr. Bannon's behalf, were preparing to send to the Select Committee on October 18, 2021, described on page 4 of your October 29, 2021, Memorandum addressed to our Office.

The word "correspondence" includes written correspondence, such as formal letters and emails, and contemporaneous memorialization of oral correspondence, such as notes, emails, and calendar entries.

In addition, we kindly request that you maintain copies of records, electronic or physical, that relate to your representation of Mr. Bannon arising from the Select Committee's subpoena. As you are aware, our independent examination of this matter is ongoing and may prompt future information requests.

We appreciate your assistance in this matter.  Please do not hesitate to contact us with any questions.

Sincerely,

CHANNING D. PHILLIPS
Acting United States Attorney

By: _____
J.P. Cooney
Molly Gaston
Amanda R. Vaughn
Assistant United States Attorneys
Public Corruption and Civil Rights Section

Joseph.Cooney@usdoj.gov; 202.252.7281
Molly.Gaston@usdoj.gov; 202.252.7803
Amanda.Vaughn@usdoj.gov; 202.252.1793

# EXHIBIT F

**From:**          Costello, Robert J.
**Sent:**          Wednesday, November 3, 2021 8:49 PM
**To:**            'Joseph.Cooney@usdoj.gov'
**Subject:**       FW: Transfer file from "Epson Connect Scan to Cloud"
**Attachments:**   Epson_11032021171431.pdf

Dear Mr. Cooney,

   Attached please find a file which contains all of the correspondence between and among , the Select Committee, myself, and White House Counsel.  Please excuse the line through the documents which is the result of my home scanner malfunctioning.  I will endeavor to provide you with a clean copy without the line in the near future.  As soon as I locate the  letter I received from Justin Clark, acting as counsel for President Trump, I will forward that under separate cover.

   The documents provided are in chronological order  beginning with:

   1. My October 7 , 2021 letter to the Committee;

   2. October 8, 2021 response from the Committee;

   3. My October 13, 2021 response to the Committee's October 8, 2021 letter;

   4. October 15, 2021 response form the Committee;

   5 & 6. By separate email, I sent the October 18, 2021 draft to the Committee that was not sent and the October 18, request for an adjournment which was sent.

   7. October 18, 2021 letter from White House Counsel received at 6:50pm;

   8. October 19, 2021 letter from the Committee denying the requested adjournment to consider the Trump Lawsuit received at 10:46 am.

   9. October 19, 2021 letter from The Committee, received at 8:49 pm, after the Committee vote to recommend criminal contempt charges, asking Bannon to "change course."

                                        Bob Costello

# EXHIBIT G

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Wednesday, November 3, 2021 7:59 PM |
| **To:** | 'Joseph.Cooney@usdoj.gov' |
| **Subject:** | FW: Steve Bannon: Touching base about tomorrow |

    The below email references a telephone call between myself and Sean Tonolli, the night before, October 12, 2021 which is when I mentioned the rule about no attorneys other than Bannon's personal counsel could attend.  I also told Mr.Tonolli  that I would be sending Chairman Thompson a letter informing him that Mr. Bannon would not be appearing for the deposition. I promised Mr. Tonolli that I would send him a copy of that letter

    Tonolli told me he had worked at Cahill Gordon and I told him I went to law school with Tom Kavaler.

Bob Costello

**From:** Tonolli, Sean <Sean.Tonolli@mail.house.gov>
**Sent:** Wednesday, October 13, 2021 12:35 PM
**To:** Costello, Robert J. <rjc@dhclegal.com>
**Subject:** Steve Bannon: Touching base about tomorrow

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Bob,

It was good talking with you last night. And hearing your take on Tom Kavaler.

Did you end up sending your letter, or is it on the way?

If you and your client are coming, I need to arrange the logistics. You will need to meet with a member of our security team, who, because of COVID restrictions, has to escort you into and through the building.

Can you give me a call to discuss? My numbers are below.

Thanks,
Sean

**Sean P. Tonolli**
Senior Investigative Counsel
Select Committee to Investigate
 the January 6th Attack on the United States Capitol
U.S. House of Representatives
(202) 226-2888 (o) / (202) 308-5947 (c)

# EXHIBIT H

| | |
|---|---|
| **From:** | Costello, Robert J. |
| **Sent:** | Thursday, November 4, 2021 11:13 PM |
| **To:** | Cooney, Joseph (USADC) |
| **Subject:** | Re: Follow Up on 11/3/2021 Meeting |

You're working too late.

Sent from my iPhone

> On Nov 4, 2021, at 11:05 PM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov> wrote:

**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO NOT TRUST**

Thank you very much, Mr. Costello.

J.P. Cooney
C/202-468-4529
O/202-252-7281

**From:** Costello, Robert J. <rjc@dhclegal.com>
**Sent:** Thursday, November 4, 2021 10:58 PM
**To:** Cooney, Joseph (USADC) <JCooney@usa.doj.gov>
**Subject:** [EXTERNAL] Re: Follow Up on 11/3/2021 Meeting


   In response to your letter, I went through my emails both incoming and outgoing.  At the risk of being redundant, I sent you a number of emails which in several cases is rally the covering email which will show you when the email was received or sent.
   I will try to go over my text messages over the weekend, to make sure I have provided you what we have.
   You have bates stamped all of the documents I provided before tonight, but they are not in chronological order.
    As far as a follow up interview I will check with Adam Katz for his availability,
But mine would be Monday afternoon or Wednesday.  As soon as I reach Adam I will let you know.
   You are being very diligent in collecting documents, but that factual background is unnecessary according to the OLC opinions of May 13,2019 and February 29, 2008.  That being said, I will be happy to answer any follow up questions you may have.
            Bob Costello

Sent from my iPhone

On Nov 4, 2021, at 8:27 PM, Cooney, Joseph (USADC) <Joseph.Cooney@usdoj.gov>
wrote:


**CAUTION: EXTERNAL MAIL. DO NOT CLICK ON LINKS OR OPEN ATTACHMENTS YOU DO
NOT TRUST**

Mr. Costello:

Enclosed, please find a cover letter, Bates stamped compilation of your production to
us, and index.  As inquired in the letter, could you please review and let us know if this
constitutes your entire production?

Thank you again for meeting with us yesterday.  Are you and Mr. Katz available for
another videoconference?  We have a few follow up questions.  We can be available
tomorrow (Friday) afternoon at or after 2:30; or Monday?  Please let us know a time or
times that work for you and Mr. Katz.

Thank you,

J.P. Cooney


J.P. Cooney
Chief, Public Corruption & Civil Rights Section
U.S. Attorney's Office for the District of Columbia
C/ 202-468-4529; O/ 202-252-7281

<Index-Bannon Production-11.04.2021.pdf>
<Bannon Production-11.04.2021.pdf>
<Letter to Robert Costello-11.04.2021.pdf>


**IMPORTANT NOTICE:**Beware of Cyber Fraud. You should <u>never</u>
wire money to any bank account that our office provides to you via email
without first speaking with our office. Further,<u>do not</u> accept emailed
wiring instructions from anyone else without voice verification from a known
employee of our office. Even if an email looks like it has come from this
office or someone involved in your transaction. <u>Please call us first at a number
you know to be correct for this office</u> to verify the information before wiring
any money. Be particularly wary of any request to change wiring instructions
you already received.
***********************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any
attachments to this message are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information.
If you are not the intended recipient, please notify us immediately
by email reply to sender or by telephone to Davidoff Hutcher & Citron
LLP at (800) 793-2843, ext. 3284, and destroy all copies of this
message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform