# EXHIBIT 2

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

OFFICIAL RECORD
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

Date of entry    11/10/2021

     Sean Tonolli, Senior Investigative Counsel, U.S. House of
Representatives Select Committee to Investigate the January 6th Attack on
the United States Capitol, was interviewed at the Thomas P. O'Neill Jr.
Federal Building, 200 C Street SW, Washington, D.C. He was accompanied by
U.S. House of Representatives General Counsel Doug Letter and by U.S. House
of Representative Deputy General Counsel Todd Tatelman who attended via
telephone.  Tonolli was interviewed by Assistant United States Attorney
(AUSA) J.P. Cooney, US Attorney's Office for the District of Columbia (USAO-
DC), AUSA Molly Gaston USAO-DC, AUSA Amanda Vaughn USAO-DC, FBI Special
Agent Katherine E. Pattillo, FBI Special Agent Frank G. D'Amico, and FBI
Special Agent Stephen R. Hart. After being advised of the identities of the
interviewing agents and attorneys and the nature of the interview, Tonolli
provided the following information.(Tonolli was shown various exhibits
during the interview.  These will be referenced when shown during the
interview and will be maintained electronically in the 1A section of the
file.  The numbering convention provided by the Select Committee will be
used to identify specific pages.):

     Tonolli graduated from law school in 2005 and joined the United States
Attorney's Office (USAO) for the District of Columbia (DC) after clerking
for a federal judge.  Tonolli worked as a prosecutor for the USAO DC for
approximately four years before transitioning to the Eastern District of
Virginia (EDVA).  He departed EDVA in March 2014 to work for the private
firm Cahill Gordon & Reindel.  He stayed with this firm until September 2021
when he joined the U.S. House of Representatives Select Committee to
Investigate the January 6th Attack on the United States Capitol (the Select
Committee) team.  Tonolli is senior investigative counsel for one of five
investigative teams and reports to Tim Heaphy (Heaphy).  Tonolli is assigned
to the "red team" which is focused on matters related to rioters, certain
political rallies, and "war room" meetings which may have occurred in hotels
preceding 6 January 2021.  Tonolli's team is also peripherally responsible

Investigation on  11/02/2021  at  Washington, District Of Columbia, United States (In Person)

File #  72-WF-3513323                                      Date drafted  11/03/2021

by  Katherine E. Pattillo, HART STEPHEN R, SA FRANK G. DAMICO

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-000358

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of  (U)  Interview of Sean Tonolli                          , On  11/02/2021  , Page    2 of 5

for examining the chronology of events at the White House on 6 January 2021.

Tonolli had been on staff less than two weeks when the Select Committee's subpoena for Stephen K. Bannon (Bannon) was issued.  He was not involved in the decision to issue the subpoena nor did he participate in drafting either the subpoena or the attached schedule describing the range and scope of documents requested.  Tonolli was assigned to depose Bannon and has, consequently, reviewed the subpoena, the subpoena schedule, and all official correspondence between the Chairman of the Select Committee and Bannon's counsel, Robert "Bob" Costello (Costello).

When shown the Bannon subpoena and the Chairman's accompanying letter dated September 23, 2021 (Jan. 6 Sel. Comm 0003-0010), Tonolli confirmed that the second paragraph in the letter accurately summarized the Select Committee's mandate.  He further confirmed that the penultimate paragraph described prospective topics about which Bannon might be asked during the course of his deposition.  According to Tonolli, these topics all fall within the scope of the Select Committee and many are wholly unrelated to former President Trump.  For example, Bannon's podcast, The War Room, may have sponsored a "Women for America First" bus tour which encouraged attendance at 6 January, pro Trump rallies.

Tonolli explained the Select Committee staggered the production of documents deadline and the deposition / appearance deadline to allow Select Committee members to review any records provided as part of the deposition preparation.  In the case of Bannon, documents were required by the Select Committee by October 7, 2021 and deposition testimony on October 14, 2021. No responsive documents were ever provided by Bannon or any representative.

Tonolli confirmed that he was familiar with documents identified as Jan. 6 Sel. Comm. 0011-0015, correspondence between Select Committee representative Kristin Amerling (Amerling) and Costello between October 7-8, 2021.  The letter from Costello referenced correspondence he received from Justin Clark, counsel for former President Trump.  Costello quoted an excerpt from this letter in which Clark suggests there is a subset of documents requested by the Select Committee which may be "potentially protected from disclosure by executive and other privileges."  Tonolli was not aware of the Select Committee ever receiving correspondence from Clark or anyone representing former President Trump regarding executive

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of  (U) Interview of Sean Tonolli _____ , On  11/02/2021 , Page  3 of 5

privilege.  It was Tonolli's understanding that the Chairman's response
(Jan. 6 Sel. Comm. 0013-0015) clearly articulated Bannon was still required
to appear for his deposition, could not assert executive privilege, and
reminded Costello that Bannon had an ongoing responsibility to provide the
documents requested by the subpoena and / or a privilege log.

   After determining that no one from the Select Committee had been in touch
with Costello regarding the upcoming, scheduled deposition, Tonolli called
Costello at some time after 7pm on the evening of October 12, 2021.  This
was the first of three brief phone calls between the two men over the course
of October 12-13, 2021.  Prior to contacting Costello, Tonolli cleared the
call with Amerling or David Buckley.  The purpose of the call was strictly
to introduce himself and to discuss logistics associated with Bannon's
appearance.  Tonolli first called Costello's office number and subsequently
reached Costello on the cell phone number provided by his office voice mail;
the call lasted approximately ten to fifteen minutes.  Costello was
initially quite gruff but seemed to warm as Tonolli introduced himself,
highlighted their shared experience as federal prosecutors, and mentioned a
mutual acquaintance, Tom Kavalar.  Given COVID protocols and the high
profile nature of Bannon's testimony, Tonolli explained he wanted to ensure
that all necessary arrangements were in place for the deposition.  Costello
informed Tonolli that it was "highly unlikely" that Bannon would be
appearing on Thursday, October 14, 2021.  Costello mentioned that he planned
on sending a letter to the Select Committee Chairman but asked Tonolli to
refrain from sharing that information.

   Tonolli's intent upon initiating a dialogue with Costello was
exclusively to engage in discussions about the logistics of Bannon's
deposition and he explicitly stated so to Costello; neither Tonolli nor
Costello attempted to engage in substantive legal conversation.  During the
course of this call, Costello never directly referenced any communications
with Bannon although he did make several statements using the prounoun "we"
which Tonolli presumed included Bannon.  Tonolli also got the sense from his
conversation with Costello that he had previously represented Bannon and
there was a certain level of familiarity in their working relationship.

   During this first call or possibly on 13 October, Costello complained to
Tonolli about comments made by Select Committee member Representative Adam
Schiff in the media.  Costello characterized these remarks as unhelpful but

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of  (U) Interview of Sean Tonolli                    , On  11/02/2021  , Page   4 of 5


Tonolli did not engage him on this topic nor had he seen the news coverage
in question.  They concluded their call on the 12th with no specific plans
to speak again.  However, Tonolli knew he would reach out the following day
to confirm again that Bannnon and / or Costello did not intend to appear for
the scheduled deposition.  Tonolli gave Heaphy a summary of this call and
may also have discussed it with Kevin Elliker (Elliker), an attorney who
sits behind him.

    On October 13, 2021, Tonolli spoke with Costello twice.  Both of these
calls were memorialized in two emails he sent to David Buckley, Amerling,
and Heaphy; these are identified as Jan. 6 Sel. Comm. 0054- 0055.
Costello called Tonolli at approximately 1:40pm in response to an email sent
by Tonolli.  They spoke for no more than ten minutes and Tonolli put the
call on speakerphone so it could be witnessed by Elliker.  Costello was
initially quite aggressive and asserted very clearly that neither he nor
Bannon had any intention of attending the scheduled deposition.
Costello also expressed frustration that former President Trump's legal team
would not respond to him and mentioned Justin Clarke specifically.
Costello asked Tonolli if the Select Committee had been in contact with
representatives of former President Trump's legal team.  Tonolli shared that
he was not aware of any communications between the Select Committee and any
counsel for former President Trump.

    Tonolli did not engage in any substantive conversation about the legal
merits of any privilege arguments nor did he reiterate the Select
Committee's position on these matters as articulated in the Chairman's
letters to Costello.  Tonolli asked if Costello had submitted the letter to
the Chairman referenced in the previous evening's phone call given that it
might impact his preparations for the deposition.  Costello said he was
still drafting the letter and would let Tonolli know when it had been sent.

    Costello called Tonolli at his desk at approximately 4:10pm on October
12th to share that he expected to send the letter shortly but confirmed
again that neither he nor Bannon would be attending the depostion.  This
call again lasted no more than ten minutes.  Costello clearly seemed to
understand that Bannon was still expected to appear as described in the
Congressional subpoena.  In fact, he distinguished between being commanded
by a court versus Congress and caveated a remark with, "if a court later
orders this to happen."  Costello likened their respective situations to

US-000361

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of  (U)  Interview of Sean Tonolli _____ , On  11/02/2021  , Page   5 of 5

having ringside seats to a privilege showdown.  During the course of the conversation, Costello raised two issues to which Tonolli did not provide answers.  Costello was clear that he did not expect immediate answers because neither he nor Bannon would be appearing for the deposition regardless.

Costello asked Tonolli if there would be any way for a third party attorney to attend the deposition to assert executive privilege on behalf of former President Trump.  Costello was aware that the Select Committee's deposition rules prohibited third party attorneys.  Costello also inquired about the possibility of conducting the deposition remotely.  Tonolli did not feel obligated to lecture Costello on the consequences of his client failing to appear given Costello's experience and seniority.  Tonolli agreed that the letter finally sent to the Select Committee Chairman by Costello did not raise any of the issues mentioned during this call nor did it contemplate other conditions under which Bannon might opt to appear.  Tonolli might have discussed this call with Amerling.

On the morning of October 14, 2021, Tonolli was in the room designated for the deposition by the Congressional subpoena.  Also present were a court reporter, Elliker, Heaphy, Amerling, Select Committee parliamentarian Barry Pump, Chief Clerk Evan Malder (ph), Samantha Stiles (ph), Chief Administrative representative and Congressman Schiff attended virtually.  Tonolli had prepared an outline for the deposition with supporting documentation; topics to be covered were within the scope of the Select Committee's mission.  Tonolli had also prepared a manila folder of documents to be provided to Bannon should he appear.  This manila folder contained a copy of House Resolution 503, Section 3(b) of House Resolution 8, and a copy of the 117th Congress Regulations For Use of Deposition Authority.

At the conclusion of the interview, Tonolli retrieved the above described folder prepared for Bannon's deposition and provided it to SA Pattillo.  An FD-597 Receipt for Property was signed by Tonolli and a copy was provided to U.S. House of Representatives General Counsel Doug Letter.  The original will be maintained in the 1A section of this file and the folder will be maintained as a single 1B item.