UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

### UNITED STATES' SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY RELATING TO ROBERT COSTELLO AND MOTION TO AMEND THE PROTECTIVE ORDER

In his reply in support of his motion to compel discovery pertaining to the Government's investigative steps related to Robert Costello, ECF No. 34, the Defendant accuses the Government of fabricating email addresses and making misrepresentations to a federal judge. *See id*. at 3. The Defendant's allegations are false. The Government took appropriate investigative steps, in part relying on intelligence from law enforcement databases, to confirm the Defendant's knowledge of Congress's subpoena—an essential element of contempt—including trying to determine whether and when in the relevant period the Defendant communicated with Robert Costello, the Defendant's intermediary with Congress. As is commonplace in investigations, some of those steps did not yield relevant information, and the Government's understandings evolved as its investigation progressed. Such twists and turns are common in any investigation. Defendant spends 25 pages attempting to twist relatively common investigative steps and evidentiary dead ends into something that they are not.

All that Defendant's hyperbolic allegations achieve is to further demonstrate why his motion should be denied, particularly now that he has admitted most of the records he claimed to be protected by the attorney-client privilege relate in no way to his attorney or this case. Moreover, the Defendant's choice to use his reply to publish the identifying information of unrelated

individuals warrants amending the Protective Order in this case. Finally, the new legal arguments the Defendant raises for the first time in his reply are based on an erroneous understanding of the law. The Defendant's motion should be denied.

I.  **The Government Took Appropriate Investigative Steps to Confirm the Defendant's Knowledge of the Subpoena.**

To prove contempt of Congress, the Government must show that failure to comply with a valid congressional subpoena was deliberate and not the result of an accident. A necessary and reasonable step in any investigation of contempt of Congress, then, is to establish that a subpoenaed witness had knowledge of the subpoena. In the Defendant's case, Robert Costello was an intermediary between the Defendant and the Committee and the Defendant and others tangentially involved in the Defendant's compliance. Mr. Costello is a witness, therefore, to the Defendant's knowledge of the subpoena's demands, and his communications, or lack thereof, with the Defendant were relevant to the Government's investigation. Although the Defendant has now conceded in his post-indictment pleadings that he knew of the subpoena's demands and intentionally ignored them, neither he nor his attorneys dictate the proper bounds of the Government's investigation. The Government has an obligation to ensure every element of the offense is established. And that is exactly what the Government did, including investigating the timing and manner of the Defendant's contacts with Mr. Costello, the individual communicating the subpoena's contents to him.

These appropriate investigative steps included gathering records—but not content—related to email addresses and phone numbers that the Government had reason to believe were connected to Mr. Costello.[1] The three email addresses about which the Defendant complains in his reply are

---

[1] Defendant makes much of the fact that the Government knew Mr. Costello's law firm email address. ECF No. 34 at 9 n.8. The existence of one email account, though, does not mean that it

2

addresses that law enforcement databases identified as being associated with Mr. Costello and one of his known addresses in Manhasset, New York. The Government will refer to these email addresses as the Yahoo Account, the Comcast Account, and the Google Account. In an effort to confirm the use of these accounts by Mr. Costello, the Government first obtained subscriber information for each of them. Based on the subscriber records obtained for the Yahoo Account and Comcast Account, the Government did not believe the accounts contained records of relevance and the investigation with respect to those two accounts ended there.

With respect to the Google Account, the subscriber records obtained identified the subscriber's name as "Robert Costello" with a phone number with a Westchester County, New York area code. The information obtained also included a separate record that contained billing information. The billing information included a Westchester County, New York address and a phone number with a Vermont area code. Law enforcement database information had not previously identified these phone numbers and address as associated with Mr. Costello, but, based on information obtained in the investigation to that date, Mr. Costello was believed to live in or around New York City and to have done so for an extended period. It is not uncommon for subscriber data to include any number of previously unknown addresses or phone numbers. The billing information also included a middle initial different from Mr. Costello's, and another email address that included an apparent middle name different from Mr. Costello's. The responsive subscriber data included information showing that the account user had actively been logging into the account between September 22 and October 21, 2021—the period relevant to the conduct at issue in this case. From the information it had gathered, the Government believed the law

---

was Mr. Costello's only email account or the only email account that Mr. Costello would have used to communicate with the Defendant.

3

enforcement database information and subscriber information indicated the Google Account belonged to Mr. Costello and had been actively used during the relevant period. The Government acknowledges that in reaching this conclusion, it did not recognize the inconsistent middle name in the billing information.

Based on the Government's conclusion, the Government proceeded with its investigation to determine the means by which Mr. Costello communicated with various parties involved in the Defendant's contempt. To do so, the Government obtained the subscriber and toll records for the Westchester County phone number and the Government applied for and obtained an order pursuant to 18 U.S.C. § 2703(d) for email header information and further identifying information for the Google Account. These were appropriate investigative steps. Phone records and orders issued under Section 2703(d) are regularly used to help Government investigators confirm use of accounts and means of communication and to exclude accounts ultimately determined to be irrelevant.

The subscriber records obtained for the Westchester County phone number included the same name, "Robert Costello," the same Google Account email address, and the same physical address that was included in the Google Account subscriber and billing records. The records did not include additional identifying information for the user of the account.

Pursuant to the Order issued under 18 U.S.C. § 2703(d), Google provided additional subscriber information that the Government had not possessed previously. This new information included the birth date that the Defendant references in his reply. Google also provided other identifying information about the account, including about the services the subscriber used.

The Government undertook no further investigation with respect to Mr. Costello's communications. And, as explained in its January 7, 2021, letter to counsel, ECF No. 26-2 at 2, and again in its opposition to the Defendant's motion, ECF No. 31 at 11-12, the Government at no

time attempted to obtain the content of any communication between Mr. Costello and the Defendant or between any other attorney and the Defendant.

II. **The Defendant Should Be Ordered to Refrain from Publicly or Privately Disclosing Identifying Information for Uninvolved Individuals, and the Court Should Make an Inquiry Regarding a News Article.**

Now that Mr. Costello has sworn the Google Account, Yahoo Account, Comcast Account, and the Westchester County, New York phone number are not his, *see* ECF No. 34-1 at 2 ¶ 3, Mr. Costello's declaration renders the information contained therein entirely irrelevant to the facts of this case. Accordingly, the Government respectfully requests that the Court order the Defendant make no further use of any of the personal identifying information therein—either privately or in public filings—to prevent further public harassment of individuals unrelated to this case.

Specifically, the Defendant's unfortunate choice to include in his publicly filed reply unrelated individuals' identifying information—including their email addresses, a middle initial, a city of residence, and a description of one's age range, *see, e.g.*, *id*. at 4, 6-9—warrants amendment of the Protective Order in this case. The Defendant could easily have made all the arguments in his reply without publicly exposing private information of unrelated third parties. To avoid the risk of further disclosure of uninvolved third parties' private information—either through private disclosures or in public filings—the Government respectfully requests that the Court amend the Protective Order, ECF No. 20, to require that the Defendant make no further use of the information of any individuals named Robert Costello other than his attorney—either privately or in public filings.

In addition, the Government respectfully requests that the Court make an inquiry of the Defendant regarding whether he provided any of these unrelated individuals' information to a reporter in violation of the Protective Order. In particular, the Government has discovered a public news article, identified as being published at 6:12 p.m. ET on March 8, 2022—over an hour before

5

the Defendant filed his reply—that includes a detailed discussion of the Defendant's reply brief and recounts contacts the reporter made with these uninvolved individuals.[2] Although the article states it was "updated" at 9:00 p.m. ET on March 8, the Wayback Machine, an online archive that stores copies of websites as they existed at certain points in time, captured the article as it appeared at 6:17 p.m. ET. According to the version captured by the Wayback Machine at 6:17 p.m. ET, even though the Defendant had not yet filed his reply, the public news article already included information about the claims in the Defendant's reply and details of the reporter's contacts with the other purported "Robert Costellos."[3] Accordingly, it appears that a reporter was given access to identifying information about uninvolved individuals before the Defendant's reply was filed. The Government does not know how the reporter obtained the uninvolved individuals' information, but the subscriber information provided in this case was provided pursuant to the Protective Order, which prohibits the Defendant or his counsel from using the materials for any purpose other than "in connection with the defense of this case . . . without further order of this Court." ECF No. 20 ¶ 2. Under these circumstances, the Government believes an inquiry of the Defendant regarding any contacts with the reporter in the article described above would be appropriate.

---

[2] *Available at* https://www.thedailybeast.com/the-fbi-cast-an-incredibly-questionable-dragnet-for-steve-bannons-lawyer-bob-costello (last accessed Mar. 14, 2022). Separately, the reporter tweeted a link to the article and called it an "exclusive." *See* https://twitter.com/Jose_Pagliery/status/1501378936093253632?cxt=HHwWgIC98YGM_NUpAAAA (last accessed March 14, 2022).

[3] *Available at* https://web.archive.org/web/20220308231758/https:/www.thedailybeast.com/the-fbi-cast-an-incredibly-questionable-dragnet-for-steve-bannons-lawyer-bob-costello (last accessed Mar. 14, 2020).

**III.     The Defendant's New Reliance on *Kyles v. Whitley* and *Leopold* To Support His Request for the Government's Internal Deliberations and Investigative Steps is Misplaced.**

In his motion to compel discovery, the Defendant claimed he needed the records he seeks relating to the Government's internal deliberations and investigative steps to "evaluate the risk of harm from the Government's actions or consider and seek any appropriate remedies or sanctions" as they might relate to the Defendant's claims that the Government intruded on the attorney-client privilege.  ECF No. 26 at 17.  As the Government pointed out in its opposition, none of the records include privileged information and a mere desire to search for misconduct based on speculative claims of wrongdoing does not provide a basis for criminal discovery.  ECF No. 31 at 3-7 (outlining the limits on criminal discovery), *id*. at 10-15 (discussing the Defendant's desire to search for misconduct).  Now that Mr. Costello has sworn that most of the records do not even relate to him, the Defendant's claims that the Government improperly intruded on the attorney-client relationship ring even more hollow.

For the first time in his reply, the Defendant cites two new bases for his request with respect to records relating to the accounts that do not belong to Mr. Costello.  Both are meritless.  First, the Defendant cites the Supreme Court's opinion in *Kyles v. Whitley* for the proposition that he is entitled to internal Government deliberations, grand jury subpoenas, and sealed filings submitted under 18 U.S.C. § 2703(d) that relate to the accounts Mr. Costello has disclaimed because "the integrity of the investigation and prosecution, and the veracity of Government agents/witnesses is always at issue."  ECF No. 34 at 4 (citing *Kyles*, 514 U.S. 419, 446 (1995)); *see also id*. at 12 n.9 (citing *Kyles* in support of the Defendant's request for the Government's application under 18 U.S.C. § 2703(d)).  With respect to the "veracity of Government agents/witnesses," as the Government explained in its opposition, it understands its obligations to turn over impeachment material relating to its trial witnesses and will do so as required to the extent additional information

comes into its possession. ECF No. 31 at 15-17. With respect to the Defendant's claim about the general integrity of the investigation, the Defendant's claim really is one that a defendant should get information about every investigative step the government takes to question every lead an investigation may follow. But the records relating to accounts that do not belong to Robert Costello have nothing to do with this case. They are irrelevant. And in arguing that they entitle the Defendant to the Government's full internal investigative file, the Defendant misreads *Kyles*.

*Kyles* never held that a defendant is entitled to review the Government's internal investigative deliberations and steps so that the defendant can question the Government's investigation on any basis. In *Kyles*, the Supreme Court found that undisclosed evidence undermining the probative value of incriminating physical evidence and suggesting another individual may have committed the offense was *Brady* material. 514 U.S. at 445-51. The Court found that "[w]hen, for example, the probative force of evidence depends on the circumstances in which it was obtained, and those circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it." *Id*. at 446 n.15. Notably, the evidence the *Kyles* Court found to be discoverable was not the Government's internal investigative deliberations or steps, but rather evidence the Government had collected from an informant that called into doubt the reliability of other evidence it had collected and on which it had relied to point the finger at the charged defendant. *Id*. at 446 ("[T]he defense could have examined the police to good effect on their knowledge of [the informant's] statements and so have attacked the reliability of the investigation in failing to consider [the informant's] possible guilt and in tolerating (if not countenancing) serious possibilities that incriminating evidence had been planted."). Courts applying *Kyles*, including the district court in *United States v. Bagcho*, 151 F. Supp. 3d 60, 70-71 (D.D.C 2015), a case on which the Defendant

relies, ECF No. 34 at 12 n.9, have found information discoverable where evidence suggests the government ignored information calling into question the evidence of guilt offered by the government. *See, e.g.*, *Mendez v. Artuz*, 303 F.3d 411, 416 (2d Cir. 2002) (finding in a murder case that evidence another individual had admitted to placing a contract on the victim's life prior to the murder was discoverable *Brady* material and could have been used "to challenge the thoroughness and adequacy of the police investigation" with respect to following up on the information of an alternative offender); *Bagcho*, 151 F. Supp. 3d at 70-71 (finding in a narcotics trafficking case that evidence that a government agency had found a cooperating witness to lack credibility was discoverable *Brady* information where it could have been used to impeach government agent-witnesses about their reliance on the cooperator).

As is evident from *Kyles* and the cases relying on it, *Kyles* did not erase the principle that *Brady* material is only that which goes to guilt at trial. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (describing exculpatory *Brady* information as that "material to either guilt or punishment"); *see also* ECF No. 31 at 6-7. The Defendant, however, does not explain how the Government's internal deliberations, grand jury subpoenas, and ex parte submissions in attempting to establish Mr. Costello's means of communication go to proving or disproving any element of the offense. It being irrelevant, the information is not discoverable under either Rule 16 or *Brady*. Instead, the Defendant's reliance on *Kyles* appears to be an attempt to go fishing, just under a different name. Sometimes investigations take wrong turns or hit dead-ends. Sometimes investigations establish that the facts as originally understood are not so. Sometimes investigative paths are pursued based on a mistaken belief. Every investigative step does not lead to relevant evidence. That is not misconduct—that is just how investigations work. The Defendant's claims to the contrary are no less conclusory and baseless than the ones he made in his opening motion.

Second, the Defendant cites the D.C. Circuit's holding in *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121 (D.C. Cir. 2020), for the proposition that he is entitled to the Government's submissions pursuant to 18 U.S.C. § 2703(d) in discovery in this matter.  But *Leopold* addresses public rights of access to judicial records.  The case had nothing to do with the scope of criminal discovery.  The Government's application to obtain an Order pursuant to Section 2703(d) does not relate to whether the Defendant committed the charged offense.  It is therefore not discoverable under Rule 16 or *Brady*, regardless of what the Defendant might be able to obtain pursuant to a public access request.[4]

                                                      Respectfully submitted,

                                                      MATTHEW M. GRAVES
                                                      United States Attorney
                                                      D.C. Bar No. 481052

By:    */s/ Amanda R. Vaughn*
        J.P. Cooney (D.C. 494026)
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Assistant United States Attorneys
        United States Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov

---

[4] As set forth here and in the Government's opposition, the 2703(d) application and order are not discoverable under Rule 16 or *Brady*.  Nonetheless, the Government's application bears out exactly the investigative process described in this Surreply.  Accordingly, in the interest of eliminating the Defendant's efforts to distract from his attempt to improperly procure internal governmental deliberations through baseless accusations of wrongdoing set forth for the first time in his reply, the Government is willing to seek limited unsealing of its application in order to provide it to the Defendant if the Defendant agrees that the application will be designated "Sensitive" under the Protective Order or agrees to jointly move the Court to amend the Protective Order as needed. Because the application includes Government analysis of its investigation and description of law enforcement techniques, such a designation will properly protect this material.