IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| *Defendant.* | : | |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO THE GOVERNMENT'S MOTION IN LIMINE ON ADVICE OF COUNSEL**

Defendant Stephen K. Bannon, through his undersigned counsel, respectfully submits this

supplemental brief pursuant to the Court's March 16, 2022, minute order,[1] and states as follows:

### *Licavoli* **Is Inapposite**

This is a case of first impression. Never has a former top presidential advisor been

prosecuted where: (1) he received a congressional subpoena; (2) the President he served asserted

executive privilege; (3) counsel advised him that official Department of Justice policy required

him not to comply; and (4) counsel communicated these legal principles to the committee and

sought an accommodation allowing judicial resolution of the dispute between the two political

branches. *Licavoli* is distinguishable.[2] It is dispositively distinguishable because it did not involve

---

[1] This Court allowed additional submissions on the application of *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) [Tr. 3/16/2022 at 90, 98]. Our opposition distinguished *Licavoli* – and the other cases relied upon by the Government – because it did not involve a subpoena to a former top official asserting executive privilege on behalf of a President. [Doc. 30 at 3-4, 15-20].

[2] The *Licavoli* opinion includes few facts. The district court and court of appeals files are not accessible in the time available for supplemental briefing. Thus, we cite the facts of *Licavoli* as stated in official Senate records.

advice of counsel pertaining to an assertion of executive privilege, or the reliance upon official Department of Justice policies.

The assertion of executive privilege takes this case outside of the "willfulness" framework of *Licavoli*. Mr. Bannon's counsel advised him, based on official Department of Justice policies, that once executive privilege was asserted he could not exercise his free will to make any decision other than to honor the invocation of executive privilege. Mr. Bannon stood fast – caught between the competing interests of Congress and the executive branch. It is constitutionally impermissible as a matter of due process to subject Mr. Bannon to criminal punishment where he sought only judicial resolution of this interbranch dispute.[3] *See* [Ex. 5] (Rex Lee, *Executive Privilege, Congressional Subpoena Power, and Judicial Review:  Three Branches, Three Powers, and Some Relationships*, 1978 B.Y.U. L. Rev. 231, 259).

Applying *Licavoli* to this case would have impermissible institutional effects as well.  For instance, it would nullify the well-settled principle that a President's assertion of executive privilege is presumptively valid. *See Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974); *United States v. Nixon*, 418 U.S. 683, 708-09 (1974). It would also violate the constitutional separation-of-powers principles that give the executive branch the authority to determine the privileged nature of its own communications.

In *Licavoli*, a Senate committee was investigating the infiltration of labor unions by organized crime in Detroit, Michigan. [Ex. 1 at 4]. Testimony before the committee suggested that Mr. Licavoli, a reputed mobster, had knowledge of the matters under investigation. [*Id*. at 3]. Mr. Licavoli was personally served with a lawful subpoena. [*Id.* at 1]. He did not respond with an

---

[3] On prior occasions when investigatory bodies sought Mr. Bannon's testimony, his counsel negotiated accommodations that protected executive privilege, and he appeared and testified.

assertion of privilege.[4] The committee later sent a telegram to Mr. Licavoli, which he refused to

accept. [*Id*. at 2]. Mr. Licavoli's attorney acknowledged that his client was served with a subpoena.

[*Id*. at 5.] Mr. Licavoli's attorney told the committee only that "he doubted that Mr. Licavoli was

going to appear before the committee." [*Id*.].

In 1961, when *Licavoli* was decided, the official executive branch position was that 2

U.S.C. § 192 did *not* apply to executive branch officials when executive privilege was asserted.[5]

That remains the official Department of Justice policy today, under published guidance that has

not been withdrawn. The *Licavoli* panel could not have contemplated that they were establishing

law on whether an advice of counsel defense is available to a former top presidential advisor who

relied upon advice of counsel and asserted executive privilege on behalf of the President he served.

The issue was not presented. This Court must look beyond *Licavoli* to resolve the complex

constitutional issues presented here.[6] The Ninth Circuit has explained:

> Using the techniques developed at common law, a court confronted with apparently
> controlling authority must parse the precedent in light of the facts presented and the rule
> announced. Insofar as there may be factual differences between the current case and the

---

[4] In *Sinclair v. United States*, 279 U.S. 263 (1929), the decision on which *Licavoli* is based, the witness affirmatively announced that he was not claiming any privileged reason for not complying with the subpoena, rather, he challenged the pertinency of the questions posed. *Id*. at 290-291. Thus, *Sinclair* is also distinguishable.

[5] In 1956, Deputy Attorney General William Rogers presented a report to Congress that concluded that the criminal contempt of Congress statute was "inapplicable to the executive departments" where the President had asserted executive privilege. [*See* Ex. 6 at 1] (*Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress*, 2008 WL 11489049 (O.L.C.) at *2).

[6] Courts citing *Licavoli* have not adopted the restrictive definition of "willfulness" urged by the Government in this case. *See, e.g., United States v. Myers*, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting *Licavoli* on "willfulness" and explaining that "willfulness" in the criminal contempt context means "a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful."). The question whether an advice of counsel defense is available in a 2 U.S.C. § 192 prosecution depends on the facts of the case. *See, e.g., Townsend v. United States*, 95 F.2d 352, 359-60 (D.C. Cir.), ("There is nothing in the excluded evidence to indicate that appellant submitted the question of his duty to attend the committee hearings to an attorney and acted honestly upon that advice, relying upon it and believing it to be correct. There is nothing in the excluded evidence to indicate that there was any uncertainty in the mind of the appellant as to the law or as to his duty to attend.") *cert. denied*, 303 U.S. 664 (1938) *citing United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Williamson v. United States*, 207 U.S. 425, 453 (1908).

earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

*Hart v. Massanari*, 266 F.3d 1155, 1172-73 (9th Cir. 2001). The assertion of executive privilege, communicated by counsel for Mr. Bannon, changes everything. That advice was based on decades of official policy dictating that a witness cannot comply with a congressional subpoena where executive privilege is invoked. The advice was also based on official policy stating that congressional subpoenas that purport to require testimony by executive branch officials, but do not allow the presence of agency counsel to protect privilege, are invalid and unenforceable [Docs. 30-1; 34-1] (Decl. of Robert J. Costello, Esq.).

The sole reason that Mr. Bannon did not comply with the subpoena was the advice of counsel he received, based on the Department of Justice's long-established position that he was barred from complying. [*See* Ex. 7 at 22] (*Congressional Oversight of the White* House, 2021 WL 222744 (O.L.C.) at *33). Therefore, denying Mr. Bannon the opportunity to put forward an advice of counsel defense – the justification for his non-compliance – would deny him his right to a fair trial.  Foreclosing this defense would also mislead the jury on what occurred. It is the essence of why Mr. Bannon believed that he was acting in accordance with the law.

Once President Trump asserted executive privilege, Mr. Bannon was no longer free to act as he wished. As counsel advised him, consistent with official Department of Justice policy, he was not permitted to comply with the subpoena. [Doc. 34-1, Ex. C] (Declaration of Robert J. Costello, Esq.). Counsel also advised Mr. Bannon that, because the Select Committee would not allow the privilege holder's representative to be present at the deposition, the subpoena was constitutionally invalid. [*Id*.] (relying upon the May 23, 2019, Office of Legal Counsel Opinion,

Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees). Under these circumstances, Mr. Bannon could not act with volition.[7]

At that point, it became a dispute between two branches of government. Mr. Bannon could not lawfully disregard the executive branch's invocation of privilege.[8] Counsel advised Mr. Bannon that he could not *waive* executive privilege, because it was the President who held the privilege. Counsel also advised Mr. Bannon that, pursuant to official Department of Justice policy, he need not comply with the subpoena. Mr. Bannon relied upon that advice. [Doc. 34-1, (Decl. of Robert J. Costello)].

By contrast, in *Licavoli* the accused had freedom to decide how to proceed. He decided not to comply. Neither he nor his counsel provided *any* reason for non-compliance, and the accessible records do not note any request for accommodation. Nor do those records reflect any specific advice provided by counsel. Rather, Mr. Licavoli's counsel simply communicated to the committee that he "doubted" that his client would appear. Here, by contrast, counsel for Mr. Bannon clearly communicated to the Select Committee that President Donald J. Trump asserted executive privilege in response to the subpoena, and that he had therefore advised Mr. Bannon that, consistent with the official policy of the Department of Justice, Mr. Bannon could not lawfully comply. To accommodate the separation-of-powers interests involved, counsel for Mr. Bannon asked that a judge decide the issues.

---

[7] Denying Mr. Bannon, the right to rely on the defense of advice of counsel here, based as it was on long-established Department of Justice official policy – a factor not present in *Licavoli* – would be irreconcilable with this Circuit's decision in *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring) and with the Model Penal Code §2.04(3)(b).

[8] *See Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 116 (1984) ("We believe that it is beyond peradventure that the constitutionally mandated separation of powers permits the President to prevent disclosure of certain Executive Branch documents under the doctrine of executive privilege and that the ability to assert this privilege is fundamental to the President's ability to carry out his constitutionally prescribed duties.").

Unlike in *Licavoli*, Mr. Bannon's counsel accepted service of the subpoena, engaged with committee counsel, presented applicable factual and legal arguments on the executive privilege issue and official Department of Justice policy, and advised the committee that Mr. Bannon *could not lawfully* appear. Because the two cases present entirely different factual and legal issues, *Licavoli* does not limit this Court's consideration of the constitutional considerations present here.

**Differences Between Licavoli And This Case**

| Licavoli | Bannon |
|---|---|
| Subpoena served on Mr. Licavoli. Ex.1 at 3. | Counsel accepted service. [US-000257] |
| No assertion of executive privilege. | Counsel for Mr. Bannon received a letter from counsel for President Trump referencing the subpoena and stating that President Trump asserted executive privilege. [Doc. 31-2 (US-000971 to 000972)] |
| No attendance of counsel issue. | Counsel for Mr. Bannon confirmed that Select Committee would not allow President Trump's lawyer to attend to protect executive privilege and advised Mr. Bannon that official Department of Justice policy rendered the subpoena invalid and unenforceable. [US-001772, 001779 and US-000317 to 0003188] |
| No executive privilege issue. | Counsel advised the Select Committee in writing of the presidential assertion of executive privilege. [Doc. 29-1 (US-000418 to 000-419)] |
| No assertion of legal justification. Ex. 1 at 5 (counsel informed Senate committee only that "he doubted that Mr. Licavoli was going to appear before the committee"). | Counsel advised Select Committee that "[w]e will comply with the directions of the courts, when and if they rule on these claims both of executive and attorney client privileges. Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony." [Doc. 29-1 at US-000419] |

| | |
|---|---|
| No accommodation sought. | Counsel for Mr. Bannon requested an accommodation in several communications with the Select Committee, and sought an adjournment after the filing of a federal lawsuit, *Trump v. Thompson*, 21-cv-02769. [Doc. 31-3 SKB-000026] |

### *Licavoli* Does Not Foreclose This Court's Consideration Of Legal Principles Not Presented In That Case That Control Here

There are several reasons why this is a case of first impression.  First, executive privilege presents unique issues. Where there is a dispute between coordinate branches over the disclosure of information, special rules apply. Courts must accord more deference to the asserting party than they would when considering statutory or common law privileges held by a private citizen. *See United States v. Nixon*, 418 U.S. 683, 708, 715 (1974). A President's constitutional role as head of one of three separate branches of government means that special care must be taken to construe statutes so as not to conflict with the ability to carry out constitutional responsibilities. *See Myers v. United States*, 272 U.S. 52 (1926).[9] Therefore, the separation of powers principles that underlie the doctrine of executive privilege also would preclude an application of the contempt of Congress statute to punish officials for aiding the President in asserting his constitutional privilege. [Doc. 28-11 at 134].

In addition, subjecting Mr. Bannon to criminal prosecution under these circumstances would violate his due process rights. He obeyed an express order of the President he had served. His actions were in accordance with official Department of Justice policies, which recognize that executive privilege is necessary to aid the President in the performance of constitutional duties.

---

[9] As then Assistant Attorney General Ted Olson wrote in his 1984 OLC opinion, "… if executive officials were subject to prosecution for criminal contempt whenever they carried out the President's claim of executive privilege, it would significantly burden and immeasurably impair the President's ability to fulfill his constitutional duties." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 134 (1984); *see also* Ex. 7 at 10.

*See Cox v. Louisiana*, 379 U.S. 559 (1965); *Raley v. Ohio*, 360 U.S. 423 (1959). No court has considered these principles in the context of a 2 U.S.C. § 192 prosecution where executive privilege has been asserted. In this regard, this Court writes on a blank slate.

Another reason that this is a case of first impression is historical. *Licavoli* was decided in 1961 based upon actions in 1958. At that time, there was nothing to suggest to a panel of the D.C. Circuit Court of Appeals that they were establishing law on the question of whether an advice of counsel defense is either available or foreclosed where a former top presidential advisor rebuffs a congressional subpoena because a President has asserted executive privilege. In 1961 (and in the six decades after), there was no published opinion on how 2 U.S.C. § 192 applies in the face of an assertion of executive privilege.[10] The *Licavoli* panel could not have foreseen that 60 years later the Government would rely upon its opinion for the proposition that an advice of counsel instruction is not available in a situation involving the assertion of executive privilege by a former top presidential advisor. In 1961, the official view was that 2 U.S.C. § 192 did not apply to the executive branch where executive privilege is asserted. From a jurisprudential standpoint, a 1961 D.C. Circuit panel decision that *did not involve* executive privilege – at a time when the official government policy was that the statute was inapplicable where executive privilege was asserted – cannot control a case involving the assertion of executive privilege, and the attendance of counsel to protect the privilege, 60 years later.[11] No judicial decision published since *Licavoli* changes our view. To the contrary, numerous official Department of Justice pronouncements support our

---

[10] The notion that executive privilege stands alone and is a fundamental distinguishing factor in this case that must permit the defense of advice of counsel on the facts presented here is further supported by the absence of executive privilege from the privileges expressly identified in 28 U.S.C. §193 as not justifying noncompliance.

[11] The principle of desuetude provides further support for the notion that the dearth of authority even considering this issue over many decades provides further support, together with the development of the law on "willfulness" and the OLC Opinions on point, that *Licavoli* simply does not apply here.

position.[12] During the administration of President William J. Clinton, Assistant Attorney General

Walter Dellinger stated that "the criminal contempt of Congress statute *does not apply* to the

President or presidential subordinates who assert executive privilege." [Ex. 2 at 7] (*Application of*

*28 U.S.C. Sec. 458 to Presidential Appointments of Federal Judges*, 19 Op. O.L.C. 350, 356 (1995)

(emphasis added)). Mr. Dellinger wrote further that to apply "the contempt statute against an

assertion of executive privilege would seriously disrupt the balance between the President and

Congress." [*Id.*].[13]

Another reason why *Licavoli* is distinguishable involves politics. A core value in our

criminal justice system is that politics plays no role in criminal charging decisions. This case

challenges that truism. Congress has found other top executive branch officials in contempt,

despite assertions of executive privilege in response to congressional subpoenas. The list includes

distinguished public servants such as Attorney General William Barr and Attorney General Eric

Holder. But in every prior case, the accused did not face criminal prosecution. In each case, the

decision whether to pursue criminal charges rested in the hands of a political appointee (the U.S.

Attorney) who was of the same political party as the political appointee found in contempt of

Congress. This case is a unicorn – the rare case where the accused presidential advisor is affiliated

---

[12] In 1976, Assistant Attorney General Rex Lee stated that if an executive branch member were cited for contempt of Congress because of the assertion of executive privilege, the DOJ would not present the matter to a grand jury (notwithstanding the mandatory language in 2 U.S.C. § 194). [Ex. 6 at 1]. In Assistant Attorney General Theodore Olson's comprehensive 1984 OLC Opinion, *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 102 (1984), drawing on canons of statutory construction, including legislative history, and basic constitutional principles, including constitutional separation of powers principles, the DOJ concluded that Section 192 was not intended to apply and could not constitutionally be applied to an executive branch official who asserts the President's claim of executive privilege. [Doc. 28-11].

[13] *See also* [Ex. 3] (Letter from Michael B. Mukasey, Attorney General, to the Hon. Nancy Pelosi, Speaker of the House of Representatives (Feb. 29, 2008)); [Ex. 4] (*Response to Congressional Requests for Information Regarding Decisions Made Under the Independent Counsel Act*, 10 Op. O.L.C. 68 (1986)).

with one party (Republican), while both the referring house of congress and the U.S. Attorney (political appointee) are under the control of the other party (Democrat).

This Court stands as a bulwark against politically motivated criminal prosecutions. Official statements of government policy have been consistent over many decades, across political parties. The advice Mr. Bannon acted upon was sound.[14] In this unprecedented case – where a former executive branch official is subject to criminal punishment despite decades of official pronouncements stating that the conduct is not criminal – it is especially important to hold the executive branch to its prior official pronouncements on the law, regardless of politics.

---

[14] As the D.C. Circuit wrote in *Barker*, 546 F.2d at 952, it does not matter if the underlying position was wrong; it is reasonable and sufficient to rely on official pronouncements and directives of the Attorney General.

## **CONCLUSION**

**WHEREFORE**, Defendant Stephen K. Bannon respectfully requests that this Court deny

the Government's Motion In Limine On Advice Of Counsel.


Dated: March 22, 2022                    Respectfully submitted,

                                         **SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

                                         /s/ M. Evan Corcoran
                                         M. Evan Corcoran (D.C. Bar No. 440027)
                                         400 East Pratt Street – Suite 900
                                         Baltimore, MD 21202
                                         Telephone: (410) 385-2225
                                         Facsimile: (410) 547-2432
                                         Email: ecorcoran@silvermanthompson.com

                                         /s/ David I. Schoen
                                         David I. Schoen (D.C. Bar No. 391408)
                                         David I. Schoen, Attorney at Law
                                         2800 Zelda Road, Suite 100-6
                                         Montgomery, Alabama 36106
                                         Telephone: (334) 395-6611
                                         Facsimile: (917) 591-7586
                                         Email: schoenlawfirm@gmail.com


                                         /s/ Robert J. Costello
                                         Robert J. Costello (*pro hac vice*)
                                         Davidoff Hutcher & Citron LLP
                                         605 Third Avenue
                                         New York, New York 10158
                                         Telephone: (212) 557-7200
                                         Facsimile: (212) 286-1884
                                         Email: rjc@dhclegal.com
                                         *Counsel for Defendant Stephen K. Bannon*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of March, 2022, a copy of the foregoing Defendant's Supplemental Brief In Opposition To The Government's Motion In Limine On Advice Of Counsel was served *via* the Court's CM/ECF system on all properly registered parties and counsel.

                                  /s/ M. Evan Corcoran
                                M. Evan Corcoran (D.C. Bar No. 440027)