**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-670** |
| **v.** | : | |
| | : | |
| **STEPHEN K. BANNON,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO GOOD-FAITH RELIANCE ON LAW OR ADVICE OF COUNSEL**

In his supplemental brief, ECF No. 41, the Defendant, Stephen K. Bannon, asks this Court to adopt an approach to criminal law under which the elements of a criminal offense change based on the factual circumstances of a particular violation. That is not how the criminal law works. Advice of counsel is available as a defense only where it negates the intent element of an offense, and it can negate the intent element of a willfulness offense only where the intent element requires proof that a defendant knew his conduct was unlawful. Under controlling Supreme Court and D.C. Circuit precedents, the intent element for contempt of Congress does not require such proof, and, therefore, advice of counsel is not available as a defense. The Defendant's supplemental brief does nothing to overcome this controlling law and the Government's Motion to Exclude Evidence and Argument Relating to Good-Faith Reliance on Law or Advice of Counsel, ECF No. 29, must be granted.

**I.      The Availability of an Advice-of-Counsel Defense Depends on the Intent Element of the Offense, Not the Factual Circumstances of the Specific Violation.**

The Defendant claims that *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), is distinguishable and therefore inapplicable to this case because the defendant in *Licavoli* did not rely on a purported assertion of executive privilege to avoid compliance with a congressional

subpoena.  ECF No. 41 at 1-2.  The Defendant's claim misunderstands the advice-of-counsel

defense, *Licavoli,* and the Supreme Court and D.C. Circuit precedents establishing the elements of

the offense under 2 U.S.C. § 192.

An advice-of-counsel defense is one in which a defendant claims he mistakenly believed

his conduct was lawful because he, in good faith, relied on the advice his attorney gave him about

what the law required.  The availability of an advice-of-counsel defense turns, therefore, on the

intent element applicable to the offense—specifically, whether the offense requires proof that the

Defendant knew he was acting unlawfully.  *See United States v. Urfer*, 287 F.3d 663, 666 (7th Cir.

2002) ("[I]f a criminal statute requires proof that the defendant knew he was violating the statute

in order to be criminally liable for the violation, and it is unclear whether the statute forbade his

conduct, the fact that he was acting on the advice of counsel is relevant because it bears on whether

he knew that he was violating the statute."); *United States v. Mathes*, 151 F.3d 251, 255 (5th Cir.

1998) ("Reliance on counsel's advice excuses a criminal act only to the extent it negates

willfulness and to negate willfulness counsel's advice must create (or perpetuate) an honest

misunderstanding of one's legal duties." (internal quotation marks and citation omitted)).  The

availability of the defense is a question of law, not fact, *cf. United States v. Armstrong*, 781 F.2d

700, 706 (9th Cir. 1986) ("[T]he issue whether good faith reliance on the advice of counsel is a

defense to a charge of criminal contempt [of court] involves a question of law."), and does not,

therefore, change with the specific factual circumstances of the offense.

The intent element of Section 192 requires proof only of a deliberate and intentional failure

to appear or produce records.  This was established not by *Licavoli* but by the Supreme Court's

decisions in *United States v. Bryan*, 339 U.S. 323 (1950), and *United States v. Fleischman*, 339

U.S. 349 (1950), *see Licavoli*, 294 F.2d at 208, and the D.C. Circuit's opinions in *Dennis v. United*

*States*, 171 F.2d 986, 990-91 (D.C. Cir. 1948), and *Fields v. United States*, 164 F.2d 97, 99-100 (D.C. Cir. 1947).  As the D.C. Circuit affirmed in *Fields*, under Section 192, "[t]he word 'willful' does not mean that the failure or refusal to comply with the order of the committee must necessarily be for an evil or a bad purpose.  The reason or the purpose of failure to comply or refusal to comply is immaterial, so long as the refusal was deliberate and intentional and was not a mere inadvertence or an accident."  164 F.2d at 100 (affirming jury instruction on the meaning of "willful" under Section 192).  Because the intent element of Section 192 does not require proof that the Defendant knew his conduct was unlawful, any advice his counsel may have given him about the legality of his conduct is irrelevant to establishing the elements of the offense.  The *Licavoli* court clearly articulated this link between the availability of an advice-of-counsel defense and the intent element of contempt:  "All that is needed in either event is a deliberate intention to do the act.  Advice of counsel does not immunize that simple intention.  It might immunize if evil motive or purpose were an element of the offense.  But such motive or purpose is not an element of [contempt of Congress]."  294 F.2d at 209.

There is thus no factual basis on which to distinguish *Licavoli*'s application to this case. *Licavoli* decided that an advice-of-counsel defense to contempt of Congress was not available as a matter of law given the offense's intent element.  The holding did not turn on the nature of the advice or law on which Licavoli relied to refuse compliance with a congressional subpoena.  The court did not even identify the substance of the advice Licavoli received, and there is no evidence in the opinion that the D.C. Circuit ever considered it—because it did not need to do so.  The court's legal holding was controlled by the definition of the term "willful" in Section 192 as determined by the Supreme Court, not by Licavoli's factual claims about what legal advice he received and followed.  *See id*. at 208.  Contrary to the Defendant's protestations, therefore, he

cannot escape *Licavoli*'s controlling legal precedent.  How a term is defined in a criminal statute is a question of law wholly separate from the underlying factual allegations.  *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).  The meaning of a statute's terms dictates what conduct constitutes an offense under that statute—not the other way around.

By advocating to allow him to raise an advice-of-counsel defense in his case, even though it is not available to others charged with contempt of Congress, the Defendant necessarily is advocating that the intent element of the offense should change depending on the factual circumstances of the crime.  In other words, the word "willful" in Section 192, under the Defendant's approach, would mean one thing for someone claiming their attorney advised them not to comply with a congressional subpoena under a Fifth Amendment right against self-incrimination and would mean something different for someone claiming their attorney had advised them not to comply with a subpoena under a claim of executive privilege.  Such an approach to defining the bounds of a criminal statute is contrary to law.  *See United States v. Santos*, 553 U.S. 507, 522 (2008) (opinion of Scalia, J.) ("[T]he meaning of words in a statute cannot change with the statute's application.") (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)); *cf. Ratzlaf v. United States* 510 U.S. 135, 143 (1994) ("We have even stronger cause to construe a single formulation, here § 5322(a), the same way each time it is called into play.") (rejecting argument that the penalty provision applicable to multiple offenses takes on a different meaning depending on the offense to which it is applied).  The word "willful" as used in Section 192 means what it means.  It does not shift from case to case or from defendant to defendant.[1]

---

[1] As the Government pointed out in its reply brief, under the Supreme Court's decision in *Cheek v. United States*, 498 U.S. 192, 204-06 (1991), the defense the Defendant wishes to raise as an advice-of-counsel defense—that his attorney told him the subpoena itself was invalid—is not available even if a heightened willfulness standard applied.  *See* ECF No. 35 at 20 n.2.

## II.    The Defendant's Attempts to Distinguish *Licavoli* Do Not Relate to an Advice-of-Counsel Defense.

The Defendant's efforts to distinguish *Licavoli* demonstrate again his confusion of various legal and factual defenses.  First, the Defendant claims he is entitled to an advice-of-counsel defense because, according to the Defendant, unlike Licavoli who "had freedom to decide how to proceed," ECF No. 41 at 5, the Defendant was advised that, after a purported assertion of executive privilege, "he could not exercise his free will" to comply, *id*. at 2; that he "was no longer free to act as he wished," *id*. at 4; and that he "*could not lawfully* appear," *id*. at 6 (emphasis in original). He claims that enforcing the subpoena against him would violate separation of powers principles, *id*. at 7, and that "[t]he *Licavoli* panel could not have contemplated that they were establishing law on whether an advice of counsel defense is available to a former top presidential advisor who relied upon advice of counsel and asserted executive privilege on behalf of the President he served," *id*. at 3.  But the Defendant's claims to this effect are not an advice-of-counsel defense, even if the intent element of contempt of Congress made such a defense available.  The Defendant is not claiming that he mistakenly believed he was complying with the subpoena based on his attorney's advice.  The Defendant is claiming that the subpoena was supposedly rendered legally invalid as applied to him by some purported assertion of executive privilege—an assertion the Defendant has yet to establish actually occurred or was valid.

If the Defendant wishes to move to dismiss the indictment because the subpoena itself was invalid based on a purported assertion of executive privilege, he is free to do that.[2]  His assertion

_____

[2] The Defendant is similarly free to move to dismiss the indictment based on his claims of selective prosecution, *see* ECF No. 41 at 9-10, but those claims too are irrelevant to the elements of the offense and have nothing to do with whether *Licavoli* is controlling in this case.  *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.").

of such a defense will fail for several reasons, including that there was no valid assertion of executive privilege, *see Dellums v. Powell*, 642 F.2d 1351, 1363 (D.C. Cir. 1980) ("We think it abundantly clear . . . that any claim of privilege, whether of executive or Presidential privilege . . . , must be made with particularity."); the Defendant was never directed not to appear—indeed, former President Donald Trump's counsel expressly told the Defendant he was not being directed to engage in total noncompliance, ECF No. 35-6 at US-000987-88; ECF No. 35-7 at US-000985; and the Defendant, as a private citizen, cannot assert executive privilege, *see, e.g.*, *Trump v. Thompson*, 20 F.4th 10, 26 (D.C. Cir. 2021) (The executive privilege is "a privilege held by the Executive Branch.").  But the Defendant can make the motion nonetheless, and his purported concern for protecting the separation of powers and executive privilege will thereby be properly addressed.  If there was a valid assertion of executive privilege that allowed the Defendant's total noncompliance, the privilege will be protected and the indictment dismissed; if there was not, the lack of a valid assertion will not invalidate Congress's investigative power.  This is no different from a defendant claiming Congress's effort to compel answers to a congressional committee's questions was invalid in the face of a legitimate assertion of a Fifth Amendment privilege.  *See Emspak v. United States*, 349 U.S. 190, 198-201 (1955) (reversing conviction for contempt of Congress for refusing to answer certain questions after finding the defendant had properly invoked a valid Fifth Amendment privilege against self-incrimination in refusing to answer).  Once the Defendant's claim of executive privilege is rejected, however, the Defendant cannot then rely on his mistaken belief, whether from his counsel's advice or another source, that it applied to rebut evidence of his intent at trial.  Allowing him to do so would do nothing to vindicate the privilege and instead would undermine Congress's constitutional authority in a manner contrary to controlling Supreme Court and D.C. Circuit precedent.

Second, the Defendant argues that due process requires the Court to ignore *Licavoli*, because, unlike Licavoli, the Defendant claims, he "obeyed an express order of the President he had served" and he was acting "in accordance with official Department of Justice policies."  ECF No. 41 at 7.  To support this claim, the Defendant cites the Supreme Court's decisions in *Cox v. Louisiana*, 379 U.S. 559 (1965), and *Raley v. Ohio*, 360 U.S. 423 (1959).  *Id*. at 8.  But *Cox* and *Raley* do not support the notion that different intent standards apply to criminal statutes based on the factual circumstances of particular violations.  Instead, they address an entirely different issue: the due process defense of entrapment by estoppel.  *See Cox*, 379 U.S. at 571 ("As in *Raley* . . . after the public officials acted as they did, to sustain appellant's later conviction for demonstrating where they told him he could 'would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.'  The Due Process Clause does not permit convictions to be obtained under such circumstances." (quoting *Raley*, 360 U.S. at 426)).  A concurring opinion on which the Defendant relies elsewhere in his brief, ECF No. 41 at 5 n.7 (citing *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring)), addresses a version of this defense as well.  *See Barker*, 546 F.2d at 955 (allowing a defense of official misstatement of the law where a defendant "(1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field.").[3]

Entrapment by estoppel is not an advice-of-counsel defense.  Entrapment by estoppel does not negate the intent element of an offense.  Instead, it is an affirmative defense that is available

---

[3] The D.C. Circuit has since noted that "[t]he exact precedential effect of Judge Merhige's opinion is unclear."  *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994).

under the Due Process Clause even where all the elements of an offense are established.  *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1165-66 (10th Cir. 1999) (noting that in raising an estoppel defense, the defendant did not contest that the government had proven every element of the offense).  The defense "focuses on the conduct of the government leading the defendant to believe reasonably that he was authorized to do the act forbidden by law.  The doctrine depends on the unfairness of prosecuting one who has been led by the conduct of government agents to believe his acts were authorized."  *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995) (citations omitted).  The defense "applies where 'the defendant establishes by a preponderance of the evidence that (1) a government official (2) told the defendant that certain criminal conduct was legal, (3) the defendant actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement.'"  *United States v. Khanu*, 664 F. Supp. 2d 35, 41 (D.D.C. 2009) (quoting *United States v. W. Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997)).  "[T]he defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes in the expectation of receiving subsequent authorization."  *Abcasis*, 45 F.3d at 43-44.  As an affirmative defense, the Defendant bears the burden of establishing it.  *Id.* at 44.  Moreover, the Defendant cannot rely on his attorney's interpretation of the law to raise this defense.  It is only representations by an authorized government agent that can provide a basis for entrapment by estoppel.  *Gutierrez-Gonzalez*, 184 F.3d at 1167-68.  Accordingly, the Defendant's ability to make the due process claim he identifies

in his brief has nothing to do with and is unaffected by *Licavoli*'s holding regarding the intent element of contempt of Congress and available defenses to it.[4]

Finally, the Defendant claims that *Licavoli* is inapplicable because the Department of Justice has taken the position that the contempt of Congress statute is unenforceable against executive branch officials acting on an assertion of executive privilege.  *See* ECF No. 41 at 8-9. As an initial matter, the Defendant was not summoned by Congress in his capacity as an executive branch official or in relation to any activity during his time as an executive branch official—the insurrection on January 6, 2021, occurred well over three years after the Defendant resigned from his White House position.  Department positions with respect to individuals summonsed in relation to their service as executive branch officials are irrelevant.  Moreover, the Department's position about the constitutionality of a criminal statute as applied to various fact patterns does not change the elements of the offense.  That the Department might take the position that the statute cannot be applied to the White House Counsel, for example, does not change the meaning of "willful" as used in Section 192.  *Licavoli* decided available defenses given the meaning of "willful" under Section 192.  Its holding regarding the availability of those defenses stands regardless of whether the Government believes it cannot enforce the statute against certain individuals.  And, as described above, the Defendant's ability to make an estoppel argument based on Department policies is entirely different from the question of what evidence is relevant to establishing or negating the elements of the charged offenses.

---

[4] There are several reasons the Defendant cannot present an entrapment by estoppel defense to a jury in this case, which the Government will address as required by a later motion at the time established by the Court's scheduling order.

III.    **Waiver**

In its March 16, 2022, Order, the Court also allowed the Government to brief whether the Defendant has waived his claim that *Licavoli* is distinguishable from the present case.  While the Defendant did not raise this argument in his opposition, and at least one other judge in this district has suggested in the context of a criminal case that failing to do so is a basis for disregarding the argument, *see United States v. Devaugh*, 422 F. Supp. 3d 104, 118 n.10 (D.D.C. 2019), the Government does not believe the Court has to address this issue, because the Defendant has, in any event, failed to establish that *Licavoli* can be disregarded.

IV.    **Conclusion**

*Licavoli* decided that advice of counsel was unavailable as a defense to contempt of Congress as a matter of law.  It is controlling in this case and the Government's Motion to Exclude Evidence and Argument Relating to Good-Faith Reliance on Law or Advice of Counsel must be granted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov