UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEPARTMENT OF JUSTICE OPINIONS AND WRITINGS

The Defendant has indicated that he intends to offer at trial evidence of Department of Justice ("the Department") opinions and writings relating to the Department's evaluation of whether Executive Branch officials are subject to subpoena by Congress or prosecution under 2 U.S.C. § 192 when acting on a presidential assertion of executive privilege. The Department's opinions and writings are irrelevant, however, to establishing the elements of the charged offenses. Nor do they support the affirmative defenses of entrapment by estoppel or public authority that the Defendant has suggested he wishes to raise. The Defendant was not subpoenaed in relation to his time as an Executive Branch official and he was never directed by the Executive Branch or former President Donald Trump to engage in total noncompliance with the January 6th Select Committee's ("the Committee") subpoena as he chose to do. Given the evidence's irrelevance, the Court should exclude it.

I.   **FACTUAL BACKGROUND**

In his pre-indictment interactions with the Government and his post-indictment pleadings, the Defendant has cited a number of Department opinions and writings that he has claimed are relevant to this case. His attorney, Robert Costello, has also made several statements regarding his personal interpretation of the Department opinions and writings and what, based on those

interpretations, he communicated to the Defendant.  Specifically, the Defendant at various times has cited the following Department records:

1) Prosecutorial Discretion Regarding Citations for Contempt of Congress, 38 Op. O.L.C. 1 (2014).  *See* ECF No. 34-1 at 20.

2) Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys, Letter from Paul Clement to the President, June 27, 2007.  *See* ECF No. 34-1 at 23.

3) Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees, 43 Op. O.L.C. __ (May 23, 2019).  *See* ECF No. 34-1 at 21[1]; ECF No. 28-12.

4) Whether the Department of Justice May Prosecute White House Officials for Contempt of Congress, 32 Op. O.L.C. 65 (2008).  *See* ECF No. 34-1 at 21-22.

5) Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege, 8 Op. O.L.C. 101 (May 30, 1984).  *See* ECF No. 28-11.

6) Letter from U.S. Attorney Ronald Machen to Speaker of the U.S. House of Representatives John Boehner, Mar. 31, 2015.  ECF No. 28-10.

The Government now has also provided additional Department records on the scope of the contempt of Congress statute and its relation to a valid assertion of executive privilege.  The Government moves to exclude all of this evidence—all Department opinions and writings and counsel's interpretation of them.

**II.     ARGUMENT**

At various times, the Defendant has suggested Department opinions and writings on the scope of the contempt statute and the effect of executive privilege on congressional subpoenas is admissible for three purposes.  First, he has claimed the records are relevant to negating evidence of his intent.  Mot. to Compel, ECF No. 28, at 20-22; Mot. Hrg., 3/16/22, Tr. at 44:5-23.  Second,

---

[1] The Defendant does not provide a citation to the opinion in the memorandum and cites the date of the opinion as May 13, 2019, but, based on the quoted text the Defendant included, the Government believes he was referring to the May 23, 2019, OLC opinion.

he has claimed they are admissible to support an entrapment-by-estoppel defense. ECF No. 28 at 22 n.2; *see also* Mot. Hrg., 3/16/22, Tr. at 42:2-43:14; *id*. at 53:10-54:5. Third, the Defendant has claimed they are relevant to a public authority defense. ECF No. 28 at 22 n.2. Department records evaluating the contempt statute and Congress's subpoena power in the face of a valid assertion of executive privilege cannot be used for any of these purposes. They are irrelevant to resolving the charges in this case and should be excluded.

      A.      **Only Relevant Evidence is Admissible.**

Only relevant evidence is admissible at trial. Fed. R. Evid. 402. Relevant evidence is that which has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. In addition, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

That admissible evidence is limited to relevant evidence applies to a defendant's right to present a defense just as it applies to the government's presentation of its case. *See, e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 127 (2d Cir. 2008) ("When putting his case to the jury, for example, a defendant 'must comply with established rules of procedure and evidence.'" (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)); *United States v. Markey*, 393 F.3d 1132, 1135 (10th Cir. 2004) ("The right to present a defense, however, is not without limits. At a minimum, a defendant is limited to presenting relevant evidence."); *United States v. Libby*, 475 F. Supp. 2d 73, 91 (D.D.C. 2007) ("[A]lthough the

Constitution entitles a defendant an opportunity 'to present [his] version of the facts . . . to the jury so it may decide where the truth lies,' that guarantee extends only to relevant evidence." (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)) (other citations omitted)). "[E]ven '[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions,' including restrictions imposed by the other rules of evidence such as Rule 403." *Libby*, 475 F. Supp. 2d at 91 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)) (citing *Taylor*, 484 U.S. at 410). Moreover, where a defendant wishes to raise an affirmative defense that does not negate the elements of the offense, but justifies its commission, the defendant bears the burden of proof. *Smith v. United States*, 568 U.S. 106, 110-12 (2013).

Applying the rules of admissibility for relevant evidence here, the Court should preclude the Defendant from offering the Department's opinions and writings relating to contempt of Congress and executive privilege at trial. They are irrelevant to establishing the elements of the charged offenses and they cannot support the affirmative defenses to which the Defendant has claimed they are relevant.

### B.     The Department's Evaluation of the Law is Irrelevant to Proving Whether the Defendant Committed the Charged Offenses.

The Defendant has claimed Department opinions and writings on the scope of the contempt of Congress statute and executive privilege in relation to congressional subpoenas are relevant to negating evidence of willfulness. Mot. to Compel, ECF No. 28, at 20-22; Mot. Hrg., 3/16/22, Tr. 44:5-23. This Court, however, has now granted the Government's Motion to Exclude All Evidence and Argument Relating to Good-Faith Reliance on Law or Advice of Counsel. ECF No. 49. Any reliance the Defendant may have placed on Department opinions and writings summarizing the Department's view of the law when he made the deliberate and intentional decision not to comply with the subpoena, therefore, is irrelevant to the intent element of the offense and is inadmissible

4

under the Court's order.  *See also Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) ("The reason or the purpose of failure to comply or refusal to comply is immaterial, so long as the refusal was deliberate and intentional and was not a mere inadvertence or an accident.") (affirming jury instruction).  The Department's opinions and writings must be excluded to the extent the Defendant wishes to offer them to negate intent.

> **C.    Department Opinions or Writings on Contempt of Congress and Executive Privilege Do Not Support an Entrapment-by-Estoppel Defense.**

The Defendant also has indicated he intends to use Department opinions and writings in support of an entrapment-by-estoppel defense.  ECF No. 28 at 22 n.2; *see also* Mot. Hrg., 3/16/22, Tr. at 42:2-43:14; *id*. at 53:10-54:5.  The Defendant, however, cannot make the required prima facie showing of the defense's elements with this evidence and, therefore, cannot present it to the jury.  Any evidence he claims is related to such a defense must be excluded.

The entrapment-by-estoppel defense "arises when an individual criminally prosecuted for an offense reasonably relied on statements made by a government official charged with 'interpreting, administering, or enforcing the law defining the offense' and those statements actively misled the individual to believe that his or her conduct was legal."  *United States v. Chrestman*, 525 F. Supp. 3d 14, 29–30 (D.D.C. 2021) (quoting *United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)).  The defense arose from the Supreme Court's decisions in three cases: *Raley v. Ohio*, 360 U.S. 423 (1959), *Cox v. Louisiana*, 379 U.S. 559 (1965), and *United States v. Pennsylvania Industrial Chemical Corp. ("PICCO")*, 411 U.S. 655 (1973).

In *Raley*, the Court reversed the defendants' convictions under state law for refusing to answer questions before a state commission where the defendants had relied on the commission's representation that they could refuse to answer based on their right against self-incrimination.  360 U.S. at 425.  The Court found that the Commission's statements constituted "active misleading"

5

from a body acting as the agent of the state on the matter and that it therefore could not "hold that the Due Process Clause permits convictions to be obtained under such circumstances." *Id*. at 438-39; *see also id*. at 438 ("[T]o sustain the judgment . . . on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him.")

In *Cox*, the Court reversed the defendant's conviction for violating a statute which prohibited protesting "near" a courthouse. 379 U.S. at 564-65. The Court found that, because "near" was not defined in the statute, the statute foresaw "a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it," and that "demonstrators . . . would justifiabl[y] tend to rely on this administrative interpretation of how 'near' the courthouse a particular demonstration might take place." *Id*. at 568-69. Accordingly, given the authority of the police to interpret "near," the Court found that its prior opinion in *Raley* barred prosecution of the defendant for protesting where the police told him he could do so. *Id*. at 571. The Court found that, by instructing the defendant that he could protest in a certain location, "[i]n effect, appellant was advised that a demonstration at the place it was held would not be one 'near' the courthouse within the terms of the statute." *Id*.

Finally, in *PICCO*, a corporation was convicted for releasing refuse into navigable waters in violation of federal law. 411 U.S. at 657-60. The Court found that the defendant was entitled to present evidence that an Army Corps of Engineers regulation defining the term "refuse" in the relevant statute to exclude the type of refuse the defendant had released had "affirmatively misled" the company into believing its conduct was legal. *Id*. at 674-75. In reaching this conclusion, the Court found that the Army Corp of Engineers was "the responsible administrative agency" under

the relevant statutory scheme and that the defendant could properly resort to its regulations for guidance on "the meaning and requirements of the statute." *Id*. at 674.

Applying these precedents, courts have found an entrapment-by-estoppel defense to require proof of the following elements: "(1) that a government agent actively misled [the defendant] about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation." *Chrestman*, 525 F. Supp. 3d at 31 (quoting *Cox*, 906 F.3d at 1191); *see also United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) ("This defense applies when [1] a government official [2] tells a defendant that certain conduct is legal and the defendant commits what would otherwise be a crime [3] in reasonable reliance on the official's representation." (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994))); *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996) ("[W]e have required that [1] the government official 'actively mislead the defendant; and that the defendant's reliance be [2] actual and [3] reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.'" (citation omitted)). The defense is available only in "limited circumstances," *Chrestman*, 525 F. Supp. 3d at 30, where "the government actors in question provided relatively narrow misstatements of the law that bore directly on a defendant's specific conduct," *id*. at 32 (describing this premise as "central" to *Raley*, *Cox*, and *PICCO*).

Entrapment by estoppel is an affirmative defense for which the Defendant bears the burden. *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995); *United States v. Khanu*, 664 F. Supp. 2d

7

35, 41 (D.D.C. 2009) (citing *United States v. W. Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997)). Further, the Defendant is not entitled to present evidence or argument relating to entrapment by estoppel to the jury unless he first makes a prima facie showing of the defense to the court. *United States v. Pardue*, 385 F.3d 101, 108 (1st Cir. 2004) (affirming exclusion of defense at trial where defendant could not make prima facie case); *Abcasis*, 45 F.3d at 44 (finding that "once they presented a prima facie defense," the defendants could present the defense to the jury); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as immaterial as a matter of law); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir. 1991) (upholding order granting motion in limine precluding evidence). Here, the Defendant cannot make the required prima facie showing because he was never affirmatively misled by a government official, his attorney's interpretation of Department opinions cannot substitute for those of a government official, and the Defendant's purported reliance was not objectively reasonable. Accordingly, there is no basis for admitting the Department's opinions or writings at trial to support an entrapment-by-estoppel defense.

### 1. *No government official affirmatively misled the Defendant that his default was legal.*

First, the Defendant cannot show that any government official "affirmatively assured [him] that certain conduct [was] legal." *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *see also United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal"). To satisfy this element, the Defendant must put forth evidence that the government affirmatively told him that his specific conduct was legal under Section 192. *See Pardue*, 385 F.3d at 108-09 ("In order to establish a prima facie case for entrapment by estoppel, a defendant must put forth an affirmative representation by a government official that his conduct was or would be legal."); *United States v. Ramirez-Valencia*, 202 F.3d

8

1106, 1109 (9th Cir. 2000) (explaining that the defendant "must do more than show that the government made 'vague or even contradictory statements'" and "must show that the government affirmatively told him the proscribed conduct was permissible" (quoting *Raley*, 360 U.S. at 438)); *United States v. Aquino–Chacon*, 109 F.3d 936, 938 (4th Cir. 1997) ("A criminal defendant may assert an entrapment-by-estoppel defense when the government affirmatively assures him that certain conduct is lawful, the defendant thereafter engages in the conduct in reasonable reliance on those assurances, and a criminal prosecution based upon the conduct ensues.").

Further, courts are clear that a defendant cannot extrapolate the government's statement of the law in one scenario as a free pass to commit crimes in another and then claim the defense. *See West Indies Transp.*, 127 F.3d at 314 (rejecting claim that a placard from the U.S. Coast Guard about discharging "nonplastic trash" a certain distance from shore allowed an entrapment-by-estoppel defense where it "ma[de] no representations about the legality of the defendants' conduct—dumping scrap metal off-shore" and "expressly states that other . . . restrictions may apply, putting defendants on notice to make further inquiries"); *Abcasis*, 45 F.3d at 43-44 ("The defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes in the expectation of receiving subsequent authorization."). Nor can a defendant claim entrapment by estoppel by implication. *See Ramirez-Valencia*, 202 F.3d at 1109 (finding form notifying defendant that it was a felony to reenter the United States within five years of deportation did not qualify as an affirmative government statement that reentry after five years was lawful).

Here, even assuming the Defendant actually read and considered all the Department opinions or writings to which he has cited, none of those Department opinions or writings state that a private citizen summoned by congressional subpoena to produce records and appear for

9

testimony in relation to his conduct while a private citizen has absolute immunity from complying in any way with that subpoena. Instead, the Department opinions and writings that address the application of the contempt statute state only that the statute does not reach a refusal to testify or the withholding of particular documents where Congress subpoenas 1) a specifically identified current or former high-ranking Executive Branch official, 2) in relation to that person's official duties within the Executive Branch, and 3) the official has been directed by the President not to appear or produce certain records under an assertion of executive privilege. *See, e.g.*, *Prosecution of Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 O.L.C. Op. 101, 102 (1984) (addressing the issue of "whether the criminal contempt of Congress statute applies to an Executive Branch official who, on the orders of the President, asserts the President's claim of executive privilege"); *id*. at 142 ("In the narrow and unprecedented circumstances presented here, in which an Executive Branch official has acted to assert the President's privilege to withhold information from a congressional committee concerning open law enforcement files, based upon the written legal advice of the Attorney General, the contempt of Congress statute does not require and could not constitutionally require a prosecution of that official."); *see also* 43 O.L.C. Op. __, at * 14 (May 23, 2019) ("[A]gency employees . . . who follow an agency instruction not to appear without the presence of an agency representative are acting lawfully."). Indeed, the Office of Legal Counsel opinion first articulating the position that the contempt statute could not reach an Executive Branch official acting at the President's direction made clear that, "we offer the caveat that our conclusions are limited to the unique circumstances that gave rise to these questions in late 1982 and early 1983. Constitutional conflicts within the federal government must be resolved carefully, based upon the facts of each specific case. . . . [O]ur conclusions . . . should be limited to controversies similar to the one to which this

memorandum expressly relates, and the general statements of legal principles should be applied in other contexts only after careful analysis." 8 O.L.C. Op. at 102-03. Even those opinions that do not address the contempt statute's reach—and therefore could tell the Defendant nothing about whether his defiance was lawful under the statute—but instead discuss only whether executive privilege applies to certain records or testimony nowhere state that a private citizen summoned in relation to events occurring during his time as a private citizen is excused entirely from compliance in any way with a congressional document and testimony demand. They also nowhere state that the Defendant, even if he believed he had a privilege, did not have to submit a privilege log or appear and assert privilege on a question-by-question basis as required by the subpoena.

Unlike the Executive Branch officials at issue in the documents the Defendant has cited, the Defendant did not seek out or receive an individualized assessment from government officials about the lawfulness of the particular circumstances of his conduct before defying the congressional subpoena. And, unlike those Executive Branch officials, he 1) was not subpoenaed in his capacity as a current or former White House official or in relation to his official duties when he worked in the White House, and 2) he did not receive a direction from the Executive Branch— either the current or former administration—not to appear or produce records in response to the subpoena, *see* Ex. 1 (October 18, 2021, letter from White House Deputy Counsel to Costello stating that President Joseph Biden had determined an assertion of executive privilege was not justified and that this determination applied to the Defendant's deposition testimony and any documents concerning subjects relating to January 6); Ex. 2 (October 6, 2021, letter from Justin Clark to Costello stating only that the Defendant should "where appropriate" invoke privileges and not provide documents or testimony concerning privileged material); Ex. 3 (emails from Justin Clark to Costello stating that the October 6 letter "didn't indicate that we believe there is immunity

11

from testimony for your client" and stating that, while the Defendant had told the Committee the former President "has directed Mr. Bannon not to produce documents or testify until the issue of executive privilege is resolved," Clark had "simply reiterated the instruction" from his October 6 letter). Moreover, not only do the Department opinions and writings not sanction the specific conduct in which the Defendant engaged, they include warnings that their reasoning is limited to the particular circumstances they address. And the Defendant never provided any government official with the facts of his specific situation or sought the government's opinion of it. *See West Indies Transp.*, 127 F.3d at 313 (affirming exclusion of defense where defendant had sought the government's advice on one scenario but not the scenario for which the defendant was charged).

The Defendant is left, therefore, only with his guess that the government might ultimately extend its reasoning with respect to one class of conduct to an entirely different class of conduct. But that cannot support an entrapment-by-estoppel defense. Nothing in the documents supports such a prediction, and even if it did, the mere possibility that the government might view certain conduct as lawful in the future does not mean that a defendant who engages in such conduct today has been entrapped. Such an outcome would not serve the due process concerns underlying the entrapment-by-estoppel defense and should be rejected.

> **2.    The Defendant's attorney's interpretation of Department opinions provides no basis for the defense because his attorney is not a government official.**

Second, to the extent the Defendant's attorney attempted to predict what position the Department might take with respect to the Defendant's circumstances based on the attorney's interpretation of Department opinions and writings in relation to different circumstances, that cannot support an estoppel defense either because the Defendant's attorney is not a government official. The defense is focused on the unfairness of a government agent telling a defendant his

proposed conduct is legal and then prosecuting him for that very conduct. It is limited, therefore, to affirmative statements of the law by the government. Mr. Costello was not a government agent, so his mistaken conclusions about the reach of the contempt statute cannot be attributed to the government. *United States v. Hardridge*, 379 F.3d 1188, 1194 (10th Cir. 2004) ("[W]here, as here, the alleged unfairness to the defendant arises out of private conduct and not from government action, it is not the *government* that has denied due process." (emphasis in original)); *W. Indies Transp., Inc.*, 127 F.3d 299 at 314 ("The entrapment by estoppel defense applies only to representations made by government officials, not to asserted reliance on legal advice or representations from non-governmental actors. Representations made by [a] private entity as to the legality of [the defendant's conduct] cannot remotely establish a valid entrapment by estoppel defense."). And allowing the Defendant to rely on Mr. Costello's legal conclusions about how the Department might apply the law to his situation given its conclusions in other situations would do nothing to serve the due process concerns that underly such a defense. *See Raley*, 360 U.S. at 438 ("[T]o sustain the judgment . . . would be to sanction the most indefensible sort of entrapment by the *State*—convicting a citizen for exercising a privilege *which the State clearly had told him* was available to him." (emphasis added)). Instead, it would simply allow the Defendant to back-door the good-faith reliance defenses that this Court has already found unavailable based on controlling Supreme Court and Circuit precedents.

> **3. The Defendant cannot show his reliance on Department records, if any, was objectively reasonable.**

Finally, the Defendant cannot show his reliance on the Department opinions and writings was reasonable. "[R]easonable reliance means a defendant must establish that 'a person truly desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" *W. Indies Transp., Inc.*, 127 F.3d at 313 (quoting *United*

13

*States v. Trevino–Martinez*, 86 F.3d 65, 69 (5th Cir. 1996); *Brebner*, 951 F.2d at 1024. Given that none of the opinions or writings address the Defendant's specific conduct, that both the current White House Counsel's Office and the former President's counsel informed the Defendant he was not being directed to completely disregard Congress's demand for testimony and documents, and that the opinions and writings cabin their conclusions to the specific circumstances of the cases they address, at best the Defendant was on notice that further inquiry was required before he could conclude the government viewed his default as falling outside the bounds of Section 192. Reliance under those circumstances is not reasonable and the Defendant cannot make a prima facie showing of this element either. Accordingly, the Department's records are inadmissible to support an entrapment-by-estoppel defense.

> **D.  Department Opinions and Writings and the Defendant's Interpretation of Them Do Not Support a Public Authority Defense.**

The Defendant has also suggested he believes the evidence supports a public-authority defense. ECF No. 28 at 22 n.2. It does not.

The public-authority defense applies only to a "defendant who knows the conduct he has been authorized to commit is illegal," but believes he is acting as an agent of a government official who possessed actual authority to order his conduct. *United States v. Alvarado*, 808 F.3d 474, 485 (11th Cir. 2015); *see also United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001) ("The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" (citations omitted)). Like entrapment by estoppel, the defendant bears the burden of proof, *United States v. Theunick*, 651 F.3d 578, 590 (6th Cir. 2011), and he must make a prima

14

facie showing of the defense to present it to the jury,[2] *see Alvarado*, 808 F.3d at 484 ("[A] defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Kuai Li*, 475 F. Supp. 2d 590, 593 (E.D. Va. 2007) (excluding evidence of a public-authority defense where the defendant could not establish that the official whose direction he claimed to follow had the actual authority to engage the defendant in the illegal conduct). The defense requires proof of the following elements: 1) "a federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue," 2) "the defendant must have reasonably relied on that authorization when engaging in that conduct," and 3) "the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question." *Alvarado*, 818 F.3d at 484. The Department's opinions or writings do not satisfy these elements here.

### 1. *The Defendant never received a direction from law enforcement to engage in total noncompliance with the subpoena.*

First, the Department's opinions and writings do not constitute a direction from a law enforcement official to the Defendant to refuse to comply with the congressional subpoena. Indeed, the Defendant never sought the authorization of a law enforcement official. The only communication he had with any Executive Branch official was with the White House Counsel's Office and, in that instance, the communication consisted of an unsolicited letter from the Counsel's Office explicitly advising the Defendant that the President had decided not to assert

---

[2] Under Federal Rule of Criminal Procedure 12.3, the Defendant must provide notice of a public authority defense by the pretrial motion deadline set by the Court. The Defendant has not, to date, provided any such notice. The Government believes that, even without proper notice, the Court can decide now that the Department's opinions and writings are not admissible in support of such a defense. The Government does not, by this motion, however, intend to waive any rights to discovery and notice under Fed. R. Crim. P. 12.3.

15

executive privilege over the Defendant's deposition testimony or any documents he possessed regarding January 6.  Ex. 1.  The Defendant was not an informant engaged in covert activities at the direction of a law enforcement agent in furtherance of a criminal investigation.  He was a private citizen who attempted to predict, based on inapposite Department writings, whether the Department would prosecute him.  The public authority defense is not available in these circumstances.

### 2. *The Department's opinions and writings were not authored by law enforcement officials with actual authority to direct the Defendant to defy the subpoena.*

Second, even if the Department writings had directed the Defendant not to comply in any way with the subpoena, the authors of those writings—representatives of the Department of Justice—do not have the actual authority to direct the Defendant not to comply with a congressional subpoena on the basis of executive privilege.  Every court to have decided the issue has held that, for the public authority defense to be available, a defendant must have received a direction to commit a crime from a law enforcement agent who had "actual, not apparent authority" to so direct him.  *United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011); *see also Fulcher*, 250 F.3d at 254 ("[W]e adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017) (finding the defense is limited "to those situations where the government agent in fact had the authority to empower the defendant to perform the acts in question"); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States*

16

*v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994) ("The validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the "public authority"; reliance on the apparent authority of a government official is not a defense in this circuit, because it is deemed a mistake of law, which generally does not excuse criminal conduct."); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real").[3]

The Office of Legal Counsel and other representatives of the Department of Justice do not have the authority to invoke executive privilege and direct a private citizen, subpoenaed in his capacity as such, to ignore completely a congressional subpoena's document and testimony requirements.[4] Even if the Defendant had been subpoenaed by the Select Committee in his capacity as a White House official, as the Department's writings make clear, it is only the President

---

[3] In *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam), the D.C. Circuit reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *See United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990). The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale, and the panel majority in *United States v. North* subsequently rejected Oliver North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here.

[4] Although OLC's interpretation of a President's direction and the law is binding on Department personnel, this does not render it a direction to a private citizen to default by a law enforcement officer with actual authority to give such a direction.

17

that has the authority to direct a subordinate not to comply on the basis of executive privilege, not Department officials. *See, e.g.*, *Prosecution of Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 102 (1984) ("[T]he contempt of Congress statute was not intended to apply and could not constitutionally be applied to an Executive Branch official who asserts *the President's claim* of executive privilege." (emphasis added)); *id*. ("[T]he President has the authority, rooted inextricably in the separation of powers under the Constitution, to preserve the confidentiality of certain Executive Branch documents."). The Defendant cannot show, therefore, that he received authorization to engage in contempt from an official with actual authority based on Department opinions and statements.

### 3. *The Defendant cannot show that his reliance on Department records, if any, was objectively reasonable.*

Finally, the Defendant cannot show that, even if Department writings qualified as an authorized law enforcement agent's direction to engage in criminal conduct, he relied on their direction reasonably. The public authority defense is based on a defendant's "objectively reasonable reliance on the authority of a government official." *Fulcher*, 250 F.3d at 254; *see also Sariles*, 645 F.3d at 318-19. This reasonableness requirement is necessary to ensure the "uniform enforcement of law"; otherwise, anyone could claim they interpreted a public official's actions or statements as authorizing them to engage in criminal conduct, no matter how unreasonable that belief, and avoid accountability. *See Burrows*, 36 F.3d at 882 (citing *United States v. Lansing*, 424 F.2d 225 (9th Cir. 1970) (internal quotation marks omitted)). The Defendant cannot show his reliance on Department writings was reasonable to support a public-authority defense for the same reason he cannot do so with respect to entrapment by estoppel. None of the writings to which he points were directed to him and none can be read to have directed him to engage in total noncompliance with either the subpoena's document demand or the testimonial demand—

particularly where neither the current nor former President directed total noncompliance. The Defendant cannot satisfy this element of the public-authority defense based on the Department's writings and opinions and they must be excluded.

### E. Allowing the Defendant to Present Evidence of the Department's Opinions and Writings Would Confuse the Issues and Mislead the Jury.

Even relevant evidence is inadmissible where its probative value is substantially outweighed by a danger of "undue prejudice, confusion of the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As outlined above, the Department's opinions and writings relating to contempt of Congress and executive privilege have no probative value here. Yet, allowing the Defendant to admit evidence of them carries a substantial risk of confusing the issues and misleading the jury. If the Defendant is allowed to admit inapposite Department opinions directed at different individuals in different circumstances—some or all of which the Defendant may never have read himself—to argue that he should be acquitted, the jury necessarily will be asked to parse the Department's legal conclusions to determine if they have application to the facts of the Defendant's contempt. Not only would this distract the jury from the consequential issue in this case—whether the Defendant deliberately and intentionally refused to show up—but it could invite nullification or invite the jury to substitute the Department's opinions on the law for this Court's instructions on the law, neither of which are tenable outcomes. *See United States v. Wilkerson*, 966 F.3d 828, 835 (D.C. Cir. 2020) ("[I]t is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." (quoting *Sparf v. United States*, 156 U.S. 51, 102 (1895)) (internal quotation marks omitted))). Federal Rule of Evidence 403 bars the admission of such unduly prejudicial evidence.

### III. CONCLUSION

The Department of Justice's opinions and writings relating to the reach of the contempt of Congress statute and the assertion of executive privilege in response to congressional subpoenas have no relevance to resolving the charges in this case. They provide no evidence relevant to any of the elements of the charged offenses and they cannot support the affirmative defenses the Defendant has suggested he intends to assert. The evidence must be excluded.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov