UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE
RELATING TO OBJECTIONS TO SUBPOENA THAT DEFENDANT WAIVED**

In various filings and in statements before this Court, the Defendant, Stephen K. Bannon, has stated an intention to challenge the contempt of Congress charges against him through assertions that the congressional subpoena on which he defaulted was rendered invalid based on supposed procedural defects in the January 6th Select Committee's ("the Committee") work and issuance of the subpoena. Specifically, the Defendant claims that the Committee's composition did not comply with its authorizing resolution; that Committee rules improperly barred counsel other than the Defendant's from appearing at the required deposition; and that the Committee failed to follow its rules in the administration of the Defendant's subpoena. But the Defendant never raised any of these objections to the Committee, and in failing to do so, he has waived the right to raise them now. The Defendant's waiver means that he cannot present evidence or argument relating to these objections at trial. The Court should thus preclude the Defendant from introducing evidence or making arguments at trial relating to his waived procedural objections to the Committee's subpoena.

I.    FACTUAL BACKGROUND

When the Defendant refused to produce documents or appear for testimony before the Committee, he raised only one basis for his noncompliance: an alleged assertion of executive

privilege by former President Donald J. Trump. After a federal grand jury in the District of Columbia returned a two-count indictment against him for contempt of Congress, however, the Defendant began to advance multiple other objections to the Committee's subpoena. Through his failure to make these objections to the Committee, however, the Defendant has waived them as a defense at trial.

      **A.**    **The Defendant's Refusal to Appear or Produce Documents**

On June 30, 2021, the U.S. House of Representatives adopted House Resolution 503, which created the Committee and set forth publicly the Committee's rules and procedures. Indictment, ECF No. 1, at ¶¶ 1-5; *see also* H. Res. 503, ECF No. 28-7. On September 23, 2021, as part of its investigation, the Committee issued a subpoena to the Defendant requiring him to appear and produce documents to the Committee on October 7, 2021, and to appear for a deposition before the Committee on October 14, 2021. Indictment ¶¶ 7-8. The cover letter to the subpoena explained why the Committee believed the Defendant had information pertinent to its investigation, *id*. ¶ 7, and the subpoena included directions and rules regarding how to comply with both its document and testimonial demands, *id*. ¶¶ 12, 14.

The Defendant did not comply with the subpoena in any way. *Id*. ¶ 21. Instead, on October 7, 2021, after the deadline for producing documents to the Committee had passed, his attorney, Robert Costello, sent a letter to the Committee's Chief Counsel claiming that the Defendant could not comply because former President Trump had claimed that the subpoena sought records and information potentially protected by executive and other privileges. *Id*. ¶ 16. The Committee Chair responded the following day, rejecting this basis for noncompliance and reminding the Defendant that in order to properly assert privileges and objections to the Committee, he was

required to provide a privilege log for withheld documents and to appear and assert privileges on a question-by-question basis at his deposition. *Id*. ¶ 17.

The Defendant still did not comply. Instead, the evening before the deposition date, Mr. Costello transmitted a letter to the Committee Chair announcing that the Defendant would not produce documents or appear for a deposition until the Committee reached an agreement with the former President or secured a court ruling regarding "the extent, scope, and application of the executive privilege." *Id*. ¶ 18. The Defendant then did not appear for a deposition the next day, October 14, 2021, as required by the subpoena. *Id*. ¶ 19. In sum, at the time he defaulted, the Defendant had raised only former President Trump's alleged invocation of executive and other privileges as a basis for his noncompliance. *See* ECF No. 29-1 (compilation of all of the Defendant's correspondence with the Committee in advance of his default).

        B.        The Defendant's Post-Indictment Objections

Since the Defendant was charged in this case, he has suggested in pleadings and hearings that he intends to raise new, procedural objections to the Committee subpoena. Specifically, he has suggested that his noncompliance was excused because (1) the Committee operated using titles for its leading members of "Chair" and "Vice Chair" rather than "Chair" and "Ranking Member," *see* ECF No. 28 at 19-20 (stating that the Committee "did not act within its legal authority with regard to the subpoena and deposition of Mr. Bannon, because there was no consultation with the ranking minority member. Simply put, the Select Committee does not have a ranking member."); (2) the Committee's rules did not permit former President Trump's counsel to attend his deposition, *see* ECF No. 30 at 18 (stating that counsel advised the Defendant that the "subpoena was invalid because the committee would not allow former President Trump's lawyer to appear to assert and protect executive privilege"); and (3) the Committee did not provide the Defendant with

3

a copy of Section 3(b) of H. Res. 8, *see* ECF No. 39 at 3 ("Mr. Bannon did not have to appear for deposition, because paragraph 11 provides that when a subpoenaed person does not receive a copy of Rule 3(b) . . . then that person does not have to appear for a deposition."). But as set forth in detail below, the Defendant cannot now raise for the first time these novel objections to the Committee's subpoena.

II.     **ARGUMENT**

    A.    **A Defendant Who Fails to Raise an Assertion of Privilege or Objection to a Subpoena With the Committee That Issued It Waives the Privilege or Objection.**

It is settled law in the contempt of Congress context that a subpoenaed witness who fails to raise an apparent objection or privilege to a subpoena to the issuing committee has waived it as a defense to contempt. In *United States v. Bryan*, the Supreme Court rejected the defendant's ability to raise as a defense that there was a "defect in composition" of the committee that had issued her subpoena because a quorum of the committee was not present on the date and time her response was due. 339 U.S. 323, 330-334 (1950). The Court found the defendant had waived the objection because she had only raised it for the first time at the contempt trial, two years after her default. *Id*. In reaching this conclusion, the Court emphasized that a subpoenaed witness must raise any objections to compliance to the relevant congressional committee at the time of the witness's refusal to comply to allow the committee to consider it or ameliorate it. *Id*. at 333 ("To deny the Committee the opportunity to consider the objection or remedy it is in itself a contempt of authority and an obstruction of its processes." (citing *Bevan v. Krieger*, 289 U.S. 459, 464-465 (1933))). Accordingly, the failure to voice an objection or privilege in the face of a congressional subpoena before its issuing committee results in waiver. *Hutcheson v. United States*, 369 U.S. 599, 608-611 (1962) (explaining that a constitutional objection "must be adequately raised before

4

the inquiring committee if [it] is to be fully preserved for review in this Court. To hold otherwise would enable a witness to toy with a congressional committee in a manner obnoxious to the rule that such committees are entitled to be clearly apprised of the grounds on which a witness asserts a right of refusal to answer." (internal citations omitted)); *McPhaul v. United States*, 364 U.S. 372, 378-79 (1960) (finding the defendant could not use as a defense to willful default that he did not have the subpoenaed records when he had never made such a claim to the relevant committee).

Consistent with the general principle of good-faith and fair-dealing between a witness and a congressional committee, however, a witness will not be deemed to have waived an objection based on a procedural defect about which he could not have known. *See Yellin v. United States*, 374 U.S. 109, 122-23 (1963) (no waiver of objection where defendant could not have known that the relevant committee did not follow its procedures to consider it when the defendant first raised it); *Liveright v. United States*, 347 F.2d 473, 474-76 (D.C. Cir. 1965) (no waiver where defendant was not aware, and had no reason to be aware, of improper issuance of his subpoena).

### B. The Defendant Has Waived Objections That He Failed to Raise Before the Committee and Should Be Precluded From Raising Them at Trial.

When dealing directly with the Committee, the Defendant raised only one claimed basis for his noncompliance with its subpoena: an alleged assertion of executive privilege by former President Trump. That being the only basis the Defendant identified to the Committee for his reason for not complying with its subpoena, under the Supreme Court's precedents outlined above, the Defendant has waived any other objections based on claimed procedural defects or other privileges of which he was on notice at the time he defaulted. This waiver includes the three additional supposed procedural defects that the Defendant raise during this litigation. As outlined below, he has waived these new claims as a defense against the charges because the Defendant did not inform the Committee that he refused to comply with its subpoena because its ranking

5

Republican member is referred to as a Vice Chair rather than a Ranking Member. He did not notify the Committee that he objected to the Committee rules' exclusion of counsel other than his own from attendance at depositions. And he did not tell the Committee that his noncompliance was based on the fact that the Committee had not provided him with a copy of Rule 3(b). Because all of these issues were apparent on their face at the time the Defendant defaulted, and he did not object based on them, he has waived the right to raise them now.

> **1.     The Defendant has waived any objection to the subpoena based on the Committee's use of the term "Vice Chair" for its ranking minority member.**

The Defendant has suggested that he will raise objections before this Court to the Committee's subpoena because the Committee does not have a Ranking Minority Member. *See* ECF No. 28 at 19 ("The Select Committee did not act within its legal authority with regard to the subpoena and the deposition of Mr. Bannon, because there was no consultation with the ranking minority member. Simply put, the Select Committee does *not have a ranking minority member*." (emphasis in original)). The Defendant's after-the-fact assertion of this objection, then, appears to be based on an immaterial difference in nomenclature between the Committee's authorizing resolution, House Resolution 503 (which refers to the ranking Republican member as a Ranking Minority Member), and the Committee's use of the title "Vice Chair" to refer to ranking member Rep. Liz Cheney.

Even to the extent the semantics of Rep. Cheney's title could constitute a procedural defect in the Committee's operations, the Defendant did not raise this objection before the Committee and has thus waived it because all of the information necessary to make it was available to him at the time he defaulted. The Committee's authorizing resolution, which used the title "Ranking

Minority Member," was a public law whose entire text appears on the Committee's website.[1] Also public was the fact that Rep. Cheney used the equivalent title of "Vice Chair." For instance, on September 2, 2021, the Committee issued a press release titled, "Chairman Thompson Announces Representative Cheney As Select Committee Vice Chair."[2] And on October 7, 2021, when the Defendant defaulted on the document deadline, but before he defaulted on his deposition deadline, the Committee Chair and Vice Chair Cheney jointly issued a statement condemning Bannon's noncompliance.[3] Further, the Defendant cannot exploit this newfound distinction without a difference to excuse his noncompliance when he continues to insist—as he did at the time of his default—that his true reason for refusing to appear was the alleged assertion of executive privilege. *See Bryan*, 339 U.S. at 333-334 ("[T]he fact that the alleged defect upon which respondent now insists is, in her own estimation, an immaterial one, is clearly shown by her reliance before the Committee upon other grounds for failing to produce the records. She does not deny . . . that she would not have complied with the subpoenas no matter how the Committee had been constituted at the time."). The Defendant should be foreclosed from introducing evidence or making argument at trial about the Committee's use of the term "Vice Chair" rather than "Ranking Minority Member" because he has waived the objection.

        **2.** ***The Defendant has waived any objection to the subpoena based on the committee's rule regarding the presence of counsel other than his own.***

The Defendant's pleadings repeatedly assert that the subpoena to him "was invalid, based on long-standing U.S. Department of Justice authority, because the Committee would not allow

---

[1] *See* https://january6th.house.gov/about (last accessed April 15, 2022).

[2] *See* https://january6th.house.gov/news/press-releases/chairman-thompson-announces-representative-cheney-select-committee-vice-chair (last accessed April 15, 2022).

[3] *See* https://january6th.house.gov/news/press-releases/thompson-cheney-statement-subpoena-deadline (last accessed April 15, 2022).

7

former President Donald J. Trump's counsel to be present at Mr. Bannon's deposition, so as to protect executive privilege." ECF No. 30 at 2. But the Defendant has conceded that even though he and his counsel believed that the Committee rule provided a basis on which to object to the subpoena, he chose not to do so. The Defendant's surreply to the Government's motion in limine regarding a good-faith reliance defense asserted that Mr. Costello "was under no obligation to reveal to Staff Counsel that Mr. Bannon had a complete defense to the subpoena's demands based upon the OLC opinions; Costello was well aware that it was fruitless to make a request for a change of rules to the Staff Counsel, because Staff Counsel had no authority to so act." ECF No. 39 at 7. Although it is true that Mr. Costello and the Defendant could choose not to raise any specific objection to the Committee, their decision not to do so constitutes waiver, and the Defendant cannot now raise the objection as a defense at trial. It is inconsistent with the authority of the Committee and the requirement that witnesses make timely assertions of any good-faith objections they may have to allow the Defendant to formulate secret objections that he holds in abeyance and raises only before a court. "To deny the Committee the opportunity to consider the objection or remedy it is in itself a contempt of its authority and an obstruction of its processes." *Bryan*, 339 U.S. at 333 (internal citation omitted).

    **3.**  ***The Defendant has waived any objection to the subpoena based on whether the Committee provided a copy of Rule 3(b).***

Finally, in his surreply to the Government's motion in limine regarding an advice-of-counsel defense, the Defendant argues that "pursuant to paragraph 11 of the 117th Congress Regulations For Use of Deposition Authority, Mr. Bannon did not have to appear for deposition, because paragraph 11 provides that when a subpoenaed person does not receive a copy of Rule 3(b) . . . then that person does not have to appear for a deposition." ECF No. 39 at 3. As an initial matter, the Defendant misquotes the rule. The rule does not excuse the Defendant's appearance,

it only states that "[a] witness shall not be required to testify unless the witness has been provided with a copy of Section 3(b) of H. Res. 8, 117th Congress." 117th Cong. Regulations for Deposition Authority, ECF No. 28-8 at US-000963. And what the Defendant fails to mention is that consistent with these rules, the Committee was prepared to provide the Defendant with a copy of Section 3(b) when he appeared for his deposition. *See* Interview Report, Committee Counsel, ECF No. 35-2 at US-000362 (Committee counsel "had also prepared a manila folder of documents to be provided to Bannon should he appear. This manila folder contained a copy of House Resolution 503, Section 3(b) of House Resolution 8, and a copy of the 117th Congress Regulations for Use of Deposition Authority."). The only reason the Defendant did not receive a copy of Section 3(b), then, is because he failed to appear as required by the subpoena.

Moreover, the rules requiring the Committee to provide Section 3(b) were attached to the subpoena with which the Defendant was served, Ex. 1 at US-000417, so, even to the extent there was a procedural defect, the Defendant was on notice of the requirement but waived his opportunity to object by not raising it with the Committee. "A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity." *Bryan*, 339 U.S. at 331. The Defendant cannot refuse to appear for his deposition or to raise good-faith objections to the Committee's subpoena, and then fault the Committee for failing to corner him. His claim with respect to Section 3(b) is, like his other eleventh-hour objections, waived.

### III.    CONCLUSION

The only objection the Defendant asserted to the Committee as a basis for his noncompliance with its subpoena was a purported assertion of executive privilege by former President Trump. Accordingly, the Defendant waived all other objections of which he was on notice at the time of his default, including those he has raised for the first time in the criminal contempt proceedings. He should be precluded from introducing evidence or arguments regarding these waived objections at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov