UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE DEFENDANT'S PRIOR EXPERIENCE WITH SUBPOENAS**

The Defendant has indicated that evidence of his experiences testifying before other congressional committees and the Special Counsel's Office of Robert S. Mueller, III, undermines evidence of his willfulness in this case. The Defendant has suggested that, because he (allegedly) was not contemptuous in the past, he is not a contemptuous person and was not, therefore, contemptuous here. That is an improper propensity argument. The Defendant's conduct in response to prior subpoenas or requests for information is irrelevant to evaluating his willfulness in this case. And admission of evidence relating to his prior conduct risks confusing the jury and would serve only to advance the very sort of advice-of-counsel/good-faith defense this Court has already concluded is unavailable under the law. The Defendant's prior experience with subpoenas or testifying before government bodies should be excluded.

**I.    BACKGROUND**

The Defendant failed to produce any documents or appear for testimony under a subpoena issued by the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). The straightforward question in this prosecution, therefore, is whether his noncompliance was deliberate and intentional and thus constitutes contempt under 2 U.S.C. § 192.

In his October 13, 2021, letter to the Committee, informing it that he would not appear or produce records until the Committee reached an agreement with former President Donald Trump,

the Defendant asserted that his position "is not in defiance of your Committee's subpoena" and noted that he had testified on three prior occasions, "before the Mueller Investigation, The House Intelligence Committee, and the Senate Intelligence Committee" after the former President "waived his invocation of the executive privileges." ECF No. 29-1 at US-000423. After the Defendant was referred for contempt, in a November 3, 2021, interview with the FBI and U.S. Attorney's Office, the Defendant's attorney, Robert Costello, asserted that the Defendant is not a contemptuous person and pointed to the fact that the Defendant had testified on four previous occasions in circumstances that he claimed involved communications with the former President and the possible issue of executive privilege. *See* Interview Report, Robert Costello, ECF No. 28-4, at US-001771-72. Specifically, Mr. Costello advised that the Defendant had testified once before the Special Counsel's Office of Robert S. Mueller, III (the "SCO"), although Mr. Costello did not specify whether the pertinent appearance was before the grand jury or in some other context; once before the U.S. Senate Select Committee on Intelligence; and twice before the U.S. House of Representatives Permanent Select Committee on Intelligence. *See id.* Although, in his letter to the Committee and his interview, Mr. Costello said nothing about whether the Defendant was subpoenaed for documents by those authorities and whether the Defendant did produce any, and he did not say whether those other subpoenas or requests were limited to communications with the former President or involved other topics as well, the Defendant and Mr. Costello have asserted, essentially, that the Defendant's alleged prior compliance demonstrates that he understands the process of navigating executive privilege, illustrates his willingness to comply with subpoenas involving communications with the former President, and rebuts evidence that his total noncompliance with the Committee's subpoena was willful. *See id.*; ECF No. 29-1 at US-000423; *see also* Mot. Hrg., 3/16/22, Tr. at 65:17-22 (Mr. Costello: "With respect to the issue of

willfulness. I mean, when somebody has a lot of experience they are often referred to – they make a comment that 'this isn't my first rodeo.' Well, this isn't Mr. Bannon's first rodeo when it comes to executive privilege and the Congress. In fact, it's his fifth rodeo.").

## II. ARGUMENT

The Defendant cannot defend the charges in this case by offering evidence of his experience with and alleged prior compliance with requests or subpoenas for information issued by Congress and the SCO.

First, to be admissible, evidence must be relevant, which is to say that it must have some "tendency to make a fact more or less probable than it would be without the evidence; and the fact [must be] of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 ("Irrelevant evidence is inadmissible."). The Defendant's alleged prior compliance with subpoenas or requests for information is of no consequence in determining whether he was contemptuous here. The only conceivable argument he could make to the jury from such evidence is that he is not predisposed to be contemptuous—which is exactly what Mr. Costello contended to the Committee, during his November 3, 2021, interview, and at the March 16, 2022, motions hearing. Such "prior good acts" evidence is nothing more than classic improper propensity evidence offered to show that, because the Defendant was not contemptuous at other times and in other circumstances, he was not contemptuous here. *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); Fed. R. Evid. 405(b) (allowing for the introduction of specific instances of conduct to prove a character or character

trait only when it "is an essential element of a charge, claim, or defense").[1]

Specifically, the Defendant's alleged compliance with other demands for testimony is not probative of his state of mind in failing to respond to the Committee's subpoena, and his alleged non-contemptuous character is not an element of the contempt offenses charged in this case. *See United States v. Washington*, 106 F.3d 983, 999-1000 (D.C. Cir. 1997) (affirming district court's exclusion of evidence of defendant-police officer's prior commendations in prosecution of bribes-for-drug-security scheme because the officer's "'dedication, aggressiveness and assertiveness' in investigating drug dealing and carjacking is neither 'pertinent' to nor an 'essential element' of his supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged"); *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) (affirming district court's exclusion of evidence that defendant-public official assisted constituents who had not bribed him because conduct "in situations unrelated to the charges" was not probative of intent, and "prior 'good acts' generally may not be used to show a predisposition not to commit crimes"); *United States v. Ellisor*, 522 F.3d 1255, 1270-71 (11th Cir. 2008) (affirming district court's exclusion of evidence that defendant had actually put on prior events, in prosecution for fraudulently selling tickets to an event that did not occur, because "evidence of good conduct is not admissible to negate criminal intent" (internal quotation marks and citation omitted)); *United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir. 1990) ("The fact that [the defendant] did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment."). Just as the fact that a person did not rob a bank on

---

[1] To the extent the Defendant seeks to introduce evidence of his general character for law-abidingness, *see In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003), he cannot use evidence of his alleged prior subpoena compliance to do so. Evidence of "pertinent traits," such as law-abidingness, only can be introduced through reputation or opinion testimony, not by evidence of specific acts. *See* Fed. R. Evid. 404(a)(2)(A); Fed. R. Evid. 405(a); *Washington*, 106 F.3d at 999.

4

one day is irrelevant to determining whether he robbed a bank on another, whether the Defendant complied with other subpoenas or requests for testimony—even those involving communications with the former President—is irrelevant to determining whether he unlawfully refused to comply with the Committee's subpoena here.

Second, whatever probative value the Defendant's alleged prior compliance in other circumstances might serve, that value is substantially outweighed by the trial-within-a-trial it will prompt and the confusion it will inevitably cause the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The Defendant would have the jury receive evidence of and evaluate the Defendant's conduct on four prior occasions, in response to four different subpoenas or requests, relating to different investigations and circumstances; compare that conduct and those circumstances to the conduct and circumstances in this case; and then try to ascertain what light, if any, the Defendant's prior conduct—good or bad, compliant or contemptuous—sheds on his conduct here. Such an exercise would be time-consuming and offer no serious insight into whether the Defendant's decision not to produce documents or appear to testify in response to the Committee's subpoena was willful. The Defendant's prior subpoena experience—to the extent they did include some issue relating to communications with the former President—would also inject tangential and irrelevant issues of executive privilege into the trial, requiring the jury to parse whether an assertion or lack of assertion of privilege and the response by the Defendant and the subpoenaing authority has some bearing on the circumstances of his non-compliance here. The evidence, argument, and necessary instructions would distract the jury from the straightforward issues it must decide in this case.

Finally, it appears that the purpose for which the Defendant would admit evidence regarding his prior experience with testifying would be to promote an advice-of-counsel or good-faith defense—*i.e.*, that the Defendant, allegedly, worked with his attorneys to navigate executive privilege issues in the past and tried to do so here, thereby excusing his noncompliance. This Court has already concluded that such a defense is unavailable to the Defendant under Supreme Court precedent. Order (Apr. 6, 2022), ECF No. 49. The Defendant's reliance on counsel and/or his alleged good faith in response to prior subpoenas is thus not pertinent to any available defense and is irrelevant to determining whether his failure to produce documents and appear for testimony in response to the Committee's subpoena was willful.

### III.   CONCLUSION

Whether the Defendant complied with other subpoenas or requests for information—from Congress, a grand jury, or elsewhere—has nothing to do with whether his noncompliance with the Committee's subpoena was willful. The Defendant should therefore be prohibited from introducing any evidence of his prior subpoena experience.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov