# EXHIBIT R



**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Principal Deputy Assistant Attorney General       *Washington, D.C.  20530*

May 16, 2005

# MEMORANDUM FOR ATTORNEYS OF THE OFFICE

*Re:  Best Practices for OLC Opinions*

  By delegation, the Office of Legal Counsel exercises the Attorney General's authority under the Judiciary Act of 1789 to advise the President and executive agencies on questions of law.  OLC is authorized to provide legal advice only to the Executive Branch; we do not advise Congress, the Judiciary, foreign governments, private parties, or any other person or entity outside the Executive Branch.  OLC's primary function is to provide formal advice through written opinions signed by the Assistant Attorney General or (with the approval of the AAG) a Deputy Assistant Attorney General.  Our Office is frequently called upon to address issues of central importance to the functioning of the federal Government, and, subject to the President's authority under the Constitution, OLC opinions are controlling on questions of law within the Executive Branch.  Accordingly, it is imperative that our opinions be clear, accurate, thoroughly researched, and soundly reasoned.  The value of an OLC opinion depends on the strength of its analysis.  Over the years, OLC has earned a reputation for giving candid, independent, and principled advice—even when that advice may be inconsistent with the desires of policymakers.  This memorandum reaffirms the longstanding principles that have guided and will continue to guide OLC attorneys in preparing the formal opinions of the Office.

  *Evaluating opinion requests*.  Each opinion request is assigned to a Deputy and an Attorney-Adviser, who will review the question presented and any relevant statutory materials, prior OLC opinions, and leading cases to determine preliminarily whether the question is appropriate for OLC advice and whether it appears to merit a written opinion, as distinct from informal advice.  The legal question presented should be focused and concrete; OLC generally avoids undertaking a general survey of an area of law or a broad, abstract legal opinion.  There also should be a practical need for the opinion; OLC particularly should avoid giving unnecessary advice where it appears that policymakers are likely to move in a different direction.  A formal opinion is more likely to be necessary when the legal question is the subject of a concrete and ongoing dispute between two or more executive agencies.  If we are asked to provide an opinion to an executive agency whose head does not serve at the pleasure of the President (i.e., an agency whose head is subject to a "for cause" removal restriction), our practice is to receive in writing from that agency an agreement to be bound by our opinion.  As a prudential matter, OLC should avoid opining on questions likely to be at issue in pending or imminent litigation involving the United States as a party (except where there is a need to resolve a dispute within the Executive Branch over a position to be taken in litigation).  Finally, the opinions of the Office should address legal questions prospectively; OLC avoids opining on the

legality of past conduct (though from time to time we may issue prospective opinions that confirm or memorialize past advice or that necessarily bear on past conduct).

*Soliciting the views of interested agencies*.  Before we proceed with an opinion, our general practice is to ask the requesting agency for a detailed memorandum setting forth the agency's own analysis of the question—in many cases, there will be preliminary discussions with the requesting agency before the formal opinion request is submitted to OLC, and the agency will be able to provide its analysis along with the opinion request.  (A detailed analysis is not required when the request comes from the Counsel to the President, the Attorney General, or one of the three other Senior Management Offices of the Department of Justice.)  In the case of an interagency dispute, we will ask each side to submit such a memorandum.  Ordinarily, we expect the agencies on each side of a dispute to share their memoranda with the other side, or permit us to share them, so that we may have the benefit of reply comments, when necessary.  When appropriate and helpful, and consistent with the confidentiality interests of the requesting agency, we will also solicit the views of other agencies not directly involved in the opinion request that have subject-matter expertise or a special interest in the question presented.  For example, when the question involves the interpretation of a treaty or a matter of foreign relations, our practice is to seek the views of the State Department; when it involves the interpretation of a criminal statute, we will usually seek the views of the Justice Department's Criminal Division.  We will not, however, circulate a copy of an opinion request to third-party agencies without the prior consent of the requesting agency.

*Researching, outlining, and drafting*.  An OLC opinion is the product of a careful and deliberate process.  After reviewing agency submissions and relevant statutes, OLC opinions and leading cases, the Deputy and Attorney-Adviser should meet to map out a plan for researching the issues and preparing an outline and first draft of the opinion.  The Deputy and Attorney-Adviser should set target deadlines for each step in the process and should meet regularly to review progress on the opinion.  A thorough working outline of the opinion will help to focus the necessary research and the direction of the analysis.  An early first draft often will help identify weaknesses or holes in the analysis requiring greater attention than initially anticipated.  As work on the opinion progresses, it will generally be useful for the Deputy and the Attorney-Adviser to meet from time to time with the AAG to discuss the status and direction of the opinion project.

An OLC opinion should focus intensively on the central issues raised by a question of law and should, where possible, avoid addressing issues not squarely presented.  On any issue involving a constitutional question, OLC's analysis should focus principally on the text of the Constitution and the historical record illuminating the original meaning of the text and should be faithful to that historical understanding.  Where the question relates to the authorities of the President or other executive officers or the separation of powers between the Branches of the Government, past precedents and historical practice are often highly relevant.  On questions of statutory and treaty interpretation, OLC's analysis will be guided by the text and will rely on traditional tools of construction in interpreting the text.  OLC opinions should also consider and apply the past opinions of Attorneys General and this Office, which are ordinarily given great weight.  The Office will not lightly depart from such past decisions, particularly where they directly address and decide a point in question.  Decisions of the Supreme Court and courts of appeals directly on point often provide guiding authority and should be thoroughly addressed,

2

particularly where the issue is one that is likely to become the subject of litigation. Many times, however, our Office will be asked to opine on an issue of first impression or one that is unlikely to be resolved by the courts; in such instances, court decisions in relevant or analogous areas may serve as persuasive authority, depending on the strength of their analysis.

In general, we strive in our opinions for clarity and conciseness in the analysis and a balanced presentation of arguments on each side of an issue. If the opinion resolves an issue in dispute between executive agencies, we should take care to consider fully and address impartially the points raised on both sides; in doing so, it is best, to the extent practicable, to avoid ascribing particular points of view to the agencies in a way that might suggest that one side is the "winner" and one the "loser." OLC's interest is simply to provide the correct answer on the law, taking into account all reasonable counterarguments, whether provided by an agency or not. It is therefore often not necessary or desirable to cite or quote agencies' views letters.

*Secondary review of draft opinions*. Before an OLC opinion is finalized it undergoes rigorous review by the Front Office within OLC and often by others outside the Office. When the primary Deputy and the Attorney-Adviser responsible for the opinion are satisfied that the draft opinion is ready for secondary review, the opinion is generally assigned to a second Deputy for a "second Deputy read." Along with the draft opinion, the Attorney-Adviser should provide to the second Deputy copies of any key materials, including statutes, regulations, key cases, relevant prior OLC opinions, and the views memoranda received from interested agencies. Once the second Deputy read is complete and the second Deputy's comments have been addressed, the primary Deputy should circulate the draft opinion for final review by the AAG, the remaining Deputies, and any particular attorneys within the Office with relevant expertise.

Once OLC's internal review is complete, a draft of the opinion may be shared outside the Office. In some cases, because of time constraints, OLC may circulate a draft opinion before the internal review is complete. Our general practice is to circulate draft opinions to the Office of the Attorney General and the Office of the Deputy Attorney General for review and comment. When and as warranted, we also circulate an informational copy of the draft opinion to the Office of the Counsel to the President. In addition, in most cases, we will circulate a draft to the requesting agency (or, in cases where we are resolving a dispute between agencies, to those agencies that are parties to the dispute) for review, primarily to ensure that the opinion does not misstate the facts or the legal points of interest to the agencies. On certain occasions, where we determine it appropriate, we may circulate a draft opinion to one or more other agencies that have special expertise or interest in the subject matter of the opinion, particularly if they have offered views on the question.

*Finalizing opinions*. Once all substantive work on the opinion is complete, it must undergo a thorough cite check by our paralegal staff to ensure the accuracy of all citations and consistency with the Office's rules of style. After all cite-checking changes have been approved and made, the final opinion should be printed on bond paper for signature. Each opinion ready for signature should include a completed opinion control sheet signed by the primary Deputy, the Attorney-Adviser, and the Deputy who did the second Deputy read. After it is signed and issued, if the opinion is unclassified, it will be loaded into our ISYS database and included in the Office's unclassified Day Books. A separate file containing a copy of the signed opinion, the

opinion control sheet, and copies of key materials not readily available, such as the original opinion request, the views memoranda of interested agencies, and obscure sources cited in the opinion, will also be retained in our files for future reference.

*Opinion publication*.  Most OLC opinions consist of confidential legal advice for senior Executive Branch officials.  Maintaining the confidentiality of OLC opinions is often necessary to preserve the deliberative process of decisionmaking within the Executive Branch and attorney-client relationships between OLC and other executive offices; in some cases, the disclosure of OLC advice also may interfere with federal law enforcement efforts.  These confidentiality interests are especially great for OLC opinions relating to the President's exercise of his constitutional authorities, including his authority as Commander in Chief.  It is critical to the discharge of the President's constitutional responsibilities that he and the officials under his supervision are able to receive confidential legal advice from OLC.

At the same time, many OLC opinions address issues of relevance to a broader circle of Executive Branch lawyers or agencies than just those officials directly involved in the opinion request.  In some cases, the President or an affected agency may have a programmatic interest in putting other agencies, Congress, or the public on notice of the legal conclusion reached by OLC and the supporting reasoning.  In addition, some OLC opinions will be of significant practical interest and benefit to lawyers outside the Executive Branch, or of broader interest to the general public, including historians.  In such cases, and when consistent with the legitimate confidentiality interests of the President and the Executive Branch, it is the policy of our Office to publish OLC opinions.  This publication program is in accordance with a directive from the Attorney General to OLC to publish selected opinions on an annual basis for the convenience of the Executive, Legislative, and Judicial Branches of the Government, and of the professional bar and the general public.

At the time an opinion is signed, the attorneys responsible for the opinion will make a preliminary recommendation as to whether it may be appropriate for eventual publication.  Thereafter, on a rolling or periodic basis, each opinion issued by the Office is reviewed for possible publication by the OLC Publication Review Committee.  If the Publication Review Committee decides that the opinion meets the Office's basic criteria for publication, the Committee will solicit the views of the agency or Justice Department component that requested the opinion, and any agency or component likely to be affected by its publication, as to whether the opinion is appropriate for current publication, whether its publication should be deferred, or whether it should not be published.  OLC gives due weight to the publication recommendations of interested agencies and components, particularly where they raise specific concerns about programmatic or litigation interests that might be advanced or compromised by publication of the opinion.  OLC also generally solicits the views of the Office of the Attorney General and the Office of the Counsel to the President on publication questions, particularly with respect to significant opinions of the Office.

After the final decision is made to publish an opinion, the opinion is rechecked and reformatted for online publication; a headnote is prepared and added to the opinion; and the opinion is posted to the Department of Justice Web site at www.usdoj.gov/olc/opinions.htm.  All opinions posted on the Web site are eventually published in OLC's hardcover bound volumes.

4

\*   \*   \*

Please let me know if you have any questions about the principles set forth above or any suggestions for revising or adding to the guidance provided in this memorandum.

Steven G. Bradbury
Principal Deputy Assistant Attorney General

5