# EXHIBIT T

**Principles to Guide the Office of Legal Counsel**
**December 21, 2004**

The Office of Legal Counsel (OLC) is the Department of Justice component to which the Attorney General has delegated the function of providing legal advice to guide the actions of the President and the agencies of the executive branch. OLC's legal determinations are considered binding on the executive branch, subject to the supervision of the Attorney General and the ultimate authority of the President. From the outset of our constitutional system, Presidents have recognized that compliance with their constitutional obligation to act lawfully requires a reliable source of legal advice. In 1793, Secretary of State Thomas Jefferson, writing on behalf of President Washington, requested the Supreme Court's advice regarding the United States' treaty obligations with regard to the war between Great Britain and France. The Supreme Court declined the request, in important measure on the grounds that the Constitution vests responsibility for such legal determinations within the executive branch itself: "[T]he three departments of government … being in certain respects checks upon each other, and our being judges of a court in the last resort, are considerations which afford strong arguments against the propriety of our extrajudicially deciding the questions alluded to, especially as the power given by the Constitution to the President, of calling on the heads of departments for opinions seems to have been purposely as well as expressly united to the executive departments." Letter from John Jay to George Washington, August 8, 1793, *quoted in* 4 The Founders' Constitution 258 (Philip B. Kurland & Ralph Lerner, eds. 1987).

From the Washington Administration through the present, Attorneys General, and in recent decades the Office of Legal Counsel, have served as the source of legal determinations regarding the executive's legal obligations and authorities. The resulting body of law, much of which is published in volumes entitled Opinions of the Attorney General and Opinions of the Office of Legal Counsel, offers powerful testimony to the importance of the rule-of-law values that President Washington sought to secure and to the Department of Justice's profound tradition of respect for the rule of law. Administrations of both political parties have maintained this tradition, which reflects a dedication to the rule of law that is as significant and as important to the country as that shown by our courts. As a practical matter, the responsibility for preserving this tradition cannot rest with OLC alone. It is incumbent upon the Attorney General and the President to ensure that OLC's advice is sought on important and close legal questions and that the advice given reflects the best executive branch traditions. The principles set forth in this document are based in large part on the longstanding practices of the Attorney General and the Office of Legal Counsel, across time and administrations.

*1. When providing legal advice to guide contemplated executive branch action, OLC should provide an accurate and honest appraisal of applicable law, even if that advice will constrain the administration's pursuit of desired policies. The advocacy model of lawyering, in which lawyers craft merely plausible legal arguments to support their clients' desired actions, inadequately promotes the President's constitutional obligation to ensure the legality of executive action.*

OLC's core function is to help the President fulfill his constitutional duty to uphold the Constitution and "take care that the laws be faithfully executed" in all of the varied work of the

executive branch.  OLC provides the legal expertise necessary to ensure the lawfulness of presidential and executive branch action, including contemplated action that raises close and difficult questions of law.  To fulfill this function appropriately, OLC must provide advice based on its best understanding of what the law requires.  OLC should not simply provide an advocate's best defense of contemplated action that OLC actually believes is best viewed as unlawful.  To do so would deprive the President and other executive branch decisionmakers of critical information and, worse, mislead them regarding the legality of contemplated action.  OLC's tradition of principled legal analysis and adherence to the rule of law thus is constitutionally grounded and also best serves the interests of both the public and the presidency, even though OLC at times will determine that the law precludes an action that a President strongly desires to take.

2.  *OLC's advice should be thorough and forthright, and it should reflect all legal constraints, including the constitutional authorities of the coordinate branches of the federal government–the courts and Congress–and constitutional limits on the exercise of governmental power.*

The President is constitutionally obligated to "preserve, protect and defend" the Constitution in its entirety–not only executive power, but also judicial and congressional power and constitutional limits on governmental power–and to enforce federal statutes enacted in accordance with the Constitution.  OLC's advice should reflect all relevant legal constraints.  In addition, regardless of OLC's ultimate legal conclusions concerning whether proposed executive branch action lawfully may proceed, OLC's analysis should disclose, and candidly and fairly address, the relevant range of legal sources and substantial arguments on all sides of the question.

3.  *OLC's obligation to counsel compliance with the law, and the insufficiency of the advocacy model, pertain with special force in circumstances where OLC's advice is unlikely to be subject to review by the courts.*

In formulating its best view of what the law requires, OLC always should be mindful that the President's legal obligations are not limited to those that are judicially enforceable.  In some circumstances, OLC's advice will guide executive branch action that the courts are unlikely to review (for example, action unlikely to result in a justiciable case or controversy) or that the courts likely will review only under a standard of extreme deference (for example, some questions regarding war powers and national security).  OLC's advice should reflect its best view of all applicable legal constraints, and not only legal constraints likely to lead to judicial invalidation of executive branch action.  An OLC approach that instead would equate "lawful" with "likely to escape judicial condemnation" would ill serve the President's constitutional duty by failing to describe all legal constraints and by appearing to condone unlawful action as long as the President could, in a sense, get away with it.  Indeed, the absence of a litigation threat signals special need for vigilance:  In circumstances in which judicial oversight of executive branch action is unlikely, the President–and by extension OLC–has a special obligation to ensure compliance with the law, including respect for the rights of affected individuals and the constitutional allocation of powers.

2

*4.  OLC's legal analyses, and its processes for reaching legal determinations, should not simply mirror those of the federal courts, but also should reflect the institutional traditions and competencies of the executive branch as well as the views of the President who currently holds office.*

As discussed under principle 3, jurisdictional and prudential limitations do not constrain OLC as they do courts, and thus in some instances OLC appropriately identifies legal limits on executive branch action that a court would not require.  Beyond this, OLC's work should reflect the fact that OLC is located in the executive branch and serves both the institution of the presidency and a particular incumbent, democratically elected President in whom the Constitution vests the executive power.  What follows from this is addressed as well under principle 5.  The most substantial effects include the following:  OLC typically adheres to judicial precedent, but that precedent sometimes leaves room for executive interpretive influences, because doctrine at times genuinely is open to more than one interpretation and at times contemplates an executive branch interpretive role. Similarly, OLC routinely, and appropriately, considers sources and understandings of law and fact that the courts often ignore, such as previous Attorney General and OLC opinions that themselves reflect the traditions, knowledge and expertise of the executive branch.  Finally, OLC differs from a court in that its responsibilities include facilitating the work of the executive branch and the objectives of the President, consistent with the requirements of the law.  OLC therefore, where possible and appropriate, should recommend lawful alternatives to legally impermissible executive branch proposals.  Notwithstanding these and other significant differences between the work of OLC and the courts, OLC's legal analyses always should be principled, thorough, forthright, and not merely instrumental to the President's policy preferences.

*5.  OLC advice should reflect due respect for the constitutional views of the courts and Congress (as well as the President).  On the very rare occasion when the executive branch—usually on the advice of OLC—declines fully to follow a federal statutory requirement, it typically should publicly disclose its justification.*

OLC's tradition of general adherence to judicial (especially Supreme Court) precedent and federal statutes reflects appropriate executive branch respect for the coordinate branches of the federal government.  On very rare occasion, however, Presidents, often with the advice of OLC, appropriately act on their own understanding of constitutional meaning (just as Congress at times enacts laws based on its own constitutional views).  To begin with relatively uncontroversial examples, Presidents at times veto bills they believe are unconstitutional and pardon individuals for violating what Presidents believe are unconstitutional statutes, even when the Court would uphold the statute or the conviction against constitutional challenge.  Far more controversial are rare cases in which Presidents decide to refuse to enforce or otherwise comply with laws they deem unconstitutional, either on their face or in some applications.  The precise contours of presidential power in such contexts are the subject of some debate and beyond the scope of this document.  The need for transparency regarding interbranch disagreements, however, should be beyond dispute.  At a bare minimum, OLC advice should fully address

applicable Supreme Court precedent, and, absent the most compelling need for secrecy, any time the executive branch disregards a federal statutory requirement on constitutional grounds, it should publicly release a clear statement explaining its deviation.  Absent transparency and clarity, client agencies might experience difficulty understanding and applying such legal advice, and the public and Congress would be unable adequately to assess the lawfulness of executive branch action.  Indeed, federal law currently requires the Attorney General to notify Congress if the Department of Justice determines either that it will not enforce a provision of law on the grounds that it is unconstitutional or that it will not defend a provision of law against constitutional challenge.

*6.  OLC should publicly disclose its written legal opinions in a timely manner, absent strong reasons for delay or nondisclosure.*

OLC should follow a presumption in favor of timely publication of its written legal opinions.  Such disclosure helps to ensure executive branch adherence to the rule of law and guard against excessive claims of executive authority.  Transparency also promotes confidence in the lawfulness of governmental action.  Making executive branch law available to the public also adds an important voice to the development of constitutional meaning–in the courts as well as among academics, other commentators, and the public more generally–and a particularly valuable perspective on legal issues regarding which the executive branch possesses relevant expertise.  There nonetheless will exist some legal advice that properly should remain confidential, most notably, some advice regarding classified and some other national security matters.  OLC should consider the views regarding disclosure of the client agency that requested the advice.  Ordinarily, OLC should honor a requestor's desire to keep confidential any OLC advice that the proposed executive action would be unlawful, where the requestor then does not take the action.  For OLC routinely to release the details of all contemplated action of dubious legality might deter executive branch actors from seeking OLC advice at sufficiently early stages in policy formation.  In all events, OLC should in each administration consider the circumstances in which advice should be kept confidential, with a presumption in favor of publication, and publication policy and practice should not vary substantially from administration to administration.  The values of transparency and accountability remain constant, as do any existing legitimate rationales for secret executive branch law.  Finally, as discussed in principle 5, Presidents, and by extension OLC, bear a special responsibility to disclose publicly and explain any actions that conflict with federal statutory requirements.

*7.  OLC should maintain internal systems and practices to help ensure that OLC's legal advice is of the highest possible quality and represents the best possible view of the law.*

OLC systems and processes can help maintain high legal standards, avoid errors, and safeguard against tendencies toward potentially excessive claims of executive authority.  At the outset, OLC should be careful about the form of requests for advice.  Whenever possible, agency requests should be in writing, should include the requesting agency's own best legal views as well as any relevant materials and information, and should be as specific as circumstances allow. Where OLC determines that advice of a more generally applicable nature would be helpful and

appropriate, it should take special care to consider the implications for its advice in all foreseeable potential applications.  Also, OLC typically should provide legal advice in advance of executive branch action, and not regarding executive branch action that already has occurred; legal "advice" after the fact is subject to strong pressures to follow an advocacy model, which is an appropriate activity for some components of the Department of Justice but not usually for OLC (though this tension may be unavoidable in some cases involving continuing or potentially recurring executive branch action).  OLC should recruit and retain attorneys of the highest integrity and abilities.  OLC should afford due respect for the precedential value of OLC opinions from administrations of both parties; although OLC's current best view of the law sometimes will require repudiation of OLC precedent, OLC should never disregard precedent without careful consideration and detailed explanation.  Ordinarily OLC legal advice should be subject to multiple layers of scrutiny and approval; one such mechanism used effectively at times is a "two deputy rule" that requires at least two supervising deputies to review and clear all OLC advice.  Finally, OLC can help promote public confidence and understanding by publicly announcing its general operating policies and procedures.

*8.  Whenever time and circumstances permit, OLC should seek the views of all affected agencies and components of the Department of Justice before rendering final advice.*

The involvement of affected entities serves as an additional check against erroneous reasoning by ensuring that all views and relevant information are considered.  Administrative coordination allows OLC to avail itself of the substantive expertise of the various components of the executive branch and to avoid overlooking potentially important consequences before rendering advice.  It helps to ensure that legal pronouncements will have no broader effect than necessary to resolve the question at hand.  Finally, it allows OLC to respond to all serious arguments and thus avoid the need for reconsideration.

*9.  OLC should strive to maintain good working relationships with its client agencies, and especially the White House Counsel's Office, to help ensure that OLC is consulted, before the fact, regarding any and all substantial executive branch action of questionable legality.*

Although OLC's legal determinations should not seek simply to legitimate the policy preferences of the administration of which it is a part, OLC must take account of the administration's goals and assist their accomplishment within the law.  To operate effectively, OLC must be attentive to the need for prompt, responsive legal advice that is not unnecessarily obstructionist.  Thus, when OLC concludes that an administration proposal is impermissible, it is appropriate for OLC to go on to suggest modifications that would cure the defect, and OLC should stand ready to work with the administration to craft lawful alternatives.  Executive branch officials nonetheless may be tempted to avoid bringing to OLC's attention strongly desired policies of questionable legality.  Structures, routines and expectations should ensure that OLC is consulted on all major executive branch initiatives and activities that raise significant legal questions.  Public attention to when and how OLC generally functions within a particular administration also can help ensure appropriate OLC involvement.

*10.  OLC should be clear whenever it intends its advice to fall outside of OLC's typical role as the source of legal determinations that are binding within the executive branch.*

OLC sometimes provides legal advice that is not intended to inform the formulation of executive branch policy or action, and in some such circumstances an advocacy model may be appropriate.  One common example:  OLC sometimes assists the Solicitor General and the litigating components of the Department of Justice in developing arguments for presentation to a court, including in the defense of congressional statutes.  The Department of Justice typically follows a practice of defending an act of Congress against constitutional challenge as long as a reasonable argument can be made in its defense (even if that argument is not the best view of the law).   In this context, OLC appropriately may employ advocacy-based modes of analysis.  OLC should ensure, however, that all involved understand whenever OLC is acting outside of its typical stance, and that its views in such cases should not be taken as authoritative, binding advice as to the executive branch's legal obligations.  Client agencies expect OLC to provide its best view of applicable legal constraints and if OLC acts otherwise without adequate warning, it risks prompting unlawful executive branch action.

The following former Office of Legal Counsel attorneys prepared and endorse this document:

*Walter E. Dellinger*, Assistant Attorney General 1993-96
*Dawn Johnsen*, Acting Assistant Attorney General 1997-98; Deputy AAG 1993-97
*Randolph Moss*, Assistant Attorney General 2000-01, Acting 1998-2000; Deputy AAG 1996-98
*Christopher Schroeder*, Acting Assistant Attorney General 1997; Deputy AAG 1994-96
*Joseph R. Guerra*, Deputy Assistant Attorney General 1999-2001
*Beth Nolan*, Deputy Assistant Attorney General 1996-99; Attorney Advisor 1981-85
*Todd Peterson*, Deputy Assistant Attorney General 1997-99; Attorney Advisor 1982-85
*Cornelia T.L. Pillard*, Deputy Assistant Attorney General 1998-2000
*H. Jefferson Powell*, Deputy Assistant Attorney General and Consultant 1993-2000
*Teresa Wynn Roseborough*, Deputy Assistant Attorney General 1994-1996
*Richard Shiffrin*, Deputy Assistant Attorney General, 1993-97
*William Michael Treanor*, Deputy Assistant Attorney General 1998-2001
*David Barron*, Attorney Advisor 1996-99
*Stuart Benjamin*, Attorney Advisor 1992-1995
*Lisa Brown*, Attorney Advisor 1996-97
*Pamela Harris*, Attorney Advisor 1993-96
*Neil Kinkopf*, Attorney Advisor 1993-97
*Martin Lederman*, Attorney Advisor 1994-2002
*Michael Small*, Attorney Advisor 1993-96