# EXHIBIT Z

# Prosecutorial Inconsistency, Estoppel, and Due Process: Making the Prosecution Get Its Story Straight

Anne Bowen Poulin†

*In a surprisingly large number of criminal cases, the prosecution advances inconsistent positions on a common set of facts in separate proceedings. For example, in a number of cases where two defendants were charged with capital murder and the victim died as a result of a single gun shot, the prosecution has argued in separate proceedings that each of the two defendants fired the fatal shot. The prosecution not only argued for conviction on the basis that the particular defendant on trial shot the victim, but also, the prosecution argued for the death sentence, emphasizing the defendant's role as the shooter. Using these inconsistent arguments, the prosecution obtained convictions and death sentences for both defendants. Unfortunately, the law has no defined response to this problem.*

*This Article argues that the prosecution should be prohibited from exploiting inconsistent positions in separate proceedings, suggesting that prosecutorial inconsistency violates the defendant's right to due process. The Article explores approaches to controlling such prosecutorial inconsistency and suggests adapting the law of party admissions, collateral estoppel and judicial estoppel to preclude the prosecution from advancing such inconsistent positions. Finally, the Article details the due process analysis the courts should apply when the inconsistency is discovered after conviction, providing relief to defendants unless the prosecution can demonstrate that there is no reasonable possibility that the inconsistent position influenced the outcome.*

---

Copyright © 2001 California Law Review, Inc. California Law Review, Inc. (CLR) is a California nonprofit corporation. CLR and the authors are solely responsible for the content of their publications.

† Professor of Law, Villanova University School of Law. I am grateful to all my colleagues for their helpful comments, particularly Len Packel and Louis Sirico. I am indebted to Michael Frankel, Tammy Lander, and Katherine Neikirk for their research assistance, and to Villanova University School of Law for its generous support.

## INTRODUCTION

Two defendants, Smith and Jones, are charged with the capital offense of committing a murder in the course of a robbery. The victim died as a result of a single gunshot. The evidence clearly implicates both defendants in the robbery that led to the homicide, but it does not establish which defendant was the shooter. The trials of the defendants are severed, and Smith is tried first. At Smith's trial, the prosecutor, pointing to circumstantial evidence implicating Smith and emphasizing that Smith had a motive, argues that the jury should conclude beyond a reasonable doubt that Smith shot the victim. At the sentencing hearing, the prosecutor emphasizes Smith's role as the shooter, and the jury sentences Smith to death. Jones's trial then begins, and the prosecutor, pointing again to circumstantial evidence and suggesting a motive for Jones, argues that the jury should conclude beyond a reasonable doubt that Jones shot the victim. Jones is convicted. At the sentencing hearing, as at trial, the prosecutor emphasizes Jones's role as the shooter. Like Smith, Jones is sentenced to death.[1]

The result is certainly troubling.[2] Arguing inconsistently that Smith and Jones each fired the single bullet, the prosecutor has successfully obtained convictions and death sentences for both defendants. If the result in each case rests on the proposition that the particular defendant fired the fatal shot, then one result must be wrong. The outcome is comparable to convicting two defendants for a crime that only one person committed.[3]

Such prosecutorial inconsistency can occur for a variety of reasons. At worst, the prosecutor knows or believes she knows which defendant pulled the trigger, but she decides to exploit ambiguity to win death-penalty convictions against both defendants. Such a strategy would amount to intentional unethical corruption of the justice process. However, prosecutorial inconsistency does not only result from unethical conduct. In many cases, the proof is equivocal, and the prosecutor simply may not know which defendant was the shooter. When the evidence fails in this way, the prosecutor has three options. First, she may use her best judgment to pick the defendant most likely to have been the shooter and proceed accordingly. Second, she may embrace the uncertainty, acknowledge that she cannot prove which of the two pulled the trigger, and adjust her charge and

---

1. These facts are similar to those of several reported cases. *E.g.*, Nichols v. Scott, 69 F.3d 1255, 1259-66 (5th Cir. 1995); Parker v. Singletary, 974 F.2d 1562, 1566-70 (11th Cir. 1992); Drake v. Kemp, 762 F.2d 1449, 1451-52 (11th Cir. 1985); State v. Roach, 680 A.2d 634, 638-39 (N.J. 1996); Littlejohn v. State, 989 P.2d 901, 908 (Okla. Crim. App. 1998).

2. *See* Barry Tarlow, *Limitations on the Prosecution's Ability To Make Inconsistent Arguments in Successive Cases*, CHAMPION, Dec. 1997, at 40. Tarlow refers to this scenario as an "increasingly common prosecution practice." *Id.*

3. *See, e.g.*, State v. Couch, 111 S.W.2d 147, 150 (Mo. 1937). In *Couch*, the Missouri Supreme Court upheld the defendant's conviction of murder even though only one person committed the offense and another defendant was already serving a life sentence for the murder. *Id.*

sentencing goals downward. Third, she may exploit the uncertainty to maximize the severity of the convictions and sentences by persuading fact finders in separate proceedings that each defendant pulled the trigger, as in the example. While arguments can be made in defense of the first two options, the third strategy cannot be justified. Causing two defendants to be sentenced to death by presenting inconsistent arguments in separate proceedings is unjust and represents a greedy exercise of prosecutorial authority. This inconsistency undermines the fairness of the judicial process and may precipitate inappropriate results.

Unfortunately, the law has no clear response to the problem of prosecutorial inconsistency. Defendants have attempted a number of different legal challenges to obtain relief from the burden of inconsistent prosecutorial positions. While expressing concern, courts facing the above situation have adopted no uniform legal position and have often refused to give the defendant relief.[4]

This Article suggests that the assertion of inconsistent positions violates the due process clause. For guidance in evaluating claims of prosecutorial inconsistency, courts should look to cases addressing prosecutors' violation of due process through presentation of false testimony and through improper argument.[5] Those cases make it clear that the due process clause protects the defendant from knowing prosecutorial reliance on false testimony and from prosecution argument that undermines the fairness of the trial. When the prosecution advances a position in the trial of one defendant and then adopts an inconsistent position in the trial of another on the same facts, the prosecution is relying on a known falsity. To allow the prosecution to do so corrupts the process. The courts should therefore define specific approaches for preventing the problem in the first place, relying principally on the doctrine of judicial estoppel, which bars a party from asserting at a later judicial proceeding a position inconsistent with a position relied on at an earlier proceeding.[6]

---

4. *See, e.g.*, Thompson v. Calderon, 120 F.3d 1045, 1070 (9th Cir. 1997) (Kozinski, J., dissenting) (remarking that there is something troubling about a sovereign convicting two defendants of a crime committed by a single person), *rev'd on other grounds*, 523 U.S. 538 (1998); United States v. McCaskey 9 F.3d 368, 379 (5th Cir. 1993) (describing the prosecution's conduct as "less than exemplary"); *Drake*, 762 F.2d at 1477 (Clark, J., specially concurring) (noting that all courts that considered Drake's claim expressed concern about inconsistency but granted no relief); People v. Watts, 91 Cal. Rptr. 2d 1, 7, 8 (Cal. Ct. App. 1999) (describing the prosecution's action as "troubling," but denying relief), *cert. denied*, 121 S. Ct. 97 (2000); State v. Kilgore, 771 S.W.2d 57, 67 (Mo. 1989) (finding "no . . . fundamental unfairness, however disquieting the inconsistent presentation of evidence might be"); *see also* United States v. Kattar, 840 F.2d 118, 127 (1st Cir. 1988) (criticizing the prosecution's charge in its characterization of the victim, the Church of Scientology, remarking "it is disturbing to see the Justice Department change the color of its stripes to such a significant degree, portraying an organization, individual, or series of events variously as virtuous and honorable or as corrupt and perfidious, depending on the strategic necessities of the separate litigations").

5. *See infra* notes 225-254 and accompanying text.

6. *See infra* notes 170-222 and accompanying text.

Barring the prosecution from asserting a position inconsistent with an earlier position will promote fair enforcement of the criminal laws without unduly impeding the goal of law enforcement. The prosecution should be allowed to pursue both defendants, but it must do so without relying on inconsistent theories. In the single-shooter case, for example, it can prosecute and convict both defendants, but it may not obtain an aggravated conviction and sentence against each defendant as the one who pulled the trigger.[7] If the evidence is so ambiguous that the prosecution cannot determine which defendant actually fired the shot, then the shooter may be convicted and punished less severely than is warranted based on the actual, but not fairly provable, involvement. The tenets of our criminal law jurisprudence, the foremost of which is a very high standard of proof for guilt, should not tolerate a strategy that invites juries to convict and punish two defendants for a single act.

This Article examines the issues raised when the prosecution alters its positions in separate proceedings arising from a single criminal episode to gain an advantage over one or more defendants.[8] Part I discusses the nature of the injustice that results from allowing the prosecution to pursue inconsistent arguments in two separate trials. Part II evaluates existing legal tools that may be applied to discourage or prevent prosecutorial inconsistency and then advocates strengthening these mechanisms. Even if these existing tools are strengthened and universally applied in cases of prosecutorial inconsistency, their protection remains inadequate. This Article therefore argues that the doctrine of collateral estoppel should be strengthened to prevent some instances of inconsistency, but that an enhanced rule of judicial estoppel would be the most promising tool for barring prosecutorial inconsistency. Part III examines the due process implications of prosecuting, convicting, and sentencing defendants based on inconsistent prosecution positions and concludes that prosecutorial inconsistency violates due process and that a conviction obtained by espousing a theory inconsistent with one successfully advanced in the prior trial cannot stand.

---

7. Some commentators have suggested that, in the civil arena, the doctrine of judicial estoppel will entirely bar the litigant from proceeding and may therefore frustrate the fairness of the process. *E.g.*, Douglas W. Henkin, Comment, *Judicial Estoppel - Beating Shields into Swords and Back Again*, 139 U. PA. L. REV. 1711, 1714 (1991).

8. This Article does not consider the prosecution's mere use of a witness whose credibility has been attacked by the prosecution in an earlier proceeding. For an example of a case discussing this use, see *United States v. Hozian*, 622 F.2d 439, 442 (9th Cir. 1980), which rejects the defendant's argument that the prosecution should not have been permitted to rely on testimony of an immunized codefendant who had previously testified in his own trial, having been impeached by the prosecution and convicted. Witnesses sometimes change their accounts of pertinent events. A party is not bound by its witnesses' testimony, but is permitted to attack the credibility of its own witness. FED. R. EVID. 607. This Article focuses on those situations in which the government sings one tune at the first proceeding and a different tune at a later proceeding. This Article also does not address the prosecution's presentation of alternative theories to a single jury, a practice which is clearly allowed. *See infra* note 29 and accompanying text.

Finally, Part IV argues that the first-tried defendant should be entitled to relief if the prosecution changes its position in a later proceeding.

## I
## THE NATURE OF THE PROBLEM

When a single offense leads to related but separate proceedings, the prosecution has the opportunity to exploit inconsistent positions, persuading the separate fact finders that the evidence more strongly inculpates the defendant before them. Because the proceedings are separate, the prosecution can convince the separate fact finders, for example, that each defendant committed specific acts central to the crime. By doing so, the prosecution may obtain more serious convictions and sentences than would be possible in a single trial. Such inconsistency unfairly burdens the defendant, yet often goes unredressed. The problem of inconsistent prosecution positions may arise whenever there are separate but related proceedings, such as when codefendants are severed for trial,[9] when separate federal or state prosecutions grow out of a common set of transactions,[10] or when a retrial occurs.[11]

Variations on the theme of the single-shooter example, perhaps the most outrageous examples of prosecutorial inconsistency, are the most common instances of prosecutorial inconsistency reported.[12] But, prosecutorial inconsistency is not confined to single-shooter homicide cases. In *State v. Fondren*,[13] for example, the prosecution charged two defendants, Fondren and Lupo, with assault during a bar fight. First, at Lupo's trial for peace disturbance, the prosecution argued that Lupo was the initial aggressor.[14] Later, at Fondren's trial, the prosecutor argued that Fondren was the

---

9. *See generally* WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 17.2 (3d ed. 2000) (discussing severance).

10. *See, e.g.*, United States v. Hemmingson, 157 F.3d 347, 356 (5th Cir. 1998) (considering prosecutorial inconsistency growing out of prosecutions in two federal districts where evidence substantially overlapped but crimes were different); *see also* Elizabeth T. Lear, *Contemplating the Successive Prosecution Phenomenon in the Federal System*, 85 J. CRIM. L. & CRIMINOLOGY 625, 625-44 (1995) (attributing proliferation of federal prosecutions to intricate nature of federal crimes, decentralized efforts in federal prosecutions, prosecutors' political ambitions, and joinder barriers from constitutional venue requirements).

11. *See, e.g.*, People v. Cruz, 643 N.E.2d 636 (Ill. 1994).

12. *See, e.g.*, State v. Lavalais, 685 So. 2d 1048 (La. 1996); State v. Roach, 680 A.2d 634 (N.J. 1996). In *Lavalais*, a capital murder case, the prosecution argued in the first defendant's trial that he dominated and controlled Lavalais. 685 So. 2d at 1056. At Lavalais' capital sentencing hearing, the prosecution, disputing his claim that his codefendant had dominated and controlled him, successfully persuaded the jury to sentence him to death. *Id.* In *Roach*, where only two of the several accomplices had fired shots, the prosecution argued in the first three trials that two of Roach's codefendants were the shooters. *Roach*, 680 A.2d at 640. At Roach's trial, however, the prosecution argued that Roach and one of the accomplices fired the shots. *Id.* at 639.

13. 810 S.W.2d 685 (Mo. Ct. App. 1991).

14. *Id.* at 687.

initial aggressor.[15] Relying on these inconsistent arguments, the prosecution successfully convicted both participants in the fight.[16] In *United States v. Salerno*,[17] the government successfully prosecuted the person it had identified as a victim of other defendants in a separate trial arising from the same events.[18] In *People v. Cruz*,[19] between the defendant's first and second trials, the prosecution altered its position on a key fact in order to deflect the impact of exculpatory evidence offered by the defendant in the second trial.[20] In each of these instances, the separation of the proceedings allowed the prosecution to advance inconsistent positions to the defendant's disadvantage.

### A. *The System's Tolerance of Inconsistency*

Although the courts have sometimes recognized a value in consistency,[21] they have nevertheless made it clear that consistency is not a paramount constitutional value in structure of the criminal justice system. The law tolerates inconsistent verdicts.[22] The Supreme Court has held that if a single fact finder, whether jury or judge, returns a verdict that is internally inconsistent, the conviction may stand.[23] For example, the jury may acquit a defendant of a narcotics offense, but it may convict the defendant of using the telephone to commit that offense. The conviction is inconsistent with the acquittal but will stand despite that inconsistency.[24] Similarly, if either a single fact finder or separate fact finders acquit one defendant of a crime requiring two or more participants and convict the other alleged participant, the apparently inconsistent verdicts will stand.[25]

---

15. *Id.*

16. *Id.* at 686.

17. 937 F.2d 797 (2d Cir. 1991).

18. *See* discussion *infra* notes 93-102 and accompanying text.

19. 643 N.E.2d 636 (Ill. 1994).

20. *See* discussion *infra* notes 58-67 and accompanying text.

21. *E.g.*, Griffith v. Kentucky, 479 U.S. 314, 327 (1987) (concluding on the question of retroactivity of judicial decisions that all cases on direct appeal should be subject to the new rule and rejecting the "clear break" exception; noting that the exception would create a "problem of not treating similarly situated defendants the same"); Walter v. United States, 969 F.2d 814, 817 (9th Cir. 1992) (remarking that "[f]undamental fairness requires that like cases be treated alike").

22. United States v. Powell, 469 U.S. 57, 62 (1984) (holding that an acquittal for a felony did not bar a conviction for telephone facilitation of that felony; stating that "'[c]onsistency in the verdict is not necessary'") (quoting Dunn v. United States, 284 U.S. 390, 393 (1932)); Standefer v. United States, 447 U.S. 10, 25 (1980) (holding that the defendant may be found guilty of aiding and abetting a crime for which the principal has been acquitted). *See generally* Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 HARV. L. REV. 771 (1998).

23. *Powell*, 469 U.S. at 69; Harris v. Rivera, 454 U.S. 339, 345 (1981) (holding that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" in a non-jury criminal trial).

24. *See Powell*, 469 U.S. at 69; Muller, *supra* note 22, at 773-74 (examining a situation where the defendant may not be found guilty of possession of drugs, but may be found guilty of using the telephone to commit the possession offense).

25. *Standefer*, 447 U.S. at 26 (holding that acquittal of principal did not bar defendant's conviction for aiding and abetting); United States v. Garcia, 16 M.J. 52 (C.M.A. 1983) (holding that the

The courts have never accepted a broad "consistency of judgments" argument that would require the judgment in one criminal trial to conform with the judgment in a different, but related, proceeding.[26] They have also largely abandoned the rule of consistency that once reconciled separate verdicts in conspiracy cases.[27] The courts fear that any rule demanding greater consistency would inappropriately allow a defendant to exploit an erroneous acquittal.[28]

Issues of inconsistency may also arise within a single trial, but they do not threaten the basic fairness of the process. Numerous legal mechanisms protect defendants against prosecutorial inconsistency in that setting. A single fact finder evaluates all allegations and evidence. When the prosecution offers the fact finder alternative bases on which to resolve the case, as the alternative pleading rules permit, the fact finder can weigh inconsistent alternatives in the context of the whole case.[29] If the prosecution argues truly irreconcilable positions, such as claiming that each of two defendants fired the single fatal bullet, the fact finder can evaluate them as alternatives, knowing that both cannot be true.

Furthermore, concessions made by the prosecution may act as judicial admissions and bind the prosecution, foreclosing later inconsistency.[30] If the prosecution strays too far from the charging instrument, the law of variance offers the defendant protection.[31] As the case moves through successive proceedings, the government's assertions may foreclose later

---

codefendant's acquittal was no bar to the conviction of the defendant for conspiracy). *Cf.* People v. Allee, 740 P.2d 1 (Colo. 1987) (acquittal of defendant's son did not require conclusion that defendant's attempt to protect son from police officer's use of force was legally justified).

26. *E.g.*, Potts v. State, 430 So. 2d 900 (Fla. 1982); State v. Wilson, 19 N.W.2d 232 (Iowa 1945); Commonwealth v. Cerveny, 439 N.E.2d 754, 757 (Mass. 1982) (commenting that "inconsistency in verdicts is intellectually discomforting" but declining to adopt a rule encouraging consistency).

27. *Harris*, 454 U.S. at 464; United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) (stating that "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty"); People v. Palmer, 103 Cal. Rptr. 2d 13 (2001) (summarizing the law and abandoning the rule of consistency); Muller, *supra* note 22, 787-88. *See also Garcia*, 16 M.J. 52 (summarizing development of the law).

28. *Allee*, 740 P.2d at 10 (stating that "[i]nconsistent verdicts are not necessarily repugnant to our sense of justice in criminal cases because society's interest in enforcement of the criminal law 'dictates that we guard against compounding the effect of a possibly erroneous or irrational acquittal'") (citing Marquiz v. People, 726 P.2d 1105, 1107-08 (Colo. 1986)). *See generally* Muller, *supra* note 22.

29. *See* LAFAVE ET AL., *supra* note 9, §19.3(b).

30. 2 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 254 (John W. Strong ed., 5th ed. 1999); *see also* United States v. Blood, 806 F.2d 1218, 1220-21 (4th Cir. 1986) (acknowledging that prosecution statements during voir dire requests and opening argument could act as judicial admissions, but concluding that the statements were not factual and therefore did not bar conviction); United States v. Powers, 467 F.2d 1089, 1094 (7th Cir. 1972) (suggesting in dictum that the prosecution's position in another defendant's trial could act as a judicial admission). *See generally* David S. Coale, *A New Framework for Judicial Estoppel*, 18 REV. LITIG. 1, 15-25 (1999) (comparing judicial admissions and judicial estoppel).

31. A variance occurs when the proof at trial diverges from the charges against the defendant. The law of variance assures that the jury will not be permitted to convict the defendant on evidence that departs too far from the charging instrument. *See* LAFAVE ET AL., *supra* note 9, § 19.6(a).

arguments since waiver principles bar the government from advancing new positions on appeal.[32] The law of the case doctrine prevents relitigation of settled issues.[33] Sometimes, of course, the protections fail. When, despite all these protections, a fact finder returns inconsistent verdicts, the inconsistency flows from the fact finder's evaluation of the evidence and, possibly, from the fact finder's confusion, willingness to compromise, or exercise of lenity.[34] It does not result from the government's manipulation and corruption of the process.

### *B. The Special Problem of Prosecutorial Inconsistency*

Prosecutorial inconsistency poses a more serious problem than other types of inconsistency tolerated by the system. Inconsistency in a single trial flows from the fact finder's evaluation of all the evidence and occurs despite the fact finder's exposure to all the admissible evidence. Inconsistency in separate trials may occur in the absence of prosecutorial inconsistency because different fact finders may simply react differently to the same evidence and arguments. Prosecutorial inconsistency, however, occurs when the prosecution takes advantage of separate proceedings to advance inconsistent positions to separate fact finders, each unaware that the prosecution advanced a conflicting position at a different proceeding.

The protections present in a single trial are lacking when related offenses are tried separately.[35] When the prosecution faces defendants in two

---

32. *Id.* § 24.7(e); *see also* Steagald v. United States, 451 U.S. 204, 209 (1981) (stating that "[t]he Government . . . may lose its right to raise factual issues . . . before this Court when it has made contrary assertions in the courts below, when it has acquiesced in contrary findings by those courts, or when it has failed to raise such questions in a timely fashion during the litigation").

33. *E.g.*, United States v. Corrado, 227 F.3d 528 (2000) (concluding that the law of the case doctrine applied and barred reconsideration of specified issues); Isom v. State, 750 So. 2d 734 (Fla. Dist. Ct. App. 2000) (applying the doctrine to bar reconsideration of the sentencing question); State v. Graham, 13 S.W.3d 290 (Mo. 2000) (applying the doctrine to bar argument); *see also* People v. Evans, 727 N.E.2d 1232 (N.Y. 2000) (discussing the doctrine, but concluding it did not apply because the ruling was evidentiary). *See generally* 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478 (1981); Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation*, 135 U. PA. L. REV. 595 (1987).

34. *See generally* Muller, *supra* note 22, at 781-86 (discussing mistake, compromise, and lenity as causes of inconsistent verdicts).

35. Even in multiple proceedings, a single defendant is better protected against prosecutorial inconsistency than codefendants tried separately. The constitutional protection against double jeopardy and the doctrine of collateral estoppel limit successive prosecutions of one defendant and may restrict the government's arguments from one trial of the defendant to the next. *See* U.S. CONST. amend. V (providing that a person shall not "be subject for the same offense to be twice put in jeopardy of life or limb"). These doctrines often prevent the prosecution from adopting inconsistent positions to punish or harass a defendant. The protection against double jeopardy does not absolutely foreclose successive prosecutions arising from the same criminal episode, but it limits the government's ability to repeatedly try a defendant. *See* GEORGE C. THOMAS III, DOUBLE JEOPARDY: THE HISTORY, THE LAW (1998). *But see* Heath v. Alabama, 474 U.S. 82 (1985) (holding that the successive prosecution of a defendant for the same conduct by separate states does not violate double jeopardy). In some cases, a party prevails against the government in a civil proceeding and then faces related criminal charges. *E.g.*, United States

separate trials and presents inconsistent arguments to the separate fact finders, the fact finders may ultimately convict and punish two defendants on the basis of a single act. The prosecution's exploitation of inconsistent theories to gain an advantage over a defendant violates the defendant's rights and undermines the integrity of the justice system.[36] Each fact finder considers only the case against the defendant before it, ignorant of the prosecution arguments against the separately-tried codefendant and the results of the separate trial. The fact finder has no reason to suspect that the prosecution persuaded a different fact finder to accept an inconsistent position. Such inconsistency creates the risk that the defendant who did not fire the shot will be convicted at an inappropriately severe level and will receive an unduly harsh sentence, perhaps even the death penalty. By asserting irreconcilable positions before separate fact finders, each unaware that the prosecutor argued that another defendant was convicted in another proceeding of the act now attributed to the defendant, the prosecutor invites unfairly inconsistent verdicts.

### C. *The Inadequacy of Ethical Rules*

Special ethical obligations imposed on prosecutors do not effectively protect defendants from the harm of prosecutorial inconsistency.[37] First,

v. Rogers, 960 F.2d 1501 (10th Cir. 1992). In those instances, the criminal defendant may invoke the doctrine of collateral estoppel, or issue preclusion, to bar aspects of the criminal case. *Id.* at 1510. Such cases are beyond the scope of this Article.

36. *See* Lear, *supra* note 10, at 649-51 (arguing that apparent impropriety in criminal prosecution is more harmful to the integrity of the justice system than comparable impropriety in civil litigation). The public keeps a watchful eye on criminal cases and expects a higher standard of fairness in its public representatives in the justice system than of private actors in private cases. Bruce A. Green, *Why Should Prosecutors "Seek Justice"?*, 26 FORDHAM URB. L.J. 607, 615-16 (1999). Green emphasizes the prosecutor's "duty to avoid public perception that criminal proceedings are unfair." *Id.* at 636. *See generally* Roberta K. Flowers, *What You See Is What You Get: Applying the Appearance of Impropriety Standard to Prosecutors*, 63 MO. L. REV. 699, 728-30 (1998) (discussing importance of perception of fairness in criminal justice system).

37. This Article does not dwell on whether prosecutorial inconsistency violates ethical standards. It is worth noting, however, that the rules of professional responsibility impose special obligations on prosecutors. *See generally* Michael Q. English, Note, *A Prosecutor's Use of Inconsistent Factual Theories of a Crime in Successive Trials: Zealous Advocacy or a Due Process Violation?*, 68 FORDHAM L. REV. 525 (1999) (discussing ethical duty). Prosecutors are expected to assume special responsibility for the fairness of criminal proceedings. Unlike their adversaries in the criminal justice process, prosecutors do not represent clients and are therefore unfettered by the client obligations imposed on most lawyers. *See generally* CHARLES W. WOLFRAM, MODERN LEGAL ETHICS § 13.10 (student ed., 1986) (suggesting that while not representing an individual as his client, a prosecutor in a policy-making position should regard the public as his client, while those in more subordinate roles should consider their office superiors as such); English, *supra* (discussing the special obligations of the prosecutor); Flowers, *supra* note 36, at 728-30 (characterizing the prosecutor's client as the government and the public); Roberta K. Flowers, *A Code of Their Own: Updating the Ethics Codes To Include the Non-Adversarial Roles of Federal Prosecutors,* 37 B.C. L. REV. 923, 931 (1996) (discussing constituencies represented by the prosecutor as being victims, law enforcement agencies, and office policies); they have a special obligation of candor and are often exhorted to "do justice" or "seek justice." Green, *supra* note 36, at 631-33 (asserting that prosecutors have a duty not to impeach true

translating the special duties into practical terms has proved difficult.[38] One can argue that a prosecutor who knowingly adopts inconsistent positions in separate proceedings without adequate justification acts unethically because she knows that at least one of those positions is wrong and therefore lacks a good faith belief in one or both of the positions.[39] Nevertheless, the ethical rules do not clearly condemn the conduct and do not state whether a prosecutor may ethically defer to the jury to resolve uncertainties in the proof, such as which of the two defendants in the Smith and Jones example fired the fatal shot, or whether the prosecutor has an obligation to be certain herself.[40] Second, even if the conduct is unethical, courts will not necessarily remedy harm merely because it is generated by unethical prosecution.[41] Third, and most important, a defendant may be harmed even by ethical prosecutorial inconsistency. If the prosecutor unwittingly adopts a position inconsistent with the position taken by another prosecutor working for the same sovereign at an earlier proceeding, the prosecutor is not unethical,[42] but the defendant, as well as the fairness of the process and the integrity of the justice system, suffers nonetheless.

---

testimony or argue false theories, but rather to seek fairness and truth in order to obtain justice). Commentators have said that the prosecutor's clearest obligation is to refrain from convicting the innocent. *Id.* at 635; *see also* Flowers, *supra* note 36, at 729-30 (noting that prosecutors have a dual role of prosecuting criminals while protecting the innocent from conviction).

38. *See* Green, *supra* note 36, at 637-42.

39. *See* Fred C. Zacharias, *Structuring the Ethics of Prosecutorial Trial Practice: Can Prosecutors Do Justice?*, 44 VAND. L. REV. 45, 61 (1991). Professor Zacharias argues that the prosecutor cannot ethically prosecute without a good faith belief that the defendant is guilty. *Id.* He states that "[i]f the evidence is in conflict, an ethical prosecutor cannot rationalize a conviction simply on the ground that the trial is fair." *Id.* at 61. *See also* Kenneth Melilli, *Prosecutorial Discretion in an Adversary System,* 1992 BYU L. Rev. 669, 693-97 (1992) (noting shortcomings of adversarial system as truth-finding mechanism and questioning whether prosecutor can avoid responsibility for questionable case). The prosecutor has a duty to prejudge the evidence. Zacharias, *supra*, at 89-90; *see also* Bennett L. Gershman, *A Moral Standard for the Prosecutor's Exercise of the Charging Discretion,* 20 FORDHAM URB. L.J. 513, 522 (1993) (arguing that the prosecutor must "assure herself that she is morally certain that the defendant is both factually and legally guilty, and the criminal punishment is morally just").

40. *See* Green, *supra* note 36, at 619-20; *see also* WOLFRAM, *supra* note 37, § 13.10.3 (stating that the prosecutor's ethical obligation is generally set low, merely demanding that the prosecutor not prosecute unless she knows there is probable cause); English, *supra* note 37 (discussing lack of clarity in the law). *But see* Flowers, *supra* note 37, at 934-39 (examining the obligation of prosecutors as fact finders reconstructing past events); Green, *supra* note 36, at 639-41 (arguing that a prosecutor's obligation goes beyond mere assurance that probable cause exists).

41. *See* United States v. Ash, 413 U.S. 300, 320 (1973) (noting, in regard to pretrial photographic identification issues, that "[t]he primary safeguard against abuses of this kind is the ethical responsibility of the prosecutor"). The Court further notes that by establishing procedures for agents of the prosecution, the prosecutor as supervisor can continue to minimize abuses while the investigation of the case continues before trial. *Id.* at 320 n.16.

42. *See* Michael S. Ross, *Alternative Forums for Ethics Disputes*, CRIM. JUST., Spring 1996, at 43 (emphasizing that the prime factor in establishing unethical prosecutorial conduct is "actual knowledge" of false position taken).

Regardless of how the prosecutor's ethical duty is defined, courts should not permit the prosecution to convict a defendant on one theory and then pursue an inconsistent theory to win a guilty verdict against a second defendant charged on the basis of the same criminal episode.[43] The courts have yet to recognize that prosecutorial inconsistency threatens the fairness of the process, even when the prosecutor advancing the inconsistent position is unaware of the prior prosecution position. Unlike inconsistent verdicts that result from the fact finders' views of the evidence, prosecutorial inconsistency involves the government's manipulation of the process to encourage separate fact finders to reach contrary conclusions, each favoring the government. Due process requires that courts address this problem. This Article attempts to define legal mechanisms for achieving this protection.

## II
## Existing Legal Tools for Promoting Consistency

Despite the unfairness of allowing prosecutors to take inconsistent positions, courts have failed to view prosecutorial inconsistency as a constitutional problem. They allow prosecutors to advance inconsistent positions in separate trials and uphold the resulting convictions and sentences. The courts have not agreed upon any legal mechanism that forecloses prosecutorial inconsistency. In some cases, special circumstances such as an existing plea agreement allow the defendant to prevent the assertion of an inconsistent position.[44] More often, however, the defendant cannot identify any such special circumstance and must attempt to apply existing legal protections from other contexts. When courts turn to established doctrines such as estoppel law for guidance, they generally conclude that the doctrines provide the defendant no protection from prosecutorial inconsistency.[45]

Acknowledging the danger to due process posed by prosecutorial inconsistency, the courts should strengthen the means of protecting defendants. The law recognizes some legal tools for enforcing or encouraging consistency, which may help avoid prosecutorial inconsistency.[46] In many cases, these mechanisms have provided defendants inadequate protection.

43. I do not go so far as to argue that a prosecutor faced with ambiguous evidence cannot proceed in prosecuting both defendants. I insist, however, that the government crosses the line when prosecutors play the ambiguity two different ways in separate proceedings.

44. *See, e.g.*, Hunt v. State, 613 So. 2d 893 (Fla. 1992) (vacating a death sentence on grounds that by sentencing the defendant before codefendant's trial, the trial court breached the plea agreement that defendant would be sentenced after codefendant's trial; granting resentencing in which the trial court would consider the record in codefendant's case in which the prosecution had portrayed the defendant as totally dominated by codefendant).

45. *See* cases cited *supra* notes 4 and 12.

46. For a complete discussion of the application of party admissions, collateral estoppel, and judicial estoppel to promote prosecutorial consistency, see *infra* Parts II.A, II.B, & II.C, respectively.

Properly modified, however, existing legal doctrines should provide a suitable framework for addressing most prospective claims of inconsistency. Three existing legal tools may discourage or prevent prosecutorial inconsistency: introducing prosecutors' prior inconsistent statements as party admissions, applying collateral estoppel, and using judicial estoppel.

These tools will be effective, however, only if prevailing law is clarified and modified. First, the courts should admit prosecutors' inconsistent statements from prior proceedings into evidence as party admissions. As a tool for preventing prosecutorial inconsistency, this evidentiary response should be a last resort, applied only if the court rejects the argument that prosecutorial inconsistency should be barred altogether. Allowing the defendant to introduce the prosecution's inconsistent statements offers only a weak palliative, letting the jury know of the inconsistency but not directly precluding it. Estoppel principles provide better protection than evidentiary rules. The second tool, collateral estoppel, may be useful to address a narrow range of inconsistency problems; this limited doctrine, however, cannot reach most instances of prosecutorial inconsistency. The third mechanism, judicial estoppel, offers the greatest promise to bar prosecutorial inconsistency. The doctrine of judicial estoppel bars a party that successfully asserted a position in a prior proceeding from asserting an inconsistent position in a later proceeding. The courts should strengthen the doctrine and apply it to attack the problem of prosecutorial inconsistency.

### A. *Admitting Prosecutors' Statements as Party Admissions*

If the court allows the prosecution to advance a theory inconsistent with that asserted in a prior proceeding, the defendant may want to inform the jury of this change in position by introducing the prosecutor's statements from the earlier proceeding.[47] Defendants frequently attempt to offer into evidence prosecutors' earlier statements as party admissions not excluded by the hearsay rule.[48] Courts have shown increasing willingness to admit such statements, although some express reluctance and either refuse to admit the statements altogether or subject them to special scrutiny.[49]

47. *See* FED. R. EVID. 801(d)(2). The inconsistency may not warrant estoppel, but the prosecution's position in the later trial may be sufficiently incongruent with its position in the prior trial that the jury should be informed. *E.g.*, United States v. Salerno, 937 F.2d 797, 811-12 (2d Cir. 1991) (stating that the prosecution's portrayal of the defendant as an extortion victim at the first trial did not warrant estopping subsequent prosecution of the defendant for fraud, but the portrayal was relevant to whether the defendant possessed the requisite intent to defraud).

48. *See* FED R. EVID. 801(d)(2). Under the federal rule, admissions by a party opponent are not exceptions to the hearsay rule, but instead are considered not to be hearsay and therefore fall outside the rule's general prohibition on out-of-court statements as evidence. *See* FED R. EVID. 801(d)(2), 802.

49. *See* 5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 801.33[3] (Joseph M. McLaughlin ed., 2d ed. Supp. 2000) (stating only that "some courts have indicated that rule 801(d)(2)(D) may be invoked against the government, particularly when dealing

The rule governing party admissions, a well-accepted principle of evidence law, admits statements attributable to a party-opponent over a hearsay objection.[50] Party admissions include statements adopted by the party, statements made by an agent with authority and offered against the principal, and, under the modern rule, statements made by an agent concerning matters within the scope of the agent's duties.[51] The rationale for admitting a party's statement is that, in our adversary system, a party should not be able to exclude its prior statements as hearsay but instead, may explain them in court.[52]

The law governing prosecutor's statements is neither uniform nor well-developed.[53] Some courts have rebuffed defendants' efforts to admit prosecutors' inconsistent statements,[54] invoking "the common law principle that no individual should be able to bind the sovereign."[55] The reasoning of cases invoking this principle is not persuasive, however, when the government speaks in court through its agent, the prosecutor.[56] Not only are

---

with statements made by government attorneys"); *see also* cases cited in 5 *id.* §§ 801-71 to -72 nn.20-23.

50. FED. R. EVID. 801(d)(2); *see also* BROUN ET AL., *supra* note 30, § 254.

51. *See* BROUN ET AL., *supra* note 30, § 254. *See also* FED. R. EVID. 801(d)(2).

52. BROUN ET AL. supra note 30, § 254 (noting also that the party cannot complain of its own loss of credibility or of the lack of opportunity to cross-examine the speaker).

53. *See* WEINSTEIN & BERGER, *supra* note 49, § 801.33[3]. Even when courts recognize that prosecutors' statements may fall within FED. R. EVID. 801(d)(2), they do not appear to agree about the particular provision of the rule. *See id.* at 801-72 n.23. Courts variously rely upon subsections (A), (B), (C), and (D). *E.g.*, *Salerno*, 937 F.2d at 811-12 (relying on *McKeon*'s admittance of defense counsel's prior statements as party admissions under FED. R. EVID. 801(d)(2)(B-C) to rule that the prosecution's prior trial opening statement was admissible); United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988) (holding that at least the Justice Department, if not every federal agency, is a party-opponent in criminal cases under FED. R. EVID. 801(d)(2)(A)); Hoptowit v. Ray, 682 F.2d 1237, 1262 (9th Cir. 1982) (holding that the investigative report prepared by the prosecutor's office was admissible under FED R. EVID. 801(d)(2)(D)); United States v. Morgan, 581 F.2d 933, 937-38 (D.C. Cir. 1978) (finding that the government manifested a belief in the informant's statements under FED. R. EVID. 801(d)(2)(B) when it indicated in a sworn affidavit for a search warrant that it believed the statements were trustworthy). Subsection (B) does not seem to be the appropriate provision for statements by prosecutors; it is not clear how the government manifests adoption of the prosecutor's words. Nor should the defendant have to demonstrate adoption. Prosecutors are agents of the government. When they represent the government in the prosecution of a criminal case, they speak with authority and their statements should generally be admitted under subsection (C) as authorized statements of agents. Analysis under (D), examining whether the prosecutor acted during the agency and whether the subject matter related to her area of employment, should also lead to admissibility. Any further elaboration of this question is beyond the scope of this Article.

54. *E.g.*, Parker v. Singletary, 974 F.2d 1562 (11th Cir. 1992) (noting that the prosecutor's inconsistent argument in the codefendant's case would not have been admissible).

55. United States v. Zizzo, 120 F.3d 1338, 1351 n.4 (7th Cir. 1997) (rejecting the argument that the prosecutor's statements fall within FED. R. EVID. 801(d)(2)); *see also* United States v. Santos, 372 F.2d 177, 180 (2d Cir. 1967) (explaining that FED. R. EVID. 801(d)(2) is inapplicable to criminal proceedings because government agents are uninterested in the outcome and are unable to bind the sovereign). Unlike law enforcement officers, however, prosecutors are partisan advocates.

56. *See* United States v. Bakshinian, 65 F. Supp. 2d 1104, 1106 (C.D. Cal. 1999) (holding that prosecutors, if not all government agents, can bind the sovereign).

prosecutors authorized to speak for the government in criminal cases, they can unquestionably bind the government on a range of legal matters through, for example, stipulations and plea agreements.[57] Therefore their statements in other aspects of the case should be treated as party admissions.

*People v. Cruz*[58] demonstrates the unjust results that can arise when courts restrict the admissibility of prosecutors' prior inconsistent statements.[59] In *Cruz*, the Supreme Court of Illinois upheld the trial court's refusal to admit in the defendant's second trial the prosecutor's inconsistent statements made during the opening statement in the defendant's first trial.[60] In the first trial, the prosecution argued that the victim, a 10-year-old girl, was murdered where her body was found on the Illinois Prairie Path.[61] In the defendant's retrial, the prosecution argued that the murder occurred elsewhere.[62] This change in position was a response to statements of another suspect (Dugan) introduced by the defense; in the statements, Dugan claimed that he alone had committed the crime and that he had murdered the girl on the Illinois Prairie Path.[63]

Cruz was convicted and sentenced to death for the vicious murder.[64] The court concluded that prosecutors' statements could sometimes constitute admissions, but held that the trial court acted within its discretion in excluding the statements in this case.[65] What would the jury have thought if it learned that the prosecutor himself had earlier taken a position that now supported Dugan's guilt rather than Cruz's? While we cannot know how the prosecutor's knowledge would have influenced the jury, we do know that later DNA analysis linked Dugan to the assault and that the case against Cruz evaporated; Cruz was innocent.[66]

The court should have seen the prosecutor's shift in position as a warning flag.[67] At a minimum, the court should have admitted the

---

57. *See* Santobello v. New York, 404 U.S. 257, 262 (1971) (declaring that fulfillment of the prosecutor's promise in return for guilty plea is a necessary safeguard for the defendant); United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995) (finding that the government breached a binding plea agreement with the defendant).

58. 643 N.E.2d 636 (Ill. 1994).

59. *See* Tarlow, *supra* note 2, at 42-44.

60. *Cruz*, 643 N.E.2d at 665.

61. *Id.* at 664-65.

62. *Id.* at 664.

63. *Id. See generally* Jim Dwyer et al., Actual Innocence 176-80 (2000) (detailing case).

64. *Cruz*, 643 N.E.2d at 639.

65. *Id.* at 665.

66. *See* Dwyer et al., *supra* note 63, at 178-80 (discussing case); Tarlow, *supra* note 2, at 42 (detailing state's evidence, including a DNA sample, which did not implicate defendant).

67. Rather than recognizing a possible problem with the case against Cruz, the Supreme Court of Illinois noted the unfortunate impact of reversal on the victim's family and expressed regret. 643 N.E.2d at 667. When the corruption in the prosecution of the case was later uncovered, Cruz was released from death row. The case ultimately led to a civil suit against several law enforcement officers

prosecution's earlier statements, so that the jury could have considered whether that change signaled an effort to make up for a deficient case. Perhaps that evidentiary decision would have exposed the injustice earlier. The decision reflects the courts' traditional reluctance to treat a prosecutor's statement as a party admission, used against the prosecution in a later case. That reluctance is unwarranted and allows the prosecution inappropriate freedom to exploit inconsistent positions in separate proceedings.

### 1. *The McKeon Test for Admitting Defense Counsels' Statements as Party Admissions*

The leading cases interpreting the federal rule governing party admissions as it applies to lawyers' statements are the Second Circuit Court of Appeals decisions in *United States v. McKeon*[68] and *United States v. Salerno*.[69] In *McKeon*, the court considered the government's argument that defense counsel's inconsistent remarks in a prior trial's opening statement were admissible against the defendant in a subsequent trial.[70] Concluding that lawyers' statements would sometimes be admissible, the court stated:

> We believe that prior opening statements are not per se inadmissible in criminal cases. To hold otherwise would not only invite abuse and sharp practice but would also weaken confidence in the justice system itself by denying the function of trials as truth-seeking proceedings. That function cannot be affirmed if parties are free, wholly without explanation, to make fundamental changes in the version of facts within their personal knowledge between trials and to conceal these changes from the final trier of fact.[71]

The court nevertheless adopted a case-by-case approach based on a multi-factor test to determine when counsel's earlier opening statement would be admitted; it feared the problems that could flow from the "expansive practices sometimes permitted" under the party-admissions rule.[72] The court identified five factors: consumption of time, unfairness to the defense, deterrence of advocacy, compromise of the defense, and disqualification of defense counsel.[73] Applying this test, the *McKeon* court

---

and prosecutors on the basis of their deceit and manipulation of evidence. *See* DWYER ET AL., *supra* note 63, at 180.

68. 738 F.2d 26 (2d Cir. 1984).

69. 937 F.2d 797 (2d Cir. 1991).

70. *See McKeon*, 738 F.2d at 28-29 (noting the government's argument that the statements were admissible under FED. R. EVID. 801(d)(2)(B), (C) or (D)).

71. *Id.* at 31.

72. *Id.* at 31-33.

73. *Id.* at 32-33. Considering all these factors, the *McKeon* court concluded that a trial court should not admit defense counsel's statement unless its inconsistency with a prior statement is clear and it is the equivalent of a testimonial statement of the defendant. *Id.* at 33. The court also exhorted the

held that the defense attorney's statements in his prior opening were admissible.[74]

Many courts adopt the multi-factor approach elaborated in *McKeon*,[75] but they should do so with caution. Because *McKeon*'s multi-factor test was developed for statements by defense counsel, it is too strongly weighted against admitting prior statements to provide an appropriate test for prosecution statements. *Cruz* illustrates the risk of applying *McKeon* to exclude prosecution statements.[76] While some of the factors identified in *McKeon* apply with equal weight to prosecutors' prior statements, others do not.

The first factor, the prospect that free use of attorney statements in prior trials will "consume substantial time to pursue marginal matters," should guide courts in evaluating the admissibility of prosecution statements.[77] In *McKeon*, the court recognized that predicting the evidence in the opening statement is difficult and that evidence in a case may not remain static from trial to trial.[78] The court was therefore concerned that inconsistent statements with innocent explanations would distract attention from the main issues at trial.[79] Like the defense, the prosecution may be surprised by a witness's actual testimony at trial or may discover new evidence. However, given the potential injustice in prosecutorial inconsistency, the trial court should weigh the defendant's argument carefully and stay alert for any danger signaled by the prosecution's change of position. The threat to the fairness of the process justifies the necessary consumption of time.

Courts should also consider the second factor, the risk of inviting unfair inferences from inconsistent positions, in determining whether the government's admissions should be allowed into evidence. The court can assess the significance of the proffered evidence and the validity of the arguments based on it, adequately protecting against improper use of the admissions. Courts should be receptive to admitting the prosecution's prior statements. The reasoning in *McKeon* rested on considerations unique to use of the party admission rule to admit prior statements by a criminal defense attorney; the court suggested that a legitimate inconsistency might

---

trial court to determine that "the inference the prosecution seeks to draw from the inconsistency is a fair one and that an innocent explanation does not exist." *Id.* The court further stated that if the question of innocent explanation could not be resolved, the statement should be excluded. *Id.*

74.   *See id.* at 33-34 (relying on FED. R. EVID. 801(d)(2)(B), (C)).

75.   *E.g.*, Hoover v. State, 552 So. 2d 834, 839-40 (Miss. 1989) (applying the *McKeon* test to the state's argument from the prior trial).

76.   *See* discussion *supra* notes 58-66 and accompanying text.

77.   *McKeon*, 738 F.2d at 32.

78.   *Id.*

79.   *Id.*

arise because of the defendant's limited burden in a criminal trial.[80] By contrast, the government must "present a coherent version of the facts" and should have a comprehensive understanding of the case at the outset, since it bears the initial burden of production.[81] Consequently, admission of the prosecution's prior statements will more often be fair than admission of defense counsel's statements.

The remaining three factors should not enter into the consideration of governmental admissions. The third *McKeon* factor, avoiding deterrence of "vigorous and legitimate advocacy,"[82] does not apply because different standards apply to prosecution and defense advocacy to provide the defense greater latitude.[83] Commentators and courts have noted the prosecutor's obligations to do justice[84] and to strike only fair blows.[85] The Supreme Court has frequently emphasized the importance of prosecutorial fairness in criminal cases.[86] The difference in these advocacy standards weakens the

---

80. *Id.* at 32. A defendant might target one weakness in the government's case in the first trial and another in the later trial; this would unfairly appear to the jury as an inconsistency that undermined the legitimacy of the defense. *See id.*

81. *Id.*

82. *Id.*

83. *See* articles cited *supra* note 37.

84. *See* articles cited *supra* note 37.

85. *See, e.g.*, Berger v. United States, 295 U.S. 78, 88 (1935) ("[W]hile he may strike hard blows, he is not at liberty to strike foul ones.").

86. In *Berger*, 295 U.S. at 88, the Court set the bar for expectations of prosecutorial conduct, stating:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, his is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), the Court stated:

> The State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases. Thus, also unlike a private litigant, a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained.

*Id.* at 79. *See also* Strickler v. Greene, 527 U.S. 263, 281 (1999) (noting the prosecutor's special role in the "search for truth in criminal trials"); Patterson v. Illinois, 487 U.S. 285, 309 (1988) (Stevens, J., dissenting) (arguing that the prosecutor offering legal advice to the defendant is unfair because the "prosecuting authorities' true adversary posture" may be underestimated); Young v. United States *ex rel.* Vuitton Et Fils S.A., 481 U.S. 787, 814 (1987) (demanding assurance that prosecutors who exercise discretionary charging power "will be guided solely by their sense of public responsibility for the attainment of justice"); United States v. Young, 470 U.S. 1, 25 (1985) (Brennan, J., concurring in part and dissenting in part) (noting in dissent that the majority failed to acknowledge that "a representative of the United States Government is held to a higher standard of behavior" than that provided by ethical rules of conduct); Imbler v. Pachtman, 424 U.S. 409, 424 (1976) ("A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court."); Donnelly v. DeChristoforo, 416 U.S. 637, 648-49 (1974) (Douglas, J., dissenting) ("The function of the

argument against admitting inconsistent statements by the prosecution. Unlike deterrence of energetic defense advocacy, deterrence of prosecutorial exaggeration and excessive zeal serves the interest of justice.

The fourth factor, the risk that forcing the defense to explain the source of inconsistency may "expose work product, trial tactics, or legal theories"[87] and thus compromise the defendant's rights, is far less significant when evaluating the prosecution's statements. A prosecutor's explanation may expose the prosecution's theory and tactics, but that exposure is less harmful to the prosecution than to the defense.[88] Moreover, preserving the fairness of the proceeding warrants placing the burden of that risk on the prosecution.

The fifth policy concern raised in *McKeon*, the risk that admitting the statements will require removal of the attorney who made the prior statements,[89] also carries less force when evaluating a prosecutor's inconsistent statements. Removing a particular prosecutor is far less troublesome than removing defense counsel. Removal of defendant's counsel of choice raises constitutional concerns.[90] In addition, a substitute prosecutor can be brought into the case far more easily than can substitute defense counsel.[91]

### 2. *Tests Offered for Assessing Admissibility of Prosecution's Statements*

Although *McKeon* offers a helpful starting point, its focus on statements of defense counsel does not provide a satisfactory template to determine the admissibility of prosecutors' inconsistent statements. A number of courts have applied less restrictive tests and concluded that prosecution

---

prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial."); United States v. Ash, 413 U.S. 300, 320 (1973) (highlighting the "ethical responsibility of the prosecutor" as a safeguard against the accidental or purposeful subversion of the trial); United States v. Wade, 388 U.S. 218, 256-57 (1967) (White, J., concurring in part and dissenting in part) (stating in dissent that prosecutors "have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to . . . the ascertainment of the true facts . . . .").

87. *McKeon*, 738 F.2d at 32.

88. The prosecution is obligated to provide more pretrial discovery than the defense. LAFAVE ET AL., *supra* note 9, § 20.1. At trial, the prosecution proceeds first and must present proof beyond a reasonable doubt on all elements of the offense, whereas the defendant may elect to introduce no evidence whatsoever. In addition, the question of attorney client privilege may arise if the defendant is required to explain, but the privilege is not implicated by prosecution explanation.

89. *McKeon*, 738 F.2d at 33. *But see* State v. Cardenas-Hernandez, 579 N.W.2d 678, 685 (Wis. 1998) (mentioning this factor prominently).

90. *See McKeon*, 738 F.2d at 34; *see also* Vivian O. Berger, *The Supreme Court and Defense Counsel: Old Roads, New Paths—A Dead End?*, 86 COLUM. L. REV. 9 (1986); Stephen J. Schulhofer & David D. Friedman, *Rethinking Indigent Defense: Promoting Effective Representation through Consumer Sovereignty and Freedom of Choice for All Criminal Defendants*, 31 AM. CRIM. L. REV. 73 (1993).

91. Most prosecutors offices have a number of assistants on staff. *See* CAROL J. DEFRANCES & GREG W. STEADMAN, U.S. DEP'T OF JUSTICE, PROSECUTORS IN STATE COURTS, 1996 (1998).

statements should be admissible.[92] In *United States v. Salerno*, the Second Circuit adapted its reasoning in *McKeon* to statements made by government lawyers and offered by a criminal defendant.[93] The court identified three determinations for the trial court: (1) whether the prior statement involves a factual assertion inconsistent with the prosecutions later assertions; (2) whether the prosecutor's statements were the equivalent of a client's testimonial statements; and (3) whether the inconsistent statement fairly supports the inference to be drawn and is not subject to innocent explanation.[94]

In *Salerno*, the government charged Auletta as a defendant and treated him as a culpable actor.[95] By contrast, in an earlier prosecution, the government had prosecuted other defendants on the theory that Auletta was a victim of extortion.[96] At his trial, Auletta sought to introduce the indictment and the prosecution's opening and closing arguments from the prior trial.[97] He argued that these statements constituted party admissions and should be presented to the jury to rebut the prosecution's claim that he was criminally liable.[98] The trial court excluded all the statements,[99] but the Second Circuit held that the opening and closing should have been admitted as party admissions.[100] The court noted that the assertions offered by the defendant were both factual and inconsistent with the government's position at his trial.[101] The court stressed the jury's need for the information, noting that "the jury, and not the government, must ultimately decide . . . ."[102]

Similarly, in *United States v. Bakshinian*,[103] the district court reasoned that *McKeon*'s analysis was peculiar to statements by defense counsel and

---

92. *E.g.*, United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991) (concluding that the defendant can inform the jury "that the government at one time believed, and stated, that its proof established something different from what it currently claims;" holding that the bill of particulars constitutes a party admission when offered against the government); United States v. Kattar, 840 F.2d 118, 130-31 (1st Cir. 1988) (concluding that the term "party-opponent" encompasses the Justice Department acting in criminal cases and holding Department's statements admissible under FED. R. EVID. 801(d)(2)); *see also* United States v. Johnson, 28 F.3d 1487, 1496 (8th Cir. 1994) (discussing the admissibility of the bill of particulars from a different trial but concluding that the bill was not inconsistent with the current trial).

93. *See* United States v. Salerno, 937 F.2d 797, 811 (2d Cir. 1991).

94. *Id.* at 811.

95. *Id.*

96. *Id.*

97. *Id.* at 810-11.

98. *Id.*

99. *Id.* at 811-12.

100. *Id.* The court concluded that the indictment was a statement of the grand jury rather than the government and therefore did not fall within the rule. The court did not specify which subsection of Rule 801(d)(2) applied to any of the statements. *See id.*

101. *Id.*

102. *Id.* at 812.

103. 65 F. Supp. 2d 1104 (C.D. Cal. 1999).

that the government should not receive the same leeway.[104] The court asserted that the government "may not take inconsistent positions as to what occurred."[105] Consequently, the court simply enforced the usual rule that a party-opponent's statements of opinion and even argument are admissible.[106] As these decisions suggest, the test for admissibility of prosecutors' statements should not be biased against admissibility. Instead, the test should turn on two key questions: whether the prosecution made an inconsistent assertion and whether there is an innocent explanation for the inconsistency.[107]

Of course, some prosecutorial statements are properly excluded, and the suggested test will prevent their admission if the statements are not truly inconsistent or if they have innocent explanations.[108] In *State v. Cardenas-Hernandez*,[109] the Wisconsin Supreme Court declined to admit statements made by the prosecutor during the defendant's initial bail hearing.[110] Acknowledging that such statements could in some instances qualify as party admissions, the court recognized the policy arguments against admissibility, applied the rule derived from *McKeon* and *Salerno*, and concluded that the prior statements were not clearly inconsistent with the government position at the trial in question.[111] The court could also have considered that the statements were made at a point in the trial where the prosecutor had not fully investigated the case, thus providing an innocent explanation for the change in argument.

Even a perfectly structured and perfectly administered test for admitting prosecutors' prior inconsistent statements offers a weak response to prosecutorial inconsistency and may not adequately protect the defendant's rights. The court in *United States v. Bakshinian*[112] seemed optimistic about

---

104. *Bakshinian*, 65 F. Supp. 2d at 1107-08.

105. *Id.* at 1108.

106. *Id.* at 1109. The court did not apply *McKeon*'s requirement that the statement be one of fact, and the court did not specify which subsection of FED. R. EVID. 801(d)(2) applied. *See id.*

107. *See* United States v. Orena, 32 F.3d 704, 715-16 (2d Cir. 1994) (describing the conditions necessary to permit the defense to introduce the prosecutor's prior statements as evidence). Some courts draw a distinction between statements of fact and statements of law. *E.g.*, United States v. DeLoach, 34 F.3d 1001, 1005-06 (11th Cir. 1994) (noting that the statement was made during the closing, a time of argument, and therefore was not a statement of fact). This distinction does not seem useful. The line between fact and law may be blurred, and prosecutorial inconsistency concerning the legal implications of the evidence should be exposed to the jury.

108. *See, e.g.*, United States v. Bailey, 159 F.3d 637, 637 (D.C. Cir. 1998) (upholding the exclusion of an inconsistent factual statement at a suppression hearing because the prosecution corrected the statement in a timely fashion and explained the mistake); *Orena*, 32 F.3d at 716 (upholding the exclusion of the government's allegedly inconsistent statements, concluding that the positions were consistent, since the prosecution merely expanded its theory).

109. 579 N.W.2d 678 (Wis. 1998).

110. *Id.* at 686.

111. *See id.* at 684-86; *see also Johnson*, 28 F.3d at 1496 (concluding that the statements were not inconsistent).

112. 65 F. Supp. 2d 1104 (C.D. Cal. 1999).

the party-admissions rule preventing prosecutorial inconsistency. Relying on the prosecutor's promise to provide a consistent theory, the court denied a motion in limine to preclude the prosecution from presenting a theory inconsistent with that presented in his codefendant's separate trial.[113] The court nevertheless noted that the prosecution must not present inconsistent theories, remarking in a footnote that the admissibility of prior governmental statements would encourage the prosecution "to consider several cases as a related whole, with a consistent theory of prosecution running through all of the cases."[114] I do not share the court's optimism. Admitting the prosecutor's prior statements is a nudge in the direction of consistency but may not dissuade the government from advancing an inconsistent theory. Instead, the courts should afford the defendant protection by estopping the use of inconsistent theories.

### *B. Collateral Estoppel*

Admitting the prosecutor's prior statements does not foreclose the harmful effects of prosecutorial inconsistency; the fact finder may dismiss the significance of the inconsistency and allow the prosecution to exploit the inconsistent position. Consequently, other tools for addressing prosecutorial inconsistency must be considered.

The doctrine of collateral estoppel, or issue preclusion, provides that a party cannot relitigate an issue of ultimate fact once it has been determined by a valid and final judgment.[115] When it applies, collateral estoppel operates to encourage consistency in results[116] by preventing the reassertion and relitigation of a position that the estopped party advanced and lost in the first proceeding. Although some aspects of collateral estoppel are embodied in the double jeopardy clause of the Constitution,[117] the doctrine has limited utility for criminal defendants. The doctrine should be modified to broaden its protection by restricting the prosecution in later litigation against related defendants. A modified doctrine of collateral estoppel will help deter prosecutorial inconsistency.

Currently, because of the requirement of mutuality, collateral estoppel is rarely available to achieve consistency between criminal defendants. Indeed, when courts treat collateral estoppel as the governing principle in determining whether to grant relief based on prosecutorial inconsistency,

---

113. *Id.* at 1110-11.

114. *Id.* at 1110 n.7.

115. *See* Ashe v. Swenson, 397 U.S. 436, 443 (1970) (quoting United States v. Kramer, 289 F.2d 909, 913 (2d Cir. 1961)).

116. *See generally* Christopher Murray, Comment, *Collateral Estoppel in Criminal Prosecutions: Time To Abandon the Identity of Parties Rule*, 46 S. CAL. L. REV. 922, 924 (1973).

117. *Ashe*, 397 U.S. at 445.

they conclude that the defendant is not protected.[118] The mutuality requirement limits collateral estoppel to instances in which both parties, the government and the defendant seeking to invoke collateral estoppel, participated in the first proceeding.[119] The mutuality requirement has been widely eliminated in civil cases, allowing a party that did not participate in the prior proceeding to invoke collateral estoppel against a party that lost in the prior proceeding.[120] The courts should similarly relax the requirement to make collateral estoppel more useful in criminal cases.

Even if the mutuality requirement is relaxed, the defendant must identify a particular issue favorably determined in the first proceeding.[121] This requirement is an essential aspect of collateral estoppel and poses an insurmountable barrier to applying collateral estoppel to protect defendants from prosecutorial inconsistency. Identifying the issue resolved in the first trial is challenging, given the general nature of verdicts in most criminal cases.[122] In some cases, however, the defendant can overcome the barrier and persuade the court that the proceedings against the first defendant resolved a specific issue involved in the ongoing proceedings. In those instances, the doctrine should protect the defendant in subsequent proceedings.

118. *E.g.*, Nichols v. Scott, 69 F.3d 1255, 1270 (5th Cir. 1995) (declining to extend collateral estoppel against the government to criminal cases because of mutuality issues); *see also* Daniels v. State, 534 So. 2d 628, 638 (Ala. Crim. App. 1985) (summarily rejecting a collateral estoppel argument); People v. Franklin, 656 N.E.2d 750, 755 (Ill. 1995) (same); State v. Nunley, 923 S.W.2d 911, 926 (Mo. 1996) (same); State v. Fondren, 810 S.W.2d 685, 687-88 (Mo. Ct. App. 1991) (same). *See generally* Murray, *supra* note 116, at 959-61 (discussing the application of nonmutual collateral estoppel to criminal convictions).

119. *See, e.g.*, Standefer v. United States, 447 U.S. 10, 23-24 (1980) (declining to apply collateral estoppel on lack of mutuality grounds); *Daniels*, 534 So. 2d at 638 (same); State v. Kaplan, 469 A.2d 1354, 1355-56 (N.H. 1983) (same).

120. *See* Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313 (1971); People v. Allee, 740 P.2d 1, 5 (Colo. 1987).

121. *See Ashe*, 397 U.S. at 436; United States v. Keller, 624 F.2d 1154, 1158-59 (3d Cir. 1980); United States v. Crispino, 586 F. Supp. 1525, 1531-32 (D.N.J. 1984) (discussing the rule that allows collateral estoppel of issues decided in the defendant's favor); Allan D. Vestal, *Issue Preclusion and Criminal Prosecutions*, 65 Iowa L. Rev. 281, 306 (1980) (explaining collateral estoppel as it applies to criminal prosecutions); *see also Fondren*, 810 S.W.2d at 687 (discussing the importance of mutuality as a requirement for collateral estoppel).

122. *See, e.g.*, United States v. Quintero, 165 F.3d 831, 836 (11th Cir. 1999) (holding collateral estoppel inapplicable to hung jury verdicts when inconsistency of verdicts does not provide knowledge of jury's reasoning); United States v. Vaughn, 80 F.3d 549, 551 (D.C. Cir. 1996) (listing possible bases for jury verdict); Johnson v. Estelle, 506 F.2d 347, 349-52 (5th Cir. 1975); United States v. Forman, 990 F. Supp. 875, 887-89 (E.D. Mich. 1997) (rejecting the defendant's attempt to use juror affidavits to clarify the basis for the verdict in the first trial). *But see* United States v. Garcia, 78 F.3d 1517, 1521 (11th Cir. 1996) (refusing to apply collateral estoppel even though the issue was clearly identified by the judge who granted defendant's motion for judgment of acquittal).

*1. The Requirement of Mutuality*

At common law, collateral estoppel required mutuality; that is, the doctrine applied only if both parties had been involved in the prior litigation.[123] This requirement has been largely eliminated in civil litigation,[124] but in criminal cases most courts continue to enforce it.[125] The mutuality requirement eliminates the utility of collateral estoppel as a tool for giving one criminal defendant the benefit of a helpful determination made in another's case. As long as mutuality is required, a defendant cannot preclude litigation of issues resolved favorably in the related trial of a codefendant. Instead, the defendant can reap the benefit of issue preclusion only if the defendant herself obtained the favorable result. Thus, consistency would be better served if the mutuality requirement were relaxed.

*a. Enforcing the Requirement of Mutuality*

Most of the cases declining to relax the mutuality requirement in criminal cases arise from jury acquittals, and the arguments for retaining the requirement in those cases are compelling.[126] It is inappropriate to expand the impact of jury acquittals to third parties because of the jury's power to acquit against the evidence and the inability of the prosecution to challenge the propriety of an acquittal.[127]

In *Standefer v. United States*,[128] the defendant tried to invoke the acquittal of his alleged principal to bar the prosecution against him.[129] The Supreme Court declined to recognize nonmutual collateral estoppel in criminal cases.[130] As factors weighing against the extension of nonmutual collateral estoppel into the criminal sphere, the Court identified legal

---

123. *See generally* 18 WRIGHT ET AL., *supra* note 33, § 4463; Murray, *supra* note 116, at 923-24 (summarizing the law of collateral estoppel).

124. *See Parklane Hosiery*, 439 U.S. at 322 (reasoning that the system benefits from the elimination of the mutuality requirement); *Blonder-Tongue Labs.*, 402 U.S. at 313 (concluding that judicial economy is served if the party who has fully litigated and lost an issue may be estopped from relitigating that issue in a later case regardless of mutuality).

125. *See, e.g.*, Standefer v. United States, 447 U.S. 10 (1980); *Fondren*, 810 S.W.2d 685.

126. *See* State v. Jimenez, 634 P.2d 950, 953 (Ariz. 1981) (retaining the requirement of mutuality in order to avoid "'compounding the effect of a possibly erroneous or irrational verdict or acquittal'") (quoting Commonwealth v. Brown, 375 A.2d 331, 335 (Pa. 1977)); People v. Franklin, 656 N.E.2d 750, 755 (Ill. 1995) (declaring concern for state's opportunity to fully and fairly litigate the issues in the codefendant's case); State v. Cegon, 309 N.W.2d 313, 314 (Minn. 1981) (declining to presume reasons why jury might choose to acquit the codefendant); People v. Berkowitz, 406 N.E.2d 783, 790 (N.Y. 1980) (stating society's desire for "correctness of the result" as reason not to abandon the mutuality requirement); *see also Fondren*, 810 S.W.2d at 688-89 (citing cases in which absence of mutuality was fatal to the defendant's claim for collateral estoppel).

127. *See Standefer*, 447 U.S. at 22; *see also* Dunn v. United States, 284 U.S. 390, 393-94 (1932) (commenting that verdicts should not be upset because of speculation as to their basis). *See generally* LAFAVE ET AL., *supra* note 9, § 27.3 (discussing limitations on the government's right to appeal).

128. 447 U.S. 10 (1980).

129. *Id.* at 14.

130. *Id.* at 23-24.

barriers to the prosecution's opportunity to fully and fairly litigate.[131] Specifically, the Court mentioned the prosecution's limited discovery rights, the prohibition on the use of directed verdicts, judgments notwithstanding the verdict, and appellate review as potential vehicles for avoiding or correcting an acquittal against the evidence.[132] The Court noted that, as a result of these restrictions, the jury can acquit for improper reasons.[133]

Additionally, the Court pointed to special evidentiary rules, such as the Fourth Amendment exclusionary rule, that exclude evidence against one defendant while permitting its use against another.[134] If the favorable outcome in the first trial resulted from such a rule and the second defendant could not claim the same protection, then collateral estoppel should not extend the benefit of the favorable result.[135] Further, the Court rejected the argument that it could address these concerns on a case-by case basis,[136] concluding that the process would be "protracted and burdensome."[137] In *Standefer*, the Court also described the public interest in the accuracy and justice of criminal results as greater than the concern for judicial economy that underlies the expansion of collateral estoppel in civil cases.[138] The Court feared that nonmutual collateral estoppel in criminal cases would extend the benefit of an erroneous acquittal to the other participants in the charged criminal conduct.[139]

In *United States v. Mollier*,[140] the Fifth Circuit extended the reasoning in *Standefer* to a criminal case in which the prior proceedings culminated in a judicial determination that the evidence was insufficient rather than in

---

131. *Id.* at 22.

132. *Id.*; *see also Franklin*, 656 N.E.2d at 755 (examining the mutuality requirement dictated by other jurisdictions). Courts have also commented that an acquittal does not establish factual innocence, but merely establishes the legal status of innocence. *See* People v. Allee, 740 P.2d 1, 6 (Colo. 1987) (noting that innocence is factual status not established by acquittal); *Franklin*, 656 N.E.2d at 755 (stating that "[t]he acquittal of a codefendant or the reversal of a codefendant's conviction does not establish a status of innocence" for the defendant).

133. *See Standefer*, 447 U.S. at 22-23; *see also* Potts v. State, 430 So. 2d 900, 903 (Fla. 1982) (declining to take the trier-of-fact function out of hands of jury in order to maintain consistency of judgment); Commonwealth v. Cerveny, 439 N.E.2d 754, 757 (Mass. 1982) (stating that the jury may acquit out of compassion or prejudice).

134. *Standefer*, 447 U.S. at 23-24.

135. *Id.*

136. *Id.* at 24.

137. *Id.*

138. *Id.* at 24-25.

139. *Id.* at 25; *see also* People v. Allee, 740 P.2d 1, 6 (Colo. 1987) (stating that the defendant cannot use the acquittal of another to establish the facts of his own case); State v. Kaplan, 469 A.2d 1354, 1356 (N.H. 1983) (stating that policy considerations outweigh judicial economy concerns); Commonwealth v. Brown, 375 A.2d 331, 335 (Pa. 1977) (noting that the argument against inconsistent verdicts is strong but is outweighed by the public's interest in not extending the impact of an improper acquittal).

140. 853 F.2d 1169 (5th Cir. 1988).

a jury acquittal.[141] Even though the case raised no question of jury reasoning, the court determined that nonmutual estoppel should not apply because the prosecution was foreclosed from appealing the court-granted judgment and because evidence inadmissible against the first defendant may be admissible against the second defendant.[142] The court reasoned that efficient use of judicial resources justifies collateral estoppel. However, this benefit would be lost if the courts had to assess the sufficiency of the government's prior opportunity to litigate in order to determine whether to give a prior determination preclusive effect.[143] The court also noted that the "efficiency concerns that drive the collateral estoppel on the civil side are not nearly so important in criminal cases."[144]

*b. Relaxing the Requirement of Mutuality*

Although the results in *Standefer* and *Mollier* rest on strong arguments, nonmutual collateral estoppel should play a role in criminal prosecutions when the basis for the estoppel is not an acquittal but is another type of judicial ruling in a prior proceeding. In such cases, the prosecution is able to protect against unjust results by appealing.[145] The courts that refuse to extend nonmutual collateral estoppel to decisions other than acquittals have undervalued the importance of consistent results in the criminal justice system as an aspect of the public's interest in accuracy and justice in criminal cases.[146] The interest in consistency does not tip the scales where the government cannot appeal and nonmutual collateral estoppel would risk giving a broad ripple effect to a baseless acquittal. However, it does tip the scales when the defendant seeks to preclude further litigation of a non-acquittal issue because the government is adequately protected. The interest in consistency and the reduced disadvantage to the prosecution should persuade the courts to extend nonmutual collateral estoppel to such issues, thus promoting consistency between cases.

Thus, the courts should recognize and apply nonmutual collateral estoppel to matters that were not addressed in a jury verdict or a judicial

---

141. *Id.* at 1175-76; *see also* Kott v. State, 678 P.2d 386, 391-93 (Alaska 1984) (declining to extend nonmutual collateral estoppel to acquittal in a bench trial).

142. *Mollier,* 853 F.2d at 1176.

143. *Id.*

144. *Id.*

145. *See* United States v. Scott, 437 U.S. 82 (1978) (holding that the prosecution's appeal from a mid-trial dismissal does not violate the defendant's right to protection from double jeopardy, even though it may force the defendant to endure a second trial); People v. Allee, 740 P.2d 1, 7 (Colo. 1987); State v. Kaplan, 469 A.2d 1354, 1356 (N.H. 1983).

146. *See* Commonwealth v. Brown, 375 A.2d 331, 366 (Pa. 1977) (noting that preventing inconsistent judgments is the strongest argument in favor of nonmutual collateral estoppel). *But see* People v. Berkowitz, 406 N.E.2d 783, 790 (N.Y. 1980) (stating that because of society's concern for correctness within criminal prosecution, litigation-limiting devices should be liberally applied in civil cases but not in criminal cases).

acquittal. Specifically, collateral estoppel should apply if an issue helpful to the defendant was resolved by the court in a codefendant's separate proceeding and the prosecution was permitted to appeal.[147] In these situations, the government can adequately protect the public's interest in law enforcement by challenging the favorable determination in the first trial. Consequently, there is no risk of expanding the impact of an unjustified but unassailable determination.

A few jurisdictions have recognized nonmutual collateral estoppel in criminal cases.[148] Only California has applied nonmutual collateral estoppel based on a jury verdict. In *People v. Taylor*,[149] the California Supreme Court applied nonmutual collateral estoppel to bar prosecution of a defendant whose criminal liability rested entirely on the criminal conduct of a co-actor who had been acquitted in a jury trial.[150] The court concluded that consistency and fairness required the extension of nonmutual collateral estoppel to the case before it.[151] The court stressed the need for judicial economy in criminal cases, in which delay not only injures the defendant but also harms the public interest.[152] More importantly, however, the court viewed inconsistent verdicts as tremendously threatening to the integrity of the judicial system.[153] Because the public follows criminal trials closely, unfairness in that setting shapes the public's view of the fairness of the system more than comparable issues in the civil setting.

While the mutuality requirement should be relaxed in some criminal cases, *Taylor* goes too far. As the Court reasoned in *Standefer*, such a broad rule of nonmutual collateral estoppel would give a codefendant the benefit of an acquittal even if it resulted from factors peculiar to the acquitted defendant.[154] For example, the acquittal may result from weakness

147. Traditionally, the prosecution was not permitted to appeal. In the second half of the twentieth century, however, statutes were enacted authorizing the government to appeal criminal cases. The constitutional protection against double jeopardy restricts the government's ability to appeal, but it permits appeal from a judicial determination other than a judgment of acquittal based on insufficient evidence. *See generally* LAFAVE ET AL., *supra* note 9, § 27.3.

148. *See* People v. Taylor, 527 P.2d 622, 630-31 (Cal. 1974) (holding that lack of mutuality does not preclude the application of collateral estoppel); State v. Gonzalez, 380 A.2d 1128, 1135 (N.J. 1977) (stating that serving the goals of fairness and consistency of outcome outweighs the requirement of mutuality). *But see* State v. Perank, 858 P.2d 927, 931 n.3 (Utah 1993) (declining to resolve the question of whether nonmutual collateral estoppel applies against the state).

149. 527 P.2d 622 (Cal. 1974).

150. *Id.* at 697-98; *see also* People v. Super. Ct., 118 Cal. Rptr. 702, 705-06 (Cal. Ct. App. 1975) (following *Taylor* and barring the prosecution of a third alleged conspirator after the acquittal in separate trial of the other two alleged conspirators). *See generally* Murray, *supra* note 116, at 935-37 (arguing in favor of eliminating mutuality in criminal cases).

151. *Taylor*, 527 P.2d at 697-98.

152. *Id.* at 695.

153. *Id.*

154. Standefer v. United States, 447 U.S. 10, 22-24 (1980).

in the evidence against the acquitted defendant or jury sympathy for the defendant that would not extend to the codefendant.[155]

Other courts have applied nonmutual collateral estoppel more narrowly, avoiding the problems identified in *Standefer*.[156] In *State v. Gonzales*,[157] the New Jersey Supreme Court applied nonmutual collateral estoppel to bar relitigation of the legality of a search after one defendant had succeeded in his motion to suppress.[158] The court acknowledged that the public may react negatively either to the apparent unfairness of inconsistent results, on the one hand, or to the enforcement of the Fourth Amendment exclusionary rule to benefit a defendant who has not litigated the issue, on the other.[159] Weighing these considerations, the court concluded that "the basic goal of fairness in the administration of justice is better served by requiring consistency in outcome."[160]

Similarly, in *Jennings v. State*,[161] the court applied collateral estoppel to bar relitigation of a suppression issue won by the defendant's compatriot in a separate proceeding. Given advances in the law of collateral estoppel, the court concluded that the doctrine should apply since the state had a full and fair opportunity to litigate the issues raised by the initial motion to suppress.[162] The court concluded that it would be fundamentally unfair to allow the state to seek favorable determinations of the same issue in separate proceedings, remarking that "the administration of justice is better served by requiring consistency in outcome."[163]

The reasoning of these decisions is persuasive. A judicial determination in favor of one defendant, based on facts equally applicable to both defendants and either not appealed or affirmed on appeal, should collaterally estop the government in the second case. For example, a suppression order entered in one proceeding and not overturned on appeal should protect a defendant facing the same evidence in a separate proceeding, unless the prosecution can demonstrate a reason to treat the defendant invoking

---

155.  *But see* Murray, *supra* note 116, at 947-48 (arguing that procedural mechanisms can protect against inappropriate results).

156.  *See* People v. Super. Ct., 118 Cal. Rptr. 702, 704 (Cal. Ct. App. 1975) (allowing acquittals to have preclusive effect when the defendant would be the only participant left facing conspiracy charges); Jennings v. State, 714 N.E.2d 730, 733-35 (Ind. Ct. App. 1999) (holding that the admission of evidence that was suppressed in the codefendant's case due to an illegal search was barred by collateral estoppel); State v. Gonzalez, 380 A.2d 1128, 1135 (N.J. 1977) (same); United States v. Bruno, 333 F. Supp. 570 (E.D. Pa. 1971) (holding that acquittals of alleged co-conspirators barred the defendant's conviction).

157.  380 A.2d 1128 (N.J. 1977).

158.  *Id.* at 1130.

159.  *Id.* at 1134-35.

160.  *Id.* at 1135.

161.  714 N.E.2d at 730.

162.  *Id.* at 734.

163.  *Id.* at 734-35.

collateral estoppel differently from the defendant who won the order.[164] Similarly, if one defendant successfully demonstrates a speedy trial violation and wins dismissal of the charges, the other defendants in the case should be able to invoke that determination except when essential factual findings are peculiar to the defendant who won the order.[165]

Requiring mutuality or identity of the parties impairs the utility of collateral estoppel as a means of encouraging consistency in criminal cases. Furthermore, it allows the prosecution to benefit from separate proceedings by gaining the opportunity to relitigate issues on which it has already lost and obtain inconsistent results against related defendants. The courts should therefore relax the requirements for collateral estoppel. Although the courts are justifiably reluctant to extend the benefit of one defendant's acquittal to a codefendant through the operation of collateral estoppel, the courts should give preclusive effect to judicial rulings resolving issues common to separate proceedings against related defendants.

*2. Identifying an Issue to be Precluded*

Even if the courts give defendants the benefit of nonmutual collateral estoppel, the defendant must identify an issue judicially determined in the first proceeding that limits the prosecution in the second case. Generally, the second defendant would employ collateral estoppel to enforce a determination favorable to the first defendant and preclude the prosecution from reasserting arguments that failed in the first proceeding. Rarely, however, the second defendant may identify a determination unfavorable to the first defendant that is helpful in the second defendant's case and should be allowed to invoke collateral estoppel to bar the prosecution from adopting an inconsistent position.

The most common use of nonmutual collateral estoppel by a criminal defendant, then, will be to ride on the coattails of the first defendant's success in a motion to the court.[166] The most fruitful application is likely to be extending the benefit of successful motions to suppress evidence on Fourth Amendment grounds.[167] If the first defendant wins a motion to suppress

---

164. The second defendant might not have standing to complain, because the governmental violation may not have affected the second defendant's constitutional rights.

165. *Cf.* Walter v. United States, 969 F.2d 814, 817-18 (9th Cir. 1992) (resolving a speedy trial claim on the basis of a determination in the codefendant's case on the principle of consistency). In some cases, the question of prejudice must be addressed on a case-by-case basis. The defendant seeking the benefit of collateral estoppel would have to demonstrate prejudice but should normally be permitted to bar the prosecution from relitigating common questions such as the reason for the delay.

166. *See, e.g., Walter*, 969 F.2d at 816 (holding that the defendant's speedy trial claim should be handled in the same way as codefendant's claim); State v. Gonzalez, 380 A.2d 1128, 1133-34 (N.J. 1977) (applying nonmutual collateral estoppel to the suppression issue).

167. *See generally* LAFAVE ET AL., *supra* note 9, § 10.3. Other bases for suppression, such as the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel,

evidence, the second defendant may be able to invoke collateral estoppel to avoid giving the prosecution a second shot at avoiding suppression. For example, suppose that in the first proceeding, the prosecution argued that the evidence was obtained through a valid search of a vehicle incident to the arrest of the passenger based on probable cause, and the trial court made specific findings of fact and held that the police did not have probable cause. The prosecution should be estopped from litigating the probable cause issue in the proceedings against the second defendant.[168]

The defendant may also use collateral estoppel to foreclose the prosecution from asserting an inconsistent position in the second proceeding. Suppose, for example, that the prosecution overcomes the first defendant's motion to suppress the evidence by persuading the court to make specific factual findings that the police constitutionally ordered the first defendant out of the back seat of the car and the drugs were in plain sight where he had been sitting. If the prosecution argues in the second proceeding that the drugs were located nearer to the second defendant, collateral estoppel should preclude the government from taking this inconsistent position.[169]

Even if nonmutual collateral estoppel becomes available to criminal defendants, the doctrine would represent only an incremental move toward greater consistency. The doctrine's primary thrust would be to foreclose the prosecution from asserting a position consistent with one already decided against it in an earlier proceeding. The doctrine would not prevent the prosecution from adopting inconsistent positions in separate trials as a means of swaying the jury.

### C. *Judicial Estoppel*

In light of the limitations of the other doctrines, judicial estoppel, with its broad applicability, may be the best tool for preventing prosecutorial inconsistency. Judicial estoppel precludes a party that successfully asserted a position in a prior proceeding from asserting an inconsistent position in a later proceeding.[170] As currently applied, judicial estoppel

---

cannot be extended from one defendant to another; the rights are personal and the facts giving rise to the protection are not likely to relate to another defendant. *Id.* § 10.6(d).

168. The prosecution could attempt to justify the search on some other ground not resolved at the first proceeding. The prosecution could challenge the second defendant's claim that her rights (as differentiated from those of the first defendant) were violated or could argue that the police had reasonable suspicion and stayed within the scope of a permitted car frisk. *See* LAFAVE ET AL., *supra* note 9, §§ 3.8, 9.1.

169. The prosecution would be free to pursue a constructive possession theory. *See generally* W. LAFAVE & A. SCOTT, CRIMINAL LAW § 3.2 (2d ed. 1986).

170. *See* Lowery v. Stovall, 92 F.3d 219, 223 (4th Cir. 1996) (explaining that the doctrine precludes a party from taking a position inconsistent with the position that the party has previously taken); United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993) (defining the judicial estoppel doctrine as a tool to "[prevent] internal inconsistency"). *See also* Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 NW. U. L. REV. 1244

offers little protection for criminal defendants. Even in civil cases, the courts have not arrived at a consensus concerning whether and how to apply judicial estoppel,[171] and most have resisted applying the doctrine in criminal cases.[172] The doctrine is applied as necessary in the court's discretion to protect the integrity of the court from the corruption introduced when a party adopts in a later proceeding a position inconsistent with that espoused in an earlier proceeding.[173] When applied, the doctrine prevents the party "from playing fast and loose with the courts" and protects "the essential integrity of the judicial process."[174] It also targets the risk of inconsistent results that follows if the courts entertain inconsistent positions.[175] Although some behavior, such as intentional inconsistency, clearly represents an assault on the court's integrity and may warrant the application of judicial estoppel,[176] the courts do not have a uniform view of the type of behavior that threatens judicial integrity. Leaving application of the doctrine in the courts' discretion permits each court to respond to the specific inconsistency targeted by the request for judicial estoppel.

Courts should adapt the doctrine of judicial estoppel to address the harm threatened by inconsistent prosecutorial positions. The courts should recognize that this application of judicial estoppel is an essential aspect of

---

(1986) (discussing the principle that the position taken in a pleading, a deposition, or in testimony cannot be contradicted at a later judicial proceeding).

171. *See generally* Boyers, *supra* note 170 (summarizing the development and application of the doctrine); Henkin, *supra* note 7 (same).

172. *See* Webb v. ABF Freight Sys., Inc, 155 F.3d 1230, 1242 (10th Cir. 1998) ("The Tenth Circuit has firmly established that it will not be bound by the doctrine of judicial estoppel."); Am. Methyl Corp. v. EPA, 749 F.2d 826 (D.C. Cir. 1984) (characterizing judicial estoppel doctrine as out of synch with modern rules of liberal pleading and the courts' truth-seeking function). *See also* Nichols v. Scott, 69 F.3d 1255, 1274 (5th Cir. 1995), *rev'g* Nichols v. Collins, 802 F. Supp. 66, 74 (S.D. Tex. 1992) (reversing the trial court's determination that the prosecution was "constitutionally estopped from obtaining a fact finding in one trial and seeking and obtaining an inconsistent fact finding in another trial"); *McCaskey*, 9 F.3d at 378 (noting the absence of application of the doctrine to criminal proceedings); United States v. Kattar, 840 F.2d 118, 129 n.7 (1st Cir. 1988) (remarking that "this obscure doctrine has never been applied against the government in a criminal proceeding").

173. *See* Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 601-02 (9th Cir. 1995) (noting that the court has discretion to invoke the doctrine); Morris v. California, 966 F.2d 448, 453 (9th Cir. 1991) (recognizing the discretionary nature of the application of judicial estoppel).

174. *Lowery*, 92 F.3d at 223 (citation omitted); *see also* Russell v. Rolfs, 893 F.2d 1033, 1038 (9th Cir. 1990) (stating that the court is entitled to craft such rules of judicial estoppel as "it considers necessary to protect its dignity and its system of justice"). In *Kattar*, the court rejected the defendant's argument for a variety of reasons. *See* 840 F.2d at 129-30 n.7. Other than inconsistency, the only standard noted by the court was that the litigant to be estopped must be "playing fast and loose with the courts." *Id.* (quoting Scarano v. Central R. Co. of N.J., 203 F.2d 510 (3d Cir. 1953)). In *Garcia*, the court noted that a minority of courts apply judicial estoppel "'if the court determines that the alleged offending party engaged in "fast and loose" behavior which undermined the integrity of the court.'" United States v. Garcia, 37 F.3d 1359, 1367 (9th Cir. 1994) (quoting Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993)).

175. Boyers, *supra* note 170, at 1253.

176. *See, e.g.*, Vennerberg Farms, Inc. v. IGF Ins. Co., 405 N.W.2d 810, 814 (Iowa 1987).

due process.[177] Whereas traditional civil judicial estoppel protects the integrity of the court and sanctity of the oath,[178] in criminal cases judicial estoppel protects the fairness of the process to the defendant. The courts should apply judicial estoppel to bar the prosecution from asserting a proposition if the prosecution asserted an inconsistent proposition in an earlier proceeding, unless the prosecution has an adequate explanation for the inconsistency.

Judicial estoppel has two almost universally recognized aspects that make it a particularly suitable tool for attacking the problem of prosecutorial inconsistency. First, the position barred by the doctrine need not have been litigated in the prior proceeding.[179] Judicial estoppel therefore acts as a useful adjunct to collateral estoppel. Where collateral estoppel offers protection only when the specific issue was actually litigated in the prior proceeding,[180] judicial estoppel bars the winning party from asserting a position simply because it is inconsistent with one advanced successfully in the prior proceeding.[181]

Second, courts have not limited judicial estoppel to situations in which there is mutuality of parties.[182] The problem of prosecutorial inconsistency is most acute and most difficult to address when the prosecution exploits the separate trials of alleged joint actors to assert irreconcilable arguments in front of separate juries. As the foregoing discussion of non-mutual collateral estoppel reflects, lack of mutuality often eliminates the utility of collateral estoppel as a means of addressing prosecutorial inconsistency.[183] Judicial estoppel therefore promises to be a more effective tool against prosecutorial inconsistency.

### *1. Requirements Imposed on the Doctrine of Judicial Estoppel*

Other requirements that may be imposed on a party seeking the benefit of judicial estoppel, however, would make the doctrine less useful in criminal cases. These requirements should be relaxed to reflect the special characteristics of criminal cases. Judicial estoppel comes into play only when the party to be estopped prevailed at least to some degree in the first

---

177. *See* discussion *infra* Part III.

178. Boyers, *supra* note 170, at 1251 (discussing the rationale for judicial estoppel); Henkin, *supra* note 7, at 1726 (same).

179. *Lowery*, 92 F.3d at 223 n.3 (comparing judicial estoppel requirements to those of collateral estoppel).

180. *E.g.*, State v. Fondren, 810 S.W.2d 685, 688 (Mo. Ct. App. 1991) (stating that the verdict in the first proceeding did not necessarily determine who instigated the fight).

181. *Lowery*, 92 F.3d at 223 n.3.

182. *E.g.*, *id.* at 223 n.3 (noting that judicial estoppel does not require mutuality even when state law requires it because the doctrine is an issue of federal law). *See generally* Boyers, *supra* note 170, at 1258-60. *But see* State v. Towery, 920 P.2d 290, 304 (Ariz. 1996) (discussing the preconditions necessary for the court to apply judicial estoppel, including that parties be the same).

183. *See supra* notes 123-144 and accompanying text.

proceeding.[184] Many courts also require that the prior position has been "accepted by the court."[185] This requirement is satisfied if the prior position was the basis either for a ruling on a preliminary matter or for a final disposition of the case. Nevertheless, many courts decline to apply judicial estoppel if the results of the first proceeding are inconclusive, perhaps because the case ended in settlement.[186] The courts reason that, unless the party had succeeded in the prior assertion, there would be no need for relief because there would be no risk of inconsistent or misleading results.[187]

Instead of transporting this requirement whole cloth into the criminal context, it should be adapted to address the particular problems of regulating prosecutorial inconsistency in criminal cases. In criminal cases, judicial estoppel should apply if the prosecution prevailed in a manner consistent with acceptance of the prior position. The basis for actions in criminal cases is rarely articulated; although courts in criminal cases sometimes elaborate the basis for their actions, juries never do.[188] The collateral estoppel cases demonstrate the difficulty of determining the basis for judicial or

---

184. *See* Bogle v. Phillips Petroleum Co., 24 F.3d 758, 761 (5th Cir. 1994) (noting that the plaintiff's success in a partial nonsuit motion makes judicial estoppel available to the defendant to bar reassertion of the same claims in the future); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982) (stating that success with a position in a prior proceeding is necessary to apply the doctrine); *see also* cases cited in 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 134.33[2] n.10 (3d ed. 2000).

185. *Lowery*, 92 F.3d at 224; *see also* United States v. Garcia, 37 F.3d 1359, 1367 (9th Cir. 1994) (characterizing acceptance as the majority view); *Edwards*, 690 F.2d at 599 n.5 (explaining that the doctrine requires only that the court adopted the position as a preliminary matter or as part of the final disposition); *Towery*, 920 P.2d at 305 (regarding the acceptance of a prior position as creating the risk of inconsistent results, thus necessitating application of the doctrine). *See also* Roach v. Crouch, 524 N.W.2d 400, 403 (Iowa 1994) (stating that judicial estoppel applies when a party has "successfully and unequivocally" asserted the position in a prior proceeding) (quoting Graber v. Iowa Dist. Ct., 410 N.W.2d 224, 227 (Iowa 1987)). *See generally* Boyers, *supra* note 170, at 1254-58 (summarizing the requirements for judicial estoppel in various jurisdictions); Henkin, *supra* note 7, at 1719-24 (same).

186. *See* Bates v. Long Island R.R., 997 F.2d 1028, 1038 (2d Cir. 1993) (stating that a settlement is not an endorsement of the position by the court); *Edwards*, 690 F.2d at 599 (arguing that a settlement cannot constitute a successfully asserted position); Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980) ("A settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and thus . . . does not provide the prior success necessary for judicial estoppel."). *But see* Kale v. Obuchowski, 985 F.2d 360, 361-62 (7th Cir. 1993) (regarding a settlement favorable to one party as judicial acceptance of that party's position); Teledyne Indus. v. NLRB., 911 F.2d 1214, 1218-19 (6th Cir. 1990) (regarding a settlement by a court-entered order containing a party position in explicit findings of fact as successfully asserted); Reynolds v. Comm'r, 861 F.2d 469, 473 (6th Cir. 1988) (holding that a settlement in bankruptcy court, which requires fair and equitable determination of underlying facts, constitutes judicial adoption of a party's position).

187. *See Towery*, 920 P.2d at 305 (noting that acceptance of a prior position is necessary to create the risk of inconsistent results); *Roach*, 524 N.W.2d at 403 (stating that a party's prior success with a position is a "fundamental feature" of judicial estoppel); *see also Lowery*, 92 F.3d at 224 (applying judicial estoppel with an acceptance requirement against prior criminal defendant in a later civil complaint). In *Lowery*, the court concluded that the plaintiff's prior position satisfied this requirement because the plaintiff had asserted the inconsistent factual claim as the basis of his guilty plea in a criminal proceeding and the court accepted the guilty plea on that factual basis. *Id.* at 224-25.

188. *See* cases cited *supra* note 122.

jury action in criminal cases.[189] That difficulty would be amplified in enforcing an acceptance requirement for judicial estoppel; if the barred claim was not actually litigated, the jury need not have resolved the issue. In the single-shooter example, the jury could convict each defendant of first-degree murder based on a theory of accomplice liability,[190] but it may be more likely to convict the defendant who actually shot the victim of first-degree murder.

Sentencing questions are even more nuanced. In the example, the prosecutor may argue, in support of capital punishment, that the defendant and his accomplice were engaged in committing a felony, but the defendant could mitigate against capital punishment by arguing that the accomplice's role was much greater.[191] The jury may return a death sentence without specifying which facts it accepted or which factors influenced its decision.[192] Judicial estoppel should bar the prosecution in the second defendant's trial from resting its argument on the theory that the second defendant was the shooter, even when it is not clear that the first jury accepted the inconsistent claim in arriving at its verdict or sentence. The prosecution should be able to avoid the impact of the doctrine only by demonstrating that the inconsistent theory was specifically rejected by the court or the jury in the first trial.

A second requirement that courts sometimes impose on the doctrine of judicial estoppel is that the party to be estopped must have "intentionally misled the court to gain unfair advantage."[193] Courts that articulate a standard that the party must be playing fast and loose with the court also

---

189. *See supra* notes 121-122 and accompanying text.

190. *See* United States v. Paul, 217 F.3d 989 (8th Cir. 2000) (noting that the defendant could be convicted as aider and abettor regardless of who shot the victim). *See generally* LAFAVE & SCOTT, *supra* note 169 (discussing accomplice liability).

191. *See, e.g.*, ALA. CODE §§ 13A-5-49, 13A-5-51 (1975) (defining aggravating and mitigating circumstances to be considered in determining whether to recommend the death penalty); CAL. PENAL CODE § 190.3 (West 1999) (same).

192. *See* Nichols v. Scott, 69 F.3d 1255, 1270 (5th Cir. 1995) (pointing out that the jury provided a general guilty verdict and did not indicate its underlying findings); *see also* ALA. CODE § 13A-5-46 (1975) (setting forth the procedure for jury advisory verdict in a capital case); CAL. PENAL CODE § 190.3 (West 1999) (directing that the trier of fact must weigh aggravating factors against mitigating factors when determining whether the death penalty is appropriate); Turner v. Calderon, 970 F. Supp. 781, 792 (finding the penalty-phase process of California constitutionally sound even though "it fails to require . . . written findings as to the aggravating factors supporting a death judgment"); Bush v. State, 431 So. 2d 555, 559 (Ala. Crim. App. 1982) (stating that since a jury sentencing verdict is advisory only, there is no requirement that they make specific findings with regard to aggravating circumstances).

193. Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) (quoting Tenneco Chems., Inc. v. William T. Burnett & Co., 691 F.2d 658, 665 (4th Cir. 1982) (regarding intention to mislead as determinative factor for applying doctrine). *See also* Graber v. Iowa Dist. Ct., 410 N.W.2d 224, 228 (Iowa 1987) (stating that intention to mislead the court must be shown). *But see* Callanan Road Improvement Co. v. United States, 345 U.S. 507, 806 (1953) (barring civil party from asserting an inconsistent position without inquiring into either judicial acceptance of the earlier position or intentionality of the party's behavior).

suggest an intent requirement. When applying the doctrine to prevent prosecutorial inconsistency, however, actual intent should not be required.[194] Courts evaluating due process claims based on the prosecution's failure to disclose exculpatory evidence have reasoned that bad faith is not a prerequisite to relief.[195] The essence of the constitutional harm is the corruption of the process, not governmental misconduct. The same reasoning should persuade courts that intentional bad behavior should not be required in these cases.[196] Moreover, a defendant who requests judicial estoppel in a timely manner thereby informs the prosecutor of the prior governmental position, eliminating further protestations of innocent prosecutorial inconsistency.

Some courts also impose a third requirement, that the position must be "one of fact rather than law or legal theory."[197] In *McNunis v. Zufosky*,[198] the court held that the doctrine should not be applied to estop a party from changing its position on a question of law. The court emphasized that the question on which the party had taken inconsistent positions was one of first impression and that applying judicial estoppel in these cases would discourage lawyers from assisting courts in developing the law.[199] However, not all courts observe this distinction. In *Russell v. Rolfs*,[200] for example, the court applied the doctrine to estop the state from arguing that the defendant was procedurally barred from pursuing federal relief.[201] The court found the state's representations in the successive proceedings to be "flatly inconsistent."[202]

Courts should only cautiously import a distinction between law and fact into the doctrine of judicial estoppel in criminal cases. The line between positions of law and those of fact is not always clear. On the one hand, the government's position of law on unrelated facts should not constrain them in a separate proceeding. On the other hand, having successfully taken the position that a specific set of facts lead to a particular legal conclusion, the prosecution should not be permitted to shift to an inconsistent position on the ground that it reflects a difference in the law rather than in the facts. Once the prosecution advances a theory of the legal implications of the facts shown by the evidence in the case, it should be estopped from asserting an inconsistent position in a related case. This restriction

194. *See generally* Steven Alan Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure*, 135 U. PA. L. REV. 1365 (1987) (criticizing use of standards based on prosecutorial intent).

195. Strickler v. Greene, 527 U.S. 263, 279 (1999); Anderson v. Calderon, 232 F.3d 1053, 1062 (9th Cir. 2000).

196. *See infra* notes 228-235 and accompanying text.

197. *Lowery*, 92 F.3d at 224; *see also* Boyers, *supra* note 170, at 1262 (discussing requirement).

198. 89 S.E.2d 354 (W. Va. 1955).

199. *Id.* at 358.

200. 893 F.2d 1033 (9th Cir. 1990).

201. *Id.* at 1038-39.

202. *Id.* at 1037.

protects the fairness of the process and, because it does not bind the prosecution in unrelated cases, it leaves the prosecution free to make a different legal argument in an unrelated case in which the prosecution wants to assist in developing the law.

*2. Circumstances in Which Judicial Estoppel Should Not Operate*

There are three specific circumstances in which the change in the prosecution's position can be explained and judicial estoppel should not operate: first, if the prosecution advanced its initial position before full investigation of the case; second, if the prosecution can identify evidence discovered after the first proceeding that prompted the change; or, third, if the court or jury in the first proceeding rejected the prosecution's initial position.[203]

First, the prosecution's factual assertions in the early stages of a criminal proceeding may be viewed as sufficiently tentative so that a defendant should not later be permitted to use those assertions to bar the prosecution from changing its position.[204] For example, in *United States v. Shea*,[205] the defendant argued that the prosecution should be estopped from asserting that he owned or used a gun. At his codefendant's detention hearing the prosecution had argued that the gun was linked to the codefendant, who was sitting on it when he was arrested, rather than to the defendant.[206] Because the detention hearing was held before the prosecution could fully investigate the case, the defendant's rights would not be violated if the prosecution later adopted an inconsistent position.[207] Similarly, assertions in pleadings that are amended before or during trial should not provide the basis for judicial estoppel.[208]

203. *E.g.*, People v. Sakarias, 995 P.2d 152, 176 (Cal. 2000). In *Sakarias*, the court declined to address defendant's argument based on prosecutorial inconsistency on direct appeal. *Id.* The court reasoned that the issue should be left for habeas corpus review to allow the prosecution to explain the alleged inconsistencies. *Id.*

204. *See* United States v. McCaskey, 9 F.3d 368, 379 (5th Cir. 1993) (holding that an indictment is not an adequate basis for judicial estoppel). In some cases, the prosecutor's prior statements may be admitted as party admissions. *See* discussion *supra* Part II.A.

205. 150 F.3d 44, 52 (1st Cir. 1998). *See McCaskey*, 9 F.3d at 379 (holding indictment not an adequate basis for judicial estoppel). In some cases, the prosecutor's prior statements may be admitted as party admissions. *See supra* Part II.A.

206. 150 F.3d at 52.

207. The court concluded that the statements were not inconsistent with the prosecution's position at trial. *Id.*

208. *E.g.*, Decker v. Vt. Educ. Television, Inc., 13 F. Supp. 2d 569, 572 (D. Vt. 1998) ("'It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.'") (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). In developing the law of judicial estoppel in civil cases, courts have not treated the party's pleadings as binding, recognizing that pleadings are subject to amendment as discovery clarifies the facts of the case and should therefore not be given undue weight. *See* Boyers, *supra* note 170, at 1257 (noting the difficulty in determining which of separate inconsistent assertions in pleadings would be considered accepted by

Second, new information may emerge after the first trial that warrants a change in the prosecution's stance. For example, in *United States v. Sharpe*,[209] new information came to light after the defendants' first trial.[210] One of the convicted defendants, cooperating in exchange for a reduced sentence, provided startling information[211] when he disclosed the identities of additional participants in the criminal scheme and also clarified the roles of the original defendants.[212] The prosecution acquired knowledge not only that an additional politician was involved in the fraud scheme and murder plot, but also that the actual killer was someone never mentioned in the first trial.[213] Faced with this dramatically different picture of the crime, the prosecution obtained a new indictment, charging the two newly identified defendants along with two of the original defendants.[214] The defendants complained that the prosecution had changed its position between the two trials and argued that their right to due process was violated by the government's inconsistency.[215] Rejecting that claim, the court characterized the government's conduct "merely as the presentation of new and significant evidence that justified the prosecution in question."[216]

Although the discovery of new evidence may justify a change in position, courts should evaluate such claims with skepticism. In most cases, by the time the trial begins, the prosecutor should have marshaled all the evidence and should be in a position to assess each defendant's culpability. Barring turncoat witnesses, the prosecutor should not ordinarily have any reason to adopt a new position.[217]

---

a court); *see also* Henkin, *supra* note 7, at 1729-34 (arguing that judicial estoppel should not apply to inconsistent pleadings in separate actions in recognition that "controlling facts" can change over time).

209.   193 F.3d 852 (5th Cir. 1999).

210.   *Id.* at 859-60.

211.   *Id.* at 860.

212.   *Id.*

213.   *Id.* at 860-61. The case involved prosecution for federal offenses, and the murder charge, a state offense, was not before the court in either case.

214.   *Id.* at 861. The cooperating defendant, Gillich, appears not to have been recharged.

215.   *Id.* at 872.

216.   *Id.* It appears that no inconsistent verdicts were left intact. At the initial trial, none of the defendants, including Ransom who was at that time alleged to be the trigger man, was convicted on the basis of the actual shooting. *Id.* at 860-61.

217.   In *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998), discussed *infra* notes 266-273 and accompanying text, the prosecution simply called different witnesses against the two defendants and shifted theories accordingly. The difference in the evidence appeared to result from prosecution manipulation rather than the discovery of new information. In *Jacobs v. Scott*, 513 U.S. 1067 (1995), the prosecutor claimed to have changed his mind based on the investigation that took place between the capital sentencing hearing for the first defendant and the hearing for Jacobs. *Id.* at 1068. In each of these cases, the claim that the evidence conveniently changed to permit the prosecution to obtain the most serious conviction against each codefendant should be carefully assessed before triggering an exception to judicial estoppel. *But see* Lear, *supra* note 10, at 638 (arguing that newly discovered evidence may be a common phenomenon in federal cases, given the number and geographic separation of government offices involved). Moreover, having

Third, if the prosecutor can demonstrate that the first jury rejected the initial argument, he should be given latitude to present a new and inconsistent theory. The prosecution is entitled to reevaluate the case in light of the first jury's verdict. In some instances, the verdict indicates that the jury rejected specific positions advanced by the prosecution. For example, in *Kattar* the court evaluated the jury's verdict and concluded that the jury had rejected arguably false testimony by acquitting the defendant on certain counts of the indictment.[218] In the single-shooter example, suppose the prosecution argues in the first trial that the defendant fired the gun, but the jury rejects that version of the facts. In the trial of the second defendant, the prosecution should not be bound by its position in the first trial if the evidence would support a belief beyond a reasonable doubt that the second defendant was actually the shooter. Of course, in attempting to demonstrate the jury's rejection, the prosecution may be hamstrung by the difficulty that afflicts defendants attempting to invoke collateral estoppel after a jury verdict since it is generally extremely difficult to determine the basis for the verdict.[219] Where the problem arises because of prosecutorial inconsistency, however, it is fair for the government to bear the burden of that difficulty.

Even if strengthened in the ways I have suggested, these legal tools will not control prosecutorial inconsistency adequately. A defendant can employ estoppel only by identifying the prosecutorial inconsistency in time to preclude the prosecution from advancing the inconsistent position in the second proceeding. It is questionable whether defendants can routinely be expected to ferret out the prosecution's position on relevant issues in prior proceedings. Even though the defendant may know that a proceeding involving a codefendant has taken place and may know, at least in general terms, the outcome of that proceeding, the defendant will not know the specific positions the prosecution adopted in that proceeding. Some prosecution positions will be recorded in written filings,[220] but many will be reflected only in oral presentations, such as opening statement and closing argument.[221] The later-tried defendant will need access to transcripts of those presentations to determine the prosecution's position. Those transcripts will be available only if the first-tried defendant has appealed; if the

---

discovered that some of the evidence presented at the first trial is incorrect, the government may have an obligation to correct any related errors in the first verdict. *See infra* Part IV.

218.    United States v. Kattar, 840 F.2d 118, 129 (1st Cir. 1988).

219.    *See supra* notes 121, 122 and accompanying text.

220.    For example, the prosecution may make factual assertions in its response to a motion to suppress evidence. *See generally* Ediberto Roman, *"Your Honor What I Meant To State Was . . .": A Comparative Analysis of the Judicial and Evidentiary Admission Doctrines as Applied to Counsel Statements in Pleadings, Open Court, and Memoranda of Law*, 22 PEPP. L. REV. 981, 993-95 (1995).

221.    *See id.* at 998-1001.

first defendant did not appeal, a transcript is unlikely to have been prepared.[222]

Although prosecutorial inconsistency cannot always be avoided, the courts should enforce judicial estoppel if the defendant establishes that the prosecution previously advanced an inconsistent position. Courts should bar prosecutorial inconsistency unless the prosecution proffers a sufficient explanation.

## III
## Due Process Analysis

Even if the courts strengthen the tools for preventing prosecutorial inconsistency, they will not be able to prevent it in every case. Sometimes a defendant will discover only after both trials are completed that the prosecution exploited in the first proceeding a position inconsistent with that relied on at the later proceeding. The courts must recognize that this prosecutorial inconsistency violates notions of fundamental fairness. When the inconsistency is not precluded and the prosecution therefore obtains convictions or sentences by advancing inconsistent positions in separate proceedings, the courts must turn to due process principles to assess the validity of such convictions. Some courts have acknowledged that prosecutorial inconsistency violates principles of due process, but they have not provided extensive support for that conclusion.[223] This section will examine two lines of cases defining due process violations that should guide the courts in their evaluation of prosecutorial inconsistency: those defining the prosecutor's constitutional duty to refrain from presenting false testimony and those concluding that improper non-evidentiary statements by the prosecutor threaten the defendant's right to due process.

These decisions establish two propositions critical to the assessment of prosecutorial inconsistency. First, uncorrected false statements pose an unacceptable threat to the justice process. And second, the prosecutor's statements, even though they are not evidence, can so impact the fairness of the proceeding that reversal is required. Applying the rationale of these decisions to the problem of prosecutorial inconsistency, courts should conclude that the prosecutor's presentation of inconsistent positions violates due process; it is tantamount to presenting false information in an effort to sway the jury and may require that a conviction be set aside.

---

222. *See, e.g.*, Fed. R. App. P. 10 (imposing on the appellant a duty to order transcript).

223. *See, e.g.*, Smith v. Groose, 205 F.3d 1045, 1052 (8th Cir. 2000) (recognizing a due process violation when the prosecution theories in separate trials are inherently contradictory); Thompson v. Calderon, 120 F.3d 1045, 1059 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998); State v. Lavalais, 685 So. 2d 1048, 1056-57 (La. 1996) (suggesting that fundamental fairness would require relief if the prosecutor's positions were inconsistent); *see also* English, *supra* note 37.

### *A. Presentation of False Testimony*

Although prosecutorial inconsistency does not necessarily entail presentation of false testimony, the due process principles governing the presentation of false testimony provide a useful framework for analyzing due process violations through prosecutorial inconsistency. The prosecution violates the defendant's right to due process if it knowingly allows material false testimony to stand uncorrected.[224] In *Mooney v. Holohan*,[225] the Court held that a prosecutor could not knowingly present false testimony to the court. The Court has extended this principle to cases in which the prosecution's testimony created a false impression, even though it was not clearly perjured.[226] In more recent decisions, the Court has stated repeatedly that the prosecution violates the defendant's right to due process if the prosecutor knowingly presents perjured testimony or allows it to go uncorrected and there is any reasonable likelihood that the perjury had an impact on the outcome.[227]

The Court has further held that the prosecution violates due process by presenting perjured testimony even if the particular prosecutor does not know that the testimony is false. In *Giglio v. United States*,[228] a prosecution witness testified falsely that he had been given no promise in exchange for his cooperation.[229] The prosecutor in the courtroom was unaware of the promise to the witness and therefore did not correct the false statement.[230] The prosecutor who had made the promise was not participating in the trial

---

224. *See* Giglio v. United States, 405 U.S. 150, 153-55 (1972) (remarking that uncorrected witness testimony concerning a deal with the government, even if unknown to trial prosecutor, constitutes a due process violation); Pyle v. Kansas, 317 U.S. 213, 215-16 (1942) (declaring that the prosecution's knowing use of perjured testimony would deprive the defendant of due process); Mooney v. Holohan, 294 U.S. 103, 112 (1935) (holding that the prosecution's knowing use of perjured testimony is "deliberate deception of court and jury" and violates due process). *See generally* Stephen A. Saltzburg, *Perjury and False Testimony: Should the Difference Matter So Much?*, 68 FORDHAM L. REV. 1537 (2000) (detailing development of the law concerning false testimony).

225. 294 U.S. 103 (1935).

226. *See, e.g.*, Napue v. Illinois, 360 U.S. 264, 269 (1959) (asserting that the prosecutor's failure to correct testimony, even testimony relating only to credibility, was a constitutional violation); Alcorta v. Texas, 355 U.S. 28, 31 (1957) (holding that, in a trial for the murder of his wife, the defendant was denied due process by nondisclosure of the prosecutor's knowledge of the extent of the relationship between the witness and the defendant's wife); *see also* Blankenship v. Estelle, 545 F.2d 510, 513 (5th Cir. 1977) (stating that testimony could violate due process if it created a false impression, even though it was technically true). *See generally* Saltzburg, *supra* note 224, at 1560-64.

227. *See* Strickler v. Greene, 527 U.S. 263, 299 (1999) (Souter, J., concurring) (noting that "reasonable likelihood" has been equated to both "reasonable possibility" and "the more-likely-than-not" standards); United States v. Bagley, 473 U.S. 667, 680 (1985) (stating that perjured testimony "is considered material unless failure to disclose it would be harmless beyond a reasonable doubt"); United States v. Agurs, 427 U.S. 97, 103 (1976) (asserting that convictions "obtained by the knowing use of perjur[y] [are] fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury").

228. 405 U.S. 150 (1972).

229. *Id.* at 151-52.

230. *Id.* at 152-53.

and was unaware that the witness had testified falsely.[231] The Court nevertheless held that the presentation of false testimony violated the defendant's right to due process.[232] The Court concluded that the individual prosecutor's ignorance had no bearing on the fairness of the proceeding, which is the foundation of the due process argument, and voted unanimously to reverse the conviction.[233] The gravamen of the harm is in the "corruption of the truth-seeking function of the trial process."[234]

The lower courts have applied *Giglio* to attribute to the prosecution knowledge on the part of other government employees.[235] Thus, if the government has information that demonstrates the falsity of the testimony, the prosecutor has a duty to correct it. Failure to do so may violate due process. This rule does not prohibit presentation of conflicting testimony; if the prosecutor presents witnesses whose accounts are in conflict, the jury can

---

231. *Id.*

232. *Id.* at 153-55. Interestingly, the Court has not confronted a case where the defendant based a claim for relief on the argument that the government presented false testimony since it decided *Giglio*. Some decisions concerning the failure to disclose exculpatory testimony could have raised the issue of false testimony but were not decided on that basis. *See* Saltzburg, *supra* note 224, at 1538-39, 1570-73. Professor Saltzburg argues that the Court should have treated *Bagley* and, more recently, *Strickler* as false testimony cases. *Id.* at 1571-72, 1574. However, the defendant did not make a false testimony argument in either *Bagley* or *Strickler*. *See* Brief for Respondent at 10-12, United States v. Bagley, 473 U.S. 667 (1985) (No. 84-48); Brief for Petitioner at 20-21, Strickler v. Greene, 527 U.S. 263 (1999) (No. 98-5864). Indeed, Bagley's brief appears to concede that the case is not within the "perjured testimony" category, Petitioner's Brief at 10-11, *Bagley* (No. 98-5864), and the record in the case does not demonstrate that the witnesses in question made any affirmative false representations or created a specific false impression. In cases dealing with nondisclosure of exculpatory evidence, the Court has stated in dictum that knowing presentation of material perjured testimony violates the defendant's right to due process. *See* cases cited *supra* note 227 and accompanying text; *see also* Kyles v. Whitley, 514 U.S. 419, 433 n.7 (1995) (quoting *Agurs*, 427 U.S. at 103, to state the rule that knowing use of perjured testimony must have "reasonable likelihood" that the jury's judgment was affected); *Bagley*, 473 U.S. at 678 (same). Although that statement seems to define narrower protection than that recognized in *Giglio*, the Court has never suggested that *Giglio* is no longer good law, and the question of false testimony was not before the Court when it phrased the standard narrowly. *Compare Giglio*, 405 U.S. at 153-54 (holding that uncorrected testimony, even though falsity is unknown to prosecutor, violates the defendant's right to due process), *with Agurs*, 427 U.S. at 103 (asserting that fairness is trampled by a conviction gained through use of known perjured testimony in a case addressing the nondisclosure of evidence).

233. *See Giglio*, 405 U.S. at 153-55; *cf. Kyles*, 514 U.S. at 438-54 (holding that the failure of the prosecution to disclose exculpatory information known to the police but not to prosecutors violated due process).

234. *Agurs*, 427 U.S. at 104.

235. *See* United States *ex rel.* Smith v. Fairman, 769 F.2d 386, 391-92 (7th Cir. 1985) (declaring that, although unknown to the prosecution at trial, police knowledge of the inoperability of the gun allegedly used in the crime was attributable to the prosecution as nondisclosure); United States v. Antone, 603 F.2d 566, 569-70 (5th Cir. 1979) (stating that, although not material, information known to state investigators should be imputed to federal prosecutors when a joint investigation takes place); United States v. Butler, 567 F.2d 885, 888-89 (9th Cir. 1978) (imputing knowledge to the prosecution of a "probable dismissal" deal with eyewitness made by government agents); United States v. Morell, 524 F.2d 550, 555 (2d Cir. 1975) (declaring that government agents, who knew of witness's role as a government informant and his subsequent dealings with the government, were an "arm of the prosecutor").

Case 1:21-cr-00670-CJN Document 58-26 Filed 04/15/22 Page 42 of 57

fairly evaluate the credibility of their respective accounts, just as it can determine which, if any, alternative theory of the crime is believable. However, the rule is a firm condemnation of governmental reliance on false statements to obtain a conviction or sentence.

To establish a due process violation, the defendant must also demonstrate that the false testimony was material. In *United States v. Bagley*,[236] the Court stated that if the defendant established that the prosecution presented and did not correct false testimony, the falsity will be "considered material unless failure to disclose it would be harmless beyond a reasonable doubt."[237] If, instead, the defendant's claim is based on the prosecution's failure to disclose exculpatory evidence to the defense, the evidence will be considered material only if the defendant establishes that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[238] The standard of materiality is thus easier to satisfy for claims that the prosecution presented false testimony than for cases based on claims that the prosecution failed to disclose exculpatory evidence. That difference reflects the Court's concern with the corrupting influence of the false presentation to the fact finder.

### B. *Presentation of Improper Argument*

Another instructive line of cases encompasses those addressing improper prosecutorial argument. While the decisions do not draw a bright line between proper and improper argument to the jury, they recognize that a prosecutor's argument can violate the defendant's right to due process.[239] Prosecutorial inconsistency is tantamount to improper argument. When the prosecution presents inconsistent positions in separate proceedings, one is necessarily incorrect. The cases addressing improper argument therefore help define the due process violation represented by prosecutorial inconsistency.

In *Miller v. Pate*,[240] the Court condemned the prosecution for deliberately misrepresenting the truth throughout the trial.[241] In argument, as well as in other aspects of the trial, the prosecutor represented that stains on a pair of shorts introduced against the defendant were blood, even though the prosecutor knew they were paint.[242] The Court overturned the defendant's

---

236. 473 U.S. 667 (1985).
237. *Id.* at 680.
238. *Id.* at 682.
239. *See* Zacharias, *supra* note 39, at 96-97 (commenting on the lack of clear standards to aid prosecutors in striking a balance between zealous argument and "overargument" rising to misconduct).
240. 386 U.S. 1 (1967).
241. *Id.* at 3-6.
242. *Id.*

death sentence in *Caldwell v. Mississippi*[243] because the prosecutor told the jurors that their decision would be reviewed for correctness, and thus they should not be swayed by defense counsel's argument that they were responsible for the defendant's life.[244] The Court emphasized that the prosecutor misstated the jury's role and was not corrected by the court.[245]

In *Donnelly v. DeChristoforo*,[246] the Court considered but rejected the defendant's argument that the prosecutor's argument violated his right to due process. In his argument, the prosecutor stated, "They (the defendant and his counsel) said they hope that you find him not guilty. I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder."[247] The Court pointed to several reasons why the prosecution's argument did not violate the defendant's rights.[248] First, the Court concluded that the remark was ambiguous, so the jury would not necessarily have drawn the improper inference of which the defendant complained and questioned his motives for standing trial.[249] Second, the improper comment was "one moment in an extended trial."[250] The trial court immediately responded with cautionary instructions to reduce the impact of the comment on the jury.[251] As a result, the defendant had not met the standard for determining whether improper remarks by the prosecutor violated due process: that the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[252]

These decisions recognize the influence that a prosecutor can exert over the jury. Although juries are routinely instructed that what an attorney says is not evidence, courts realize that an attorney's words are designed to and actually may influence the jury. The likelihood of influence is greater when the attorney is a prosecutor because they enjoy "unique prestige and symbolic power."[253] The prosecutor comes before the jury as the representative of the state, rather than a hired gun for a particular client.[254] As a result, a prosecutor who oversteps the bounds of proper argument violates

243. 472 U.S. 320 (1985).

244. *Id.* at 328-30 (reinforcing principle that jury has "'awesome responsibility'" as sentencer whose discretion is necessary for Eighth Amendment "'need for reliability in the determination that death is the appropriate punishment in a specific case'") (quoting Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (plurality opinion)).

245. *Id.* at 333.

246. 416 U.S. 637 (1974).

247. *Id.* at 640.

248. *Id.* at 643-48.

249. *Id.* at 643-44.

250. *Id.* at 645.

251. *Id.* at 644.

252. *Id.* at 643 (rejecting the claim that the prosecutor's remarks regarding the defendant's expectations for the jury's verdict met the standard).

253. Zacharias, *supra* note 39, at 59.

254. *See id.* (arguing that prosecutor "commonly carries more influence with juries than attorneys allied solely with individual clients").

the rights of the defendant unless the court takes appropriate remedial action.

### C. *Applying Due Process Analysis to Prosecutorial Inconsistency*

The courts should conclude that prosecutorial inconsistency violates the defendant's right to due process if there is any reasonable likelihood that the inconsistent position influenced the outcome of the case. First, prosecutorial inconsistency, advancing a position inconsistent with one advanced at an earlier proceeding, creates a false impression that threatens the truth-finding process. Second, by analogy to the false testimony cases, the defendant should receive relief if there is any reasonable likelihood that the outcome was influenced by the inconsistent positions.

When the prosecution argues inconsistent positions in separate trials, the false statement of the prosecutor threatens to corrupt the proceeding in the same way as the false testimony of a witness. Perjury is not involved; the jury will be told that the statements of counsel are not testimony,[255] and the prosecutors are not sworn during the proceedings. Nevertheless, falsity in either guise undermines, and even may destroy, the accuracy of the truth-finding process, whether the truth finder is a jury or a judge. Moreover, the prosecutor's falsity is difficult to attack. The prosecutor enjoys presumptive credibility in the eyes of the jury and, unlike witnesses who take an oath and are subject to testing through cross-examination and impeachment, the prosecutor is rarely specifically so challenged.[256]

The two lines of due process analysis discussed above should guide the courts' analysis of prosecutorial inconsistency.[257] When the prosecution takes inconsistent positions in separate proceedings, absent an explanation, only one of them can be correct. In one of the cases, then, the prosecution has advanced a false impression. In some cases, the prosecution rests its position on such inconsistent testimony that the case may fit conventional false testimony analysis.[258] In other cases, false testimony is not involved. Rather, the inconsistency flows from changes in testimony or from the spin placed on the facts by the prosecutors.[259] Nevertheless, the prosecution's

---

255. 1A KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 12.03 (5th ed. 2000) (noting the standard instruction that arguments of counsel are not evidence).

256. *See* Berger v. United States, 295 U.S. 78, 88 (1935) ("[T]he average jury . . . has confidence that [the] obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed."); United States v. Gonzalez-Vargas, 558 F.2d 631, 633 (1st Cir. 1977) ("[T]he representative of the government approaches the jury with the inevitable asset of tremendous credibility . . . .").

257. *See* Jacobs v. Scott, 513 U.S. 1067, 1067 (1995) (Stevens, J., dissenting) (advocating a due process analysis that requires the reversal of death sentences based on a "factual determination that the State has formally disavowed").

258. *See supra* notes 224-238 and accompanying text.

259. *See, e.g.*, Nichols v. Scott, 69 F.3d 1255, 1268 (5th Cir. 1995) (discussing the prosecutor's use of different interpretations of the same evidence at separate trials of the defendant and codefendant

creation of a false impression should entitle the defendant to due process relief.

A number of cases report inconsistencies that amount to false statements by the prosecution. In *Beathard v. Johnson*,[260] for example, two defendants, Beathard and Hathorn, were tried separately for murder.[261] The trial court found that in separate proceedings the prosecutor asserted three different positions concerning the roles of the two defendants.[262] At Beathard's trial, the prosecutor argued that Beathard "entered the trailer and killed the family while Hathorn remained outside."[263] At Hathorn's trial, the prosecutor argued that Hathorn probably entered the trailer and killed his family while Beathard remained outside.[264] Finally, at the state habeas corpus hearing, the prosecutor suggested that Beathard fired one shot through the window at Hathorn's father with a shotgun and that both men fired shots inside of the house.[265]

Similarly, in *Thompson v. Calderon*,[266] where two defendants were tried separately for a murder following a rape, the prosecutor argued at Thompson's trial that no evidence placed his codefendant, Leitch, in the apartment where the murder took place and that Thompson was the only person in the apartment with the victim.[267] At the codefendant's trial, however, the prosecutor argued that, "all of the evidence we have incriminates Mr. Leitch, at best, equally and more so than Mr. Thompson .... Both men were together inside that apartment with [the victim]."[268]

---

to assert that each fired the single, fatal shot); Parker v. Singletary, 974 F.2d 1562, 1578 (11th Cir. 1992) (declaring that not "necessarily contradictory evidence" was the basis for "inconsistency . . . in the state's alternative arguments"); Drake v. Francis, 727 F.2d 990, 994 (11th Cir. 1984) (noting the prosecutor's characterization of the defendant's presence at the murder scene in the codefendant's trial as a secondary role while later in the defendant's trial using codefendant's weakened physical state to infer the defendant's role was primary); Littlejohn v. State, 989 P.2d 901, 908 (Okla. Crim. App. 1998) (noting that the absence of physical evidence of actual shooter's identity enabled the prosecutor to argue inconsistently in separate trials that the codefendant, and then later the defendant, was the triggerman).

260. 177 F.3d 340 (5th Cir. 1999).

261. *Id.* at 342-44.

262. *Id.* at 344.

263. *Id.*

264. *Id.*

265. *Id.* at 344.

266. 120 F.3d 1045 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998).

267. *Id.* at 1057.

268. *Id. See also* Stephen Reinhardt, *The Anatomy of an Execution: Fairness vs. "Process,"* 74 N.Y.U. L. Rev. 313 (1999) (discussing *Thompson* in detail). Another example is *Nichols v. Collins*, 802 F. Supp. 66 (S.D. Tex. 1992), in which the district court ordered relief because the prosecutor had knowingly used false evidence, but was reversed by the court of appeals. The district court identified numerous inconsistencies between the prosecution's positions at the first and second trial. *Id.* at 72-74. For example, the prosecutor argued in Williams's trial, "[T]here is only one bullet that could possibly have done it [killed the victim] and that was Willie Williams [sic]," whereas in Nichols's trial the prosecutor argued, "Willie could not have shot him." *Id.* at 73 (alteration in original). At Nichols's capital sentencing hearing, the prosecutor argued that it was unfair and unequal for Williams to be on death row "when this man [Nichols] planned the whole thing and fired the shot." *Id.* at 73. *See also*

In each of these cases, as in other instances of prosecutorial inconsistency, the prosecution exploited separate trials to sway separate fact finders to infer diametrically opposed conclusions from the evidence. Some judges have reasoned that prosecutorial inconsistency violates due process in the same way as the presentation of false testimony.[269] In *Thompson*, the Ninth Circuit, sitting en banc, considered a claim of prosecutorial inconsistency.[270] In a decision that generated seven opinions, a majority of the court held that Thompson was entitled to relief.[271] A plurality of the court concluded that the prosecution's inconsistency violated the rights of Thompson, the first-tried defendant.[272] The plurality reasoned that due process prohibits prosecutorial inconsistency, stating that the rule was "well-established" and citing, among other authorities, the decisions prohibiting the presentation of false testimony.[273] In *Drake v. Kemp*,[274] the prosecutor advanced opposing factual accounts at the two trials and, therefore, must have known that one was false.[275] Judge Clark argued in concurrence that the sequence of events forced the conclusion that the prosecutor did not believe the testimony on which Drake's conviction rested, "bringing the case under the logical if not actual factual framework of *Mooney* and *Napue*."[276]

Other judges have been altogether unreceptive to the argument that prosecutorial inconsistency violates due process.[277] Some courts have refused to hold prosecutorial inconsistency unconstitutional on the ground

---

State v. Fondren, 810 S.W.2d 685, 686 (Mo. Ct. App. 1991); discussion *supra* notes 13-15 and accompanying text.

269. *See* cases cited *supra* note 223.

270. 120 F.3d 1045.

271. *Id.* at 1059-60. The favorable holding was reversed by the Supreme Court on grounds unrelated to this discussion. Calderon v. Thompson, 523 U.S. 538, 565-66 (1998).

272. *Thompson*, 120 F.3d at 1059.

273. *Id.* at 1058.

274. 762 F.2d 1449 (11th Cir. 1985).

275. *See id.* at 1452-55 (reporting that the prosecutor's theory portrayed the defendant's role as primary at one trial and secondary at the other trial).

276. *Id.* at 1479 (Clark, J., concurring). The assertion that the prosecutor must believe the testimony seems to overstate the constitutional requirement. *See id.* The constitution bars presentation of false evidence if the government possesses the contrary information but does not mandate presentation only of evidence the prosecutor actually believes. *See Thompson*, 120 F.3d at 1074 (Kleinfeld, J., dissenting) (remarking that "there is no reason to think the prosecutor knew . . . [the] theory he presented was false, when he presented it"); *see also* Napue v. Illinois, 360 U.S. 264, 269 (1959); Alcorta v. Texas, 355 U.S. 28, 31 (1957); Mooney v. Holohan, 294 U.S. 103, 112-13 (1935). *But see* Durley v. Mayo, 351 U.S. 277, 290-91 (1956) (Douglas, J., dissenting) (arguing that once the state learned that the conviction rested on false testimony, due process mandated a hearing on the prisoner's habeas corpus petition).

277. *See, e.g.*, United States v. Kattar, 840 F.2d 118, 128 (1st Cir. 1988) (rejecting the argument that testimony at odds with the government position was false or perjured and concluding that "the government's inconsistent positions do not rise to the level of constitutional error"); State v. Roach, 680 A.2d 634, 640-41 (N.J. 1996) (rejecting a due process violation claim where the prosecutor argued inconsistently from the same evidence at separate trials of codefendants because the evidence to which jurors were exposed could support different inferences).

that the prosecutor's arguments are not evidence.[278] Although this takes the cases out of the strict holding of *Giglio*,[279] it does not eliminate the constitutional problem.

The cases recognizing that improper argument may violate the constitution are instructive.[280] The courts should recognize that when the prosecution attempts to sway separate juries, adopting factually inconsistent positions in argument and questioning at separate trials, the fairness of the proceedings is threatened. In *People v. Watts*,[281] rejecting the defendant's plea for relief from prosecutorial inconsistency, the court noted that the prosecutor argues "not that a particular set of facts is the true set of facts; but that the evidence shows that a particular set of facts is the true set of facts."[282] Unfortunately, the jury is unlikely to appreciate this fine distinction. When the prosecutor advocates a particular position based on the evidence, she puts her credibility and that of her office behind that position. If the prosecution successfully advanced a different position in an earlier trial before a different fact finder, the prosecutor creates a false impression, taking advantage of the separation of the defendants to put the credibility of the government behind inconsistent theories in separate proceedings.

A number of courts have expressed willingness to consider claims of prosecutorial inconsistency while rejecting defendants' attempts to invoke protection on the ground that no inconsistency exists.[283] In some cases, courts would have found an inconsistency had it scrutinized the prosecution arguments more carefully. Courts often simply conclude that the prosecution's broad theories are consistent without closely examining the

---

278. *See, e.g.*, Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir. 1999); Nichols v. Scott, 69 F.3d 1255, 1274 (5th Cir. 1995); *see also Thompson*, 120 F.3d at 1074 (Kleinfeld, J., dissenting) (recalling the standard jury instruction that counsel's arguments are not evidence).

279. 405 U.S. 150, 154-55 (1972) (finding a due process violation where perjured testimony is presented, regardless of the prosecutor's knowledge of falsity).

280. *See* Caldwell v. Mississippi, 472 U.S. 320, 322 (1985) (asserting that the prosecutor's argument, that the jury would not be responsible for death penalty sentence because the decision would be reviewed, violated the Eighth Amendment); Miller v. Pate, 386 U.S. 1, 3-7 (1967) (holding that the prosecutor's representation of red stains on shorts as blood, when he knew they were paint, violated due process). *But see* Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974) (noting that ambiguous remarks made by the prosecution did not violate due process).

281. 91 Cal. Rptr. 2d 1 (Cal. Ct. App. 1999).

282. *Id.* at 10.

283. *E.g.*, United States v. Antosh, 172 F.3d 877 (9th Cir. 1999) (unpublished table decision) (declaring no inconsistency in the prosecutor's underlying theory of conspiracy when only a time discrepancy existed); United States v. Hemmingson, 157 F.3d 347, 356 (5th Cir. 1998) (asserting no inconsistency with regard to the representation of a company as the victim in one jurisdiction and the defendant as the victim in another, pointing to word choice of "shareholders" versus "company"); United States v. Shea, 150 F.3d 44, 52 (1st Cir. 1998) (stating no inconsistency of position existed when the government argued at the detention hearing that the gun was the codefendant's and at trial that it was the defendant's); State v. Lavalais, 685 So. 2d 1048, 1056 (La. 1996) (reconciling an alleged inconsistency as a mere difference in emphasis at separate trials).

specific positions the prosecution advanced to support those positions.[284] In many prosecutorial inconsistency cases, the prosecution relies on a broad and consistent theory that both defendants participated in the crime and share culpability.[285] Simultaneously, however, the prosecution advances narrower and inconsistent theories in separate trials, by claiming in each that the particular defendant is the more culpable and thus milking the case to maximize the chance of convicting each defendant on all charges and severely punishing each defendant.[286]

In *Drake v. Francis*,[287] for example, the court glossed over the fact that at Campbell's trial the prosecutor had argued that Campbell actually struggled with and killed the victim, whereas, later at Drake's trial, the same prosecutor argued that Drake must have assisted in the struggle because Campbell was too infirm to have done it alone.[288] The court upheld Drake's conviction and death sentence, rejecting the argument that the prosecution had impermissibly relied on inconsistent theories because in each trial the prosecution argued that both defendants were involved in the murder-robbery.[289] Thus, the prosecution's theory that both defendants

---

284. *See, e.g.*, *Hemmingson*, 157 F.3d at 356 (rejecting the argument without discussing the specifics of the prosecution's theory in the separate trials).

285. *E.g.*, Parker v. Singletary, 974 F.2d 1562, 1578 (11th Cir. 1992) (declaring, due to the uncertainty of the evidence, that presentation of alternate theories of facts for each defendant in separate trials was proper); Drake v. Kemp, 762 F.2d 1449, 1456 (11th Cir. 1985) (stating that both defendants "were present . . . and participated in the beating and killing").

286. *See, e.g.*, State v. Flowers, 489 S.E.2d 391 (N.C. 1997) (rejecting a claim of prosecutorial inconsistency on the grounds that the prosecution proved in each trial that all defendants were equally culpable; the court did not address the defendant's claim that the prosecution labeled him a mere lookout in trial of codefendants but in his own trial argued that he stabbed the victim); State v. Roach, 680 A.2d 634, 640 (N.J. 1996) (stating that "the prosecutor is entitled to present the strongest case against each defendant" and that it is proper to present inconsistent theories if both can be drawn from the evidence).

287. 727 F.2d 990 (11th Cir. 1984).

288. *Id.* at 994.

289. *Id.* at 994. A similar example is *United States v. Fuentes*, 18 M.J. 41 (C.M.A. 1984), where the Court of Military Justice reversed the Court of Military Review's determination that the prosecutor had improperly allowed a false impression to go uncorrected. *Id.* at 54. *Fuentes* arose from a near-fatal assault. *Id.* at 42. The prosecution first tried codefendant Cyr on the theory that he aided and abetted defendant Fuentes in the assault. *Id.* at 42. At Cyr's trial, the victim, a weak witness, testified concerning the assault, and Cyr testified in his own defense. *Id.* at 46-47. He recounted a self-serving version of the events in which he came upon Fuentes and the victim struggling and attempted to break them up. *Id.* at 47. At Cyr's trial, the prosecutor argued that Cyr's testimony was "improbable, contradictory, and . . . fabricated." *Id.* at 47. Cyr was convicted, sentenced, then immunized by the prosecution and ordered to testify against Fuentes. *Id.* at 42-43, 47-48. At Fuentes's trial, the prosecution did not call the victim, but relied instead on Cyr's testimony. *Id.* at 48. Although Cyr provided the same account of the events, the prosecution now embraced Cyr's credibility and argued successfully that Fuentes had used excessive force. *Id.* at 49-50. The Court of Military Justice emphasized that Cyr's testimony was consistent with the prosecution theory of Fuentes' criminal liability. *Id.* at 50. The court did not, however, evaluate the constitutionality of the prosecution condemning the account as false in the first trial, where it tended to exculpate the first defendant, and endorsing it as true in the second, where it provided a plausible theory on which to convict the second defendant. The two positions could be reconciled if the portions of the testimony condemned as false in

were involved bridged the two trials, but the prosecution advanced inconsistent theories on the question of physical involvement in the murder, a likely key to winning a death penalty, positioning the prosecution to maximize its advantage in each trial.[290] This inconsistency violated due process, and the court should not have allowed the prosecution to escape that conclusion by pointing to its broad consistent arguments. Instead, the court should have given relief based on the specific inconsistency.

Courts should find a due process violation even if the prosecutor in the second proceeding was personally unaware of the prior inconsistent government stance. Although some reported instances of prosecutorial inconsistency involved the same prosecutor making conflicting arguments in separate trials, many cases involve a different prosecutor making the inconsistent argument in the second case.[291] The change in personnel should not alter the due process analysis. A change in personnel eradicates neither the unfairness of espousing inconsistent positions nor the threat to the integrity of the justice system and, therefore, should not defeat a claim for relief. The prosecutor's knowledge is pertinent to whether there is an ethical violation, but it should not draw the discussion away from the core issue in due process analysis, which is the fairness of the process. The courts should apply the rule of attribution established in *Giglio* to cases of prosecutorial inconsistency as well.[292] Where the prosecutor was oblivious to the

---

the first trial were not important to the conviction in the second trial. Nonetheless, the question of inconsistent factual positions should have been raised and addressed. The court emphasized the consistency of the evidence presented at the two trials but disregarded the inconsistency of the prosecutor's stance. *See id.* at 52-53.

290.  Judge Clark provides a thorough evaluation of the prosecution's arguments in his concurring opinion to the en banc decision reversing Drake's conviction on other grounds. *See* Drake v. Kemp, 762 F.2d at 1470 (Clark, J., concurring). Judge Clark quotes the closing argument from Campbell's trial, in which the prosecutor stated, "It is my thoughts [sic] on this evidence that this is the actual slayer, Mr. Campbell is, of [the victim]." *Id.* at 1472. Once Campbell was convicted, the prosecutor argued for the death penalty, saying that Campbell "killed his victim." *Id.* at 1472. In that trial, the jury responded to the prosecution's arguments by convicting Campbell on the charges and recommending the death penalty and rejected Campbell's self-serving testimony that Drake had committed the crime single-handedly. *Id.* at 1471. At Drake's trial, Campbell testified for the prosecution and again offered a self-serving version of the crime, laying all responsibility on Drake. *See id.* at 1472. Campbell was the only witness who linked Drake to the crime, and his testimony at the two trials contained numerous inconsistencies. *Id.* at 1472-75. The prosecutor then argued that Campbell could not have overcome the victim without help from Drake, emphasizing that Drake must have played a physical role in killing the victim. *Id.* at 1475. Drake was convicted and sentenced to death. *Id.* at 1475; *see also* Daniels v. State, 534 So. 2d 628, 639-40 (Ala. Crim. App. 1985) (concluding there was no inconsistency because both triggerman and nontriggerman could be guilty of capital murder; court did not examine prosecution positions advanced at separate trials).

291.  *E.g.*, Beathard v. Johnson, 177 F.3d 340, 344 (5th Cir. 1999) (observing that the prosecutor was the same for both trials); Nichols v. Scott, 69 F.3d 1255, 1262 (5th Cir. 1995) (same); State v. Roach, 680 A.2d at 637 (same). *But see, e.g.*, Parker v. Singletary, 974 F.2d 1562, 1577 (11th Cir. 1992) (noting a separate prosecutor appeared at each trial).

292.  Later cases have reaffirmed this application of due process protection. *See* Smith v. Phillips, 455 U.S. 209, 219 (1982) (noting that the "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"); United

falsity of the testimony, knowledge of the inconsistency should be imputed to the later prosecutor.[293] The prosecutor's office is a single entity, and the due process violation exists "irrespective of good faith or bad faith."[294]

*1. Establishing Prejudice*

In order to demonstrate a violation of due process, the defendant generally must demonstrate some form of prejudice.[295] The courts should adapt the standard from false testimony cases and hold that the defendant is entitled to relief if there is any reasonable likelihood that the inconsistent position influenced the outcome of the case. The impact on the proceeding is far more like that of false testimony than of inflammatory argument. In the decisions defining the prosecutor's duty to correct false testimony and to disclose exculpatory evidence, the Court has implemented the prejudice requirement through the requirement that the defendant demonstrate the materiality of the falsity or exculpatory evidence.[296] The definition of materiality varies with the nature of the violation.[297] When the violation is presenting or failing to correct false testimony, the Court has stated that the false testimony is material and the defendant is entitled to relief if there is any reasonable likelihood that the falsity influenced the outcome of the case.[298] Because prosecutorial inconsistency corrupts the process in the same manner as false testimony, the same standard should apply, and the defendant should receive relief if there is any reasonable likelihood that the prosecution's inconsistent position influenced the outcome.[299]

The courts should not derive the test from the standard applied in improper argument cases, whether the impropriety "so infected the trial with

---

States v. Kattar, 840 F.2d 118, 127 (1st Cir. 1988) (stating that "[i]t is immaterial that the particular prosecutor in this case may not have known about the evidence"); Reiss, *supra* note 194, at 1410 n.214 (stating that the court will impute knowledge of one prosecutor to another). *See also* United States v. Agurs, 427 U.S. 97, 103 (1976) (stating that the rule applies if the prosecutor "knew, or should have known, of the perjury").

293. Giglio v. United States, 405 U.S. 150, 154 (1972).

294. *Id.* at 153 (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)).

295. *See, e.g., Kattar*, 840 F.2d at 128-31 (concluding that the government's conduct did not cross the "threshold of materiality"); State v. Nunley, 923 S.W.2d 911, 925-26 (Mo. 1996) (stating that the "defendant fails to demonstrate any prejudice; therefore, there is no lawful basis to reverse").

296. *See Smith*, 455 U.S. at 221 (commenting that convictions may be overturned, not merely when government actions are undesirable or erroneous, but when constitutional error occurs) (citing Cupp v. Naughten, 414 U.S. 141, 146 (1973)); *Agurs*, 427 U.S. at 112-13 (commenting on the standard of materiality that must be met to find constitutional error); Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974) (granting certiorari only to evaluate whether the prejudicial extent of the prosecutor's remarks violated due process); *Brady*, 373 U.S. at 87 (holding that suppression violates due process "where the evidence is material").

297. *See* United States v. Bagley, 473 U.S. 667 (1985).

298. *See Bagley*, 473 U.S. at 678-80; *Agurs*, 427 U.S. at 103; *see also* Gilday v. Callahan, 59 F.3d 257, 267-68 (1st Cir. 1995) (analyzing the standards applied to false testimony concerning materiality).

299. *See supra* notes 228-235 and accompanying text.

unfairness as to make the resulting conviction a denial of due process."[300] That standard is designed to take into account the ways in which a trial court may reduce the impact of the improper argument, and it reflects the Court's holding that improper argument should not be grounds for relief if it was adequately contained and did not taint the entire proceeding. The circumstances that mitigate the impact of improper argument are absent from the prosecutorial inconsistency cases. The inference that the prosecutor asks the jury to draw is clearly stated. The prosecutorial inconsistency pervades the trial; it is not a mere passing improper comment. Finally, the trial court gives no cautionary instructions informing the jury of the threatened inconsistent verdicts or possible falsity; the jury and the judge are altogether oblivious to the inconsistency.

Courts considering claims based on prosecutorial inconsistency have sometimes imposed on the defendant a higher burden than reasonable likelihood. Some courts have declined to remedy prosecutorial inconsistency where the jury might not have decided the case on the basis argued by the prosecution.[301] In *State v. Roach*,[302] for example, four men, including the defendant, were convicted in a robbery and murder.[303] The evidence established that only two of the participants shot the victims, but it was ambiguous about which two.[304] In three separate trials, the prosecution argued that two of the defendant's accomplices were the shooters.[305] In the defendant's trial, however, the prosecutor argued that the defendant and one of his accomplices were the shooters.[306] The court excused this inconsistency because the jurors "were . . . exposed to evidence that permitted different inferences concerning a basis for defendant's criminal guilt" and because the remarks of the attorneys were not evidence.[307] The approach illustrated by *Roach* overlooks the impact of the inconsistent arguments on the separate proceedings.

---

300. *Donnelly*, 416 U.S. at 643.

301. *E.g.*, People v. Watts, 91 Cal. Rptr. 2d 1, 8 (Cal. Ct. App. 1999) (noting that the jury's conclusion that the defendant committed the crime was plausible regardless of the outcome of the codefendant's trial); State v. Roach, 680 A.2d 634, 641 (N.J. 1996) (noting indications that the jury based its verdict on accomplice theory; thus, the inconsistency of the prosecutor's arguments had no weight).

302. 680 A.2d 634 (N.J. 1996).

303. *Id.* at 637.

304. *Id.* at 638-39.

305. *Id.* at 640.

306. *Id.*

307. *Id.* at 641. The court also seemed to view the inconsistency as harmless because the jury's questions suggested that they convicted defendant only on a theory of accomplice liability. *Id.*; *see also* Beathard v. Johnson, 177 F.3d 340, 348 (5th Cir. 1999) (rejecting the prosecutorial inconsistency argument, in part because the jury heard both sides of the story); Parker v. Singletary, 974 F.2d 1562, 1578 (11th Cir. 1992) (concluding that inconsistent arguments were a fair response to uncertain evidence concerning which defendant was the triggerman); Littlejohn v. State, 989 P.2d 901, 909 (Okla. 1998) (concluding that the question of who shot the victim was an appropriate question for the jury in each trial).

In every case where the defendant raises a claim of prosecutorial inconsistency, the court will reach that claim only if the prosecutor has sufficient evidence to convict; if not, the insufficiency of the evidence would require reversal.[308] The question, then, should not be whether the record supports the jury's conclusion, but whether there is any reasonable likelihood that the prosecution's improper inconsistent argument influenced the outcome of the case.[309] When the prosecutor makes inconsistent arguments, often exaggerating to each fact finder the culpability of the defendant whose fate it must decide, the prosecutor's sole purpose is to convince the jury to convict. By swaying the jury in each case to view the particular defendant on trial as the more culpable, the prosecutor lays favorable emotional groundwork and enhances the likelihood that the jury will find the defendant guilty of the most serious offenses charged and that the sentencer, whether judge or jury, will impose the most serious sentence.[310] The mere fact that the uncertainty in the evidence is displayed to the jury should not be viewed as an antidote to the inconsistent argument. Uncertainty about the basis for the jury's verdict should weigh against the prosecution since the prosecution sought the advantage of the inconsistent arguments.

Judge Tashima, concurring in *Thompson v. Calderon*, expressed another view of the prejudice requirement.[311] Although he agreed that prosecutorial inconsistency violates due process, he concluded that no relief was warranted unless the defendant demonstrated that his conviction rested on a false theory.[312] Judge Tashima's approach places too great a burden on the defendant because proving that the basis for the conviction is a false theory may be impossible. Perhaps the evidence is simply so ambiguous that neither of the inconsistent positions can be demonstrated to be false[313] or perhaps the prosecution's presentation of the evidence hopelessly confused the record. By pressing inconsistent positions, the prosecution backed a falsity

---

308. *See* LAFAVE ET AL., *supra* note 9, § 25.4.

309. *See* Kyles v. Whitley, 514 U.S. 419, 434 n.8 (1995).

310. In *Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1995), for example, the prosecutor interviewed jurors after the first trial ended in mistrial. 69 F.3d at 1262. He learned that the question of whether Nichols was the triggerman "'had caused problems for the jury on considering the death penalty.'" *Id.* (quoting Nichols v. Collins, 802 F. Supp. 66, 75 (S.D. Tex. 1992)). In the second trial, the defense emphasized that Nichols had not been the shooter and the prosecution "primarily argued that Nichols fired the fatal shot." *Id.* at 1262. *See also* Nichols v. Collins, 802 F. Supp. at 71 (commenting that the jury can find mitigation more easily for the nontriggerman).

311. *See* Thompson v. Calderon, 120 F.3d 1045, 1064 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998).

312. *Id.*; *see also* People v. Watts, 91 Cal. Rptr. 2d 1, 7 (Cal. Ct. App. 1999) (concluding that the defendant's conviction could stand even though someone else had been convicted of the same conduct because sufficient evidence supported the conviction).

313. *See, e.g.*, Nichols v. Scott, 69 F.3d 1255, 1271 (5th Cir. 1995) ("[I]t was 'factually unknown and evidentiarily improvable who fired the fatal shot.'") (quoting Nichols v. State, 754 S.W.2d 185, 202 n.18 (Tex. Crim. App. 1988).

in at least one of the cases and created the possibility that the juries would arrive at inconsistent results.[314] The prosecution not only persuaded separate juries to validate irreconcilable propositions as true, but also, in doing so, may have raised doubts about the validity of either position. The burden of untangling the case should fall on the prosecution. If the prosecution can convince the court that there is no reasonable likelihood that the falsity influenced the outcome, the prosecution can overcome the due process argument.

The legal tools discussed so far only address the unfairness to the later-tried defendant. Prosecutorial inconsistency, however, is often equally harmful to the first-tried defendant. The prosecution should not be given one free opportunity to manipulate the facts and only brought to task at the later proceedings. The courts should employ the due process principles outlined above to evaluate the impact of the inconsistency on the rights of the first-tried defendant as well as the later-tried defendant and to protect both defendants from improper prosecutorial inconsistency.

## IV
## A Remedy for the First Defendant?

When the prosecution adopts an inconsistent position in a later case, the first-convicted defendant may also suffer injustice because of the inconsistent position that the prosecution advanced in the first trial and later abandoned. The mechanisms for avoiding inconsistency (admission of inconsistent statements, collateral estoppel, and judicial estoppel) come into play only in the second proceeding and so are of no use to the first-prosecuted defendant. Instead, the defendant must simply argue that, in light of the prosecution's changed position, the conviction violates due process. If there is a reasonable likelihood that the position advanced in the first proceeding influenced the outcome and the prosecution does not advance an acceptable explanation for its change in position, the court should grant the defendant relief.

In extreme cases, the prosecutorial inconsistency signals intentional manipulation by the prosecution and is readily characterized as a violation of due process. In *Smith v. Groose*,[315] for example, the court granted relief to the defendant convicted in the first trial on the ground that the prosecutorial inconsistency between the first and second trials violated his right to due process.[316] *Smith*, like many inconsistency cases, represents the

---

314. Judge Kozinski, concurring in *Thompson*, argued that "[i]f the system works as it should, A and B both may be acquitted, but in no event should more than one of them be convicted." *Thompson*, 120 F.3d at 1071 (Kozinski, J., concurring). The cases addressed here are the very cases he argues should never occur.

315. 205 F.3d 1045 (8th Cir. 2000).

316. *Id.* at 1052.

prosecution's attempt to extract maximum convictions and sentences from a somewhat ambiguous set of facts.[317] The court emphasized that the prosecution's positions at the two trials were diametrically opposed, that both versions were known from the outset, and that the same prosecutor tried both cases.[318] The court appeared to view the prosecutor's conduct in the case as tantamount to knowing or reckless use of false testimony.[319] The case did not involve prosecution theories that could be reconciled;[320] nor did it involve a surprise change in a witness's account of the events.[321] Instead, aware that the key witness had given two versions of what happened, "the prosecutor chose" to use one version of the witness's story to convict Smith and then use the other version to convict his codefendant.[322] In the court's view, the prosecution manipulated the evidence, "stack[ing] the deck in his favor."[323] The court not only vacated the conviction, but directed that, if the state retried Smith, it could not rely on the witness's statement to establish Smith's guilt.[324]

In *Thompson v. Calderon,* a plurality of the court took a similar approach and voted to grant relief.[325] The prosecution advanced one theory at the preliminary hearing, abandoned it long enough to portray Thompson as the more culpable of the two defendants in his trial, and then returned to the theory to convict his codefendant.[326] The plurality condemned the prosecution's behavior, stating that "[t]he prosecutor manipulated evidence

---

317. The criminal episode itself had an unusual twist. Smith, a juvenile, went looking for a house to burglarize with his three juvenile companions. *Id.* at 1047. Observing telltale signs of a burglary in progress, they decided to "rob the burglars." *Id.* When one of the juveniles, Dixon, recognized one of the burglars, they spoke and the burglar gave the juveniles permission to take what they wanted from the house; the juveniles then entered the house and stole several items. *Id.* At some point in the course of the two burglaries, the homeowners were murdered. *Id.* at 1047-48. Lytle, one of the juvenile burglars, "cooperated" with the police, first telling them that Cunningham, one of the original burglars, claimed responsibility for the murder and later changing his story to place responsibility on one of the juveniles. *Id.* Only under the second version could Smith be convicted of felony murder. At Smith's trial, then, the prosecutor introduced Lytle's second statement not just to impeach Lytle's testimony but as substantive evidence that the juvenile had committed the murder. *Id.* at 1048. Smith was convicted of all charges and received multiple life sentences. *Id.* The state then proceeded against Cunningham, charging him with the murders, relying on Lytle's testimony consistent with his original statement, and largely ignoring his later statement implicating the juvenile in the murder. *Id.*

318. *Id.* at 1050-52. The court also invoked language describing the unique position of the prosecution in criminal cases. *Id.* at 1049 (describing the role as having "mandates as well as privileges").

319. *See id.* at 1051-52.

320. *See id.* at 1052.

321. *See id.* at 1051.

322. *Id.*

323. *Id.*

324. *Id.* at 1054.

325. 120 F.3d 1045, 1060 (9th Cir. 1997), *rev'd on other grounds*, 523 U.S. 538 (1998).

326. *Id.* at 1056. At the preliminary hearing, the prosecutor presented four jailhouse informants who testified that Thompson's codefendant was the more culpable of the defendants. In Thompson's trial, the prosecutor called two different jailhouse informants to testify that Thompson had confessed to greater involvement in the crime. *Id.* at 1055-56.

and witnesses, argued inconsistent motives, and at [Thompson's codefendant's] trial essentially ridiculed the theory he had used to obtain a conviction and death sentence at Thompson's trial."[327] The plurality rejected the argument that only Thompson's codefendant could claim a due process violation, pointing out that the prosecution's position was consistent in the preliminary hearing and in the codefendant's trial because it deviated only for the sake of maximizing the state's advantage in Thompson's trial.[328] These cases represent the appropriate approach when the prosecution intentionally adopts inconsistent positions to the first defendant's disadvantage.

Other cases are more difficult. Some courts do not view the inconsistency as violating the first defendant's rights at all. When the prosecution can justify the position it advances at the time of first trial, the prosecution's inconsistency emerges only when the prosecution commits itself to the second position. The Seventh Circuit stated, "The offense is not taking inconsistent positions so much as it is winning, twice, on the basis of incompatible positions."[329]

By contrast, in *Drake v. Francis*, the Eleventh Circuit appeared to decide which one of the two inconsistent positions was the true one. The court concluded that the theories at the separate trials were consistent.[330] The court remarked in a footnote, however, that Drake's rights would not have been violated even had the theories been inconsistent.[331] Instead, the court agreed with the state court judge that, if an inconsistency prejudiced anyone, it was the first-tried defendant because he "was convicted and sentenced to death by a prosecution that contended on another day that he was too old and sick and weak to commit the crime."[332]

When confronted with a situation in which there is a chance that the first-tried defendant was prejudiced by later prosecutorial inconsistency, the court must attempt to determine the reason for and the significance of that inconsistency. First, if the inconsistency arises from the discovery of new evidence that mitigates the case against the first defendant, that defendant should receive relief. The prosecution should be required to offer the

---

327.  *Id.* at 1057.
328.  *Id.* at 1059. The plurality noted that the prosecutor appears to have known that his theory at the first trial contradicted the approach he planned to take at the second trial. *Id.* at 1058 n.12.
329.  Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1548 (7th Cir. 1990).
330.  Drake v. Francis, 727 F.2d 990, 994 (11th Cir. 1984). When it reconsidered the case en banc, the court, with the exception of one concurring judge, did not address the question of prosecutorial inconsistency. *See* Drake v. Kemp, 762 F.2d 1449 (11th Cir. 1985).
331.  727 F.2d at 994 n.4.
332.  *Id.* (quoting state habeas judge). In a concurring opinion, Judge Clark disagreed, stating that "[e]ither both defendant's were prejudiced by the prosecutor's actions or neither's were." Drake v. Kemp, 762 F.2d at 1479 (Clark, J., concurring).

first defendant the benefit of the new information.[333] In *People v. Watts*, for example, the court upheld the conviction of the second defendant against an inconsistency argument, noting in part that the evidence available by the time of the later trial suggested that the first defendant had not held the gun.[334] The court should also have required that the prosecution revisit the first defendant's conviction and sentence, rather than allowing the inconsistent results to stand. The prosecution should not be able to justify convicting and punishing two defendants for a single act; if the later prosecution can be explained, then the earlier conviction must fall.

If, however, the change in positions does not signal presentation of false testimony and the court cannot determine which of the two versions is true, the prosecution should lose the benefit of both positions. In such cases, the first defendant should benefit equally with the second. To conclude that only the second-prosecuted defendant deserves relief appears arbitrary, particularly since the order of the trials may result from mere happenstance. Instead, the court should ask whether there is any reasonable likelihood that the prosecutorial position inconsistent with its later stance influenced the outcome of the first trial. If the answer is yes, then the first defendant should be entitled to relief.

In sum, prosecutorial inconsistency harms the first-tried defendant in the same way it harms the later-tried defendant. Due process principles require the courts to scrutinize the prosecution's change in position. If it cannot be justified and there is any reasonable likelihood that the prosecution position abandoned in the later proceeding influenced the outcome of the earlier proceeding, the court must grant relief.

## Conclusion

The problem of prosecutorial inconsistency occurs too often. When it does, the prosecution achieves an unfair advantage by getting the benefit of inconsistent positions in separate proceedings. The result can be unjustly harsh convictions and sentences. The courts must develop effective responses to claims that a prosecutor has presented or is about to present a theory inconsistent with an earlier position.

First, when defendants identify impending prosecutorial inconsistency, courts should recognize the impropriety of such inconsistency and employ available legal tools to prevent or discourage it. Three approaches offer assistance to the courts in eliminating tolerance of such inconsistency. At the very least, courts should admit the prior statements setting out the inconsistent position as party admissions so that the fact finder knows that the prosecution has changed its story. Generally, courts should bar the

333. *Thompson*, 120 F.3d. at 1071 (stating belief that, concerning inconsistent theories, at least one of the verdicts should be modified or set aside) (Kozinski, J., concurring).

334. People v. Watts, 91 Cal. Rptr. 2d 1, 7-8 (Cal. Ct. App. 1999).

prosecution from presenting its inconsistent position. If the doctrine of collateral estoppel is strengthened and the requirement of mutuality is eliminated, it will preclude some types of inconsistency. The doctrine of judicial estoppel, however, is more suited to the problem. The courts should embrace and strengthen that doctrine to prevent the prosecution from relying in a later proceeding on a position inconsistent with one advanced in an earlier proceeding.

Second, in some cases, the defendant discovers that the prosecution's position at the second trial was inconsistent with its position at an earlier trial only after the trial has been completed. In such cases, courts should apply due process analysis to determine whether the prosecution's action violated the defendant's constitutional rights. Courts should determine whether there is any reasonable likelihood that the inconsistent position influenced the outcome. If reasonable likelihood exists, courts should afford the defendant the appropriate relief in the form of a new trial or resentencing hearing.

Finally, even if the question is raised by the first-convicted defendant, courts should evaluate the constitutionality of the prosecution's action and should, in some instances, grant relief. If new evidence favorable to the first-tried defendant prompted the prosecution's change in position, that defendant should be given the benefit of the new evidence. If the prosecution's change in position signals presentation of false or misleading evidence, the defendant is entitled to relief under existing due process principles. Even if the inconsistency does not arise from either of these sources, courts should ask whether the correct position on the evidence can be determined from the evidence available. If the correct position is ascertainable, the court should rule accordingly. Otherwise, courts should again apply due process principles and ask whether there is any reasonable likelihood that the theory later discredited by the adoption of an inconsistent position had an effect on the outcome of the first trial. Courts should grant the defendant relief in cases where the inconsistent theory may have affected the outcome.

By adopting these approaches to prosecutorial inconsistency, courts will better protect the fairness of the criminal justice process. They will deter or remedy unjust results in specific cases and discourage prosecutors from manipulating the evidence in separate proceedings to obtain inconsistent convictions and sentences.