# EXHIBIT EE


An official website of the United States government
Here's how you know


THE UNITED STATES
DEPARTMENT of JUSTICE
ARCHIVES

This is archived content from the U.S. Department of Justice website. The information here may be outdated and links may no longer function. Please contact webmaster@usdoj.gov if you have any questions about the archive site.

# 2055. PUBLIC AUTHORITY DEFENSE

There has been considerable confusion in the law regarding what truly constitutes a defense of governmental authority. There are at least three different defenses that in theory a defendant might assert when he/she alleges that he/she committed the crimes charged in response to a request from an agency of the government. In gauging the appropriate response to rebut the defense, the government should determine which of the defenses actually applies and, if necessary, file the necessary pleadings to have the defendant elect which defense is at issue.

First, the defendant may offer evidence that he/she honestly, albeit mistakenly, believed he/she was performing the crimes charged in the indictment in cooperation with the government. More than an affirmative defense, this is a defense strategy relying on a "mistake of fact" to undermine the government's proof of criminal intent, the mens rea element of the crime. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363-68 (11th Cir. 1994); *United States v. Anderson*, 872 F.2d 1508, 1517-18 & n.4 (11th Cir.), *cert. denied*, 493 U.S. 1004 (1989); *United States v. Juan*, 776 F.2d 256, 258 (11th Cir. 1985). The defendant must be allowed to offer evidence that negates his/her criminal intent, *id*., and, if that evidence is admitted, to a jury instruction on the issue of his/her intent, *id*., and if that evidence is admitted, he is entitled to a jury instruction on the issue of intent. *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995); *United States v. Anderson*, 872 F.2d at 1517-1518 & n. In *Anderson*, the Eleventh Circuit approved the district court's instruction to the jury that the defendants should be found not guilty if the jury had a reasonable doubt whether the defendants acted in good faith under the sincere belief that their activities were exempt from the law.

In *Juan*, the defendant admitted the criminal acts charged against him, but sought to defend by demonstrating a lack of criminal intent, i.e., that he thought he was doing those things in cooperation with the United States government. Specifically, he moved, pursuant to the dictates of Classified Information Procedures Act (CIPA), to use classified information to prove a prior relationship with a government agency in order to prove that his belief of cooperation was reasonable. The court held that

1. ... the mere fact that appellant had, in the past, engaged in the activity he seeks to prove does not insulate him from criminal responsibility for unlawful acts thereafter. . . Yet, the past events tend to make more plausible that which, absent proof of those events, would be implausible. Appellant should be allowed to establish the premise for his claim.

*Id*.at 258.

The second type of government authority defense is the affirmative defense of public authority, i.e., that the defendant knowingly committed a criminal act but did so in reasonable reliance upon a grant of authority from a government official to engage in illegal activity. This defense may lie, however, only when the government official in question had actual authority, as opposed to merely apparent authority, to empower the defendant to commit the criminal acts with which he is charged. *United States v. Anderson*, 872 F.2d at 1513-15; *United States v. Rosenthal*, 793 F.2d 1214, 1236, *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987). The genesis of the "apparent authority" defense was the decision in *United States v. Barker*, 546 F. 2d 940 (D.C. Cir. 1976). *Barker* involved defendants who had been recruited to participate in a national security operation led by Howard Hunt, whom the defendants had known before as a CIA agent but who was then working in the White House. In reversing the defendants' convictions, the appellate court tried to carve out an exception to the mistake of law rule that would allow exoneration of a defendant who relied on authority that was merely apparent, not real. Due perhaps to the unique intent

requirement involved in the charges at issue in the *Barker* case, the courts have generally not followed its "apparent authority" defense. *E.g.*, *United States v. Duggan*, 743 F.2d 59, 83-84 (2d Cir. 1984); *United States v. Rosenthal*, 793 F.2d at 1235-36. If the government official lacked actual or real authority, however, the defendant will be deemed to have made a mistake of law, which generally does not excuse criminal conduct. *United States v. Anderson*, 872 F.2d at 1515; *United States v. Rosenthal*, 793 F.2d at 1236; *United States v. Duggan*, 743 F.2d at 83-84. *But see* discussion on "entrapment by estoppel," *infra*.

The last of the possible government authority defenses is "entrapment by estoppel," which is somewhat similar to public authority. In the defense of public authority, it is the defendant whose mistake leads to the commission of the crime; with "entrapment by estoppel," a government official commits an error and, in reliance thereon, the defendant thereby violates the law. *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994); *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990); *United States v. Clegg*, 846 F.2d 1221, 1222 (9th Cir. 1988); *United States v. Tallmadge*, 829 F.2d 767, 773-75 (9th Cir. 1987). Such a defense has been recognized as an exception to the mistake of law rule. In *Tallmadge*, for example, a Federally licensed gun dealer sold a gun to the defendant after informing him that his circumstances fit into an exception to the prohibition against felons owning firearms. After finding that licensed firearms dealers were Federal agents for gathering and dispensing information on the purchase of firearms, the Court held that a buyer has the right to rely on the representations made by them. *Id*. at 774. *See United States v. Duggan*, 743 F.2d at 83 (citations omitted); but, to assert such a defense, the defendant bears the burden of proving that he\she was reasonable in believing that his/her conduct was sanctioned by the government. *United States v. Lansing*, 424 F.2d 225, 226-27 (9th Cir. 1970). *See United States v . Burrows*, 36 F.3d at 882 (citing *United States v. Lansing*, 424 F.2d at 225-27).

*Federal Rule of Criminal Procedure 12.3*

Regardless of which form of the government authority defense the defendant chooses to pursue, the Federal rules require notice of the defense well in advance of trial. As the following discussion demonstrates, it also offers the government the opportunity to challenge the defense to justify in advance any proposed foray into law enforcement or IC files.

Fed.R.Crim.P. 12.3 is the newest of three rules pertaining to specific defenses and requiring advance notice to the government before being asserted by a defendant. The rule provides as follows, in pertinent part:

1. Notice Of Defense Based Upon Public Authority

    1. (a)(1) A defendant intending to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged offense shall. . .serve upon the attorney for the government a written notice of such intention. . . . Such notice shall identify the law enforcement or Federal intelligence agency and any member of such agency on behalf of which and the period of time in which the defendant claims the actual or believed exercise of public authority occurred....

When the prosecutor has reason to believe that a Rule 12.3 defense is likely to be asserted to a pending indictment, the prosecutor should consider immediate action to force the issue, such as filing a demand for notice pursuant to Rule 12.3(a)(1). The responsive notice, if it is as comprehensive as this section stresses below it should be, will provide the prosecutor with abundant information that can guide that prosecutor's strategy and tactics in preparing for trial.

Moreover, if the responsive notice alleges public authority by an agency of the IC, it most certainly signals that the prosecutor must consider invoking CIPA. With such an invocation will come enormous administrative burdens, both for the prosecutor and for the court, as security clearances must be obtained, proper facilities established for storing classified documents, and potentially innumerable hearings held under sections 4 and 6 of CIPA to determine the admissibility of classified evidence.

When a prosecutor receives a 12.3 notice, he/she should not hesitate, but should respond quickly and aggressively to determine whether there is a true public authority defense at hand, or just a diversionary tactic. If the prosecutor is able successfully to handle the Rule 12.3 issue, he/she may avoid the immense impact on the preparation of the case that is inevitably involved when classified information becomes at risk. The information that follows is offered to assist in that regard.

LEGAL DISCUSSION

Rule 12.3 has been held not to improperly infringe upon a defendant's guarantee against self-incrimination, *United States v. Abcasis*, 785 F. Supp. 1113, 1116-17 (E.D.N.Y. 1992), *rev'd on other grounds*, 45 F.3d 39 (2d Cir. 1995); or upon the defendant's due process rights to reciprocal discovery, 785 F.Supp at 1118; and not to abridge a defendant's right of compulsory process. *United States v. Seeright*, 978 F.2d 842, 848-49 (4th Cir. 1992). In reaching these conclusions, the respective courts have analogized Rule 12.3 to its sister rules, 12.1 and 12.2.

Rule 12.1 provides for pretrial notice to the government of the defendant's intention to offer a defense of alibi. The government carries the burden of triggering the notice requirement through a written demand served upon the defendant specifying the time, date, and place of the charged offense. If the defendant intends to offer an alibi defense, he/she must then respond by specifying his/her whereabouts at the time of the offense and by identifying the witnesses whom he/she intends to call to prove his/her alibi. The prosecution must then serve the defendant with notice of those witnesses who will place him/her at the crime scene.

Florida's notice of alibi provision, which is virtually identical to Rule 12.3, was considered and its constitutionality upheld in *Williams v. Florida*, 399 U.S. 78 (1970). Specifically, the Court noted that there is no abridgement of the Fifth Amendment's protection against self-incrimination by requiring a defendant to give notice of intent to assert a defense, as opposed to requiring a defendant to testify in support of that defense. Moreover, the court recognized a strong government interest in avoiding the unfair prejudicial surprise that would occur if the defendant were allowed to assert an alibi defense without warning. *Id*. at 1116-17. The legislative history behind Rule 12.1 reflects that Congress was also concerned that the prosecution not be unfairly surprised at trial by only then learning of the defendant's claim of an alibi. Thus, to avoid unnecessary interruption and delay in the trial while the government conducts an investigation into the alibi, it included advance notice and exchange of witness names as a condition to assert the defense. H.R.Rep.No. 247, 94th Cong., 1st Sess. 8, *re-printed* in 1975 U.S.Code Cong. & Ad.News 674 et seq.; Notes of Committee on the Judiciary House Report No. 941-247. *See* 8 J. Moore, *Moore's Federal Practice* 12.1.02 (2d ed. 1981).

Similarly, Rule 12.2 requires a defendant to give notice to the government of his/her intent to rely on an insanity defense. The Notes of the Advisory Committee on Rules state that

1. [t]he objective [of Rule 12.2] is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony. Failure to give advance notice commonly results in the necessity for a continuance in the middle of a trial, thus unnecessarily delaying the administration of justice.

Like its companion rules, Rule 12.3 is designed to provide the government with reasonable notice that the defendant intends to defend the charges against him in a very unique way, that is, by admitting the crimes but denying criminal intent by claiming that he was authorized to do so by a representative of the government. The purpose of requiring a particularized list of witnesses under any of these unique defense notice rules is to ensure that the defense is a real defense, to avoid prejudicial surprise, and to obviate the need for continuances. In the context of an alibi defense, the courts have held, for example, that, to avoid rendering Rule 12.1 useless, the Rule necessarily requires a reasonable threshold of completeness and specificity. *See United States v. Vela*, 673 F.2d 86, 68-89 (5th Cir. 1982); *United States v. Myers*, 550 F.2d 1036, 1041-43 (5th Cir. 1977). Similar specificity and forthrightness have been held to be required as to notice under Rule 12.2. *United States v. Ruchbinder*, 796 F.2d 910, 915 (7th Cir. 1986)

The same argument must reasonably apply to Rule 12.3. If the intent of the rule is to be accomplished, the defendant who asserts a public authority defense should be required to answer the following questions in his/her Rule 12.3 Notice: Who does the defendant say authorized him to perform the criminal acts with which he is charged? When and where did that authorization occur?

In short, the defendant must be required, as part of his/her notice, to make a prima facie showing of a colorable public authority defense. Mere speculation that the government knew of the defendant's activity is insufficient. Likewise, the claim that the government was fully aware of the defendant's criminal acts, and for whatever reason did not interfere, is simply not public authority. The court in *United States v. Rosenthal*, 793 F.2d 1214 (11th cir. 1986), held that the defense of public authority must depend upon a grant of authority that is real, and not merely apparent. *See also United States v. Lopez-Lima*, 738 F. Supp. 1404 (S.D.Fla. 1990). Moreover, the authority must actually be given, not simply presumed, by the defendant. The imagined specter of some lurking, invisible government presence, coupled with the

fact that the government never interfered with the defendant's criminal activity, is not public authorization. If it were a defense, it would be a haven for the paranoid felon.

In substance, the rule provides:

1. A defendant intending to file a claim of actual or believed exercise of public authority shall serve upon the government a notice of such public authority.
2. The notice shall identify the law enforcement or Federal intelligence agency and any member of such agency on behalf of which defendant claims the actual or believed exercise of public authority occurred. The government must admit or deny the public authority happened.
3. At the time the government responds to the defense claim, the government may make a written demand for the names and addresses of witnesses the defendant intends to rely on to prove the defense.
4. Within seven days after service of the government's demand, the defense must provide the names and addresses of witnesses upon which the defense intends to rely to prove its defense.
5. Seven days after the government receives a list of the defense witnesses, the government must supply a witness list of government witnesses that the government intends to rely on in opposing the defense.

In cases involving CIPA, the government may not want to ask for reciprocal discovery if the government will have to divulge names of undercover intelligence agents.

It cannot be seriously disputed that a defendant should have the opportunity to assert a *fact-based* defense that someone in the government asked him/her to commit the crimes alleged in the indictment for political, diplomatic, or any other reason he cares to offer. But the *quid pro quo* must be that the defendant identifies specifically the person or persons who directly, or even by a "wink and a nod," conferred on his/her authority to act on behalf of the government; and he\she must be required to link any alleged grant of authority to act for the government specifically to one or more of the crimes in the indictment.

[cited in Criminal Resource Manual 2050]

‹ 2054. Synopsis Of Classified Information Procedures Act (CIPA)    up    2056. Preparation Of Witnesses Whose Testimony May Involve Classified Information ›

*Updated January 17, 2020*