**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE***
**TO EXCLUDE EVIDENCE OF DEPARTMENT OF JUSTICE**
**OPINIONS AND WRITINGS [DOC. 52]**

On April 15, 2022, the Government filed a Motion *In Limine* to Exclude Evidence of

Department of Justice Opinions and Writings [Doc. 52].  The Government's motion is a

meritless further attempt to deny Mr. Bannon defenses to the charges against him in this case that

he is entitled to raise as a fundamental matter of due process of law and the right to a fair trial,

guaranteed to him and every other citizen under the Fifth and Sixth Amendments to the United

States Constitution.  The Government's motion confirms what it has made clear at various

junctures in this case – it would like to deny Mr. Bannon any and all legally cognizable and

constitutionally guaranteed factual and legal defenses to the charges against him and it would

like the Court to put its imprimatur on that effort.  The Government's motion has no merit and

must be denied.

Based on the history of at least six decades in which the very agency prosecuting this

case has had an unequivocal, official, formalized, published, and adopted policy licensing and

supporting the position Mr. Bannon took vis a vis the subpoena at issue and making clear the

inapplicability of the criminal contempt of congress statute to a person so situated, with

executive privilege having been invoked, and as a matter of equity, the Government should be estopped from filing and pursuing such a motion and from prosecuting this case altogether.[1]

The Government's motion either reflects its continuing fundamental misunderstanding of the legal principles attending the defenses of public authority and entrapment by estoppel or an intentional effort to mislead the Court with respect to those legal principles and the relevant facts.  In either case, its efforts must be soundly rejected and the motion must be denied. The motion is substantively without merit as will be demonstrated herein and as the previously filed Motion to Dismiss [Doc. 59-1], which anticipated these arguments, demonstrates.

Mr. Bannon incorporates herein by reference all previous filings and argument presented in this case and respectfully draws the Court's attention to Pages 16-48 of his previously filed Motion to Dismiss [Docs. 58 and associated exhibits; 59-1] and the authority cited therein.  Mr. Bannon's Motion to Dismiss fully addresses the meritless claims made in the Government's motion at bar.  Nevertheless, he will address herein each claim made by the Government in its

---

[1] *See e.g.*, Lundquist, John W. (1997) *"They Knew What We Were Doing?": The Evolution of the Criminal Estoppel Defense*, William Mitchel Law Review: Vol. 23: Iss. 4, Article 1. ("*Lundquist Article")* https://open.mitchellhamline.edu/cgi/viewcontent.cgi?article=2003&context=wmlr *See Id.* at 847 *quoting from Raley v. Ohio*, 360 U.S. 423 , 438 (1959) (… "the conviction of the defendants for contempt as a result of invoking the Fifth Amendment was 'the most indefensible sort of entrapment by the State – convicting a citizen for exercising a privilege which the State clearly told him was available to him.'"); *Id.* at 848*, referring to Cox v. Louisiana*, 379 U.S. 559, 571 (1959), and characterizing such conduct as "an indefensible sort of entrapment by the State." *Id.* at 848-849, *referring to and quoting from*, *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 674, and the defendant's reliance on written agency regulations, ("[T]o the extent the regulations deprived [the defendant] of fair warning as to what conduct the Government intended to make criminal, we think there can be no doubt that traditional notions of fairness inherent in our system of criminal justice prevent the Government from proceeding with this prosecution."). *See also, Applying Estoppel Principles in Criminal Cases*, 78 Yale L.J. 1046 (1969); Anne Bowen Poulin, *Prosecutorial Inconsistency, Estoppel, and Due Process: Making the Prosecution Get Its Story Straight*, 18 Cal. L. Rev. 1423 (2001); [Doc. 59-1 at 37; Docs. 58-25; 58-26].

2

motion *in limine*, while trying, to the fullest extent possible, to limit the degree to which the Court is burdened with redundancy from the Motion to Dismiss.

At the outset of its argument, the Government bafflingly asserts, without citing any authority or offering any explanation, that "[D]epartment records evaluating the contempt statute and Congress's subpoena power in the face of a valid assertion of executive privilege cannot be used (to support defenses of entrapment by estoppel, public authority, or a lack of intent)."  [Doc. 52 at 3].  This is an absurd and patently erroneous assertion and need not be dignified by being separately addressed.  Mr. Bannon's motion to dismiss more than sufficiently demonstrates otherwise.  [Doc. 59-1 at 16-39].[2]

**The Government's Argument on Relevance is Inapposite.**

On Page 3 of its Motion, the Government writes "Only relevant evidence is admissible at trial."  [Doc. 52 at 3].  This, assertion, on the other hand, is unassailably correct; but it certainly does not advance the Government's argument at all.

Government counsel prove throughout their motion *in limine*, once again, that they have a fundamental misunderstanding of public authority and entrapment by estoppel defenses and

---

[2] At Pages 2-3 of their motion *in limine*, Government counsel list what they purportedly understand to be Mr. Bannon's claims regarding the relevance of the OLC Opinions and other DOJ writings [Doc. 52 at 2-3].  Notably absent from its list is the relevance of the OLC Opinions and other DOJ writings to the conceptually independent Due Process concern of notice or fair warning concerning what conduct will subject a person to criminal liability – a fundamental requirement of Due Process and "traditional notions of fairness inherent in our system of criminal justice."  *United States v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 655, 670-675 (1973); *Cox v. Louisiana*, 379 U.S. 559, 571-572 (1966); *Raley v. Ohio*, 360 U.S. 423, 437-442 (1959).  The OLC Opinions and other DOJ writings Mr. Bannon has cited throughout these proceedings and especially in his motion to dismiss are vitally important and directly relevant on this issue and, indeed, support the dismissal of the indictment.  *United States v. Levin*, 973 F.2d 463 (6th Cir. 1992).

their core relationship to due process of law.  This fundamental misunderstanding is displayed even in their discussion of relevancy.

The Government cites to the decision in *United States v. Smith*, 568 U.S. 106, 110-112 (2013) for the proposition that "where a defendant wishes to raise an affirmative defense that does not negate the elements of the offense, but justifies its commission, the defendant bears the burden of proof."  [Doc. 52 at 4].  Putting aside the difficulty understanding how such a proposition bears directly on a question of "relevance" or the admissibility of evidence, *Smith* is completely inapposite.  In *Smith*, Justice Scalia explained that it is permissible to require a defendant who claims to have withdrawn from a conspiracy prior to the end of the conspiracy (for purposes of calculating the statute of limitations) to bear the burden of proving the same. That conclusion was based, in significant part, on the undeniable principle that a "withdrawal," by definition, presupposes the commission of the criminal conspiracy and it is a crime that continues beyond the withdrawal.  The withdrawal simply limits the individual defendant's liability for post-withdrawal acts of his co-conspirators, but the person "remains guilty of conspiracy."  *Id*. at 111.  In sharp contrast, with public authority and entrapment by estoppel, a criminal conviction is absolutely prohibited as a matter of due process of law when the conduct at issue has been authorized or the defendant reasonably believes it to have been authorized as legal.  *See e.g., Raley v. State of Ohio*, 360 U.S. 423, 439 (1959).

In any event, evidence of the facts and sources supporting the defenses of public authority – actual and apparent - and of entrapment by estoppel are directly relevant in this case under any formulation of relevancy under the Federal Rules and such facts and sources are clearly admissible on the record in this case.

Moreover, notwithstanding the Government's efforts at every juncture to try and prevent Mr. Bannon from presenting any defense to the jury, our Constitution requires that he be permitted to present his complete defense, supported by the evidence, as a matter of due process and the right to a fair trial found in its Fifth and Sixth Amendments.  *See e.g., Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Crane v. Kentucky*, 476 U.S. 683 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Tellingly, in *United States v. House of Representatives*, 556 F. Supp. 150, 153 (D.D.C. 1983), this Court expressly noted the difficulties inherent in a criminal contempt of Congress case where executive privilege is invoked, counseling sharply in favor of reaching a compromise rather than resorting to a prosecution, but emphasizing that if a criminal contempt of Congress charge is brought, "constitutional claims and other objections to congressional investigatory procedures may be raised as defenses…." *Id*. at 152, *citing, inter alia, Barenblatt v. United States*, 360 U.S. 109 (1959).

One might fairly have hoped that Government counsel would have taken the teaching of cases like the landmark go-to favorite *United States v. Abcassis*, 45 F.3d 39 (2d Cir. 1995) and the mistakes the district court therein made by not permitting the defense of entrapment by estoppel, for example, to go forward, as a lesson to avoid.  It caused a great deal of wasted time, money, and other resources, and led to three convictions and lengthy prison sentences being overturned, with the defendants going home after long pre-trial and trial proceedings.  Instead, the Government begs this Court to unconstitutionally deny Mr. Bannon his constitutionally guaranteed rights to due process of law, to compulsory process, to confrontation and to a fair trial.  The Government's efforts and this motion must be rejected.

**The OLC Opinions and other DOJ Writings are Directly Relevant to the Elements.**

The Government writes next that the OLC Opinions and other writings are "irrelevant to proving whether the Defendant committed the charged offenses," further specifying that they are "irrelevant to the intent element of the offense" and therefore "inadmissible." [Doc. 52 at 4]. The Government acknowledges that it must prove that Mr. Bannon acted deliberately and intentionally [Doc. 52 at 4] and, indeed, this Circuit expressly has held that where a witness before a congressional committee refuses to answer a question based on a claim of privilege, the question of whether the refusal was deliberate and intentional must be put to the jury. *Keeney v. United States*, 218 F.2d 843, 845 (D.C. Cir. 1954). Significantly, in his concurring opinion in *Keeney*, Judge Prettyman expressly opined that a failure to comply based on the invocation of privilege, might not at all be a deliberate and intentional refusal to answer; rather it might be a genuine question by the witness about the witness's "ability to answer under legal compulsions." In any event, that is a question for a jury to determine under all circumstances. *Id*. at 850 (Prettyman, J., concurring).

Mr. Bannon is, of course, aware of the Court's ruling on the Government's Motion to Exclude All Evidence and Argument Relating to Good-Faith Reliance on Law or Advice of Counsel [Doc. 49] and has preserved his position in opposition to that motion.[3] [Docs. 30; 39; 41; Tr. 3/16/2022 Hearing].

However, his intent is directly relevant to the burden the Government acknowledges it has of proving the charged conduct was "deliberate and intentional" [See Doc. 52 at 4]. For

---

[3] Prior to this case, it seemed unimaginable that any representative of the Government ever would ask a court to prohibit a defendant in a criminal case from relying on "the law;" but that is exactly what Government counsel did in this case – and the motion was unqualifiedly granted. [See Doc. 29 at 8; Doc. 49].

example, did Mr. Bannon deliberately and intentionally not comply or, as Judge Prettyman suggested as a possibility in *Keeney*, did he genuinely have a question as to whether he had the "ability" to comply, given the "legal compulsions" attending a claim of privilege?  The OLC Opinions and other writings and Mr. Bannon's reasonable belief regarding the same and regarding the authority of the former President to direct him to withhold compliance based on executive privilege are directly relevant on this question and are admissible.[4]

This is especially true here, where there is an issue raised as to whether there was a "default" under the statute, intentional and deliberate or not, in light of the constitutional (and OLC) imperative to try to reach an accommodation.  [Doc. 59-1 at 47].  Mr. Bannon went to great lengths to try to do so, in indicating his willingness to comply if privilege were worked out between the committee and President Trump or if a judge were to order him to comply, and requesting a one week adjournment in order to study the question in *Trump v. Thompson*, as well as by drafting a response to the committee, that addressed areas in which he had no information in any event, notwithstanding his firm belief based on the OLC Opinions, that there was no valid or constitutional subpoena outstanding (based on the refusal to allow a privilege holder representative to be present). [Doc. 59-1 at 48].

**The Materials Mr. Bannon Has Cited Fully Support Entrapment by Estoppel.**

At Pages 5-14 of its motion *in limine*, the Government argues that the OLC Opinions and other DOJ writings on executive privilege and contempt of congress do not support an entrapment by estoppel defense [Doc. 52 at 5-14].  The Government claims that this is so

---

[4]  The DOJ Manual expressly recognizes the direct relevance of public authority defenses to criminal intent and provides, "[T]he defendant must be allowed to offer evidence that negates his/her criminal intent…" and to a "jury instruction" on the same.
https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense

because (1) "no government official affirmatively misled the Defendant that his default was legal" [Doc. 52 at 8-12], (2) "The Defendant's attorney's interpretation of Department opinions provides no basis for the defense because his attorney is not a government agent" [Doc. 52 at 12-13], and (3) "The Defendant cannot show his reliance on Department records, if any, was objectively reasonable" [Doc. 52 at 13-14].   The Government's arguments are frivolous and without merit.   Its second argument in this series is simply an absurd strawman argument that does not reflect any argument Mr. Bannon has made in this case:   he has never in any way contended that his attorney is a "government official" or that his attorney is the source for the public authority on which he relied.

### Entrapment by Estoppel Does Not Require Direct Interaction with an Official.

The Government's first claim, that entrapment by estoppel does not apply because "no government official affirmatively misled the Defendant that his default was legal" [Doc. 52 at 8-12] need not be addressed at any length.   It is based on a completely erroneous legal premise – the same erroneous premise Government counsel has operated from at all times on this issue – and it miscasts the relevant facts.   The short and accurate answer demonstrating the error in the Government's argument is that (1) there simply is no requirement that a defendant seek permission from some authorized person in a one on one exchange nor that some agency official personally, affirmatively mislead the defendant for the defense of entrapment by estoppel to apply[5] and that (2) the binding, official, authoritative policy of the DOJ affirmatively provided

---

[5] Even in an actual direct statements case, like the often-cited decision in *United States v. Abcassis*, 45 F.3d 39 (2d Cir. 1995), the court recognized that the appropriate inquiry focuses not solely on specific advice, but on all circumstances, including conduct, that form the basis for the defendant's belief. *Id*. 45 F.3d at 42-43, *citing Cox v. Louisiana*, 379 U.S. 559 (1965); *Lundquist Article* at 853.   Ultimately estoppel rests "upon principles of fairness" and therefore it can be raised even in strict liability cases. *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir. 1990), *citing United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987).

authoritative positions on the rights and duties of a witness facing a congressional committee subpoena when executive privilege is invoked and provided assurances that the statute under which Mr. Bannon is charged does not and cannot apply to a person so situated.

Mr. Bannon reasonably relied on that official policy, as he was fully entitled to do and he acted at all times based on that reasonable reliance. The Government's continued erroneous assertion that the law requires some affirmative communication directly between the agency and the defendant completely ignores the authority of *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 673-675 (1973) ("*PICCO*") (reliance on an agency's administrative regulations); *United States v. Barker*, 546 F.2d 940, 951-952 (D.C. Cir. 1976) (reliance on a "legal theory espoused by this and all past Attorneys General for forty years" and reflected in a memorandum); *United States v. Levin*, 973 F.2d 463, 465 (6th Cir. 1992) (reliance on written agency policy statements and no personal inquiry by or personal assurance to the defendant); *See also* Doc. 59-1 at 28-29. The Model Penal Code, § 2.04(3)(b) (1962) provides additional support both for the reliance defense and for the sources upon which one is entitled to rely. *See* Doc. 59-1 at 30 & n.37.

The Government's assertion that "a defendant cannot extrapolate the government's statement of the law in one scenario as a free pass to commit crimes in another and then claim the defense" [Doc. 52 at 8-11] simply is not relevant here. The OLC Opinions and other writings relied upon by Mr. Bannon and cited in support of the defenses of public authority and entrapment by estoppel apply directly to this situation.[6] Over six decades of OLC Opinions and

---

[6] The Government is simply wrong when it argues that there can be no entrapment by estoppel claim based on "implication." [Doc. 52 at 9]. The Court in *Raley* and *Cox* made clear that policy relied upon can be "implied" from behavior and from circumstances. *See Raley*, 360 U.S. at 437-439; *Cox*, 379 U.S. at 571. Indeed, the defense can be based on policy statements by an

other DOJ writings make clear that when executive privilege in invoked with respect to a congressional subpoena, the invocation must be respected, the witness cannot be compelled to comply in violation of the privilege, and the criminal contempt of congress statute (charged here) cannot be used to bring a criminal charge against the subpoena recipient.

Further, specifically identified OLC Opinions and other DOJ writings expressly address every relevant aspect of Mr. Bannon's situation and his conduct comported at all times with the DOJ binding policy on which he reasonably relied.  This is all discussed at some length, in detail, and with the underlying OLC Opinions and other DOJ writings provided to the Court in Mr. Bannon's motion to dismiss [*See* Doc. 59-1 at 17-28; 31-38 & Exhibits to Doc. 58] and he will not burden the Court here with a repetition of that discussion.  Rather he incorporates herein by reference the discussion in his motion to dismiss on this subject in response to the Government's claim.

### The Government's Attempted Distinctions are Factually and Legally Wrong.

The Government's attempts to distinguish Mr. Bannon's situation based on phony distinctions that are wrong factually and are not legally cognizable as material distinctions are unavailing and certainly do not in any way bar him from advancing his public authority and entrapment by estoppel defenses in this case (e.g. that Mr. Bannon was a "private citizen" or that the subpoena was directed to him in his capacity as a "private citizen" or that he was not excused from complying at least in part).

---

agency that appear to be contradicted by other authoritative agency statements.  *See PICCO*, 411 U.S. at 671-675.  *See also,* "*Lundquist Article*" at 850. Indeed, the defense applies even if the reasonably relied upon agency policy is incorrect.  *See United States v. Barker*, 546 F.2d 940, 952 (D.C. Cir. 1976).  None of this is necessary to consider in the instant case; rather it is offered simply in response to the Government's specious (and wrong) argument that for entrapment by estoppel purposes agency policy reasonably relied on cannot by "implication." [Doc. 52 at 9].

Former President Donald J. Trump, as was his prerogative, invoked executive privilege with respect to the committee subpoena directed to Mr. Bannon, a former top white house official and Mr. Bannon acted consistently with and in reasonable reliance upon official, binding, authoritative policy.  As discussed in Mr. Bannon's motion to dismiss, the OLC Opinions and other DOJ writings make clear that executive privilege can be invoked for communications with current or former executive branch employees as well as for communications with outside consultants ("private citizens" as the Government would have it) who have never been executive branch employees. [Doc. 59-1 at 17-18, n.20].  That makes perfect sense of course.

If the Government could put aside for a moment that the Defendant is Stephen K. Bannon and its associated political agenda with respect to Mr. Bannon and his followers, perhaps it would see the matter with common sense.  It makes perfect sense for say, President Biden, to be able to call the CEO of a major oil company to consult on the state of gasoline prices, or  Henry Kissinger to discuss foreign policy matters – both being "private citizens" – and to expect to have the ability to invoke executive privilege in the face of a congressional subpoena designed to question either person about those communications.  Both are private citizens, not executive branch employees.

### There is No Legal Basis for Requiring Partial Compliance with a Subpoena the OLC Opinions Deemed Invalid

As for the Government's claim that there was no basis for Mr. Bannon to reasonably believe that he did not at least have to comply in part with the subpoena [Doc. 52 at 11 – arguing that he should have produced a privilege log or asserted privilege on a "question-by-question basis"], Mr. Bannon, through Mr. Costello, has been clear at all relevant times that he relied on official DOJ policy that provided that subpoenas requiring an appearance without allowing agency counsel or the privilege holder's representative to be present are "without legal effect"

and may not constitutionally be enforced either civilly or criminally and he was allowed to so reasonably rely as a matter of fact and law.  *See* Doc. 59-1 at 18 & n.22; Doc 58-8, *Congressional Oversight of the White House*, 2021 WL 222744 (O.L.C.) at *56 (January 8, 2021); *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *1 (May 23, 2019).

The Government's attempt to bar the defense of entrapment by estoppel based on a parsing of the communications with Justin Clark is unavailing, both based on the OLC Opinion advising that the entire subpoena was invalid and not legally enforceable, in light of the refusal to allow a privilege holder representative to be present and because the uncontradicted record evidence is that Messrs. Costello and Bannon understood executive privilege to have been invoked concerning the subpoena and did not believe they had the authority to discern what materials or testimony President Trump deemed to be subject to executive privilege and could not risk a waiver [Doc. 39 at 4-5; 30-1 at ¶¶ 23-24]  Moreover, as Mr. Costello affirmatively noted, the concern applies, according to the OLC Opinions, even if the President has not yet invoked privilege, for a privileged matter might not be recognized ahead of time, but easily can arise at any time if the current or former executive branch employee appears.  *See* Doc. 30-1 at ¶ 22; *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *8 (May 23, 2019).

### The Post-Return Date Letter From the Biden Administration Purporting to Supersede President Trump's Invocation of Executive Privilege Does Not Advance the Government's Argument.

The Government's reference to the October 18, 2021, letter from White House Deputy Counsel Jonathan Su to Mr. Costello, reflecting a purported attempt by President Biden to supersede former President Trump's invocation of privilege [Doc. 52 at 11; Doc. 52-1] certainly

does not aid the Government's effort to bar Mr. Bannon's due process-based defenses.  Rather it undercuts the Government's effort.

Mr. Su's letter clearly recognizes expressly or implicitly that former President Trump had invoked privilege and that Mr. Bannon's noncompliance was based on that invocation of executive privilege.  Secondly, the letter post-dates the subpoena return date, consistent with Mr. Costello's view that this was an ongoing process designed to reach an accommodation, based on the constitutional imperative for the same, repeatedly voiced by the courts and reflected in OLC Opinions.  However, notwithstanding the letter, purporting to be on behalf of President Biden directly Mr. Costello to have Mr. Bannon comply with the subpoena and purporting to remove the invocation of executive privilege, the very next day, October 19, 2021, the committee ignored President Biden's letter and directive and went forward with its previously scheduled televised contempt referral vote for Mr. Bannon, leaving him no opportunity to comply with Mr. Su's letter.  Furthermore, the committee rejected out of hand Mr. Costello's request for a one-week extension so that he could consider the then pending case, *Trump v. Thompson*, which had at its heart, the question of whether and, if so, when, a sitting President can supersede a former President's invocation of executive privilege. *See* Doc. 30-1, ¶ 16.

**The Government Mischaracterizes the Provisions of the OLC Opinions.**

There is nothing in any of this that left Messrs. Bannon and Costello to "guess" [Doc. 52 at 12] about the DOJ's position when a former executive branch employee receives a committee subpoena and the former President of the United States notifies the recipient that he is invoking executive privilege with respect to the subpoena; nor were they left to "guess" as to the DOJ's position regarding the effect of the committee's refusal to allow the privilege holder to have a representative present to invoke privilege; nor were they left to "guess" on the DOJ's position

concerning the absolute barring of any criminal prosecution under 2 U.S.C. § 192 for the failure

of a former executive branch employee to comply with a subpoena when executive privilege has

been invoked (and the privilege holder's representative is not permitted to appear).

All of these things are answered expressly and in detailed fashion, with careful detail and

reasoning set forth in multiple OLC Opinions and other DOJ writings reflecting long-established

formal binding authority.

To the extent Mr. Bannon was, in fact left to "guess" as the Government asserts, then the

indictment must be dismissed for its failure to provide adequate notice of what conduct would

and would not subject a citizen in such circumstances as Mr. Bannon faced to criminal liability,

in light of the binding OLC Opinions – a fundamental requisite for any criminal prosecution as a

matter of due process of law guaranteed under the United States Constitution. [*See* Doc. 59-1 at

45-48; *PICCO*, 411 U.S. at 670-675; *Cox*, 379 U.S. at 571-572; *Raley*, 360 U.S. at 437-442;

*Lundquist Article* at 850].

**Mr. Bannon Has Never Claimed His Attorney Was a Government Agent.**

The Government's next argument is just a nonsensical strawman argument that has

nothing to do with any assertion Mr. Bannon has made.  The Government argues that Mr.

Costello's representations to Mr. Bannon about the OLC Opinions cannot provide the basis for

an estoppel by entrapment defense because "[D]efendant's attorney is not a government official"

and the "… defense is focused on the unfairness of a government agent telling a defendant

proposed conduct is legal and then prosecuting him for that very conduct."  [Doc. 52 at 12-13].

No one on behalf of Mr. Bannon has ever argued in this case that Mr. Costello's

conclusions "about the reach of the contempt statute" can be "attributed to the government"

[Doc. 52 at 13], that Mr. Costello is somehow a government agent or that it is reliance on Mr. Costello directives that provides a public authority or entrapment by estoppel defense.

**Mr. Costello's Testimony Will Be Directly Relevant to Reasonableness.**

The testimony of Mr. Costello, a very experienced criminal defense lawyer, about how he communicated to Mr. Bannon the substance and import of the OLC Opinions and other DOJ writings, furnishing the same to Mr. Bannon, so that Mr. Bannon could decide how to proceed, and Mr. Costello's experienced legal opinion on the impact of the OLC Opinions and other DOJ writings as he communicated that to Mr. Bannon as well, is all independently relevant and must be admitted at trial in this case (if the motion to dismiss is denied), as directly relevant testimony on the issue of the reasonableness of Mr. Bannon's belief that the OLC Opinions and other DOJ writings authorized him to take the action he took and prevented any civil or criminal enforcement of the subpoena under the circumstances present here.  *See United States v. Tallmadge*, 829 F.2d 767, 775 (9th Cir. 1987)[7]  The Government forcefully asserts that Mr. Bannon bears the burden of proving his reliance on the OLC Opinions and other sources for his public authority and entrapment defenses was reasonable [Doc. 52 at 13-14; 18-19].  Mr. Costello's testimony is both directly relevant and fully admissible for the purpose of meeting the reasonableness burden.  *Id.*

---

[7] "Tallmadge did not rely solely on the misleading representations of the licensed firearms dealer. He also sought and obtained advice from an experienced criminal lawyer regarding his right to possess a nonconcealable firearm in light of the state trial judge's admonition against possessing a *concealable* weapon. He was told by his attorney that he could possess a "long gun." The uncontradicted evidence establishes that Tallmadge's reliance on the firearm dealer's misleading information was reasonable in light of his attorney's legal opinion that he could purchase a rifle, and the comments of the state trial judge and the deputy district attorney at the probation termination proceedings." *Tallmadge*, 829 F.2d at 775 (emphasis added).  The DOJ Manual explaining the defense of entrapment by estoppel, cites the decision in *Tallmadge* as an example of the defense's application.  https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense at Page 2.

**Mr. Bannon's Reliance Was Reasonable By Any Standard.**

The Government argues next that Mr. Bannon cannot show that his reliance on the OLC Opinions and other DOJ writings was reasonable.  [Doc. 52 at 13-14].  Suffice it to say that the OLC Opinions and other DOJ writings, [Docs. 58-8 through 58-18; 58-20; 58-21]; including the position taken by a former U.S. Attorney in this district [Doc. 58-16], speak for themselves. They provide more than sufficient evidence of the reasonableness of his reliance on them to meet any recognized threshold for the reasonableness inquiry; and further the long-established history of OLC Opinions and other DOJ writings consistent with the positions relied upon by Mr. Bannon, along with experienced defense counsel's legal conclusion concerning the same, all support a finding that the reliance was reasonable under any standard.  Mr. Bannon also was entitled to reasonably believe that he was authorized to proceed as he did based on the invocation of executive privilege and associated communications on behalf of the former President and they support his defense of entrapment by estoppel (and public authority).

The evidence is sufficient both to support the motion to dismiss based on such reliance and, at a minimum to put the matter before a jury to decide.  As noted above and in the motion to dismiss [Doc. 59-1 at 16-38; Exhibits to Doc. 58], a fair reading of the cited OLC Opinions and other DOJ writings supports Mr. Bannon's reliance on them in response to the subpoena and the invocation of executive privilege and his corresponding actions in conformity with the same. Every specific aspect of his circumstance is addressed in the OLC Opinions and other DOJ writings – former executive branch employee, executive privilege invoked regarding his committee subpoena, status of a subpoena when the committee will not let the privilege holder's representative to be present and much more are all directly discussed in great detail and with

impressive reasoning provided in a form that represents binding, authoritative policy for the DOJ.

### Mr. Bannon Must Be Permitted to Adduce Evidence on Public Authority.

The Government next makes essentially the same arguments as to why it claims Mr. Bannon should not be permitted to put forward the defense of public authority. [Doc. 52 at 14-19].[8]  The Government's arguments are similarly wholly without merit and must be rejected.

### Public Authority Can Be Based On Written Policy Statements.

The Government's argument on the public authority defense suffers from the same defect regarding its premise as its argument on entrapment by estoppel.  There simply is no requirement as a matter of law that the defendant seek out some law enforcement agent to get his or her authority in order for the defense to apply, notwithstanding the Government's reference to

---

[8] The Government asserts in its motion that Mr. Bannon had not filed notice under Rule 12.3 of the Federal Rules of Criminal Procedure, of his intention to raise a public authority defense. [Doc. 52 at 15, n.2].  Mr. Bannon timely filed his Rule 12.3 notice contemporaneously with his pre-trial motions as the rule provides.  [Doc. 55]. In that notice Mr. Bannon identified the support for his public authority (actual and apparent) and entrapment by estoppel defenses.  The matters on which he has relied at all relevant times in connection with those defenses are the authority of the former President in invoking executive privilege regarding the subpoena and the authority of the Department of Justice and its constituent parts and branches, including this U.S. Attorney's Office, reflected in directly relevant, applicable, and binding Opinions from the OLC and other DOJ writings, going back consistently over six decades.  [Doc. 55].  Rule 12.3 provides for a response by the Government either admitting or denying that the defendant exercised the public authority identified in the notice.  Rule 12.3(a)(3).  The Government filed its response on April 29, 2022, [Doc. 60] arguing that the notice was deficient for the same absolutely frivolous reasons it offers to support its motion *in limine* seeking to bar Mr. Bannon from advancing these defenses, continuing its consistent pattern of making unsupportable arguments that ignore binding precedent from the United States Supreme Court and from this Circuit, including the right of a former President to invoke executive privilege and the right to rely on agency policy for public authority and entrapment by estoppel, without any personal inquiry or communication. The Rules do not provide for a Reply to the notice and none should be required here to these same frivolous arguments.  There is nothing deficient about the notice. Mr. Bannon also provided the Government with more than ample, detailed notice in the motion to dismiss regarding the specific authority relied upon for these defenses.

cases in which that was the scenario. [Doc. 52 at 14-16]. Mr. Bannon reasonably relied on direct communications on behalf of former President Trump and formal binding policy statements in the form of the OLC Opinions and other DOJ writings for his public authority defense.

This Circuit expressly has recognized that a public authority defense can be based on agency documents, including a single memorandum reflecting a long-standing policy. *See United States v. Barker*, 546 F.2d 940, 951-952 (D.C. Cir. 1976) (recognizing the defense of public authority in the form of "apparent authority" based on an Attorney General's memorandum setting forth a "legal theory espoused by this and all past Attorneys General for forty years).

The Government's argument is all over the place. On the one hand, the Government argues that the fact that no "law enforcement agent" authorized Mr. Bannon's response to the subpoena is fatal to the defense [Doc. 52 at 15]; but on the very same page, it appears to recognize the relevance of the President's authority, arguing that the only communication Mr. Bannon had with an executive branch official was the October 18, 2021 letter from Jonathan Su, post-dating the subpoena return date and purporting to supersede former President Trump's invocation of executive privilege. [*Id*.].

At all relevant times following his receipt of the subpoena through the return date and beyond, Mr. Bannon was advised by former President Trump's agent that the former President had invoked executive privilege as to the subpoena and he was duty bound to respect and follow that invocation and directive. Former President Trump, in his capacity as the former President of the United States had the authority to invoke executive privilege and Mr. Bannon was entitled to rely on that authority and to presume the invocation of executive privilege to be valid. [*See* Doc.

59-1 at 17-21; 22-31; 35 and the authority cited therein].  Mr. Bannon reasonably relied on President Trump's actual and apparent authority.  He supports this position in detail in his motion to dismiss, primarily at the pages identified and will not burden he Court with a repetition of that argument here.  Rather he incorporates it herein by reference.

This was not a matter of Mr. Bannon "attempt[ing] to predict, based on inapposite Department writing, whether the Department would prosecute him."  [Doc. 52 at 16]  Quite to the contrary, Mr. Bannon acted on the directive from the former President, based on the latter's authority and on the authority of the Department of Justice, based on its binding, authoritative policy, based on his status as a former executive branch official who had received a committee subpoena regarding which executive privilege had been invoked – the exact subject of multiple binding OLC Opinions and other DOJ writings on the exact subject, reiterating decades old policy and with the authority to issue such binding authority.

### The OLC Opinions Unquestionably are Binding on the DOJ and Should Have Barred This Prosecution.

The only real question here, is how and by what authority, other than as a function of base political partisanship and virulent hatred of former President Trump, Mr. Bannon and his followers and a concerted effort to take all steps possible to stop their influence on their millions of political followers and on matters of public interest, these prosecutors can justify defying the authority of the OLC Opinions that prohibit this prosecution and that are binding on the Department of Justice.

The Government here disclaims its own authority – the authority of the very prosecuting agency pursuing this case and under whose supervision these prosecutors act and attempt to discount the OLC Opinions and other writings, indisputably recognized as binding, authoritative policy statements for the Department of Justice [*See* Doc. 59-1 at 17-27] by asserting that "they

19

were not authored by law enforcement officials with actual authority to direct the Defendant to defy the subpoena." [Doc. 52 at 16].  The argument ignores the constitutional Article II relationship between the DOJ and chief executive, the Attorney General's role within the Article II branch, vis a vis the President, the President's power under Article II, § 3, and specifically the President's power, on his own or as delegated through the Attorney General to the OLC with respect to the enforcement of a statute.  [*See e.g.,* Doc. 59-1 at 35]. In any event, Mr. Bannon reasonably and appropriately acted on the public authority of former President Trump and the DOJ.

It is just plain nonsense to assert that neither the President nor the Attorney General (acting through the OLC) has the authority to direct action, as the advocate for the executive branch, in the face of a subpoena that raises separation of powers concerns and that implicates the invocation of executive privilege and it is just as nonsensical to assert that the DOJ lacks the authority to give assurances that a person acting in conformity with its policy as enunciated through OLC Opinions will not and cannot be criminally prosecuted.  The Government cites no authority of course for its position on the claim that neither the President nor the DOJ has authority.

In disclaiming the DOJ's public authority, the Government first, as with the former President, without citation, asserts that the DOJ lacks actual authority and then writes:  "Every court to have decided the issue has held that, for the public authority defense to be available, a defendant must have received a direction to commit a crime from a law enforcement agent who had 'actual, not apparent authority' to so direct him.'" [Doc. 52 at 16].  The Government's

assertion is wrong and paints the matter with a mistakenly broad brush.[9]  It also misses the point

here.  The Government bases its assertion on a mischaracterization of Mr. Bannon's defense and

on an overly simplistic and misleading diminution of the decision in *United States v. Barker*, 546

F.2d 940 (D.C. Cir. 1976) [Doc. 52 at 17 & n. 3].[10]

---

[9] The Government's representation to the Court goes even well beyond the position taken in the DOJ Manual on apparent authority.  The DOJ Manual, at least, recognizes that the defense of apparent authority was recognized and credited by this Circuit in *United States v. Barker*, 546 F.2d 940 (1976), but it then comments that "perhaps" due to the "unique intent requirement involved in the charges at issue in the *Barker* case, the courts have **generally** not followed its 'apparent authority' defense."  https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense  (emphasis added).  At least one legal commentator has asserted that the inquiry actually should focus on apparent authority, rather than actual authority, writing:

> "Rather than judging whether an agent has the actual authority to bind the government, the issue should be framed as whether the official had the apparent authority to make the pronouncement and whether the defendant's reliance was reasonable.  Thus, the issue of authority turns on a mixed fact determination of (1) whether the agent had some colorable authority to render the advice and (2) whether the defendant's reliance was reasonable under the circumstances."

> https://open.mitchellhamline.edu/cgi/viewcontent.cgi?article=2003&context=wmlr at Page 872.

[10] While the split in the panel in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) has led to a questioning by some of its actual precedential value, one thing that is absolutely clear is that reliance on the opinions of the Attorney General (here as delegated to the OLC), whether characterized as "actual" or "apparent" authority is cited by Judge Merhige in *Barker* as a source of authority that fully serves the desired policy of "fostering obedience to the decisions of certain individuals and groups of individuals that society has put in positions of prominence in the governing structure …." *Barker*, 546 F.2d at 956.  The Government omits from its footnote referring to the critique of *Barker* by the Court in *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990), the later decision in *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994) that clarified the critique in *North*, affirmatively providing that while it had questioned an aspect of *Barker*, it "expressly said that (it) did 'not mean to suggest that criminal defendants in this Circuit could not avail themselves of the defense of reliance on an official misstatement of law as that defense is described in Judge Merhige's opinion." (citation omitted).  Clearly, Judge Merhige's conclusion that Attorney General opinions (and therefore OLC opinions) have the status of public authority, whether characterized as actual or apparent authority, Mr. Bannon reasonably relied on them as sources of public authority and he was entitled to do so as a matter of law.

**The DOJ and OLC Have Actual and Apparent Public Authority; the Government Misstates the Relevant Inquiry.**

The Government writes that "[T]he Office of Legal Counsel and other representatives of the Department of Justice do not have the authority to invoke executive privilege and direct a private citizen, subpoenaed in his capacity as such, to ignore completely a congressional subpoena's documents and testimony requirements."  [Doc. 52 at 17].  Mr. Bannon has never asserted that the OLC or any other DOJ representative either invoked executive privilege or had the authority to do so and the Government well knows that.  Its assertion has no applicability to this case.  Former President Trump invoked executive privilege and he had the authority to do so, and much more, based on well settled case law [*See* Doc. 59-1 at 17-35].  Mr. Bannon relied on his actual authority and the associated directives with the invocation of executive privilege.

**The Government Ignores the Invocation of Executive Privilege and Other Relevant Attending Circumstances in Miscasting the Issue.**

Mr. Bannon was not just a "private citizen, subpoenaed in his capacity as such" in the context of this matter.  [Doc. 52 at 17].  Rather he was a former top level executive branch official and close advisor to the President and he was a witness with a subpoena regarding which the former President had invoked executive privilege.  Under those circumstances and the constitutional issues, including separation of powers issues it implicated, the DOJ, acting through the OLC, certainly had the authority to set parameters, to determine the obligations and rights of the former executive branch official, and the appropriate response by the former executive branch official, once executive privilege, at the former President's prerogative, had been invoked.  The concerns were properly institutional ones reflected by the invocation of executive privilege.  The DOJ, as the executive branch's lawyer, also had the authority to determine whether the failure to comply with a subpoena under such circumstances could and would be

prosecuted and its OLC Opinions have spoken clearly and authoritatively on that subject as well, as has been described at length.  Mr. Bannon had the right to rely on that authority and his reliance on that authority, as a matter of due process should have prohibited this prosecution both because of the express, binding authority announcing that prosecution under this statute is prohibited where executive privilege has been invoked and because its directive on this subject, strips away the notice due process requires that would lead someone in Mr. Bannon's situation to have reason to believe that his response to the subpoena could constitute a crime – a fundamental due process prerequisite for any criminal charge.

Mr. Bannon was entitled to rely on the public authority of former President Trump, who in the unique situation of a former President, maintains the authority to invoke executive privilege even after his term in office ends and he was entitled to rely on the public authority of the DOJ as reflected in its binding policy statements.  He reasonably relied on both and based on that did not and could not have committed a crime through his actions in compliance with the same.  The prosecution must be dismissed or, at a minimum, without in any way waiving that position, surely the jury must be presented with his public authority defense and a corresponding jury instruction as with the entrapment by estoppel defense.

The balance of the Government's submission on public authority is just more of the same and has no application to this case.  The Government skips back to the President from the DOJ and writes that only the President can invoke executive privilege and a subordinate cannot. [Doc. 52 at 18].  That has nothing to do with this case.  It was the former President who invoked executive privilege and has been asserted repeatedly, with long-standing authoritative support, he fully had and has the actual (and apparent) authority to invoke executive privilege.  He did so, and Mr. Bannon reasonably relied on that exercise of public authority.

**Mr. Bannon's Reliance on Public Authority Was Reasonable by Any Measure.**

Contrary to the Government's penultimate argument, [Doc. 52 at 18-19], Mr. Bannon's reliance on public authority surpasses any threshold for reasonableness for the question to be presented to a jury, based on all relevant facts, at the bare minimum, for the same reasons he satisfies this element with respect to the defense of entrapment by estoppel.

**Presenting Evidence on These Due Process Defenses Is Necessary and Appropriate.**

The Government's final argument, that allowing Mr. Bannon to present the due process based defenses of public authority and entrapment by estoppel, based on the OLC Opinions and other DOJ writings would "confuse the issues and mislead the jury" [Doc. 52 at 19] is completely unfounded, offensive to the fundamental constitutional principles at issue, has no basis in fact or law, and reflects a very troubling approach by these prosecutors.  They have made clear their goal, at all costs, and even at the expense of the rule of law and the fair application of our constitutional guarantees to any defendant, to do everything they can to deny Mr. Bannon the opportunity to put the actual facts and circumstances of his case and the important attending legal principles of constitutional dimension before the jury.  That agenda must be definitively rejected.

<u>**CONCLUSION**</u>

Based on all of the foregoing and on all previous pleadings and argument, and especially the argument and authority set out in Docs. 58, 58-1 through 58-31 and other exhibits, and 59-1, it is respectfully submitted that the Defendant's motion is due to be and must be denied.

Dated: May 6, 2022                                    Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

   /s/ M. Evan Corcoran
                                 
M. Evan Corcoran (D.C. Bar No. 440027)

24

400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com


    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com


    /s/ Robert J. Costello
Robert J. Costello (*Pro Hac Vic Pending*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

*Counsel for Defendant*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May 2022, a copy of the foregoing

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE

EVIDENCE OF DEPARTMENT OF JUSTICE OPINIONS AND WRITINGS was filed through

the Court's CM/ECF system and was served *via* electronic delivery on counsel of record.

    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)