UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-670 |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DEPARTMENT OF JUSTICE OPINIONS AND WRITINGS**

In his opposition to the Government's Motion in Limine to Exclude Evidence of Department of Justice Opinions and Writings, the Defendant repeatedly asserts, as he has in his previous pleadings, that he must be allowed to present evidence of Department writings relating to contempt of Congress because he is entitled under the Constitution to "present his complete defense." ECF No. 64 at 5. He fails to acknowledge, however, that there is no constitutional right to put on any defense a Defendant wants. Instead, the Defendant's evidence, just like the Government's, is limited to that which is admissible under the Rules of Evidence and other relevant law, including the rules limiting admissible evidence to relevant evidence and the law establishing the burden and elements for affirmative defenses. *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); ECF No. 52, at 3-4 (collecting cases). Despite now filing two briefs on the issue, ECF No. 59-1; ECF No. 64, the Defendant still has failed to meet his burden to show he is entitled to present defenses of entrapment by estoppel and public authority. Having failed to do so, and failing to identify any other purpose for which they are admissible, the Department writings to which the Defendant has cited must be excluded at trial and the Government's motion in limine to exclude them should be granted.

I.  **THE DEFENDANT HAS FAILED TO DEMONSTRATE THE ELEMENTS OF ENTRAPMENT BY ESTOPPEL.**

Although the Defendant has now made two attempts—in his motion to dismiss and his opposition—to show he has met his burden to present an entrapment-by-estoppel defense to the jury, he still has failed to meet the threshold requirement: that a Department statement affirmatively sanctioned a private citizen's total refusal to comply with a congressional subpoena, directed at him in his personal capacity and in relation to his personal activities. Instead, the Defendant's opposition suggests he wishes to substitute his attorney's interpretation of Department writings for the affirmative government statement he must identify. This he cannot do. Having failed to identify even one Department statement that would support an estoppel defense, he cannot present irrelevant evidence of an unsupported and inadmissible defense at trial. *See, e.g.*, *United States v. Pardue*, 385 F.3d 101, 108 (5th Cir. 2004) ("In order to establish a prima facie case for entrapment by estoppel, a defendant must put forth an affirmative representation by a government official that his conduct was or would be legal."); ECF No. 52 at 8-9 (collecting cases).

    A.  **The Defendant Has Failed to Demonstrate that Any Department Statement on the Contempt of Congress Statute Affirmatively Misled Him as to the Legality of His Default.**

The Defendant concedes that his estoppel argument is not based on a claim that Department writings sanctioned his conduct by implication, ECF No. 64 at 9 n.6, or on a claim that the Department's conclusions in one scenario could properly be applied to his, a different scenario, *id*. at 9. Instead, he asserts that the Department writings on which he claims to have relied "apply directly," *id*. at 9, and "expressly address every relevant aspect" of the circumstances of his default, *id*. at 10. He is wrong. In his motion to dismiss, the Defendant identified four Department writings on which he claims to have relied when deciding to ignore the Committee's subpoena. *See* Gov't Opp'n to Mot. to Dismiss, ECF No. 65, at 11-12 (citing ECF No. 59-1). The four writings,

2

however, do not "expressly address" the contempt statute's application to a private citizen's decision to ignore entirely a subpoena issued to him in relation to his activities in his private capacity. Indeed, the Defendant never once engages with, or even acknowledges, all the ways in which the Department writings to which he cites differ from his circumstances and why these differences do not render them irrelevant. He never once explains why their differences are not material. But their differences are material—as the Government explained in its opposition to the Defendant's motion to dismiss, the subpoenaed witnesses considered in the Department writings are differently situated and the nature and validity of the assertion of executive privilege is different. *See* ECF No. 65 at 12-16. Being so different, the four Department writings cannot serve as "affirmative statements" by the Government on the Defendant's specific conduct and they cannot serve to support an entrapment-by-estoppel defense in this case. *See United States v. W. Indies Transp., Inc.*, 127 F.3d 299, 313 (3d Cir. 1997) (affirming exclusion of defense where defendant had sought the government's advice on one scenario but not the scenario for which the defendant was charged); *United States v. Abcasis*, 45 F.3d 39, 43-44 (2d Cir. 1995) ("[T]he defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes in the expectation of receiving subsequent authorization.").

Instead of addressing the significant differences between his conduct and that addressed by the Department writings on which he claims to have relied, the Defendant offers nothing more than broad assertions that when a President, even a former President, invokes executive privilege— an invocation the Defendant still has not proven in this case—a witness does not have to comply in any way. *See, e.g.*, ECF No. 64 at 8-9 (claiming Department writings "affirmatively provided authoritative positions on the rights and duties of a witness facing a congressional committee

3

subpoena when executive privilege is invoked" and that the contempt statute "does not and cannot apply to a person so situated."). But the Defendant does not cite a single Department writing that supports such a sweeping statement. Nor could he. The very writings on which he claims to have relied make clear that executive privilege, when actually and properly invoked by a sitting President, is not an automatic free pass to engage in total noncompliance even for executive branch officials subpoenaed in their official capacities, let alone for private parties subpoenaed in their capacity as such. *See Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *55 (Jan. 8, 2021) (noting that even "most members of the White House staff do not qualify for immunity from compelled testimony"); *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101, 106 (1984) (noting that the Environmental Protection Agency offered to produce 787,000 pages of documents in response to a congressional subpoena while withholding a "limited number" pursuant to the sitting President's claim of executive privilege).

Finally, the Defendant addresses an argument the Government has not made—that the Defendant must have personally spoken with a Government representative to be entitled to an entrapment-by-estoppel defense. ECF No. 64 at 8-9. The Defendant does not, in fact, have to have spoken personally with a Government representative. But the Defendant certainly has to demonstrate it was a Government statement of the law on which he relied and that it was the Government statement that affirmatively sanctioned his conduct. He has not done that.

The Defendant continues to speak in broad, conclusory ways about how Department opinions of the contempt of Congress statute apply to the circumstances of his default. The Government submits he does so because any direct engagement with the Department's writings

would quickly reveal their inapplicability.  This is not sufficient to satisfy the requisite showing he must make to present an estoppel defense to the jury.

> **B.  The Lack of Department Opinions Directly Addressing Default on a Congressional Subpoena by Private Citizens Subpoenaed for Information Relating to their Activities as Such Does Not Render the Contempt of Congress Statute Vague.**

The Defendant claims that, to the extent a Department writing did not address the Department's view of whether the contempt of Congress statute reached his conduct, the contempt of Congress statute is vague.  ECF No. 64 at 14 (citing Def.'s Mot. to Dismiss, ECF No. 59-1, at 45-48).  To support his claim, the Defendant relies on the Supreme Court's decisions in *United States v. Pennsylvania Indus. Chemical Corp ("PICCO")*, 411 U.S. 655, 670-75 (1973), *Cox v. State of La.*, 379 U.S. 559, 571-72 (1965), and *Raley v. State of Ohio*, 360 U.S. 423, 437-42 (1959).  But the Supreme Court has never held that a government entity entrusted with interpreting or enforcing criminal statutes must articulate its views of every scenario under which someone might violate a given statute to render a statute sufficiently clear on the whole or as-applied.  And it did not do so in *PICCO*, *Cox*, or *Raley*.  The Supreme Court in those cases was concerned only with "affirmative" misstatements of the law by the Government that misled individuals and entities into believing their conduct was legal.  In none of the opinions did the Court suggest that, without an affirmative statement, the underlying statute could not be applied to the conduct at issue.  Indeed, the Court in *PICCO* expressly noted that the defendant in that case "[did] not contend, therefore, that it was ignorant of the law or that the statute is impermissibly vague, but rather that it was affirmatively misled by the responsible administrative agency." 411 U.S. at 674 (internal citations omitted); *see also Cox*, 379 U.S. at 571-72 (finding that the defendant's conviction would be subject to "quite different considerations" than the due process one addressed had the defendant on his own decided to engage in the conduct for which he was prosecuted instead of acting on

government advisement); *Raley*, 360 U.S. at 437-48 (finding defendants' convictions for contempt during a state commission hearing must be reversed because they were told by commission members during the hearing that they had immunity allowing them to refuse to answer certain questions). The standard for which the Defendant advocates would essentially nullify any criminal statute's application to a particular violation absent a corresponding interpretation from the executive or judicial branches of the statute's application to the specific factual circumstances. Such a case-by-case analysis of a law is not what due process requires. *See United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) ("To provide 'fair notice,' '[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982))).

      C.    **Robert Costello's Proffered Testimony Impermissibly Substitutes His View of the Law for the Government's.**

The Defendant seeks to enter his attorney's testimony at trial to prove the Defendant's "reasonableness" in purportedly relying on Department writings when he decided to default. ECF No. 64 at 15. He claims that Mr. Costello should be allowed to testify about "how he communicated to Mr. Bannon the substance and import of the OLC Opinions and other DOJ writings" and their "impact." *Id.* The proffered testimony seems to affirm what the Defendant's other pleadings suggested—that for some, if not all, of the Department writings on which he claims to have relied, the Defendant did not actually read or consider their substance himself. *See* Gov't Opp'n, ECF No. 65, at 18-19 (citing Def.'s Mot. to Dismiss, ECF No. 59-1, at 16; Costello Decl., ECF No. 30-1 ¶¶ 7, 12, 23-24). Thus, while the Defendant claims his attorney's testimony would be to prove reasonableness, the testimony he describes is just an advice-of-counsel defense in disguise—an effort to substitute the Defendant's reliance on his attorney's interpretation of how

6

Department writings might apply to the Defendant's conduct for the writings themselves. And, as described in the Government's opposition to the Defendant's motion to dismiss, Mr. Costello's estimation of how OLC opinions might apply extended beyond the scope of the decisions themselves. ECF No. 65 at 19.

For this reason, the Ninth Circuit's opinion in *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987), to which the Defendant cites to support the admissibility of Mr. Costello's proffered testimony, does not help the Defendant. To support his estoppel defense, the defendant in *Tallmadge* did not rely on his attorney's interpretation of what a government official told the attorney. The defendant in *Tallmadge* received an interpretation of the law directly from an individual the court found to be an appropriate government representative. 829 F.2d at 770. It was only after establishing that the defendant had received a misleading statement from a government representative that the court cited the independent statements to the defendant from his attorney and two other state officials as evidence of the defendant's reasonableness in relying on the statement of law he had received from the government. *Id*. at 775. Here, the Defendant wishes to substitute his attorney's statements for the required government statement that he cannot identify. As he concedes, ECF No. 64 at 14-15, this is something the Defendant cannot do to support an entrapment-by-estoppel defense, *see United States v. Hardridge,* 379 F.3d 1188, 1194 (10th Cir. 2004) ("[W]here, as here, the alleged unfairness to the defendant arises out of private conduct and not from government action, it is not the *government* that has denied due process." (emphasis in original)); *W. Indies Transp., Inc.*, 127 F.3d 299 at 314 ("The entrapment by estoppel defense applies only to representations made by government officials, not to asserted reliance on legal advice or representations from non-governmental actors. Representations made by [a]

private entity as to the legality of [the defendant's conduct] cannot remotely establish a valid entrapment by estoppel defense.").

> D. **The Defendant Has Failed to Establish Reasonable Reliance to Support an Entrapment-by-Estoppel Defense.**

The Defendant claims that his reliance on Department writings to support an entrapment-by-estoppel defense meets the required reasonableness element because the writings "speak for themselves." ECF No. 64 at 16 (citing various Department writings attached to the Defendant's motion to dismiss). But that is exactly why the Defendant's reliance is unreasonable. None of the OLC opinions or other Department writings to which the Defendant cites sanctions default by a private citizen, subpoenaed in his private capacity, for documents and testimony based on a purported assertion of executive privilege over unidentified material and with a clear direction from both the former and current President that the Defendant needed to comply. Moreover, several of the opinions discuss the individualized nature of their assessments. The Defendant notably does not acknowledge these caveats or explain why, in the face of them, he was not on notice that he should inquire further. He cannot establish reasonableness under these circumstances. *W. Indies Transp., Inc.*, 127 F.3d at 313 ("[R]easonable reliance means a defendant must establish that 'a person truly desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'").

Moreover, to the extent the Defendant's failure to acknowledge or address the clear caveats within the OLC opinions to which he cites is because he did not read them, it only further establishes why his counsel's testimony about the opinions is inappropriate and inadmissible. If his counsel did not share the caveats with the Defendant, his half-summaries of the opinions—to the extent he summarized them and did not simply provide his own interpretation of how they

8

might be extended—cannot be attributed to the Government. *Hardridge,* 379 F.3d at 1194; *W. Indies Transp., Inc.*, 127 F.3d 299 at 314.

## II. THE DEFENDANT HAS NOT IDENTIFIED A LAW ENFORCEMENT OFFICIAL WHO DIRECTED HIM TO ENGAGE IN CONTEMPT.

The Defendant cannot present a public-authority defense because he still—despite raising the defense in his motion to dismiss, his opposition, and filing a notice under Federal Rule of Criminal Procedure 12.3—has not identified a law enforcement official with authority who directed the Defendant to commit the crime of contempt of Congress. This is a necessary prerequisite to presenting the defense to the jury, and the Defendant's failure to meet it bars him from using irrelevant Department writings to support such a defense at trial. *See, e.g.*, *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) ("[A] federal law enforcement officer must have actually authorized the defendant to commit the particular criminal act at issue.").

### A. The Defendant Has Failed to Demonstrate that the Office of Legal Counsel Directed Him and Had the Authority to Direct Him to Engage in Contempt.

The Defendant does not appear to contest that OLC never directed him to engage in contempt of Congress. As the Government pointed out in its motion in limine, the only direction he received from anyone associated with the Executive Branch was an unsolicited letter from the Office of White House Counsel informing the Defendant that the Government was providing him no basis to avoid compliance. ECF No. 52 at 15-16. The Defendant offers nothing to rebut this fact.

Instead, the Defendant suggests that a general policy document is sufficient for a public authority defense, relying on Judge Wilkey's opinion in *United States v. Barker*. ECF No. 64 at 18 (citing *Barker*, 546 F.2d 940, 951-52 (D.C. Cir. 1976) (Wilkey, J.)), in which the defendants were recruited by White House employee E. Howard Hunt to break into a psychiatrist's office to

9

seek evidence that could be used to discredit a leaker. Putting aside that the Defendant identifies no policy document directing him to commit contempt, even Judge Wilkey's version of a public-authority defense would not relieve the Defendant of his burden to establish that he received a direction from a law enforcement officer to violate the law. In *Barker*, Judge Wilkey cited the Department's prior legal positions not as evidence of the direction the defendants in that case received, but as evidence of the reasonableness of their belief that Hunt, who directed them to commit the burglary, was authorized to do so. *See Barker*, 546 F.2d at 949 (describing the elements of Judge Wilkey's apparent authority defense as requiring proof of "facts justifying their reasonable reliance on Hunt's apparent authority" and "a legal theory on which to base a reasonable belief that Hunt possessed such authority"); *id*. at 951-52 ("As to the reasonableness of the legal theory on which Barker's and Martinez's actions rest, they thus have at least the position of the Attorney General behind them."). A public-authority defense is not an estoppel defense. It is for individuals acting as government agents in ongoing covert activity. *See United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001) ("The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" (citations omitted)). The Defendant cannot rely on OLC opinions directed to others concerning what does not constitute contempt as a direction to him to commit a crime.

Instead of identifying a law enforcement official within OLC who directed him to commit a crime, the Defendant skips straight to the next element of the offense—actual authority—and argues that OLC employees are "law enforcement officials with actual authority to direct the Defendant to defy the subpoena." ECF No. 64 at 19-20 (quoting Gov't Mot. in Limine, ECF No. 52, at 16) (internal quotation marks omitted). Addressing the Defendant's claim about OLC's

10

authority is unnecessary because the Defendant has failed to show he received any direction from OLC in the first place.  In any event, the Defendant does not cite any regulation, statute, or other authority giving OLC the power to independently direct individuals to engage in contempt of Congress, or to commit any other crime.  Instead, he first argues, without support, that OLC is authorized to direct witnesses with respect to congressional subpoenas because it is authorized to act on behalf of the Attorney General, who, in turn, is authorized to act on behalf of the President.  *Id*. at 20 (describing the relationship between the Department of Justice and the President).  But a memorandum outlining OLC's authority, which the Defendant attached to his motion to dismiss, clearly states that "the Office of Legal Counsel exercises the Attorney General's authority . . . to advise the President and executive agencies on questions of law.  OLC is authorized to provide legal advice only to the Executive Branch; we do not advise Congress, the Judiciary, foreign governments, private parties, or any other person or entity outside the Executive Branch."  ECF No. 58-18 at 1.  The Defendant is a private party.  OLC does not even have authorization to advise him on the law.  It certainly does not have authorization to direct him to break the law.

The Defendant also claims that it is "nonsensical to assert that the DOJ lacks the authority to give assurances that a person acting in conformity with its policy as enunciated through OLC Opinions will not and cannot be criminally prosecuted."  ECF No. 64 at 20.  The Government does not make such an assertion.  The Government does not dispute that there may be instances in which the Department, as an agency authorized to enforce various laws, may issue an opinion on the legality of certain conduct that would then be binding on the Department.  But the Department's authority to interpret and enforce laws goes to the availability of an estoppel defense.  Indeed, much of what the Defendant cites to support his claim about OLC's authority discusses an estoppel defense, not a public authority one.  *See* ECF No. 64 at 21 n.10 (citing Judge Merhige's opinion

11

in *Barker* and a later D.C. Circuit opinion in *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994), discussing the defense of "reliance on an official misstatement of law"). Public authority is a different defense from entrapment by estoppel, and it requires actual authority to direct an individual to commit a crime. *United States v. Jumah*, 493 F.3d 868, 875 n.4 (7th Cir. 2007) ("In the case of the public authority defense, the defendant engages in conduct at the request of a government official that the defendant knows to be otherwise illegal, while in the case of entrapment by estoppel, because of the statements of an official, the defendant believes that his conduct constitutes no offense."). The Defendant has not shown that he received any direction to commit a crime from OLC, let alone from any authorized official.

### B. The Former President's Directions to the Defendant as a Private Citizen Cannot Support a Public Authority Defense.

The Defendant asserts that he can support a public authority defense based on the former President's authority to invoke executive privilege. *See, e.g.*, ECF No. 64 at 18-19 ("Former President Trump . . . had the authority to invoke executive privilege and Mr. Bannon was entitled to rely on that authority. . . . Mr. Bannon reasonably relied on President Trump's actual and apparent authority."). The authority to invoke a privilege to avoid answering a congressional subpoena, whatever the former President's authority might have been under these circumstances, is not an authority to direct an individual to commit a crime. In arguing otherwise, the Defendant conflates executive privilege as a defense to a contempt charge and a public authority defense. Courts are clear. A public authority defense is available to an individual who has been directed by an authorized law enforcement agent to engage in activity that otherwise would be a crime. *See supra* Part II.A; ECF No. 52 at 14; ECF No. 65 at 23. It is a defense available to those acting under "color of public authority," as the Defendant conceded in his motion to dismiss. ECF No. 59-1 at 35 (quoting *United States v. Fulcher*, 250 F.3d 244, 254 n.4 (4th Cir. 2001)). Whether a

subpoenaed witness has a valid privilege excusing him from compliance is a separate question from whether he can raise a public authority defense.

### C. The Defendant Has Failed to Show Reasonable Reliance to Support a Public-Authority Defense.

The Defendant does not provide independent evidence or analysis to support the reasonableness element of his proffered public-authority defense. Instead, he claims that his reliance on the former President, a private citizen at the time the Defendant was subpoenaed, and his reliance on a non-existent direction from OLC was reasonable for the same reasons his reliance on Department writings was reasonable to support an entrapment-by-estoppel defense, ECF No. 64 at 24—apparently that the Department writings to which he has cited "speak for themselves." But the Defendant does not identify any Department writings that authorize a private citizen to act with the authority of the Government to direct an individual to commit a crime, and the only Department document the Defendant cites outlining OLC's authority expressly states its sole role is to interpret the law, *see* ECF No. 58-18 at 1. Even under his desired apparent-authority defense, therefore, the Defendant has not established any "facts justifying [his] reasonable reliance" on a private citizen or a government department he concedes is tasked only with interpreting the law, nor does he identify "a legal theory on which to base a reasonable belief" that they are so authorized. *Barker*, 546 F.2d at 949 (Wilkey, J.).

### III. THE DEFENDANT'S CONTINUED EFFORT TO INTRODUCE EVIDENCE IN SUPPORT OF A GOOD-FAITH RELIANCE DEFENSE SHOULD BE REJECTED.

In accordance with controlling precedent, this Court has ruled that good-faith reliance on the law is not available as a defense to the charged offenses. Order, ECF No. 49. Nevertheless, the Defendant claims that his "reasonable belief regarding [OLC opinions and writings] and regarding the authority of the former President to direct him to withhold compliance based on

executive privilege are directly relevant" to the Defendant's intent in this case. ECF No. 64 at 7. To be relevant to his intent, however, the Defendant is raising nothing more than a good-faith reliance claim—that he relied on a purported assertion of executive privilege and that this therefore negates his deliberate and intentional decision to refuse compliance with the subpoena. Such a defense is counter to controlling law and this Court's Order.

To support his assertion otherwise, the Defendant first relies on a non-controlling, concurring opinion in *Keeney v. United States*, 218 F.2d 843 (D.C. Cir. 1954). But even that opinion does not support the Defendant's continued assertion that this Court should ignore controlling law and allow him to raise good-faith defenses at trial. In *Keeney*, the D.C. Circuit reversed the defendant's contempt of Congress conviction because the district court had erroneously admitted evidence at trial relating to pertinency, which, under the controlling precedent of the time, was a question left to the judge, not the jury. *Id*. at 845. The three judges on the panel then split over their view of whether the defendant's refusal to answer the question that was the subject of the conviction was excused by a privilege. *Compare id*. at 843-45 (Edgerton, J.) *with id*. at 848-49 (Danaher, J.) *and id*. at 849-50 (Prettyman, J.). It is one of those judge's opinions on that issue, that of Judge Prettyman, on which the Defendant relies. In his opinion, Judge Prettyman found that whether the defendant did, in fact, have a privilege depended on the answer to the question posed, *id*. at 849, and that, when the defendant raised a question as to her ability to answer given the respective privilege, she may be deemed not to have refused to answer, *id*. at 850. With respect to the latter finding, Judge Prettyman compared the situation to that which both the D.C. Circuit and the Supreme Court have found to be a potential defense to contempt charges—that is, whether a witness raises an objection and the relevant committee sufficiently indicates whether it wants the witness to answer despite the objection such that the

14

witness is on notice he had a choice between compliance and contempt. *Id*. (citing *Bart v. United States*, 203 F.2d 45, 49 (D.C. Cir. 1952), *overruled* 349 U.S. 219 (1955))[1]; *see also Quinn v. United States*, 349 U.S. 155, 166 (1955) ("[U]nless the witness is clearly apprised that the committee demands his answer notwithstanding his objections, there can be no conviction under s 192 for refusal to answer that question.").

Judge Prettyman was concerned, therefore, with whether a defendant-witness had sufficiently alerted or raised a privilege in order for it to be clearly decided by the relevant committee. He did not suggest, as the Defendant does, that mere reliance on a claim of privilege renders a default unintentional or not deliberate. In fact, the D.C. Circuit in *Bart v. United States*, the case on which Judge Prettyman relied for his opinion in *Keeney*, held, consistent with its earlier opinions in *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947), and *Dennis v. United States*, 171 F.2d 986, 990 (D.C. Cir. 1948), and its later opinion in *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961), that it does not. *See Bart*, 203 F.2d at 49 ("When [a witness] deliberately and intentionally refuses to answer upon a stated ground, he assumes the risk that the ground is unsound. This was the holding of the Supreme Court in the *Sinclair* case. If he refuses to answer because he says the answer would incriminate him, or says the question is not pertinent, or says that the question is improper because violative of First Amendment guaranties, he assumes the risk that a court in a later proceeding may find that his stated reason was not valid."). Here, the

---

[1] In *Bart*, the defendant objected to questions on claims that they were not pertinent and was later convicted for not answering. 349 U.S. at 220-21. The D.C. Circuit held, in part, that, because the defendant abandoned claims of pertinency once he was before the court, it did not matter whether the relevant congressional committee had clearly overruled or addressed the objection. *Id*. at 221. The Supreme Court reversed on these grounds, finding that when a witness raises an objection, the committee must make clear whether it is directing the witness to comply nonetheless in order for the refusal to be subject to a contempt charge. *Id*. at 221-23 (citing *Quinn*, 349 U.S. 155).

Defendant made his claim of executive privilege repeatedly. The Committee repeatedly and explicitly rejected the Defendant's objection and directed him to comply with the subpoena. Nevertheless, he still chose not to comply. Even under Judge Prettyman's concurring opinion, the Defendant cannot raise the good-faith defense he wishes.

To support his position that his good-faith reliance is a defense to the intent element of contempt, the Defendant also cites an archived and expressly disavowed Criminal Resource Manual published by the Department of Justice in 1997. ECF No. 64 at 7 n.4 (citing Criminal Resource Manual § 2055, available at *https://www.justice.gov/archives/jm/criminal-resource-manual-2055-public-authority-defense* (last visited May 13, 2022)); *see also United States Attorney's Manual & Resource Manual Archives*, available at https://www.justice.gov/archive/usao/usam/index.html (last visited May 13, 2022) (informing visitors that the Criminal Resource Manual to which the Defendant cites "ha[s] no current application"). Indeed, at the top of the webpage the Defendant cites, it states clearly that it contains archived material and may be outdated. In any event, the Defendant cites a section of the page discussing Eleventh Circuit cases predating the 1997 manual in which that circuit found an "innocent intent" defense to be available to defendants who had a good-faith, but mistaken, belief that they were committing crimes in cooperation with the government. *See* Criminal Resource Manual § 2055 (citing *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363-68 (11th Cir. 1994); *United States v. Anderson*, 872 F.2d 1508, 1517-18 & n.4 (11th Cir.), *cert. denied*, 493 U.S. 1004 (1989); *United States v. Juan*, 776 F.2d 256, 258 (11th Cir. 1985)). The Eleventh Circuit has since recognized that its view has not been adopted by other circuits—and, instead, expressly questioned by others. *See United States v. Alvarado*, 808 F.3d 474, 786-87 (11th Cir. 2015) (citing *United States v. Giffen*, 473 F.3d 30, 43 (2d Cir. 2006) (finding the court had "great difficulty with

this proposition [of an innocent intent defense], which would swallow the actual public authority and entrapment-by-estoppel defenses"); *United States v. Wilson*, 721 F.2d 967, 975 (4th Cir. 1983) ("Such an unwarranted extension of the good faith defense would grant any criminal carte blanche to violate the law should he subjectively decide that he serves the government's interests thereby. Law-breakers would become their own judges and juries.")). The Eleventh Circuit's holdings, however, have no bearing on the charged offenses in this case. Not only has the D.C. Circuit never recognized the defense in any case the government can find, but the D.C. Circuit has made it clear that, in the context of contempt of Congress, the reason for a Defendant's deliberate and intentional default are irrelevant to determining his criminal intent. Moreover, as articulated by the Eleventh Circuit, the "innocent intent" defense is one based on a good-faith belief that one's conduct was "done at the direction, and with the permission, of an appropriate governmental agency," *Alvarado*, 808 F.3d at 486. Even if a good-faith defense were available to the Defendant, therefore, he has never identified any government official, or agency, that directed him to commit a crime, as discussed above, *supra* Part II.A & B.

Finally, the Defendant claims that his alleged efforts to reach an accommodation with the Committee justify admission of Department opinions and writings to rebut the intent element of the offense. ECF No. 64 at 7. The Defendant appears to rely on the judicial admonition that the legislative and executive branches try to reach a compromise when they disagree over each other's authority to compel information and withhold it, respectively. *Id*. (citing ECF No. 59-1 at 47 (citing *United States v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977))). Whatever the obligations of the legislative and executive branches may be to reach an accommodation, however, the Defendant fails to explain why they are relevant to proving or disproving his deliberate decision not to show up. Nor does he explain why his compliance with the subpoena that the Committee issued to him,

a private citizen, should be excused after the Committee repeatedly rejected his requests for alternatives and directed him to comply.  The Defendant does not have the power to dictate to the Committee how it should exercise its investigative authority.  His effort to do so and refusal to comply once the Committee did not follow his directions subjected him to contempt.  *Quinn*, 349 U.S. at 165-66 (describing the choice a witness faces between contempt and following a Committee's decisions regarding raised objections).

The Defendant's effort to use Department writings at trial in support of the unavailable good-faith reliance defense should be rejected.

### IV. THE DEFENDANT OFFERS NO REBUTTAL TO THE GOVERNMENT'S SHOWING THAT EVIDENCE OF IRRELEVANT DEPARTMENT WRITINGS WILL UNDULY CONFUSE THE ISSUES AT TRIAL AND MISLEAD THE JURY.

In response to the Government's argument that the Department writings to which the Defendant has cited are inadmissible under Federal Rule of Evidence 403, the Defendant offers nothing but a personal attack on the Government attorneys' character and a conclusory claim that the Government's position is "unfounded, offensive to the fundamental constitutional principles at issue," and "has no basis in law and fact."  ECF No. 64 at 24.  The Defendant offers no explanation of these claims and no explanation of why, given the inapposite nature of the Department writings to which he cites and their irrelevance to any issue to be decided at trial, the Government is incorrect in asserting that it would be confusing and misleading to require the jury to parse them and decide their relevance and applicability to the Defendant's conduct.  The Defendant's conclusory claims cannot overcome the Government's showing of undue prejudice.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:    */s/ Amanda R. Vaughn*
        J.P. Cooney (D.C. 494026)
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Assistant United States Attorneys
        United States Attorney's Office
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov