UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATING TO OBJECTIONS TO SUBPOENA THAT DEFENDANT WAIVED

In the face of a subpoena issued by the U.S. House of Representatives' Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"), the Defendant chose to default. He did not produce a single subpoenaed document or appear for a deposition on the required date. Now, facing the consequences of that decision, he wishes to bring before the jury various procedural objections to the Committee's subpoena that he did not raise before the Committee at the time of his default. But precedent makes clear that he cannot do so because he waived these objections by failing to assert them to the Committee. To get around his waiver, the Defendant claims that the procedures to which he only now is objecting relate to elements of the charged offenses. They do not. Nothing in the Defendant's opposition to the United States' Motion in Limine to Exclude Evidence Relating to Objections to Subpoena that Defendant Waived distinguishes his circumstances from those of other witnesses deemed to have waived their objections. The Government's motion in limine should be granted.

I.  **THE DEFENDANT'S WAIVED PROCEDURAL OBJECTIONS DO NOT BEAR ON THE ELEMENT OF WHETHER THE SUBPOENA FELL WITHIN THE SCOPE OF AN AUTHORIZED INVESTIGATION.**

First, the Defendant claims that the objections that he failed to make before the Committee bear on whether the Defendant was "summoned as a witness by the authority" of the Committee. ECF No. 62 at 3. He is wrong. The Defendant misunderstands the element relating to the Committee's authority that the Government must prove at trial. The authority that the Government must prove at trial is the Committee's authority to conduct the inquiry into the subject matter to which the subpoena issued to the Defendant relates.

The very case on which the Defendant primarily relies to make his arguments, *Gojack v. United States*, makes this clear, finding that "a specific, properly authorized subject of inquiry is an essential element of the offense under Section 192." 384 U.S. 702, 708 (1966). Beginning from this proposition, the *Gojack* Court reversed the defendant's conviction in that case because the committee investigating him had not, as required by its rules, authorized the particular investigation under which it had issued the defendant a subpoena. *Id*. at 708-09. As the Court explained, the "authority" element of contempt of Congress is the authority to investigate a particular subject matter because it is the pre-requisite question to determining whether the information sought from a witness can be properly extracted. *Id*. at 712 ("Otherwise, it is not possible for witnesses to judge the appropriateness of questions addressed to them, or for the Committee, the Congress, or the courts to make the essential judgment which Section 192 requires: whether the accused person has refused 'to answer any question pertinent to the question under inquiry.'"). The *Gojack* decision had nothing to do with a witness's objections to how a Committee operated in carrying out its authorized investigation.

Other contempt of Congress cases decided by the Supreme Court and other courts similarly have made clear that the authority element of the contempt of Congress offense that must be proven at trial is a given committee's authority to investigate a certain subject matter.  In *Russell v. United States*, for example, the Court found that indictments charging witnesses with contempt of Congress for refusing to answer questions were insufficient where they did not allege the subject matter into which the relevant committee was authorized to inquire.  369 U.S. 749, 771-72 (1962). The *Russell* Court found that allegations relating to the authorized subject of inquiry was essential to sufficiently putting the defendant on notice of what he must meet because it was "the obvious first step in determining whether the questions asked were pertinent," *id*. at 758, an element without which there can be no criminality under the contempt statute, *id*. at 755, and was "also an essential preliminary to the determination of a host of other issues which typically arise in prosecutions under the statute," *id*. at 758.  See also *Barenblatt v. United States*, 360 U.S. 109, 116-23 (1959) (examining the authorized subject matter of a committee's inquiry to determine if it was legislatively authorized to compel production of the information it sought); *United States v. Rumley*, 345 U.S. 41, 42-44 (1953) (looking to the portion of the authorizing resolution describing the subject matter of the authorized inquiry to determine if the relevant committee was authorized to obtain the information it sought); *United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962) (describing the offense of contempt of Congress as requiring "that the committee or subcommittee was duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority"); *United States v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953) (describing the offense of contempt of Congress as requiring evidence that the material sought from a witness "fell within the grant of authority actually made by Congress to the investigating committee").

In none of these cases did the courts hold that, in addition to alleging and proving the scope of the relevant inquiry, the Government also must allege and prove that the relevant committee followed all of its procedural rules. Yet that is the principle for which the Defendant advocates by arguing that it is an essential element of the offense—meaning something the Government must prove—that the Committee operated pursuant to its various procedural requirements. Such a conclusion would be contrary, however, to numerous holdings that establish that witnesses can waive protections they receive from a committee's procedural requirements. *See Yellin v. United States*, 374 U.S. 109, 122 n.8 (1963) (collecting cases "in which a witness' defense has been rejected because he failed to make timely objection"—including objections based on whether questions posed by the committee are pertinent to the subject matter under inquiry, which is an element of the offense); *United States v. Bryan*, 339 U.S. 323, 335 (1950) ("We hold that the Government is not required to prove that a quorum of the Committee was present when the default occurred, and that under the circumstances disclosed by this record a defense of lack of a quorum was not open to respondent.").

The Court's opinion in *Yellin v. United States*, another case on which the Defendant relies, further clarifies that procedural protections provided by a committee's operational rules is not part of the "authority" element that the Government must prove. There, the Court examined whether the relevant committee had followed its rules relating to how and when it considered requests for non-public testimony. *Yellin*, 374 U.S. at 115-16, 123. The Court found that, because the committee had not followed its rules, and that the defendant could not have been aware of this at the time he defaulted, the defendant was entitled to prove the violation at trial. *Id*. at 123. In reaching this conclusion, the Court was not concerned with whether the committee's investigation was properly authorized; it was concerned with whether the defendant had a remedy to address the

4

denial of protections afforded under the committee's rules. *Id*. The *Yellin* Court nowhere held that the Government must prove compliance with a committee's rules as an essential element.

In addition, *Yellin* serves to undermine the Defendant's position on waiver, not support it; the defense that the *Yellin* Court left available to the defendant regarding procedural objections was one based on a procedural objection about which the defendant in that case could not have known at the time of his default. *Id*. at 123. *Yellin* acknowledged and did not disturb the holdings of prior cases in which the Court held that a defendant forfeits objections when he fails to make them to "immediately apparent deviations from Committee rules." *Id*. at 122. Here, all of the objections the Government moves to preclude the Defendant from raising at trial were known to him at the time he refused to comply with the Committee's subpoena. *Yellin* does not provide a basis for the Defendant to present evidence at trial of his secret objections to rebut the evidence of his default.

## II. THE DEFENDANT'S WAIVED PROCEDURAL OBJECTIONS DO NOT BEAR ON WHETHER HE WILLFULLY DEFAULTED.

Next, the Defendant argues that his waived objections go to the intent element of the charged offenses as well. ECF No. 62 at 6-7. Not so. The D.C. Circuit's binding holding in *Licavoli v. United States*, as this Court has recognized, ECF No. 49, was that "willfully make default" means simply that "all that is needed . . . is a deliberate intention" to default on the subpoena. 294 F.2d 207, 209 (D.C. Cir. 1961). The Defendant nowhere explains why his waived objections change his deliberate decision not to comply with the Committee's subpoena to an accidental one. To the extent he wishes to raise procedural objections in relation to the intent element of the offense, the Defendant instead appears to merely be searching for an end-run around the Court's order that he cannot present a good-faith reliance defense. The Defendant cannot

5

claim, however, that he believed his intentional default was excused because he was harboring secret objections to the Committee's operations.

Instead of establishing why his various procedural objections relate to his deliberate and intentional decision to ignore the Committee's subpoena, the Defendant simply asserts other reasons why he believes he is entitled to raise his objections. None of his arguments have merit. First, he claims that the Government is improperly attempting to place a burden on the Defendant under which he had "an obligation to notify the Select Committee" of its alleged procedural defects, ECF No. 62 at 7, but that is not the Government's position. The Defendant had no such obligation unless he wanted to preserve an objection for this Court. Because the Defendant did not raise the objections before the Committee and allow the Committee to resolve them, the Defendant did not preserve the issue for this Court to review. For this reason, his reliance on *United States v. Bart*, 349 U.S. 219, 220-22 (1955), and *Quinn v. United States*, 349 U.S. 155, 164 (1955), ECF No. 62 at 7-8, is misplaced. The Court in those cases held that a committee must clearly overrule an objection once made in order for a witness's refusal to comply to be subject to contempt. It never held that a congressional committee must guess at the ways a witness might object to a committee's operations months or years later.

Next, the Defendant argues that he did, in fact, put the Committee "on notice" regarding the supposed "defect" in the Committee's rule on outside counsel because his lawyer asked Committee counsel questions about the Committee rule. ECF No. 62 at 7-8. But asking if a rule exists is not the same as objecting to its application. The Defendant's attorney, Robert Costello, has made clear that the Defendant specifically chose not to raise the objection. *See* Interview Report, Robert Costello, ECF No. 28-4, at US-001774 ("Costello did not ask [Committee Counsel] to change the rules [regarding outside counsel]. Costello noted [Committee Counsel] was not in a

6

position to change the Select Committee's rules anyway. Costello did not communicate his issues with the Select Committee's rules to anyone in the Select Committee who actually had the ability to change the rules."); Def.'s Surreply, ECF No. 39, at 6, 7 (stating that "Mr. Costello never claims to have advised the Select Committee" that the Defendant would not attend the deposition absent it allowing the former President's counsel to attend and that "Mr. Costello did not make that request of Staff Counsel" because "Costello was under no obligation to reveal to Staff Counsel that Mr. Bannon had a complete defense to the subpoena's demands based upon the OLC opinions"). The Defendant cannot now play a game of "gotcha" with the Committee. *See Bryan*, 339 U.S. at 331 ("A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity.").

Finally, the Defendant complains again that he did not receive a copy of Section 3(b) of H. Res. 8, ECF No. 62 at 8-9, but this assertion falls flat because the Committee was prepared to provide it to him before beginning his deposition on October 14, 2021, even though the Defendant never raised it as an objection, *see* Interview Report, Committee Counsel, ECF No. 35-2 at US-000362, and specifically advised the Defendant of his right to receive a copy of Section 3(b) by attaching to his subpoena the rules regarding the Committee's deposition authority, ECF No. 53-1 at US-000417. The Defendant's claim that the Committee "misled" him on this front is baseless.

### III. THE DEFENDANT'S ATTEMPTS TO DISTINGUISH WAIVER PRECEDENT FAIL.

Finally, the Defendant claims that two of the cases to which the Government cites for the principle that witnesses can waive objections to a congressional committee's procedures are inapposite, ECF No. 62 at 4-6, but he fails to support his assertion. He argues that *Bryan*, 339 U.S.

7

323 (1950), is a "completely different circumstance" from his because the waived procedural objection in *Bryan* was to whether there was a Committee quorum present at the time of the witness's scheduled appearance, and the *Bryan* Court found that the Government was not required to prove quorum. ECF No. 62 at 5. The Defendant's case is no different, though—here, the Government is not required to prove to the jury that Rep. Cheney uses the title "ranking minority member," or furnish evidence on the Committee's rules on outside counsel or Section 3(b) of H. Res. 8. These are not elements of the offense. They are procedural issues that the Defendant could have raised before the Committee but did not.

Next, the Defendant argues that *Hutcheson v. United States*, 369 U.S. 599 (1962) "does not involve what evidence may be presented at trial." ECF No. 62 at 5. But *Hutcheson* does not condition waiver on whether the judge or the jury will decide the issue. The opinion does not even note whether the relevant objection in that case was considered before or during trial in the district court. Instead, the *Hutcheson* Court held that an objection "must be adequately raised before the inquiring committee if [it] is to be fully preserved for review in this Court." 369 U.S. at 611 ("To hold otherwise would enable a witness to toy with a congressional committee in a manner obnoxious to the rule that such committees are entitled to be clearly apprised of the grounds on which a witness asserts a right of refusal to answer."). The Court did not specify any difference between whether it is an issue for the judge or jury once "in this Court." Indeed, the Supreme Court has found waiver to apply even where the issue arises in relation to the evidence to be presented to the jury at trial. *See Bryan* 339 U.S. at 326-27; *McPhaul*, 364 U.S. at 378-79. *Hutcheson* only affirms that the Defendant cannot raise his waived objections before the jury here.

8

## IV. CONCLUSION

The Defendant failed to raise any of his procedural objections to the subpoena to the Committee at the time of his default. He waived them and should not be permitted to confuse the jury with irrelevant evidence and arguments about them. The Government's motion in limine should be granted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Amanda R. Vaughn
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov