IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | )  |  |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | No. 21-cr-00670-CJN |
| v. | ) | |
| | ) | |
| **STEPHEN K. BANNON,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | |

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF

U.S. House of Representatives Minority Leader O. Kevin McCarthy and U.S. House of Representatives Minority Whip Stephen J. Scalise (hereinafter the "House Minority Leadership"), by and through the undersigned counsel, respectfully seek this Court's Leave to file an amicus curiae brief, a copy of which is attached hereto.

As the Court is aware, on May 10, 2022, Douglas N. Letter, Esq., General Counsel to the U.S. House of Representatives, hand-filed a Motion with the Clerk of the Court seeking leave to file an amicus curiae brief in support of the government's opposition to defendant Stephen K. Bannon's Motion to Dismiss, *United States v. Bannon*, No. 21-cr-670 (D.D.C. May 6, 2022) (ECF No. 65), as well as in support of its Motion in Limine to exclude evidence relating to objections to the subpoena. *United States v. Bannon*, No. 21-cr-670 (D.D.C. April 15, 2022) (ECF No. 53). Also on May 10, 2022, the Speaker of the U.S. House of Representatives issued a press release highlighting the proposed amicus curiae brief as well as the position taken by the House General Counsel in that brief. Press Release, Nancy Pelosi, Speaker of the U.S. House of Representatives (May 10, 2022).[1] Specifically, Speaker Pelosi advised the public that, "the House filed a motion to submit an amicus brief in the D.C. District Court case of *United States v.*

---

[1] *Available at* https://www.speaker.gov/newsroom/51022-1.

*Bannon*," that through its vote to hold Mr. Bannon in contempt, *see* H. Res. 730, the House, "upheld the genius of our Constitution: the separation of powers, which safeguards the Congress' authority to conduct necessary and appropriate oversight," and that, "[b]y addressing many of Bannon's baseless arguments before the D.C. District Court, the House continues to defend this Constitutional power as well as its essential prerogative to establish its own rules and practices." *Id.*

The House General Counsel's involvement in this action was authorized by a majority of the House Bipartisan Legal Advisory Group ("BLAG"), which, pursuant to House Rule II.8(b), is exclusively authorized to "speak[] for, and articulate[] the institutional position of, the House in all litigation matters" unless "otherwise provided by the House."  The BLAG is composed of the Speaker of the House, the House Majority and Minority Leaders, and the House Majority and Minority Whips. *Id.*  Of note, after declining to support the BLAG's authorization, neither the House Minority Leader nor the House Minority Whip were provided drafts of the House General Counsel's filings before they were submitted to the Court and the articulated basis for their opposition is relegated to a footnote within the motion, which was conspicuously not published by Speaker Pelosi, noting that such opposition was:  "out of concern for damaging institutional prerogatives, as the Committee failed to adhere to the 'shall' requirements proscribed by H. Res. 503 as required by the Rules of the House of Representatives and as required by the Supreme Court in *Yellin v. United States*, 374 U.S. 109 (1963)."

Since the House General Counsel's submission to this Court, the House Minority Leadership understands the Court to have advised the parties that it would accept only electronically filed motions in this matter.  However, there is no indication that the House General Counsel has endeavored to properly re-file any motion seeking leave to file an amicus

curiae brief while the House Speaker's press release and the accompanying proposed amicus brief remains publicly available. Accordingly, the Minority Leadership submit this motion and accompanying amicus brief so as to clarify for the Court the complete position of the U.S. House of Representatives and to correct misstatements of law contained within the House General Counsel's proposed amicus brief.

### I. Argument

Although neither the Federal Criminal Rules of Procedure nor this Court's Local Criminal Rules expressly authorize the Court to accept brief of amicus curiae in criminal cases, this District's Local Civil Rules include numerous provisions that are applicable in both civil and criminal cases. *See* LCvR 1.1 ("These Rules govern *all* proceedings in the United States District Court for the District of Columbia. These Rules supplement the Federal Rules of Civil *and Criminal* Procedure and shall be construed in harmony therewith." (emphasis added)). *See also* LCvR 16.2(b) ("Actual trials of civil or *criminal* cases in this Court or in the Superior Court will be accorded priority over any nontribal matters in either court." (emphasis added)); LCvR 40.1 ("Unless otherwise provided in these Rules, each civil and *criminal* case shall be assigned to a single judge in the manner provided herein." (emphasis added)); LCvR Rule 40.5(a)(1) ("*Criminal* cases are deemed related when . . . ." (emphasis added)). Thus, courts in this District have authorized the submission of amicus curiae briefs pursuant to Local Rule 7(o). *See* Minute Order, *United States v. Clinesmith*, No. 20-cr-00165-JEB (D.D.C. Dec. 22, 2020) (granting motion for leave to file brief of amicus curiae, which argued that LCvR 7(o) permitted the same). Similarly, Courts in this District have routinely requested (and accepted) such briefs. *See United States v. Caplinger*, No. 21-cr-00342-PLF (D.D.C. Feb. 23, 2022) (ECF No. 53); Minute Order, *United States v. Flynn*, No. 17-cr-00232 (D.D.C. May 12, 2020). *See also* Mot. for Leave to File Amicus Curiae, *United States v. Clinesmith*, No. 20-cr-00165-JEB (D.D.C. Dec. 17, 2020) (ECF

No. 28) (citing examples). Even apart from these specific rules, "precedent and experience have recognized the authority of courts to appoint an amicus to assist their decision-making in similar circumstances, including in criminal cases . . . ." *In re Flynn*, 973 F.3d 74, 81 (D.C. Cir. 2020).

"An *amicus* brief should normally be allowed . . . when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008). Courts allow "parties to file *amicus* briefs where the brief will assist the judges by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs." *In re Search of Info.*, 13 F. Supp. 3d 157, 167 (D.D.C. 2014). Local Civil Rule 7(o) requires a motion for leave to file an amicus brief to, "concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why the matters asserted are relevant to the disposition of the case."

> A. *House Minority Leadership Have an Institutional Interest in Defending House Prerogatives.*

Historically, the BLAG has unanimously agreed to intervene or otherwise involve itself in matters that involve the institutional prerogative of the House. *See generally* Mot. Leave File *Amicus Curiae*, *United States v. Collins et al.*, No. 1:18-cr-00567-VSB (S.D.N.Y. Apr. 4, 2019) (ECF No. 76) (addressing privilege of non-disclosure under the Speech or Debate Clause); Mot. Leave Intervene, *Am. Oversight v. U.S. Dep't Treasury, et al.*, No. 1:17-cv-02078-RBW (D.D.C. Apr. 13, 2018) (ECF No. 15) (addressing inapplicability of the Freedom of Information Act to congressional communications with federal agencies); Mot. Leave Intervene, *Am. Oversight v. U.S. Dep't Health Human Servs., et al.*, No. 1:17-cv-00827-EGS, (D.D.C. Sept. 15, 2017) (ECF No. 19) (same). Recently, BLAG authorization has been partisan, with the Minority Leadership opposing any authorization of the House General Counsel to engage in any particular litigation.

*See* U.S. House *Amicus Curiae* Brief, *State of New York, et al., v. U.S. Dep't Health Human Servs., et al.*, No. 1:20-cv-5583-AKH, (S.D.N.Y. 2020) (ECF No. 72) (one of many cases where BLAG issued amicus briefs relating to the Trump administration's attempt to limit the Affordable Care Act's antidiscrimination section noting, "The Republican Leader and Republican Whip dissented"); U.S. House *Amicus Curiae* Brief, *Ass'n for Cmty. Affiliated Plans, et al. v. U.S. Dep't Treasury, et al.*, No. 19-5212 (D.C. Cir. Nov. 12, 2019) (addressing validity of short-term limited duration insurance plans under the Affordable Care Act noting, "The Republican Leader and Republican Whip dissented"); Mot. Leave Intervene, *Trump, et al. v. Deutsche Bank AG, et al.*, No. 1:19-cv-03826 (S.D.N.Y. May 3, 2019) (ECF No. 25) (addressing validity of subpoenas for incumbent President's financial records noting, "The Republican Leader and the Republican Whip decline to join in this motion").  Only rarely, however, has the House Minority Leadership separately sought to provide its perspective or otherwise assist the Court in such matters.  *See*, *e.g.*, *Amicus Curiae* Brief of Objecting Members of the Bipartisan Legal Advisory Group, *Windsor v. United States*, No. 12-2435 (2nd Cir. Sep. 7, 2012) (arguing Section 3 of the Defense of Marriage Act is unconstitutional).

House Minority Leadership does so again now because of an institutional concern for the prerogatives of the House.  Specifically, the House General Counsel's publicly disclosed, yet unfiled, amicus brief misstates the law and misleads the Court (and the public) concerning *any* legal interest of the House in a criminal prosecution for contempt of congress under Section 192 of Title 2 of the United States.  Like the Speaker's press release, the House General Counsel's proposed amicus submits that, "[t]he House is in the best position to provide this Court with the House's interpretation of its own rules and procedures, with Defendant has put at issue" and "[b]ecause the Rulemaking Clause bars federal courts from usurping the House's rulemaking

Page **5**

process and from invalidating House actions when a litigant (or even a court) might read the relevant House rules differently, it is important for this Court to have before it the official position of the House regarding the meaning of its rules."

Contrary to the assertion of the House General Counsel, however, this case is not one that implicates either the Rulemaking Clause of the Constitution, *see United States v. Rostenkowski*, 59 F.3d 1291, 1305 (D.C. Cir. 1995), nor the important doctrine of separation of powers. *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 500 (1975).

This is so because, as Supreme Court Justice Frankfurter eloquently articulated in concurring with the Court's *Watkins* majority: "By . . . making the federal judiciary the affirmative agency for enforcing the authority that underlies the congressional power to punish for contempt, Congress necessarily brings into play the specific provisions of the Constitution relating to the prosecution of offenses and those implied restrictions under which courts function." *Watkins v. United States*, 354 U.S. 178, 216 (1957) (Frankfurter, J., concurring). The "restrictions" to which Justice Frankfurter referred were articulated by the Court's majority: "the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense." *Id.* at 209.

Moreover, "it is perfectly clear that the Rulemaking Clause is not an absolute bar to judicial interpretation of the House Rules." *Rostenkowski*, 59 F.3d at 1305 (quoting *Yellin*, 374 U.S. at 114 (1963)); *Yellin*, 374 at 114 ("It has long been settled . . . that rules of Congress and its committees are judicially cognizable."); *Eastland*, 421 U.S. at 509 n.16 ("Our task [is] to perform the judicial function in criminal prosecutions, and we [may] properly scrutinize[] the predicates of [such] criminal prosecutions."). Similarly, more than merely finding congressional rules cognizable, the Supreme Court has held that when a rule relates to the lawful authorization

for an inquiry, it "must be strictly observed." *Gojack v. United States*, 384 U.S. 702, 708 (1966). Thus, the Supreme Court has recognized, in "criminal prosecutions," "[d]fferent problems [are] presented" than in "attempts by private parties to impede congressional action," which necessarily implicates the important doctrine of separation of powers. *Eastland*, 421 U.S. at 509 n.16. As the Court further noted in cases of alleged contempt, "[a]ny interference with congressional action has already occurred when the cases reached us, and Congress was seeking the aid of the judiciary to enforce its will." *Id.* Here too, scrutiny of the House rules does not "interfere with the discretionary decisions of Congress." *Rostenkowski*, 59 F.3d at 1304. Nevertheless, "a sufficiently ambiguous House Rule is non-justiciable" and judicial scrutiny is permitted only where a Rule, "is sufficiently clear that [the court] can be confident [in its] interpretation." *Id.* at 1306.

And so, it is the Congress that has invited judicial scrutiny of its rules and its adherence thereto when it asks the judiciary to deprive one of their liberty. *See Christoffel v. United States*, 338 U.S. 84, 88 (1949) ("The question is neither what rules Congress may establish for its own governance, nor whether presumptions of continuity may protect the validity of its legislative conduct. The question is rather what rules the House has established and whether they have followed them.").

### B. Minority Leadership Deliberately Supports Neither Party

To support either party in this action would contravene the House prerogative defended by the House Minority Leadership with this filing. As Justice Frankfurter articulated in his *Watkins* concurrence, since 1857 the House has delegated to the judiciary the task of enforcing the authority that "underlies the congressional power to punish for contempt." *Watkins*, 354 U.S. at 216 (Frankfurter, J., concurring). "The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written." *Marbury v.*

*Madison*, 5 U.S. 137 (1803).  Thus, it is now for the judiciary to oversee a determination of guilt and not for the House, including the Minority Leadership.

      C. *The House General Counsel Misstates the Law and Misleads the Court (and the Public).*

The judiciary's oversight includes the obligation to ensure the preservation of those rights afforded by the Due Process Clause of the Fifth Amendment to the Constitution.  The House General Counsel's *ipsit dixit* assertion that House Resolution 503 "does not require that *all* thirteen Members be appointed in order for the Select Committee to function, and [the House General Counsel is] aware of no rule or law providing that authorization to appoint thirteen Members required appointment by the Speaker of that precise number" both misstates the law and misleads the Court (and the public).

Tellingly, the House General Counsel cites no authority *for* the proposition that where a House Resolution establishing a select committee directs the House Speaker to appoint a specific number of committee Members – "The Speaker *shall* appoint 13 Members to the Select Committee, 5 of whom *shall* be appointed after consultation with the minority leader, H. Res. 503 § 2(a) (emphasis added) – that such a mandate is merely discretionary.  Indeed, the lack of any ambiguity in Resolution 503's plain language is what makes the language "judicially cognizable."  At best, the House General Counsel's proffered contradictory interpretation of the plain language of the Resolution renders it "sufficiently ambiguous" so as to "run[] the risk of the court intruding into the sphere of influence reserved to the legislative branch under the Constitution."  *Rostenkowski*, 59 F.3d at 1306.

Similarly, the House General Counsel's assertion that the term "ranking minority member" – a term that is nowhere defined in the House Rules, Resolution 503 or the House

deposition regulations and whose practical use differs as between the Democratic caucus[2] and the Republican conference rules[3] – also is mere *ipsit dixit*. Nor is the requirement that both the Majority and the Minority have representation on the select committee a matter of form over substance. Minority representation ensures Select Committee deponents are afforded oversight of adherence to congressional rules, precedents, and established decorum. *See* Constitution, Jefferson's Manual and Rules of the House of Representatives, H.R. Doc. No. 116-177, 117th Cong., 2d Sess., § 284 ("So far the maxim is certainly true and is founded in good sense that as it is always in the power of the majority, by their numbers, to stop any improper measures proposed on the part of their opponents, the only weapons by which the minority can defend themselves against similar attempts from those in power are the firms and rules of proceeding which have been adopted as they were found necessary, from time to time, and are become law of the House by a strict adherence to which the weaker party can only be protected from these irregularities which these forms were intended to check and which the wantonness of power is but too often apt to suggest to large and successful majorities."). Jefferson's Manual is incorporated into House Rules and a continuing source of authority for its proceedings. As the annotated text provides, since 1837 the Manual should "govern the House in all cases to which they are applicable and in which they are not inconsistent with the standing rules and orders of the House . . ." Accordingly, House Rules routinely make reference to the importance of participation by the minority so as to avoid the abuse recognized by the Manual as a danger in any parliamentary body. *See* House Rule XI(2)(j)(1) ("Whenever a hearing is conducted by a

---

[2] House Democratic Caucus Rules Rule 21 (D)(1)(a) discusses selecting Ranking Member and Vice-Ranking member by election or secret ballot, with no reference to order of appointment to the Committee.

[3] House Republican Conference Rules Rule 14 (e) discusses term limits of Chairs or Ranking Members to no more than three terms with no reference to seniority or order of appointment to the Committee.

committee on a measure or matter, *the minority members* shall be entitled, upon request to the chair *by a majority of them* before the completion of the hearing, to call witnesses selected by the minority to testify with respect to that measure or matter during at least one day of hearing thereon.").

The Select Committee's authority is limited to its authorizing resolution and failure to adhere to that resolution dooms any subsequent contempt prosecution. *See Liveright v. United States*, 347 F.2d 473, 474-476 (D.C. Cir. 1965) (invalidating contempt conviction where "the Subcommittee itself[,] [as opposed to its Chairman,] never decided, or even considered, whether appellant Liveright should be compelled to testify before it"); *Shelton v. United States*, 327 F.2d 601, 606 (D.C. Cir. 1963) ("Since the Subcommittee [as opposed to its Chief Counsel] did not authorize the issuance of the subpoena to Shelton, the subpoena was invalid."). Had the House desired the Select Committee's subpoena authority to "function[] differently than other House Committees" it should have explicitly so said. Absent unambiguity, "judicial interpretation . . . runs the risk of the court intruding into the sphere of influence reserved to the legislative branch under the Constitution. *Rostenkowski*, 59 F.3d at 1307.

House General Counsel also misleads the Court with respect to the requirement that a subpoenaed witness be provided a copy of Section 3(b) of House Resolution 8, 117th Cong. (2021), which concerns deposition procedures. The D.C. Circuit confronted a similar challenge in *United States v. Reinecke*, 524 F.2d 435 (D.C. Cir. 1975). There, a witness challenged his conviction for perjury based on the Senate Judiciary Committee's failure to publish its revised rule concerning the requirement of a quorum in the Federal Register. *See id.* at 438-440. Although the government argued the proper publication of the relevant rule would not have impacted the witness's decision to not comply with the subpoena in question, the court

nevertheless vacated his conviction because where, "competence [of the tribunal] is not shown, the crime of perjury is not established regardless of whether the witness relied on the absence of a quorum." *Id.* at 440 n.15 (citing *Christoffel*, 338 U.S. at 88).

\* \* \*

Having delegated to the judiciary the task of enforcing the authority that "underlies the congressional power to punish for contempt," *Watkins*, 354 U.S. at 216 (Frankfurter, J., concurring), the House has "limited" its role in any subsequent prosecution. *Marbury v. Madison*, 5 U.S. 137 (1803). Of course, the judiciary is itself bound by the "restrictions" imposed upon it by, *inter alia*, the Due Process Clause of the Fifth Amendment to the Constitution, and any defendant in a prosecution for criminal contempt of congress is entitled to "the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense." *Watkins v. United States*, 354 U.S. 178, 209 (1957). To that end, judicial scrutiny of "what rules the House has established and whether they have followed them," *Christoffel*, 338 U.S. at 88, is permissible where said rules are "sufficiently clear." *Rostenkowski*, 59 F.3d at 1306. *See Yellin v. United States*, 374 U.S. 109, 123 (1963) ("The Committee prepared the groundwork for prosecution in Yellin's case meticulously. It is not too exacting to require that the Committee be equally as meticulous in obeying its own rules."). However, "for a court to interpret a House Rule in the absence of 'judicially discoverable and manageable standards' would require the court to make 'an initial policy determination of a kind clearly for nonjudicial discretion,' and would run the risk of intrusion into the legislative sphere." *Rostenkowski*, 59 F.3d at 1307.

## CONCLUSION

For the foregoing reasons, the House Minority Leadership respectfully requests leave to file the attached amicus brief.

[SIGNATURE ON NEXT PAGE]

| | |
|---|---|
| Dated: May 24, 2022 | Respectfully submitted, |

              */s/ Stanley E. Woodward, Jr.*
          Stan M. Brand (D.C. Bar No. 213082)
          Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
          BRAND WOODWARD, ATTORNEYS AT LAW
          1808 Park Road NW
          Washington, DC  20010
          202-996-7447 (telephone)
          202-996-0113 (facsimile)
          Stanley@BrandWoodwardLaw.com

          *Counsel to the House Minority Leadership*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES,** | ) ) ) | No. 21-cr-00670-CJN |
| v. | ) ) |  |
| **STEPHEN K. BANNON,** | ) ) |  |
| DEFENDANT. | ) ) |  |

## CERTIFICATE OF SERVICE

On May 24, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                              */s/ Stanley E. Woodward, Jr.*
                                              Stan M. Brand (D.C. Bar No. 213082)
                                              Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                              BRAND WOODWARD, ATTORNEYS AT LAW
                                              1808 Park Road NW
                                              Washington, DC  20010
                                              202-996-7447 (telephone)
                                              202-996-0113 (facsimile)
                                              Stanley@BrandWoodwardLaw.com

                                              *Counsel to the House Minority Leadership*