**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES,** | ) |
| | ) |
| | )      No. 21-cr-00670-CJN |
| **v.** | ) |
| | ) |
| **STEPHEN K. BANNON,** | ) |
| | ) |
| **DEFENDANT.** | ) |
| | ) |

<u>**BRIEF OF**</u>

<u>**THE U.S. HOUSE OF REPRESENTATIVES MINORITY LEADER KEVIN O. McCARTHY**</u>

<u>**AND**</u>

<u>**THE U.S. HOUSE OF REPRESENTATIVES MINORITY WHIP STEPHEN J. SCALISE**</u>

<u>**AS AMICUS CURIAE**</u>

## <u>TABLE OF CONTENTS</u>

**Table of Authorities** ...................................................................................................3

**Introduction and Statement of Interest** ....................................................................4

**Argument** .....................................................................................................................4

    A. The Competence of the House Select Committee Requires the Appointment of Thirteen Members ......................................................................................................7

    B. "Ranking Minority Member" is a Term Sufficiently Ambiguous so as to Render it Non-Justiciable ......................................................................................................10

    C. Adherence to House Rules is a Necessary Predicate to Criminal Prosecution for Contempt of Congress ..........................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barker v. Conroy*, 921 F.3d 1118 (D.C. Cir. 2019) ........................................................6

*Christoffel v. United States*, 338 U.S. 84 (1949) .......................................... 5, 8, 9, 14

*Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975) ............... 6, 7, 8, 13

*Gojack v. United States*, 384 U.S. 702 (1966) ..........................................................5, 8

*Liveright v. United States*, 347 F.2d 473 (D.C. Cir. 1965) ..........................................12

*Marbury v. Madison*, 5 U.S. 137 (1803) ................................................................5, 14

*RNC v. Pelosi*, 2022 U.S. Dist. LEXIS 78501 (D.D.C. May 1, 2022) ..............................7

*SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 (1981) .....................................6

*United States v. Reinecke*, 524 F.2d 435 (D.C. Cir. 1975) ................................ 9, 13, 14

*United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995) ............... 5, 6, 7, 8, 9, 13

*Watkins v. United States*, 354 U.S. 178 (1957) ........................................ 4, 5, 6, 8, 14

*Yellin v. United States*, 374 U.S. 109 (1963) ......................................................5, 8, 9

**Statutes**

2 U.S.C. § 192 .........................................................................................................4, 12

**Rules**

Constitution, Jefferson's Manual and the Rules of the House of Repesentatives, H.R. Doc. No. 116-177, 117th Cong., 2d Sess., § 284 ...................................................................12

House Resolution § 503 ..................................................................................... 6, 7, 8, 10

**Regulations**

167 Cong. Rec. H41 (daily ed. Jan. 4, 2021) (117th Cong. Reguls. For Use of Dep. Auth.) . 10, 13

**Constitutional Provisions**

Article I § 5 Cl. 2 of the Constitution ............................................................................10

### Introduction and Statement of Interest

U.S. House of Representatives Minority Leader Kevin McCarthy and U.S. House of Representatives Minority Whip Steve Scalise (hereinafter the "House Minority Leadership"),[1] submit this amicus curiae brief out of concern for the potential damage to House institutional prerogatives resulting from a decision of this Court in the above-captioned matter. The House Minority Leadership represent the only Members of the House Bipartisan Legal Advisory Group not to vote to authorize the House General Counsel to articulate any institutional position in this matter.

### Argument

> The power of the Congress to punish for contempt of its authority is . . . rooted in history. It has been acknowledged by [the Supreme Court] since 1821. Until 1857, Congress was content to punish for contempt through its own process. By the Act of January 24, 1857, as amended by the Act of January 24, 1862, Congress provided that, 'in addition to the pains and penalties now existing' (referring of course to the power of Congress itself to punish for contempt), 'contumacy in a witness called to testify is a matter properly under consideration by either House, and deliberately refusing to answer questions pertinent thereto, shall be a misdemeanor against the United States.' This legislation is now 2 U.S.C. § 192. *By thus making the federal judiciary the affirmative agency for enforcing the authority that underlies the congressional power to punish for contempt, Congress necessarily brings into play the specific provisions of the Constitution relating to the prosecution of offenses and those implied restrictions under which courts function.*

*Watkins v. United States*, 354 U.S. 178, 216-217 (1957) (Frankfurter, J., concurring) (citations omitted) (emphasis added).

---

[1] Pursuant to Rule 7(o)(5) of the Local Rules for the U.S. District Court for the District of Columbia and Rule 29(a)(4) of the Federal Rules of Appellate Procedure the House Minority Leadership advise that no party or person other than the House Minority Leadership or their counsel participated in or contributed money for the drafting of this brief.

Having delegated to the judiciary the task of enforcing the authority that "underlies the congressional power to punish for contempt," *Watkins*, 354 U.S. at 216 (Frankfurter, J., concurring), the House has "limited" its role in any subsequent prosecution. *Marbury v. Madison*, 5 U.S. 137, 176 (1803) ("The powers of the legislature are defined, and limited; and those limits may not be mistaken, or forgotten, the constitution is written."). Of course, the judiciary is itself bound by the "restrictions" imposed upon it by, *inter alia*, the Due Process Clause of the Fifth Amendment to the Constitution and any defendant in a prosecution for criminal contempt of congress is entitled to, "the same degree of explicitness and clarity that the Due Process Clause requires in the expression of any element of a criminal offense." *Watkins*, 354 U.S. at 209.

To that end, the judicial scrutiny of "what rules the House has established and whether they have followed them," *Christoffel v. United States*, 338 U.S. 84, 88-89 (1949), including those rules conferring the lawful authorization of any inquiry, *Gojack v. United States*, 384 U.S. 702, 708 (1966) ("There is no basis for invoking criminal sanctions to punish a witness for refusal to cooperate in an inquiry which was never properly authorized."), is permissible where said rules are "sufficiently clear." *United States v. Rostenkowski*, 59 F.3d 1291, 1306 (D.C. Cir. 1995). *See Christoffel*, 338 at 88-89 ("The question is neither what rules Congress may establish for its own governance, nor whether presumptions of continuity may protect the validity of its legislative conduct. The question is rather what rules the House has established and whether they have followed them."). *See also Yellin v. United States*, 374 U.S. 109, 124 (1963) ("The Committee prepared the groundwork for prosecution in Yellin's case meticulously. It is not too exacting to require that the Committee be equally as meticulous in obeying its own rules."). However, "[w]here . . . a court cannot be confident that its interpretation is correct, there is too

great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone." *Rostenkowski*, 59 F.3d at 1306-1307.

Here, Douglas N. Letter, Esq., General Counsel to the U.S. House of Representatives, seeks to "elaborate on the legitimate legislative purpose and authority of the House Select Committee to Investigate the January 6th Attack on the United States Capitol, as well as the validity of the Select Committee subpoena [at issue]." The House General Counsel's interference with the judiciary's "affirmative agency for enforcing the authority that underlies the congressional power to punish for contempt," *Watkins*, 354 U.S. at 216 (1957) (Frankfurter, J., concurring), is improper in that once a referral for contempt has been made the provenance of the House has concluded, *see Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 509 n.16 (1975) ("Any interference with congressional action has already occurred when the cases reached us, and Congress was seeking the aid of the judiciary to enforce its will."),[2] and further involvement risks interference with the alleged contemnors due process rights. *See SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 125 n.9 (1981) ("[A]n agency could be found to be abusing the court's process if it vigorously pursued a charge because of the influence of a powerful third party without consciously and objectively evaluating the charge."). Moreover, the House General Counsel's Brief misstates the law and misrepresents the complete position of the U.S. House of Representatives with respect to House prerogatives.

Specifically, this Amicus Brief addresses: (i) the House General Counsel's assertion that "[House Resolution § 503] does not require that *all* thirteen Members be appointed in order for

---

[2] *Barker v. Conroy*, 921 F.3d 1118 (D.C. Cir. 2019), cited by the House General Counsel, is not to the contrary. There, the appellant, the U.S. House of Representatives Chaplin, was represented by the House General Counsel who necessarily provided his view of the "scope and meaning of House internal rules and procedures." Moreover, that case did not involve the delegation of authority by the House to the judiciary.

the Select Committee to function;" (ii) the House General Counsel's assertion that, "Representative Cheney, by virtue of being the first minority party Member appointed to the Select Committee, is, by definition, the senior ranking minority member of the Select Committee" and (iii) the House General Counsel's assertion that House Rules require only that a deponent be provided with a copy of House deposition procedures immediately prior to the deposition in question.

      A.  *The Competence of the House Select Committee Requires the Appointment of Thirteen Members.*

House Resolution 503 § 2(a) provides:  "The Speaker *shall* appoint 13 Members to the Select Committee, 5 of whom *shall* be appointed after consultation with the minority leader." (emphasis added).  It is undisputed that the Speaker of the House failed to appoint 13 Members to the Select Committee.

In its *post-hac* attempt to defend its contempt referral, the House General Counsel submits that the Resolution's language "does not require that *all* thirteen Members be appointed in order for the Select Committee to function" and cites the ruling of a court in this District finding that:  "If the Court reads § 2(a)'s 'shall' as mandatory, it would be 'interpret[ing] the Rule differently than . . . the [House] itself' and 'would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone.'"  *RNC v. Pelosi*, 2022 U.S. Dist. LEXIS 78501, at *45 (D.D.C. May 1, 2022) (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)).

However, as the Supreme Court has recognized, in "criminal prosecutions," "[d]ifferent problems [are] presented" than in "attempts by private parties to impede congressional action," which necessarily implicates the important doctrine of separation of powers.  *Eastland*, 421 U.S. at 509 n.16.  Thus, in criminal prosecutions, "[the court's] task [is] to perform the judicial

function in criminal prosecutions, and we [may] properly scrutinize[] the predicates of [such] criminal prosecutions." *Id. See also See Christoffel*, 338 U.S. at 88-89 ("The question is neither what rules Congress may establish for its own governance, nor whether presumptions of continuity may protect the validity of its legislative conduct.  The question is rather what rules the House has established and whether they have been followed.").

Where a House Rule is "sufficiently clear" such that the court, "can be confident of [its] interpretation," "the risk of the court introducing into the sphere of influence reserved to the legislative branch under the Constitution . . . is acceptably low." *Rostenkowski*, 59 F.3d at 1306. Here, the word "shall" in House Resolution 503 § 2(a) is not permissive; it does not mean "may."  The House, through a vote of its Members in the House Chamber, established the Select Committee, dictated its composition, and described its purposes and functions.  This Court has no obligation to defer to the *post-hac* rationalization of the House or its General Counsel now that it has been delegated the task of enforcing the authority that "underlies the congressional power to punish for contempt." *Watkins*, 354 U.S. at 216 (Frankfurter, J., concurring).  *See also Rostenkowski*, 59 F.3d at1305 ("[I]t is perfectly clear that the Rulemaking Clause is not an absolute bar to judicial interpretation of the House Rules." (citing *Yellin*, 374 U.S. at 114 (1963)); *Yellin*, 374 at 114 ("It has long been settled . . . that rules of Congress and its committees are judicially cognizable."); *Eastland*, 421 U.S. at 509 n.16 ("Our task [is] to perform the judicial function in criminal prosecutions, and we [may] properly scrutinize[] the predicates of [such] criminal prosecutions.").  More than merely finding congressional rules cognizable, the Supreme Court has held that when a rule relates to the lawful authorization for an inquiry, rules "must be strictly observed." *Gojack*, 384 U.S. at 708.

Failure of the House Speaker to "appoint 13 Members to the Select Committee" deprives the Select Committee of its competence and no criminal prosecution arising from conduct (or lack thereof) before the Select Committee can lie. *United States v. Reinecke*, 524 F.2d 435, 440 n.15 (D.C. Cir. 1975) ("[T]he competence of the tribunal must be proved as an independent element of the crime. If the competence is not shown, the crime of perjury is not established regardless of whether the witness relied on the absence of a quorum."). *See Christoffel*, 338 U.S. at 90 ("A tribunal that is not competent is no tribunal, and it is unthinkable that such a body can be the instrument of criminal conviction."). That a congressional committee must adhere to applicable Rules in pursuit of the enforcement of its subpoenas has similarly resulted in convictions for contempt of congress being overturned. *See Yellin v. United States*, 374 U.S. 109 (1963). Indeed, the House Speaker herself has acknowledged the "unprecedented" approach to forming the Select Committee and it is therefore not at all extraordinary that the House failed to contemplate the possibility of less than thirteen (13) Members being appointed upon passage of Resolution 503. *See* The Editorial Board, *Pelosi Blows Up Her Jan. 6 Committee*, The Wall St. J. (July 21, 2021).[3]

Alternatively, were the Court to consider the House General Counsel's *post-hac* assertion that the Select Committee is properly constituted under House Rules, then, at the very least, Section 2(a) of House Resolution 503 is too vague for judicial interpretation. As the D.C. Circuit held in *Rostenkowski*: "Where . . . a court cannot be confident that its interpretation [of a Rule giving rise to criminal prosecution] is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively

---

[3] *Available at* https://www.wsj.com/articles/nancy-pelosi-vetoes-republicans-january-6-committee-11626904913.

be making the Rules—a power that the Rulemaking Clause reserves to each House alone."

*Rostenkowski*, 59 F.3d at 1306.

Of course, the House is not without recourse. The House Speaker could appoint all thirteen (13) Members to the Select Committee as was dictated by the passage of House Resolution 503. Or the House could amend Resolution 503 so as to specify whether the appointment of 13 Members is required. What the House may not do is disregard the precept of Article I § 5 Cl. 2 of the Constitution, disregard the plain language of the Resolution it passed by a majority vote of its Members in the House Chamber, and substitute the *post-hac* interpretation of the House Speaker's General Counsel for the plain meaning of the House-passed resolution.

> B.   *"Ranking Minority Member" is a Term Sufficiently Ambiguous so as to Render it Non-Justiciable.*

With respect to the taking of depositions, House Resolution 503 provides, in pertinent part, that: "The chair of the Select Committee, *upon consultation with the ranking minority member*, may order the taking of depositions, including pursuant to subpoena, by a Member or counsel of the Select Committee, in the same manner as a standing committee pursuant to section 3(b)(1) of House Resolution 8 . . . ." (emphasis added). House Resolution 8 Section 3(b)(1), in turn, provides, in relevant part, that: "the chair of a standing committee . . ., *upon consultation with the ranking minority member of such committee*, may order the taking of depositions, including pursuant to subpoena, by a member or counsel of such committee." (emphasis added). Finally, the regulations governing the taking of depositions as issued by the chair of the Committee on Rules reference the role to be played by the ranking minority member in such depositions no less than eight (8) separate times. 167 Cong. Rec. H41 (daily ed. Jan. 4, 2021) (117th Cong. Reguls. For Use of Dep. Auth.) ("Consultation with the *ranking minority member* shall include three days' notice before any deposition is taken;" "Only members, committee staff

designated by the chair or *ranking minority member*, an official reporter, the witness, and the witness's counsel are permitted to attend;" "If [designation of a deposition as part of a joint investigation between committees] is made, the chair and *the ranking minority member* of the additional committee(s) may designate committee staff to attend pursuant to regulation 3;" "A deposition shall be conducted by any member or committee counsel designated by the chair or *ranking minority member* of the Committee that noticed the deposition;" "In each round [of deposition questioning], the member(s) or committee counsel designated by the chair shall ask questions first, and the member(s) or committee counsel designated by *the ranking minority member* shall ask questions second;" "The chair and *the ranking minority member* shall be provided with a copy of the transcripts of the deposition at the same time;" "The chair and the *ranking minority member* shall consult regarding the release of deposition testimony, transcripts, or recording, and portions thereof." (emphasis added)).

The House General Counsel also asserts that, "Representative Cheney, by virtue of being the first minority party Member appointed to the Select Committee, is, by definition, the senior ranking minority member of the Select Committee." Yet nowhere in the House Rules, Resolution 503, or the House deposition regulations is the term "ranking minority member" defined. Even the Democratic caucus[4] and Republican conference rules[5] differ on the practical use of "ranking member."[6] Again, Speaker Pelosi herself has acknowledged the

---

[4] House Democratic Caucus Rules Rule 21 (D)(1)(a) discusses selecting Ranking Member and Vice-Ranking member by election or secret ballot, with no reference to order of appointment to the Committee.

[5] House Republican Conference Rules Rule 14 (e) discusses term limits of Chairs or Ranking Members to no more than three terms with no reference to seniority or order of appointment to the Committee.

[6] The House General Counsel cites no authority for the proposition that the "first minority party Member appointed" to any given committee necessarily is the senior ranking minority member of said committee. Although the House General Counsel cites the definition of "ranking member" provided by Congress.gov, "the official website for U.S. federal legislative information," even if authoritative, the website tellingly defines neither "ranking minority member" nor "senior member."

"unprecedented" nature of the Select Committee's formation.  *See* The Editorial Board, *Pelosi Blows Up Her Jan. 6 Committee*, The Wall St. J. (July 21, 2021).[7]  Importantly, this distinction is not without a difference.  Minority leadership on any given committee ensures that deponents are afforded oversight of adherence to congressional rules, precedents, and established decorum. *See* Constitution, Jefferson's Manual and Rules of the House of Representatives, H.R. Doc. No. 116-177, 117th Cong., 2d Sess., § 284 ("So far the maxim is certainly true and is founded in good sense that as it is always in the power of the majority, by their numbers, to stop any improper measures proposed on the part of their opponents, the only weapons by which the minority can defend themselves against similar attempts from those in power are the firms and rules of proceeding which have been adopted as they were found necessary, from time to time, and are become law of the House by a strict adherence to which the weaker party can only be protected from these irregularities which these forms were intended to check and which the wantonness of power is but too often apt to suggest to large and successful majorities.").

The Select Committee's authority is limited to its authorizing resolution and had the House desired the Select Committee's subpoena authority to "function[] differently than other House Committees," as the House General Counsel suggests, it should have explicitly so stated. The D.C. Circuit has similarly observed that House rules limiting authority serve an important purpose:  "[B]y requiring all decisions to compel attendance of witnesses to be made by the Subcommittee, and not by an individual member thereof, the resolution served to protect the right of all persons to be free from unnecessary invasions of their privacy."  *Liveright v. United States*, 347 F.2d 473, 475 (D.C. Cir. 1965) (reversing conviction under 2 U.S.C. § 192 despite the deponent's failure to object to the propriety of the subpoena's authorization at the time of his

---

[7] *Available at* https://www.wsj.com/articles/nancy-pelosi-vetoes-republicans-january-6-committee-11626904913.

deposition).  Absent unambiguity, "judicial interpretation . . . runs the risk of the court intruding

into the sphere of influence reserved to the legislative branch under the Constitution.

*Rostenkowski*, 59 F.3d at 1307.

> C.  *Adherence to House Rules is a Necessary Predicate to Criminal Prosecution*
> *for Contempt of Congress.*

Clause 11 of the House Regulations governing the taking of depositions provides:  "A

witness *shall not be required to testify* unless the witness has been provided with a copy of

section 3(b) of H. Res. 8, 117th Congress, and these regulations."  167 Cong. Rec. H41 (daily ed.

Jan. 4, 2021) (117th Cong. Reguls. For Use of Dep. Auth.).  This requirement is not a matter of

form over substance.  Specifically, the promulgation of these regulations was delegated to the

Rules Committee by the House, through a vote of its Members in the House Chamber.  H. Res. 8

§ 3(b).  The regulations were arduously negotiated over several years with the Committee's

Minority Members.[8]  However technical the requirement may be, it is nevertheless an

unambiguous rule promulgated by the House, adherence to which this Court "may properly

scrutinize."  *Eastland*, 421 U.S. at 509 n.16.  Indeed, when confronted with a similarly technical

argument, the D.C. Circuit vacated a perjury conviction based on the Senate Judiciary

Committee's *failure to publish in the Federal Register* its revised rule concerning the

requirement of a quorum.  *Reinecke*, 524 F.2d at 438-440.  Although the government argued the

proper publication of the relevant rule would not have impacted the witness's decision to not

comply with the subpoena in question, the court nevertheless vacated his conviction because

where, "competence [of the tribunal] is not shown, the crime of perjury is not established

---

[8] Of note, the regulations include the requirement that subpoenas for depositions issue only upon, "[c]onsultation with the ranking minority member."  Thus, the regulations themselves cast doubt on the propriety of the Select Committee's deposition authority, at least where judicial interpretation of the term "ranking minority member" is required to deprive one of liberty upon a finding of contempt.  *See Rostenkowski,* 59 F.3d at 1307.

regardless of whether the witness relied on the absence of a quorum."  *Id.* at 440 n.15 (citing *Christoffel*, 338 U.S. at 88).

* * *

For nearly two-hundred-fifty years, the experiment of our democracy has persisted despite frequent challenges to the "genius" that is the doctrine of separation of powers inherent in our constitution.  "The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written."  *Marbury v. Madison*, 5 U.S. 137 (1803).  It is with great appreciation for the judiciary's assumption of the responsibility for enforcing the authority that "underlies the congressional power to punish for contempt," *Watkins*, 354 U.S. at 216 (Frankfurther, J. concurring), that the House Minority Leadership submits this amicus curiae brief for consideration by the Court.

[SIGNATURE ON NEXT PAGE]

Dated: May 24, 2022                     Respectfully submitted,

         */s/ Stanley E. Woodward, Jr.*

Stan M. Brand (D.C. Bar No. 213082)
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel to the House Minority Leadership*