UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-670 |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OMNIBUS MOTION IN LIMINE

The question for the jury in this trial is a straightforward one: whether the Defendant, Stephen K. Bannon, deliberately refused to comply with a subpoena issued to him by the Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"). But in his filings, at oral argument, and during press conferences in front of the courthouse, the Defendant has repeatedly sought to inject into this case improper evidence and argument, make incendiary and baseless political attacks, and create a spectacle. To maintain proper order and keep the jury focused on its fact-finding duty, the Court should exclude any such improper evidence and argument at trial.

**I.   The Court Should Preclude the Defendant from Making Arguments, Presenting Evidence, or Questioning Witnesses about Politics, Baseless Government Misconduct Claims, and Other Incendiary and Irrelevant Topics.**

At a press conference in front of the courthouse after the Defendant's initial appearance in this case, defense counsel said of the Select Committee, "this thing was a scam from the beginning," and the Defendant said, "I'm telling you right now, this is going to be the misdemeanor from Hell," and that he was going on "offense." *"Misdemeanor from Hell": Watch Bannon Speak Out After He's Released*, CNN, Nov. 15, 2021.[1] In filings, the Defendant baselessly has accused

---

[1] *Available at* http://www.youtube.com/watch?v=-diE7kCCidE (last accessed June 17, 2022).

the Government of misconduct and intimidation and has asserted, without support, that the prosecution is politically motivated. *See, e.g.*, ECF No. 34 at 4, 11 (claiming "outrageous misconduct by the Government . . . designed to intimidate and chill the attorney-client relationship" and asserting that the Government is "motived by a dangerous, politically motivated and misguided overzealousness"). As recently as this Wednesday, at another courthouse press conference following a motions hearing before the Court, the Defendant expressed interest in turning his trial into a political spectacle, referring to Members of Congress using derogatory nicknames, and saying, "I look forward to having Nancy Pelosi, and little Jamie Raskin, and shifty Schiff in here at trial answering questions under my . . . under the . . . tough thing about my lawyers." *Judge Rejects Bannon's Effort to Dismiss Criminal Case for Defying Jan. 6 Select Committee*, Politico, June 15, 2022.[2]

"[T]he trial judge has the responsibility to maintain decorum in keeping with the nature of the proceeding; 'the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct.'" *United States v. Young*, 470 U.S. 1, 10 (1985) (quoting *Quercia v. United States,* 289 U.S. 466, 469 (1933)). Accordingly, the Court has broad discretion and authority to prevent a circus atmosphere at trial and must exclude improper evidence and argument that would create it. *See United States v. Morgan*, 581 F.2d 933, 936 (D.C. Cir. 1978) ("The district court has wide discretion to admit or exclude evidence where the question is one of relevancy or materiality"); *United States v. Tarantino*, 846 F.2d 1384, 1410 (D.C. Cir. 1988) (noting that a defendant could not introduce evidence that "bears no relevance to any elements of the crimes charged or to any affirmative defenses to those crimes"). Moreover, the Court must

---

[2] *Available at* http://www.politico.com/news/2022/06/15/judge-rejects-bannons-effort-to-dismiss-criminal-case-for-defying-jan-6-select-committee-00039888 (last accessed June 17, 2022) (video embedded in article).

guard against arguments that seek only to encourage jury nullification. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming trial court's exclusion of evidence relevant only to jury nullification) (citing *Sparf v. United States*, 156 U.S. 51, 106 (1895) (finding that the jury's function to apply the law as declared by the judge to the facts as found by the jury "cannot be confounded or disregarded without endangering the stability of public justice, as well as the security of private and personal rights")); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006) ("[A] juror . . . who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role."). The Defendant has given every indication he intends to create a circus atmosphere and seek a verdict based on improper nullification considerations instead of the relevant law and facts. His efforts should be rejected and his attempts to raise improper arguments during trial precluded.

      **A.    The Defendant should be precluded from making improper arguments that politicize this case.**

It should be uncontroversial that partisan politics has no place in a criminal trial. *See United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (identifying claims by defendants that they were victims of political persecution as "matters far beyond the scope of legitimate issues in a criminal trial"). At every turn, however, the Defendant has attempted to make this case and the issues in it about politics, not the law and the facts. His efforts began in his motion to compel discovery. There, he claimed, without support, that "[a]vailable information suggests that political considerations played an impermissible role in the events leading to the prosecution of Mr. Bannon" and requested "any information that tends to show that this prosecution was initiated or pursued because of political considerations." ECF No. 28 at 22-23. At the hearing on his motion, the Court noted that it did not see how a selective prosecution claim would be colorable. *See* Mot. Hrg., 3/16/22, Tr. at 96:1-4 (rejecting Defendant's request for records relating to the Committee's

3

bias and internal decisionmaking and noting that "[a]t best, it would relate to a selective prosecution claim" and that the Court did not "see how one would be colorable"). The Defendant has continued his baseless assertions anyway. For example, in his Opposition to the Government's Motion in Limine to Exclude Evidence of Department of Justice Opinion and Writings, the Defendant asserted, again without support, that "[i]f the Government could put aside for a moment that the Defendant is Stephen K. Bannon and its associated political agenda with respect to Mr. Bannon and his followers, perhaps it would see the matter with common sense." ECF No. 64 at 11; *see also* Def.'s Reply in Support of Mot. to Dismiss, ECF No. 73, at 20 (stating the Government's legal arguments regarding OLC opinions were made "in furtherance of its 'anything goes' misuse of the criminal justice system to advance a partisan political agenda in this case"). The Defendant also has repeatedly raised claims about partisan motives of members of the Committee. *See, e.g.*, Costello Decl., ECF No. 30-1, ¶¶ 19-20 (making claims in sworn statement regarding Reps. Thompson, Raskin, and Schiff and other Members' "partisan political agenda"); Def.'s Mot. to Dismiss, ECF No. 59-1 at 13 n.17 (claiming subpoena did not have a valid legislative purpose, in part, because of individual Members' political motivations).

"[T]he issue of selective prosecution is one to be determined by the court, as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged." *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (internal citations omitted); *see also United States v. Abboud,* 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."). The Defendant's repeated and baseless claims that he is the victim of selective prosecution based on his politics is not proper argument for the jury, therefore, and should be excluded.

4

The political affiliations of Members of Congress and their staff are similarly irrelevant to the issues that will be raised at trial. Claims about Members' politics were not relevant to any legal issue previously before the Court—*see Barenblatt v. United States*, 360 U.S. 109, 133 (1959); Mot. Hrg., 6/15/22, Tr. at 120:1-4 ("To the extent that Mr. Bannon alleges that there was no valid legislative purpose for his subpoena in particular, I cannot conclude that, as a matter of law, he is correct.")—and they are not relevant to determining whether, despite receiving a subpoena, the Defendant decided not to comply.

In addition, the Government anticipates that Committee staff with relevant testimony may be called as witnesses at trial, either by the Government or by the Defendant. Should they be called by the Government, the Defendant will have the right to cross-examine them. But the Court retains broad discretion to properly cabin the Defendant's cross-examinations. *See Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (finding that the Confrontation Clause "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (emphasis in original)); *United States v. Derr,* 990 F.2d 1330, 1334 (D.C. Cir. 1993) ("The Confrontation Clause does not bar a judge from imposing reasonable limits on a defense counsel's inquiries."). To the extent that the Defendant seeks to cross-examine Committee staff about their personal political affiliations, about the political dynamics of the Committee, to suggest he was subpoenaed or referred for contempt because of improper political motivations, or to otherwise use the opportunity to inject politics into the trial, the Court should not permit him to do so. None of these issues are relevant to whether the Defendant received a subpoena and defied it but would risk creating an improperly politically charged courtroom. And separate and apart from their irrelevance to the Defendant's guilt, political affiliations of a Committee staffer—including those indicated by voter registration, the

political party of a Member of Congress for whom the staffer may have worked, or campaign contributions they may have made—are not an indication of bias against the Defendant that would constitute proper grounds for cross-examination in this case.  Bias is a relevant basis for cross-examination to the extent it goes to the witness's credibility, that is, "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." *United States v. Spencer*, 25 F.3d 1105, 1109 (D.C. Cir. 1994) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)) (internal quotation marks omitted).  Nothing about the mere political affiliations of the staff of the Committee go to their truthfulness about the facts to which they will testify, such as their service of a subpoena on the Defendant and any ensuing communications with his counsel.  *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1180 (11th Cir. 2006) ("Membership in a political party, by itself, does not necessarily signify anything about a person's truthfulness.").  Nor, for that reason, can the Defendant cross-examine witnesses about non-testifying witnesses' potential biases against the Defendant.  Witnesses to the crime who do not testify are not providing any evidence to the jury that it must weigh.  Accordingly, their credibility is not at issue in the jury's considerations.  *Abel*, 469 U.S. at 52 ("Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

      Finally, it would likewise be improper for the Defendant to call Members or staff for the sole purpose of questioning them about their biases against the Defendant.  "Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986) (internal quotation marks and citation omitted).

Accordingly, "a witness cannot be called for the primary purpose of impeaching that witness." *United States v. Libby*, 475 F. Supp. 2d 73, 83 (D.D.C. 2007) (citing *Johnson*, 802 F.2d at 1466); *see also United States v. Giles*, 246 F.3d 966, 974 (7th Cir. 2001) ("[A] party may not call a witness for the sole purpose of impeaching him."). Any effort the Defendant makes to call witnesses purely to question them about their political affiliations and views should be rejected.

### B. Claims about government misconduct are not proper issues for the jury to decide.

The Defendant, without identifying any legal basis for his claims, has repeatedly asserted that the Government engaged in misconduct in this case by treating his attorney, who spoke on his behalf to the Committee and an attorney for former President Trump, as the witness he has always been. Moreover, the Defendant has asserted that he intends to make his baseless claims of government misconduct directly to the jury, in an effort to obtain an acquittal. *See* Def.'s Mot. to Exclude Evidence, ECF No. 56 at 1 n. 1 ("Any Order precluding the Government from introducing these materials as evidence, or use in cross-examination, should not preclude the defense from informing the jury of the Government's misconduct in this case."). A claim of government misconduct, however, "is, like a claim of selective prosecution, ultimately separate from the issue of [a defendant's] factual guilt," and is not, therefore, an issue for the jury. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997); *see also United States v. Wylie*, 625 F.2d 1371, 1378-79 (9th Cir. 1980) (holding that "outrageous involvement by the government agents" is a matter for the court, not the jury). The Defendant's desire to argue it to the jury anyway demonstrates his intention to seek a nullified verdict. He cannot be allowed to do so.

**C.     Should the Defendant's subpoenas to Members and staff of Congress be quashed, he cannot argue at trial that it provides a basis for acquittal or some adverse inference against the Government.**

The Government understands that the Defendant has issued trial subpoenas to various Members and staff of the House of Representatives ("the House"), and that the House has moved to quash them. *See In re Non-Party Subpoenas*, Misc. Case No. 22-mc-60. The House is not a party to this case and, indeed, is a separate branch of government from the prosecution team. Nevertheless, although it is not clear how the dispute between the Defendant and the House will be resolved, to the extent any of the subpoenas are quashed, the Defendant has indicated, in his ceaseless effort to make this case about anything other than the facts and the law, that he should be allowed to use his failure to secure the witnesses' appearances against the Government in this case. *See* "Steve Bannon Digs Into Roger Clemens' Playbook to Try to Beat Congress, *Daily Beast*, June 13, 2022 ("If they don't get the records, Schoen said his team is prepared to ask the judge to simply push back the trial or issue sanctions against the DOJ.").[3] But whether a certain witness was lawfully subject to subpoena under the Speech or Debate Clause or Rule 17's requirements of specificity, relevance, and materiality has nothing to do with the Government party in this case and nothing to do with the facts at issue that the jury must decide. *See United States v. Burnett*, 890 F.2d 1233, 1241 n. 13 (D.C. Cir. 1989) (noting that missing witness arguments are "prohibited if the opposing party did not 'peculiarly' have the power to produce the missing witness or if the missing witness' testimony would not 'elucidate the transaction'" (quoting *United States v. Young*, 463 F.2d 934, 939-40 (D.C. Cir. 1972))). The Defendant should be precluded from making irrelevant arguments about unavailable witnesses and quashed subpoenas at trial.

---

[3] *Available at* http://www.thedailybeast.com/steve-bannon-digs-into-roger-clemens-playbook-to-try-to-beat-congress (last accessed June 17, 2022).

### D. Evidence or argument relating to the misdemeanor nature of the charges or potential punishment is improper.

In his November 15, 2021, press conference, defense counsel described the charges against the Defendant by saying, "It's a misdemeanor, but it's being treated as if it were a capital case." *"Misdemeanor from Hell": Watch Bannon Speak Out After He's Released*, CNN, Nov. 15, 2021.[4] The potential penalties or severity of the charged offenses are irrelevant to guilt and thus inadmissible. *Shannon v. United States,* 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is therefore irrelevant to the jury's task."); *United States v. Wade*, 962 F.3d 1004, 1012 (7th Cir. 2020) (finding arguments aimed at suggesting the charged crime was not serious or harmful were improper nullification claims). The Defendant should be foreclosed, therefore, from importing his attorney's extrajudicial commentary on the importance or severity of the charges into the trial and suggesting to the jury that his crimes do not matter, that they are misdemeanors, or what the potential punishment would be should he be convicted.

### E. The Defendant should be precluded from making claims about other individuals who have not been prosecuted for contempt of Congress.

To the extent that the Defendant seeks to argue that contempt prosecutions are not frequently pursued, or that he has been charged while other individuals referred for contempt have not, he should not be allowed to do so. Neither of these issues have any bearing on the elements of the contempt charges against the Defendant and are not relevant. *See United States v. Young*, 20 F.3d 758, 765 (7th Cir. 1994) (finding that whether another individual was charged with the same crime as the defendant did "not make the facts relating to [defendant's] knowledge and

---

[4] *Available at* https://www.youtube.com/watch?v=-diE7kCCidE (last accessed June 17, 2022).

9

participation in the [crime] more or less probable" and affirming exclusion of such argument at trial).

### F. Defense counsel should be prohibited from making assertions to the jury based on their claimed experience.

At various times in this prosecution, counsel to the Defendant have cited their previous experience as supposed evidence that their arguments are correct or are due more weight. *See, e.g.*, Mot. Hrg., 3/16/2022, Tr. at 67:14-17 (Mr. Costello stated, "I was a federal prosecutor myself. I was Deputy Chief of the criminal division in the Southern District of New York. I have a lot of experience in this area."); Mot. Hrg., 6/15/22, Tr. at 31:15-19 (Mr. Schoen stated, "With all due respect, the landmark case they cite, this *Abcassis* case, is my case. I thought up the defense. I made the defense. I won the case."). To the extent the Defendant wishes to cite this experience at trial as some evidence that his assertions regarding the facts and how the law applies to them are due more weight than the jury might give them otherwise, he should be precluded from doing so. *See United States v. Messino,* 873 F. Supp. 1177, 1182 (N.D. Ill. 1995) (finding subject of defense counsel's previous prosecution experience to be irrelevant and excluding it from trial).

## II. The Defendant Should be Precluded from Presenting Evidence or Argument to the Jury Relating to the Merits of Purely Legal Issues.

As he left the courthouse on June 15, 2022, after the hearing on his motion to dismiss, the Defendant was asked by the press why he continued to assert that the Committee was illegitimate when the Court rejected his claims at the hearing. The Defendant responded that he would continue to argue the Committee's legitimacy in court. *See* "While leaving court, Bannon threatens 'real investigation' of Jan. 6 after midterms," Politico, June 15, 2022.[5] The Defendant's

---

[5] *Available at* http://www.politico.com/video/2022/06/15/while-leaving-court-bannon-threatens-real-investigation-of-jan-6-after-midterms-613085 (last accessed June 17, 2022).

10

claims about the Committee's constitutional and statutory validity, however, do not raise factual questions for the jury. Nor do his claims that executive privilege did, in fact, excuse his compliance with the Committee's subpoena. His legal claims on these issues did not have merit when he raised them in his motions to dismiss and they will be no more meritorious by the time of trial. To the extent the Defendant intends to raise the merits of his purely legal claims in front of the jury, it is improper and he should be precluded from doing so.

Federal Rule of Evidence 12(b) provides for courts to decide defenses and objections pretrial that do not require a trial on the merits. The rule further contemplates that courts can engage in fact-finding on such pretrial issues where necessary and where the facts needed to decide a pretrial motion are not "bound up with evidence about the alleged offense itself." *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994); *see also* Fed. R. Crim. P. 12(d). Moreover, any defenses that raise purely legal questions are not appropriate to submit to the jury. *United States v. Gaudin*, 515 U.S. 506, 513 (1995) (noting that the jury in a criminal case does not have the power to decide "pure questions of law" (citing *Sparf*, 156 U.S. at 105-06)). Here, the Defendant raised several claims to support his motion to dismiss that involve pure questions of law that do not require this Court to resolve factual issues—even if they did, the factual issues do not go to any element or available defense such that they are bound up with the evidence of the offense itself. These arguments are not, therefore, appropriate fodder for the Defendant's arguments at trial and he should be precluded from raising them again before the jury.

> A.   **The Committee's constitutional and statutory legitimacy are not factual questions for the jury.**

The Defendant cannot argue to the jury that the Committee is unlawfully constituted— either under the Constitution or its authorizing resolution. Questions relating to the Committee's constitutional authority—specifically, whether the Committee or its actions have a legislative

11

purpose—is a legal question requiring the court to determine the bounds of Congress's authority to legislate. *See Barenblatt*, 360 U.S. at 111-12 ("The scope of the power of inquiry, in short, is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution. Broad as it is, the power is not, however, without limitations. . . . [T]he Congress, in common with all branches of the Government, must exercise its powers subject to the limitations placed by the Constitution on governmental action."). The bounds of Congress's constitutional authority is not, therefore, a jury question. And the D.C. Circuit has already found that the Committee has a legislative purpose, *Trump v. Thompson*, 20 F.4th 10, 41-42 (D.C. Cir. 2021), which the Defendant has conceded, ECF No. 59-1 at 13 n.16. Now, this Court has also found that, "on its face, the Subpoena . . . appears to have sought information on topics germane to the purposes identified by the Court of Appeals in the *Thompson* case." Mot. Hrg., 6/15/22, Tr. at 120:22-25.

Further, there are no facts that can undermine the legal conclusion based on the *Thompson* decision and the face of the subpoena that the subpoena fell within Congress's constitutional authority to investigate in aid of legislation. For example, the Defendant suggested in his motion to dismiss, ECF No. 59-1 at 13 n.17, and at the June 15 hearing, Mot. Hrg, Tr. at 140:2-7, that the individual motives of Members of Congress or the fact that the Committee's investigation may also reveal criminal conduct invalidates the investigation and the subpoena's legislative purpose. They cannot, as a matter of law. *See Barenblatt*, 360 U.S. at 132 ("So long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power. . . . Thus, in stating in the *Watkins* case that 'there is no congressional power to expose for the sake of exposure,' we at the same time declined to inquire into the 'motives of committee members,' and recognized that their 'motives alone

would not vitiate an investigation which had been instituted by a House of Congress if that assembly's legislative purpose is being served.'" (quoting *Watkins v. United States*, 354 U.S. 178, 200 (1957))); *McGrain v. Daugherty*, 273 U.S. 135, 179-80 (1927) ("Nor do we think it a valid objection to the investigation that it might possibly disclose crime or wrongdoing."). The D.C. Circuit has decided the issue of legislative purpose with respect to the Committee and the subpoena on its face is tied to that legislative purpose. The Defendant cannot relitigate the issue before the jury.

In addition, as the Court recognized in deciding the Defendant's motion to dismiss the Indictment, the House has already spoken on the meaning of the rules the Defendant challenges with respect to the number of members on the Committee, the meaning of "ranking minority member," and the requirements for providing Section 3(b) of House Resolution 8. Mot. Hrg., Tr. at 114-18. Although the Defendant has waived these procedural objections by not raising them before the Committee and they cannot, therefore, provide a defense to the charges, *see* ECF Nos. 53 & 71, even if he had not waived them, there is no factual question for the jury relating to these claims such that the Defendant can raise them at trial.[6] Submitting the question of the meaning of House rules to the jury would risk allowing the judicial branch to conclude the House rules have a meaning different from that given them by the House, a violation of the Rulemaking Clause. *See United States v. Rostenkowski*, 59 F.3d 1291, 1307-12 (D.C. Cir. 1995) (refusing to submit the

---

[6] As the Government also argued at the June 15 hearing, there are no rights under the Committee's rules that were conferred on the Defendant in the issuance of the subpoena relating to the Committee having 13 members or the status of a ranking minority member such that either would even provide a basis for a defense to the charged offenses if they had been preserved. Mot. Hrg., Tr. at 87-88; *see also Yellin v. United States*, 374 U.S. 109, 121-23 (1963) (discussing the need to provide a remedy for a witness's loss of procedural rights provided by a Committee's rules as the basis for allowing the violation of Committee rules aimed at protecting those rights to provide a defense to contempt of Congress).

meaning of House rules for the jury's consideration where it risked the jury coming to a different conclusion than the House). Accordingly, to the extent the Defendant wishes to present to the jury his same arguments regarding how rules governing the composition of the Committee, the status of Representative Cheney, and the provision of Section 3(b) of House Resolution 8 should be interpreted to argue that he could not lawfully be required to comply with the subpoena, and therefore to submit the meaning of the relevant rules to the jury, he cannot do so.

### B. Whether executive privilege excused the Defendant from compliance with the subpoena is not a factual question for the jury.

The Defendant cannot argue to the jury that executive privilege did, as a matter of law, excuse him from complying in any way with the subpoena. The Defendant has never clearly raised executive privilege as a basis for dismissing the charges against him. Instead, he has raised it primarily and most clearly in the context of arguing for a good-faith-reliance defense and in the context of his various estoppel and public authority assertions. To the extent he wishes to assert that executive privilege, on the merits of the assertion, actually excused his compliance, this issue must be resolved pretrial, not by the jury.[7]

As the Government has acknowledged several times, ECF No. 35 at 22; ECF No. 43 at 5-6; ECF No. 65 at 28-29, and the Supreme Court has made clear, *Barenblatt*, 360 U.S. at 112; *Watkins*, 354 U.S. at 196-97, claims of constitutional privilege can provide a defense to contempt of Congress when the privilege has been asserted before the relevant congressional committee. But whether a privilege excuses compliance with a legal obligation that a defendant is later prosecuted for violating is a legal question, not a factual one, that must be resolved pretrial by the

---

[7] To the extent the Defendant has not sufficiently presented this issue for resolution by the Court, the Government does it now. *See United States v. Bulger*, 816 F.3d 137, 146-48 (1st Cir. 2016) (finding Rule 12 does not bar the government from raising potential defenses for pretrial resolution where the defenses are capable of pretrial resolution under Rule 12(b) & (d)).

14

court.  *Cf. United States v. Covington*, 395 U.S. 57, 59-60 (1969) (finding that, where the Fifth Amendment privilege against self-incrimination excused an individual from complying with a federal marijuana tax payment law, the question of whether the privilege actually excused compliance and therefore provided a basis for dismissal of criminal charges for not paying the tax was a question of law for the court to decide pretrial under Fed R. Crim. P. 12).  The bounds of executive privilege is a legal question—a jury cannot decide how far or narrowly it extends.

Moreover, there are no questions of fact that are "bound up with evidence about the alleged offense itself" that must be decided in order to determine if executive privilege allowed the Defendant to withhold all potentially responsive documents and to refuse to appear for testimony.  No party contests that the Defendant sufficiently preserved the issue for judicial review by telling the Committee it was the reason he refused to comply.  And the jury is not in a position to decide if, as a matter of law, certain statements on behalf of former President Trump were sufficient to invoke the privilege.  Further, any factual questions of what the former President's attorney told the Defendant in the first place do not go to any elements of the offense but only to whether the Defendant has immunity from prosecution.  *Cf. Bulger*, 816 F.3d at 147-48 (finding the judge was the proper factfinder to determine if the defendant had been given immunity from prosecution by the government).  In any event, any such factual questions do not have to be resolved to decide whether executive privilege provides a defense.  Even assuming the former President validly asserted executive privilege to the maximum extent possible under the Constitution for even a sitting President, it does not provide a legal basis for the Defendant's noncompliance.

With respect to Count One, based on the Defendant's refusal to appear for testimony, the Executive Branch's constitutional equities do not provide the Defendant, an individual subpoenaed about his private affairs while a private citizen, with immunity from appearing in the first place.

*See Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148, 202-03 (D.D.C. 2019), *overruled on other grounds*, 951 F.3d 510 (D.C. Cir. 2020); *Comm. on Judiciary v. Miers*, 558 F. Supp. 2d 53, 99-107 (D.D.C. 2008).  Not even the Department's interpretation of the constitutional immunity that particular high-ranking White House officials enjoy reaches that far.  *See generally Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *55 (Jan. 8, 2021); Combined Mem. of Points and Authorities in Support of Def.'s Mot. for Summary Judgment and In Opp. To Pl.'s Mot. for Summary Judgment, *McGahn*, Case No. 1:19-cv-02379, ECF No. 33 at 58-61 (Oct. 1, 2019); Mem. in Support of Defs.' Mot. to Dismiss, *Miers*, Case No. 1:08-cv-00409, ECF No. 16-2 at 50-55 (May 9, 2008).

With respect to Count Two, based on the Defendant's refusal to produce records, there are categories of records sought by the subpoena that executive privilege simply cannot reach. Executive privilege reaches certain records and communications concerning the Executive Branch's activities.  *See Trump*, 20 F.4th at 25 ("[The presidential communications privilege] allows a President to protect from disclosure 'documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential.'" (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997))); *In re Sealed Case*, 121 F.3d at 737 ("[The deliberative process privilege] allows the government to withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967))).  Here, the subpoena sought records that had nothing to do with the Executive Branch.  For example, it sought records relating to the Defendant's communications with various militia groups, such as the Proud Boys and the Oath Keepers; records relating to the Defendant's

meetings with Members of Congress; records relating to the Defendant's efforts to help people travel to Washington, D.C., for the January 6th rally; and records relating to the Defendant's podcast.

No matter what the facts might show, therefore, about the extent and breadth of the former President's invocation of executive privilege, as a matter of law, executive privilege provided no basis for what is alleged in the Indictment: total noncompliance. Like his claims relating to the Committee's and the subpoena's legislative purpose and the Committee's procedural rules, the Defendant must be barred from making arguments or presenting testimony or evidence relating to the merits of his executive privilege claim to the jury.

### III. CONCLUSION

This case is about whether the Defendant was subpoenaed and whether he showed up thereafter. The Court should not allow him to make it about anything else and should grant this motion to exclude irrelevant evidence and argument at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov