**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
|  | : |
|  | :   Criminal No. 21-670 (CJN) |
| v. | : |
|  | : |
| STEPHEN K. BANNON, | : |
|  | : |
| *Defendant*. | : |

**DEFENDANT'S MOTION TO COMPEL
MEADOWS & SCAVINO DECLINATION DISCOVERY**

Defendant Stephen K. Bannon, through his undersigned counsel, respectfully moves this Court for an Order compelling the Government to comply with its obligations and provide discovery as identified herein. The discovery sought is material to the preparation of Mr. Bannon's defense, falls within the Court's earlier oral Order directing production from the Government, and is believed to constitute *Brady/Giglio* material. Mr. Bannon expressly has requested the production of the material at issue and Government counsel has refused to provide it. This motion's focus on the specific material at issue should not in any way be deemed a withdrawal or waiver of the requests made in the earlier filed motion to compel [Docs. 28 & 33]. That motion to compel is incorporated herein by reference.

**Relevant Background**

Recent media reports have indicated that, following the receipt of a criminal contempt referral from the House of Representatives for Mark Meadows and Dan Scavino for their purported refusal to comply with a subpoena from the January 6th Committee, the Department of Justice

1

formally declined to bring criminal charges against either man.[1]  January 6th Committee members have questioned the decision, indicating that they do not understand there to be a material distinction, based on the relevant Office of Legal Counsel opinions, between these individuals and Mr. Bannon. – who faces criminal charges.[2]

In light of those reports, on June 21, 2022, the undersigned wrote to the prosecutors in this case and requested a copy of the declination letters regarding Messrs. Meadows and Scavino, along with related materials on the decision concerning whether or not to prosecute Meadows or Scavino, both of whom relied on the invocation of executive privilege by former President Trump for their non-compliance with the subpoena issued to them [Exhibit 1].  Later on June 21, 2022, Government counsel wrote back advising that they have already "exceed(ed) (their) obligations under the various discovery rules and doctrines" and would not provide the requested materials [Exhibit 2].  This motion follows the Government's refusal to provide the requested materials and information.

Apparently, the New York Times has been provided with a copy of the declination letters and, based on their reporting on the matter, it might well be that the letters reflecting the decision not to prosecute either Mr. Meadows or Mr. Scavino were summary notices, without much, if any analysis provided.[3]  However, even if that were the case, Mr. Bannon respectfully submits that

---

[1] *U.S. DOJ Declines to Charge Ex-Trump Officials Meadows and Scavino, NY Times Reports,* Reuters, June 3, 2022, https://www.usnews.com/news/top-news/articles/2022-06-03/u-s-doj-declines-to-charge-ex-trump-officials-meadows-and-scavino-ny-times-reports.

[2] Jacob Knutson, *Jan. 6 committee questions "puzzling" DOJ decision on top Trump aides*, Axios, June 4, 2022, https://www.axios.com/2022/06/04/doj-declines-indict-meadows-scavino-jan-6-probe.

[3] Alan Feuer and Luke Broadwater, *Navarro Indicted as Justice Dept. Opts Not to Charge Meadows and Scavino,* https://www.nytimes.com/2022/06/03/us/politics/peter-navarro-contempt-jan-6.html?partner=slack&smid=sl-share

these materials (and related documents) are discoverable, both under the Court's oral Order of March 16, 2022, on the original Motion to compel and as *Brady/Giglio* materials.

### All Meadows & Scavino Declination Materials Constitute The Official Position Of DOJ And Must Be Produced Under This Court's March 16, 2022 Order.

On March 16, 2022, the Court's oral Order on Mr. Bannon's Motion to Compel provided, in pertinent part, the following:

> Specifically, I will grant defendant's motion to the extent it requests statements or writings reflecting official DOJ policy, such as an opinion of the Office of Legal Counsel or the position of an entire division or litigating group, whether those statements are public or not, if such writings relate to the department's policy on prosecuting or not prosecuting government or former government officials raising executive privilege claims or defenses of immunity or similar issues.

Hearing Tr. March 16, 2022, at 96 – 97.

The Meadows and Scavino declination letters and related materials fall squarely within the Court's Order requiring production by the Government of the specified kinds of materials.[4] Both men were government officials or former government officials, executive privilege was invoked by former President Trump, through his counsel, Justin Clark, in the same manner, form, and language as it was invoked for Mr. Bannon[5] [Compare Exhibit 3 with Doc. 35-6],[6] and the

---

[4] The material also must independently be produced under Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure. It is unquestionably "material to preparing the defense" in this case.

[5] The letters from Justin Clark, invoking executive privilege on behalf of former President Trump are attached hereto as consolidated Exhibit 3.

[6] Since executive privilege was invoked in the same manner and by the same person on behalf of President Trump, the production of the DOJ materials declining to prosecute Meadows and Scavino is independently relevant to a threshold issue the Court raised during the June 15, 2022 hearing. The Court apparently is treating it as an open question as to whether executive privilege even was actually invoked as to Mr. Bannon's subpoena [*See, e.g.*, June 15, 2022, Tr. at 125].

Mr. Bannon respectfully submits that there should be no question about the invocation on this record; but since the Court has raised it, it is independently relevant whether the decision not to

materials sought through this motion to compel are official writings from the Department of Justice concerning prosecution or non-prosecution decisions when executive privilege has been invoked. The materials must be provided under the Court's March 16, 2022, Order.

### The Meadows & Scavino Materials Must Independently Be Produced Pursuant To *Brady/Giglio* Obligations.

As the Court is aware, a fundamental feature of Mr. Bannon's defense theory is that he is entitled to the defense of entrapment by estoppel, based on his reliance on multiple OLC opinions and other official, authoritative Department of Justice/Executive Branch writings, read independently and *in pari materia*, which he reasonably believed (consistent with his experienced

---

prosecute Meadows and Scavino was based even in part on the invocation of executive privilege. To the extent the Court notes that "particular documents" were not specified [June 15, 2022 Hearing Tr. at 125], the Court appears to have ignored the assertion that the invocation, by necessity, for Bannon, Meadows, and Scavino, was at least in part a "protective assertion" as advised by the Office of Legal Counsel in such a circumstance. *See* ECF# 73 at notes 7 and 9 and OLC opinions and other authority cited therein. The Court also appears to have ignored the well-settled principle that separation of powers concerns associated with executive confidentiality issues attach even *before* executive privilege is invoked. *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 390 (2004). In the instant case, former President Trump publicly announced his intention to invoke executive privilege with respect to the Committee's subpoenas in no uncertain terms. https://apnews.com/article/donald-trump-congress-subpoenas-capitol-siege-4eb9ffd1e94550219f5acab9e3d3b162

The Court's June 15, 2022 oral Order also appears to ignore Mr. Bannon's argument that for his entrapment by estoppel defense, it does not matter at all whether executive privilege was properly invoked; rather it is what he reasonably believed [ECF# 73 at note 9]. The DOJ declination papers for Meadows and Scavino are directly relevant to the reasonableness of Mr. Bannon's belief if based in any part on the invocation of executive privilege.

Finally, on this question, the Court's oral Order of June 15, 2022, appears to indicate a view by the Court that Justin Clark's view on the question of "immunity" is either relevant or somehow undercuts the invocation of executive privilege. It certainly is not relevant – immunity, unlike, executive privilege is not a legal concept for the President to invoke or confer and his view on "immunity" is of no consequence at all on the question of whether executive privilege was invoked. It was.

criminal defense lawyer's firmly expressed belief – *See, United States v. Tallmadge*, 829 F.2d 767, 775 (9th Cir. 1987) -  authorized/licensed the course of action he took with respect to the subpoena.[7]

In support of one of his defenses,  Mr. Bannon has, of course, asserted that based on the clearly expressed and repeatedly reiterated rationale for the positions taken in the relevant OLC opinions, that there is no legally relevant basis for distinguishing between current and former executive branch officials on the one hand and "private citizens" (in this case a former top, close advisor to the President) on the other hand, with respect to the rights, duties, and obligations concerning a Congressional committee subpoena directed toward testimony and documents that arose or were developed while the former President was President and regarding which he has invoked executive privilege.  Whether or not the Government agrees with the defense theory, the materials at issue clearly are relevant and support the defense theory, bringing them within *Brady's* ambit.

The clearly expressed rationale underlying each relevant OLC opinion and other authoritative DOJ writings on the subject, going back over six decades, makes it clear that the rights, duties, and obligations with respect to a congressional committee subpoena once executive privilege is invoked are based on (1) constitutional separation of powers principles (the assertion

---

[7] This, of course, is in addition to the defense theory that the statute charged, as applied, is unconstitutional, in that it violates the right to due process of law and other fair trial rights by not giving fair notice of the conduct that in the circumstance at issue in this case would give rise to criminal liability, in light of the relevant official DOJ writings and that it includes lawful, authorized conduct within its ambit, without fair notice. [Doc. 58 at 38-48; Doc. 73 at 20-24].  It is also in addition to Mr. Bannon's argument that the subpoena was invalid and unconstitutional based on the Committee's refusal to allow the privilege holder's representative to attend any deposition and that he reasonably believed that to be the case under the relevant OLC opinions. [Doc. 58 at 18 n.22 & 27; Doc. 58 at 14].

of executive privilege is the sole prerogative of the President/former President);[8] (2) the unique status and sanctity of executive privilege;[9] (3) the imperative interest in encouraging, and not chilling the willingness of people (including current and former executive branch officials and outside consultants never employed by the executive branch) to discuss important, sensitive issues with the President, confident that the discussions will remain privileged and confidential;[10] (4) the unfairness of subjecting to sanctions a subpoenaed witness who acts with respect to the subpoena in a manner that respects the invocation of executive privilege and assists the President/former

---

[8] *See, e.g. Olson O.L.C. Opinion* of May 30, 1984, tracking the legislative history of 2 U.S.C. §192 and concluding: "… (1) the legislative history of the contempt of Congress statute demonstrates that it was not intended to apply to Presidential assertions of executive privilege; and (2) if the statute were construed to apply to Presidential assertions of executive privilege, it would so inhibit the President's ability to make such claims as to violate the separation of powers." [Doc. 58-10 at 129 (pdf page 30 of 43)]. "The President's constitutional role as head of one of three separate branches of government means that special care must be taken to construe statutes so as not to conflict with his ability to carry out his constitutional responsibilities. *Id*. at 129 (pdf page 35 of 43).

[9] "… [A]s the Supreme Court has recognized, the capacity to protect the confidentiality of some information is integral to the constitutional role of the President. For these reasons, the Supreme Court has ruled that the President's assertion of executive privilege is *presumptively valid* and can be overcome only by a showing that another branch cannot responsibly carry out its assigned constitutional function without the privileged information." [Doc. 58-10 at 135 (pdf page 36 of 43)] (emphasis in original). "…[I]nformation subject to executive privilege deserves 'the greatest protection consistent with the fair administration of justice.'" *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032, 207 L. ed. 2d 951, 966 (2020), *quoting from United States v. Nixon*, 418 U.S. 683, 715 (1974).

[10] Long before the establishment of the Executive office of the President, the President sought and received advice from outside parties as a regular matter and such discussions were, of course, understood to be confidential. *See Congressional Oversight of the White House*, 45 Op. O.L.C. at 5; Doc. 58-7 at 5, pdf page 6 of 60. See also, Olson OLC opinion, Doc. 58-10 at 135-136, pdf pages 36-37 of 43 regarding the impairment of the President's ability to get advisors to come forward if their communications would not be protected from Congession subpoena or criminal contempt of Congress prosecution.

President;[11] and (5) the recognized inappropriateness of using the criminal contempt statute to resolve document disputes.[12]

Not one of these clearly expressed rationales applies with any less force to the "private citizen" whose confidential counsel the President seeks while in office and there is no reasonable or rationale basis for drawing a legal distinction based on the status of the witness vis a vis the rights, duties, and obligation with respect to a congressional committee subpoena, once executive privilege has been invoked, when one considers the clearly expressed rationale. [13]

---

[11] "Application of the criminal contempt statute to Presidential assertions of executive privilege would immeasurably burden the President's ability to assert the privilege and to carry out his constitutional functions. If the statute were construed to apply to Presidential assertions of privilege, the President would be in the untenable position of having to place a subordinate at the risk of a criminal conviction and possible jail sentence in order for the President to exercise a responsibility that he found necessary to the performance of his constitutional duty." *Olson OLC Opinion* of May 30, 1984 at 136 [Doc. 58-10 at 136 (pdf page 37 of 43)]. "The most potent effect of the potential application of criminal sanctions would be to deter the President from asserting executive privilege and to make it difficult for him to enlist the aid of his subordinates in the process." "… it would be inconsistent with the constitutional principles that underlie executive privilege to impose a criminal prosecution and criminal penalties on the President's exercise of a presumptively valid constitutional responsibility." *Id*. at 137-138 [Doc. 58-10 at 137-138 (pdf pages 38-39 of 43)].

[12] "Congress itself has previously recognized the impropriety of resolving executive privilege disputes in the context of criminal contempt proceedings… The United States Court of Appeals for the District of Columbia Circuit has stated on several occasions that criminal contempt proceedings are an inappropriate means for resolving document disputes, especially when they involve another governmental entity…." *Olson OLC Opinion* of May 30, 1984. [Doc. 58-10 at 133 (pdf page 34 of 43)].

[13] Moreover, this is expressly addressed by the Office of Legal Counsel: "That the communications involve individuals outside the Executive Branch does not undermine the President's confidentiality interests." *Assertion of Executive Privilege Concerning Dismissal of U.S. Attorneys*, (June 27, 2007) [Doc. 58-7 at 6, pdf page 7 of 10]. The OLC expressly concluded that such communications with outside consultants "retain their confidential and Executive Branch character and remain protected." [*Id*.]. The OLC further asserted that the communications with these outside consultants is subject to the same level of immunity as current Executive Branch officials, such that a congressional committee can only get access to privileged communications between White House officials and "individuals outside the Executive Branch" if the Committee establishes a "demonstrably critical" need in order to fulfill

Even more to the point here, it is perfectly reasonable for a person in Mr. Bannon's situation who reads the OLC opinions and the rationale expressed in all of them, together with OLC opinions and other official Executive Branch writings which clearly provide that executive privilege can and will be invoked in full force with respect to discussions between the President and people never employed at all by the Executive Branch ("private citizens"),[14] to have believed that the OLC opinions and other authoritative DOJ/Executive Branch writings authorized his conduct with respect to the subpoena underlying this case.

This is even more true in light of the additional OLC opinion he relied on that provided that when executive privilege is invoked and the committee refuses to allow the privilege holder to attend any taking of testimony, the subpoena is invalid and unconstitutional and can be disregarded altogether,[15] along with his experienced attorney's belief, unequivocally expressed to

---

its functions. "Absent such a showing, the Committees may not override an executive privilege claim (as to communications with individuals outside of the Executive Branch)" [*Id.*]  Of course, no such showing was ever even attempted by the January 6th Committee in regard to Mr. Bannon.

[14] Multiple OLC Opinions cited by Mr. Bannon expressly provide that these protections that flow from the invocation of executive privilege apply in full force to former executive branch employees and to outside consultants with whom the President communicated, all of whom are at that point "private citizens." [*See, e.g.*, citations at Doc. 30 at 18; Doc. 58 at 17-18, n. 20; Doc. 58-8].

In addition, White House counsel has made it clear that the Executive Branch views executive privilege to apply in full force to such communications and is not in any way limited to actual Executive Branch employees or former employees. *See, e.g.*, consolidated Exhibit 4 hereto, letters from White House counsel, invoking executive privilege with respect to congressional committee subpoenas for two people never formally employed by the Executive Branch. They further support the reasonableness of Mr. Bannon's belief that his communications were covered by executive privilege.

[15] *Congressional Oversight of The White House*, [Doc. 58-7 at 55-56 (pdf pages 56-57 of 60)] ("subpoenas requiring White House personnel to testify without agency counsel are therefore without legal effect and may not constitutionally be enforced, civilly or criminally, against their recipients"); *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *1, *13-*14 (May 23, 2019) ("Congressional

8

him that the course of action he took with respect to the subpoena was the authorized, correct, and only appropriate one he could take, given the invocation of executive privilege [ECF# 30-1, Costello Declaration].

One must completely ignore the rationale behind all of the relevant OLC opinions, including those which deal with the question in the context of current or former Executive Branch employees as well as those authoritative writings that hold that executive privilege can be invoked in full force as to outside "private citizens" to conclude that Mr. Bannon's belief that the OLC opinions applied to him was unreasonable. And by definition, if one were to ignore the rationale behind the decades of relevant OLC opinions and focus instead on the employment status of the subpoenaed witness for whom the President (or former President invoked executive privilege), one would similarly have to conclude that executive privilege would provide no protection to Henry Kissinger if he were consulted by the President on the Ukraine situation or the Exxon CEO on the economy, with the expectation that such communications would be privileged and confidential. That would be an absurd, illogical, and completely unsupportable conclusion. Every concern underlying each rationale for the relevant OLC opinions and other relevant authoritative DOJ writing on this subject applies with equal force to the communications with outside consultants so situated, including Mr. Bannon for which executive privilege is invoked.

The materials at issue here, therefore, concerning Messrs. Meadows and Scavino and the evaluation and decision not to prosecute them, are directly relevant to the defense theory and, whether or not the government agrees with that defense theory or the Court bars Mr. Bannon from putting it forward in this case through direct evidence, cross-examination, argument, and jury

---

subpoenas that purport to require agency employees to appear without agency counsel are legally invalid and are not subject to civil or criminal enforcement.").

instructions, he is entitled to make a record in all regards and certainly with respect to evidence of the materials sought here, in which the non-prosecution decision is consistent with his theory of defense and therefore exculpatory and/or where the Government has made an arbitrary non-prosecution decision based on criteria Mr. Bannon believes to be legally irrelevant (e.g. current/former Executive Branch employment status vs. former top advisor consulted by the President when no longer employed by the Executive Branch).

Mr. Meadows, in his civil case, has made legal arguments that parallel those raised by Mr. Bannon in submissions before this Court – as to the deficiencies regarding the Committee's composition and its Rules violation,[16] as well as to the inapplicability of the criminal contempt

---

[16] This provides an additional basis for compelling the production of all papers related to the decision to decline prosecuting Meadows and Scavino. Indeed, the Court expressly noted throughout its June 15, 2022 oral Order the similarities in all matters related to the Committee and its composition and contempt referral across the board for Messrs. Bannon, Meadows, and Scavino [June 15, 2022 Tr. at 114-118]. Accordingly, if the decision to not prosecute Meadows and Scavino was in any part based on a Rules issue, it certainly would be *Brady* material vis a vis Mr. Bannon's defense theory. Mr. Bannon would note here that, notwithstanding the Court's repeated statement that the Court was joining Judge Kelly's recent decision on the Rules questions, to accept the notion that it is incumbent on the Court to defer to Congress on its Rules interpretations and applications, and specifically, to defer on the matter of finding that Representative Liz Cheney serves in the role intended for a ranking minority member [June 15, 2022 Tr. at 117], with all due respect, Judge Kelly did not have before him evidence that House Counsel Letter expressly told the FBI that there is no ranking minority member on the Committee [ECF# 58-4 at 5] nor did he have before him Committee Chairman Thompson's express statement that Representative Liz Cheney is **not** the ranking member. https://www.cnn.com/2021/07/27/politics/thompson-statement-072721/index.html This begs the question as to whose view in Congress exactly the Court was deferring on this question.

Moreover, Mr. Bannon respectfully submits and preserves his position, that this Court's decision was inappropriately overly deferential with respect to the Rules issues under the authority of *Christoffel v. United States*, 338 U.S. 84, 88-90 (1949) (holding that the validity of a congressional subpoena turned on judicial determination of "what rules the House has established and whether they have been followed"); *United States v. Smith*, 286 U.S. 6, 33 (1932); *United States v. Ballin*, 144 U.S. 1 (1892); *Yellin v. United States*, 374 U.S. 109 (1963). The Court's view of the degree of deference to be accorded is difficult to reconcile with these decisions.

statute when executive privilege has been invoked and the applicability of the OLC opinions [Doc. ## 29-1 through 29-5; 38 in *Meadows v. Pelosi*, 1:21-cv-03217-CJN; Exhibit 5]. Moreover, executive privilege was invoked with respect to these two men in the exact same manner as it was for Mr. Bannon [ECF# 29-5 in *Meadows v. Pelosi;* Exhibit 3] and just as in the instant case, it was the witness's lawyer who conveyed former President Trump's invocation of Executive Privilege to the Committee [ECF# 29-4 in *Meadows v. Pelosi*; Exhibit 3].[17] Mr. Bannon is entitled to know the basis for the DOJ's decision not to prosecute either man.[18]

---

[17] Notwithstanding the similar role played by counsel in the Meadows and Scavino cases with respect to the invocation of Executive Privilege and interaction with the Committee on behalf of the witness, Mr. Bannon is not aware of any action taken by the Government to obtain the email and telephone records of either attorney representing Mr. Meadows or Mr. Scavino. As part of this motion to compel, given the similarities with respect to the interaction and the invocation of Executive Privilege, Mr. Bannon would respectfully ask the Court to compel Government counsel to advise whether any such steps were taken vis a vis those attorneys.

[18] On June 23, 2022, this Court entered a Minute Order in *Meadows v. Pelosi*, 21-cv-03217-CJN seeking to ascertain whether it is the DOJ's position that based on relevant OLC opinions, the DOJ deems Mr. Meadows to have immunity following the invocation of executive privilege. The Court's Minute Order provides as follows:

> MINUTE ORDER. Upon consideration of the record of this case, the Court notes that Plaintiff's arguments rely, in part, on certain opinions of the Office of Legal Counsel, including, *e.g.*, *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege*, 8 Op. O.L.C. 101 (1984); *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. *5 (July 15, 2014); *Assertion of Executive Privilege With Respect to Clemency Decision*, 23 Op. O.L.C. 1 (1999); *Immunity of the Former Counsel to the President From Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 192 (2007); *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. at *5 (July 15, 2014); and *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __ (May 20, 2019). The Court therefore INVITES the United States Department of Justice to submit a statement of interest, pursuant to 28 U.S.C. § 517, addressing its view as to whether Plaintiff is entitled to absolute or qualified testimonial immunity from the subpoena at issue in this case. It is ORDERED that any such statement, if submitted, should be filed no later than July 15, 2022. If such a statement of interest is filed, the parties may

**LEGAL ARGUMENT**

The D.C. Circuit has emphasized that the prosecution must disclose evidence which is material "to *the preparation of* the defendant's defense." *United States v. Marshall,* 132 F.3d 63, 67 (D.C. Cir. 1998) (emphasis in original). The government must disclose both inculpatory and exculpatory evidence. *Id*. "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." *Marshall*, 132 F.3d at 67; *accord United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (Apr. 27, 2007).

The discovery obligations of Rule 16 are "intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *O'Keefe*, 2007 WL 1239204, at *2 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard "is not a heavy burden" – information is material and must be disclosed if it has the potential to play an "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal"); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (discovery materiality hurdle "is not a high one").

---

file responses on or before July 29, 2022. Signed by Judge Carl J. Nichols on June 23, 2022. (lccjn1) (Entered: 06/23/2022).

Even though Mr. Bannon's defense is not dependent on a finding that he has "immunity;" he is entitled to know the answer to the Court's inquiry, again, given the rationale in the OLC opinions for finding "immunity" with respect to a Congressional subpoena when executive privilege has been invoked.

"As a general matter, Rule 16 establishes the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017); *see also United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003) Moreover, "the government cannot take a narrow reading of the term material in making its decisions on what to disclose under Rule 16." *O'Keefe*, *supra*, 2007 WL 1239204, at *2.

Government disclosure of exculpatory and impeachment evidence is essential to the constitutional guarantee to a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether the defendant makes a request for the information. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Since it is sometimes difficult to assess the materiality of evidence before trial, prosecutors must err on the side of disclosure. *Kyles*, 514 U.S. at 439.

The Department of Justice ("DOJ") Manual, § 9-5.001, provides as follows:

**Disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required**. Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in Kyles v. Whitley, 514 U.S. 419 (1995), and Strickler v. Greene, 527 U.S. 263, 280-81 (1999). The policy recognizes, however, that a trial should not involve the consideration of information which is irrelevant or not significantly probative of the issues before the court and should not involve spurious issues or arguments which serve to divert the trial process from examining the genuine issues. Information that goes only to such matters does not advance the purpose of a trial and thus is13ubjectt to disclosure.

13

**Additional exculpatory information that must be disclosed**. A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

**Additional impeachment information that must be disclosed.** A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence — including but not limited to witness testimony — the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

**Information**. Unlike the requirements of Brady and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

**Cumulative impact of items of information**. While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

DOJ Manual, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings (last visited on Feb. 4, 2022) (emphasis in original).

To ensure that prosecutors adhere to their discovery obligations, the United States District Court for the District of Columbia Local Rules of Criminal Procedure specify the types of information that must be disclosed. The rules provide, in pertinent part, that the Government must disclose to the defense:

(1) Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;

(2) Information that tends to mitigate the charged offense(s) or reduce the potential penalty;

(3) Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;

(4) Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and

14

(5) Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

Local Rule Crim. P. 5.1(b).

Based on the foregoing, Mr. Bannon respectfully submits that the Court grant this motion and order the Government to produce the requested materials.

Dated: June 27, 2022

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
210 N. Charles Street, 26th Floor
Baltimore, MD 21201
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com


   /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

   /s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com


*Counsel for Defendant Stephen K. Bannon*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of June, 2022, a copy of the foregoing DEFENDANT'S MOTION TO COMPEL MEADOWS & SCAVINO DECLINATION DISCOVERY was served *via* the Court's CM/ECF system on registered parties and counsel.

                                                      /s/ M. Evan Corcoran
                                            M. Evan Corcoran (D.C. Bar No. 440027)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
|  | : Criminal No. 21-670 (CJN) |
| v. | : |
|  | : |
| STEPHEN K. BANNON, | : |
|  | : |
| *Defendant*. | : |

## **ORDER**

Upon consideration, it is hereby **ORDERED** that Defendant's Motion To Compel Discovery Of Meadows & Scavino Declination Materials is **GRANTED**. All requested materials shall be produced to the defense on or before _____.

**SO ODERED.**

_____
Hon. Carl J. Nichols
*United States District Judge*

Dated: