**EXHIBIT 4**

# THE WHITE HOUSE
WASHINGTON

September 16, 2019

The Honorable Jerrold Nadler
Chairman
Committee on the Judiciary
United States House of Representatives
Washington, DC 20515

Dear Chairman Nadler:

    I write concerning the subpoena issued by the Committee on the Judiciary (the "Committee") to Corey Lewandowski on August 14, 2019. The subpoena directs Mr. Lewandowski to testify before the Committee on Tuesday, September 17, 2019. I understand that the Committee seeks to question Mr. Lewandowski about events that are described in the Report prepared by Special Counsel Robert S. Mueller, III ("Report"), including Mr. Lewandowski's communications with the President and with senior advisers to the President. As explained below, Mr. Lewandowski's conversations with the President and with senior advisers to the President are protected from disclosure by long-settled principles protecting Executive Branch confidentiality interests and, as a result, the White House has directed Mr. Lewandowski not to provide information about such communications beyond the information provided in the portions of the Report that have already been disclosed to the Committee.

    It is a well-established legal principle, rooted in the constitutional separation of powers, that the President's communications seeking advice or information in connection with the discharge of his duties are highly confidential and not ordinarily subject to disclosure. As the Supreme Court explained over forty years ago, "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. 683, 708 (1974). The protections for such Presidential communications include all communications relating to the President's performance of his official duties and responsibilities. *See Nixon v. Administrator of General Services*, 433 U.S. 425, 449 (1977) (Executive Branch confidentiality interests cover "communications in performance of a President's responsibilities") (internal quotation marks and citation omitted). This position is consistent with governing Supreme Court precedent and the long-standing practice of administrations from both parties. *See, e.g., Assertion of Exec. Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 1-2 (1996) (citing *United States v. Nixon* to explain the Presidential communications privilege).

    The confidentiality interests protecting Presidential communications are not limited solely to communications between the President and his advisers within the Executive Branch. Rather, a President must frequently consult with individuals outside of the Executive Branch, and it is well settled that those communications are also subject to protection. As the Office of Legal Counsel

The Honorable Jerrold Nadler
Page 2

has explained, under long-standing precedent, the fact that "communications involve individuals outside the Executive Branch does not undermine the President's confidentiality interests." *Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1, 5 (2007); *see also* Letter from Pat A. Cipollone, Counsel to the President, to Elijah E. Cummings, Chairman, Committee on Oversight and Government Reform (June 3, 2019) (communications between an individual outside the Executive Branch and the President or senior White House advisers are protected from disclosure).

In addition, the same confidentiality interests extend beyond communications in which the President himself is involved. As the Office of Legal Counsel has explained, "in order for the President and his advisers to make an informed decision, presidential aides must sometimes solicit information from individuals outside the White House and the Executive Branch." *Id.* Accordingly, communications between a President's senior advisers and individuals outside the Executive Branch relating to information or advice that will inform the discharge of the President's responsibilities are equally protected from disclosure. *See also In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) ("Given the need to provide sufficient elbow room for [senior White House] advisers to obtain information from all knowledgeable sources, the privilege must apply both to communications which these advisers solicited and received from others as well as those they authored themselves.").

The Committee has argued that any interest the Executive Branch has in protecting the confidentiality of presidential communications has been waived for matters discussed in the Report. To the contrary, while it is true that the President decided to permit disclosure of portions of the Report that would otherwise be protected by executive privilege, such a disclosure is not a waiver of any privilege or protection with respect to additional information on the same subject matters not contained in the Report. Allowing those who have had confidential conversations with the President to appear before Congress to answer additional questions relating to their communications with the President and with the President's senior advisers would create profound separation of powers concerns and would threaten the ability of future Presidents to protect the confidentiality of advice they receive and the communications their advisers have with others in order to advise the President.

Thus, in light of the long-settled principles discussed above, and in order to protect the prerogatives of the Office of President, the White House has directed Mr. Lewandowski not to discuss the substance of any conversations he had with the President or senior Presidential advisers about official government matters, unless the information is expressly contained in the Report. We are adhering to the well-established lines protecting the confidentiality of presidential communications to ensure that future Presidents can effectively execute the responsibilities of the Office of President.

We also understand the Committee may question Mr. Lewandowski about discussions he had with the President-elect during the presidential transition. Discussions during this period may relate to decisions the President-elect would be making once he assumed office. Accordingly, Mr. Lewandowski's responses to specific questions relating to this period may implicate deliberative process privilege and other Executive Branch confidentiality interests.

The Honorable Jerrold Nadler
Page 3

    In order to preserve the President's ability to assert executive privilege over the information discussed above, and to protect the prerogatives of the Office of President, a member of my office will attend the hearing on September 17 and will advise, as necessary, with regard to specific questions that implicate privileged matters.

    Please do not hesitate to contact me or Mike Purpura if you have any questions or would like to discuss this matter further.

Sincerely,

Pat A. Cipollone
*Counsel to the President*

cc:    The Honorable Doug Collins, Ranking Member

**THE WHITE HOUSE**

WASHINGTON

May 21, 2019

The Honorable Elijah E. Cummings
Chairman
Committee on Oversight and Reform
House of Representatives
Washington, D.C. 20515

Dear Chairman Cummings:

I write in response to the Committee's letters of April 29, 2019, and May 7, 2019, to former Kansas Secretary of State Kris Kobach. According to those letters, the Committee seeks to conduct a transcribed interview of Mr. Kobach regarding "the addition of a citizenship question to the 2020 Census." The Committee's letters indicate that topics covered during the interview will include Mr. Kobach's conversations with the President and other Administration officials. We understand that the interview will occur by telephone tomorrow at 9:30 a.m.

It is a well-established legal principle, rooted in the constitutional separation of powers, that the President's communications seeking advice or information in connection with the discharge of his duties are highly confidential and not ordinarily subject to disclosure. As the Supreme Court explained over forty years ago, "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. 683, 708 (1974). In light of this long-standing precedent, Mr. Kobach's conversations with the President and with senior White House advisers who advise the President are confidential, and he would not be permitted to discuss those conversations during a transcribed interview. This position is consistent with governing Supreme Court precedent and the long-standing practice of administrations from both political parties.

The Committee claims that Mr. Kobach's conversations with the President and senior White House advisers are not subject to executive privilege because "Mr. Kobach was not an employee of the Executive Branch, and the communications at issue did not relate to presidential decision-making." However, the Executive Branch's confidentiality interests are not limited solely to communications directly involving the President and other Executive Branch officials. Rather, a President and his senior advisers must frequently consult with individuals outside of the Executive Branch, and those communications are also subject to protection. *See Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1, 5 (2007) ("That the communications involve individuals outside the Executive Branch does not undermine the President's confidentiality interests."). Moreover, contrary to the Committee's claim, the protections for presidential conversations are not limited to presidential decision-making. Rather, they sweep more broadly and include all communications relating to the President's performance of his official duties and responsibilities. *See Nixon v. Administrator of*

Chairman Cummings
Page 2

*General Services*, 433 U.S. 425, 449 (1977) (Executive Branch confidentiality interests cover "communications in performance of a President's responsibilities") (internal quotation marks and citation omitted). Of course, those duties and responsibilities include supervising federal agencies and having discussions with advisers about what actions those agencies should take.

Accordingly, if the Committee wishes to proceed with a transcribed interview of Mr. Kobach, the White House will instruct Mr. Kobach not to discuss the substance of any conversations he had with the President or senior White House advisers about official government matters, including "the addition of a citizenship question to the 2020 Census."

Finally, as a matter of basic courtesy and respect for a co-equal branch of our government, I request that you direct your staff to work through the Office of the White House Counsel to request information of the nature you seek from Mr. Kobach. Consulting with this office will ensure that the Committee efficiently obtains access to the information to which it is entitled and that any disclosure of privileged information to Congress is properly authorized. As always, I am happy to discuss any of the issues raised in this letter at your convenience.

Sincerely,

Michael M. Purpura
*Deputy Counsel to the President*

cc: The Honorable Jim Jordan, Ranking Member