UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**

The Defendant, Stephen K. Bannon, has filed a motion to compel production of the Government's internal deliberations with respect to two additional referrals for contempt of Congress that the U.S. House Select Committee to Investigate the January 6th Attack on the U.S. Capitol ("the Committee") made to the U.S. Attorney's Office. ECF No. 86. The Defendant claims he is entitled to the materials under the Court's March 16, 2022, discovery order, *id*. at 3-4, and to support a purported entrapment-by-estoppel defense, *id*. at 4-11. He is wrong on both counts and his motion should be denied.

First, the Court's March 16 Order required the Government to produce records reflecting "official DOJ policy." No such records exist in connection with the Department's consideration of the congressional contempt referrals of Mark Meadows or Daniel Scavino. And the Government has never understood the Court to have required the Government to provide internal analysis and attorney work product material relating to its prosecutorial decisionmaking in particular criminal matters, which is what the Defendant seeks here, particularly given courts' well-established recognition that delving into such matters intrudes on a "special province" of the Executive. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (discussing the high bar litigants must meet to be entitled to government records regarding prosecutorial decisionmaking in the context of selective prosecution claims). Instead, consistent with its understanding of the

Court's order, the Government has provided records reflecting the Department's official view of the criminal penalties applicable to current or former government officials raising executive privilege claims or immunity in response to congressional process—including letters explaining declinations that referenced "official DOJ policy."  It provided all of these records on April 1 and 4, 2022, and has nothing further in its possession to provide.

Second, the Defendant claims that the Government's internal deliberations are discoverable to support his purported entrapment-by-estoppel defense.  They are not.

At this stage, despite taking yet another bite at the apple to make out such a defense under the guise of a motion to compel, the Defendant still cannot identify specific Office of Legal Counsel ("OLC") opinions on which he allegedly relied in deciding to defy the Committee's subpoena.  He has not even identified a single OLC opinion that sanctions his conduct, even putting aside for a moment whether he relied on it.  The Defendant's motion to compel instead suggests that his purported defense now is that he and his attorney independently extrapolated from inapplicable OLC opinions to conclude that he could lawfully defy the Committee's subpoena. *See, e.g.*, ECF No. 86 at 5 (claiming that based on the "rationale" for OLC opinions "there is no legally relevant basis for distinguishing between current and former executive branch officials on the one hand and 'private citizens'"); *id*. at 7 (claiming the "rationales" of various OLC opinions do not "appl[y] with any less force to the 'private citizen'").  That is not an entrapment-by-estoppel defense.  It is a mistake-of-law defense that is unavailable to him under the contempt statute.  *See Watkins v. United States*, 354 U.S. 178, 208 (1957) ("[T]he witness acts at his peril. he is '* * * bound rightly to construe the statute.' An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry." (quoting *Sinclair v. United States*, 279 U.S. 263, 299

(1929) ("The refusal to answer was deliberate. . . . He was bound rightly to construe the statute. His mistaken view of the law is no defense."))).  There is no estoppel defense available to criminal defendants under which they can cobble together out-of-context one-liners from disparate government writings and claim their conduct was legal—such a defense would have no limits and would erase criminal accountability across the board.

The Defendant's failure, across multiple briefings and in oral argument, to identify even a single statement by the government sanctioning his conduct is fatal to his ability to present an entrapment-by-estoppel defense at trial—and the internal deliberative material that he now seeks regarding other individuals in other circumstances does nothing to advance his cause.  The threshold requirement to present an estoppel defense at trial is that the Defendant present some evidence that he relied on a government statement that the Defendant's total defiance—not the White House Chief of Staff's or the White House Counsel's, but the Defendant's total defiance, in his particular circumstances—was lawful.  *See United States v. Abcasis*, 45 F.3d 39, 43-44 (2d Cir. 1995) ("[T]he defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes in the expectation of receiving subsequent authorization."); *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000) (explaining that the defendant "must do more than show that the government made 'vague or even contradictory statements'" and "must show that the government affirmatively told him the proscribed conduct was permissible" (quoting *Raley v. State of Ohio*, 360 U.S. 423, 438 (1959))); Gov't Mot. in Limine, ECF No. 52, at 8-9 (collecting cases).  The Defendant has not met that threshold requirement, and the Government's internal deliberations on other contempt matters, regarding differently-situated individuals, referred to the U.S. Attorney's Office weeks and months after the Defendant's willful default, do

3

nothing to correct his failure. Indeed, given that the materials he seeks were generated after his default and are purely internal deliberative materials, the Defendant cannot possibly show that he relied upon them when he made his deliberate decision to default. *Cf. United States v. Libby*, 475 F. Supp 2d 73, 87-88 (D.D.C. 2007) (excluding evidence where its relevance depended on evidence that the defendant had relied on it and the defendant failed to establish that he had done so). Having failed to meet the first element of the defense, he cannot present it at trial and any evidence relating to a purported entrapment-by-estoppel defense, therefore, is not relevant, let alone material, to either party's case-in-chief and not discoverable. *See Armstrong*, 517 U.S. at 462 ("[I]n the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring disclosure of material favorable to the Defendant only if it is "material either to guilt or punishment"); *United States v. Bagley*, 473 U.S. 667, 682 (1985) (finding information material for *Brady* purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); Fed. R. Crim. P. 16(a)(1)(E)(i) (allowing discovery of records that are "material to preparing the defense"); *see also* Fed. R. Crim. P. 16(a)(2) (Rule 16(a)(1)(E) "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."); *United States v. Safavian*, 233 F.R.D. 12, 20 (D.D.C. 2005) ("[T]he internal deliberative processes of the Department of Justice, the FBI, and the GSA-OIG are irrelevant to the preparation of a defense.").[1]

---

[1] As he did in his prior motion to compel, ECF No. 28 at 7-8, the Defendant again cites internal Department policies and Local Rule 5.1(b) as additional authorities for his request, ECF No. 86 at 13-15. As the Government has previously pointed out, internal Department policies create no enforceable rights against the Government and Local Rule 5.1(b) does not purport to expand the Government's *Brady* obligations and could not do so under federal law. *See* Gov't

Moreover, even if the Defendant had identified some Department writing that concluded total defiance of both a document and testimonial demand was allowed by a private citizen subpoenaed in relation to his private affairs, the Defendant still has not shown why the Department's internal deliberations relating to the former Chief of Staff and former Deputy Chief of Staff, subpoenaed for information relating to the time during which they served in those roles, would have any bearing on the reasonableness of his reliance. Tellingly, the Defendant does not cite to the standard for reasonableness under an entrapment-by-estoppel theory, which requires that the Defendant show that "a person truly desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *United States v. W. Indies Transport, Inc.*, 127 F.3d 299, 313 (3d Cir. 1997) (internal quotation marks and citation omitted). Materials generated after the Defendant's default could not possibly have informed the reasonableness of his actions at the time he took them. In any event, as the Government has identified before, OLC opinions are consistent in their admonishments that whether the law excuses someone from complying with a congressional subpoena is a fact-based inquiry, even with respect to current or former executive branch officials subpoenaed in their capacity as such.

Finally, the Defendant suggests in passing, with no analysis, that the information he seeks is discoverable to the extent it may relate to a selective prosecution claim. *See* ECF No. 86 at 9-11 (claiming the Defendant "is entitled to make a record . . . where the Government has made an arbitrary non-prosecution decision . . . . Mr. Bannon is entitled to know the basis for the DOJ's decision not to prosecute [Meadows and Scavino]"). To be entitled to discovery relating to a selective prosecution claim, the Defendant must offer "some evidence tending to show the

---

Opp'n to Mot. to Compel, ECF No. 31 at 5, 7.

existence of the essential elements of the defense," *Armstrong*, 517 U.S. at 468 (citation omitted), that is, "some evidence of both discriminatory effect and discriminatory intent," *United States v. Bass*, 536 U.S. 862, 863 (2002). The Defendant has not done so. To show discriminatory effect, the Defendant must show "that the Government afforded 'different treatment' to persons 'similarly situated' to him." *United States v. Judd*, -- F. Supp. 3d --, 2021 WL 6134590, at *2 (D.D.C. 2021) (quoting *Armstrong*, 517 U.S. at 470). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009) (quoting *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008)) (internal quotation marks omitted). The Defendant does not identify of what "protected class" he believes Mark Meadows and Dan Scavino are a part that he is not or why they are similarly situated to him. Having failed to show the first prong, his request for discovery fails. *See United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997) (noting that both prongs must be met to sustain request for discovery on selective prosecution claim) (citing *Attorney General of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982)). In any event, the Defendant has made no effort to meet the second prong of discriminatory intent, which requires that he show "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, or was designed to prevent or paralyze his exercise of constitutional rights." *United States v. Mangieri*, 694 F.2d 1270, 1273 (D.C. Cir. 1982) (internal citations and quotation marks omitted); *see also Wayte v. United States*, 470 U.S. 598, 610, (1985) (noting that discriminatory purpose "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" (citations and internal quotation marks omitted) (alteration in original)). The Defendant is not entitled to

6

discovery of the Department's internal prosecutorial deliberations on his baseless suggestion of selective prosecution.

The Defendant has provided no ground on which he is entitled to go fishing in the Department's internal deliberative and work product files. His motion to compel disclosure of the Government's analysis relating to contempt prosecutions of other individuals must be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov