## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| v. | : | |
| STEPHEN K. BANNON, | : | |
| *Defendant*. | : | |

## MOTION TO CONTINUE TRIAL

Defendant Stephen K. Bannon, by and through his undersigned counsel, respectfully moves pursuant to the Fifth and Sixth Amendments to the United States Constitution for a continuance of the trial in this matter, until a date after October 15, 2022, that is convenient for the Court. In support of this motion, we state as follows:

### Background

The Indictment was filed on November 12, 2021. [Doc. 1] The case was randomly assigned to this Court.[1] On January 3, 2022, the Court set trial for July 18, 2022. [Doc. 25]. This was an aggressive schedule given the complex legal issues involved.[2] When trial was scheduled, neither the Court nor the parties were aware of the June and upcoming July media blitz by the

---

[1] *See* Local R. Crim. P. 57.10 (random assignment via automated system).

[2] Over the past six years, in this district the median time from filing to disposition for criminal cases – including cases resolved early by plea – has averaged over 12 months. *See* United States District Courts – National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0331.2022.pdf at 2.

Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). The Select Committee hired a television executive to produce maximum public impact.[3] In addition, the Select Committee scheduled its initial public hearing during prime time – again, to maximize public impact when presenting purported investigative "findings." As described by a cultural critic, the Select Committee hearings "have a lot in common with scripted TV mini-series: narrative, editing — even surprise reveals" and "their attention to substance and style, combining their prosecutorial case with a consciousness of what piques viewers' curiosity and keeps people talking afterward."[4]

This is a misdemeanor case, Mr. Bannon is not detained, and he consents to the tolling of the Speedy Trial Act. As set forth below, there are additional and compelling substantive reasons for a continuance due to the unprecedented level of prejudicial pretrial publicity generated by the ongoing Select Committee hearings in the days just before trial is scheduled.

After the trial date was set in this case, the Select Committee scheduled numerous televised and streamed public hearings in June.[5] The purpose of the hearings, according to the Select Committee website, was to "provide the American people an initial summary of its findings." Televised and streamed Select Committee hearings took place on June 9, 13, 16, 21,

---

[3] *See* Annie Karni, *The committee hired a TV executive to produce the hearings for maximum impact*, The New York Times, June 24, 2022, https://www.nytimes.com/2022/06/09/us/the-committee-hired-a-tv-executive-to-produce-the-hearings-for-maximum-impact.html.

[4] James Poniewozik, *The Jan. 6 Committee Produces a Very Special Episode,* The New York Times, June 28, 2022, https://www.nytimes.com/2022/06/28/arts/television/cassidy-hutchinson-jan-6-committee.html?campaign_id=9&emc=edit_nn_20220629&instance_id=65309&nl=the-morning&regi_id=91720949&segment_id=97102&te=1&user_id=72f3b91818d2fd66a86ba9af4c101bb1.

[5] *See* Select Committee website at https://january6th.house.gov/legislation/hearings.

23 and 28. The Select Committee played video clips featuring Mr. Bannon for millions of

viewers. One of those videos – presented during primetime – appears to present a statement by

Mr. Bannon that is referenced in the Indictment. [Doc. 1 at ¶ 7]. The most recent hearing

included references to a January 5, 2021, meeting of close advisors to former President Donald J.

Trump at the Willard Hotel – a meeting referenced in the Indictment. *Id*. There were explicit

references to Mr. Bannon at the hearings, as reflected in examples on pages 10 and 11 *infra*. All

this information was presented to the public as investigative "findings" and "evidence."[6]

Public impact is not limited to the hearings themselves, but to the media coverage that

magnified the hearings. In Washington, DC, where trial will take place – and where the acts

alleged in the Indictment took place – every major media outlet treated the hearings as a top

news story. We set forth facts regarding the saturation of the news and social media in greater

detail on pages 6 through 9 *infra*.

Every person accused of a crime is guaranteed a fair trial under the U.S. Constitution.

This requires that a verdict be based on evidence presented at trial, not on "evidence" or

"findings" presented in congressional hearings, or on the preconceptions of jurors. In addition, a

fair trial requires that the accused be allowed to confront the witnesses against him or her. The

idea is that the jury is best positioned fairly to evaluate evidence at trial if that evidence is tested

through the adversarial process. The media saturation in June and the upcoming hearings in July

–right before trial – warrants a continuance.

---

[6] *See*, *e.g*., LIVE: January 6 Hearing: House Select Committee Presents Capitol Attack
Investigation Findings, at https://www.youtube.com/watch?v=qaRjwWPANhI; Nicholas Wu and
Kyle Cheney, *Jan. 6 panel revises hearing schedule, citing new evidence,* Politico, June 22,
2022, https://www.politico.com/news/2022/06/22/jan-6-panel-revises-hearing-schedule-
00041384.

The Select Committee chair has stated that there will be an additional public hearing or hearings after Congress returns from recess on July 12, 2022 – the week before the trial scheduled in this matter.[7] To add to the prejudice, the Select Committee has publicly announced that it has just obtained new "evidence" and will sift through this "mountain of new evidence" and "incorporate it" into the televised hearings planned for July.[8]

### A Continuance Is Needed To Ensure A Fair Trial

The Sixth Amendment guarantees criminal defendants the right to an impartial jury. Pervasive pretrial publicity threatens this right. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *see also Bridges v. State of California*, 314 U.S. 252, 271 (1941) ("legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper"). Trial courts have a duty to protect a criminal defendant's constitutional right to a fair trial from the impact of negative pretrial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). In circumstances where the media has been saturated with information about an event, a trial court may presume prejudice in the pool of potential jurors. *U.S. v. Haldeman*, 559 F.2d 31, 60 (D.C. Cir. 1976) (citing *Calley v. Callaway*, 519 F. 2d 184, 204 (5th Cir. 1975) (en banc)).

Nearly six decades ago, the Supreme Court raised concerns about media saturation and the right to a fair trial. In *Rideau v. Lousiana*, an accused's statement to police was broadcast on television for three consecutive days. 373 U.S. 723 (1963). The defense moved for a change of venue, which the trial court denied. *Id*. at 724. During voir dire, three members of the jury that

---

[7] Nicholas Wu and Kyle Cheney, *Jan. 6 panel revises hearing schedule, citing new evidence,* Politico, June 22, 2022, https://www.politico.com/news/2022/06/22/jan-6-panel-revises-hearing-schedule-00041384.

[8] Brett Wilkins, *Hit with a "deluge of new evidence," House Jan. 6 committee will delay hearings to July,* Salon, June 23, 2022, https://www.salon.com/2022/06/23/citing-a-deluge-of-new-evidence-jan-6-committee-delays-hearings-to-july_partner/.

ultimately convicted the defendant disclosed that they had seen the television broadcast before trial. *Id.* at 725. The Supreme Court reversed the conviction and found that "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." *Id.* at 726; *see also Estes v. Texas*, 381 U.S. 532 (1965) (holding that defendant's due process rights were violated where the volume of pretrial publicity and the broadcasting of the trial "inherently prevented a sober search for the truth").

In *Sheppard v. Maxwell*, there was pervasive media coverage about a defendant charged with murder. 384 U.S. 333 (1966). As in this case, media accounts purported to present to the public "evidence" and investigative findings. *Id.* at 340-41. In reversing Sheppard's conviction, the Supreme Court held that due to the "pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors…where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates or transfer it to another county not so permeated with publicity." *Id.* at 362-363.

Media coverage of events has become exponentially more pervasive in the sixty years since *Sheppard* was decided. The Internet, social media, and the 24-hour news cycle provide a perpetual stream of news to every individual with a smartphone or computer.[9] These factors exacerbate the concerns about the need protect those accused of a crime from prejudicial pretrial publicity, as articulated by the Supreme Court in *Sheppard*.

---

[9] The software programs that connect smartphones and other devices to the Internet use algorithms tailored to show people what they are interested in – which can create an echo chamber of posts and news items for each individual user. *See* Rachel L. Jones, *Can You Have Too Much of a Good Thing? The Modern Marketplace of Ideas*, 83 MOLR 971, 972 (2018).

**There Has Been Pervasive Select Committee Hearing Coverage in Washington, DC**

Potential jurors in the District of Columbia have been bombarded with coverage of the

Select Committee hearing, as demonstrated by the statistics below:

- On June 9, 2022, approximately 20 million people watched the Select Committee's first hearing investigating the events of January 6, 2021, across broadcast and cable news.[10]

- Over 4.6 million viewers tuned in online to that first hearing, as PBS, NBC, the Washington Post, AP News, C-SPAN, the Wall Street Journal, CNBC, and ABC streamed the hearing live and posted recordings on YouTube.[11]

- On June 9, 2022, "Jan. 6 hearings" was the second highest trending search term on Google, generating 22,200 separate news results on Google on that single day. GOOGLE, https://www.google.com/search?q=jan.+6+hearings&biw=1920&bih=969&source=lnt&tbs=cdr%3A1%2Ccd_min%3A6%2F9%2F2022%2Ccd_max%3A6%2F9%2F2022&tbm=nws (last visited June 22, 2022).

- Massive numbers of articles regarding the Select Committee hearings are directed through local news outlets to Washington, DC, residents. For instance, a June 22, 2022, Google search of the local NBC4 Washington website for the term "Jan. 6 hearings" generated 1,850 results that are dated within the past month alone.[12]

- Local Washington, DC, news coverage of the Select Committee hearings is also pushed out to residents via social media. For instance, in addition to broadcasting on television,

---

[10] John Koblin, *At Least 20 Million Watched Jan. 6 Hearing*, N.Y TIMES, https://www.nytimes.com/2022/06/10/business/media/jan-6-hearing-ratings.html (last updated June 21, 2022).

[11] Available at https://www.youtube.com/watch?v=UiL2inz487U, https://www.youtube.com/watch?v=1GS2uybciaU, https://www.youtube.com/watch?v=AAYUj3iwqLY, https://www.youtube.com/watch?v=Jz9TS_lCt-g. https://www.youtube.com/watch?v=lZJ56cXSI-o, https://www.youtube.com/watch?v=qr3z2ObaWQM, https://www.youtube.com/watch?v=9tSNJ_6XudM, https://www.youtube.com/watch?v=1Y64FGPW28g
[12]https://www.google.com/search?q=jan.+6+hearings+site%3Ahttps%3A%2F%2Fwww.nbcwashington.com%2F&biw=1920&bih=969&source=lnt&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm=nws (last visited June 22, 2022).

NBC4 Washington has 872,609 followers on Facebook, approximately 341,200 followers on Twitter, and approximately 129,000 followers on Instagram.[13]

- For local radio (and Internet) station Washington Top News (WTOP), a search of the term "Jan. 6 hearings" generated 545 results from the past month alone.[14]  WTOP distributes news by radio broadcast, website, and app, and has 194,406 followers on Facebook, approximately 229,200 followers on Twitter, and approximately 27,200 followers on Instagram.[15]

- A Google search of the FOX 5 DC website for the term "Jan. 6 hearings" generated 379 results from the past month.[16]  FOX 5 DC distributes news on television and online, and has approximately 1.3 million followers on Facebook, approximately 327,600 followers on Twitter, and approximately 197,000 followers on Instagram.[17]

---

[13] NBC Washington, https://www.nbcwashington.com/ (last visited June 22, 2022); NBC Washington, Facebook, https://www.facebook.com/nbcwashington/ (last visited June 22, 2022); NBC4 Washington (@nbcwashington), Twitter, https://twitter.com/nbcwashington (last visited June 22, 2022); NBC4 Washington (@nbcwashington), Instagram, https://www.instagram.com/nbcwashington/?hl=en (last visited June 22, 2022).

[14] GOOGLE, https://www.google.com/search?q=%22jan.+6+hearings%22+site%3Awtop.com%2F&biw=1920&bih=969&source=lnt&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm=nws (last visited June 22, 2022).

[15] WTOP News, https://wtop.com/about-wtop-news/ (last visited June 22, 2022); WTOP News, Facebook, https://www.facebook.com/wtopnews/ (last visited June 22, 2022); WTOP News (@WTOP), Twitter, https://twitter.com/WTOP (last visited June 22, 2022); WTOP News (@wtopnews) https://www.instagram.com/wtopnews/?hl=en (last visited June 22, 2022).

[16] GOOGLE, https://www.google.com/search?q=jan.+6+hearings+site%3Awww.fox5dc.com&biw=1920&bih=969&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm=nws&ei=1XizYsQvlebk2g_LtoqgCA&ved=0ahUKEwiE7oC08MH4AhUVM1kFHUubAoQQ4dUDCA0&uact=5&oq=jan.+6+hearings+site%3Awww.fox5dc.com&gs_lcp=Cgxnd3Mtd2l6LW5ld3dMQA1DqEViUPWD1QmgAcAB4AIABMogB5ASSAQIxNJgBAKABAcABAQ&sclient=gws-wiz-news (last visited June 22, 2022).

[17] FOX 5 Washington DC, https://www.fox5dc.com/ (last visited June 22, 2022); FOX 5 DC, Facebook, https://www.facebook.com/fox5dc (last visited June 22, 2022); FOX 5 DC (@fox5dc), Twitter, https://twitter.com/fox5dc (last visited June 22, 2022); FOX 5 DC (@fox5dc) https://www.instagram.com/fox5dc/?hl=en (last visited June 22, 2022).

- A Google search of the website for the Washington Post for the term "Jan. 6 hearings" generated 3,110 results from the past month.[18] The print version of that newspaper has made the Select Committee hearings either a headline story, or an A-section story, nearly every day since the hearings began.

- The Washington Times distributes news by print and online, and has approximately 723,929 followers on Facebook, approximately 425,200 followers on Twitter, and approximately 64,600 followers on Instagram.[19] A Google search of the website for the Washington Times for the term "Jan. 6 hearings" generated 1,510 results from the past month.[20]

- WAMU, Washington D.C.'s NPR radio (and Internet) affiliate, is the most listened to radio station in the city. A Google search of the WAMU website for the term "Jan. 6 hearings" generated 372 results from the past month alone.[21] The Select Committee hearings has been a top news story broadcast nearly every day since the hearings began.

---

[18] GOOGLE, https://www.google.com/search?q=jan.+6+hearings+site%3Ahttps%3A%2F%2Fwww.washingtonpost.com&biw=1920&bih=969&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm=nws&ei=03KzYujNGq_n5NoPu5ym4A8&ved=0ahUKEwiog-vW6sH4AhWvM1kFHTuOCfwQ4dUDCA0&uact=5&oq=jan.+6+hearings+site%3Ahttps%3A%2F%2Fwww.washingtonpost.com&gs_lcp=Cgxnd3Mtd2l6LW5ld3MQA1DLA1icG2CtHmgCcAB4AIABNYgBzweSAQIyMZgBAKABAcABAQ&sclient=gws-wiz-news (last visited June 22, 2022).

[19] Washington Times, https://www.washingtontimes.com/about/ (last visited June 27, 2022); Washington Times, Facebook, https://www.facebook.com/TheWashingtonTimes/ (last visited June 27, 2022); Washington Times (@WashTimes), Twitter, https://twitter.com/WashTimes (last visited June 27, 2022); Washington Times (@washtimes), Instagram, https://www.instagram.com/washtimes/?hl=en (last visited June 27, 2022).

[20] GOOGLE, https://www.google.com/search?q=jan.+6+hearings+search%3Ahttps%3A%2F%2Fwww.washingtontimes.com%2F&rlz=1C1GCEU_enUS1009US1009&source=lnt&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm= (last visited June 27, 2022).

[21] Radio Online, https://ratings.radio-online.com/content/arb015 (June 14, 2022); GOOGLE, https://www.google.com/search?q=jan.+6+hearings+site%3Ahttps%3A%2F%2Fwamu.org%2F&biw=1920&bih=969&tbs=cdr%3A1%2Ccd_min%3A5%2F21%2F2022%2Ccd_max%3A6%2F22%2F2022&tbm=nws&ei=kHyzYoDYK4Ln5NoPh_OgqAc&ved=0ahUKEwiA4Nz788H4AhWCM1kFHYc5CHUQ4dUDCA0&uact=5&oq=jan.+6+hearings+site%3Ahttps%3A%2F%2Fwamu.org%2F&gs_lcp=Cgxnd3Mtd2l6LW5ld3MQA1CTDFiTDGCrD2gBcAB4AIABLYgBVpIBATKYAQCgAQKgAQHAAQE&sclient=gws-wiz-news (last visited June 22, 2022).

- On June 27, 2022, a person conducting a Google search of the term "Jan. 6 hearings" would receive approximately 26,300,000 results under the category "news."[22]

The decisions in *Sheppard* and similar cases emphasize the need to protect an accused from the potential prejudicial effect of information that is broadcast to the public without the protections of the rules of evidence and the adversary process at trial. *See Sheppard*, 384 U.S. at 354; *Marshall v. United States*, 360 U.S. 310 (1959). The Supreme Court has noted that information presented to the public before trial can be *more prejudicial* to the defendant than publicity during trial – because it is absorbed without the protective procedures that can be enforced during trial. *Estes*, 381 U.S. at 536; *see also Marshall*, 360 U.S. at 312.

**A Continuance Is Required Given Media Coverage Of Ongoing Select Committee Hearings**

It would be impossible to guarantee Mr. Bannon a fair trial in the middle of much-publicized Select Committee hearings which purport to broadcast investigative "findings" on topics that are referenced in the Indictment. Under the circumstances, we believe that it would be erroneous to deny a requested continuance when congressional hearings create prejudicial pretrial publicity – as has been acknowledged by the Government and found to constitute good cause for a trial continuance in another pending case in this district.

The need for a continuance is demonstrated by *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952). There, the First Circuit addressed the prejudice an accused suffers when public

---

[22] GOOGLE, https://www.google.com/search?q=jan.+6+hearings&rlz=1C1GCEU_enUS1009US1009&source=lnms&tbm=nws&sa=X&ved=2ahUKEwjild_h_c34AhU3GVkFHdBrDR4Q_AUoAXoECAIQAw&biw=1920&bih=969&dpr=1 (last visited June 27, 2022).

legislative hearings create pretrial publicity. The First Circuit held that it was reversible error for the trial court to deny the defendant's motion for a continuance to ameliorate the prejudicial effect of pretrial publicity stemming from a congressional subcommittee hearing. The *Delaney* court further held that it was immaterial that the prejudicial publicity was generated by the Legislative Branch and not the prosecutors:

> [T]he prejudicial effect upon Delaney, in being brought to trial in the hostile atmosphere engendered by all this pre-trial publicity, would obviously be as great, whether such publicity were generated by the prosecuting officials or by a congressional committee hearing. In either case he would be put under a heavy handicap in establishing his innocence at the impending trial. Hence, so far as our present problem is concerned, we perceive no difference between prejudicial publicity instigated by the United States through its executive arm and prejudicial publicity instigated by the United States through its legislative arm. The prosecution is by the 'United States of America' against Denis W. Delaney. After the United States has imposed this burden upon the defendant, by making it difficult to determine his guilt or innocence solely on the basis of evidence to be presented at the impending trial, it seems to us neither right, nor in harmony with the spirit of the Sixth Amendment, for the United States to make him stand trial while the damaging effect of all that hostile publicity may reasonably be thought not to have been erased from the public mind.

> We think that the United States is put to a choice in this matter: If the United States, through its legislative department, acting conscientiously pursuant to its conception of the public interest, chooses to hold a public hearing inevitably resulting in such damaging publicity prejudicial to a person awaiting trial on a pending indictment, then the United States must accept the consequence that the judicial department, charged with the duty of assuring the defendant a fair trial before an impartial jury, may find it necessary to postpone the trial until by lapse of time the danger of the prejudice may reasonably be thought to have been substantially removed.

*Delaney*, *supra*, 199 F.2d at 114.

### Mr. Bannon Has Been Highlighted – By Name And In Video Presentations – At Select Committee Hearings Purporting To Publicize Investigative "Findings"

The Select Committee hearings have not only addressed in general terms matters that may be in the minds of jurors when they consider the charges in this case, but also have specifically referenced Mr. Bannon. For instance, at the June 9, 2022, Select Committee hearing, the following "finding" was broadcast to millions of viewers:

10

REP. CHENEY: As you will see in our hearings, the White House was receiving specific reports in the days leading up to January 6th, including during President Trump's ellipse rally indicating that elements in the crowd were preparing for violence at the Capitol. And on the evening of January 5th, the President's close adviser Steve Bannon said this on his podcast.

[VIDEOTAPE PLAYED SHOWING STEVE BANNON SPEAKING]

STEVE BANNON: All hell is going to break loose tomorrow. Just understand this. All hell is going to break loose tomorrow.

See https://www.npr.org/2022/06/10/1104156949/jan-6-committee-hearing-transcript.

Another example took place during the hearing on June 21, 2022, again broadcast to millions of viewers as a congressional "finding":

JOSH ROSELMAN: On December 30th Trump ally Steve Bannon announced a protest at Cutler's home.

[VIDEOTAPE PLAYED SHOWING STEVE BANNON SPEAKING]

STEVE BANNON: We're getting on the road and we're going down to Cutler. We're going to start going to offices. And if we have to we're going to go to homes and we're going to let them know what we think about them. [End Videotape]

REP. CHENEY: Roger Stone took the fifth. General Michael Flynn took the fifth. John Eastman took the fifth. Others like Steve Bannon and Peter Navarro simply refused to comply with lawful subpoenas. And they have been indicted. Mark Meadows has hidden behind President Trump's claims of executive privilege and immunity from subpoenas.

See https://www.npr.org/2022/06/21/1105848096/jan-6-committee-hearing-transcript.

**The Government Has Conceded, And A Trial Court Has Agreed, That Prejudicial Pretrial Publicity Stemming From The Ongoing Select Committee Hearings Can Constitute Good Cause For A Trial Continuance Where A Defendant Has Been Singled Out In Video Presentations By Committee Members**

The prejudicial publicity stemming from ongoing congressional Select Committee hearings has already been recognized by a judge in this district as good cause for a trial continuance – where, as here, a defendant was mentioned by name and depicted in a video presentation during a Select Committee hearing. The Government acknowledged the same when it consented to the defense motion for continuance in *United States v. Ethan Nordean et al.. See*

United States Consent to Continue Trial, No. 21-175 (TJK) (D.D.C. June 16, 2022), ECF No.

404. One basis for the agreed continuance was the negative pretrial publicity generated by the

Select Committee hearings. Motion to Continue Trial, No. 21-175 (TJK) (D.D.C. June 16, 2022),

ECF No. 403 at 2. The Government conceded that – given the August 8, 2022, trial date in that

case – "the timing of these hearings may prejudice the defendants[.]" United States Consent to

Continue Trial, No. 21-175 (TJK) (D.D.C. June 16, 2022), ECF No. 404 at n.1.

In granting the motion to continue trial, the Honorable Timothy J. Kelly ruled, in

pertinent part, as follows:

> Given all the above, the Court finds that there is good cause to continue the trial of all
> Defendants until December 12, 2022, at least because of (1) the prejudicial publicity
> stemming from the ongoing congressional hearings and (2) the chaos that would be
> caused if, as the Government expects, the Committee releases a thousand potentially
> relevant interview transcripts to the public in early September, in the middle of the
> currently scheduled trial.

Memorandum Order, J. Kelly, 21-175 (TJK) (D.D.C. June 24, 2022), ECF 419 at 4. Judge Kelly

noted that during one hearing, Select Committee members and staff referenced the name of one

defendant and featured video representations of two of the defendants that case. *Id*. at 2. The

same facts are present here.

As noted by the Supreme Court in *Nebraska Press Ass'n v. Stuart*, "[t]he capacity of the

jury eventually impaneled to decide the case fairly is influenced by the tone and extent of the

publicity, which is in part, and often in large part, shaped by what attorneys, police, and other

officials do to precipitate news coverage." 427 U.S. at 554-55.  Here the Select Committee and

Democratic party leadership have taken steps to ensure that the January 6th hearings dominate the

news cycle in the days leading up to Mr. Bannon's trial by broadcasting the hearings on every

major news network. The negative effect of this coverage is compounded by the fact that this

trial is taking place in Washington, D.C., where the events of January 6, 2021, occurred. These circumstances require this Court to recognize the inherent prejudice stemming from the ongoing Select Committee hearings in the days just before Mr. Bannon's trial.

Select Committee members have made inflammatory remarks about the culpability of President Trump and his closest advisors, including Mr. Bannon, and have broadcast to millions of people their purported "findings" on issues that may prejudice the minds of jurors in this case. Those broadcasts have been repackaged and re-broadcast in countless forms, creating a saturation of the information sources available to Washington, D.C. residents. Under the circumstances, a continuance is warranted – to allow the effects of the Select Committee hearing coverage a chance to subside.

**Mr. Bannon Consents To The Exclusion Of**
**Time From Speedy Trial Act Computations**

For all the reasons sets forth above, the time between July 18, 2022, and the new trial date should be tolled under the Speedy Trial Act. The ends of justice are served by continuing the trial. These interests outweigh the interests of the public and Mr. Bannon in a speedy trial. *See* 18 U.S.C. § 3161(h)(7).

Wherefore, we respectfully request that this Court grant this Motion To Continue Trial.

Dated: June 29, 2022                          Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

      /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

13

    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com


    /s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com


*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of June 2022, a copy of the foregoing Motion

To Continue Trial was served *via* the Court's CM/ECF system on registered parties and counsel.


    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**ORDER**

Upon consideration, it is hereby **ORDERED** that Defendant's Motion To Continue Trial

is **GRANTED**. Trial in this matter is continued to begin on _____, 2022, at 9:00 a.m. in

Courtroom 19. It is further **ORDERED** that the deadlines in the Court's most recent scheduling

order are **VACATED** and will be reset. It is further **ORDERED** that the time between July 18,

2022, and the new trial date shall be tolled under the Speedy Trial Act. The ends of justice are

served by continuing the trial. These interests outweigh the interests of the public and Mr.

Bannon in a speedy trial. *See* 18 U.S.C. § 3161(h)(7).m 19.

**SO ODERED.**

_____
Hon. Carl J. Nichols
*United States District Judge*

Dated: