**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | **Case No: 21-cr-670 (CJN)** |
| **v.** | : | |
| | : | |
| **STEPHEN K. BANNON,** | : | |
| | : | |
| **Defendant.** | : | |

## JOINT PROPOSED JURY INSTRUCTIONS

The United States and Defendant hereby propose the following jury instructions. The parties understand that certain instructions may change, subject to issues that arise during trial or additional pretrial motions and orders. Instructions from the Criminal Jury Instructions for the District of Columbia ("Redbook") are listed below only by citation. The parties are in agreement with respect to all but one of the proposed Redbook instructions. The parties were not able to reach agreement on any proposed instructions not found in the Redbook. These disputed instructions are included in their entirety on the subsequent pages and are identified by the party proposing the instruction, with the other party's specific objections below the proposal.

The Defendant provided two of their proposed instructions to the Government at 12:15 p.m. on June 30, 2022. These are "Defense Theory – Defense Proposal" and "Elements – Defense Proposal." They are included in this filing. The Government has not had an adequate opportunity to review, consider, or determine what objections it may have to these instructions. The Government does not anticipate that it agrees to the instructions as written, and will submit objections by Friday, July 1, 2022. The Defendant consents to that additional filing by the Government on July 1, 2022 (but does not consent to the content of the filing, as it will be the Government's position).

## **Agreed Redbook Instructions**

- Instruction No. 1.102 (Preliminary Instruction Before Trial)

- Instruction No. 1.105 (Notetaking by Jurors)

- Instruction No. 1.107 (Preliminary Instruction to Jury Where Identity of Alternates Is Not Disclosed)

- Instruction No. 1.108 (A Juror's Recognition of a Witness or Other Party Connected To The Case)

- Instruction No. 1.202 (Cautionary Instruction on the Use of the Internet and Publicity)

- Instruction No. 2.100 (Furnishing the Jury with a Copy of the Instructions)

- Instruction No. 2.101 (Function of the Court)

- Instruction No. 2.102 (Function of the Jury)

- Instruction No. 2.103 (Jury's Recollection Controls)

- Instruction No. 2.104 (Evidence in the Case – Judicial Notice, Stipulations) (*if applicable*)

- Instruction No. 2.105 (Statements of Counsel)

- Instruction No. 2.106 (Indictment Not Evidence)

- Instruction No. 2.107 (Burden of Proof – Presumption of Innocence)

- Instruction No. 2.108 (Reasonable Doubt – Instruction for U.S. District Court)

- Instruction No. 2.109 (Direct and Circumstantial Evidence)

- Instruction No. 2.110 (Nature of Charges Not to be Considered)

- Instruction No. 2.112 (Inadmissible and Stricken Evidence) (*if applicable*)

- Instruction No. 2.200 (Credibility of Witnesses)

- Instruction No. 2.207 (Law Enforcement Officer's Testimony) (*if applicable*)

- Instruction No. 2.208 (Right of Defendant Not To Testify) (*if applicable*)

- Instruction No. 2.209 (Defendant as Witness) (*if applicable*)

- Instruction No. 2.216 (Evaluation of Prior Inconsistent Statement of Witness) (*if applicable)*

- Instruction No. 2.217 (Evaluation of Prior Consistent Statement of Witness) (*if applicable*)

- Instruction No. 2.307 (Motive)

- Instruction No. 2.402 (Multiple Counts, One Defendant)

- Instruction No. 2.405 (Unanimity – General)

- Instruction No. 2.407 (Verdict Form Explanation)

- Instruction No. 2.500 (Redacted Documents) (*if applicable*)

- Instruction No. 2.501 (Exhibits During Deliberations)

- Instruction No. 2.502 (Selection of Foreperson)

- Instruction No. 2.508 (Cautionary Instruction on Publicity, Communication, and Research)

- Instruction No. 2.509 (Communication Between Court and Jury During Jury's Deliberations)

- Instruction No. 2.511 (Excusing Alternate Jurors)

- Instruction No. 3.101 (Proof of State of Mind)

**Disputed Redbook Instruction**

- Instruction No. 2.300 (Missing Witness or Other Evidence) (*if applicable*)

The Defendant proposes the use, if applicable, of the Redbook "Missing Witness or Other Evidence" instruction.

## United States' Objection to Defendant's Proposed Instruction— Missing Witness or Other Evidence

The Government objects to the Defendant's use of the Redbook instruction for a "Missing Witness" because the Defendant is not entitled to a missing witness instruction in this case as there are no witnesses whom the Government "has it peculiarly within [its] power to produce" who "would elucidate the transaction" that it has failed to produce. *Burgess v. United States*, 440 F.2d 226, 231 (D.C. Cir. 1970) (citations omitted). To date, the Defendant has not responded to the Government's request for confirmation that he proposes this instruction with respect to House of Representatives witnesses whom he has subpoenaed, and who have moved to quash his subpoenas on multiple grounds, including based on their privilege under the Speech or Debate Clause of the Constitution. But if that is his intention, as outlined in the Government's motion in limine, ECF No. 85 at 8, the Defendant cannot make missing witness arguments or lay the predicate for a missing witness instruction when the witness in question is as unavailable to the Government as to him—as is the case with witnesses from the House of Representatives here. To the extent that the Defendant is unable to compel congressional witnesses to testify or produce documents because of their privilege against compelled disclosure under the Speech or Debate Clause, the Executive Branch does not "'peculiarly' have the power", *Burnett*, 890 F.2d at 1241 n. 13, to overcome that constitutional right any more than the defense.

In analogous situations, the D.C. Circuit has declined to find a missing witness instruction appropriate when a witness, by invoking his constitutional right against self-incrimination, made himself unavailable to either party. In *Bowles v. United States*, for instance, the Circuit found no

error in the trial court's decisions to prevent the defense from calling a witness who would assert his Fifth Amendment right on the witness stand, deny the defendant's subsequent request for a missing witness instruction because the witness's invocation made him unavailable to either party, and determine that neither party could argue to the jury about the witness's absence.  439 F.2d 536, 541–42 (D.C. Cir. 1970) ("It is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense.") (citation omitted).  A missing witness instruction would similarly be improper here, where congressional witnesses are unavailable to the Defendant and Government alike where they assert a constitutional privilege, and where it would be improper to permit the jury to draw inferences from the unavailable witnesses' decision to assert privileges against compulsion.  Nor, to the extent the subpoenas are quashed because they do not comply with Rule 17's requirements of relevancy and specificity, is it in the Government's power to make irrelevant evidence relevant.

## <u>Other Disputed Instructions</u>

### <u>Government's Proposed Instruction</u>

- Contempt of Congress – Elements of the Offense

### <u>Defendant's Proposed Instructions</u>

- Willfulness

- Advice of Counsel

- Default – Accommodation Requirement

- Authority of the House

- Entrapment by Estoppel

- Public Authority

- Apparent Authority

- Crimes Not Charged

- Elements of the Offense

- Defense Theory

## GOVERNMENT PROPOSED INSTRUCTION: CONTEMPT OF CONGRESS – ELEMENTS OF THE OFFENSE

Counts One and Two of the Indictment charge the Defendant with the crime of contempt of Congress for willfully failing to provide testimony and information to the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol, which I'll refer to as the Select Committee. Count One charges the Defendant with a willful failure to provide testimony. Count Two charges the Defendant with a willful failure to produce records.

To find the Defendant guilty of contempt of Congress, you must find that the Government proved each of the following elements beyond a reasonable doubt:

*First*, that the Defendant was subpoenaed by the Select Committee to provide testimony or produce papers;

*Second*, that the subpoena sought testimony or information pertinent to the investigation that the Select Committee was authorized to conduct[1];

*Third*, that the Defendant failed to comply or refused to comply with the subpoena[2]; and

*Fourth*, that the Defendant's failure or refusal to comply was willful, that is, that it was deliberate and intentional.

With respect to the second element, for the testimony or information sought by the subpoena to be "pertinent," the Government must prove that, at the time the Select Committee

---

[1] *See Gojack v. United States*, 384 U.S. 702, 716 (1966) ("It can hardly be disputed that a specific, properly authorized subject of inquiry is an essential element of the offense under § 192."); *United States v. McSurely*, 473 F.2d 1178, 1203 (D.C. Cir. 1972) (describing "one of the necessary elements of [the Government's] case" as the "pertinency of its demands to the valid subject of the legislative inquiry"); *United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962) (requiring that the committee was "duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority" (citing *United States v. Rumely*, 345 U.S. 41, 42-43 (1953); *United States v. Lamont*, 236 F.2d 312, 315 (2d Cir. 1956); *United States v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953))).

[2] *See United States v. Bryan*, 339 U.S. 323, 327 (1950) ("'Default' is, of course, a failure to comply with the summons."); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) (affirming jury instruction on meaning of willful as it defined a "failure or refusal to comply").

issued the subpoena, the testimony or information sought could have related to the Select Committee's investigation in some way.[3]

With respect to the fourth element, the word "willful" does not mean that the Defendant's failure or refusal to comply with the Select Committee's subpoena must necessarily be for an evil or a bad purpose. The reason or the purpose of failure or refusal to comply is immaterial, so long as the failure or refusal was deliberate and intentional and was not a mere inadvertence or an accident.[4]

It is not a defense to contempt of Congress that the Defendant failed or refused to comply based on the advice he received from his attorney or someone else. It is also not a defense to contempt of Congress that the Defendant failed or refused to comply based on his understanding or belief of what the law required or allowed or on his understanding or belief that he had a privilege excusing him from complying. All that is required is that the Defendant's failure or refusal to comply was deliberate and intentional.[5]

------

[3] *See Watkins v. United States*, 354 U.S. 178, 214-15 (1957) (requiring, where witness objects on pertinency grounds, that congressional committee explain pertinence of a question by "describing what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it"); *Rumley v. United States*, 197 F.2d 166, 267 (D.C. Cir. 1952), *aff'd*, 346 U.S. 41 (1953) (finding that "pertinent," as used in the statute, means "pertinent to a subject matter properly under inquiry, not generally pertinent to the person under interrogation"); *Orman*, 207 F.2d at 153-54 (affirming instruction to jury that it did not matter for pertinency whether the information the witness refused to provided actually would have been pertinent, and that all that was required was that it could have been pertinent at the time Congress sought the information).

[4] Adapted from *Fields*, 164 F.2d at 100 (affirming jury instruction on meaning of "willful" under the statute); *see also Quinn v. United States*, 349 U.S. 155, 165 (1955) (explaining that the "criminal intent" required under § 192 is "a deliberate, intentional refusal to answer"); *Bryan*, 339 U.S. at 330 ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of wilful default.").

[5] *See Yellin v. United States*, 374 U.S. 109, 123 (1963) ("Of course, should Yellin have refused to answer in the mistaken but good-faith belief that his rights had been violated, his mistake

of law would be no defense."); *Watkins*, 354 U.S. at 208 ("[T]he witness acts at his peril. he is '* * * bound rightly to construe the statute.' An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry." (quoting *Sinclair v. United States*, 279 U.S. 263, 299 (1929))); *Sinclair*, 279 U.S. at 299 ("There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel. The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. . . . He was bound rightly to construe the statute. His mistaken view of the law is no defense."); *Licavoli v. United States*, 294 F.2d 207, 209 (D.C. Cir. 1961) ("Since, as we have remarked, it has been established since the *Sinclair* case that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention."); *Bart v. United States*, 203 F.2d 45, 49-50 (D.C. Cir. 1952), *reversed on other grounds*, 349 U.S. 219 (1955) ("A witness does not insulate himself from contempt by asserting a reason for a refusal to answer, or by objecting to the question, or by querying its propriety."); *Fields*, 164 F.2d at 100 ("The apparent objective of the statute involved here would be largely defeated if, as appellant contends, a person could appear before a congressional investigating committee and by professing willingness to comply with its requests for information escape the penalty for subsequent default.").

**<u>Defendant's Objection to Government Proposed Instruction—</u>**
**<u>Contempt of Congress: Elements of the Offense</u>**

The Defendant objects to the Government's Proposed Instruction: Contempt of Congress – Elements of The Offense because it erroneously defines the elements of this offense. The Defendant has stated in specific detail, in briefing and argument, its objections to the position taken by the Government as to the elements of the offense of Contempt of Congress. These are set forth in the briefing on Defendant's Motion To Dismiss The Indictment [Doc. 58] and accompanying exhibits, and Reply [Doc. 73], as well as Defendant's Opposition To Government Motion In Limine On Advice Of Counsel [Doc. 30] and exhibits, and supplemental brief on *Licavoli* [Doc. 41]. The briefs and exhibits that set forth our position stacked together are approximately 9 inches in height. Thus, for the convenience of the Court and counsel, we do not understand it to be necessary to include that information again herein, but incorporate it by reference. On the other hand, we are not trying to hide a truffle underground – to the extent that greater specificity is required as to why we oppose the Government's instruction, we are happy to provide it in writing or at argument. Simply put, our objection to the Government's proposed instruction in also set forth in our competing instruction, "Elements Of The Offense – Defense Proposed Instruction," which is included herein, together with supporting authority.

We note two specific objections that are emphasized by the Government's proposed instruction. First, the Government's proposed instruction provides that a defendant's understanding or belief that he had a privilege that excused him from complying is not a defense is fundamentally wrong as a matter of law. The Government's formulation is wrong to the extent it refers to the witness's privilege. More to the point here, it is wrong to the extent it refers to the constitutionally based executive privilege. The United States Supreme Court found in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032, 207 L.Ed. 2d 951, 965 (2020) that "... recipients of

10

[legislative subpoenas] have long been understood to retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications and governmental communications protected by executive privilege." (citations omitted). Likewise, D.C. Circuit has found in *United States v. House of Representatives of the United States*, 556 F. Supp. 150, 152 (D.D.C. 1983), that: "[t]he statutory provisions concerning penalties for contempt of Congress, 2 U.S.C. Sec. 192 and Sec. 194, constitute an 'orderly and often approved means of vindicating constitutional claims arising from a legislative investigation.' Under these provisions, constitutional claims and other objections to congressional investigatory procedures may be raised as defenses in a criminal prosecution." See also note 3 to the Defendant's proposed instruction on "willfulness."

Second, the Government's proposed instruction would mislead the jury that a "misunderstanding" is not a defense. That is a misstatement of the law. In its decision in *United States v. Licavoli*, 294 F.2d 207, 208 (D.C. Cir. 1961), the Circuit expressly provided the example of "misunderstanding" as a reason for subpoena noncompliance that would not come within the definition of "willful." The court found that:  "a failure to respond to a subpoena might be due to many causes other than deliberate intention, e.g., illness, travel trouble, misunderstanding, etc." *Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961).

## DEFENSE PROPOSED INSTRUCTION: WILLFULNESS

The government is required to prove beyond a reasonable doubt that Mr. Bannon acted "willfully" in his response to the subpoena. In order to prove that a defendant acted "willfully" within the meaning of a criminal statute, the Government must prove beyond a reasonable doubt that the defendant acted on his own violation and knew or should reasonably have known that his conduct was unlawful.[1] In order to find Mr. Bannon guilty, the government must prove beyond a reasonable doubt that he was conscious of wrongdoing.[2] It is up to you to determine whether Mr. Bannon acted "willfully." In making that determination, you may consider whether Mr. Bannon acted as he did with respect to the subpoena because executive privilege was invoked by former President Trump, as well as any other evidence admitted during the trial.[3]

---

[1] *Ratzlaf v. United States*, 510 U.S. 135, 138 (1994); *United States v. Burden*, 934 F.3d 675, 692 (D.C. Cir. 2019); *United States v. Zeese*, 437 F. Supp. 3d 86, 94 (D.D.C. 2020); United States v. Myers, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting Licavoli on "willfulness" and explaining that "willfulness" in the criminal contempt context means "a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful.").

[2] *Elonis v. United States*, 575 U.S. ___ (2015), slip. op. at 9 (rule of construction for criminal statute that did not specify mental state reflects the basic principle that "wrongdoing must be conscious to be criminal."), quoting *Morissette v. United States*, 342 U.S. 246, 250 (1952).

[3] "Furthermore, a person can be prosecuted under § 192 only for a "willful" failure to produce documents in response to a congressional subpoena. *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F.2d 352, 359 (D.C. Cir.), *cert. denied*, 303 U.S. 664 (1938). There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to a "willful" violation of the statute. Moreover, reliance on an explicit opinion of the Attorney General may negate the required *mens rea* even in the case of a statute without a willfulness requirement." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege* at 135 [Doc. 58-10] (May 30, 1984).*See Model Penal Code § 2.04(3)(b); United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring).

**United States' Objection to Defendant's Proposed Instruction—Willfulness**

The Government objects to the Defendant's Proposed Instruction "Willfulness" because it erroneously defines the element of this offense, stands in contravention to the Court's order recognizing as binding precedent *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), *see* ECF No. 49, and advances a mistake-of-law defense that is unavailable under *Licavoli* and other controlling Supreme Court precedents.

First, the proper definition of willfulness under the criminal contempt statute is simply a deliberate and intentional failure to appear. *See Licavoli,* 294 F.2d at 209 ("All that is needed is a deliberate intention to do the act"); *Quinn v. United States*, 349 U.S. 155, 165 (1955) (explaining that the "criminal intent" required under § 192 is "a deliberate, intentional refusal to answer"); *United States v. Bryan*, 339 U.S. 323, 330 (1950) ("[W]hen the Government introduced evidence in this case that respondent had been validly served with a lawful subpoena directing her to produce records within her custody and control, and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of wilful default.").

Next, the Defendant's proposed instruction incorrectly asserts that "willful" in the contempt of Congress context means that a defendant must know that his conduct is unlawful in order to have acted willfully. For this proposition, he cites to several cases requiring heightened states of willfulness that he also cited in his earlier briefing on this issue, before the Court rejected his argument that *Licavoli* is not controlling law, including *Cheek v. United States*, 498 U.S. 192, 199-201 (1991) (applying heightened standard to criminal tax offenses) and *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (requiring the government under structuring statutes to prove that the defendant knew the structuring in which he was engaged was unlawful). As the Court has

already determined, these cases are not applicable to the Defendant's case because *Licavoli* remains binding precedent, and citing to them is erroneous.

Lastly, the Defendant's proposed instruction would erroneously instruct the jury that the Defendant's mistake of law—his alleged belief that executive privilege somehow excused his noncompliance—negates his willfulness.  But precedent and the Court's order preclude this argument as well.  *See Yellin v. United States*, 374 U.S. 109, 123 (1963) ("Of course, should Yellin have refused to answer in the mistaken but good-faith belief that his rights had been violated, his mistake of law would be no defense."); *Watkins v. United States*, 354 U.S. 178, 208 (1957) ("[T]he witness acts at his peril. he is '* * * bound rightly to construe the statute.'  An erroneous determination on his part, even if made in the utmost good faith, does not exculpate him if the court should later rule that the questions were pertinent to the question under inquiry." (quoting *Sinclair v. United States*, 279 U.S. 263, 299 (1929))); *Sinclair*, 279 U.S. at 299 ("There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel.  The gist of the offense is refusal to answer pertinent questions. No moral turpitude is involved. Intentional violation is sufficient to constitute guilt. There was no misapprehension as to what was called for. The refusal to answer was deliberate. . . . He was bound rightly to construe the statute. His mistaken view of the law is no defense."); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) (affirming instruction to the jury that "[t]he reason or the purpose of failure or refusal to comply is immaterial").

## DEFENSE PROPOSED INSTRUCTION: ADVICE OF COUNSEL

Stephen K. Bannon asserts that he is not guilty of the willful wrongdoing as charged in both counts of the indictment because he acted on the basis of advice from his attorney.

If before taking any action with respect to the subpoena at issue, Mr. Bannon, while acting in good faith and for the purpose of securing advice on the lawfulness of his future conduct, sought and obtained the advice of an attorney whom he considered to be competent, and made a full and accurate report or disclosure to this attorney of all important and material facts of which he had knowledge or had the means of knowing, and then acted strictly in accordance with the advice his attorney gave following this full report or disclosure, then Mr. Bannon would not have willfully done wrong in performing or failing to perform some act the law forbids or requires as those terms are used in these instructions.

Whether Mr. Bannon acted in good faith for the purpose of truly seeking guidance as to questions about which he was in doubt, whether he made a full and complete report or disclosure to his attorney, and whether he acted strictly in accordance with the advice received, are all questions for you to determine.[1]

A defendant relies in good faith on the advice of counsel if:

- Before taking action, he in good faith seeks the advice of an attorney whom he considers competent to advise him on the matter; and

- He consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct;

- He makes a full and accurate report to his attorney of all material facts that he knew; and

---

[1]  1A Fed. Jury Prac. & Instr. § 19:08 (6th ed.) (West January 2022)

- He then acts strictly in accordance with the advice of this attorney.

The defendant does not have to prove his good faith. Rather, the government must prove beyond a reasonable doubt that the defendant acted willfully as charged in both counts of the indictment.[2]

---

[2] *United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017) (cited in source in Note 1).

**United States' Objection to Defendant's Proposed Instruction—Advice of Counsel**

The Government objects to the Defendant's Proposed Instruction "Advice of Counsel" because the Court has already ruled that the Defendant cannot present a defense of advice of counsel in this case, ECF No. 49, and it is improper for the Defendant to request a jury instruction on an excluded defense.

Even if the Defendant were not barred by both precedent and the Court's order from advancing such a defense, he has not established that he would be entitled to it. He would need to proffer in detail all of the elements of such a defense, including that he made full disclosure of all material facts to his attorney before receiving advice and that he relied in good faith on the advice he received. *United States v. Gray-Burriss*, 920 F.3d 61, 66 (D.C. Cir. 2019). In asserting such a defense, the Defendant would be deemed to have waived privilege and be required to provide the Government with extensive discovery. *See United States v. White*, 887 F.2d 267, 270 (D.C. Cir. 1989) (reliance on advice-of-counsel defense waives attorney-client privilege); *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) ("Moreover, even otherwise-privileged communications that defendants do not intend to use at trial, but that are relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety." (internal emphasis, quotation marks, and citation omitted)).

## DEFENSE PROPOSED INSTRUCTION: DEFAULT – ACCOMODATION REQUIREMENT

When a congressional committee issues a subpoena to a prospective witness and executive privilege is invoked, the committee has an obligation to work toward an accommodation with the witness before referring the matter for criminal prosecution.[1] If you conclude that executive privilege was invoked by former President Trump with respect to the subpoena Mr. Bannon received from the Committee, you may also consider whether the Select Committee fulfilled its obligation to try to reach an accommodation. [2]

The government has the burden of proving beyond a reasonable doubt each element of the offenses charged. One of the elements that the government must prove beyond a reasonable doubt is that by his actions in response to the subpoena, Mr. Bannon willfully made default. It is up to you to determine whether he willfully made default. In making that determination, you may consider whether the Select Committee tried to reach an accommodation with Mr. Bannon before a criminal referral of the matter was made to the U.S. Attorney's Office, as well as any other evidence admitted during this trial.

---

[1] *Congressional Oversight of the White House*, 45 Op. O.L.C. at 37-43 [Doc. 58-7 at pdf 38 of 60 to 44 of 60]; *United States v. American Tel & Tel Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977).

[2] *Congressional Oversight of the White House*, 45 Op. O.L.C. at 37-43 [Doc. 58-7 at 56, pdf 57of 60] ("A congressional committee may not avoid its obligation to participate in this constitutionally mandated process by issuing or seeking to enforce a subpoena before the accommodation process has run its course.").

**<u>United States' Objection to Defendant's Proposed Instruction—
Accommodation Requirement</u>**

The Government objects to the Defendant's Proposed Instruction "Accommodation Requirement" because it has no basis in law and would confuse and mislead the jury.

First, neither the OLC opinion nor the single case that the Defendant cites in support of the instruction stand for the proposition that a congressional committee has a legal "obligation to work toward an accommodation with the witness before referring the matter for criminal prosecution." The OLC opinion discusses the traditional accommodations process in which the Executive and Legislative branches have engaged when Congress seeks information from the Executive Branch. The *AT&T* case similarly discusses separation of powers concerns regarding information requests made between two branches of government, but does not support the Defendant's claim that there is an obligation for the Committee to work to accommodate a private party before referring him or her upon his or her willful default.  And the Defendant's proposed instruction provides no support for what is, essentially, shifting the Defendant's responsibility under the contempt of Congress statute—to respond to the subpoena—to some obligation on the Committee's part, creating out of thin air a legal requirement on the part of the Committee that does not exist.

Moreover, the instruction improperly suggests it is in the purview of the jury to decide whether executive privilege has been invoked—a purely legal question—and whether the Committee properly worked toward an accommodation.  Neither of these issues is an element of the offense and neither is relevant to an element of the offense, so they are not issues relevant to the jury's considerations.

Finally, in the Defendant's instruction's statement that "you may consider whether the Select Committee tried to reach an accommodation with Mr. Bannon before a criminal referral was made" and that the jury may do so in connection with whether the Defendant willfully made

default, the Defendant's instruction improperly allows the jury to consider mistake-of-law defense arguments, which is, as stated above, unavailable to him—that is, the Defendant wishes to have the jury consider whether he defaulted because he believed he was entitled to the accommodation process under the law of executive privilege.  The defense being unavailable, the instruction does nothing more than invite jury nullification, which is improper.  *See United States v. Wilkerson*, 966 F.3d 828, 835436 (D.C. Cir. 2020) (citing *United States v. Dougherty*, 473 F.2d 1113, 1130–37 (D.C. Cir. 1972)).

## DEFENSE PROPOSED INSTRUCTION: AUTHORITY OF U.S. HOUSE OF REPRESENTATIVES

The statute under which Mr. Bannon is charged, 2 U.S.C. § 192, provides as follows:

> *Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of [Contempt of Congress] . . ..*

The government has the burden of proving beyond a reasonable doubt each element of the offenses charged. One of the elements that the government must prove beyond a reasonable doubt is that the subpoena Mr. Bannon received was a valid subpoena, lawfully authorized by the U.S. House of Representatives.

Mr. Bannon asserts that the subpoena was issued without valid, lawful authority because the Rules of the House of Representatives were not followed, and because the Select Committee did not adhere to the House resolution establishing it and empowering it to act. It is up to you to determine whether the subpoena was lawfully authorized. In making that determination, you may consider the Rules established by the U.S. House of Representatives, the House resolution establishing it and empowering it to act, and any evidence that bears upon whether the Rules and authorizing resolution have been followed.[1]

---

[1] *Christoffel v. United States*, 338 U.S. 84, 88-90 (1949) (holding that the validity of a congressional subpoena turned on judicial determination of "what rules the House has established and whether they have been followed"); *United States v. Smith*, 286 U.S. 6, 33 (1932); *United States v. Ballin*, 144 U.S. 1 (1892); *Yellin v. United States*, 374 U.S. 109 (1963); *Shelton v. United*

**United States' Objection to Defense Proposed Instruction—
Authority of U.S. House of Representatives**

The Government objects to the Defendant's proposed instruction "Authority of U.S. House of Representatives" for three reasons: 1) it erroneously defines an element of the offense; 2) it seeks an instruction on a defense that the Defendant has waived; and 3) it creates the possibility that the Judicial Branch, acting through the jury, will interpret House Rules differently from the House itself, in violation of the Rulemaking Clause.

First, the Defendant proposes instructing the jury that it is an element of the offense that the subpoena the Defendant received was "valid" and "lawfully authorized by the U.S. House of Representatives."   The Defendant's proposed instruction does not define what "valid" and "lawfully authorized" means.  It appears, based on his proposed statement of his defense theory in the following paragraph, however, that he intends "valid" and "lawfully authorized" to mean that the jury must find, as an essential element of the offense, that the Committee complied with all of its rules when issuing the subpoena.  This is not, however, an element of the offense.  As the Government has briefed and argued before, *see, e.g.*, ECF No. 71 at 2-5, courts considering rules violations in the functions of a congressional committee have never held that the Government must prove full compliance with the rules as an essential element of the offense.  *Yellin v. United States*, to which the Defendant cites, makes this clear.  The Supreme Court found there that the alleged rules violation could be a defense to contempt of Congress "were [the defendant] able to prove his defense."  374 U.S. 109, 123 (1963).  If rules compliance were part of the essential elements of the offense, the Government would bear the burden of proving compliance and its mere failure to

---

*States*, 327 F.2d 601, 606 (D.C. Cir. 1963) (adherence to rules may be considered when determining the validity of a subpoena); *Watkins v. United States*, 354 U.S. 178 (1957); *Gojack v. United States*, 384 U.S. 702 (1966).

do so would be sufficient for an acquittal, *see United States v. Bailey*, 209 F. Supp. 3d 55, 63 (D.D.C. 2016) (noting that "the burden of proof rest[s] upon the Government to prove guilt to [the jury's] satisfaction beyond a reasonable doubt, [and] that this burden extend[s] to each and all essential elements of the offense charged" (quoting *Lawson v. United States*, 248 F.2d 654, 655 (D.C. Cir. 1957) (internal quotation marks omitted) (alterations in original))—there would be no burden of proof on a defendant, as *Yellin* finds there is.  Similarly, in *Liveright v. United States*, the D.C. Circuit noted that it had previously found a subcommittee's failure to comply with its authorizing resolution's requirement that all members be consulted before issuance of a subpoena could provide a "defense" to contempt and that this was consistent with Supreme Court precedent finding that rules violations are not essential to the offense but potentially valid defenses.  347 F.2d 473, 474-75, 475 n.5 (D.C. Cir. 1965) (citing *United States v. Bryan*, 339 U.S. 323, 327-335 (1950); *Shelton v. United States*, 327 F.2d 601, 606 (D.C. Cir. 1963)).  Indeed, defendants can waive rules violations in certain circumstances by not raising them before the Committee, *see Bryan*, 339 U.S. at 327-335, further indicating that it is not the Government's burden to establish rules compliance.

The other cases the Defendant cites do not support an instruction that rules compliance is an essential element of the offense of contempt of Congress either.  For example, the Supreme Court in *Christoffel v. United States*, was addressing only the offense of perjury, which required, as an element of the offense, that the tribunal before which the defendant appeared be a "competent tribunal"—the statute at issue expressly limited the offense to perjury before a "competent tribunal."  338 U.S. 84, 88-90 (1949).  Accordingly, the court found rules governing what constituted a competent sitting of a congressional committee were essential to the offense.  *Id*.  The case did not address what was required to show the validity of a congressional subpoena, as the

Defendant claims, nor did it address the elements of contempt of Congress.  In fact, the Supreme Court, in *United States v. Bryan*, later rejected the notion that *Christoffel* had any applicability when it was deciding whether the defendant in a contempt of Congress case was entitled to raise as a defense the lack of a quorum of the relevant committee.  339 U.S. at 329 (1950) ("The *Christoffel* case is inapposite.  For that decision, which involved a prosecution for perjury before a congressional committee, rests in part upon the proposition that the applicable perjury statute requires that a 'competent tribunal' be present when the false statement is made.  There is no such requirement in R.S. s 102.  It does not contemplate some affirmative act which is made punishable only if performed before a competent tribunal, but an intentional failure to testify or produce papers, however the contumacy is manifested.").

Second, the Defendant is only entitled to an instruction on a theory of the defense "if the record contains sufficient evidence from which a reasonable jury could find for the defendant on his theory."  *United States v. Akhigbe*, 642 F.3d 1078, 1083 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  Here, there will be no evidence at trial of violations of the House rules because the Defendant has waived all of the purported violations he has identified, to the extent they constituted violations, since the Defendant was on notice of them at the time he defaulted and did not object to compliance on that basis.  *See, e.g.*, *McPhaul v. United States*, 364 U.S. 372, 378-79 (1960); *Bryan*, 339 U.S. at 330-34; *Liveright*, 347 F.2d at 475-76 (describing the "Bryan-McPhaul rule" for waiver of objections where the basis for the objection was apparent at the time of default)  Moreover, at least two of the objections the Defendant has previously identified—the number of members on the committee and Representative Cheney's title—have no bearing on his rights as a witness in the issuance of the subpoena such that they provide a basis for acquittal if they were violated and if the Defendant had not waived them. *See Yellin*, 374 U.S. at

123 (noting that allowing acquittal for rules violation in that case was the only means to provide a remedy for violation of congressional rules that confer rights on witnesses); *Liveright*, 347 F.2d at 474-75 (noting that where a rule "served to protect the right of all persons to be free from unnecessary invasions of their privacy," allowing a defense to prosecution for contempt based on a violation of that rule gave effect to the concern that such procedures be followed before anyone was required to forfeit the right).   Accordingly, an instruction inviting the jury to acquit the Defendant if it finds rules violations is improper because there appear to be no rules violations the Defendant intends to assert that were properly preserved or are otherwise available for the jury's consideration at trial.

Third, to the extent the Defendant seeks the proposed instruction so he can argue for acquittal on the basis of the House rules he has identified in his prior briefing (e.g., the number of members on the Committee or Representative Cheney's title), the instruction improperly risks allowing the Judicial Branch, through the jury, to construe the House's rules in a manner contrary to how the House has done so, which is a violation of the Rulemaking Clause.  *Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019) ("[A]s we have explained, interpreting a congressional rule 'differently than would the Congress itself' is tantamount to 'making the Rules—a power that the Rulemaking Clause reserves to each House alone.'" (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)).   Specifically, under the Defendant's proposal, the jury would first have to determine what the rules required and then determine whether the Committee complied.  Because, as the Court has recognized, at least some of the rules the Defendant has previously disputed reasonably could have more than one interpretation, without further instruction, the jury may reach a conclusion that differs from the House.  *Rostenkowski*, 59 F.3d at 1306-07 Cir. 1995) ("[T]he Rulemaking Clause of Article I clearly reserves to each House of the

Congress the authority to make its own rules, and judicial interpretation of an ambiguous House Rule runs the risk of the court intruding into the sphere of influence reserved to the legislative branch under the Constitution.  Where, however, a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone.").  But the House has made clear its interpretation of the rules the Defendant has raised.  Accordingly, any instruction allowing the jury to consider whether the Committee followed its rules must include instructions that direct the jury to use the House's interpretation for any that have more than one reasonable interpretation.  *See Barker*, 921 F.3d at 1130 ("Accordingly, we accept the House's interpretation of its own rules . . . , thus eliminating any risk of running afoul of either the Rulemaking Clause or separation-of-powers principles.").

Finally, the Government does not have an objection to reading the contempt of Congress statute to the jury, but believes that, if the Defendant wants it read, it would be more appropriate to do so at the beginning of the Court's charge defining the elements of the offense, not at the beginning of a single defense theory instruction.

## **DEFENSE PROPOSED INSTRUCTION: ENTRAPMENT BY ESTOPPEL**

Mr. Bannon has raised the affirmative defense of entrapment by estoppel. The defense of entrapment by estoppel is based on the legal principle, under the due process clause of the United States Constitution, that a person cannot be convicted of a crime for action he took based on his reasonable reliance on a statement by an authorized government official or on official written statements by an authorized government agency that led him to believe his conduct would be lawful.[1]

"The defense of entrapment by estoppel does not depend solely on the absence of criminal intent. Nor is it limited to the circumstances of actual authorization. It focuses on the *conduct of the government* leading the defendant to believe reasonably that he was authorized (to take the action he took)."[2] "The doctrine (of entrapment by estoppel) depends on the unfairness of prosecuting one who has been led by (official government agency statements) to believe his acts were authorized."[3]

Mr. Bannon asserts that he responded to the Committee's subpoena as he did by relying on official statements by the United States Department of Justice, in the form of Office of Legal Counsel, or OLC Opinions, and other official Department of Justice writings regarding the duties, rights, and obligations that apply when executive privilege has been invoked with respect to the subpoena.

I instruct you that upon receipt of the subpoena and the invocation of executive privilege by the former President of the United States, Mr. Bannon was entitled to look to the Department

---

[1] *Raley v. Ohio*, 360 U.S. 423, 438 (1959); *Cox v. Louisiana*, 379 U.S. 559, 571-72 (1965).

[2] *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995).

[3] *Id.*, citing *United States v. Brebner*, 951 F.2d 1017, 1025 (9th Cir. 1991); *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991).

of Justice's OLC opinions and other Department of Justice authoritative writings for guidance as to what his rights, obligations, and duties were with respect to the subpoena, to reasonably rely on the guidance provided in the OLC opinions and other Department of Justice authoritative writings, and to act in a manner he reasonably believed the OLC opinions and other authoritative writings authorized.[4]

To find Mr. Bannon not guilty based on his defense of entrapment by estoppel, you must find that:

(1) Mr. Bannon reasonably believed that executive privilege was invoked regarding the Committee's subpoena to him;

(2) The OLC opinions and other authoritative Department of Justice writings give rise to a reasonable belief that Mr. Bannon was authorized to respond to the subpoena in the manner in which he did;

(3) Mr. Bannon relied on the OLC opinions and other authoritative Department of Justice writings; and

(4) Mr. Bannon's reliance was reasonable.[5]

---

[4] *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 673-675 (1973).

[5] *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992), citing *United States v. Smith*, 940 F.2d 710 (1st Cir. 1990). *See also, United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J.) (defense simply requires reasonable reliance on a conclusion of statement of law issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field). Judge Merhige also relies on Section 2.04(3)(b) of the Model Penal Code which provides as follows:

> A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when … (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment; (ii) a judicial decision; (iii) an administrative order or grant of permission; of (iv) an official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the law defining the offense."

I instruct you that the defense of entrapment by estoppel applies even if the official government statements the defendant reasonably relied on were misstatements of the law.[6]

If you find that he has satisfied these elements by a preponderance of the evidence, then prosecuting him would be unfair, it would violate the constitutional right to due process of law and you must find him not guilty.[7]

A defendant must prove this affirmative defense by a preponderance of the evidence. A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true. This is a lesser burden of proof than the government's burden to prove beyond a reasonable doubt each element of the crimes charged.[8]

If you find that the opinions of the Office of Legal Counsel of the United States Department of Justice or other official Department of Justice writings that Mr. Bannon relied on were such that they served to assure him that his conduct with respect to the subpoena in this case was legal, and if you find that the defendant reasonably relied on any opinion of the Office of Legal Counsel of

---

*Barker*, 546 F.2d at 955.

*See also United States v. Jenkins*, 701 F.2d 850, 857-859 (10th Cir. 183); *United States v. North*, 910 F.2d 843, 886-887 (D.C. Cir. 1990) (where defendant is entitled to "believed authority" defense, unreasonable belief is okay since standard is subjective. Even no belief at all regarding lawfulness of conduct results in acquittal; no need to show clear, direct instruction to act in a given time in a given way); *See also United States v. Cheek*, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991).

[6] *United States v. Baird*, 29 F.3d 647, 654 (D.C. Cir. 1994); *United States v. North*, 910 F.2d 843, 881, n.10, modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990).

[7] *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992); *United States v. Smith*, 940 F.2d 710 (1st Cir. 1990), both cited with approval in *United States v. Abcasis*, 45 F.3d 39, 43 (2d Cir. 1995).

[8] *United States v. Batterjee*, 361 F.3d 1210 (9th Cir. 2004); *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994).

the United States Department of Justice in taking the course of action he took, you must find him not guilty.[9]

In considering whether Mr. Bannon reasonably relied on the Office of Legal Counsel opinions and other official Department of Justice writings in believing that his response to the subpoena he received was authorized and lawful, you are entitled to consider the testimony of his lawyer and the advice his lawyer gave him on this subject on the question of whether such reliance was reasonable.[10]

---

[9] *See United States v. Smith*, 940 F2d 710 (1st. Cir. 1991) (entrapment by estoppel applies regardless of the intent nature of the crime charged or the defendant's mental state regarding intent; it rests, instead, on principles of fairness); *United States v. Hedges*, 912 F2d 1397 (11th Cir. 1990); *United Sates v. Clegg*, 846 F2d 1221 (9th Cir. 1988); *United States v. Tallmadge*, 829 F2d 767 (9th Cir. 1987).  Adapted from requested jury instruction in *United States v. Abcasis,* 45 F.3d 39 (2d Cir. 1995) (convictions reversed for failure to give defense requested jury instruction on entrapment by estoppel).

[10] *United States v. Tallmadge*, 829 F.2d 767, 775 (9th Cir. 1987).

**<u>United States' Objection to Defense Proposed Instruction—Entrapment by Estoppel</u>**

The Government objects to the Defendant's proposed instruction on entrapment by estoppel for two reasons: 1) the Defendant has not made the requisite showing to present the defense at trial as an initial matter and so is not entitled to an instruction for a defense he cannot present; and 2) even if he had made the requisite showing and could present the defense at trial, his proposed instruction is a misstatement of the law and instead allows the jury to acquit him on a good-faith reliance defense that is barred by the definition of "willfulness" under the contempt of Congress statute.

*<u>The Defendant Is Not Entitled to Present the Defense at Trial</u>*

First, the Defendant is not entitled to any instruction on entrapment by estoppel because he cannot present such a defense at trial. At the end of trial, defendants are entitled to instructions on their theory of the case, including their affirmative defenses, only "if the record contains sufficient evidence from which a reasonable jury could find" for the defendant on his theory. *Akhigbe*, 642 F.3d at 1083 (internal quotation marks and citation omitted); *see also United States v. Nwoye*, 663 F.3d 460, 462-63 (D.C. Cir. 2011) (applying this standard to affirmative defense). The Defendant can only present evidence in support of an entrapment-by-estoppel defense at trial in the first place, however, if he has made a prima facie showing of the defense. *See United States v. Pardue*, 385 F.3d 101, 108 (1st Cir. 2004) (affirming exclusion of defense at trial where defendant could not make prima facie case); *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995) (finding that "once they presented a prima facie defense," the defendants could present the defense to the jury); *United States v. Brebner*, 951 F.2d 1017, 1024-27 (9th Cir. 1991) (affirming exclusion of evidence purporting to raise the defense as immaterial as a matter of law); *United States v. Etheridge*, 932 F.2d 318, 320-21 (4th Cir. 1991) (upholding order granting motion in limine precluding evidence).

In ruling on the Defendant's motion to dismiss, the Court found he had not shown the predicate requirement for an estoppel defense of an on-point statement from the government sanctioning his conduct.  6/15/22 Mot. Hrg., Tr. at 123-124; *see also* ECF No. 52 at 5-14; ECF No. 65 at 10-20; ECF No. 70 at 2-9 (Government's briefing relating to Defendant's failure to make the required prima facie showing).  Having failed to make a prima facie showing of the defense, the Defendant cannot present evidence of the defense at trial, and there will accordingly be no basis in the record to allow the jury to be instructed on the elements of an entrapment-by-estoppel defense.

*The Defendant's Proposal is a Misstatement of the Law*

Second, even if the Defendant had made the threshold showing necessary to present his purported entrapment-by-estoppel defense at trial, and if her were subsequently to make the requisite showing at trial to be entitled to an instruction on the defense, the instruction he proposes is an inaccurate statement of the elements the jury must find to acquit him on such a basis.  Several circuits, including those from which the Defendant has relied on caselaw to support his estoppel arguments, have model criminal jury instructions on an entrapment-by-estoppel defense.  *See, e.g.*, 9th Cir. Model Crim. Jury Instr. 5.4 (2022); 8th Cir. Model Crim. Jury Instr. 9.01A (2021).  The Defendant does not submit or adapt any of these, as is the normal course when model instructions are available.  The Defendant does not explain why using or adapting these models would fail to properly instruct the jury, despite the Government's efforts to confer on this issue in preparation of this filing.  But it seems clear he does not do so because reference to them demonstrates instantly that his proposed instruction is not in line with how courts have consistently applied the defense— and that the defense is inapplicable to this case.  The Government submits, however, that these models, such as the Ninth Circuit model attached here as an example, Exhibit 1, are the appropriate

formulation of the defense, particularly in light of the numerous ways in which the Defendant's proposed instruction misleads and misstates the law.

As a general matter, the Defendant's instruction allows the jury to acquit him without first finding that the government affirmatively misled him as to his specific course of conduct.  This is contrary to the law.  As is evident in most of the cases the parties have cited in their briefing on this matter, the entrapment-by-estoppel defense typically arises in circumstances where a defendant speaks directly with a government official about his intended course of action.  *See, e.g.*, *United States v. Abcasis*, 45 F.3d 39, 44 (2d Cir. 1995).  And courts in those cases consistently require that the statement from the government official be directly on point to the conduct for which the Defendant has been charged.  *See id.* ("The defendant's conduct must remain within the general scope of the solicitation or assurance of authorization; this defense will not support a claim of an open-ended license to commit crimes in the expectation of receiving subsequent authorization.").  This requirement reflects the purpose of the defense to prevent government misconduct in which the government actively misleads a person into committing a criminal offense.  *See, e.g.*, *United States v. Benning*, 248 F.3d 772, 775 (8th Cir. 2001) ("A government official must be guilty of affirmative misconduct in order for a defendant to put forth a viable defense of entrapment by estoppel.").

The Defendant has never claimed he spoke directly with any government official about his conduct here.  But the Defendant's reliance on government guidance documents does not erase the legal requirement that whatever government statement he claims to have relied on at the time of his crime be specific in its sanctioning of the Defendant's particular conduct.  *See United States v. Chrestman*, 525 F. Supp. 3d 14, 32 (D.D.C. 2021) ("Central to *Raley*, *Cox*, and *PICCO* is the fact that the government actors in question provided relatively narrow misstatements of the law that

bore directly on a defendant's specific conduct.") (citing *Raley v. Ohio*, 360 U.S. 423 (1959), *Cox v. Louisiana*, 379 U.S. 559 (1965), and *United States v. Pennsylvania Industrial Chemical Corp. ("PICCO")*, 411 U.S. 655 (1973)).  In the few cases in which defendants have claimed reliance on government statements of general applicability—found in regulations, policies, or forms—it is only in those circumstances in which the statement was directly on point to the circumstances of the defendant's criminal violation that courts have found the defense to be available.  *See PICCO*, 411 U.S. at 670 n.22, 672-74 (finding defendant-corporation was entitled to present defense that it was "actively misled" by a regulation defining "refuse" in statute barring certain releases of waste into navigable waters as "materials that are obstructive or injurious to navigation" where parties conceded the refuse released by defendant "was not of a nature that would impede or obstruct navigation"); *United States v. Levin*, 973 F.2d 463, 464-65, 468 (6th Cir. 1992) (finding the defendants' reliance on statements from the relevant regulatory agency satisfied the elements of entrapment-by-estoppel where the statements they relied on "declared the sales promotion program, which was the predicate for the indictment, to be legal").  Where the government statement only addresses one course of conduct, however, or where the defendant's reliance depends on conclusions by implication, courts have refused to find the defense is available.  *See Pardue*, 385 F.3d at 108-109 (affirming exclusion of defense where defendant's claim was that he relied on waiver of prior conviction to carry firearm during Marines service to carry one once he was a civilian after his discharge because the defendant had "disclosed no affirmative representation from any government official regarding the legality of possessing ammunition in civilian life.  He merely assumed, without being told, that he could possess ammunition after his discharge from the Marines"); *Benning*, 248 F.3d at 775, 775 n.4, 776 (finding a Bureau of Alcohol, Tobacco, and Firearms form delineating exceptions to bar on obtaining a firearm for

individuals previously convicted of crime could not provide basis for entrapment-by-estoppel defense for defendant who unlawfully obtained firearm as prohibited person where there was "no evidence that a government official ever informed [the defendant] that he could legally own or possess a firearm" and "[a]t most, [the defendant] suffered from a lack of explanation rather than an affirmative misleading interpretation of the statute"); *United States v. Ramirez-Valencia*, 202 F.3d 1106, 1109 (9th Cir. 2000) (finding form notifying defendant that it was a felony to reenter the United States within five years of deportation did not qualify as an affirmative government statement that reentry after five years was lawful); *United States v. W. Indies Transp.*, 127 F.3d 313, 314 (3d Cir. 1997) (affirming district court's refusal to instruct jury on entrapment-by-estoppel defense where the placard from the U.S. Coast Guard on which the defendants claimed to have relied to illegally dump material in the ocean addressed the discharge of "nonplastic trash" a certain distance from shore and "ma[de] no representations about the legality of the defendants' conduct—dumping scrap metal off-shore").

The Defendant's instruction does not hew to the required specificity of the defense and instead repeatedly instructs the jury that all it must find is that the Defendant was "led to believe" his conduct was lawful. This improperly suggests to the jury that it can find the Defendant is entitled to acquittal even where all the Defendant can offer is his own extrapolations from inapposite government statements. This risk is particularly great given the Defendant's complete failure to identify even a single government statement on-point and his clear intention to argue that he concluded he could defy the subpoena based on his application of the "rationales" underlying various, disparate government documents, *see* ECF No. 86 at 5-7. Such a defense, however, is just a good-faith reliance defense because it erases the need for affirmative conduct from the government and leaves only the Defendant's belief that the law excused his conduct. Good-faith

reliance defenses are not available under the charged statute, *see, e.g.*, *Bart v. United States*, 203 F.2d 45, 49-50 (D.C. Cir. 1952), *reversed on other grounds*, 349 U.S. 219 (1955) ("A witness does not insulate himself from contempt by asserting a reason for a refusal to answer."); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947) ("The reason or the purpose of failure to comply or refusal to comply is immaterial, so long as the refusal was deliberate and intentional and was not a mere inadvertence or an accident."), and the instruction is, therefore, improper.

In addition to this general objection to the Defendant's proposed instruction, the Government also identifies here the ways in which specific paragraphs in the proposed instruction are misstatements of the law:

Objection to Paragraph 1

The Government objects to the first paragraph because it erroneously states that the defense requires only that government statements "led him to believe his conduct would be lawful."  This is objectionable for the reasons outlined above.

Objection to Paragraph 2

The Government objects to the second paragraph because it does not actually instruct the jury in relation to anything it must find but instead provides unnecessary background on the legal underpinnings of the defense.  It includes numerous legal terms like "actual authorization" that are not further defined in the instruction and purports to quote from various cases but edits the quotations in ways that are misleading and misstate the defense.  For example, the Defendant includes a quote from *Abcasis* that reads in the actual case as follows: "The defense of entrapment by estoppel does not depend solely on absence of criminal intent.  Nor is it limited to the circumstance of actual authorization.  It focuses on the conduct of the government leading the defendant to believe reasonably that he was authorized to do the act forbidden by law."  45 F.3d

at 44.  The Defendant replaces the clause of "to do the act forbidden by law," however, with "to take the action he took."  This misstates the nature of the offense, which is one premised on the fact that the government has erroneously instructed someone that his criminal conduct is lawful. As an initial matter, there is no basis for including such cherry-picked, miscellaneous quotes from cases that do nothing but provide unnecessary legal background.  Even if there were, such cherry-picked quotes should not be misleadingly altered.  *See United States v. Pray*, 869 F. Supp. 2d 44, 50 (D.D.C. 2012) ("A defendant has no right to have any instruction on [the defendant's defense theory] given in the particular form he desired, or with any special emphasis." (internal quotation marks and citation omitted) (alteration in original)).

    Objection to Paragraph 3

    The Government objects to the third paragraph because it suggests the defense is available in circumstances broader than the law allows—specifically, it suggests to the jury that the defense relates to a defendant's interpretation of his mere "duties, rights, and obligations" and not to statements that his conduct was not a crime.  The Defendant does not explain why the general summary of the defense provided in the various model instructions that several circuits have already written is not adequate.  *See, e.g.*, 9th Cir. Model Crim. Jury Instr. 5.4 ("The defendant contends that [if] [although] [he] [she] committed the acts charged in the indictment, [he] [she] did so reasonably relying upon the affirmative advice of an authorized [federal government official] [agent of the federal government].").

    Objection to Paragraph 4

    The Government objects to the fourth paragraph because it erroneously instructs the jury that, as a matter of law, the Defendant was "entitled to look to the Department of Justice's OLC opinions and other Department of Justice authoritative writings for guidance as to what his rights,

obligations, and duties were with respect to the subpoena, to reasonably rely on the guidance provided in the OLC opinions and other Department of Justice authoritative writings, and to act in a manner he reasonably believed the OLC opinions and other authoritative writings authorized." This instruction removes necessary factual findings from the jury's consideration.  For example, two elements of the defense that the Defendant must prove to the jury are that a government agent "affirmatively assured [him] that certain conduct [was] legal," *United States v. Howell*, 37 F.3d 1197, 1204 (7th Cir. 1994); *see also United States v. Troncoso*, 23 F.3d 612, 615 (1st Cir. 1994) (defense fails absent advice from official that conduct "was actually legal"), and that the government agent "was responsible for interpreting, administering, or enforcing the law defining the offense," *Chrestman*, 525 F. Supp. 3d at 31 (citation omitted).  Instructing the jury that the Defendant was "entitled" to look to, rely on, and violate the law based on Department writings, as he requests, improperly relieves the Defendant of his burden with respect to these two elements.

For authority to support his proposed fourth paragraph, the Defendant cites the Supreme Court's opinion in *PICCO*.  As noted above, the Court in that case found that a regulation from the relevant government agency could provide the basis for an estoppel defense.  In finding as such, the Court concluded, among other things that the defendant "had a right to look to [the agency's] regulations for guidance" because it "is the responsible administrative agency" with respect to the relevant law.  411 U.S. at 674.  The Court did not, however, suggest that, as a matter of law, anytime a defendant claims he relied on a statement from an agency he is entitled to have done so, yet that is what the Defendant's proposed instruction would communicate to the jury. And doing so would run contrary to all of the court decisions following *Raley*, *Cox*, and *PICCO* holding that the authority of the government agent to make statements on the law and the existence of the statement are elements for the jury to find.

Objection to Elements of the Defense

The Government objects to the elements of the defense as articulated in the Defendant's proposed instruction.  The first element the Defendant proposes is erroneous because the Defendant's belief about whether executive privilege was invoked as a general matter is irrelevant to the elements of entrapment by estoppel.  As outlined above, the question the jury must answer under an estoppel defense is whether OLC sanctioned the specific circumstances of the Defendant's conduct—which includes the specifics of what he was and was not told by Justin Clark, on behalf of President Trump, as well as what he was told by the White House Counsel's Office, and how what he was told and by whom aligned with the conduct addressed in the OLC opinions.

The second element proposed by the Defendant also is erroneous.  As he does at other points in the proposed instruction, the Defendant seeks an instruction that the defense is available where government statements merely "give rise to a reasonable belief" that an individual's conduct is legal.  This stretches the defense too far, as outlined above.  Indeed, this element along with the first the Defendant proposed provides nothing more than a mistake-of-law defense, because under the Defendant's proposed instruction all the Defendant would have to show is that he believed his conduct was sanctioned, not that it was affirmatively represented to him that it was.  His proposal completely eliminates from the defense the principle that the defense is focused on affirmative misleading statements/conduct by the government.  All of the defendants in the cases cited above—*Benning*, *Pardue*, *Ramirez-Valencia*, and *W. Indies Transp.*—made essentially the same claims for relief and they were uniformly rejected.  The Defendant's formulation is so broad, in fact, that any defendant could argue that the wording of the relevant criminal statute "gave rise to a reasonable belief" that his conduct was legal and avoid accountability for his crimes.

The Defendant cites the Sixth Circuit's opinion in *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992), and a concurring opinion from *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J.), as support for his proposed elements, but the elements he proposes are nowhere articulated in either *Levin* or *Barker*.  In fact, the Sixth Circuit has promulgated its own model instruction on an entrapment-by-estoppel defense based on *Levin*, which the Defendant does not acknowledge or offer.  And *Levin* and the Sixth Circuit model make clear the Defendant must prove that a government agent "announced that the charged criminal act was legal."  *Levin*, 973 F.2d at 468; *see also* 6th Cir. Model Crim. Jury Instr. 6.09 (same).  Moreover, both *Levin* and Judge Merhige's concurring opinion in *Barker* articulate the elements in a manner similar to other courts in this circuit, *see Chrestman*, 525 F. Supp. 3d at 31 (*United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)); *United States v. Khanu*, 664 F. Supp. 2d 35, 41 (D.D.C. 2009) (citing *W. Indies Transp.*, 127 F.3d at 313); numerous other cases the Government has cited throughout its pleadings, *see, e.g.*, ECF No. 52 at 7; and in the various pattern instructions the circuits have issued on the defense.  The Defendant's proposal aligns with none of these.

Objection to Penultimate Paragraph

The Government objects to the penultimate paragraph of the Defendant's proposed instruction because it improperly instructs that "if you find that the defendant reasonably relied on any opinion of the Office of Legal Counsel of the United States Department of Justice in taking the course of action he took, you must find him not guilty."  This instruction to acquit the Defendant based on reliance on "any" OLC opinion eliminates the requirement that the government statement at issue address the Defendant's specific criminal conduct and again invites acquittal on a mere good-faith reliance basis.

Objection to Last Paragraph

The Government objects to the last paragraph of the Defendant's proposed instruction for three reasons. First, the proposed instruction that the jury can consider the Defendant's attorney's testimony is erroneously broad because it does not foreclose the Defendant from suggesting to the jury that his attorney's independent opinion of what the OLC opinions may or may not allow can provide a basis for acquittal. As the Government has pointed out before, this improperly risks having the jury substitute the Defendant's attorney's conclusions about what the law might allow for the government's statements of what the law allows. *See, e.g.*, *W. Indies Transp.*, 127 F.3d 299 at 314 ("The entrapment by estoppel defense applies only to representations made by government officials, not to asserted reliance on legal advice or representations from non-governmental actors. Representations made by [a] private entity as to the legality of [the defendant's conduct] cannot remotely establish a valid entrapment by estoppel defense."); *see also* Gov't Reply, ECF No. 70, at 6-8 (discussing the improper substitution of the Defendant's counsel's statements for the government's). Second, the instruction allows the jury to consider "the advice" the Defendant's attorney gave him but does not specify that the advice is only relevant if the Defendant has first received an affirmative statement from the government that his planned course of conduct is lawful. The very case on which the defendant relies to support his request only noted the relevance of a defendant's attorney's advice to reasonableness after it found he had established he had been affirmatively misled by an authorized government agent. *See United States v. Tallmadge*, 829 F.2d 767, 770, 775 (9th Cir. 1987). Finally, the Defendant's proposed instruction artificially narrows what the jury is to consider to determine reasonableness to his attorney's conclusions. *See, e.g.*, *Chrestman*, 525 F. Supp. 3d at 31 (requiring that the defendant's reliance be reasonable "in light of the identity of the agent, the point of law misrepresented, and the

substance of the misrepresentation"); *W. Indies Transp., Inc.*, 127 F.3d at 313 ("[R]easonable reliance means a defendant must establish that 'a person truly desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'"); *see also* 9th Cir. Model Crim. Jury Instr. 5.4 (instructing that, in deciding whether the defendant has made out an estoppel defense, "you should consider all of the relevant circumstances, including the identity of the federal government [official] [agent], what the [official] [agent] said to the defendant, and how closely the defendant followed any instructions the [official] [agent] gave").

The Defendant's proposed instruction on entrapment by estoppel should be rejected. The Defendant has failed to make out a prima facie case of the defense and so cannot present it to jury in any event, such that there will be no basis at trial to give the instruction. Even if he had, however, his proposal is completely untethered from the established elements of the defense and his far-reaching departures from standard instructions on the defense that have been adopted across circuits include erroneous and misleading statements of the law.

## <u>DEFENSE PROPOSED INSTRUCTION: PUBLIC AUTHORITY</u>

Mr. Bannon asserts that he acted in reliance on public authority. Specifically, he contends that he took action with respect to the subpoena in this case in reliance on the former President of the United States's invocation of Executive Privilege and on official writings of the United States Department of Justice on the impact of the invocation of executive privilege on the rights, duties, and obligations of the recipient of a subpoena concerning which executive privilege has been invoked.

A defendant who commits an offense in reliance on public authority does not act willfully and should be found not guilty.[1]

To be found not guilty based on reliance on public authority, the defendant must prove that each of the following things are more likely true than not true:

- That former President Trump requested, directed, or authorized Mr. Bannon to engage in the conduct charged against him [or that former President of the United States, Donald Trump, through his authorized agent, Justin Clark, advised Mr. Bannon that he was invoking executive privilege as to the subpoena the Select Committee served on Mr. Bannon and instructed Mr. Bannon that based on his invocation of executive privilege, to the fullest extent permitted by law, Mr. Bannon

---

[1] "Furthermore, a person can be prosecuted under § 192 only for a "willful" failure to produce documents in response to a congressional subpoena. *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F.2d 352, 359 (D.C. Cir.), *cert. denied*, 303 U.S. 664 (1938). There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to a "willful" violation of the statute. Moreover, reliance on an explicit opinion of the Attorney General may negate the required *mens rea* even in the case of a statute without a willfulness requirement. *See Model Penal Code § 2.04(3)(b); United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring). *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege* at 135 [Doc. 58-10] (May 30, 1984).

was to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena;; and (c) not provide any testimony concerning privileged material in response to the Subpoena];

- That former President Trump had the actual authority to grant authorization for the defendant to engage in this conduct; On this point, I instruct you that a former President of the United States has the authority to invoke executive privilege concerning his communications with others and that once he invokes executive privilege, it is presumptively valid;[2] and

- In engaging in this conduct, the defendant reasonably relied on the former President's authorization, along with authorization from legal opinions from the Department of Justice's Office of Legal Counsel and other official Justice Department writings authorization. In deciding this, you should consider all of the relevant circumstances, including what the former President instructed, what the Department of Justice OLC opinions and other authoritative writings said, and how closely the defendant followed any instructions the official gave.[3]

---

[2] *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977); *United States v. Nixon*, 418 U.S. 683, 708 (1974; *Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974); Olson OLC Opinion of May 30, 1984 [Doc. 58-10] at 136: "In order to overcome the presumptively privileged nature of the documents, a congressional committee must show that 'the subpoenaed evidence is *demonstrably critical* to the responsible fulfillment of the Committee's functions.'" "Thus the President's assertion of privilege is far different from a private person's individual assertion of privilege; it is entitled to special deference due to the critical connection between the privilege and the President's ability to carry out his constitutional duties."

[3] Adapted from Fed. Crim. Jury Instr. 7th Cir. 6.06 (2020 ed.).

## <u>United States' Objection to Defense Proposed Instruction—Public Authority</u>

The Government objects to the Defendant's proposed instruction on public authority for two reasons: 1) he has not made the requisite showing to present the defense at trial as an initial matter and so is not entitled to an instruction for a defense he cannot present; and 2) even if he had made the requisite showing and could present the defense at trial, his proposed instruction is a misstatement of the law.

First, the Defendant is not entitled to any instruction on public authority because he cannot present such a defense at trial.  As noted in the Government's objection to the Defendant's proposed instruction on entrapment by estoppel, at the end of trial, defendants are entitled to instructions on their theory of the case, including their affirmative defenses, only "if the record contains sufficient evidence from which a reasonable jury could find" for the defendant on his theory." *Akhigbe*, 642 F.3d at 1083 (internal quotation marks and citation omitted); *see also Nwoye*, 663 F.3d at 462-63 (applying this standard to affirmative defense).  The Defendant can only present evidence in support of a public-authority defense at trial in the first place, however, if he has made a prima facie showing of the defense to the Court.  *See, e.g.*, *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) ("[A] defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Kuai Li*, 475 F. Supp. 2d 590, 593 (E.D. Va. 2007) (excluding evidence of a public-authority defense where the defendant could not establish that the official whose direction he claimed to follow had the actual authority to engage the defendant in the illegal conduct).  For the reasons the Government has briefed several times, the Defendant has failed to do that here because he has not identified any authorized government agent who directed him to commit the crime of contempt of Congress.  *See* ECF No. 52 at 14-19; ECF No. 65 at 20-24; ECF

No. 70 at 9-14.  Having failed to make a prima facie showing of the defense, the Defendant cannot present evidence of the defense at trial, and there will therefore be no basis in the record to allow the jury to be instructed on the elements of a public-authority defense.

Second, even if the Defendant had met his burden to present the defense at trial, and subsequently met his burden to be entitled to an instruction on it, the instruction he proposes should be rejected because it does not require that the jury find the Defendant received an instruction to commit the crime at the direction of an authorized government agent.  The public authority defense is not available for individuals acting at the direction of private individuals.  It is available only for those told to engage in criminal conduct by a government agent authorized to direct them as such. *See, e.g.*, *United States v. Fulcher*, 250 F.3d 244, 253-54 (4th Cir. 2001) ("The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity.'" (citations omitted)).  The Defendant's instruction erases this requirement.

The Defendant claims the proposed instruction is "adapted" from the Seventh Circuit's pattern jury instruction, but, in fact, the Defendant's proposal replaces the pattern instruction's requirements that a direction to commit a crime come from an authorized government agent with a requirement that the instruction come from the former President, who was a private citizen.  Specifically, the Seventh Circuit pattern requires the jury to find that the Defendant has proven by a preponderance that:

1. An [agent; representative; official; name] of the [United States] government [requested; directed; authorized] the defendant to engage in the conduct charged against the defendant in Count[s] __; and

2. This [agent; representative; official; name] had the actual authority to grant authorization for the defendant to engage in this conduct; and

3.  In engaging in this conduct, the defendant reasonably relied on the [agent's; representative's; official's; name] authorization.  In deciding this, you should consider all the relevant circumstances, including the identity of the government official, what that official said to the defendant, and how closely the defendant followed any instructions the official gave.

7th Cir. Model Crim. Jury Instr. 6.06 (2020).  Clearly, the former President was not a government official at the time the Defendant was served with and defied the subpoena—which is why the Defendant cannot present a public-authority defense in the first place.  The Defendant appears to understand this given that he seeks to change the elements of the defense in his proposed instruction.

The alternative wording the Defendant proposes for the first element is also erroneous because it requires the jury not to find that the Defendant was directed to commit the offense as required—that is, that the Defendant received an instruction that he must defy the subpoena in total—but that the Defendant was instructed to make various privilege assertions in response to the subpoena.

The Defendant's proposed instruction that the defense is available if the jury finds that the Defendant reasonably relied on Department writings is erroneous because this instruction is untethered to the identity of the government official who directed the Defendant to commit contempt.  In a public-authority defense, it is a defendant's reasonable reliance on the authorization they receive from the public official directing them that is at issue, not their reasonable reliance on ancillary statements from other government actors.  *See Alvardo*, 808 F.3d at 484 (requiring proof that "the defendant . . . reasonably relied on that authorization when engaging in that conduct"); *see also supra* 7th Cir. Model Crim. Jury Instr. 6.06.

Finally, the Defendant's proposed instruction is barred by controlling law on the meaning of "willful" in the contempt of Congress statute because, at bottom, it is merely a good-faith

reliance defense in disguise.  That is, the Defendant wishes the jury to be instructed that he had a reasonable belief executive privilege had been asserted and that it therefore excused his compliance.  Reliance on the law is not a defense to contempt of Congress, as noted numerous times above.  The instruction therefore invites the jury to acquit on a basis not available under the law and cannot be provided.

## DEFENSE PROPOSED INSTRUCTION: APPARENT AUTHORITY

Mr. Bannon has asserted the defense of apparent authority, among other defenses to the charges against him. The defense of apparent authority requires a reasonable belief, whether that belief is correct or mistaken, that the source for the information relied upon had the authority to license the conduct at issue and did so.[1]

I instruct you that if you find that Mr. Bannon reasonably believed that he was authorized to respond to the subpoena as he did, based on former President Donald J. Trump's invocation of executive privilege and his belief that the former President had the authority to license him to respond as he did, you must find him not guilty, even if his belief in the former President's authority was mistaken.

Similarly, I instruct you that if you find that Mr. Bannon reasonably believed that he was authorized to respond to the subpoena as he did, based on the Office of Legal Counsel's opinions of other Department of Justice authoritative writings and his belief that these OLC opinions and other writings had the authority to license him to respond as he did, even if his belief in the authority of these sources was mistaken, then you must find him not guilty.

---

[1] *United States v. Barker*, 546 F.2d 940, 947-948, 954-957 (D.C. Cir. 1976); Model Penal Code § 2.04(3)(b).

**United States' Objection to Defense Proposed Instruction—Apparent Authority**

The Government objects to the Defendant's proposed instruction on apparent authority for three reasons: 1) a defense of apparent authority is not available under the law and, even if it were, the Defendant has not met the threshold requirement to present it to a jury; 2) the instruction he proposes is not supported even by the single concurring opinion he claims to establish the defense; and 3) the instruction is actually a good-faith reliance defense instruction which is not available under the statute.

First, as the Government has briefed previously, ECF No. 65 at 24-26, there is no apparent public authority defense.  Indeed, the D.C. Circuit has rejected it.  *United States v. North*, 910 F.2d 843, 878-81 & n.10 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on other grounds*, 920 F.2d 940 (D.C. Cir. 1990).  An instruction on a defense that does not exist under the law is not appropriate.  *Cf. United States v. Tarantino*, 846 F.2d 1384, 1403-04 (D.C. Cir. 1988) (finding defendant was not entitled to an instruction on the law that was not legally relevant to the charged offense).

Second, even if an apparent authority defense did exist, it is a species of a public authority defense that relies on apparent instead of actual authority and requires therefore that it be a government official's apparent authority on which a defendant acts, not a private individual.  As articulated by Judge Wilkey in the concurring opinion in *Barker* that the Defendant relies on, it also requires the jury to find that the Defendant's belief was not only subjectively reasonably, but objectively so.  *See United States v. Lam Kwong-Wah*, 924 F.2d 298, 310 n.9 (D.C. Cir. 1991) (noting that, assuming the defense exists, "a defendant must show at least that he 'honestly and reasonably' believed that his actions were being committed pursuant to lawful authority, and the belief must be 'objectively reasonable.'" (quoting *Barker*, 546 F.2d at 947–49)); *Barker*, 546 F.2d

at 949 (Wilkey, J.) (requiring "both (1) facts justifying [his] reasonable reliance on [the official's] apparent authority and (2) a legal theory on which to base a reasonable belief that [the official] possessed such authority.").   The Defendant's proposed instruction includes neither of these elements and, with respect to his proposal regarding the former President, suffers from the same infirmity as his public authority proposal in that it allows the jury to acquit the Defendant simply if he believed a private individual told him he could commit the crime.

Finally, the Government objects to the instruction because it, like the Defendant's other proposed instructions is simply a good-faith reliance instruction that is not available in contempt of Congress cases.   Specifically, like his public-authority proposal, the Defendant's proposal with respect to the former President invites the jury to acquit if they find that the Defendant believed executive privilege excused his compliance.   In addition, his proposal with respect to OLC opinions does not require that the jury make any findings that there was an objective basis for believing that OLC had the authority to direct him to commit crimes.

## DEFENSE PROPOSED INSTRUCTION: CONSIDER ONLY CRIME CHARGED

You are here to determine whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged. The defendant is not on trial for any act, conduct, or crime that is not charged in the indictment.[1]

---

[1] *See* Fed. R. Evid. 404(b) (permitting admission of other crimes evidence only for specific, limited purposes); *Huddleston v. United States*, 485 U.S. 681, 691 (1988) (discussing protections that should employed to protect against unfair prejudice should such other crimes evidence be admitted).

## United States' Objection to Defendant's Proposed Instruction— Consider Only Crime Charged

The Government objects to the Defendant's Proposed Instruction "Consider Only Crime Charged" because its purpose is not clear, and depending on its purpose, the proposed instruction is either insufficient or unnecessary.

First, if the Defendant is proposing the instruction in the event that the Court permits the introduction of "other crimes" evidence under Rule 404(b) of the Federal Rules of Evidence, the proposed instruction is insufficient. Instead, the Government submits that the Court should offer the Redbook instruction on Other Crimes Evidence, Instruction 2.321. The Redbook instruction provides the necessary and proper structure for ensuring that the jury properly considers such evidence, including by identifying the specific "other" evidence in question, and directly instructs the jury to consider such evidence only for a proper purpose under the rule (e.g., motive, identity, common scheme or plan, absence of mistake).

If the Defendant is proposing the instruction generally, without reference to 404(b) evidence, the instruction is unnecessary and confusing.

**DEFENSE PROPOSED INSTRUCTION: ELEMENTS OF THE OFFENSE**

Mr. Bannon is charged with violating 2 U.S.C. § 192. That statute reads, in pertinent part, as follows:

> *Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of [Contempt of Congress] . . ..*

The government has the burden of proving beyond a reasonable doubt each element of the offenses charged.

These elements are the following:

*First*, that the U.S. House of Representatives had the constitutional power to investigate the matter in issue or to make the particular inquiry:[1]

*Second*, that the Select Committee was duly empowered to conduct the investigation, and that the inquiry was within the scope of the grant of authority granted by the U.S. House of Representatives;[2]

---

[1] *Watkins v. U.S.*, 354 U.S. 178, 187 (1957); *Sinclair v. U.S.*, 279 U.S. 263, 292 (1929); *McGrain v. Daugherty*, 273 U.S. 135, 173-174 (1927); *Kilbourn v. Thompson*, 103 U.S. 168, 196 (1880).

[2] *Gojack v. U.S.,* 384 U.S. 702, 708 (1966) (holding that specific, properly authorized subject of inquiry is essential element of offense under statute making is misdemeanor to refuse to answer questions when summoned before congressional committee); *U.S. v. Rumely*, 345 U.S. 41, 42-43 (1953); *U.S. v. Lamont*, 236 F.2d 312, 315 (2d Cir. 1956), *affirming* 18 F.R.D. 27, 33

*Third*, that the information sought from Mr. Bannon by the Select Committee was pertinent to the authorized inquiry;[3]

*Fourth*, that the subpoena seeking documents and testimony was valid and issued pursuant to lawful authority of the Select Committee and the authority of the U.S. House of Representatives;[4] and

*Fifth*, that Mr. Bannon's actions in responding to the subpoena constituted a willful default. "Willful default" as used in these instructions means that Mr. Bannon knew or should reasonably have known that his conduct was unlawful, was conscious of wrongdoing, and that his actions were deliberate and intentional – and not the result of accident, mistake, or misunderstanding, or the assertion of a valid privilege.[5]

---

(S.D.N.Y.1955); *U.S. v. Orman*, 207 F.2d 148, 153 (3d Cir. 1953); *U.S. v. Kamin*, 136 F.Supp. 791, 793 (D. Mass. 1956).

[3] *Barenblatt v. U.S.*, 360 U.S. 109, 123 (1959); *Sacher v. U.S.* 356 U.S. 576, 577 (1958).

[4] *Gojack v. U.S.*, 384 U.S. 702, 716 (1966) ("[t]he legislative history of § 192 makes plain that a clear chain of authority from the House to the questioning body is an essential element of the offense"); *see also Yellin v. United States*, 374 U.S. 109 (1963) (holding that failure of House Committee on Un-American Activities to comply with its rule on executive sessions excused a witness' refusal to answer questions, and witness was entitled to prove such defense when he discovered at his contempt trial that his rights under the executive session rule had been violated); *see generally Christoffel v. United States*, 338 U.S. 84, 85-90 (1949) (perjury conviction reversed where committee did not follow rules regarding quorum).

[5] *Quinn v. U.S.*, 349 U.S. 155, 165 (1955); *U.S. v. House of Representatives of U.S.*, 556 F. Supp. 150, 152 (D.D.C. 1983) (holding that the statutory provisions concerning penalties for contempt of Congress, 2 U.S.C. § 192 and § 194, constitute "an orderly and often approved means of vindicating constitutional claims arising from a legislative investigation.") (citing *Sanders v. McClellan*, 463 F.2d 894, 899 (D.D.C. 1972); Under these provisions, constitutional claims and other objections to congressional investigatory procedures may be raised as defenses in a criminal prosecution. *See Barenblatt v. United States*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F.2d 751 (D.D.C. 1971); *Tobin v. United States*, 113 U.S. 306 F.2d 270, 276 (D.D.C. 1962); *see also United States v. Seeger*, 303 F.2d 478, 481–82 (2d Cir. 1962); *Licavoli v. U.S.*, 294 F.2d 207, 208 (D.D.C. 1961); *see also Ratzlaf v. United States*, 510 U.S. 135, 138 (1994); *United States v. Burden*, 934 F.3d 675, 692 (D.C. Cir. 2019); *United States v. Zeese*, 437 F. Supp. 3d 86, 94 (D.D.C.

**United States' Objection to Defendant's Proposed Instruction—**

**[SET FORTH IN SEPARATE FILING]**

---

2020); United States v. Myers, 2008 U.S. Dist. LEXIS 43981, *4, 2008 WL 2275457 (N.D. W. Va., June 3, 2008) (quoting Licavoli on "willfulness" and explaining that "willfulness" in the criminal contempt context means "a volitional act done by one who knows or reasonably should be aware that his conduct is wrongful."); "Furthermore, a person can be prosecuted under § 192 only for a "willful" failure to produce documents in response to a congressional subpoena.  *See United States v. Murdock*, 290 U.S. 389, 397-98 (1933); *Townsend v. United States*, 95 F.2d 352, 359 (D.C. Cir.), *cert. denied*, 303 U.S. 664 (1938).  There is some doubt whether obeying the President's direct order to assert his constitutional claim of executive privilege would amount to a "willful" violation of the statute.  Moreover, reliance on an explicit opinion of the Attorney General may negate the required *mens rea* even in the case of a statute without a willfulness requirement." *Prosecution for Contempt of Congress of an Executive Branch Official Who Has Asserted a Claim of Executive Privilege* at 135 [Doc. 58-10] (May 30, 1984).*See Model Penal Code § 2.04(3)(b); United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976) (Merhige, J., concurring).

## **DEFENSE PROPOSED INSTRUCTION: DEFENSE THEORY**

Mr. Bannon has pleaded "Not Guilty" to the charges contained in the indictment. This plea of not guilty puts in issue each of the essential elements of the offense as described in these instructions and imposes on the government the burden of establishing each of these elements by proof beyond reasonable doubt.

The defendant contends that he is not guilty of the crimes charged based on the following:

After he received the subpoena from the Select Committee, he was advised by his attorney, Mr. Costello, that the former President of the United States had invoked executive privilege with respect to the materials and testimony sought by the subpoena. Mr. Bannon's attorney, Mr. Costello, further advised Mr. Bannon that because executive privilege had been invoked, Mr. Bannon was legally prohibited from complying with the subpoena and it was not his privilege to waive – that Mr. Bannon was bound by the former President's invocation of privilege and had to honor it.

Mr. Bannon's attorney told Mr. Bannon that official, authoritative writings from the Department of Justice supported this position. Specifically, Mr. Bannon's attorney informed Mr. Bannon that binding, authoritative, official opinions from the Department of Justice's Office of Legal Counsel and other official Department of Justice writings provided that when executive privilege has been invoked, the recipient of the subpoena could not be compelled by a congressional committee to appear as a witness or produce documents.

Mr. Costello further informed Mr. Bannon that the Department of Justice official writings also provided that the subpoena was invalid and unconstitutional because Select Committee rules would not allow a lawyer for the former President to attend the deposition to assert executive privilege.

Mr. Costello also informed Mr. Bannon that official, authoritative Department of Justice writings provided that, since executive privilege had been invoked by the former President, the criminal contempt of Congress statute that is charged in the indictment against Mr. Bannon could not be used against Mr. Bannon.

Based on the foregoing, and the principles underlying the Department of Justice writings, Mr. Costello directed Mr. Bannon that he was not permitted to comply with the subpoena.

The defendant also contends that he is not guilty of the crimes charged because Mr. Costello, on Mr. Bannon's behalf, tried to seek an accommodation with the Select Committee. Mr. Costello, on Mr. Bannon's behalf, advised the Select Committee that Mr. Bannon would comply with the subpoena if the Select Committee worked out the executive privilege issue with former President Trump or if a judge ordered Mr. Bannon to comply (in a civil enforcement proceeding). The Committee did not agree to either option. Later, Mr. Costello, on Mr. Bannon's behalf, as a further accommodation effort, asked the Committee to give him a one-week extension on compliance with the subpoena so that he could study a lawsuit that had just been filed which he believed could possibly resolve the privilege issue. Again, the Select Committee rejected the requested accommodation.

Mr. Bannon relied, at all times and in all regards, on the advice of his experienced attorney, Mr. Costello, and followed his advice at all relevant times. Mr. Bannon, in defending against the indictment in this case contends that he is not guilty because he relied on the advice of his attorney and therefore did not "willfully make default" as the charge requires the government to prove. Mr. Bannon also asks you to find him not guilty because he sought, through his lawyer, to accommodate the Select Committee and its subpoena in several ways, but the Select Committee unlawfully refused to engage in the constitutionally mandated accommodation process. He

contends that by seeking an accommodation, as required, Mr. Bannon did not willfully default as that term is used in the charges against him.

Mr. Bannon also raises the defense of entrapment by estoppel, the legal definition of which will be provided to you in these instructions, contending that he reasonably relied on the invocation of executive privilege and the official Department of Justice writings and reasonably believed, based on them, that he was not permitted to comply with the subpoena, that the subpoena was invalid and unconstitutional, that he could not be compelled to comply with the subpoena, and that he would not be committing a crime by not complying, and that the criminal contempt of Congress statute charged in this case could not be applied to him under all of the operative circumstances. Mr. Bannon also raises the defense of public authority and apparent public authority, which will be explained to you in these instructions, contending that he acted pursuant to the authority of the former President's direction when invoking executive privilege and on the authority of the Department of Justice through its OLC opinions and other official, authoritative writings. Mr. Bannon asserts that the fact that his experienced criminal defense attorney believed that he could not and did not have to comply with the subpoena and so advised him, in reliance on the invocation of executive privilege and the Department of Justice writings, further makes his (Mr. Bannon's) belief and reliance fully reasonable, as does the fact that the Department of Justice writings on which he relied have been consistent in what they provide for at least six decades and remain in full force.

Mr. Bannon also defends against this case by contending that it is barred by the constitutional principle of separation of powers, by the constitutional principle of executive privilege, and by the due process clause for the failure to provide a person so situated with fair

notice that he could be subjected to criminal prosecution under this statute, given the invocation of executive privilege and the Department of Justice official writings.

Mr. Bannon contends that if he was wrong to rely on the advice of his attorney and on the other principles that he believed both prohibited him and excused him from complying with the subpoena, then he was simply mistaken and misunderstood the situation, and therefore did not "willfully make[] default" and cannot be found guilty under this indictment.

Mr. Bannon also contends in defense of the charges against him that he is not guilty because the subpoena was not valid, as it was not issued based on valid authority, due to the improper composition of the Select Committee and its failure to adhere to binding rules.[1]

## United States' Objection to Defendant's Proposed Instruction—

## [SET FORTH IN SEPARATE FILING]

---

[1] 1A Fed. Jury Prac. & Instr. § 19:01 (6th ed.), 1A Fed. Jury Prac. & Instr. § 19:01 (6th ed.) (adapted to the defense theory in this case).  Mr. Bannon relies on the briefing on these issues already on record in this case and will not burden the Court here with a reiteration of the same unless the Court so directs.

## DEFENDANT'S STATEMENT ON THIS FILING

Mr. Bannon believes that the jury should be allowed to hear evidence at trial about what actually happened. Every defendant is allowed to present evidence on his actions and thoughts, and the actions of others, that pertain to the charges against him. Sometimes this is referred to as the theory of defense. The jury instructions do not determine the evidence that can be presented at trial. That is putting the cart before the horse. It is the evidence at trial that is followed by the jury instructions – which provide the jury with the framework under which to consider the trial evidence. The evidence that Mr. Bannon intends to present in support of his theory of defense are necessary in order to protect his Fifth and Sixth Amendment rights to due process, compulsory process, effective assistance of counsel, and fundamental fairness.

That is why, for instance, the trial judge in the *Licavoli* case allowed the defense to present extensive testimony at trial by the attorney for Mr. Licavoli who represented him before the congressional committee. At trial, Mr. Licavoli's attorney testified at length for the defense about his interactions and communications with the congressional committee, his interactions with and statements made to Mr. Licavoli as to the appropriate actions to take in response to the subpoena. This testimony was allowed because the trial judge acknowledged that he could not exclude the evidence on the ground that the theory is wrong – instead, a defendant has a right to present evidence on his theory of defense. The *Licavoli* trial judge informed trial counsel that he would allow the testimony, and then instruct the jury at the end of the case that that particular evidence was immaterial, given the trial judge's understanding of the intent element of 2 U.S.C. § 192.[1]

Mr. Bannon reserves all rights pursuant to Fed. R. Crim P. 30, and applicable law, regarding the instructions to be read to the jury at trial. We understand that the Court directed that

---

[1] *United States v. Peter Licavoli,* Criminal Action No. 951-59, U.S. District Court for the District of Columbia, March 28 - 30, 1960.

the parties to submit proposed jury instructions early, and we have complied with the Court's directive to the parties at the hearing on June 15, 2022, where the Court modified the Scheduling Order [Doc. 25]  as follows: "the portion of Paragraph 7 that requires the submission of the Proposed Jury Instructions to be done on July 11th, we'll just change that to June 30th; that's the only modification." Hearing Transcript, June 15, 2022, at 142. However, there are practical reasons that we cannot submit at this time every jury instruction that we will want the jury to hear at trial. For instance, there remain unresolved discovery disputes. In addition, the attendance of material defense witnesses is still a pending matter. Under those circumstances, it is not possible for us to predict all potential instructions that the defense may wish the jury to hear.

The timing and content of a criminal defendant's request for jury instructions are governed by Fed. R. Crim P. 30(a), which provides in pertinent part that "[a]ny party may request in writing that the court instruct the jury on the law as specified in the request. The request must be made at the close of the evidence or at any earlier time that the court reasonably sets. When the request is made, the requesting party must furnish a copy to every other party." Rule 30(d) also governs the content and timing of any *objection*, as follows: "Objections to Instructions. A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." We reserve our right under Fed. R. Crim. P. 30(a) to object in writing to any portion of the final jury instructions to be given, or requested but not given, *before the jury retires to deliberate*.

In addition, the parties have fully briefed, and the Court has decided, Mr. Bannon's Motion To Dismiss The Indictment [Doc. 58] and the Government's motion to exclude the advice of counsel defense [Doc. 29. By our filing proposed jury instructions here (and in any future

submission on instructions) we are not retreating from the positions taken in those, or other filings the defense has submitted in this case. In short, we do not believe that this is the place to re-argue factual and legal positions already clearly stated. By this submission, we make no waiver – for purposes or reconsideration or appeal – of any issue already presented.

## Government's Objection to Defendant's "Statement"

The Government objects to the inclusion in the parties' joint submission of jury instructions the "Defendant's Statement on this Filing," which the Government received this afternoon.  The Defendant's Statement appears to include his complaints about the schedule for submitting jury instructions to the Court and to argue that he should be permitted to introduce irrelevant evidence at trial with no authority.  Because it is neither a jury instruction nor an objection to a jury instruction, the Government asked the Defendant to submit his Statement separately from the parties' joint submission of jury instructions.  The Defendant declined and informed the Government that he would not participate in the joint filing at all unless his Statement were included.  Finally, the Government notes that both parties already stated in the cover filing of this submission that "certain instructions may change, subject to issues that arise during trial or additional pretrial motions and orders."

Respectfully submitted,

/s/ *M. Evan Corcoran*
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street – 9th Floor
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

/s/ *David I. Schoen*
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

/s/ *Robert J. Costello*
Robert J. Costello (*Pro Hac Vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

*Counsel for Defendant Stephen K. Bannon*

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov

*Counsel for United States of America*