## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-670** |
| **v.** | : | |
| | : | |
| **STEPHEN K. BANNON,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES' OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

On June 17, 2022, the Defendant filed motions in limine to preclude reading the Indictment to the jury or providing it to the jury in deliberations, ECF No. 83, and to preclude the Government from introducing evidence relating to the January 6th attack on the U.S. Capitol, ECF No. 84. The Government defers to the Court on whether to provide or read the Indictment to the jury. It is unclear what evidence the Defendant intends to exclude through his motion regarding the January 6th attack, and the Government thus opposes his motion to the extent that such evidence is necessary to prove the elements of the charges against him.

Whether to provide or read the Indictment to the jury in this case is a matter within the sound discretion of the Court. *See Dallago v. United States*, 427 F.2d 546, 553 (D.C. Cir. 1969) ("The jurors must likewise be informed about the charges on which the accused is being tried in a degree sufficient to enable intelligent consideration in the light of the evidence, and whether to permit the jury to have the indictment during deliberations is another decision committed to the court's discretion." (citations omitted)). Because some courts in this District do provide or read the indictment to the jury, there is a standard jury instruction for such a circumstance. *See* 1 Crim. Jury Instr. for the District of Columbia (Redbook), Instr. 2.106 (2021). The Government defers to the Court's discretion and practice of whether to read or provide the Indictment to the jury in this case, and submits that, if the Court does so, the appropriate jury instruction should be given. *See*

*Dallago*, 427 F.2d at 553 (requiring that court providing indictment to jury allow timely objections and requests for appropriate instructions).

With respect to the Defendant's motion to exclude evidence relating to the January 6th Attack on the U.S. Capitol, the Defendant does not identify what specific evidence he seeks to exclude—whether he seeks to exclude mere references to the name of the Select Committee, which has "January 6th Attack on the United States Capitol" in the title, for example, or whether he only seeks to exclude images and detailed descriptions of various assaults carried out during the attack. The Government has no intention of introducing evidence of the latter type. Because the Defendant argues the evidence he seeks to exclude is not relevant, ECF No. 84 at 2, it does not appear he is seeking to preclude the Government from introducing evidence relating to essential elements of the offense with which he is charged—specifically, evidence showing that the subpoena issued to the Defendant sought information pertinent to the Select Committee's authorized investigation. To the extent he is seeking to exclude evidence relevant to the essential elements of the offense, however, the Government opposes his motion.

To meet its burden at trial, the Government must prove beyond a reasonable doubt that the Select Committee's subpoena to the Defendant sought testimony and records pertinent to the topic the Select Committee was investigating. *See Russell v. United States*, 369 U.S. 749, 755 (1962) ("[T]here can be criminality under the statute only if the question which the witness refused to answer pertained to a subject then under investigation by the congressional body which summoned him."); *Rumley v. United States*, 197 F.2d 166, 267 (D.C. Cir. 1952), *aff'd*, 346 U.S. 41 (1953) (noting that "pertinent," as used in the statute, means "pertinent to a subject matter properly under inquiry"). To determine whether information was pertinent to the investigation, the jury must know both 1) the subject matter of the investigation and 2) the information sought from the

Defendant. *See Gojack v. United States*, 384 U.S. 702, 708 (1966) ("Our decisions have pointed out that the obvious first step in determining whether the questions asked were pertinent to the subject under inquiry is to ascertain what that subject was." (internal quotation marks and citation omitted)); *cf. Watkins v. United States*, 354 U.S. 178, 214-15 (1957) (finding that, to adequately explain pertinence when a witness objects on those grounds, a congressional committee must "describe[e] what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it"). The Government anticipates that its evidence of this element will consist of House Resolution 503, which defines the scope of the Select Committee's authorized inquiry; the subpoena issued to the Defendant, which identifies categories of records relating to that authorized inquiry; and testimony relating to what pertinent testimony and information the Committee had reason to believe the Defendant could provide.

Because it goes directly to an essential element of the offense, this evidence is clearly relevant.[1]  Fed. R. Evid. 401.  Indeed, as the Supreme Court has recognized, "the very core of criminality under 2 U.S.C. s 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer.  What the subject actually was, therefore, is central to every prosecution under the statute."  *Russell*, 369 U.S. at 764.  The evidence the Government plans to introduce to establish the scope of the inquiry and the subpoena's pertinence to it, therefore, is not ancillary to the charges, but inherent to them.  Moreover, the evidence outlined above provides proof that the Defendant's refusal to comply was deliberate and intentional given his motive to defy an investigation he has characterized as invalid.  *See, e.g.*, "While leaving court, Bannon

---

[1] The Defendant has conceded that the Select Committee's authorized investigation served a legislative purpose but has claimed in his pretrial pleadings that the subpoena did not serve that purpose.  ECF No. 59-1 at 12-13.  The Court has now decided that constitutional issue, Mot. Hrg., 6/15/22, Tr. at 120, but the Defendant's claims suggest he has every intention to argue at trial that the information sought by the subpoena fell outside the scope of the Committee's inquiry.

threatens 'real investigation' of Jan. 6 after midterms," Politico, June 15, 2022 (claiming a new U.S. House of Representatives is "gonna have a real investigation" and claiming "the American people on November 8th are gonna vote on the legitimacy of this Committee")[2]; "Misdemeanor from Hell": Watch Bannon Speak Out After He's Released, CNN, Nov. 15, 2021 (Defendant's attorney stating "this thing was a sham from the beginning").[3]

To the extent the Defendant's Rule 403 arguments are aimed at the above-described evidence of essential elements—it is not clear if they are, because he does not identify with specificity what evidence he seeks to exclude—they fail.  To support his claim for exclusion under Rule 403, the Defendant relies only on the fact that the January 6th attack occurred in the same location where his trial will be and on the fact that the January 6th attack, and the Select Committee's investigation of it, have received widespread media attention.  ECF No. 84 at 2.  As an initial matter, the Defendant is not charged with participating in the January 6th attack, so pretrial publicity of the event has little relevance to what the jury will be considering in this case.  But, in any event, pretrial publicity or exposure to a case by the potential jury pool does not render otherwise relevant and admissible evidence unduly prejudicial.  The potential prejudice from pretrial publicity is appropriately addressed through voir dire, by ferreting out and excluding potential jurors whose prior knowledge of the case or related issues render them unable to be fair and impartial judges of the evidence.[4]  *See United States v. Tsarnaev*, 142 S. Ct. 1024, 1034 (2022)

---

[2] *Available at* http://www.politico.com/video/2022/06/15/while-leaving-court-bannon-threatens-real-investigation-of-jan-6-after-midterms-613085 (last accessed July 1, 2022).

[3] *Available at* http://www.youtube.com/watch?v=-diE7kCCidE (last accessed July 1, 2022).

[4] The Government notes that, to the extent the Defendant claims the mere the fact of publicity creates some form of prejudice, he is wrong.  The Supreme Court has made clear that it

("Notorious crimes are 'almost, as a matter of necessity, brought to the attention' of those informed citizens who are 'best fitted' for jury duty.  A trial court protects the defendant's Sixth Amendment right by ensuring that jurors have 'no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.'" (citations omitted)); *United States v. Haldeman*, 559 F.2d 31, 64-71 (D.C. Cir. 1976) (finding voir dire was adequate in Watergate prosecution to find impartial jurors who had not been unduly influenced by pretrial publicity of the scandal).  And to the extent the Defendant's claims are instead related to some speculation that a District jury will not be fair, this also is not a basis for excluding relevant evidence.  *United States v. Weisz*, 718 F.2d 413, 432 (D.C. Cir. 1983) (affirming "the value of voir dire as a means to identify prospective jurors who might be prejudiced against a defendant by the nature of evidence to be presented at trial").

Determining whether admissible evidence should be excluded because its probative value is "substantially outweighed" by unfair prejudice, on the other hand, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also* Fed. R. Evid. 403, Advisory Committee Note ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").  It is judged, therefore, based on the disputed evidence itself in

---

does not:  "It is not required, however, that the jurors be totally ignorant of the facts and issues involved.  In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.  This is particularly true in criminal cases.  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961) (citation omitted).

the context of the evidence to be presented at trial—an entirely different consideration from whether pretrial publicity has rendered a juror unable to be impartial.  *See* Fed. R. Evid 403, Advisory Committee Note ("Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission.").  Moreover, "Rule 403 does not bar powerful, or even prejudicial evidence.  Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value."  *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks and citations omitted) (emphasis and alteration in original); *see also United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. . . the balance [under Rule 403] should generally be struck in favor of admission when the evidence indicates a close relationship to the event charged." (internal quotation marks and citation omitted) (second alteration in original)). The evidence described above is directly relevant to and highly probative of essential elements of the offense—indeed, the Government would be unable to prove pertinency without it.  The Defendant has identified nothing on the other side of the Rule 403 ledger allowing its exclusion. To the extent he seeks to exclude this evidence, therefore, his motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Amanda R. Vaughn*
        J.P. Cooney (D.C. 494026)
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov