UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE

On June 29, 2022, the Defendant filed a Motion to Continue Trial, ECF No. 88, citing hearings by the Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee") and news coverage of them, claiming vaguely that prejudicial pretrial publicity requires that the trial date be moved. But the Committee's recent hearings and news coverage of them have almost nothing to do with the Defendant or the charges against him and have in no way created presumptively prejudicial pretrial publicity regarding this case. The Defendant's motion should be denied.

**I.       Legal Background**

Under the Sixth Amendment, criminal defendants have a right to trial before an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 ("[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."). The Supreme Court has consistently recognized, however, that "[t]he right to an 'impartial' jury 'does not require ignorance.'" *United States v. Tsarnaev*, 142 S. Ct. 1024, 1034 (2022) (quoting *Skilling v. United States*, 561 U.S. 358, 381 (2010)); *see also id.* ("Notorious crimes are 'almost, as a matter of necessity, brought to the attention' of those informed citizens who are 'best fitted' for jury duty." (quoting *Reynolds v. United States*, 98 U.S. 145, 155-56 (1879))). Accordingly, where a criminal case garners pretrial publicity, the normal course is to use voir dire to identify jurors who may not

be impartial because of their exposure to it.  *See id*. at 1034-35 (affirming district court's jury selection process with respect to weeding out jurors biased by pretrial publicity in the Boston Marathon bombing case as "both eminently reasonable and wholly consistent with this Court's precedents"); *United States v. Haldeman*, 559 F.2d 31, 64-71 (D.C. Cir. 1976) (finding voir dire adequate in Watergate prosecution to find impartial jurors who had not been unduly influenced by pretrial publicity of the scandal).

It is only in the "extreme case," where a conviction is "obtained in a trial atmosphere that [was] utterly corrupted by press coverage" of the defendants, their alleged crimes, or case that courts find voir dire inadequate to protect against publicity.  *Skilling*, 561 U.S. at 378-81.  The Supreme Court has admonished, however, that its decisions finding such presumptive prejudice from publicity "'cannot be made to stand for the proposition that juror exposure to . . . news accounts of the crime . . . alone presumptively deprives the defendant of due process.'  Prominence does not necessarily produce prejudice."  *Id*. at 380-81 (quoting *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975))).

The Defendant claims in his motion that the publicity around the Committee's hearings gives rise to a presumption of prejudice that only can be remedied through a continuance.  But the limited circumstances in which courts have found presumptive prejudice to exist bear no resemblance to the Defendant's; they involve intense and targeted pretrial publicity focused on the defendants at issue and their alleged crimes in particular.  In *Rideau v. Louisiana*, after being arrested for bank robbery, kidnapping, and murder, the defendant was interrogated by police, who made a film recording of the interview and the defendant's admissions.  373 U.S. 723, 724 (1963).  The film was then broadcast on a local television station repeatedly over the course of three days, and three members of the defendant's petit jury stated during voir dire that they had seen it at least

2

once. *Id*. at 724-725. The Court determined that it was a denial of the defendant's due process to deny his counsel's request to change venue from the same community where the film had been aired. *Id*. at 726 ("For we hold that it was a denial of due process of law to refuse the request for a change of venue, after the people of Calcasieu Parish had been exposed repeatedly and in depth to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged."). In *Sheppard v. Maxwell*, the defendant was accused of bludgeoning to death his pregnant wife. 384 U.S. 333, 335-36 (1966). There was then intense pretrial publicity centering on the defendant as the prime suspect, but also out-of-control publicity of the trial itself. *Id*. at 354-355 ("While we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone . . . [t]he fact is that bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial, especially Sheppard.").

By contrast, the Court refused to find presumptive prejudice in *Skilling* because the defendant's case, arising out of the Enron fraud scandal, did not garner the type of extreme publicity addressed in *Rideau* or *Sheppard*. 561 U.S. at 385. For instance, the *Skilling* Court noted that, "although news stories about Skilling were not kind, they contained no confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." *Id*. at 382-83.

Similarly, in *United States v. Haldeman*, the D.C. Circuit found that the publicity around the Watergate scandal did not warrant a lengthy continuance of trial for Watergate perpetrators where, the publicity, "although massive, was neither as inherently prejudicial nor as unforgettable as the spectacle of Rideau's dramatically staged and broadcast confession." 559 F.2d at 61. The court continued, "It is true that some of the pieces contained in the extensive collection of articles

gathered by appellants are hostile in tone and accusatory in content. The overwhelming bulk of the material submitted, however, consists of straightforward, unemotional factual accounts of events and of the progress of official and unofficial investigations. In short, unlike the situation faced by the [Supreme] Court in *Rideau*, we find in the publicity here no reason for concluding that the population of Washington, D. C. was so aroused against appellants and so unlikely to be able objectively to judge their guilt or innocence on the basis of the evidence presented at trial that their due process rights were violated by the District Court's refusal to grant a lengthy continuance or a change of venue prior to attempting selection of a jury." *Id*. at 61-62.

As discussed below, far from being presumptively prejudicial, the pretrial publicity that the Defendant cites in his motion is not even about him, let alone about the alleged criminal conduct charged in this case—the Defendant's willful failure to comply with a subpoena. The publicity he cites is about the Committee and the substance of its investigation into who participated in and facilitated the breach at the U.S. Capitol on January 6, 2021. The Defendant makes no showing of potential, let alone presumptive, prejudice from it that requires a continuance. And he nowhere explains why the normal course of voir dire will not be sufficient to ensure him an impartial jury. The publicity he cites does not even come close to the level addressed in *Skilling* or *Haldeman*, where the courts found the normal process of voir dire adequate to address publicity, much less *Rideau* and *Sheppard*. His motion should be denied.

II.     **Neither the Committee's Hearings, Nor News Coverage of Them, Have Focused on the Defendant or Generated Prejudicial Pretrial Publicity Regarding Him.**

The Defendant's motion gives the false impression—through general statistics about the volume of viewership of the Committee's hearings and overall media coverage of the Committee's hearings—that all of the Committee's hearings and the attendant media coverage is about him. The truth is just the opposite—the Defendant has barely been mentioned in the Committee's

4

hearings or the resulting media coverage of them. Moreover, the hearings are not focused on the alleged criminal conduct with which the Defendant is charged such that the hearings themselves or coverage of them fall within the scope of the kind of publicity giving rise to a presumption of prejudice.

To date, the Committee has held seven hearings, spanning more than 14 hours in total.[1] The Defendant was not mentioned at all during five of them, and was featured only in passing in the Committee's June 9 and June 21, 2022, hearings—for a combined total of less than 30 seconds. These are the two instances that the Defendant cites in his brief, couching them in the language of "for instance," and "[a]nother example," ECF No. 88 at 11, to suggest that they are just two of many more such instances, when in fact they are the only ones.

But a closer look even at these two brief mentions of the Defendant by the Committee demonstrate that they do not call prejudicial attention toward the Defendant with respect to his criminal trial, and are nothing like the dramatic cases that the Defendant attempts to marshal in support of his motion. First, in its June 9, 2022, hearing, the Committee's ranking minority member, Rep. Liz Cheney, mentioned the Defendant's podcast as part of her opening statement. In particular, Rep. Cheney said, "And on the evening of January 5th, the President's close advisor, Steve Bannon, said this on his podcast." The Committee then played a clip of the Defendant speaking three sentences on his own media program—"All Hell is going to break lose tomorrow. Just understand this. All Hell is going to break loose tomorrow"—without further commentary.

---

[1] *See* https://january6th.house.gov/legislation/hearings (last accessed July 1, 2022) (linking to videos of Committee hearings on July 27, 2021; June 9, 2022; June 13, 2022; June 16, 2022; June 21, 2022; June 23, 2022; and June 28, 2022).

*See* June 9, 2022, Hearing, at 51:42-52:01.[2] Rep. Cheney's neutral introduction to the Defendant's own statement and the Defendant's statement include no reference to the crimes for which the Defendant has been charged or commentary on the Defendant's commission of the charged offense. And at the Committee's hearing on June 21, 2022, as part of her concluding comments during a hearing that spanned nearly three hours on topics wholly unrelated to the Defendant, Rep. Cheney said, "Others, like Steve Bannon and Peter Navarro, simply refused to comply with lawful subpoenas. And they have been indicted." June 21, 2022, Hearing at 2:44:30-2:44:37.[3] The Defendant makes no argument about how this factual statement regarding his non-compliance and his subsequent indictment will result in the potential jury being "so aroused against" him that he will not receive a fair trial. *Haldeman*, 559 F.2d at 62.

Further, while the Defendant's motion describes media coverage of the Committee's hearings overall, the Defendant does not cite a single media article covering the Committee's hearing that mention the Defendant. That is because there are none. In fact, the Defendant and his attorneys have caused far more pretrial publicity about this case than the Committee hearings have by holding press conferences at the courthouse and speaking with reporters. *See, e.g.*, *"Misdemeanor from Hell": Watch Bannon Speak Out After He's Released*, CNN, Nov. 15, 2021 (Defendant gave post-court press conference in which he promised to make his case "the misdemeanor from Hell" and "go on offense")[4]; *Steve Bannon Digs Into Roger Clemens' Playbook*

---

[2] *Available at* https://www.youtube.com/watch?v=hZ0yNe3cFx4 (last accessed July 1, 2022).

[3] Available at https://www.youtube.com/watch?v=xa43_z_82Og&t=9878s (last accessed July 1, 2022).

[4] *Available at* https://www.youtube.com/watch?v=-diE7kCCidE (last accessed July 1, 2022).

6

*to Try to Beat Congress,* Daily Beast, June 13, 2022 (reflecting interview with Defendant's counsel about subpoenas Defendant issued to Members and staff of U.S. House of Representatives)[5]; *Judge Rejects Bannon's Effort to Dismiss Criminal Case for Defying Jan. 6 Select Committee*, Politico, June 15, 2022 (Defendant gave post-hearing press statement in which he said, "I look forward to having Nancy Pelosi, and little Jamie Raskin, and shifty Schiff in here at trial answering questions under my . . . under the . . . tough thing about my lawyers.").[6]  In fact, contemporaneous with the filing of his Motion to Continue, the Defendant was generating his own media coverage, on his own podcast, of the Committee's hearings.  *See, e.g.*, *David Bossie: The Jan. 6 Committee Hates Trump More Than They Love This Country*, WarRoom, June 29, 2022 (Defendant's podcast episode focusing on Committee hearing at which former White House aide Cassidy Hutchinson testified).[7]  In sum, the Defendant can point to no media coverage regarding him caused by the Committee's recent hearings, while the media record that does exist is replete with the Defendant's and his attorneys' own efforts to garner media attention.

Finally, the Defendant requests a continuance until at least October 15, 2022, but this proposed timeline suggests the Defendant understands that the Committee's public activity has no impact on publicity relating to his criminal trial because, as the Defendant is likely aware from his review of reporting on the Committee's activities, the Committee reportedly plans to continue holding hearings and ultimately release a public report regarding it findings and recommendations

---

[5] *Available at* http://www.thedailybeast.com/steve-bannon-digs-into-roger-clemens-playbook-to-try-to-beat-congress (last accessed July 1, 2022).

[6] *Available at* http://www.politico.com/news/2022/06/15/judge-rejects-bannons-effort-todismiss-criminal-case-for-defying-jan-6-select-committee-00039888 (last accessed July 1, 2022).

[7] *Available at* https://warroom.org/2022/06/29/dave-bossie-the-jan-6-committee-hates-trump-more-than-they-love-this-country/ (last accessed July 1, 2022).

later this year. And the Congress of which the Committee is a part does not conclude until January 2023. The Defendant has been trying to delay his criminal trial from the moment he was indicted. Two weeks ago, he claimed he was going to file a motion to continue so that he could "make a record" relating to his legislative purpose claims of all the "television press conferences held by Mr. Schiff and Raskin and this one and the other one, about the importance of criminal charges here, and all sorts of things exposing what happened, and things that exactly the *Mazars* case said are not proper legislative purposes." 6/15/22 Mot. Hrg., Tr. at 140:1-9. Now he claims he needs a continuance for pretrial publicity. The Defendant is not concerned with pretrial publicity—his repeated efforts to get it himself make that clear—he is concerned with avoiding accountability for his crime.

**III.    The Cases the Defendant Cites are Inapposite and Demonstrate Why No Continuance is Merited Here.**

In addition to the inapposite cases of *Rideau* and *Sheppard*, the Defendant also cites to *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952), a case from which he attempts to draw support because it concerns a matter in which congressional hearings generated prejudicial pretrial publicity. But *Delaney* involved parallel criminal and congressional investigations into the defendant, Denis W. Delaney, who had been the Collector of Internal Revenue for the District of Massachusetts, and his alleged crimes. *Id*. at 109. After Delaney was criminally indicted, a congressional committee began a series of public hearings "focused upon alleged derelictions of appellant Delaney." *Id*. at 110. The press coverage—specific to Delaney—was intense and focused on the committee's investigation and findings relating to the very crimes for which Delaney was to be tried. *Id*. at 111 ("The newspaper publicity was characterized by flamboyant, front-page headlines in large, heavy type, covering colorful feature stories emphasizing the more striking aspects of the testimony. This was supplemented by radio and television exploitation of

8

the same material."). As described above, however, the Defendant's case could not be more different from Delaney's—because the congressional hearings in question are not about or focused on him or his contempt, and neither is the media coverage surrounding them.

Finally, the Defendant attempts to analogize to another case in this District, *United States v. Ethan Nordean et al.*, Case No. 21-cr-175 (TJK), in which the Government consented to the request of the defendants to a continuance from August to December 2022. *See* Gov't Reply in Support of Mot. to Continue, *id.*, ECF No. 414. But there are no similarities between this case and that one. For starters, the defendants in that case are charged with crimes in furtherance of the January 6 attack on the Capitol, unlike the Defendant. *See* Third Superseding Indictment, *id.*, ECF No. 380 (charging defendants with a seditious conspiracy, conspiracy to obstruct an official proceeding, obstruction of an official proceeding, and other crimes connected to their planning and execution of their conduct on January 6, 2021). The *Nordean* defendants' alleged criminal conduct, for which they will be tried, has been an explicit focus of the Committee's investigation. *See* ECF No. 414 at 3 ("[A]s identifiable leaders of the Proud Boys organization, the defendants in this case have been uniquely featured in the hearings of the Committee."). And, significantly, a core reason for the Government's consent to a continuance in that case is that Committee transcripts believed to discuss the very conduct to be presented at trial, including a transcript of at least one named defendant's testimony before the Committee, have not yet been released publicly by the Committee but may be soon. *Id*. at 3. Here, the Defendant is not charged with a crime for his conduct on January 6, 2021; he has barely been mentioned in the Committee's hearings; and there are not unique issues related to material in the Committee's possession that could become public during the Defendant's trial.

Moreover, while the Defendant focuses on one case in which a continuance was sought in relation to the Committee's hearings, another court in this District has already determined that mere coverage of the Committee's proceedings, in general, are not grounds for a continuance. *See* Order, *United States v. Anthony Williams*, Case No. 21-cr-377 (BAH), ECF No. 108 (June 23, 2022) ("Although the Committee Hearings are garnering public attention and appear to be continuing an investigation into the events of January 6, *writ large*, this is not sufficient reason, at the eleventh hour, to delay *this* defendant's trial." (emphasis in original)) (denying motion to continue trial filed one week before trial was to begin). And, in that case, the defendant was charged with participating in the January 6th attack—the actual focus of the Committee's hearings. *See* Indictment, *id.*, ECF No. 13.[8]

## IV. Conclusion

The Defendant has provided no support for his contention that the Committee's hearings are generating presumptively prejudicial pretrial publicity regarding him or his alleged contempt

---

[8] The Defendant notes that he "consents to the tolling of the Speedy Trial Act." ECF No. 88 at 2. But the Defendant's willingness to toll time under the Speedy Trial Act, 18 U.S.C. § 3161, is insufficient cause to do so. Defendants cannot "waive" application of the Speedy Trial Act. *Zedner v. United States*, 571 U.S. 489, 500 (1976). That is because the Act does not only "protect a defendant's right to a speedy trial," it also protects "the public interest." *Id.* at 501. As the D.C. Circuit observed in *Haldeman*, "the Government generally has a substantial interest in avoiding disruptions of a court's calendar and in having guilt or innocence promptly adjudicated." 559 F. 2d at 83. Accordingly, for a defendant to secure a continuance and exclude time under the Speedy Trial Act, the request must "fit within one of the specific exclusions set out in [§ 3161(h)]," *Zedner*, 547 U.S. at 500, such as the unavailability of an essential witness, a defendant's physical inability to stand trial, etc. Apart from his frivolous pretrial publicity claim, the Defendant asserts no basis to exclude time under the Speedy Trial Act. Instead, he merely cites his willingness—perhaps his eagerness—to dispense with the Speedy Trial Act's requirements. *Cf. id.* at 502 ("Allowing prospective waivers would seriously undermine the Act because there are many cases—like the case at hand—in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interests."). The public's interest in promptly resolving the charges against the Defendant far outweighs his mere willingness to exclude time from the Act to obtain a later trial date.

crimes. To the extent there is any pretrial publicity about the Defendant and his crimes, or about these proceedings, that risk prejudice to the Defendant in obtaining impartial jurors, it can be addressed by conducting a thorough voir dire process on July 18, 2022, the date trial is scheduled to commence. The Defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Amanda R. Vaughn
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov