IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal No. 21-670 (CJN) |
| v. | : |
| STEPHEN K. BANNON, | : |
| *Defendant*. | : |

**OPPOSITION TO GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

Defendant Stephen K. Bannon, by and through undersigned counsel, files this Opposition to the United States' Omnibus Motion In Limine, and in support thereof states as follows:

**Summary Of Argument**

The Government feels that it must remind this Court of the rules of evidence so as to "maintain proper order and keep the jury focused." [Doc. 85 at 17]. What purports to be a primer on evidence, however, reflects little understanding of the adversary nature of a criminal trial, or the constitutional guarantees – such as confronting witnesses regarding bias – that are essential to a fair trial. The blanket rulings sought by the Government are inconsistent with the rights guaranteed to every defendant. The Government's motion continues its effort to deny Mr. Bannon the right to defend himself at trial factually and through the tools our Constitution guarantees. We believe that the Court is well-positioned to make evidentiary determinations on relevance at trial. We also believe that this Court is well-equipped to make evidentiary and instructional rulings at trial that would avoid the admission of evidence that would prejudice or confuse the jury. For these reasons, the Government's motion in limine should be denied.

1

## ARGUMENT

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Crim. P. 401. All relevant evidence is admissible, except as otherwise provided by the United States Constitution, by Act of Congress, or by applicable rule. Fed R. Crim. P. 402.

### Fears Of A Circus Atmosphere Are Unfounded

The Government is concerned about a "circus atmosphere at trial." [Doc. 85 at 1 – 3] This fear is baseless. As the Government well knows, Mr. Bannon has been present for numerous pretrial hearings. At these hearings – although some matters were closely contested – decorum prevailed. The same will hold true at trial.

### The Constitution Requires That Mr. Bannon Be Permitted To Confront The Witnesses Against Him On Bias

The Government makes the meritless argument that Mr. Bannon should not be allowed to test the credibility of the Members of Congress and staff – and who the prosecutors have characterized as "complainants"[1] – by questioning them about political motivations that affected the actions they took that led to this prosecution. [Doc. 85 at 5 – 7]. The Government's request should be denied, because the jury must be allowed to hear evidence that bears on witness credibility.

"The Sixth Amendment's Confrontation Clause provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Sixth Amendment "guarantees a

---

[1] *See* Hearing Tr. March 16, 2022, at 26 (AUSA stated that Congress is "essentially, the complainant in this case").

2

defendant the right to cross-examine the witnesses against him or her, and it is 'the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Wilson*, 605 F.3d 985, 1003, 390 U.S. App. D.C. 368 (D.C. Cir. 2010) (citation omitted); *see also Brookhart v. Janis*, 384 U.S. 1, 3 (1986) (finding that cross-examination is "the principal means by which the believability of a witness and the truth of his testimony can be tested."). Indeed, the Supreme Court has explained that defendants should be "permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness" and that denying defendants 'the right of effective cross-examination . . . would be constitutional error of the first magnitude[.]" *Davis v. Alaska*, 415 U.S. 308, 318 (1974) (citations and internal quotation marks omitted); *see also Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006) (explaining that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (quoting *Crane v. Kentucky,* 476 U.S. 683, 690 (1986)).

Cross-examination is an invaluable tool in helping jurors determine a fact in issue at a trial because it helps them to determine the weight to afford to each witness's testimony. *Douglas v. Alabama*, 380 U.S. 415, 419 (1965) (jurors are entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on testimony that purports to provide 'a crucial link in the proof . . . of petitioner's act.').

A witness's partiality and motive for testifying is always relevant to the credibility of that witness. Probing the motivation of a witness for testifying is an important aspect of the right to confrontation. *Davis*, *supra*, 415 U.S. at 316-17 ("[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-

examination."). "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Id*. at 316 (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)); *see also* 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evid. § 607.04[2][b] (Joseph M. McLaughlin, ed., Matthew Bender 4th ed. 2013) ("The exposure of a witness's motivation in testifying is so significant that in a criminal case, curtailment of this right may amount to a denial of the defendant's Constitutional right to confrontation of witnesses or due process") (footnotes omitted).

As the Supreme Court explained, bias evidence is always relevant under Federal Rule of Evidence 401 because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 51 450 (1984) (holding that proffered testimony regarding prosecution witness's gang membership sufficed to show potential bias in defendant's favor, and such extrinsic evidence is admissible to show bias). Accordingly, the ability of a defendant to question witnesses about potential bias is a "proper and important function of the Constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17 (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)); *see also U.S. Foster*, 986 F.2d 541, 44 (D.C. Cir. 1993).

A witness's membership in a certain group is a proper subject of cross-examination because it is probative of a witness's adoption of certain values and beliefs, and the strength of those values and beliefs. *Abel*, *supra*, 469 U.S. at 45 (a witness's membership in a group, even without proof that the witness has personally adopted its tenets, is "certainly probative of bias."). As explained by the Court in *United States v. Foster*, 986 F.2d 541 (D.C. Cir. 1993):

> This is not so much a matter of showing a witness to be lying. An effective trial lawyer can often manage to leave the jury with the impression that the witness is too caught up in his own view, his confusions, his own particular slant on things, that it simply does not matter whether the witness believes his own testimony.

*Id.* at 544; *see also Abel*, *supra*, 469, U.S. at 46 (bias may be induced by many factors, including a witness' like, dislike, or fear of a party, or by the witness' self-interest).

It is difficult to fathom the Government's position that politics are irrelevant to the issues in this case. *See* Doc. 85 at 3 ("the Defendant has attempted to make this case and the issues in it about politics, not the law and the facts"). Criminal trials do not occur in vacuums, and Mr. Bannon's trial should be no exception. Context matters. Mr. Bannon is a former advisor to President Donald Trump, a Republican. The subject of the Select Committee's inquiry is the January 6, 2021, attack on the United States Capitol, which followed a contested Presidential election. The Select Committee is composed primarily of Democrats. In violation of the Select Committee's authorizing resolution, only two of the Committee's nine members are Republicans. These Republicans were appointed by the Democratic Speaker of the House without consultation from the (Republican) Minority Leader – also in violation of the Select Committee's authorizing resolution – and have each publicly expressed their disagreement with Mr. Bannon's particular brand of conservatism on numerous occasions.  The Select Committee refused to engage in the constitutionally mandated accommodation process with Mr. Bannon, in contrast to its dealings with other subpoenaed witnesses.  Mr. Bannon must be permitted to present evidence on this.

Compounding this obvious bias, some Members of the Select Committee have created their own brand of bias – by entering into book deals that create a financial and reputational bias. They have a stake in seeing to it that the version of events they wrote about in their books become the official version of events. Select Committee Members were responsible for referring the resolution on contempt to the full U.S. House of Representatives.  Four days before that vote took place,

5

President Biden, a Democrat, publicly stated that he "hope[d] the committee goes after" aides of President Trump who did not respond subpoenas from the Select Committee.[2] The subsequent full-House vote to refer Mr. Bannon to the U.S. Attorney's Office for prosecution was largely along party lines.[3] Most recently, of course, the Select Committee began a media campaign designed to influence the public to the maximum extent possible and to use these hearings, run by a television executive, expressly for political purposes."[4]  For these reasons, the political ideologies and affiliations of the witnesses are appropriate topics of cross-examination in this case because such information is relevant to the jury's determination of whether a witness's bias, ulterior motive, or personal animus undermines their credibility.

## Testing Investigatory Tactics Is Always Fair Game

The Government seems to argue that Mr. Bannon wants the jury to "decide" whether the prosecutors or other Government actors committed misconduct. [Doc. 85 at 7] Not so. The jury will be asked to make no such decision. However, the jury must be allowed to hear about the criminal investigation. Evidence about how the investigation was conducted is relevant to the jury's determination as to whether the information obtained in that investigation is complete and

---

[2] Amy B. Wang, *Biden says Justice Department should prosecute those who refuse Jan 6 committee's subpoenas*, THE WASHINGTON POST (Oct. 15, 2021) https://www.washingtonpost.com/politics/2021/10/15/biden-says-justice-department-should-prosecute-those-who-refuse-jan-6-committees-subpoenas/.

[3] Claudia Grisales, *The House votes to hold Steven Bannon in Contempt for defying a subpoena, NPR* (Oct. 21, 2021 4:28 P.M.) https://www.npr.org/2021/10/21/1048051026/u-s-house-approves-criminal-contempt-referral-for-steve-bannon.

[4] Annie Karni and Luke Broadwater, *Jan. 6 Hearings Give Democrats a Chance to Recast Midterm Message (June 7, 2022) (with quotes from Select Committee members and others about their political goals).* https://www.nytimes.com/2022/06/07/us/politics/jan-6-hearings-tv-democrats.html

reliable. *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995); *Carriger v. Stewart,* 132 F.3d 463, 481 (9th Cir. 1997); *United States v. Hanna,* 55 F.3d 1456, 1460 (9th Cir. 1995).

In *United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000), the Ninth Circuit held that the district court erred when it instructed the jury not to consider defects in the government's investigation, noting that "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information." *Id.* at 46.

At every stage of this case, the investigators have over-reached. The prosecutors may want to pretend to ignore it.[5] But Mr. Bannon has the right at trial to test the evidence against him at trial, and how it was obtained. This necessitates an examination of the investigation through the adversary process.

**Where Evidence At Trial Is Based On Acts Of**
**Material Witnesses Who Are Subpoenaed Yet Fail To Appear,**
<u>**The Jury May Consider That In Assessing The Reliability Of The Evidence**</u>

The Government argues that if subpoenaed congressional witnesses fail to appear for trial, that must be kept from the jury. [Doc. 85 at 8]. It is hard to understand the logic. The jury will be asked to determine issues based upon the actions and perhaps even the communications (if not excluded, as many will be, because they are themselves or contain within them hearsay statements inadmissible under Fed. R. Evid. 801) of congressional members and staff. If the witnesses who took the actions and engaged in the communications testify at trial, they can be tested on cross-

---

[5] This issue was referenced at the last hearing, as follows: "I do continue to have serious issues with how the government treated the situation of Mr. Bannon's counsel and also how the government does not appear to have any issue with its conduct." Hearing Tr., June 15, 2022, at 129 – 130.

examination. If they are under subpoena and fail to appear, then all congressional evidence must be excluded. We expect to move for dismissal on that basis, if necessary. But if that motion is not fully granted, the jury must be able to hear about their failure to appear pursuant to subpoena, so that that can be weighed in assessing the other evidence at trial.

The Government's reliance on *United States v. Barnett*, 890, F.2d 1233 (D.C. Cir. 1989) is misplaced because the defense does not intend to argue to the jury that the Government had the peculiar power to secure the testimony of the Select Committee witnesses and failed to do so. [*See* Doc. 85 at 8]. The defense simply thinks that it is proper for the jury to hear that the Select Committee witnesses in this case were validly served with trial subpoenas and invoked privilege to avoid providing documents and testimony in a criminal case in which they are the purported complainants. Therefore, the cases cited by the Government on this issue are inapposite to Mr. Bannon's case.

Furthermore, if the subpoenas in Miscellaneous Case No. 22-60 are quashed pursuant to the Speech or Debate Clause, Mr. Bannon should not be precluded from arguing that the Government's assertion of privilege mandates dismissal, or, at the very least, that the Government's evidence should be limited accordingly. As set forth in Mr. Bannon's Opposition to the Movants' Motion To Quash in Miscellaneous Case No. 22-60, House General Counsel's Motion To Quash creates a fundamental conflict between Mr. Bannon's Fifth and Sixth Amendments rights to compulsory process and to present a defense at trial, and the Movants' Speech or Debate Clause privileges. *See* Opp. To Mot. To Quash, *In re Non-Party Subpoenas,* No. 22-MC-60-CJN (D.D.C. June 27, 2021), ECF 1 at 3. Because Movants set in motion the prosecution of Mr. Bannon, their assertion of privilege must yield to the due process and liberty interests of Mr. Bannon. If the Court grants Movant's Motion To Quash, then the only next step

8


consistent with due process would be to either exclude all congressional evidence at Mr. Bannon's trial or dismiss the charges entirely to preserve Mr. Bannon's Fifth and Sixth Amendment Rights. *Id.* Such an argument is relevant in Mr. Bannon's case and is also supported by decades of Supreme Court precedent holding that the Government "can invoke its evidentiary privileges only at the price of letting the defendant go free." *Id.* (citing *United States v. Reynolds*, 345 U.S. 1, 12 (1953)).

The Supreme Court has held, for instance, that a criminal action must be dismissed when the government, on the grounds of privilege, elects not to produce documents relevant and material to a government witness's testimony. *Jenks*, 353 U.S. at 657; *Id.* at 670-71 (holding that it is "unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."); *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (when disclosure of informer's identity, or of contents of his communication, is relevant and helpful to criminal defendant, or is essential to a fair determination of a cause, the trial court may require disclosure and, if government withholds the information on grounds of privilege, dismiss the action); *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) (dismissal of prosecution for making false statements to government about CIA activities in which defendant was involved because nature of defendant's assignments was central to the charges against him and government's assertion of State Secrets privilege with respect to same deprived defendant of his right to present a meaningful defense).

The court's holding in the *Rainey* case is also illustrative on this issue. *See United States v. David Rainey*, Crim. No. 12-CR-00291-KDE-DEK (E.D. La. Jul. 14, 2015). There, the district court dismissed an obstruction of Congress charge against a *Deepwater Horizon* executive because, having found that the subpoenaed Members of Congress had a valid Speech or Debate privilege immunizing them from compelled testimony, the court found that dismissing the charges

was the only way to preserve Mr. Rainey's right to a fair trial. *Id.*, ECF No. 510 at 29:17-30:1; *see also* Brian M. Heberling, *Congressional Gamesmanship Leads To An Acquittal in Deepwater Horizon Case: United States v. David Rainey: A Case Study*, 20 BERKELEY J. CRIM. L. 260, 262 (Fall 2015) (noting that one of the key takeaways from the *Rainey* decision is that there is only one United States when it comes to a criminal prosecution, rendering the consequences of a privilege assertion by Members of Congress attributable to the Executive Branch). Simply put, it would be antithetical to the Sixth Amendment to allow the Government to use the subpoenaed Select-Committee witnesses' invocation of legislative immunity as both a sword and a shield.

## Evidence About The Investigation Of

## This Misdemeanor Is Relevant, Not Prejudicial

The Government argues that no evidence should be introduced or arguments made about the steps taken by the investigators and prosecution team. They rely on authority where counsel seeks a verdict based upon sympathy because of the punishment involved, or arguments that suggest a crime was trivial. Here, as detailed above, the steps taken by the investigators and prosecution team are highly relevant for the jury, which must assess the reliability of evidence in light of how the investigation was conducted.

On the latter issue, in the event that any evidence is introduced that potentially would confuse or prejudice the jury on this issue, the jury can be instructed that "[t]he question of possible punishment of the defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way." *See* Redbook Instruction No. 2.505. However, Mr. Bannon believes that the logical extension of the decisions in the line of cases following *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013) and he respectfully maintains that he ought to be permitted to inform the jury that the

Government contends that Mr. Bannon must be sentenced to a mandatory prison term if there is a conviction.  *See* 2 U.S.C. § 192.[6]

## The Meadows And Scavino Declinations Bear On Whether
## USDOJ Has Adhered To Its Official Published Policy In This Prosecution

The issue of prior official writings of the Department of Justice was fully address by the parties in the briefing on Defendant's Motion To Dismiss The Indictment. [*See* Doc. 58]. While this Court declined to find as a matter of law that the indictment should be dismissed on that basis, the facts pertaining to prior official are essential evidence that go to the elements of the offense, as well as to the defense theory of the case.

The defense has sought discovery about the investigation into two other Select Committee subpoena recipients similarly situated to Bannon who were referred to the U.S. Attorney's Office for prosecution under 2 U.S.C. § 192. (The Government has refused to produce the requested documents, despite a prior Court order that the defense believes obligates them to do so). The referral came after a roughly party-line vote by the U.S. House of Representatives. Sound familiar? The difference is that the U.S. Attorney's Office declined to prosecute – in accordance with official U.S. Department of Justice policy and official published writings. We are entitled to that information. And, because it bears on the elements of this offense or our defenses, the jury is entitled to hear it, too. The evidence will most certainly be relevant in determining whether the Government has met its burden of proof in this case.

---

[6] Daniel Epps and William Ortman, *The Informed Jury*, 75 Vand. L. Rev. 823 (2022); Rachel E. Barkow, *Recharging the Jury: The Criminal Jury's Constitutional Role in an Era of Mandatory Sentencing*, 152 U. Pa. L. Rev. 33.

**Statements Of Counsel Are Not Evidence**

The Government complains that defense counsel have gray hair. They seek a blanket restriction on any statements by counsel reflecting their life experience. [Doc. 85 at 10 -]. No such order would be appropriate. Instead, the Court should give the standard Redbook Instruction 2.105 that has been submitted as agreed by the parties, which states, in pertinent part, that "[t]he statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence." Moreover, as the transcript of the June 15, 2022 Hearing reflects and as Government counsel well knows, the reference to experience with entrapment by estoppel [Doc. 85 at 10] was made solely in the context of addressing Government counsel's regularly occurring insulting and patronizing attacks in each of the Government's submissions, notwithstanding its own apparently evolving understanding of the defense [June 15, 2022 Hearing Tr. at 31].

**At This Stage, Evidence Bearing On The Elements Of
The Offense, And Defenses, Are Fact Questions For The Jury**

The Government seems to think that any issue raised in a motion pre-trial is a legal issue that is off-limits at trial. Specifically, the Government argues that the Defendant may not present evidence or argument that: (1) goes to the element of the offense pertaining to the validity of the subpoena and its issuance in accordance with the authority granted to the Select Committee by the U.S. House of Representatives [Doc. 85 at 11 – 14]; and (2) goes to the issue of whether Mr. Bannon willfully made default (by his actions after being informed that former President Donald J. Trump had asserted executive privilege). While the facts and law were fully briefed at the motions stage – and thus will not be repeated here – that does not mean they must be sealed away in a box. The Government cites several cases that have already been discussed at length by the parties in multiple filings. But they totally mis-read the one case that matters most on the question

of whether the jury ultimately gets to hear evidence that goes to the elements of the crime and defenses, *United States v. Gaudin*, 515 U.S. 506 (1995). It would have this Court relieve it of its Constitutional duty to prove every element of the crime charged to the jury's satisfaction beyond a reasonable doubt. The Court is well aware of the principles involved in *Gaudin;* so out of respect for the Court and counsel we will not repeat them here.[7]

Dated: July 1, 2022

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

   /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

   /s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

*Counsel for Defendant Stephen K. Bannon*

---

[7] *See* Hearing Tr., June 15, 2022, at 9 ("And we know, from Justice Scalia's opinion in *Gaudin*, that pertinency, which used to be a judge question, is actually a question for the jury. And at least the background, very strong background, principle is that elements of the offense go to the jury.").

13


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of July 2022, a copy of the foregoing Opposition to United States' Omnibus Motion In Limine was served *via* the Court's CM/ECF system on registered parties and counsel.

    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 21-670 (CJN) |
| v. : | |
| STEPHEN K. BANNON, : | |
| *Defendant*. : | |

### ORDER

Now upon consideration of the United States' Omnibus Motion In Limine, the Defendant's Opposition, the Reply, and the entire record in this case, it is hereby **ORDERED** that the Government's Motion is **DENIED**.

**SO ORDERED.**

_____
Hon. Carl J. Nichols
*United States District Judge*

Dated: