IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| *Defendant*. | : | |

### REPLY IN SUPPORT OF MOTION TO CONTINUE TRIAL

Defendant Stephen K. Bannon, through his undersigned counsel, respectfully files this Reply in support of his Motion To Continue Trial, and states as follows:

The Government opposes a continuance because the Select Committee hearings "have almost nothing to do with" Mr. Bannon. [Doc. 93 at 1].[1] Is the prosecutors' playbook *The Prince* or *The Little Prince*? Are they being disingenuous or are they in another world?[2] The Government wants the Court, in considering whether the jury pool has been exposed to pretrial publicity, to limit its review to the specific times when Mr. Bannon was featured during the Select Committee hearings. This ignores the cumulative effect of Select Committee coverage in the news and Internet media.

After each Select Committee hearing, there were news broadcasts and re-broadcasts across the full range of media. Mr. Bannon was specifically mentioned in these broadcasts according to

---

[1] If they had taken that position from the start, then none of us would be here.

[2] *Compare* NICCOLO MACHIAVELLI, THE PRINCE ch. 18 (George Bull trans., Penguin Classics 2003) (1532) (leader should only keep his word when it suits his purpose) *with* ANTOINE DE SAINT-EXUPERY, The Little Prince (Irene Testot-Ferry trans., Wordsworth Editions 2018) (1943) (protagonist visits earth and has fantastical impressions of the real world).

data captured by the broadcast media monitoring platform TVEyes, which quantifies the exponential reach of the media (but does not even include the additional information presented to the public via the Internet, which is described in our initial Motion). Attached to this Reply we have included as Exhibit 1 the relevant TVEyes data. [Ex. 1] This data illustrates, for instance, that in the 24 hours after the first Select Committee hearing, there were 290 mentions of the name "Steve Bannon" on broadcast television, cable television, and radio, which reached a potential national viewership of more than 25 million people. *Id*. at 1.

Select Committee members are trying to drive home a message to the public – that President Donald J. Trump and his close advisors bear responsibility for the attack.[3] Their other public message is that close advisors to President Trump have not cooperated with the Select Committee.[4] This case involves whether one of President Trump's close advisors cooperated with the Select Committee.

---

[3] "The passing of H. Res. 730 [Recommending that the House of Representatives find Stephen K. Bannon in contempt of Congress] symbolizes congressional intent to discover who caused, or contributed, to the Jan 6 insurrection." Rep. Bennie Thompson (@BennieGThompson), TWITTER (Oct. 21, 2022, 4:24 PM), https://twitter.com/BennieGThompson/status/1451283261007831048?s=20&t=CDIPILJT06D1hMm72GosgA; *see also* Alia Shoaib, *The January 6 House committee poised to subpoena Trump team who met at a DC hotel 'war room' in the days before the Capitol Attack, says reports*, BUSINESS INSIDER (Nov. 7, 2021, 8:03 AM), https://www.businessinsider.com/jan-6-house-committee-trump-meetings-willard-hotel-war-room-2021-11 ("The January 6 House select committee is turning its attention to the Willard hotel 'command center' where Trump allies gathered to discuss plans to subvert the 2020 election results…Meetings involved Trump's former lawyer Rudy Giuliani, former White House strategist Steve Bannon, and conservative legal scholar John Eastman, among other right-wing figures.").

[4] *See* Press Release, Thompson & Cheney on Justice Department Decisions on Contempt Referrals (June 3, 2022), available at https://january6th.house.gov/news/press-releases/thompson-cheney-statement-justice-department-decisions-contempt-referrals; *see also* Press Release, Thompson & Cheney Remarks on Resolution Citing Daniel Scavino, Jr. and Peter Navarro in Contempt of Congress (Apr. 6, 2022), available at https://january6th.house.gov/news/press-releases/thompson-cheney-remarks-resolution-citing-daniel-scavino-jr-and-peter-navarro; Press Release Thompson & Cheney Remarks on Resolution Citing Mark Randall Meadows in Contempt of Congress (Dec. 14, 2021), available at https://january6th.house.gov/news/press-releases/thompson-cheney-remarks-resolution-citing-mark-randall-meadows-contempt-congress; Press Release, Thompson & Cheney Statement on Bannon Indictment (Nov. 12, 2021), available at https://january6th.house.gov/news/press-releases/thompson-cheney-statement-bannon-indictment-0 ("Steve Bannon's indictment should send a clear message to anyone who thinks they can ignore the Select Committee or try to stonewall our investigation: no one is above the law.").

Whether to grant a continuance turns on the particular facts and procedural posture of a case. The Government argues that this Court should be guided by an order by the Chief Judge in *United States v. Anthony Williams*, Case No. 21-cr-377 (BAH). The circumstances there are quite different. The accused was not featured in the Select Committee hearings. The case had been pending trial for 15 months. There were no major outstanding legal issues to be resolved. Most importantly, the accused was not a close advisor to President Trump.

*Williams* supports our request for a continuance. In considering the effect of the Select Committee hearings on a trial date in *Williams*, Chief Judge Beryl A. Howell observed that the leaders of the House Select Committee made clear in the first televised prime-time hearing that it is "behind-the scenes planning going on with the former president and those close to him that is the focus for where accountability lies for what happened on January 6."[5] The Chief Judge went on to state:

> Why isn't that theme actually helpful to this defendant, making him seem like a small cog in bigger political machinations happening behind the scenes?[6]

By contrast, Mr. Bannon's case presents exactly the scenario in which, according to the Chief Judge's reasoning, jury prejudice from the hearings is greatest. According to the Select Committee, Mr. Bannon is involved in the "bigger political machinations happening behind the scenes."[7] Therefore, Mr. Bannon will be prejudiced if he is forced to stand trial in the middle of the highly publicized Select Committee hearings.

---

[5] Spencer S. Hsu and Rachel Weiner, *Judge: Jan. 6 hearings may help defendants shift accountability to Trump*, The Washington Post, June 11, 2022.

[6] *Id*.

[7] *Id*.

The continuance motion asks: is there a compelling reason to proceed to trial in July – where trial would occur in the middle of ongoing congressional hearings and a media blitz about matters that will be on the minds of jurors at trial? The defense request is a short reprieve. Three months, which will still bring the case to trial on a shorter timeline than the average criminal case in this district.

Even if we were not in the middle of a congressional hearing bombardment, and media barrage, there are important reasons to continue trial. Discovery remains outstanding.[8] It is unclear which defense witnesses will comply with their trial subpoenas.[9] In addition, while we expect to be able to offer evidence at trial as to what actually happened – as is appropriate in every criminal trial – the Government has moved for severe restraints on our ability to present a defense in motions that remain unresolved. These issues alone warrant a continuance.

Twelve days before the scheduled start of the trial it is unclear what defenses will be allowed. The parties have filed a joint statement proposing jury instructions. [Doc. 89]. We believe it is essential to a fair trial that Mr. Bannon be allowed to present the defenses of entrapment by estoppel and public authority. But we do not know yet whether these defenses will be allowed. This fundamental information is necessary to crafting an opening statement, preparing for witness examinations and cross-examination, identification of exhibits, and other basic steps necessary to

---

[8] There is a pending motion to compel information – still not fully briefed – regarding documents related to the Meadows and Scavino declinations by the U.S Attorney's Office. [Doc. 86]. These documents are potentially exculpatory, material to Mr. Bannon's defense that pursuant to long-standing U.S. Department of Justice policy, former top Presidential advisors will not be prosecuted under 2 U.S.C. § 192, and subject to the Court's previous order that the Government produce this type of information to the defense. In addition, on June 30, 2022, the Government conducted an interview of a person they have deemed a new witness in this case, who according to the Government was first interviewed on June 29, 2022. [US-002262 – 002271].

[9] A Motion to Quash is pending in Miscellaneous Case No. 22-60 (CJN).

prepare for trial. Under these circumstances, a continuance is needed to provide Mr. Bannon with a fair trial consistent with Fifth and Sixth Amendment guarantees.

On July 5, 2022, the 16 witnesses subpoenaed by the defense filed their Reply in support of their Motion to Quash the subpoenas. [Reply in Support of Mot. To Quash, *In re Non-Party Subpoenas*, No. 22-MC-00060-CJN, ECF 8]. Many of these Movants – who are, in the Government's own words, the "complainants" in this case[10] – have vitally important testimony to provide on key issues in this case, including why no accommodation efforts were accepted, the Select Committee's shifting position on its composition, the real reasons that Mr. Bannon was referred for contempt, among other issues. [*See id.* at ECF 7]. If Movants' Motion to Quash in the Miscellaneous Case is granted, Mr. Bannon will request an opportunity to brief a motion seeking remedial relief in this criminal matter, including dismissal of the charges pursuant to *Roviario* and its progeny. *See Roviario v. United States*, 353 U.S. 53 (1957) (dismissal required where government refused to disclose identity of undercover witness who might be a material defense witness as to whether accused knowingly transported narcotics); *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) (dismissal of prosecution for making false statements to government about CIA activities in which defendant was involved because nature of defendant's assignments was central to the charges against him and government's assertion of State Secrets privilege with respect to same deprived defendant of his right to present a meaningful defense).[11]

Furthermore, the Government's Omnibus Motion in Limine, which seeks to preclude Mr. Bannon from raising critical defenses in this case, is still pending. The strategy adjustments that could be required depending on the Court's ruling cannot in fundamental fairness be forced on a

---

[10] *See* Hearing Tr. March 16, 2022, at 26.
[11] *See also*, Docs. 7-1 and 7-2 in *In re Non-Party Subpoenas*, Misc. Case No. 22-00060-CJN, discussing *United States v. Rainey*, No. 12-291 (E.D. La. 2015) (dismissal warranted after subpoenas quashed).

criminal defendant just days before trial. Therefore, Mr. Bannon's interests in the modest continuance period requested far outweigh the Government's interest in adhering to the original trial schedule.

### A Short Continuance Will Allow For A Fair Trial

Cases of consequence receive publicity. Such cases must nonetheless go to trial. But adherence to a scheduled trial date during unanticipated congressional hearings that prejudice the defendant does not advance the cause of justice. None of the cases relied upon by the Government involve ongoing congressional hearings. Nor do any of the cases the Government cites involve the sustained and expansive media coverage at issue here.

The authority that the Government relies upon does not support their position. They cite *United States v. Haldeman*, (D.C. Cir. 1976). But the defendant in that case sought to move the trial outside of Washington, D.C., or to obtain a lengthy continuance. On appeal, the D.C. Circuit found no error when the trial judge denied a defense motion requesting a change of venue or a "lengthy" continuance. But the circumstances were quite different than those here. The *Haldeman* court found it important to note that the Senate Watergate hearings took place well over *one year before trial*, and the House hearing on Watergate that took place within a few months of trial "did not involve public taking of evidence." *Id*. at 63 n. 40.

Nor does *Skilling v. United States*, 561 U.S. 358 (2010) help the Government. That case raised the question as to whether reversal of a conviction was required in a high-profile case based on pretrial publicity. The issue considered by the Supreme Court was not whether a continuance was advisable. Instead, the Supreme Court focused on "the adequacy of jury selection." *Skilling*, *supra*, 561 U.S. at 387. Jury selection in that case involved a 77-item questionnaire that was mailed to and filled out by prospective jurors and made available in advance of trial to the parties, then

6

supplemented by follow-up questions of each individual juror. *Id*. at 388 n.22. The *Skilling* Court looked in hindsight as to whether constitutional requirements were met by the voir dire process. *Id.* at 388-89. Significantly, there were no pending congressional hearings at issue in *Skilling*, and no media barrage just before trial.

The *Skilling* Court also found that there were no news stories immediately preceding trial that contained prejudicial information about the defendant. *Skilling*, 561 U.S. at 382-83. In stark contrast, the Select Committee has held seven hearings – one of them a surprise – in the month before Mr. Bannon's trial. The Select Committee has announced that the next public televised hearing – arranged by a television producer for maximum impact – is scheduled for July 12, 2022, just one week before Mr. Bannon's trial is scheduled to start. [12] It is anticipated that this next round of hearings will focus on the "efforts to assemble that mob on the mall" on January 6, 2021.[13] Although the Government avers that none of the new evidence will raise "unique issues . . .that could become public during the Defendant's trial" [Doc. 93 at 9], the Select Committee has already made prejudicial statements suggesting that Mr. Bannon played a key role inciting the events of January 6.[14] The Government has no basis to suggest that the Select Committee hearings in the days just before (and perhaps during) trial will not feature Mr. Bannon.

The simplest solution for ensuring Mr. Bannon receives a fair trial– as he is entitled to under the Constitution – is to grant the short continuance. This minor delay will not, as the Government

---

[13] Annie Grayer, *House January 6 committee schedules seventh hearing for July* 12, CNN POLITICS (Jul. 5, 2022, 6:24 PM), https://www.cnn.com/2022/07/05/politics/january-6-committee-hearing/index.html.

[14] *See* Hunter Walker, *The January 6 Investigation Names Names: Bannon, Meadows, and Scavino*, ROLLINGSTONE (Sept. 23, 2021, 9:30 PM), https://www.rollingstone.com/politics/politics-news/january6-panel-trump-subpoenas-bannon-meadows-1231592/ ([Chairman Thompson's] statement also mentions Bannon's reported attendance at 'a gathering at the Willard Hotel on January 5, 2021, as part of an effort to persuade Members of Congress to block the certification of the election the next day.").

7

asserts, allow Mr. Bannon to "avoid[] accountability," [Doc. 93 at 8] it will simply ensure that trial does not take place in the middle of incendiary public congressional hearings.[15]

As demonstrated by the surprise hearing last week, it is also possible that an unanticipated televised hearing will be scheduled mid-trial, which will require further voir dire of the jury to determine the degree of prejudicial impact. That inquiry itself would raise the specter of prejudice by highlighting the matter in the middle of trial. This poses a grave risk to Mr. Bannon's right to a fair trial which can be avoided entirely by a brief trial continuance.

Wherefore, we respectfully request that this Court grant Defendant's Motion To Continue Trial.

**_(Signature  block on next page)_**

---

[15] The Select Committee's Chair has announced that it plans to complete its hearings in time to produce a final report this Fall. It is anticipated that by then, the prejudicial coverage from the July hearings will have dissipated.  Kevin Breuninger, *Jan. 6 Capitol riot probe aims to hold final hearing in July as new evidence comes in*, CNBC (June 22, 2022, 8:29 PM), https://www.cnbc.com/2022/06/22/jan-6-probe-final-hearings-on-pro-trump-capitol-riot-mob-to-take-place-in-july.html.

Dated: July 6, 2022                                  Respectfully submitted,


                                                       **SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

                                                       /s/ M. Evan Corcoran
                                        M. Evan Corcoran (D.C. Bar No. 440027)
                                        400 East Pratt Street – Suite 900
                                        Baltimore, MD 21202
                                        Telephone: (410) 385-2225
                                        Facsimile: (410) 547-2432
                                        Email: ecorcoran@silvermanthompson.com

                                                       /s/ David I. Schoen
                                        David I. Schoen (D.C. Bar No. 391408)
                                        David I. Schoen, Attorney at Law
                                        2800 Zelda Road, Suite 100-6
                                        Montgomery, Alabama 36106
                                        Telephone: (334) 395-6611
                                        Facsimile: (917) 591-7586
                                        Email: schoenlawfirm@gmail.com


                                                    /s/ Robert J. Costello
                                        Robert J. Costello (*pro hac vice*)
                                        Davidoff Hutcher & Citron LLP
                                        605 Third Avenue
                                        New York, New York 10158
                                        Telephone: (212) 557-7200
                                        Facsimile: (212) 286-1884
                                        Email: rjc@dhclegal.com


                                        *Counsel for Defendant Stephen K. Bannon*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July 2022, a copy of the foregoing Motion To Continue Trial was served *via* the Court's CM/ECF system on registered parties and counsel.

                                                   /s/ M. Evan Corcoran
                                        M. Evan Corcoran (D.C. Bar No. 440027