**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL
MEADOWS AND SCAVINO DECLINATION DISCOVERY**

On June 27, 2022, Defendant Stephen K. Bannon filed a motion to compel discovery of materials and information related to the Government's decision not to prosecute Messrs. Meadows and Scavino for criminal contempt of Congress, following the referral from Congress for their prosecution [Doc. 86]. On June 29, 2022, the Government filed its opposition to the motion [Doc. 87]. Mr. Bannon now files his reply to the Government's opposition and in further support of his motion.

**<u>Introduction</u>**

In his motion, Mr. Bannon asserted that the materials at issue must be produced under the Court's March 16, 2022 Order on discovery [Hearing Tr. March 16, 2022, at 96-97; Doc. 86 at 3-4] and under the Government's *Brady/Giglio* obligations and discovery obligations under the local rules. [Doc. 86 at 4-15].

The Government's response misses the thrust of Mr. Bannon's motion in just about every regard. Additionally, to the extent it attempts to address the defense of entrapment by estoppel, the opposition yet again reflects a fundamental  misunderstanding of the defense.

1

**<u>The Materials Sought Are Discoverable Under the Court's March 16th Order</u>**

The Government's Opposition argues first that the requested materials, including writings reflecting the decision not to prosecute Meadows and Scavino do not reflect "official policy" and therefore do not come within the Court's March 16, 2022 oral Order; rather they reflect the Government's "internal" "deliberative processes" and therefore are not discoverable.[1]

To be perfectly clear, the first and most direct items Mr. Bannon has sought and the Government has refused to produce are the letters or other writings that reflect the decision not to prosecute these men.[2]   These are not documents protected by any formulation of a "deliberate processes" defense against production.[Doc. 87 at 1-2].

"The deliberative process privilege prevents discovery as to 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *NRA of Am. v. Cuomo*, 332 F.R.D. 420, 433 (N.D.N.Y. 2019), quoting *Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (citation omitted); *see also In re County of Erie*, 473 F.3d 413, 417 n.3 (2d Cir. 2007) (citing *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir. 2005). "In order for

_____

[1]  The Government made this same unavailing claim that the requested materials are protected matters that relate solely to the "Government's internal deliberations" in response to Mr. Bannon's original request for relevant OLC opinions and other authoritative writings insofar as they relate to DOJ policy on what the Government characterized as "various issues relating to subpoenas directed at Executive Branch officials."  [See Doc. 31 at 8-9, n. 2].  It was soundly rejected by the Court as is reflected in the Court's March 16, 2022 oral Order excerpted in Mr. Bannon's Motion to Compel, Doc. 86 at 3].

[2] As asserted in the Motion to Compel, these are documents which two New York Times reporters have described in an article, certainly more than implying that the requested documents already have been provided to them.  [See Doc. 86 at 2, n.3].  That alone, in addition to the actual nature of the documents, rather sharply undercuts a "deliberative processes" excuse for refusing to produce.

a document to be protected by this privilege, it must be an inter-agency or intra-agency document which is both predecisional and deliberative." *NRA of Am. v. Cuomo*, 332 F.R.D. at 433, quoting from *Children First Found., Inc. v. Martinez*, 2007 U.S. Dist. LEXIS 90723, 2007 WL 4344915, at *6 (N.D.N.Y. Dec. 10, 2007) (citing *Grand Cent. P'ship, Inc.*, 166 F.3d at 482 (additional citation omitted). Documents announcing a decision not to prosecute and that provide the reasoning for the declination, by their very nature cannot be "predecisional."

In determining whether a document is "predecisional" and "deliberative" and therefore protected, "courts look to whether the document '(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Cuomo, Id.* (citations omitted).

"The deliberative process privilege 'does not operate indiscriminately to shield all decision-making by public officials.'" "[T]he privilege is not an absolute bar but rather qualified." *Cuomo, Id.* (citations omitted).  "The deliberative process privilege is fashioned in such a way that it protects the government's deliberative process from inquiry if it is collateral to the litigation itself. However, if the party's cause of action is directed at the government's intent in rendering its policy decision and is closely tied to the underlying litigation then the deliberative process privilege 'evaporates.'"  *Cuomo*, 332 F.R.D. at 434 (citations omitted); see also, *In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)).

"The deliberative process privilege does not include "opinions or conclusions of those not part of that process . . . . underlying factual documents that are relied on in the decisionmaking process . . . , statements that summarize facts . . . , documents that describe an agency's policy

after it has been adopted, or . . . pre-decisional documents that are incorporated into the agency's final decision." *Cuomo*, 332 F.R.D. at 434 (citations omitted).

"When a Court determines the deliberative process privilege applies, in order to determine whether the privilege will bar disclosure or whether to permit disclosure, notwithstanding the privilege, a Court is to consider:  [1] the relevance of the evidence sought to be protected; [2] the availability of other evidence; [3] the seriousness of the litigation and the issues involved; [4] the role of the government in the litigation; and [5] the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* (citations omitted).

Clearly, the letters to Congress or any other recipient announcing the decision not to prosecute Meadows and Scavino and any reasons or explanation provided therein are not protected from disclosure under any conception of "internal deliberations" or the "deliberative process."  As to any and all other documents which reflect the decision and which refer to DOJ policy supporting, opposed to, or related to the decision not to prosecute, the Government should be required to provide a privilege log for the documents to which it has a good faith basis for believing the deliberative process privilege applies, and it should be required to provide all even arguably responsive documents for an *in camera* review. *See Cuomo*, 332 F.R.D. at 435-436 (citations omitted).

"A log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, the nature of the opinions and analyses offered, the date that documents were generated, the roles of the agency employees who authored or received the withheld documents and the number of employees among whom the documents were circulated. *Id*.

Tellingly, the Department of Justice has not treated its declination letters and explanation for the declination as privileged or otherwise covered by "deliberative process" concerns. Rather they have treated them as public documents, with both Congress and the American people entitled to know their decisions and the bases for them. [See, e.g., Doc. 42, Letter from Attorney General Mukasey declining to prosecute Bolten or Miers; Doc. 58-16, Letter from U.S. Attorney for D.C. Machen declining to prosecute Lerner]. The same principles should be applied here.

### The Declination Materials are Relevant to the Defense Theory and Could Well be Brady/Giglio Material

The balance of the Government's response is devoted to arguing that the requested materials could not possibly be relevant to Mr. Bannon's entrapment by estoppel argument because he has no such argument. The government supports this claim with its recurrent absurd theme that Mr. Bannon has not at any time in this litigation identified "specific Office of Legal Counsel ("OLC") opinions on which he allegedly relied in deciding to defy the Committee's subpoena." It then asserts that he "has not even identified a single OLC opinion that sanctions his conduct, even putting aside for a moment whether he relied on it." [Doc. 87 at 2; 3-5].

The Government's assertions are patently and demonstrably false in all regards. Mr. Bannon will reply by simply referring to the record which unequivocally demonstrates the point.

On multiple occasions throughout this litigation, Mr. Bannon has specifically identified the OLC opinions and other authoritative writings on which he relied for his belief (and his experienced criminal defense lawyer's belief) that his response to the subpoena, once executive privilege was invoked, was the lawful, appropriate, and only correct one. He also has specifically identified others consistent with the ones he specifically relied on, which he believes support the

reasonableness of his belief.  [See e.g., Docs. 28, 30 at 16-22, 41 at 3, n.5, 4, 5, n.8, 7, n.9, 9 & n. 12, n.13, 58, 64 at 12, 73 at 6-9, 73 at 12-24, 86 at 6-8].  In each of these examples, Mr. Bannon has identified the specific OLC opinion or other authoritative writing he has relied on and he has explained the basis for his belief and reliance.

In case the specific reference, description, and explanation were not enough, Mr. Bannon has also provided the Court (and Government counsel) with full copies of many of the OLC opinions and other authoritative DOJ writings on which he relied.  [See e.g. Docs. 28-10, 28-11, 28-12, 41-2, 41-3, 41-4, 41-6, 41-7, 42, 58-7, 58-8, 58-9, 58-10, 58-11, 58-12, 58-14, 58-15, 58-16, 58-17, 58-18, 58-23].

Additionally, as the Government is aware, Mr. Costello wrote Government counsel a memorandum, dated October 29, 2021, urging the Government not to prosecute Mr. Bannon.  In that Memorandum, Mr. Costello cited to some of the specific OLC opinions on which he and Mr. Bannon had relied in their response to the subpoena.  [Exhibit 1 at 5-7; 9].  There is no reasonable, ethical excuse for the Government's assertion that "… the Defendant still cannot identify specific Office of Legal Counsel ("OLC") opinions on which he allegedly relied in deciding to defy the Committee's subpoena."  [Doc. 87 at 2, 3-5].  Mr. Bannon not only can identify the specific OLC opinions on which he relied for his response to the subpoena, he has done so repeatedly throughout this case and has provided copies of many of them.

Government counsel further assert that Mr. Bannon's reference to the rationale of the OLC opinions somehow removes him from the realm of an entrapment by estoppel [Doc. 87 at 2-3]. This is an incorrect statement of the law.  Mr. Bannon has emphasized the rationale of each of the OLC opinions and other authoritative DOJ writings to support the reasonableness of his belief that the relevant principles enunciated in the OLC opinions apply in full force to current executive

branch employees, former executive branch employees, and to people who might never have been executive branch employees, when executive privilege is invoked by the President or former President of the United States concerning communications between that person and the President.

His motion on this issue expressly states that when one is served with a Committee subpoena and executive privilege is invoked, the OLC opinions and other authoritative DOJ writings reflect binding DOJ policy as to the implications, rights, duties, and obligations that are triggered by the invocation of executive privilege – a constitutionally unique privilege and circumstance. Those implications, rights, duties, and obligations are addressed in significant detail in the OLC opinions relied upon and in many more. The rationale and detailed explanation (e.g. in the 1984 Olson Opinion) are cited in later opinions to emphasize the soundness of subsequent consistent opinions.

As Mr. Bannon demonstrates in his motion to compel and has consistently argued throughout these proceedings, the rationale in each relied-upon opinion and other consistent opinions is not based on distinguishing between current, former or non-employees of the executive branch; but on the specific factors identified on pages 5-10 of the motion to compel [Doc. 86 at 5-10], which apply in full force to people who receive Congressional subpoenas that implicate executive privileged communications or deliberations and that trigger the invocation of executive privilege.

The rationale in all these writings applies in full force to Mr. Bannon's circumstances, as do all of the underlying constitutional and other principles on which the authoritative writings are based. Therefore it was reasonable for Mr. Bannon to rely on the authoritative writings, whether they arise specifically in the context of a current, former or non-employee.

The reasonableness of Mr. Bannon's reliance on these OLC opinions is a question for a jury at this point.  There is no universe in which it fairly can be said that he has not met the threshold for submission of the question of reasonableness to the jury.  Mr. Bannon (and Mr. Costello) relied on the express words in each opinion and their view that their reliance was reasonable and correct is bolstered by the rationale that makes it crystal clear that the bases for the conclusions and directives in the authoritative writings are triggered when executive privilege is invoked.

As Ted Olson wrote, "Application of the criminal contempt statute to Presidential assertions of executive privilege would immeasurably burden the President's ability to assert the privilege and to carry out his constitutional functions."  [Doc. 58-10 at 136].  That is a fundamental principle in this circumstance and it is not a matter which depends on the status of the other party to the privileged communication with the President [Doc. 86 at 4-10]; nor is it a matter of picking and choosing among "out-of-context one-liners" as Government counsel puts it [Doc. 87 at 3].

Government counsel would like to substitute their self-serving, narrow reading of the OLC opinions for Mr. Bannon's and for the jury's; but that is not what the law permits.

Fundamental principles underlying the entrapment by estoppel cases include, among others, that (1) "a criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence.  *United States v. Abcasis*, 45 F.3d 39, 42 (2d Cir. 1995), quoting from *United States v. Johnson*, 994 F.2d 980, 988 (2d Cir.), *cert. denied*, 126 L. Ed. 2d 364, 114 S. Ct. 418 (1993); (2) "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id*, quoting from *Crane v. Kentucky*, 476 U.S. 683 (1986); and (3) due process prohibits the criminal prosecution and conviction of a person where official, authoritative pronouncements in the form of regulations, authoritative writings, and official statements reasonably lead one to believe the conduct at issue was lawful.  *United States*

*v. Pennsylvania Industrial Chemical Corp. ("PICCO")*, 411 U.S. 655, 670-675 (1973).[3]
Additionally, a defendant is not "required to pass a credibility test to have their defense presented
to the jury." *Abacasis*, 45 F.3d at 44.[4]

Finally, the Government's contention that the decisions not to prosecute Meadows and
Scavino are not *Brady/Giglio* material merely because they post-date Mr. Bannon's reliance on
the OLC opinions misses the point entirely [Doc. 87 at 5].  Mr. Bannon's argument in the motion
to compel is simply that the decision not to prosecute Meadows and Scavino, if based in any part
on the invocation of executive privilege, is *Brady/Giglio* material first and foremost with respect
to Mr. Bannon's contention that executive privilege was invoked with respect to his subpoena and
the government's suggestion to the contrary, in light of the fact that it was invoked in the same
manner and form and by the same emissary of President Trump for all three men [Doc. 86 at 3,
notes 5 & 6].  That has nothing to do with whether the declination pre-dated Mr. Bannon's
prosecution.

Secondly, regardless of whether the Government agrees with the defense theory, it is the
defense theory that the principles of the OLC opinions do not distinguish between current, former,

---

[3] The *PICCO* case presents a classic vehicle to demonstrate the error in the Government's
position that the Court should find as a matter of law that the OLC opinions do not apply, based
on its restrictive reading.  In *PICCO*, a plain reading of the regulations at issue, certainly left the
question open as to whether they applied to the defendant's specific conduct and whether case
law or more recently revised regulations should have made it clear to the defendant that the
regulations it relied on did not apply.  The Government so argued in *PICCO*. 411 U.S. at 674-
675.  But the Supreme Court rejected that argument, finding that such arguments do not go to the
availability of the defense; rather they are arguments for determination by the fact-finder at trial
for they go to whether the defendant actually relied on the regulations and whether its reliance
was reasonable. 411 U.S. at 675.

[4] As the Court expressly found in *Abacasis*, there was "surely good reason for the court to doubt
the good faith of the defendants' contention" concerning their reliance, let alone whether it was
reasonable.  *Abacasis*, 45 F.3d at 44.

and non-employees of the executive branch; rather they turn on whether executive privilege was invoked, as discussed earlier.  Therefore, the decision not to prosecute Meadows and Scavino, if based at all on executive privilege and the OLC opinions, is *Brady* material as to Mr. Bannon's defense theory. he is entitled to the material for the record.

Mr. Bannon relies on his Motion [Doc. 86] for any further reply to the Government's Opposition [Doc. 87].

WHEREFORE, for the foregoing reasons, Defendant Stephen K. Bannon respectfully requests that this Court GRANT his MOTION TO COMPEL.

Dated: July 6, 2022                          Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

/s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street - Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

/s/ Robert J. Costello
Robert J. Costello (*pro hac vice*)
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Facsimile: (212) 286-1884
Email: rjc@dhclegal.com

/s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of July, 2022, a copy of the foregoing Motion was served *via* the Court's CM/ECF system on all properly registered parties and counsel.

_____/s/ M. Evan Corcoran_____
M. Evan Corcoran (D.C. Bar No. 440027)