**EXHIBIT 1**

# DAVIDOFF HUTCHER & CITRON LLP

### ATTORNEYS AT LAW
### 605 THIRD AVENUE
### NEW YORK, NEW YORK 10158
————
### (212) 557-7200
### FAX (212) 286-1884
### WWW.DHCLEGAL.COM

## M E M O R A N D U M

TO:        United States Attorney for the District of Columbia ("USAO-DC")

FROM:    Robert J. Costello

DATE:    October 29, 2021

RE:        Congressional Referral of Stephen K. Bannon for Criminal Contempt

---

## I — EXECUTIVE SUMMARY

This memo sets forth several legal bases for the USAO-DC to demonstrate that if this case were handled based upon the prevailing rules of the Justice Department, it would decline prosecution of Mr. Stephen K. Bannon, based on numerous opinions from the DOJ's Office of Legal Counsel ("OLC"), which, pursuant to well-settled law, are binding opinions on the Executive Branch of the United States, including the DOJ.

First, pursuant to a well-settled OLC opinion, the DOJ and USAO-DC in fact have discretion in deciding whether or not to prosecute Mr. Bannon, regardless of Congress's vote to recommend prosecution.

Second, pursuant to an OLC opinion, the subpoena, in this case, was *void ab initio*, because it specifically barred President Trump's counsel from appearing at Mr. Bannon's deposition or from reviewing the documents that Mr. Bannon was to produce, which violates the executive privilege because it prevented President Trump from protecting his executive privilege. Relatedly, the United States Supreme Court has held that a former president may invoke the executive privilege and there are several effective OLC holdings that a non-governmental, private citizen is bound by the President's invocation of the executive privilege.

Third, pursuant to another OLC opinion, the DOJ is not permitted to prosecute a former White House employee for contempt of Congress where the issue involves the invocation of executive privilege. Based on the foregoing, unless the Department wants to treat Mr. Bannon differently than the Justice Department rules set out for everyone else, the USAO-DC should decline to prosecute Mr. Bannon. A decision to decline would also go a long way to dispel the doubts about the Justice Department's independence, particularly in light of the inappropriate and inaccurate comments of a partisan Congress and the unfortunate interference by the President. It

would also uphold the Justice Department's traditional role of appropriately defending the prerogatives of the Executive Branch of government.

II — FACTUAL BACKGROUND

Through counsel, Mr. Bannon had communicated by emailed letters to the Select Committee Chairman Bennie G. Thompson, as well as by telephone with Committee counsel Sean Tonolli that, acting in accordance with instructions received from President Trump's counsel, Mr. Bannon would be unable to comply.

As Mr. Bannon's counsel, on September 23, 2021, I was contacted by Committee Chief Counsel Kristin Amerling, to inquire whether I would accept service for Mr. Bannon via email. Mr. Bannon immediately agreed, but before I informed Ms. Amerling, I was contacted by the Associated Press, CNN and MSNBC, who already had copies of the subpoena.  I then notified Ms. Amerling that we would accept service of the subpoena.

The subpoena called for the production of documents and a private deposition.  In addition to the subpoena, I was provided with a copy of the rules that would govern the taking of testimony. Surprisingly, the rules called for only Mr. Bannon's private counsel to attend the deposition and that a copy of the transcript of that deposition would not be made available to the witness, Mr. Bannon.

After the Committee notified the media that they had served subpoenas for Mark Meadows, the former Chief of Staff to President Trump, Mr. Bannon and two others, on the evening of October 5, 2021, I received a telephone call from Justin Clark, Esq., who informed me that he was counsel to President Donald Trump and that President Trump was going to invoke executive privilege for the four named individuals and that he would be sending a letter to confirm the instructions.  On October 6, 2021, Justin Clark emailed me a letter stating, in part:

"President Trump vigorously objects to the overbreadth and scope of these requests and believes they are a threat to the institution of the Presidency and the independence of the Executive Branch."  Mr. Clark added that:

"Through the Subpoenas, the Select Committee seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by the executive and other privileges, including among others, the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court.

Therefore, to the fullest extent permitted by law, President Trump instructed Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena."

Faced with this instruction by counsel to President Trump, I advised Mr. Bannon that he should not provide documents or testify, because Mr. Bannon must be guided by President Trump's invocation of the privilege.

2

As a matter of professional courtesy, I took a call from Sean Tonolli, Staff Counsel to the Select Committee.  Mr. Tonolli advised me that he was the Staff Counsel who would be questioning Mr. Bannon.  I took the opportunity to ask Mr. Tonolli about the rule that stated that only Mr. Bannon and his personal counsel could attend the deposition.  Mr. Tonolli confirmed "that was the position of the Select Committee."  I asked that question because if that rule were followed, there would be no one to represent the interests of President Trump whose privileges were at stake at Mr. Bannon's private deposition.  I was aware of the OLC Opinion issued on May 23, 2019, finding that where Congress, in a matter involving executive privilege, refuses to allow a representative of the Executive Branch to attend the private deposition and invoke the privileges of the President, the subpoenas were deemed by OLC to be illegal and invalid.  In light of the OLC opinion, I wanted to know from staff counsel if the Select Committee intended to enforce that rule which would abrogate the validity of Mr. Bannon's subpoena.  On October 7, 2021, the day before documents were due to the Committee from Mr. Bannon, and a day after receiving a letter of instructions from President Trump's counsel, on Mr. Bannon's behalf, I notified Chairman Thompson, that pursuant to President Trump's instruction, we would be unable to respond to the requests for documents or testimony.  This was not a contemptuous refusal; we were simply following the instructions of President Trump's counsel regarding privileges which belonged to President Trump.

Chairman Thompson responded the next day, October 8, 2021, claiming that Mr. Bannon could not take advantage of the executive privilege because he was a private citizen on January 6th.  Second, Chairman Thompson stated that the Committee had not received "any assertion, formal or otherwise, of any privilege from the (sic) Mr. Trump."  Third, Chairman Thompson argued that "even if your client had been a senior aide to the President during the time period covered by the…testimony, which he was most assuredly not, he is not permitted by law to the type of immunity you suggest."  As to points One and Two offered by the Chairman, both of his assertions are wrong and directly contradicted by opinions of the Office of Legal Counsel which are discussed more fully below.  As to the third point, we did not claim any immunity in our initial response to Chairman Thompson and the Select Committee.

On October 13, 2021, on Mr. Bannon's behalf, I responded to some of the remarks made by Chairman Thompson in his October 8, 2021 letter, that his use of the word "defiance" to describe Mr. Bannon's behavior was inappropriate because Mr. Bannon was merely following the instructions of counsel for President Trump and being appropriately response to the Select Committee's request.

On October 15, 2021, at 2:05 p.m., the Chairman again wrote to me, claiming that the basis for Mr. Bannon's refusal to produce documents or testify, namely President Trump's assertion of executive privilege, had not been made, in the opinion of the Committee.  Chairman Thompson again argued that Mr. Bannon did not have the immunity that we never claimed he had, and therefore, Chairman Thompson claimed that Mr. Bannon was in "willful non-compliance" of the Subpoena.  That letter provided that we had until 6:00 p.m. on Monday, October 18, 2021, to respond.  Slightly later that afternoon, President Biden interjected himself into this dispute by answering a reporter's question stating that the Justice Department should prosecute those who refused to comply with the Select Committee subpoenas.  Within an hour, the Attorney General's spokesman was forced to state that the Justice Department would make "its own independent decisions in all prosecutions based solely on the facts and the law.  Period.  Full stop."  The damage

3

had already been done.  The Select Committee would not vote for another three days, the entire House would not vote until the following Thursday, October 21, 2021, but the message had been sent and it was impossible to unring the bell.  The Select Committee would use the House to urge the Justice Department to make an example out of Stephen K. Bannon.

Late in the afternoon of October 18, 2021, as we were preparing to send our response to Chairman Thompson's October 15 letter as he provided, we were notified that President Trump filed a lawsuit in Federal Court in the District of Columbia, naming Chairman Thompson, in his official capacity, as well as the Select Committee.  Instead of sending the letter I had prepared, I wrote a short note to Chairman Thompson informing him that we had just become aware that President Trump had filed a lawsuit and therefore, I was requesting a one-week adjournment of our response, so we could review the lawsuit and determine its impact on Mr. Bannon's response.

After we sent in our request for an adjournment, at 6:50 p.m., I received an email from the Office of White House Counsel.  That letter stated that:

"Mr. Bannon's tenure as a White House employee ended in 2017.  To the extent any privileges could apply to Mr. Bannon's conversations with the (then) former (sic) President or White House staff, after the conclusion of his tenure, President Biden has already determined that an assertion of executive privilege is not in the public interest, and therefore is not justified…"

White House Counsel's letter fails to recognize that the conversations were with the *sitting* President and it continues to rely on the legally incorrect assertion that executive privilege only involves government employees, when the OLC, in an opinion by Solicitor General and then Acting Attorney General Paul Clement, states otherwise, as set forth *infra*. The letter also wrongfully claims that President Biden has any authority whatsoever to waive executive privilege asserted by President Trump.

The next morning, October 19, 2021, Chairman Thompson  denied our request for a short adjournment, thereby terminating our ability to communicate before the Committee printed its conclusions and recommendations to the entire House that same day.  Later that evening, the Committee held a televised press event to conduct a live vote to recommend to the entire House that Stephen K. Bannon be held in criminal contempt of Congress.  In comments made by Committee members on television that night, they made clear that they intended to make an example out of Mr. Bannon.  Even after the televised vote, and the fact that Chairman Thompson had prohibited us from responding by turning down our request for an adjournment to review the Trump Lawsuit, Chairman Thompson sent me another long-winded letter late in the evening, urging Mr. Bannon to "change course", relying on the letter from White House Counsel that the Chairman believed demonstrated "the inappropriateness of Mr. Bannon's reliance on assertions of executive privilege…"

As noted in the paragraphs above, Mr. Bannon has been appropriately responsive to both the Committee and to counsel to President Trump and has been responsive to the instructions and directions of President Trump's counsel.  The response of the Committee, on the other hand, has been to leak to the press and issue grandstanding, legally incorrect press releases.  Adopting the

partisan Congress' position would do great damage to executive privilege and would do great harm to future Presidents.

III — LEGAL BASES TO DECLINE PROSECUTION

The DOJ should decline to prosecute Mr. Bannon because a decision by the DOJ, a member of the Executive Branch, to prosecute Mr. Bannon would be violative of several binding OLC opinions.  It is well settled that OLC opinions are entitled to considerable weight because they "reflect[] the legal position of the executive branch" and "provid[e] binding interpretive guidance for executive agencies."  See *Casa de Maryland. v. United States Dep't of Homeland Sec.*, 924 F.3d 684, 718, n.1 (4th Cir. 2019); *see also, Cherichel v. Holder*, 591 F.3d 1002, 1016, n.17 (8th Cir. 2010) (noting that "while OLC opinions are generally binding on the Executive branch…courts are not bound by them") (citations omitted).  An OLC memorandum is final when it serves as the OLC's last word on the subject matter that was provided to the decisionmaker who requested it.  *Samahon v. United States DOJ*, 2015 U.S. Dist. LEXIS 23813, *45 (E.D. Pa. Feb. 27, 2015).

**A.    The U.S. Attorney/D.O.J. has discretion to decide whether to indict for misdemeanor criminal contempt.**

 The United States Attorney and the Department of Justice retain the discretion to refuse to charge a referred criminal contempt of Congress matter.  On June 16, 2014, the Office of Legal Counsel ("OLC") issued an opinion letter for the United States Attorney for the District of Columbia, 38 Op. O.L.C. 1, on the issue of Prosecutorial Discretion regarding Citations for Contempt of Congress.  The 2014 opinion was issued when the United States Attorney considered the finding of an earlier, 1984 opinion of OLC, 8 Op. O.L.C. 101 (1984) which concluded that the United States Attorney is not required by "the criminal contempt of Congress statute, 2 U.S.C. Sections 192, 194…(to) prosecute or refer to a grand jury for contempt of Congress issued with respect to an Executive Branch official who has asserted a claim of privilege in response to written instructions from the President of the United States."  The 2014 OLC opinion affirmed the earlier 1984 opinion.  We now know from the OLC opinion of Solicitor General Paul Clement in 2007 that executive privilege is not limited to Executive Branch Officials but applies equally to individuals outside the Government such as Mr. Bannon.  Based on the foregoing, the United States Attorney and the DOJ have discretion to decline prosecution of Mr. Bannon and should do so in this instance.  This would be consistent with prior decisions involving Eric Holder, Lois Lerner and  others.

**B.    The Subpoena issued by the Select Committee was illegal and invalid.**

The subpoena accepted by counsel for Mr. Bannon was illegal and therefore invalid because it contained rules that, in an executive privilege case, denied access to the private deposition to everyone except the witness and his personal counsel.  During a conversation with staff counsel Sean Tonolli, who stated that he was going to be the staff counsel questioning Mr. Bannon, I inquired about the written rule limiting attorney presence to Mr. Bannon's personal counsel.  Mr. Tonolli confirmed that the rule was the position of the Select Committee.  That rule, imposed by this Select Committee, knowing that it would encounter claims of executive privilege,

has been found by OLC to be unconstitutional and as a result, in the opinion of the OLC, the Subpoena issued by the Committee is illegal and invalid.

On May 13, 2019, the OLC issued an opinion regarding the constitutionality and enforceability of subpoenas issued by the House Committee on Oversight and Reform. The Committee sought to question the two witnesses subpoenaed "about matters that potentially involved communications that were protected by executive privilege. Although the Committee's Rule 15 (e) permitted the witnesses to be accompanied at the depositions by private counsel, who would owe duties to the witnesses themselves, the rule purported to bar the presence of agency counsel, who would represent the interests of the Executive Branch." In response to the request by the Attorney General, the OLC "advised that a congressional committee may not constitutionally compel an executive branch witness to testify about potentially privileged matters while depriving the witness of the assistance of agency counsel." While OLC speaks of "agency counsel" in the opinion, in a footnote, OLC adds that their "analysis applies equally to all counsel representing the interests of the Executive Branch, no matter whether the witness works for an "agency", as defined by statute."

With respect to the Constitutional question, the OLC stated: "we concluded that Congress may not compel an executive branch witness to appear without agency counsel and thereby compromise the President's constitutional authority to control the disclosure of privileged information and to supervise the Executive Branch's communications with congressional entities...Committee subpoenas purporting to require the witnesses to appear without agency counsel were legally invalid and not subject to civil or criminal enforcement."

This same provision is found in the rules attached to the subpoena served upon Mr. Bannon's counsel and as such, renders the subpoena illegal and invalid in accordance with the opinion of the Office of Legal Counsel. The rule provided to counsel for Mr. Bannon reads:

> "3. Witnesses may be accompanied at a deposition by personal, non-governmental counsel to advise them of their rights. Only members, committee staff designated by the Chair or ranking minority member, an official reporter, the witness, and the witness's counsel are permitted to attend. Observers or counsel for other persons, including counsel for government agencies, may not attend."

**C.     The Department of Justice May Not Prosecute White House Officials or *former* White House Officials for Contempt of Congress.**

On February 29, 2008, the OLC issued an opinion to then Attorney General Michael B. Mukasey, who asked whether the Department of Justice may bring before a grand jury, criminal contempt of Congress citations, or take any other prosecutorial action, with respect to current or *former* White House officials who declined to provide documents or testimony, or who declined to appear to testify, in response to subpoenas from a congressional committee, based on the President's assertion of executive privilege or the immunity of senior presidential advisers from compelled congressional testimony. The OLC concluded it may not.

The opinion unequivocally explained that the:

"Department of Justice has long taken the position, *during administrations of both political parties*, that the criminal contempt of Congress statute does not apply to the President or presidential subordinates who exert executive privilege."

The opinion goes on to cite different examples of the Department of Justice adhering to that standard over the years, citing *opinions by Theodore Olson in 2008 during the George W. Bush Administration and Walter Dellinger during the Clinton Administration.*

**D.      Contrary to the position taken by Chairman Thompson, the Select Committee and current White House counsel, President Trump retains the right to exercise the invocation of executive privilege.**

The issue of whether President Trump can legally invoke executive privilege has plagued these proceedings, because the Committee, as well as certain sectors of the press, have consistently stated that Mr. Bannon could not invoke the executive privilege because executive privilege is held by the sitting President and not a former President; they add that even if President Trump could involve executive privilege, Mr. Bannon would not be covered because Mr. Bannon was not a government employee at the time of the communications.  That position, embraced by the Select Committee, is wrong on both fronts.  In *Nixon v. Adm'r of Gen Services,* 433 U.S. 425, 448-49 (1977), the Supreme Court stated:

"Nevertheless, we think that the Solicitor General states the sounder view and we adopt it.  This Court held in *United States v. Nixon,* ... that the privilege is necessary to provide the confidentiality required for the President's conduct of office.  Unless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends.  The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; **the privilege is not for the benefit of the President as an individual, but for the Republic.  Therefore, the privilege survives the individual President's tenure."** (emphasis supplied).

**E.      Contrary to Chairman Thompson's assertions, a non-governmental employee such as Stephen K. Bannon can invoke executive privilege.**

Although a theory that Mr. Bannon has no right to refuse to testify based upon executive privilege since he was not a government employee at the time has been bandied about by partisan members of the Select Committee and of Congress devoid of any knowledge of this area of the law, it is simply not accurate and not the policy of the DOJ.

On June 27, 2007, Paul Clement, who was at the time both the Solicitor General and Acting Attorney General of the United States, wrote a legal opinion for then President George W. Bush, concerning the issue of subpoenas that had been issued by the House Judiciary Committee, relating to the resignations of several United States Attorneys in 2006.  The House sought documents in the possession of current or *former* White House officials.  Additionally, testimony was sought from two *former* officials. The President requested guidance on whether he could assert executive

privilege with respect to *both* the current *and former* White House officials.  Paul Clement found that:

> "communications between White House officials and individuals outside the Executive Branch, including with individuals in the Legislative Branch…fall within the scope of executive privilege...Naturally, in order for the President and his advisers to make an informed decision, presidential aides must sometimes solicit information from individuals outside the White House and the Executive Branch."

A prosecution of Mr. Bannon for criminal contempt of Congress would be in violation of years of precedent in cases involving the executive privilege and would fly in the face of the OLC opinions discussed above.  It would only serve to satisfy the political agenda of the Select Committee and would not ensure answers to the questions they have posed.  The Select Committee must first resolve their differences on executive privilege in Federal Court or with Donald Trump, rather than trying to utilize the Department of Justice to make an example of Mr. Bannon, as the Chairman of the Select Committee has stated on national television.

**F.      The Trump Lawsuit filed October 18, 2021 challenges the very existence of the Select Committee and therefore challenges its ability to issue subpoenas to anyone.**

On October 18, 2021, counsel for President Trump filed *Trump v. Bennie Thompson,* 21-Civ- 02769, ( D.D.C. 2021).  That is the lawsuit we asked for time to review before responding to Chairman Thompson's letter of October 15, 2021.  That lawsuit provides the Select Committee and counsel for President Trump with the Federal Court forum within which to decide the issues of the constitutionality of the Select Committee, President Trump's ability to invoke executive privilege and the scope of such invocation.  The constitutionality of the Select Committee is challenged in the Trump lawsuit, because it has abrogated to itself investigative and prosecutorial powers that are the exclusive province of the Executive Branch.  If President Trump prevails in that lawsuit, it will establish yet another basis to invalidate the subpoena issued to Mr. Bannon and indeed anyone else subpoenaed by the Select Committee.  Simply put, President Trump argues that there is no legislative purpose to the Select Committee's actions.  President Trump argues that the Select Committee's only purpose is to investigate.  That investigative function belongs exclusively to the Executive Branch, more specifically, to the Federal Bureau of Investigation ("FBI").  The FBI has already investigated this event and reached conclusions that some Members of the House are not satisfied with, so they have unconstitutionally seized upon this to form a Select Committee to do that which is delegated solely to the Executive Branch.  A favorable decision for President Trump will render all activities of the Select Committee unconstitutional and moot, including their referral for criminal prosecution.

## CONCLUSION

Any decision to go forward with a prosecution, would be contrary to all existing rules of the Justice Department and could appear to be based on the pressure being applied by a partisan Congress and unfortunately, by the President.  A decision to decline would go a long way to demonstrate the Department of Justice and the Attorney General's desire to decide issues like this

solely on the law and the existing rules and regulations. Any decision to go forward would violate decades of opinions of the OLC under both Democrat and Republican Presidents.

As detailed above, Mr. Bannon's conduct here was far from contemptuous. In fact, he was acting on advice of counsel, consistent with the several opinions of the OLC which are outlined above. Mr. Bannon is not a witness who has flouted either the Congress or the Independent Counsel assigned to investigate specified matters. The law in the area of executive privilege is the basis of President Trump's current lawsuit in Federal Court against the Committee. Mr. Bannon is covered by executive privilege, in the opinion of the OLC. President Trump was entitled to invoke executive privilege according to the United States Supreme Court. President Trump through his counsel directed Mr. Bannon not to provide documents or testimony, citing executive privilege. The OLC has opined that under these circumstances, a current or former White House employee should not be indicted and charged with criminal contempt of Congress. As I stated to Chairman Thompson, since the rules set up by the Select Committee did not allow for any participation by the President's counsel to protect executive privileges, and as the OLC opinion states, in circumstances exactly like this one, where Congress has imposed rules which prohibit counsel for the President to be present and object to testimony based upon executive privilege, the subpoena itself is unconstitutional, illegal and invalid. That being the case, there is nothing for the United States Attorney's Office for the District of Columbia to consider. Accordingly, the USAO-DC should refuse to allow itself to be used as a political pawn to make an example of Mr. Bannon, who was acting on the advice of both his own counsel and the settled policy of the Office of Legal Counsel, in preserving President Trump's invocation of executive privilege. Therefore, the USAO-DC should decline to prosecute Mr. Bannon.

Respectfully submitted for your consideration,

Robert J. Costello
Counsel for Stephen K. Bannon

9