# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL NO. 21-cr-670** |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE

In his opposition to the Government's motion in limine, ECF No. 94, the Defendant reveals that his trial strategy will be exactly what the Government's motion anticipated and what the Court must prevent: to expose the jury to as much irrelevant, prejudicial material as possible, in hopes of nullification.  Because the Defendant, the proponent of his desired evidence, has failed to meet his burden to establish its relevance and propriety, it should be excluded and the Government's motion should be granted.

## I.    Irrelevant Arguments Have No Place In a Criminal Trial.

By opposing the Government's motion even with respect to the most undisputed tenets of criminal law—for example, that potential punishment is not relevant to a jury's consideration of whether a defendant committed the charged crime—the Defendant makes clear that unless ordered otherwise, he has no intention of abiding by the law or the Federal Rules of Evidence at trial.  The question for the jury to decide in this case is whether the Defendant received a subpoena and refused to appear.  The question is not whether the Committee members are politicians; whether defiance of a congressional subpoena is worthy of the punishment provided by law; or whether the Defendant's attorney should have participated in a voluntary interview with the Government.  Yet, throughout his opposition, the Defendant claims, based on inapposite caselaw or on no authority at all, that he should be permitted to introduce this and other irrelevant evidence.  But that is not

how a criminal trial works. "To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means." Fed. R. Evid. 103(d). "Pretrial motions *in limine* effectuate [Rule 103(d)'s] directive," and a "'pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations.'" *United States v. Zeese*, 437 F. Supp. 3d 86, 92 (D.D.C. 2020) (quoting *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980)). The Court should make it clear to the Defendant that he cannot treat the Judiciary like he did the Congress—by flouting clear rules requiring him to proceed otherwise. The Government's motion in limine to exclude improper and prejudicial arguments should be granted.

### A.    Cross-Examination About a Witness's Political Leanings

The Defendant's opposition makes clear that he plans to cross-examine Committee witnesses called by the Government about a number of irrelevant and prejudicial matters, including the "contested" Presidential election, extraneous political disputes surrounding the Committee, and the political party and views of the witness and Committee members.

The Defendant claims the evidence he seeks to admit goes to "bias" and relies on the Supreme Court's decision in *United States v. Abel*, 469 U.S. 45 (1984), to argue that he should be allowed to delve into the individual motives of members of the Committee in conducting the January 6 investigation or the mere political affiliations of the witnesses. *See* ECF No. 94 at 3-4. But the Defendant does not acknowledge *Abel*'s definition of "bias" evidence as evidence that there may be something causing the witness to testify inaccurately or incompletely. 469 U.S. at 52 ("Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."). The Defendant does not explain how the mere fact that

a witness identifies with a particular political party meets this definition, and *Abel* does not support the Defendant's claim. In that case, it was the witness's and the defendant's common membership as "brothers" in a gang whose tenets required members to lie on behalf of "brothers" that the Court found to be probative of bias. 469 U.S. at 52-54. Identification with a political party is not the same as membership in a gang where "brotherhood" and lying are essential to its identity. *See United States v. Arias-Izquierdo*, 449 F.3d 1168, 1180 (11th Cir. 2006) (distinguishing *Abel* from claims of bias based on party affiliation because "the witnesses' membership in the Communist party did not, by definition, impugn their credibility. Membership in a political party, by itself, does not necessarily signify anything about a person's truthfulness and is thus distinguishable from 'a secret prison sect sworn to perjury and self-protection.' (quoting *Abel*, 469 U.S. at 54)).

The Defendant's reliance on the D.C. Circuit's decision in *United States v. Foster*, *see* ECF No. 94 at 4-5, is equally unavailing. The selected quote the Defendant includes merely reinforces the meaning of "bias" articulated by the Supreme Court in *Abel*—whether there is something causing a witness to testify inaccurately. The issue decided in *Foster*, however, was whether a defendant was entitled to cross-examine a law enforcement witness about his physical vantage point for observing illegal drug transactions about which he testified, *see* 986 F.2d 541, 543-44 (D.C. Cir. 1993)—shedding no light on the probative value of an individual's political party affiliation.

The Defendant also suggests he should be allowed to cross examine witnesses—although he does not identify which ones—about Members of Congress' book deals or public statements about the Defendant that Members or President Biden have made. ECF No. 94 at 5-6. If any of these individuals were Government witnesses, their particular views of the Defendant may be relevant bias evidence, but the Government does not plan to call any Members of Congress or

3

President Biden to testify in its case-in-chief. And the Defendant offers no authority to counter the Government's motion that he should be excluded from cross-examining testifying witnesses about whether non-testifying witnesses might have a basis for testifying inaccurately should they be called. *See* Gov't Mot. in Limine, ECF No. 85 at 6-7 (collecting cases on the impropriety of impeaching non-testifying witnesses).

At bottom, the Defendant's purported bias evidence fosters arguments to the jury that the Committee was improperly picking on him by issuing him a subpoena, expecting him to comply, and referring him for contempt when he refused. *See, e.g.*, ECF No. 94 at 5 (claiming as evidence of bias that the "Select Committee refused to engage in the constitutionally mandated accommodation process with Mr. Bannon, in contrast to its dealings with other subpoenaed witnesses."); *id.* at 6 ("The subsequent full-House vote to refer Mr. Bannon to the U.S. Attorney's Office for prosecution was largely along party lines."). The Defendant does not appear to contest, however, the authority the Government cited in its motion in limine that selective prosecution claims are improper issues for juries to decide, *see* Gov't Mot. in Limine at 3-4. His attempt to recharacterize his selective prosecution claims regarding the political makeup of the Committee as "bias" evidence should be rejected and the Government's motion granted.

### B.    Investigatory Tactics

The Defendant tries to avoid established precedent that claims of government misconduct are not proper questions for a jury, *see* Gov't Mot. in Limine at 7, by pointing this Court to inapposite cases holding that defendants should be allowed to obtain and elicit testimony about evidence investigators may have missed or minimized that would tend to exonerate them. *See* ECF No. 94 at 7 (citing, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 446 (1995) (finding the defendant would have benefited from presenting evidence that a government informant who identified the

defendant as the murderer had given inconsistent statements, and that evidence suggested the informant may have committed the offense); *Carriger v. Stewart*, 132 F.3d 463, 481 (9th Cir. 1997) (finding evidence tending to support the defendant's claim that the government's cooperating witness committed the charged murder was *Brady* material)).  In *United States v. Sager*, for example, the primary case on which the Defendant relies, the lead agent investigating the defendant's mail fraud testified multiple times, in an inconsistent fashion, about whether an eyewitness to the fraud had confidently identified the defendant from a photo display.  227 F.3d 1138, 1142 (9th Cir. 2000).  When the defense sought to cross-examine the agent about the inconsistencies and apparent failures to pursue certain leads and corroborate certain evidence, the judge granted a government objection and instructed the jury not to "grade" the investigation.  *Id.* at 1143.  The Ninth Circuit determined the court had erred because it had prevented the jury from considering the apparent problems in the agent's investigation and testimony, and it was a circumstance in which "the probative force of evidence depends on the circumstances in which it was obtained and those circumstances raise a possibility of fraud." *Id.* at 1145.  That is, in *Sager*, whether the agent had conducted a thorough investigation, and was testifying accurately, was an issue probative of the defendant's guilt or innocence—including whether the agent had identified the right suspect.

Despite citing these cases, the Defendant then reveals, however, that he plans to do exactly what the law forbids: falsely tell the jury that "[a]t every stage of this case, the investigators have over-reached" and improperly imply that the Government committed misconduct in obtaining evidence relating to Mr. Costello's role in the offense.  ECF No. 94 at 7 and n.5.  If the Defendant wishes to question testifying case agents about evidence they collected or ignored that tends to show the Defendant did not commit the offenses charged, he is free to do that.  He cannot, however,

relitigate his claims that the Government "over-reached" by obtaining non-privileged material relating to a fact witness in this case because it does not bear on his guilt or innocence.

### C. Commentary on Absent Witnesses

The Defendant's argument for why he should be allowed to tell the jury that certain congressional witnesses raised a valid Constitutional privilege against compulsion is that he "simply thinks that it is proper for the jury to hear." ECF No. 94 at 8. There is no legal support for what the Defendant deems "proper" argument here and the Defendant cites none. In fact, because whether a witness has invoked any available privilege against compelled testimony has no bearing on the Defendant's guilt or innocence, the Defendant's presentation of the invocation is just the opposite of what the Defendant claims: an improper consideration for the jury. *See Bowles v. United States*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (finding trial court properly prevented defense from calling a witness to force him to assert his Fifth Amendment privilege in front of the jury and prevented both parties from arguing to the jury regarding the witness's absence because "[i]t is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege").

Instead of providing authority that supports his opposition to the Government's motion to preclude improper argument, the Defendant instead spends the majority of his argument addressing the Government's motion on missing witness claims to suggest that he will move for dismissal if the Court quashes his over-broad subpoenas to congressional witnesses. ECF No. 94 at 8. This claim was easily anticipated; the Defendant's counsel provided an interview to a journalist in which he stated he "liked the specter" and "optic" of forcing congressional witnesses to invoke their Speech or Debate Clause privilege and suggested it was a means to obtain a trial continuance. *See* "Steve Bannon Digs Into Roger Clemens' Playbook to Try to Beat Congress," *Daily Beast*,

June 13, 2022 (statements by David Schoen).  In any event, the Government will respond fully to such a motion if and when it is filed.  But the arguments that the Defendant does make on this front in his opposition already include fatal flaws.  The Defendant attempts to analogize his situation to cases in which the executive branch withheld *Jencks* material, ECF No. 94 at 9 (*Jencks v. United States*, 353 U.S. 657, 672 (1957) (prosecution could not withhold from defendant relevant reports written by government witnesses about the subject of their testimony)), or cases in which defendants could not present information relevant and material to supporting their defense at trial, *id.* (citing *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957) (prosecution could not withhold from defendant information related to a government informer's identity when such information was relevant and helpful to defendant); *United States v. Fernandez*, 913 F.2d 148, 158-59 (4th Cir. 1990) (involving classified material that court determined was "material" and "essential" to defense); Transcript, *United States v. Rainey*, Case No. 12-cr-00291, ECF No. 510 at 284-285 (dismissing charge for obstruction of Congress after finding that congressional witnesses who refused to testify based on an assertion of their Speech or Debate Clause privilege possessed "relevant, material, noncumulative evidence" undermining an element of the offense)).  The Defendant has not established how any of the information he is seeking from congressional witnesses is relevant and material to supporting his defense, and the information is not in the Government's possession—it is in the possession of another party, another branch of government. Should the Defendant eventually pursue his arguments for dismissal through his own motion, they will fail.

### D.  Punishment

It is black-letter law that it is improper to put a defendant's potential punishment in front of the jury because it is not a proper consideration for them.  *See Rogers v. United States*, 422 U.S.

35, 40 n.2 (1975) ("[P]unishment . . . is a matter exclusively within the province of the Court and is not to be considered by the jury in arriving at an impartial verdict." (internal quotation marks and citations omitted)); *United States v. Patrick*, 494 F.2d 1150, 1153-54 (D.C. Cir. 1974) (finding error where court allowed jury to consider punishment because "it is error for the court to put before the jury any considerations outside the evidence that may influence them").  The Defendant claims, without articulating why, that he should nonetheless be able to tell the jury in his case that there is a mandatory minimum sentence associated with his crime.  ECF No. 94 at 10-11.  The "why" is clear—the Defendant is improperly seeking nullification.  In a tacit admission that the jury should not be considering such information, the Defendant suggests that the Court can just cure his improper statements to the jury with the Redbook instruction that the jury cannot consider such information.  *See* 1 Criminal Jury Instructions for DC Instruction 2.505 (2021) ("Possible Punishment Not Relevant").  The Court must reject the Defendant's invitation to allow incompetent evidence in front of the jury.  *See, e.g.*, Fed. R. Evid. 103; *United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming exclusion of evidence that only would invite nullification).

### E.    Information Relating to Other Contempt Referrals

The Defendant asserts that evidence related to the Department of Justice's decision regarding contempt referrals of other individuals, with their own individual facts and circumstances, is "essential evidence," and "bears on the elements of this offense or our defenses," but does not say how.  ECF No. 94 at 11.  That is because there is no way that subsequent, different instances of contempt can tell the jury anything about whether the Defendant received a subpoena and deliberately refused to appear or produce records as required.  The Defendant's conclusory assertions to the contrary cite no authority or reasoning and should be rejected.

### F.      Statements of Counsel

The Defendant opposes the Government's motion to prevent his counsel from referencing their experience and improperly bolstering their arguments with it.  Like his arguments about introducing evidence relating to potential punishment to the jury, the Defendant asserts that any improper argument his counsel may make to the jury about counsel's life experience can be cured with an instruction.  *Id.* at 12.  The Defendant's arguments again invite the Court to disregard its obligations to ensure the parties present the jury with only relevant evidence and arguments and his invitation should be rejected.

## II.      Questions of Law Are Not for the Jury.

The Defendant opposes the Government's motion to preclude him from presenting evidence or arguing to the jury about pure questions of law.  To support his opposition, the Defendant states only that the Government is responsible for proving the elements of the offense. ECF No. 12-13.

The Government's motion is not based on a claim that it should be relieved of its obligation to prove the elements of the offense.  The Defendant does not engage with or articulate a response to the Government's actual motion—that the issues of whether the Defendant had a valid privilege excusing him from any form of compliance; whether the Committee's investigation is a constitutional exercise of Congress's powers; and whether the Rulemaking Clause requires legal deference to Congress's interpretation of its rules are legal questions only, not factual or mixed questions, and so are not appropriate for jury resolution.  Indeed, the Defendant still has not articulated how a jury would be asked to decide questions of constitutional law.  Moreover, these constitutional questions are not elements of the offense.  For example, the Government is not required to prove as an essential element of the offense that the Defendant had no valid

constitutional privileges, such as executive privilege, to raise in response to the subpoena, because constitutional privileges, like committee rules providing process protections, are defenses to compliance that can be waived, not essential elements. *See, e.g.*, *Hutcheson v. United States*, 369 U.S. 599, 607, 610-11 (1962) (describing a Fifth Amendment claim against answering congressional questions as a "constitutional challenge" to the conviction and finding the defendant had waived the challenge by not raising it before the relevant committee).   The Defendant's inability to offer authority to support his position that these questions should be submitted to the jury demonstrate the lack of merit to his opposition to the Government's motion.   The Government's motion to preclude the Defendant from arguing questions of law to the jury should be granted.

## III.   Conclusion

The Defendant suggests there is no cause for concern about an orderly trial in this case, but his actions have shown the opposite.  In his opposition, he repeatedly argues he should be permitted to submit irrelevant and inflammatory information to the jury, in clear contravention of the law. In his submission of jury instructions in the parties' joint pretrial statement, the Defendant asks the Court to instruct the jury it must find the Defendant knew his conduct was unlawful and that his defiance is excused by his attorney's purported advice, ECF No. 89 at 12, 15-16, even though the Court has already barred such claims based on binding precedent, Order, ECF No. 49.   The Defendant wants to seek nullification in this case and to ask the jury to stand in the place of the Court when it comes to deciding the law.  The Court should grant the Government's motion in limine to prevent that lawless result.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

D.C. Bar No. 481052

By:    */s/ Amanda R. Vaughn*
        J.P. Cooney (D.C. 494026)
        Molly Gaston (VA 78506)
        Amanda R. Vaughn (MD)
        Assistant United States Attorneys
        United States Attorney's Office
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 252-1793 (Vaughn)
        amanda.vaughn@usdoj.gov