**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


UNITED STATES OF AMERICA,

                                    CR Action
                                    No. 1:21-670

        vs.                         Washington, DC
                                    June 15, 2022
STEPHEN K. BANNON,
                                    10:04 a.m.

            Defendant.


        TRANSCRIPT OF IN-PERSON MOTIONS HEARING
        **BEFORE THE HONORABLE CARL J. NICHOLS**
            UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the U.S.:**        **AMANDA ROSE VAUGHN**
                         **J.P. COONEY**
                         **MOLLY GULLAND GASTON**
                          U.S. ATTORNEYS OFC. FOR D.C.
                          555 4th Street NW
                          Washington, DC  20001
                          202-252-1793


**For the Defendant:**   **DAVID I. SCHOEN**
                          DAVID I. SCHOEN, ATTORNEY AT LAW
                          2800 Zelda Road, Suite 100-6
                          Montgomery, AL  36106
                          334-395-6611

                         **MATTHEW EVAN CORCORAN**
                          SILVERMAN THOMPSON SLUTKIN WHITE
                          201 N. Charles Street, 25th Floor
                          Baltimore, MC  21201
                          410-385-2225

                         **ROBERT J. COSTELLO**
                          DAVIDOFF HUTCHER & CIRTON LLP
                          605 Third Avenue
                          New York, NY  10158
                          646-428-3238

Reported By:                    **LORRAINE T. HERMAN, RPR, CRC**
                                Official Court Reporter
                                U.S. District & Bankruptcy Courts
                                333 Constitution Avenue, NW
                                Room 4700-C
                                Washington, DC 20001
                                lorraine_herman@dcd.uscourts.gov

*** Proceedings recorded by stenotype shorthand and this
transcript was produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2          **DEPUTY CLERK:**  Please be seated and come to order.

3          Good morning, Your Honor.  This is criminal case

4     year 2021-670, *United States of America vs. Stephen K.*

5     *Bannon*.

6          Counsel, please come forward and introduce

7     yourselves for the record, beginning with the government.

8          **MS. VAUGHN:**  Good morning, Your Honor.  Amanda

9     Vaughn, Molly Gaston, and J.P. Cooney for the United States.

10         **THE COURT:**  Good morning, Counsel.

11         **MR. SCHOEN:**  Good morning, Your Honor.

12         I'm David Schoen, Matthew Corcoran, Bob Costello,

13    Mr. Bannon, Riane White; that's for the defense.

14         **THE COURT:**  Good morning, Counsel.

15         **MR. SCHOEN:**  Thank you.

16         **THE COURT:**  We are here on five motions, I

17    believe.  We are here on, obviously, Mr. Bannon's Motion to

18    Dismiss, which is ECF No. 58 and then a series of other

19    motions, ECF Nos. 52, 54, 55 and 56.

20         Here is how I would like to proceed.  I would like

21    to hear first from Mr. Bannon's counsel on all of the

22    topics; that is to say, on the arguments Mr. Bannon has

23    advanced to dismiss the indictment and to exclude evidence

24    obtained from Mr. Costello, and then also to respond to what

25    the government has argued in its motions.  A number of the

1    questions are obviously interrelated, so I don't think that

2    is a problem to do.

3         I will then hear from the government on all of the

4    issues.  I will allow Mr. Bannon's counsel to have a brief

5    opportunity to respond, and then the government, as

6    warranted, can have a very short surrebuttal.

7         Everyone should know that obviously this is not

8    the first time I've taken up a motion in this case.  I'm

9    very familiar with the papers, so the parties need not

10   repeat everything that's in them.  I'd like to focus on the

11   most salient arguments.

12        As you can expect, I have a series of questions

13   for each side, but I also don't have a strict time limit.  I

14   don't want this to be an overly long hearing, because I do

15   have a pretty good idea of the issues, but I don't want to

16   unduly limit anybody's opportunity to make arguments they

17   would like.

18        So, Mr. Schoen, is that going to be you first, at

19   least?

20        **MR. SCHOEN:**  I'm the emcee, Your Honor.

21        **THE COURT:**  You're the emcee.  Okay.

22        **MR. SCHOEN:**  We're going to split it up if you

23   don't mind, Your Honor, so I'm going to deal with the

24   constitutional issues, entrapment by, you know, the --

25   sorry.

1          **THE COURT:**  Yes, you may remove your mask for sure

2     at the podium, please.

3          **MR. SCHOEN:**  Yes, Your Honor.

4          I am going to deal with two issues, the what we'll

5     call public authority entrapment by estoppel issues, and the

6     constitutional challenge as applied issues, and then

7     Mr. Corcoran is going to deal with everything else, their

8     motions and the rest of ours, the rules-based arguments and

9     all the rest of it.

10          **THE COURT:**  Very well.

11          **MR. SCHOEN:**  I think it's better if he goes first.

12          **THE COURT:**  Happy to hear from Mr. Corcoran first.

13          **MR. SCHOEN:**  Thank you, Your Honor.

14          **MR. CORCORAN:**  Good morning, Your Honor.

15          **THE COURT:**  Good morning.

16          **MR. SCHOEN:**  I think the key point with regard to

17     our Motion to Dismiss and the rules-based arguments is that

18     the rules matter, and the Supreme Court has said, um, that

19     in a criminal context, the rules of the House of

20     Representatives should be strictly construed.

21          That's really what we're asking for.  We talk

22     about the composition of the Committee.  We talk about the

23     lack of a ranking minority member, and then -- so I want to

24     essentially address those two things first.

25          Our raising the composition of the Committee is

1    not asking the Court to substitute your judgment for who

2    should sit on that Committee.  Instead, it's to require --

3    in order for there to be a criminal prosecution that follows

4    the issuance of a subpoena, require the House to abide by

5    its own rules.  And in terms of the composition of the

6    Committee, the word "shall" was used.  "The Committee shall

7    have 13 members," and it doesn't.  It has nine.

8         From time to time, other Committees don't have the

9    allotted members where there's a death or somebody resigns

10   and so on and so forth, but that's not what happened here.

11   Thirteen members were required, and there are only nine

12   members.

13        An analogy, I guess -- and you might say, Well,

14   what's the prejudice to Mr. Bannon from not having the

15   additional four members?  And the key there is that he

16   doesn't have to show prejudice.  It's sort of like the

17   Supreme Court cases in the same criminal context, where a

18   quorum was not present or, you know, where a perjury

19   conviction follows the lack of a quorum.

20        The Court doesn't ask, Well, what if there had

21   been the additional members that made up a quorum?  How are

22   you prejudiced?  Maybe those members wouldn't have been in

23   your favor anyway.  It's the actual violation of the rule.

24        **THE COURT:**  Do you concede that the word "shall"

25   can sometimes mean "may"?

1          **MR. CORCORAN:**  No.

2          **THE COURT:**  No?  But didn't the Supreme Court say,

3     in cases like *Gutierrez de Martinez*, this is a quote,

4     "Though 'shall' generally means 'must', legal writers

5     sometimes use 'shall' to mean 'should, 'will' or even

6     'may'." The Supreme Court said that.

7          **MR. CORCORAN:**  I understand that, but in context,

8     "shall appoint 13 members" is not the same kind of wiggle

9     room where "shall" is used as described by the Supreme

10    Court.  It's -- you know, there's not a lot of room for

11    leeway.

12          When the House voted on the resolution, there was

13    an understanding that there were going to be -- that there

14    was going to be some minority representation that would be

15    substantial to protect the rights of the minority.

16          **THE COURT:**  If the House, after House Resolution

17    503 and after the Committee was composed said, Expressly, we

18    believe the Committee, as composed by nine members, is

19    consistent with House Resolution 503 -- imagine that

20    hypothetical -- wouldn't I have to defer to that House view

21    of its own rules, assuming they said it expressly?

22          **MR. CORCORAN:**  I think if the House -- for

23    instance, if there was a vote on it and the House voted -- a

24    majority of the House voted that nine members satisfied the

25    authorizing resolution, yes.

1    **THE COURT:**  But don't the contempt resolutions and

2    referrals, as to Mr. Bannon, Mr. Navarro, Mr. Meadows,

3    Mr. Scavino, at least implicitly conclude that the rules

4    were complied with?

5    **MR. CORCORAN:**  Not at all.

6    **THE COURT:**  Why is that?

7    **MR. CORCORAN:**  Because members, when each of those

8    contemporary resolutions were debated, specifically said

9    that the Select Committee was not properly authorized.

10    **THE COURT:**  But those arguments were -- did not

11    prevail, so that issue was discussed at the full House

12    level.  It was not not discussed.  And the House,

13    nevertheless, voted to make or voted to take those actions

14    notwithstanding those arguments.

15    So why don't we view -- why shouldn't I view that

16    as the full House having rejected, at that time, the

17    argument that the Committee was invalidly constituted?

18    **MR. CORCORAN:**  Because it wasn't squarely

19    presented to the House for a vote.

20    I understand your question.  I do.  But unless the

21    specific question is put to the House, which it may be in

22    the next Congress, you know, something like that may be

23    considered.

24    But to say that a contempt resolution means that

25    the House of Representatives is on record as saying that the

1      Select Committee with nine members is duly authorized under

2      the rules of the House, would not be proper.

3              **THE COURT:**  Is this a jury question?  Isn't an

4      element of the offense here that the Subpoena had to have

5      been validly issued?

6              And we know, from Justice Scalia's opinion in

7      *Gaudin*, that pertinency, which used to be a judge question,

8      is actually a question for the jury.  And at least the

9      background, very strong background, principle is that

10     elements of the offense go to the jury.

11             Is the question of whether the Subpoena was

12     validly issued here a jury question?

13             **MR. CORCORAN:**  I don't think.  Let me answer it

14     this way:  I don't think the Court is precluded from finding

15     that the Committee, the Select Committee, lacked proper

16     authority or that the Subpoena was not validly issued.

17             **THE COURT:**  Wouldn't that be taking an issue away

18     from the jury?

19             **MR. CORCORAN:**  Not at all if it's raised in the

20     defendant's favor.

21             Now, it's a different question if you decide not

22     grant our motion on that basis, then we wouldn't be able to

23     still present evidence on that to the jury.  So it's a

24     slightly different issue.  So our position on the Committee

25     goes beyond, obviously, the 9 members or the 13 members.

1          **THE COURT:**  Understood.  That's the easiest one to

2     talk about.

3          **MR. CORCORAN:**  Right.

4          **THE COURT:**  But your argument is, at least in

5     general, equally applicable with respect to ranking minority

6     member, for example.  I mean, there are slightly different

7     versions of the same general argument.

8          **MR. CORCORAN:**  I think so.  It's a little bit

9     stronger or more specific to a criminal defendant, the

10     ranking minority member issue, because ranking minority

11     member appears at many places in the rules.  And in each

12     case it's meant to protect the rights of the minority as

13     well as the rights of the witness.

14          When there's questioning of a witness, for

15     instance, the ranking minority member has the ability to

16     participate in that questioning or to designate counsel to

17     participate.  So these are things that were negotiated over

18     decades -- you know, decades, really, in order to protect

19     the rights of the minority and the rights of witnesses.  And

20     so it's a really -- it's a very, very important thing.

21          I know that the government has said at different

22     times that, in their view, it's -- ranking minority members

23     is only senior members of the minority, but that's not true.

24          And this Court, again, is well positioned to not

25     make rules for Congress but interpret the rules that they've

1      made and hold them to those rules.

2              **THE COURT:**  What's the standard that I should be

3      applying in this case in reviewing whether and to what

4      extent Congress or the January 6th Committee was constituted

5      consistent with the rules?  Is it *de novo* or do I have to

6      defer, in some respect, to either the Committee, the Speaker

7      or the House as a whole?

8              **MR. CORCORAN:**  Well, on questions of construction

9      of the language of a statute, it's *de novo*.

10             **THE COURT:**  I'm talking about construction of

11     House Res 503.

12             **MR. CORCORAN:**  Yeah, absolutely and I'd say it's

13     *de novo*.

14             **THE COURT:**  But wouldn't that run afoul of the

15     rulemaking clause in the constitution?

16             **MR. CORCORAN:**  No.  We're not --

17             **THE COURT:**  But isn't that my usurping the power

18     of Congress to, or the House, to decide what its own rules

19     mean?

20             **MR. CORCORAN:**  Not at all.

21             We're not asking you to impose any rule on

22     Congress.  What we are asking you to do is, before

23     Mr. Bannon is -- faces the removal of his liberty, based on

24     actions by Congress, that you accord to him due process,

25     which requires notice, for instance, notice that, if he's

1    going to be held in contempt by the Congress, that they are

2    going to have to follow their rules, issue a valid subpoena,

3    have consultation with the ranking minority member,

4    et cetera, et cetera.

5            And so you don't owe any deference to the House's

6    construction of their rules when you're deciding how they

7    play out.  It's been handed over to the criminal justice

8    system.  And you're in a position, *de novo*, to see what

9    those rules mean.

10           **THE COURT:**  So the -- so that means that the

11   deference an Article III Judge, like me, would give to the

12   House's interpretation of its own rules is different in the

13   criminal than in the civil context?

14           **MR. CORCORAN:**  Absolutely.

15           **THE COURT:**  Why?  What's your authority for that

16   proposition?

17           **MR. CORCORAN:**  Well, my authority is that -- I

18   believe we cite in our brief *Yellin*, which says that the

19   Committee must be "meticulous in obeying its own rules."

20   That's *Yellin*, 374 U.S. at 124.

21           We also cite *Christoffel*, which it says, "the

22   question is" -- delete the next part -- "what rules the

23   House has established and whether they have followed them."

24   And that's 338 U.S. at 86 to 89.  Those are criminal cases

25   and --

1      **THE COURT:**  But did the Court say that, in

2  deciding those questions, that no deference is due?

3      **MR. CORCORAN:**  No, not at all.

4      Just as any time you're interpreting or construing

5  language, they didn't get into deference, basically.  But --

6  I mean, I think that a key case on deference in -- or what

7  standard would apply would be the *Rostenkowski* case.  In

8  that case, a member of Congress was facing criminal charges,

9  and the issue was, did he properly use his House clerk's

10  allowance for official duties or for personal things?

11      And the Court of Appeals of D.C. Circuit basically

12  looked at the House rules and recognized that, in some

13  context, the nature of a Congressman's life might make it

14  hard, it might make it somewhat ambiguous to read a rule and

15  apply it in a criminal case.

16      However, when it's unambiguous, then the Court

17  said, We're going to do what we've always done since *Marbury*

18  *versus Madison* --

19      **THE COURT:**  What was the rule at issue in

20  *Rostenkowski*?

21      **MR. CORCORAN:**  What was the rule?  It had to do

22  with official duties.  Were the funds drawn on official

23  duties?

24      **THE COURT:**  Right.  So in a way, that was the

25  substantive question that was presented to the Court.  Here,

1   we are presented with essentially a procedural question

2   about whether the House complied with its own rules

3   procedurally.  Why isn't that at least arguably different?

4          In other words, if the House has some substantive

5   rule, you shall not use money for this purpose, and then

6   they say that someone did and there's -- maybe there's even

7   a criminal sanction being sought for the person having done

8   that, then you have to look hard at whether substantively

9   the rule is ambiguous or not.

10          But here we're talking about a procedural

11   question.  The procedural question isn't imported, really, I

12   don't think, into the -- not directly at least in the same

13   way -- to the elements of the charge here.

14          Why isn't some deference due by me to the House

15   saying, Our rules mean, in our view, X, and we complied with

16   them here or procedural rules.

17          **MR. CORCORAN:**  Well, I don't just see it just as a

18   procedural issue.  I see it as an element of the offense.

19          As you started our questioning, it's in the

20   Indictment itself that it's got to be Stephen K. Bannon,

21   having been summoned as a witness by the authority of the

22   U.S. House of Representatives; and that's going to have to

23   be an element of offense.

24          **THE COURT:**  For purposes of Motion to Dismiss the

25   Indictment, aren't I supposed to look at only the four

1    corners of the Indictment?  Doesn't the Indictment, at least

2    by its terms, state that the Subpoena was validly issued?

3         **MR. CORCORAN:**  Well, that could never be -- in

4    that case, the government would simply put a paragraph in

5    every indictment saying, This indictment is valid.  And you

6    wouldn't be able to look any further.

7         **THE COURT:**  No, I think they have to do more than

8    that.  I've held in another case that the government has an

9    obligation to have some meat on the bone of the facts.

10        **MR. CORCORAN:**  Yea.

11        **THE COURT:**  But did the government have to allege

12   here, for example, that there were 13 members of the

13   Committee in your view?

14        **MR. CORCORAN:**  I don't think so.  But when we

15   challenge it, you can certainly look at that.  You can

16   certainly look at the authority of the Committee and whether

17   it was properly filed, and the same with the ranking

18   minority member.

19            On the ranking minority member issue, I just want

20   to emphasize that, you know, it's a term of art.  But two of

21   the words are pretty straightforward.  Member means a member

22   of the Committee.  Minority means somebody in the minority.

23   So what does ranking mean?  Well, it's not seniority.

24            In the Army, if you -- rank is conferred.  Rank is

25   granted.  Rank is earned.  And so, in the same way under

1    both the democratic rules and the republican rules in the

2    House, there is a process for granting the rank of the

3    ranking minority member on the Committee.  And that process

4    is either, for the democratic, if they're a minority, it's a

5    secret ballot.  If it's in the republicans --

6           THE COURT:  Is the implication of this argument

7    that everything the January 6th Committee has done is

8    invalid?

9           MR. CORCORAN:  No.  I'm speaking directly to one

10   subpoena that was --

11          THE COURT:  But every subpoena that this Committee

12   issued would be challengeable and unlawful on this argument.

13   Correct?

14          MR. CORCORAN:  Yes.

15          THE COURT:  And if someone wished not to appear

16   because of this argument, they would have a legitimate

17   argument not to do so.  Correct?

18          MR. CORCORAN:  Absolutely.

19          THE COURT:  There is no distinction between the

20   Subpoena here and any other subpoena the Committee has

21   issued, as far as you know?  The implication of the holding

22   would be that every single subpoena, request for

23   information, deposition that the Select Committee has taken

24   was unlawful, unauthorized.  Correct?

25          MR. CORCORAN:  I'd have to see all of the

1   subpoenas, but I think --

2          **THE COURT:**  But if the Committee has never had 13

3   members --

4          **MR. CORCORAN:**  Correct.

5          **THE COURT:**  -- in your view, it is -- the

6   Committee has never been validly constituted.

7          **MR. CORCORAN:**  That's correct.

8          **THE COURT:**  Then unless the House had taken the

9   express step that we discussed earlier, then every single

10  subpoena, unless there's something unique about a particular

11  subpoena, would be unlawful in your view?

12         **MR. CORCORAN:**  In my view, any person who received

13  a subpoena by the Select Committee, as it's currently

14  constituted, could move to quash that subpoena as invalid.

15         **THE COURT:**  The government argues that Mr. Bannon

16  waived at least some of these objections by not presenting

17  them to the Committee.  So can you walk me through your

18  argument against that position?

19         **MR. CORCORAN:**  Well, yeah.  Well, again, a

20  defendant can't waive an element of the offense.  It's

21  always going to be -- the burden is always going to be on

22  the government to prove beyond a reasonable doubt every

23  element of the offense.  And as I've said, authority of the

24  House -- that this subpoena was issued on the authority of

25  the U.S. House of Representatives is an element of the

1      offense.  You can't waive that.

2              They've raised -- I think the only area where

3      they've raised an objection and said, You should have raised

4      it at the time, was (3)(b), Section (3)(b), and the receipt

5      of the rules on deposition authority.  And there, again, the

6      language of that rule is not open to interpretation.  It

7      says, A witness doesn't have to testify unless they receive

8      those materials.  And it's not in dispute that he didn't

9      receive those materials here.

10             **THE COURT:**  You're talking about the materials

11     before testifying?  I think the House, through its amicus

12     brief and the government, say, Well, we could have complied

13     with that rule by handing the materials to Mr. Bannon before

14     his testimony if he had showed up; and that would be

15     consistent with the rule.

16             **MR. CORCORAN:**  Absolutely.

17             There are other rules of the House, for instance,

18     that deal with hearings.  And those rules -- and I think

19     it's Rule 10 of the Rules of the House -- in that case it's

20     a different rule.  It says, A witness must be provided with

21     the Rules of the Committee, comma, upon request.

22             In other words, Congress knows how to make a rule

23     that has an out.

24             **THE COURT:**  No, I get that.  I think I'm asking

25     you a different question, which is that your argument was

1    that Mr. Bannon was required to have been provided with

2    certain information before he testified at the deposition or

3    the requested deposition.  And the government's response is,

4    We didn't violate that rule.  If he had shown up, we would

5    have provided it to him; that was the plan or at least we

6    can prove that was the plan at trial.

7            So there's not even going to be a legitimate

8    argument that that rule was violated.

9            **MR. CORCORAN:**  I don't think that's correct.  I

10   mean, I think we have looked at --

11           **THE COURT:**  Why?

12           **MR. CORCORAN:**  Because, I don't think that's what

13   the rule requires.  I don't think that handing a potential

14   deponent complicated Rules of Procedure on his or her way in

15   to testify in front of a Congressional Committee is what's

16   contemplated by that rule.

17           I want to say one thing, because you did reference

18   the amicus brief.  And when I read the two briefs, one by

19   the majority and one by the minority, I was reminded of

20   Lincoln's famous adage, "A house divided against itself

21   cannot stand."

22           And the reason I thought of that is because, when

23   the minority filed their brief, they said that adopting the

24   position, if this Court --

25           **THE COURT:**  Well, let me just be clear --

1           MR. CORCORAN:   Yeah?

2           THE COURT:   In your view, is that amicus brief

3    from the minority or is it just from two members of the

4    minority?

5           MR. CORCORAN:   It's from the minority whip and the

6    minority leader, so two members.

7           THE COURT:   Well, I don't know whether the

8    minority party can act as an entity.

9           MR. CORCORAN:   Absolutely.

10          THE COURT:   I don't think it matters but for

11   nomenclature purposes it is styled as a brief from two

12   people.

13          MR. CORCORAN:   Absolutely.  And they're not just

14   anyone --

15          THE COURT:   Yes.  Understood.

16          MR. CORCORAN:   -- in the sense that they're

17   members of this bipartisan legal advisory group, which has

18   five members.  And so they are the two minority members on

19   that group, which gets to decide whether a brief can be

20   filed in litigation on behalf of the House.

21               When that group, BLAG, met to decide whether to

22   file an amicus brief in this case, two of the members, the

23   minority members, said -- and it's in a footnote in their

24   motion to relieve to file -- that the filing of that brief

25   would harm the institution of Congress.

1      They then decided, We're going to file our own

2   brief.  And in that brief, they stated that adopting the

3   position of the majority brief could damage the institution

4   of Congress.

5      And I say that -- and that's what led me to this,

6   "House divided against itself cannot stand" -- for the Court

7   to rely on an amicus brief under circumstances where two

8   members of the bipartisan legal advisory group have said

9   it's going to harm -- that adopting the position in the

10  amicus brief would harm the institution of Congress is not

11  something that is advisable.

12  **THE COURT:**  I mean, the House is litigating as a

13  party in a bunch of cases in this district right now.  The

14  House or the Committee.  I assume it's not doing so with 100

15  percent bipartisan support as a party even.

16  **MR. CORCORAN:**  This is a criminal case.  It's

17  totally different.  This is not a curling match on ice where

18  the members of the majority get to sweep to try to make the

19  rock go into the circle.

20     They let go of -- they should have let go of this

21  when the vote was done on contempt and let this Court do its

22  job.  And that's why we're chal -- that's why we found it

23  highly unusual that these amicus briefs were filed, and we

24  find it incredibly helpful that the brief filed by the

25  minority whip and the minority leader states, "The House

1    general counsel's brief misstates the law and misrepresents

2    the complete position of the House."  That's Doc. 75-2, *et*

3    *seq.*  And I'm just saying that, under those circumstances,

4    it would be, in our view, a grave error to rely on what's in

5    that brief.

6             **THE COURT:**  I don't think you should worry about

7    me relying heavily on what's in either of those briefs.

8    They are amicus briefs.  They are arguments presented by

9    nonparties.

10            **MR. CORCORAN:**  Yeah, sometimes we have to say no

11   to friends.

12            Okay, let me turn to the other part of the -- I

13   think what we'll do, I'm going to direct my comments right

14   now to the Motion to Dismiss as it relates to the Costello

15   records.

16            **THE COURT:**  Yes.

17            **MR. CORCORAN:**  And then Mr. Schoen can speak to

18   the OLC issues and ambiguity.

19            **THE COURT:**  Yes.

20            **MR. CORCORAN:**  And then I'll come back and talk

21   about the Motions to Exclude at the end.  So Motion to

22   Dismiss first.  Okay.

23            **THE COURT:**  So what of the issues in the Motions

24   in Limine do you intend to address?

25            **MR. CORCORAN:**  Any that the Court has questions

1    about.  I mean, I think our overall -- if the Court

2    doesn't --

3            **THE COURT:**  So it seems to me that the Motions in

4    Limine cover three topics generally.

5            **MR. CORCORAN:**  Yes.

6            **THE COURT:**  One is a hot topic that Mr. Schoen is

7    very likely going to discuss.

8            **MR. CORCORAN:**  Right.

9            **THE COURT:**  The next one is about Mr. Bannon's

10   prior experience with subpoenas.

11           **MR. CORCORAN:**  Right.

12           **THE COURT:**  Are you going to address that?

13           **MR. CORCORAN:**  I can address that.

14           **THE COURT:**  I think I'd like you to address that

15   after you address the Costello question.

16           **MR. CORCORAN:**  Okay.

17           **THE COURT:**  And then we've already been discussing

18   waiver.  I don't know that there's much to add on that

19   question.

20           So here's what I'd like to do, if it's okay with

21   you, is to have you address the Costello question.  You

22   address the Motion in Limine relating to Mr. Bannon's

23   experience with subpoenas, and then we can go to Mr. Schoen

24   to do all of the other legal issues and as it relates to the

25   indictment question and the Motions in Limine.  Okay?

1              **MR. CORCORAN:**  Okay.  Yes, Your Honor.

2              With regard to the government's using the

3      outrageous investigative technique of going after

4      Mr. Costello's phone and email records, we would ask this

5      Court to dismiss the Indictment on that basis.  And the

6      reason is that, if they're allowed to do it here, they'll do

7      it in every case.

8              **THE COURT:**  What's the prejudice?

9              **MR. CORCORAN:**  Well, the prejudice --

10             **THE COURT:**  The actual prejudice in this case?

11             **MR. CORCORAN:**  The actual prejudice is that a

12     wedge was driven between Mr. Bannon and his lawyer.

13             I grew up on a farm, Your Honor, in Illinois.

14     There was an electric fence on the farm.  As a little boy, I

15     was asked to test it and touch it to make sure that it was

16     on, and I would do that occasionally.

17             Once you've done that, you remember how it feels.

18     And the animals, for instance, the horses and the cows, once

19     they touch the electric fence, they know how it feels.  It's

20     not that they keep running into it and that stops them each

21     time.  Once they've touched it once, they don't have to do

22     it again, otherwise we would have been repairing the fences

23     all of the time.

24             The reason I mention that is, once Mr. Bannon

25     learned that the government was going to the extraordinary

1    and outrageous step of going after Mr. Costello's phone

2    records for a month before the Subpoena was even issued by

3    the Select Committee.  Once Mr. Bannon learned that the

4    government had gone to the extraordinary steps of trying to

5    get his email information, every conversation and

6    communication that followed was like somebody having touched

7    an electric fence.  There is a chilling effect that affected

8    his representation.

9         THE COURT:  What's the closest case you have where

10   conduct of this type resulted in dismissal of an indictment

11   as opposed to exclusion of the evidence at trial, post-trial

12   sanctions, some other step?

13        MR. CORCORAN:  I think *Marshank*, which we cite in

14   the brief.

15        THE COURT:  And what happened there, exactly?  How

16   is that analogous to this case?

17        MR. CORCORAN:  Well, it was analogous because the

18   government in that case essentially turned an attorney into

19   a witness against the defendant, which is precisely what

20   they tried to do here.  And they've said that in the prior

21   hearings, and they've said it in their briefs.  They viewed

22   Mr. Costello not as an attorney but as an intermediary with

23   the Committee, as a witness to the crime.

24        And the reason why this is so outrageous for those

25   of us who spent decades doing white collar work, both

1    prosecution and defense, is that it's not the ordinary

2    course of business.

3         In a misdemeanor case, if the government is

4    allowed to, at the very start of the case, without any hint

5    or allegation or suspicion that the attorney was involved in

6    any wrongdoing at all, or was given -- you know, for them to

7    try to turn him into a witness at that point is outrageous

8    and shouldn't be allowed.

9         And if it is allowed, as we've said in our brief,

10   years from now, whenever something like that happens, the

11   *Bannon* case is going to stand for "No harm.  No foul."

12   Because that's what the government is saying, that unless

13   there is blood from what we did, we shouldn't be punished.

14   And the answer is, They should be punished.  It's

15   outrageous.

16        **THE COURT:**  I mean, the government -- I'll hear

17   from them again, I suppose, on this question.  The

18   government's view is they did nothing wrong and, in any

19   event, even if they did -- though -- I think their argument

20   is -- the relevant argument is something short of dismissal

21   of the Indictment.

22        The government is taking the position, certainly

23   as before, and I think has again, that they -- to prove an

24   element of their claims, they needed to show that Mr. Bannon

25   knew about the existence of the Subpoena.  This goes to

1    that.  Obviously, you've heard these arguments before.

2          And that, to some extent, I'm paraphrasing their

3    argument for them, they did not seek -- they didn't get to

4    the point where they sought content of communications.  And

5    so this isn't as bad at least as *Marshank*.

6          **MR. CORCORAN:**  It's not an argument that I can

7    understand how they would make with a straight face because,

8    from the very outset, from the very first communication

9    between the Select Committee and Robert Costello, he

10   acknowledged that he accepted service of the Subpoena on

11   behalf of Mr. Bannon.

12         In other words, for them to go and seek records

13   that predate that by a month is simply unbelievable.  I

14   understand that they can come into court today and say,

15   Well, Your Honor, it's routine and we're trying to prove an

16   element of the offense.  But that was not an issue in the

17   case; that's a post-hoc rationalization, I have to say.

18         **THE COURT:**  Thank you.

19         Let's discuss briefly, before we go to Mr. Schoen

20   on the Motion in Limine, about Mr. Bannon's prior experience

21   with subpoenas.

22         **MR. CORCORAN:**  Yeah, the government's motion is

23   trying to suggest that that is -- that we're trying to show

24   that his actions in this case were in conformity with prior

25   actions, and that's not it at all.

1          What we're trying to do is show what actually

2     happened here.  I mean, that's part of our mission, and we

3     should be allowed to do it in terms of presenting a defense.

4     And what actually happened here, because a key element of

5     the offense is going to be intent, what was in Mr. Bannon's

6     mind when he received the Subpoena?

7          What was in his mind when he communicated back and

8     forth with the Committee through Mr. Costello?  The

9     government's going to have to prove beyond a reasonable

10    doubt that he willfully made default.  In other words, that

11    he got the Subpoena and, whatever intent element is

12    required, that he willfully made default.  That will be

13    something that the jury will have to decide.

14         So that's saying, What was in his mind?  What was

15    in Mr. Bannon's mind?  And his prior experience is that he

16    had previously been subpoenaed to testify before committees,

17    the House Intelligence Committee, the Senate Intelligence

18    Committee, and the Mueller investigation.

19         After receiving the subpoenas, he went through a

20    process with counsel to deal with privilege issues.

21    Accommodations were reached and he testified.

22         Those prior experiences informed his thinking when

23    he received this subpoena.  And the jury has got to be able

24    to hear that.  It's not a matter of us saying, Well, he

25    testified before entities three times before.  So you should

1    think it's more likely on the fourth time he was going to

2    testify at all.  It's not conformity.

3              **THE COURT:**  In your view, it goes to his mens rea,

4    whatever that is here.

5              **MR. CORCORAN:**  Absolutely.  Which is key.  It's

6    key.  It is going to be a key issue in trial.

7              **THE COURT:**  The government argues that the mens

8    rea here, the standard is pretty low, deliberate and

9    intentional.  Although I'm not sure that that's what the

10   jury will be instructed.  It seems to be that maybe more

11   detail than that is required.

12             But assuming the government is right about that,

13   and obviously the government is relying on cases that have

14   at least said that, how does deliberate and intentional fit

15   with Mr. Bannon's experience before?

16             **MR. CORCORAN:**  Well, whatever -- that's why I sort

17   of used the term, Whatever the intent that is proved at

18   trial.  What's in his mind is critical.  And we're talking

19   about receiving a subpoena, having accommodations reached

20   and testifying.  So even if it's the level of knowing,

21   deliberate, that's going to be a key issue, and we should be

22   able to present it.

23             I mean, the trial is not -- to exclude it, I think

24   you'd have to find that it was somehow confusing to a jury

25   to hear that when it -- the instructions could handle that.

1    I mean, we're not afraid of an instruction that says, Just

2    because he did it three times before, it doesn't mean he's

3    going to do it the fourth time.  The key is what was in his

4    mind, and we have to be able to show that to the jury.

5            Again, in simple terms, a big part of our position

6    and our evidence to the jury is going to be, What really

7    happened here?

8            **THE COURT:**  Uh-huh.  Thank you, Counsel.

9            **SPEAKER6:**  Thank you.

10           **THE COURT:**  Mr. Schoen?

11           **MR. SCHOEN:**  May I proceed, Your Honor?

12           **THE COURT:**  Please.

13           **MR. SCHOEN:**  Your Honor, first of all, I'm a

14   little disheartened that we're talking about how the jury

15   might be instructed, because I'm here to tell Your Honor why

16   this case ought to be dismissed.  It's not me telling Your

17   Honor why it ought to be dismissed.  It's the Department of

18   Justice telling Your Honor why the case must be dismissed.

19           First of all, let me back up a step.  Our briefs,

20   in my view, on the entrapment by -- what we'll call public

21   authority and entrapment by estoppel defenses and on the

22   constitutional as applied on due process grounds are like

23   two ships passing in the night.  Not even close.  I don't

24   think we really joined issue on them.

25           On the due process issue, we certainly don't,

1    because I don't really even think what I am about to talk to

2    you about is even addressed in their brief.  On the

3    entrapment by estoppel, as we wrote in the brief, seems to

4    be an evolving understanding of the law by the government.

5            In the early papers, including an unrelated paper,

6    the Court was told that, for this defense to apply, there

7    has to be direct advice given by an official to the

8    defendant.  Well, that's just not right.  That ignores the

9    *PICCO* case, P-I-C-C-O, and the *Levin* case and, in my view,

10   *Barker* in this circuit.

11           But -- and I have to say, Judge, you know, again,

12   it's, in a sense, neither here nor there, but I read over

13   and over again in their briefs that we simply don't

14   understand entrapment by estoppel.

15           With all due respect, the landmark case they cite,

16   this *Abcassis* case, is my case.  I thought up the defense.

17   I made the defense.  I won the case.  Most issues in this

18   world I don't know much about, but I know something about

19   entrapment by estoppel.

20           **THE COURT:**  So let me ask you this:  I think I

21   understand the parties' respective positions, but has the

22   Department, the Department of Justice, ever said officially

23   it would not prosecute someone who was a nongovernment

24   employee at the time of the potentially privileged

25   communication for refusing altogether to appear for a

1    deposition or for refusing to produce altogether any

2    documents?

3              **MR. SCHOEN:**  Well, Judge, two things about that --

4              **THE COURT:**  Or what's the single best OLC opinion

5    you have or government opinion that says, We will not

6    prosecute someone --

7              **MR. SCHOEN:**  We have to put them together.

8              Can I just back up a step though, Judge?  I want

9    to tell you why we don't even have to get to the public

10   authority offense and entrapment by estoppel.  I want to

11   tell you why this case has to be dismissed based on due

12   process, fair notice grounds.

13             And there's zero question in my mind that this

14   argument applies.  It doesn't -- it's not affected by

15   whether the defendant is a former member, an outside member

16   and so on.  This private citizen distinction is not

17   availing, even in the entrapment by estoppel realm.

18             But for the due process argument, it's not even

19   relevant.  The due process argument is triggered when

20   executive privilege is invoked.  Period.  That's what OLC

21   has made abundantly clear since at least 1956.

22             If I could just take the Court through it for --

23   it will take me just a few minutes.

24             **THE COURT:**  Okay.  I mean --

25             **MR. SCHOEN:**  All right.

1          **THE COURT:**  I hope it's going to be tight and, I

2    guess -- sure.  Go ahead.

3          **MR. SCHOEN:**  Okay, Judge.  Here's where we go.

4    And this is the most straightforward argument for why this

5    case has to be dismissed.

6          Background.  Long-standing, fundamental tenet in

7    criminal law -- and I know the Court knows this, but I think

8    it's still  relevant to give the background -- is the

9    requirement of fair notice to the public of what conduct is

10   going to violate the criminal law and risk subjecting that

11   person to criminal liability and punishment.

12         A person has to be given fair notice of the

13   conduct that's prohibited or the law doesn't comport with

14   the Fifth Amendment.  The Fifth Amendment is due process

15   guarantee.  That's *United States versus Williams*; that's

16   *Kolender versus Lawson* and, more recently.  That's *United*

17   *States versus Davis*, and here we have even a little

18   different twist on that issue, but I'll get into that.

19         The question is, as the Court knows, if a person

20   of ordinary intelligence is left to guess at whether he'll

21   be subjected to prosecution or not, then the law violates

22   due process.  It's void for vagueness.  It also violates the

23   separation of powers doctrine.  That's *Connally versus*

24   *General Construction*; that's sort of the landmark case.

25         Now, the doctrine is not something new.  It goes

1   way back.  Roman law recognized it.  The maxim nullum crimen

2   sine lege -- I'll spell it afterwards -- with no crime

3   there's no law.  There's no crime without law.

4        Madison spoke about it in Federalist 62.  We would

5   have a calamitous situation if people didn't understand what

6   the law prohibited.  Montesquieu addressed it, so on.  We

7   don't need any more history lesson probably about it.

8        But by way of introduction, here, what the Supreme

9   Court has said, in *Raley versus Ohio*, is that, when we

10  consider whether fair notice is provided as to whether a

11  person is subjected to a criminal -- the coverage of the

12  criminal statute, statements by the government through its

13  agents and officials concerning criminal sanctions, which

14  are contradictory or so vague and undefined as to afford no

15  fair warning as to what might transgress a given statute,

16  renders the statute unconstitutionally vague, much in the

17  same way contradictory statements within a criminal statute

18  render the statute unconstitutional.  Now that's *Raley*, at

19  Page 438.

20        In *Raley*, they recognized that a step even further

21  in rendering a criminal prosecution unlawful and a violation

22  of due process is when government statements, vis-a-vis the

23  criminal statute, go beyond simply being vague or

24  contradictory, and they are actively misleading, indicating

25  the conduct, which is later prosecuted, was legal.  That's

1    *Raley* again at 438.

2          Such conduct is even -- is more akin to the

3    conduct by the government in cases like *Sorrells*, standard

4    entrapment cases, *Johnson*.  So that brings us to

5    Mr. Bannon's case.

6          This very principle and the suggestion that the

7    longstanding OLC opinions that have been reiterated over and

8    over again that, when executive privilege is invoked, the

9    criminal contempt of Congress statute charged here, 192,

10   cannot lawfully be charged.  It renders such -- when the

11   executive privilege is invoked, it renders such prosecution

12   unlawful.  The criminal statute doesn't apply and can't be

13   applied for two reasons.

14         **THE COURT:**  So let me ask you this question:

15   Assume that's all true.

16         **MR. SCHOEN:**  Yes.

17         **THE COURT:**  Isn't it a disputed question whether

18   former President Trump invoked executive privilege here?

19         **MR. SCHOEN:**  Not a seriously disputed question,

20   Your Honor.

21         **THE COURT:**  Well, the letters are, at best,

22   ambiguous on this question, are they not?

23         **MR. SCHOEN:**  No, they're not, Your Honor.

24   Executive privilege is invoked.  There is a later letter

25   that says, I'm not telling you -- Justin Clark writes, "I'm

1     not telling you you have immunity.  You may not have

2     immunity."  Separate question.  Separate question.  Related

3     question in this context that I can get into, but it's a

4     separate question.  He doesn't need to have immunity.

5               Executive privilege is invoked.  Executive

6     privilege is presumptively valid as a matter of law.  They

7     wanted to challenge the invocation of executive privilege.

8     As they have said, the Department of Justice has said over

9     and over again, Go to a civil enforcement proceeding.

10    Challenge it there.  Don't use the criminal statute.

11              Judge, I just want to --

12         **THE COURT:**  Is it clear that President Trump --

13    former President Trump invoked executive privilege?

14         **MR. SCHOEN:**  Yes, Your Honor.

15         **THE COURT:**  That's clear --

16         **MR. SCHOEN:**  That's clear, Your Honor.

17         **THE COURT:**  -- from the letters?

18         **MR. SCHOEN:**  Yes, Your Honor.

19         **THE COURT:**  Assuming it's a jury question, how

20    would that be established at trial?  I know you don't want

21    to go to trial, but how would it be established that

22    President Trump invoked the privilege rather than the lawyer

23    who communicated that?

24         **MR. SCHOEN:**  Well, Justin Clark could testify,

25    number one.  Number two --

1          **THE COURT:**  What does the letter say about

2     President Trump's invocation of privilege?

3          **MR. SCHOEN:**  I can pull the letter, if Your Honor

4     wants.

5          **THE COURT:**  I'd like to know what it says.

6          **MR. SCHOEN:**  May I?

7          **THE COURT:**  Yes.

8        (Brief pause)

9          **MR. SCHOEN:**  Your Honor, Mr. Costello reminds me

10    there was also a phone call with Justin Clark in which

11    Justin Clark made clear that the President invoked --

12         **THE COURT:**  Well, I can't rely on an out-of-court

13    phone call that isn't in the record to conclude that

14    executive privilege was invoked by the former president, not

15    sitting here, can I?

16         **MR. SCHOEN:**  Well, for these purposes, Your Honor,

17    there's certainly no requirement that we've seen that

18    requires President Trump to appear before the Committee or

19    to personally address the Committee.

20         **THE COURT:**  I'm not saying that.  I want to know

21    what the best statement in the record, that is at least

22    before me in this context, is that the President had invoked

23    executive privilege.  I'm not saying it didn't happen.  I

24    just want to know what the best statement is.

25         **MR. SCHOEN:**  I'm reading now from Document 35-6.

1      This is Justin Clark's letter.  He writes in reference to

2      the Subpoena.  The Subpoena asks Bannon to produce

3      documents, what President Trump thinks about that.

4              Then President Trump vigorously objects to the

5      overbreadth and scope of these requests and believe they are

6      a threat to the institution of the presidency and the

7      independence of the --

8              **THE COURT:**  I see it.  Thank you.

9              **MR. SCHOEN:**  Oh.

10             **THE COURT:**  Yes.  Thank you.  Yes.

11             **MR. SCHOEN:**  Thank you, Your Honor.

12             **THE COURT:**  Right.  It's the next paragraph, To

13     the fullest extent permitted by law, President Trump

14     instructs Mr. Bannon to...

15             Yes, thank you for that.

16             **MR. SCHOEN:**  Thank you, Your Honor.

17             And by the way, I have to say that it's the

18     Department of Justice, as we'll see in a second from their

19     Office of Legal Counsel opinions, that saw -- sees a problem

20     with beyond just the general principle.  You cannot use this

21     criminal statute.  It sees a problem when given its

22     long-standing OLC opinions.  That's expressly addressed in

23     an OLC opinion.

24             But, Judge, let me skip ahead then.  Here's the

25     thesis of this presentation.  This case has to be dismissed

1    for the prosecution and violation of due process and

2    separation of powers as applied to Mr. Bannon for the

3    reasons I'm going to outline.  They're outlined in the

4    Motion to Dismiss and in the Reply.

5         The OLC opinions, consistently for decades,

6    reflect the prosecuting authority's position, the Department

7    of Justice official binding position, as a matter of law

8    that, that when executive privilege has been invoked in

9    connection with a congressional subpoena, the privilege is

10   presumptively valid.  And the criminal statute cannot be

11   applied for several reasons.

12        I'm going to give the Court a few examples of why

13   the case has to be dismissed based on this argument, the

14   fair notice argument.  Starting in 1956, the Department of

15   Justice addressed this.  Ted Olson reiterated it in 1984.

16   And his opinion, like the others, are authoritative and have

17   been consistently reiterated since.

18        Think, for example, in the context of fair notice,

19   Judge, as to take the name Bannon out of it.  Joe Q. Public,

20   David Schoen, whoever, is faced with a subpoena from

21   Congress, and the former President -- we know, under *Nixon*

22   *versus GSA*, a former President can invoke privilege.

23        There's a question now from *Trump versus Thompson*

24   whether the current President can supersede it.  Justice

25   Kavanaugh addressed it in the cert denial and so on.  Let's

1     put that aside for a second.  For these purposes, the former

2     President can invoke executive privilege and, in any event,

3     Mr. Bannon understood him to invoke executive privilege.

4          So executive privilege is invoked.  Mr. Bannon's

5     hands are tied.  And the OLC opinions talk about a person

6     situated like Mr. Bannon as a pawn, and they're offended by

7     the idea that that pawn could then face criminal prosecution

8     for assisting the President or for adhering at least to the

9     President or former President's invocation of privilege.

10          And so that person -- put aside, now, I'm not

11    talking about reliance or any of those things.  I'm talking

12    about fair notice.  This person now needs to know whether

13    this person is subject to prosecution, criminal prosecution,

14    if he adheres to executive privilege and doesn't comply with

15    the Subpoena.

16          So he looks then to the OLC opinion.  These are

17    published opinions.  And the prosecuting authority in this

18    case has said, No, once executive privilege is invoked, it

19    cannot be applied.

20          So let me give the Court a couple examples, just

21    chapter and verse.  The Court has these documents in the

22    record and there are many more --

23          **THE COURT:**  No, this is helpful.  I would like to

24    talk about them.

25          **MR. SCHOEN:**  Yes, Your Honor.  And there are many

1    more in the record and outside the record, a couple of which

2    I'll mention in a second.

3            So I want to go -- 58-14.  This is the OLC opinion

4    from Steven Engle, May 20th, 2019.  I'm reading now:  "The

5    Department of Justice has long recognized, 'that the

6    contempt of Congress statute was not intended to apply and

7    could not constitutionally be applied to an executive branch

8    official who asserts the President's claim of executive

9    privilege.'"  And he cites a string of OLC opinions.

10           **THE COURT:**  Okay.  But that's not Mr. Bannon.  You

11   acknowledge Mr. Bannon is not an executive branch official.

12           **MR. SCHOEN:**  First of all, he is a former

13   executive branch official.

14           **THE COURT:**  But that --

15           **MR. SCHOEN:**  I'm going to get to that, Judge.  The

16   OLC opinions address current, former.  They address the idea

17   that --

18           **THE COURT:**  I recognize that they address them,

19   but we need to be really careful about what they say in the

20   context that we're talking about.

21           **MR. SCHOEN:**  Yes, Your Honor.

22           **THE COURT:**  It says you cannot prosecute someone

23   who is a current government employee where privilege is

24   asserted or there's a claim of immunity.

25           **MR. SCHOEN:**  Right.  That's what it says here,

1   Your Honor, "an executive branch official".

2           **THE COURT:**  Okay.

3           **MR. SCHOEN:**  The criminal contempt of Congress

4   statute does not apply to the President or presidential

5   subordinates who assert executive privilege.  As Assistant

6   Attorney General Olson explained, The constitution does not

7   permit Congress to make it a crime for an official to assist

8   the President in asserting a constitutional privilege that

9   is an integral part of the President's responsibilities

10  under the constitution.

11          To do so would be to deter the President from

12  asserting executive privilege and to make it difficult for

13  him to enlist the aid of his subordinates in the process,

14  thereby burdening and immeasurably impairing the President's

15  ability to fulfill his constitutional duties.

16          And, of course, Walter Dellinger -- the other side

17  of the aisle you might say -- says the same thing.  He says,

18  in 1995, "The application of the contempt statute against an

19  assertion of executive privilege would seriously disrupt the

20  balance between the President and Congress."

21          Now, continuing on with Mr. Engel, same OLC

22  opinion, "This office has further confirmed that the same

23  'principles...similarly shield a current or former senior

24  advisor to the President from prosecution for lawfully

25  invoking his or her immunity from compelled congressional

1    testimony.'"

2            Now that's the question of immunity we talked

3    about.  A little bit different from executive privilege.

4    They use the terms interchangeably.  But as the Court will

5    see, and the Court may certainly be aware, the Department of

6    Justice took the position, even after *Miers*, M-I-E-R-S, an

7    OLC opinion, that a person so-situated as has immunity.

8    Immunity.  But we're focused here mainly on executive

9    privilege.  That's the triggering event.  And again in --

10           **THE COURT:**  And that opinion, the 2008 opinion, is

11   also talking about someone who was communicating with the

12   President when a government employee.  Correct?

13           **MR. SCHOEN:**  The communication occurred when the

14   person was a government employee.

15           **THE COURT:**  Yeah.

16           **MR. SCHOEN:**  Let me just go to the logical

17   conclusion of this.  It clearly can't be limited to someone

18   who's a current official or a former official, as the OLC

19   says, by the way, in one of the opinions expressly, the one

20   on the information about U.S. attorneys.  But I'll get to

21   it.

22           They can't just be talking about -- take, for

23   example, President Biden thinks for some reason the economy

24   is not doing so great.  So he calls in the CEO of a company

25   that's doing really great, and he wants to talk about, where

1    am I going wrong, Joe?  Susie?  What do I need to do?  Give

2    me some secrets.  He wants to keep that confidential.

3            Congress says, what did Joe or Susie tell you,

4    Mr. President?  He says, Joe or she says, President invoked

5    executive privilege.  It clearly can't just be limited to

6    current and former officials.  That's why Congress has

7    said -- that's why the OLC has said --

8            THE COURT:  Well, has OLC ever said that a person

9    in that circumstance would not be prosecuted for failing to

10   show up altogether?

11           MR. SCHOEN:  Well, they say in other opinions

12   that, once executive privilege is invoked, that such a

13   person has no obligation to appear.

14           THE COURT:  Well, they are talking about executive

15   privilege asserted in a context where the person talking to

16   the President is a current government employee when the

17   communication occurred.  It seems to me there is no OLC

18   opinion -- I think you would concede this.  There is no OLC

19   opinion saying expressly, The government will not prosecute

20   a nongovernment, someone for failing to appear before

21   Congress on executive privilege grounds if the relevant

22   communication occurred when the person was a nongovernment

23   employee.

24           MR. SCHOEN:  I don't agree with that at all, Your

25   Honor.

1          **THE COURT:**  What was the opinion that says that?

2   I know you have threads.

3          **MR. SCHOEN:**  Congressional oversight opinion and

4   the U.S. Attorney's opinion deal with a situation in which

5   the person is not a government employee at the time the

6   conversation occurred.

7          **THE COURT:**  And does it say, We will not prosecute

8   or does it -- some of these, of course, say that executive

9   privilege can exist as between the President and a

10  nongovernment employee.  I don't think anybody disputes

11  that.  The question is, has the government said, The

12  contempt doesn't reach that question in that context?

13         **MR. SCHOEN:**  Absolutely.  Judge --

14         **THE COURT:**  Can you point me to that --

15         **MR. SCHOEN:**  One second.

16         **THE COURT:**  -- that document?

17         **MR. SCHOEN:**  I just want to be clear.

18         What the OLC opinions all say is that once --

19  executive privilege is the triggering concept.  We assume --

20         **THE COURT:**  Okay.

21         **MR. SCHOEN:**  Your Honor, respectfully.

22         **THE COURT:**  I understand your argument.  You're

23  not -- you're fighting my question.

24         **MR. SCHOEN:**  I'm not fighting your question, Your

25  Honor.  I'm intending to --

1    **THE COURT:**  I'm asking you whether any opinion

2    addresses the context of executive privilege in the context

3    of a nongovernment employee and whether a person in that

4    context will be prosecuted or not?

5    **MR. SCHOEN:**  I'll have to pull the U.S. Attorney

6    opinion that I'm referring to and the congressional

7    oversight opinion.  One second, Your Honor.

8    I got a lot more to read that I'd like to read to

9    you, if the Court -- because it's going to tie all of these

10   issues together, I think.  Experts from these opinions.

11   **THE COURT:**  Sure.

12   **MR. SCHOEN:**  But let me answer this --

13   **THE COURT:**  Well, I mean, I get --

14   **MR. SCHOEN:**  If we accept that the privilege is

15   presumptively valid, we don't refer them for criminal

16   prosecution.  If they want to challenge that, if they want

17   to say --

18   **THE COURT:**  But to get an indictment dismissed,

19   you agree you have an incredibly high bar that really has to

20   show that any reasonable person in Mr. Bannon's shoes would

21   have -- would have not been on fair notice that he might be

22   prosecuted or that the government is estopped from taking a

23   contrary position for something it said before.

24   So we have to be really clear about what the

25   government has or hasn't said.  It seems to be pretty

1    foundational to all of these arguments.

2         MR. SCHOEN:   Your Honor, any reasonable person

3    would read these OLC opinions and say a person situated like

4    Mr. Bannon, a former top official advisor to the President,

5    who is then called back in by the President afterwards and

6    has a discussion with him, which the President then deems to

7    be privileged, that person would have every reason to

8    believe, from the OLC opinions, that the criminal contempt

9    statute cannot apply because it would infringe on separation

10   of powers issues.

11        It's asking Congress to determine, then, whether

12   the President can invoke his privilege in that circumstance.

13   And the Court --

14        THE COURT:   How should I be thinking about the

15   Subpoena topics that don't, on their face, seem to call for

16   anything that would approach privilege?

17        MR. SCHOEN:   Anything that would approach?

18        THE COURT:   Privilege, executive privilege

19   communications.  I get the privilege would cover certain

20   topics that Mr. Bannon may have been communicating with the

21   President about, but the Subpoena asks for a broader set of

22   information.

23        MR. SCHOEN:   As Your Honor is aware from the other

24   OLC opinion that we cite, that's relevant to this issue as

25   opposed to the other on appearance, and that is the OLC says

1    in two opinions, but one is the exclusion of agency counsel

2    opinion, that if the Subpoena is issued and doesn't -- and

3    the rules or the Committee expressly doesn't permit the

4    agency representative to be present, the Subpoena is null

5    and void and unconstitutional.  And there is no obligation

6    to appear.

7          THE COURT:  But isn't that really to police what

8    is or isn't privileged?  And it seems to me that this is a

9    subpoena where you've got some categories that are

10   potentially privileged and some categories that aren't at

11   all.  And how should I think about these arguments?

12         I get your argument that agency counsel or

13   government counsel needs or someone needs to be there to

14   police privilege lines.  But what if there's entire

15   categories that are inarguably never going to be privileged?

16         MR. SCHOEN:  Two answers.  They chose to issue one

17   subpoena.  The second answer is, the OLC, the Department of

18   Justice chose to use the language that the Subpoena is

19   invalid and unconstitutional and can be ignored completely.

20   That's the OLC Justice Department's language, not mine.

21         Now --

22         THE COURT:  Yes, I've distracted you.  My

23   apologies.

24         MR. SCHOEN:  It's not a distraction if it's

25   important to the Court.  I'm referring, of course, Your

1    Honor to the Paul Clement -- this is -- the Paul Clement

2    letter is the one that refers most directly to a person

3    outside.

4              Oh, I did want to say this:  This notion, by the

5    way, that outside people, private citizens, are included in

6    the circle of coverage here, that is, the Court knows what I

7    mean.  The circle of coverage here.

8              **THE COURT:**  Yes.

9              **MR. SCHOEN:**  Is not a new one, but it's not just

10   the OLC opinions, by the way.  There is a CRS report that

11   goes to some length -- there's a series of CRS reports

12   called Presidential Advisors' Testimony before Congressional

13   Committees and Overview.  They go back at least to 2002.

14             But in 2014, they ran an update.  They ran a

15   compilation of opinions from between the years of 2002 and

16   2014.  I don't mean to say opinions.  I mean to say facts

17   and relevant circumstances.

18             And in that, they specifically refer to this

19   concept of the importance of a President organizing outside

20   advisors and the importance of confidentiality and privilege

21   in that context.

22             Now, according to the report, the practice started

23   with President Jackson and then continued throughout.  So

24   this idea of a President not being limited to relying on his

25   cabinet or formerly employed employees for privileged

1      conversation is discussed in that CRS report.

2              THE COURT:  I don't think there's any serious --

3      I'm certainly not in any doubt that executive privilege

4      could cover people who were not government employees at the

5      time of the communication.

6              MR. SCHOEN:  And if that's the case, Your Honor,

7      then Mr. Bannon, whether you consider him a former employee

8      or the Court takes him out of that realm because the

9      conversation didn't occur then, or he is a private citizen

10     or used to be a senior advisor and is called in, then he has

11     every reason to believe he should not be, cannot be,

12     prosecuted under the statute because executive privilege --

13     because of all of the rationale behind the other decisions.

14     If I were to go on and read the experts, the rationale is --

15             THE COURT:  I'm still going back to my question,

16     which is --

17             MR. SCHOEN:  Is there an opinion --

18             THE COURT:  Yeah.

19             MR. SCHOEN:  -- that expressly says the outside

20     guy, a private citizen --

21             THE COURT:  If President Biden calls the CEO of

22     Exxon and has a privileged communication or communication

23     and then Congress subpoenas the CEO of Exxon, and President

24     Biden says, Your testimony is covered by executive

25     privilege, and the CEO of Exxon says to the House, I'm not

1    showing up, executive privilege has been asserted, and then

2    is prosecuted not for showing up and taking privileged calls

3    as they go, but just for not coming, he would rely on what

4    OLC opinion?  There is no OLC opinion --

5              **MR. SCHOEN:**  First of all, it doesn't have to rely

6    on -- that's a separate question, in my view.

7              **THE COURT:**  I mean to rely on for his argument.

8              **MR. SCHOEN:**  The reading of all of the OLC

9    opinions, since 1956, leads absolutely, logically, to that

10   conclusion.  There would be no distinction drawn based on

11   the fact that -- as we know, we don't have to have an

12   opinion that has Mr. Bannon's name on it of course.

13             **THE COURT:**  I agree.

14             **MR. SCHOEN:**  That's right.  And we use all of

15   these opinions that have been reiterated.  That's why they

16   all refer back to Ted Olson.  They all say, you know, former

17   officials and all of that, but give the reasons then, the

18   separation of powers issues.

19             If you dare to challenge the invocation of the

20   President's privilege, do it in a civil proceeding, not in a

21   criminal case in which you subject the person who was told

22   executive privilege has been invoked, you subject a person,

23   like Mr. Bannon, that's subordinate, to the risks of a

24   criminal trial.

25             That's what these opinions say.  They say it

1    expressly.  And that certainly applies no less to any person

2    on the outside.  And they talk about it in private citizen

3    language.  They talk about encouraging people to meet with

4    the President.

5            That U.S. Attorney's OLC opinion talks about the

6    potential chilling effect if you weren't to consider

7    consultations with outside counsel -- outside person

8    privilege.  And I know Your Honor said I accept the

9    principle, at least for purposes of this argument, that they

10   could be privileged.

11           **THE COURT:**  Yes.

12           **MR. SCHOEN:**  If the Court accepts the principle

13   they could be privileged, then the OLC opinions absolutely

14   apply because they turn on privilege.  They turn on that

15   separation of powers issue that's relevant when privilege is

16   invoked and privilege is deemed to be valid.  And all they

17   say is, Don't use the criminal process.  The criminal

18   statute doesn't apply.

19           We have two other things:  Accommodation,

20   constitutionally mandated according to the OLC opinions and

21   implied at least in the cases; and the other is the civil

22   enforcement proceeding.  And they explain in the OLC

23   opinions why they, the Department of Justice, the folks

24   prosecuting this case, say these things.  And they say why

25   there would be a problem in prosecuting someone criminally

1   under this statute based on *Raley*.

2   And whether, if a person is not complying because

3   executive privilege has been invoked, then can that person

4   have the mens rea to violate a criminal statute, even if

5   that mens rea doesn't include willfulness?  That is an OLC

6   opinion.  In an OLC opinion.

7   **THE COURT:**  Would that be a jury question then?

8   **MR. SCHOEN:**  Pardon, Your Honor?

9   **THE COURT:**  Would that be a jury question?

10   **MR. SCHOEN:**  Would it be a jury question --

11   **THE COURT:**  Yes.

12   So imagine hypothetically -- I know you disagree

13   with this, but imagine I concluded that dismissal of the

14   Indictment wasn't warranted, but the government still has to

15   prove that Mr. Bannon acted with the relevant mens rea.

16   Would, in your view, these issues come in to

17   establish that one couldn't have the relevant mens rea if

18   executive privilege had been invoked?

19   **MR. SCHOEN:**  Could be.  Could be.

20   But, again, we have to look at this specific

21   context.  This is the prosecuting authority saying it.  We

22   don't subject a person to jeopardy under those

23   circumstances.

24   Judge, can I just -- can I just run through the

25   excerpts I want to read, see if something hits the Court?

1           THE COURT:  Yes.  Please.

2           MR. SCHOEN:  All right.  Let's take a look now at

3    Chuck Cooper's -- Chuck Cooper's opinion, referred to

4    generally, you know, as the Cooper Memo.

5           THE COURT:  Yes.

6           MR. SCHOEN:  And, again, these all arise in

7    specific circumstances.  The government would construe these

8    OLC opinions ultra narrowly.  Well, again, there's nobody --

9    they don't say this, but effectively nobody with Bannon's

10   name on it.  That's just not how it works.  The *McGahn* case

11   refers to OLC opinions reflecting the Justice Department

12   decision.  They have nothing to do with the *McGahn* case.

13           I will say this as a general proposition, Judge,

14   by the way, the government's motion on barring the evidence

15   of the OLC opinions and other writings is a nonstarter.  I

16   mean, the Court is the fastest gun in the west.  Whatever

17   the Court says we're going to do, we're going to do.  But it

18   should be a nonstarter that those opinions go out.

19           This case is either going to be dismissed, or

20   the -- jury's going to hear about the OLC opinions that

21   Mr. Bannon relied on; that's my view of the case.  Anything

22   else is in a frivolous argument.

23           All right.

24           THE COURT:  You were just talking about Chuck

25   Cooper's opinion.

1          **MR. SCHOEN:**  Yes.

2          **THE COURT:**  Can you point me to the ECF number?

3          **MR. SCHOEN:**  Yes, Your Honor.  Chuck Cooper's

4     opinion is 58-15.

5          Now, it repeats some of the language that the

6     Court, you know, noted earlier, in other words, executive

7     branch official.  But I want to -- this is all -- you know,

8     it builds.

9          "We also concluded" -- he said, Chuck Cooper

10    wrote, "We also concluded more broadly, however, that the

11    contempt of Congress statute simply was not intended to

12    apply and could not constitutionally be applied to an

13    executive branch official who asserts the President's claim

14    of executive privilege.

15         "We noted that the legislative history, nor the

16    subsequent implementation of Sections 192 and 194, suggest

17    that Congress intended the statute to apply to executive

18    officials who carry out a presidential assertion of

19    executive privilege.

20         "Moreover" -- and this applies, again, whether

21    current official, not official or otherwise -- "Moreover, as

22    a matter of constitutional law, we concluded that the threat

23    of criminal prosecution would unduly chill the President's

24    ability to protect presumptively privileged executive branch

25    deliberations."

1       Those deliberations occur whether with an outside

2  person or with an inside person.  They're presidential

3  deliberations, and that's what we cannot infringe on.

4       I would next go to Ted Olson's opinion, which is

5  at 58-10 in the record, Your Honor.  Ted Olson, as the Court

6  is aware, goes into this in great detail.  This is the most

7  comprehensive of the OLC opinions on it, and it's cited over

8  and over again and has never been withdrawn.

9       So he has a section he calls "Previous Department

10  of Justice Interpretations of the Contempt of Congress

11  Statute."

12       "The Department of Justice has previously taken

13  the position that the criminal contempt of Congress statute

14  does not apply to executive officials who assert claims of

15  executive privilege at the direction of the President."

16       He then goes on to talk about the 1956 Bill

17  Rogers --

18       **THE COURT:**  Can you just tell me what page you're

19  on?

20       **MR. SCHOEN:**  Yeah.  I'm on my own notes.  There's

21  a heading that says "Previous Department of Justice

22  Interpretations".  I can grab my --

23       **THE COURT:**  No, I can find it.

24       You can keep going.  I'll find it as you go.

25       **MR. SCHOEN:**  All right.

1          Anyway, he says, "Not aware of any subsequent

2     department position that reverses or weakens his

3     conclusion," so on.

4          We believe that the Department's long-standing

5     position that the contempt of Congress statute does not

6     apply to executive officials who assert presidential claims

7     of executive privilege is sound, and we concur with it.

8          Conclusion is based on the legislative history

9     that demonstrates it was not intended to apply to

10    presidential assertions of executive privilege.  That's not

11    limited, in his formulation there at least, to current

12    executive branch employees or even former executive branch

13    employees.

14         And, he says, number two, "If the statute were

15    construed to apply to presidential assertions of executive

16    privilege, it would so inhibit the President's ability to

17    make such claims as to violate the separation of powers."

18         Again, that's not based on whether that privileged

19    conversation, deemed presumptively privileged, presumptively

20    valid, is with Joe, Susie or a current employee.

21         He then goes on, several pages later, on a related

22    issue.  He says -- he writes:  "Congress itself has

23    previously recognized the impropriety of resolving executive

24    privilege disputes in the context of criminal contempt

25    proceedings."

1          And he talks about Senator Ervin introducing a

2   bill and indicating, in his comments at least, "it may be

3   inappropriate, unseemly or nonefficacious where executive

4   officers are involved."

5          Then he writes:  "The United States Court of

6   Appeals for the District of Columbia Circuit has stated on

7   several occasions that criminal contempt proceedings are an

8   inappropriate means for resolving document disputes,

9   especially when they involve another governmental entity."

10          He talks about the duality.  He quotes from

11   district judge, and he says, "Especially where the context

12   is between different governmental units, the representative

13   of one unit in conflict with another should not have to risk

14   jail to vindicate his constituencies' rights."

15          Now, Judge, I am saying here, because the OLC, the

16   Department of Justice, says that this idea of accommodation

17   is constitutionally mandated; that's in DOJ opinions.

18          But I'm not just asking the Court to dismiss this

19   case because there wasn't a sufficient accommodation.  I

20   could hear how that could be a jury question whether it

21   constitutes a default to offer -- to testify, as Mr. Bannon

22   did, if you work out the privilege issue with the President

23   and so on.

24          But it's important for the Court to be aware, at

25   least, that this is what the Department of Justice, the

1    prosecuting authority, has written, that we have to exhaust

2    that process and -- the accommodation process -- and that

3    it's constitutionally mandated.

4          The opinion goes on to talk about why executive

5    privilege for the President is different.  It's different

6    from any other privilege.  It implicates separation of

7    powers principles.  And we simply don't have -- we cannot

8    have Congress determining whether the President's invocation

9    of privilege is valid or not valid.

10          And, of course, the Court in *McGahn* said just

11    about the same thing.  There the Court was considering

12    whether even a court would be appropriate.  And the Court

13    said, Yes, at the end of the day, I think a court is

14    appropriate because -- because Justice Department is not

15    going to prosecute him criminally.  We have the OLC opinions

16    that say that, and we want to possibly get at this stuff so

17    we'll consider a civil enforcement proceeding.

18          All right.  Here's what the Court says now about

19    this similar situation:  In addition to the encroachment --

20    one second.

21          On the separation of powers question, the Court

22    says -- the DOJ says:  "If executive officials were subject

23    to prosecution for criminal contempt whenever they carried

24    out the President's claim of executive privilege, it would

25    significantly burden and immeasurably impair the President's

1    ability to fulfill his constitutional duties.  Therefore,

2    the separation of powers principles that underlie the

3    doctrine of executive privilege would also preclude -- would

4    preclude an application of the contempt of Congress statute

5    to punish officials for aiding the President in asserting

6    his constitutional privilege."

7            Now, again, I hear the Court's out on that one is

8    the word "officials".  But, again, we have to read all of

9    these opinions in pari materia.

10           **THE COURT:**  It seems to me that the issue is, to

11   boil it down, you have a set of what are, in effect,

12   holdings by OLC.  I know they're not holdings.  They're

13   addressing particular contexts.  And they are saying, We

14   interpret -- for example, the Olson opinion says, We

15   interpret the contempt of Congress statute to not authorize

16   prosecutions of current executive branch officials who are

17   in the context in which executive privilege is being --

18   asserted.

19           And there's a bunch of reasons for that and some,

20   or maybe all of those reasons, might apply to Mr. Bannon, at

21   least potentially.  But OLC has never said, And, therefore,

22   the criminal contempt statute could not apply to the context

23   of Mr. Bannon.

24           You agree with that.  Right?

25           **MR. SCHOEN:**  But, Judge, again, we're talking

1    about fair notice.  If Mr. Bannon were to read that and also

2    read the Paul Clement letter, in which he makes clear why

3    there should be no distinction, because often a President

4    has to call on outside people for counsel and those

5    conversations --

6         **THE COURT:**  The Clement letter doesn't really have

7    anything to do with the contempt statute on the question.

8    Right?  It's about whether executive privilege can apply to

9    outside employees, nonemployees.  I understand that's an

10   important part --

11        **MR. SCHOEN:**  Whether the person has to appear to

12   respond to the Subpoena, the outside person.  Whether

13   Congress ought to even be able to have that person come in

14   and ask that person questions; and that's Mr. Bannon.

15        At worst case scenario, I say it's more than that.

16   I say he's a former senior advisor who the President then

17   calls in.  He may not have had a formal employment contract

18   at the time.  But it's, in my view, silly to suggest that --

19   and I don't mean to characterize anything the Court has said

20   as silly --

21        **THE COURT:**  No, I understand.

22        **MR. SCHOEN:**  It's silly to suggest that a person

23   then who's called in for -- who was a senior advisor and is

24   now called in, we certainly can't draw any conclusion he was

25   called in to talk about the local bingo game.

1          So if the President says, He was called in for a

2     privileged discussion, I'm invoking privilege, Congress is

3     stuck with that, at least in terms of the application of the

4     criminal statute.

5          And Mr. Bannon is entitled to believe, I cannot be

6     subject to criminal prosecution.  You don't like the

7     privilege invocation, take me to court, take me to civil

8     court and let's talk about it.  Federal court has

9     jurisdiction.  In fact, as we know, Mr. Bannon's lawyer

10     wrote to them and said, Work out the privilege issue, I'll

11     testify.  I'll produce the documents.

12          By the way, Your Honor, to be clear on the record,

13     towards this accommodation process, the Court said, Well,

14     what about some things you could turn over without, in any

15     way, waiving the argument that he had no obligation to

16     appear, both because of the fair notice question and the

17     specific OLC opinion that says the Subpoena was invalid and

18     unconstitutional.

19          Mr. Costello drafted a letter to Congress that he

20     was prepared to give to them, and it said in there -- let me

21     tell you, there are certain categories here he has nothing

22     on at all.  That was part of the accommodation process.

23          Anyway, I'll wrap it up, Judge.  I hear the

24     issues.  I just want the Court to hear these excerpts that I

25     am focusing on because, again, they have to be read -- it's

1      the principle that applies.  And it's the principle on fair

2      notice --

3              **THE COURT:**  So I understand -- I don't think you

4      have to go through all of them.  I have the foundations on

5      which your argument and the OLC opinions rest.  The issue

6      that I think -- the issue for you is, if OLC has never said,

7      if the government has never said, we would not prosecute

8      someone who is in Mr. Bannon's shoes, can he get this

9      indictment dismissed?

10             The component parts of your argument are there,

11     but you don't have a conclusion from the government ever

12     saying, the statute would not be applied in this context.

13     We would never prosecute someone in this context.

14             I think you have to admit that OLC has never said,

15     they never expressly said, in the context of a nongovernment

16     employee communicating with a President -- who

17     parenthetically, is now a former President, but not clear to

18     me that that is actually particularly material here.

19             Just assume, right, in the context of a former

20     government or even a nongovernment employee communicating

21     with the President, that we construe the contempt statute

22     not to apply to this context.

23             **MR. SCHOEN:**  My answer --

24             **THE COURT:**  You don't have that.

25             **MR. SCHOEN:**  My answer to that would be it would

1    be absurd for any person of ordinary intelligence to read

2    these opinions to talk about the importance of having

3    privileged conversation with outside people and also read

4    the opinions that say, because of the invocation of

5    privilege, the criminal statute doesn't apply to then say,

6    Well, what we didn't mean that it doesn't apply to

7    privileged conversations with people no longer in the

8    executive branch.  It's the institution of the Presidency's

9    privilege that's being invoked; that's a key here.

10            And by the way, I did want to say, in this 2008

11   opinion, whether the Department of Justice may prosecute

12   White House officials for contempt of Congress, February 29,

13   2008, 58-11, they did say this.  And again, it may not

14   satisfy the Court, but it says, "The Department of Justice

15   may not bring before a grand jury criminal contempt of

16   Congress citations or take any other prosecutorial action

17   with respect to current or former White House officials who

18   declined to provide documents or testimony or who

19   declined" --

20            **THE COURT:**  I know this opinion very well.

21            **MR. SCHOEN:**  I know, Your Honor.  But it's --

22            **THE COURT:**  This is about communications by people

23   who were, at the time of the relevant communication --

24            **MR. SCHOEN:**  That's right.

25            **THE COURT:**  -- a close advisor to the President in

1    employment in the executive branch.

2           MR. SCHOEN:   That's right, Your Honor.

3           THE COURT:   There's nothing in this that says -- I

4    understand -- there is reasoning that one might conclude

5    that the statements apply to someone who was not an employee

6    at the time of the relevant communications, but the holding,

7    in the sense that we're talking about holding, is it's

8    applicable to someone who was a government employee at the

9    time of the relevant communications.

10          MR. SCHOEN:   Yep.

11          Respectfully, Your Honor, I think that the

12   construction suggested is a far too narrow construction for

13   the use of OLC opinions.  Not what they're entitled to.  The

14   Court knows better than I do -- I don't mean to put words in

15   the Court's mouth.  The Court understands OLC opinions and

16   their rules better than I do.  Let me say that.

17          THE COURT:   Okay.  They're not binding on me.

18          MR. SCHOEN:   Of course not.

19          THE COURT:   They are statements of the

20   Department's view.  So then the question is, What does the

21   statement of the Department's view about a congressional

22   statute mean for a criminal defendant?  Can you --

23          MR. SCHOEN:   I --

24          THE COURT:   So you have to have a defense or an

25   element of the crime as to which a government statement

1    becomes relevant.  And that's why, of course, you have

2    arguments about entrapment by estoppel and notice and public

3    authority.

4         But because they're not binding, they don't just

5    mean that we apply them.  They have to have some effect.  So

6    the question is, imagine, hypothetically -- well, I think

7    it's true.  OLC said a number of things in justifying its

8    conclusions that have some relevance here, no doubt.

9         But their conclusion -- they have never concluded,

10   to my knowledge, that the contempt statute doesn't apply in

11   a context like this or that the government would never

12   prosecute someone in the context like this.  You can infer

13   that, but they've never said it.

14        **MR. SCHOEN:**  Respectfully, Judge, that inference

15   is fair and the logical one to make.  And there are

16   statements --

17        **THE COURT:**  Is it the only one?

18        **MR. SCHOEN:**  Yeah, I think it is, Your Honor,

19   absolutely, because of the reasons that the principle

20   applies.  The principle applies so that we don't undercut

21   the President's invocation of privilege, the President's

22   determination of privilege; that doesn't turn on who he's

23   talking to.

24        He could talk to someone who has never been

25   employed in the government or otherwise.  It's just as

1    privileged.  And it's just as presumptively valid in

2    invocation of privilege.

3           And the underlying principle behind all of these

4    opinions is that it -- the contempt statute, criminal

5    contempt statute cannot be applied because privilege was

6    invoked.  That's the triggering factor.

7           And by the way, in my view at least, these

8    statements are more than just the government's view.  This

9    is -- what's unique about this case in a sense is, this is

10   the prosecuting authority in this case --

11           **THE COURT:**  I understand all of that.  I get it.

12           **MR. SCHOEN:**  Okay.  I don't know that I need to

13   say anything further --

14           **THE COURT:**  I think I'd like to hear from the

15   government --

16           **MR. SCHOEN:**  -- about the entrapment by estoppel

17   and all of that.

18           **THE COURT:**  No, I'd like to hear from the

19   government on this point.

20           **MR. SCHOEN:**  Thank you, Your Honor.

21           **THE COURT:**  Thank you.

22           **MR. SCHOEN:**  Tired of hearing my voice.

23           **MR. COSTELLO:**  Your Honor, before you hear from

24   the government --

25           **THE COURT:**  Mr. Costello?

1          **MR. COSTELLO:**  Thank you, Your Honor.

2          Just a couple of very brief points that came up in

3     your questioning of Mr. Schoen.  First of all, you talked

4     about a phone call that I had with counsel for President

5     Trump, and you said it's not in the record.  It is, in fact,

6     in the record in Docket 30, the motion -- this is our

7     response.

8          My affirmation, Paragraph 10, "On October 5, 2021,

9     I received a phone call, from an attorney representing

10    former President Trump, advising me that the former

11    President was invoking executive privilege with respect to

12    the Select Committee's subpoena directed to Mr. Bannon.  I

13    immediately communicated that information to Mr. Bannon."

14    So it is in the record.

15         Number two, with respect to your questions about

16    no ranking member, one thing that dropped out and that is,

17    in this case, we have an unusual situation because the

18    Chairman of the Select Committee has admitted in videotape

19    in a public document that Ms. Cheney is not the ranking

20    member of this Committee.  So that admission stands.

21         Number two, we have an admission by Doug Letter,

22    the general counsel at the House of Representatives, that

23    Ms. Cheney is not the ranking member.  And that statement

24    was made to the FBI, memorialized in a 302 in the presence

25    of all three prosecutors that are here today.  So they were

1   aware of that.

2           Number three, we talked about Section (3)(b).  I

3   was the recipient of the Subpoena package because Mr. Bannon

4   authorized me to accept service on his behalf.  In that

5   subpoena package there was no Section (3)(b), which was part

6   of House Resolution 8, if I remember correctly.

7           If you look at -- and I'm sure you have -- the

8   regulations on the use of deposition authority at Paragraph

9   11, it says, "That a witness shall not be required to

10  testify, unless the witness has been provided with a copy of

11  Section (3)(b) of House Resolution 8, 117th Congress and

12  these regulations."

13          The government's defense here, which you

14  reference, is that, Oh, we would have given him that when he

15  showed up for the deposition that he didn't have to show up

16  for.

17          **THE COURT:**  How can I consider any of this on a

18  Motion to Dismiss?

19          **MR. COSTELLO:**  I'm sorry.  I didn't hear that.

20          **THE COURT:**  How can I consider any of this on a

21  Motion to Dismiss an indictment?

22          **MR. COSTELLO:**  These are admissions in the record,

23  Your Honor.  There's an admission in the record that Section

24  (3)(b) wasn't issued.  The documents, the rules and

25  regulations of the House are in the record.  They say that

1    the witness doesn't have to show up.  That's how you can

2    consider any of this motion.

3              **THE COURT:**  How does this mean that the Indictment

4    on its face is insufficient?

5              **MR. COSTELLO:**  If he doesn't have to testify, how

6    can he be indicted for refusing to testify?  House

7    regulations say he doesn't have to testify.  He wasn't given

8    (3)(b).  I wasn't given (3)(b) on his behalf.

9              **THE COURT:**  That seems like an affirmative

10   defense.  Why it that a ground for dismissing the

11   Indictment?

12             **MR. COSTELLO:**  I'm going to repeat what I said.

13   It is in the record, and it's certainly something that you

14   can consider.  They have no excuse for this other than to

15   say, Well, if he came to testify, we would have given him

16   the notice that he didn't have to come to testify because he

17   didn't have (3)(b).  I mean, that's just frivolous.

18             Thank you.  That's all I wanted to add.

19             **THE COURT:**  Thank you, Mr. Costello.

20             **MS. VAUGHN:**  Good morning, Your Honor.

21             **THE COURT:**  Ms. Vaughn.

22             **MS. VAUGHN:**  I can pick up with the estoppel

23   issue, if that's where the Court would like to begin.

24             **THE COURT:**  Estoppel, due process, public

25   authority --

1              **MS. VAUGHN:**  Altogether.

2              **THE COURT:**  It is the case, do you agree, that the

3      OLC opinions have relied on a number of principles that

4      apply here?

5              **MS. VAUGHN:**  I think that that jumps ahead of what

6      the defendant has to show to make this an issue at trial or

7      to even raise it as a defense to the Indictment at the

8      Motion to Dismiss stage.

9              Because Mr. Schoen seemed to suggest that there is

10     a separate due process defense from entrapment by estoppel,

11     but it really is an entrapment by estoppel case.  And

12     entrapment by estoppel is the defense that embodies the due

13     process concern.

14             **THE COURT:**  I think the argument has shifted some.

15     I think the argument is now, everyone agrees that to be

16     prosecuted under a relevant criminal statute, you have to

17     have fair notice that your conduct is covered by it.

18             Mr. Bannon, the argument goes, could not have had

19     such fair notice because OLC said his conduct doesn't fit

20     within the statute.  That's a due process problem.  It's

21     actually not -- it may not be only entrapment by estoppel.

22     It's a the statute plus the OLC opinions did not put me on

23     fair notice that my conduct fit within the criminal

24     prohibition here.

25             **MS. VAUGHN:**  That is the entrapment defense.  It's

1    the statute -- I don't think -- I haven't heard the

2    defendant to be arguing that the statute is vague on its

3    face.  The argument he seems to be making is that OLC, by

4    their statements, has told me my conduct is lawful and

5    therefore you can't prosecute me for that.

6         **THE COURT:**  So, in your view, these arguments

7    basically all do collapse to a version of, "Pick the bucket

8    you want, but OLC has told me that the statute, which does

9    cover my conduct, nevertheless is inapplicable."

10        **MS. VAUGHN:**   And that's what happened in *Raley*.

11   The commission in front of which the defendants there were

12   testifying erroneously told them that they had a privilege

13   excusing them from answering certain questions.  And the

14   *Raley* Court said, That's a problem.

15        Because even though, under the statute, they were

16   subject to prosecution for not answering, the government

17   affirmatively mislead them into believing that they were

18   acting lawfully when they refused to answer.

19        So over the course of the entrapment

20   jurisprudence, elements have been established where

21   defendant has to show not only as an initial matter to even

22   present it to the jury, but then in front of the jury once

23   you get there.  And if you look at those elements, the

24   defendant has not even satisfied the threshold question of

25   identifying what statements in particular he is relying on.

1          Based on his Motion to Dismiss, the government

2     thought that it was four opinion-- or three opinions from

3     the OLC and a letter from the U.S. Attorney.  He said in the

4     reply that that was incorrect, and he still hasn't

5     identified what those statements were.  And that's fatal,

6     right there.  We don't even need to proceed beyond that.

7          **THE COURT:**  Do you agree that if Mr. Bannon

8     were -- and I'm not suggesting he's not.  I've heard

9     counsel's argument -- but if Mr. Bannon were squarely within

10    the four corners of an OLC holding, quote/unquote -- in

11    other words, if, for example, Mr. Bannon had been, at the

12    time of the relevant communications, the counsel to the

13    President, and there was an invocation of privilege, and he

14    is nevertheless being prosecuted now, that he would have a

15    defense of some sort?

16         **MS. VAUGHN:**  We agree with that, Your Honor.

17         **THE COURT:**  What is the legal bucket for that

18    defense?

19         **MS. VAUGHN:**  So -- well, it's two -- he's charged

20    with two different offenses, I guess.  One is not producing

21    documents, and one is not appearing.

22         If he had been counsel to the President during the

23    time period for which he was subpoenaed for testimony, under

24    OLC opinions, he would have -- the DOJ views him as having a

25    potential immunity claim --

 1          **THE COURT:**  Okay.  Let's imagine it's not

 2   immunity, but let's imagine that he -- was not someone so

 3   close to the President who would have been immune.  I just

 4   want to make this simple.

 5          He's someone communicating with the President as a

 6   current executive branch employee at the time, privileged

 7   communications, assertion of privilege, notwithstanding the

 8   OLC opinions, there's a prosecution for two offenses,

 9   failing to show up and failing to produce documents.

10          So he fits within the four corners of an OLC

11   holding, so to speak.  He's prosecuted, nevertheless.  What

12   is his defense?

13          **MS. VAUGHN:**  His defense could potentially --

14   again, depending on the circumstances and how it matches up

15   with the opinions --

16          **THE COURT:**  I'm assuming there's, like, a --

17   perfect alignment between OLC's statement that this is not a

18   crime or it will not be prosecuted, and the situation we're

19   presented with.  You could make an altogether different

20   hypothetical.

21          Again, I sort of posed this last time, imagine

22   that a head of an agency is subpoenaed tomorrow, and

23   President Biden says, Don't show up.  Our communications are

24   privileged.  And that person is, nevertheless, prosecuted

25   and says, I have a defense.

1          All I want to know is when, in the government's

2    view, assuming there's perfect alignment, what is that

3    defense called?

4          **MS. VAUGHN:**   That defense is called entrapment by

5    estoppel.  It is --

6          **THE COURT:**   So even though there isn't a specific

7    statement -- to that person by a government official, as

8    you've argued, nevertheless, that defense would apply?

9          **MS. VAUGHN:**   If it's within the four corners of an

10   OLC opinion --

11         **THE COURT:**   And so really this question comes down

12   to whether Mr. Bannon -- fits within the government's or his

13   view whether he fits within the OLC opinions or not?

14         **MS. VAUGHN:**   Yes.  And I think that the case law

15   on entrapment by estoppel is clear that it has to be a fit.

16   The defendant can't start extrapolating and guessing at how

17   the government might extend its reasoning.

18         Because the whole purpose of this defense is to

19   prevent the government from essentially tricking someone

20   into committing an offense by saying, No.  Please.  Go

21   ahead.  That's fine.  You can do that.  You won't be

22   prosecuted.  And then turning around and prosecuting them.

23         **THE COURT:**   But Mr. Bannon says that's what

24   happened here.  You have OLC opinions that say executive

25   privilege matters.  We don't prosecute for executive

1   privilege.  And there's a bunch of statements that are not

2   limited, in the sentences at least, that they're written to

3   people who were then government employees.

4          There are OLC opinions that talk about executive

5   privilege applies to even nongovernment employees.  There's

6   a whole host of statements in these documents that are not

7   limited by their terms to the context of current government

8   employees when the communication occurred.

9          **MS. VAUGHN:**  He says that, but that's not actually

10  what the opinions stand for.  And here, the defendant

11  again -- I'm still not clear on which statements he's

12  relying on because he hasn't clearly identified which

13  statements he claims to have relied on at the time he

14  decided to engage in this conduct, as he's required to show

15  under the defense.

16         But he's not relying on just a regulation that's a

17  couple of lines and is clear in its scope.  He's relying on

18  30-, 40-page opinions.  He can't start cherrypicking

19  sentences out of those and relying on them.  The entire

20  opinion represents sort of "the holding" of the office of

21  Legal Counsel.

22         And so that takes it to the other issue is, it's

23  not even clear whether he read these directly, whether he

24  was told about them by his attorney.  And if he was told

25  about them by his attorney, what he was told about them?

1    Because if he's told by his attorney something that is

2    inconsistent with the government's statement or goes beyond

3    the four corners of the government's statement, it's no

4    longer a government statement.

5            Another element of the offense is that it has to

6    be a statement by someone authorized in the government to

7    interpret or enforce the law.  His attorney doesn't fit that

8    category, and at that point, it becomes an advice of counsel

9    defense.

10           **THE COURT:**  What's your answer to Mr. Schoen's

11   argument that maybe on entrapment by estoppel there has to

12   be reliance or knowledge or whatever, but for, more broadly

13   speaking, due process arguments, this is about notice, and

14   notice is notice.

15           **MS. VAUGHN:**  Notice is notice.  And the statute is

16   clear.  The word "default" is clear.  The word being

17   summoned by a Committee is clear.  The statute is clear.

18           And so the statements of the OLC do not start to

19   invalidate that statute's application in areas on which OLC

20   has never commented.

21           So here, in the government's view, the Court

22   doesn't even have to reach the question of what the OLC

23   opinions actually say because the defendant hasn't met the

24   threshold questions of which ones he relied on and what he

25   was told about them, if he didn't read them himself.

1      **THE COURT:**  But let's imagine I conclude that I do

2   have to reach that question.  In other words, I have to

3   conclude whether there's a fit between the OLC statements

4   and Mr. Bannon's case.  What's the government's argument on

5   that?

6      **MS. VAUGHN:**  So I think the defendant is

7   conflating two different issues in the OLC opinions.  One

8   is, When does executive privilege apply?  And the separate

9   question is, Can you be prosecuted for defying a

10   congressional subpoena under the contempt statute?  And you

11   have to address those with respect to the documents and

12   separately with respect to appearing for testimony.

13      So if you look at the opinions addressing

14   executive privilege assertions over particular documents,

15   they all are focused on particular assertions over

16   particular documents carried out by current executive branch

17   officials.

18      So, for example, in the 1984 opinion, the EPA

19   administrator being subpoenaed -- and assert -- going

20   through a review process within the executive branch,

21   concluding that there are 60-some documents over which they

22   should assert privilege, producing the remaining documents,

23   and then the OLC says, You can't be prosecuted for not

24   producing the remaining 62.

25      There's no OLC opinion that says that Mr. Bannon

1    didn't have to turn over his communications with the Proud

2    Boys or the Oath Keepers or didn't have to turn over records

3    he had in relation to a meeting he had with members of

4    Congress at the Willard Hotel on January 5th.  There's no --

5    OLC opinion that says a private party doesn't have to turn

6    over private records.  So that's -- the documents.

7          The testimony, OLC opinions are clear that

8    immunity from showing up applies to only the highest-ranking

9    White House officials, the closest advisors to the

10    President.  There is no OLC opinion that says a private

11    party has immunity from showing up.

12          On top of all of that, there is no OLC opinion

13    addressing a circumstance where you have a conflicting

14    assertion decision among -- between a former President and a

15    current President.  That's another distinguishing factor.

16          And, again, while there are OLC opinions that

17    certainly recognize the communications with outside parties

18    can be protected, those OLC opinions don't conclude that

19    those outside parties have absolute immunity from complying

20    in any way with a congressional subpoena.  Even if the Court

21    were to reach the merits of, "Does a statement apply here?",

22    there isn't one.

23          And again, that's the first element of the

24    offense.  If there's no statement from the government

25    telling you your conduct is sanctioned, you're not entitled

1    to this due process entrapment by estoppel defense.

2           And the standard for this defense that the

3    defendant is advocating for by arguing otherwise is one

4    without any limiting principle.  Under his approach, any

5    defendant could essentially find any government statement,

6    find a couple sentences within there that seem to apply to

7    his case, and then argue he has a free pass to commit

8    crimes.

9           That's not what the entrapment by estoppel defense

10    was intended to protect against.  It was intended to protect

11    against affirmative misleading by the government, in

12    relation to a specific course of conduct.

13           I think the best example of that is the *West

14    Indies Transport* case out of the Third Circuit.  There, they

15    were dumping scrap metal in the ocean.  They pointed to a

16    placard that said, You can dump nonplastic trash, and by the

17    way, there are other regulations.

18           Nonplastic trash, I mean, on its face, might apply

19    to scrap metal, but they were on notice that that wasn't the

20    full statement of the government.  Each of these opinions

21    also makes that clear.

22           The foundational opinion, in 1984, says this is

23    limited to the specific circumstances of this case.  The

24    2021 opinion on congressional oversight says not even all

25    the White House officials have immunity from showing up to

1    testify.  It's a fact-specific determination.

2            So because -- the defendant has failed to even

3    make a threshold showing of any of the elements of the

4    defense, he is certainly not entitled to dismissal, and he's

5    not entitled to present it to the jury.

6            **THE COURT:**  So I understand your argument about

7    the defense and the like, but why isn't Mr. Bannon's

8    knowledge of these OLC opinions potentially relevant on mens

9    rea?

10           And I don't have proposed jury instructions.

11   Obviously I know what the government has argued the general

12   standard is, but I don't know what the jury is -- I don't

13   yet know what the jury is going to be told specifically the

14   mens rea is here.

15           And why -- I get your argument about dismissal.

16   But as to the Motion in Limine, why isn't it at least

17   potentially relevant to say, Hey, look, I was not intending

18   to willfully default because I thought, based on these OLC

19   opinions, that the way to proceed was to proceed the way I

20   did?

21           **MS. VAUGHN:**  That's a good-faith reliance defense.

22   That's barred by *Licavoli* and *Bryan*.  The defendant in that

23   case would be saying --

24           **THE COURT:**  No, why isn't it, You have to prove,

25   government, that I acted with a particular state of mind; I

1    didn't act with that particular state of mind because I

2    acted for this reason?

3          **MS. VAUGHN:**  The government has to prove that the

4    defendant knew he was required to show up on a certain day

5    or knew he was required to produce documents, and

6    consciously chose not to do that, as opposed to it being by

7    accident or something else.

8          The reason he decided to deliberately not comply

9    is irrelevant, and there's a jury instruction that was

10   approved by the circuit in *Fields* exactly to this effect.

11         **THE COURT:**  Do you know what it says exactly?

12         **MS. VAUGHN:**  I don't have the wording exactly in

13   front of me, but it is something to the effect of, The

14   reason for his deliberate, intentional noncompliance doesn't

15   matter as long as it's not accidental.  You know, this goes

16   back to our argument last time about the metro breaking down

17   or something.

18         **THE COURT:**  I certainly understand *Licavoli* to

19   have said no advice of counsel.  I've held that.

20         It seemed to me, approaching this argument, that

21   whether these OLC opinions or some other questions might be

22   relevant at trial, if there is a trial here, on the question

23   of mens rea, depends on more granular information about the

24   jury instructions than I presently have.

25         Because if the jury instruction, even within the

1    framework of, you know, intentional, deliberate or knowing

2    deliberate or whatever, actually sounds a little bit more

3    like something where the knowledge of these OLC opinions

4    would be relevant, then maybe they come in.

5        **MS. VAUGHN:**  I -- we can get the *Fields*

6    instruction for the Court but essentially what the defense

7    would be saying is, I deliberately chose not to show up, but

8    I thought that executive privilege excused the requirement

9    that I had to show up.

10       So, basically, we would be arguing that there was

11   a justification for his decision, a legal justification.

12   That's no different from an advice of counsel defense.  My

13   lawyer told me I didn't have to go under the law.  It's a

14   good-faith reliance defense, not just by *Licavoli*, which

15   dealt with it specifically in the context of advice of

16   counsel, but by *Bryan* and *Fields* and *Dennis*, all in this

17   circuit -- or, sorry, *Bryan* is a Supreme Court case, but

18   *Fields* and *Dennis* in this circuit.

19       **THE COURT:**  Can we turn to the House res and the

20   rules?  Are you going to cover that as well?  Are you doing

21   the whole argument?

22       **MS. VAUGHN:**  Yes, I am going to cover everything

23   for the Court.

24       **THE COURT:**  The government concedes, I assume,

25   that there were never 13 members of this Committee.  And the

1    government concedes that, I assume, that at least the most

2    natural reading of the House res is that there were supposed

3    to be 13.  Do you agree with that?

4         **MS. VAUGHN:**  I think -- so we certainly concede

5    there were never 13 members.  As far as what was required

6    for the Committee to act, I think is a different question.

7         So given the ambiguity in the word "shall",

8    without an affirmative position from the House, it might

9    just be ambiguous and therefore nonjusticiable under lasting

10   custody.  But we have a position from the House.  Not only

11   in their ratification of the Committee's operations through

12   their contempt referrals, but in their filings in various

13   court cases where the House -- I understand the minority has

14   a different view, but they don't speak for the House --

15   where the House has spoken.

16        So under *Barker* and *Rostenkowski*, the Court has to

17   defer to those interpretations.  But the Court doesn't even

18   need to reach any of that, because, here, these are all

19   procedural objections that the defendant has waived.  He

20   didn't raise them for the Committee.  And there were --

21        **THE COURT:**  Well, some of them -- some of them

22   could not have been cured, could they have?

23        **MS. VAUGHN:**  So --

24        **THE COURT:**  And don't you -- let me ask a --

25   different question.  The government bears the burden of

1    proving that the Subpoena here was validly issued.  Do you

2    agree with that, that that's an element of the offense?

3              **MS. VAUGHN:**  So I think the element is a little

4    bit different.

5              **THE COURT:**  Okay.  What is the element?

6              **MS. VAUGHN:**   The element is whether the inquiry

7    under which the Subpoena has been issued is authorized.

8              And if you look at how the Second Circuit and the

9    Third Circuit and *Barenblatt*, which is the Second Circuit in

10   *Seeger*, the Third Circuit in *Orman*, the Supreme Court in

11   *Barenblatt*, they interpret that element of whether the

12   Subpoena has been issued under the authority of the

13   Committee as one concerning whether or not the inquiry has

14   been authorized.

15             And when you think about the Select Committee, the

16   Select Committee doesn't cease to exist when it has fewer

17   than 13 members.  The House resolution contemplates

18   vacancies.  Every Committee contemplates vacancies.  The

19   Committee doesn't cease to exist, so the question has

20   been --

21             **THE COURT:**  Can I just pause on the element

22   question?

23             What does a jury have to determine on that

24   element?  Is that a jury question, first of all?

25             **MS. VAUGHN:**  Yes.  The government --

1          **THE COURT:**  And what does the jury have to decide

2     on this element?

3          **MS. VAUGHN:**  The jury has to decide what was the

4     scope of the authorized inquiry?  And typically Courts look

5     to the House resolution authorizing it and then did the

6     Subpoena fall within the scope of that inquiry?

7          **THE COURT:**  So imagine, hypothetically, that the

8     House Resolution 503 was crystal clear and a hundred percent

9     unambiguous that there needed to be 13 members to be able to

10    issue subpoenas, and there were never 13 members.  And

11    assume Mr. Bannon raised that argument at the time, so we

12    don't have any of those issues either.  Is that irrelevant

13    for purposes of this case in that hypothetical?

14         **MS. VAUGHN:**  If the defendant had preserved it, it

15    would be a sort of pseudo-affirmative defense.  And I think

16    *Yellin*, the Supreme Court's opinion in *Yellin*, makes this

17    clear.

18         So to the extent that there are procedural

19    protections for the witness in the rules, that's things like

20    quorum requirements, um --

21         **THE COURT:**  Is having 13 members a procedural

22    protection for a subpoena recipient or isn't it something

23    broader about whether the Committee even has the power to do

24    anything?

25         **MS. VAUGHN:**  It's a procedural protection.  So --

1    although it doesn't -- there is not a procedural protection

2    here like that.  But, for example, in D.C. circuit cases,

3    *Liveright* and *Shelton*, those cases were both concerned with

4    whether or not the entire Committee had been consulted

5    before a subpoena had been issued.

6              The Court said the rules require that.  They

7    didn't do that consultation.  Therefore, it is a defense to

8    the charges.  And *Liveright* makes clear that it's not an

9    element of the defense, but it is a defense that the

10   defendant can raise.  And I think that's where *Yellin* comes

11   in.

12             So *Yellin* says, House Committees set out these

13   procedural rules.  They protect witnesses' rights.  And to

14   the extent the witness wants to vindicate those rights, that

15   can be a defense if the House doesn't comply.  So in a

16   circumstance like *Yellin* or *Liveright*, where the witness

17   can't know one way or another whether it's been complied

18   with, they get to raise it as a defense regardless.  In a

19   case like *Bryan*, where the defendant can know at the time

20   and doesn't preserve it, they waive it and they can't raise

21   it.

22             So here the defendant's dispute with the number of

23   members is really one about, Well, they didn't have enough

24   members to issue the Subpoena.  But House Res 503 doesn't

25   require 13 members to be sitting to issue subpoenas.  It

1    says that the Chair unilaterally can issue subpoenas.

2          So here it's a procedural rule, and it's not even

3    a procedural rule that provides any rights or protections to

4    the defendant, regardless of the number of members on the

5    Committee.  The House resolution gives the Chair the

6    authority, the sole authority, to issue subpoenas here.

7          Even if we got past the waiver, it wouldn't even

8    fall under the category of procedural objections that *Yellin*

9    recognizes that can be vindicated by raising it as a defense

10   at trial.

11         And the same goes for the objection to the ranking

12   minority member.  The ranking minority member has no role in

13   issuing the Subpoena.  So, again, there is no procedural

14   protection with respect to that title that the defendant

15   would have been entitled to just on the issuance of the

16   Subpoena.

17         So, one, he's waived all of these objections.

18   But, two, even if he hadn't, they're not the kinds of

19   objections that the Supreme Court has recognized as those a

20   defendant can raise in defense to contempt charges.

21         **THE COURT:**  Counsel, the court reporter would like

22   to take a break.  Is now an okay time to take 10 minutes --

23         **MS. VAUGHN:**  Absolutely, Your Honor.

24         **THE COURT:**  -- and then come back?  Okay.  We are

25   in recess for just 10 minutes.

1          **DEPUTY CLERK:**  All rise.  Court is now in recess.

2      (Break at 11:57 a.m. and resumed at 12:05 p.m.)

3          **DEPUTY CLERK:**  We are now back on the record.

4          **THE COURT:**  Ms. Vaughn.

5          **MS. VAUGHN:**  Your Honor, I have the jury

6      instruction that was approved in *Fields* on the meaning of

7      "willful" and it's as follows:  The word "willful" does not

8      mean that the failure or refusal to comply with the order of

9      the Committee must necessarily be for an evil or bad

10     purpose.

11          The reason or purpose of failure to comply or

12     refusal to comply is immaterial, so long as the refusal was

13     deliberate and intentional and was not a mere inadvertence

14     or an accident.

15          **THE COURT:**  Okay.  Thank you.

16          **MS. VAUGHN:**  So we left off with objections, just

17     to summarize the Government's view, all of these issues that

18     the defendant raises that he has waived.  And even if he had

19     not, things like the Committee not having 13 members and the

20     ranking minority member title, are not things that go to

21     rights that he could have vindicated -- before the Committee

22     with respect to the Subpoena's issuance, such that they

23     would even be defenses in the first place.

24          So unless the Court has any further questions on

25     that issue, I can move to the other.

1         **THE COURT:**  Please do.  Yes.

2         **MS. VAUGHN:**  Okay.

3         **THE COURT:**  Let me ask one question on the House's

4    view of whether the Committee was properly constituted,

5    notwithstanding the fact that it had 13 members or all of

6    these issues.

7         I understand your point about ratifying the view

8    and the contempt resolutions and the like.  Is your view

9    that the amicus brief that was filed with me is a place

10   where I could find the House's considered judgment on this

11   question?

12        **MS. VAUGHN:**  We think that the Court could look to

13   public filings in court cases by the House.  Since those

14   amicus briefs are made on behalf of the House and not any

15   individual member or on behalf of a particular committee, we

16   think under the -- under the rulemaking clause, they

17   represent statements of the House about the making of their

18   rules.

19        **THE COURT:**  And even if I didn't, I take it your

20   position is that I could look to party briefs filed by the

21   Committee -- although that probably wouldn't work.  It would

22   have to be party briefs filed by the House and cases here.

23   Are there any?

24        **MS. VAUGHN:**  I think that's right.  Party briefs

25   in other cases, I'm not --

1          **THE COURT:**  You mentioned before other cases

2     pending on this.

3          **MS. VAUGHN:**  Yeah.  Sorry.  My understanding is at

4     least some of those cases are cases in which the January 6th

5     Committee has taken a position on -- this question, but

6     that's not the House position.  Correct?

7          **MS. VAUGHN:**  Well, I think, in some of those

8     cases, the Speaker was a party.  And since the Speaker has

9     the authority -- to appoint the Committee, her position

10    would likely also be informative.

11         **THE COURT:**  Okay.

12         **MS. VAUGHN:**  I think under *Yellin*, they look to

13    the practice of the committee as well in determining what

14    the rule requires.  And here there's nothing inconsistent in

15    the record about how the Committee or the House has

16    interpreted or ratified these actions.

17         **THE COURT:**  Okay.  Thank you.

18         **MS. VAUGHN:**  So turning to -- I can turn to the

19    issues related to Mr. Costello next.

20         **THE COURT:**  Yes, that would be fine.

21         **MS. VAUGHN:**  There are two issues raised.  One is

22    whether there's a basis for dismissal, and the other is

23    whether there's a basis to exclude certain evidence.

24         And with respect to dismissal, for dismissal on

25    the basis of outrageous government conduct, you have to

1     have, one, misconduct and then prejudice.

2               Here the government never chose Mr. Costello as a

3     witness.  The defendant did.  He was his attorney in

4     relation to the acts under investigation.  He was involved

5     in the acts under investigation.

6          **THE COURT:**  Let me just cut to probably what seems

7     to be the most important question, at least on the

8     evidentiary point.  Does the government intend to use any of

9     the evidence that was obtained relating to Mr. Costello's

10    accounts in the trial in this matter?

11         **MS. VAUGHN:**  Obviously not accounts that did not

12    belong to him.

13         **THE COURT:**  Clearly.  What about accounts that

14    did?

15         **MS. VAUGHN:**  The toll records, it's possible.

16    Sitting here right now, we haven't finalized our exhibits.

17    But to the extent that there are calls between --

18         **THE COURT:**  I mean, isn't it undisputed that

19    Mr. Bannon was aware of the Subpoena?  That's the

20    government's argument -- was the government's argument.  We

21    needed to look at this information to, in case we needed to

22    prove that Mr. Bannon knew about the Subpoena.  It is --

23         **MS. VAUGHN:**  Or subsequent communications with the

24    Committee.  If the defendant --

25         **THE COURT:**  Wait.  What?  That Mr. Bannon knew

1     about Mr. Costello's subsequent communications with the

2     Committee?

3              **MS. VAUGHN:**  For example, that the Committee had

4     rejected his basis for not appearing.

5              If the defendant wants to stipulate to these

6     things, that there's no factual question that he knew he had

7     to produce documents by October 7th, and he knew that he had

8     to appear on October 14th, we wouldn't need to use any of

9     this.  We could present the stipulation to the jury.

10             So it's possible that we would have to use tolls.

11    In sitting here, I can't tell you how many calls there are

12    in number or what have you.  And it's also possible that we

13    would have to use Mr. Costello's statements to the extent

14    that they present, either in cross of our witnesses or in

15    their own case in chief, evidence that's contradictory to

16    what Mr. Costello told us about the defendant's knowledge.

17             **THE COURT:**  Are you talking about, for example,

18    his declarations here or his statements to law enforcement?

19             **MS. VAUGHN:**  Either or both.

20             **THE COURT:**  Is that -- at least that's not --

21    that, at least, is not information that the government

22    obtained through subpoena or the process that we were

23    talking about last time --

24             **MS. VAUGHN:**  Right.

25             **THE COURT:**  -- right?

1          **MS. VAUGHN:**  That's right.

2          **THE COURT:**  Okay.

3          **MS. VAUGHN:**  But the foundational question for

4    dismissal is, Was there misconduct?  There wasn't.  There's

5    no privileged communications that the government obtained --

6    improperly.

7          And then the second question is, Was there

8    prejudice?  And the defendant still has not actually

9    identified actual and substantial prejudice.

10         They say that, I guess, the defendant was upset

11   with his attorney.  But, again, the government, from the

12   very beginning, raised this potential conflict in its first

13   call with Mr. Schoen and Mr. Corcoran, before Mr. Costello

14   ever entered an appearance.

15         Despite that, the defendant apparently decided to

16   waive any potential conflict and have Mr. Costello enter an

17   appearance.  And he can't now turn around and turn that into

18   a weapon against the government.  These are all his choices.

19   So he's completely failed to show misconduct, completely

20   failed to show prejudice. -- There's no basis for dismissal

21   here.

22         And on the exclusion issue, there's no basis for

23   that either.  He doesn't articulate any legal basis for

24   exclusion.  They were lawful grand jury subpoenas.  We're

25   not using anything in relation to the 2703(d), and there

1    were voluntary interviews in which Mr. Costello participated

2    with the government.

3            So there's no violation of any legal principle or

4    right, constitutional or otherwise, that the defendant is

5    identifying in the government's conduct here.

6            So he seems to want to fashion, instead, an

7    exclusionary rule for attorney/client privileged

8    information, but he doesn't actually even identify any

9    privileged information.

10           So without having identified any basis to exclude

11   this relevant, admissible evidence, to the extent it is at

12   trial, there's no basis to exclude it.

13           **THE COURT:**  Okay.

14           **MS. VAUGHN:**  I can turn now to the prior good acts

15   motion that the government filed.

16           **THE COURT:**  Yes.

17           **MS. VAUGHN:**  Standing here we still don't know the

18   circumstances or even the timing of the other subpoenas or

19   instances of testimony to which the defendant has alluded in

20   relation to the Mueller investigation, in relation to the

21   House Intelligence Committee or in relation to the Senate

22   Intelligence Committee.  As the party proffering the

23   evidence for admission, the defendant bears the burden of

24   showing its relevance.

25           The only thing he offers is that it's somehow

1    relevant to his intent, what was in his mind.  But the only

2    way that it would be relevant is to show that he believed

3    his decision not to show up or not to produce records was

4    somehow excused by executive privilege; that would be the

5    theory he would be suggesting to the jury.  And that theory

6    is barred under *Licavoli*, *Bryan*, et cetera, as we've already

7    discussed.

8         His reason for not showing up is not relevant, if

9    his -- decision was deliberate and intentional.  So the only

10   remaining purpose would be propensity evidence, and the

11   defendant concedes that is improper.  So that evidence

12   should just be excluded outright.

13        **THE COURT:**  It seems to me that this is one of the

14   questions where, putting aside the dismissal arguments, but

15   just whether the evidence can go to the jury depends, at

16   least in part, on what the jury instruction around mens rea

17   would be.

18        I understand you read me the *Fields* one.  I

19   haven't decided what the jury instruction will be.  Did the

20   D.C. Circuit in *Fields* actually say that that jury

21   instruction was correct --

22        **MS. VAUGHN:**  It --

23        **THE COURT:**  -- or did they just affirm the

24   conviction on other grounds?

25        **MS. VAUGHN:**  *Fields* was addressing the meaning of

1     wilfulness and found that that definition was correct.

2                 **THE COURT:**  Was correct.  Okay.

3                 **MS. VAUGHN:**  Uh-huh.

4                 But even if -- even if the intent standard were

5     different, to enter other acts evidence, the defendant still

6     has to show a conformity in circumstance, in timing, in

7     parties.  And he hasn't even attempted to do that.

8

9                 **THE COURT:**  Why wouldn't he -- I mean, if the mens

10    rea definition here -- I understand the government's

11    argument is that it is not -- were sufficiently capacious

12    that it included, for example, something like, you know, the

13    government had to prove -- it's a little hard to frame in

14    light of what your position is about *Fields*.

15                But if Mr. Bannon was entitled to argue or to at

16    least rebut the government's evidence that when he acted in

17    a way that he thought was consistent with how one is

18    supposed to behave when there is an executive privilege

19    assertion -- and not only did he do that here, but he had

20    been through these procedures before.  And in those

21    procedures he acted in a very similar way, all which goes to

22    show -- -- this in a technical legal sense -- his good

23    faith, his reasonableness, his nonintentional default.  I

24    guess -- would say with a different statute or a different

25    mens rea that might be relevant, but here it can't be?

1        **MS. VAUGHN:**  Even if it were here, the defendant

2    hasn't shown any similarities.  I mean, he hasn't proffered

3    anything.  And under Rule 404(b) --

4        **THE COURT:**  Well, wouldn't that be just a trial

5    question?

6        I mean, we don't have exhibits yet.  We don't have

7    a proffer at trial.  We haven't had someone say to me, Your

8    Honor, we'd like to ask Mr. Bannon questions about when he

9    was subpoenaed by the Mueller team.  And we would establish

10   that when he did that, he engaged in good faith with them,

11   and it was a four-month negotiated process, and they

12   protected privilege, and he was allowed to testify.  And we

13   want to show that that's how he would have approached this

14   one if permitted to do so.

15       **MS. VAUGHN:**  That would be admissible or

16   inadmissible under Rule 404(b), and for something to be

17   admissible under Rule 404(b), it has to be more than just --

18       **THE COURT:**  No, he would say, And my intent here

19   was to do the same thing, was to respond in the same

20   appropriate protective way.

21       **MS. VAUGHN:**  The problem is he hasn't shown any of

22   that.  He hasn't shown --

23       **THE COURT:**  Well, that's a trial question.

24       **MS. VAUGHN:**  Well, to even be able to present it

25   at trial, he has to make a -- under Rule 404(b), he has to

1    initially show that it would be --

2              **THE COURT:**  But wouldn't that be a proffer at

3    trial?

4              **MS. VAUGHN:**  So our Motion to Exclude the

5    Evidence, in our view, tees it up for the Court.

6              **THE COURT:**  Tees that up.

7              **MS. VAUGHN:**  It is our view --

8              **THE COURT:**  He was obligated, in your view, to

9    have provided more details in response to your motion that

10   would have acted as a proffer.

11             **MS. VAUGHN:**  Yes.  Under the Rules of Evidence, a

12   party can't say, I promise, Judge, I'm going to prove what I

13   have to prove.  Just let me ask all the questions and make

14   all the arguments.

15             Where the admissibility of evidence is challenged,

16   the party proffering it has to make some showing to the

17   Court initially that it is, in fact, admissible.

18             And here the defendant hasn't even told us when he

19   was subpoenaed in those other instances.  Was he even an

20   executive branch official?  Was he a private party?  There's

21   just nothing he's offered.  And so without that initial

22   offer, that evidence should be excluded.

23             **THE COURT:**  Okay.

24             **MS. VAUGHN:**  I think I've addressed everything,

25   unless the Court has other questions.

1      **THE COURT:**  No.  Thank you.  I'd like to hear from

2      defense counsel, very briefly, and then from the government,

3      briefly as well, as necessary.  And by "very briefly" I

4      mean, like, less than 10 minutes.

5      **MR. CORCORAN:**  Your Honor, one thing I wanted to

6      address, because you've asked it a couple of times about the

7      face of the Indictment, is our Motion to Dismiss Count 2.

8      The defense -- and basically because it would allow the

9      grand jury to indict Mr. Bannon for not providing a log of

10     withheld records.  That's not a crime and so that count

11     needs to be dismissed.  I think the government, in their

12     brief, has indicated that -- let me just grab that cite.

13          Their concession, at least with regard to the

14     Committee not compelling any executive branch official to

15     produce a privilege log, in the *Miers* case is at Document 65

16     at Page 36, and our basis for dismissal of Count 2, on that

17     basis would be the Supreme Court case *Miller*, 471 U.S. at

18     136.

19          The only thing that I would -- I think you've,

20     through the discussion with government counsel, come around

21     to a view or to an understanding in terms of the discussion

22     that the issue of the Subpoenas and so forth -- is something

23     that's going to have to be addressed at trial, not excluded.

24     There's certainly no obligation for a defendant to provide

25     any information to the government in advance of trial that

1       goes beyond the applicable rules of discovery.

2               So we don't have to, for instance, until the Court

3       requires us, even list our witnesses or notify the

4       government of the witnesses.  And a proffer about prior

5       subpoenas is not something that we -- that there's any

6       authority for our obligation to provide that.

7               I think the last point I wanted to make, and I'll

8       be brief, is that I don't believe that the briefs filed in

9       other cases in this courthouse can be considered the

10      position of the House on the issues that are being raised in

11      this case.

12              I don't know of any other -- I know we've talked

13      about the distinction between civil and criminal cases.  But

14      here, I think, that would be crucial.  And I think that

15      briefs that are filed as argument simply can't be viewed as

16      the official position of the House.

17              Thank you very much.

18              **THE COURT:**  Thank you.

19              Mr. Schoen.

20              **MR. SCHOEN:**  Yes, Your Honor.  Briefly.  I'm aware

21      of the time limit.  I'll talk faster.  Just a couple quick

22      points, Judge.

23              First of all, going back to the beginning of the

24      Court's discussion with the government lawyer, our position

25      hasn't shifted at all.  The issue of fair notice and due

1    process is a conceptually distinct argument from the

2    entrapment by estoppel.  And we raise it in our motion,

3    Pages 18 to 22 and 46; the Reply, 19 to 23 and 13.  A

4    critical difference which the Court pinpointed is, we don't

5    have to show any reliance for the fair notice; that's a

6    question for the public.  We don't have to show we ever read

7    the OLC opinions or otherwise.

8           We have to -- we look at it objectively.  Could a

9    reasonable person know that he's going to be subject to

10   criminal prosecution -- despite the fact that there are --

11   these OLC opinions?  The Department of Justice's position is

12   once privilege is invoked, you don't have to appear;

13   criminal contempt statute can't be applied.  And the reason

14   he should know he's subject to it is because at the time he

15   wasn't working for the government.

16          I would say, by the way, in reference to the

17   opinion I referred to, 58-8, the Assistant U.S. Attorney

18   ones, the Department of Justice there talks about the same

19   principles of privilege and why privilege -- not interfering

20   with privilege, through a congressional subpoena is just as

21   important for outside folks.

22          So, for example, on Page 6, when they say that the

23   communications involve individuals outside the executive

24   branch, does not undermine the President's confidentiality

25   interests.  The communications at issue occurred with the

1    understanding they'd be held in confidence.  That's the

2    underlying principle.  It applies whether they're outside

3    people or inside people.  And we don't construe these things

4    so narrowly.

5         Now, by the way -- you know, the test is, of

6    course, as the Court's aware, once privilege is invoked, in

7    order to get around that, Congress needs to show that the

8    material was demonstratively critical.  There's been no

9    showing of anything like that with Mr. Bannon.  But there

10   would have been if they really wanted the information, his

11   testimony or the documents.  They would have had a civil

12   enforcement proceeding.  Very simple question.  They never

13   wanted that.  They wanted to make an example out of him.

14        Now government counsel said, you know, -- The OLC

15   opinions don't fit squarely, therefore he can't raise

16   entrapment by estoppel.  The question for entrapment by

17   estoppel is whether it was reasonable for Mr. Bannon to

18   believe that the OLC opinions applied and that their

19   substance is what he should follow in the case.

20        With all due respect, it would be absurd --

21        **THE COURT:**  Would that be a jury question?

22        **MR. SCHOEN:**  Your Honor, if Your Honor doesn't

23   dismiss it on the entrapment by estoppel.

24        Look, under *the Levin* case, the Court said, in the

25   Sixth Circuit, We had enough here to dismiss it on a

1    pretrial motion.  The opinions were there and so on.

2              But if the Court didn't go that route -- which I

3    would advise the Court to be extremely cautious about.  If

4    the Court didn't go that route and the Court decided to go

5    forward with a trial, perhaps ill-advisedly, then yes, that

6    would be a jury question.

7              The reasonableness of Mr. Bannon's belief that

8    he's covered -- because once executive privilege was

9    invoked, he's covered -- that that OLC opinion that he made

10   clear to the government he relied on; that no agency counsel

11   and so on.  And again, for that inquiry, the history of the

12   OLC opinions would be relevant.  And Mr. Costello's

13   testimony would be directly relevant; and that's the

14   *Tallmadge* case.  But it makes sense, with or without that

15   case.

16             He has an experienced criminal defense lawyer who

17   tells him, These are the OLC opinions.  They apply in your

18   case.  I believe they apply.  Here's why they apply.  That

19   goes to the question of whether Mr. Bannon's belief was

20   reasonable, so does the continued reiteration by the

21   Department of Justice.

22             Okay.  I'm going to wrap it up.  Let's see.  The

23   government said that, Well, there's fair notice because the

24   statute's language is clear.  This is an as-applied

25   challenge.

1          And what *Raley* says is, We also use government

2     statements to determine whether there is fair notice.  So

3     it's not a question of just whether the language in the

4     statute is clear.  Everybody knows this statute has been

5     applied in other cases.

6          The Court asked -- this is an important thing, I

7     thought.  Everything the Court asked is important, but this

8     particularly is.  The Court asked whether it goes to a

9     matter of mens rea if he believed, for example, you know,

10    that executive privilege permitted him not to comply with

11    the Subpoena.

12         The government said -- I was surprised to hear it

13    still at this point.  It's in their opposition.  The

14    government said, No, that wouldn't matter.  The reason he

15    didn't show up doesn't matter.  That's not what the mens rea

16    in this case requires, right, under the statute.

17         In fact, I saw in their opposition, at Page 29 to

18    30, that's Document 65, they wrote, The government's motion

19    and the Court's order granting it, however, address an

20    entirely different question, that is, whether a defendant's

21    purported good faith but erroneous reliance on privilege or

22    his counsel's advice about it negates the intent element of

23    the offense.  As the Supreme Court and the D.C. Circuit and

24    now this Court has held, it does not because the intent

25    element of the statute requires only that the defendant's

1    failure to appear or produce records be deliberate and

2    intentional, whatever the reason is.

3              We're back to executive privilege doesn't matter.

4    Clearly it says it doesn't negate the intent.  If that's the

5    case, then I'm back to our argument in brief that we've got

6    a real separation of powers problem with this statute.  If

7    the reason doesn't matter, if the invocation of executive

8    privilege -- that's not *Fields*, by the way.  Executive

9    privilege is very different -- if the invocation by the

10   President of executive privilege doesn't matter, then this

11   statute, as applied, violates the separation of powers.  And

12   that's in our motion.

13             And by the way, here's what Ted Olson of the

14   Justice Department wrote in a binding authoritative opinion.

15   I think it's at Page 135, but I can't read my notes.  In his

16   opinion, he said, "Furthermore, a person can be prosecuted

17   under Section 192 only for a 'willful' failure to produce

18   documents in response to a congressional subpoena."  There

19   is some doubt --

20             **THE COURT:**  It seems like a number of people who

21   have said that about the statute were not reading *Licavoli*.

22             **MR. SCHOEN:**  May I, Your Honor?

23             Binding authority on the Justice Department.

24   Estoppel.  Here is what he goes on to say, which is

25   important.  "There is some doubt whether obeying the

1    President's direct order, to assert his constitutional claim

2    of executive privilege, would amount to a willful violation

3    of the statute."

4          Executive privilege is different.  All of the

5    cases say, Privilege must be allowed as a defense to

6    contempt of Congress statute.  Period.  The Supreme Court

7    has said it.

8          And so the government's position is it doesn't

9    matter.  The only thing that matters is something like

10   accident, you  know, you couldn't show up because you got

11   hit by a car, God forbid.  It's just wrong.  And that

12   violates the separation of powers.  All right.

13       (Brief pause)

14         The Court's aware we raised in ECF-82 -- I know

15   the Court made reference to the amicus brief -- we raised

16   our objection. --  The guy, Letter, has factual assertions

17   in there without any declaration.  And they contradict his

18   earlier assertion to the FBI that there is no ranking

19   member.  Maybe, more importantly, they contradict Chairman

20   Thompson's assertion, in a press conference, that Liz Cheney

21   is not the ranking member.  So unless -- well, anyway.  It's

22   not appropriate to have these factual assertions in there.

23         And then I guess all I would say is, again, for

24   me -- I guess I'm a cynic -- the idea that the government

25   was just trying to find out about Mr. Costello's

1    communications about the Subpoena, I would have thought they

2    would have actually subpoenaed his real email account that

3    they knew about, the one they used to communicate with him

4    but they didn't.  It's a shame.  It's an intimidation

5    tactic, Judge, I'm afraid.

6           Thank you, Your Honor.

7           **THE COURT:**  Thank you.  Thank you.

8           Ms. Vaughn, briefly.

9           **MS. VAUGHN:**  Just two points, Your Honor.

10          First, the government has never said that a

11   constitutional privilege cannot be a defense to contempt,

12   but a constitutional privilege is a legal question for this

13   Court to decide.

14          Once the Court decides that executive privilege

15   did not bar enforcement of the Subpoena in total, the

16   defendant cannot then argue at trial that his belief that it

17   did excuses his default.  Those are two different questions.

18   One is, Is it a legal defense?  That's a sole question for

19   the Court, not the jury.

20          **THE COURT:**  But the defense is not whether it was

21   privileged.  The defense that's been asserted is that there

22   was a due process problem or entrapment by estoppel.

23          You're not saying that -- or are you saying that

24   it's up to me to decide whether, in fact, the communications

25   between the President and Mr. Bannon were privileged; and if

1    they were, then he has a defense here?

2            MS. VAUGHN:   If the defendant were raising that as

3    a defense, saying executive privilege actually bars my

4    compliance with this subpoena, that would be --

5            THE COURT:   He is saying that in a way.  I'm just

6    trying to understand your argument.

7            MS. VAUGHN:   Uh-huh.

8            THE COURT:   Are you saying that if I concluded

9    that the communications between Mr. Bannon and the President

10   were, in fact, privileged, that that would be a defense

11   here?

12           MS. VAUGHN:   Well, it wouldn't be here, because he

13   engaged in total noncompliance.  So the question would be --

14           THE COURT:   I don't understand the point of your

15   argument then.

16           MS. VAUGHN:   So Mr. Schoen said that the

17   government is taking the position that executive privilege

18   doesn't matter; and that's not the position we're taking.

19           So maybe the Fifth Amendment would provide a good,

20   sort of, parallel.  If a witness that's summoned by a

21   committee says, I have a Fifth Amendment right not to

22   testify and not to appear.  And then they're charged with

23   contempt.  And they come before the Court and they say, Your

24   Honor, the Fifth Amendment excused all of my compliance, the

25   Court would decide as a matter of law whether that's right

1    or not.

2              Once the Court says, Actually, that's not right.

3    The Fifth Amendment didn't excuse your compliance.  At

4    trial, the defendant does not get to argue, Acquit me

5    because I believed it did.  I know I was wrong at this

6    point, but I believed it did.

7              **THE COURT:**  I suppose it depends on what the mens

8    rea of the relevant statute is.

9              **MS. VAUGHN:**  And here the mens rea --

10             **THE COURT:**  And if the statute used the term

11   "willfully" but just in a different statute or I didn't have

12   a D.C. Circuit opinion holding that "willfully" was really

13   light, then maybe it would be relevant.

14             **MS. VAUGHN:**  Right.  Maybe it would be, if it were

15   a willful statute where your reliance on the law could be a

16   defense, but here it's not.

17             **THE COURT:**  Right.

18             **MS. VAUGHN:**  And so I just wanted to clarify that

19   the government has never said that the executive privilege

20   can't be a defense.  It's just good faith reliance on it is

21   not.

22             **THE COURT:**  In this case because of this statute

23   and because of *Licavoli* --

24             **MR. SCHOEN:**  Yes, Your Honor.

25             **THE COURT:**  -- right?

1          **MS. VAUGHN:**  Yes.

2          **THE COURT:**  I mean, it actually could be -- I know

3    this is the same question I just asked.  But if you had a

4    different statute and a different mens rea, it might

5    actually be -- not a defense.  It would be a refutation of

6    the government's attempt to prove the relevant mens rea, by

7    whatever the standard is in that other statutory context.

8          **MS. VAUGHN:**  For example, campaign finance

9    statutes.  The willfulness standard is knowledge that your

10   conduct was generally unlawful.

11         **THE COURT:**  Right.  In a specific way even.  Yes.

12         **MS. VAUGHN:**  Yeah.

13         **THE COURT:**  Okay.

14         **MS. VAUGHN:**  And then Mr. Corcoran also said that

15   there's no rule requiring the defendant to proffer evidence,

16   which the government is objecting to.  That's incorrect.

17         So Federal Rule of Evidence 104 says that the

18   Court must decide preliminary issues of whether evidence is

19   admissible.  And Federal Rule of Evidence 103 says that the

20   Court has to prevent inadmissible evidence from going to the

21   jury, from being presented to the jury.

22         So obviously the government can just raise this

23   objection again, but there's no rule allowing the defense to

24   just surprise at trial with its evidence.

25         That's all we have.

 1            **THE COURT:**  Thank you.

 2            **MS. VAUGHN:**  Thank you, Your Honor.

 3            **THE COURT:**  Thank you, Ms. Vaughn.

 4            **MR. SCHOEN:**  Request I have less than one minute?

 5            **THE COURT:**  No.

 6            **MR. SCHOEN:**  Thirty seconds?

 7            **THE COURT:**  No.

 8            **MR. SCHOEN:**  Ten?

 9            **THE COURT:**  No.

10            **MR. SCHOEN:**  Five?

11            **THE COURT:**  No.  I'm good.

12            **MR. SCHOEN:**  Last offer.

13            **THE COURT:**  I'm going to take a brief recess.  I'm

14       going to give you my thoughts on where I am on these issues.

15       Okay?

16            **DEPUTY CLERK:**  All rise.  This Honorable Court now

17       stands in recess.

18            (Break at 12:35 p.m. and resumed at 12:44 p.m.)

19            **DEPUTY CLERK:**  We are now back on the record.

20            **THE COURT:**  Thank you, Ms. Lesley.

21            Counsel, thank you for the argument this morning.

22            As I indicated, I took a short recess because I

23       wanted to provide the parties with at least one decision and

24       then some reasons on the way I'd like to proceed on some

25       other issues.

1          So obviously we have five motions in front of us.

2     Four go to evidentiary questions and one is the Defendant's

3     Motion to Dismiss the Indictment or case; that's ECF-58.

4     I'll take that motion up first.  I'm going to deny that

5     motion.

6          Before trial, a criminal defendant may move to

7     dismiss a charge based on a "defect in the indictment."

8     This is not an easy showing for any defendant to make.  The

9     key question is whether the allegations in the indictment,

10    if proven, would permit a jury to find that the defendant

11    committed the criminal offense charged.  The Court is thus

12    limited to analyzing the language in the indictment itself

13    to see if it supports the counts charged by the grand jury.

14         Mr. Bannon first alleges that the Subpoena was not

15    lawfully issued.  He raises several arguments on this score,

16    but each falls short at this stage at least.

17         First, Mr. Bannon argues that the composition of

18    the Select Committee invalidates the Subpoena.  As he notes,

19    House Resolution 503, the resolution that authorized the

20    Select Committee, provides that, "The Speaker shall appoint

21    13 members to the Select Committee, -- five of whom shall be

22    appointed after consultation with the minority leader."

23         Mr. Bannon argues the Speaker rejected the

24    nominees suggested by the minority leader, and the Committee

25    has never operated with 13 members.

1          To begin, the Indictment states, And thus unless

2      the grand jury concluded there was probable cause that

3      Bannon was, "summoned as a witness by the authority of the

4      U.S. House of Representatives to give testimony upon a

5      matter under inquiry before a committee of the House."

6      Thus, on its face, the -- indictment does allege, albeit

7      implicitly, that the Select Committee was arranged under the

8      authority of the House.

9          Even assuming the truth of Mr. Bannon's contention

10      of there being less than 13 members of the Committee while,

11      of course, those numbers are not in the indictment, the

12      government at least does not dispute them.  It is not a

13      basis by which this Court can or will dismiss the

14      indictment.

15          And that is not to say that the argument is

16      unreasonable.  Indeed, I agree with Judge Kelly, who

17      recently dealt with similar arguments in another case that

18      this is "not an unreasonable -- position," as Judge Kelly

19      put it.  But the Court cannot conclude, as a matter of law,

20      that the Committee was invalidly constituted such that

21      dismissal of the indictment is warranted.

22          As noted by Judge Kelly in his opinion, the use of

23      the word "shall," although usually mandatory, can sometimes

24      mean "should," "will" or even "may," as the Supreme Court

25      stated in *Gutierrez de Martinez versus Lamagno*.  Though

1    "shall" generally means "must," legal writers sometimes use

2    or misuse "shall" to mean "should," "will" or even "may."

3    That's a quote from the Supreme Court.

4              So the fact that House Resolution 503 uses the

5    word "shall" is not conclusive to proving that 13 members

6    are required for the Select Committee to lawfully operate.

7              And given this potential ambiguity, the Court

8    agrees with Judge Kelly that it must give great weight to

9    the interpretation of those House members charged with

10   implementing the resolution and to the House itself.

11             This reading, the reading applied by the Speaker,

12   appears to be that in the context of this resolution, and

13   "the Committee shall" means "may or should"; that reading

14   appears to have been ratified by the full House several

15   times through the contempt resolution and prosecution

16   referrals with respect to Mr. Bannon, the contempt

17   resolution and referral from Mark Meadows, the contempt

18   resolution and referral for Peter Navarro and the contempt

19   resolution and referral for Dan Scavino.

20             As I've noted, this meaning of the word "shall"

21   has been recognized in various opinions, including opinions

22   of the Supreme Court, and there would be potential

23   separation of powers issues, should this or any court reject

24   a congressional interpretation of its own rule.

25             As the Court of Appeals as explained, "The

1    rulemaking clause of Article I clearly reserves to each

2    House of Congress the authority to make its own rules.  And

3    judicial interpretation of an ambiguous House Rule runs the

4    risk of the Court intruding into the sphere of influence

5    reserved to the legislative branch under the Constitution."

6    That's a quote from *Rostenkowski*.  As such, the Court cannot

7    conclude, as a matter of law, that the composition of the

8    Select Committee renders the Subpoena invalid such that

9    dismissal of the indictment is warranted.

10           Second, Mr. Bannon argues that the Select

11   Committee exceeded its subpoena authority.  He argues that

12   the Select Committee violated rules that mandate consulting

13   with the ranking minority member, as well as rules that

14   require deponents to be issued protective rules in advance

15   of testifying.  Neither argument warrants dismissal of the

16   indictment.

17           Mr. Bannon contends that "on its face, the

18   indictment fails to allege that the Subpoena was issued to

19   Mr. Bannon in compliance with the Subpoena authority granted

20   to the Select Committee, which requires consultation with

21   the ranking minority member."

22           True enough.  That is true.  And when assessing a

23   Motion to Dismiss the Indictment, the Court is limited to

24   the four corners of that document, as I've said, at least

25   generally speaking.

1          But the indictment does state, and thus the grand

2     jury concluded, that there was probable cause that Bannon

3     was, "Summoned as a witness by the authority of the House --

4     of Representatives to give testimony upon a matter under

5     inquiry before a Committee of the House."

6          Thus, again on its face, the indictment does

7     allege, albeit implicitly, that the Subpoena was issued in

8     compliance with the Subpoena authority granted to the

9     Committee.

10          But even if the Court can consider whether the

11     Select Committee exceeded its authority by not properly

12     consulting with a ranking minority member, it would still be

13     unable to accept Mr. Bannon's argument as a matter of law.

14          It is Mr. Bannon's position that ranking minority

15     member is a well-defined legislative term, meaning a member

16     designated by the minority party and responsible for

17     protecting the rights of the minority party.  Mr. Bannon

18     argues that the Select Committee has no one in that

19     position.

20          But the Committee does have a member of the

21     minority party, Representative Liz Cheney, who serves as

22     Vice Chair, and it appears that the House believes that the

23     Select Committee's composition is consistent with this

24     requirement as well, and thus that the Subpoena here was

25     validly issued.

1          After all, the full House approved referring

2     Mr. Bannon's alleged noncompliance to the Department of

3     Justice for prosecution.  And, again, it has reaffirmed this

4     view several times in the cases of Mark Meadows, Peter

5     Navarro and Dan Scavino.

6          One further note, Mr. Bannon suggests that the

7     failure of the Committee to provide him with a copy of

8     certain rules before he testified also mandates dismissal of

9     the charges against him.  But the rule that Mr. Bannon

10    relies on states simply that "a witness shall not be

11    required to testify unless the witness has been provided

12    with" a copy of those rules.

13         The indictment alleges that Mr. Bannon never

14    showed up to the deposition.  Nothing in the rule cited by

15    Mr. Bannon requires a copy of those rules to be provided

16    along with the Subpoena itself or before showing up to the

17    hearing.  And in any event, once again, the full House

18    appears to have ratified this conclusion.  On this argument,

19    again, I cannot conclude that as a matter of law the

20    indictment is invalid.

21         Mr. Bannon also argues that the Subpoena was a

22    misguided and unconstitutional effort to make an example of

23    him.  Specifically alleges that "the Subpoena was an

24    unconstitutional attempt to usurp the executive branch's

25    authority to enforce the law in an effort to impede

1    Mr. Bannon's First Amendment rights to association and free

2    speech."

3         Mr. Bannon is correct that Congress' subpoena

4    power is ancillary to its legislative authority.  Thus, no

5    congressional subpoena can be used to enforce laws or

6    conduct criminal investigations; that would invade on the

7    providence of the executive branch.  But Mr. Bannon's

8    incorrect when he faults the indictment for "failing to

9    allege how the Subpoena issued to Mr. Bannon could validly

10   inform legislation."

11        As I've already noted, when assessing a Motion to

12   Dismiss the Indictment, I'm generally limited to the

13   four corners of that document.  And the Indictment (at

14   Paragraphs 23 and 25) does state -- unless, again, the grand

15   jury did conclude there was probable cause -- that

16   Mr. Bannon had been subpoenaed to either give testimony or

17   produce papers to "a matter under inquiry before a committee

18   of the House."

19        To the extent more detail is necessary to meet the

20   strictures of the Sixth Amendment, the Court would find it

21   present:  The legislative purposes of the Committee are

22   detailed at length in Paragraphs, 2, 3, 4, 5 and 7 of the

23   indictment.  And as we know, the D.C. Circuit has already

24   concluded that these are valid legislative purposes; that's

25   the *Trump versus Thompson* case.

1          To the extent that Mr. Bannon alleges that there

2     was no valid legislative purpose for his subpoena in

3     particular, I cannot conclude that, as a matter of law, he

4     is correct.

5          As the indictment quotes, the Select Committee's

6     cover letter to the Subpoena detailed why it wished to talk

7     to him.  "The Select Committee has reason to believe that

8     you have information relevant to understanding important

9     activities that led to and informed the offense at the

10    Capitol on January 6th, 2021.  For example, you have been

11    identified as being present at the Willard Hotel on January

12    5, 2021, during an effort to persuade members of Congress to

13    block the certification of the election the next day and in

14    relation to other activities on January 6th."

15         The Select Committee continued, "Moreover, you are

16    quoted as saying on January 5, 1221 that 'all hell is going

17    to break loose tomorrow.'  Accordingly, the Select Committee

18    seeks both documents and your deposition testimony regarding

19    these and multiple other matters that are within the scope

20    of the Select Committee's inquiry."  Those statements are --

21    in the Indictment, Indictment Paragraph 7.

22         Thus, on its face, the Subpoena itself -- and then

23    appears to have sought information on topics germane to the

24    purposes identified by the Court of Appeals in the *Thompson*

25    case, "Investigating the January 6th attack on the Capitol

1    and obtaining information to allow meaningful legislation",

2    such as "passing laws imposing more serious criminal

3    penalties on those who engage in violence to prevent the

4    work of government institutions."

5         Finally, Mr. Bannon argues that Count 2 must be

6    dismissed because the Select Committee lacks the power to

7    compel the production of a privileged log or certification.

8    Specifically, Mr. Bannon argues that no House Rule

9    authorizes a committee to require subpoena recipient to

10   create a privileged log of documents withheld or a written

11   certification that a diligent search has been completed.

12   And, Mr. Bannon argues, even if such a rule existed, it's

13   application to a former presidential advisor asserting

14   executive privilege would raise "serious separation of

15   powers issues."

16        Fleshing this argument out, he notes that the

17   Committee's instructions demanded specific details about the

18   withheld materials that he believes are privileged, such as

19   the "author, addressee and any other recipients", as well as

20   the "recipient of the author and addressee to each other."

21   Providing this information, he argues would reveal

22   "significant information regarding confidential matters

23   being contemplated by the President."

24        I disagree.  Even if Mr. Bannon may have a basis

25   for invoking executive privilege over certain of the

1   communications responsive to the Subpoena or may have had,

2   listing the author and recipient of any information claimed

3   to be privileged, that itself does not reveal any privileged

4   material.  That aside, the basis of this charge, Count 2, is

5   Mr. Bannon's failure to comply with the document subpoena

6   altogether.

7          The Committee alleges that he failed to supply any

8   documents whatsoever.  Thus, whether the Committee had the

9   power to compel the privilege log does not really matter to

10  the validity of this count.  The basis of the charge is that

11  Mr. Bannon failed to comply altogether, either by producing

12  unprivileged documents or by providing a log of withheld

13  documents that would not reveal privileged information.  As

14  with the other arguments, this argument does not provide, as

15  a matter of law, a reason to dismiss Count 2.

16         Mr. Bannon's next category of objections -- this

17  is really a different category -- about notice, entrapment

18  or public authority all sound in Due Process.  But in my

19  view, none carries the day sufficient to warrant dismissal

20  of this indictment.

21         At a minimum, Mr. Bannon is arguing that "OLC

22  opinions are binding authoritative statements reflecting the

23  official policy of the Department of Justice;" that those

24  and other statements of DOJ policy provide that DOJ would

25  not prosecute for contempt of Congress someone who has

1    declined to comply with a congressional subpoena in a

2    situation like this one, and thus that this prosecution is

3    barred by the doctrines of due process/fair notice or

4    entrapment by estoppel, actual public authority and apparent

5    public authority.  But on the record before me, none of

6    those doctrines requires or supports dismissal of the

7    indictment.

8              Each of these arguments is an affirmative defense.

9    And assuming, for the sake of argument, that the OLC

10   opinions and other department documents on which Mr. Bannon

11   relies, represent the kinds of government actions that could

12   establish the foundation of one or more of these defenses.

13   And I do know that the government appears to have conceded

14   today that OLC opinion would count at least for the

15   entrapment by estoppel defense, that each of these defenses

16   really rests on two predicates:  First, that the OLC

17   opinions and other department statements on which Mr. Bannon

18   relies are clearly applicable to the situation here; and

19   second, that the former President unequivocally invoked

20   executive privilege over Mr. Bannon's testimony and records.

21   But neither can be established, in my view, at least not at

22   this stage.

23             As for the first predicate, none of the documents

24   that Mr. Bannon has pointed to concern a congressional

25   subpoena seeking communications between a nongovernmental

1   employee and a President who, at the time of the Subpoena,

2   was no longer in office and had not clearly directed the

3   Subpoena recipient to decline to comply altogether.

4        As I'll discuss in a second, that latter point is

5   a disputed question and thus, for purposes of the Motion to

6   Dismiss the Indictment, I cannot assume such direction

7   occurred.  To be sure certain lessons might be drawn from

8   the OLC opinions but is more than a stretch that they, as a

9   matter of law, address this specific situation such that

10  dismissal is warranted.  Instead, none involve the exact

11  situation presented here.

12       Now, let's take the second predicate.  At this

13  stage there is, as far as I can tell, factual question as to

14  whether former President Trump unequivocally directed

15  Mr. Bannon not to comply with the Subpoena and/or

16  unequivocally invoked executive privilege.

17       The letters from President Trump's counsel, on

18  which Mr. Bannon relies, instructed Mr. Bannon to, (a) --

19  and this is a quote -- "(a) where appropriate, invoke any

20  immunities and privileges you may have from compelled

21  testimony, the Subpoena; (b) not produce any documents

22  concerning privileged material in response to the Subpoena;

23  and (c), not provide any testimony concerning privileged

24  material in response to the Subpoena."

25       President Trump's counsel later clarified in an

1    email to Mr. Bannon's counsel that "just to reiterate, our

2    letter referenced below didn't indicate that we believe

3    there is immunity from testimony for your client."  And

4    President Trump's lawyer continued, "As I indicated to you

5    the other day, we don't believe there is."

6            Nothing in these letters unambiguously instructed

7    Mr. Bannon not to produce any documents whatsoever or not to

8    appear at all, did not assert privilege over -- nothing in

9    these letters asserted privilege over particular documents.

10   And beyond that, the letters do not reflect, in my view, an

11   unambiguous invocation of executive privilege.  At a

12   minimum, this appears to be a jury question, which I'll

13   discuss in a second.

14           And, of course, there are topics covered by the

15   Subpoena that might not have required the production of any

16   privileged information at all or testimony about any

17   privileged information at all.  There is thus an open

18   question at this stage of the proceedings over the extent to

19   which and over what executive privilege was even invoked.

20           On account of both of these shortcomings, none of

21   Mr. Bannon's due process entrapment by estoppel public

22   authority arguments warrants dismissal of the indictment.

23           Another category of objections raised by

24   Mr. Bannon is 2 U.S. Code, Section 192.  The statute here is

25   unconstitutional as applied to the facts of this case.  I

1    disagree.  This argument is based on the Court's previous

2    decision granting the government's Motion in Limine

3    regarding advice of counsel; that's ECF-29.

4         As I made clear at the time, that decision was

5    inescapable in light of the D.C. Circuit's binding decision

6    in *Licavoli*, which we discussed again today.  I noted in my

7    prior decision that I have serious questions as to whether

8    *Licavoli* correctly interpreted the mens rea requirement of

9    "willfully", but it nevertheless remains binding authority.

10   Mr. Bannon has certainly preserved his arguments as to why

11   that case should be overruled.

12        In light of my prior decision, however, Mr. Bannon

13   argues that this prosecution here is unconstitutional as

14   applied to him because it violates the separation of powers

15   doctrine, is unconstitutionally overbroad by criminalizing

16   lawful conduct such as noncompliance, based on the

17   invocation of executive privilege and reliance on OLC

18   opinions is void for vagueness, and unconstitutionally

19   prohibits Mr. Bannon from telling the entire story of his

20   case.  I'll address each argument in turn.

21        First, in what is essentially an attempt to

22   relitigate *Licavoli*, again, Mr. Bannon argues that the

23   Court's interpretation of Section 192 renders Section 193

24   "nothing more than surplusage."  That section, Section 193,

25   provides that a witness cannot ignore a subpoena "upon the

1    ground that is testimony to such fact or his production of

2    such paper may tend to disgrace him or otherwise render him

3    infamous."  To the extent that Mr. Bannon seeks to preserve

4    this argument, he has.  But nothing about it allows me to

5    ignore binding D.C. Circuit precedent.

6         Second, Mr. Bannon argues that Section 192, as

7    applied to him, violates the "constitutional separation of

8    powers doctrine."  Specifically, Mr. Bannon argues that this

9    Court's prior decision about the Motion in Limine "makes the

10   indication of executive privilege by the former President of

11   the United States and its associated directive to Mr. Bannon

12   not to comply with the Subpoena based on executive privilege

13   legally irrelevant."  This, he claims, "gives Congress a

14   veto over a President's invocation of privilege."

15        In my view though, this is, again, nothing more

16   than an attempt to relitigate *Licavoli*, which I cannot do or

17   reconsider it.  I have no power to reconsider that decision.

18   The argument also assumes what is, at this --, hardly an

19   undisputed fact that former President Trump directed

20   Mr. Bannon to act in response to the Subpoena in the way he

21   did.

22        Despite putting it under the heading of "Section

23   192 as applied by its separation of powers doctrine",

24   Mr. Bannon does also argue that, I believe, "Section 194 is

25   unconstitutional as applied."  And this is at ECF-58, at 44.

1    But, again, it appears that where we are talking about

2    Section 194, 192, this argument is based on Mr. Bannon's

3    belief that the statute abrogates prosecutorial discretion.

4          I don't believe that that is the case here.  There

5    is nothing that I've seen that would suggest that the

6    statute here abrogates prosecutorial discretion whatsoever.

7          Mr. Bannon also argues the statute as applied is

8    unconstitutionally overbroad and void for -- vagueness.  I

9    don't see it that way.  As Justice Gorsuch has explained,

10   vague laws invite arbitrary power.  There is nothing vague

11   about Section 192.

12         And, indeed, Mr. Bannon's do not sound in

13   vagueness, not really.  A vagueness challenge targets the

14   language of the statute.  Mr. Bannon's argument is that, in

15   light of the OLC opinions, the statute does not give

16   constitutionally sufficient notice of what conduct works for

17   a person so situated to criminal liability.

18         I've already addressed most of this argument

19   already.  But that the DOJ will decline to prosecute certain

20   executive branch employees in certain situations does not

21   make the language of Section 192 any less clear.  The

22   statute applies broadly and does so here.

23         As Mr. Bannon also argues that, "the statute is

24   also void for vagueness because the key phrase 'willfully

25   makes default' gives insufficient notice as to what

1    constitutes a default in light of the long line of authority

2    it raises to a constitutional level, the imperative that

3    Congress and the executive branches must work toward an

4    accommodation in situations like the one presented here."

5    But none of this, in my view, goes to show why the word

6    "default" is unconstitutionally vague.

7         As for overbreadth, Mr. Bannon argues that the

8    holding in *Licavoli* means that Section 192, "includes within

9    its ambit fully legal and constitutionally protected conduct

10   -- noncompliance based on the invocation of Executive

11   Privilege and reliance on the OLC opinions."  But that is

12   not what the prior Court's ruling addressed.  Rather, I

13   merely held Mr. Bannon, based on *Licavoli*, cannot testify as

14   to advice of counsel or erroneous belief that his conduct

15   was excused under the law.

16        The final argument raised by Mr. Bannon is that,

17   "prosecutorial overreaching requires dismissal of the

18   indictment."  Specifically, Mr. Bannon argues that the

19   government's targeting of his counsel, Mr. Costello, for

20   certain information requires dismissal of the charges

21   against him.  I do not see this argument as a valid basis

22   for dismissing the charges against Mr. Bannon, and I will

23   not use my sanctions authority to do so.

24        I do continue to have serious issues with how the

25   government treated the situation of Mr. Bannon's counsel and

1    also how the government does not appear to have any issue

2    with its conduct.  But, in my view, those issues are better

3    left to be addressed at a later date after trial.

4            In particular, I do not conclude that Mr. Bannon

5    has made the showing necessary that he was prejudiced by

6    this conduct, such that dismissal is warranted.  Relatedly,

7    Mr. Bannon also argues that the government mislead the grand

8    jury, also requiring dismissal.  But Mr. Bannon has made no

9    attempt to prove that these alleged errors prejudiced him in

10   any way and, as Courts in this district have found, that is

11   a fatal flaw.  For all of these reasons, then, I will deny

12   Mr. Bannon's Motion to Dismiss the Indictment.

13           But, as everyone knows, there are also four other

14   Motions in Limine pending before me.  I will be taking each

15   of these motions under advisement.  I don't think I need to

16   repeat the motions that we have in front of us from the

17   government.  Everyone understands that these are ECFs 52, 53

18   and 54.

19           The problem is, as I discussed with government

20   counsel, I have not yet decided exactly what the jury

21   instructions will look like for this offense.  Obviously, I

22   have already held, as required by *Licavoli*, that Mr. Bannon

23   cannot rely on or introduce evidence relating to advice he

24   received from his counsel.  But I have not yet decided,

25   because we are not at the point yet where the parties have

1    proposed or litigated what the specific jury instructions

2    will be for either the mens rea, willfully or actus reus/no

3    default elements of the charged offenses.

4         I have also not yet decided what, if any, jury

5    instructions might be permissible on the various affirmative

6    defenses that Mr. Bannon has identified.  In my view, while

7    I think there are serious -- there are many reasons to think

8    that the entrapment by estoppel defense would not result in

9    the introduction of this evidence and, in particular, I'm

10   talking about the Department of Justice's opinions and

11   writings, it is at least possible that some of this evidence

12   can go to whether Mr. Bannon acted willfully or whether

13   Mr. Bannon made default, and again perhaps even an

14   affirmative defense.

15        Until I hear from the parties about the specific

16   jury instructions on these topics and decide what those

17   instructions will say, it seems to me premature to resolve

18   whether any of this evidence might be relevant.

19        I know -- I understand that while the scheduling

20   order did require any Motions to Exclude Evidence to be

21   briefed on the schedule we have in front of us, other

22   Motions in Limine generally will not be fully briefed until

23   July 8th, it is my intention to handle those Motions in

24   Limine, together with the ones that are pending now,

25   together with the parties' Proposed Jury Instructions, which

1    are due on July 11th.

2              I am not stating that the jury instructions will

3    permit the evidence that we've been talking about today, but

4    what I am stating is that I am not prepared to hold that

5    evidence is altogether excluded because it may be that,

6    notwithstanding *Licavoli*, that there is a jury instruction

7    that would put either evidence relating to the OLC opinions

8    and writings or Mr. Bannon's prior experience with subpoenas

9    at issue and relevant for the trial here.  So I am taking

10   those motions under advisement to be resolved in connection

11   with the jury instructions.

12             And as for Mr. Bannon's motion, ECF No. 56, which

13   seeks to exclude evidence relating to Mr. Costello, I find

14   it highly unlikely that the toll record information will be

15   relevant here; and presenting that evidence would, I think,

16   cause significant concerns for me.

17             I know the government hasn't had to say whether it

18   intends to do so, but I would very much signal my

19   disinclination to have that evidence come in here.  But at

20   the time that Mr. Costello was engaged with the Committee,

21   he was acting on Mr. Bannon's behalf, and his communications

22   with the Committee may be relevant.

23             He did not know at the time that the government

24   had taken these steps, and he knowingly and intentionally

25   engaged with the Committee.  So I am not -- I'm not deciding

1    this question either, but it seems to me that that evidence

2    is different and, assuming the government or, frankly,

3    Mr. Bannon makes a showing that that evidence should come

4    in, it probably will come in.  And I'm reserving that

5    question as well for resolution closer to trial in light of

6    the jury instructions and any other Motions in Limine that

7    will be filed as we get there.

8         So the bottom line is the Motion to Dismiss the

9    Indictment is denied.  The Motions in Limine are all taken

10   under advisement for consideration in the way I've

11   indicated.

12        I do think it is very relevant to me, in thinking

13   about all of these evidentiary questions, to know exactly

14   what or to attempt to know exactly what the jury will be

15   instructed about the various elements of this offense.  The

16   schedule puts that question, the Proposed Jury Instructions,

17   somewhat late relative to all of this other briefing.

18        So what I would like to hear from the parties is

19   their view about whether we should modify the schedule in

20   light of where I am.  I realize both parties may think I

21   should have decided all of these issues now.  But in light

22   of the fact that I would like not to and to think about

23   these issues in light of the jury instructions, what do the

24   parties think about modifying the schedule to essentially

25   move up either to parallel the next Motions in Limine stage

1    or at least to make, earlier, the Proposed Jury Instructions

2    and litigation over them?

3              Ms. Vaughn, do you have a view on that?

4              **MS. VAUGHN:**   Your Honor, the government would be

5    happy to move up the deadline for filing the parties'

6    Proposed Jury Instructions.  Perhaps we could leave the voir

7    dire and things like that for the original deadline --

8              **THE COURT:**   Yes.

9              **MS. VAUGHN:**   -- and then --

10             **THE COURT:**   Yes.  It seems to me -- we may have a

11   bunch of fights over voir dire, but that's really --

12             **MS. VAUGHN:**   Yes.

13             **THE COURT:**   -- that's going to be about questions

14   that go to the jury and the like.  It's not an evidentiary

15   question.  To try to put more framework about what is or is

16   not in the case, it seems to me that I need to decide on the

17   elements in particular of the -- what are the elements

18   specifically and what are the jury instructions from each

19   parties' view on those elements?

20             And I would like to decide those issues in tandem

21   with the evidentiary questions because, again,

22   hypothetically, if I think the jury instruction on mens rea

23   is more capacious than the government thinks, then some of

24   this evidence may be irrelevant.  I know you have a

25   different view.

1    **MS. VAUGHN:**   The government would be happy to

2    resolve the jury instructions first and then file Motions in

3    Limine shortly thereafter.

4    **THE COURT:**   And when do you think you could --

5    What I typically like to have happen is for the

6    jury instructions, because some of them will likely be

7    undisputed altogether, I would like the parties to have at

8    least a period of meeting and conferring around the jury

9    instructions -- is typically how I contemplate -- and then

10   to essentially file their competing views.

11   By when do you think the parties could engage

12   in -- so let's just sort of take jury instructions out of

13   the current standing order and say, Parties shall exchange

14   their instructions, shall meet and confer, shall lodge their

15   respective views and arguments about disputed ones.

16   How long do you think you need for that?

17   **MS. VAUGHN:**   I think we could probably do that in

18   about a week and a half, get the proposal to the Court.

19   **THE COURT:**   And that would -- so that would be --

20   that would mean you would have to get to opposing counsel

21   your proposal.  They'd have to respond.  You'd have to have

22   a meet and confer and then you'd be prepared to file

23   something in roughly a week and a half?

24   **MS. VAUGHN:**   That's right.  Monday the 27th, I

25   think, might be a good date.

1          **THE COURT:**  Okay.  Let me hear from

2    Mr. Corcoran -- or I didn't mean to assume it was

3    Mr. Corcoran.

4          **MS. VAUGHN:**  Could I ask one question --

5          **THE COURT:**  Yes.

6          **MS. VAUGHN:**   -- to clarify the Court's order?

7    When you were talking about Mr. Costello and the

8    admissibility of communications between him, I think the

9    Court said between him and the Committee.  Did the Court

10   mean between him and the government?

11         **THE COURT:**  I apologize.  I didn't mean to make it

12   just the Committee.

13         **MS. VAUGHN:**  Okay.

14         **THE COURT:**  And to be very technical about it, I

15   am taking that motion entirely under advisement.  I was

16   basically giving you my general thoughts, which are the toll

17   records.  Everything that was received in response to those

18   government actions, seem to me -- I am going to be very

19   disinclined to allow that to come in.  But the other stuff,

20   his statements to the government, generally, I think of

21   those in a different category.

22         **MS. VAUGHN:**  Thank you, Your Honor.

23         **THE COURT:**  That's really all I meant to say.

24         Mr. Schoen, I'm sorry.  I didn't mean to assume it

25   was Mr. Corcoran.

1       **MR. SCHOEN:**  Age before beauty, Judge.

2           Judge, I think maybe something like June 30th, --

3   for the jury instructions.  I want to be clear, though, I'm

4   not sure that I understand the premise.  Our jury

5   instructions on entrapment by estoppel and all that aren't

6   based on the mens rea.  It's a due process defense.

7       **THE COURT:**  I understand that.

8           So in my view, you proposed -- -- have defenses,

9   entrapment by estoppel, but it also seems to me that there

10  is an argument that either the OLC opinions and/or

11  Mr. Bannon's prior experience with subpoenas go to mens rea

12  here.  A Motion in Limine excludes that evidence altogether

13  from the case on any theory.

14          And when I think about these questions, I want to

15  understand not only the defenses that you've talked about,

16  but also what the parties believe the mens rea instructions

17  will be.

18      **MR. SCHOEN:**  Okay.

19          And in formulating the instructions, is the

20  Court's order, the original order, barring Mr. Costello from

21  testifying as to reliance, reasonableness of reliance, the

22  reasonableness question on entrapment by estoppel?

23      **THE COURT:**  It's a very complicated question.

24          So, first of all, I think -- I have not resolved

25  that question.  You need to -- as I said, I am pretty

1    disinclined to think that there is a legitimate entrapment

2    by estoppel defense here.  I don't have to resolve that,

3    because all I've done is deny the Motion to Dismiss the

4    Indictment on that ground.

5           But I think what the parties need to do is, they

6    need to provide me with their jury instructions on, for

7    example, what that defense would be.  And I will then, once

8    I've resolved what, if any, the jury instructions on those

9    questions will be, I will also decide whether and to what

10   extent the evidence is going to be permitted at trial.

11          **MR. SCHOEN:**  All right.

12          Then I think, Your Honor, we would like to at

13   least make a proffer as to what our evidence would be.  If

14   the Court is going to deny entrapment by estoppel defense, I

15   want a very clear record on what our defense would have been

16   on that, what the belief was, why the belief was reasonable,

17   and so on.  I suppose we need to make a proffer then, if the

18   Court's inclined.

19          Are you considering not allowing entrapment by

20   estoppel defense in this case?

21          **THE COURT:**  Well, I mean the parties have briefed

22   that defense substantially.

23          **MR. SCHOEN:**  Yeah.

24          **THE COURT:**  The only thing I had before me on the

25   Motion to Dismiss the Indictment is whether the motion could

1     be granted.  A dismissal of the Indictment was warranted as

2     a matter of law.

3              I am holding, for my consideration in light of the

4     jury instructions, whether some or all evidence relating to

5     OLC opinions is in or out.  I don't have the jury

6     instructions on the entrapment by estoppel defense.  I don't

7     have it on mens rea.  I want to consider all of those

8     questions here together.

9              I could have granted the government's motion today

10    if I had thought it was warranted.  I am just taking that

11    question under advisement.

12             **MR. SCHOEN:**  I understand.

13             **THE COURT:**  Fair enough?

14             So, pure scheduling:  June 30th, you believe --

15    not working with the government -- but that the parties

16    could exchange materials and be in a position to file by

17    June 30th their respective views on the appropriate jury

18    instructions in this case?

19             **MR. SCHOEN:**  I'm only saying that because the

20    Court has indicated it feels it needs to move on a faster

21    track.  We also have many other obligations to other courts

22    and all that.  So I'm trying to just accommodate what the

23    Court has indicated what, you know, its needs are.

24             I want to be clear, so the Court doesn't feel that

25    somehow, you know, we've done something not contemplated.

1    There is a chance that we are going to file a motion to move

2    the trial date because of -- for example, every day we're

3    seeing on the television press conferences held by

4    Ms. Schiff and Raskin and this one and the other one, about

5    the importance of criminal charges here, and all sorts of

6    things exposing what happened, and things that exactly the

7    *Mazars* case said are not proper legislative purposes.

8         We need to make a record on all of those things,

9    and the news is coming out day by day.  So I don't want to

10   leave here and then we decide we have to make a motion to

11   continue the trial date and the Court says, wait a minute,

12   you didn't ask for that --

13        **THE COURT:**  No, I appreciate that.  I imagine the

14   government will oppose it, and I will take it up.

15        **MR. SCHOEN:**  Yes, Your Honor.

16        **THE COURT:**  This is -- I should say, I appreciate

17   your saying it so that I know that it's potentially coming.

18   I don't think I need to hear from the government on what its

19   views will be.  It will see the motion.

20        I do think it would be appropriate for you to

21   let -- just give the government a heads up about when the

22   motion is coming and perhaps work out a briefing schedule if

23   you can.

24        **MR. SCHOEN:**  Of course, Your Honor.

25        **THE COURT:**  Thank you.

1          So, Ms. Vaughn, do you have anything to say or are

2     you okay?

3          **MS. VAUGHN:**  Well, we were just thinking more

4     about how the Motions in Limine schedule would fit with all

5     of this.

6          **THE COURT:**  Yeah.

7          **MS. VAUGHN:**  Just to fit it all in, we think

8     waiting until the 30th might make it difficult to get all of

9     the briefing done.  So we could also file our Proposed Jury

10    Instructions and our Motions in Limine together on the 27th,

11    file Oppositions by July 5th, Replies, I guess, by the 11th

12    and then our final pretrial hearing on the 13th.

13         I don't know if that's compressing it too -- I

14    mean, we could -- I understand we're all busy, but we can

15    make that work.

16         **THE COURT:**  Absolutely.

17         The only thing I really care about, for my

18    purposes -- I don't mean to say I don't care about these.

19    What I want to do -- really, the only thing I really feel

20    the need to do, is to have the portion of what would have

21    been filed on July 7th, the jury instructions --

22         **MS. VAUGHN:**  Uh-huh.

23         **THE COURT:**  -- essentially shift that earlier so

24    that it doesn't come at the tailend, when that's the part of

25    this that I really feel like I need to have.

1          **MS. VAUGHN:**  Okay.

2          **THE COURT:**  But I don't have a magic date in mind.

3     I just want -- it seems to me that July 11th is just on the

4     late side, given all the other filings that will have had

5     happened, and the fact that I would like to have those when

6     I take up all these evidentiary issues.

7          **MS. VAUGHN:**  Okay.

8          **THE COURT:**  So, with that, it seems to me that

9     June 30th is acceptable, because that gets me those

10    materials eight days, approximately, before these other

11    Motions in Limine are fully briefed.  Obviously, the ones

12    that have already been briefed, I can consider them

13    altogether.

14         **MS. VAUGHN:**  Okay.

15         **THE COURT:**  So let's do this then:  The pretrial

16    order -- I suppose we could modify this, but the portion of

17    Paragraph 7 that requires the submission of the Proposed

18    Jury Instructions to be done on July 11th, we'll just change

19    that to June 30th; that's the only modification.  Okay?

20         **MS. VAUGHN:**  Thanks, Your Honor.

21         **THE COURT:**  Okay.  Thank you, Counsel.

22         **DEPUTY CLERK:**  All rise.

23         (Proceedings concluded at 1:25 p.m.)

24

25

1                    **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court**

4    **Reporter,** certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the

6    above-entitled matter.

7

8

9

10   _____June 16, 2022_____        __/s/_____

                    Date                    Lorraine T. Herman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:**
**[6]** 3/2 89/1 89/3
112/16 112/19
142/22
**MR.**
**CORCORAN: [59]**
5/14 7/1 7/7 7/22
8/5 8/7 8/18 9/13
9/19 10/3 10/8
11/8 11/12 11/16
11/20 12/14 12/17
13/3 13/21 14/17
15/3 15/10 15/14
16/9 16/14 16/18
16/25 17/4 17/7
17/12 17/19 18/16
19/9 19/12 20/1
20/5 20/9 20/13
20/16 21/16 22/10
22/17 22/20 22/25
23/5 23/8 23/11
23/13 23/16 24/1
24/9 24/11 25/13
25/17 27/6 27/22
29/5 29/16 100/5
**MR. COSTELLO:**
**[6]** 67/23 68/1
69/19 69/22 70/5
70/12
**MR. SCHOEN:**
**[104]** 3/11 3/15
4/20 4/22 5/3 5/11
5/13 5/16 30/11
30/13 32/3 32/7
32/25 33/3 35/16
35/19 35/23 36/14
36/16 36/18 36/24
37/3 37/6 37/9
37/16 37/25 38/9
38/11 38/16 40/25
41/12 41/15 41/21
41/25 42/3 43/13
43/16 44/11 44/24
45/3 45/13 45/15
45/17 45/21 45/24
46/5 46/12 46/14
47/2 47/17 47/23
48/16 48/24 49/7
50/6 50/17 50/19
51/5 51/8 51/14
52/12 53/8 53/10
53/19 54/2 54/6
55/1 55/3 56/20

56/25 60/25 61/14
61/22 63/23 63/25
64/21 64/24 65/2
65/10 65/18 65/23
66/14 66/18 67/12
67/16 67/20 67/22
101/20 103/22
106/22 110/24
112/4 112/6 112/8
112/10 112/12
137/1 137/18
138/11 138/23
139/12 139/19
140/15 140/24
**MS. VAUGHN:**
**[91]** 3/8 70/20
70/22 71/1 71/5
71/25 72/10 73/16
73/19 74/13 75/4
75/9 75/14 76/9
77/15 78/6 81/21
82/3 82/12 83/5
83/22 84/4 84/23
85/3 85/6 85/25
86/3 86/14 86/25
88/23 89/5 89/16
90/2 90/12 90/24
91/3 91/7 91/12
91/18 91/21 92/11
92/15 92/23 93/3
93/19 93/24 94/1
94/3 95/14 95/17
96/22 96/25 97/3
98/1 98/15 98/21
98/24 99/4 99/7
99/11 99/24 108/9
109/2 109/7
109/12 109/16
110/9 110/14
110/18 111/1
111/8 111/12
111/14 112/2
134/4 134/9
134/12 135/1
135/17 135/24
136/4 136/6
136/13 136/22
141/3 141/7
141/22 142/1
142/7 142/14
142/20
**SPEAKER6: [1]**
30/9
**THE COURT:**
**[260]**

'all **[1]** 120/16
'may' **[1]** 7/6
'must' **[1]** 7/4
'principles...simil
arly **[1]** 42/23
'shall' **[2]** 7/4 7/5
'should **[1]** 7/5
'that **[1]** 41/5
'will' **[1]** 7/5
'willful' **[1]** 106/17
'willfully **[1]**
128/24

**/**

/s **[1]** 143/10

**1**

**10 [5]** 18/19 56/5
68/8 88/22 88/25
**10 minutes [1]**
100/4
**100 [1]** 21/14
**100-6 [1]** 1/17
**10158 [1]** 1/24
**103 [1]** 111/19
**104 [1]** 111/17
**10:04 [1]** 1/6
**11 [2]** 64/13 69/9
**117th [1]** 69/11
**11:57 [1]** 89/2
**11th [4]** 132/1
141/11 142/3
142/18
**1221 [1]** 120/16
**124 [1]** 12/20
**12:05 [1]** 89/2
**12:35 [1]** 112/18
**12:44 [1]** 112/18
**13 [20]** 6/7 7/8
9/25 15/12 17/2
83/25 84/3 84/5
85/17 86/9 86/10
86/21 87/25 89/19
90/5 102/3 113/21
113/25 114/10
115/5
**135 [1]** 106/15
**136 [1]** 100/18
**13th [1]** 141/12
**14 [1]** 41/3
**14th [1]** 93/8
**15 [2]** 1/5 55/4
**16 [1]** 143/10

**18 [1]** 102/3
**19 [1]** 102/3
**192 [11]** 35/9
55/16 106/17
125/24 126/23
127/6 127/23
128/2 128/11
128/21 129/8
**193 [2]** 126/23
126/24
**194 [3]** 55/16
127/24 128/2
**1956 [4]** 32/21
39/14 51/9 56/16
**1984 [3]** 39/15
78/18 80/22
**1995 [1]** 42/18
**1:21-670 [1]** 1/4
**1:25 [1]** 142/23

**2**

**20001 [2]** 1/14 2/4
**2002 [2]** 49/13
49/15
**2008 [3]** 43/10
64/10 64/13
**201 [1]** 1/20
**2014 [2]** 49/14
49/16
**2019 [1]** 41/4
**202-252-1793 [1]**
1/15
**2021 [4]** 68/8
80/24 120/10
120/12
**2021-670 [1]** 3/4
**2022 [2]** 1/5
143/10
**20th [1]** 41/4
**21201 [1]** 1/21
**22 [1]** 102/3
**2225 [1]** 1/21
**23 [2]** 102/3
119/14
**25 [1]** 119/14
**25th [1]** 1/20
**2703 [1]** 94/25
**27th [2]** 135/24
141/10
**2800 [1]** 1/17
**29 [3]** 64/12
105/17 126/3

1793 **[1]** 95

**3**

**30 [3]** 68/6 76/18
105/18
**302 [1]** 68/24
**30th [6]** 137/2
139/14 139/17
141/8 142/9
142/19
**3238 [1]** 1/24
**333 [1]** 2/3
**334-395-6611 [1]**
1/18
**338 [1]** 12/24
**35-6 [1]** 37/25
**36 [1]** 100/16
**36106 [1]** 1/18
**374 [1]** 12/20

**4**

**40-page [1]** 76/18
**404 [4]** 98/3 98/16
98/17 98/25
**410-385-2225 [1]**
1/21
**438 [2]** 34/19 35/1
**44 [1]** 127/25
**46 [1]** 102/3
**4700-C [1]** 2/3
**471 [1]** 100/17
**4th [1]** 1/14

**5**

**503 [7]** 7/17 7/19
11/11 86/8 87/24
113/19 115/4
**52 [2]** 3/19 130/17
**53 [1]** 130/17
**54 [2]** 3/19 130/18
**55 [1]** 3/19
**555 [1]** 1/14
**56 [2]** 3/19 132/12
**58 [3]** 3/18 113/3
127/25
**58-10 [1]** 56/5
**58-11 [1]** 64/13
**58-14 [1]** 41/3
**58-15 [1]** 55/4
**58-8 [1]** 102/17
**5th [2]** 79/4
141/11

**6**

**60-some [1]**
78/21

**6**
**605 [1]** 1/23
**62 [2]** 34/4 78/24
**646-428-3238 [1]** 1/24
**65 [2]** 100/15 105/18
**6611 [1]** 1/18
**670 [2]** 1/4 3/4
**6th [6]** 11/4 16/7 91/4 120/10 120/14 120/25

**7**
**75-2 [1]** 22/2
**7th [2]** 93/7 141/21

**8**
**82 [1]** 107/14
**86 [1]** 12/24
**89 [1]** 12/24
**8th [1]** 131/23

**A**
**a.m [2]** 1/6 89/2
**Abcassis [1]** 31/16
**abide [1]** 6/4
**ability [5]** 10/15 42/15 55/24 57/16 60/1
**able [8]** 9/22 15/6 28/23 29/22 30/4 61/13 86/9 98/24
**about [130]** 5/22 5/22 10/2 11/10 14/2 14/10 17/10 18/10 22/6 22/21 23/1 23/9 26/25 27/20 29/12 29/19 30/14 31/1 31/2 31/18 31/18 32/3 34/4 34/7 37/1 38/3 40/5 40/11 40/12 40/24 41/19 41/20 43/3 43/11 43/20 43/22 43/25 44/14 46/24 47/14 47/21 48/11 52/2 52/3 52/5 54/20 54/24 56/16 58/1 58/10 59/4 59/11 59/18 61/1 61/8

64/25 62/8 62/24
64/2 64/22 65/7
65/21 66/2 67/9
67/16 68/4 68/15
69/2 76/4 76/24
76/25 76/25 77/13
77/25 81/6 81/15
82/16 82/23 85/15
86/23 87/23 90/7
90/17 91/15 92/13
92/22 93/1 93/16
93/17 93/23 97/14
98/8 100/6 101/4
101/13 102/18
104/3 105/22
106/21 107/25
108/1 108/3
121/17 122/17
125/16 127/4
127/9 128/1
128/11 131/10
131/15 132/3
133/13 133/15
133/19 133/22
133/24 134/13
134/15 135/15
135/18 136/7
136/14 137/14
137/15 140/4
140/21 141/4
141/17 141/18
**above [1]** 143/6
**above-entitled [1]** 143/6
**abrogates [2]** 128/3 128/6
**absolute [1]** 79/19
**absolutely [13]** 11/12 12/14 16/18 18/16 20/9 20/13 29/5 45/13 51/9 52/13 66/19 88/23 141/16
**absurd [2]** 64/1 103/20
**abundantly [1]** 32/21
**accept [4]** 46/14 52/8 69/4 117/13
**acceptable [1]** 142/9
**accepted [1]** 27/10

**accepts [1]** 52/17
**accident [3]** 82/7 89/14 107/10
**accidental [1]** 82/15
**accommodate [1]** 139/22
**accommodation [7]** 52/19 58/16 58/19 59/2 62/13 62/22 129/4
**accommodations [2]** 28/21 29/19
**accord [1]** 11/24
**according [2]** 49/22 52/20
**Accordingly [1]** 120/17
**account [2]** 108/2 125/20
**accounts [3]** 92/10 92/11 92/13
**acknowledge [1]** 41/11
**acknowledged [1]** 27/10
**Acquit [1]** 110/4
**act [4]** 20/8 82/1 84/6 127/20
**acted [7]** 53/15 81/25 82/2 97/16 97/21 99/10 131/12
**acting [2]** 72/18 132/21
**action [1]** 1/3 64/16
**actions [7]** 8/13 11/24 27/24 27/25 91/16 123/11 136/18
**actively [1]** 34/24
**activities [2]** 120/9 120/14
**acts [4]** 92/4 92/5 95/14 97/5
**actual [5]** 6/23 24/10 24/11 94/9 123/4
**actually [16]** 9/8 28/1 28/4 63/18 71/21 76/9 77/23 83/2 94/8 95/8 96/20 108/2 109/3

**actus [1]** 131/2
**adage [1]** 19/20
**add [2]** 23/18 70/18
**addition [1]** 59/19
**additional [2]** 6/15 6/21
**address [17]** 5/24 22/24 23/12 23/13 23/14 23/15 23/21 23/22 37/19 41/16 41/16 41/18 78/11 100/6 105/19 124/9 126/20
**addressed [10]** 31/2 34/6 38/22 39/15 39/25 99/24 100/23 128/18 129/12 130/3
**addressee [1]** 121/19 121/20
**addresses [1]** 46/2
**addressing [4]** 60/13 78/13 79/13 96/25
**adheres [1]** 40/14
**adhering [1]** 40/8
**administrator [1]** 78/19
**admissibility [2]** 99/15 136/8
**admissible [5]** 95/11 98/15 98/17 99/17 111/19
**admission [4]** 68/20 68/21 69/23 95/23
**admissions [1]** 69/22
**admit [1]** 63/14
**admitted [1]** 68/18
**adopting [3]** 19/23 21/2 21/9
**advance [2]** 100/25 116/14
**advanced [1]** 3/23
**advice [9]** 31/7 77/8 82/19 83/12 83/15 105/22 126/3 129/14

**advisable [1]** 21/11
**advise [1]** 104/3
**advisedly [1]** 104/5
**advisement [5]** 130/15 132/10 133/10 136/15 139/11
**advising [1]** 68/10
**advisor [7]** 42/24 47/4 50/10 61/16 61/23 64/25 121/13
**advisors [2]** 49/20 79/9
**Advisors' [1]** 49/12
**advisory [2]** 20/17 21/8
**advocating [1]** 80/3
**affected [2]** 25/7 32/14
**affirm [1]** 96/23
**affirmation [1]** 68/8
**affirmative [7]** 70/9 80/11 84/8 86/15 123/8 131/5 131/14
**affirmatively [1]** 72/17
**afford [1]** 34/14
**afoul [1]** 11/14
**afraid [2]** 30/1 108/5
**after [10]** 7/16 7/17 23/15 24/3 25/1 28/19 43/6 113/22 118/1 130/3
**afterwards [2]** 34/2 47/5
**again [45]** 10/24 17/19 18/5 24/22 26/17 26/23 30/5 31/11 31/13 35/1 35/8 36/9 43/9 53/20 54/6 54/8 55/20 56/9 57/18 60/7 60/8 60/25

**A**

**again... [23]**
62/25 64/13 74/14
74/21 76/11 79/16
79/23 88/13 94/11
104/11 107/23
111/23 117/6
118/3 118/17
118/19 119/14
126/6 126/22
127/15 128/1
131/13 134/21
**against [11]**
17/18 19/20 21/6
25/19 42/18 80/10
80/11 94/18 118/9
129/21 129/22
**Age [1]** 137/1
**agency [5]** 48/1
48/4 48/12 74/22
104/10
**agents [1]** 34/13
**agree [10]** 44/24
46/19 51/13 60/24
71/2 73/7 73/16
84/3 85/2 114/16
**agrees [2]** 71/15
115/8
**ahead [4]** 33/2
38/24 71/5 75/21
**aid [1]** 42/13
**aided [1]** 2/7
**aiding [1]** 60/5
**aisle [1]** 42/17
**akin [1]** 35/2
**AL [1]** 1/18
**albeit [2]** 114/6
117/7
**alignment [2]**
74/17 75/2
**all [100]** 3/21 4/3
5/9 8/5 9/19 11/20
13/3 16/25 23/24
24/23 26/6 27/25
29/2 30/13 30/19
31/15 32/25 35/15
41/12 44/24 45/18
46/9 47/1 48/11
50/13 51/5 51/8
51/14 51/16 51/16
51/17 52/16 54/2
54/6 54/23 55/7
56/25 59/18 60/8
60/20 62/22 63/4

68/3 68/25 70/18
72/7 75/1 78/15
79/12 80/24 83/16
84/18 85/24 88/17
89/1 89/17 90/5
94/18 97/21 99/13
99/14 101/23
101/25 103/20
107/4 107/12
107/23 109/24
111/25 112/16
118/1 122/18
125/8 125/16
125/17 130/11
133/9 133/13
133/17 133/21
136/23 137/5
137/24 138/3
138/11 139/4
139/7 139/22
140/5 140/8 141/4
141/7 141/8
141/14 142/4
142/6 142/22
**allegation [1]**
26/5
**allegations [1]**
113/9
**allege [5]** 15/11
114/6 116/18
117/7 119/9
**alleged [2]** 118/2
130/9
**alleges [5]** 113/14
118/13 118/23
120/1 122/7
**allotted [1]** 6/9
**allow [4]** 4/4
100/8 121/1
136/19
**allowance [1]**
13/10
**allowed [7]** 24/6
26/4 26/8 26/9
28/3 98/12 107/5
**allowing [2]**
111/23 138/19
**allows [1]** 127/4
**alluded [1]** 95/19
**along [1]** 118/16
**already [8]** 23/17
96/6 119/11
119/23 128/18

128/19 130/22
142/12
**also [33]** 3/24
4/13 12/21 33/22
37/10 43/11 55/9
55/10 60/3 61/1
64/3 80/21 91/10
93/12 105/1
111/14 118/8
118/21 127/18
127/24 128/7
128/23 128/24
130/1 130/7 130/8
130/13 131/4
137/9 137/16
138/9 139/21
141/9
**although [4]** 29/9
87/1 90/21 114/23
**altogether [12]**
31/25 32/1 44/10
71/1 74/19 122/6
122/11 124/3
132/5 135/7
137/12 142/13
**always [3]** 13/17
17/21 17/21
**am [18]** 5/4 31/1
44/1 58/15 62/25
83/22 112/14
132/2 132/4 132/4
132/9 132/25
133/20 136/15
136/18 137/25
139/3 139/10
**AMANDA [2]** 1/12
3/8
**ambiguity [3]**
22/18 84/7 115/7
**ambiguous [5]**
13/14 14/9 35/22
84/9 116/3
**ambit [1]** 129/9
**Amendment [8]**
33/14 33/14
109/19 109/21
109/24 110/3
119/1 119/20
**AMERICA [2]** 1/3
3/4
**amicus [11]**
18/11 19/18 20/2
20/22 21/7 21/10
21/23 22/8 90/9

**among [1]** 79/14
**amount [1]** 107/2
**analogous [2]**
25/16 25/17
**analogy [1]** 6/13
**analyzing [1]**
113/12
**ancillary [1]**
119/4
**animals [1]** 24/18
**another [8]** 15/8
58/9 58/13 77/5
79/15 87/17
114/17 125/23
**answer [8]** 9/13
26/14 46/12 48/17
63/23 63/25 72/18
77/10
**answering [2]**
72/13 72/16
**answers [1]**
48/16
**any [77]** 11/21
12/5 13/4 15/6
16/20 17/12 22/25
26/4 26/6 26/18
32/1 34/7 40/2
40/11 46/1 46/20
47/2 50/2 50/3
52/1 57/1 59/6
61/24 62/14 64/1
64/16 69/17 69/20
70/2 79/20 80/4
80/4 80/5 81/3
84/18 86/12 88/3
89/24 90/14 90/23
92/8 93/8 94/16
94/23 95/3 95/8
95/10 98/2 98/21
100/14 100/25
101/5 101/12
102/5 107/17
113/8 115/23
118/17 121/19
122/2 122/3 122/7
124/19 124/21
124/23 125/7
125/15 125/16
128/21 130/1
130/10 131/4
131/18 131/20
133/6 137/13
138/8

**anybody [1]**
45/10
**anybody's [1]**
4/16
**anyone [1]** 20/14
**anything [11]**
47/16 47/17 54/21
61/7 61/19 67/13
86/24 94/25 98/3
103/9 141/1
**anyway [4]** 6/23
57/1 62/23 107/21
**apologies [1]**
48/23
**apologize [1]**
136/11
**apparent [1]**
123/4
**apparently [1]**
94/15
**Appeals [4]** 13/11
58/6 115/25
120/24
**appear [14]** 16/15
31/25 37/18 44/13
44/20 48/6 61/11
62/16 93/8 102/12
106/1 109/22
125/8 130/1
**appearance [3]**
47/25 94/14 94/17
**APPEARANCES**
**[1]** 1/11
**appearing [3]**
73/21 78/12 93/4
**appears [9]** 10/11
115/12 115/14
117/22 118/18
120/23 123/13
125/12 128/1
**applicable [4]**
10/5 65/8 101/1
123/18
**application [5]**
42/18 60/4 62/3
77/19 121/13
**applied [22]** 5/6
30/22 35/13 39/2
39/11 40/19 41/7
55/12 63/12 67/5
102/13 103/18
104/24 105/5
106/11 115/11
125/25 126/14

**A**

**applied... [4]**
127/7 127/23
127/25 128/7
**applies [10]**
32/14 52/1 55/20
63/1 66/20 66/20
76/5 79/8 103/2
128/22
**apply [33]** 13/7
13/15 31/6 35/12
41/6 42/4 47/9
52/14 52/18 55/12
55/17 56/14 57/6
57/9 57/15 60/20
60/22 61/8 63/22
64/5 64/6 65/5
66/5 66/10 71/4
75/8 78/8 79/21
80/6 80/18 104/17
104/18 104/18
**applying [1]** 11/3
**appoint [3]** 7/8
91/9 113/20
**appointed [1]**
113/22
**appreciate [2]**
140/13 140/16
**approach [3]**
47/16 47/17 80/4
**approached [1]**
98/13
**approaching [1]**
82/20
**appropriate [7]**
59/12 59/14 98/20
107/22 124/19
139/17 140/20
**approved [3]**
82/10 89/6 118/1
**approximately [1]**
142/10
**arbitrary [1]**
128/10
**are [107]** 3/16
3/17 4/1 6/11 6/21
10/6 10/17 11/22
12/1 12/24 14/1
15/21 18/17 20/18
22/8 22/8 23/12
30/22 34/14 34/24
35/21 35/22 38/5
39/16 40/5 40/16
40/22 40/25 44/14

48/9 48/15 49/5
58/4 58/7 60/11
60/13 60/16 62/21
63/10 65/19 66/15
67/8 68/25 69/22
69/25 74/23 76/1
76/4 76/6 78/15
78/21 79/7 79/16
80/17 83/20 83/20
84/18 86/18 88/24
89/3 89/20 90/14
90/23 91/4 91/21
92/17 93/11 93/17
94/18 101/10
101/15 102/10
104/17 108/17
108/23 109/8
112/19 114/11
115/6 119/21
119/24 120/15
120/19 120/20
121/18 122/22
123/18 125/14
128/1 130/2
130/13 130/17
130/25 131/7
131/7 131/24
132/1 133/9
134/17 134/18
136/16 138/19
139/23 140/1
140/7 141/1
142/11
**area [1]** 18/2
**areas [1]** 77/19
**aren't [3]** 14/25
48/10 137/5
**arguably [1]** 14/3
**argue [5]** 80/7
97/15 108/16
110/4 127/24
**argued [3]** 3/25
75/8 81/11
**argues [21]** 17/15
29/7 113/17
113/23 116/10
116/11 117/18
118/21 121/5
121/8 121/12
121/21 126/13
126/22 127/6
127/8 128/7
128/23 129/7
129/18 130/7

**arguing [4]** 72/7
80/3 83/10 122/21
**argument [67]**
8/17 10/4 10/7
16/6 16/12 16/16
16/17 17/18 18/25
19/8 26/19 26/20
27/3 27/6 32/14
32/18 32/19 33/4
39/13 39/14 45/22
48/12 51/7 52/9
54/22 62/15 63/5
63/10 71/14 71/15
71/18 72/3 73/9
77/11 78/4 81/6
81/15 82/16 82/20
83/21 86/11 92/20
92/20 97/11
101/15 102/1
106/5 109/6
109/15 112/21
114/15 116/15
117/13 118/18
121/16 122/14
123/9 126/1
126/20 127/4
127/18 128/2
128/14 128/18
129/16 129/21
137/10
**arguments [23]**
3/22 4/11 4/16 5/8
5/17 8/10 8/14
22/8 27/1 47/1
48/11 66/2 72/6
77/13 96/14 99/14
113/15 114/17
122/14 123/8
125/22 126/10
135/15
**arise [1]** 54/6
**Army [1]** 15/24
**around [6]** 75/22
94/17 96/16
100/20 103/7
135/8
**arranged [1]**
114/7
**art [1]** 15/20
**Article [2]** 12/11
116/1
**articulate [1]**
94/23
**as [172]**

**as-applied [1]**
104/24
**aside [4]** 40/1
40/10 96/14 122/4
**ask [11]** 6/20 24/4
31/20 35/14 61/14
84/24 90/3 98/8
99/13 136/4
140/12
**asked [6]** 24/15
100/6 105/6 105/7
105/8 111/3
**asking [8]** 5/21
6/1 11/21 11/22
18/24 46/1 47/11
58/18
**asks [2]** 38/2
47/21
**assert [7]** 42/5
56/14 57/6 78/19
78/22 107/1 125/8
**asserted [6]**
41/24 44/15 51/1
60/18 108/21
125/9
**asserting [4]** 42/8
42/12 60/5 121/13
**assertion [7]**
42/19 55/18 74/7
79/14 97/19
107/18 107/20
**assertions [6]**
57/10 57/15 78/14
78/15 107/16
107/22
**asserts [2]** 41/8
55/13
**assessing [2]**
116/22 119/11
**assist [1]** 42/7
**Assistant [2]** 42/5
102/17
**assisting [1]** 40/8
**associated [1]**
127/11
**association [1]**
119/1
**assume [10]**
21/14 35/15 45/19
63/19 83/24 84/1
86/11 124/6 136/2
136/24
**assumes [1]**
127/18

**assuming [8]**
7/21 29/12 36/19
74/16 75/2 114/9
123/9 133/2
**attack [1]** 120/25
**attempt [6]** 111/6
118/24 126/21
127/16 130/9
133/14
**attempted [1]**
97/7
**attorney [16]** 1/17
25/18 25/22 26/5
42/6 46/5 68/9
73/3 76/24 76/25
77/1 77/7 92/3
94/11 95/7 102/17
**Attorney's [2]**
45/4 52/5
**attorney/client [1]**
95/7
**attorneys [2]** 1/13
43/20
**author [3]** 121/19
121/20 122/2
**authoritative [3]**
39/16 106/14
122/22
**authority [41]** 5/5
9/16 12/15 12/17
14/21 15/16 17/23
17/24 18/5 30/21
32/10 40/17 53/21
59/1 66/3 67/10
69/8 70/25 85/12
88/6 88/6 91/9
101/6 106/23
114/3 114/8 116/2
116/11 116/19
117/3 117/8
117/11 118/25
119/4 122/18
123/4 123/5
125/22 126/9
129/1 129/23
**authority's [1]**
39/6
**authorize [1]**
60/15
**authorized [8]** 8/9
9/1 69/4 77/6 85/7
85/14 86/4 113/19
**authorizes [1]**
121/9

**A**

authorizing [2]
7/25 86/5
availing [1] 32/17
Avenue [2] 1/23
2/3
aware [10] 43/5
47/23 56/6 57/1
58/24 69/1 92/19
101/20 103/6
107/14
away [1] 9/17

**B**

back [16] 22/20
28/7 30/19 32/8
34/1 47/5 49/13
50/15 51/16 82/16
88/24 89/3 101/23
106/3 106/5
112/19
background [4]
9/9 9/9 33/6 33/8
bad [2] 27/5 89/9
balance [1] 42/20
ballot [1] 16/5
Baltimore [1]
1/21
Bankruptcy [1]
2/2
BANNON [116]
1/6 3/5 3/13 3/22
6/14 8/2 11/23
14/20 17/15 18/13
19/1 24/12 24/24
25/3 26/11 26/24
27/11 38/2 38/14
39/2 39/19 40/3
40/6 41/10 41/11
47/4 47/20 50/7
51/23 53/15 54/21
58/21 60/20 60/23
61/1 61/14 62/5
68/12 68/13 69/3
71/18 73/7 73/9
73/11 75/12 75/23
78/25 86/11 92/19
92/22 92/25 97/15
98/8 100/9 103/9
103/17 108/25
109/9 113/14
113/17 113/23
114/3 115/16
116/10 116/17

116/19 117/2
117/17 118/6
118/9 118/13
118/15 118/21
119/3 119/9
119/16 120/1
121/5 121/8
121/12 121/24
122/11 122/21
123/10 123/17
123/24 124/15
124/18 124/18
125/7 125/24
126/10 126/12
126/19 126/22
127/3 127/6 127/8
127/11 127/20
127/24 128/7
128/23 129/7
129/13 129/16
129/18 129/22
130/4 130/7 130/8
130/22 131/6
131/12 131/13
133/3
Bannon's [40]
3/17 3/21 4/4 23/9
23/22 27/20 28/5
28/15 29/15 35/5
40/4 46/20 51/12
54/9 62/9 63/8
78/4 81/7 104/7
104/19 114/9
117/13 117/14
118/2 119/1 119/7
122/5 122/16
123/20 125/1
125/21 128/2
128/12 128/14
129/25 130/12
132/8 132/12
132/21 137/11
bar [2] 46/19
108/15
Barenblatt [2]
85/9 85/11
Barker [2] 31/10
84/16
barred [3] 81/22
96/6 123/3
barring [2] 54/14
137/20
bars [1] 109/3
based [19] 5/8

5/17 11/23 32/11
39/13 51/10 53/1
57/8 57/18 73/1
81/18 113/7 126/1
126/16 127/12
128/2 129/10
129/13 137/6
basically [6] 13/5
13/11 72/7 83/10
100/8 136/16
basis [18] 9/22
24/5 91/22 91/23
91/25 93/4 94/20
94/22 94/23 95/10
95/12 100/16
100/17 114/13
121/24 122/4
122/10 129/21
be [246]
bears [2] 84/25
95/23
beauty [1] 137/1
because [71]
4/14 8/7 8/18
10/10 16/16 19/12
19/17 19/22 25/17
26/12 27/7 28/4
30/2 30/15 31/1
46/9 47/9 50/8
50/12 50/13 52/14
53/2 58/15 58/19
59/14 59/14 61/3
62/16 62/25 64/4
66/4 66/19 67/5
68/17 69/3 70/16
71/9 71/19 72/15
75/18 76/12 77/1
77/23 81/2 81/18
82/1 82/25 84/18
100/6 100/8
102/14 104/8
104/23 105/24
107/10 109/12
110/5 110/22
110/23 112/22
121/6 126/14
128/24 130/25
132/5 134/21
135/6 138/3
139/19 140/2
142/9
becomes [2] 66/1
77/8
been [51] 6/21

6/22 9/5 19/7
14/21 17/6 19/1
23/17 24/22 28/16
35/7 39/8 39/17
46/21 47/20 51/1
51/15 51/22 53/3
53/18 56/8 66/24
69/10 72/20 73/11
73/22 74/3 84/22
85/7 85/12 85/14
85/20 87/4 87/5
87/17 88/15 97/20
103/8 103/10
105/4 108/21
115/14 115/21
118/11 119/16
120/10 121/11
132/3 138/15
141/21 142/12
before [38] 1/9
11/22 18/11 18/13
19/2 25/2 26/23
27/1 27/19 28/16
28/25 28/25 29/15
30/2 37/18 37/22
44/20 46/23 49/12
64/15 67/23 87/5
89/21 91/1 94/13
97/20 109/23
113/6 114/5 117/5
118/8 118/16
119/17 123/5
130/14 137/1
138/24 142/10
begin [2] 70/23
114/1
beginning [3] 3/7
94/12 101/23
behalf [7] 20/20
27/11 69/4 70/8
90/14 90/15
132/21
behave [1] 97/18
behind [2] 50/13
67/3
being [14] 14/7
34/23 49/24 60/17
64/9 73/14 77/16
78/19 82/6 101/10
111/21 114/10
120/11 121/23
belief [7] 104/7
104/19 108/16
128/3 129/14

believe [18] 3/17
7/18 12/18 38/5
47/8 50/11 57/4
62/5 101/8 103/18
104/18 120/7
125/2 125/5
127/24 128/4
137/16 139/14
believed [4] 96/2
105/9 110/5 110/6
believes [2]
117/22 121/18
believing [1]
72/17
belong [1] 92/12
below [1] 125/2
best [5] 32/4
35/21 37/21 37/24
80/13
better [4] 5/11
65/14 65/16 130/2
between [18]
16/19 24/12 27/9
42/20 45/9 49/15
58/12 74/17 78/3
79/14 92/17
101/13 108/25
109/9 123/25
136/8 136/9
136/10
beyond [9] 9/25
17/22 28/9 34/23
38/20 73/6 77/2
101/1 125/10
Biden [4] 43/23
50/21 50/24 74/23
big [1] 30/5
bill [2] 56/16 58/2
binding [9] 39/7
65/17 66/4 106/14
106/23 122/22
126/5 126/9 127/5
bingo [1] 61/25
bipartisan [3]
20/17 21/8 21/15
bit [4] 10/8 43/3
83/2 85/4
BLAG [1] 20/21
block [1] 120/13
blood [1] 26/13
Bob [1] 3/12
boil [1] 60/11
bone [1] 15/9

**B**

**both [8]** 16/1 25/25 62/16 87/3 93/19 120/18 125/20 133/20
**bottom [1]** 133/8
**boy [1]** 24/14
**Boys [1]** 79/2
**branch [21]** 41/7 41/11 41/13 42/1 55/7 55/13 55/24 57/12 57/12 60/16 64/8 65/1 74/6 78/16 78/20 99/20 100/14 102/24 116/5 119/7 128/20
**branch's [1]** 118/24
**branches [1]** 129/3
**break [4]** 88/22 89/2 112/18 120/17
**breaking [1]** 82/16
**brief [31]** 4/4 12/18 18/12 19/18 19/23 20/2 20/11 20/19 20/22 20/24 21/2 21/2 21/3 22/1 22/5 25/14 26/9 31/2 31/3 37/8 68/2 90/9 100/12 101/8 106/5 107/13 107/15 112/13
**briefed [5]** 131/21 131/22 138/21 142/11 142/12
**briefing [3]** 133/17 140/22 141/9
**briefly [6]** 27/19 100/2 100/3 100/3 101/20 108/8
**briefs [13]** 19/18 21/23 22/7 22/8 25/21 30/19 31/13 90/14 90/20 90/22 90/24 101/8 101/15
**bring [1]** 64/15

**brings [1]** 35/4
**broader [2]** 47/21 86/23
**broadly [3]** 55/10 77/12 128/22
**Bryan [5]** 81/22 83/16 83/17 87/19 96/6
**bucket [2]** 72/7 73/17
**builds [1]** 55/8
**bunch [4]** 21/13 60/19 76/1 134/11
**burden [4]** 17/21 59/25 84/25 95/23
**burdening [1]** 42/14
**business [1]** 26/2
**busy [1]** 141/14

**C**

**cabinet [1]** 49/25
**calamitous [1]** 34/5
**call [9]** 5/5 30/20 37/10 37/13 47/15 61/4 68/4 68/9 94/13
**called [9]** 47/5 49/12 50/10 61/23 61/24 61/25 62/1 75/3 75/4
**calls [7]** 43/24 50/21 51/2 56/9 61/17 92/17 93/11
**came [2]** 68/2 70/15
**campaign [1]** 111/8
**can [73]** 4/6 4/12 6/25 15/15 15/15 17/17 19/6 20/8 20/19 22/17 23/13 23/23 27/6 27/14 37/15 39/22 39/24 40/2 45/9 45/14 47/12 48/19 53/3 53/24 53/24 55/2 56/18 56/22 56/23 56/24 61/8 63/8 65/22 66/12 69/17 69/20 70/1 70/6 70/14 70/22 75/21

**bribes [1]** 78/9 79/8 80/10 83/5 83/19 85/21 87/10 87/15 87/19 88/1 88/9 88/20 89/25 91/18 95/14 96/15 101/9 106/16 111/22 114/13 114/23 117/10 119/5 123/21 124/13 131/12 140/23 141/14 142/12
**can't [23]** 17/20 18/1 35/12 37/12 43/17 43/22 44/5 61/24 72/5 75/16 76/18 78/23 87/17 87/20 93/11 94/17 97/25 99/12 101/15 102/13 103/15 106/15 110/20
**cannot [24]** 19/21 21/6 35/10 38/20 39/10 40/19 41/22 47/9 50/11 56/3 59/7 62/5 67/5 108/11 108/16 114/19 116/6 118/19 120/3 124/6 126/25 127/16 129/13 130/23
**capacious [2]** 97/11 134/23
**Capitol [2]** 120/10 120/25
**car [1]** 107/11
**care [2]** 141/17 141/18
**careful [1]** 41/19
**CARL [1]** 1/9
**carried [2]** 59/23 78/16
**carries [1]** 122/19
**carry [1]** 55/18
**case [87]** 3/3 4/8 10/12 11/3 13/6 13/7 13/8 13/15 15/4 15/8 18/19 20/22 21/16 24/7 24/10 25/9 25/16 25/18 26/3 26/4 26/11 27/17 27/24

**30/16 30/18 31/9 31/9 31/15 31/16 31/16 31/17 32/11 33/5 33/24 35/5 38/25 39/13 40/18 50/6 51/21 52/24 54/10 54/12 54/19 54/21 58/19 61/15 67/9 67/10 68/17 71/2 71/11 75/14 78/4 80/7 80/14 80/23 81/23 83/17 86/13 87/19 92/21 93/15 100/15 100/17 101/11 103/19 103/24 104/14 104/15 104/18 105/16 106/5 110/22 113/3 114/17 119/25 120/25 125/25 126/11 126/20 128/4 134/16 137/13 138/20 139/18 140/7
**cases [23]** 6/17 7/3 12/24 21/13 29/13 35/3 35/4 52/21 84/13 87/2 87/3 90/13 90/22 90/25 91/1 91/4 91/4 91/8 101/9 101/13 105/5 107/5 118/4
**categories [4]** 48/9 48/10 48/15 62/21
**category [6]** 77/8 88/8 122/16 122/17 125/23 136/21
**cause [4]** 114/2 117/2 119/15 132/16
**cautious [1]** 104/3
**cease [2]** 85/16 85/19
**CEO [4]** 43/24 50/21 50/23 50/25
**cert [1]** 39/25
**certain [12]** 19/2 47/19 62/21 72/13

**82/4 91/23 118/8 121/25 124/7 128/19 128/20 129/20
**certainly [16]** 15/15 15/16 26/22 30/25 37/17 43/5 50/3 52/1 61/24 70/13 79/17 81/4 82/18 84/4 100/24 126/10
**certification [3]** 120/13 121/7 121/11
**certify [1]** 143/4
**cetera [3]** 12/4 12/4 96/6
**Chair [3]** 88/1 88/5 117/22
**Chairman [2]** 68/18 107/19
**chal [1]** 21/22
**challenge [8]** 5/6 15/15 36/7 36/10 46/16 51/19 104/25 128/13
**challengeable [1]** 16/12
**challenged [1]** 99/15
**chance [1]** 140/1
**change [1]** 142/18
**chapter [1]** 40/21
**characterize [1]** 61/19
**charge [4]** 14/13 113/7 122/4 122/10
**charged [8]** 35/9 35/10 73/19 109/22 113/11 113/13 115/9 131/3
**charges [7]** 13/8 87/8 88/20 118/9 129/20 129/22 140/5
**Charles [1]** 1/20
**Cheney [4]** 68/19 68/23 107/20 117/21
**cherrypicking [1]** 76/18

**C**

**chief [1]** 93/15
**chill [1]** 55/23
**chilling [2]** 25/7 52/6
**choices [1]** 94/18
**chose [5]** 48/16 48/18 82/6 83/7 92/2
**Christoffel [1]** 12/21
**Chuck [5]** 54/3 54/3 54/24 55/3 55/9
**circle [3]** 21/19 49/6 49/7
**circuit [18]** 13/11 31/10 58/6 80/14 82/10 83/17 83/18 85/8 85/9 85/9 85/10 87/2 96/20 103/25 105/23 110/12 119/23 127/5
**Circuit's [1]** 126/5
**circumstance [5]** 44/9 47/12 79/13 87/16 97/6
**circumstances [8]** 21/7 22/3 49/17 53/23 54/7 74/14 80/23 95/18
**CIRTON [1]** 1/23
**citations [1]** 64/16
**cite [6]** 12/18 12/21 25/13 31/15 47/24 100/12
**cited [2]** 56/7 118/14
**cites [1]** 41/9
**citizen [4]** 32/16 50/9 50/20 52/2
**citizens [1]** 49/5
**civil [8]** 12/13 36/9 51/20 52/21 59/17 62/7 101/13 103/11
**claim [6]** 41/8 41/24 55/13 59/24 73/25 107/1
**claimed [1]** 122/2
**claims [6]** 26/24 56/14 57/6 57/17

**clarified [1]** 124/25
**clarify [2]** 110/18 136/6
**Clark [4]** 35/25 36/24 37/10 37/11
**Clark's [1]** 38/1
**clause [3]** 11/15 90/16 116/1
**clear [32]** 19/25 32/21 36/12 36/15 36/16 37/11 45/17 46/24 61/2 62/12 63/17 75/15 76/11 76/17 76/23 77/16 77/16 77/17 77/17 79/7 80/21 86/8 86/17 87/8 104/10 104/24 105/4 126/4 128/21 137/3 138/15 139/24
**clearly [8]** 43/17 44/5 76/12 92/13 106/4 116/1 123/18 124/2
**Clement [4]** 49/1 49/1 61/2 61/6
**clerk's [1]** 13/9
**client [2]** 95/7 125/3
**close [3]** 30/23 64/25 74/3
**closer [1]** 133/5
**closest [2]** 25/9 79/9
**Code [1]** 125/24
**collapse [1]** 72/7
**collar [1]** 25/25
**COLUMBIA [2]** 1/1 58/6
**come [16]** 3/2 3/6 22/20 27/14 53/16 61/13 70/16 83/4 88/24 100/20 109/23 132/19 133/3 133/4 136/19 141/24
**comes [2]** 75/11 87/10
**coming [4]** 51/3 140/9 140/17 140/22

**comma [1]** 18/2
**commented [1]** 77/20
**comments [2]** 22/13 58/2
**commission [1]** 72/11
**commit [1]** 80/7
**committed [1]** 113/11
**committee [105]** 5/22 5/25 6/2 6/6 6/6 7/17 7/18 8/9 8/17 9/1 9/15 9/15 9/24 11/4 11/6 12/19 15/13 15/16 15/22 16/3 16/7 16/11 16/20 16/23 17/2 17/6 17/13 17/17 18/21 19/15 21/14 25/3 25/23 27/9 28/8 28/17 28/18 37/18 37/19 48/3 68/18 68/20 77/17 83/25 84/6 84/20 85/13 85/15 85/16 85/18 85/19 86/23 87/4 88/5 89/9 89/19 89/21 90/4 90/15 90/21 91/5 91/9 91/13 91/15 92/24 93/2 93/3 95/21 95/22 100/14 109/21 113/18 113/20 113/21 113/24 114/5 114/7 114/10 114/20 115/6 115/13 116/8 116/11 116/12 116/20 117/5 117/9 117/11 117/18 117/20 118/7 119/17 119/21 120/7 120/15 120/17 121/6 121/9 122/7 122/8 132/20 132/22 132/25 136/9 136/12
**Committee's [6]** 68/12 84/11 117/23 120/5

**committees [4]** 6/8 28/16 49/13 87/12
**committing [1]** 75/20
**communicate [1]** 108/3
**communicated [3]** 28/7 36/23 68/13
**communicating [5]** 43/11 47/19 63/16 63/20 74/5
**communication [11]** 25/6 27/8 31/25 43/13 44/17 44/22 50/5 50/22 50/22 64/23 76/8
**communications [22]** 27/4 47/19 64/22 65/6 65/9 73/12 74/7 74/23 79/1 79/17 92/23 93/1 94/5 102/23 102/25 108/1 108/24 109/9 122/1 123/25 132/21 136/8
**company [1]** 43/24
**compel [2]** 121/7 122/9
**compelled [2]** 42/25 124/20
**compelling [1]** 100/14
**competing [1]** 135/10
**compilation [1]** 49/15
**complete [1]** 22/2
**completed [1]** 121/11
**completely [3]** 48/19 94/19 94/19
**compliance [5]** 109/4 109/24 110/3 116/19 117/8
**complicated [2]** 19/14 137/23
**complied [5]** 8/4 14/2 14/15 18/12

**comply [13]** 40/14 82/8 87/15 89/8 89/11 89/12 105/10 122/5 122/11 123/1 124/3 124/15 127/12
**complying [2]** 53/2 79/19
**component [1]** 63/10
**comport [1]** 33/13
**composed [2]** 7/17 7/18
**composition [6]** 5/22 5/25 6/5 113/17 116/7 117/23
**comprehensive [1]** 56/7
**compressing [1]** 141/13
**computer [1]** 2/7
**computer-aided [1]** 2/7
**concede [3]** 6/24 44/18 84/4
**conceded [1]** 123/13
**concedes [3]** 83/24 84/1 96/11
**concept [2]** 45/19 49/19
**conceptually [1]** 102/1
**concern [2]** 71/13 123/24
**concerned [1]** 87/3
**concerning [4]** 34/13 85/13 124/22 124/23
**concerns [1]** 132/16
**concession [1]** 100/13
**conclude [12]** 8/3 37/13 65/4 78/1 78/3 79/18 114/19 116/7 118/19 119/15 120/3 130/4

**concluded [10]** 53/13 55/9 55/10 55/22 66/9 109/8 114/2 117/2 119/24 142/23
**concluding [1]** 78/21
**conclusion [8]** 43/17 51/10 57/3 57/8 61/24 63/11 66/9 118/18
**conclusions [1]** 66/8
**conclusive [1]** 115/5
**concur [1]** 57/7
**conduct [24]** 25/10 33/9 33/13 34/25 35/2 35/3 71/17 71/19 71/23 72/4 72/9 76/14 79/25 80/12 91/25 95/5 111/10 119/6 126/16 128/16 129/9 129/14 130/2 130/6
**confer [2]** 135/14 135/22
**conference [1]** 107/20
**conferences [1]** 140/3
**conferred [1]** 15/24
**conferring [1]** 135/8
**confidence [1]** 103/1
**confidential [2]** 44/2 121/22
**confidentiality [2]** 49/20 102/24
**confirmed [1]** 42/22
**conflating [1]** 78/7
**conflict [3]** 58/13 94/12 94/16
**conflicting [1]** 79/13
**conformity [3]** 27/24 29/2 97/6
**confusing [1]**

**Congress [46]** 8/22 10/25 11/4 11/18 11/22 11/24 12/1 13/8 18/22 20/25 21/4 21/10 35/9 39/21 41/6 42/3 42/7 42/20 44/3 44/6 44/21 47/11 50/23 55/11 55/17 56/10 56/13 57/5 57/22 59/8 60/4 60/15 61/13 62/2 62/19 64/12 64/16 69/11 79/4 103/7 107/6 116/2 120/12 122/25 127/13 129/3
**Congress' [1]** 119/3
**congressional [16]** 19/15 39/9 42/25 45/3 46/6 49/12 65/21 78/10 79/20 80/24 102/20 106/18 115/24 119/5 123/1 123/24
**Congressman's [1]** 13/13
**Connally [1]** 33/23
**connection [2]** 39/9 132/10
**consciously [1]** 82/6
**consider [11]** 34/10 50/7 52/6 59/17 69/17 69/20 70/2 70/14 117/10 139/7 142/12
**consideration [2]** 133/10 139/3
**considered [3]** 8/23 90/10 101/9
**considering [2]** 59/11 138/19
**consistent [5]** 7/19 11/5 18/15 97/17 117/23
**consistently [2]** 39/5 39/17
**constituencies' [1]** 58/14

**constituted [6]** 8/17 11/4 17/6 17/14 90/4 114/20
**constitutes [2]** 58/21 129/1
**constitution [5]** 2/3 11/15 42/6 42/10 116/5
**constitutional [14]** 4/24 5/6 30/22 42/8 42/15 55/22 60/1 60/6 95/4 107/1 108/11 108/12 127/7 129/2
**constitutionally [7]** 41/7 52/20 55/12 58/17 59/3 128/16 129/9
**construction [6]** 11/8 11/10 12/6 33/24 65/12 65/12
**construe [3]** 54/7 63/21 103/3
**construed [2]** 5/20 57/15
**construing [1]** 13/4
**consultation [4]** 12/3 87/7 113/22 116/20
**consultations [1]** 52/7
**consulted [1]** 87/4
**consulting [2]** 116/12 117/12
**contemplate [1]** 135/9
**contemplated [3]** 19/16 121/23 139/25
**contemplates [2]** 85/17 85/18
**contemporary [1]** 8/8
**contempt [40]** 8/1 8/24 12/1 21/21 35/9 41/6 42/3 42/18 45/12 47/8 55/11 56/10 56/13 57/5 57/24 58/7 59/23 60/4 60/15 60/22 61/7 63/21

67/4 67/5 78/10 84/12 88/20 90/8 102/13 107/6 108/11 109/23 115/15 115/16 115/17 115/18 122/25
**contends [1]** 116/17
**content [1]** 27/4
**contention [1]** 114/9
**context [31]** 5/19 6/17 7/7 12/13 13/13 36/3 37/22 39/18 41/20 44/15 45/12 46/2 46/2 46/4 49/21 53/21 57/24 58/11 60/17 60/22 63/12 63/13 63/15 63/19 63/22 66/11 66/12 76/7 83/15 111/7 115/12
**contexts [1]** 60/13
**continue [2]** 129/24 140/11
**continued [4]** 49/23 104/20 120/15 125/4
**continuing [1]** 42/21
**contract [1]** 61/17
**contradict [2]** 107/17 107/19
**contradictory [4]** 34/14 34/17 34/24 93/15
**contrary [1]** 46/23
**conversation [6]** 25/5 45/6 50/1 50/9 57/19 64/3
**conversations [2]** 61/5 64/7
**conviction [2]** 6/19 96/24
**COONEY [2]** 1/12 3/9
**Cooper [2]** 54/4 55/9
**Cooper's [4]** 54/3 54/3 54/25 55/3

**copy [4]** 69/10 118/7 118/12 118/15
**CORCORAN [9]** 1/19 3/12 5/7 5/12 94/13 111/14 136/2 136/3 136/25
**corners [7]** 15/1 73/10 74/10 75/9 77/3 116/24 119/13
**correct [14]** 16/13 16/17 16/24 17/4 17/7 19/9 43/12 91/6 96/21 97/1 97/2 119/3 120/4 143/4
**correctly [2]** 69/6 126/8
**COSTELLO [24]** 1/22 3/12 3/24 22/14 23/15 23/21 25/22 27/9 28/8 37/9 62/19 67/25 70/19 91/19 92/2 93/16 94/13 94/16 95/1 129/19 132/13 132/20 136/7 137/20
**Costello's [7]** 24/4 25/1 92/9 93/1 93/13 104/12 107/25
**could [47]** 15/3 17/14 18/12 21/3 29/25 32/22 36/24 40/7 41/7 50/4 52/10 52/13 53/19 53/19 55/12 58/20 58/20 60/22 62/14 66/24 71/18 74/13 74/19 80/5 84/22 84/22 89/21 90/10 90/12 90/20 93/9 102/8 110/15 111/2 119/9 123/11 134/6 135/4 135/11 135/17 136/4 138/25 139/9 139/16 141/9 141/14 142/16
**couldn't [2]** 53/17

**C**

**couldn't... [1]**
107/10
**counsel [40]** 3/6
3/10 3/14 3/21 4/4
10/16 28/20 30/8
38/19 48/1 48/12
48/13 52/7 61/4
68/4 68/22 73/12
73/22 76/21 77/8
82/19 83/12 83/16
88/21 100/2
100/20 103/14
104/10 112/21
124/17 124/25
125/1 126/3
129/14 129/19
129/25 130/20
130/24 135/20
142/21
**counsel's [3]**
22/1 73/9 105/22
**count [8]** 100/7
100/10 100/16
121/5 122/4
122/10 122/15
123/14
**counts [1]** 113/13
**couple [7]** 40/20
41/1 68/2 76/17
80/6 100/6 101/21
**course [14]** 26/2
42/16 45/8 48/25
51/12 59/10 65/18
66/1 72/19 80/12
103/6 114/11
125/14 140/24
**court [132]** 1/1
2/2 5/18 6/1 6/17
6/20 7/2 7/6 7/10
9/14 10/24 13/1
13/11 13/16 13/25
19/24 21/6 21/21
22/25 23/1 24/5
27/14 31/6 32/22
33/7 33/19 34/9
37/12 39/12 40/20
40/21 43/4 43/5
46/9 47/13 48/25
49/6 50/8 52/12
53/25 54/16 54/17
55/6 56/5 58/5
58/18 58/24 59/10
59/11 59/12 59/12

61/19 62/7 62/8
62/8 62/13 62/24
64/14 65/14 65/15
70/23 72/14 77/21
79/20 83/6 83/17
83/23 84/13 84/16
84/17 85/10 87/6
88/19 88/21 89/1
89/24 90/12 90/13
99/5 99/17 99/25
100/17 101/2
102/4 103/24
104/2 104/3 104/4
104/4 105/6 105/7
105/8 105/23
105/24 107/6
107/15 108/13
108/14 108/19
109/23 109/25
110/2 111/18
111/20 112/16
113/11 114/13
114/19 114/24
115/3 115/7
115/22 115/23
115/25 116/4
116/6 116/23
117/10 119/20
120/24 135/18
136/9 136/9
138/14 139/20
139/23 139/24
140/11 143/3
**Court's [14]** 60/7
65/15 86/16
101/24 103/6
105/19 107/14
126/1 126/23
127/9 129/12
136/6 137/20
138/18
**courthouse [1]**
101/9
**courts [4]** 2/2
86/4 130/10
139/21
**cover [7]** 23/4
47/19 50/4 72/9
83/20 83/22 120/6
**coverage [3]**
34/11 49/6 49/7
**covered [5]** 50/24
71/17 104/8 104/9

cows [1] 24/18
**CR [1]** 1/3
**CRC [1]** 2/1
**create [1]** 121/10
**crime [7]** 25/23
34/2 34/3 42/7
65/25 74/18
100/10
**crimen [1]** 34/1
**crimes [1]** 80/8
**criminal [60]** 3/3
5/19 6/3 6/17 10/9
12/7 12/13 12/24
13/8 13/15 14/7
21/16 33/7 33/10
33/11 34/11 34/12
34/13 34/17 34/21
34/23 35/9 35/12
36/10 38/21 39/10
40/7 40/13 42/3
46/15 47/8 51/21
51/24 52/17 52/17
53/4 55/23 56/13
57/24 58/7 59/23
60/22 62/4 62/6
64/5 64/15 65/22
67/4 71/16 71/23
101/13 102/10
102/13 104/16
113/6 113/11
119/6 121/2
128/17 140/5
**criminalizing [1]**
126/15
**criminally [2]**
52/25 59/15
**critical [3]** 29/18
102/4 103/8
**cross [1]** 93/14
**CRS [3]** 49/10
49/11 50/1
**crucial [1]** 101/14
**crystal [1]** 86/8
**cured [1]** 84/22
**curling [1]** 21/17
**current [17]**
39/24 41/16 41/23
42/23 43/18 44/6
44/16 55/21 57/11
57/20 60/16 64/17
74/6 76/7 78/16
79/15 135/13
**currently [1]**

**custody [1]** 84/10
**cut [1]** 92/6
**cynic [1]** 107/24

**D**

**D.C [9]** 1/13 13/11
87/2 96/20 105/23
110/12 119/23
126/5 127/5
**damage [1]** 21/3
**Dan [2]** 115/19
118/5
**dare [1]** 51/19
**date [6]** 130/3
135/25 140/2
140/11 142/2
143/10
**DAVID [4]** 1/16
1/17 3/12 39/20
**DAVIDOFF [1]**
1/23
**Davis [1]** 33/17
**day [8]** 59/13 82/4
120/13 122/19
125/5 140/2 140/9
140/9
**days [1]** 142/10
**DC [3]** 1/5 1/14
2/4
**dcd.uscourts.gov
[1]** 2/4
**de [6]** 7/3 11/5
11/9 11/13 12/8
114/25
**deadline [2]**
134/5 134/7
**deal [6]** 4/23 5/4
5/7 18/18 28/20
45/4
**dealt [2]** 83/15
114/17
**death [1]** 6/9
**debated [1]** 8/8
**decades [4]**
10/18 10/18 25/25
39/5
**decide [16]** 9/21
11/18 20/19 20/21
28/13 86/1 86/3
108/13 108/24
109/25 111/18
131/16 134/1
134/20 138/9

**decided [10]** 21/1
76/14 82/8 94/15
96/19 104/4
130/20 130/24
131/4 133/21
**decides [1]**
108/14
**deciding [3]** 12/6
13/2 132/25
**decision [13]**
54/12 79/14 83/11
96/3 96/9 112/23
126/2 126/4 126/5
126/7 126/12
127/9 127/17
**decisions [1]**
50/13
**declaration [1]**
107/17
**declarations [1]**
93/18
**decline [2]** 124/3
128/19
**declined [3]**
64/18 64/19 123/1
**deemed [2]** 52/16
57/19
**deems [1]** 47/6
**default [11]** 28/10
28/12 58/21 77/16
81/18 97/23
108/17 129/1
129/6 131/3
131/13
**default' [1]**
128/25
**defect [1]** 113/7
**defendant [50]**
1/7 1/16 10/9
17/20 25/19 31/8
32/15 65/22 71/6
72/2 72/21 72/24
75/16 76/10 77/23
78/6 80/3 80/5
81/2 81/22 82/4
84/19 86/14 87/10
87/19 88/4 88/14
88/20 89/18 92/3
92/24 93/5 94/8
94/10 94/15 95/4
95/19 95/23 96/11
97/5 98/1 99/18
100/24 108/16

**D**

**defendant... [6]**
109/2 110/4
111/15 113/6
113/8 113/10
**defendant's [6]**
9/20 87/22 93/16
105/20 105/25
113/2
**defendants [1]**
72/11
**defense [68]**  3/13
26/1 28/3 31/6
31/16 31/17 65/24
69/13 70/10 71/7
71/10 71/12 71/25
73/15 73/18 74/12
74/13 74/25 75/3
75/4 75/8 75/18
76/15 77/9 80/1
80/2 80/9 81/4
81/7 81/21 83/6
83/12 83/14 86/15
87/7 87/9 87/9
87/15 87/18 88/9
88/20 100/2 100/8
104/16 107/5
108/11 108/18
108/20 108/21
109/1 109/3
109/10 110/16
110/20 111/5
111/23 123/8
123/15 131/8
131/14 137/6
138/2 138/7
138/14 138/15
138/20 138/22
139/6
**defenses [7]**
30/21 89/23
123/12 123/15
131/6 137/8
137/15
**defer [3]**  7/20
11/6 84/17
**deference [6]**
12/5 12/11 13/2
13/5 13/6 14/14
**defined [1]**
117/15
**definition [2]**  97/1
97/10
**defying [1]**  78/9

**delete [1]**  2/22
**deliberate [9]**
29/8 29/14 29/21
82/14 83/1 83/2
89/13 96/9 106/1
**deliberately [2]**
82/8 83/7
**deliberations [3]**
55/25 56/1 56/3
**Dellinger [1]**
42/16
**demanded [1]**
121/17
**democratic [2]**
16/1 16/4
**demonstrates [1]**
57/9
**demonstratively
[1]**  103/8
**denial [1]**  39/25
**denied [1]**  133/9
**Dennis [2]**  83/16
83/18
**deny [4]**  113/4
130/11 138/3
138/14
**department [31]**
30/17 31/22 31/22
36/8 38/18 39/6
39/14 41/5 43/5
48/17 52/23 54/11
56/9 56/12 56/21
57/2 58/16 58/25
59/14 64/11 64/14
102/11 102/18
104/21 106/14
106/23 118/2
122/23 123/10
123/17 131/10
**Department's [4]**
48/20 57/4 65/20
65/21
**depending [1]**
74/14
**depends [3]**
82/23 96/15 110/7
**deponent [1]**
19/14
**deponents [1]**
116/14
**deposition [9]**
16/23 18/5 19/2
19/3 32/1 69/8
69/15 118/14

**described [1]**  7/9
**designate [1]**
10/16
**designated [1]**
117/16
**despite [3]**  94/15
102/10 127/22
**detail [3]**  29/11
56/6 119/19
**detailed [2]**
119/22 120/6
**details [2]**  99/9
121/17
**deter [1]**  42/11
**determination [2]**
66/22 81/1
**determine [3]**
47/11 85/23 105/2
**determining [2]**
59/8 91/13
**did [36]**  8/10 13/1
13/9 14/6 15/11
19/17 26/13 26/18
26/19 27/3 30/2
44/3 49/4 58/22
64/10 64/13 71/22
81/20 86/5 92/3
92/11 92/14 96/19
96/23 97/19 98/10
108/15 108/17
110/5 110/6
119/15 125/8
127/21 131/20
132/23 136/9
**didn't [33]**  7/2
13/5 18/8 19/4
27/3 34/5 37/23
50/9 64/6 69/15
69/19 70/16 70/17
77/25 79/1 79/2
82/1 83/13 84/20
87/7 87/23 90/19
104/2 104/4
105/15 108/4
110/3 110/11
125/2 136/2
136/11 136/24
140/12
**difference [1]**
102/4
**different [36]**
9/21 9/24 10/6
10/21 12/12 14/3

33/18 43/3 58/12
59/5 59/5 73/20
74/19 78/7 83/12
84/6 84/14 84/25
85/4 97/5 97/24
97/24 105/20
106/9 107/4
108/17 110/11
111/4 111/4
122/17 133/2
134/25 136/21
**difficult [2]**  42/12
141/8
**diligent [1]**
121/11
**dire [2]**  134/7
134/11
**direct [3]**  22/13
31/7 107/1
**directed [4]**  68/12
124/2 124/14
127/19
**direction [2]**
56/15 124/6
**directive [1]**
127/11
**directly [5]**  14/12
16/9 49/2 76/23
104/13
**disagree [3]**
53/12 121/24
126/1
**discovery [1]**
101/1
**discretion [2]**
128/3 128/6
**discuss [4]**  23/7
27/19 124/4
125/13
**discussed [7]**
8/11 8/12 17/9
50/1 96/7 126/6
130/19
**discussing [1]**
23/17
**discussion [5]**
47/6 62/2 100/20
100/21 101/24
**disgrace [1]**
127/2
**disheartened [1]**
30/14
**disinclination [1]**

**disinclined [2]**
136/19 138/1
**dismiss [27]**  3/18
3/23 5/17 14/24
22/14 22/22 24/5
39/4 58/18 69/18
69/21 71/8 73/1
100/7 103/23
103/25 113/3
113/7 114/13
116/23 119/12
122/15 124/6
130/12 133/8
138/3 138/25
**dismissal [25]**
25/10 26/20 53/13
81/4 81/15 91/22
91/24 91/24 94/4
94/20 96/14
100/16 114/21
116/9 116/15
118/8 122/19
123/6 124/10
125/22 129/17
129/20 130/6
130/8 139/1
**dismissed [12]**
30/16 30/17 30/18
32/11 33/5 38/25
39/13 46/18 54/19
63/9 100/11 121/6
**dismissing [2]**
70/10 129/22
**dispute [3]**  18/8
87/22 114/12
**disputed [4]**
35/17 35/19 124/5
135/15
**disputes [3]**
45/10 57/24 58/8
**disrupt [1]**  42/19
**distinct [1]**  102/1
**distinction [5]**
16/19 32/16 51/10
61/3 101/13
**distinguishing [1]**
79/15
**distracted [1]**
48/22
**distraction [1]**
48/24
**district [8]**  1/1 1/1
1/9 2/2 21/13 58/6

**D**

**district... [2]**
58/11 130/10
**divided [2]** 19/20
21/6
**do [72]** 4/2 4/14
6/24 8/20 11/5
11/22 13/17 13/21
15/7 16/17 21/21
22/13 22/24 23/20
23/24 24/6 24/6
24/16 24/21 25/20
28/1 28/3 30/3
42/11 44/1 44/1
51/20 54/12 54/17
54/17 61/7 65/14
65/16 71/2 72/7
73/7 75/21 77/18
78/1 82/6 82/11
84/3 85/1 86/23
87/7 90/1 97/7
97/19 98/14 98/19
123/13 125/10
127/16 128/12
129/21 129/23
129/24 130/4
132/18 133/12
133/23 134/3
135/4 135/11
135/16 135/17
138/5 140/20
141/1 141/19
141/20 142/15
**Doc [1]** 22/2
**Docket [1]** 68/6
**doctrine [6]** 33/23
33/25 60/3 126/15
127/8 127/23
**doctrines [2]**
123/3 123/6
**document [9]**
37/25 45/16 58/8
68/19 100/15
105/18 116/24
119/13 122/5
**Document 65 [1]**
100/15
**documents [29]**
32/2 38/3 40/21
62/11 64/18 69/24
73/21 74/9 76/6
78/11 78/14 78/16
78/21 78/22 79/6
82/5 93/7 103/11

106/18 120/18
121/10 122/8
122/12 122/13
123/10 123/23
124/21 125/7
125/9
**does [36]** 15/23
29/14 37/1 42/4
42/6 45/7 45/8
56/14 57/5 65/20
70/3 72/8 78/8
79/21 85/23 86/1
89/7 92/8 102/24
104/20 105/24
110/4 114/6
114/12 117/1
117/6 117/20
119/14 122/3
122/9 122/14
127/24 128/15
128/20 128/22
130/1
**doesn't [50]** 6/7
6/16 6/20 15/1
18/7 23/2 30/2
32/14 33/13 35/12
36/4 40/14 45/12
48/2 48/3 51/5
52/18 53/5 61/6
64/5 64/6 66/10
66/22 70/1 70/5
70/7 71/19 77/7
77/22 79/5 82/14
84/17 85/16 85/19
87/1 87/15 87/20
87/24 94/23 95/8
103/22 105/15
106/3 106/4 106/7
106/10 107/8
109/18 139/24
141/24
**doing [5]** 21/14
25/25 43/24 43/25
83/20
**DOJ [6]** 58/17
59/22 73/24
122/24 122/24
128/19
**don't [88]** 4/1
4/13 4/14 4/15
4/23 6/8 8/1 8/15
9/13 9/14 12/5
14/12 14/17 15/14
19/9 19/12 19/13

20/7 20/20 20/8
23/18 24/21 30/23
30/25 31/1 31/13
31/18 32/9 34/7
36/10 36/20 44/24
45/10 46/15 47/15
49/16 50/2 51/11
52/17 53/22 54/9
59/7 61/19 62/6
63/3 63/11 63/24
65/14 66/4 66/20
67/12 72/1 73/6
74/23 75/25 79/18
81/10 81/12 81/12
82/12 84/14 84/24
86/12 95/17 98/6
98/6 101/2 101/8
101/12 102/4
102/6 102/12
103/3 103/15
109/14 125/5
128/4 128/9
130/15 138/2
139/5 139/6 140/9
140/18 141/13
141/18 141/18
142/2
**done [9]** 13/17
14/7 16/7 21/21
24/17 138/3
139/25 141/9
142/18
**doubt [6]** 17/22
28/10 50/3 66/8
106/19 106/25
**Doug [1]** 68/21
**down [3]** 60/11
75/11 82/16
**drafted [1]** 62/19
**draw [1]** 61/24
**drawn [3]** 13/22
51/10 124/7
**driven [1]** 24/12
**dropped [1]**
68/16
**duality [1]** 58/10
**due [27]** 11/24
13/2 14/14 30/22
30/25 31/15 32/11
32/18 32/19 33/14
33/22 34/22 39/11
70/24 71/10 71/12
71/20 77/13 80/1
101/25 103/20

123/3 125/21
132/1 137/6
**duly [1]** 9/1
**dump [1]** 80/16
**dumping [1]**
80/15
**during [2]** 73/22
120/12
**duties [5]** 13/10
13/22 13/23 42/15
60/1

**E**

**each [13]** 4/13 8/7
10/11 24/20 80/20
113/16 116/1
121/20 123/8
123/15 126/20
130/14 134/18
**earlier [5]** 17/9
55/6 107/18 134/1
141/23
**early [1]** 31/5
**earned [1]** 15/25
**easiest [1]** 10/1
**easy [1]** 113/8
**ECF [8]** 3/18 3/19
55/2 107/14 113/3
126/3 127/25
132/12
**ECF-29 [1]** 126/3
**ECF-58 [2]** 113/3
127/25
**ECF-82 [1]**
107/14
**ECFs [1]** 130/17
**economy [1]**
43/23
**effect [6]** 25/7
52/6 60/11 66/5
82/10 82/13
**effectively [1]**
54/9
**effort [3]** 118/22
118/25 120/12
**eight [1]** 142/10
**either [15]** 11/6
16/4 22/7 54/19
86/12 93/14 93/19
94/23 119/16
122/11 131/2
132/7 133/1
133/25 137/10

**election [1]**
120/13
**electric [3]** 24/14
24/19 25/7
**element [24]** 9/4
14/18 14/23 17/20
17/23 17/25 26/24
27/16 28/4 28/11
65/25 77/5 79/23
85/2 85/3 85/5
85/6 85/11 85/21
85/24 86/2 87/9
105/22 105/25
**elements [10]**
9/10 14/13 72/20
72/23 81/3 131/3
133/15 134/17
134/17 134/19
**else [3]** 5/7 54/22
82/7
**email [4]** 24/4
25/5 108/2 125/1
**embodies [1]**
71/12
**emcee [2]** 4/20
4/21
**emphasize [1]**
15/20
**employed [2]**
49/25 66/25
**employee [17]**
31/24 41/23 43/12
43/14 44/16 44/23
45/5 45/10 46/3
50/7 57/20 63/16
63/20 65/5 65/8
74/6 124/1
**employees [9]**
49/25 50/4 57/12
57/13 61/9 76/3
76/5 76/8 128/20
**employment [2]**
61/17 65/1
**encouraging [1]**
52/3
**encroachment [1]**
59/19
**end [2]** 22/21
59/13
**enforce [3]** 77/7
118/25 119/5
**enforcement [6]**
36/9 52/22 59/17
93/18 103/12

**E**

enforcement... [1] 108/15
engage [3] 76/14 121/3 135/11
engaged [4] 98/10 109/13 132/20 132/25
Engel [1] 42/21
Engle [1] 41/4
enlist [1] 42/13
enough [4] 87/23 103/25 116/22 139/13
enter [2] 94/16 97/5
entered [1] 94/14
entire [4] 48/14 76/19 87/4 126/19
entirely [2] 105/20 136/15
entities [1] 28/25
entitled [8] 62/5 65/13 79/25 81/4 81/5 88/15 97/15 143/6
entity [2] 20/8 58/9
entrapment [40] 4/24 5/5 30/20 30/21 31/3 31/14 31/19 32/10 32/17 35/4 66/2 67/16 71/10 71/11 71/12 71/21 71/25 72/19 75/4 75/15 77/11 80/1 80/9 102/2 103/16 103/16 103/23 108/22 122/17 123/4 123/15 125/21 131/8 137/5 137/9 137/22 138/1 138/14 138/19 139/6
EPA [1] 78/18
equally [1] 10/5
erroneous [2] 105/21 129/14
erroneously [1] 72/12
error [1] 22/4
errors [1] 130/9
Ervin [1] 58/1

especially [2] 58/9 58/11
essentially [10] 5/24 14/1 25/18 75/19 80/5 83/6 126/21 133/24 135/10 141/23
establish [3] 53/17 98/9 123/12
established [5] 12/23 36/20 36/21 72/20 123/21
estopped [1] 46/22
estoppel [37] 5/5 30/21 31/3 31/14 31/19 32/10 32/17 66/2 67/16 70/22 70/24 71/10 71/11 71/12 71/21 71/25 75/15 77/11 80/1 80/9 102/2 103/16 103/17 103/23 106/24 108/22 123/4 123/15 125/21 131/8 137/5 137/9 137/22 138/2 138/14 138/20 139/6
et [4] 12/4 12/4 22/2 96/6
et cetera [2] 12/4 96/6
EVAN [1] 1/19
even [63] 7/5 14/6 19/7 21/15 25/2 26/19 29/20 30/23 31/1 31/2 32/9 32/17 32/18 33/17 34/20 35/2 43/6 53/4 57/12 59/12 61/13 63/20 71/7 72/15 72/21 72/24 73/6 75/6 76/5 76/23 77/22 79/20 80/24 81/2 82/25 84/17 86/23 88/2 88/7 88/7 88/18 89/18 89/23 90/19 95/8 95/18 97/4 97/4 97/7 98/1 98/24 99/18 99/19 101/3 111/11

115/2 117/10 121/12 121/24 125/19 131/13
event [4] 26/19 40/2 43/9 118/17 102/6
ever [5] 31/22 44/8 63/11 94/14 102/6
every [11] 15/5 16/11 16/22 17/9 17/22 24/7 25/5 47/7 50/11 85/18 140/2
Everybody [1] 105/4
everyone [4] 4/7 71/15 130/13 130/17
everything [7] 4/10 5/7 16/7 83/22 99/24 105/7 136/17
evidence [43] 3/23 9/23 25/11 30/6 54/14 91/23 92/9 93/15 95/11 95/23 96/10 96/11 96/15 97/5 97/16 99/5 99/11 99/15 99/22 111/15 111/17 111/18 111/19 111/20 111/24 130/23 131/9 131/11 131/18 131/20 132/3 132/5 132/7 132/13 132/15 132/19 133/1 133/3 134/24 137/12 138/10 138/13 139/4
evidentiary [6] 92/8 113/2 133/13 134/14 134/21 142/6
evil [1] 89/9
evolving [1] 31/4
exact [1] 124/10
exactly [8] 25/15 82/10 82/11 82/12 130/20 133/13 133/14 140/6
example [20]

10/6 45/7 99/18 43/23 60/14 73/11 78/18 80/13 87/2 93/3 93/17 97/12 102/22 103/13 105/9 111/8 118/22 120/10 138/7 140/2
examples [2] 39/12 40/20
exceeded [2] 116/11 117/11
excerpts [2] 53/25 62/24
exchange [2] 135/13 139/16
exclude [9] 3/23 22/21 29/23 91/23 95/10 95/12 99/4 131/20 132/13
excluded [4] 96/12 99/22 100/23 132/5
excludes [1] 137/12
exclusion [4] 25/11 48/1 94/22 94/24
exclusionary [1] 95/7
excuse [2] 70/14 110/3
excused [4] 83/8 96/4 109/24 129/15
excuses [1] 108/17
excusing [1] 72/13
executive [108] 32/20 35/8 35/11 35/18 35/24 36/5 36/5 36/7 36/13 37/14 37/23 39/8 40/2 40/3 40/4 40/14 40/18 41/7 41/8 41/11 41/13 42/1 42/5 42/12 42/19 43/3 43/8 44/5 44/12 44/14 44/21 45/8 45/19 46/2 47/18 50/3 50/12 50/24 51/1 51/22 53/3 53/18

43/23 55/13 55/14 55/17 55/19 55/24 56/14 56/15 57/6 57/7 57/10 57/12 57/12 57/15 57/23 58/3 59/4 59/22 59/24 60/3 60/16 60/17 61/8 64/8 65/1 68/11 74/6 75/24 75/25 76/4 78/8 78/14 78/16 78/20 83/8 96/4 97/18 99/20 100/14 102/23 104/8 105/10 106/3 106/7 106/8 106/10 107/2 107/14 108/14 109/3 109/17 110/19 118/24 119/7 121/14 121/25 123/20 124/16 125/11 125/19 126/17 127/10 127/12 128/20 129/3 129/10
exhaust [1] 59/1
exhibits [2] 92/16 98/6
exist [3] 45/9 85/16 85/19
existed [1] 121/12
existence [1] 26/25
expect [1] 4/12
experience [7] 23/10 23/23 27/20 28/15 29/15 132/8 137/11
experienced [1] 104/16
experiences [1] 28/22
experts [2] 46/10 50/14
explain [1] 52/22
explained [3] 42/6 115/25 128/9
exposing [1] 140/6
express [1] 17/9
expressly [9]

**E**

expressly... [9]
7/17 7/21 38/22
43/19 44/19 48/3
50/19 52/1 63/15
extend [1] 75/17
extent [13] 11/4
27/2 38/13 86/18
87/14 92/17 93/13
95/11 119/19
120/1 125/18
127/3 138/10
extraordinary [2]
24/25 25/4
extrapolating [1]
75/16
extremely [1]
104/3
Exxon [3] 50/22
50/23 50/25

**F**

face [11] 27/7
40/7 47/15 70/4
72/3 80/18 100/7
114/6 116/17
117/6 120/22
faced [1] 39/20
faces [1] 11/23
facing [1] 13/8
fact [15] 51/11
62/9 68/5 81/1
90/5 99/17 102/10
105/17 108/24
109/10 115/4
127/1 127/19
133/22 142/5
fact-specific [1]
81/1
factor [2] 67/6
79/15
facts [3] 15/9
49/16 125/25
factual [4] 93/6
107/16 107/22
124/13
failed [5] 81/2
94/19 94/20 122/7
122/11
failing [5] 44/9
44/20 74/9 74/9
119/8
fails [1] 116/18
failure [6] 89/8

39/11 106/1
106/17 118/7
122/5
fair [22] 32/12
33/9 33/12 34/10
34/15 39/14 39/18
40/12 46/21 61/1
62/16 63/1 66/15
71/17 71/19 71/23
101/25 102/5
104/23 105/2
123/3 139/13
faith [6] 81/21
83/14 97/23 98/10
105/21 110/20
fall [2] 86/6 88/8
falls [1] 113/16
familiar [1] 4/9
famous [1] 19/20
far [4] 16/21
65/12 84/5 124/13
farm [2] 24/13
24/14
fashion [1] 95/6
faster [2] 101/21
139/20
fastest [1] 54/16
fatal [2] 73/5
130/11
faults [1] 119/8
favor [2] 6/23
9/20
FBI [2] 68/24
107/18
February [1]
64/12
Federal [3] 62/8
111/17 111/19
Federalist [1]
34/4
feel [3] 139/24
141/19 141/25
feels [3] 24/17
24/19 139/20
fence [3] 24/14
24/19 25/7
fences [1] 24/22
few [2] 32/23
39/12
fewer [1] 85/16
Fields [10] 82/10
83/5 83/16 83/18
89/6 96/18 96/20
96/25 97/14 106/8

Fifth [6] 33/14
33/14 109/19
109/21 109/24
110/3
fighting [2] 45/23
45/24
fights [1] 134/11
file [10] 20/22
20/24 21/1 135/2
135/10 135/22
139/16 140/1
141/9 141/11
filed [13] 15/17
19/23 20/20 21/23
21/24 90/9 90/20
90/22 95/15 101/8
101/15 133/7
141/21
filing [2] 20/24
134/5
filings [3] 84/12
90/13 142/4
final [2] 129/16
141/12
finalized [1]
92/16
Finally [1] 121/5
finance [1] 111/8
find [11] 21/24
29/24 56/23 56/24
80/5 80/6 90/10
107/25 113/10
119/20 132/13
finding [1] 9/14
fine [2] 75/21
91/20
first [28] 3/21 4/8
4/18 5/11 5/12
5/24 22/22 27/8
30/13 30/19 41/12
51/5 68/3 79/23
85/24 89/23 94/12
101/23 108/10
113/4 113/14
113/17 119/1
123/16 123/23
126/21 135/2
137/24
fit [9] 29/14 71/19
71/23 75/15 77/7
78/3 103/15 141/4
141/7
fits [3] 74/10
75/12 75/13

five [5] 3/18 20/18
112/10 113/1
113/21
flaw [1] 130/11
Fleshing [1]
121/16
Floor [1] 1/20
focus [1] 4/10
focused [2] 43/8
78/15
focusing [1]
62/25
folks [2] 52/23
102/21
follow [2] 12/2
103/19
followed [2]
12/23 25/6
follows [3] 6/3
6/19 89/7
footnote [1]
20/23
forbid [1] 107/11
foregoing [1]
143/4
formal [1] 61/17
former [29] 32/15
35/18 36/13 37/14
39/21 39/22 40/1
40/9 41/12 41/16
42/23 43/18 44/6
47/4 50/7 51/16
57/12 61/16 63/17
63/19 64/17 68/10
68/10 79/14
121/13 123/19
124/14 127/10
127/19
formerly [1] 49/25
formulating [1]
137/19
formulation [1]
57/11
forth [3] 6/10 28/8
100/22
forward [2] 3/6
104/5
foul [1] 26/11
found [3] 21/22
97/1 130/10
foundation [1]
123/12
foundational [3]
47/1 80/22 94/3

foundations [1]
63/4
four [12] 6/15
14/25 73/2 73/10
74/10 75/9 77/3
98/11 113/2
116/24 119/13
130/13
four corners [1]
119/13
four-month [1]
98/11
fourth [2] 29/1
30/3
frame [1] 97/13
framework [2]
83/1 134/15
frankly [1] 133/2
free [2] 80/7
119/1
friends [1] 22/11
frivolous [2]
54/22 70/17
front [7] 19/15
72/11 72/22 82/13
113/1 130/16
131/21
fulfill [2] 42/15
60/1
full [6] 8/11 8/16
80/20 115/14
118/1 118/17
fullest [1] 38/13
fully [3] 129/9
131/22 142/11
fundamental [1]
33/6
funds [1] 13/22
further [7] 15/6
34/20 42/22 67/13
89/24 118/6
Furthermore [1]
106/16

**G**

game [1] 61/25
GASTON [2] 1/13
3/9
Gaudin [1] 9/7
general [10] 10/5
10/7 22/1 33/24
38/20 42/6 54/13
68/22 81/11
136/16

**G**

**generally [9]** 7/4 23/4 54/4 111/10 115/1 116/25 119/12 131/22 136/20

**germane [1]** 120/23

**get [27]** 13/5 18/24 21/18 25/5 27/3 32/9 33/18 36/3 41/15 43/20 46/13 46/18 47/19 48/12 59/16 63/8 67/11 72/23 81/15 83/5 87/18 103/7 110/4 133/7 135/18 135/20 141/8

**gets [2]** 20/19 142/9

**give [14]** 12/11 33/8 39/12 40/20 44/1 51/17 62/20 112/14 114/4 115/8 117/4 119/16 128/15 140/21

**given [12]** 26/6 31/7 33/12 34/15 38/21 69/14 70/7 70/8 70/15 84/7 115/7 142/4

**gives [3]** 88/5 127/13 128/25

**giving [1]** 136/16

**go [32]** 9/10 21/19 21/20 21/20 23/23 27/12 27/19 33/2 33/3 34/23 36/9 36/21 41/3 43/16 49/13 50/14 51/3 54/18 56/4 56/24 63/4 75/20 83/13 89/20 96/15 104/2 104/4 104/4 113/2 131/12 134/14 137/11

**God [1]** 107/11

**goes [20]** 5/11 9/25 26/25 29/3 33/25 49/11 56/6 56/16 57/21 59/4 71/18 77/2 82/15

98/11 97/21 101/1 104/19 105/8 106/24 129/5

**going [65]** 4/18 4/22 4/23 5/4 5/7 7/13 7/14 12/1 12/2 13/17 14/22 17/21 17/21 19/7 21/1 21/9 22/13 23/7 23/12 24/3 24/25 25/1 26/11 28/5 28/9 29/1 29/6 29/21 30/3 30/6 33/1 33/10 39/3 39/12 41/15 44/1 46/9 48/15 50/15 54/17 54/17 54/19 54/20 56/24 59/15 70/12 78/19 81/13 83/20 83/22 99/12 100/23 101/23 102/9 104/22 111/20 112/13 112/14 113/4 120/16 134/13 136/18 138/10 138/14 140/1

**gone [1]** 25/4

**good [19]** 3/3 3/8 3/10 3/11 3/14 4/15 5/14 5/15 70/20 81/21 83/14 95/14 97/22 98/10 105/21 109/19 110/20 112/11 135/25

**good-faith [2]** 81/21 83/14

**Gorsuch [1]** 128/9

**got [8]** 14/20 28/11 28/23 46/8 48/9 88/7 106/5 107/10

**government [120]** 3/7 3/25 4/3 4/5 10/21 15/4 15/8 15/11 17/15 17/22 18/12 24/25 25/4 25/18 26/3 26/12 26/16 26/22 29/7 29/12 29/13 31/4 32/5 34/12 34/22

36/5 44/23 45/12 43/14 44/16 44/19 45/5 45/11 46/22 46/25 48/13 50/4 53/14 54/7 63/7 63/11 63/20 65/8 65/25 66/11 66/25 67/15 67/19 67/24 72/16 73/1 75/7 75/17 75/19 76/3 76/7 77/4 77/6 79/24 80/5 80/11 80/20 81/11 81/25 82/3 83/24 84/1 84/25 85/25 91/25 92/2 92/8 93/21 94/5 94/11 94/18 95/2 95/15 97/13 100/2 100/11 100/20 100/25 101/4 101/24 102/15 103/14 104/10 104/23 105/1 105/12 105/14 107/24 108/10 109/17 110/19 111/16 111/22 114/12 121/4 123/11 123/13 129/25 130/1 130/7 130/17 130/19 132/17 132/23 133/2 134/4 134/23 135/1 136/10 136/18 136/20 139/15 140/14 140/18 140/21

**government's [26]** 19/3 24/2 26/18 27/22 28/9 54/14 67/8 69/13 75/1 75/12 77/2 77/3 77/21 78/4 89/17 92/20 92/20 95/5 97/10 97/16 105/18 107/8 111/6 126/2 129/19 139/9

**governmental [2]** 58/9 58/12

**grab [2]** 56/22 100/12

**grand [8]** 6/1 94/24 100/9 113/13 114/2 117/1 119/14 130/7

**grant [1]** 9/22

**granted [5]** 15/25 116/19 117/8 139/1 139/9

**granting [3]** 16/2 105/19 126/2

**granular [1]** 82/23

**grave [1]** 22/4

**great [4]** 43/24 43/25 56/6 115/8

**grew [1]** 24/13

**ground [3]** 70/10 127/1 138/4

**grounds [4]** 30/22 32/12 44/21 96/24

**group [4]** 20/17 20/19 20/21 21/8

**GSA [1]** 39/22

**guarantee [1]** 33/15

**guess [9]** 6/13 33/2 33/20 73/20 94/10 97/24 107/23 107/24 141/11

**guessing [1]** 75/16

**GULLAND [1]** 1/13

**gun [1]** 54/16

**Gutierrez [2]** 7/3 114/25

**guy [2]** 50/20 107/16

**H**

**had [44]** 6/20 9/4 13/21 17/2 17/8 18/14 19/4 25/4 28/16 37/22 53/18 61/17 62/15 68/4 71/18 72/12 73/11 73/22 79/3 79/3 83/9 86/14 87/4 87/5 89/18 90/5 93/3 93/6 93/7 97/13 97/19 98/7

103/11 103/25 111/3 119/16 122/1 122/8 124/2 132/17 132/24 138/24 139/10 142/4

**hadn't [1]** 88/18

**half [2]** 135/18 135/23

**handed [1]** 12/7

**handing [2]** 18/13 19/13

**handle [2]** 29/25 131/23

**hands [1]** 40/5

**happen [2]** 37/23 135/5

**happened [9]** 6/10 25/15 28/2 28/4 30/7 72/10 75/24 140/6 142/5

**happens [1]** 26/10

**happy [3]** 5/12 134/5 135/1

**hard [3]** 13/14 14/8 97/13

**hardly [1]** 127/18

**harm [4]** 20/25 21/9 21/10 26/11

**has [137]** 3/22 3/25 5/18 6/7 10/15 10/21 12/23 14/4 15/8 16/7 16/20 16/23 17/2 17/6 18/23 20/17 22/25 26/23 28/23 31/7 31/21 32/11 32/21 33/5 33/12 34/9 36/8 38/25 39/8 39/13 40/18 40/21 41/5 42/22 43/7 44/6 44/7 44/8 44/13 45/11 46/19 46/25 47/6 50/10 50/22 51/1 51/12 51/22 53/3 53/14 56/8 56/9 56/12 57/22 58/6 59/1 60/21 61/4 61/11 61/19 62/8 62/21 63/6 63/7 63/14 66/24 68/18 69/10 71/6 71/14

# H

**has... [67]** 72/4 72/8 72/21 72/24 75/15 77/5 77/11 77/20 79/11 80/7 81/2 81/11 82/3 84/13 84/15 84/16 84/19 85/7 85/12 85/13 85/16 85/19 86/3 86/23 88/12 88/19 89/18 89/24 91/5 91/8 91/15 94/8 95/19 97/6 98/17 98/25 98/25 99/16 99/25 100/12 104/16 105/4 105/24 107/7 107/16 108/10 109/1 110/19 111/20 113/25 115/21 117/18 118/3 118/11 119/23 120/7 121/11 122/25 123/24 126/10 127/4 128/9 130/5 130/8 131/6 139/20 139/23
**hasn't [12]** 46/25 73/4 76/12 77/23 97/7 98/2 98/2 98/21 98/22 99/18 101/25 132/17
**have [225]**
**haven't [4]** 72/1 92/16 96/19 98/7
**having [11]** 6/14 8/16 14/7 14/21 25/6 29/19 64/2 73/24 86/21 89/19 95/10
**he [172]**
**he'll [1]** 33/20
**he's [21]** 11/25 30/2 61/16 66/22 73/8 73/19 74/5 74/11 76/11 76/14 76/16 76/17 77/1 81/4 88/17 94/19 99/21 102/9 102/14 104/8 104/9
**head [1]** 74/22

**heading [2]** 56/21 127/22
**heads [1]** 140/21
**hear [21]** 3/21 4/3 5/12 26/16 28/24 29/25 54/20 58/20 60/7 62/23 62/24 67/14 67/18 67/23 69/19 100/1 105/12 131/15 133/18 136/1 140/18
**heard [3]** 27/1 72/1 73/8
**hearing [5]** 1/8 4/14 67/22 118/17 141/12
**hearings [2]** 18/18 25/21
**heavily [1]** 22/7
**held [8]** 12/1 15/8 82/19 103/1 105/24 129/13 130/22 140/3
**hell [1]** 120/16
**helpful [2]** 21/24 40/23
**her [3]** 19/14 42/25 91/9
**here [92]** 3/16 3/17 3/20 6/10 9/4 9/12 13/25 14/10 14/13 14/16 15/12 16/20 18/9 24/6 25/20 28/2 28/4 29/4 29/8 30/7 30/15 31/12 33/17 34/8 35/9 35/18 37/15 41/25 43/8 49/6 49/7 58/15 62/21 63/18 64/9 66/8 68/25 69/13 71/4 71/24 75/24 76/10 77/21 79/21 81/14 82/22 84/18 85/1 87/2 87/22 88/2 88/6 90/22 91/14 92/2 92/16 93/11 93/18 94/21 95/5 95/17 97/10 97/19 97/25 98/1 98/18 99/18 101/14 103/25 106/24 109/1

**heading [2]** 109/11 109/12
**here's [6]** 23/20 33/3 38/24 59/18 104/18 106/13
**herman [4]** 2/1 2/4 143/3 143/10
**Hey [1]** 81/17
**high [1]** 46/19
**highest [1]** 79/8
**highest-ranking [1]** 79/8
**highly [2]** 21/23 132/14
**him [30]** 11/24 19/5 26/7 40/3 42/13 47/6 50/7 50/8 59/15 69/14 70/15 73/24 92/12 103/13 104/17 105/10 108/3 118/7 118/9 118/23 120/7 126/14 127/2 127/2 127/7 129/21 130/9 136/8 136/9 136/10
**himself [1]** 77/25
**hint [1]** 26/4
**his [76]** 11/23 13/9 18/14 19/14 24/12 25/5 25/8 27/24 28/7 28/14 28/15 28/22 29/3 29/18 30/3 39/16 42/13 42/15 42/25 47/12 49/24 51/7 57/2 57/11 58/2 58/14 60/1 60/6 69/4 70/8 71/19 73/1 74/12 74/13 75/12 76/24 76/25 77/1 77/7 79/1 80/4 80/7 82/14

**heading [2]** 89/11 92/3 93/4 93/18 93/18 94/11 94/18 96/1 96/1 96/3 96/8 96/9 97/22 97/23 97/23 103/10 105/22 106/15 107/1 107/17 108/2 108/16 108/17 114/22 120/2 126/10 126/19 127/1 129/14 129/19 130/24 132/21 136/20
**history [4]** 34/7 55/15 57/8 104/11
**hit [1]** 107/11
**hits [1]** 53/25
**hoc [1]** 27/17
**hold [2]** 11/1 132/4
**holding [9]** 16/21 65/6 65/7 73/10 74/11 76/20 110/12 129/8 139/3
**holdings [2]** 60/12 60/12
**Honor [71]** 3/3 3/8 3/11 4/20 4/23 5/3 5/13 5/14 24/1 24/13 27/15 30/11 30/13 30/15 30/17 30/18 35/20 35/23 36/14 36/16 36/18 37/3 37/9 37/16 38/11 38/16 40/25 41/21 42/1 44/25 45/21 45/25 46/7 47/2 47/23 49/1 50/6 52/8 53/8 55/3 56/5 62/12 64/21 65/2 65/11 66/18 67/20 67/23 68/1 69/23 70/20 73/16 88/23 89/5 98/8 100/5 101/20 103/22 103/22 106/22 108/6 108/9 109/24 110/24 112/2 134/4 136/22 138/12 140/15 140/24 142/20

**HONORABLE [2]** 1/9 112/16
**hope [1]** 33/1
**horses [1]** 24/18
**host [1]** 76/6
**hot [1]** 23/6
**Hotel [2]** 79/4 120/11
**house [92]** 5/19 6/4 7/12 7/16 7/16 7/19 7/20 7/22 7/23 7/24 8/11 8/12 8/16 8/19 8/21 8/25 9/2 11/7 11/11 11/18 12/23 13/9 13/12 14/2 14/4 14/14 14/22 16/2 17/8 17/24 17/25 18/11 18/17 18/19 19/20 20/20 21/6 21/12 21/14 21/25 22/2 28/17 50/25 64/12 64/17 68/22 69/6 69/11 69/25 70/6 79/9 80/25 83/19 84/2 84/8 84/10 84/13 84/14 84/15 85/17 86/5 86/8 87/12 87/15 87/24 88/5 90/13 90/14 90/17 90/22 91/6 91/15 95/21 101/10 101/16 113/19 114/4 114/5 114/8 115/4 115/9 115/10 115/14 116/2 116/3 117/3 117/5 117/22 118/1 118/17 119/18 121/8
**House's [4]** 12/5 12/12 90/3 90/10
**how [34]** 3/20 6/21 12/6 18/22 24/17 24/19 25/15 27/7 29/14 30/14 36/19 36/21 47/14 48/11 54/10 58/20 69/17 69/20 70/1 70/3 70/5 74/14 75/16 85/8 91/15 93/11 97/17 98/13 119/9 129/24

**H**

**how... [4]** 130/1
135/9 135/16
141/4
**however [4]**
13/16 55/10
105/19 126/12
**huh [4]** 30/8 97/3
109/7 141/22
**hundred [1]** 86/8
**HUTCHER [1]**
1/23
**hypothetical [3]**
7/20 74/20 86/13
**hypothetically [4]**
53/12 66/6 86/7
134/22

**I**

**I'd [11]** 4/10 11/12
16/25 23/14 23/20
37/5 46/8 67/14
67/18 100/1
112/24
**I'll [17]** 22/20
26/16 33/18 34/2
41/2 43/20 46/5
56/24 62/10 62/11
62/23 101/7
101/21 113/4
124/4 125/12
126/20
**I'm [61]** 3/12 4/8
4/20 4/23 11/10
16/9 18/24 22/3
22/13 27/2 29/9
30/13 30/15 35/25
35/25 37/20 37/23
37/25 39/3 39/12
40/10 40/11 41/4
41/15 45/24 45/25
46/1 46/6 48/25
50/3 50/15 50/25
56/20 58/18 62/2
69/7 69/19 70/12
73/8 74/16 76/11
90/25 99/12
101/20 104/22
106/5 107/24
108/5 109/5
112/11 112/13
112/13 113/4
119/12 131/9
132/25 133/4

136/24 137/3
139/19 139/22
**I've [15]** 4/8 15/8
17/23 48/22 73/8
82/19 99/24
115/20 116/24
119/11 128/5
128/18 133/10
138/3 138/8
**ice [1]** 21/17
**idea [6]** 4/15 40/7
41/16 49/24 58/16
107/24
**identified [7]** 73/5
76/12 94/9 95/10
120/11 120/24
131/6
**identify [1]** 95/8
**identifying [2]**
72/25 95/5
**ignore [2]** 126/25
127/5
**ignored [1]** 48/19
**ignores [1]** 31/8
**Ill [1]** 12/11
**ill [1]** 104/5
**ill-advisedly [1]**
104/5
**Illinois [1]** 24/13
**imagine [10]** 7/19
53/12 53/13 66/6
74/1 74/2 74/21
78/1 86/7 140/13
**immaterial [1]**
89/12
**immeasurably [2]**
42/14 59/25
**immediately [1]**
68/13
**immune [1]** 74/3
**immunities [1]**
124/20
**immunity [15]**
36/1 36/2 36/4
41/24 42/25 43/2
43/7 43/8 73/25
74/2 79/8 79/11
79/19 80/25 125/3
**impair [1]** 59/25
**impairing [1]**
42/14
**impede [1]**
118/25
**imperative [1]**

129/2
**implementation
[1]** 55/16
**implementing [1]**
115/10
**implicates [1]**
59/6
**implication [2]**
16/6 16/21
**implicitly [3]** 8/3
114/7 117/7
**implied [1]** 52/21
**importance [4]**
49/19 49/20 64/2
140/5
**important [10]**
10/20 48/25 58/24
61/10 92/7 102/21
105/6 105/7
106/25 120/8
**importantly [1]**
107/19
**imported [1]**
14/11
**impose [1]** 11/21
**imposing [1]**
121/2
**improper [1]**
96/11
**improperly [1]**
94/6
**impropriety [1]**
57/23
**inadmissible [2]**
98/16 111/20
**inadvertence [1]**
89/13
**inapplicable [1]**
72/9
**inappropriate [1]**
58/3 58/8
**inarguably [1]**
48/15
**inclined [1]**
138/18
**include [1]** 53/5
**included [2]** 49/5
97/12
**includes [1]**
129/8
**including [2]** 31/5
115/21
**inconsistent [2]**
77/2 91/14

**incorrect [3]** 73/4
111/16 119/8
**incredibly [2]**
21/24 46/19
**indeed [2]** 114/16
128/12
**independence [1]**
38/7
**indicate [1]** 125/2
**indicated [6]**
100/12 112/22
125/4 133/11
139/20 139/23
**indicating [2]**
34/24 58/2
**indication [1]**
127/10
**indict [1]** 100/9
**indicted [1]** 70/6
**indictment [53]**
3/23 14/20 14/25
15/1 15/1 15/5
15/5 23/25 24/5
25/10 26/21 46/18
53/14 63/9 69/21
70/3 70/11 71/7
100/7 113/3 113/7
113/9 113/12
114/1 114/6
114/11 114/14
114/21 116/9
116/16 116/18
116/23 117/1
117/6 118/13
118/20 119/8
119/12 119/13
119/23 120/5
120/21 120/21
122/20 123/7
124/6 125/22
129/18 130/12
133/9 138/4
138/25 139/1
**Indies [1]** 80/14
**individual [1]**
90/15
**individuals [1]**
102/23
**inescapable [1]**
126/5
**infamous [1]**
127/3
**infer [1]** 66/12
**inference [1]**

**influence [1]**
116/4
**inform [1]** 119/10
**information [24]**
16/23 19/2 25/5
43/20 47/22 68/13
82/23 92/21 93/21
95/8 95/9 100/25
103/10 120/8
120/23 121/1
121/21 121/22
122/2 122/13
125/16 125/17
129/20 132/14
**informative [1]**
91/10
**informed [2]**
28/22 120/9
**infringe [2]** 47/9
56/3
**inhibit [1]** 57/16
**initial [2]** 72/21
99/21
**initially [2]** 99/1
99/17
**inquiry [9]** 85/6
85/13 86/4 86/6
104/11 114/5
117/5 119/17
120/20
**inside [2]** 56/2
103/3
**instance [6]** 7/23
10/15 11/25 18/17
24/18 101/2
**instances [2]**
95/19 99/19
**instead [2]** 6/2
95/6 124/10
**institution [5]**
20/25 21/3 21/10
38/6 64/8
**institutions [1]**
121/4
**instructed [5]**
29/10 30/15
124/18 125/6
133/15
**instruction [10]**
30/1 82/9 82/25
83/6 89/6 96/16
96/19 96/21 132/6
134/22

**I**

**instructions [35]**
29/25 81/10 82/24
121/17 130/21
131/1 131/5
131/16 131/17
131/25 132/2
132/11 133/6
133/16 133/23
134/1 134/6
134/18 135/2
135/6 135/9
135/12 135/14
137/3 137/5
137/16 137/19
138/6 138/8 139/4
139/6 139/18
141/10 141/21
142/18
**instructs [1]**
38/14
**insufficient [2]**
70/4 128/25
**integral [1]** 42/9
**intelligence [6]**
28/17 28/17 33/20
64/1 95/21 95/22
**intend [2]** 22/24
92/8
**intended [6]** 41/6
55/11 55/17 57/9
80/10 80/10
**intending [2]**
45/25 81/17
**intends [1]**
132/18
**intent [9]** 28/5
28/11 29/17 96/1
97/4 98/18 105/22
105/24 106/4
**intention [1]**
131/23
**intentional [7]**
29/9 29/14 82/14
83/1 89/13 96/9
106/2
**intentionally [1]**
132/24
**interchangeably
[1]** 43/4
**interests [1]**
102/25
**interfering [1]**
102/19

**intermediary [1]**
25/22
**interpret [5]**
10/25 60/14 60/15
77/7 85/11
**interpretation [6]**
12/12 18/6 115/9
115/24 116/3
126/23
**interpretations [3]**
56/10 56/22 84/17
**interpreted [2]**
91/16 126/8
**interpreting [1]**
13/4
**interrelated [1]**
4/1
**interviews [1]**
95/1
**intimidation [1]**
108/4
**introduce [2]** 3/6
130/23
**introducing [1]**
58/1
**introduction [2]**
34/8 131/9
**intruding [1]**
116/4
**invade [1]** 119/6
**invalid [6]** 16/8
17/14 48/19 62/17
116/8 118/20
**invalidate [1]**
77/19
**invalidates [1]**
113/18
**invalidly [2]** 8/17
114/20
**Investigating [1]**
120/25
**investigation [4]**
28/18 92/4 92/5
95/20
**investigations [1]**
119/6
**investigative [1]**
24/3
**invite [1]** 128/10
**invocation [16]**
36/7 37/2 40/9
51/19 59/8 62/7
64/4 66/21 67/2
73/13 106/7 106/9

125/11 126/11
127/14 129/10
**invoke [5]** 39/22
40/2 40/3 47/12
124/19
**invoked [28]**
32/20 35/8 35/11
35/18 35/24 36/5
36/13 36/22 37/11
37/14 37/22 39/8
40/4 40/18 44/4
44/12 51/22 52/16
53/3 53/18 64/9
67/6 102/12 103/6
104/9 123/19
124/16 125/19
**invoking [4]**
42/25 62/2 68/11
121/25
**involve [3]** 58/9
102/23 124/10
**involved [3]** 26/5
58/4 92/4
**irrelevant [4]** 82/9
86/12 127/13
134/24
**is [486]**
**isn't [17]** 9/3
11/17 14/3 14/11
14/14 27/5 35/17
37/13 48/7 48/8
75/6 79/22 81/7
81/16 81/24 86/22
92/18
**issuance [3]** 6/4
88/15 89/22
**issue [39]** 8/11
9/17 9/24 10/10
12/2 13/9 13/19
14/18 15/19 27/16
29/6 29/21 30/24
30/25 33/18 47/24
48/16 52/15 57/22
58/22 60/10 62/10
63/5 63/6 70/23
71/6 76/22 86/10
87/24 87/25 88/1
88/6 89/25 94/22
100/22 101/25
102/25 130/1
132/9
**issued [20]** 9/5
9/12 9/16 15/2
16/12 16/21 17/24

25/2 48/2 69/24
85/1 85/7 85/12
87/5 113/15
116/14 116/18
117/7 117/25
119/9
**issues [34]** 4/4
4/15 4/24 5/4 5/5
5/6 22/18 22/23
23/24 28/20 31/17
46/10 47/10 51/18
53/16 62/24 78/7
86/12 89/17 90/6
91/19 91/21
101/10 111/18
112/14 112/25
115/23 121/15
129/24 130/2
133/21 133/23
134/20 142/6
**issuing [1]** 88/13
**it [288]**
**it's [116]** 5/11 6/2
6/16 6/23 7/10
9/19 9/21 9/23
10/8 10/12 10/20
10/20 10/22 11/9
11/12 12/7 13/16
14/19 14/20 15/20
15/23 16/4 16/5
17/13 17/20 18/8
18/19 18/19 20/5
20/23 21/9 21/14
21/16 23/20 24/19
26/1 26/14 27/6
27/15 28/24 29/1
29/2 29/5 29/20
30/16 30/17 31/12
32/14 32/18 33/1
33/8 33/22 36/3
36/19 38/12 38/17
46/9 47/11 48/24
48/24 49/9 56/7
58/24 59/3 59/5
61/8 61/15 61/18
61/22 62/25 63/1
64/8 64/21 65/7
66/7 66/25 67/1
68/5 70/13 71/20
71/22 71/25 73/19
74/1 75/9 76/22
77/3 81/1 82/15
83/13 86/25 87/8
87/17 88/2 88/2

89/7 92/15 93/10
93/12 95/25 97/13
105/3 105/13
106/15 107/11
107/21 108/4
108/4 108/24
110/16 110/20
121/12 134/14
137/6 137/23
140/17
**its [36]** 3/25 6/5
7/21 11/18 12/12
12/19 14/2 15/2
18/11 21/21 34/12
38/21 66/7 70/4
72/2 75/17 76/17
80/18 94/12 95/24
111/24 114/6
115/24 116/2
116/11 116/17
117/6 117/11
119/4 120/22
127/11 127/23
129/9 130/2
139/23 140/18
**itself [9]** 14/20
19/20 21/6 57/22
113/12 115/10
118/16 120/22
122/3

**J**

**J.P [2]** 1/12 3/9
**Jackson [1]**
49/23
**jail [1]** 58/14
**January [9]** 11/4
16/7 79/4 91/4
120/10 120/11
120/14 120/16
120/25
**jeopardy [1]**
53/22
**job [1]** 21/22
**Joe [5]** 39/19 44/1
44/3 44/4 57/20
**Johnson [1]** 35/4
**joined [1]** 30/24
**judge [28]** 1/9 9/7
12/11 31/11 32/3
32/8 33/3 36/11
38/24 39/19 41/15
45/13 53/24 54/13
58/11 58/15 60/25

**J**

**judge... [11]**
62/23 66/14 99/12
101/22 108/5
114/16 114/18
114/22 115/8
137/1 137/2
**judgment [2]** 6/1
90/10
**judicial [1]** 116/3
**July [6]** 131/23
132/1 141/11
141/21 142/3
142/18
**jumps [1]** 71/5
**June [7]** 1/5
137/2 139/14
139/17 142/9
142/19 143/10
**jurisdiction [1]**
62/9
**jurisprudence [1]**
72/20
**jury [84]** 9/3 9/8
9/10 9/12 9/18
9/23 28/13 28/23
29/10 29/24 30/4
30/6 30/14 36/19
53/7 53/9 53/10
58/20 64/15 72/22
72/22 81/5 81/10
81/12 81/13 82/9
82/24 82/25 85/23
85/24 86/1 86/3
89/5 93/9 94/24
96/5 96/15 96/16
96/19 96/20 100/9
103/21 104/6
108/19 111/21
111/21 113/10
113/13 114/2
117/2 119/15
125/12 130/8
130/20 131/1
131/4 131/16
131/25 132/2
132/6 132/11
133/6 133/14
133/16 133/23
134/1 134/6
134/14 134/18
134/22 135/2
135/6 135/8
135/12 137/3
**judge... [11]** ... (continued)
139/4 139/5
139/17 141/9
141/21 142/18
**jury's [1]** 54/20
**just [79]** 13/4
14/17 14/17 15/19
19/25 20/3 20/13
22/3 30/1 31/8
32/8 32/22 32/23
36/11 37/24 38/20
40/20 43/16 43/22
44/5 45/17 49/9
51/3 53/24 53/24
54/10 54/24 56/18
58/18 59/10 62/24
63/19 66/4 66/25
67/1 67/8 68/2
70/17 74/3 76/16
83/14 84/9 85/21
88/15 88/25 89/16
92/6 96/12 96/15
96/23 98/4 98/17
99/13 99/21
100/12 101/21
102/20 105/3
107/11 107/25
108/9 109/5
110/11 110/18
110/20 111/3
111/22 111/24
125/1 135/12
136/12 139/10
139/22 140/21
141/3 141/7 142/3
142/3 142/18
**justice [30]** 9/6
12/7 30/18 31/22
36/8 38/18 39/7
39/15 39/24 41/5
43/6 48/18 48/20
52/23 54/11 56/10
56/12 56/21 58/6
58/25 59/14 64/11
64/14 102/18
104/21 106/14
106/23 118/3
122/23 128/9
**Justice Scalia's
[1]** 9/6
**Justice's [2]**
102/11 131/10
**justification [2]**
83/11 83/11

**justifying [1]** 86/7
**Justin [5]** 35/25
36/24 37/10 37/11
38/1

**K**

**Kavanaugh [1]**
39/25
**keep [3]** 24/20
44/2 56/24
**Keepers [1]** 79/2
**Kelly [4]** 114/16
114/18 114/22
115/8
**key [12]** 5/16 6/15
13/6 28/4 29/5
29/6 29/6 29/21
30/3 64/9 113/9
128/24
**kind [1]** 7/8
**kinds [2]** 88/18
123/11
**knew [8]** 26/25
82/4 82/5 92/22
92/25 93/6 93/7
108/3
**know [71]** 4/7
4/24 6/18 7/10
8/22 9/6 10/18
10/21 15/20 16/21
20/7 23/18 24/19
26/6 31/11 31/18
31/18 33/7 36/20
37/5 37/20 37/24
39/21 40/12 45/2
51/11 51/16 52/8
53/12 54/4 55/6
55/7 60/12 62/9
64/20 64/21 67/12
75/1 81/11 81/12
81/13 82/11 82/15
83/1 87/17 87/19
95/17 97/12
101/12 101/12
102/9 102/14
103/5 103/14
105/9 107/10
107/14 110/5
111/2 119/23
123/13 131/19
132/17 132/23
133/13 133/14
134/24 139/23
139/25 140/17

**knowing [2]**
29/20 83/1
**knowingly [1]**
132/24
**knowledge [6]**
66/10 77/12 81/8
83/3 93/16 111/9
**knows [7]** 18/22
33/7 33/19 49/6
65/14 105/4
130/13
**Kolender [1]**
33/16

**L**

**lack [2]** 5/23 6/19
**lacked [1]** 9/15
**lacks [1]** 121/6
**Lamagno [1]**
114/21
**landmark [2]**
31/15 33/24
**language [12]**
11/9 13/5 18/6
48/18 48/20 52/3
55/5 104/24 105/3
113/12 128/14
128/21
**last [5]** 74/21
82/16 93/23 101/7
112/12
**lasting [1]** 84/9
**late [2]** 133/17
142/4
**later [5]** 34/25
35/24 57/21
124/25 130/3
**latter [1]** 124/4
**law [31]** 1/17 22/1
31/4 33/7 33/10
33/13 33/21 34/1
34/3 34/3 34/6
36/6 38/13 39/7
55/22 75/14 77/7
83/13 93/18
109/25 110/15
114/19 116/7
117/13 118/19
118/25 120/3
122/15 124/9
129/15 139/2
**lawful [3]** 72/4
94/24 126/16

**lawfully [5]** 35/10
42/24 72/18
113/15 115/6
**laws [3]** 119/5
121/2 128/10
**Lawson [1]** 33/16
**lawyer [7]** 24/12
36/22 62/9 83/13
101/24 104/16
125/4
**leader [4]** 20/6
21/25 113/22
113/24
**leads [1]** 51/9
**learned [2]** 24/25
25/3
**least [43]** 4/19 8/3
9/8 10/4 14/3
14/12 15/1 17/16
19/5 27/5 29/14
32/21 37/21 40/8
49/13 52/9 52/21
57/11 58/2 58/25
60/21 62/3 67/7
76/2 81/16 84/1
91/4 92/7 93/20
93/21 96/16 97/16
100/13 112/23
113/16 114/12
116/24 123/14
123/21 131/11
134/1 135/8
138/13
**leave [2]** 134/6
140/10
**led [2]** 21/5 120/9
**leeway [1]** 7/11
**left [3]** 33/20
89/16 130/3
**legal [16]** 7/4
20/17 21/8 23/24
34/25 38/19 73/17
76/21 83/11 94/23
95/3 97/22 108/12
108/18 115/1
129/9
**legally [1]** 127/13
**lege [1]** 34/2
**legislation [2]**
119/10 121/1
**legislative [9]**
55/15 57/8 116/5
117/15 119/4
119/21 119/24

# L

**legislative... [2]** 120/2 140/7

**legitimate [3]** 16/16 19/7 138/1

**length [2]** 49/11 119/22

**Lesley [1]** 112/20

**less [5]** 52/1 100/4 112/4 114/10 128/21

**lesson [1]** 34/7

**lessons [1]** 124/7

**let [22]** 9/13 19/25 21/20 21/20 21/21 22/12 30/19 31/20 35/14 38/24 40/20 43/16 46/12 62/20 65/16 84/24 90/3 92/6 99/13 100/12 136/1 140/21

**let's [11]** 27/19 39/25 54/2 62/8 74/1 74/2 78/1 104/22 124/12 135/12 142/15

**letter [13]** 35/24 37/1 37/3 38/1 49/2 61/2 61/6 62/19 68/21 73/3 107/16 120/6 125/2

**letters [6]** 35/21 36/17 124/17 125/6 125/9 125/10

**level [3]** 8/12 29/20 129/2

**Levin [2]** 31/9 103/24

**liability [2]** 33/11 128/17

**liberty [1]** 11/23

**Licavoli [14]** 81/22 82/18 83/14 96/6 106/21 110/23 126/6 126/8 126/22 127/16 129/8 129/13 130/22 132/6

**life [1]** 13/13

**light [11]** 97/14 110/13 126/5

126/12 128/15 129/1 133/5 133/20 133/21 133/23 139/3

**like [60]** 3/20 3/20 4/10 4/17 6/16 7/3 8/22 12/11 23/14 23/20 25/6 26/10 30/22 35/3 37/5 39/16 40/6 40/23 46/8 47/3 51/23 62/6 66/11 66/12 67/14 67/18 70/9 70/23 74/16 81/7 83/3 86/19 87/2 87/16 87/19 88/21 89/19 90/8 97/12 98/8 100/1 100/4 103/9 106/20 107/9 112/24 123/2 129/4 130/21 133/18 133/22 134/7 134/14 134/20 135/5 135/7 137/2 138/12 141/25 142/5

**likely [4]** 23/7 29/1 91/10 135/6

**Limine [19]** 22/24 23/4 23/22 23/25 27/20 81/16 126/2 127/9 130/14 131/22 131/24 133/6 133/9 133/25 135/3 137/12 141/4 141/10 142/11

**limit [3]** 4/13 4/16 101/21

**limited [10]** 43/17 44/5 49/24 57/11 76/2 76/7 80/23 113/12 116/23 119/12

**limiting [1]** 80/4

**Lincoln's [1]** 19/20

**line [2]** 129/1 133/8

**lines [2]** 48/14 76/17

**list [1]** 101/3

**listing [1]** 122/2

**litigated [1]** 39/17

**litigating [1]** 21/12

**litigation [2]** 20/20 134/2

**little [8]** 10/8 24/14 30/14 33/17 43/3 83/2 85/3 97/13

**Liveright [3]** 87/3 87/8 87/16

**Liz [2]** 107/20 117/21

**LLP [1]** 1/23

**local [1]** 61/25

**lodge [1]** 135/14

**log [6]** 100/9 100/15 121/7 121/10 122/9 122/12

**logical [2]** 43/16 66/15

**logically [1]** 51/9

**long [9]** 4/14 33/6 38/22 41/5 57/4 82/15 89/12 129/1 135/16

**long-standing [3]** 33/6 38/22 57/4

**longer [3]** 64/7 77/4 124/2

**longstanding [1]** 35/7

**look [20]** 14/8 14/25 15/6 15/15 15/16 53/20 54/2 69/7 72/23 78/13 81/17 85/8 86/4 90/12 90/20 91/12 92/21 102/8 103/24 130/21

**looked [2]** 13/12 19/10

**looks [1]** 40/16

**loose [1]** 120/17

**lorraine [4]** 2/1 2/4 143/3 143/10

**lot [2]** 7/10 46/8

**low [1]** 29/8

# M

**M-I-E-R-S [1]** 43/6

**made [15]** 6/21 11/1 28/10 28/12

**litigated [1]** 68/24 90/14 104/9 107/15 126/4 130/5 130/8 131/13

**Madison [2]** 13/18 34/4

**magic [1]** 142/2

**mainly [1]** 43/8

**majority [4]** 7/24 19/19 21/3 21/18

**make [34]** 4/16 8/13 10/25 13/13 13/14 18/22 21/18 24/15 27/7 42/7 42/12 57/17 66/15 71/6 74/4 74/19 81/3 98/25 99/13 99/16 101/7 103/13 113/8 116/2 118/22 128/21 134/1 136/11 138/13 138/17 140/8 140/10 141/8 141/15

**makes [8]** 61/2 80/21 86/16 87/8 104/14 127/9 128/25 133/3

**making [2]** 72/3 90/17

**mandate [1]** 116/12

**mandated [3]** 52/20 58/17 59/3

**mandates [1]** 118/8

**mandatory [1]** 114/23

**many [6]** 10/11 40/22 40/25 93/11 131/7 139/21

**Marbury [1]** 13/17

**Mark [2]** 115/17 118/4

**Marshank [2]** 25/13 27/5

**Martinez [2]** 7/3 114/25

**mask [1]** 5/1

**match [1]** 21/17

**matches [1]** 74/14

**materia [1]** 60/9

**material [5]** 63/18 103/8 122/4 124/22 124/24

**materials [7]** 18/8 18/9 18/10 18/13 121/18 139/16 142/10

**matter [30]** 5/18 28/24 36/6 39/7 55/22 72/21 82/15 92/10 105/9 105/14 105/15 106/3 106/7 106/10 107/9 109/18 109/25 114/5 114/19 116/7 117/4 117/13 118/19 119/17 120/3 122/9 122/15 124/9 139/2 143/6

**matters [5]** 20/10 75/25 107/9 120/19 121/22

**MATTHEW [2]** 1/19 3/12

**maxim [1]** 34/1

**may [30]** 5/1 6/25 8/21 8/22 30/11 36/1 37/6 41/4 43/5 47/20 58/2 61/24 64/11 64/13 64/15 71/21 106/22 113/6 114/24 115/2 115/13 121/24 122/1 124/20 127/2 132/5 132/22 133/20 134/10 134/24

**maybe [11]** 6/22 14/6 29/10 60/20 77/11 83/4 107/19 109/19 110/13 110/14 137/2

**Mazars [1]** 140/7

**MC [1]** 1/21

**McGahn [3]** 54/10 54/12 59/10

**me [71]** 9/13 12/11 14/14 17/17 19/25 21/5 22/7 22/12 23/3 30/16

**M**

me... [61] 30/19
31/20 32/23 35/14
37/9 37/22 38/24
40/20 43/16 44/2
44/17 45/14 46/12
48/8 55/2 56/18
60/10 62/7 62/7
62/20 63/18 65/16
65/17 68/10 69/4
71/22 72/4 72/5
72/8 82/13 82/20
83/13 84/24 90/3
90/9 92/6 96/13
96/18 98/7 99/13
100/12 107/24
108/24 110/4
123/5 127/4
130/14 131/17
132/16 133/1
133/12 134/10
134/16 136/1
136/18 137/9
138/6 138/24
142/3 142/8 142/9
**Meadows [3]** 8/2
115/17 118/4
**mean [48]** 6/25
7/5 10/6 11/19
12/9 13/6 14/15
15/23 19/10 21/12
23/1 26/16 28/2
29/23 30/1 30/2
32/24 46/13 49/7
49/16 49/16 51/7
54/16 61/19 64/6
65/14 65/22 66/5
70/3 70/17 80/18
89/8 92/18 97/9
98/2 98/6 100/4
111/2 114/24
115/2 135/20
136/2 136/10
136/11 136/24
138/21 141/14
141/18
**meaning [4]** 89/6
96/25 115/20
117/15
**meaningful [1]**
121/1
**means [9]** 7/4
8/24 12/10 15/21
15/22 58/8 115/1

**meant [2]** 10/12
136/23
**meat [1]** 15/9
**meet [4]** 52/3
119/19 135/14
135/22
**meeting [2]** 79/3
135/8
**member [29]** 5/23
10/6 10/10 10/11
10/15 12/3 13/8
15/18 15/19 15/21
15/21 16/3 32/15
32/15 68/16 68/20
68/23 88/12 88/12
89/20 90/15
107/19 107/21
116/13 116/21
117/12 117/15
117/15 117/20
**members [46]** 6/7
6/9 6/11 6/12 6/15
6/21 6/22 7/8 7/18
7/24 8/7 9/1 9/25
9/25 10/22 10/23
15/12 17/3 20/3
20/6 20/17 20/18
20/18 20/22 20/23
21/8 21/18 79/3
83/25 84/5 85/17
86/9 86/10 86/21
87/23 87/24 87/25
88/4 89/19 90/5
113/21 113/25
114/10 115/5
115/9 120/12
**Memo [1]** 54/4
**memorialized [1]**
68/24
**mens [25]** 29/3
29/7 53/4 53/5
53/15 53/17 81/8
81/14 82/23 96/16
97/9 97/25 105/9
105/15 110/7
110/9 111/4 111/6
126/8 131/2
134/22 137/6
137/11 137/16
139/7
**mention [2]** 24/24
41/2
**mentioned [1]**

**mere [1]** 89/13
**merely [1]** 129/13
**merits [1]** 79/21
**met [2]** 20/21
77/23
**metal [2]** 80/15
80/19
**meticulous [1]**
12/19
**metro [1]** 82/16
**Miers [2]** 43/6
100/15
**might [21]** 6/13
13/13 13/14 30/15
34/15 42/17 46/21
60/20 65/4 75/17
80/18 82/21 84/8
97/25 111/4 124/7
125/15 131/5
131/18 135/25
141/8
**Miller [1]** 100/17
**mind [12]** 4/23
28/6 28/7 28/14
28/15 29/18 30/4
32/13 81/25 82/1
96/1 142/2
**mine [1]** 48/20
**minimum [2]**
122/21 125/12
**minority [42]** 5/23
7/14 7/15 10/5
10/10 10/10 10/12
10/15 10/19 10/20
10/23 12/3 15/18
15/19 15/22 15/22
16/3 16/4 19/19
19/23 20/3 20/4
20/5 20/6 20/8
20/18 20/23 21/25
21/25 84/13 88/12
88/12 89/20
113/22 113/24
116/13 116/21
117/12 117/14
117/16 117/17
117/21
**minute [2]** 112/4
140/11
**minutes [4]** 32/23
88/22 88/25 100/4
**misconduct [3]**
92/1 94/4 94/19

**misdemeanor [1]**
26/3
**misguided [1]**
118/22
**mislead [2]** 72/17
130/7
**misleading [2]**
34/24 80/11
**misrepresents [1]**
22/1
**mission [1]** 28/2
**misstates [1]**
22/1
**misuse [1]** 115/2
**modification [1]**
142/19
**modify [2]** 133/19
142/16
**modifying [1]**
133/24
**MOLLY [1]** 1/13
3/9
**Monday [1]**
135/24
**money [1]** 14/5
**Montesquieu [1]**
34/6
**Montgomery [1]**
1/18
**month [3]** 25/2
27/13 98/11
**more [28]** 10/9
15/7 29/1 29/10
33/16 34/7 35/2
40/22 41/1 46/8
55/10 61/15 67/8
77/12 82/23 83/2
98/17 99/9 107/19
119/19 121/2
123/12 124/8
126/24 127/15
134/15 134/23
141/3
**Moreover [3]**
55/20 55/21
120/15
**morning [9]** 3/3
3/8 3/10 3/11 3/14
5/14 5/15 70/20
112/21
**most [8]** 4/11
31/17 33/4 49/2
56/6 84/1 92/7
128/18

**motion [49]** 3/17
4/8 5/17 9/22
14/24 20/24 22/14
22/21 23/22 27/20
27/22 39/4 54/14
68/6 69/18 69/21
70/2 71/8 73/1
81/16 95/15 99/4
99/9 100/7 102/2
104/1 105/18
106/12 113/3
113/4 113/5
116/23 119/11
124/5 126/2 127/3
130/12 132/12
133/8 136/15
137/12 138/3
138/25 138/25
139/9 140/1
140/10 140/19
140/22
**motions [24]** 1/8
3/16 3/19 3/25 5/8
22/21 22/23 23/3
23/25 113/1
130/14 130/15
130/16 131/20
131/22 131/23
132/10 133/6
133/9 133/25
135/2 141/4
141/10 142/11
**mouth [1]** 65/15
**move [7]** 17/14
89/25 113/6
133/25 134/5
139/20 140/1
**Mr [9]** 40/3 41/10
44/4 93/1 122/5
126/22 128/14
129/13 136/7
**Mr. [188]**
**Mr. Bannon [104]**
3/13 3/22 6/14 8/2
11/23 17/15 18/13
19/1 24/12 24/24
25/3 26/24 27/11
38/14 39/2 40/6
41/11 47/4 47/20
50/7 51/23 53/15
54/21 58/21 60/20
60/23 61/1 61/14
62/5 68/12 68/13
69/3 71/18 73/7

**M**

**Mr. Bannon... [70]**
73/9 73/11 75/12
75/23 78/25 86/11
92/19 92/22 92/25
97/15 98/8 100/9
103/9 103/17
108/25 109/9
113/14 113/17
113/23 115/16
116/10 116/17
116/19 117/17
118/6 118/9
118/13 118/15
118/21 119/3
119/9 119/16
120/1 121/5 121/8
121/12 121/24
122/11 122/21
123/10 123/17
123/24 124/15
124/18 124/18
125/7 125/24
126/10 126/12
126/19 127/3
127/6 127/8
127/11 127/20
127/24 128/7
128/23 129/7
129/16 129/18
129/22 130/4
130/7 130/8
130/22 131/6
131/12 131/13
133/3

**Mr. Bannon's [37]**
3/17 3/21 4/4 23/9
23/22 27/20 28/5
28/15 29/15 35/5
40/4 46/20 51/12
62/9 63/8 78/4
81/7 104/7 104/19
114/9 117/13
117/14 118/2
119/1 119/7
122/16 123/20
125/1 125/21
128/2 128/12
129/25 130/12
132/8 132/12
132/21 137/11

**Mr. Corcoran [7]**
5/7 5/12 94/13
111/14 136/2

**Mr. Costello [17]**
3/24 25/22 28/8
37/9 62/19 67/25
70/19 91/19 92/2
93/16 94/13 94/16
95/1 129/19
132/13 132/20
137/20

**Mr. Costello's [6]**
24/4 25/1 92/9
93/13 104/12
107/25

**Mr. Engel [1]**
42/21

**Mr. Meadows [1]**
8/2

**Mr. Navarro [1]**
8/2

**Mr. Scavino [1]**
8/3

**Mr. Schoen [12]**
4/18 22/17 23/6
23/23 27/19 30/10
68/3 71/9 94/13
101/19 109/16
136/24

**Mr. Schoen's [1]**
77/10

**Ms [2]** 108/8
112/3

**Ms. [8]** 68/19
68/23 70/21 89/4
112/20 134/3
140/4 141/1

**Ms. Cheney [2]**
68/19 68/23

**Ms. Lesley [1]**
112/20

**Ms. Schiff [1]**
140/4

**Ms. Vaughn [4]**
70/21 89/4 134/3
141/1

**much [5]** 23/18
31/18 34/16
101/17 132/18

**Mueller [3]** 28/18
95/20 98/9

**multiple [1]**
120/19

**must [10]** 12/19
18/20 30/18 89/9
107/5 111/18

136/3 136/25
129/3

**my [48]** 11/17
12/17 17/12 22/13
30/20 31/9 31/16
32/13 45/23 48/22
50/15 51/6 54/21
56/20 56/22 61/18
63/23 63/25 66/10
67/7 67/22 68/8
71/23 72/4 72/9
83/12 91/3 98/18
106/15 109/3
109/24 112/14
122/18 123/21
125/10 126/6
126/12 127/15
129/5 129/23
130/2 131/6
131/23 132/18
136/16 137/8
139/3 141/17

**N**

**name [3]** 39/19
51/12 54/10

**narrow [1]** 65/12

**narrowly [2]** 54/8
103/4

**natural [1]** 84/2

**nature [1]** 13/13

**Navarro [3]** 8/2
115/18 118/5

**necessarily [1]**
89/9

**necessary [3]**
100/3 119/19
130/5

**need [20]** 4/9
34/7 36/4 41/19
44/1 67/12 73/6
84/18 93/8 130/15
134/16 135/16
137/25 138/5
138/6 138/17
140/8 140/18
141/20 141/25

**needed [4]** 26/24
86/9 92/21 92/21

**needs [7]** 40/12
48/13 48/13
100/11 103/7
139/20 139/23

**negate [1]** 106/4

135/1 135/8 124/9
105/22

**negotiated [2]**
10/17 98/11

**neither [3]** 31/12
116/15 123/21

**never [25]** 15/3
17/2 17/6 48/15
56/8 60/21 63/6
63/7 63/13 63/14
63/15 66/9 66/11
66/13 66/24 77/20
83/25 84/5 86/10
92/2 103/12
108/10 110/19
113/25 118/13

**nevertheless [7]**
8/13 72/9 73/14
74/11 74/24 75/8
126/9

**new [3]** 1/24
33/25 49/9

**news [1]** 140/9

**next [9]** 8/22
12/22 23/9 38/12
56/4 91/19 120/13
122/16 133/25

**NICHOLS [1]** 1/9

**night [1]** 30/23

**nine [5]** 6/7 6/11
7/18 7/24 9/1

**Nixon [1]** 39/21

**no [80]** 1/4 3/18
7/1 7/2 11/16 13/2
13/3 15/7 16/9
16/19 18/24 22/10
26/11 26/11 34/2
34/3 34/3 34/14
35/23 37/17 40/18
40/23 44/13 44/17
44/18 48/5 51/4
51/10 52/1 56/23
61/3 61/21 62/15
64/7 66/8 67/18
68/16 69/5 70/14
75/20 77/3 78/25
79/4 79/10 79/12
79/24 81/24 82/19
83/12 88/12 88/13
93/6 94/5 94/20
94/22 95/3 95/12
98/18 100/1
100/24 103/8
104/10 105/14

**negates [1]**
105/22

111/8 111/15
111/23 112/5
112/7 112/9
112/11 117/18
119/4 120/2 121/8
124/2 127/17
130/8 131/2
132/12 140/13

**nobody [2]** 54/8
54/9

**nomenclature [1]**
20/11

**nominees [1]**
113/24

**noncompliance
[5]** 82/14 109/13
118/2 126/16
129/10

**none [6]** 122/19
123/5 123/23
124/10 125/20
129/5

**nonefficacious
[1]** 58/3

**nonemployees [1]**
61/9

**nongovernment
[8]** 31/23 44/20
44/22 45/10 46/3
63/15 63/20 76/5

**nongovernmental
[1]** 123/25

**nonintentional [1]**
97/23

**nonjusticiable [1]**
84/9

**nonparties [1]**
22/9

**nonplastic [2]**
80/16 80/18

**nonstarter [2]**
54/15 54/18

**Nos [1]** 3/19

**not [278]**

**note [1]** 118/6

**noted [6]** 55/6
55/15 114/22
115/20 119/11
126/6

**notes [4]** 56/20
106/15 113/18
121/16

**nothing [14]**
26/18 54/12 62/21

**N**

**nothing... [11]**
65/3 91/14 99/21
118/14 125/6
125/8 126/24
127/4 127/15
128/5 128/10
**notice [32]** 11/25
11/25 32/12 33/9
33/12 34/10 39/14
39/18 40/12 46/21
61/1 62/16 63/2
66/2 70/16 71/17
71/19 71/23 77/13
77/14 77/14 77/15
77/15 80/19
101/25 102/5
104/23 105/2
122/17 123/3
128/16 128/25
**notify [1]** 101/3
**notion [1]** 49/4
**notwithstanding
[4]** 8/14 74/7 90/5
132/6
**novo [4]** 11/5
11/9 11/13 12/8
**now [38]** 9/21
21/13 22/14 26/10
33/25 34/18 37/25
39/23 40/10 40/12
41/4 42/21 43/2
48/21 49/22 54/2
55/5 58/15 59/18
60/7 61/24 63/17
71/15 73/14 88/22
89/1 89/3 92/16
94/17 95/14 103/5
103/14 105/24
112/16 112/19
124/12 131/24
133/21
**null [1]** 48/4
**nullum [1]** 34/1
**number [14]** 3/25
36/25 36/25 55/2
57/14 66/7 68/15
68/21 69/2 71/3
87/22 88/4 93/12
106/20
**numbers [1]**
114/11
**NW [2]** 1/14 2/3
**NY [1]** 1/24

**O**

**Oath [1]** 79/2
**obeying [2]** 12/19
106/25
**objecting [1]**
111/16
**objection [4]** 18/3
88/11 107/16
111/23
**objections [8]**
17/16 84/19 88/8
88/17 88/19 89/16
122/16 125/23
**objectively [1]**
102/8
**objects [1]** 38/4
**obligated [1]** 99/8
**obligation [6]**
15/9 44/13 48/5
62/15 100/24
101/6
**obligations [1]**
139/21
**obtained [4]** 3/24
92/9 93/22 94/5
**obtaining [1]**
121/1
**obviously [12]**
3/17 4/1 4/7 9/25
27/1 29/13 81/11
92/11 111/22
113/1 130/21
142/11
**occasionally [1]**
24/16
**occasions [1]**
58/7
**occur [2]** 50/9
56/1
**occurred [7]**
43/13 44/17 44/22
45/6 76/8 102/25
124/7
**ocean [1]** 80/15
**October [3]** 68/8
93/7 93/8
**October 14th [1]**
93/8
**October 7th [1]**
93/7
**OFC [1]** 1/13
**off [1]** 89/16
**offended [1]** 40/6
**offense [19]** 9/4

9/10 14/18 14/23
17/20 17/23 18/1
27/16 28/5 32/10
75/20 77/5 79/24
85/2 105/23
113/11 120/9
130/21 133/15
**offenses [3]**
73/20 74/8 131/3
**offer [3]** 58/21
99/22 112/12
**offered [1]** 99/21
**offers [1]** 95/25
**office [4]** 38/19
42/22 76/20 124/2
**officers [1]** 58/4
**official [24]** 2/2
13/10 13/22 13/22
31/7 39/7 41/8
41/11 41/13 42/1
42/7 43/18 43/18
47/4 55/7 55/13
55/21 55/21 75/7
99/20 100/14
101/16 122/23
143/3
**officially [1]**
31/22
**officials [15]**
34/13 44/6 51/17
55/18 56/14 57/6
59/22 60/5 60/8
60/16 64/12 64/17
78/17 79/9 80/25
**often [1]** 61/3
**Oh [3]** 38/9 49/4
69/14
**Ohio [1]** 34/9
**okay [38]** 4/21
22/12 22/22 23/16
23/20 23/25 24/1
32/24 33/3 41/10
42/2 45/20 65/17
67/12 74/1 85/5
88/22 88/24 89/15
90/2 91/11 91/17
94/2 95/13 97/2
99/23 104/22
111/13 112/15
136/1 136/13
137/18 141/2
142/1 142/7
142/14 142/19
142/21

**OLC [10]** 22/18
32/4 32/20 35/7
38/22 38/23 39/5
40/5 40/16 41/3
41/9 41/16 42/21
43/7 43/18 44/7
44/8 44/17 44/18
45/18 47/3 47/8
47/24 47/25 48/17
48/20 49/10 51/4
51/4 51/8 52/5
52/13 52/20 52/22
53/5 53/6 54/8
54/11 54/15 54/20
56/7 58/15 59/15
60/12 60/21 62/17
63/5 63/6 63/14
65/13 65/15 66/7
71/3 71/19 71/22
72/3 72/8 73/3
73/10 73/24 74/8
74/10 75/10 75/13
75/24 76/4 77/18
77/19 77/22 78/3
78/7 78/23 78/25
79/5 79/7 79/10
79/12 79/16 79/18
81/8 81/18 82/21
83/3 102/7 102/11
103/14 103/18
104/9 104/12
104/17 122/21
123/9 123/14
123/16 124/8
126/17 128/15
129/11 132/7
137/10 139/5
**OLC's [1]** 74/17
**Olson [6]** 39/15
42/6 51/16 56/5
60/14 106/13
**Olson's [1]** 56/4
**once [17]** 24/17
24/18 24/21 24/21
24/24 25/3 40/18
44/12 45/18 72/22
102/12 103/6
104/8 108/14
110/2 118/17
138/7
**one [54]** 10/1
16/9 19/17 19/18
19/19 23/6 23/9
36/25 43/19 43/19

45/15 46/7 48/1
48/16 49/2 49/9
53/17 58/13 59/20
60/7 65/4 66/15
66/17 68/16 73/20
73/21 78/7 79/22
80/3 85/13 87/17
87/23 88/17 90/3
91/21 92/1 96/13
96/18 97/17 98/14
100/5 108/3
108/18 112/4
112/23 113/2
117/18 118/6
123/2 123/12
129/4 136/4 140/4
140/4
**ones [5]** 77/24
102/18 131/24
135/15 142/11
**only [23]** 6/11
10/23 14/25 18/2
66/17 71/21 72/21
79/8 84/10 95/25
96/1 96/9 97/19
100/19 105/25
106/17 107/9
137/15 138/24
139/19 141/17
141/19 142/19
**open [2]** 18/6
125/17
**operate [1]** 115/6
**operated [1]**
113/25
**operations [1]**
84/11
**opinion [55]** 9/6
32/4 32/5 38/23
39/16 40/16 41/3
42/22 43/7 43/10
43/10 44/18 44/19
45/1 45/3 45/4
46/1 46/6 46/7
47/24 48/2 50/17
51/4 51/4 51/12
52/5 53/6 53/6
54/3 54/25 55/4
56/4 59/4 60/14
62/17 64/11 64/20
73/2 75/10 76/20
78/18 78/25 79/5
79/10 79/12 80/22
80/24 86/16

**O**

**opinion... [7]**
102/17 104/9
106/14 106/16
110/12 114/22
123/14

**opinions [81]**
35/7 38/19 38/22
39/5 40/5 40/17
41/9 41/16 43/19
44/11 45/18 46/10
47/3 47/8 48/1
49/10 49/15 49/16
51/9 51/15 51/25
52/13 52/20 52/23
54/8 54/11 54/15
54/18 54/20 56/7
58/17 59/15 60/9
63/5 64/2 64/4
65/13 65/15 67/4
71/3 71/22 73/2
73/24 74/8 74/15
75/13 75/24 76/4
76/10 76/18 77/23
78/7 78/13 79/7
79/16 79/18 80/20
81/8 81/19 82/21
83/3 102/7 102/11
103/15 103/18
104/1 104/12
104/17 115/21
115/21 122/22
123/10 123/17
124/8 126/18
128/15 129/11
131/10 132/7
137/10 139/5

**opportunity [2]**
4/5 4/16

**oppose [1]**
140/14

**opposed [3]**
25/11 47/25 82/6

**opposing [1]**
135/20

**opposition [2]**
105/13 105/17

**Oppositions [1]**
141/11

**order [13]** 3/2 6/3
10/18 89/8 103/7
105/19 107/1
131/20 135/13
136/6 137/20

**ordinary [3]** 26/1
33/20 64/1

**organizing [1]**
49/19

**original [2]** 134/7
137/20

**Orman [1]** 85/10

**other [61]** 3/18
6/8 14/4 16/20
18/17 18/22 22/12
23/24 25/12 27/12
28/10 42/16 44/11
47/23 47/25 50/13
52/19 52/21 54/15
55/6 59/6 64/16
70/14 73/11 76/22
78/2 80/17 82/21
89/25 90/25 91/1
91/22 95/18 96/24
97/5 99/19 99/25
101/9 101/12
105/5 111/7
112/25 120/14
120/19 121/19
121/20 122/14
122/24 123/10
123/17 125/5
130/13 131/21
133/6 133/17
136/19 139/21
139/21 140/4
142/4 142/10

**others [1]** 39/16

**otherwise [7]**
24/22 55/21 66/25
80/3 95/4 102/7
127/2

**ought [3]** 30/16
30/17 61/13

**our [40]** 5/17 5/25
9/22 9/24 12/18
14/15 14/15 14/19
21/1 22/4 23/1
26/9 28/2 30/5
30/6 30/19 68/6
74/23 82/16 92/16
93/14 99/4 99/5
99/7 100/7 100/16
101/3 101/6
101/24 102/2
106/5 106/12
107/16 125/1
137/4 138/13

137/20 142/16

141/10 141/12

**ours [1]** 5/8

**out [23]** 12/7
18/23 37/12 39/19
50/8 54/18 55/18
58/22 59/24 60/7
62/10 68/16 76/19
78/16 80/14 87/12
103/13 107/25
121/16 135/12
139/5 140/9
140/22

**outline [1]** 39/3

**outlined [1]** 39/3

**outrageous [6]**
24/3 25/1 25/24
26/7 26/15 91/25

**outright [1]** 96/12

**outset [1]** 27/8

**outside [19]**
32/15 41/1 49/3
49/5 49/19 50/19
52/2 52/7 52/7
56/1 61/4 61/9
61/12 64/3 79/17
79/19 102/21
102/23 103/2

**over [27]** 10/17
12/7 31/12 31/13
35/7 35/8 36/8
36/9 56/7 56/8
62/14 72/19 78/14
78/15 78/21 79/1
79/2 79/6 121/25
123/20 125/8
125/9 125/18
125/19 127/14
134/2 134/11

**overall [1]** 23/1

**overbreadth [2]**
38/5 129/7

**overbroad [2]**
126/15 128/8

**overly [1]** 4/14

**overreaching [1]**
129/17

**overruled [1]**
126/11

**oversight [3]** 45/3
46/7 80/24

**Overview [1]**
49/13

**owe [1]** 12/5

own [11] 6/5 7/21
11/18 12/12 12/19
14/2 21/1 56/20
93/15 115/24
116/2

**P**

**P-I-C-C-O [1]** 31/9

**p.m [2]** 89/2
112/18 112/18
142/23

**package [2]** 69/3
69/5

**page [7]** 34/19
56/18 76/18
100/16 102/22
105/17 106/15

**pages [2]** 57/21
102/3

**paper [2]** 31/5
127/2

**papers [3]** 4/9
31/5 119/17

**paragraph [6]**
15/4 38/12 68/8
69/8 120/21
142/17

**Paragraphs [2]**
119/14 119/22

**parallel [2]**
109/20 133/25

**paraphrasing [1]**
27/2

**Pardon [1]** 53/8

**parenthetically
[1]** 63/17

**pari [1]** 60/9

**part [10]** 12/22
22/12 28/2 30/5
42/9 61/10 62/22
69/5 96/16 141/24

**participate [2]**
10/16 10/17

**participated [1]**
95/1

**particular [14]**
17/10 60/13 72/25
78/14 78/15 78/16
81/25 82/1 90/15
120/3 125/9 130/4
131/9 134/17

**particularly [2]**
63/18 105/8

**parties [17]** 4/9

079/19 079/19 97/7
112/23 130/25
131/15 133/18
133/20 133/24
135/7 135/11
135/13 137/16
138/5 138/21
139/15

**parties' [4]** 31/21
131/25 134/5
134/19

**parts [1]** 63/10

**party [16]** 20/8
21/13 21/15 79/5
79/11 90/20 90/22
90/24 91/8 95/22
99/12 99/16 99/20
117/16 117/17
117/21

**pass [1]** 80/7

**passing [2]** 30/23
121/2

**past [1]** 88/7

**Paul [3]** 49/1 49/1
61/2

**Paul Clement [1]**
49/1

**pause [3]** 37/8
85/21 107/13

**pawn [2]** 40/6
40/7

**penalties [1]**
121/3

**pending [3]** 91/2
130/14 131/24

**people [13]** 20/12
34/5 49/5 50/4
52/3 61/4 64/3
64/7 64/22 76/3
103/3 103/3
106/20

**percent [2]** 21/15
86/8

**perfect [2]** 74/17
75/2

**perhaps [4]** 104/5
131/13 134/6
140/22

**period [4]** 32/20
73/23 107/6 135/8

**perjury [1]** 6/18

**permissible [1]**
131/5

**permit [4]** 42/7

P

permit... [3] 48/3
113/10 132/3
permitted [4]
38/13 98/14
105/10 138/10
person [44] 1/8
14/7 17/12 33/11
33/12 33/19 34/11
40/5 40/10 40/12
40/13 43/7 43/14
44/8 44/13 44/15
44/22 45/5 46/3
46/20 47/2 47/3
47/7 49/2 51/21
51/22 52/1 52/7
53/2 53/3 53/22
56/2 56/2 61/11
61/12 61/13 61/14
61/22 64/1 74/24
75/7 102/9 106/16
128/17
personal [1]
13/10
personally [1]
37/19
persuade [1]
120/12
pertinency [1] 9/7
Peter [2] 115/18
118/4
phone [6] 24/4
25/1 37/10 37/13
68/4 68/9
phrase [1] 128/24
PICCO [1] 31/9
pick [2] 70/22
72/7
pinpointed [1]
102/4
placard [1] 80/16
place [2] 89/23
90/9
places [1] 10/11
plan [2] 19/5 19/6
play [1] 12/7
please [7] 3/2 3/6
5/2 30/12 54/1
75/20 90/1
plus [1] 71/22
podium [1] 5/2
point [15] 5/16
26/7 27/4 45/14
55/2 67/19 77/8

105/13 109/14
110/6 124/4
130/25
pointed [2] 80/15
123/24
points [3] 68/2
101/22 108/9
police [2] 48/7
48/14
policy [2] 122/23
122/24
portion [2]
141/20 142/16
posed [1] 74/21
position [34] 9/24
12/8 17/18 19/24
21/3 21/9 22/2
26/22 30/5 39/6
39/7 43/6 46/23
56/13 57/2 57/5
84/8 84/10 90/20
91/5 91/6 91/9
97/14 101/10
101/16 101/24
102/11 107/8
109/17 109/18
114/18 117/14
117/19 139/16
positioned [1]
10/24
positions [1]
31/21
possible [4]
92/15 93/10 93/12
131/11
possibly [1]
59/16
post [2] 25/11
27/17
post-hoc [1]
27/17
post-trial [1]
25/11
potential [7]
19/13 52/6 73/25
94/12 94/16 115/7
115/22
potentially [7]
31/24 48/10 60/21
74/13 81/8 81/17
140/17
power [7] 11/17
86/23 119/4 121/6

122/9 127/11
128/10
powers [17]
33/23 39/2 47/10
51/18 52/15 57/17
59/7 59/21 60/2
106/6 106/11
107/12 115/23
121/15 126/14
127/8 127/23
practice [2] 49/22
91/13
precedent [1]
127/5
precisely [1]
25/19
preclude [2] 60/3
60/4
precluded [1]
9/14
predate [1] 27/13
predicate [2]
123/23 124/12
predicates [1]
123/16
prejudice [10]
6/14 6/16 24/8
24/9 24/10 24/11
92/1 94/8 94/9
94/20
prejudiced [3]
6/22 130/5 130/9
preliminary [1]
111/18
premature [1]
131/17
premise [1] 137/4
prepared [3]
62/20 132/4
135/22
presence [1]
68/24
present [11] 6/18
9/23 29/22 48/4
72/22 81/5 93/9
93/14 98/24
119/21 120/11
presentation [1]
38/25
presented [8]
8/19 13/25 14/1
22/8 74/19 111/21
124/11 129/4
presenting [3]

presently [1]
82/24
preserve [2]
87/20 127/3
preserved [2]
86/14 126/10
presidency [1]
38/6
Presidency's [1]
64/8
president [74]
35/18 36/12 36/13
36/22 37/2 37/11
37/14 37/18 37/22
38/3 38/4 38/13
39/21 39/22 39/24
40/2 40/8 40/9
42/4 42/8 42/11
42/20 42/24 43/12
43/23 44/4 44/13
44/16 45/9 47/4
47/5 47/6 47/12
47/21 49/19 49/23
49/24 50/21 50/23
52/4 56/15 58/22
59/5 60/5 61/3
61/16 62/1 63/16
63/17 63/21 64/25
68/4 68/10 68/11
73/13 73/22 74/3
74/5 74/23 79/10
79/14 79/15
106/10 108/25
109/9 121/23
123/19 124/1
124/14 124/17
124/25 125/4
127/10 127/19
President's [16]
40/9 41/8 42/9
42/14 51/20 55/13
55/23 57/16 59/8
59/24 59/25 66/21
66/21 102/24
107/1 127/14
presidential [8]
42/4 49/12 55/18
56/2 57/6 57/10
57/15 121/13
press [2] 107/20
140/3
presumptively [7]
36/6 39/10 46/15

pretrial [3] 104/1
141/12 142/15
pretty [5] 4/15
15/21 29/8 46/25
137/25
prevail [1] 8/11
prevent [3] 75/19
111/20 121/3
previous [3] 56/9
56/21 126/1
previously [3]
28/16 56/12 57/23
principle [13] 9/9
35/6 38/20 52/9
52/12 63/1 63/1
66/19 66/20 67/3
80/4 95/3 103/2
principles [4]
59/7 60/2 71/3
102/19
prior [14] 23/10
25/20 27/20 27/24
28/15 28/22 95/14
101/4 126/7
126/12 127/9
129/12 132/8
137/11
private [9] 32/16
49/5 50/9 50/20
52/2 79/5 79/6
79/10 99/20
privilege [132]
28/20 32/20 35/8
35/11 35/18 35/24
36/5 36/6 36/7
36/13 36/22 37/2
37/14 37/23 39/8
39/9 39/22 40/2
40/3 40/4 40/9
40/14 40/18 41/23
42/5 42/8 42/12
42/19 43/3 43/9
44/5 44/12 44/15
44/21 45/9 45/19
46/2 46/14 47/12
47/16 47/18 47/18
47/19 48/14 49/20
50/3 50/12 50/25
51/1 51/20 51/22
52/8 52/14 52/15
52/16 53/3 53/18
55/14 55/19 56/15

55/24 57/19 57/19
67/1

**P**

**privilege... [72]**
57/7 57/10 57/16
57/24 58/22 59/5
59/6 59/9 59/24
60/3 60/6 60/17
61/8 62/2 62/7
62/10 64/5 64/9
66/21 66/22 67/2
67/5 68/11 72/12
73/13 74/7 75/25
76/1 76/5 78/8
78/14 78/22 83/8
96/4 97/18 98/12
100/15 102/12
102/15 102/19
102/20 103/6
104/8 105/10
105/21 106/3
106/8 106/9
106/10 107/2
107/4 107/5
108/11 108/12
108/14 109/3
109/17 110/19
121/14 121/25
122/9 123/20
124/16 125/8
125/9 125/11
125/19 126/17
127/10 127/12
127/14 129/11
**privilege.' [1]**
41/9
**privileged [35]**
31/24 47/7 48/8
48/10 48/15 49/25
50/22 51/2 52/10
52/13 55/24 57/18
57/19 62/2 64/3
64/7 67/1 74/6
74/24 94/5 95/7
95/9 108/21
108/25 109/10
121/7 121/10
121/18 122/3
122/3 122/13
124/22 124/23
125/16 125/17
**privileges [1]**
124/20
**probable [3]**
114/2 117/2
119/15

**probably [5]** 54/7
90/21 92/6 133/4
135/17
**problem [10]** 4/2
38/19 38/21 52/25
71/20 72/14 98/21
106/6 108/22
130/19
**procedural [15]**
14/1 14/10 14/11
14/16 14/18 84/19
86/18 86/21 86/25
87/1 87/13 88/2
88/3 88/8 88/13
**procedurally [1]**
14/3
**Procedure [1]**
19/14
**procedures [2]**
97/20 97/21
**proceed [6]** 3/20
30/11 73/6 81/19
81/19 112/24
**proceeding [5]**
36/9 51/20 52/22
59/17 103/12
**proceedings [6]**
2/7 57/25 58/7
125/18 142/23
143/5
**process [34]**
11/24 16/2 16/3
28/20 30/22 30/25
32/12 32/18 32/19
33/14 33/22 34/22
39/1 42/13 52/17
59/2 59/2 62/13
62/22 70/24 71/10
71/13 71/20 77/13
78/20 80/1 93/22
98/11 102/1
108/22 122/18
123/3 125/21
137/6
**process/fair [1]**
123/3
**produce [13]** 32/1
38/2 62/11 74/9
82/5 93/7 96/3
100/15 106/1
106/17 119/17
124/21 125/7
**produced [1]** 2/7
**producing [4]**

90/21 78/10 78/24
122/11
**production [3]**
121/7 125/15
127/1
**proffer [7]** 98/7
99/2 99/10 101/4
111/15 138/13
138/17
**proffered [1]** 98/2
**proffering [2]**
95/22 99/16
**prohibited [2]**
33/13 34/6
**prohibition [1]**
71/24
**prohibits [1]**
126/19
**promise [1]** 99/12
**propensity [1]**
96/10
**proper [3]** 9/2
9/15 140/7
**properly [5]** 8/9
13/9 15/17 90/4
117/11
**proposal [2]**
135/18 135/21
**proposed [9]**
81/10 131/1
131/25 133/16
134/1 134/6 137/8
141/9 142/17
**proposition [2]**
12/16 54/13
**prosecute [14]**
31/23 32/6 41/22
44/19 45/7 59/15
63/7 63/13 64/11
66/12 72/5 75/25
122/25 128/19
**prosecuted [15]**
34/25 44/9 46/4
46/22 50/12 51/2
71/16 73/14 74/11
74/18 74/24 75/22
78/9 78/23 106/16
**prosecuting [8]**
39/6 40/17 52/24
52/25 53/21 59/1
67/10 75/22
**prosecution [21]**
6/3 26/1 33/21
34/21 35/11 39/1

42/24 46/16 55/23
59/23 62/6 72/16
74/8 102/10
115/15 118/3
123/2 126/13
**prosecutions [1]**
60/16
**prosecutorial [4]**
64/16 128/3 128/6
129/17
**prosecutors [1]**
68/25
**protect [7]** 7/15
10/12 10/18 55/24
80/10 80/10 87/13
**protected [3]**
79/18 98/12 129/9
**protecting [1]**
117/17
**protection [4]**
86/22 86/25 87/1
88/14
**protections [2]**
86/19 88/3
**protective [2]**
98/20 116/14
**Proud [1]** 79/1
**prove [14]** 17/22
19/6 26/23 27/15
28/9 53/15 81/24
82/3 92/22 97/13
99/12 99/13 111/6
130/9
**proved [1]** 29/17
**proven [1]** 113/10
**provide [10]**
64/18 100/24
101/6 109/19
112/23 118/7
122/14 122/21
124/23 138/6
**provided [8]**
18/20 19/1 19/5
34/10 69/10 99/9
118/11 118/15
**providence [1]**
119/7
**provides [3]** 88/3
113/20 126/25
**providing [3]**
100/9 121/21
122/12
**proving [2]** 85/1

42/24 46/16 55/23
**pseudo [1]** 86/15
**pseudo-affirmativ**
**e [1]** 86/15
**public [14]** 5/5
30/20 32/9 33/9
39/19 66/2 68/19
70/24 90/13 102/6
122/18 123/4
123/5 125/21
**published [1]**
40/17
**pull [2]** 37/3 46/5
**punish [1]** 60/5
**punished [2]**
26/13 26/14
**punishment [1]**
33/11
**pure [1]** 139/14
**purported [1]**
105/21
**purpose [6]** 14/5
75/18 89/10 89/11
96/10 120/2
**purposes [12]**
14/24 20/11 37/16
40/1 52/9 86/13
119/21 119/24
120/24 124/5
140/7 141/18
**put [10]** 8/21 15/4
32/7 40/1 40/10
65/14 71/22
114/19 132/7
134/15
**puts [1]** 133/16
**putting [2]** 96/14
127/22

---

**Q**

**quash [1]** 17/14
**question [93]**
8/20 8/21 9/3 9/7
9/8 9/11 9/12 9/21
12/22 13/25 14/1
14/11 14/11 18/25
23/15 23/19 23/21
23/25 26/17 32/13
33/19 35/14 35/17
35/19 35/22 36/2
36/2 36/3 36/4
36/19 39/23 43/2
45/11 45/12 45/23
45/24 50/15 51/6

**Q**

**question... [55]**
53/7 53/9 53/10
58/20 59/21 61/7
62/16 65/20 66/6
72/24 75/11 77/22
78/2 78/9 82/22
84/6 84/25 85/19
90/11 91/5 92/7
93/6 94/3 94/7
98/5 98/23 102/6
103/12 103/16
103/21 104/6
104/19 105/3
105/20 108/12
108/18 109/13
111/3 113/9 124/5
124/13 125/12
125/18 133/1
133/5 133/16
134/15 136/4
137/22 137/23
137/25 139/11
**questioning [4]**
10/14 10/16 14/19
68/3
**questions [24]**
4/1 4/12 11/8 13/2
22/25 61/14 68/15
72/13 77/24 82/21
89/24 96/14 98/8
99/13 99/25
108/17 113/2
126/7 133/13
134/13 134/21
137/14 138/9
139/8
**quick [1]** 101/21
**quorum [4]** 6/18
6/19 6/21 86/20
**quote [5]** 7/3
73/10 115/3 116/6
124/19
**quote/unquote [1]**
73/10
**quoted [1]** 120/16
**quotes [2]** 58/10
120/5

**R**

**R O C E E D I N G
S [1]** 3/1
**raise [10]** 71/7

84/20 87/10 87/18
87/20 88/20 102/2
103/15 111/22
121/14
**raised [12]** 9/19
18/2 18/3 18/3
86/11 91/21 94/12
101/10 107/14
107/15 125/23
129/16
**raises [3]** 89/18
113/15 129/2
**raising [3]** 5/25
88/9 109/2
**Raley [8]** 34/9
34/18 34/20 35/1
53/1 72/10 72/14
105/1
**ran [2]** 49/14
49/14
**rank [4]** 15/24
15/24 15/25 16/2
**ranking [24]** 5/23
10/5 10/10 10/10
10/15 10/22 12/3
15/17 15/19 15/23
16/3 68/16 68/19
68/23 79/8 88/11
88/12 89/20
107/18 107/21
116/13 116/21
117/12 117/14
**Raskin [1]** 140/4
**rather [2]** 36/22
129/12
**ratification [1]**
84/11
**ratified [3]** 91/16
115/14 118/18
**ratifying [1]** 90/7
**rationale [2]**
50/13 50/14
**rationalization [1]**
27/17
**rea [25]** 29/3 29/8
53/4 53/5 53/15
53/17 81/9 81/14
82/23 96/16 97/10
97/25 105/9
105/15 110/8
110/9 111/4 111/6
126/8 131/2
134/22 137/6
137/11 137/16

reach [5] 45/12
77/22 78/2 79/21
84/18
**reached [2]** 28/21
29/19
**read [19]** 13/14
19/18 31/12 46/8
46/8 47/3 50/14
53/25 60/8 61/1
61/2 62/25 64/1
64/3 76/23 77/25
96/18 102/6
106/15
**reading [8]** 37/25
41/4 51/8 84/2
106/21 115/11
115/11 115/13
**reaffirmed [1]**
118/3
**real [2]** 106/6
108/2
**realize [1]** 133/20
**really [28]** 5/21
10/18 10/20 14/11
30/6 30/24 31/1
41/19 43/25 46/19
46/24 48/7 61/6
71/11 75/11 87/23
103/10 110/12
122/9 122/17
123/16 128/13
134/11 136/23
141/17 141/19
141/19 141/25
**realm [2]** 32/17
50/8
**reason [18]** 19/22
24/6 24/24 25/24
43/23 47/7 50/11
82/2 82/8 82/14
89/11 96/8 102/13
105/14 106/2
106/7 120/7
122/15
**reasonable [8]**
17/22 28/9 46/20
47/2 102/9 103/17
104/20 138/16
**reasonableness
[4]** 97/23 104/7
137/21 137/22
**reasoning [2]**
65/4 75/17

reasons [10]
35/13 39/3 39/11
51/17 60/19 60/20
66/19 112/24
130/11 131/7
**rebut [1]** 97/16
**receipt [1]** 18/4
**receive [2]** 18/7
18/9
**received [6]**
17/12 28/6 28/23
68/9 130/24
136/17
**receiving [2]**
28/19 29/19
**recently [2]** 33/16
114/17
**recess [5]** 88/25
89/1 112/13
112/17 112/22
**recipient [6]** 69/3
86/22 121/9
121/20 122/2
124/3
**recipients [1]**
121/19
**recognize [2]**
41/18 79/17
**recognized [7]**
13/12 34/1 34/20
41/5 57/23 88/19
115/21
**recognizes [1]**
88/9
**reconsider [2]**
127/17 127/17
**record [24]** 3/7
8/25 37/13 37/21
40/22 41/1 41/1
56/5 62/12 68/5
68/6 68/14 69/22
69/23 69/25 70/13
89/3 91/15 112/19
123/5 132/14
138/15 140/8
143/5
**recorded [1]** 2/7
**records [12]**
22/15 24/4 25/2
27/12 79/2 79/6
92/15 96/3 100/10
106/1 123/20
136/17
**refer [3]** 46/15

49/18 51/16
**reference [5]**
19/17 38/1 69/14
102/16 107/15
**referenced [1]**
125/2
**referral [3]** 115/17
115/18 115/19
**referrals [1]** 8/2
84/12 115/16
**referred [2]** 54/3
102/17
**referring [3]** 46/6
48/25 118/1
**refers [2]** 49/2
54/11
**reflect [2]** 39/6
125/10
**reflecting [2]**
54/11 122/22
**refusal [3]** 89/8
89/12 89/12
**refused [1]** 72/18
**refusing [3]** 31/25
32/1 70/6
**refutation [1]**
111/5
**regard [3]** 5/16
24/2 100/13
**regarding [3]**
120/18 121/22
126/3
**regardless [2]**
87/18 88/4
**regulation [1]**
76/16
**regulations [5]**
69/8 69/12 69/25
70/7 80/17
**reiterate [1]** 125/1
**reiterated [4]**
35/7 39/15 39/17
51/15
**reiteration [1]**
104/20
**reject [1]** 115/23
**rejected [3]** 8/16
93/4 113/23
**related [3]** 36/2
57/21 91/19
**Relatedly [1]**
130/6
**relates [2]** 22/14
23/24

**R**

relating [6] 23/22 92/9 130/23 132/7 132/13 139/4
relation [8] 79/3 80/12 92/4 94/25 95/20 95/20 95/21 120/14
relative [1] 133/17
relevance [2] 66/8 95/24
relevant [35] 26/20 32/19 33/8 44/21 47/24 49/17 52/15 53/15 53/17 64/23 65/6 65/9 66/1 71/16 73/12 81/8 81/17 82/22 83/4 95/11 96/1 96/2 96/8 97/25 104/12 104/13 110/8 110/13 111/6 120/8 131/18 132/9 132/15 132/22 133/12
reliance [12] 40/11 77/12 81/21 83/14 102/5 105/21 110/15 110/20 126/17 129/11 137/21 137/21
relied [5] 54/21 71/3 76/13 77/24 104/10
relies [4] 118/10 123/11 123/18 124/18
relieve [1] 20/24
relitigate [2] 126/22 127/16
rely [7] 21/7 22/4 37/12 51/3 51/5 51/7 130/23
relying [8] 22/7 29/13 49/24 72/25 76/12 76/16 76/17 76/19
remaining [3] 78/22 78/24 96/10
remains [1] 126/9
remember [2]

reminded [1] 19/19
reminds [1] 37/9
removal [1] 11/23
remove [1] 5/1
render [2] 34/18 127/2
rendering [1] 34/21
renders [5] 34/16 35/10 35/11 116/8 126/23
repairing [1] 24/22
repeat [3] 4/10 70/12 130/16
repeats [1] 55/5
Replies [1] 141/11
reply [3] 39/4 73/4 102/3
report [3] 49/10 49/22 50/1
Reported [1] 2/1
reporter [3] 2/2 88/21 143/4
reports [1] 49/11
represent [2] 90/17 123/11
representation [2] 7/14 25/8
representative [3] 48/4 58/12 117/21
Representatives [7] 5/20 8/25 14/22 17/25 68/22 114/4 117/4
representing [1] 68/9
represents [1] 76/20
republican [1] 16/1
republicans [1] 16/5
request [3] 16/22 18/21 112/4
requested [1] 19/3
requests [1] 38/5
require [7] 6/2 6/4 87/6 87/25 116/14 121/9 131/20

required [13] 6/11 19/1 28/12 29/11 69/9 76/14 82/4 82/5 84/5 115/6 118/11 125/15 130/22
requirement [5] 33/9 37/17 83/8 117/24 126/8
requirements [1] 86/20
requires [13] 11/25 19/13 37/18 91/14 101/3 105/16 105/25 116/20 118/15 123/6 129/17 129/20 142/17
requiring [2] 111/15 130/8
res [4] 11/11 83/19 84/2 87/24
reserved [1] 116/5
reserves [1] 116/1
reserving [1] 133/4
resigns [1] 6/9
resolution [21] 7/12 7/16 7/19 7/25 8/24 69/6 69/11 85/17 86/5 86/8 88/5 113/19 113/19 115/4 115/10 115/12 115/15 115/17 115/18 115/19 133/5
resolutions [3] 8/1 8/8 90/8
resolve [3] 131/17 135/2 138/2
resolved [3] 132/10 137/24 138/8
resolving [2] 57/23 58/8
respect [13] 10/5 11/6 31/15 64/17 68/11 68/15 78/11 78/12 88/14 89/22 91/24 103/20

respectfully [3] 45/21 65/11 66/14
respective [3] 31/21 135/15 139/17
respond [5] 3/24 4/5 61/12 98/19 135/21
response [8] 19/3 68/7 99/9 106/18 124/22 124/24 127/20 136/17
responsibilities [1] 42/9
responsible [1] 117/16
responsive [1] 122/1
rest [3] 5/8 5/9 63/5
rests [1] 123/16
result [1] 131/8
resulted [1] 25/10
resumed [2] 89/2 112/18
reus [1] 131/2
reus/no [1] 131/2
reveal [3] 121/21 122/3 122/13
reverses [1] 57/2
review [1] 78/20
reviewing [1] 11/3
Riane [1] 3/13
right [39] 10/3 13/24 21/13 22/13 23/8 23/11 29/12 31/8 32/25 38/12 41/25 51/14 54/2 54/23 56/25 59/18 64/24 65/2 73/6 90/24 92/16 93/24 93/25 94/1 95/4 105/16 107/12 109/21 109/25 110/2 110/14 110/17 110/25 111/11 135/24 138/11
rights [12] 7/15 10/12 10/13 10/19 10/19 58/14 87/13

87/14 88/3 89/21 117/17 119/1
rise [3] 89/1 112/16 142/22
risk [3] 53/10 58/13 116/4
risks [1] 51/23
Road [1] 1/17
ROBERT [2] 1/22 27/9
rock [1] 21/19
Rogers [1] 56/17
role [1] 88/12
Roman [1] 34/1
room [3] 2/3 7/9 7/10
ROSE [1] 1/12
Rostenkowski [4] 13/7 13/20 84/16 116/6
roughly [1] 135/23
route [2] 104/2 104/4
routine [1] 27/15
RPR [1] 2/1
rule [35] 6/23 11/21 13/14 13/19 13/21 14/5 14/9 18/6 18/13 18/15 18/19 18/20 18/22 19/4 19/8 19/13 19/16 88/2 88/3 91/14 95/7 98/3 98/16 98/17 98/25 111/15 111/17 111/19 111/23 115/24 116/3 118/9 118/14 121/8 121/12
rulemaking [3] 11/15 90/16 116/1
rules [49] 5/8 5/17 5/18 5/19 6/5 7/21 8/3 9/2 10/11 10/25 10/25 11/1 11/5 11/18 12/2 12/6 12/9 12/12 12/19 12/22 13/12 14/2 14/15 14/16 16/1 16/1 18/5 18/17 18/18 18/19 18/21 19/14 48/3 65/16 69/24 83/20

**R**

rules... **[13]** 86/19
87/6 87/13 90/18
99/11 101/1 116/2
116/12 116/13
116/14 118/8
118/12 118/15
**rules-based [2]**
5/8 5/17
**ruling [1]** 129/12
**run [2]** 11/14
53/24
**running [1]** 24/20
**runs [1]** 116/3

**S**

**said [66]** 5/18 7/6
7/17 7/21 8/8
10/21 13/17 17/23
18/3 19/23 20/23
21/8 25/20 25/21
26/9 29/14 31/22
34/9 36/8 36/8
40/18 44/7 44/7
44/8 45/11 46/23
46/25 52/8 55/9
59/10 59/13 60/21
61/19 62/10 62/13
62/20 63/6 63/7
63/14 63/15 66/7
66/13 68/5 70/12
71/19 72/14 73/3
80/16 82/19 87/6
103/14 103/24
104/23 105/12
105/14 106/16
106/21 107/7
108/10 109/16
110/19 111/14
116/24 136/9
137/25 140/7
**sake [1]** 123/9
**salient [1]** 4/11
**same [16]** 6/17
7/8 10/7 14/12
15/17 15/25 34/17
42/17 42/21 42/22
59/11 88/11 98/19
98/19 102/18
111/3
**sanction [1]** 14/7
**sanctioned [1]**
79/25
**sanctions [3]**

129/23
**satisfied [2]** 7/24
72/24
**satisfy [1]** 64/14
**saw [2]** 38/19
105/17
**say [70]** 3/22 6/13
7/2 8/24 11/12
13/1 14/6 18/12
19/17 21/5 22/10
27/14 27/17 31/11
37/1 38/17 41/19
42/17 44/11 45/7
45/8 45/18 46/17
47/3 49/4 49/16
49/16 51/16 51/25
51/25 52/17 52/24
52/24 54/9 54/13
59/16 61/15 61/16
64/4 64/5 64/10
64/13 65/16 67/13
69/25 70/7 70/15
75/24 77/23 81/17
94/10 96/20 97/24
98/7 98/18 99/12
102/16 102/22
106/24 107/5
107/23 109/23
114/15 131/17
132/17 135/13
136/23 140/16
141/1 141/18
**saying [25]** 8/25
14/15 15/5 22/3
26/12 28/14 28/24
37/20 37/23 44/19
53/21 58/15 60/13
63/12 75/20 81/23
83/7 108/23
108/23 109/3
109/5 109/8
120/16 139/19
140/17
**says [57]** 12/18
12/21 18/7 18/20
30/1 32/5 35/25
37/5 41/22 41/25
42/17 42/17 43/19
44/3 44/4 44/4
45/1 47/25 50/19
50/24 50/25 54/17
56/21 57/1 57/14
57/22 58/11 58/16

58/18 58/22 59/22
60/14 62/1 62/17
64/14 65/3 69/9
74/23 74/25 75/23
76/9 78/23 78/25
79/5 79/10 80/22
80/24 82/11 87/12
88/1 105/1 106/4
109/21 110/2
111/17 111/19
140/11
**Scalia's [1]** 9/6
**Scavino [3]** 8/3
115/19 118/5
**scenario [1]**
61/15
**schedule [6]**
131/21 133/16
133/19 133/24
140/22 141/4
**scheduling [2]**
131/19 139/14
**Schiff [1]** 140/4
**SCHOEN [16]**
1/16 1/17 3/12
4/18 22/17 23/6
23/23 27/19 30/10
39/20 68/3 71/9
94/13 101/19
109/16 136/24
**Schoen's [1]**
77/10
**scope [5]** 38/5
76/17 86/4 86/6
120/19
**score [1]** 113/15
**scrap [2]** 80/15
80/19
**search [1]** 121/11
**seated [1]** 3/2
**second [16]**
38/18 40/1 41/2
45/15 46/7 48/17
59/20 85/8 85/9
94/7 116/10
123/19 124/4
124/12 125/13
127/6
**seconds [1]**
112/6
**secret [1]** 16/5
**secrets [1]** 44/2
**section [19]** 18/4
56/9 69/2 69/5

106/11 125/24
126/23 126/23
126/24 126/24
127/6 127/22
127/24 128/2
128/11 128/21
129/8
**Sections [1]**
55/16
**see [13]** 12/8
14/17 14/18 16/25
38/8 38/18 43/5
53/25 104/22
113/13 128/9
129/21 140/19
**Seeger [1]** 85/10
**seeing [1]** 140/3
**seek [2]** 27/3
27/12
**seeking [1]**
123/25
**seeks [3]** 120/18
127/3 132/13
**seem [3]** 47/15
80/6 136/18
**seemed [2]** 71/9
82/20
**seems [20]** 23/3
29/10 31/3 44/17
46/25 48/8 60/10
70/9 72/3 92/6
95/6 96/13 106/20
131/17 133/1
134/10 134/16
137/9 142/3 142/8
**seen [2]** 37/17
128/5
**sees [2]** 38/19
38/21
**Select [29]** 8/9
9/1 9/15 16/23
17/13 25/3 27/9
68/12 68/18 85/15
85/16 113/18
113/20 113/21
114/7 115/6 116/8
116/10 116/12
116/20 117/11
117/18 117/23
120/5 120/7
120/15 120/17
120/20 121/6
**Senate [2]** 28/17

**Senator [1]** 58/1
**senior [5]** 10/23
42/23 50/10 61/16
61/23
**seniority [1]**
15/23
**sense [6]** 20/16
31/12 65/7 67/9
97/22 104/14
**sentences [3]**
76/2 76/19 80/6
**separate [6]** 36/2
36/2 36/4 51/6
71/10 78/8
**separately [1]**
78/12
**separation [17]**
33/23 39/2 47/9
51/18 52/15 57/17
59/6 59/21 60/2
106/6 106/11
107/12 115/23
121/14 126/14
127/7 127/23
**seq [1]** 22/3
**series [3]** 3/18
4/12 49/11
**serious [6]** 50/2
121/2 121/14
126/7 129/24
131/7
**seriously [2]**
35/19 42/19
**serves [1]** 117/21
**service [2]** 27/10
69/4
**set [3]** 47/21
60/11 87/12
**several [6]** 39/11
57/21 58/7 113/15
115/14 118/4
**shall [20]** 6/6 6/6
6/24 7/8 7/9 14/5
69/9 84/7 113/20
113/21 114/23
115/1 115/2 115/5
115/13 115/20
118/10 135/13
135/14 135/14
**shame [1]** 108/4
**she [1]** 44/4
**Shelton [1]** 87/3
**shield [1]** 42/23

**S**

shift [1] 141/23
shifted [2] 71/14
101/25
ships [1] 30/23
shoes [2] 46/20
63/8
short [4] 4/6
26/20 112/22
113/16
shortcomings [1]
125/20
shorthand [1] 2/7
shortly [1] 135/3
should [31] 4/7
5/20 6/2 11/2 18/3
21/20 22/6 26/14
28/3 28/25 29/21
47/14 48/11 50/11
54/18 58/13 61/3
78/22 96/12 99/22
102/14 103/19
114/24 115/2
115/13 115/23
126/11 133/3
133/19 133/21
140/16
shouldn't [3] 8/15
26/8 26/13
show [31] 6/16
26/24 27/23 28/1
30/4 44/10 46/20
69/15 70/1 71/6
72/21 74/9 74/23
76/14 82/4 83/7
83/9 94/19 94/20
96/2 96/3 97/6
97/22 98/13 99/1
102/5 102/6 103/7
105/15 107/10
129/5
showed [3] 18/14
69/15 118/14
showing [14] 6/16
51/1 51/2 79/8
79/11 80/25 81/3
95/24 96/8 99/16
103/9 113/8
118/16 130/5
133/3
shown [4] 19/4
98/2 98/21 98/22
side [3] 4/13
42/16 142/4

signal [1] 32/18
significant [2]
121/22 132/16
significantly [1]
59/25
silly [3] 61/18
61/20 61/22
SILVERMAN [1]
1/20
similar [3] 59/19
97/21 114/17
similarities [1]
98/2
simple [3] 30/5
74/4 103/12
simply [1] 15/4
27/13 31/13 34/23
55/11 59/7 101/15
118/10
since [6] 13/17
32/21 39/17 51/9
90/13 91/8
sine [1] 34/2
single [3] 16/22
17/9 32/4
sit [1] 6/2
sitting [4] 37/15
87/25 92/16 93/11
situated [4] 40/6
43/7 47/3 128/17
situation [10]
34/5 45/4 59/19
68/17 74/18 123/2
123/18 124/9
124/11 129/25
situations [2]
128/20 129/4
Sixth [2] 103/25
119/20
skip [1] 38/24
slightly [2] 9/24
10/6
SLUTKIN [1] 1/20
so [159]
so-situated [1]
43/7
sole [2] 88/6
108/18
some [37] 7/14
11/6 13/12 14/4
14/14 15/9 17/16
25/12 27/2 43/23
44/2 45/8 48/9
48/10 49/11 55/5

66/8 71/14 73/15
78/21 82/21 84/21
84/21 91/4 91/7
99/16 106/19
106/25 112/24
112/24 131/11
134/23 135/6
139/4
somebody [3] 6/9
15/22 25/6
somehow [4]
29/24 95/25 96/4
139/25
someone [22]
14/6 16/15 31/23
32/6 41/22 43/11
43/17 44/20 48/13
52/25 63/8 63/13
65/5 65/8 66/12
66/24 74/2 74/5
75/19 77/6 98/7
122/25
something [25]
8/22 17/10 21/11
26/10 26/20 28/13
31/18 33/25 46/23
53/25 70/13 77/1
82/7 82/13 82/17
83/3 86/22 97/12
98/16 100/22
101/5 107/9
135/23 137/2
139/25
sometimes [5]
6/25 7/5 22/10
114/23 115/1
somewhat [2]
13/14 133/17
Sorrells [1] 35/3
sorry [5] 4/25
69/19 83/17 91/3
136/24
sort [9] 6/16
29/16 33/24 73/15
74/21 76/20 86/15
109/20 135/12
sorts [1] 140/5
sought [3] 14/7
27/4 120/23
sound [3] 57/7
122/18 128/12
sounds [1] 83/2
speak [3] 22/17

Speaker [6] 11/6
91/8 91/8 113/20
113/23 115/11
speaking [3] 16/9
77/13 116/25
specific [14] 8/21
10/9 53/20 54/7
62/17 75/6 80/12
80/23 81/1 111/11
121/17 124/9
131/1 131/15
specifically [9]
8/8 49/18 81/13
83/15 118/23
121/8 127/8
129/18 134/18
speech [1] 119/2
spell [1] 34/2
spent [1] 25/25
sphere [1] 116/4
split [1] 4/22
spoke [1] 34/4
spoken [1] 84/15
squarely [3] 8/18
73/9 103/15
stage [6] 71/8
113/16 123/22
124/13 125/18
133/25
stand [4] 19/21
21/6 26/11 76/10
standard [9] 11/2
13/7 29/8 35/3
80/2 81/12 97/4
111/7 111/9
standing [5] 33/6
38/22 57/4 95/17
135/13
stands [2] 68/20
112/17
start [4] 26/4
75/16 76/18 77/18
started [2] 14/19
49/22
Starting [1] 39/14
state [5] 15/2
81/25 82/1 117/1
119/14
stated [3] 21/2
58/6 114/25
statement [15]
37/21 37/24 65/21
65/25 68/23 74/17

73/1 77/2 77/3
77/4 77/6 79/21
79/24 80/5 80/20
statements [25]
34/12 34/17 34/22
65/5 65/19 66/16
67/8 72/4 72/25
73/5 76/1 76/6
76/11 76/13 77/18
78/3 90/17 93/13
93/18 105/2
120/20 122/22
122/24 123/17
136/20
states [12] 1/1
1/3 1/9 3/4 3/9
21/25 33/15 33/17
58/5 114/1 118/10
127/11
stating [2] 132/2
132/4
statute [73] 11/9
34/12 34/15 34/16
34/17 34/18 34/23
35/9 35/12 36/10
38/21 39/10 41/6
42/4 42/18 47/9
50/12 52/18 53/1
53/4 55/11 55/17
56/11 56/13 57/5
57/14 60/4 60/15
60/22 61/7 62/4
63/12 63/21 64/5
65/22 66/10 67/4
67/5 71/16 71/20
71/22 72/1 72/2
72/8 72/15 77/15
77/17 78/10 97/24
102/13 105/4
105/4 105/16
105/25 106/6
106/11 106/21
107/3 107/6 110/8
110/10 110/11
110/15 110/22
111/4 125/24
128/3 128/6 128/7
128/14 128/15
128/22 128/23
statute's [2]
77/19 104/24
statutes [1] 111/9
statutory [1]
111/7

**S**

**stenotype** [1] 2/7
**step** [6] 17/9 25/1
25/12 30/19 32/8
34/20
**STEPHEN** [3] 1/6
3/4 14/20
**steps** [2] 25/4
132/24
**Steven** [1] 41/4
**still** [11] 9/23 33/8
50/15 53/14 73/4
76/11 94/8 95/17
97/5 105/13
117/12
**stipulate** [1] 93/5
**stipulation** [1]
93/9
**stops** [1] 24/20
**story** [1] 126/19
**straight** [1] 27/7
**straightforward**
[2] 15/21 33/4
**Street** [2] 1/14
1/20
**stretch** [1] 124/8
**strict** [1] 4/13
**strictly** [1] 5/20
**strictures** [1]
119/20
**string** [1] 41/9
**strong** [1] 9/9
**stronger** [1] 10/9
**stuck** [1] 62/3
**stuff** [2] 59/16
136/19
**styled** [1] 20/11
**subject** [9] 40/13
51/21 51/22 53/22
59/22 62/6 72/16
102/9 102/14
**subjected** [2]
33/21 34/11
**subjecting** [1]
33/10
**submission** [1]
142/17
**subordinate** [1]
51/23
**subordinates** [2]
42/5 42/13
**subpoena** [93]
6/4 9/4 9/11 9/16
12/2 15/2 16/10

16/11 16/20 16/20
16/22 17/10 17/11
17/13 17/14 17/24
25/2 26/25 27/10
28/6 28/11 28/23
29/19 38/2 38/2
39/9 39/20 40/15
47/15 47/21 48/2
48/4 48/9 48/17
48/18 61/12 62/17
68/12 69/3 69/5
78/10 79/20 85/1
85/7 85/12 86/6
86/22 87/5 87/24
88/13 88/16 92/19
92/22 93/22
102/20 105/11
106/18 108/1
108/15 109/4
113/14 113/18
116/8 116/11
116/18 116/19
117/7 117/8
117/24 118/16
118/21 118/23
119/3 119/5 119/9
120/2 120/6
120/22 121/9
122/1 122/5 123/1
123/25 124/1
124/3 124/15
124/21 124/22
124/24 125/15
126/25 127/12
127/20
**Subpoena's** [1]
89/22
**subpoenaed** [8]
28/16 73/23 74/22
78/19 98/9 99/19
108/2 119/16
**subpoenas** [16]
17/1 23/10 23/23
27/21 28/19 50/23
86/10 87/25 88/1
88/6 94/24 95/18
100/22 101/5
132/8 137/11
**subsequent** [4]
55/16 57/1 92/23
93/1
**substance** [1]
103/19
**substantial** [2]

substantially [1]
138/22
**substantive** [2]
13/25 14/4
**substantively** [1]
14/8
**substitute** [1] 6/1
**such** [19] 35/2
35/10 35/11 44/12
57/17 71/19 89/22
114/20 116/6
116/8 121/2
121/12 121/18
124/6 124/9
126/16 127/1
127/2 130/6
**sufficient** [3]
58/19 122/19
128/16
**sufficiently** [1]
97/11
**suggest** [6] 27/23
55/16 61/18 61/22
71/9 128/5
**suggested** [2]
65/12 113/24
**suggesting** [2]
73/8 96/5
**suggestion** [1]
35/6
**suggests** [1]
118/6
**Suite** [1] 1/17
**summarize** [1]
89/17
**summoned** [5]
14/21 77/17
109/20 114/3
117/3
**supersede** [1]
39/24
**supply** [1] 122/7
**support** [1] 21/15
**supports** [2]
113/13 123/6
**suppose** [4]
26/17 110/7
138/17 142/16
**supposed** [3]
14/25 84/2 97/18
**Supreme** [16]
5/18 6/17 7/2 7/6
7/9 34/8 83/17

100/17 105/23
107/6 114/24
115/3 115/22
**sure** [8] 5/1 24/15
29/9 33/2 46/11
69/7 124/7 137/4
**surplusage** [1]
126/24
**surprise** [1]
111/24
**surprised** [1]
105/12
**surrebuttal** [1]
4/6
**Susie** [3] 44/1
44/3 57/20
**suspicion** [1]
26/5
**sweep** [1] 21/18
**system** [1] 12/8

**T**

**tactic** [1] 108/5
**tailend** [1] 141/24
**take** [18] 8/13
32/22 32/23 39/19
43/22 54/2 62/7
62/7 64/16 88/22
88/22 90/19
112/13 113/4
124/12 135/12
140/14 142/6
**taken** [7] 4/8
16/23 17/8 56/12
91/5 132/24 133/9
**takes** [2] 50/8
76/22
**taking** [10] 9/17
26/22 46/22 51/2
109/17 109/18
130/14 132/9
136/15 139/10
**talk** [19] 5/21 5/22
10/2 22/20 31/1
40/5 40/24 43/25
52/2 52/3 56/16
59/4 61/25 62/8
64/2 66/24 76/4
101/21 120/6
**talked** [5] 43/2
68/3 69/2 101/12
137/15
**talking** [22] 11/10

85/16 86/16 88/13
86/18 87/18 91/2
18/10 18/10 29/18
30/14 40/11 40/11
41/20 43/11 43/22
44/14 44/15 54/24
60/25 65/7 66/23
93/17 93/23 128/1
131/10 132/3
136/7
**talks** [4] 52/5 58/1
58/10 102/18
**Tallmadge** [1]
104/14
**tandem** [1]
134/20
**targeting** [1]
129/19
**targets** [1] 128/13
**team** [1] 98/9
**technical** [2]
97/22 136/14
**technique** [1]
24/3
**Ted** [5] 39/15
51/16 56/4 56/5
106/13
**tees** [2] 99/5 99/6
**television** [1]
140/3
**tell** [8] 30/15 32/9
32/11 44/3 56/18
62/21 93/11
124/13
**telling** [6] 30/16
30/18 35/25 36/1
79/25 126/19
**tells** [1] 104/17
**Ten** [1] 112/8
**tend** [1] 127/2
**tenet** [1] 33/6
**term** [4] 15/20
29/17 110/10
117/15
**terms** [8] 6/5 15/2
28/3 30/5 43/4
62/3 76/7 100/21
**test** [2] 24/15
103/5
**testified** [4] 19/2
28/21 28/25 118/8
**testify** [18] 18/7
19/15 28/16 29/2
36/24 58/21 62/11
69/10 70/5 70/6
70/7 70/15 70/16

**T**

**testify... [5]** 81/1
98/12 109/22
118/11 129/13
**testifying [5]**
18/11 29/20 72/12
116/15 137/21
**testimony [20]**
18/14 49/12 50/24
64/18 73/23 78/12
79/7 95/19 103/11
104/13 114/4
117/4 119/16
120/18 123/20
124/21 124/23
125/3 125/16
127/1
**testimony.' [1]**
43/1
**than [19]** 12/13
15/7 29/11 36/22
61/15 65/14 65/16
67/8 70/14 82/24
85/17 98/17 100/4
112/4 114/10
124/8 126/24
127/16 134/23
**thank [31]** 3/15
5/13 27/18 30/8
30/9 38/8 38/10
38/11 38/15 38/16
67/20 67/21 68/1
70/18 70/19 89/15
91/17 100/1
101/17 101/18
108/6 108/7 108/7
112/1 112/2 112/3
112/20 112/21
136/22 140/25
142/21
**Thanks [1]**
142/20
**that [856]**
**that's [128]** 3/13
4/10 5/21 6/10
10/1 10/23 12/20
12/24 14/22 17/7
19/9 19/12 21/5
21/22 21/22 22/2
26/12 27/17 27/25
28/2 28/14 29/9
29/16 29/21 31/8
32/20 33/13 33/15
33/15 33/16 33/23

33/24 34/18 34/28
35/15 36/15 36/16
38/22 41/10 41/25
43/2 43/9 43/25
44/6 44/7 47/24
48/20 50/6 51/6
51/14 51/15 51/23
51/25 52/15 54/10
54/21 56/3 57/10
57/18 58/17 61/9
61/14 64/9 64/9
64/24 65/2 66/1
67/6 70/1 70/17
70/18 70/23 71/20
72/10 72/14 73/5
75/21 75/23 76/9
76/16 79/6 79/15
79/23 80/9 81/21
81/22 83/12 85/2
86/19 87/10 90/24
91/6 92/19 93/15
93/20 94/1 98/13
98/23 100/10
100/23 102/5
103/1 104/13
105/15 105/18
106/4 106/8
106/12 108/18
108/21 109/18
109/20 109/25
110/2 111/16
111/25 113/3
115/3 116/6
119/24 126/3
134/11 134/13
135/24 136/23
141/13 141/24
142/19
**their [34]** 5/7
10/22 12/2 12/6
19/23 20/23 25/21
26/19 26/24 27/2
31/2 31/13 38/18
47/15 65/16 66/9
72/4 76/7 84/11
84/12 84/12 90/17
93/15 100/11
100/13 103/18
105/13 105/17
133/19 135/10
135/14 135/14
138/6 139/17
**them [37]** 4/10
11/1 12/23 14/16

26/17 27/3 27/12
30/24 32/7 40/24
41/18 46/15 62/10
62/20 63/4 66/5
72/12 72/13 72/17
75/22 76/19 76/24
76/25 76/25 77/25
77/25 84/20 84/21
84/21 98/10
114/12 134/2
135/6 142/12
**then [77]** 3/18
3/24 4/3 4/5 5/6
5/23 9/22 13/16
14/5 14/8 17/8
17/9 21/1 22/17
22/20 23/17 23/23
33/21 38/4 38/24
40/7 40/16 47/5
47/6 47/11 49/23
50/7 50/9 50/10
50/23 51/1 51/17
52/13 53/3 53/7
56/16 57/21 58/5
61/16 61/23 64/5
65/20 72/22 75/22
76/3 78/23 80/7
83/4 86/5 88/24
92/1 94/7 100/2
104/5 106/5
106/10 107/23
108/16 109/1
109/15 109/22
110/13 111/14
112/24 120/22
130/11 134/9
134/23 135/2
135/9 135/22
138/7 138/12
138/17 140/10
141/12 142/15
**theory [3]** 96/5
96/5 137/13
**there [112]** 6/3
6/11 6/15 6/20
7/12 7/13 7/13
7/23 10/6 15/12
16/2 16/19 18/5
18/17 24/14 25/7
25/15 26/13 31/6
31/12 35/24 36/10
37/10 40/22 40/25
44/17 44/18 48/5

51/4 51/10 52/25
57/11 58/19 59/11
61/3 62/20 62/21
63/10 65/4 66/15
69/5 71/9 72/11
72/23 73/6 73/13
75/6 76/4 77/11
78/21 79/10 79/12
79/16 79/22 80/6
80/14 80/17 82/22
83/10 83/25 84/2
84/5 84/20 86/9
86/10 86/18 87/1
88/13 90/23 91/21
92/17 93/11 94/4
94/4 94/7 94/25
97/18 102/10
102/18 103/9
104/1 105/2
106/18 106/25
107/17 107/18
107/22 108/21
114/2 114/10
115/22 117/2
119/15 120/1
124/13 125/3
125/5 125/14
125/17 128/4
128/10 130/13
131/7 131/7 132/6
133/7 137/9 138/1
140/1
**there's [48]** 6/9
7/10 10/14 14/6
14/6 17/10 19/7
23/18 32/13 34/3
34/3 37/17 39/23
41/24 48/14 49/11
50/2 54/8 56/20
60/19 65/3 69/23
74/8 74/16 75/2
76/1 76/5 78/3
78/25 79/4 79/24
82/9 91/14 91/22
91/23 93/6 94/4
94/20 94/22 95/3
95/12 99/20
100/24 101/5
103/8 104/23
111/15 111/23
**thereafter [1]**
135/3
**thereby [1]** 42/14

**therefore [6]** 60/1
60/21 72/5 84/9
87/7 103/15
**these [71]** 10/17
17/16 21/23 27/1
37/16 38/5 40/1
40/16 40/21 45/8
46/9 46/10 47/1
47/3 48/11 51/15
51/25 52/24 53/16
54/6 54/7 60/9
62/24 64/2 67/3
67/7 69/12 69/22
72/6 76/6 76/23
80/20 81/8 81/18
82/21 83/3 84/18
87/12 88/17 89/17
90/6 91/16 93/5
94/18 97/20
102/11 103/3
104/17 107/22
112/14 119/24
120/19 123/8
123/12 123/15
125/6 125/9
125/20 130/9
130/11 130/15
130/17 131/16
132/24 133/13
133/21 133/23
137/14 141/18
142/6 142/10
**thesis [1]** 38/25
**they [131]** 4/16
7/21 12/1 12/6
12/23 13/5 14/6
15/7 16/16 18/7
19/23 20/18 21/1
21/2 21/20 21/20
22/8 22/8 24/19
24/19 24/20 24/21
25/20 25/21 26/14
26/18 26/19 26/23
26/24 27/3 27/3
27/4 27/7 27/14
31/15 34/20 34/24
35/22 36/6 36/8
38/5 41/16 41/18
41/19 43/4 43/22
44/11 44/14 46/16
46/16 48/16 49/13
49/14 49/14 49/18
51/3 51/15 51/16
51/25 52/2 52/3

**T**

**they... [70]** 52/9
52/13 52/14 52/14
52/16 52/22 52/23
52/24 54/9 54/12
58/9 59/23 60/13
62/25 63/15 64/13
65/19 66/4 66/5
66/9 68/25 69/25
70/14 72/12 72/15
72/17 72/18 78/15
78/21 80/14 80/15
80/19 83/4 84/14
84/22 85/11 87/6
87/13 87/18 87/20
87/20 87/23 89/22
90/16 91/12 93/14
94/10 94/24 96/23
98/11 102/22
103/10 103/11
103/12 103/13
104/17 104/18
104/18 105/18
107/17 107/19
108/1 108/3 108/3
108/4 109/1
109/23 109/23
124/8 138/5

**they'd [2]** 103/1
135/21

**they'll [1]** 24/6
**they're [17]** 16/4
20/13 20/16 24/6
35/23 39/3 40/6
56/2 60/12 60/12
65/13 65/17 66/4
76/2 88/18 103/2
109/22

**they've [7]** 10/25
18/2 18/3 24/21
25/20 25/21 66/13

**thing [14]** 10/20
19/17 42/17 59/11
68/16 95/25 98/19
100/5 100/19
105/6 107/9
138/24 141/17
141/19

**things [18]** 5/24
10/17 13/10 32/3
40/11 52/19 52/24
62/14 66/7 86/19
89/19 89/20 93/6
103/3 134/7 140/6

**think [98]** 4/1
5/11 5/16 7/22
9/13 9/14 10/8
13/6 14/12 15/7
15/14 17/1 18/2
18/11 18/18 18/24
19/9 19/10 19/12
19/13 20/10 22/6
22/13 23/1 23/14
25/13 26/19 26/23
29/1 29/23 30/24
31/1 31/20 33/7
39/18 44/18 45/10
46/10 48/11 50/2
59/13 63/3 63/6
63/14 65/11 66/6
66/18 67/14 71/5
71/14 71/15 72/1
75/14 78/6 80/13
84/4 84/6 85/3
85/15 86/15 87/10
90/12 90/16 90/24
91/7 91/12 99/24
100/11 100/19
101/7 101/14
101/14 106/15
130/15 131/7
131/7 132/15
133/12 133/20
133/22 133/24
134/22 135/4
135/11 135/16
135/17 135/25
136/8 136/20
137/2 137/14
137/24 138/1
138/5 138/12
140/18 140/20
141/7

**thinking [4]** 28/22
47/14 133/12
141/3

**thinks [3]** 38/3
43/23 134/23
**Third [4]** 1/23
80/14 85/9 85/10
**Thirteen [1]** 6/11
**Thirty [1]** 112/6
**this [231]**
**THOMPSON [4]**
1/20 39/23 119/25
120/24
**Thompson's [1]**

**those [61]** 5/24
6/22 8/7 8/10 8/13
8/14 11/1 12/9
12/24 13/2 18/8
18/9 18/18 22/3
22/7 25/24 28/22
40/11 53/22 54/18
56/1 60/20 61/4
72/23 73/5 76/19
78/11 79/18 79/19
84/17 86/12 87/3
87/14 88/19 90/13
91/4 91/7 97/20
99/19 108/17
114/11 115/9
118/12 118/15
120/20 121/3
122/23 123/6
130/2 131/16
131/23 132/10
134/19 134/20
136/17 136/21
138/8 139/7 140/8
142/5 142/9

**though [8]** 7/4
26/19 32/8 72/15
75/6 114/25
127/15 137/3
**thought [9]** 19/22
31/16 73/2 81/18
83/8 97/17 105/7
108/1 139/10
**thoughts [2]**
112/14 136/16
**threads [1]** 45/2
**threat [2]** 38/6
55/22
**three [6]** 23/4
28/25 30/2 68/25
69/2 73/2
**threshold [3]**
72/24 77/24 81/3
**through [15]**
17/17 18/11 28/8
28/19 32/22 34/12
53/24 63/4 78/20
84/11 93/22 97/20
100/20 102/20
115/15
**throughout [1]**
49/23
**thus [12]** 113/11
114/1 114/6 117/1

**tie [1]** 46/9
**tied [1]** 40/5
**tight [1]** 33/1
**time [34]** 4/8 4/13
6/8 6/8 8/16 13/4
18/4 24/21 24/23
29/1 30/3 31/24
45/5 50/5 61/18
64/23 65/6 65/9
73/12 73/23 74/6
74/21 76/13 82/16
86/11 87/19 88/22
93/23 101/21
102/14 124/1
126/4 132/20
132/23
**times [6]** 10/22
28/25 30/2 100/6
115/15 118/4
**timing [2]** 95/18
97/6
**Tired [1]** 67/22
**title [2]** 88/14
89/20
**today [6]** 27/14
68/25 123/14
126/6 132/3 139/9
**together [6]** 32/7
46/10 131/24
131/25 139/8
141/10
**told [14]** 31/6
51/21 72/4 72/8
72/12 76/24 76/24
76/25 77/1 77/25
81/13 83/13 93/16
99/18
**toll [3]** 92/15
132/14 136/16
**tolls [1]** 93/10
**tomorrow [1]**
74/22
**tomorrow.' [1]**
120/17
**too [2]** 65/12
141/13
**took [2]** 43/6
112/22
**top [2]** 47/4 79/12
**topic [1]** 23/6

**topics [7]** 3/22
23/4 47/15 47/20
120/23 125/14
131/16
**total [2]** 108/15
109/13
**totally [1]** 21/17
**touch [2]** 24/15
24/19
**touched [2]** 24/21
25/6
**toward [1]** 129/3
**towards [1]** 62/13
**track [1]** 139/21
**transcript [3]** 1/8
2/7 143/5
**transcription [1]**
2/7
**transgress [1]**
34/15
**Transport [1]**
80/14
**trash [2]** 80/16
80/18
**treated [1]** 129/25
**trial [33]** 19/6
25/11 25/11 29/6
29/18 29/23 36/20
36/21 51/24 71/6
82/22 82/22 88/10
92/10 95/12 98/4
98/7 98/23 98/25
99/3 100/23
100/25 104/5
108/16 110/4
111/24 113/6
130/3 132/9 133/5
138/10 140/2
140/11
**tricking [1]** 75/19
**tried [1]** 25/20
**triggered [1]**
32/19
**triggering [3]**
43/9 45/19 67/6
**true [6]** 10/23
35/15 66/7 116/22
116/22 143/4
**Trump [14]** 35/18
36/12 36/13 36/22
37/18 38/3 38/4
38/13 39/23 68/5
68/10 119/25
124/14 127/19

**T**

**Trump's [4]** 37/2
124/17 124/25
125/4

**truth [1]** 114/9

**try [3]** 21/18 26/7
134/15

**trying [8]** 25/4
27/15 27/23 27/23
28/1 107/25 109/6
139/22

**turn [15]** 22/12
26/7 52/14 52/14
62/14 66/22 79/1
79/2 79/5 83/19
91/18 94/17 94/17
95/14 126/20

**turned [1]** 25/18

**turning [2]** 75/22
91/18

**twist [1]** 33/18

**two [29]** 5/4 5/24
15/20 19/18 20/3
20/6 20/11 20/18
20/22 21/7 30/23
32/3 35/13 36/25
48/1 48/16 52/19
57/14 68/15 68/21
73/19 73/20 74/8
78/7 88/18 91/21
108/9 108/17
123/16

**type [1]** 25/10

**typically [3]** 86/4
135/5 135/9

**U**

**U.S [16]** 1/12 1/13
2/2 12/20 12/24
14/22 17/25 43/20
45/4 46/5 52/5
73/3 100/17
102/17 114/4
125/24

**Uh [4]** 30/8 97/3
109/7 141/22

**Uh-huh [4]** 30/8
97/3 109/7 141/22

**ultra [1]** 54/8

**um [2]** 5/18 86/20

**unable [1]** 117/13

**unambiguous [3]**
13/16 86/9 125/11

**unambiguously
[1]** 125/6

**unauthorized [1]**
16/24

**unbelievable [1]**
27/13

**unconstitutional
[9]** 34/18 48/5
48/19 62/18
118/22 118/24
125/25 126/13
127/25

**unconstitutionall
y [5]** 34/16 126/15
126/18 128/8
129/6

**undefined [1]**
34/14

**under [47]** 9/1
15/25 21/7 22/3
39/21 42/10 50/12
53/1 53/22 71/16
72/15 73/23 76/15
78/10 80/4 83/13
84/9 84/16 85/7
85/12 88/8 90/16
90/16 91/12 92/4
92/5 96/6 98/3
98/16 98/17 98/25
99/11 103/24
105/16 106/17
114/5 114/7 116/5
117/4 119/17
127/22 129/15
130/15 132/10
133/10 136/15
139/11

**undercut [1]**
66/20

**underlie [1]** 60/2

**underlying [2]**
67/3 103/2

**undermine [1]**
102/24

**understand [27]**
7/7 8/20 27/7
27/14 31/14 31/21
34/5 45/22 61/9
61/21 63/3 65/4
67/11 81/6 82/18
84/13 90/7 96/18
97/10 109/6
109/14 131/19
137/4 137/7
137/15 139/12
141/14

**understanding [6]**
7/13 31/4 91/3
100/21 103/1
120/8

**understands [2]**
65/15 130/17

**understood [3]**
10/1 20/15 40/3

**undisputed [3]**
92/18 127/19
135/7

**unduly [2]** 4/16
55/23

**unequivocally [3]**
123/19 124/14
124/16

**unilaterally [1]**
88/1

**unique [2]** 17/10
67/9

**unit [1]** 58/13

**UNITED [9]** 1/1
1/3 1/9 3/4 3/9
33/15 33/16 58/5
127/11

**units [1]** 58/12

**unlawful [6]**
16/12 16/24 17/11
34/21 35/12
111/10

**unless [12]** 8/20
17/8 17/10 18/7
26/12 69/10 89/24
99/25 107/21
114/1 118/11
119/14

**unlikely [1]**
132/14

**unprivileged [1]**
122/12

**unquote [1]** 73/10

**unreasonable [2]**
114/16 114/18

**unrelated [1]** 31/5

**unseemly [1]**
58/3

**until [4]** 101/2
131/15 131/22
141/8

**unusual [2]** 21/23
68/17

**up [43]** 4/8 4/22
6/21 18/14 19/4
24/13 30/19 31/16

**32/8 44/10 51/1
51/2 62/23 68/2
69/15 69/15 70/1
70/22 74/9 74/14
74/23 79/8 79/11
80/25 82/4 83/7
83/9 96/3 96/8
99/5 99/6 104/22
105/15 107/10
108/24 113/4
118/14 118/16
133/25 134/5
140/14 140/21
142/6**

**update [1]** 49/14

**upon [4]** 18/21
114/4 117/4
126/25

**upset [1]** 94/10

**us [9]** 25/25 28/24
35/4 93/16 99/18
101/3 113/1
130/16 131/21

**use [19]** 7/5 13/9
14/5 36/10 38/20
43/4 48/18 51/14
52/17 65/13 69/8
92/8 93/8 93/10
93/13 105/1
114/22 115/1
129/23

**used [8]** 6/6 7/9
9/7 29/17 50/10
108/3 110/10
119/5

**uses [1]** 115/4

**using [2]** 24/2
94/25

**usually [1]** 114/23

**usurp [1]** 118/24

**usurping [1]**
11/17

**V**

**vacancies [2]**
85/18 85/18

**vague [7]** 34/14
34/16 34/23 72/2
128/10 128/10
129/6

**vagueness [6]**
33/22 126/18
128/8 128/13
128/13 128/24

**valid [13]** 12/2
15/5 36/6 39/10
46/15 52/16 57/20
59/9 59/9 67/1
119/24 120/2
129/21

**validity [1]** 122/10

**validly [8]** 9/5
9/12 9/16 15/2
17/6 85/1 117/25
119/9

**various [4]** 84/12
115/21 131/5
133/15

**VAUGHN [8]** 1/12
3/9 70/21 89/4
108/8 112/3 134/3
141/1

**verse [1]** 40/21

**version [1]** 72/7

**versions [1]** 10/7

**versus [10]** 13/18
33/15 33/16 33/17
33/23 34/9 39/22
39/23 114/25
119/25

**very [26]** 4/6 4/9
5/10 9/9 10/20
10/20 23/7 26/4
27/8 27/8 35/6
64/20 68/2 94/12
97/21 100/2 100/3
101/17 103/12
106/9 132/18
133/12 136/14
136/18 137/23
138/15

**veto [1]** 127/14

**Vice [1]** 117/22

**videotape [1]**
68/18

**view [49]** 7/20
8/15 8/15 10/22
14/15 15/13 17/5
17/11 17/12 20/2
22/4 26/18 29/3
30/20 31/9 51/6
53/16 54/21 61/18
65/20 65/21 67/7
67/8 72/6 75/2
75/13 77/21 84/14
89/17 90/4 90/7
90/8 99/5 99/7
99/8 100/21 118/4

## V

**view... [12]**
122/19 123/21
125/10 127/15
129/5 130/2 131/6
133/19 134/3
134/19 134/25
137/8
**viewed [2]** 25/21
101/15
**views [5]** 73/24
135/10 135/15
139/17 140/19
**vigorously [1]**
38/4
**vindicate [2]**
58/14 87/14
**vindicated [2]**
88/9 89/21
**violate [4]** 19/4
33/10 53/4 57/17
**violated [2]** 19/8
116/12
**violates [6]** 33/21
33/22 106/11
107/12 126/14
127/7
**violation [5]** 6/23
34/21 39/1 95/3
107/2
**violence [1]**
121/3
**vis [2]** 34/22
34/22
**voice [1]** 67/22
**void [5]** 33/22
48/5 126/18 128/8
128/24
**voir [2]** 134/6
134/11
**voluntary [1]** 95/1
**vote [3]** 7/23 8/19
21/21
**voted [5]** 7/12
7/23 7/24 8/13
8/13
**vs [2]** 1/5 3/4

## W

**wait [2]** 92/25
140/11
**waiting [1]** 141/8
**waive [4]** 17/20
18/1 87/20 94/16

**waived [4]** 17/16
84/19 88/17 89/18
**waiver [2]** 23/18
88/7
**waiving [1]** 62/15
**walk [1]** 17/17
**Walter [1]** 42/16
**want [34]** 4/14
4/15 5/23 15/19
19/17 32/8 32/10
36/11 36/20 37/20
37/24 41/3 45/17
46/16 46/16 49/4
53/25 55/7 59/16
62/24 64/10 72/8
74/4 75/1 95/6
98/13 137/3
137/14 138/15
139/7 139/24
140/9 141/19
142/3
**wanted [9]** 36/7
70/18 100/5 101/7
103/10 103/13
103/13 110/18
112/23
**wants [5]** 37/4
43/25 44/2 87/14
93/5
**warning [1]** 34/15
**warrant [1]**
122/19
**warranted [8]** 4/6
53/14 114/21
116/9 124/10
130/6 139/1
139/10
**warrants [2]**
116/15 125/22
**was [172]**
**Washington [3]**
1/5 1/14 2/4
**wasn't [9]** 8/18
53/14 58/19 69/24
70/7 70/8 80/19
94/4 102/15
**way [37]** 9/14
13/24 14/13 15/25
19/14 34/1 34/8
34/17 38/17 43/19
49/5 49/10 54/14
62/12 62/15 64/10
67/7 79/20 80/17
81/19 81/19 87/17

98/20 102/16
103/5 106/8
106/13 109/5
111/11 112/24
127/20 128/9
130/10 133/10
**we [159]**
**we'd [1]** 98/8
**we'll [6]** 5/4 22/13
30/20 38/18 59/17
142/18
**we're [26]** 4/22
5/21 11/16 11/21
13/17 14/10 21/1
21/22 27/15 27/23
28/1 29/18 30/1
30/14 41/20 43/8
54/17 54/17 60/25
65/7 74/18 94/24
106/3 109/18
140/2 141/14
**we've [9]** 13/17
23/17 26/9 37/17
96/6 101/12 106/5
132/3 139/25
**weakens [1]** 57/2
**weapon [1]** 94/18
**wedge [1]** 24/12
**week [2]** 135/18
135/23
**weight [1]** 115/8
**well [56]** 5/10
6/13 6/20 10/13
10/24 11/8 12/17
14/17 15/3 15/23
17/19 17/19 18/12
19/25 20/7 24/9
25/17 27/15 28/24
29/16 31/8 32/3
35/21 36/24 37/12
37/16 44/8 44/11
44/14 46/13 54/8
62/13 64/6 64/20
66/6 70/15 73/19
83/20 84/21 87/23
91/7 91/13 98/4
98/23 98/24 100/3
104/23 107/21
109/12 116/13
117/15 117/24
121/19 133/5
138/21 141/3
**well-defined [1]**

**went [1]** 28/19
**were [50]** 6/11
7/13 8/4 8/8 8/10
10/17 13/22 15/12
21/23 27/24 28/21
50/4 50/14 54/24
57/14 59/22 61/1
64/23 68/25 72/11
72/15 72/17 73/5
73/8 73/9 76/3
79/21 80/15 80/19
83/25 84/2 84/5
84/20 86/10 87/3
93/22 94/24 95/1
97/4 97/11 98/1
104/1 106/21
108/25 109/1
109/2 109/10
110/14 136/7
141/3
**weren't [1]** 52/6
**west [2]** 54/16
80/13
**what [141]** 3/24
5/4 5/21 6/10 6/20
11/3 11/18 11/22
12/8 12/22 13/6
13/17 13/19 13/21
15/23 19/12 21/5
22/13 22/23 23/20
25/15 25/19 26/12
26/13 28/1 28/1
28/4 28/5 28/7
28/14 28/14 29/9
30/3 30/6 30/20
31/1 32/20 33/9
34/5 34/8 34/15
37/1 37/5 37/21
37/24 38/3 41/19
41/25 44/1 44/3
45/1 45/18 46/24
48/7 48/14 49/6
51/3 51/25 56/3
56/18 58/25 59/18
60/11 62/14 64/6
65/13 65/20 70/12
71/5 72/10 72/25
73/5 73/17 74/11
75/2 75/23 76/10
76/25 77/22 77/24
80/9 81/11 81/12
81/13 82/11 83/6
84/5 85/5 85/23

86/1 86/3 91/13
92/6 92/13 92/25
93/12 93/16 96/1
96/16 96/19 97/14
99/12 103/19
105/1 105/15
106/13 106/24
110/7 125/19
126/21 127/18
128/16 128/25
129/12 130/20
131/1 131/4
131/16 132/4
133/14 133/14
133/18 133/23
134/15 134/17
134/18 135/5
137/16 138/5
138/7 138/8 138/9
138/13 138/15
138/16 139/22
139/23 140/6
140/18 141/19
141/20
**what's [13]** 6/14
11/2 12/15 19/15
22/4 22/7 24/8
25/9 29/18 32/4
67/9 77/10 78/4
**whatever [9]**
28/11 29/4 29/16
29/17 54/16 77/12
83/2 106/2 111/7
**whatsoever [3]**
122/8 125/7 128/6
**when [50]** 7/12
8/7 10/14 12/6
13/16 15/14 19/18
19/22 20/21 21/21
28/6 28/7 28/22
29/25 32/19 34/9
34/22 35/8 35/10
38/21 39/8 43/12
43/13 44/16 44/22
52/15 58/9 69/14
72/18 75/1 76/8
78/8 85/15 85/16
97/16 97/18 98/8
98/10 99/18
102/22 116/22
119/8 119/11
135/4 135/11
136/7 137/14
140/21 141/24

**W**

**when... [1]** 142/5
**whenever [2]**
26/10 59/23
**where [34]** 6/9
6/17 6/18 7/9 18/2
21/7 21/17 25/9
27/4 33/3 41/23
43/25 44/15 48/9
58/3 58/11 70/23
72/20 79/13 83/3
84/13 84/15 87/10
87/16 87/19 90/10
96/14 99/15
110/15 112/14
124/19 128/1
130/25 133/20
**whether [72]** 9/11
11/3 12/23 14/2
14/8 15/16 20/7
20/19 20/21 32/15
33/20 34/10 34/10
35/17 39/24 40/12
46/1 46/3 47/11
50/7 53/2 55/20
56/1 57/18 58/20
59/8 59/12 61/8
61/11 61/12 64/11
75/12 75/13 76/23
76/23 78/3 82/21
85/6 85/11 85/13
86/23 87/4 87/17
90/4 91/22 91/23
96/15 103/2
103/17 104/19
105/2 105/3 105/8
105/20 106/25
108/20 108/24
109/25 111/18
113/9 117/10
122/8 124/14
126/7 131/12
131/12 131/18
132/17 133/19
138/9 138/25
139/4
**which [58]** 3/18
8/21 9/7 11/25
12/18 12/21 18/25
20/17 20/19 25/13
25/19 29/5 34/13
34/25 37/10 41/1
45/4 47/6 50/16
51/21 56/4 60/17

64/2 63/5 65/25
69/5 69/13 72/8
72/11 73/23 76/11
76/12 77/19 77/24
78/21 83/14 85/7
85/9 91/4 95/1
95/19 97/21 102/4
104/2 106/24
111/16 114/13
116/20 123/10
123/17 124/18
125/12 125/19
126/6 127/16
131/25 132/12
136/16
**while [4]** 79/16
114/10 131/6
131/19
**whip [2]** 20/5
21/25
**white [7]** 1/20
3/13 25/25 64/12
64/17 79/9 80/25
**who [37]** 6/1
17/12 25/25 31/23
36/23 41/8 41/23
42/5 43/11 47/5
50/4 51/21 55/13
55/18 56/14 57/6
60/16 61/16 61/23
63/8 63/16 64/17
64/18 64/23 65/5
65/8 66/22 66/24
74/3 76/3 104/16
106/20 114/16
117/21 121/3
122/25 124/1
**who's [2]** 43/18
61/23
**whoever [1]**
39/20
**whole [4]** 11/7
75/18 76/6 83/21
**whom [1]** 113/21
**why [38]** 8/6 8/15
8/15 12/15 14/3
14/14 19/11 21/22
21/22 25/24 29/16
30/15 30/17 30/18
32/9 32/11 33/4
39/12 44/6 44/7
51/15 52/23 52/24
59/4 61/2 66/1
70/10 81/7 81/15

87/16 91/24 97/10
102/19 104/18
120/6 126/10
129/5 138/16
**wiggle [1]** 7/8
**wilfulness [1]**
97/1
**will [40]** 4/3 4/4
28/12 28/13 29/10
32/5 32/23 43/4
44/19 45/7 46/4
54/13 74/18 96/19
114/13 114/24
115/2 128/19
129/22 130/11
130/14 130/21
131/2 131/17
131/22 132/2
132/14 133/4
133/7 133/14
135/6 137/17
138/7 138/9 138/9
140/14 140/14
140/19 140/19
142/4
**Willard [2]** 79/4
120/11
**willful [4]** 89/7
89/7 107/2 110/15
**willfully [8]** 28/10
28/12 81/18
110/11 110/12
126/9 131/2
131/12
**willfulness [2]**
53/5 111/9
**Williams [1]**
33/15
**wished [2]** 16/15
120/6
**withdrawn [1]**
56/8
**withheld [4]**
100/10 121/10
121/18 122/12
**within [14]** 34/17
71/20 71/23 73/9
74/10 75/9 75/12
75/13 78/20 80/6
82/25 86/6 120/19
129/8
**without [9]** 26/4
34/3 62/14 80/4
84/8 95/10 99/21

**witness [21]**
10/13 10/14 14/21
18/7 18/20 25/19
25/23 26/7 69/9
69/10 70/1 86/19
87/14 87/16 92/3
109/20 114/3
117/3 118/10
118/11 126/25
**witnesses [4]**
10/19 93/14 101/3
101/4
**witnesses' [1]**
87/13
**won [1]** 31/17
**won't [1]** 75/21
**word [11]** 6/6
6/24 60/8 77/16
77/16 84/7 89/7
114/23 115/5
115/20 129/5
**wording [1]** 82/12
**words [9]** 14/4
15/21 18/22 27/12
28/10 55/6 65/14
73/11 78/2
**work [8]** 25/25
58/22 62/10 90/21
121/4 129/3
140/22 141/15
**working [2]**
102/15 139/15
**works [2]** 54/10
128/16
**world [1]** 31/18
**worry [1]** 22/6
**worst [1]** 61/15
**would [150]**
**wouldn't [14]**
6/22 7/20 9/17
9/22 11/14 15/6
88/7 90/21 93/8
97/9 98/4 99/2
105/14 109/12
**wrap [2]** 62/23
104/22
**writers [2]** 7/4
115/1
**writes [4]** 35/25
38/1 57/22 58/5
**writings [3]** 54/15
131/11 132/8
**written [3]** 59/1

76/2 121/10
**wrong [4]** 26/18
44/1 107/11 110/5
**wrongdoing [1]**
26/6
**wrote [5]** 31/3
55/10 62/10
105/18 106/14

**Y**

**Yea [1]** 15/10
**yeah [13]** 11/12
17/19 20/1 22/10
27/22 43/15 50/18
56/20 66/18 91/3
111/12 138/23
141/6
**year [1]** 3/4
**years [2]** 26/10
49/15
**Yellin [9]** 12/18
12/20 86/16 86/16
87/10 87/12 87/16
88/8 91/12
**Yep [1]** 65/10
**yes [44]** 5/1 5/3
7/25 16/14 20/15
22/16 22/19 23/5
24/1 35/16 36/14
36/18 37/7 38/10
38/10 38/15 40/25
41/21 48/22 49/8
52/11 53/11 54/1
54/5 55/1 55/3
59/13 75/14 83/22
85/25 90/1 91/20
95/16 99/11
101/20 104/5
110/24 111/1
111/11 134/8
134/10 134/12
136/5 140/15
**yet [6]** 81/13 98/6
130/20 130/24
130/25 131/4
**York [1]** 1/24
**you [210]**
**you'd [3]** 29/24
135/21 135/22
**you're [10]** 4/21
12/6 12/8 13/4
18/10 45/22 45/23
56/18 79/25
108/23

**Y**

**you've [7]** 24/17
27/1 48/9 75/8
100/6 100/19
137/15

**your [115]** 3/3 3/8
3/11 4/20 4/23 5/1
5/3 5/13 5/14 6/1
6/23 8/20 10/4
12/15 15/13 17/5
17/11 17/17 18/25
20/2 24/1 24/13
27/15 29/3 30/11
30/13 30/15 30/16
30/18 35/20 35/23
36/14 36/16 36/18
37/3 37/9 37/16
38/11 38/16 40/25
41/21 42/1 44/24
45/21 45/22 45/24
45/24 46/7 47/2
47/23 48/12 48/25
50/6 50/24 52/8
53/8 53/16 55/3
56/5 62/12 63/5
63/10 64/21 65/2
65/11 66/18 67/20
67/23 68/1 68/3
68/15 69/23 70/20
71/17 72/6 73/16
77/10 79/25 81/6
81/15 88/23 89/5
90/7 90/8 90/19
97/14 98/7 99/8
99/9 100/5 101/20
103/22 103/22
104/17 106/22
108/6 108/9 109/6
109/14 109/23
110/3 110/15
110/24 111/9
112/2 120/18
125/3 134/4
135/21 136/22
138/12 140/15
140/17 140/24
142/20

**yourselves [1]**
3/7

**Z**

**Zelda [1]** 1/17
**zero [1]** 32/13