UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 21-cr-670 |
| v. : | |
| : | |
| STEPHEN K. BANNON, : | |
| : | |
| Defendant. : | |

### UNITED STATES' MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO THE DEFENDANT'S ELEVENTH-HOUR ASSERTION THAT HE IS WILLING TO TESTIFY BEFORE THE SELECT COMMITTEE

According to public news reports, at midnight on July 10, 2022, the Defendant claimed to the Select Committee that he would now be willing to testify before it.[1] The Defendant's last-minute efforts to testify, almost nine months after his default—he has still made no effort to produce records—are irrelevant to whether he willfully refused to comply in October 2021 with the Select Committee's subpoena. Any evidence or argument relating to his eleventh-hour efforts should, therefore, be excluded at trial.

The Defendant has been charged with criminal contempt for willfully failing to produce records and appearing for testimony in compliance with a subpoena the Select Committee served on him on September 23, 2021. The criminal contempt statute is not intended to procure compliance; it is intended to punish past noncompliance. *See United States v. Fort*, 443 F.2d 670, 678 (D.C. Cir. 1970) (finding that Congress "may 'coerce' by means of civil contempt, 'punish' by means of criminal contempt, and perhaps even both" (citing *Jurney v. MacCracken*, 294 U.S. 125, 151-52 (1935); *In re Chapman*, 166 U.S. 661, 672 (1897))). The charged defaults were

---

[1] *See, e.g.*, "Bannon, Facing Jail and Fines, Agrees to Testify to Jan. 6 Panel," N.Y. Times, July 10, 2022, *available at* https://www.nytimes.com/2022/07/10/us/politics/bannon-jan-6-trump.html (last accessed July 10, 2022).

complete at the deadlines for compliance set by the Select Committee, which were in October 2021. *See, e.g.*, *United States v. Bryan*, 339 U.S. 323, 330 (1950) ("A default does not mature until the return date of the subpoena."); *United States v. McPhaul*, 272 F.2d 627, 630 (6th Cir. 1959) ("If appellant had any legitimate excuse for not complying with the subpoena, he should have made it known to the Subcommittee on the return day."); *cf. United States v. Donziger*, -- F.4th --, 2022 WL 2232222, at *11 (2d Cir. June 22, 2022) (in the criminal contempt of court context finding that "the district court did not abuse its discretion by punishing [the defendant] for his past disobedience of court orders, even if it had since been cured.  Criminal contempt punishes retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance. . . . It is therefore beside the point that [the defendant] eventually complied with most of the court orders underlying his criminal contempt conviction" (internal quotation marks and citation omitted)).  The Defendant's purported desire to testify now does not erase his past contempt.  Evidence of it is thus irrelevant to the charged offenses and should be excluded under Federal Rules of Evidence 401 & 402.

The evidence's lack of probative value and, instead, propensity to result in confusion and a waste of time on collateral issues in violation of Federal Rule of Evidence 403, is clear when considering the circumstances of the Defendant's sudden efforts to cooperate.  First, the Defendant apparently has not told the Committee he wishes to provide documents responsive to the subpoena, so his eleventh-hour efforts do nothing to begin to cure his failure to produce records.[2]  Instead, his continued failure to comply with the subpoena's document demand while claiming he now will

---

[2] *See* "Bannon initiates talks with January 6 panel on testifying over Capitol attack," The Guardian, July 10, 2022, available at https://www.theguardian.com/us-news/2022/jul/10/steve-bannon-discussions-january-6-committee-capitol-attack (last accessed July 10, 2022).

testify suggests his actions are little more than an attempt to change the optics of his contempt on the eve of trial, not an actual effort at compliance.

Second, the Defendant's timing suggests that the only thing that has really changed since he refused to comply with the subpoena in October 2021 is that he is finally about to face the consequences of his decision to default. On June 15, 2022, the Court denied his motion to dismiss the indictment; he is now one week from trial. On June 29, 2022, former President Donald Trump's attorney, who sent the letter on which the Defendant claimed his noncompliance was based, confirmed what his correspondence has already established: that the former President never invoked executive privilege over any particular information or materials; that the former President's counsel never asked or was asked to attend the Defendant's deposition before the Select Committee; that the Defendant's attorney misrepresented to the Committee what the former President's counsel had told the Defendant's attorney; and that the former President's counsel made clear to the Defendant's attorney that the letter provided no basis for total noncompliance.[3] Even the Defendant's claim that the reason he is now willing to testify is because the former President is "waiving" executive privilege is subject to question given all of the evidence and law that has been addressed in this case, of which he must be aware, demonstrating that executive privilege never provided a basis for total noncompliance in the first place. Indeed, when the Defendant asked for an extension of the Committee's final deadline—October 18, 2021, at 6:00 p.m.—he cited *Trump v. Thompson*, Case No. 21-cv-02769 (TSC) (D.D.C.), in which the former President challenged the National Archives' ability to turn over his presidential records to the Committee, suggesting it had some bearing on the Defendant's willingness to comply. The D.C.

---

[3] The Government provided an FBI report of the interview in which the attorney made these statements to the Defendant on June 30, 2022, the day after the interview was conducted.

3

Circuit, however, long ago, in December 2021, decided in that case that even the former President's claims of executive privilege over his actual presidential records would fail. 20 F.4th 10, 32-46 (D.C. Cir. 2021). Yet, the Defendant did not change course. The Government notes as well that news reports indicate the Defendant's attorney in this case now also works for the former President and that his law firm is being paid by the former President's Super PAC.[4]

All of the above-described circumstances suggest the Defendant's sudden wish to testify is not a genuine effort to meet his obligations but a last-ditch attempt to avoid accountability. Should evidence relating to it be introduced at trial, therefore, it will lead to extensive exploration of those circumstances so that the Government can rebut the improper nullification claim to which the evidence of his efforts to testify only can be relevant: "no harm, no foul." The resulting mini-trial on an irrelevant, improper issue is the very kind of confusion and waste of resources Federal Rule of Evidence 403 is intended to preclude. Accordingly, any evidence or argument relating to the Defendant's claimed willingness to now testify before the Select Committee should be excluded at trial.

---

[4] "Despite Growing Evidence, a Prosecution of Trump Would Face Challenges," N.Y. Times, June 18, 2022, available at https://www.nytimes.com/2022/06/18/us/politics/trump-jan-6-legal-defense.html (last accessed July 10, 2022); "Trump Group Pays for Jan. 6 Lawyers, Raising Concerns of Witness Pressure," N.Y. Times, June 30, 2022, available at https://www.nytimes.com/2022/06/30/us/trump-jan-6-lawyers-witness-pressure.html (last accessed July 10, 2022)

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov