**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 21-670 (CJN) |
| v. : | |
| STEPHEN K. BANNON, : | |
| *Defendant*. : | |

## DEFENDANT BANNON'S OPPOSITION TO MOTION IN LIMINE TO BAR TESTIMONY

On July 10, 2022, the Government filed a motion to bar any evidence or argument related to Mr. Bannon's notice to the Committee that he has been advised by former President Trump, through Mr. Costello, that executive privilege is waived in order to permit him to comply with the subpoena, that Mr. Bannon is prepared to do so, and asking the Chairman of the Committee to work with Mr. Costello to coordinate the logistics [Doc. 105].[1]

### Introduction

Mr. Bannon opposes the motion and asserts that he must be permitted to adduce testimony and argument showing that he has conveyed to the Committee, through his lawyer, Mr. Costello, the letter from former President Trump and Mr. Bannon's willingness, in light of the withdrawal of executive privilege, to fully comply with the outstanding subpoena. Mr.

---

[1] The operative documents to which the Government's motion refers are attached hereto as Exhibit "1." They are the June 9, 2022 letter from former President Trump to Mr. Costello and Mr. Costello's June 9, 2022 letter to Chairman Thompson. The letters were conveyed by email from Mr. Costello to Ms. Amerling, at 12:06 a.m. on July 10, 2022, with a request to provide them to Chairman Thompson.

1

Bannon incorporates herein by reference all prior pleadings and oral argument submitted in this case.[2]

### The Evidence is Directly Relevant to Defense Story of the Case and to "Default."

The evidence at issue and argument related to it must be permitted, consistent with Mr. Bannon's Fifth and Sixth Amendment rights under the United States Constitution for a number of reasons, including, but not limited to the following: Evidence of this development and Mr. Costello's communication to the Committee must be permitted in Mr. Bannon's case-in-chief, in order to allow him to explain the relevant events in this case surrounding his reasons for not complying with the subpoena to put the impact of the withdrawal of the privilege in context (to tell his defense story of the case and put forward a supportable theory of defense), and to demonstrate that there has been no default, willful or otherwise, as required under the statute; indeed, there has been a waiver of any default, based on words and conduct subsequent to the purported (and specifically alleged) dates of default.

It must also be permitted specifically for use in cross-examination of subpoenaed witnesses Pelosi and Thompson on issues directly relevant to the accommodation process and the question of whether there has been a "default," in light of the contempt referral directive to Ms. Pelosi requiring her to continue efforts to enforce the subpoena, and in light of Chairman Thompson's continued urging for Mr. Bannon's "compliance" with the subpoena [Exhibit 2 at pdf pages 4, 6], as described at oral argument on July 11, 2022[3] and again hereinbelow.

---

[2] With respect to the discussion on this subject during the oral argument held on July 11, 2022, Mr. Bannon would direct the Court's attention particularly to pages 76-83 of the transcript from that proceeding.

[3] See also, e.g., July 11, 2022, Hearing Tr. at 61, 77, 79.

Notwithstanding the Court's July 11, 2022, oral Order, apparently prohibiting evidence of the invocation of executive privilege, given the central role executive privilege and its withdrawal played in Mr. Bannon's compliance, evidence of both the invocation and the withdrawal should be permitted as well to explain Mr. Bannon's actions.

Without waiving that position, however, in any event, evidence and argument concerning Mr. Bannon's offer to comply with the subpoena must be allowed into evidence on the question of whether there has been a default – a fact question for the jury.

It appears from the Government's motion, [Doc. 105], that its position is that there was no executive privilege[4] and the default was already complete. The Court has said, over Mr. Bannon's objection, that it will not permit evidence of executive privilege;[5] so the focus here will be on the Government's argument that the default was complete and compliance is no longer permitted vis a vis a default.

## **There Has Been No Default and This is at Least a Fact Question for the Jury**

The record in the case demonstrates that the Government is wrong. There has been no default, based on the conduct of the parties – the Committee and the House – in waiving the default date and extending it by further conduct, with Chairman Thompson insisting on compliance with the subpoena after the purported "default" date and with the contempt referral

---

[4] To the extent the Government's position on matters related to the invocation of executive privilege are based on Justin Clark's recent claims in an interview he gave to the Government on June 29, 2022 [See Doc. 105 at 3], suffice to represent to the Court here that if Mr. Clark were to testify consistent with the report of his interview provided to the defense on June 30, 2022, Mr. Costello would testify that Mr. Clark's testimony would, in significant material part be untrue and reflects the omission of other material facts.

[5] At the end of this Opposition, Mr. Bannon will address this point briefly.

directing Speaker Pelosi to continue efforts to enforce the subpoena after the purported default.[6] [Exhibit 2]. There are actually multiple relevant dates that demonstrate the point and render any default date at best ambiguous. It is a matter for the trier of fact to determine whether there has been any default at all, within the meaning of the statute.

First, the subpoena itself had return dates on it that required compliance by October 7, 2021, for the production of documents and October 14, 2021 for Mr. Bannon's appearance for a deposition. [Exhibit 3]

Clearly, however, the subpoena date does not define the default; for it was extended by words and conduct, apparently unilaterally, by Committee Chair Thompson in a letter to Mr. Costello, dated October 8, 2021. [Exhibit 4].

In that October 8th letter, after the subpoena's production date had passed, Chairman Thompson notes the failure to produce documents by October 7th; but he asks Mr. Costello to "please produce all responsive documents and records identified in the subpoena." [Exhibit 4 at Page 2, last paragraph]. This is, of course, after the return date had passed and compliance is still

---

[6] It is by now axiomatic, based on long-settled principles of contract law, that a party's conduct can constitute a waiver of a default and, specifically, that a party's continued insistence on performance after the purported default date has passed, can constitute just such a waiver. *See e.g., Bowen v. Horgan*, 295 N.Y. 267, 269, 181 N.E. 567 (1932) (Continued insistence by one party to a contract upon performance by the other party, even after default, may constitute a waiver of such default. Here the sellers of the property did insist upon performance even after default by the purchaser. So long as they insisted, they waived the default.");
*Nortel Networks, Inc. v. Gold & Appel Transfer, S.A.,* 298 F. Supp. 2d 81, 87-88 (D. D.C. 2004) ("Intent to waive a known right need not be expressly stated but may be inferred from conduct inconsistent with an intent to enforce that right." "Whether waiver has occurred is typically a question for the trier of fact.").
.

being insisted upon. Chairman Thompson sets no new date by which production was to be made, nor was another subpoena with a different date issued.

The next relevant date with respect to the document production is found in the indictment. [Exhibit 5] There it charges that Mr. Bannon willfully defaulted on the subpoena, to the extent it commanded the production of documents, by failing to produce them by October 18, 2021. [Exhibit 5 at 9].

However, the Committee surely did not consider that to actually be a default date or deadline, because on October 19, 2021, a day after the Committee voted to recommend that the House hold Mr. Bannon in contempt, Chairman Thompson made clear that compliance with the subpoena was still open to Bannon, urging him to "change (his) position." [Exhibit 2].

Chairman Thompson further notes that the Committee is still focused on "expeditiously" obtaining the testimony and documents and he notes that the Committee expects immediate "compliance by Mr. Bannon", again by his words and conduct, making it indisputably clear that after October 18, 2022, the date alleged in the indictment as the date by which Mr. Bannon "did willfully make default," [Exhibit 5 at 9] that compliance was still open to Mr. Bannon and that, therefore there could not have been any default. No new date was set by Chairman Thompson as a deadline or default date for compliance with the subpoena – compliance Chairman Thompson urged Mr. Bannon to make after the date charged in the indictment.

The date for compliance was left open and remains open, having been waived and extended by conduct. That is one reason the recent letters from former President Trump and Mr. Costello, offering compliance with the subpoena now that executive privilege has been waived is relevant and why testimony and argument on this subject must be permitted.

In further support of this point, as has been noted, in the final contempt referral from Congress, dated October 21, 2021, Speaker Pelosi is expressly directed to "otherwise take all appropriate action to enforce the subpoena." [Exhibit 2]. The language used by the House was specifically to "enforce the subpoena," certainly indicating there was an outstanding subpoena to be enforced, not one already defaulted on.

The history of relevant dates for Mr. Bannon's testimony is similar and provides even more emphatic support for this argument that there was no default and by the date charged in the indictment. All of the same conduct described above, by Chairman Thompson and in the contempt referral, applies in full force to Mr. Bannon's testimony and the default date alleged in the indictment is even earlier in Count 1. It charged that Mr. Bannon "did willfully make default" with respect to giving testimony on a date specific – October 14, 2021 [Exhibit 5 at 8]. The conduct referred to above, insisting on compliance with the outstanding subpoena with respect to both production and testimony, post-date October 14, 2022, constituting a waiver of the default date and expressly seeking compliance with the subpoena and enforcement of the subpoena after the date charged in the indictment.[7]

**Mr. Bannon Has at All Times Asserted Executive Privilege as a Basis for His Action**

The Court has said that it is not clear as to whether it is Mr. Bannon's position that the invocation of executive privilege (as opposed to reliance on advice of counsel or reliance on

---

[7] On October 15, 2021, after the fact, Chairman Thompson wrote to Mr. Costello to advise that the Committee viewed Mr. Bannon's failure to meet the October 7 and October 14 dates in the subpoena as non-compliance and advises that the Committee will meet on October 19, 2021 to consider invoking contempt procedures; but, again, in his letter of October 19, 2021, **after** the referral vote to which he referred, Chairman Thompson made it crystal clear that even then, compliance was still open to Mr. Bannon referring to the Committee's expectation of "compliance" by Mr. Bannon and of their continuing focus on trying to obtain his testimony and documents [Exhibit 2, Thompson letter at Page 2].

public authority or the OLC opinions) excused him from complying with the subpoena. Yes, this is Mr. Bannon's position and has been at all times in this case. The Court is mistaken. Mr. Bannon expressly made that argument in his Motion to Dismiss and then wrote that the OLC opinions on which he relied were fully consistent with this argument. [See e.g., Doc. 58 at 14-15; 16; 43-46]. He has made this same argument since the Government's first motion seeking to bar his defenses in this case. It is a defense that he has urged all along that he must be permitted to raise under the authority of *United States v. United States House of Representatives*, 556 F. Supp. 150, 152-153 (D. D.C. 1983); *Barenblatt v. United States*, 360 U.S. 109 (1959); *Ansara v. Eastland*, 442 F.2d 751 (D.C. Cir. 1971); *Tobin v. United States*, 306 F.2d 270, 276 (D.C. Cir. 1962), and *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020). He has asserted his position that executive privilege justified his actions based on the same legal principles he has emphasized provide the foundation for the OLC opinions he repeatedly has referred to for their consistent conclusion that the invocation of executive privilege makes it appropriate for the witness to not appear or comply with the subpoena altogether. It is not just that he relied on the OLC opinions; it is also that he relied on the legal principles on which they are based and with which he agrees, and has described in detail in his submissions and therefore it is his argument as well that, based on the presumption of validity, separation of powers concerns and all of the other reasons underlying the cited OLC opinions, his conducted was justified by executive privilege.

To summarize and be clear once and for all, at all times in this case, among other defenses, including those related to the Committee rules and composition issues, Mr. Bannon's intended defenses have been that his response to the subpoena was justified and therefore not a "willful" "default," as he believes those terms are defined in the law, by (1) the invocation of

executive privilege standing alone (independent of the OLC opinions, but based on the legal principles described in the Olson 1984 Memo and other OLC opinions which Mr. Bannon has adopted), (2) the advice of counsel, following the invocation of executive privilege, on which he fully relied, (3) public authority in connection with the invocation of privilege, and (4) the OLC opinions on which Mr. Bannon reasonably relied (and on which his attorney reasonably relied and told him he must rely) – the entrapment by estoppel defense.[8]

## Conclusion

There is some irony in the Government's motion and its posture in this case. One might have thought that if the actual goal of the Committee were to get Mr. Bannon's testimony, it would be leading the way, working in tandem with the Government, as it has in the prosecution of this case, to shift gears and welcome the argument that there has been no default, given the withdrawal of executive privilege and Mr. Bannon's ability now and expressed willingness to produce the documents and testify before the Committee. For if there already has been a default on the subpoena, then that disposes of the subpoena and the underlying obligation. *See, e.g. United States v. Costello*, 198 F.2d 200, 204 (1952) (once there has been a willful default by an expression by the witness that he will not comply, the committee cannot attempt to multiply the contempt charges by trying to compel more answers). Instead, Mr. Costello has heard nothing

---

[8] Of course, the other justification Mr. Bannon has asserted for his response to the subpoena is based on the legal principles underlying the OLC opinions he has cited for the proposition that the subpoena is invalid and unconstitutional if the Committee would not let the privilege holder's counsel to attend any giving of testimony, as well as his reliance on those OLC opinions, pursuant to the defense of entrapment by estoppel. *See Congressional Oversight Of The White House*, *supra*, at *56 ("subpoenas requiring White House personnel to testify without agency counsel are therefore without legal effect and may not constitutionally be enforced, civilly or criminally, against their recipients"); *Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 2019 WL 2563045 (O.L.C.) at *1 (May 23, 2019).

back from the Committee in response to his letter offering full compliance with the subpoena and explaining why Mr. Bannon can now comply and the Government does not want the jury to hear that Mr. Bannon has offered compliance and has done so now because of the withdrawal of privilege.  The Government's approach in this case is revealing and, one might suggest hardly well serves the public interest or its constitutionally mandated accommodation obligation, if, indeed, the goal in this matter really ever were hearing from Mr. Bannon before the Committee. Mr. Bannon must be permitted to adduce testimony and argument on the recent filings at issue.

Dated: July 13, 2022

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

/s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

/s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of July, 2022, a copy of the foregoing Supplement was filed through the Court's CM/ECF system and was served *via* electronic delivery on counsel of record.

/s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)