# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-670 |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO THE DEFENDANT'S ELEVENTH-HOUR ASSERTION THAT HE IS WILLING TO TESTIFY BEFORE THE SELECT COMMITTEE

In his opposition to the Government's motion in limine to exclude his last-minute overture to the Committee, the Defendant articulates three reasons why his alleged attempt to provide testimony to the Committee is relevant. First, the Defendant suggests he needs it to present evidence, in defiance of the Court's order to the contrary, of his mistake-of-law defense regarding executive privilege. *See* ECF No. 107 at 2 (claiming the evidence should be admitted "to allow him to explain the relevant events in this case surrounding his reasons for not complying with the subpoena to put the impact of the withdrawal of the privilege in context"). The Court has already found mistake-of-law defenses are not available under the contempt statute and the Government will not further address the Defendant's continued efforts to relitigate settled issues here. Second, the Defendant suggests that the evidence is relevant to his new claim that the Committee extended the date for his compliance. Third, he claims, with no legal basis, that he is entitled to present the evidence to claim that the Committee "waived" the default of his subpoena. *See* ECF No. 107 at 3 (claiming "[t]here has been no default, based on the conduct of the parties—the Committee and the House—in waiving the default date and extending it by further conduct"). These claims are meritless. The Government's motion should be granted and the evidence excluded.

I.      **Factual Background**

On September 23, 2021, the Committee issued the Defendant a subpoena requiring him to produce responsive documents on October 7, 2021, and to appear for a deposition on October 14, 2021. *See* Indictment, ECF No. 1, ¶ 7-8.

By the deadline for a document production on October 7, 2021, at 10:00 a.m., the Defendant had produced no documents to the Committee. *Id*. ¶ 15. Indeed, the Defendant had not communicated with the Committee and had made no efforts to comply between the date he was served with the subpoena and 10:00 a.m. on October 7. He was thus in willful default at that time. Instead of complying, the Defendant's attorney sent a letter to the Committee's chief counsel later in the evening on October 7, after the deadline had passed, stating that the Defendant would not produce documents or testify as required by the subpoena based on a letter from the former President's attorney referring to executive privilege. *Id*. ¶ 16.

The following day, on October 8, 2021, the Committee Chair responded to the Defendant in writing and rejected his reasons for not producing documents or testifying. Ex. 1 at 1-2. The Chair also informed the Defendant that he was still obligated to provide documents and stated that "the Select Committee expects Mr. Bannon's appearance at the time and place designated in the Subpoena for a deposition and respond fully to questions by the Select Committee." *Id*. at 3. The Chair informed the Defendant that if he had a privilege claim to make he had to do it on a question-by-question basis at the deposition. *Id*. The letter continued, "Please be advised that the Select Committee will view Mr. Bannon's failure to respond to the Subpoena as willful non-compliance with the Subpoena. His willful non-compliance with the Subpoena will force the Select Committee to consider invoking the contempt of Congress procedures . . . which could result in a referral from the House to the Department of Justice for criminal charges." *Id*.

On October 13, 2021, the Defendant's attorney wrote a letter to the Committee reiterating

his position with respect to executive privilege and again refused to produce documents or testify. Indictment ¶ 18.

On October 14, 2021, the Defendant did not appear for his deposition as required. *Id*. ¶ 19. He was, again, in willful default.

On October 15, 2021, the Committee Chair wrote to the Defendant again. In the letter, the Chair stated, "Mr. Bannon has now willfully failed to both produce a single document and to appear for his scheduled deposition. The Select Committee believes that this willful refusal to comply with the Subpoena constitutes a violation of federal law." Ex. 2 at 1. The letter then informed the Defendant that because he was in willful default, the Committee would be meeting on October 19, 2021, to consider invoking the criminal contempt of Congress process. *Id*. at 2. The Committee then told the Defendant that if he believed "that there were any additional issues relating to his non-compliance with the Subpoena that have not been addressed" he should submit them in writing by 6:00 p.m. on October 18 for the Committee's consideration in its contempt deliberations. *Id*. at 2-3. The Defendant provided the Committee with nothing by that time. Instead, the Defendant submitted another letter, after the 6:00 p.m. deadline, merely asking for more time.

## II. The Defendant's Late Effort to Comply Cannot Inform His Intent at the Time of Default.

"'Default' is, of course, a failure to comply with the summons." *United States v. Bryan*, 339 U.S. 323, 327 (1950); *see also* "Default," Merriam-Webster, available at https://www.merriam-webster.com/dictionary/default (last accessed July 13, 2022) (defining "default" as a "failure to do something required by duty or law" and "failure to appear at the required time in a legal proceeding"). Accordingly, a default "mature[s]" on the return date of a congressional subpoena. *Bryan*, 339 U.S. at 330 ("A default does not mature until the return date

3

of the subpoena."). A default occurs, therefore, whenever a witness is given a "clear-cut" choice between compliance and contempt and chooses not to comply. *See Quinn v. United States,* 349 U.S. 155, 166 (1955). The date for compliance can be extended, but where the date for compliance is clear and the defendant does not comply, the defendant is in default at the deadline.

In the Defendant's case, the unambiguous date of default for providing testimony was October 14, 2021, at 10:00 a.m. If the Defendant wishes to argue that, at the time of the deadline, he did not understand the Committee's October 8 letter to him to be demanding he appear for testimony on October 14 despite his executive privilege claim—in other words, that the Committee did not give him a choice between compliance and contempt on that date—he is free to do that. He will fail because of the plain language of the Committee's letter and his repeated admissions that his failure to comply was not due to some mistake, but such a defense is available to criminal contempt defendants. *See Flaxler v. Untied States*, 358 U.S. 147, 150-51 (1958) (finding no default occurred on the return date of the subpoena where the relevant committee, at the hearing on the return date, told the defendant he had ten additional days to produce records).

The Defendant, however, suggests that evidence of his last-minute effort to provide testimony, nine months later, somehow informed his understanding on October 14. This cannot possibly be the case, given that it post-dates the charged conduct. The Defendant's disregard of the deadlines set by the Committee was either intentional at the time he disregarded them or it was not. Arguing that his later compliance somehow informed his intent to default at the time of the charged offense, on the other hand, is like an argument by a defendant in a fraud or embezzlement case that, because he paid the money back after he stole it, he cannot be guilty of the original crime. *See United States v. Sindona*, 636 F.2d 792, 800 (2d Cir. 1980) (finding repayment of fraudulently obtained funds three years after the offense "as evidence of Sindona's 1972 intent is similarly

4

irrelevant. The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and could not be a defense. The immediate intent to misapply and defraud was established by the evidence." (internal citation marks and quotation omitted)); *United States v. Howard*, 245 F. Supp. 2d 24, 37 (D.D.C. 2003) (refusing to grant new trial on basis that court excluded evidence in fraud case that defendant intended to repay stolen funds after the fraud was complete because it "would have demonstrated nothing more than a last minute, desperate attempt to extract his hand from a cookie jar whose treasures he had already totally depleted and consumed before his fraudulent scheme had been detected. It was therefore irrelevant to the issue of whether the defendant intended to defraud.").

Finally, the Defendant's late claim to want to testify is irrelevant with respect to his refusal to provide documents. As the letters he attaches to his pleading show, the Defendant has never made an offer to provide documents. The indictment charges him with two different defaults. *See United States v. Orman*, 207 F.2d 148, 160 (3d Cir. 1953) ("Where there are separate refusals to produce documents or to answer separate questions it is proper for each refusal to be set forth in a separate count of the indictment."). While his eleventh-hour efforts to cure his default on the testimonial demand are irrelevant across the board, they certainly can tell the jury nothing about his default on the subpoena's document demand.

**III.   The Defendant's New Claim of a "Waived" Default is Unsupported by Fact or Law.**

In addition to his suggestion that his purported attempt at testimonial compliance a week before trial somehow informed his intent at the time he defaulted, the Defendant also claims that, because the Committee provided the Defendant with repeated opportunities to provide the information required by the subpoena after he was already in default—and even after it had voted him in criminal contempt—the Committee somehow "waived" the default. In other words, the

5

Defendant appears to want to argue to the jury that the satisfaction of the elements of the offense are nullified because the Committee did not give up in its efforts to obtain the information it needed from the Defendant. This argument does not appear to have anything to do with his late efforts to comply; he made the offer a week before trial and he does not point to any communications from the Committee at that time. Instead, the Defendant appears to be testing a new theory for his defense by relying primarily not on his latest communications to the Committee, but on the Committee's letters to him after his default—and after it and the House had voted for contempt. This newly proposed defense theory, however, has no support in the law of contempt. Indeed, the Defendant cites only inapposite contract law cases in a footnote as his purported authority. ECF No. 107 at 4 n.6.

Instead, the law of contempt demonstrates that default, once it has occurred, cannot be erased by later efforts at compliance. There is a clear difference between civil and criminal contempt—while the former is coercive, the latter is punitive. *United States v. Fort*, 443 F.2d 670, 678 (D.C. Cir. 1970) (finding that Congress "may 'coerce' by means of civil contempt, 'punish' by means of criminal contempt, and perhaps even both" (citing *Jurney v. MacCracken*, 294 U.S. 125, 151-52 (1935); *In re Chapman*, 166 U.S. 661, 672 (1897))). Last month, for instance, the Second Circuit found in a criminal contempt of court case that completed contempt—even if subsequently cured—is prosecutable. *See United States v. Donziger*, -- F.4th --, 2022 WL 2232222, at *11 (2d Cir. June 22, 2022) ("Criminal contempt punishes retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance. . . . It is therefore beside the point that [the defendant] eventually complied with most of the court orders underlying his criminal contempt conviction" (internal quotation marks and citation omitted)). The Supreme Court has made similar findings.

6

*See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828–29, (1994) ("[A] fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a 'completed act of disobedience,' such that the contemnor cannot avoid or abbreviate the confinement through later compliance. . . . When a contempt involves the prior conduct of an isolated, prohibited act, the resulting sanction has no coercive effect. "[T]he defendant is furnished no key, and he cannot shorten the term by promising not to repeat the offense."). Under the Defendant's theory, however, the district court in *Donziger* should have refused the Defendant's efforts at compliance after his contempt lest it forgo the vindication of its authority through the criminal contempt process. The Defendant's notion of "waiver" would erase the difference and create an incentive for those seeking to enforce lawful orders—whether Congress or courts—to abandon efforts to gain compliance if it decides criminal contempt is appropriate. The Defendant cites no support for an outcome that is so contrary to a system of laws meant to foster orderly compliance by those subject to it.

      The letters from the Committee that the Defendant cites in his opposition, *see* ECF No. 107 at 4-6, did not purport to waive the Defendant's default. To the contrary, as described above, they either repeatedly notified him he was in default, or, after he had been referred for criminal contempt, emphasized that the Committee still wanted the information it sought. At bottom, the Defendant is asking the Court to allow him to argue to the jury that it should blame the Committee for giving the Defendant repeated chances to provide the information it needed despite the Defendant ignoring its settled processes and orders. But both with respect to documents and to testimony, the Defendant had a "clear-cut" choice between compliance and contempt, and he chose contempt. Nothing about the Committee's exercise of discretion in offering him the opportunity to then comply changes, or "waives," his default. Just as he should be precluded from entering

7

evidence of his last-ditch effort to present an air of compliance, the Defendant should be precluded from arguing to the jury that the Committee "waived" the ability to enforce a criminal statute.

## IV.     Conclusion

There is no irony in the Government's motion and its posture in this case. Since receiving a referral from the U.S. House of Representatives in October 2021, the Department of Justice has expended its resources in investigating and prosecuting the Defendant's criminal contempt of Congress—a process wholly separate from the Committee's ongoing inquiry into that facts and circumstances of January 6, 2021. Whether the Defendant cooperates with the Committee now—though the circumstances of his offer, including its last-minute nature, its inclusion of pre-conditions for his testimony, and its silence on providing relevant documents, counsels skepticism that he will—has no bearing on his criminal case. The Defendant should not be permitted now to show similar contempt for the judicial process by ignoring the Court's orders and putting irrelevant and prejudicial evidence in front of the jury. The Government's motion should be granted.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov