## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF
### MOTION TO EXCLUDE CONGRESSIONAL EVIDENCE OR DISMISS THE
### INDICTMENT BASED ON GRANTING THE MOTION TO QUASH AND
### CONGRESSIONAL SUBPOENA RECIPIENTS'
### <u>REFUSAL TO TESTIFY OR PRODUCE DOCUMENTS</u>

Defendant Stephen K. Bannon, through undersigned counsel, hereby submits this

Supplemental Brief in accordance with this Court's July 27, 2022, Order [Doc. 137].[1]  All previous

filings and argument related to the Motion to Quash and the instant motion are incorporated herein,

including all pleadings and argument in this case and in the related case, Misc. Case No. 22-60

(CJN).  We respectfully submit that the refusal of the congressional witnesses to comply with

---

[1] The Motion is now in an unusual procedural posture.  It seeks to dismiss the indictment based on granting the motion to quash and the corresponding refusal of the subpoena recipients to testify voluntarily or otherwise, or, in the alternative, to exclude the Congressional evidence adduced by the Government at trial through Ms. Amerling [Docs. 116, 121].  During the Hearing on July 21, 2022, the Court asked whether it could reserve judgment on this Motion to Dismiss, like the then pending Rule 29 motion, while the jury deliberates and the undersigned agreed that the Court could [July 21, 2022, Tr. at 59-60].  However, since then, the Court has denied the Rule 29 motion and specifically made a finding on the sufficiency of the evidence [Doc. 137 at 1].  The instant motion is directly relevant to the sufficiency of the evidence, to the extent relief it seeks includes the exclusion of Congressional testimony.  Without that testimony, the question of the sufficiency of the evidence would be completely different.  It is not clear, for that reason, how the Court could have granted the Rule 29 motion before fully and fairly considering the instant motion – a motion on which the Court directed further briefing [Doc. 137 at 1-2] – or what relief the Court intends to consider, in light of already having decided the sufficiency of the evidence question in advance of deciding the instant motion.

Defendant's trial subpoenas seeking testimony and documents and the Court's Order quashing the subpoenas resulted in a trial that violated Mr. Bannon's Fifth and Sixth Amendment rights. In support thereof, Mr. Bannon states as follows:

### Background

Mr. Bannon assumes the Court's familiarity with all relevant facts and will simply summarize certain directly relevant facts herein. Mr. Bannon incorporates by reference, *inter alia*, the facts and argument set forth in Defendant's Motion To Exclude Congressional Evidence or Dismiss the Indictment Based on Granting the Motion to Quash ("Motion to Dismiss") [Doc. 116], in his Reply [Doc. 121], and all oral argument on the subject, including, but not limited to, the proffer provided at the Court's direction. [See July 21, 2022 Tr. at 35-66; see also July 19, 2022 Tr. at 522].

The Indictment in this case charged Mr. Bannon with two counts of Contempt of Congress, in violation of 2 U.S.C. § 192, stemming from his conduct after receiving a Congressional Subpoena for documents and testimony, issued on behalf of the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"). [Doc. 1]. Mr. Bannon accepted service of the Subpoena. There followed back and forth communications between Mr. Bannon (through his attorney) and Rep. Bennie Thompson, the chair of the Select Committee. Among other reasons, Mr. Bannon's position was that he was unable to comply with the Subpoena because President Donald J. Trump involved executive privilege and that his attorney had directed him that he could not comply as a matter of law. Mr. Bannon advised that he could and would comply if the Committee resolved the executive privilege issue with former President Trump or if a judge ordered him to comply (in the context of a civil enforcement proceeding). Nonetheless, Chairman Thompson initiated a report (H. Rept. 117-152) and resolution (H. Res. 727)

recommending that the House of Representatives find Mr. Bannon in Contempt of Congress. On October 21, 2020, the resolution passed on a largely party line vote of 229 yeas to 202 nays. The same day the matter was referred to U.S. Attorney's Office for the District of Columbia for prosecution.

On June 2, 2022, the defense served subpoenas seeking trial testimony and documents from sixteen Members of Congress and congressional staff (hereinafter "Movants"). [*See* Case No. 22-mc-60, ECF. 1 at 13]. Service of all sixteen subpoenas was accepted. *Id*. at Exs. A-P. Movants sought to quash the subpoenas. In a disingenuous and constitutionally insufficient formulation, Movants argued that:

> To the extent testimony about Bannon's subpoena from the Select Committee or his interactions with the Select Committee are material to his defense at trial, two Select Committee staff members – Chief Counsel and Deputy Staff Director Kristin Amerling and Senior Investigative Counsel Sean Tonolli – will voluntarily be made available by the Select Committee despite their Speech or Debate immunity to testify as to the narrow topics that are relevant to the elements of the charged crime and available defenses.

*Id*. at 2-3.

Movants contended – a mistaken contention as the trial testimony that is quoted in the next section of this brief demonstrates – that these two staff members (who not coincidentally were identified as Government witnesses on the Government Witness List) could provide all relevant testimony needed, such that the Members of Congress need not appear. This was a constant theme in the Motion To Quash, as reflected below:

> . . . to the extent there is a need at trial for testimony about the subpoena to Bannon, two senior staff members on the Select Committee – Ms. Amerling and Mr. Tonolli – can provide relevant testimony regarding those elements or any available defenses . . .

*Id*. at 17.

> . . . any relevant testimony can be obtained from Ms. Amerling and Mr. Tonolli.
> There is no basis to believe that any of the other subpoenaed individuals would
> have additional relevant evidence.

*Id*. at 20.

> Ms. Amerling and Mr. Tonolli will be available to testify to relevant questions from
> Bannon's counsel. There should be no questions material to Bannon's defense that
> the other subpoenaed individuals would uniquely be able to answer.

*Id*. at 26.

This Court granted the Motion to Quash. [*See* Case No. 22-mc-60, Minute Order, July 12, 2022]. That Order had a two-fold effect. First, it prevented Mr. Bannon from calling his own witnesses – namely, Members of Congress with the actual authority to issue a subpoena, opine as to the pertinence or lack thereof of requests in the subpoena and proposed deposition inquiries, take the procedural steps necessary to seek deposition testimony, authorize accommodations, pursue alternative avenues to criminal prosecution such as negotiating on executive privilege or seeking a civil adjudication of the privilege dispute, and initiate a criminal prosecution. That made it impossible to fully challenge the Government's evidence as presented through a congressional staffer. Granting the Motion to Quash denied Mr. Bannon his constitutional rights to due process of law, compulsory process, to confrontation, to effective assistance of counsel, and to a fair jury trial.

Second, the ruling had the effect of denying to Mr. Bannon the basic documents that the Government must provide to the defense in any criminal trial. The Government did not provide Mr. Bannon with any prior emails, drafts, and other statements of Ms. Amerling (excepting those that Ms. Amerling voluntarily provided to the prosecutors). In other words, Ms. Amerling asserted Speech or Debate Clause Privilege and withheld those documents in her possession or control which ordinarily must be provided to the defense in order to accord with due process. This, of

course, was in addition to all relevant and discoverable documents from the Committee and from the House to which Mr. Bannon was entitled and had sought in discovery.

On July 15, 2022, Mr. Bannon moved to dismiss the Indictment based on Movants' assertion of legislative immunity and the Court's Order granting the Motion to Quash and briefed the reasons why allowing Movants to use their privilege as both a sword and a shield would violate Mr. Bannon's Fifth and Sixth Amendment rights to due process, compulsory process, confrontation, a fair jury trial, and effective assistance of counsel. [Doc. 116].

Mr. Bannon's jury trial began on July 18, 2022. On July 21, 2022, the Court heard oral arguments on the defense's Motion to Dismiss [Doc. 116]. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court reserved ruling on the Motion until the jury rendered its verdict. [Minute Order, July 21, 2022]. On July 22, 2022, the jury convicted Mr. Bannon on both counts. On July 27, 2022, the Court ordered the Parties to provide further briefing. [Doc. 137].

### The Evidence At Trial Demonstrated That Mr. Bannon's Constitutional Rights Were Violated When He Faced Trial After The Congressional Subpoena Recipients Refused To Testify Or Produce Documents and the Motion to Quash was Granted.

Although we cannot in the limited space allowed for this supplemental brief provide every example, the evidence at trial made clear that Ms. Amerling did *not* have the knowledge or authority possessed by the other congressional subpoena recipients who Mr. Bannon was prevented from calling at trial.

For instance, a key issue at trial was whether the date(s) on the Subpoena were fixed or flexible. *See*, *e.g*., Trial Tr. Jul. 19, 2022, at 5, 13. However, Ms. Amerling could *not* provide the most basic answers at trial about the return dates on the Subpoena:

5

**COUNSEL:** *How was that date arrived upon? In other words, who decided October 7 was going to be the date that is on the subpoena?*

**MS. AMERLING:** *The ultimate decision-maker for the Select Committee is the Chair and Members of the Select Committee.*

**COUNSEL:** *So you're saying that Chairman Thompson decided that Steve Bannon should appear to produce documents or produce them in an electronic form on October 7, 2021; is that your testimony?*

**MS. AMERLING:** *My testimony is that the subpoena is directing Mr. Bannon to produce documents on that date, and the person who is authorized to sign that subpoena for the Select Committee is the Chairman of the Select Committee, Chairman Bennie Thompson.*

**COUNSEL:** *I understand both of the things you just said but I've got a slightly different question. This is a human process. So I want to know what human decided that October 7, 2021, is the date that Steve Bannon should appear to produce documents. What human being made that decision?*

**MS. AMERLING:** *Sir, I'm not sure I'm – I thought I'd answered your question.*

**COUNSEL:** *You didn't. So let me--*

**MS. AMERLING:** *Chairman Thompson signs the subpoena. He has the authority to demand that witnesses comply with the subpoena.*

**COUNSEL:** *I understand that the Chairman has the authority to sign the Committee—the subpoena. And I also understand your testimony that if the Chairman doesn't sign the subpoena, that it's invalid; is that correct?*

**MS. AMERLING:** *A valid subpoena requires the Chair's signature, yes.*

**COUNSEL:** *Ok. Now back to my question as to who, what person, decided to put October 7?*

**GOVERNMENT:** *Your Honor, the witness has answered the question.*

**THE COURT:** *I think I am going to allow this question, at least one more time. I think the witness has answered portions but not the question directly. If there is an answer.*

**COUNSEL:** *Do you know who decided that Steve Bannon should appear – do you have firsthand knowledge, firsthand knowledge of who the person is who decided that Steve Bannon should appear on October 7, 2021, to produce documents?*

**MS. AMERLING:** *With any subpoena there is generally discussion among staff, and there is advice given to the members of the Select Committee on what is the appropriate language in the subpoena. And then the ultimate decision for what is reflected in the subpoena is made by the individual who has the authority to sign the subpoena.*

Trial Tr. July 20, 2022, at 677:4-679:4.

A second major issue at trial involved the letters back and forth between Chairman Thomson and Mr. Bannon (via his attorney). Government counsel acknowledged that the letters comprised the Government's whole case.  Pretrial Hearing Tr. July 14, 2022, at 40 ("MS. VAUGHN: So -- I mean, the admission of these letters is the government's case.) Yet Ms. Amerling could not answer the most basic questions about these letters. The following exchange occurred at trial:

> **COUNSEL:** [Referencing Government's Exhibit 5] *And this is essentially your response over the signature of Chairman Thompson to Mr. Costello's letter that we just saw raising an objection. Is that correct?*
>
> **MS. AMERLING:** *This is the response of the Select Committee to Mr. Costello.*
>
> **COUNSEL:** *Well, that's something I want to ask you about, because the Select Committee is made up of people, right?*
>
> **MS. AMERLING:** *That's correct.*
>
> **COUNSEL:** *What person drafted this letter?*
>
> **MS. AMERLING:** *As I've described, letters generally are drafted by a number of staff and reviewed by members; and then Mr. Thompson is authorized to sign the letters on behalf of the Committee.*
>
> **COUNSEL:** *And can you identify for the jury any language in Government's Exhibit No. 5 that Chairman Thompson wrote?*
>
> **MS. AMERLING:** *Chairman Thompson signed the letter, so he has his name on the entire—he's representing the Committee with respect to the entire content of the letter.*
>
> **COUNSEL:** *I understand what you're saying. But what I'm asking you is: Can you identify any words in this letter that were words written by Chairman Thompson?*
>
> **MS. AMERLING:** *As I said, the process for drafting letters generally is that staff counsels draft the letters and members review the letters. So it's difficult for me to identify any one sentence to address that question.*
>
> **COUNSEL:** *How about one word?*
>
> **MS. AMERLING:** *No.*

Trial Tr. July 20, 2022, at 719:13-720:15.

Another key issue at trial was whether Mr. Bannon was subpoenaed pursuant to the authority of the U.S. House of Representatives. Ms. Amerling acknowledged that the Subpoena would be invalid if not signed by Chairman Thompson. Yet she had no knowledge whether he signed the Subpoena.

> **COUNSEL:** *Ms. Amerling, the signature at the bottom that says, "Chairman or authorized member", did you see Chairman Thompson sign Government's Exhibit No. 2?*
>
> **MS. AMERLING:** *I believe that I did but I can't say for certain. I've seen him sign some but not all.*

Trial Tr. July 20, 2022, at 686:25-687:1.

Additionally, at the Court's direction, Mr. Bannon, through counsel, made a specific and detailed proffer as to what areas of inquiry would have been directed to the subpoena recipients in order to further demonstrate, with specifics, the prejudice that resulted from granting the Motion to Quash and from being denied the evidence sought through the subpoenas. [July 21, Tr. at 35-60].[2] Mr. Bannon will not burden the Court with a full recitation here of the details of the proffer; rather he incorporates the same herein by reference and will summarize the areas raised in the proffer that provide examples of how Mr. Bannon's constitutional rights were denied by granting the Motion to Quash in the context of this trial on these Contempt of Congress charges.

Mr. Bannon began his proffer by advising the Court that the Congressional testimony was especially important because the Court had barred almost every defense Mr. Bannon had sought to raise. [July 21, 2022 Tr. at 36]. He then advised the Court that, to preserve the record, he wanted to be clear that one line of inquiry he would have pursued with the Congressional witnesses would have related to rules issues, including issues concerning the composition of the Committee

---

[2] See also Doc. 116 at 16, n.9; Doc. 121 at 2-4.

and other related issues raised earlier in the case (e.g. the lack of a ranking minority member, the failure to provide Mr. Bannon with a copy of Rule 3(b), etc.).  Mr. Bannon advised the Court that he recognized this line of defense had been barred; but he took exception to that ruling and wanted to preserve the record. Only the subpoenaed witnesses could have competently testified on decision that were made surrounding these issues and the reasons for them. [Id.]

Next, Mr. Bannon advised that a primary area of examination for the subpoenaed witnesses would have related directly to the theory of prosecution argued to the jury- that Mr. Bannon and Mr. Costello "ignored" the subpoena.  They absolutely did nothing of the kind, addressing the subpoena in letter after letter, offering to comply if the Committee worked out the executive privilege issue with former President Trump or if they would go before a judge and a judge ordered Mr. Bannon to testify after considering the privilege issue  [*Id*. at 36-39].  Mr. Bannon advised that he wanted to examine Chairman Thompson and/or the Committee members on the constitutionally mandated accommodation process, why, if Mr. Amerling testified truthfully that the Committee considered Mr. Bannon to have important information to provide, the Committee refused to pursue the course of a civil enforcement proceeding as Mr. Bannon had suggested, why they decided to proceed criminally, why they would not accommodate his reasonable request for a one week extension of time [*Id*. at 39].

Other specific material areas of inquiry, directly relevant to the charges against Mr. Bannon would have focused on why the Committee believed Mr. Bannon's testimony to be pertinent or important.  Mr. Bannon explained that he was entitled to hear this from the Committee members who made the decision to seek his testimony and documents, not from a staffer whose hearsay testimony on the subject should not have been admitted and who, in any event, had no authority to make such evaluations and corresponding decisions on subpoenas – only the Committee members

did.  [*Id*. at 40].  If the testimony were so important, why wouldn't the Committee agree to a one week extension (a courtesy it had extended to others), especially since the Committee's work and calling of witnesses continues now, some 8 months later?  What did Chairman Thompson mean when he wrote to Mr. Bannon asking him to submit his reasons for noncompliance by October 18th?  What reasons might have been availing and why?  Why the 18th?  What kind of reasons might have persuaded the Committee to "change course?"  [*Id*. at 41].  What did Chairman Thompson mean when he wrote, after his so-called deadline had passed, urging Mr. Bannon to "change course" and comply with the September 23rd subpoena?  What did that mean vis a vis the one defense the Court permitted Mr. Bannon to raise – the mistake of fact defense concerning the malleability of the dates for compliance?  [*Id*. at 42].  Ms. Amerling testified that if Mr. Bannon had appeared to testify an hour late that might have been compliance.  Would the Committee have agreed to later dates for Mr. Bannon's testimony, in light of its claimed importance, their ongoing "investigation, accommodations made to others, the constitutional imperative to accommodate, the resolution in *Trump v. Thompson*, the Jonathan Su letter?

From the Committee's perspective – those with the actual authority to modify the dates and to decide whether and when to consider Mr. Bannon in default – how flexible were the dates and times?  Why did the date on the subpoena requiring the production of documents by October 7th change to a default date of "by October 18th?  Why arbitrarily the 18th?  Why not the 23rd of December, or a month later or 6 months later?  The investigation is ongoing and the information purportedly was important.  It somehow better serves the Committee's "investigation" to pursue criminal charges than to take reasonable steps to actually get Mr. Bannon's testimony and documents (e.g. civil enforcement proceeding; giving a one week extension to study *Trump v. Thompson*)?

Congress is the complaining witness in the case.  It is hard to imagine there was no coordination between Congress and the prosecution in arriving at that date in Count II and Mr. Bannon was entitled to ask the Congressional decision makers that question, pursuant to the single defense the Court permitted.  [*Id.* at 42-44].  Chairman's Thompson's answers to these questions (his continued urging to "comply" with the subpoena; his failure to use the term "default" even through his letter of July 14, 2022) would have been directly relevant to the reasonableness of Mr. Bannon's belief that the dates were not fixed and Mr. Bannon could have demonstrated this through cross-examination.[3]  [*Id.* at 42-44].  Mr. Bannon wanted to examine the Committee members about their public statements that indicated they did not actually want to get his testimony; rather they just wanted to try to humiliate him, punish him, and make him an example – all impermissible purposes behind a legislative subpoena and directly relevant to pertinence.  [*Id.* at 45; Doc. 116 at 8].  Moreover, it is the Committee's view of pertinence, not its staffer's that controls and Mr. Bannon was entitled to examine Committee members on that threshold issue.

As the Court is aware, Mr. Bannon has asserted that it was error to deny him the defense of advice of counsel and to define "willfully" as the Court did.  Had Mr. Bannon been permitted to call Chairman Thompson to testify, he would have provided exculpatory evidence, at least to the extent that the Committee knew that Mr. Bannon's position was that he was fully relying on the advice of counsel and on his belief of the impact of the invocation of executive privilege, and

---

[3] As the Court is aware, Mr. Bannon objected to the admission of the letters into evidence on hearsay grounds [Doc. 123] and fully rejects the notion, raised at the July 21, 2022 Hearing that the letters somehow speak for themselves [See July 21, 2022 Tr. at 43-46].  The use of the letters through Ms. Amerling and without the subpoenaed letter writer and other authorizing Committee members highlighted the Confrontation Clause violation, along with the compulsory process, fair jury trial, effective assistance of counsel, and due process violations.  *See e.g. Crawford v. Washington*, 541 U.S. 36 (2004); *United States v. Nobles*, 422 U.S. 225 (1975); *Davis v. Alaska*, 415 U.S. 308 (1974).

otherwise offered to comply, if the privilege issue were resolved by a court order or resolution with former President Trump. [*Id*. at 47]. Mr. Bannon also sought to examine the Committee members about the historic tension between the branches when executive privilege is invoked, the constitutional principle of presumptive validity when it is invoked and he would have wanted the Committee members to truthfully acknowledge that they well knew that only a court, not Congress, is the ultimate arbiter of such a dispute – directly contradicting Government counsel's representations to the jury that the Committee had the right to order compliance notwithstanding the invocation of privilege or in its closing argument, that the Committee's role in the matter is like that of a "referee."

In her testimony, Ms Amerling imbued the Committee with a purportedly sincere, nonpartisan agenda of wanting to legitimately investigate the events of January 6th. Had Mr. Bannon been permitted to have the subpoenaed witnesses testify, he would have presented through cross-examination a very different picture of the Committee and its agenda (and therefore their truly improper agenda with respect to Mr. Bannon), by exposing their extraordinary conflicts of interests. [*Id*. at 52]. Mr. Bannon would have asked Chairman Thompson why, when on October 18th, President Biden, through his counsel, purported to remove former President Trump's executive privilege invocation, the Committee would not give Mr. Bannon one week to study this development and its implications – one of the issues in *Trump v. Thompson* – especially if the information they sought truly were pertinent and important. Mr. Bannon also would have examined the subpoenaed witnesses about the significance of the dates, the changes in dates, and the continuing urging for compliance after what were claimed to be the originally relevant dates; but he needed the Committee members with real authority on the subject, especially in a case in which his only permitted defense centered around the dates. [*Id*. at 56-59].

**The Indictment Must Be Dismissed or the Congressional Evidence Must be Excluded Because Mr. Bannon's**
**Constitutional Rights Were Violated When He Faced Trial After**
**The Congressional Subpoena Recipients Refused To Testify Or Produce Documents and the Motion to Quash was Granted.**

The Sixth Amendment entitles Mr. Bannon to a "meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Inherent in this right is the right to offer testimony of witnesses and compel their attendance. *Washington v.* Texas, 388 U.S. 14, 19 (1967) (it is fundamental to due process that "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense"); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (few rights are more fundamental than that of an accused person to present witnesses in his own defense.); *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973).

This Court's Order granting the Motion to Quash, even if, *arguendo*, it was appropriately granted on the merits, in the context of this case, and vis a vis Mr. Bannon's constitutional rights in this criminal prosecution, violates Mr. Bannon's Fifth and Sixth Amendment rights and dismissal is the only appropriate remedy to safeguard those rights.  The Defendant's constitutional rights in a criminal case must prevail over a claim of government privilege.  *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004).

The decision in *United States v. Rainey*, 12-CR-00291-KDE-DEK (E.D. La., July 14, 2015) [Doc. 116-1] makes clear that the dismissal of an indictment is the appropriate remedy to preserve a criminal defendant's right to a fair trial when a defendant, like Mr. Bannon, seeks relevant, material, noncumulative evidence related to his defense, but where he is precluded from obtaining such evidence due to the invocation of a constitutional privilege by a branch of the Government

13

that is prosecuting the case.  [Doc. 116-1 at 29:17-30:1; Doc. 116-2].  Just as in *Rainey*, there are "factual issues that must be developed at trial and must be submitted to the jury" regarding the subjects of inquiry identified above (and issues related to the legislative purpose of the Bannon subpoena, rules violations), which require documents and testimony from the Chairman and/or members of the Committee and the denial of the same by their assertion of privilege and the granting of the motion to quash denied Mr. Bannon his most fundamental, constitutionally guaranteed rights to compulsory process, to confrontation, to effective assistance of counsel, to due process,  to a fair jury trial, and the right to present a full defense .  [Doc. 116-1 at Tr. page 283].  *See also, United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990); *Roviaro v. United States*, 353 U.S. 53 (1957); *Jencks v. United States*, 353 U.S. 657, 670-71 (1957); *United States v. Reynolds*, 345 U.S. 1, 12 (1953) (the law "will not allow governmental privileges to work against a criminal defendant who has a substantial stake in the outcome of the trial.").[4]

Alternatively, this Court must exclude the Congressional testimony.  *Rainey, Supra.; See e.g., United States v. Nobles, 422 U.S. 225, 230-231 (1975)*[5]; *United States v. Nixon*, 418 U.S. 683,

---

[4] See also, Note, A Defendant's Right to Inspect Pretrial Congressional Testimony of Government Witnesses, 80 Yale L.J. 1388, 1411(1971); *United States v. Beekman*, 155 F.2d 580 (2d Cir. 1946); *United States v. Andolschek*, 142 F.2d 503 (2d Cir. 1944).

[5] "We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."

713 (1974) ("generalized assertion of privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial"); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).[6]

## **CONCLUSION**

The subpoena recipients' invocation of privilege and the Court's Order quashing the subpoenas denied Mr. Bannon his constitutional rights under the Fifth and Sixth Amendments, including his right to due process of law, his right to compulsory process, his right of confrontation, his right to effective assistance of counsel and to a fair jury trial.  The indictment must be dismissed or the Congressional evidence must be excluded.

Dated: August 5, 2022                                   Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

---

[6] The Court confirmed with Government counsel that it would not call Chairman Thompson and that he would not be testifying at the trial.  [July 21, 2022 Tr. at 61, 64-65].

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of August 2022, a copy of the foregoing

Supplemental Briefing was served *via* the Court's CM/ECF system on registered parties and

counsel.


                                        ___/s/ David I. Schoen_____
                                              David I. Schoen
                                              *Counsel for the Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | : |
| STEPHEN K. BANNON, | : |
| | : |
| *Defendant*. | : |

Criminal No. 21-670 (CJN)

## **ORDER**

Upon consideration of Defendant's Motion To Exclude or Dismiss, the Government's

Opposition, and the supplemental briefs submitted by the Parties, it is hereby:

**ORDERED,** that the Defendant's Motion To Exclude Evidence or to Dismiss is

**GRANTED**; and it is further

**ORDERED** that the Indictment in the above-captioned case is hereby **DISMISSED** with

prejudice.

**SO ORDERED.**

Dated: _____          _____

                                                   Hon. Carl J. Nichols
                                                   *United States District Judge*