**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

**<u>DEFENDANT'S MOTION FOR A NEW TRIAL</u>**

Defendant, Stephen K. Bannon, by and through the undersigned counsel, pursuant to
Rule 33, Federal Rules of Criminal Procedure, respectfully moves this Court for a new trial,
based on the following:

**<u>INTRODUCTION</u>**

On July 22, 2022, the jury returned a verdict of guilty on the two charges of criminal
contempt of Congress, charged in this case, under 2 U.S.C. § 192.

Rule 33 of the Federal Rules of Criminal Procedure provides, in pertinent part, as
follows:

**Rule 33.  New Trial:**

**(a)  Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and
grant a new trial if the interest of justice so requires….

**(b)  Time to File.**

(**2**) *Other Grounds.* Any motion for a new trial grounded on any reason other than newly
discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Rule 33 provides that [u]pon the defendant's motion, the court may vacate any judgment
and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). "A court

evaluates a Rule 33 motion differently from how it evaluates a Rule 29 motion because it is not required to consider the evidence in the light most favorable to the government, and it may weigh the testimony and consider the credibility of the witnesses." *United States v. Johnson*, 2007 U.S. Dist. LEXIS 14806, *20-*21, 2007 WL 666566 (D. D.C., February 28, 2007), *citing*, *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991). "A court should grant a Rule 33 motion only if "a serious miscarriage of justice may have occurred." *United States v. Johnson, Id.*, *citing*, *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990) (*quoting Tibbs v. Florida*, 457 U.S. 31, 38 n.11(1982)).  A serious miscarriage of justice has occurred in this case.

Any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial.  3 Fed. Prac. & Proc. Crim. §589 (4th ed.) (Wright & Miller).  *See e.g. United States v. Vicaria*, 12 F.3d 195 (11th Cir. 1994) (new trial motion appropriately granted for failure to give defense theory jury instruction, even if the failure was not legal error).

Mr. Bannon respectfully submits that there are many examples of reversible error in this case, all of which he has preserved for appeal.  He does not intend to address each one in this motion and the exclusion of any matter previously objected to or otherwise preserved for appeal is not indicative of anything other than that the focus of this motion is limited to a few select issues, mainly related to the jury instructions given and rejected.  All issues remain preserved.

## THE COURT'S CONSTRUCTION OF "WILLFULLY" AND ASSOCIATED RULINGS REQUIRE A NEW TRIAL

As has been discussed many times throughout these proceedings, the Government moved early on to bar Mr. Bannon from telling the jury the story of what actually happened in this case – why he did not comply with the subpoena on the dates charged in the indictment.  This began, of course, with the Government's tellingly styled "Motion in Limine to Exclude Evidence or Argument Relating to Good-Faith Reliance on Law or Advice of Counsel."  [Doc. 29].  The

Government's overreaching effort in this regard continued throughout the proceedings.  See e.g.

Docs. 35, 43, 52, 53, 54, 65, 70, 71, 72, 85, 87, 101, along with various additional filings and

argument in further support of the wholesale effort to bar Mr. Bannon from raising any defense

to the charges against him, to tell the true story of the case for the jury to consider, and positions

with respect to jury instructions directed toward that same end.[1]

---

[1] The Government's motion expressly asserted the following: [T]he Defendant's excuses for non-compliance are without merit, and his erroneous reliance on privileges and purported advice of counsel is no defense to contempt. The deliberate failure to comply with a congressional subpoena – *regardless of motivation* – constitutes the crime of contempt." [Doc. 29 at 1] (emphasis added). The Government's motion, again granted by the Court without qualification, goes even further than just referring to an advice of counsel defense (and jury instruction). The Government urged the Court to take the following extraordinary position:  "But even if his contempt were based on an erroneous but good-faith belief that he had a valid legal excuse for ignoring the subpoena's demands, whether by his own determination or his attorney's, it is no defense. All evidence and argument related to good-faith reliance on the law or an attorney's advice should therefore be excluded at trial." [Doc. 29 at 8].

At oral argument, the Government reiterated its position that, other than an accident, there is no legal justification for failing to comply with a congressional subpoena. Government counsel put it as follows: "So contempt of Congress for willful default is about whether or not you showed up; that is whether to produce records or to testify." [3/16/22 Hearing Tr. at 4] (emphasis added). "So if a defendant makes a deliberate and intentional decision not to appear, he has the requisite intent for contempt; that is, does the defendant know he's been summonsed and does he intentionally, knowing that, not show up? That is all that is required." [*Id*. at 5] (emphasis added). "And what the Supreme Court made clear is that that intentional choice not to comply, that is inherently a criminal choice. There is no innocent way that someone decides they are just not going to comply with the statute. [*Id*. at 6] (emphasis added). "And that's where contempt of Congress draws (sic), between someone who accidentally does not comply with their obligations, and someone who makes an intentional and deliberate choice not to do so." [*Id*. at 7].

Finally, in response to the Court's direct question as to what the Government needs to prove in this case on *mens rea*, the Government summed up its position as follows:  "The government would need to demonstrate that the defendant knew he had been summonsed; so that means, knew that Congress was requiring him to show up and produce records on October 7th; and that Congress was requiring him to show up and testify on October 14th. And that he knew that that was the obligation; and that despite knowing that, he decided not to comply. He has to have – the government has to prove that he was given a clear choice from Congress. Either show up or you are in contempt. That would be all that the government is required to show there." … "And it's no different from in the contempt of court context. A witness gets a summons to appear before a grand jury or to appear for testimony in trial. And if they deliberately decide, I will not appear,

The Court granted the Government's motion in wholesale fashion, holding that the reason or motivation for not complying is legally irrelevant under this criminal statute which carries a mandatory sentence of incarceration upon conviction.[2]  [Doc. 49].  [See also, Doc. 29 at 1, 8; 3/16/22 Hearing Tr. at 4, 5, 6, 7, 8; Doc. 49].  In its Order, the Court agreed with the Government that under *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961), "willfully" in the context of this criminal statute (which purports to have a mandatory minimum incarceration provision) requires nothing more than that the defendant acted "deliberately and intentionally" in not complying with a Congressional subpoena.  [Doc. 49].

The effect of the Court's Order was to bar Mr. Bannon from putting on any evidence or argument whatsoever as to the true reasons he responded to the subpoena as he did. Mr. Bannon was barred from putting on any evidence or argument that he never believed he was doing anything unlawful; and indeed, understood and believed that he responded to the subpoena in the only way the law permitted, once executive privilege was invoked.  How to respond to a congressional subpoena, let alone when executive privilege is invoked, certainly is not an intuitive process; but Mr. Bannon was prohibited from putting on evidence or argument that he

---

they are subject to prosecution for contempt. It's the same principle in the contempt of Congress." [*Id*. at 8].

[2] In contrast, Justice Thomas has noted that some commentators have suggested that it is impermissible for any crime punishable by the possibility of incarceration to dispense with a guilty *mens rea* requirement.  *Staples v. United States*, 511 U.S. 600, 616-617 (1994).  The rejection of a *mens rea* that includes some consciousness of the wrongfulness of the conduct, in favor of the standard adopted by the Court, has come under sustained criticism for many years in especially compelling terms where a term of incarceration is the possible consequence of conviction, with commentators asserting that the error in permitting the same is of constitutional dimensions. *See e.g.,* H. Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 147-152 (1962); Dubin, *Mens Rea Reconsidered: A Plea for a Due Process of Criminal Responsibility*, 18 Stan. L. Rev. 322 (1966); Note, *Criminal Liability Without Fault: A Philosophical Perspective*, 75 Colum. L. Rev. 1517 (1975).

relied on his experienced lawyer's direction that the law prohibited him from complying with the subpoena.  [Doc. 30-1]

But the situation, as it developed, was actually much more violative of Mr. Bannon's constitutional rights.  Even though he was prohibited from letting the jury know his innocent state of mind and the reasons he responded as he did – purportedly because the reasons for "noncompliance" were irrelevant as a matter of law, the Court nevertheless permitted the Government to argue its false, concocted reasons for Mr. Bannon's failure to comply.  The Government argued repeatedly and with impunity that Mr. Bannon "ignored" the subpoena and had "no justification" for doing so and that he did it because he thinks he is "above the law" and "didn't care" and "had contempt" for the Committee, and more. [See e.g. July 19, 2022 Tr. at 496:18-19; July 22, 2022 Tr. at 1030].[3]

In granting the Government's motion to bar Mr. Bannon's defense, the Court held that Mr. Bannon's reasons for not complying with the subpoena were not relevant, since "willfully" in the context of this statute uniquely does not require any proof that the defendant believed or understood his conduct to be wrongful or against the law.  In its Order, the Court indicated that it might have a different view on "willfully" if this were a matter of first impression and repeated this theme throughout the proceedings in this case, asserting the following on July 11, 2022: "As I've stressed many times, I have serious reservations that the Court of Appeals' interpretation of

---

[3] The Court also permitted Government counsel to argue to the jury that Congress had unilateral authority to require compliance with its subpoena notwithstanding the invocation of executive privilege and it allowed Government counsel to argue that Congress is situated like a authoritative "referee" with respect to the conflict. [July 22, 2022 Tr. at 1024:9-12].  Under no cognizable jurisprudential principle, consistent with the constitutional concept of separation of powers, is the Congress like a "referee" or in any way recognized as an appropriate arbiter over a conflict between Article 1 and Article 2 branch interests, especially given the constitutional presumption of validity for the invocation of executive privilege.  Only an Article 3 court can serve in that role.

willfully is consistent with the modern understanding of the word. It's not consistent with

modern case law surrounding the use of that term, let alone the traditional definition of the word.

But as I've previously held and I reiterate again today, I am bound by *Licavoli* and its holdings."

[July 11, 2022 Tr. at 115].[4]

### THE COURT'S DECISION CANNOT BE RECONCILED WITH THE RELEVANT BINDING UNITED STATES SUPREME COURT JURISPRUDENCE ON "WILLFULLY"

Mr. Bannon, of course, advised the Court on multiple occasions that he believed the

operative definition of "willfully" was legally unsupportable for several reasons, he also advised

the Court that he disagreed that the Court was bound by *Licavoli* for several reasons.  [See e.g.

Doc. 30].  Many of the errors Mr. Bannon has preserved for appeal flow directly from the

Court's adoption of this definition of "willfully."  It is, with all due respect, legally

unsupportable.  Recent decisions from the United States Supreme Court emphatically

demonstrate the error and the legally unsupportable idea that "willfully" in the context of any

criminal statute, let alone one purporting to have a mandatory minimum incarceration element,

can dispense with the fundamental requirement that there be some evidence of a wrongful or

criminal purpose.  The most obvious constitutional obstacle to such an interpretation, is its

violation of due process for the failure to give fair notice and for the potential for ensnaring the

---

[4] It is puzzling that the Court considered itself bound by the holding in *Licavoli*; but otherwise did not follow the course taken by the district court in *Licavoli*.  In *Licavoli*, while the court refused to give an advice of counsel jury instruction, based on its (mis)understanding of "willfully," it nevertheless, let the jury hear the reasons the defendant did not comply, finding that it was required to at least let the defendant tell his story and present the jury with his theory of the case, even if not legally cognizable.  [See July 11, 2022 Tr. at 67-68].  In the instant case, of course, in acceding to the Government's demand, the Court refused to allow any reference to Mr. Bannon's advice of counsel, his belief that his response was required by the invocation of executive privilege, his reliance on the OLC opinions, or his lawyer's directives and, indeed, the expressly was instructed, over Mr. Bannon's objections, not to consider his true reasons.  [Doc. 129 at 28]

innocent within its ambit.

The following universal principles concerning *mens rea*, as reaffirmed by the United

States Supreme Court just over a month ago in *Xiulu Ruan v. United States*, 132 S. Ct. 2370, 213

L. Ed. 2d 706, 2022 U.S. LEXIS 3089 at *13*-*19, 2022 WL 2295024 (June 27, 2022) provide a

helpful overview:

> "First, as a general matter, our criminal law seeks to punish the "'vicious
> will.'" *Morissette* v. *United States*, 342 U. S. 246, 251 (1952); see also *id.*, at 250,
> n. 4 (quoting F. Sayre, Cases on Criminal Law, p. xxxvi (R. Pound ed. 1927)).
> With few exceptions, "'wrongdoing must be conscious to be
> criminal.'" *Elonis* v. *United States*, 575 U. S. 723, 734, (2015)
> (quoting *Morissette*, 342 U. S., at 252). Indeed, we have said that consciousness
> of wrongdoing is a principle "as universal and persistent in mature systems of
> [criminal] law as belief in freedom of the human will and a consequent ability and
> duty of the normal individual to choose between good and evil." *Id.*, at 250, 72 S.
> Ct. 240, 96 L. Ed. 288.
>
> Consequently, when we interpret criminal statutes, we normally "start
> from a longstanding presumption, traceable to the common law, that Congress
> intends to require a defendant to possess a culpable mental
> state." *Rehaif* v. *United States*, 588 U. S. ___, 139 S. Ct. 2191, 2195, 204 L. Ed.
> 2d 594 (2019). We have referred to this culpable mental state as "scienter," which
> means the degree of knowledge necessary to make a person criminally
> responsible for his or her acts. See *ibid.*; Black's Law Dictionary 1613 (11th ed.
> 2019); *Morissette*, 342 U. S., at 250-252.
>
> Applying the presumption of scienter, we have read into criminal statutes
> that are "*silent* on the required mental state"—meaning statutes that contain
> no *mens rea* provision whatsoever "'that *mens rea* which is necessary to separate
> wrongful conduct from "otherwise innocent conduct." *Elonis*, 575 U. S., at 736
> (quoting *Carter* v. *United States*, 530 U. S. 255, 269 (2000); emphasis added). …
>
> And when a statute is not silent as to *mens rea* but instead "*includes* a
> general scienter provision," "the presumption applies with equal or greater force"
> to the scope of that provision. *Rehaif*, 588 U. S., at ___, 139 S. Ct. 2191, 2195,
> 204 L. Ed. 2d 594 (emphasis added)….

The decision in *Xiulu Ruan* focuses on interpreting "knowingly" and the corresponding

*mens rea* in the context of a criminal statute; so it is not necessarily dispositive of the required

threshold interpretation of "willfully" in the context of a criminal statute.  The decision in *Xiulu*

*Ruan* is important, though, for its emphasis on the need for a criminal statute to include a *mens rea* (here, "knowingly") element in such a way that separates criminal conduct from innocent conduct and does run the risk of ensnaring the latter within its ambit.

On this background, the words of Justice Alito, joined in his dissenting opinion by Justice Thomas, in *Rehaif v. United States*, 588 U.S. --, 139 S. Ct. 2191, 204 L. Ed. 2d 504 (2019), juxtaposing "knowingly" in the criminal context with "willfully" to emphasis that the latter, "willfully," inexorably requires knowledge that the conduct charged is illegal, are instructive. Justice Alito wrote, "… where Congress wants to require proof that a criminal defendant knew his conduct was illegal, it specifies that the violation must be 'willful.'  In ordinary speech, "willfulness" does not require or even suggest knowledge of illegality." But we have construed the term as used in statutes to mean 'intentional violation of a known legal duty.'"  *Rehaif*, 139 S. Ct. at 2205 (Alito, J. dissenting) (citations omitted).  Justice Alito then goes on to juxtapose "knowingly" with "willfully" to demonstrate that the question of whether "knowingly" requires knowledge of illegality is an open question, specifically because Congress's convention is to use "willfully" when it wants to make clear that knowledge of illegality is required.  *Id*.

In *Elonis v. United States*, 575 U.S. 723, 734 (2015), the Court quoted from Justice Jackson's famous opinion in *Morissette v. United States*, 342 U.S. 246, 250-252 (1952), in which he wrote of the principle that "wrongdoing must be conscious to be criminal" that this principle is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." The Court in *Elonis* wrote that for Justice Jackson, the "central thought" "is that a defendant must be 'blameworthy in mind' before he can be found guilty, a concept couts have expressed over time through various terms such as *mens rea,* scienter, malice aforethought, guilty

knowledge, and the like." *Elonis*, 575 U.S. at 734, *quoting from Morissette*, 342 U.S. at 252.

The Court in *Elonis* then emphasized the need to require proof that the defendant knew his conduct was unlawful when "willfulness" is charged, by presenting examples of cases that highlighted the danger of innocent conduct being ensnared within the statute's ambit, absent that requirement. *Elonis*, 575 U.S. at 735-737.

It is impossible to reconcile this Court's conclusion as to the meaning of "willfully" in the context of the criminal statute at issue here with these fundamental principles.[5]

## THE COURT'S CONSTRUCTION OF "WILLFULLY" CANNOT BE RECONCILED WITH DECISIONS FROM THIS CIRCUIT AND OTHERS

This Circuit has, in no uncertain terms, echoed these same fundamental principles enunciated *Rehaif* concerning the threshold requirement that "willfulness" in a criminal statute requires that the defendant know that his conduct is wrongful or illegal. In *United States v. Burden*, 934 F.3d 675, 689-693 (D. C. Cir. 2019), the Court wrote at length about the use of the term "willfully" in criminal statutes. The Court noted that while "willfully" is a word of many meanings, with the construction often depending on context, in the criminal context, it means acting with a "bad purpose." The Court wrote, "In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Burden*, 934 F.3d at 690, *citing Bryan v. United States*, 524 U.S.

---

[5] The Court in *Rehaif* also reaffirmed the fundamental principle that there is a "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalizes otherwise innocent conduct.'" *Rehaif*, 139 S. Ct. at 2195, *quoting from*, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994). These scienter requirements "advance (the) basic principle of criminal law by helping to 'separate those who understand the wrongful nature of their act from those who do not.'" *Id*. at 2196. The Court then characterizes the cases in which the Court "has emphasized scienter's importance in separating wrongful from innocent acts" as "legion" and many of them. *Id*.

184, 191-192 (1998).

The Court wrote further, "[W]hen Congress wants to ensure that defendants will be convicted only if they have a more culpable state of mind, it limits the crime to conduct that a defendant engages in "willfully." *Id*. Like the Supreme Court in *Rehaif*, the D.C. Circuit juxtaposed "willfully" with "knowingly" to the same end. *Id*. The Court in *Burden* went on to explain what it meant by suggesting "willfulness" has different meanings by differentiating between those limited situations in which "willfulness" means the Government has to prove that the defendant knew which law he was breaking and all other statutes charging that the defendant acted "willfully" in which the Government need only prove that the defendant knew his conduct was illegal, without knowing which specific statute he was violating. *Burden*, 934 F.3d at 690-692. But in any event, when a criminal statute charges that the defendant acted "willfully" the Government must at least prove that he knew his conduct was illegal (and the Court lists numerous cases so holding). *Id*. at 691-692.

Other Circuits have articulated these same fundamental principles when "willfulness" is charged in a criminal statute. For example, the Ninth Circuit in *United States v. Singh*, 979 F.3d 697, 712 (9th Cir. 2020) explained that the expression in *Bryan*, that "willfully" is sometimes said to be "a word of many meanings" refers to the two interpretations courts have applied. For certain particularly complicated or technical criminal statutes, like those is *Cheek v. United States*, 498 U.S. 192, 201 (1991), "willfully" requires "proof that the defendant was aware of the provision she is charged with violating." *See also, Ratzlaf v. United States*, 510 U.S. 135, 146-147 (1994). *Singh*, 979 F.3d at 712. But for other statutes, the threshold showing the Government is required to make, when "willfully" is an element of the criminal statute is the Government must simply, but at least, prove that the "defendant acted with knowledge that his

conduct was unlawful." *Singh*, 979 F.3d at 712.

There is absolutely no way to reconcile this Court's interpretation of "willfulness" with these universal principles as enunciated by this Circuit almost 60 years after *Licavoli* and the idea that the Court nevertheless is bound by a decision concerning a statute that arguably has gone into desuetude or that 60 years of subsequent jurisprudence from the Supreme Court and this Circuit can be overcome by the same simply finds no support in the relevant jurisprudence.

Every citizen accused of a crime must be afforded the constitutional right to present a defense. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). It is a fundamental right rooted in the Fifth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses, as well as other fair trial rights. That guarantee extends to the evidence and argument a defendant is allowed to present, and the jury instructions on defense theories. *See*, *e.g.*, *United States v. Johnson*, 944 F.2d 980, 988 (2d Cir.) ("A criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence."), *cert. denied*, 126 L.Ed. 2d 364, 114 S. Ct. 418 (1993).  These fundamental rights were violated in this case.

## SEVERAL CONSTITUTIONAL ERRORS FLOW FROM THE COURT'S CONSTRUCTION OF "WILLFULLY"

There are many errors of reversible magnitude that flow from the Court's decision on "willfully."  These are all preserved for appeal; but more efficiently, warrant the granting of this motion for a new trial.  They include, but are not limited to, the Court's refusal to permit argument or evidence on the defenses that Mr. Bannon did not act willfully because he relied on the advice and directives of his counsel, he acted on his belief that the invocation of executive

privilege prohibited him from complying with the subpoena, and because he acted in reliance on the Office of Legal Counsel opinions and other authoritative DOJ writings.[6]

The issues flowing from the Court's decision on "willfully" also include the error in failing to give Mr. Bannon's requested theory of defense and elements of the defense instruction, and in giving the "Elements of the Offense" instruction (Instruction 25) over Mr. Bannon's objections.[7]  Instruction 25 violates Mr. Bannon's constitutional rights in a number of ways, including failing to account for his defense theory, highlighting for the jury defenses it cannot consider, while prohibiting Mr. Bannon was adducing evidence on or arguing those defenses and all of the other issues raised in his objections.

---

[6] The Department of Justice itself has opined that there is "some doubt" that one can be said to have acted "willfully" under this statute when he acts out of obeyance to the invocation of executive privilege with respect to the subpoena at issue.  [Doc. 58-10 at pdf page 36, n.34; *Prosecution for Contempt of Congress of an Executive Branch Official Who has Asserted a Claim of Executive Privilege* at 135, n.34. *(May 30, 1984).*  Further on the subject of the OLC opinions and the Court's July 11, 2022 decision barring Mr. Bannon's defense of entrapment by estoppel, Mr. Bannon respectfully asserts that the Court unconstitutionally usurped the jury's function by prohibiting the defense as a gatekeeper, rather than permitting the jury to determine the reasonableness of Mr. Bannon's reliance on the OLC and other authoritative writings at issue and in doing so violated Mr. Bannon's right to put on a defense and to due process of law. *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 675 (1973) (Government's argument that the regulations at issue were not the applicable regulations is a question for the jury to determine – did the defendant rely on the regulations and was the reliance reasonable).

[7] Mr. Bannon filed his requested jury instructions and objections to proposed instructions on July 17, 2022, [Doc. 120]], and incorporates the same by reference herein.  He filed and orally argued additional objections and requests subsequent to that filing.  On July 21, 2022, Mr. Bannon filed additional objections [Doc. 126] to what the Court had advised were the Court's final version of the jury instructions to be given.  At that time the "Elements of the Offense" instruction was Instruction No. 24 and Mr. Bannon's objections of July 21, 2022 so reflects.  [See Doc. 126 at 2-6].  At the last minute, on July 22, 2022, notwithstanding an email the Court sent to the parties at 8:46 a.m. on July 22, 2022 purporting to provide the parties with the final version of the jury instructions that would be given, with the proviso that: "The Court does not intend to hear anything further from the parties on these questions" the Court nevertheless later added an instruction requested by the Government, over Mr. Bannon's objection, as new Instruction No. 24 [July 22, 2022 Tr. at 954-956] and the Elements of the Offense instruction became Instruction No. 25.  [See Doc. 129 at 26-27].

The instructions also violated Mr. Bannon's constitutional rights by failing to use the language in the statute charged: "willfully makes default," while using a loaded interpretation of statutory language that advised the jury that this term meant "willfully not providing testimony and information" and a "willful failure to provide testimony" and a "willful failure to produce records," rather than having the jury determine the meaning of the contested term.  Similarly, the Court failed to define "default" as requested and failed to provide an instruction on "waiver of default" or "mistake of fact" (the only defense the Court permitted), as requested.  [See Doc. 120; Doc. 126 at 6-8].

## ADDITIONAL ERRORS SURROUNDING THE JURY INSTRUCTIONS

It was error for the Court to add the language "on or about" in Instruction No. 24 over Mr. Bannon's objection. [Doc. 129 at 26; July 22, 2022 Tr. at 954-956].  The Instruction advises the jury that Count 1 charges that the offense was committed "on or about" October 24, 2021 and that Count 2 charges that the offense was committed "by or on or about" October 18, 2021.  That is not accurate.  There is a prefatory line in the indictment that dates therein are "on or about." [Indictment at 1]; but that is merely surplusage in the context of this case and it is at variance with the Government's theory of prosecution and evidence at trial, given the direct relevance of specific dates and times, according to the prosecution's case, and the language used in the rest of the indictment, especially the Counts actually charged.

Paragraph 15 of the indictment refers to October 7, 2021 at 10:00 a.m. as a "deadline" and ¶16 refers to the charged "default" as having occurred when that deadline was missed.  How can that be reconciled with the dates and times being "approximate?" Moreover, Count 1 clearly charges the commission of the alleged crime "on October 14," not "on or about" and Count 2 charges "by October 18, 2021" not "on or about."  At a minimum the instruction was

unconstitutionally confusing to the jury; but it was far worse than that, especially in light of the

only defense the Court allowed – mistake of fact – which made the dates for compliance a

central issue for the jury.

Does the subpoena really direct Mr. Bannon to produce documents by "on or about"

October 7, 2021 and appear to testify "on or about" October 14?  Was 10:00 a.m. on both days

approximate?  Of course not; but if the prefatory language is to be credited, that is how ¶¶ 8, 10,

13 of the indictment are to be read.  That was not the testimony in the case and that is not what

the subpoena provided.  The dates were not "approximate."  If Instruction No. 24 is accurate,

how approximate were the dates?  There was never any evidence at trial that the dates were

approximate; just the opposite is true.  When Mr. Bannon attempted to argue that he understood

compliance with the subpoena to satisfy it was still open, based on an October 15th letter and an

October 19th letter, the Government argued vehemently against that.  The testimony at trial was

at variance with the jury instructions and with the indictment if this is the case, creating

violations of Mr. Bannon's rights to due process of law and other constitutional fair trial rights.

This issue also is relevant to the issues raised concerning the granting of the Motion to

Quash, as questions around the malleability of the dates were among the areas of inquiry Mr.

Bannon had for the subpoena recipients.  [See e.g., Doc. 141 at 10].

At the end of closing arguments, the Court gave the jury an additional instruction without

giving the parties any opportunity to review it, comment on it, or make objections prior to giving

it to the jury, in violation of Rule 30(b) & (d).  [July 22, 2022 Tr. at 1030; Instruction No. 27,

Doc. 129 at 30].  Mr. Bannon filed a written objection at the earliest opportunity after the

instruction was given.  [Doc. 128].  The instruction followed the Court's prohibition during Mr.

Corcoran's closing argument on raising rules violations issues – specifically his reference to the

Rule 3(b) violation.  However, this is an issue the Court expressly indicated could well be an

area the defense could explore, with respect to the factual dispute surrounding it.  [July 11, 2022

Tr. at 132].  Secondly, there was testimony adduced at trial concerning the factual dispute over

Rule 3(b).  [July 20, 2022 Tr. at 712].  Additionally, Exhibit 9-B was admitted into evidence

during Ms. Amerling's examination.  [July 20, 2022 Tr. at 712-713].  The argument on this issue

was proper argument; yet Mr. Bannon was prohibited from pursuing it and the jury was given the

clear message by the prohibition, emphasized by this additional instruction, that Mr. Corcoran

had engaged in improper argument.  The prohibition and the instruction violated Mr. Bannon's

constitutional rights to a fair jury trial, to compulsory process (see Doc. 141), to confrontation,

and to the effective assistance of counsel and he is entitled to a new trial.

**CONCLUSION**

Based on all of the foregoing, and all previous submissions in this case, Mr. Bannon

respectfully submits that the jury's verdict should be set aside, in light of the many constitutional

errors attending these proceedings, with a new trial ordered.

Dated: August 5, 2022                                 Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

     /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

     /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-
Montgomery, Alabama 36106
Telephone: (334) 395-6611

Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2022, a copy of the Motion for New

Trial was served *via* the Court's CM/ECF system on registered parties and counsel.

_____/s/ David I. Schoen_____
David I. Schoen (D.C. Bar No. 391408)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :      Criminal No. 21-670 (CJN) |
| | : |
| v. | : |
| | : |
| STEPHEN K. BANNON, | : |
| | : |
| *Defendant*. | : |
| | : |

## <u>ORDER ON MOTION FOR NEW TRIAL</u>

Upon consideration of the Defendant's Motion for New Trial it is this \_\_\_\_\_ day of

August, 2022,

**ORDERED** that Defendant's Motion is **GRANTED.**

**SO ORDERED.**

Dated:

_____
Hon. Carl J. Nichols
*United States District Judge*