# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CRIMINAL NO. 21-cr-670** |
| **v.** | **:** | |
| | **:** | |
| **STEPHEN K. BANNON,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO EXCLUDE CONGRESSIONAL EVIDENCE OR DISMISS THE INDICTMENT

Defendant Stephen K. Bannon's Supplemental Brief in response to the Court's July 27, 2022, Order marks the third time that the Defendant has set forth, at length, various issues that he would explore through questioning of Members of Congress if he were able to compel them to testify at his trial.  And for the third time, the Defendant fails to articulate any materially favorable, relevant, and non-cumulative information any such witness would provide—indeed, the Defendant does not even proffer what information his desired congressional witnesses would supply, because he does not know and can only speculate.  Mere speculation, and a desire to conduct an irrelevant fishing expedition through these witnesses' testimony, does not amount to the showing the Defendant has to make to establish a compulsory process violation of his Fifth and Sixth Amendment rights.  There is a reason that the legal section of the Defendant's Supplemental Brief fails to engage with relevant and applicable legal precedent: there is no legal support for the extraordinary relief he seeks of dismissal of the indictment against him.  The Defendant's Motion to Dismiss (ECF No. 116), to which his Supplemental Brief relates, should be denied.[1]

---

[1] Given the current posture of this case, the Defendant's motion as to exclusion of evidence is no longer an issue, and in any event, he has not provided a basis for excluding relevant, admissible evidence.

I.    **The Defendant Cannot Make the Minimum Threshold Showing Required to Establish a Compulsory Process Violation Based on Congress' Assertion of the Speech or Debate Clause, Much Less any Legal Basis to Dismiss the Indictment**

As an initial matter, it is not settled law that the Court could or should undertake a balancing between the Defendant's Fifth and Sixth Amendment rights and Congress's Speech or Debate Clause privilege.  The Ninth Circuit, for instance, has held that courts cannot do so.  *See United States v. Renzi*, 769 F.3d 731, 749-50 (9th Cir. 2014) (holding "that the district court properly declined to balance Congressman Kolbe's Speech or Debate privilege against Renzi's right to present a defense," when defendant-Congressman Renzi claimed that his rights were violated when Congressman Kolbe asserted Speech or Debate privilege to prevent staffer from testifying).  Moreover, as the Government has previously noted, *see* ECF No. 117 at 4, in the analogous situation in which a defendant demands dismissal of an indictment because he cannot call as a witness an individual with a valid Fifth Amendment privilege whom the Government declines to immunize, courts do not grant such relief unless: i) the Government has exercised misconduct regarding the witness, and ii) the testimony is materially exculpatory, non-cumulative, and unavailable from another source.  *See United States v. Ebbers*, 458 F.3d 110, 119 (2d Cir. 2006).  Here, unlike in a circumstance in which the Government could immunize a witness and remove an obstacle to his testimony, the Government has no ability to override Congress's decision to assert the Speech or Debate Clause privilege or secure congressional witnesses' testimony in spite of that assertion.  Accordingly, where, as here, there has been no Government misconduct regarding the congressional witnesses, and the Defendant has not established any testimony the witnesses can provide that is materially exculpatory, non-cumulative, and unavailable from the witnesses who were offered by Congress, dismissal is not an appropriate result.

The Court need not reach the question regarding whether or how to engage in balancing in such a circumstance, because the Defendant here has not made the threshold showing necessary to allow the Court to do so.  The D.C. Circuit has repeatedly determined that other defendants making the same argument as the Defendant failed to establish a compulsory process violation based on an assertion of the Speech or Debate Clause privilege.  In *United States v. Verrusio*, 762 F.3d 1, 23 (D.C. Cir. 2014), the Court reviewed a district court's denial of the defendant's motion to dismiss based on his claim that the quashing of a subpoena to a congressional staffer "deprived him of material evidence, thereby violating his rights to compulsory process and due process." The Court first established that the defendant "must show more than the mere absence of testimony…[r]ather, he must make some showing that the evidence lost would be both material and favorable to the defense" and that a "witness' testimony is material only if its absence actually prejudiced the defendant's ability to mount a defense."  *Id*. (internal citations omitted).  It then found that the testimony that the defendant had proffered he would elicit from the unavailable witness—extraneous information that did not go to any issue the Government was required to prove—was not material.  *Id*. at 24.

The defendant in *United States v. Dean* made an argument similar to the Defendant's and failed to make a showing of a compulsory process violation.  55 F.3d 640, 662-63 (D.C. Cir. 1995). Defendant Dean was charged, in part, with making false statements during a hearing before a congressional Committee, including through her testimony that a panel allocating public funding did so "solely on information provided by the Assistant Secretary for Housing"—when Dean in fact knew that the panel had also considered information that Dean, who was not the Assistant Secretary for Housing, provided.  *Id*. at 662.  Before the district court and on appeal, Dean argued that she was entitled to call as a witness the Chairman of the Committee—in response to whose

questions Dean was alleged to have made this false statement—for the purpose of eliciting whether the Chairman was familiar with Dean's job responsibilities and that this had some bearing on whether Dean intended to make a false statement. *Id*. The Circuit determined that the proffered testimony "would not have altered the essential untruthfulness" of Dean's statement, and she was thus not prejudiced. *Id*. at 662-663.

To be successful, a defendant's proffer regarding the materiality of the information he seeks to introduce through an unavailable witness cannot be speculative. *See United States v. Kaixiang Zhu*, 854 F.3d 247, 255-256 (4th Cir. 2017) (affirming district court's denial of motion to dismiss for alleged compulsory process violation, explaining that defendant's argument was "grounded in speculation, and he cannot satisfy the materiality requirement with speculative evidence"); *United States v. Clemens*, Case No. 10-CR-223, at *45 (D.D.C. June 4, 2012) (Court denying motion for dismissal of indictment where defendant could not call a Member of Congress to testify because what the witness would say was "highly speculative," and "even assuming there can be a balancing that takes place between the Speech and Debate Clause and the defendant's due process rights, it seems to me that the evidence suggesting the due process right would have to be stronger than what we have here. And that there would have to be some definitive indication that a witness would in fact provide testimony that would in fact exonerate a defendant."). The Defendant in this case has offered nothing more than speculation and therefore cannot establish a compulsory process violation.

The unreported oral ruling in *United States v. Rainey* that the Defendant has cited repeatedly throughout his briefing does nothing to change this conclusion. Case No. 12-CR-291 (E.D.La). Indeed, a closer look at *Rainey* demonstrates that there is a very high evidentiary bar for establishing a compulsory process violation. In *Rainey*, the defendant was charged with

obstruction of Congress, in violation of 18 U.S.C. § 1505, for obstruction of "an inquiry and investigation" by the House Committee of Energy and Commerce into the BP oil spill.  *See* 12-CR-291, Second Superseding Indictment, ECF No. 179 at 15.  A subject of considerable litigation and discovery in the *Rainey* case was whether the defendant's charged contact with a Member and Chairman of a congressional subcommittee constituted an official Committee investigation—that is, whether the investigation was a "due and proper exercise of the power of inquiry"—an element of the obstruction charge against the defendant.  *See* Transcript, ECF No. 510 at 274-279 (Court recounting the litigation and discovery on this question, and stating that the defendant's contention that communications produced by the House in discovery undermined the Government's claim that the investigation was sanctioned activity on the part of the Energy and Commerce Committee was "a reasonable reading of those documents and plausible under the circumstances").  It was against this backdrop that the *Rainey* Court determined that the testimony of congressional witnesses who were participants in the communications in question constituted "relevant, material, noncumulative evidence related to his defense," *id*. at 285, and dismissed the charge.  In contrast, as described below, the Defendant's claims about the testimony that congressional witnesses would provide in this case is speculative, irrelevant, and untethered to the elements of the offenses with which he is charged.  He has failed to make any showing that the testimony in question is relevant, materially favorable, or non-cumulative, and his Motion to Dismiss should be denied.

## II.     The Defendant Has Failed to Identify Any Non-Speculative, Materially Favorable, Relevant, or Non-Cumulative Information He Was Denied

Throughout his Supplemental Brief, the Defendant contends that the congressional testimony he sought would go to various "issues at trial"—but none of the information that he proffers is relevant with respect to the elements of the offense with which he was charged, contempt of Congress.  As the Court properly instructed the jury during trial, the elements of the

offense are (1) that the Defendant was subpoenaed by the Committee to provide testimony or produce papers; (2) that the subpoena sought testimony or information pertinent to the investigation that the Committee was authorized to conduct; (3) that the Defendant failed to comply or refused to comply with the subpoena; (4) that the Defendant's failure or refusal to comply was willful.  *See* Final Jury Instructions, ECF No. 120 at 27.  All of the information that the Defendant claims he was entitled to elicit from a congressional witness is unrelated to these elements and is immaterial to any valid defense.

The Defendant's first unavailing claim is that Kristin Amerling, the Committee's Chief Counsel and Deputy Staff Director who testified at length during trial, did not have the "knowledge or authority possessed by other congressional subpoena recipients" the Defendant sought to call. ECF No. 141 at 5.  But Ms. Amerling was authorized by the House to testify as its representative, *see* 7/11/2022 Tr. at 49:15-20 (House Counsel notifying the Court that "the Select Committee has made clear that Chief Counsel and Deputy Staff Director Kristin Amerling…will voluntarily be made available by the Select Committee to testify [and can] competently address any issues necessary to any of the elements or defenses" in the case), and the Defendant's claim that any other subpoena recipient would have testified differently from Ms. Amerling as to the Committee's positions is pure speculation.  Furthermore, Ms. Amerling demonstrated her competence at trial through her extensive testimony, based on personal knowledge, of the subpoena issued to the Defendant and his default upon it.  *See* Fed. R. 601 ("Every person is competent to be a witness except as otherwise provided in these rules"); 7/19/22 Tr. at 554:11 (Ms. Amerling's testimony that she advised on the subpoena), 7/20/22 Tr. at 606:13, 614:1, 672:10-13, 679:9-10 (Ms. Amerling's testimony that she participated in and advised Committee Members about the drafting of the subpoena to the Defendant).  The Defendant's speculative contention that Ms. Amerling did

not provide the testimony he wishes other congressional witnesses might have is simply a complaint that he did not like her truthful answers to his questions.

The Defendant cites the extensive and irrelevant questions that he posed to Ms. Amerling regarding "who" on the Committee decided the return dates—such as October 7, 2021, for documents—clearly indicated in the subpoena issued to him.  ECF No. 141 at 6.  Ms. Amerling answered that the dates on Committee subpoenas are generally the result of discussions among Committee staff and Members, that the "ultimate decision-maker for the Select Committee is the Chair and Members of the Select Committee," and that the return dates on the subpoena to the Defendant reflected that process and decision-making—the process and decision-making of the Committee as a body.  *Id*.  Although he proclaims that this line of questioning was related to the "key issues at trial…whether the date(s) on the Subpoena were fixed or flexible," *id*. at 5, the Defendant does not explain the relevance of which staff or Members contributed to the decision of what dates were ultimately printed on the final and valid subpoena issued to the Defendant. That is because he cannot—it is not relevant who contributed to the decision about what dates were on the subpoena.  Ms. Amerling testified that the dates on a final subpoena reflect the Chairman's decision—*see* 7/20/22 Tr. at 679:2-4 ("[T]he ultimate decision for what is reflected in the subpoena is made by the individual who has the authority to sign the subpoena")—and the subpoena the Defendant accepted service of clearly stated that he was required to provide documents to the Committee at 10:00 a.m. on October 7, 2021, and to appear for a Committee deposition at 10:00 a.m. on October 14, 2021.

Similarly, the Defendant claims that Ms. Amerling did not satisfactorily answer his questions about which individual Committee Members and staff drafted the letters that the Committee sent to the Defendant.  ECF No. 6 at 7.  But his objections are again to Ms. Amerling's

truthful description of the process by which the Committee, as a body, drafted letters for the Committee Chairman's approval and signature. Here too, the Defendant fails to establish any relevance, to any element of the crime of contempt of Congress, of who contributed to the drafting of the letters that were subsequently finalized, sent to the Defendant, and provided him with notice of the Committee's position as stated in those letters.

Finally, through mischaracterization of Ms. Amerling's testimony regarding the Committee Chairman's signature on the subpoena, the Defendant continues his improper attempt at trial to suggest the subpoena was invalid. The Court has already determined that the validity of the subpoena was not a legitimate and contested issue at trial because the Defendant waived it. *See* 7/20/22 Tr. at 684:4-9 (after Defendant attempted to question the validity of the Chairman's signature on the subpoena, the Court ruled that "questions going to whether the subpoena was valid because it was or was not authorized by Chairman Thompson, signed by him, are irrelevant. They were waived by Mr. Bannon, never presented to the Committee."). Accordingly, the Defendant could not properly ask any witness about this issue. But even if the signature issue were a live one, the Defendant's Supplemental Brief conflates the fact that Ms. Amerling did not see the Chairman sign the subpoena with the issue of whether it bore his valid signature—which Ms. Amerling testified to at trial, because she recognized it. *See* 7/19/22 Tr. at 565:1-6 (Ms. Vaughn: "And there's a signature on the subpoena. Do you recognize that signature?" Ms. Amerling: "I do." Ms. Vaughn: "Whose signature is that?" Ms. Amerling: "That's the signature of the Chairman of the Select Committee, Chairman Bennie Thompson.").

In the guise of seeking testimony related to pertinence—one of the elements of contempt of Congress—the Defendant suggests that he is entitled to ask Committee members "why the Committee believed Mr. Bannon's testimony to be pertinent or important"—and then lists a host

of topics that have no bearing on the element of pertinence.  *Id*. at 9-11.  First, the Defendant claims that Ms. Amerling's testimony about why the Committee sought the information demanded by the subpoena is insufficient and that "only the Committee members" had authority to make evaluations and corresponding decisions on subpoenas.  *Id*. at 9-10.  But here, the Defendant misunderstands who determines pertinence—not a witness, and not the Court, but the jury.  At trial, Ms. Amerling testified about what the Committee was seeking from the Defendant.  *See* 7.20.22 Tr. at 613-623 (Ms. Amerling's testimony that she participated in putting together the 17 categories of documents the subpoena required the Defendant to provide, and why the Committee sought them).  It was then for the jury to find whether these categories of documents and information were related to the Committee's authorized investigation.  *See* Final Jury Instructions, ECF No. 129 at 27 (instructing the jury on the definition of pertinence for their deliberations).  What any individual—whether a Member of Congress, a staffer, or some other person—might think is pertinent is not relevant; what matters is what the jury finds to be so.  And the Defendant provides no authority for his claim that Ms. Amerling's testimony, based on her work on the subpoena and the Committee's investigation, is somehow invalid, and it is wholly speculative to suggest that any Committee member may have answered his questions differently.  Next, the Defendant lists other questions that he would ask, including why the Committee did not afford the Defendant an extension of time to explain his default on the subpoena; various questions about the October 18, 2021, deadline the Committee chose and enforced for that explanation; and whether the Committee would have agreed to later dates for the Defendant's testimony.  ECF No. 141 at 10.  None of these questions relate in any way to pertinence—whether the subpoena sought information relevant to the Committee's authorized investigation—or for that matter, any other element of the offense.  Nor

does the Defendant provide any explanation for how testimony on these questions would be materially favorable to his defense.

Again attempting to cloak irrelevant information under the mantle of "pertinence," the Defendant suggests he should have been permitted to call Committee witnesses for the sole purpose of examining them about their public statements "that indicated they did not actually want to get his testimony; rather they just wanted to try to humiliate him, punish him, and make him an example." *Id*. at 11.  But an individual member's motivation is irrelevant in determining whether a Committee acted with a legislative purpose, *Barenblatt v. United States*, 360 U.S. 109, 133 (1959), and as described above, the jury is the determiner of pertinence—not a witness.  Similarly, the Defendant concedes that one of his motivations to call Committee witnesses is for the purpose of cross-examining them—even though presumably, having called the witnesses, he would be directing their testimony—about their "conflicts of interests" and political motivations, and why the White House Counsel's Office sent a letter to the Defendant. *Id*. at 12.  It is improper, however, to call a witness for the purpose of impeachment.  *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986) ("Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be employed as a mere subterfuge to get before the jury evidence not otherwise admissible.") (citation omitted).

The Defendant asserts that he is entitled to call Congressional witnesses to ask them about "the constitutionally mandated accommodation process" (which he has never established exists with respect to a private citizen witness refusing to comply with a subpoena, *see* Government's Objection to Defense Proposed Instruction, Accommodation Requirement, ECF No. 89 at 19-20); why the Committee chose to proceed criminally rather than civilly; and why the Committee declined to provide the Defendant more time to explain his noncompliance.  ECF No. 141 at 9.

The Defendant attempts to confer relevance on these questions by claiming they go to the Government's "theory" that the Defendant "ignored" the subpoena—but he cannot manufacture relevance where there is none.  None of the elements of the crime of contempt of Congress concern whether the Committee accommodated the Defendant in any way, and the Government was required to—and did—prove only that the Defendant willfully defaulted on a subpoena, not why and whether the Committee chose to refer him once he did so.

The Defendant also raises that he would seek to question Committee witnesses about "how flexible were the dates and times" on the subpoena "[f]rom the Committee's perspective," and that answers to these questions would be relevant to the Defendant's reasonableness.[2]  *Id*. at 10-11. The testimony at trial established that the Committee's position was that the dates and times were not flexible—they were exactly what were stated clearly and firmly on the subpoena to the Defendant.  7/19/20 Tr. at 562:12-13 (testimony that defendant "was required to produce the documents…by October 7, 2021, at 10:00 a.m."); 563:19-20 (testimony that subpoena required Defendant "to appear at 10:00 a.m. on October 14, 2021" for a deposition).  And in any event, such questions about what Committee members thought are irrelevant—as the Court noted through its questions during argument—to the Defendant's state of mind.  Instead, the relevant question is what the Defendant thought.  The record is quite clear that there were no communications between the Defendant and the Committee outside of the written letters that the jury received in evidence. 7/21/22 Tr. at 43:18-19, 44:12 (Court asking, "But what does Chairman Thompson's testimony tell us about Mr. Bannon's mens rea since it, by definition, was not known to Mr. Bannon what Mr. Thompson thought in his head…That doesn't go to mens rea…").  Accordingly, the

---

[2] The Defendant again claims that he would have elicited this information "through cross-examination," which is perplexing, as he is the party that attempted to compel the congressional witnesses' testimony.

Committee members, by definition, lack any information that would be relevant to Defendant's state of mind.

It is clear that this desired area of inquiry is nothing more than a fishing expedition. At argument, the defense's response to questions about the relevance of such a line of inquiry was, "Well, that's part of the issue. The fact that it's a question is a reason to have the discussion." 7/21/22 Tr. at 43:22-24. But such an answer is a concession that the Defendant is merely speculating about what answers the congressional witnesses might provide, and that he endeavors to engage in a fishing expedition on the witness stand. *See also id*. at 57:3-8 (Court: "Does [Chairman Thompson] have any personal knowledge of the indictment?" Mr. Schoen: "I have no idea. We would ask him that. It's another reason—good idea, Judge. It's another reason we need him on the stand."). The Defendant appears to be arguing for a standard for dismissal that if he is curious about the answer that a witness might give to a question, it is relevant and material. But that is not the law, and his claims do not constitute a sufficient non-speculative proffer to establish that the testimony the Defendant is seeking is material to his defense. Indeed, the Defendant's arguments here are like the unsuccessful attempt by the defendant in *Dean*, 55 F.3d at 662-63, to claim that she needed to call the Committee Chairman to whom she had made false statements to elicit whether the Chairman independently knew the truthful answer to the question he posed.

The Defendant's Supplemental Brief also makes claims that he should have been permitted to call Committee witnesses to ask them questions about various defenses, objections, and legal issues that the Court deemed were not available or appropriate for the jury. For instance, the Defendant submits that he was entitled to ask such witnesses about his eleventh-hour challenges to the Committee's composition, whether it had a ranking minority member, or Committee rules, and asserts that "[o]nly the subpoenaed witnesses could have competently testified on decisions

that were made surrounding these issues and the reasons for them." *Id*. at 8-9.  As an initial matter, because the defenses in question were not available to him, any answers to questions about them could not possibly be relevant or materially exculpatory.  Indeed, the Defendant knows how any House witness would answer questions on these issues—the House filed an amicus brief in this case representing the view of the House as to the rules challenges, *see* ECF No. 76-2—and he is aware, therefore, that those answers are not material to his defense or exculpatory in any way.  Similarly, the Defendant argues that he should have been permitted to call Chairman Thompson to ask questions about the Defendant's barred advice-of-counsel defense and his claims about executive privilege, ECF No. 141 at 11-12, but the Committee's position on these questions is abundantly clear from the correspondence in the record: the Defendant raised issues related to executive privilege, the Committee rejected them, and the Defendant did not follow the Committee's rules with respect to asserting privileges and objections.

In sum, the Defendant does not proffer a single line of questioning that he would ask of Committee witnesses that is relevant, material to his defense, and non-cumulative; indeed, for the most part, the Defendant does not even explain what the desired witnesses' testimony would be— because he does not know and is merely speculating that their testimony might have been helpful. But speculation and proffers of immaterial testimony do not establish a compulsory process violation, and the Defendant's Motion to Dismiss because he was not permitted to call congressional witnesses to testify should be denied.

### III.   The Defendant's Cursory Claim Regarding Documents is Meritless

The Defendant's Supplemental Brief also claims—without any basis or further explanation—that the Court's order to quash "had the effect of denying to Mr. Bannon the basic documents that the Government must provide to the defense in any criminal trial."  ECF No. 141 at 4; *see also* 7/21/22 Tr. at 12:15-18 (Mr. Schoen: "We asked for documents, drafts and things

like that of these letters").  These documents, the Defendant says, include "any prior emails, drafts, and other statements of Ms. Amerling (excepting those that Ms. Amerling voluntarily provided to the prosecutors)" and "ordinarily must be provided to the defense in order to accord with due process."  ECF No. 141 at 4.  But as the Government has previously stated, it met and exceeded all of its Rule 16, *Brady*, and *Giglio* discovery obligations, and provided the Defendant with all of Ms. Amerling's prior emails, drafts, and other statements in its possession.  As the Court recognized in the March 16, 2022, Motion Hearing, the Government is not responsible for material not in its possession.  *See* 3/16/22 Tr. at 95 (denying Defendant's request for materials in the House's possession, Court stated that "Rule 16 only requires the government to provide information 'within the government's possession, custody or control.'…The government in this context refers to the prosecuting office, not the entirety of government, including a separate branch").  And in any event, with respect to the Defendant's subpoena for documents from the House, the appropriate standard is not Rule 16, but Rule 17—under which the party seeking production must establish relevancy, admissibility, and specificity.  *See United States v. Libby*, 432 F. Supp. 2d 26, 21 (D.D.C. 2006) (citations omitted).  The Defendant's vague suggestion that there may be other "prior emails, drafts, or other statements" that he would have wanted from the Committee—without any explanation of the topic of these materials or their relevance to matters at issue in his trial—does not establish any of these.  To the extent that he seeks dismissal with respect to documents, the Defendant has not made the threshold showing necessary.  His motion on these grounds should be denied.

**IV.     Conclusion**

The Court has given the Defendant three opportunities to articulate materially favorable, relevant, and non-cumulative information that the Congressional witnesses he seeks would provide.  The Defendant has failed each time to provide any legal basis or the facts necessary to establish a compulsory process violation.  His Motion to Dismiss (ECF No. 116) should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Amanda R. Vaughn*
J.P. Cooney (D.C. 494026)
Molly Gaston (VA 78506)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-1793 (Vaughn)
amanda.vaughn@usdoj.gov