**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : |
| v. | : |
| | : |
| STEPHEN K. BANNON, | : |
| | : |
| *Defendant*. | : |
| | : |

Criminal No. 21-670 (CJN)

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO**
**SUPPLEMENTAL BRIEF IN SUPPORT OF**
**MOTION TO EXCLUDE CONGRESSIONAL EVIDENCE OR DISMISS THE**
**INDICTMENT BASED ON GRANTING THE MOTION TO QUASH AND**
**CONGRESSIONAL SUBPOENA RECIPIENTS'**
**REFUSAL TO TESTIFY OR PRODUCE DOCUMENTS**

On August 5, 2022, Defendant Stephen K. Bannon, through undersigned counsel, filed his

supplemental brief in support of his motion to exclude evidence or dismiss the indictment in light

of the Court's decision granting the motion to quash the congressional subpoenas [Doc. 141],

pursuant to the Court's July 27, 2022 Order [Doc. 137]. On August 12, 2022, the prosecution filed

its response [Doc. 143]. Mr. Bannon now files his reply, within the page limit directed by the

Court [Doc. 137 at 2].[1] Mr. Bannon again incorporates herein all previous submissions and

---

[1] Throughout this case the prosecution has proceeded as if it has license to broadly
mischaracterize the record and make whatever misrepresentations of fact it deems useful, all
without consequences. (See e.g., (1) its earlier representations to the Court that Mr. Bannon
never cited a single relevant OLC opinion, (2) its claim that it needed to subpoena Mr. Costello's
telephone, email, and social media records  purportedly to determine  if he provided Mr. Bannon
with a copy of the congressional subpoena, and (3) that DOJ policy only requires supervisory
authority for obtaining attorney records if they are obtained directly from the attorney, and not
when they are obtained in wholesale fashion, without notice through a third-party).  That pattern
continues here with the misrepresentation that Mr. Bannon has failed in three attempts to in any
way cite anything relevant in the congressional materials or testimony he subpoenaed [Doc. 143
at 1].  Highlighting these misrepresentations in the past has proven to be of no avail; so this

argument on this and the related motion to quash litigation.  The failure to reply to any argument in the prosecution's response should not in any way be deemed a concession of merit.

The prosecution argues at page 2 of its response that the Court should not engage in any balancing of Mr. Bannon's fundamental constitutional rights against the privilege claimed by the subpoena recipients.  This argument was not raised in response [Doc. 117] to Mr. Bannon's motion and should be deemed waived.  It is also undercut by the authority from this Circuit cited by the prosecution on the following page of its response (and by the Court in *Rainey*, which expressly rejected it).  Additionally, contrary to the prosecution's assertions, and as noted at oral argument on the underlying motion, there is no requirement to show government misconduct in connection with the denial of the materials or testimony for the requested relief to be granted.

The cases the prosecution cites at pages 3-4 of its response, the only other place in its response where any legal authority is cited, are inapposite.

In typical fashion, the prosecution cites to cases in support of its position, while omitting fundamental details.  For example, the prosecution cites *United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014) in arguing that the Court need not balance the Speech and Debate Clause privilege against the constitutional rights violation Mr. Bannon has claimed from quashing the subpoenas. [Doc. 143 at 3].  However, the prosecution neglects to tell the Court that in *Verrusio*, the defendant waived the entire balancing argument by failing to raise it in the district court.  762 F.3d at 23.  To the extent the defendant made a secondary argument that the quashing of the subpoena violated

practice will be ignored here, other than to note the special irony that such a practice is engaged in by representatives of the "public integrity" division of the U.S. Attorney's office.

his rights to compulsory process and due process, the information denied by granting the motion to quash was in no way material to the case. *Id*. That certainly is not so in the instant case.[2]

The prosecution's reliance on *United States v. Dean*, 55 F.3d 640 (D.C. Cir. 1995), is even less availing. Again, the prosecution again failed to advise this Court that Dean waived a primary argument he made in trying to show the materiality of the quashed testimony – that there was no proper legislative purpose – so the Court could not even address the merits. 55 F.3d at 663. Secondly, Dean claimed that if the subpoena had not been quashed, the testimony he sought would have proven that the substance of his perjurious statement actually was true. The court dismissed the argument out of hand on the merits; that is why it did not have to reach the balancing of constitutional rights Mr. Bannon argues for here. 55 F.3d at 662. These cases are inapposite

At pages 5-13 of its response, the prosecution argues that Mr. Bannon has not identified any information denied to him by quashing the subpoenas that is material, favorable, relevant or non-cumulative. The assertion is patently untrue.

Mr. Bannon relies on his previous written and oral submissions to demonstrate the material, non-cumulative nature of the prejudice he has suffered from quashing the subpoenas. He has demonstrated the favorable/material nature of the testimony and information he sought through the subpoenas, which, by definition, is non-cumulative, since to the extent any of the information was adduced at trial, it came in through a witness without any decision-making or other relevant

---

[2] Additionally, Mr. Bannon's constitutional challenge is not limited to his rights to compulsory process and due process. He clearly was denied his rights under the Confrontation Clause by allowing Amerling to testify on subjects for which she had no authoritative or decision-making role; the right to confrontation on the material subjects to which she was permitted to testify could only have been exercised by examining the congressional witnesses whose testimony and documents Mr. Bannon was denied. Mr. Bannon also was denied his rights to a jury trial and to the effective assistance of counsel and his other fair trial rights by having the subpoenas quashed.

authority, not competent to testify to the substance of the information, and over Mr. Bannon's objection.  He also does not concede that the information and testimony he was denied by quashing the subpoenas has to be favorable or exculpatory to prove a violation of his rights to confrontation, to due process, to compulsory process, to effective assistance of counsel, or to a fair jury trial. That is especially so here, where, because the motion to quash was granted, meaningful cross-examination on the substance of Ms. Amerling's testimony was denied by her inability meaningfully or competently (in a non-hearsay manner) to provide answers to material questions and, with Mr. Bannon denied the ability to call witnesses who would be competent for  substantive cross-examination on the relevant issues.

Mr. Bannon addresses here one prime example of material information/testimony that crystallizes the denial of his identified constitutional rights.  As the Court is aware, the one defense the Court permitted Mr. Bannon to raise was a mistake of fact defense – specifically that the dates for compliance with the subpoena (and therefore any default dates) were malleable and not fixed, and that compliance remained open to him on later dates.  Mr. Bannon made clear that this defense and his belief concerning the same was a function, in large part, of the letters exchanged between Messrs. Costello and Thompson (along with his understanding of the constitutionally mandated accommodation process, the Su letter which was sent after the purported dates had passed, and more).  The prosecution, in turn, asserted to the Court that the letters between Costello and Thompson were so vitally important they constituted the government's whole case against Mr. Bannon.  [July 14, 2022 Hearing Tr. at 40].

At pages 7 and 11 of its response, the prosecution argues here that the dates and times for compliance with the subpoena were absolutely fixed and were "exactly what were stated clearly and firmly on the subpoena to the Defendant" and were "not flexible." [Doc. 143 at 11].  That is a

very troubling assertion in light of the representations made by the prosecution in order to convince the Court to instruct the jury, over Mr. Bannon's vehement objection, that the dates at issue actually are just "approximate" dates.  [See Doc. 129 at 26; July 22, 2022 Hearing Tr. at 954-956; Doc. 142 at 13-14].  This clearly is a key issue in the case, given the single defense the Court permitted; but Mr. Bannon was denied the ability to develop the issue with any witness who had any decision-making authority or decision-making role with respect to the dates, their flexibility, the lack of any accommodation in contrast to the constitutional imperative to accommodate and the practice of accommodating others similarly situated or who otherwise was competent to testify on the subject.

Mr. Bannon refers in some detail to the relevant letters between Costello and Thompson, to the reasons arising from those letters that he believed the dates were flexible, at least to a degree sufficient to put the matter before the jury, and he has explained at some length why it was critically important to this defense to have a chance to examine Chairman Thompson (and other Committee members) on the flexibility of the dates, especially in light of the claimed importance the Committee placed on the information they claimed to want to hear from Mr. Bannon.  The letters continued to urge Mr. Bannon's compliance with the subpoena through as recently as July 14, 2022 and did not refer to a default; moreover, the indictment dates vary from the subpoena dates, and Mr. Su's letter on behalf of President Biden urges compliance after the purportedly firm dates had passed.  [See Doc. 107 at 1-6; 141 at 7-8, 9-11, 12 and other sources previously cited].  The prosecution's response is simply wrong insofar as it dismisses this as irrelevant, non-material, cumulative evidence.  This matter compellingly demonstrates the constitutional rights violations suffered by Mr. Bannon from quashing the subpoenas and it demands a dismissal of the indictment.

The prosecution's argument on the matter of "pertinence," another area of prejudice cited by Mr. Bannon from granting the motion to quash, is circular and nonsensical.  The prosecution

argues that Mr. Bannon misunderstands the concept, because actually all that matters on the question of pertinence is what the jury finds.  [Doc. 143 at 9].  Obviously, what the jury finds on the issue is of ultimate importance at trial; but just as obviously, the jury is informed (hopefully) by the actual evidence it hears and, with the subpoenas quashed, Mr. Bannon was prevented by inquiring of the actual parties who sought to compel his testimony as to what they believed the pertinence of his testimony and documents would be.  The purported pertinence arguably was belied by their public statements to the media about their view of Mr. Bannon and their purpose in proceeding criminally against him.  He was entitled to examine before the jury a witness who actually was charged with deciding questions of pertinence vis a vis Mr. Bannon's subpoena  and on which the criminal charges in this case are based.

The prosecution groups all rules related areas of inquiry together and asserts that these were all matters that had been waived and therefore the motion to quash could not have violated Mr. Bannon's rights on those subjects.  [Doc. 143 at 12-13].  But that just is not true.  The Court expressly found that a factual dispute about the provision of a copy of Rule 3(b) was fair game for inquiry and, in fact, Mr. Bannon specifically objected to the Court's denial of a relevant line of inquiry on this subject at trial and to a jury instruction which ran afoul of the Court's ruling on this subject.  [Doc. 128].  Mr. Bannon was entitled to inquire on this subject of a person competent to testify about the decision to withhold providing Mr. Bannon with a copy of the Rule with his subpoena as the Committee's Rules required and as was the practice with other witnesses.  His constitutional rights were denied by granting the motion to quash, preventing the same.

## **CONCLUSION**

Based on all of the foregoing and all relevant previous submissions and argument, Mr. Bannon respectfully submits that the requested relief must be granted, with the case against him

dismissed based on the violation of his fundamental constitutional rights by granting the motion to quash.

Dated: August 19, 2022                    Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

    /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of August 2022, a copy of the foregoing Reply Supplemental Briefing was served *via* the Court's CM/ECF system on registered parties and counsel.


    /s/ David I. Schoen
    David I. Schoen
       *Counsel for the Defendant*