# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 21-cr-670** |
| **v.** | : | |
| | : | |
| **STEPHEN K. BANNON,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL

The Defendant seeks a new trial based on several claims of error in the instructions the Court gave the jury in this case and the Court's adherence to controlling law defining the intent element of the contempt of Congress statute. The Defendant has failed to demonstrate that any of the issues he points to constitute error and has fallen far short of his burden to demonstrate that there is reason to doubt the validity of the verdict in this case. His motion should be denied.

## I.     LEGAL STANDARD

The Defendant moves for a new trial under Federal Rule of Criminal Procedure 33. "Motions for a new trial are not favored and are viewed with great caution." *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (internal citations and quotation marks omitted). "Despite the court's broad authority to order a new trial, it should be exercised sparingly and limited to situations presenting a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Id.* at 32 (internal quotations and citations omitted); *see also United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (A new trial "is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'" (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990))); *United States v. Cook*, 526 F. Supp. 2d 10, 14 (D.D.C. 2007), *aff'd*, 330 F. App'x 1 (D.C. Cir. 2009) (finding that where the defendant asserted a constitutional *Brady* violation, to be entitled to a new trial under Rule 33, the defendant

had to demonstrate that the violation resulted "in a verdict [not] worthy of confidence"); *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) ("In order to grant a new trial, the evidence must preponderate heavily against the verdict." (citations and internal quotation marks omitted)). To be entitled to a new trial, therefore, the Defendant bears the burden of demonstrating that "(1) there was substantial error and (2) the error affected the defendant's substantial rights." *United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982) (noting the defendant bears the burden of proving a new trial is warranted). In making this showing, the Defendant must "overcome a strong presumption . . . in favor of upholding the jury verdict." *United States v. Rogers*, 918 F.2d at 213 (citations and internal quotation marks omitted).

Here, the Defendant seeks a new trial based primarily on the Court's jury instructions. A challenged jury instruction provides a basis for a new trial where the instruction was erroneous, and the error makes it highly probable "that the jury convicted on an improper theory." *Borda*, 786 F. Supp. 2d at 41 (quoting *United States v. Rhone*, 864 F.2d 832, 835 (D.C. Cir. 1989)) (internal quotation marks omitted). In other words, as with any Rule 33 motion, the error must raise questions about the validity of the verdict. Courts evaluating motions for new trials on claims that the jury was instructed incorrectly, therefore, consider whether the jury instructions provided comport with applicable law. Where they do, courts reject claims that a new trial is necessary. *See, e.g.*, *United States v. Bikundi*, Case No. 14-cr-30 (BAH), 2016 WL 912169, at *36-39 (D.D.C. Mar. 7, 2016) (considering case law defining whether certain facts require juror unanimity to determine whether it was error justifying a new trial to refuse a unanimity instruction on the manner and means of a fraud scheme); *United States v. Adams*, 150 F. Supp. 3d 32, 37-38 (D.D.C. 2015) (considering case law on unanimity requirements to determine whether refusal to give

requested unanimity instruction was error justifying a new trial); *Borda*, 786 F. Supp. 2d at 41-43 (considering propriety of instructions under case law on drug quantity determinations in drug distribution case to determine whether new trial warranted).

In his summary of the legal standard for a new trial under Rule 33, the Defendant cites an Eleventh Circuit case, *United States v. Vicaria*, 12 F.3d 195, 198-99 (11th Cir. 1994), for the proposition that a finding of legal error in the court's jury instructions is not required to grant a new trial under Rule 33. *See* ECF No. 142 at 2 (citing *Vicaria* for the proposition that "new trial motion appropriately granted for failure to give defense theory jury instruction, even if the failure was not legal error"). To the extent the Defendant cites *Vicaria* to suggest the Court can order a new trial based purely on the failure to give instructions the Defendant wanted, he is incorrect. *Vicaria* does not stand for such a sweeping proposition. Instead, in that case the Eleventh Circuit only held that the district court had not abused its discretion when it found it should have given a defense theory instruction, even if it were not legally required to, because the question of guilt in the case was close (and had previously resulted in a mistrial because of a deadlocked jury) and the court found the jury may have been confused on certain questions relating to the Defendant's intent without the instruction. 12 F.3d at 198-99. The out-of-circuit case does nothing to water down this circuit's law that a new trial only should be ordered in circumstances of a serious miscarriage of justice based on an error likely resulting in an erroneous verdict. Indeed, the only court in this district to cite *Vicaria* cited it only for the proposition—consistent with other courts' holdings— that a jury instruction necessitates a new trial where the instruction was "clearly erroneous and prejudicial." *Adams*, 150 F. Supp. 3d at 36.

The Defendant also cites a legal treatise for the proposition that "[a]ny error sufficient to require a reversal on appeal is an adequate ground for granting a new trial." ECF No. 142 at 2

(citing 3 Fed. Prac. & Proc. Crim. § 589 (4th ed.) (Wright & Miller)).  To the extent the Defendant cites the treatise to suggest that this Court's stated doubts about whether the D.C. Circuit and Supreme Court will uphold the controlling precedent in this case is sufficient to order a new trial, he is incorrect.  Were the Court to order a new trial, in conducting the new trial, it would be no more free to ignore *Bryan* (1950), *Licavoli*, *Fields*, and similar cases, without the D.C. Circuit or Supreme Court first considering them, than it was before.

## II.     ARGUMENT

The Defendant claims an injustice requiring a new trial has occurred because he was not permitted to present evidence of a purported good-faith reliance defense and the Court instructed the jury on the settled meaning of "willful" under the contempt of Congress statute instead of instructing the jury on the Defendant's desired meaning.  ECF No. 142 at 11-12.  He also claims an injustice occurred based on the Court's refusal to provide two jury instructions offered by the Defendant and the Court's instructions on the meaning of "default," the indictment's allegations about when the offense occurred, and the unavailability of waived objections to the Committee's operations as defenses.  ECF No. 142 at 12-15.  The Defendant has failed to show error meeting the requirements of Rule 33 on any of these grounds.

### A.     The Defendant's Efforts to Relitigate the Meaning of Willfulness Do Not Provide a Basis for a New Trial.

Most of the errors the Defendant claims stem from his continued effort to have the Court ignore controlling precedent on the meaning of "willful" in the contempt of Congress statute.  Yet, just as he failed to do in his prior pleadings, he provides no basis for this Court to do so.  Both the Supreme Court and the D.C. Circuit have held that "willful" as used in the contempt of Congress statute requires only that the failure to comply be deliberate and intentional, nothing more.  *United States v. Bryan*, 339 U.S. 323, 328-30 (1950); *Licavoli v. United States*, 294 F.2d 207, 208 (D.C.

Cir. 1961); *Dennis v. United States*, 171 F.2d 986, 990 (D.C. Cir. 1948); *Fields v. United States*, 164 F.2d 97, 100 (D.C. Cir. 1947). Notably, just as the Defendant did here, the defendant in *Bryan* (1950) claimed she would not produce the records required by a congressional subpoena based on the advice she received from counsel. 339 U.S. at 325. Yet, the Supreme Court held nevertheless that where the Government introduced evidence "that respondent had been validly served with a lawful subpoena directing her to produce records . . . and that on the day set out in the subpoena she intentionally failed to comply, it made out a prima facie case of wilful default." 339 U.S. at 330. It was this holding on which the D.C. Circuit relied in reaching the same conclusion in *Licavoli* that it had reached over a decade earlier in *Fields* and *Dennis*: that a defendant was in criminal contempt of Congress where he deliberately and intentionally defied a subpoena, regardless of whether his motive was bad or evil. *Licavoli*, 294 F.2d at 208. This case is controlled by those precedents and the Court limited the evidence and argument at trial and instructed the jury accordingly. And the Defendant does not claim that the Court failed to properly adhere to those precedents—he concedes that it did so adhere. There is no error warranting a new trial.

The Defendant nevertheless claims that the Court committed error by refusing to ignore controlling precedent in favor of a heightened standard of "willful" that has never been adopted by any court for contempt offenses. To support his argument, the Defendant first cites to dicta in Supreme Court cases in which the Court merely confirmed the need for crimes to have a mens rea element. *See* ECF No. 142 at 7-8 (citing *Xinlu Ruan v. United States*, 132 S.Ct. 2370, 2377 (2022); *Elonis v. United States*, 575 U.S. 723, 734 (2015)). He also claims that one of the cases to which he cites, *Elonis*, "emphasized the need to require proof that the defendant knew his conduct was unlawful when willfulness is charged," *id*. at 9 (purporting to cite *Elonis*, 575 U.S. at 735-37), but the case does not address the standard for willfulness at all, let alone in the contempt context—

indeed, the word "willful" appears nowhere in the Court's opinion.  The Defendant then relies on the dicta he cites to suggest that the controlling Supreme Court and D.C. Circuit precedent on the meaning of willfulness in the contempt of Congress statute does not give the statute a mens rea requirement to separate innocent conduct from criminal conduct.  *Id*. at 8-9.  Not so.  The contempt of Congress statute has a criminal mens rea element—it makes criminal a failure to comply that is the result of a conscious, deliberate decision not to comply.  This is the willfulness standard for both contempt of Congress and contempt of court.  *See* Gov't Mot. to Exclude Good-Faith Reliance, ECF No. 29, at 6-8 (collecting cases defining "willful" in the contempt of court context as a deliberate and intentional violation of a court order and cases finding advice-of-counsel or good-faith reliance to provide no defense).  And a deliberate decision to defy a government order— that is, to consciously assert that the individual decides what the law requires of him in place of the Congress or the courts—is a mens rea requirement separating an innocent failure to comply from a culpable one.

Second, in his attempt to claim that adhering to controlling precedent was error, the Defendant cites the dissenting opinion in *Rehaif v. United States*, 139 S.Ct. 2191, 2205 (2019) (Alito, J., dissenting), the D.C. Circuit's opinion in *United States v. Burden*, 934 F.3d 675 (D.C. Cir. 2019), and a Ninth Circuit opinion, *United States v. Singh*, 979 F.3d 697 (9th Cir. 2020), for the proposition that willfulness, when used in a criminal statute, can never mean less than that a defendant knew his conduct was unlawful.  *See* ECF No. 142 at 8, 9-11.  The Defendant has made this claim before, *see* Def's Opp'n to Gov't Mot to Exclude Good-Faith Reliance, ECF No. 30, at 12-13, and it is no less incorrect than it was the first time he made it.  As the Government pointed out when the Defendant first cited *Burden*, the Circuit in that case cited the Supreme Court's note in its 1998 *Bryan* decision that willfulness has many meanings and only was deciding in that case

the parties dispute as to whether *Bryan*'s (1998) standard of willfulness or the *Ratzlaf/Cheek* standard of willfulness applied to the statute at issue. 934 F.3d at 689-90. The *Burden* court was not asked to and did not decide whether the spectrum of willfulness was limited to those two standards. Nor does Justice Alito's dissenting opinion in *Rehaif* or the Ninth Circuit's opinion in *Singh* purport to limit the spectrum of willfulness to the intermediate standard in *Bryan* (1998) or the highest standard in *Ratzlaf/Cheek*. Justice Alito cited the highest standard of willfulness—that used in tax cases—which requires knowledge of a known legal duty, to argue that "knowingly" as used in an unlawful firearm possession statute could not mean knowledge of illegality. 139 S.Ct. at 2205. Justice Alito did not discuss or consider the spectrum of willfulness. And the Defendant's claim that the *Singh* court "explained that the expression in *Bryan*, that 'willfully' is sometimes said to be a 'word of many meanings' refers to the two interpretations courts have applied,"— which, according to the Defendant are the two articulated in *Bryan* (1998) and *Ratzlaf/Cheek*, ECF No. 142 at 10—is wrong and misleading. What the Ninth Circuit actually said is that the *Bryan* (1998) and *Ratzlaf/Cheek* standards of willfulness "are *two primary interpretations* of 'willfully' in the criminal context," 979 F.3d at 712 (emphasis added), not that they are the only two. And no court has held that willfulness is so limited to just those two standards. To the contrary, several circuits, including the D.C. Circuit, have found post-*Bryan* (1998) that certain statutes' use of "willful" as the mens rea element requires nothing more than deliberate, intentional action and does not require knowledge of unlawfulness. *See, e.g.*, *United States v. George*, 386 F.3d 383, 388-89 (2d Cir. 2004); *United States v. Urfer*, 287 F.3d 663, 666 (7th Cir. 2002); *United States v. Hsia*, 176 F.3d 517, 521-22 (D.C. Cir. 1999); *see also* Gov't Reply in Support of Mot. to Exclude Good-Faith Reliance, ECF No. 35, at 16-17 (collecting cases).

As the Government has briefed before, *id*. at 18-20, and as this Court recognized in its orders on the issue, despite the Defendant's efforts to argue otherwise, the Court is bound by the precedent directly addressing the statute at issue in this case. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges . . . are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule it."); *Mdewakanton Sioux Indians of Minnesota v. Zinke*, 264 F. Supp. 3d 116, 130 n.21 (D.D.C. 2017) ("However, because the D.C. Circuit has not yet addressed the application of [a more recent Supreme Court opinion] to § 2401(a), this Court continues to follow the D.C. Circuit's prior conclusion until the D.C. Circuit addresses it in the first instance."). Moreover, the Supreme Court has made clear that "[w]e do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that '[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

The Court followed controlling precedent here and the Defendant has failed to show that doing so was error. The evidentiary and instructional errors he claims "flow" from the Court's adherence to controlling law, *see id*. at 11-12 & n.7, are not, therefore, errors at all. Nor did the Court's implementation of controlling law violate the Defendant's right to present a defense. As he has before, the Defendant cites to the constitutional right to present a defense without acknowledging that his right extends only to admissible, relevant evidence. *See, e.g.*, *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of

evidence."); *United States v. Libby*, 475 F. Supp. 2d 73, 91 (D.D.C. 2007) ("[A]lthough the Constitution entitles a defendant an opportunity 'to present [his] version of the facts . . . to the jury so it may decide where the truth lies,' that guarantee extends only to relevant evidence." (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)) (other citations omitted)).  Claims that the Defendant relied on his attorney's advice or his own interpretation of the law are not admissible defenses in a contempt case.  And a new trial would not remedy the purported errors the Defendant asserts. The Court still would be bound by controlling law in a new trial and would have to reject the Defendant's proposals relating to it just as it did the first time around.  The Defendant's continued efforts to contest the Supreme Court's and D.C. Circuit's precedents on the intent standard in the statute are issues for his appeal, not a new trial motion.  Accordingly, any claims for a new trial based on the Defendant's desire for the Court to have changed the controlling definition of "willful" must be rejected.

> **B.**    **The Defendant Has Failed to Meet his Burden to Demonstrate that the Court Committed Any Additional Errors in its Instructions to the Jury that Call the Verdict Into Question.**

Aside from his efforts to relitigate the meaning of "willfulness," the Defendant claims four additional errors in the Court's instructions to the jury:  1) the Court's rejection of the Defendant's "mistake of fact" and "waiver of default" instructions, ECF No. 142 at 13; 2) the Court's instructions on "default," *id*.; 3) the Court's instruction describing the indictment's allegations of "on or about," *id*. at 13-14; and 4) the Court's instruction that the jury should not consider the Defendant's arguments about his waived objection to the Committee's compliance with rules requiring it to give him a copy of House Resolution 8, Section 3(b) before he testified, *id*. at 14-15.  The Defendant has failed to meet his burden that any of these decisions by the Court constituted error, let alone errors calling the jury's verdict into question.

1.    **Defendant's Proposed Instructions on "Mistake of Fact" and "Waiver of Default"**

The Defendant claims it was error to refuse to give his proposed instructions on "mistake of fact" and "waiver of default," ECF No. 126 at 6, 8 (proposed instructions).  ECF No. 142 at 13.  First, it was not error for the Court to reject the Defendant's "mistake of fact" instruction.  The Defendant's proposed instruction informed the jury of his defense theory that he did not act willfully because he believed the dates for compliance had been moved or were not fixed.  ECF No. 126 at 6 ("The Defendant . . . contends that he believed that the dates for compliance with the subpoena were not fixed and were flexible and subject to change and that therefore he did not act 'willfully.'").  Although the Court did not provide the specific instruction the Defendant wanted, it did instruct the jury: "To be deliberate and intentional means that the failure to comply was not the result of inadvertence, accident, or mistake, including a mistake regarding the operative date."  ECF No. 129 at 28.  Defendants are not entitled to instructions in whatever form they want, and the Defendant does nothing to explain why the instruction the Court gave was insufficient to communicate his theory of the case to the jury for its consideration, as he must to sustain his burden to show he is entitled to a new trial.  *See United States v. Pray*, 869 F. Supp. 2d 44, 50 (D.D.C. 2012) ("A defendant has no right to have any instruction on [the defendant's defense theory] given in the particular form he desired, or with any special emphasis." (internal quotation marks and citation omitted) (alteration in original)) (denying motion for a new trial based on court's refusal to give defense theory instruction as submitted where instructions given conveyed defendant's defense).

Moreover, by giving any instruction at all acknowledging the Defendant's proposed theory that he made a mistake about the operative dates, the Court likely went beyond what the law required because there was no evidence in the record supporting such a theory.  *See United States*

*v. Howard*, 245 F. Supp. 2d 24, 39 (D.D.C. 2003) ("A defendant in a criminal case is entitled to adequate jury instructions on his theory of defense, provided that there is evidence to reasonably support such a theory." (quoting *United States v. Hopkins*, 716 F.2d 739, 749 (10th Cir. 1982)) (internal quotation marks omitted)).  Other than defense counsel's questions and argument at trial, neither of which are evidence, there was no evidence presented at trial that the Defendant failed to comply with the subpoena because he "honestly and reasonably believed" that the dates for compliance with the subpoena "were not fixed dates," ECF No. 126 at 6 (Defendant's proposed defense theory instruction).  The only evidence of the Defendant's intent presented at trial demonstrated that the Defendant's refusal to comply with the subpoena had nothing to do with a "mistake" about the dates and everything to do with his decision to "stand with" former President Donald Trump.  *See*, *e.g.*, Gov't Exs. 4 and 6 (Defendant's letters to the Committee stating he would not comply with the subpoena because, as he represented to the Committee, the former President told him not to based on some undefined assertion of executive privilege); Gov't Exs. 11A & 11B (Defendant's social media posts); Gov't Ex. 8 (Defendant's response to the Committee's request for an explanation as to why he did not comply with the subpoena).  Accordingly, the Defendant was not even entitled to the defense theory instruction he got, let alone the one he submitted.  He cannot show error resulting in a miscarriage of justice.

Nor was it error for the Court to refuse to give the Defendant's instruction that, by continuing to seek the records and testimony the subpoena commanded, the Committee "waived" his criminal contempt.  Other than asserting it was error, the Defendant cites no authority for why it was error and why it may have resulted in an erroneous verdict.  The Defendant has yet to cite any authority that criminal contempt can be cured by later compliance.  Instead, all the authority demonstrates that it cannot.  *See United States v. Fort*, 443 F.2d 670, 678 (D.C. Cir. 1970) (finding

that Congress "may 'coerce' by means of civil contempt, 'punish' by means of criminal contempt, and perhaps even both" (citing *Jurney v. MacCracken*, 294 U.S. 125, 151-52 (1935); *In re Chapman*, 166 U.S. 661, 672 (1897))); *United States v. Donziger*, -- F.4th --, 2022 WL 2232222, at *11 (2d Cir. June 22, 2022) ("Criminal contempt punishes retrospectively for a completed act of disobedience, such that the contemnor cannot avoid or abbreviate the confinement through later compliance. . . . It is therefore beside the point that [the defendant] eventually complied with most of the court orders underlying his criminal contempt conviction" (internal quotation marks and citation omitted)).  Again, the Defendant has failed to meet his burden to show an error might have occurred, let alone one resulting in a miscarriage of justice.

### 2.    Instruction for "Default"

The Defendant has failed to show that it was prejudicial error rendering the verdict invalid to instruct the jury that it must find the Defendant failed to comply with the subpoena instead of just instructing the jury that it had to find the Defendant "defaulted."  *See* ECF No. 142 at 13 (claiming the Court violated the Defendant's constitutional rights "by failing to use the language in the statute charged: 'willfully makes default'").  The Defendant asserts the Court's instruction was error because it should have allowed "the jury [to] determine the meaning of the contested term."  *Id*. at 142.  But it is not the jury's role to determine what statutory terms mean; that is a legal question.

"Default" is not a layman's term, and there is no requirement in the law that jury instructions must only use statutory wording to explain the elements of the offense to the jury.  In fact, refusing to define terms sufficiently for the jury runs contrary to law, as a court's instructions must "provide the jury with sufficient understanding of the issues and applicable standards."  *United States v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010) (internal quotation marks and citation

omitted); *see also, e.g.*, *Carter v. Kentucky*, 450 U.S. 288, 302 (1981) ("Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law."); *United States v. Tasis*, 689 F.3d 623, 627 (6th Cir. 2012) (finding Court did not abuse its discretion in rejecting the defendant's proposed instruction where the court gave an instruction conveying the same information "in a more straightforward way" and by "choosing a plain English jury instruction over a generic (and wordy) pattern jury instruction").  Indeed, convictions are reversed where courts do not instruct the jury on the proper meaning of statutory terms.  *See, e.g.*, *McDonnell v. United States*, 579 U.S. 550, 570-71 (2016) (reversing bribery conviction because district court insufficiently defined the statutory terms surrounding "official act" under the bribery statute in its instructions to the jury and finding only one of multiple ways to interpret the statute's reference to "question" and "matter" was correct under the law).

Moreover, the Defendant does not identify why explaining the element of default as a "fail[ure] to comply or refus[al] to comply with the subpoena," Final Jury Instr., ECF No. 129, at 27, was error or why that definition calls the validity of the verdict into question.  The instruction was directly in line with how courts have defined "default" under the contempt of Congress statute. *See Bryan* (1950), 339 U.S. at 327 ("'Default' is, of course, a failure to comply with the summons."); *Fields*, 164 F.2d at 100 (affirming jury instruction that referred to the act that must have been willful as a "failure or refusal to comply").  Nor does he explain how that definition was "contested" by the parties, as he now claims it was.  *See* ECF No. 142 at 13 (claiming the court used a "loaded interpretation of statutory language . . . rather than having the jury determine the meaning of the *contested* term" (emphasis added)).  In his own pleadings, the Defendant has found the need to define the term, not just rely on the statutory text as he now claims the jury should have done, and has defined it in accordance with how the Court defined it for the jury.  *See* ECF No. 30

13

at 12 ("There is no definition of 'makes default' . . . in 2 U.S.C. § 192.  Generally, 'makes default' means failure to fulfill a legal duty" (citing "Default," Black's Law Dictionary (8th ed. 2004))).  Having failed to identify why the definition given was not in accordance with the law and may have led to a verdict based on an incorrect understanding of the applicable elements, the Defendant cannot meet his burden for a new trial.

###         3.        Instruction for "On or About"

The Defendant has failed to demonstrate any prejudicial error in the Court's instruction regarding "on or about."  ECF No. 142 at 13 (claiming error in Final Jury Instruction No. 24 (adapted from Redbook Instruction 3.103)).  To support his argument, the Defendant claims that the "on or about" language in the indictment is surplusage and that the Government's evidence varied from the indictment as to the date.  ECF No. 142 at 13-14.

As an initial matter, the Defendant's effort to seek a new trial under Rule 33 on this basis fails because he has not met his burden to show that the instruction, even if in error, calls the verdict into doubt.  The Defendant appears to assert in his motion that the jury should have been instructed about what the indictment alleged only by reference to the specific language in the specific paragraphs of the Counts, i.e., paragraphs 23 and 25 of the indictment.  In other words, that Count One occurred "on October 14" and that Count Two occurred "by October 18."  Even if that had been the instruction, the Defendant does not explain why the verdict may have turned out any differently.  With respect to Count One, there was no evidence or argument relating to an alleged date of willful default other than a date of October 14, when the Defendant failed to show for a deposition as required by the subpoena.  With respect to Count Two, there was no evidence or argument relating to an alleged date of willful default other than a date of October 7, and, therefore, a date occurring by October 18.  The Defendant does not argue otherwise.  Instead, he

appears to concede that the evidence and argument was limited to asking the jury to determine whether these dates were the dates of willful default. *See* ECF No. 142 at 13 (claiming the "direct relevance of specific dates and times, according to the prosecution's case"). A motion for a new trial cannot be granted based on error that does not call the verdict into doubt.

In any event, the Defendant has not shown error in the first place. His arguments about the error of the "on or about" instruction are meritless because they are based on a misunderstanding of pleading requirements and the law of prejudicial variance. First, the Defendant argues defining all dates in the indictment as "on or about" dates is "surplusage." But he does not explain why this renders the instruction the Court gave invalid. As best the Government can glean, the Defendant apparently believes the language should have been struck from the indictment as "surplusage" and that, if it had been, the instruction the Court gave would not have followed the indictment. But the Defendant forfeited his argument that the language should be struck from the indictment by not timely raising it. Having so forfeited the objection, on appeal, such a claim only would be subject to plain error review. *See Johnson v. United States*, 520 U.S. 461, 466–67 (1997) ("Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." (internal quotations omitted)). Yet, the Defendant cannot show it was error at all for the indictment to define the dates of the offense, so he certainly cannot show it was plain error not to strike the definition.

The Defendant cites no authority for his assertion that defining the dates as "on or about" dates was strikable surplusage—likely because his claim has no support in the law. "Surplusage" subject to striking in an indictment consists only of allegations that are "not relevant to the charge and are inflammatory and prejudicial." *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (affirming district court's refusal to strike allegations about the defendant's murder of airline

passengers in an air piracy case as surplusage).  The sentence at the beginning of the indictment in this case, that the allegations therein occurred "on or about the dates and at the approximate times stated below," ECF No. 1 at 1, is not irrelevant or prejudicial.  It defines an essential allegation of the indictment—the dates on which the offense occurred.  This is standard pleading language and recognized by courts as providing the requisite notice to defendants that indictments must give. *See, e.g.*, *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (finding an indictment alleging that the defendant attempted to illegally re-enter the United States "on or about" a certain date was legally sufficient).  And, just because the language is at the beginning of the indictment, and not in paragraphs 23 and 25 specifically, does not mean the language does not define the dates in those paragraphs.  *See United States v. Bowdoin*, 770 F. Supp. 2d 142, 145-46 (D.D.C. 2011) (reviewing an indictment for sufficiency and noting that "the indictment must be viewed as a whole" (citations omitted)).  The Defendant does not explain how it was improper for the Court to track the indictment's unchallenged language when describing the indictment's allegations.

The Defendant's claim that the Court's instruction was error because it resulted in a variance also is without merit.  Again, he cites no authority to support the claim, and there is none. A reversible, prejudicial variance occurs when the evidence at trial "proves facts materially different from those alleged in the indictment." *United States v. Lorenzana-Cordon*, 949 F.3d 1, 4 (D.C. Cir. 2020) (citation and internal quotation marks omitted).  Variances have nothing to do with a court's instructions.  To the extent the Defendant instead meant to argue that he is entitled to a new trial because the Government's evidence at trial—that the Defendant defaulted on October 14 and October 7 and by October 18—constituted a prejudicial variance because the indictment alleged these dates to be "on or about," he is incorrect.  It is well-settled that minor variations in the proof at trial from "on or about" dates in an indictment do not constitute prejudicial variances.

16

*See Cogdell v. United States*, 307 F.2d 176, 178 (D.C. Cir. 1962) (finding no prejudicial variance where the indictment alleged an event occurring "on or about March 1," and the evidence at trial showed it occurred on March 3 or 4).  Here there was not even a variation from the "on or about" dates.  The Government proved the Defendant's crimes occurred exactly on and by the dates alleged.

The Defendant cannot show prejudicial error calling the verdict into doubt in the Court's instructions relating to "on or about" dates, which tracked exactly the allegations of the indictment. He has failed to meet his burden to demonstrate he is entitled to a new trial on this basis.

### 4.    Instruction for Waived Objection

Finally, the Defendant claims he is entitled to a new trial because the Court instructed the jury that it should not consider defense counsel's statements in closing, *see* Trial Tr., 7/22/22, at 992:22-993:8 (defense closing argument), that a reasonable doubt was raised because the Committee had never provided the Defendant with a copy of Section 3(b) of House Resolution 8. ECF No. 142 at 14.  Specifically, the Court instructed the jury:

> [D]uring closings, I sustained objections to certain statements by counsel.  You should not consider those statements.  You also heard about a purported rules violation by the Committee in not providing the Defendant with a copy of certain rules . . . .  You may not consider these issues as a defense in this case.

ECF No. 129 at 30.  The Defendant claims this was error because his argument in closing about the rules violation was "an issue the Court expressly indicated could well be an area the defense could explore, with respect to the factual dispute surrounding it" and "there was testimony adduced at trial concerning the factual dispute over Rule 3(b)."  ECF No. 142 at 15.  The Defendant is incorrect.  The Court did not "expressly indicate" the Defendant could raise Section 3(b) as a defense.  Instead, the Court held that rules-based objections to the Committee had been waived as a defense at trial where the Defendant was on notice of them at the time he defaulted and had not

raised them to the Committee.  Hrg. Tr., 7/11/22, at 128:11-130:13 (finding that "there's no serious argument that Mr. Bannon could not have known of the alleged rules violation he now points to"). It later found, specifically with respect to the Defendant's arguments about Section 3(b), that it appeared the objection fell within the category of waived objections and that, to present the argument to the jury, there must be some evidence presented that the Defendant had made a timely objection on the basis of Section 3(b) before the Committee.  *See* Trial Tr., 7/20/22, 709-10.  The Defendant never offered or proffered such evidence.  The only evidence he can point to is testimony from a committee staffer that the deposition rules required witnesses to be provided Section 3(b) before they testified and that the Defendant was not provided Section 3(b) because he never showed up to his deposition.  *See* ECF No. 142 at 15 (citing Trial Tr., 7/20/22, at 712-713). This is not evidence that the Defendant raised an objection to appearing for testimony on the basis of not receiving Section 3(b).  And he has never offered, proffered, or otherwise made the Government or the Court aware of any evidence that he did raise such an objection.  That is because there is no such evidence, because it did not happen.  The Defendant was not, therefore, under this Court's rulings or the applicable law, entitled to make the argument to the jury that he was excused from complying with the subpoena because he did not receive Section 3(b) before the date of his deposition.  The Court's instruction to the jury to disregard the improper argument the defense nevertheless made, in contravention of the law, was proper and cannot support a finding that the instruction led to a verdict on an improper theory.  *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

## III.    CONCLUSION

The Defendant's motion for a new trial fails to meet his burden under Rule 33.  He claims multiple errors without offering any basis to conclude they call the verdict into doubt, and the errors he claims are not, in fact, errors at all.   Instead, he attempts to obtain a new trial by relitigating issues already decided by this Court, without offering any new basis to reconsider them, and by relying on misinterpretations of the evidence, this Court's pretrial and trial rulings, and the controlling law.  His motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      /s/ Amanda R. Vaughn
         J.P. Cooney (D.C. 494026)
         Molly Gaston (VA 78506)
         Amanda R. Vaughn (MD)
         Assistant United States Attorneys
         United States Attorney's Office
         601 D Street, N.W.
         Washington, D.C. 20530
         (202) 252-1793 (Vaughn)
         amanda.vaughn@usdoj.gov