FD-302 (Rev. 5-8-10)

- 1 of 10 -



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/11/2021

    ROBERT COSTELLO, Partner, Davidoff Hutcher & Citron, LLP, 605 Third Avenue, New York, New York, was interviewed via Webex. COSTELLO was joined in the interview via Webex by his associate ADAM KATZ. COSTELLO was interviewed by Assistant United States Attorney (AUSA) J.P. Cooney, U.S. Attorney's Office for the District of Columbia (USAO-DC), AUSA Molly Gaston USAO-DC, AUSA Amanda Vaughn USAO-DC, Paralegal Chad Byron USAO-DC, FBI Special Agent Katherine E. Pattillo, FBI Special Agent Frank G. D'Amico, FBI Special Agent Matthew Lariccia, and FBI Special Agent Stephen R. Hart. There were no agreements or conditions governing the conversation between COSTELLO and representatives of USAO-DC or FBI. After being advised of the identities of the interviewing AUSAs and Agents and the nature of the interview, COSTELLO provided the following information:

    COSTELLO had initiated contact with the U.S. Attorney's Office (USAO) because he was not certain what had been provided to them regarding his interactions with the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the Select Committee) regarding their subpoena to his client, STEPHEN BANNON (BANNON). COSTELLO was willing to provide USAO additional written correspondence between him and the Select Committee.

    The Select Committee subpoena requested a number of different categories of information from BANNON. Among them, the Select Committee sought copies of BANNON's podcast. COSTELLO found this request odd because the podcasts are available to the public online. COSTELLO and BANNON discussed the categories and were preparing to respond to Chairman Thompson on October 19, 2021, when they received a letter on October 18, 2021, from the Select Committee notifying of a deadline to respond. However, just that afternoon, COSTELLO had learned of a lawsuit filed by attorneys for former President DONALD TRUMP in US District Court in Washington, DC, challenging the Select Committee. COSTELLO had not had communication with attorneys for TRUMP

| | |
|---|---|
| Investigation on  11/03/2021  at | Manassas, Virginia, United States (Phone, Other (Webex)) |
| File #  72-WF-3513323 | Date drafted  11/03/2021 |
| by HART STEPHEN R, SA FRANK G. DAMICO, Matthew U. Lariccia, Katherine E. Pattillo | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

prior to that date. After learning of the lawsuit filed by the attorneys for former President TRUMP, COSTELLO wrote a short letter to the Select Committee requesting an adjournment from the proceedings. COSTELLO did not expect the Select Committee to give him a full seven days adjournment, but he did expect the Select Committee to give him 24-48 hours to review the lawsuit and whether or not it applied to the subpoena served on BANNON.

   With regards to responding to the Select Committee's request for documents, COSTELLO planned to send a link to the website hosting all of BANNON's publicly accessible podcasts. COSTELLO and BANNON had also identified five other categories for which BANNON had no responsive documents. COSTELLO believed the request listed as number 17 involved information over which BANNON could assert attorney-client privilege given it included a request for communications between BANNON and RUDOLPH GIULIANI, JENNA ELLIS, and other attorneys who were working for former President TRUMP. COSTELLO did not want to assert Executive Privilege over items BANNON didn't possess or were publicly available, like the podcasts. Former President TRUMP's attorneys were the first to say they were invoking Executive Privilege. COSTELLO believed he first heard this asserted in a letter dated October 6, 2021.

   At approximately 5:59pm on October 18, 2021, COSTELLO sent a letter to the Select Committee requesting an adjournment. However, COSTELLO received a letter from White House Counsel's Office at 6:55pm advising former President TRUMP's use of Executive Privilege in regards to activities on January 6, 2021, was not valid and could therefore not be asserted by BANNON. COSTELLO assumed the Select Committee forwarded his letter to the White House generating the response. The Select Committee responded on October 19, 2021. However, per Select Committee rules, COSTELLO was not allowed to respond.

   The following day, the Select Committee held a press conference regarding their vote and to make an example out of BANNON. The Select Committee had served subpoenas to BANNON, MARK MEADOWS, PATEL, and SCAVINO (writer's note: PATEL and SCAVINO are KASH PATEL and DAN SCAVINO). COSTELLO reminded interviewing agents and attorneys that nothing had happened to any of the other subpoena recipients although the Select Committee was reportedly engaging with MEADOWS and PATEL. But, it was believed that neither MEADOWS

nor PATEL had been brought before the Select Committee nor had they produced documents as required in their subpoenas.

COSTELLO informed BANNON that BANNON did not have the ability to waive Executive Privilege since that authority belongs to the President.

COSTELLO spoke with an attorney on the Select Committee the night before BANNON was scheduled to appear. (Writer's note: This attorney was SEAN TONOLLI.) The attorney informed COSTELLO he was checking to see if COSTELLO and/or BANNON was going to appear. The attorney stated he had young kids at home and preferred to be at home with them rather than preparing for a deposition if they had no plans to appear. COSTELLO told the attorney he could go home for the night as they would not be appearing before the Select Committee. COSTELLO brought up to the attorney the unusual Select Committee rule that the only lawyer allowed to be present with a witness was the witness's attorney. The Committee attorney responded those were the rules of the Select Committee and offered no further explanation or discussion.

COSTELLO viewed the whole issue as a "battle" between the Select Committee and former President TRUMP. Per the DOJ Office of Legal Counsel (DOJ-OLC), BANNON did not have to be a government employee to receive protections under Executive Privilege. COSTELLO believed BANNON was covered under Executive Privilege and that former President TRUMP had to the right to claim it for BANNON. COSTELLO stated, similar to DOJ-OLC's opinion, the Supreme Court has held since 1977 that a person does not need to be a government employee to receive protections under Executive Privilege. COSTELLO believed the Executive Privilege issue should be worked out between the Select Committee and former President TRUMP and not by BANNON. In regards to Executive Privilege, COSTELLO and BANNON would follow any agreements made by former President TRUMP and the Select Committee or legal ruling of a court. BANNON was not a contemptuous person in regards to the Select Committee's proceedings.

The Select Committee told COSTELLO the issue of Executive Privilege was not to be decided by BANNON. COSTELLO pointed out BANNON had testified on four previous occasions. Each of these instances involved discussions regarding BANNON's communications with former President TRUMP and the possible issue of Executive Privilege. BANNON had previously testified once

before the Mueller Special Counsel's Office, once before the Senate Intelligence Committee, and twice before the House Intelligence Committee. Representative ADAM SCHIFF is on the Select Committee and SCHIFF should be aware that BANNON knows the processes.

DOJ-OLC had previously reviewed a similarly constructed House committee which operated under the same rules as the Select Committee. COSTELLO did not know who or what was covered under Executive Privilege but that decision was up to former President TRUMP and the courts. COSTELLO believed the Select Committee was purposely going after BANNON because of who he was and the Select Committee wanted to use the USAO to force people to reply to the Select Committee. COSTELLO believed that based upon the DOJ-OLC guidance, BANNON would not have to reply to the Select Committee subpoena.

COSTELLO believed that ten of the topics listed in the schedule attachment of the Select Committee subpoena were protected by Executive Privilege leaving seven which were not. COSTELLO advised BANNON not to respond to the Select Committee subpoena. Instead, COSTELLO advised that BANNON should wait to respond until an agreement was reached between the Select Committee and former President TRUMP or if a court defined what was covered under Executive Privilege. COSTELLO requested USAO decline prosecution of BANNON and for the U.S. House of Representatives to attempt to settle the matter civilly. COSTELLO believed under the legal argument *void ab initito* there was no civil recourse for the Select Committee. BANNON was fully engaged with COSTELLO throughout the entire subpoena process.

COSTELLO could not recall the exact date and time, but a Select Committee staffmember had called him prior to the subpoena issue to confirm COSTELLO still represented BANNON. The following day, KRISTIN AMERLING called COSTELLO to ask if he would accept the service of the Select Committee subpoena on behalf of BANNON. AMERLING sent the Select Committee subpoena to COSTELLO before COSTELLO had a chance to speak with BANNON. COSTELLO was contacted by various press outlets before he agreed to accept service of the Select Committee subpoena. The Select Committee held a press conference about the subpoena before COSTELLO had the opportunity to reply to the Select Committee.

COSTELLO did not know who was representing SCAVINO, PATEL, MEADOWS, or former President TRUMP. COSTELLO later learned which attorney was representing MEADOWS. COSTELLO attempted to contact the attorney he believed was representing former President TRUMP, but that attorney advised him that former President TRUMP was being represented by JUSTIN CLARK. COSTELLO first had contact with CLARK on approximately October 4 or October 5, 2021. COSTELLO could not recall the exact date, but recalled it was a day or two before he received the letter from the Select Committee on October 6, 2021. COSTELLO believed he may have attempted to contact CLARK first but the first substantive contact occurred when CLARK responded to COSTELLO. Throughout the subpoena response process, COSTELLO, KATZ, and BANNON have operated independently of others who have received subpoenas from the Select Committee and their respective attorneys.

COSTELLO sent the Select Committee subpoena to BANNON to review. BANNON did not think he had documents for all 17 items listed in the schedule attachment  BANNON was certain he had no documents for five of the categories. COSTELLO did not inform the Select Committee of BANNON's position on the 17 items in the schedule. However, on October 18, 2021, COSTELLO was in the process of drafting a letter to the Select Committee about that when he was informed of the lawsuit filed on behalf of former President TRUMP. COSTELLO was surprised he was not given a courtesy 24-48-hour adjournment by the Select Committee to review the lawsuit. COSTELLO believed the adjournment was intentionally not given by the Select Committee in order to be able to send the matter to the House for a vote. Per DOJ-OLC's opinion, the Select Committee knew the subpoenas were illegal and unenforceable.

After AMERLING contacted COSTELLO, he may have contacted her the following day. COSTELLO did not have any additional contact with AMERLING subsequent to the subpoena service. COSTELLO also spoke with SEAN TONOLLI at the Select Committee. Outside of AMERLING and TONOLLI, COSTELLO has not spoken with anyone else at the Select Committee. COSTELLO was not sure of the exact date, but recalled TONOLLI first called COSTELLO between 7:30pm and 8:00pm. TONOLLI advised he was staff counsel at the Select Committee and would be the one person asking questions during the deposition. TONOLLI called to verify neither COSTELLO nor BANNON were going

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of  Costello   (U) November 3, 2021 Interview of Robert , On  11/03/2021 , Page  6 of 10

to appear at the deposition. TONOLLI said he had kids and would prefer to be at home with them instead of at work if COSTELLO confirmed neither he nor BANNON would appear at the deposition. COSTELLO brought up the issue of Executive Privilege and informed TONOLLI the Select Committee could either agree to it or litigate. COSTELLO told TONOLLI he noticed in the Select Committee's rules the only attorney who could attend the deposition would be an attorney representing the witness and no outside attorneys. COSTELLO believed this would be a secret deposition since, unlike other depositions, neither the witness nor the witness's attorney could review the transcript. TONOLLI told COSTELLO's those are the Select Committee's rules. COSTELLO did not ask TONOLLI to change the rules. COSTELLO noted TONOLLI was not in a position to change the Select Committee's rules anyway.

COSTELLO did not communicate his issues with the Select Committee's rules to anyone in the Select Committee who actually had the ability to change the rules. COSTELLO did not tell Chair Bennie Thompson, who is not an attorney, about COSTELLO's objections to the Select Committee's rules. COSTELLO was surprised the Select Committee didn't know it's own rules. COSTELLO and BANNON were waiting for additional instructions from the Select Committee on how to proceed, but neither COSTELLO nor BANNON received any additional instructions, even though the Select Committee made media statements that BANNON could not be covered under Executive Privilege.

COSTELLO believed there were seven items in the attachment that could be disposed of quickly. BANNON did not possess any responsive documents for these items. For example, BANNON did not have any communication with the Proud Boys, the Oathkeepers, Three Percenters, ALEX JONES, or SCOTT PERRY. COSTELLO acknowledged it might have put BANNON in a better light had COSTELLO responded to the Select Committee there were no documents or communications for the seven items and that those items were not covered under Executive Privilege. COSTELLO stated Executive Privilege doesn't cover items a person doesn't possess. The podcasts requested could be obtained by the Select Committee off the internet, and since they were in the public domain, the podcasts also were not covered under Executive Privilege.

COSTELLO knew the Select Committee was going to refer the matter to DOJ

and believed Congress was overstepping its authorities and was doing the job of the FBI. COSTELLO did not believe the actions were appropriate under the Constitution. COSTELLO and BANNON were willing to reply to the Select Committee subpoena but they needed someone from the Select Committee to advise them of the proper rules.

COSTELLO did not discuss disposing of any documents requested in the Select Committee subpoena with any attorneys who represented former President TRUMP.

COSTELLO had "an email or two" with CLARK, who COSTELLO believed was the attorney who filed the lawsuit on behalf of former President TRUMP. However, COSTELLO subsequently learned the lawsuit was filed by a Virginia-based attorney named First Name Unknown (FNU) BINNALL.

COSTELLO again stated he did not inform the Select Committee about disposing of the seven items in the Select Committee subpoena because the Select Committee would not respond to COSTELLO.

COSTELLO did not request any other adjournments. The House of Representatives voted quickly after COSTELLO's request for adjournment. COSTELLO believed that was done in order to make an example of BANNON. COSTELLO didn't raise the adjournment issue after the House's vote because he knew he'd eventually have to deal with the USAO anyway.

COSTELLO was not prepared to respond on BANNON's behalf on October 7, 2021. At that time, COSTELLO did not know what BANNON possessed that would have been responsive to the Select Committee's subpoena. Once COSTELLO learned of what items BANNON possessed or didn't possess, COSTELLO believed they would be able to dispose of those items. COSTELLO felt BANNON's history of testifying should have been known to Representative SCHIFF.

COSTELLO did not provide any documents to attorneys representing former President TRUMP for review to determine if Executive Privilege covered the documents. At the time, COSTELLO did not know what attorneys were representing others who had received Select Committee subpoenas.

COSTELLO asked CLARK to reach out to the Select Committee and to directly

express to the Select Committee what COSTELLO and BANNON were confused about in regards to Executive Privilege. COSTELLO estimated he requested this of CLARK approximately two or three times; however, CLARK did not reach out to the Select Committee. COSTELLO did not have prior knowledge of the lawsuit on behalf of former President TRUMP.

COSTELLO again stated that on October 7, 2021, he did not know what BANNON possessed that may have been responsive to the Select Committee subpoena, so COSTELLO was not in a position to attempt to dispose of those documents. COSTELLO did not request the Select Committee grant a production deadline extension, but he had hoped the Select Committee would have come to an agreement with attorneys representing former President TRUMP or the Executive Privilege issue would have been resolved prior to the production deadline. COSTELLO stated it was not BANNON's responsibility to determine what was covered under Executive Privilege.

COSTELLO admitted he would not have handled the situation the way he had if he had known in advance of the lawsuit filed on behalf of former President TRUMP. Attorneys representing former President TRUMP informed COSTELLO all those who received a Select Committee subpoena would be given Executive Privilege.

The Select Committee did not receive a copy of the letter from CLARK nor did the Select Committee request more than the two paragraphs of CLARK's letter provided by COSTELLO.

Neither COSTELLO nor BANNON appeared on the record before the Select Committee. While BANNON lived in Washington, DC, COSTELLO lived in New York, and had issues about COVID. COSTELLO believed BANNON could not respond to issues about Executive Privilege when BANNON did not possess the ability to grant or waive Executive Privilege.

COSTELLO noted the Select Committee did not seem to be in a hurry to make the other three recipients of Select Committee subpoenas testify or produce documents. COSTELLO believed the Select Committee was trying to make an example out of BANNON.

There were no separate communications between KATZ and the Select Committee or attorneys representing former President TRUMP.

COSTELLO identified the seven items of the 17 in the subpoena attachment that could be deposed as: 1, 4, 5, 6, 15, 16, and 17. COSTELLO said item 5 dealt with the War Room podcasts and were available in the public domain. COSTELLO felt Executive Privilege did not cover item 16 and it would take a "creative argument" to apply Executive Privilege to that particular item. COSTELLO believed item 17 was covered by attorney-client privilege or by attorney work product protections. Even though MICHAEL FLYNN was not an attorney, he was present during attorney-client-protected discussions. Those particular attorneys represented former President TRUMP and CLARK informed COSTELLO not to respond to item 17.

COSTELLO admitted he did not have a good answer as to why he didn't disclose to the Select Committee that the podcasts were in the public domain and BANNON was not required to respond to that particular item. COSTELLO believed the particular requests regarding the podcasts was just a "bad request" by the Select Committee.

COSTELLO advised he didn't understand how Executive Privilege would apply to any communications BANNON had with the Proud Boys or others if those communications existed.

CLARK would not identify for COSTELLO what would be covered under Executive Privilege and that CLARK left that determination up to those who had received the Select Committee subpoena. CLARK also refused to reach out to the Select Committee on behalf of COSTELLO or BANNON.

COSTELLO sent copies of Chair THOMPSON's letters to the Virginia-based attorney representing former President TRUMP. COSTELLO did not believe the lawsuit applied to the Select Committee subpoena. COSTELLO could not recall how he found out about the lawsuit, but believed he may have heard about it from a reporter, not from attorneys representing former President TRUMP.

COSTELLO did not provide or offer any documents to attorneys representing former President TRUMP to review for Executive Privilege.

COSTELLO believed BANNON possessed some documents that would be responsive to the other ten items in the Select Committee subpoena attachment.

72-WF-3513323

Continuation of FD-302 of  **Costello**  (U) November 3, 2021 Interview of Robert Costello  , On 11/03/2021 , Page 10 of 10

COSTELLO stated he also represented RUDOLPH GIULIANI and on January 7, 2021, COSTELLO sent documents to the USAO related to activities on January 6, 2021. However, COSTELLO did not know who at the USAO had received those documents.

COSTELLO opined if BANNON had been working with attorneys who were working with former President TRUMP on January 6, 2021, any documents may be covered under attorney work product privilege. COSTELLO admitted he was not certain if former President TRUMP could assert that privilege or not.

COSTELLO could not recall if it was he or CLARK that first brought up the idea of Executive Privilege, but COSTELLO stated he could have been the one to have initiated the discussion. COSTELLO was hoping to get guidance on Executive Privilege from attorneys representing former President TRUMP to see if BANNON should assert Executive Privilege. COSTELLO recalled explaining Executive Privilege to BANNON.

COSTELLO said he would send to the USAO all memorializations of communications he had with the Select Committee, CLARK, and former President TRUMP's attorneys.

COSTELLO was surprised to have received the letter from the White House since he had no communication with anyone in the White House.

COSTELLO did not want to speak with anyone at the Select Committee after the House vote because he knew he would eventually end up speaking with USAO.

COSTELLO did not ask CLARK to attend the Select Committee hearing since CLARK wouldn't even contact the Select Committee on COSTELLO's behalf.



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   11/11/2021

Robert J. Costello (Costello) and Adam Katz (Katz), legal counsel of Steven Kevin Bannon (Bannon), were interviewed via Webex. The following representatives of the investigative team were present for the interview: Federal Bureau of Investigation (FBI) Special Agents Matthew U. Lariccia, Katherine E. Pattillo, and Stephen R. Hart; and District of Columbia Assistant United States Attorneys Joseph Cooney, Molly Gaston, and Amanda Vaughn.

Agent Note: This was a scheduled, voluntary interview of Costello and Katz, as a follow-up to the November 03, 2021 interview of Costello and Katz.

Costello stated their defense was not solely advice of counsel, but their position regarding advice of counsel was based on legal opinions of the Office of Legal Counsel. There was mixed case law regarding advice of counsel, but the Office of Legal Counsel's opinion was clear.

Costello stated the original subpoena was illegal, invalid, and unconstitutional. He told Bannon, verbally, they did not have to respond to the subpoena.

Costello stated the Legislature was using the Department of Justice (DOJ) and FBI. This was a game and Bannon was the "whipping boy."

Costello stated Congress set up the rules improperly. He believed, based on his interpretation of the opinion, the rules were that a Congressional committee could not compel a member of the Executive Branch to testify about potentially privileged matters without legal counsel. Further, based on his interpretation of the opinion, current or former White House Employees could not be prosecuted.

Costello stated he was aware, historically, DOJ did not prosecute contempt of Congress cases. He believed the subpoena was invalid, based on an opinion

| Investigation on | 11/08/2021 | at | Manassas, Virginia, United States (, Other (Webex)) |
|---|---|---|---|
| File # | 72-WF-3513323 | | Date drafted   11/09/2021 |

by   Matthew U. Lariccia, HART STEPHEN R, Katherine E. Pattillo

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-001779

of the Office of Legal Counsel. He advised Bannon of the same. He believed Congress usurped DOJ's authority.

Katz stated they were asking for a court ruling, or decision, regarding executive privilege.

Costello stated they asserted executive privilege in his letter. He acknowledged executive privilege was not appropriate for seven of the seventeen items requested in the subpoena.

Costello stated Justin Clark (Clark) was trying to be intentionally vague; however, Costello was clear former President Donald Trump (President Trump) asserted executive privilege with regard to Bannon.

Costello stated he was not told who represented former President Trump, Mark Meadows (Meadows), nor the others subpoenaed by the Select Committee. He found out on his own who represented former President Trump and Meadows, but still did not know who represented the others.

Costello stated neither he, nor Bannon, had to be present in Washington D.C. because of executive privilege. Further, neither he nor Bannon were going to attend a deposition where former President Trump could not have representation with regard to executive privilege, as executive privilege belonged to former President Trump, not Bannon.

Costello stated they were trying to setup Bannon. He had conversations with Bannon, because Bannon was not a lawyer and did not understand the process. Bannon knew about executive privilege and thought he had executive privilege, but he explained to Bannon executive privilege belonged to former President Trump. Bannon also thought he was subpoenaed for open testimony, but Costello explained it was for a private deposition.

Costello stated he knew, once before, the Office of Legal Counsel said this was illegal. The Select Committee did not consider the Office of Legal Counsel opinion. He told Bannon he did not believe Bannon had to go and, as such, they were not going to appear.

Costello stated he sent a letter to Congressman Bennie G. Thompson (Congressman Thompson), where he explained it did not make sense for

Bannon to appear for a private deposition where former President Trump was not represented. He and Bannon did not know what was protected by privilege. From day one, they "were spectators at this event."

Costello stated once there was a court ruling or decision regarding executive privilege, they would abide by the decision. He stated, "I don't think I'm at fault or read opinions wrong."

Costello stated they did not have a court ruling or decision by the deadline and were denied a request for extension. On October 19, 2021, the Select Committee closed the door to communication. He referred to the draft letter he composed on October 18, 2021.

Costello stated he quickly read former President Trump's lawsuit. Clark was not cooperative and cut-off communication. The lawsuit did not impact his decision to not comply with the subpoena. This was a fight between the Select Committee, their counsel, and former President Trump and his counsel. Again, he stated once there was a court ruling or decision regarding executive privilege, they would comply. He explained this in his letters.

Costello stated Bannon asserted executive privilege through him. He reiterated, "not our privilege to waive."

Costello stated he was sure he sent the Select Committee letters to Bannon. He stated, "did he read it? I doubt it." He did not quote lines from Congressman Thompson but explained the letters to Bannon.

Costello stated he was not trying to be an obstructionist, but was abiding by privileges as he understood. The Select Committee wanted him to present Bannon where justice was not involved. He never heard of a private deposition where there was no transcript nor interested parties involved.

Costello stated he advised Bannon not to appear before the Select Committee. The fault lies with him, not Bannon; however, he did not believe there was fault. This does not change Bannon's position. He did write, at the conclusion of an email to Bannon, "beware" in capital letters to warn Bannon his failure to comply could result in a referral to DOJ.

Costello stated Clark did not have to interfere, Clark just had to say they

72-WF-3513323

Continuation of FD-302 of (U) FOLLOW-UP INTERVIEW OF ROBERT J. COSTELLO AND ADAM KATZ, On 11/08/2021, Page 4 of 4

asserted executive privilege. He told Clark they should do this.

Costello stated Bannon was innocent, as Bannon was following directions from him. His directions to Bannon were based on his interpretations of Office of Legal Counsel opinions.

Costello stated that had the Select Committee taken this matter seriously, they would have gone to court or to former President Trump's counsel regarding executive privilege.

Costello stated his decisions were based on Office of Legal Counsel opinions. Costello read Office of Legal Counsel opinions and explained them to Bannon. The opinions said Bannon did not have to be a government employee to assert executive privilege. The Select Committee was aware they were asserting executive privilege, received from Clark. He reiterated, "I made the decision, not Bannon."

Costello stated Clark was playing some games. Clark placed Bannon in an awkward position.

Costello stated he did not want to waive executive privilege, which belonged to former President Trump. He and Bannon, referring to Clark's email, never claimed immunity. He acknowledged that immunity does not mean not showing up.

US-001782