FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry   06/30/2022

JUSTIN R. CLARK (hereafter "CLARK"), date of birth ▮▮▮▮▮▮; social security account number ▮▮▮▮▮▮; residing at ▮▮▮▮▮▮ Arlington, Virginia 22207; E-mail address: ▮▮▮▮▮▮; was interviewed by representatives of the United States Attorney's Office for the District of Columbia and the Federal Bureau of Investigation in preparation for CLARK's potential testimony as a trial witness for the United States Government in this investigation. CLARK was previously identified as legal counsel for former United States President Donald J. Trump as well as outside counsel for the "Donald Trump for President 2020" presidential campaign.

This interview occurred on 06/29/2022 and took place at the United States Attorney's Office for the District of Columbia, 601 D Street NW, Washington, D.C. The aforementioned interview began at approximately 3:45 p.m. and concluded at approximately 4:45 p.m.

Individuals present during the course of this interview included FBI Special Agent Frank G. D'Amico; Assistant United States Attorney Molly L. Gaston of the United States Attorney's Office for the District of Columbia; Assistant United States Attorney Amanda R. Vaughn of the United States Attorney's Office for the District of Columbia [virtually by way of WebEx video teleconference]; and Mr. Ross H. Garber, an attorney with The Garber Group LLC, 1300 I Street NW - Suite 400E, Washington, D.C. 20005; office telephone (202) ▮▮▮▮▮▮; cellular telephone ▮▮▮▮▮▮; Email address: ▮▮▮▮▮▮. Mr. Garber was present as retained legal counsel for CLARK.

CLARK was advised his participation in this interview was strictly voluntary. As such, CLARK possessed the right to refuse to answer any question asked during the course of the interview and/or terminate the interview at any time. Furthermore, the United States Government was not seeking any information from CLARK which would be considered protected under the "attorney-client privilege". CLARK confirmed that he understood same.

CLARK was further advised the United States Government would be

---

Investigation on 06/29/2022 at Washington, District Of Columbia, United States (In Person)

File # 72-WF-3513323   Date drafted 06/29/2022

by SA FRANK G. DAMICO

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-002262

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of (U) INTERVIEW OF JUSTIN R. CLARK , On 06/29/2022 , Page 2 of 10

presenting him with a series of "bates-stamped" documents which were obtained from various sources for his review in order to help facilitate this interview. After being advised of the identities of the interviewing agent/federal prosecutors and the purpose for this interview, CLARK voluntarily provided the following information:

**TEXT MESSAGE EXCHANGE DATED 10/05/2021 (BATES STAMPED SKB-000118)**

   CLARK was presented with a copy of a text message exchange between ROBERT J. COSTELLO (hereafter "COSTELLO") and an individual utilizing cellular telephone number (202) 841-2768 who is only referred to as "Pat". Through this text message exchange, "Pat" appears to be providing COSTELLO with contact information for CLARK and ALEX CANNON (hereafter "CANNON"). After reviewing this text message exchange, CLARK stated he did not recognize cellular telephone number (202) 841-2768 nor did he know the identity of "Pat." However, it is possible that "Pat" could be either PAT CIPOLLONE (hereafter "CIPOLLONE") or PAT PHILBIN (hereafter "PHILBIN").

   CLARK's initial introduction to COSTELLO occurred in/around the date of this text message exchange. CLARK's introduction to COSTELLO was due to COSTELLO being retained as legal counsel for STEPHEN K. BANNON, a/k/a STEVE BANNON (hereafter "BANNON"). CLARK had no knowledge of BANNON being represented by COSTELLO prior to COSTELLO's initial contact with CLARK.

**TEXT MESSAGE EXCHANGE DATED 10/06/2021 (BATES STAMPED SKB-000120)**

   CLARK was presented with a copy of a text message exchange dated 10/06/2021 between CLARK and COSTELLO. After reviewing this text message exchange, CLARK confirmed COSTELLO was responsible for initially reaching out to CLARK regarding the instruction letters which CLARK planned to prepare and send to the four (4) individuals who received subpoenas from the Select Committee to Investigate the January 6th Attack on the United States Capitol (hereafter "SELECT COMMITTEE").

   CLARK could not recall if COSTELLO initially contacted CANNON before contacting CLARK. However, COSTELLO was responsible for initiating that contact regardless if it was with CLARK or CANNON.

   CLARK first learned about the SELECT COMMITTEE issuing subpoenas to BANNON and three (3) other individuals through public media reports. It was at this point that CLARK began formulating a plan to send instruction letters to the individuals in receipt of these congressional subpoenas.

   CLARK did not recall speaking telephonically to COSTELLO prior to sending him the instruction letter on 10/06/2021. However, if such a conversation

US-002263

did occur, it would have been extremely brief. This is because CLARK had not yet fully developed a plan on how to proceed when he was first contacted by COSTELLO. At that point in time, CLARK simply did not have any answers for COSTELLO. However, CLARK knew any instruction letter sent to BANNON would need to be different from instruction letters sent to the three (3) other individuals in receipt of congressional subpoenas due to their unique positions within former United States President Donald J. Trump's administration during the time-period in question.

When CLARK was advised that toll records reflected a short telephone call from COSTELLO to CLARK late in the evening of 10/05/2021, CLARK stated COSTELLO must have contacted him directly and not through CANNON. CLARK did not recall COSTELLO ever telling CLARK that BANNON wanted to comply with the congressional subpoena; or did not want to comply with the congressional subpoena.

COSTELLO's initial contact with CLARK did not prompt CLARK to write instruction letters nor did COSTELLO ask CLARK to do this. CLARK made the decision to provide instruction letters to BANNON and others in receipt of congressional subpoenas after hearing about it through the media.

### E-MAIL DATED 10/06/2021 AND AUTHORED BY JUSTIN R. CLARK WITH ATTACHED INSTRUCTION LETTER WHICH WAS SENT TO ROBERT J. COSTELLO (BATES STAMPED SKB-000001 through SKB-000003)

CLARK was presented with a copy of a e-mail dated 10/06/2021 and authored by CLARK with attached letter dated 10/06/2022. After reviewing these documents, CLARK identified the attachment to the e-mail as the instruction letter which CLARK authored and subsequently sent to COSTELLO on 10/06/2021.

When directed to Paragraph #2 of the aforementioned instruction letter, CLARK stated the language used in Paragraph #2 is not an assertion of "executive privilege" or "deliberative privilege" on behalf of former United States President Donald J. Trump; nor was it written as a prophylactic measure for the assertion of any privilege.

When directed to Paragraph #3 of the aforementioned instruction letter, CLARK stated the language used in Paragraph #3 is an assertion of "executive privilege" and/or "deliberative privilege" with qualifications. CLARK explained this paragraph advised COSTELLO that he should invoke "executive privilege" only on those documents in BANNON's possession and/or provided testimony that contain privileged materials.

CLARK further explained the language used in Paragraph #3 is simply

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of (U) INTERVIEW OF JUSTIN R. CLARK , On 06/29/2022 , Page 4 of 10

instructional in nature. BANNON is not legally required by law to follow these instructions nor will he face any penalty for failing to comply with the instructions.

CLARK does not possess, nor has ever possessed, any knowledge of BANNON being in possession of documents, information, and/or testimony which would be protected under the "executive privilege." However, it is possible that BANNON may have had communications with former United States President Donald J. Trump to which "executive privilege," "deliberative privilege," or other legal privileges could potentially apply. It was COSTELLO's responsibility to review the documents and testimony in BANNON's possession and make any such assertions to the SELECT COMMITTEE if applicable.

CLARK has no knowledge of BANNON possessing any status which would provide him with immunity from providing subpoenaed documents to the SELECT COMMITTEE and/or appearing before the SELECT COMMITTEE to provided compelled testimony.

Former United States President Donald J. Trump also did not believe BANNON possessed immunity from complying with the congressional subpoena. As such, that is why the instruction letter provided to BANNON was written differently when compared to the instruction letters provided to the other three (3) individuals who received congressional subpoenas. Unlike BANNON, former United States President Donald J. Trump does believe the other (3) individuals do possess immunity since they were members of former United States President Donald J. Trump's administration during the time-period in question.

The instruction letter was not intended to direct BANNON to refuse to deliver any documents to the SELECT COMMITTEE and/or refuse to personally appear before the SELECT COMMITTEE to provide testimony. BANNON was instructed to withhold only those specific documents and testimony in which "executive privilege" or other privileges applied. This would not have included withholding any documents or testimony related to the Proud Boys, Oath Keepers, or similar entities since "executive privilege" clearly does not apply in those instances.

### TEXT MESSAGE EXCHANGE DATED 10/11/2021 (BATES-STAMPED SKB-000121)

CLARK was presented with a copy of two (2) text messages which COSTELLO sent to CLARK on 10/11/2021. After reviewing these text messages, CLARK stated the text messages show COSTELLO understood that "executive privilege" had not been invoked with regard to BANNON.

CLARK recalled speaking with COSTELLO via telephone at some point after

sending him the instruction letter on 10/06/2021.  However, CLARK was uncertain if this conversation occurred before or after receiving COSTELLO's two (2) text messages on 10/11/2021.

### E-MAIL DATED 10/13/2021 AND AUTHORED BY ROBERT J. COSTELLO WITH ATTACHED LETTER DATED 10/08/2021 FROM US REPRESENTATIVE BENNIE G. THOMPSON WHICH WAS SENT TO JUSTIN R. CLARK (BATES STAMPED SKB-000030 through SKB-000034)

CLARK was presented with a copy of an e-mail dated 10/13/2021 and authored by COSTELLO which included a congressional letter dated 10/08/2021 and signed by United States Representative Bennie G. Thompson. After reviewing these documents, CLARK confirmed receiving this e-mail from COSTELLO on 10/13/2021, but could not recall if he responded to it.

CLARK had not seen the attached congressional letter dated 10/08/2021 prior to receiving COSTELLO's e-mail on 10/13/2021.

CLARK received a telephone call from COSTELLO in/around the time of CLARK's receipt of the 10/13/2021 e-mail.  CLARK recalled being in Nashville, Tennessee when he received COSTELLO's telephone call.

During this telephone call, CLARK informed COSTELLO that it was COSTELLO's responsibility as BANNON's retained counsel to assert "executive privilege" on any document or testimony in BANNON's possession to which COSTELLO believed such privilege applied.  CLARK further explained he was unable to assert any privilege on BANNON's behalf because CLARK had absolutely no idea what BANNON had in his possession.

CLARK offered to review any document in BANNON's possession should COSTELLO need assistance in determining whether or not the "executive privilege" potentially applied. COSTELLO never asked CLARK to review any such documents.

CLARK also advised COSTELLO that it was unlikely the SELECT COMMITTEE would permit CLARK to be present during BANNON's scheduled in-person appearance before the SELECT COMMITTEE.  As such, it was COSTELLO's responsibility to be present at the hearing and assert "executive privilege" on any compelled testimony which COSTELLO believed to be potentially privileged.  Moreover, COSTELLO would need to work those issues out directly with the SELECT COMMITTEE.

CLARK never instructed, directed, or implied that COSTELLO should advise BANNON not to appear before the SELECT COMMITTEE as required by the congressional subpoena.

During their 10/13/2021 call, COSTELLO repeatedly told CLARK that CLARK needed to contact the SELECT COMMITTEE and advise them that former United States President Donald J. Trump was invoking "executive privilege" with regard to BANNON's production of documents and compelled testimony. CLARK told COSTELLO that he could not due that and explained the reasons why.

Again, CLARK told COSTELLO that was not CLARK's job to contact the SELECT COMMITTEE on BANNON's behalf. COSTELLO also recommended COSTELLO contact the White House Counsel Office in order to obtain additional guidance on this issues.

CLARK may have also mentioned that former United States President Donald J. Trump was considering suing the National Archives.

### E-MAIL DATED 10/14/2021 AND AUTHORED BY JUSTIN R. CLARK WHICH WAS SENT TO ROBERT J. COSTELLO (BATES STAMPED SKB-000101 through SKB-000102)

CLARK was presented with a copy of an e-mail dated 10/14/2021 and authored by CLARK which was sent to COSTELLO. After reviewing the document, CLARK identified this e-mail as his formal response to COSTELLO's e-mail dated 10/13/2021 and associated telephone call.

CLARK reported sending this e-mail in order to memorialize and re-enforce what CLARK had discussed with COSTELLO during their 10/13/2021 telephone call.

CLARK also recalled discussing this matter with CANNON and PHILBIN before sending the e-mail. CLARK explained he wanted to make sure his thought process was correct.

### LETTER DATED 10/13/2021 AND AUTHORED BY ROBERT J. COSTELLO WHICH WAS SENT TO THE SELECT COMMITTEE REGARDING STEPHEN K. BANNON (BATES STAMPED SKB-000008 through SKB-000009)

CLARK was presented with a copy of a letter dated 10/13/2021 which was authored COSTELLO and sent to the attention of United States Representative Bennie G. Thompson, Chairman of the SELECT COMMITTEE. After reviewing the document, CLARK confirmed this was the letter referenced by CLARK in his 10/14/2021 e-mail to COSTELLO.

When directed to Paragraph #3 of the aforementioned letter, CLARK stated he was "pissed" by COSTELLO's representations to the SELECT COMMITTEE. CLARK explained COSTELLO had completely misrepresented what CLARK had previously told COSTELLO during their 10/13/2021 telephone call with regard to BANNON.

### MEMORANDUM MEMORIALIZING 10/14/2021 TELEPHONE CALL WITH WHITE HOUSE COUNSEL OFFICE (BATES STAMPED KGJ-0000001)

CLARK was presented with a copy of a memorandum memorializing a 10/13/2021 telephone call between CLARK, CANNON, and members of the White House Counsel Office. After reviewing the document, CLARK explained this document confirmed his position that BANNON needed to be treated separately when compared to the three (3) other individuals in receipt of congressional subpoenas. This is due to the fact that BANNON was not part of former United States President Donald J. Trump's administration during the time-period in question. As such, there was a specific need to have different language written in the instruction letter provided to BANNON.

This memorandum also confirmed CLARK's position that CLARK could not assert "executive privilege" on BANNON's behalf. This is because CLARK had no knowledge of BANNON possessing any documents or communications with former United States President Donald J. Trump.

### E-MAIL DATED 10/15/2021 AND AUTHORED BY ROBERT J. COSTELLO WITH ATTACHED LETTER DATED 10/15/2021 FROM US REPRESENTATIVE BENNIE G. THOMPSON WHICH WAS SENT TO JUSTIN R. CLARK (BATES STAMPED SKB-000010 through SKB-000014)

CLARK was presented with a copy of an e-mail dated 10/15/2021 and authored by COSTELLO which included a congressional letter dated 10/15/2021 and signed by United States Representative Bennie G. Thompson. After reviewing these documents, CLARK confirmed receiving this e-mail from COSTELLO, but could not recall if he responded to it.

CLARK described this e-mail as "Costello saying the same thing over and over again" despite CLARK's repeated efforts to explain that CLARK could not contact the SELECT COMMITTEE regarding BANNON. CLARK had no idea why COSTELLO was not understanding what he had been previously told.

### E-MAIL DATED 10/16/2021 AND AUTHORED BY JUSTIN R. CLARK WHICH WAS SENT TO ROBERT J. COSTELLO (BATES STAMPTED SKB-000101 through SKB-000102)

CLARK was presented with a copy of an e-mail dated 10/16/2021 and authored by CLARK which was sent to COSTELLO. After reviewing this document, CLARK stated he was prompted to send this e-mail to COSTELLO after seeing media reports that BANNON refused to appear before the SELECT COMMITTEE as required by the congressional subpoena.

CLARK never advised COSTELLO that BANNON should not appear before the SELECT COMMITTEE. Furthermore, COSTELLO never mentioned nor discussed the

possibility of BANNON refusing to appear before the SELECT COMMITTEE with CLARK.

Through his e-mail, CLARK also re-affirmed his position that former United States President Donald J. Trump did not believe that BANNON possessed immunity from appearing before the SELECT COMMITTEE. However, it was COSTELLO's responsibility to determine if any such immunities existed with regard to BANNON.

During an earlier telephone call, CLARK advised COSTELLO of three (3) avenues which COSTELLO could choose to pursue in an attempt to address the "executive privilege" issue with the SELECT COMMITTEE. CLARK made reference to his prior discussion with COSTELLO about these other avenues in his 10/16/2021 e-mail to COSTELLO.

CLARK identified the three (3) avenues he discussed with COSTELLO as as follows: 1) COSTELLO could initiate contact with the SELECT COMMITTEE to discuss what topics/documents were believed to be potentially privileged and then attempt to work out those issues prior to BANNON's appearance; 2) COSTELLO could appear at the hearing and object to questions asked by the SELECT COMMITTEE which COSTELLO believed would elicit information protected under "executive privilege" and then direct BANNON not to answer those questions during his testimony; and 3) COSTELLO could sue the SELECT COMMITTEE and ask a judge to quash the congressional subpoena.

**E-MAIL DATED 10/18/2021 AND AUTHORED BY ROBERT J. COSTELLO WHICH WAS SENT TO JUSTIN R. CLARK (BATES STAMPED SKB-000015 through SKB-000017)**

CLARK was presented with a copy of an e-mail dated 10/18/2021 and authored by COSTELLO which was sent to CLARK. After reviewing this document, CLARK confirmed receiving this e-mail and stated it did not make sense. In his e-mail, COSTELLO mentioned the assertion of "executive and attorney-client privileges" with regard to BANNON. However, the "attorney-client privilege" clearly does not apply to BANNON since BANNON is not an attorney.

CLARK's reaction to this e-mail was that it was circular in nature. COSTELLO continued to ask CLARK to contact the SELECT COMMITTEE and invoke "executive privilege" on BANNON's behalf. COSTELLO repeatedly asked this of CLARK even though CLARK repeatedly told COSTELLO that is not how "executive privilege" worked.

Based on their prior communications, COSTELLO had no reason to believe that former United States President Donald J. Trump had invoked "executive privilege" before the SELECT COMMITTEE with regard to BANNON.

### E-MAIL DATED 10/18/2021 AND AUTHORED BY JUSTIN T. CLARK WHICH WAS SENT TO ROBERT J. COSTELLO (BATES STAMPED SKB-000103 through SKB-000106)

CLARK was presented with a copy of an e-mail dated 10/18/2021 and authored by CLARK which was sent to COSTELLO. After reviewing this document, CLARK stated he sent this e-mail in response to COSTELLO's e-mail dated 10/18/2021. CLARK's purpose in sending this e-mail was to be "clear as possible" about BANNON not possessing immunity from providing testimony before the SELECT COMMITTEE; and to reiterate what CLARK had been repeatedly telling COSTELLO since their initial communications on 10/06/2021.

### E-MAIL DATED 10/18/2021 AND AUTHORED BY ROBERT J. COSTELLO WITH ATTACHED LETTER DATED 10/18/2021 FROM THE WHITE HOUSE WHICH WAS SENT TO JUSTIN R. CLARK (BATES STAMPED SKB-000027 through SKB-000029)

CLARK was presented with a copy of an e-mail dated 10/18/2021 and authored by COSTELLO which included a letter dated 10/15/2021 and signed by Jonathan C. Su, Deputy Counsel to the United States President. After reviewing this document, CLARK confirmed receiving this e-mail. CLARK further stated he had never seen the attached letter from the White House Counsel Office prior to receiving it from COSTELLO on 10/18/2021.

CLARK did not recall having any conversations with COSTELLO about the letter dated 10/18/2021 which COSTELLO received from the White House Counsel Office.

At the conclusion of this interview, CLARK re-affirmed the following:

CLARK never told COSTELLO that former United States President Donald J. Trump had invoked "executive privilege" and/or any other legal privilege before the SELECT COMMITTEE with regard to any specific document or testimonial information in BANNON's possession.

CLARK never contacted the SELECT COMMITTEE with regard to BANNON as requested to COSTELLO. Moreover, CLARK repeatedly advised COSTELLO that he would not contact the SELECT COMMITTEE on BANNON's behalf as it was inappropriate to do so.

CLARK never asked nor told COSTELLO to advise BANNON not to comply with the congressional subpoena with regard to compelled document production. CLARK also never asked nor told COSTELLO to advise BANNON not to appear before the SELECT COMMITTEE as scheduled in order to provide testimony.

COSTELLO never asked CLARK to physically appear with COSTELLO and/or BANNON before the SELECT COMMITTEE. However, CLARK would have not done so

FD-302a (Rev. 5-8-10)

72-WF-3513323

Continuation of FD-302 of (U) INTERVIEW OF JUSTIN R. CLARK , On 06/29/2022 , Page 10 of 10

as it would not have been in the best interest of former United States President Donald J. Trump.

COSTELLO never asked CLARK for assistance in determining if specific documents in BANNON's possession were potentially protected under "executive privilege" and/or any other privilege. CLARK still does not know what documents, communications, or information, if any, are currently in BANNON's possession and potentially responsive to the congressional subpoena.