FD-302 (Rev. 5-8-10)



OFFICIAL RECORD
Document participants have digitally signed. All signatures have been verified by a certified FBI information system.

# FEDERAL BUREAU OF INVESTIGATION

Date of entry    11/10/2021

    Sean Tonolli, Senior Investigative Counsel, U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol, was interviewed at the Thomas P. O'Neill Jr. Federal Building, 200 C Street SW, Washington, D.C. He was accompanied by U.S. House of Representatives General Counsel Doug Letter and by U.S. House of Representative Deputy General Counsel Todd Tatelman who attended via telephone.  Tonolli was interviewed by Assistant United States Attorney (AUSA) J.P. Cooney, US Attorney's Office for the District of Columbia (USAO-DC), AUSA Molly Gaston USAO-DC, AUSA Amanda Vaughn USAO-DC, FBI Special Agent Katherine E. Pattillo, FBI Special Agent Frank G. D'Amico, and FBI Special Agent Stephen R. Hart. After being advised of the identities of the interviewing agents and attorneys and the nature of the interview, Tonolli provided the following information.(Tonolli was shown various exhibits during the interview.  These will be referenced when shown during the interview and will be maintained electronically in the 1A section of the file.  The numbering convention provided by the Select Committee will be used to identify specific pages.):

    Tonolli graduated from law school in 2005 and joined the United States Attorney's Office (USAO) for the District of Columbia (DC) after clerking for a federal judge.  Tonolli worked as a prosecutor for the USAO DC for approximately four years before transitioning to the Eastern District of Virginia (EDVA).  He departed EDVA in March 2014 to work for the private firm Cahill Gordon & Reindel.  He stayed with this firm until September 2021 when he joined the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the Select Committee) team.  Tonolli is senior investigative counsel for one of five investigative teams and reports to Tim Heaphy (Heaphy).  Tonolli is assigned to the "red team" which is focused on matters related to rioters, certain political rallies, and "war room" meetings which may have occurred in hotels preceding 6 January 2021.  Tonolli's team is also peripherally responsible

Investigation on  11/02/2021  at  Washington, District Of Columbia, United States (In Person)

File #  72-WF-3513323                                            Date drafted  11/03/2021

by  Katherine E. Pattillo, HART STEPHEN R, SA FRANK G. DAMICO

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

US-000358

for examining the chronology of events at the White House on 6 January 2021.

Tonolli had been on staff less than two weeks when the Select Committee's subpoena for Stephen K. Bannon (Bannon) was issued. He was not involved in the decision to issue the subpoena nor did he participate in drafting either the subpoena or the attached schedule describing the range and scope of documents requested. Tonolli was assigned to depose Bannon and has, consequently, reviewed the subpoena, the subpoena schedule, and all official correspondence between the Chairman of the Select Committee and Bannon's counsel, Robert "Bob" Costello (Costello).

When shown the Bannon subpoena and the Chairman's accompanying letter dated September 23, 2021 (Jan. 6 Sel. Comm 0003-0010), Tonolli confirmed that the second paragraph in the letter accurately summarized the Select Committee's mandate. He further confirmed that the penultimate paragraph described prospective topics about which Bannon might be asked during the course of his deposition. According to Tonolli, these topics all fall within the scope of the Select Committee and many are wholly unrelated to former President Trump. For example, Bannon's podcast, The War Room, may have sponsored a "Women for America First" bus tour which encouraged attendance at 6 January, pro Trump rallies.

Tonolli explained the Select Committee staggered the production of documents deadline and the deposition / appearance deadline to allow Select Committee members to review any records provided as part of the deposition preparation. In the case of Bannon, documents were required by the Select Committee by October 7, 2021 and deposition testimony on October 14, 2021. No responsive documents were ever provided by Bannon or any representative.

Tonolli confirmed that he was familiar with documents identified as Jan. 6 Sel. Comm. 0011-0015, correspondence between Select Committee representative Kristin Amerling (Amerling) and Costello between October 7-8, 2021. The letter from Costello referenced correspondence he received from Justin Clark, counsel for former President Trump. Costello quoted an excerpt from this letter in which Clark suggests there is a subset of documents requested by the Select Committee which may be "potentially protected from disclosure by executive and other privileges." Tonolli was not aware of the Select Committee ever receiving correspondence from Clark or anyone representing former President Trump regarding executive

privilege.  It was Tonolli's understanding that the Chairman's response (Jan. 6 Sel. Comm. 0013-0015) clearly articulated Bannon was still required to appear for his deposition, could not assert executive privilege, and reminded Costello that Bannon had an ongoing responsibility to provide the documents requested by the subpoena and / or a privilege log.

After determining that no one from the Select Committee had been in touch with Costello regarding the upcoming, scheduled deposition, Tonolli called Costello at some time after 7pm on the evening of October 12, 2021.  This was the first of three brief phone calls between the two men over the course of October 12-13, 2021.  Prior to contacting Costello, Tonolli cleared the call with Amerling or David Buckley.  The purpose of the call was strictly to introduce himself and to discuss logistics associated with Bannon's appearance.  Tonolli first called Costello's office number and subsequently reached Costello on the cell phone number provided by his office voice mail; the call lasted approximately ten to fifteen minutes.  Costello was initially quite gruff but seemed to warm as Tonolli introduced himself, highlighted their shared experience as federal prosecutors, and mentioned a mutual acquaintance, Tom Kavalar.  Given COVID protocols and the high profile nature of Bannon's testimony, Tonolli explained he wanted to ensure that all necessary arrangements were in place for the deposition.  Costello informed Tonolli that it was "highly unlikely" that Bannon would be appearing on Thursday, October 14, 2021.  Costello mentioned that he planned on sending a letter to the Select Committee Chairman but asked Tonolli to refrain from sharing that information.

Tonolli's intent upon initiating a dialogue with Costello was exclusively to engage in discussions about the logistics of Bannon's deposition and he explicitly stated so to Costello; neither Tonolli nor Costello attempted to engage in substantive legal conversation.  During the course of this call, Costello never directly referenced any communications with Bannon although he did make several statements using the prounoun "we" which Tonolli presumed included Bannon.  Tonolli also got the sense from his conversation with Costello that he had previously represented Bannon and there was a certain level of familiarity in their working relationship.

During this first call or possibly on 13 October, Costello complained to Tonolli about comments made by Select Committee member Representative Adam Schiff in the media.  Costello characterized these remarks as unhelpful but

Tonolli did not engage him on this topic nor had he seen the news coverage in question. They concluded their call on the 12th with no specific plans to speak again. However, Tonolli knew he would reach out the following day to confirm again that Bannnon and / or Costello did not intend to appear for the scheduled deposition. Tonolli gave Heaphy a summary of this call and may also have discussed it with Kevin Elliker (Elliker), an attorney who sits behind him.

On October 13, 2021, Tonolli spoke with Costello twice. Both of these calls were memorialized in two emails he sent to David Buckley, Amerling, and Heaphy; these are identified as Jan. 6 Sel. Comm. 0054- 0055. Costello called Tonolli at approximately 1:40pm in response to an email sent by Tonolli. They spoke for no more than ten minutes and Tonolli put the call on speakerphone so it could be witnessed by Elliker. Costello was initially quite aggressive and asserted very clearly that neither he nor Bannon had any intention of attending the scheduled deposition. Costello also expressed frustration that former President Trump's legal team would not respond to him and mentioned Justin Clarke specifically. Costello asked Tonolli if the Select Committee had been in contact with representatives of former President Trump's legal team. Tonolli shared that he was not aware of any communications between the Select Committee and any counsel for former President Trump.

Tonolli did not engage in any substantive conversation about the legal merits of any privilege arguments nor did he reiterate the Select Committee's position on these matters as articulated in the Chairman's letters to Costello. Tonolli asked if Costello had submitted the letter to the Chairman referenced in the previous evening's phone call given that it might impact his preparations for the deposition. Costello said he was still drafting the letter and would let Tonolli know when it had been sent.

Costello called Tonolli at his desk at approximately 4:10pm on October 12th to share that he expected to send the letter shortly but confirmed again that neither he nor Bannon would be attending the depostion. This call again lasted no more than ten minutes. Costello clearly seemed to understand that Bannon was still expected to appear as described in the Congressional subpoena. In fact, he distinguished between being commanded by a court versus Congress and caveated a remark with, "if a court later orders this to happen." Costello likened their respective situations to

having ringside seats to a privilege showdown. During the course of the conversation, Costello raised two issues to which Tonolli did not provide answers. Costello was clear that he did not expect immediate answers because neither he nor Bannon would be appearing for the deposition regardless.

Costello asked Tonolli if there would be any way for a third party attorney to attend the deposition to assert executive privilege on behalf of former President Trump. Costello was aware that the Select Committee's deposition rules prohibited third party attorneys. Costello also inquired about the possibility of conducting the deposition remotely. Tonolli did not feel obligated to lecture Costello on the consequences of his client failing to appear given Costello's experience and seniority. Tonolli agreed that the letter finally sent to the Select Committee Chairman by Costello did not raise any of the issues mentioned during this call nor did it contemplate other conditions under which Bannon might opt to appear. Tonolli might have discussed this call with Amerling.

On the morning of October 14, 2021, Tonolli was in the room designated for the deposition by the Congressional subpoena. Also present were a court reporter, Elliker, Heaphy, Amerling, Select Committee parliamentarian Barry Pump, Chief Clerk Evan Malder (ph), Samantha Stiles (ph), Chief Administrative representative and Congressman Schiff attended virtually. Tonolli had prepared an outline for the deposition with supporting documentation; topics to be covered were within the scope of the Select Committee's mission. Tonolli had also prepared a manila folder of documents to be provided to Bannon should he appear. This manila folder contained a copy of House Resolution 503, Section 3(b) of House Resolution 8, and a copy of the 117th Congress Regulations For Use of Deposition Authority.

At the conclusion of the interview, Tonolli retrieved the above described folder prepared for Bannon's deposition and provided it to SA Pattillo. An FD-597 Receipt for Property was signed by Tonolli and a copy was provided to U.S. House of Representatives General Counsel Doug Letter. The original will be maintained in the 1A section of this file and the folder will be maintained as a single 1B item.