## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-670 (CJN) |
| | : | |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

### SENTENCING MEMORANDUM

Defendant Stephen K. Bannon, by and through his undersigned counsel, and pursuant to 18 U.S.C. § 3553, hereby submits this Sentencing Memorandum, and in support thereof states as follows:

### I.      Summary

The ear of a sentencing judge listens for the note of contrition. Someone was convicted. Did they learn their lesson? This case requires something more. It involves larger themes that are important to every American. Should a person be jailed when the caselaw which sets forth the elements of the crime is outdated? Should a person be jailed for the doing the exact same thing that was done by the highest law enforcement officers in this country, yet they received no punishment? Should a person who has spent a lifetime listening to experts – as a naval officer, investment banker, corporate executive, and Presidential advisor – be jailed for relying on the advice of his lawyers? Should a person be jailed where the prosecutor declined to prosecute others who were similarly situated – with the only difference being that this person uses their voice to express strongly held political views? If the answer to any of these questions is no, then a sentence of probation is warranted. Because we believe that the answer to each of these questions is no, we

respectfully ask this Court to impose a sentence of probation, and to stay the imposition of sentence pending appeal.

## II.    Introduction

Mr. Bannon was a top advisor to President Donald J. Trump. On July 22, 2022, a jury convicted him on two counts of Contempt of Congress under 2 U.S.C. § 192 for his non-compliance with a congressional subpoena for documents and testimony over which President Trump asserted executive privilege. Prosecutions under 2 U.S.C. § 192 are rare. Even rarer are convictions of former top Presidential advisors for Contempt of Congress – this may be the first.

## III.    Offense Conduct

On September 23, 2021, Mr. Bannon, through his counsel, Robert J. Costello, Esquire, was served with a subpoena for documents and testimony from the Select Committee To Investigate The January 6th Attack On The United States Capitol ("Select Committee"). [US-000001 to 000010]. Shortly thereafter, Justin Clark, Esquire, Counsel to President Trump, sent a letter to Mr. Costello, which stated, in pertinent part:

> President Trump vigorously objects to the overbreadth and scope of these requests and believes they are a threat to the institution of the Presidency and the independence of the Executive Branch.
>
> Through the Subpoenas, the Select Committee seeks records and testimony purportedly related to the events of January 6th, 2021, including but not limited to information which is potentially protected from disclosure by the executive and other privileges, including among others, the presidential communications, deliberative process, and attorney-client privileges. President Trump is prepared to defend these fundamental privileges in court.
>
> Therefore to the fullest extent permitted by law, President Trump instructs Mr. Bannon to: (a) where appropriate, invoke any immunities and privileges he may have from compelled testimony in response to the Subpoena; (b) not produce any documents concerning privileged material in response to the Subpoena; and (c) not provide any testimony concerning privileged material in response to the Subpoena.

[US-000971].

2

Upon receiving this letter from President Trump's counsel, Mr. Costello advised Mr. Bannon that because executive privilege belongs to the President, Mr. Bannon did not have the ability to waive executive privilege, or to decide for himself which documents or communications were covered by President Trump's privilege assertion. [US-001771]. Mr. Costello further counseled Mr. Bannon that he should not provide documents or testify in response to the subpoena, unless an accommodation was reached between the Select Committee and former President Trump, or a judicial resolution of the matter. [US-001098].

Mr. Costello advised Mr. Bannon that based upon legal authority in binding authoritative opinions published by the U.S. Department of Justice Office of Legal Counsel (OLC), Mr. Bannon did not have to appear or produce documents in response to the Select Committee subpoena due to his status as a former top Presidential advisor. Mr. Costello further advised that the subpoena was invalid, because, among other reasons, the Select Committee prohibited counsel for President Trump from being present at the deposition, to protect executive privilege. [US-001772, 001779; *see also* US- 000317 to 000318].

On October 7, 2021, Mr. Costello emailed Ms. Amerling a letter detailing the communication from President Trump's counsel. It stated, in pertinent part, as follows:

> It is therefore clear to us that since the executive privileges belong to President Trump, and he has, through his counsel, announced his intention to assert those executive privileges enumerated above, we must accept his direction and honor his invocation of executive privilege. As such, until these issues are resolved, we are unable to respond to your request for documents and testimony…We will comply with the directions of the courts, when and if they rule on these claims of both executive and attorney client privileges. Since these privileges belong to President Trump and not to Mr. Bannon, until these issues are resolved, Mr. Bannon is legally unable to comply with your subpoena requests for documents and testimony.

[US-000234-235]. On October 8, 2021, Mr. Costello received a letter response from Congressman Bennie G. Thompson, Chair of the Select Committee, which rejected any assertion of privilege. [US-000238 to 000239].

On October 13, 2021, Mr. Costello spoke by telephone with Sean Tonolli, Esquire, Senior Investigative Counsel for the Select Committee. Among other things, Mr. Tonolli told Mr. Costello that the Select Committee would not allow an attorney for former President Trump to be present and participate in the deposition of Mr. Bannon, or to assert privilege objections on behalf of President Trump. [US-000317]. Mr. Costello advised Mr. Bannon that, based upon OLC opinions, Mr. Bannon need not appear for a congressional deposition at which President Trump's attorney could not be present to assert executive privilege because the subpoena was unconstitutional and a nullity. [US-001780].

In a separate telephone call that same day, Mr. Costello told Mr. Tonolli that he had asked counsel for President Trump (Mr. Clark) to delineate the subject areas upon which President Trump was invoking executive privilege, but had not received a response, and that Mr. Bannon was not able to draw those lines himself. [US-000318]. Mr. Costello informed Mr. Tonolli that the privilege issues needed to be resolved between the Select Committee and President Trump and that Mr. Bannon was on the sidelines of this inter-branch dispute. [US-000318, 001780].

On October 13, 2021, Mr. Costello emailed to Ms. Amerling a letter to Chairman Thompson. In the letter, Mr. Costello provided legal authority for Mr. Bannon's position given President Trump's assertion of executive privilege and stated that Mr. Bannon intended to comply with the subpoena if President Trump withdrew his assertion of executive privilege, or if a court ruled on the matter. The letter stated, in pertinent part, as follows:

Mr. Bannon's position is not in defiance of your Committee's subpoena; rather, Mr. Bannon noted that President Trump's counsel stated that they were invoking executive and other privileges and therefore directed us not to produce documents or give testimony that might reveal information President Trump's counsel seeks to legally protect. Mr. Bannon has testified on three prior occasions, before the Mueller Investigation, The House Intelligence Committee and the Senate Intelligence Committee. In each of those instances, when President Trump waived his invocation of the executive privileges, Mr. Bannon testified.

As recently as today, counsel for President Trump, Justin Clark, Esq., informed us that President Trump is exercising his executive privilege; therefore, he has directed Mr. Bannon not to produce documents or testify until the issue of executive privilege is resolved. Your Committee will have the right to challenge that exercise or its scope. That is an issue between the Committee and President Trump's counsel and Mr. Bannon is not required to respond at this time. See *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, FN 34 (D.D.C. 2019) ("The President can certainly identify sensitive information that he deems subject to executive privilege, and his doing so gives rise to a legal duty on the part of the aide to invoke the privilege on the President's behalf when, in the course of his testimony, he is asked a question that would require disclosure of that information.")[.]

Until such time as you reach an agreement with President Trump or receive a court ruling as to the extent, scope and application of the executive privilege, in order to preserve the claim of executive and other privileges, Mr. Bannon will not be producing documents or testifying. As noted previously, Mr. Bannon will revisit his position if President Trump's position changes or if a court rules on this matter. [US-000315 to 000316].

Mr. Bannon followed Mr. Costello's legal advice and did not appear for deposition on October 14, 2021. [US-000277-288].

On October 15, 2021, Ms. Amerling emailed Mr. Costello a letter signed by Chairman Thompson. Among other things, the letter stated that the Select Committee planned to meet on October 19, 2021, to consider whether to request that the U.S. House of Representatives find Mr. Bannon in contempt. The letter invited Mr. Costello to provide additional information on Mr. Bannon's behalf by October 18, 2021. [US-000300 to 000301]. On October 18, 2021, upon learning about the filing of a civil lawsuit, Mr. Costello sent an email to Ms. Amerling. The attachment to that email was a letter to Chairman Thompson requesting a short adjournment. The letter stated, in pertinent part, the following:

> We write on behalf of Stephen Bannon. We have just been advised of the filing of a lawsuit in federal court for the District Court of Columbia entitled Donald J. Trump v. Bennie Thompson, et al., 21-Civ-02769 (D.D.C. 2021). In light of this late filing, we respectfully request a one-week adjournment of our response to your latest letter so that we might thoughtfully assess the impact of this pending litigation.

[US-000290].The next morning, on October 19, 2021, Ms. Amerling emailed Mr. Costello a one paragraph response from Chairman Thompson rejecting Mr. Bannon's request for a one-week adjournment, noting that the Select Committee's work was too "important and urgent" to justify a one-week adjournment. [US-000275]. The same day, the Select Committee voted to recommend that the U.S. House of Representatives hold Mr. Bannon in Contempt of Congress. [US-000322]. On October 21, 2021, the U.S. House of Representatives voted 229-202, largely along party lines, to find Mr. Bannon in Contempt of Congress. [US-000459-504].

Mr. Costello commenced discussions with representatives of the U.S. Attorney's office on Mr. Bannon's behalf, seeking to persuade them that a criminal prosecution would be a mistake. Mr. Costello made clear to Government counsel that Mr. Bannon acted upon his legal advice, that the advice was based upon authoritative OLC opinions, and that long-standing DOJ policy precluded a criminal prosecution. [US-001779 to 001782; US-001098 to 001105].

On November 12, 2021, Mr. Bannon was indicted. [Doc. 1]. He voluntarily surrendered on November 15, 2021 and was released on his own recognizance the same day.[1] Throughout the course of this case, he has complied with the conditions of his release.

---

[1] *See* Spencer S. Hsu & Tom Jackman, *Stephen Bannon surrenders after indictment on charges of contempt of Congress*, WASHINGTON POST (Nov. 15, 2021, 4:48 P.M.), available at https://www.washingtonpost.com/local/legal-issues/steve-bannon-surrenders-contempt-congress/2021/11/15/7d797918-4620-11ec-b05d-3cb9d96eb495_story.html.

On July 22, 2022, a jury found Mr. Bannon guilty on two counts of Contempt of Congress. As demonstrated *infra,* Mr. Bannon was convicted without being allowed to introduce evidence negating willfulness, and specifically, evidence that he relied in good faith on his counsel's advice.

### IV.   Mr. Bannon's History

Mr. Bannon is 68 years old. PSR, Doc. 148 at p. 3. He hosts a top-rated show that addresses current political issues. *See id.* at ¶¶ 60,77. Prior to this case, he has not been convicted of a crime. *Id.* at ¶¶ 48-50. When the arrest warrant was issued in this matter, Mr. Bannon voluntarily surrendered to authorities and was released on his own recognizance the same day. *See supra* n.1.

Mr. Bannon grew up in a working-class family in an integrated neighborhood of Richmond, Virginia. *Id.* at ¶ 56-59.  His father worked as a telephone lineman, while his mother cared for him and his siblings. *Id.* at ¶ 56. It was a positive upbringing, and one that motivated him to want the same chance in life for all Americans.

Mr. Bannon received his undergraduate degree from the University of Virginia in 1976. *Id.* at ¶ 63. After college he joined the United States Navy and ascended to the rank of Lieutenant O-3. *Id.* at ¶ 78. During his time in the Navy, Mr. Bannon served as a Surface Warfare Officer on the USS Paul F. Foster in the Pacific Fleet. *Id.* In 1980, he was deployed to the Persian Gulf to assist with Operation Eagle Claw during the Iran hostage crisis. *Id.* In 1981, Mr. Bannon on merit became the Special Assistant to the Chief of Naval Operations at the Pentagon. *Id.* While working at the Pentagon, Mr. Bannon pursued additional studies. He received a master's degree in National Security Studies from Georgetown University. *Id.* at 74. Following his honorable discharge from the Navy in 1983, Mr. Bannon earned an MBA from Harvard University. *Id.* He subsequently worked as an investment banker, corporate executive, and presidential advisor. *Id.* at ¶¶ 79-81.

Though in overall good health, Mr. Bannon has suffered from chronic back pain for the last thirty years. *Id.* at ¶ 67. He does not drink or smoke and has no history of substance abuse or mental illness. *Id.* at ¶¶ 71-73.

### V.    Argument

### A.  A Stay Pending Appeal Is Warranted

Mr. Bannon respectfully asserts that any sentence imposed by this Court should be stayed pending resolution of his appeal. 18 U.S.C. § 1343(b)(1)(A)-(B) provides:

> (b) Release or detention pending appeal by the defendant.--(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds--
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence….

*Id.* Paragraph 2 of § 3143(b) directs that the court must detain a person pending appeal "who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and sentenced to a term of imprisonment, and who has filed an appeal or a

petition for a writ of certiorari." § 3143(b)(2) Section 3143(b)(2) is inapplicable in this case

because Mr. Bannon was not convicted of an offense listed in subparagraphs (A)-(C) of § 3142.[2]

It is indisputable that, consistent with § 3143(b)(1)(A), Mr. Bannon is not likely to flee or pose

a danger to the safety of any other person or the community if released under his own recognizance

or on an unsecured appearance bond. He has not been convicted of a violent crime, he has no other

criminal convictions, and he has strong ties to the D.C. area. Additionally, Mr. Bannon has not

missed a single court date in this matter and will appear when ordered to do so. Indeed, U.S.

Probation agrees with this assessment:

> The defendant is a good candidate for voluntary surrender as he is compliant with the
> conditions of his release, has appeared for all scheduled Court appearances, and is not an
> apparent flight risk or a danger to the community. 18 USC § 3143(a)(2).

Doc. 150 at 3.

 If needed, this Court can impose reasonable conditions for Mr. Bannon's release. Over the last

year, Mr. Bannon has demonstrated that he is willing and able to comply with any conditions of

release imposed by the Court. He also has the financial ability to pay an appeal bond, if one is set

by this Court. Mr. Bannon therefore qualifies for release pending appeal under § 3143(b)(1)(A).

Under § 3143(b)(1)(B)(ii), Mr. Bannon's appeal is not taken for the purpose of delay and raises

substantial questions of law. Before trial, the Government successfully moved to preclude Mr.

Bannon from raising an advice of counsel defense based on the Court's decision in *Licavoli v.*

---

[2] The offenses listed in subparagraphs (A)-(C) of § 3142(f)(1) are:   (A) a crime of violence, a violation
of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of
10 years or more is prescribed; (B) an offense for which the maximum sentence is life imprisonment or death;
(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled
Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et
seq.), or chapter 705 of title 46. § 3142(f)(1)(A)-(C)

*United States*, 294 F.2d 207 (D.C. Cir. 1961) (holding that good faith reliance on advice of counsel is not a defense to Contempt of Congress under 2 U.S.C. § 192). Defense counsel argued that *Licavoli* was inapposite because the facts of that case did not involve an assertion of executive privilege or a dispute between the branches of government. Doc. 30. The Court held that controlling precedent established in *Licovoli* required it to grant the Government's Motion.

In <u>*Licavoli*</u>, the D.C. Circuit held that "willfully makes default" under 2 U.S.C. § 192 simply means a "deliberate, intentional failure" and does not require a showing of evil motive or purpose. *Id*. at 209.  The <u>*Licavoli*</u> court found that:

> [I]t has been established since the Sinclair case, supra, that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention. It might immunize if evil motive or purpose were an element of the offense. But such motive or purpose is not an element of either of these offenses. We are of opinion that the doctrine laid down in Sinclair applies also to a charge of willfully making default. Advice of counsel cannot immunize a deliberate, intentional failure to appear pursuant to a lawful subpoena lawfully served.

*Id.* at 209.  Importantly, the *Licavoli* decision relied heavily on the Supreme Court's decision in *Sinclair v. United States*, 279 U.S. 263 (1929) (holding that good faith of witness before Senate committee in refusing to answer question on advice of competent counsel constitutes no defense), a case that has since been overruled and eviscerated in subsequent Supreme Court decisions. *United States v. Gaudin*, 515 U.S. 506, 520 (1995) ("Other reasoning in *Sinclair* not yet repudiated, we repudiate now.").

Almost forty years after the *Licovoli* decision, the Supreme Court clarified that "willfulness" requires knowledge that one's conduct is unlawful. *Brian*, 524 U.S., 184 196 (1998) (to establish "willfulness" the Government must prove that a defendant knew his conduct was unlawful); *Ratzlaff v. United States*, 510 U.S. 135, 138 (1994) ("to give effect to the statutory 'willfulness'

specification, the Government had to prove [the defendant] knew the structuring he undertook was unlawful"). Indeed, the D.C. Circuit has recognized a progression over time in the Supreme Court's construction of the word "willfully." *See*, *e.g.*, *United States v. Burden*, 934 F.3d 675, 692-692 (D.C. Cir. 2019) (discussing Supreme Court approach to reading "willfully" as requiring proof that a defendant had a "culpable state of mind" and knew that his acts were unlawful). District courts have applied this law. *See United States v. Zeese*, 437 F. Supp. 3d 86, 94 (D.D.C. 2020) ("Generally, 'in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'") (citation omitted).

Mr. Bannon has contended, at every opportunity, that *Licovoli* is outdated. This Court has acknowledged Mr. Bannon's arguments, as reflected below:

- "I think that the D.C. Circuit may very well have gotten this wrong; that makes sense to me, what you just said. The problem is, I'm not writing on a clean slate here." Hr'g Tr. 35:25-36:3, Mar. 16, 2022.

- "The defendant was charged with violating 2 US Code Section 192. As relevant here, that statute covers any individual who "willfully makes default" on certain Congressional summonses. The defendant argues he's entitled to argue at trial that he cannot have been "willfully" in default, because he relied in good faith, on the advice of counsel, in not complying with the Congressional subpoena. He points to many Supreme Court cases defining "willfully," including *Bryan v. United States*, 524 U.S. 184, 1998, to support his reading of the statute. If this were a matter of first impression, the Court might be inclined to agree with defendant and allow this evidence in. But there is binding precedent from the Court of Appeals, *Licavoli v. United States*, 294 F.2d 207, D.C. Circuit 1961, that is directly on point." *Id.* at 86:25-87:15.

- "Second, the defendant notes that in the sixth [sic] decade since *Licavoli*, the Supreme Court has provided clarity on the meaning of "willfully" in criminal statutes. Clarity that favors defendant. That might very well be true. But none of that precedent dealt with the charge under 2 U.S. Code, Section 192. *Licavoli* did. Thus, while this precedent might furnish defendant with arguments to the Court of Appeals on why *Licavoli* should be overruled, this court has no power to disregard a valid and on-point or seemingly on-point holding from a higher court." *Id.* at 89:3-12.

11

- "I noted in my prior decision that I have serious questions as to whether *Licavoli* correctly interpreted the mens rea requirement of "willfully", but it nevertheless remains binding authority." Hr'g Tr. 126:6-9, June 15, 2022.

Because Contempt of Congress prosecutions are so rare, the D.C. Circuit has not had occasion to address the viability of *Licavoli* given the evolution of the criminal law on the *mens rea* element. This case presents a unique chance to update the law. The current state of the law burdens subpoenaed congressional witnesses with navigating complex legal principles – such as executive privilege – that are the argot of lawyers, not laymen. The inherent risks of this approach cannot be understated. Executive privilege is critical to the proper functioning of the executive branch because it protects the confidentiality of executive decision-making, ensures that Presidential advisors can provide candid advice, and preserves the autonomy and independence of the executive branch. *See Trump v. Thompson*, 20 F. 4th 10 (2021).

The facts of this case show that Mr. Bannon's conduct was based on his good-faith reliance on his lawyer's advice. Every pre-indictment communication in this case was between attorneys. The Select Committee sought service of the subpoena not on Mr. Bannon, but *via* his attorney, Mr. Costello. The communications that followed between the Select Committee and Mr. Bannon were all conducted through attorneys. Based upon clear authority, Mr. Costello provided legal advice to Mr. Bannon. Mr. Costello provided legal justifications for Mr. Bannon's position to the Select Committee and received responses back from Select Committee attorneys. Mr. Costello provided advice to Mr. Bannon, and Mr. Bannon acted on that advice. Mr. Costello's advice, followed by Mr. Bannon, included the following:

- The Select Committee subpoena was invalid, based on long-standing U.S. Department of Justice authority, because the Select Committee would not allow former President Donald J. Trump's counsel to be present at Mr. Bannon's deposition, so as to protect executive privilege;

- A former White House official does not violate 2 U.S.C. § 192 when a President invokes executive privilege in response to a congressional subpoena, based upon U.S. Department of Justice authority;

- Mr. Bannon could not waive executive privilege, since the privilege belonged to former President Trump;

- Because former President Trump asserted executive privilege, Mr. Bannon was not in a position to determine what documents or testimony he could lawfully provide to the Select Committee; and

- Consistent with prior experience, the lawyers involved would attempt to reach an accommodation between the two political branches, or the matter would be determined by a court of law.

Mr. Bannon's prior experience led him to believe that an accommodation could be reached on the privilege issues. For instance, in February 2018, after an accommodation was reached, Mr. Bannon testified before the House Permanent Select Committee on Intelligence. *See* https://www.politico.com/story/2018/02/06/steve-bannon-russia-probe-testimony-house-393631; https://www.politico.com/story/2018/02/15/steve-bannon-scripted-questions-russia-probe-414755. Also in February 2018, after an accommodation was reached, Mr. Bannon testified pursuant to a subpoena issued in connection with the Mueller investigation. *See* https://www.nbcnews.com/politics/donald-trump/steve-bannon-met-mueller-multiple-times-over-past-week-n848421 (20 hours of testimony). In addition, after an accommodation was reached, Mr. Bannon testified before the Senate Intelligence Committee. *See* https://www.intelligence.senate.gov/sites/default/files/documents/report_volume5.pdf. The jury was not allowed to hear any of this critical evidence that bore on intent.

If the D.C. Circuit Court of Appeals overrules its holding in *Licavoli* in accordance with current Supreme Court precedent, or otherwise decides it is inapplicable under the circumstances of Mr.

Bannon's case, the judgment here would be reversed. Given this, Mr. Bannon qualifies for release pending appeal under § 3143(b)(1)(B)(ii).

Because Mr. Bannon meets all the requirements for release pending appeal under the provisions of § 3143(b)(1), this Court should release Mr. Bannon in accordance with 18 U.S.C. § 3142(b) or (c).

### B.  Mr. Bannon Contested Applicable Law

Mr. Bannon should be allowed to contest applicable law, without any detrimental effect at sentencing. In short, he is not precluded from an acceptance of responsibility decrease merely because he exercised his constitutional right to a trial. Under USSG §3E1.1 comment. n.2, "a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id.* This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.* Mr. Bannon has never contested the facts underlying his conviction. He admits that he received a Congressional subpoena from the Select Committee for documents and testimony relating to the January 6, 2021, attack on the U.S. Capitol. There is no dispute that Mr. Bannon did not provide documents or testimony by the dates indicated on the subpoena.

As evidenced by the pre-trial motions in this case, Mr. Bannon's challenges to the Government's case were legally and constitutionally based. For example, Mr. Bannon disputed the applicability of 2 U.S.C. § 192 to his conduct, given his status as a former executive official. (*See* Docs. 41, 58, 73). He challenged the constitutionality of the Government's conduct in building and prosecuting the case against him. (*See* Docs. 26, 39, 52, 56, 58, 69, 73). He sought relevant

and material discovery and testimony from the Government and from the witnesses against him, over the objection of the Government and Congressional witnesses. (*See* Docs. 28, 30, 86, 94, 97; *see also* Miscellaneous Case No. 22-60, at Doc. 7). And, he contested the Government's position that certain legal arguments were unavailable to him at trial (*See* Docs. 30, 39, 41, 73). The legal challenges advanced by Mr. Bannon were not meritless or frivolous and were aimed at protecting his constitutional rights. For these reasons, the fact that Mr. Bannon chose to put the Government to its burden at trial should not preclude him from receiving a reduction to his offense level based on acceptance of responsibility.

     C. **The Applicable Base Offense Level Is U.S.S.G. § 2J1.5 – Which As Here Involves A Misdemeanor Failure To Appear**

Mr. Bannon objects to the application of Guideline § 2X5.2 instead of § 2J1.5. The language of Guideline § 2X5.2 makes explicit that it should not be applied to Class A misdemeanors that are "specifically referenced in Appendix A to another Chapter Two guideline." *Id.* 2 U.S.C. § 192 is referenced in Appendix A to two Chapter 2 guidelines (§2J1.1 and §2J1.5). Additionally, although § 2J1.5 addresses a material witness's failure to appear for testimony in a misdemeanor or felony trial, the conduct contemplated by that Guideline is sufficiently analogous to a failure to appear for congressional testimony and is a more appropriately applicable Guideline than § 2X5.2. *See U.S. v. Underwood*, 880 F.2d 612, 620-21 (1st Cir. 1989) (determining sentencing guideline § 2J1.5 was most analogous guideline in case where defendant refused to testify at criminal trial based on good faith reliance on advice of counsel). Mr. Bannon therefore requests that Guideline § 2J1.5 be applied. The Base Offense level under that guideline is 4.

     D. **A Sentence Of Incarceration Would Be Unconstitutional Because Mr. Bannon Believed That He Was Acting Lawfully**

At the Government's request and over an objection by the defense, the Court instructed the jury that a conviction under the Contempt of Congress statute did not require that Mr. Bannon believed that what he was doing was wrong. The Court also prohibited Mr. Bannon from presenting the jury with evidence that he relied on his attorney's advice in determining how to respond to the subpoena.  There was therefore no evidence presented that Mr. Bannon believed that his conduct was unlawful. The jury was not allowed to consider evidence of Mr. Bannon's state of mind.  Mr. Bannon objects to any sentence of incarceration under these circumstances.

Imposing a sentence of incarceration without requiring proof that Mr. Bannon knew that his conduct was wrong, where the statute requires one to act "willfully," would violate his rights under the 5th, 6th, and 8th Amendments to the United States Constitution.  *See*, *e.g.*, *Staples v. United States*, 511 U.S. 600, 616-617 (1994) (Thomas, J.).  The rejection of a *mens rea* requirement that includes some consciousness of the wrongfulness of the conduct has come under sustained criticism for many years in especially compelling terms where a term of incarceration is the possible consequence of conviction, with commentators asserting that the error in permitting the same is of constitutional dimensions. *See, e.g.,* H. Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 147-152 (1962); Dubin, *Mens Rea Reconsidered: A Plea for a Due Process of Criminal Responsibility*, 18 Stan. L. Rev. 322 (1966); Note, *Criminal Liability Without Fault: A Philosophical Perspective*, 75 Colum. L. Rev. 1517 (1975). Courts have made clear that "willfully" in the context of a criminal statute requires proving that the defendant knew or believed his conduct to be unlawful or wrong.  *See, e.g., Xiulu Ruan v. United States,* 132 S. Ct. 2370, 213 L. Ed. 2d 706, 2022 U.S. LEXIS 3089 at *13*-*19, 2022 WL 2295024 (June 27, 2022*); *Elonis v. United States,* 575 U. S. 723, 734, 736 (2015); *Rehaif v. United States,* 588 U. S. ___,

139 S. Ct. 2191, 2195, 204 L. Ed. 2d 594 (2019); *See also Rehaif*, 139 S. Ct. at 2205 (Alito, dissenting).

For the foregoing reasons, Mr. Bannon respectfully asserts that a sentence of incarceration would violate his constitutional rights.

### E.  The Court Has Discretion In Fashioning An Appropriate Sentence

As discussed above, we respectfully request that this Court stay the sentence imposed in this case. At the outset, Mr. Bannon acknowledges that in *United States v. Bloch*, 762 F. Supp. 115 (D.D.C. 2011) (Robinson, M.J.), a magistrate judge in this district found that a mandatory minimum sentence is provided for a violation of 2 U.S.C. §192. In *Bloch*, the Government took the position that "the government does not see anything in the Guidelines of the U.S. Code requiring jail time of at least month (sic), or precluding a sentence of probation for violations of 2 U.S.C. §192." *Bloch*, 762 F. Supp. 2d at 117.  The Government further acknowledged in *Bloch* that the two then-most-recent prosecutions under 2 U.S.C. §192 in this district "each resulted in [a] sentence of probation."  *Id.*, *citing, U.S. v. Tejada*, Cr.-09-mj-077 (AK); *U.S. v. Abrams*, Cr.-91-575 (AER).  *Id.*

We agree with the Government's position in *Bloch.* Namely*,* that a sentence of probation is available under 2 U.S.C. §192.  The term "punishable" is not a mandatory directive like "shall be punished."  Moreover, the rule of lenity weighs in favor of finding that there is no mandatory minimum sentencing for a conviction under 2 U.S.C. §192. *See, e.g., Watkins v. United States*, 354 U.S. 178, 186 (1957).[3]

---

[3] Congress has not eliminated the Court's ability to suspend a sentence for Title Two Misdemeanors. Congress certainly could have modified the language in 2 U.S.C. §192, after the Watkins decision, but did not do so.  The *Watkins* case raised analogous issues regarding the definition of "willfully" established in the 1961 decision in *Licavoli*.  Moreover, even if,

To the extent that the Government argues that a mandatory incarceration is required, decisions like *United States v. Booker*, 543 U.S. 220 (2005), *Alleyne v. United States*, 570 U.S. 99 (2013) and their progeny, demonstrate that the Guidelines do not tie the hands of this Court at sentencing. *Compare Mistretta v. United States,* 488 U.S. 361 (1989). Indeed, imposing a sentence of incarceration under the circumstances of Mr. Bannon's case would run contrary to the fundamental constitutional principles of individualized sentencing and sentencing proportionality. *See, e.g.,* Salil Dudani, *Unconstitutional Incarceration: Applying Strict Scrutiny to Criminal Sentences*, 129 Yale Law Journal 2112 (2020). Additionally, imposing a mandatory incarceration sentence here would violate the constitutional principle of separation of powers because it would permit the Legislative Branch (through the statutory language read to impose a mandatory minimum) and the Executive Branch (through its charging decision) to interfere with the Court's sentencing discretion.[4]

In the alternative, Mr. Bannon requests that any sentence imposed be served on home confinement. Mr. Bannon qualifies for home confinement because his guidelines fall within the range of Zone A of the Sentencing Table in Chapter 5, Pt. A of the Guidelines Manual. USSG §5B1.1, comment n.1(A); *see also* Draft PSR, Doc. 148 ¶ 104.

### F. In The Alternative, The Recommendation Of U.S. Probation Is Preferred

If this Court deems that a period of incarceration is warranted, Mr. Bannon requests that this Court follow the recommendation of the United States Probation Office. *See* Doc. 150.

---

arguendo, the statute does mandate a statutory minimum, 18 U.S.C. §3553(e) allows this Court the authority to impose a sentence below the statutory minimum.

[4] Donald A. Dripps, *Charging as Sentencing*, available at https://higherlogicdownload.s3-external-1.amazonaws.com/NACDL/851e828b-f8ff-4f6c-b769 ef2134af35b5_file.pdf?AWSAccessKeyId=AKIAVRDO7IEREB57R7MT&Expires=166577161 6&Signature=bmjVLgAmta%2BhSQnR%2FsrPUg%2BE6yU%3D.

## V.  Conclusion

For the foregoing reasons, Mr. Bannon, through his undersigned counsel, respectfully requests that this Court impose a sentence of probation and stay imposition of the sentence pending appeal.

Dated: October 17, 2022

Respectfully submitted,
**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

   /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October 2022, a copy of Stephen K. Bannon's Sentencing Memorandum was served *via* the Court's CM/ECF system on registered parties and counsel.

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 44)