IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | :   Criminal No. 21-670 (CJN) |
| v. | : |
| | : |
| STEPHEN K. BANNON, | : |
| | : |
| *Defendant*. | : |

**RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Stephen K. Bannon, by and through his undersigned counsel, hereby submits this Response To The Government's Sentencing Memorandum, and states as follows:

The Government seeks a harsh sentence because of Mr. Bannon's "defiance." Doc. 152 at 1. But they mischaracterize his public statements and try to conflate his state of mind in October 2021 – the relevant time frame – with his state of mind *after* the Select Committee initiated this criminal prosecution. In October 2021, Mr. Bannon was willing to testify before the Select Committee had an accommodation been reached on executive privilege. No reasonable person could think that standing up for a constitutionally-protected privilege – on the advice of counsel – is defiant. The actions taken by public officials in and after October 2021, however, demanded a strong response. The Select Committee refused any accommodation and initiated a criminal prosecution – all the while making public statements that Mr. Bannon should be jailed. The prosecutors continued in that spirit: they sought the phone and email records of Mr. Bannon's lawyer in an unprecedented attempt to turn him into a witness, rather than an attorney. These actions by public officials cannot be condoned. What is allowed will come to be expected. Mr.

Bannon should not be punished for speaking out against official over-reaching. Defiance in the face of government wrongdoing is reverence for justice.

### **Costello – Clark Communications Do Not Warrant A Harsher Sentence**

The Government's contention that Mr. Bannon (through his counsel Robert J. Costello) tried to mislead the Select Committee on whether President Donald J. Trump asserted executive privilege borders on the ridiculous. Mr. Costello's full response is attached as Exhibit A. Simply put, the issue has no bearing on sentencing.[1] A key point is that the same letter asserting executive privilege was provided to Mark Meadows and Dan Scavino. Doc. 86-3.[2] The Select Committee initiated criminal referrals for Contempt of Congress for both. Neither was prosecuted. The assertion of executive privilege involving Meadows and Scavino – based upon a Clark letter – must have been accepted by the Government, or the two would have been prosecuted. Yet the Government makes the strange claim that reliance on a Clark letter by Mr. Bannon (after being advised by Mr. Costello) is contumacious. The Government should not be allowed to play favorites.

---

[1] It is curious that the Government devotes five pages in its sentencing memorandum to its slanted version of purported interactions between attorneys Costello and Clark. Query whether the Government is trying somehow to slip this into the record, post-trial, and without the benefit of full briefing by the parties, in the hope that it will improves its chances on appeal.

[2] The letters from Clark to counsel for Meadows and Scavino include additional language stating that both are entitled to immunity; but that addition has no bearing on the question at issue here concerning Clark's directions on behalf of President Trump that executive privilege was being invoked and that Mr. Bannon (and Messrs. Meadows and Scavino) must honor that assertion to the "fullest extent permitted by law".

Clark's current position on the purported limitations he intended with respect to his direction to Mr. Costello conflicts with the position he advocated on President Trump's behalf in *Trump v. Thompson*, 1:21-cv-02769-TSC (D.D.C. 2021).[3]

The Government's arguments concerning Clark's letter are meritless for other reasons as well. Perhaps most significantly, in his October 13, 2021, letter to Chairman Thompson, Mr. Costello unequivocally advised the Committee that Mr. Bannon would comply with the subpoena if the Committee were to take the matter before a judge (in a civil enforcement proceeding) and the judge directed him to comply. The judge would have determined whether executive privilege was properly invoked and the extent to which it applied. Mr. Costello's affirmative request for a judicial determination of executive privilege issue negates the Government's position that Mr. Bannon "exploited the Clark letter as an excuse to ignore the Committee's subpoena." *See* Doc. 152 at 5. In any event, former President Trump's July 9, 2022, letter confirms that he invoked executive privilege when Mr. Bannon received the subpoena. [Doc. 107-1].

### **Attempts At Accommodation Warrant A Lower – Not A Higher – Sentence**

Inexplicably, the Government tries to use the advocacy of Mr. Bannon's *trial* counsel against him, just as they have tried to do with the efforts of his counsel before the Committee. What lawyer worth his salt would not try to see if he can get criminal charges against his client

---

[3] Clark served as appellate co-counsel with another attorney in *Trump v. Thompson*. *See* Case No. 21-5254 (D.C. Cir. 2021). There, President Trump, through counsel, referred to the letters Clark sent to recipients of January 6 Committee subpoenas and wrote at length in support of the broad invocation of a "protective" assertion of executive privilege reflected in such letters. *See Trump v. Thompson*, Doc. 5-1 at 1, n. 2.

dismissed, by seeking to cure the alleged wrong? Accommodation – not prosecution – is the traditional method of resolving disputes regarding congressional testimony. *See e.g., United States v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977) (referring to the "implicit constitutional mandate to seek optimal accommodation" to resolve such disputes). Indeed, as recently as last year, the Department of Justice iterated the importance of the accommodation process in these cases. *See e.g.* Doc. 58-7 at 38. For the Government to now change course and claim that such negotiations somehow warrant a more severe sentence here raises serious questions of vindictiveness.

### The Government Fails To Identify Comparable Sentences

The Government's argument that a harsh sentence is appropriate here because others – 60 or 70 years ago – received a sentence of incarceration is misplaced. The Government has become smitten with *Licavoli*.[4] The admiration is so strong that the Government argues that Mr. Bannon should receive the same sentence as Mr. Licavoli. Had they done their homework, however, the prosecutors would know that at the time of his sentencing for Contempt of Congress, Mr. Licavoli had a lengthy criminal history. In arriving at a sentence of six months' incarceration, the *Licavoli* sentencing judge stated that the presentence report of the Probation Officer noted two prior felony convictions, a record of arrests two pages in length, and official findings by the Senate McClellan Committee that he was one of the "most notorious figures of the Detroit underworld" and the head of a racketeering organization that had an interest in "almost every major [illegal] gambling operation in the City of Detroit."  Licavoli Trial & Sentencing Transcript, Vol. II, April 14, 1960,

---

[4] Most of the sentences the Government argues are analogous arose out of Contempt of Congress convictions involving the House Un-American Activities Committee. Suffice to say that the star of that committee and its work have dimmed considerably in the many decades since it was expired.

at 254-256. Additionally, *Licavoli* did not involve an assertion of executive privilege, nor did the defendant in that case believe that he had testimonial immunity from congressional subpoenas.

The Federal Sentencing Guidelines emphasize the importance of considering the criminal history of a defendant at sentencing. The Government's notion that a harsh sentence – pointing to sentences from 60 or 70 years ago – without regard to an individual's specific history – is without any basis in the law and goes against the fundamental principles of modern federal sentencing.

To the best of our knowledge, the Government recommended probation in the last two Contempt of Congress convictions in this district, and the Court followed that recommendation.[5] In support of its position that a custodial sentence is appropriate, the Government cites *Yellin v. United States*, 287 F.2d 292, 294 (7th Cir. 1961) and *United States v. Seeger*, 303 F.3d 478 (2d Cir. 1962). *See* Doc. 152 at 23. Ironically, these cases actually provide further support for Mr. Bannon's position that a stay pending appeal is warranted in this case. *See Yellin v. United States*, 374 U.S. 109, 123 (1963) (reversing and holding that committee's failure to comply with its rules on executive sessions excused defendant's refusal to answer questions, and witness was entitled to prove such defense when he discovered at his contempt trial that his rights under the rules had been violated); *see also United States v. Seeger*, 303 F.3d at 478 (reversing conviction and dismissing indictment for its failure to reference committee's authorizing resolution).

---

[5] In *United States v. Bloch*, the U.S. Attorney for D.C. informed the Court that the two then most recent prosecutions under 2 U.S.C. §192 in this District "each resulted in [a] sentence of probation." *Id.*, *citing, U.S. v. Tejada*, Cr.-09-mj-077 (AK); *U.S. v. Abrams*, Cr.-91-575 (AER). *Bloch*, 762 F. Supp. 115, 117 (D.D.C. 2011) (Robinson, M.J.). The government recommended a sentence of probation in *Bloch* as well and argued at length that the court had authority to impose such a sentence.

The Government's position seems to be that because the Select Committee was looking into a significant historical event, Mr. Bannon's failure to cooperate merits a harsher sentence.[6] But the Government has recommended probationary sentences in this district even where an individual intentionally and unlawfully removed, concealed, and destroyed classified documents to make them unavailable to a congressional Committee investigating the worst terrorist attack in American history. *See United States v. Samuel R. Berger*, Case No. 05-mj-175-DAR (D.D.C. Apr. 1, 2005) (sentence of two years' probation, 100 hours community service, and $50,000 fine). In 2004, it was revealed that the Department of Justice was investigating Samuel "Sandy" R. Berger, former National Security Advisor to President Clinton, for several instances of unauthorized removal and destruction of classified documents from the National Archives and Records Administration ("NARA").[7] The stolen documents related to the Clinton Administration's handling of the 2000 Millennium Attack Plots and had been subpoenaed by the 9/11 Commission during its investigation of the September 11, 2001, terrorist attacks.[8] Berger ultimately pled guilty to one misdemeanor count of knowingly removing classified documents from NARA, in violation of 18 U.S.C. § 1924(a). Case No. 05-mj-175-DAR, ECF 5, ¶ 4. The maximum penalty under that

---

[6] Mr. Bannon's position did not stop the Select Committee in its tracks, as according to its Chairman, the Select Committee has "conducted more than a thousand interviews and depositions." See https://www.npr.org/2022/10/13/1125331584/jan-6-committee-hearing-transcript.

[7] *See* R. Jeffrey Smith, *Berger Case Still Roils Archives, Justice Dept.* WASHINGTON POST (Feb. 21, 2007), available at https://www.washingtonpost.com/wp-dyn/content/article/2007/02/20/AR2007022001344.html.

[8] Staff of H. Comm. on Oversight and Gov't Reform, 110th Cong., Sand Berger's Theft of Classified Documents (Comm. Print 2007 by Ranking Member Tom Davis), available at https://irp.fas.org/congress/2007_rpt/berger.pdf.

statute is one year of imprisonment and a $100,000 fine. *Id*. The Government recommended a probationary sentence, which the Court imposed. *Id.* at ECF 17, 2-3.

## A SENTENCE OF PROBATION IS AVAILABLE

Contrary to the Government's argument, Mr. Bannon *is* eligible for a sentence of probation for a Contempt of Congress conviction, pursuant to the Federal Probation Act, 18 U.S.C. § 3651. As analyzed in recent insightful legal commentary:

> . . .[T]he fact that a federal criminal statute specifies a minimum term of imprisonment is not sufficient by itself to preclude a sentence of probation. Unless the statute also explicitly bars a sentence of probation, the Sentencing Guidelines determine whether probation is an available sentence. Because the contempt statute does not expressly preclude a sentence of probation, it is a potential option for defendants convicted of contempt of Congress.

Exhibit B.[9]

## CONCLUSION

For the foregoing reasons, Mr. Bannon respectfully requests that this Court impose a sentence of probation and stay imposition of the sentence pending appeal.

Dated: October 20, 2022                   Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

   /s/ M. Evan Corcoran
M. Evan Corcoran (D.C. Bar No. 440027)
Riane A. White (*Pro Hac Vice*)
400 East Pratt Street – Suite 900
Baltimore, MD 21202
Telephone: (410) 385-2225
Facsimile: (410) 547-2432
Email: ecorcoran@silvermanthompson.com

---

[9] Steven Gordon, *Why Steve Bannon Could Serve Probation Instead Of Jail Time*, LAW360 (Oct. 20, 2022), available at https://www.law360.com/trials/articles/1541126/why-steve-bannon-could-serve-probation-instead-of-jail-time).

        /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of October 2022, a copy of Stephen K. Bannon's Response To The Government's Sentencing Memorandum was served *via* the Court's CM/ECF system on registered parties and counsel.

                                                                    /s/ M. Evan Corcoran
                                                M. Evan Corcoran (D.C. Bar No. 440027)