UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-670 (CJN) |
| v. | : | |
| | : | |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S
REQUEST FOR UNLAWFUL SENTENCE AND BOND PENDING APPEAL**

As the Government detailed before, from the moment the Defendant, Stephen K. Bannon, accepted service of a subpoena from the House Select Committee to Investigate the January 6th Attack on the United States Capitol ("the Committee"), he sought to exempt himself from the obligation any other citizen had to answer a subpoena. Now, at sentencing, he again seeks to place himself above the law and avoid accountability for the federal crimes for which a jury found him guilty as charged. The Defendant requests probation: but that is an unlawful sentence under the plain terms of the contempt of Congress statute—the statute mandates a minimum term of imprisonment of one month. And the Defendant requests bond pending appeal: but the question he intends to raise on appeal is not a substantial one—it is, as this Court held repeatedly throughout the case, a settled one. The Defendant should be held accountable like any other citizen found guilty of a federal crime—as mandated by law, the Court should impose a term of imprisonment, not probation, and require the Defendant to report to serve his sentence in the ordinary course, as directed by the Bureau of Prisons.

**I.      The Contempt of Congress Statute Requires a Minimum Term of Imprisonment of One Month.**

The Defendant contends that this Court has discretion to impose a probationary sentence. Sentencing Memorandum, ECF No. 154 at 17-18. It does not. The contempt of Congress statute

could not be more plain or definitive, requiring that a person found guilty be sentenced to a term of "imprisonment in a common jail for not less than one month nor more than twelve months." 18 U.S.C. § 192. As the Defendant acknowledges (at 17), the only court to decide the issue has held that this minimum sentence is mandatory. *See United States v. Bloch*, 762 F. Supp. 2d 115, 123 (D.D.C. 2011). To hold otherwise would violate the "cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (internal citation and quotation marks omitted). The Defendant alternatively suggests that the sentence can be suspended. Presentence Investigation Report (PSR), ECF No. 149, Addendum at 30. But suspending the sentence requires the Court to impose probation, something it cannot do in the face of a mandatory minimum. *See United States v. Troy*, 618 F.3d 27, 36-37 (1st Cir. 2010) (finding statute with mandatory minimum sentence constitutes offense for which probation is expressly precluded under 18 U.S.C. § 3561(a)(2)). As yet another alternative to incarceration, the Defendant suggests home confinement. But home confinement can only be imposed as a condition of probation; home confinement is not a form of imprisonment, *see* U.S.S.G. § 5F1.2, and the Defendant's three-level brownstone is certainly not a "common jail."

The Defendant frivolously argues (at 18) that a sentence of imprisonment for contempt of Congress would be unlawful. He suggests, in his objections to the PSR (Addendum at 30) and in his sentencing memorandum (at 18), that the jury had to find that a mandatory minimum sentence applied in order for the Defendant to be subject to it. The Defendant cites no authority to support this contention—because there is none. It is only where a mandatory minimum or mandatory maximum sentence are increased due to certain facts that the jury must find those facts. *See Alleyne v. United States*, 570 U.S. 99, 111-16 (2013). Here, there is no specific fact that triggers the one-month mandatory minimum—that is the floor for sentencing under Section 192, regardless

of the specific facts that constitute the offense. Additionally, contrary to the Defendant's suggestion (at 18), neither the rule of lenity—which is a cannon of statutory interpretation, not a post-verdict sentencing principle, *see United States v. Shabani*, 513 U.S. 10, 17 (1994)—nor the separation of powers or Constitution more broadly, permit a court to ignore Section 192's plain terms. Apart from "safety valve" relief for certain drug offenders, *see* 18 U.S.C. § 3553(f), the only authority permitting a district court to impose a sentence below a level established by statute as a minimum sentence is 18 U.S.C. § 3553(e), which is conditioned on a defendant's substantial assistance with law enforcement. Here, the Defendant did exactly the opposite of providing substantial assistance—he affirmatively frustrated a congressional investigation of great national importance. The Defendant's request that the Court ignore Section 192's mandatory minimum is, therefore, stunningly ironic. The Court should reject it out of hand.

**I.     The Defendant's Conviction is Based on Settled Precedent and Does Not Give Rise to a Close Question on Appeal.**

The Defendant contends (at 8-14) that he should be granted bond pending appeal, claiming that his objections to the definition of "willfully" and to the Court's exclusion of an advice-of-counsel defense under Section 192 raise substantial questions of law on which he is reasonably likely to succeed on appeal. Not so. As the Government has briefed extensively, *see, e.g.*, ECF Nos. 29, 35, 43, 65, 90, and as this Court has held on several occasions throughout this case, *see* Order (New Trial Motion), ECF No. 147; Order (Motion in Limine), ECF No. 49; Tr. 86:14-89:25 (Mar. 16, 2022); Tr. 126:21-127:21 (June 15, 2022), the law on these matters is settled in this Circuit, *see Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961) ("[H]e who deliberately and intentionally fails to respond to a subpoena 'willfully makes default.'") (citations omitted), 209 (holding that a defendant's good-faith reliance on counsel's advice that the law excuses compliance does not "immunize a deliberate, intentional failure to appear pursuant to a lawful

3

subpoena lawfully served"). Moreover, the Circuit's decision in *Licavoli* is rooted in Supreme Court authority, *see United States v. Bryan*, 339 U.S. 323, 330 (1950) (finding defendant's intentional refusal to produce records in response to a congressional subpoena was willful default even where the defendant claimed to the congressional committee at the time of refusal that she was following the advice of her counsel); *United States v. Fleischman*, 339 U.S. 349, 356-57 (1950) (finding defendant "willfully made default" by failing to produce records in her joint—even if not exclusive—control); *Sinclair v. United States*, 279 U.S. 263, 299 (1929) ("There is no merit in appellant's contention that he is entitled to a new trial because the court excluded evidence that in refusing to answer he acted in good faith on the advice of competent counsel. . . . His mistaken view of the law is no defense."), *overruled on other grounds*, *United States v. Gaudin*, 515 U.S. 506 (1995), and is not the subject of contrary authority in any other circuit. The Defendant, therefore, should not be afforded the extraordinary relief of bond pending appeal.

Federal law requires that a criminal defendant "who has been found guilty of an offense and sentenced to a term of imprisonment" be detained during the pendency of his appeal, unless the defendant can establish (A) by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released, and (B) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal." 18 U.S.C. § 3143(b)(1). It is the latter factor—whether the Defendant's appeal raises a substantial question of law or fact likely to result in reversal—on which the Defendant's motion clearly fails.

In assessing the likelihood of success on appeal, the Defendant's conviction is presumed valid; the Defendant bears the burden of establishing otherwise. *See United States v. Perholtz*, 836 F.2d 554, 555-56 (D.C. Cir. 1988) ("The law has shifted from a presumption of release to a

presumption of valid conviction."); *see also United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986) (finding that a defendant must "demonstrate that he has a substantial question to present [on appeal] before he may be admitted to bail"); *accord United States v. Libby*, 498 F. Supp. 2d 1, 4 (D.D.C. 2007). To overcome that presumption, a defendant must show that his or her appeal presents "a close question or one that very well could be decided the other way." *Perholtz*, 836 F.2d at 556. This "close question" standard is "more demanding" than one that requires the inquiry to be "fairly debatable," "fairly doubtful," or simply "not frivolous." *Id.* at 555.

The Defendant concedes (at 10), as he must, that Section 192's willfulness standard and the unavailability of an advice-of-counsel defense are the subject of settled precedent in *Licavoli*—as are all this Court's evidentiary and other decisions that flow from *Licavoli*. The Defendant contends (at 10) that he has a substantial likelihood of success on appeal because "the *Licavoli* decision relied heavily on the Supreme Court's decision in *Sinclair* . . . a case that has since been overruled and eviscerated in subsequent Supreme Court decisions." But *Licavoli*'s holding on the meaning of "willfully makes default" is not based on *Sinclair*—it is based on *Bryan* (1950) and *Fleischman*, which still stand—and the relevant holding of *Sinclair*, that advice of counsel is no defense to congressional contempt, has not been overruled. *See, e.g.*, Tr. 88:20-89:2 (Mar. 16, 2022) ("It is true that subsequent Supreme Court cases have cut back on some of the holdings of *Sinclair*, but not the holding that *Licavoli* relies on. And even if the Supreme Court had done so, the defendant has cited to no authority[,] and the Court has located none of its own, that would allow me to ignore otherwise binding precedent, just because some of the cases on which it relied are no longer good law."). Moreover, contrary to the Defendant's protestations (at 10) throughout this case, the Supreme Court's subsequent decisions in *Bryan v. United States*, 524 U.S. 184 (1998), and *Ratzlaf v. United States*, 510 U.S. 135 (1994), which pertain to a statute barring the

unlicensed sale of firearms and to criminal tax offenses, respectively, have no bearing on this Circuit's settled precedent regarding Section 192.  *See* Tr. 89:7-89:8 (Mar. 16, 2022) ("[N]one of that precedent dealt with the charge under 2 U.S. Code, Section 192.  *Licavoli* did."); *see also*, *Bryan* (1998), 524 U.S. at 191 ("The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears.").

The Defendant notes (at 10-11) that he "has contended, at every opportunity, that *Licavoli* is outdated" and that he will ask the Circuit to overturn it.  But the number of times the Defendant objected to *Licavoli*'s holding has no bearing on whether his appeal will succeed; and simply hoping to convince the Circuit to reverse itself—especially when that hope is based on inapposite authority addressing other statutes—does not make the Defendant's appeal "a close question or one that very well could be decided the other way."  *Perholtz*, 836 F.2d at 556.  Quite the contrary, it renders the chances of success on appeal remote, at best.  *See United States v. Burwell*, 690 F.3d 500, 504 (D.C. Cir. 2012) (rejecting appellant's argument to *en banc* court to set aside twenty years of circuit precedent and impose an implicit *mens rea* requirement on a firearms offense, explaining that "[t]he burden borne by a party urging the disavowal of an established precedent is greater where the Court is asked to overrule a point of statutory construction for here, unlike the context of constitutional interpretation, Congress remains free to alter what we have done.") (cleaned up; internal quotation marks and citation omitted); *see also Shoffner*, 791 F.2d at 589 ("[A] district court evaluating the substantiality of appeal issues should not base its bail determination on its assessment of a defendant's chances of getting some panel of the Court of Appeals to agree with him.  Such an interpretation would direct attention to the appellate decision-maker, as is demonstrated by the district court's speculation that Shoffner might find two judges 'someplace' to go along with his arguments. . . .  Instead the court should return its attention to its

6

own analysis of these issues at earlier stages of the proceedings."). Add to that the fact that the consequences of reversing *Licavoli* risks rendering Congress powerless to carry out its investigative authority because congressional witnesses could refuse to comply with subpoenas to testify and produce documents by simply hiding behind their own claims or belief or the advice of a lawyer that a subpoena was invalid, and the Defendant's likelihood of success on appeal slips from remote to nearly hopeless. *Cf. Bryan* (1950), 339 U.S. at 331 ("[P]ersons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery"; eroding those obligations risks making "the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, [ ] a nullity").

In any event, even if the Defendant were to convince the Circuit to reverse itself and make an advice-of-counsel defense available to contempt of Congress, the Defendant is unlikely to succeed on appeal because the trial record firmly establishes that he acted in bad faith from the moment he accepted service of the subpoena. As detailed in the Government's Sentencing Memorandum, ECF No. 152, the evidence presented at trial demonstrates that the reasons the Defendant engaged in total noncompliance of the Committee's subpoena had nothing to do with his purported respect for the Constitution, the rule of law, or executive privilege, and everything to do with his personal disdain for the members of Congress sitting on the Committee and their effort to get to the bottom of the attack on the country's peaceful transfer of power. The Defendant did not rely on advice of counsel or executive privilege to reject compliance with the Committee's subpoena—he hid behind them to try and escape accountability. The Defendant's latest such effort, cloaked in a request to suspend his sentence pending appeal, should be rejected.

## CONCLUSION

The Defendant's request that the Court ignore Section 192's plain terms and sentence him to probation, and his request that the Court suspend his sentence while he presses an appeal, amplify his disregard for the law and constitute yet another attempt to evade responsibility for his contempt of Congress. It is time that the Defendant be held accountable—like any other citizen found guilty of a federal crime. The Court should reject his requests for probation and bond pending appeal and, for the reasons set forth in the Government's Sentencing Memorandum, sentence the Defendant to six months' imprisonment and fine him $200,000.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: J.P. Cooney (D.C. Bar No. 494026)
Amanda R. Vaughn (MD)
Assistant United States Attorneys
Fraud, Public Corruption, and Civil Rights Section
United States Attorney's Office

601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7281 (Cooney)
joseph.cooney@usdoj.gov