```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )        Criminal Action
                                        )         No. 21-00670
 4                    Plaintiff,        )
                                        )
 5       vs.                            )        AFTERNOON SESSION
                                        )
 6     STEPHEN K. BANNON,               )        Washington, D.C.
                                        )        July 20, 2022
 7                    Defendant.        )        1:21 p.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9

10                  TRANSCRIPT OF JURY TRIAL - DAY 3
               BEFORE THE HONORABLE CARL J. NICHOLS,
11                  UNITED STATES DISTRICT JUDGE

12


13     APPEARANCES:

14     FOR THE GOVERNMENT:      AMANDA R. VAUGHN, ESQ.
                                MOLLY G. GASTON, ESQ.
15                              UNITED STATES ATTORNEY'S OFFICE
                                  FOR THE DISTRICT OF COLUMBIA
16                              555 Fourth Street, Northwest
                                Eleventh Floor
17                              Washington, D.C. 20530

18
       FOR THE DEFENDANT:       MATTHEW E. CORCORAN, ESQ.
19                              RIANE A. WHITE, ESQ.
                                SILVERMAN, THOMPSON, SLUTKIN, WHITE
20                              400 East Pratt Street
                                Suite 900
21                              Baltimore, Maryland 21202

22                              DAVID I. SCHOEN, ESQ.
                                LAW OFFICES OF DAVID I. SCHOEN
23                              2800 Zelda Road
                                Suite 100-6
24                              Montgomery, Alabama 36106

25
```

REPORTED BY:              LISA EDWARDS, RDR, CRR
                          Official Court Reporter
                          United States District Court for the
                            District of Columbia
                          333 Constitution Avenue, Northwest
                          Room 6706
                          Washington, D.C. 20001
                          (202) 354-3269

1                        I N D E X

2

3
                                    Direct      Cross       Red.
4

5       WITNESSES FOR THE GOVERNMENT:

6       Kristin Amerling                        755         817

7       Stephen Hart            839             858         870

8

9
        EXHIBITS RECEIVED IN EVIDENCE                       PAGE
10
        Government's Exhibit No. 10                         846
11      Government's Exhibit No. 11-A                       849
        Government's Exhibit No. 11-B                       851
12
        Defendant's Exhibit No. 9-B                         757
13      Defendant's Exhibit No. 30                          810
        Defendant's Exhibit No. 31                          813
14      Defendant's Exhibit No. 32                          816
        Defendant's Exhibit No. 39                          859
15      Defendant's Exhibit No. 40                          862

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Your Honor, we're now back

2     on the record.

3          THE COURT:  Thank you, Ms. Lesley.

4          Before we bring the jury back in, very briefly,

5     the point that was raised by Mr. Schoen before the break:

6     Last week, in addressing the question of whether and to what

7     extent potential violations by the Committee of House Rules

8     would be relevant in this case, I largely excluded evidence

9     relating to those questions for two different reasons.  The

10    first was that Mr. Bannon waived such arguments.  And the

11    second was that those questions presented legal issues

12    typically as to which certainly on the question of the

13    interpretation of the House Rule I was required to defer to

14    the House's view of its own rules because to do otherwise

15    would leave it open -- would raise a separation-of-powers

16    concern.

17         Mr. Schoen is very correct that as to that last

18    question, the second of my alternative holdings, I did note

19    that it could potentially be an issue for the jury about

20    whether a clear House Rule had as a matter of fact been

21    complied with; in other words, a mixed question of fact and

22    law, and that a defense could be presented to the jury or

23    would be a jury question about whether compliance with the

24    House Rule had occurred.

25         I certainly had understood Mr. Bannon to have

1    waived the question that Mr. Corcoran was attempting to ask

2    questions about.  And that is whether the Committee had

3    acted in compliance with Paragraph 10 of the relevant

4    regulation.

5          But I suppose it is possible that Mr. Bannon could

6    introduce evidence that he didn't waive that argument.  And

7    it's at least possible that, when instructed by me, the jury

8    could conclude that that rule was violated based on the

9    facts -- I'm just saying hypothetically, because I do

10   recognize that the House has taken a position about what the

11   rule means and the regulation and whether it was complied

12   with here.

13         So for just the -- just to be very, very safe that

14   we don't get to the end of this case and have a question

15   that could be relevant not be answered, Mr. Corcoran, you

16   can ask Ms. Amerling whether the Committee provided

17   Mr. Bannon with the materials described in Paragraph 10 of

18   the regulation that accompanied the subpoena.

19               MR. CORCORAN:  11.  Paragraph 11, your Honor.

20               THE COURT:  I apologize.  Paragraph 11.  Yes.

21               MR. CORCORAN:  Thank you.

22               THE COURT:  You can ask her whether that

23   information was provided to Mr. Bannon.

24               Mr. Vaughn?

25               MS. VAUGHN:  Your Honor, will the Defendant be

1    required to make a proffer before he's able to argue about

2    that?  Because --

3              THE COURT:  This is just one question right now,

4    just to make sure that Ms. Amerling before we excuse her is

5    asked that question.  I'm not -- this is not a holding that

6    this argument is going to the jury, that there's going to be

7    a defense along these lines presented.

8              The two reasons that I excluded this evidence, I

9    think, both very likely apply here.  I did leave open this

10   possibility, as Mr. Schoen correctly points out, at least as

11   to the second argument.  As I said, I think it's very likely

12   that this argument was never presented to the Committee and

13   therefore it would have fit within my argument about waiver.

14   But I can't be 100 percent certain about that because we

15   haven't done the complete trial.

16             So for that reason, I'm going to allow this

17   question and this question only on this topic and then we

18   can move on.

19             MS. VAUGHN:  Thank you, your Honor.

20             THE COURT:  Ms. Lesley, could you bring in the

21   jury, please.

22             (Whereupon, the jury entered the courtroom at 1:25

23   p.m. and the following proceedings were had:)

24             THE COURTROOM DEPUTY:  We are now back on the

25   record.

```
1            THE COURT:  Welcome back, ladies and gentlemen of

2      the jury.

3            And welcome back, Ms. Amerling.

4            Mr. Corcoran.

5            MR. CORCORAN:  Thank you, your Honor.

6            Your Honor, may I approach the witness?

7            THE COURT:  Yes.

8      (KRISTIN AMERLING, GOVERNMENT WITNESS, PREVIOUSLY SWORN.)

9                 CONTINUED CROSS-EXAMINATION

10     BY MR. CORCORAN:

11     Q.  I'm going to hand you what's been marked as Defendant's

12     Exhibit 9-B for identification purposes.

13            MR. CORCORAN:  We would like to publish this to

14     the -- just not the jury, please.

15            THE COURTROOM DEPUTY:  It's up.

16     BY MR. CORCORAN:

17     Q.  Ms. Amerling, is Defense Exhibit 9-B the regulations for

18     use of deposition authority that we spoke briefly about

19     earlier this afternoon?

20     A.  Yes.

21     Q.  If you could read the highlighted paragraph, Paragraph

22     11, in Defendant's Exhibit 9-B.

23     A.  A witness shall not be required to testify unless the

24     witness has been provided with a copy of Section 3-B of

25     House Resolution 8, 117th Congress and these regulations.
```

1    Q.  To your knowledge, was Steve Bannon ever provided with

2    Section B of H.Res. 8?

3    A.  To my knowledge, that section was available at the time

4    of his deposition to be presented to him by the attorney who

5    was preparing to depose him.

6    Q.  I understand.

7            But my question is slightly different.  And that

8    is:  To your knowledge, was Steve Bannon ever provided, ever

9    handed or mailed or in any way given, Section 3-B that's

10   referenced in this Paragraph 11?

11   A.  Since Mr. Bannon refused to appear for his deposition,

12   he was not provided a copy of that paragraph on that day.

13   No.

14   Q.  Thank you.

15           Could you take the pen and just write "Steve

16   Bannon was not provided with" --

17           MS. VAUGHN:  Objection, your Honor.

18   BY MR. CORCORAN:

19   Q.  -- "Paragraph 3-B on Exhibit 9-B"?

20           THE COURT:  Sustained.

21   BY MR. CORCORAN:

22   Q.  Thank you.  I'll take that back.

23   A.  (Tenders document to counsel.)

24           MR. CORCORAN:  Your Honor, we'd move Exhibit 9-B

25   into evidence.

Amerling - CROSS - By Mr. Corcoran

```
 1                    MS. VAUGHN:  No objection.
 2                    THE COURT:  Defense Exhibit 9-B is admitted.
 3                    (Whereupon, Defendant's Exhibit No. 9-B was
 4       entered into evidence.)
 5       BY MR. CORCORAN:
 6       Q.  Okay.  Ms. Amerling, you testified earlier that you've
 7       worked on dozens of subpoenas for the Select Committee.
 8       Correct?
 9       A.  That's correct.
10       Q.  And in many of those cases, you were involved in
11       negotiations with the lawyers for the subpoena recipients.
12       Correct?
13       A.  Generally, the negotiations are conducted by our chief
14       investigative counsel or other counsels that he supervises.
15       Q.  I understand generally.
16                    But have you ever engaged in negotiations with,
17       apart from Bob Costello, any other lawyer for a subpoena
18       recipient?
19       A.  I did not engage in a negotiation with Mr. Costello,
20       sir.
21       Q.  I'm asking a slightly different question, which is:  Did
22       you ever engage in negotiations with any lawyer for any
23       subpoena recipient of the Select Committee?
24       A.  It is possible.  I'm trying to think with the way our
25       staff is structured.  We have a chief investigative counsel
```

1    who manages the day-to-day investigative work and the

2    investigative counsels that focus on different subject

3    matters.  And generally, they are the attorneys that

4    negotiate with the attorneys for the recipients of

5    subpoenas.  So it's possible.  But generally, that's not our

6    practice.

7    Q.  Now, when you say "our practice," do you mean your

8    personal practice?

9    A.  The way that the staff manages the tasks.

10   Q.  My question is really just going to focus on what you

11   yourself do.  And so my question is:  Have you ever

12   negotiated with a lawyer for a subpoena recipient on behalf

13   of the Select Committee over the issue of the date of an

14   appearance?

15   A.  It's possible.  I've participated in some discussions in

16   our recent hearings about appearance at the hearings.  Some

17   of those witnesses have been under subpoena.  I don't know

18   that we were talking about the date.  But generally, the

19   conversations about document subpoenas and deposition

20   subpoenas and compliance are managed by the attorneys that

21   the chief investigative counsel supervises.

22   Q.  And I'm focusing on the dozens and dozens of subpoenas

23   that you said that you've worked on for the Committee.  My

24   question is:  You specifically, not anyone else, but you,

25   have you ever negotiated with a lawyer for a subpoena

1    recipient about the topics that would be covered at the

2    deposition?

3    A.   Our staff has and I have advised on that process.   If

4    you're talking about direct conversations with attorneys

5    generally, that's not my role.

6    Q.   Again, you used the word "conversations."   I would

7    broaden that to include any communications with a lawyer for

8    a subpoena recipient.   Have you been involved in

9    negotiations over the topics to be covered in a deposition

10   with any lawyer for a subpoena recipient?

11   A.   In the sense of overseeing work that others might be

12   doing, I've been involved with discussions about the content

13   of depositions and the timing of when individuals may come

14   in.

15   Q.   And you're aware that in many cases the recipients of

16   subpoenas appear for deposition weeks after the date on the

17   subpoena.   Correct?

18   A.   I'm aware, sir, that when witnesses are cooperating with

19   the Committee and indicate that they are willing to provide

20   testimony, it's not unusual to have some back-and-forth

21   about the dates when they will appear.

22   Q.   My question is not about the back-and-forth.

23         My question is:  It's not uncommon, is it, for a

24   person who gets a subpoena from the Select Committee to

25   appear for deposition many weeks after the date in the

1   subpoena?

2   A.  With respect to individuals who are indicating that they

3   want to cooperate and who reach out to the Committee and say

4   that they will appear, there is often a dialogue.  It's

5   unusual for a witness to just outright say they will not

6   come in.

7   Q.  And you testified on direct that you've worked for about

8   20 years on Capitol Hill.  Is that accurate?

9   A.  That's correct.

10  Q.  For much of that time, you've been involved in oversight

11  work where you're dealing with subpoenas.  Is that accurate?

12  A.  That's correct.

13  Q.  How many times over the past 20 years have you been a

14  witness in a criminal trial involving contempt of Congress?

15  A.  Well, sir, it's very unusual for witnesses who receive a

16  subpoena to say that they will outright not comply.  So

17  there haven't been occasions that I've been involved in to

18  be a witness in a criminal contempt proceeding.

19  Q.  If I understand your answer, in the past 20 years, this

20  is the first time that you've been a witness in a criminal

21  case involving contempt of Congress.  Is that correct?

22  A.  That's correct.

23  Q.  Okay.

24          MR. CORCORAN:  If we could look at Government's

25  Exhibit No. 4, which is in evidence.

Amerling - CROSS - By Mr. Corcoran

1     BY MR. CORCORAN:

2     Q.  Now, this is the letter that you testified you received

3     via email from Bob Costello, who is the lawyer for Steve

4     Bannon.  Correct?

5     A.  That's correct.

6     Q.  At the bottom of Government's Exhibit No. 4, the first

7     page, Mr. Costello is communicating an objection to the

8     subpoena.  Correct?

9     A.  He's articulating a perspective on a legal argument he's

10    making about the subpoena.

11    Q.  And on the next page, US-00419, Mr. Costello makes clear

12    to the reader that Steve Bannon is unable to respond to the

13    request for documents and testimony because of this

14    objection.  Is that accurate?

15    A.  That's the position taken in this letter.  Yes, sir.

16    Q.  And Mr. Costello also in the next paragraph indicates

17    that Steve Bannon would comply with the direction of the

18    courts if the issue was resolved civilly, if the privilege

19    issue was resolved by a judge in a civil action.  Is that

20    what's being communicated by Mr. Costello?

21    A.  I don't believe he used the word "civilly."  But he

22    said:  We'll comply with directions of the Court.  Yes.

23    Q.  The last part of your answer was yes?

24    A.  Yes.

25    Q.  Okay.  You testified on direct about -- now, this

1    October 7th, 2021, date as I understand it is the date

2    that's in the subpoena as a date for documents.  Correct?

3    A.  That's the date that the subpoena required Mr. Bannon to

4    produce documents by.  Yes.

5    Q.  And you testified that in your view, he had to produce

6    the documents by 10:00 a.m. that day on October 7th.  Is

7    that accurate?

8    A.  It's accurate that the subpoena demanded that from him.

9    Yes.

10   Q.  Are you suggesting that if Mr. Bannon provided documents

11   to the Committee after 10:00 a.m. on October 7th, 2021, he

12   would be in contempt of Congress?

13   A.  I didn't say that.

14   Q.  Okay.  Let's move to Government's Exhibit No. 5.

15          MR. CORCORAN:  Before we do that, if we could just

16   have the last exhibit up for one more question.  I'm sorry.

17   BY MR. CORCORAN:

18   Q.  Again, this is Government's Exhibit No. -- for the

19   record, it's Government's Exhibit No. 4.  My question is

20   this:  Once you received this letter in which Mr. Costello

21   raised an objection, did you discuss the letter with

22   Chairman Thompson?

23   A.  I would have.  I don't recall the specific conversation.

24   But I would have shared this letter with the members of the

25   Committee.

1    Q.  Which members of the Committee did you speak to about

2    this letter?

3    A.  I couldn't tell you the specific members of the nine at

4    this point in time.  But they all would have received a copy

5    of this letter.

6              MR. CORCORAN:  Let's move to Exhibit No. 5 now.

7              And that's Government's Exhibit No. 5.  I'm sorry,

8    your Honor.

9    BY MR. CORCORAN:

10   Q.  Now, on direct examination, you said that you had a role

11   in putting together this letter.  Is that correct?

12   A.  That's correct.

13   Q.  And this is essentially your response over the signature

14   of Chairman Thompson to Mr. Costello's letter that we just

15   saw raising an objection.  Is that correct?

16   A.  This is the response of the Select Committee to

17   Mr. Costello.

18   Q.  Well, that's something I want to ask you about, because

19   the Select Committee is made up of people.  Right?

20   A.  That's correct.

21   Q.  What person drafted this letter?

22   A.  As I've described, letters generally are drafted by a

23   number of staff and reviewed by members; and then

24   Mr. Thompson is authorized to sign the letters on behalf of

25   the Committee.

1    Q.  And can you identify for the jury any language in

2    Government's Exhibit No. 5 that Chairman Thompson wrote?

3    A.  Chairman Thompson signed the letter, so he has his name

4    on the entire -- he's representing the Committee with

5    respect to the entire content of the letter.

6    Q.  I understand what you're saying.

7         But what I'm asking you is:  Can you identify any

8    words in this letter that were words written by Chairman

9    Thompson?

10   A.  As I said, the process for drafting letters generally is

11   that staff counsels draft the letters and members review the

12   letters.  So it's difficult for me to identify any one

13   sentence to address that question.

14   Q.  How about one word?

15   A.  No.

16   Q.  If we look at the last page of that exhibit -- and

17   that's Government's Exhibit No. 5 -- in the very last

18   paragraph, the letter refers to the possibility of having a

19   civil action.

20        And what I want to ask you is:  Is that a process

21   that is available to the Select Committee, to go to court in

22   the civil context rather than a criminal prosecution --

23        MS. VAUGHN:  Objection.  Relevance.

24        THE COURT:  Ms. Vaughn, you have to wait for the

25   question to finish.  Will you sit down for a second.

```
 1                Can I hear the full question, Mr. Corcoran?

 2                MR. CORCORAN:  Yes, your Honor.  I'll give a basis

 3     to it.

 4     BY MR. CORCORAN:

 5     Q.  On direct examination, you testified about a number of

 6     different tools that are available to the Select Committee.

 7     Do you remember that testimony?

 8     A.  I do.

 9     Q.  I'm asking you about whether the civil action that is

10     referenced in the second-to-the-last sentence of this

11     exhibit is one of the tools that the Select Committee can

12     use to try to obtain testimony rather than pursuing a

13     criminal prosecution.

14     A.  It's an additional tool that could be used.  Yes.

15                MR. CORCORAN:  Let's move to Government's Exhibit

16     No. 6, please.

17     BY MR. CORCORAN:

18     Q.  If we look at -- now, just to set the stage again, this

19     is an October 13, 2021, letter to Chairman Thompson of the

20     Committee from Robert Costello, who's the lawyer for

21     Mr. Bannon.  Correct?

22     A.  That's correct.

23     Q.  And in the second-to-the-last paragraph, Mr. Costello

24     raises two separate issues for consideration.  One is, he

25     suggests that the Committee try to reach agreement with
```

1    President Trump on the issue of executive privilege.

2    Correct?

3    A.  That's what he wrote.  Yes, sir.

4    Q.  Did Chairman Thompson ever consider whether trying --

5    let me rephrase that.

6         Did Chairman Thompson ever consider trying to

7    reach an agreement with President Trump over the issue of

8    executive privilege?

9         MS. VAUGHN:  Objection.  Relevance.

10        THE COURT:  Let's have a sidebar about this one.

11        (Whereupon, the following proceedings were had at

12   sidebar outside the presence of the jury:)

13   ████████████████████████████████

14   ████████████

15   █████████████████████████████████

16   ██████████████████████████████████████████████

17   ███████████████████████████████████████████

18   ████████████████████████████████████████████

19   ███████████████████████████████████████████

20   ██████████████████████████████████

21   ██████████████████████████████████████

22   ███████████████████████████████████████

23   ███████████████████████████████████████

24   █████

25   ███████████████████████████████████████████





1    ████████████████████████████████████████████████████

2    ██████████

3              (Whereupon, the following proceedings were had in

4    open court:)

5              THE COURTROOM DEPUTY:  We're now back on the

6    public record.

7    BY MR. CORCORAN:

8    Q.  Mr. Amerling, we're talking about Government's Exhibit

9    No. 6 and the second page of that document, which is a

10   letter from Steve Bannon's lawyer, Bob Costello, to Chairman

11   Thompson.

12             And my first question is:  Did Chairman Thompson

13   explore the option of trying to reach agreement with

14   President Trump over the assertion of executive privilege?

15   A.  If I may, I think what might be helpful in trying to

16   understand Chairman Thompson's position is to look at his

17   detailed reply to Mr. Bannon's counsel that he issued on

18   October 15th.

19   Q.  Well --

20   A.  And I can read you relevant portions that I think

21   address the question that you're raising.

22   Q.  Well, if it does -- I mean, there's going to be

23   redirect, so Government counsel can ask you what they want.

24             My question is:  Did Chairman Thompson explore

25   with President Trump trying to reach an agreement that would

1    allow Mr. Bannon to testify despite the assertion of

2    executive privilege?  Did he --

3    A.  Sir --

4    Q.  -- explore that with President Trump?

5    A.  Sir, the presumption of your question is that President

6    Trump had asserted executive privilege.  And it gets to the

7    point I was making.  I think if I read to you Mr. Thompson's

8    reply, it will help provide context.

9    Q.  You can certainly provide all the context you want on

10   redirect.  But I'm trying to phrase this as a yes-or-no

11   question.

12           Did Chairman Thompson communicate with President

13   Trump or his representative to try to explore getting rid of

14   executive privilege so Mr. Bannon could testify?

15           THE COURT:  Ms. Vaughn, do you have an objection

16   to that question?

17           MS. VAUGHN:  Your Honor, I think the witness --

18   first of all, I am objecting for the reasons we talked

19   about.

20           THE COURT:  Understand.  That's preserved.

21           MS. VAUGHN:  I think the witness is trying to

22   answer the question to explain why there was no basis to do

23   that.  But --

24           THE COURT:  I think the witness, just to speed

25   things up, can give a "yes" or "no" answer with an

1   explanation.

2              THE WITNESS:  Okay.  Thank you, your Honor.

3              The answer is no.  And the reason is that the

4   assumption in your question that the president had asserted

5   executive privilege is not accurate.  The Select Committee

6   had not received formal or informal assertion of privilege

7   from the president.

8              In addition, there are a number of procedures laid

9   out in the instructions that accompanied the subpoena for

10  asserting various privileges.  They include providing a

11  document-by-document description of where the recipient is

12  asserting a privilege and why.

13             Mr. Bannon had not done that by the time of his

14  October 13th letter.

15             And Chairman Thompson's reply on October 15th went

16  through those issues and also addressed the legal arguments

17  relating to executive privilege.

18  BY MR. CORCORAN:

19  Q.  The second option -- it's a yes-or-no question:  Did

20  Chairman Thompson explore trying to resolve the executive

21  privilege issue by bringing it to a civil court of law?  Yes

22  or no.

23  A.  If I may give an explanation if I answer yes or no.

24             THE COURT:  I don't think the witness should be

25  restricted to saying yes or no to an answer that she needs

```
 1      to explain.
 2                  MR. CORCORAN:  I don't think so, either.
 3                  THE WITNESS:  Okay.  So no, because you are
 4      assuming that there was an issue on the table to resolve.
 5      There hadn't been an assertion, formal or informal, of
 6      executive privilege.
 7      BY MR. CORCORAN:
 8      Q.  I'm not assuming anything.  I'm just asking you
 9      questions.
10                  And if we go back to Page 1 of this exhibit, it
11      states that Mr. Bannon had testified on three prior
12      occasions before a congressional committees and before the
13      Mueller investigation.
14                  Did Chairman Thompson --
15                  MS. VAUGHN:  Objection, your Honor.
16                  THE COURT:  Ms. Vaughn, let's hear the question
17      first.  Okay?
18      BY MR. CORCORAN:
19      Q.  Did Chairman Thompson consider the willingness of
20      Mr. Bannon to testify before other congressional committees
21      when deciding how to move forward with this subpoena?
22                  MS. VAUGHN:  Objection.  Relevance.
23                  THE COURT:  Let's do a very brief sidebar.
24                  (Whereupon, the following proceedings were had at
25      sidebar outside the presence of the jury:)
```







17          (Whereupon, the following proceedings were had in

18   open court:)

19          THE COURTROOM DEPUTY:  We are now back on the

20   public record.

21   BY MR. CORCORAN:

22   Q.  I want to ask as well about Government's Exhibit No. 7,

23   which is in evidence, which is a letter from Chairman

24   Thompson to Bob Costello, the lawyer for Steve Bannon.  And

25   this one is dated October 15, 2021.

1              My question to you is:  Can you identify any word

2       on this three-page letter that Chairman Thompson actually

3       authored or wrote?

4       A.   At this date, I can't recall the word-for-word editing

5       process that took place on this letter or any of them.  But

6       that same general process that I described that we use for

7       drafting and review and signature of letters would have

8       applied here.

9       Q.   You testified when the Government asked you about this

10      exhibit and specifically about the invocation of the

11      contempt procedures set forth in 2 USC, Sections 192 and

12      194, which are legal statutes, you testified that that

13      involves a vote by the full House of Congress on a

14      resolution recommending that Steve Bannon in contempt of

15      Congress be referred to the U.S. Attorney's Office.  Is that

16      the vote that you're speaking about?

17      A.   It's not a vote of the full Congress; it's the House of

18      Representatives.  Yes.  I was referring to that.

19      Q.   Were you present on the floor of the House when that

20      vote occurred?

21      A.   Yes, I was.

22      Q.   And did you listen to the debate over that vote on the

23      contempt resolution?

24              MS. VAUGHN:  Objection.  Relevance.

25              THE COURT:  You can answer yes or no.

Amerling - CROSS - By Mr. Corcoran

```
 1                    THE WITNESS:  I did.
 2      BY MR. CORCORAN:
 3      Q.  Now, with regard to that vote, do you know how many
 4      members of Congress voted against referring the matter to
 5      the U.S. Attorney's Office?
 6                    MS. VAUGHN:  Objection.  Relevance.
 7                    THE COURT:  Sustained.
 8      BY MR. CORCORAN:
 9      Q.  Now, with regard to this letter and the second page,
10      US-000449, the very last paragraph says that if Mr. Bannon
11      believes that there are any additional issues relating to
12      his noncompliance with the subpoena that have not been
13      addressed, please submit them in writing to the Select
14      Committee by 6:00 p.m. EST on Monday, October 18, 2021.
15                    My question is this:  Who was the person who
16      extended that deadline to October 18th?
17      A.  Extended what deadline?
18      Q.  Extended the deadline for providing information to the
19      Committee.
20      A.  There was no extension of a deadline, sir.
21      Q.  Who came up with the date of October 18th, 2021, to
22      provide additional materials to the Committee?
23      A.  Chairman Thompson sent Mr. Bannon a letter on October
24      15th when the Committee had decided to schedule a proceeding
25      to consider a criminal contempt resolution because that is a
```

1        very serious step to take with respect to anyone.

2        Somebody's potentially going to be -- risk criminal

3        liability if they're the subject of that resolution.

4                In light of the decision to proceed with a

5        Committee meeting to consider holding Mr. Bannon in

6        contempt, Chairman Thompson wrote on October 15th to make

7        clear that if there were any reasons or if there was any

8        information that Mr. Bannon could provide regarding his

9        misconduct for the Select Committee to consider that he

10       should provide it by the time noted in this letter.

11               That's not an extension of any deadlines; it's

12       setting a deadline.

13       Q.  Okay.  But if I understand your testimony, it was

14       Chairman Thompson who set the new deadline of October 18th.

15       Is that accurate?

16       A.  There's no new deadline, sir.  There's a deadline that

17       he set for providing information that might be -- might bear

18       on the Committee's consideration of Mr. Bannon's misconduct.

19       The misconduct is spelled out in this letter and others,

20       which is Mr. Bannon failed to provide a single document by

21       the deadline of October 7th, 2021.  Mr. Bannon failed to

22       comply with the subpoena's requirement that he appear for a

23       deposition on October 14th, 2021.

24       Q.  If I understand your answer, you're saying that it was

25       Chairman Thompson who picked this date of October 18 that

1    appears in this letter.  Is that what you're saying?

2    A.  Chairman Thompson, as with all these letters, is

3    speaking on behalf of the Committee as the chair.  Yes.  So

4    when this letter says that there's a three-day window for

5    providing any additional information, Chairman Thompson is

6    communicating that message on behalf of the Select

7    Committee.

8    Q.  Which members of the Select Committee do you know

9    through your personal knowledge reviewed and approved this

10   letter?

11              MS. VAUGHN:  Objection.  Relevance.

12              THE COURT:  Overruled.

13              THE WITNESS:  I described to you, sir, the general

14   review process.  I can't recall for each and every letter

15   all the different individuals who may have been involved.

16   But generally, staff drafts recommendations for members to

17   consider.  The chair and others review staff

18   recommendations.  And then ultimately the chair decides what

19   the content will be that he will approve with his signature.

20   BY MR. CORCORAN:

21   Q.  I understand the general process.  And you've used that

22   a lot in your answers.

23              But my question is:  Do you have a specific memory

24   and firsthand information of any Select Committee member

25   approving this letter?

 1    A.  I have a memory that the chairman signed off.  I do not

 2    know all of his consultations and I don't have a specific

 3    memory of the different individuals who were involved in

 4    drafting.

 5    Q.  What is your memory of Chairman Thompson, to use your

 6    words, signing off on this letter?  Did you see him sign it?

 7    A.  I don't recall if I saw him sign this.

 8    Q.  I'm going to, if I can, move to Government's Exhibit No.

 9    8.  This is the second page, which is a letter from Robert

10    Costello, the lawyer for Mr. Bannon, to Representative

11    Thompson, the chairman of the Committee.  And in this

12    letter, Mr. Costello is asking for an additional week.

13    Correct?

14    A.  He is asking for an additional week to respond to the

15    chairman's October 15th letter.

16    Q.  So you read this letter to be that Mr. Costello on

17    behalf of Steve Bannon is asking for an additional week to

18    draft the letter?  Is that your testimony?

19    A.  My understanding of this letter was that he was asking

20    for a week's delay to respond to the Committee's invitation

21    to provide information that would bear on consideration of

22    his misconduct.

23         The suggestion is in this letter from the phrasing

24    a one-week adjournment that they're referring to the

25    contempt meeting that the Committee was holding.

1    Q.  So it's not a week to draft the letter.  Correct?

2    A.  It appeared from that letter he was requesting a week

3    delay in providing information to the Committee about

4    Mr. Bannon's misconduct.

5    Q.  And the reason that Mr. Costello asked for one week, as

6    stated in this letter, is because of new information, a new

7    lawsuit that had been filed dealing with the issue of

8    executive privilege.  Correct?

9    A.  I disagree with the premise of your question, sir,

10   respectfully.  It's not new information.  There had been

11   extensive back-and-forth already between the Select

12   Committee and the Defendant's attorney about the issue of

13   executive privilege, and the Select Committee had made its

14   position clear.

15   Q.  When I use the word "new information," I'm identifying

16   this in the letter.  I'd be interested in your thoughts.

17   Mr. Costello says -- he describes the lawsuit.  He says:  We

18   have just been advised of the filing of a lawsuit in federal

19   court for the District of Columbia entitled *Donald J. Trump*

20   *v. Bennie Thompson* and then the case number.  That lawsuit

21   was a civil lawsuit dealing with the issue of executive

22   privilege.  Correct?

23   A.  That's correct.

24   Q.  Okay.  And Mr. Costello says:  In light of this late

25   filing, we respectfully request a one-week adjournment.

 1    Right?

 2    A.  That's correct.

 3    Q.  But your position is that this is not a request based on

 4    something new that's happened?  Is that your testimony?

 5    A.  The position of the Select Committee was that, at this

 6    time, there were two main issues here relating to executive

 7    privilege that Mr. Bannon had not addressed in his

 8    communications.  One was the issue that the Select Committee

 9    chair had repeatedly informed him of in the letters that the

10    Select Committee was seeking information that could not

11    possibly be reached by executive privilege:  communications

12    with campaign advisors, members of Congress, other private

13    parties, communications relating to his podcast.  Matters

14    that had nothing to do with any communication with the

15    former president or the potential invocation of presidential

16    executive privileges, number one.

17              And number two, the president had not formally or

18    informally invoked the privilege even if you accepted the

19    premise that executive privilege applied, which the Select

20    Committee had made clear that it does not.  It hadn't been

21    invoked.

22              So those two issues had been the subject of

23    several letters, and the fact that there was a new lawsuit

24    raising executive privilege was not material.

25    Q.  I understand what you've just testified.

 1          But my question is this:  You said that -- you

 2     testified that Mr. Bannon was a private citizen and he has

 3     enlisted a lawyer, Bob Costello, to help.  My question is

 4     this:  Can you understand that a private citizen might want

 5     a week to consider a newly filed lawsuit on the topic of

 6     executive privilege?

 7          MS. VAUGHN:  Objection.  Calls for speculation.

 8          THE COURT:  Sustained.

 9     BY MR. CORCORAN:

10     Q.  Now, the request for a one-week extension was rejected.

11     Correct?

12     A.  That's correct.

13     Q.  Okay.  And Government's Exhibit No. 9, which is in

14     evidence, is a letter over the signature of Chairman

15     Thompson rejecting that one-week extension.  Correct?

16     A.  That's correct.

17     Q.  Did you draft this letter?

18     A.  My answer is the same as the answer I've given on the

19     other letters:  I would have been involved and the process

20     would have been the same that I described.

21     Q.  This is a one-paragraph letter.  How many Committee

22     staffers or members of the Select Committee were involved

23     with drafting this one paragraph?

24     A.  I don't recall, sir.

25     Q.  The second part of Exhibit 9, which is US-000457 and

1    000458, is another letter, the same date, from -- over the

2    signature of Chairman Thompson addressed to Bob Costello,

3    Steve Bannon's lawyer.

4         In the first line of that letter, Representative

5    Thompson states:  I write yet again to urge your client,

6    Stephen K. Bannon, to change course and comply with the

7    September 23, 2021, subpoena.  Correct?

8    A.  That's correct.

9    Q.  So even on the 19th of October, is it fair to say that

10   Chairman Thompson was open to receiving documents and

11   testimony from Mr. Bannon in connection with the subpoena?

12   A.  The Select Committee is always open to receiving

13   documents and testimony relevant to the scope of its

14   investigation.  So yes.

15   Q.  Now, what date was the House vote on the contempt

16   resolution that we discussed?

17   A.  The full House of Representatives voted on the contempt

18   resolution on October 21st, 2021.

19   Q.  So two days after this letter.  Correct?

20   A.  That's correct.

21   Q.  What date did the Committee vote to send that resolution

22   to the House?

23   A.  The Committee approved the resolution recommending that

24   Mr. Bannon be held in criminal contempt on October 19th,

25   2021.

1    Q.  So the very date that -- well, the day after Mr. Bannon

2    through his lawyer, Bob Costello, asked for a one-week

3    extension, the Select Committee voted to refer a resolution

4    finding him in criminal contempt to the full House.  Is that

5    accurate?

6    A.  That's correct.

7    Q.  And the actual document, the Committee report on the

8    resolution, was about a 40-page document.  Correct?

9    A.  I'll take your word for that, sir.  That sounds right.

10              MR. CORCORAN:  Well, let me bring up just for the

11   witness's viewing and for identification purposes Defense

12   Exhibit 8.  If we could go to Pages US-464 to 50 -- well,

13   start at US-464.

14              Since it's a long document, your Honor, may I

15   approach the witness?

16              THE COURT:  You may, Mr. Corcoran.

17              MR. CORCORAN:  Thank you.

18   BY MR. CORCORAN:

19   Q.  (Tendering document to the witness) So I've handed you

20   what's been marked as Defendant's Exhibit No. 8 for

21   identification purposes.  I just want you to scan through it

22   and see if it gives you the ability to answer the question:

23   How long was the Committee report that was sent to the full

24   House recommending contempt for Mr. Bannon?

25   A.  The text of the report was 16 pages and then there were

1    appendices, including a copy of the letters, various letters

2    that we've been discussing today, among other items.

3    Q.  So overall, it's roughly 40 pages with the text and the

4    exhibits?

5    A.  When you add all the attachments, it's about 40 --

6    Q.  Yes.

7    A.  -- the text itself is about 15 and a half pages.

8    Q.  And the 15 and a half pages, that's single-spaced.

9    Correct?

10   A.  That's correct.

11   Q.  And did you have a hand in drafting that report that was

12   sent to the full House recommending a vote on contempt for

13   Steve Bannon?

14           MS. VAUGHN:  Objection.  Relevance.

15           THE COURT:  I'm going to allow this one.

16           THE WITNESS:  The process for drafting that report

17   is similar to what I've described for letters.  There were a

18   number of counsels involved with drafting and reviewing.

19   And members and the chair would have reviewed the draft.

20   BY MR. CORCORAN:

21   Q.  My question was:  Did you personally play a role in the

22   drafting of this 15-and-a-half-page, 16-page, single-spaced

23   report?

24   A.  I did.

25   Q.  Did you personally?

```
 1    A.  I did.

 2    Q.  You did?

 3    A.  Yes.

 4    Q.  When did you begin your drafting process?

 5              MS. VAUGHN:  Objection.  Relevance.

 6              THE COURT:  Overruled.

 7              THE WITNESS:  I cannot recall specifically, sir.

 8    I mean, it would have been a number of days before the

 9    Committee proceeding.

10    BY MR. CORCORAN:

11    Q.  You said the Committee proceeding was on October 21st,

12    2021?

13    A.  This is when the full House voted on the resolution.

14    The Committee proceeding was on October 19, 2021.

15    Q.  Thank you.

16              So at the Committee proceeding on October 19th,

17    2021, that report was already completed.  Is that accurate?

18    A.  Yes.  The Committee has to post the report in advance of

19    its proceeding.

20    Q.  And just to be clear, that's the report recommending

21    that the whole House find Steve Bannon in contempt of

22    Congress.  Correct?

23    A.  That's correct.  Yes.

24    Q.  How many days in advance of October 19th did you begin

25    drafting your portion of that report?
```

1              MS. VAUGHN:  Objection.  Relevance.

2              THE COURT:  Overruled.

3              THE WITNESS:  Sitting here today, I can't tell you

4     how many days specifically.  It would have been a number of

5     days to prepare a report of that nature.

6     BY MR. CORCORAN:

7     Q.  What's your best estimate?  I understand it's a number

8     of days.  But a number is a number.  What's your best

9     estimate sitting here today as to when you started drafting

10    this 16-page single-spaced report?

11    A.  My best estimate is sometime after October 14th because

12    October 14th is when Mr. Bannon defied the subpoena's demand

13    that he appear for his deposition.  So it became clear at

14    that point that he had compounded his noncompliance with the

15    October 7th document production deadline at that point.  And

16    that raised -- I'm talking about theoretically, because I

17    don't remember specifically, but that would have raised the

18    possibility that the Committee would need to consider

19    measures, including contempt.

20    Q.  So if I understand what you just said, you don't think

21    you started drafting a resolution -- I'm sorry -- a report

22    recommending that Steve Bannon be held in contempt before

23    October 14th, which is the date on the subpoena for his

24    testimony.  Is that what you're saying?  You didn't start

25    before the 14th?

```
1    A.  That's my best estimate, sir.

2    Q.  But you can't be certain?

3    A.  I don't know for sure sitting here today.  No.

4    Q.  Let me ask you, you mentioned that you've been on

5    Capitol Hill for 20 years.  Most of that time you've worked

6    for Democratic members of Congress.  Correct?

7    A.  Well, to be precise, sir, I've worked for a number of

8    congressional committees.  Committees are headed by chairs

9    who are in charge of the staff, the committees.  So I have

10   worked for Republican chairs, Democratic chairs.  I've

11   worked -- had direct reports to Democratic-leading members

12   of the Committee.

13   Q.  If I understand your testimony, what you just said is

14   you've worked on committees where there have been

15   Republicans and Democratic members, but you've always worked

16   for the Democrats.  Is that accurate?

17   A.  What I'm describing is that in the House Committee

18   structure, the chairs are in charge of the Committee staffs.

19   And I've worked for several different committees.  Some of

20   the time I've worked for the committees the chair was a

21   Republican; some of the time the chair was a Democrat.

22            I have reported directly throughout my career to

23   the leading Democrat on the body that I've been working for.

24   Q.  That's really my question.  For your entire career,

25   either you've worked for an individual Democratic member of
```

Amerling - CROSS - By Mr. Corcoran

 1    the House or the Senate, correct, or you've worked for the

 2    staff under the leading Democratic member of the Committee?

 3    Is that accurate?

 4    A.  That's correct.

 5    Q.  Okay.  And you've also made personal donations to

 6    Democratic candidates.  Is that correct?

 7    A.  That's correct.

 8    Q.  And you've made a personal donation to the Democratic

 9    Congressional Campaign Committee.  Correct?

10    A.  I take your word for it.  That's -- I don't remember

11    that specifically.  But I'm sure that's true.

12    Q.  Now, when you were interviewed by the FBI on November

13    2nd, 2021, you told the FBI agent that you and the other

14    members of the staff were nonpartisan, didn't you?

15    A.  That's correct.

16    Q.  I want to ask you about what I understand to be a 17 --

17    you've known for 17 years one of the prosecutors in this

18    case.  Correct?

19    A.  One of the prosecutors and I overlapped on a

20    congressional Committee staff I think about 15 years ago,

21    10, 15 years ago.

22    Q.  Which staff was that?

23    A.  I believe it was the House Committee on Oversight, maybe

24    going over into the House Committee on Energy and Commerce

25    after that.

1    Q.  And who was the chair of the committee at that time?

2    A.  Chairman Henry Waxman.

3    Q.  And he's a Democrat.  Correct?

4    A.  He is.

5    Q.  Okay.  And how many majority staff members were there on

6    the Committee at that time?

7              MS. VAUGHN:  Objection.  Relevance.

8              THE COURT:  Sustained.

9    BY MR. CORCORAN:

10   Q.  Well, point out the person -- point out the prosecutor

11   who you've known for -- did you say 15 or -- 15 years or

12   longer?

13   A.  I've overlapped on the staff of Chairman Waxman with the

14   prosecutor who has blond hair with the black mask.

15   Q.  Did you ever spend any time with the prosecutor,

16   Ms. Gaston, outside of the work environment?

17   A.  It's hard to recall a time when our paths crossed.

18   However, we are in the same book group.  But neither of us,

19   I believe, have attended at the same time for a number of

20   years now.

21   Q.  So you're in a book club with the prosecutor in this

22   case?

23   A.  We are.

24   Q.  How long have you been in that book club?

25   A.  I think I've been in the club for maybe five or -- I

1    don't remember exactly.  Maybe five years.  It could be

2    longer.

3    Q.  And how often does your book club meet?  Is it a monthly

4    meeting of the book club?

5    A.  Usually once a month.

6    Q.  And are there monthly emails that go out to Ms. Gaston

7    and the other book club members speaking about the books to

8    be read and when the meeting is going to take place?

9    A.  Yes.  There are scheduling emails that go out to the

10   group.

11   Q.  And is it accurate to say that most of the members of

12   your book club work together as Democratic staff for one of

13   the committees?

14   A.  The book club is made up of a variety of individuals.

15   The commonality is with most, I think most worked for Henry

16   Waxman at some point in their career.

17   Q.  Okay.  So most of the members of your book club who meet

18   monthly worked for a Democratic congressmen.  Correct?

19          MS. VAUGHN:  Objection, your Honor.  Beyond the

20   relevant part of this.

21          THE COURT:  I'm going to allow a little bit more.

22   BY MR. CORCORAN:

23   Q.  I guess I'll repeat my question.

24          Most of the members of your book club that meets

25   on a monthly basis worked for a Democratic congressman at

 1   some point in their career named Representative Henry

 2   Waxman.  Is that correct?

 3   A.  That's correct.

 4   Q.  Is it -- you read nonfiction?

 5   A.  You mean in my book group or are you asking personally?

 6   Q.  No.  In your book group.

 7   A.  Generally, the book group reads fiction.  I should say,

 8   I have not attended for at least -- about a year, so I don't

 9   know what they're reading right now.

10   Q.  And the book club is something that you joined

11   voluntarily, people that you want to spend your time with

12   and discuss things.  Correct?

13            MS. VAUGHN:  Objection, your Honor.  Where are we

14   going with this?

15            THE COURT:  Sustained.

16   BY MR. CORCORAN:

17   Q.  One last question about the book club that you and

18   Ms. Gaston are in.  Do you ever discuss the political topics

19   of the day?

20            MS. VAUGHN:  Objection, your Honor.  We haven't

21   even established whether this relates to Ms. Gaston.

22            THE COURT:  I'll allow it.

23            Overruled.

24            THE WITNESS:  To the best of my recollection --

25   and I haven't been in the book group for a year -- the

1    conversations cover a whole variety of topics.  We try to

2    start with the book, but then it goes from there.  And given

3    the careers of the folks who were involved in the book

4    group, it's not unusual that we would talk about politics in

5    some way or another.

6    BY MR. CORCORAN:

7    Q.  You testified earlier that the Committee is open to

8    Steve Bannon still providing documents and appearing for

9    testimony at a deposition.  Is that your testimony?

10   A.  My testimony is that we always welcome relevant

11   documents and testimony.  So if he is interested in

12   providing information to the Committee, we would be

13   interested in exploring that further.

14   Q.  And you communicated just last week with Bob Costello,

15   Steve Bannon's lawyer for the Committee issue, about the

16   production of documents this week and testimony at some date

17   in the future based on the subpoena that we've been talking

18   about.  Correct?

19        MS. VAUGHN:  Objection.  Relevance.  Could we have

20   a sidebar?

21        THE COURT:  I agree.  We need a sidebar.

22        (Whereupon, the following proceedings were had at

23   sidebar outside the presence of the jury:)

24        ██████████████████████████████

25        ████████████████████████████████████████

Amerling - CROSS - By Mr. Corcoran













801



802



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24          (Whereupon, the following proceedings were had in
25     open court:)

1            THE COURT:  We are back on the fully public

2    record.

3            As I told the parties on the husher, I'm going to

4    take a very brief recess to address the question that has

5    just been presented.

6            I think for efficiency's sake, Ms. Lesley, I'd

7    like the jury to stay as close as we can here.  And we're

8    going to have a ten-minute recess.  I'll come back, discuss

9    my views on the open record and then we can bring the jury

10   back in.  Okay?

11           Thank you all.

12           And, Ms. Amerling, you may also leave the

13   courtroom if you would like.

14           THE WITNESS:  Thank you.

15           (Whereupon, the jury exited the courtroom at 2:43

16   p.m. and the following proceedings were had:)

17           (Thereupon a recess was taken, after which the

18   following proceedings were had:)

19           THE COURTROOM DEPUTY:  We are now on the record.

20           THE COURT:  I am going to overrule the

21   Government's objection to the question or questions that

22   Mr. Corcoran intends to ask.

23           As everyone knows, I left open the question of

24   whether the most recent set of letters would go to the

25   limited question of whether either the dates in the subpoena

1    or the return dates were malleable in fact or whether

2    Mr. Bannon thought they were.

3              And it seems to me that the bar for relevance is

4    very low and that this letter in particular could be

5    relevant to that question.

6              So I will not prohibit Mr. Corcoran from asking

7    the witness questions about the exchange of letters.

8              The leash will be very tight.  And I will consider

9    whatever -- will consider; I'm not saying I'm going to do

10   it -- whatever instruction the Government wants me to make

11   either now or when I instruct the jury.

12             MS. VAUGHN:  Your Honor, we think that these

13   letters carry significant potential for confusion that the

14   jury would carry through the trial.  So we think that two

15   instructions are required with the entry of this letter and

16   questions about it:

17             First, that the Defendant's belief that executive

18   privilege excused him from complying with the subpoena is

19   not a defense to contempt and that the question the jury

20   will be deciding is instead whether the Defendant's failure

21   to comply with the subpoena was deliberate and that his

22   reasoning is irrelevant.

23             And I think we could do something that's based off

24   the final instructions that the Court had proposed with

25   respect to that.

1            The second instruction that we think is important

2     to make sure that this jury decides this case not on the no

3     harm, no foul theory, but on the actual elements of the

4     offense, is that they be instructed that the fact of later

5     compliance or later efforts at compliance or the Committee's

6     request of later compliance does not by itself waive or

7     erase the prior failure to comply or contempt or something

8     along those lines.

9            THE COURT:  Is the Government requesting that I

10    make these instructions now --

11           MS. VAUGHN:  We think it's important now to --

12           THE COURT:  -- or at deliberation time?

13           MS. VAUGHN:  Both, your Honor, because

14    Mr. Corcoran's questions are clearly going to be aimed at

15    suggesting to this jury that -- I mean, Mr. Schoen said this

16    explicitly:  We are allowed to show the jury that his belief

17    in executive privilege was valid.  That's not a defense to

18    contempt.

19           And so then this jury is going to have these

20    improper notions in their head that executive privilege is a

21    defense, if he truly believed it, despite the Committee's

22    rejection and that the fact that he complied later somehow

23    shows the Committee wasn't -- he wasn't in default or

24    something.

25           They can't be allowed to proceed through the rest

 1    of the trial with that incorrect notion of the law.

 2                 THE COURT:  Thank you, Ms. Vaughn.

 3                 Mr. Schoen?

 4                 MR. SCHOEN:  Yes, your Honor.

 5                 All that's happening here is the Government

 6    doesn't like the way these letters go.  The same instruction

 7    the Court should give, respectfully, your Honor, about these

 8    letters is the same instruction the Court gave to the

 9    earlier letters.  That is, they're not offered for the truth

10    of the assertion; they're offered for the notice.

11                 We understand we can't -- based on the Court's

12    rulings we can't bring to the jury the straight defense that

13    the Defendant believed executive privilege excused him from

14    contempt.

15                 This is the belief that executive privilege --

16    that the Committee would consider executive privilege as a

17    factor in extending the dates, and therefore these letters

18    confirm for Mr. Costello his belief.  That's why I'm saying

19    these letters are relevant, your Honor, or one of the

20    reasons they're relevant.  They confirm what happened here.

21                 So President Trump sent the letter saying:  I am

22    withdrawing privilege --

23                 THE COURT:  I get it.  I get it.

24                 MR. SCHOEN:  I feel like I need to explain my

25    theory.

```
 1                THE COURT:  I understand the facts.  I need the

 2       punch line.

 3                MR. SCHOEN:  Well --

 4                THE COURT:  We're going to bring the jury in.

 5                MR. SCHOEN:  Thank you.  Is my position clear on

 6       the instructions, your Honor?  We don't think --

 7                THE COURT:  Yes.  Yes.

 8                MR. SCHOEN:  Thank you.

 9                THE COURT:  We can bring the witness in as well.

10                (Whereupon, the jury entered the courtroom at 3:00

11       p.m. and the following proceedings were had:)

12                (Thereupon, the witness entered the courtroom and

13       the following proceedings were had:)

14                THE COURT:  Mr. Corcoran?

15                MR. CORCORAN:  Thank you, your Honor.

16                THE COURT:  Do you want to start again, and then

17       when I have a concrete question in mind I can address the

18       issues we just discussed?

19                MR. CORCORAN:  Yes, your Honor.

20       BY MR. CORCORAN:

21       Q.  Ma'am, I wanted to follow up on your testimony about

22       the -- about Chairman Thompson continuing to be open to

23       Steve Bannon's provision of documents if he has any that are

24       responsive to the subpoena and his appearance for deposition

25       by the Committee.
```

1          The first question I want to ask you is about

2    Defendant's Exhibit No. 30 for identification purposes.  And

3    that is, are you aware that on July 9th of this year, July

4    9th of 2022, former President Donald J. Trump wrote to

5    Mr. Bannon and addressed the issue of the September 23,

6    2022, subpoena?

7    A.  Yes.

8    Q.  Have you read -- did you read this letter before today?

9    A.  I did.

10   Q.  I want to ask you just about a few points in the letter

11   and what is being communicated.

12          First, former President Trump writes --

13          MS. VAUGHN:  Objection, your Honor.  This letter

14   is not in evidence.

15          MR. CORCORAN:  We'll move it into evidence at this

16   time, your Honor.

17          MS. VAUGHN:  Same objection.

18          THE COURT:  So, ladies and gentlemen of the jury,

19   I'm going to admit this letter and perhaps two others that

20   will be perhaps offered by the Defendant.

21          I'm admitting them not for the truth of the

22   matters asserted with them, but for the fact that they were

23   communicated, first of all, and they communicated the

24   parties' positions.

25          The other thing that I am instructing you today,

Amerling - CROSS - By Mr. Corcoran

1    although I will give you much more detailed instructions

2    about, is I am limiting them -- I am admitting them for a

3    limited purpose.  And that is going to the questions of

4    whether the date or dates by which Mr. Bannon had to comply

5    with the subpoena were fixed; and, second, whether

6    Mr. Bannon deliberately and intentionally failed to comply

7    with those dates.

8           You will perhaps hear additional discussion about

9    executive privilege.  Mr. Bannon's belief that questions

10   around executive privilege excused him from complying with

11   the subpoena are irrelevant in this case.

12          In addition, as I will instruct you later, whether

13   or not Mr. Bannon in the future complies with the subpoena

14   is not relevant to whether he was in default in October

15   2021, as the Government argues of course here.

16          But with these limiting instructions, I do believe

17   this information is admissible again for two potential

18   purposes:  One is, again, whether the dates that we've been

19   discussing today were in fact the dates; and, second,

20   Mr. Bannon's -- whether he deliberately and intentionally

21   defaulted with respect to those dates.

22          As I indicated in the opening statements, I will

23   be giving you more detailed instructions around some of

24   these terms.  But I wanted you to understand the context in

25   which I am admitting these documents.

```
 1                    (Whereupon, Defendant's Exhibit No. 30 was entered

 2         into evidence.)

 3                    THE COURT:  Mr. Corcoran.

 4                    MR. CORCORAN:  Thank you, your Honor.

 5         BY MR. CORCORAN:

 6         Q.  Mr. Amerling, I just want to direct you to a few

 7         different points in this letter, which is Defendant's

 8         Exhibit 30 in evidence.

 9                    First, it's a letter from President Trump to

10         Stephen Bannon dated July 9, 2022.  Correct?

11         A.  That's correct.

12         Q.  And in the first line, the former president is informing

13         Mr. Bannon that the subject of this letter is the subpoena

14         that he received in September 2021.  Correct?

15         A.  Yes.

16         Q.  Moving to the second paragraph, the first line,

17         president -- former President Trump states in this letter:

18         When you first received the subpoena to testify and provide

19         documents, I invoked executive privilege.  Correct?

20         A.  That's what this letter says.  Yes.

21         Q.  And then in the third paragraph, President Trump states:

22         Therefore, if you reach an agreement on a time and place for

23         your testimony, I will waive executive privilege for you,

24         which allows for you to go in and testify truthfully and

25         fairly.
```

1            Is that correct?

2   A.  That's what the letter says.  Yes.

3   Q.  So basically, the letter in terms of just the notice

4   that's being conveyed is a letter from former President

5   Trump that he will waive executive privilege if there's an

6   agreement -- well, if there's an agreement to testify and

7   produce documents with the Select Committee.  Is that

8   accurate?

9   A.  Well, the letter says if we reach an agreement on a time

10  and place for testimony.  I don't see where there's a

11  reference to reaching an agreement on documents.

12  Q.  Okay.  So what's being conveyed is, if I can rephrase

13  it -- I just want to make sure that I'm speaking precisely

14  about the letter and what notice is provided -- this is

15  former President Trump expressing the idea that he would

16  waive privilege for Mr. Bannon to go in and testify before

17  the Select Committee under certain circumstances.  Is that

18  accurate?

19  A.  Yes.  I think he described it as a conditional promise

20  of a waiver with respect to testimony.

21  Q.  Thank you.

22            MR. CORCORAN:  If we can move to Defendant's

23  Exhibit 31 for identification purposes.

24            THE COURT REPORTER:  Judge, I'm sorry.  Has

25  Defendant's Exhibit No. 31 been admitted?

1              THE COURT:  No.  Only 30 has been admitted so far.

2              30 was admitted, again, ladies and gentlemen of

3      the jury, with the instructions that I gave you.

4      BY MR. CORCORAN:

5      Q.  Mr. Amerling, what I'm showing you for identification

6      purposes is a two-page letter marked Defendant's Exhibit 31

7      which is dated July 9, 2022.  It's from Robert J. Costello,

8      the attorney for Mr. Bannon, and it's directed to Chairman

9      Bennie Thompson of the Select Committee.  Correct?

10     A.  That's correct.

11     Q.  And have you seen this letter before?

12     A.  I have.  Mr. Costello emailed it to me.

13             MR. CORCORAN:  Your Honor, we'd move Exhibit No.

14     31 into evidence, Defendant's Exhibit No. 31.

15             MS. VAUGHN:  Same objection, your Honor.

16             THE COURT:  That objection is overruled in part.

17             Again, ladies and gentlemen of the jury,

18     consistent with what I said before, the same limiting

19     instructions I gave as to Defendant's Exhibit 30 apply here.

20     It goes only to questions around the subpoena dates and

21     Mr. Bannon's deliberate and intentional, as alleged by the

22     Government, failure to comply.

23             Mr. Bannon's belief that executive privilege

24     excused him from compliance is not relevant, and facts of

25     later compliance with the subpoena do not waive or otherwise

Amerling - CROSS - By Mr. Corcoran

1   make lawful what would otherwise be unlawful contempt.

2              (Whereupon, Defendant's Exhibit No. 31 was entered

3   into evidence.)

4   BY MR. CORCORAN:

5   Q.  Ms. Amerling, if I can direct your attention to the

6   first sentence of that letter.  Is it accurate to say

7   that -- what Mr. Costello is conveying to Chairman Thompson

8   of the Committee is that on the morning of October 19th,

9   2021, you denied a request for a one-week adjournment in

10  light of the filing of the lawsuit by President Donald J.

11  Trump.

12             So Mr. Costello essentially is speaking about the

13  subpoena that's at issue in this case.  Is that accurate?

14  A.  If he's talking about the letter relating to Mr. Bannon

15  providing information to the Committee before the October

16  19th proceeding, then the reference is to the exchange of

17  letters with respect to the Committee's invitation for him

18  to provide information that would bear on his misconduct.

19  Q.  And if I can direct your attention to the third

20  paragraph, where it says:  While Mr. Bannon has been

21  steadfast in his convictions, circumstances have now

22  changed.  President Trump has provided us with a letter,

23  which is attached, attesting to the fact that back in

24  October 2021, he did invoke executive privilege with respect

25  to Mr. Bannon's testimony and document production.

1    So Mr. Costello is essentially putting Chairman

2 Thompson on notice that he's referencing what happened back

3 in October of 2021.  Correct?

4 A.  Can you explain what you mean by "on notice"?

5 Q.  Well, not an official term.  He's just communicating

6 about what happened back in October 2021 with regard to the

7 subpoena that we have been discussing today?

8 A.  He's communicating in this paragraph that President

9 Trump has provided the letter that takes that position.

10 Q.  Okay.  And on the next page, that first paragraph,

11 Mr. Costello states to Chairman Thompson:  President Trump

12 has decided it would be in the best interest of the American

13 people to waive executive privilege for Stephen K. Bannon to

14 allow Mr. Bannon to comply with the subpoena issued by your

15 committee.  Mr. Bannon is willing to, and indeed prefers, to

16 testify at your public hearing.

17    Is Mr. Costello in that paragraph conveying to

18 Chairman Thompson that now that the attached Trump --

19 President Trump letter is in play, Mr. Bannon is willing to

20 testify in a public hearing before the Committee?

21 A.  That's what it looks like he's saying.  Yes.

22    MR. CORCORAN:  If we could move to defense --

23 well, I'm sorry, your Honor.

24    THE COURT:  I should have said before, Defendant's

25 Exhibit 31 is admitted with the limiting instructions I

```
 1    gave.

 2             I take it we're now moving on to another document.

 3             MR. CORCORAN:  I was going to move on to No. 32.

 4    This is Defendant's Exhibit 32 for identification purposes.

 5    BY MR. CORCORAN:

 6    Q.  Ms. Amerling, is this a letter from Chairman Thompson to

 7    Robert Costello, the attorney for Mr. Bannon, dated July 14,

 8    2022?

 9    A.  That's correct.

10    Q.  So that's just within the last week.  Correct?

11    A.  That's correct.

12    Q.  And in this letter, is Chairman Thompson focusing on the

13    first paragraph, indicating that he's -- well, I'll read it:

14    I'm in receipt of your letter dated July 9, 2022, in which

15    you indicate that your client, Stephen K. Bannon, is now

16    willing to comply with the Select Committee's subpoena.

17             So is Chairman Thompson --

18             MS. VAUGHN:  Objection.  This document is not in

19    evidence.

20             MR. CORCORAN:  Oh, I'm sorry.

21             THE COURT:  Agreed.

22             MR. CORCORAN:  It's getting late in the day.  I'm

23    sorry.  We would move the admission of this.

24             THE COURT:  Same objection?

25             MS. VAUGHN:  Same objection.
```

1          THE COURT:  Ladies and gentlemen of the jury, I am

2     going to admit this document.  This is the third of the

3     documents that I'm admitting subject to the limiting

4     instruction that I've already explained.  I don't think I

5     need to repeat it again.  But what I said earlier about

6     Defendant's Exhibits 30 and 31 is equally applicable to

7     Defendant's Exhibit 32.

8          (Whereupon, Defendant's Exhibit No. 32 was entered

9     into evidence.)

10          THE COURT:  Mr. Corcoran.

11     BY MR. CORCORAN:

12     Q.  Ms. Amerling, with regard to the first sentence, is

13     Chairman Thompson indicating that he's responding to

14     Mr. Costello's letter of July 9, which attached President

15     Trump's letter that references the Select Committee

16     subpoena?

17     A.  That's correct.

18     Q.  And if you'd go to the third paragraph, where Chairman

19     Thompson writes:  With respect to the Select Committee's

20     demand for documents, Mr. Bannon should begin producing

21     responsive documents today to the Select Committee and

22     provide a complete response by July 21, 2022.

23          By that sentence, is Chairman Thompson reflecting

24     that the Select Committee is open to the receipt of any

25     responsive documents if there are any, given President

1    Trump's new letter that we just looked at?

2    A.  He's saying what we've talked about previously today:

3    that the Select Committee always welcomes relevant documents

4    and testimony.

5    Q.  And the final paragraph of that -- I'm sorry -- the

6    final sentence of that paragraph, the final two sentences

7    reads:  After he has produced all the requested documents,

8    we will identify a date soon following that production on

9    which he must then appear in person in the O'Neill House

10   office building for a deposition.  We anticipate that the

11   deposition will occur in the near future.

12          And by this sentence, is Chairman Thompson

13   indicating to Stephen Bannon that he's open for a deposition

14   at a future date pursuant to the September 23, 2021,

15   subpoena?

16   A.  He's indicating that he's open to a deposition after

17   Mr. Bannon has produced the requested documents.

18          MR. CORCORAN:  Thank you, your Honor.  I have

19   nothing further.

20          THE COURT:  Thank you, Mr. Corcoran.

21          Ms. Vaughn, redirect?

22          MS. VAUGHN:  Can I please have the ELMO?

23                    REDIRECT EXAMINATION

24   BY MS. VAUGHN:

25   Q.  Ms. Amerling, let's pick up right where Mr. Corcoran

 1   left off, with defense -- I think it was Defendant's Exhibit

 2   32.

 3          Ms. Amerling, first of all, is this the July 14th

 4   letter that the Committee sent back?

 5          THE COURT:  Ms. Vaughn, I think you're going to be

 6   asked to either use the microphone or perhaps put on the

 7   portable mic, whichever you'd prefer.

 8          MS. VAUGHN:  I'll use the portable, but this one

 9   in the meantime.

10   BY MS. VAUGHN:

11   Q.  Ms. Amerling, is this the July 14th letter that the

12   Committee sent back to the Defendant after his sudden offer

13   to comply on July 9th?

14   A.  That's correct.

15   Q.  Ms. Amerling, I've just highlighted a sentence in the

16   second paragraph there.  Can you please read that?

17   A.  Yes.  It says:  The July 9th, 2022, outreach to the

18   Select Committee by you on Mr. Bannon's behalf does not

19   change the fact that Mr. Bannon failed to follow that

20   process and failed to comply with the Select Committee's

21   subpoena prior to the House referral of the contempt

22   resolution concerning Mr. Bannon's defiance of the subpoena.

23   Q.  Ms. Amerling, you testified earlier about the --

24          (Feedback emitting from the sound system.)

25          THE COURT:  We can fix that, maybe.

```
 1                    MS. VAUGHN:  Sorry.  I'm causing trouble.

 2                    THE COURT:  We just need to turn off the

 3          microphone on the podium, if we can.

 4                    THE COURTROOM DEPUTY:  (Assists counsel with the

 5          audiovisual equipment.)

 6                    THE COURT:  Let's try that, Ms. Vaughn.

 7                    MS. VAUGHN:  Is this better?  Great.  Thank you.

 8          BY MS. VAUGHN:

 9          Q.  So what was the date that the Defendant decided to try

10          to comply now?

11          A.  The letter from the Defendant's counsel came to the

12          Select Committee on July 9th, 2022.

13          Q.  And, Ms. Amerling, you testified earlier about the

14          time-limited nature of the Committee's investigation.  When

15          does the Committee's authority expire?

16          A.  At the end of this Congress.

17          Q.  And when was it that the Committee first issued the

18          subpoena?

19          A.  The Committee first issued a subpoena to Mr. Bannon on

20          September 23rd, 2021.

21          Q.  And if Mr. Bannon had complied as required with the

22          subpoena, how much time would the Committee have had to look

23          at the information he had, follow up on leads, consider

24          whether there was more relevant information out there to

25          help the Committee get to the bottom of January 6th?
```

1    A.  At least eight -- at least nine months of additional

2    time.

3    Q.  And how much time is the Committee left with now?

4    A.  Five or so months.

5    Q.  And so as opposed to having 14 in total, the Committee

6    now only has five?

7    A.  That's correct.

8    Q.  Did the Defendant's sudden offer to comply on July 9th

9    include any offer to provide documents?

10   A.  It did not.

11   Q.  Has the Defendant provided any documents since his

12   sudden offer to comply on July 9th?

13   A.  Not unless he's provided evidence since I've been

14   sitting here today.

15   Q.  And did the Defendant's offer to comply actually come

16   with conditions that don't follow the subpoena's

17   requirements?

18   A.  That's correct.

19   Q.  Let's take a look at those.

20           I'm showing you Page 2 of what's been admitted as

21   Defendant's Exhibit 31.  Ms. Amerling, can you please read

22   the last sentence there that I've highlighted on that second

23   page?

24   A.  It says:  Mr. Bannon is willing to, and indeed prefers,

25   to testify at your public hearing.

1   Q.  Who gets to decide under what conditions someone answers

2   the Committee's questions:  the Committee or the witness?

3   A.  The Committee.

4   Q.  Because under whose authority is it that the subpoena is

5   issued:  the Committee or the witness's?

6   A.  The Committee.

7   Q.  And is the subpoena a government order or a request to

8   the witness?

9   A.  It's a demand by the government.

10  Q.  Ms. Amerling, this letter came to the Committee on July

11  9th.  Let's talk about some of the things that happened in

12  between when the subpoena was issued and when this letter

13  came in.

14          Ms. Amerling, I'm showing you what's already been

15  admitted as Government's Exhibit 5.  What is Government's

16  Exhibit 5?

17  A.  It's the October 8th letter from Chairman Thompson to

18  Mr. Bannon's counsel.

19  Q.  And in this letter, what does the Committee tell the

20  Defendant in this first paragraph where I've highlighted

21  about his ability to rely on executive privilege?

22  A.  It says:  Despite this limited instruction, your letter

23  takes the inappropriate position that Mr. Bannon will not

24  comply with any request for information or testimony sought

25  by the Select Committee.  Moreover, Mr. Trump's stated,

1    quote, "intention to assert these executive privileges," end

2    quote, that may or may not belong to him does not provide a

3    legal basis for Mr. Bannon's refusal to comply with the

4    subpoena.

5    Q.  Let's look at Page 2 of Exhibit 5 again.  Can you please

6    read the two lines at the beginning of the last paragraph on

7    that page that I've just highlighted?

8    A.  It says:  Regardless of any purported privilege

9    assertion by Mr. Trump, Mr. Bannon has an ongoing obligation

10   to produce documents to the Select Committee.  Accordingly,

11   please produce all responsive documents and records

12   identified in the subpoena.

13   Q.  And going to the third page of this October 8th, 2021,

14   letter, can you please read the first sentence of the top

15   paragraph there that I've just highlighted?

16   A.  It says:  Finally, the Select Committee expects

17   Mr. Bannon's appearance at the time and place designated in

18   the subpoena for a deposition and respond fully to questions

19   by the Select Committee.

20   Q.  Can you please read the last paragraph of Government's

21   Exhibit 5?

22   A.  It says:  Please be advised that the Select Committee

23   will view Mr. Bannon's failure to respond to the subpoena as

24   willful noncompliance with the subpoena.  His willful

25   noncompliance with the subpoena would force the Select

1    Committee to consider invoking the contempt of Congress

2    procedures in 2 United States Code, Sections 192, 194, which

3    could result in a referral from the House to the Department

4    of Justice for criminal charges, as well as the possibility

5    of having a civil action to enforce the subpoena brought

6    against Mr. Bannon in his personal capacity.

7    Q.  So by October 8th, had the Committee told the Defendant

8    that the privilege he was claiming not to comply did not

9    provide a basis for him to refuse to show up for a

10   deposition?

11   A.  That's correct.

12   Q.  By October 8th, 2021, had the Committee told the

13   Defendant that his invocation of a privilege not to comply

14   did not provide a basis to withhold documents from the

15   Committee?

16   A.  That's correct.

17   Q.  And by October 8th, 2021, had the Committee warned the

18   Defendant that his failure to comply could result in a

19   referral for criminal prosecution?

20   A.  That's correct.

21   Q.  Did the Defendant offer to comply at that time?

22   A.  He did not.

23   Q.  Did the Committee send another letter to the Defendant

24   on October 15th, 2021?

25   A.  Yes.

1    Q.  And what was it the Committee told the Defendant in that

2    letter?

3    A.  The Committee told the Defendant that his failure to

4    comply would mean the Committee would have to consider a

5    contempt resolution.

6    Q.  Did the Defendant comply with the subpoena at any -- in

7    any way at that time?

8    A.  He did not.

9    Q.  What day was it that the House -- excuse me -- that the

10   Committee voted to refer the Defendant for criminal

11   prosecution?

12   A.  The Committee approved the resolution recommending

13   criminal prosecution on October 19th, 2021.

14   Q.  And did the Defendant -- did the Committee notify the

15   Defendant of that?

16   A.  Yes.

17   Q.  Did the Defendant offer to comply in any way with the

18   subpoena at that time?

19   A.  He did not.

20   Q.  What day was it that the House, the full House, voted to

21   refer the Defendant for criminal prosecution?

22   A.  October 21st, 2021.

23   Q.  Did the Committee notify the Defendant of that or was it

24   publicly available?

25   A.  It was a public proceeding.

1    Q.  Did the Defendant offer to comply at any time after

2    that?

3    A.  He did not.

4    Q.  Let's talk about this lawsuit that the Defendant cited

5    as a basis not to be held in contempt.

6              I'm showing you what's been admitted as

7    Government's Exhibit 8, Page 2.  The lawsuit is titled in

8    the letter *Donald J. Trump v. Bennie Thompson, et al.*  And I

9    believe you testified earlier that that lawsuit had to do

10   with the former president's claim of an executive privilege.

11   Is that right?

12   A.  That's correct.

13   Q.  Are you aware of whether this lawsuit has been resolved?

14   A.  It has.

15   Q.  And about how long has it been since it's been resolved?

16   A.  I believe the appeals court decided it in December 2021

17   and then the Supreme Court ruled in, I believe, January.

18   Q.  So January of 2022?

19   A.  I believe that's right.

20   Q.  So about how long before the Defendant's sudden offer to

21   comply was that?

22   A.  However long between the Supreme Court decision,

23   January, through last week.

24   Q.  About six months?

25   A.  Yes.

1    Q.  Are you aware of how that lawsuit was resolved?

2    A.  It was resolved in the Select Committee's favor.

3    Q.  Meaning they could get records that the former president

4    was trying to withhold?

5    A.  That's correct.

6    Q.  And did the Defendant offer to comply with the subpoena

7    in any way at that time?

8    A.  He did not.

9    Q.  The full House referred the Defendant for criminal

10   prosecution and he was actually charged.  Is that right?

11   A.  That's correct.

12   Q.  Are you aware of when about that happened?

13   A.  I believe it was November 2021.

14   Q.  November 2021?

15   A.  I believe around then.

16   Q.  And around that time, when the Defendant was criminally

17   charged, did he come and offer to comply in any way with the

18   subpoena?

19   A.  He did not.

20   Q.  So we're in November, December, January.  What about

21   February 2022?  Did the Defendant offer to comply at any

22   time in that month?

23   A.  He did not.

24   Q.  What about March 2022?

25   A.  No.

1    Q.  April 2022?

2    A.  No.

3    Q.  May 2022?

4    A.  He did not.

5    Q.  Ms. Amerling, are you aware that at some point the

6    Defendant tried to get the charges dismissed in the court?

7    A.  That's my understanding.  Yes.

8    Q.  And are you aware that that happened before the

9    Defendant's sudden offer of compliance on July 9th?

10   A.  Yes.

11   Q.  And when in relation to the start of this trial did this

12   sudden offer of compliance come?

13   A.  It came on July 9th, 2022.  I think it actually came

14   into my email inbox a little bit after midnight on July

15   10th.

16   Q.  And July 10th:  About how long ago -- how long before

17   trial was that?

18   A.  A matter of days.

19   Q.  And who is it that the Defendant is claiming has now

20   given him permission to comply with the subpoena?

21   A.  Former President Donald Trump.

22   Q.  Was former President Trump ever an official on the

23   Committee?

24   A.  He was not.

25   Q.  Was he ever a part of Congress at the time the Committee

```
 1    was operating?

 2    A.  He was not.

 3    Q.  Does the Committee answer to former President Trump?

 4    A.  No.

 5    Q.  And had the Committee told the Defendant that its

 6    position was that he had to comply regardless?

 7    A.  Yes.

 8    Q.  Ms. Amerling, let's talk about a couple of other things

 9    you discussed with Mr. Corcoran.

10             Do you recall that Mr. Corcoran asked you some

11    questions about whether there was a judge at the Committee's

12    depositions for witnesses?

13    A.  Yes.

14    Q.  Do judges sit on the Committee?

15    A.  They do not.

16    Q.  What part of our government are judges?

17    A.  They belong to the judicial branch.

18    Q.  Is that a separate branch of government from Congress?

19    A.  Yes, it is.

20    Q.  And in fact, does the Committee have procedures in place

21    for witnesses at depositions that want to invoke privileges

22    to protect their rights?

23    A.  Yes, it does.

24    Q.  Let's take a look at those, because I don't think

25    Mr. Corcoran showed them to you.
```

```
 1            Ms. Amerling, I'm showing you Page 10 of
 2    Government's Exhibit 2.  First of all, what is Page 10 of
 3    Government's Exhibit 2?
 4    A.  This shows the regulations that govern depositions.
 5    Q.  And I want to focus on Item 7 of these regulations that
 6    govern depositions.  And specifically, I'm highlighting a
 7    line in the middle of this.  Can you please read that line I
 8    just highlighted?
 9    A.  It says:  The witness may refuse to answer a question
10    only to preserve a privilege.
11    Q.  Would that include executive privilege?
12    A.  Potentially, yes.
13    Q.  And to be able to refuse an answer -- to be able to
14    refuse to answer a question based on a privilege, does the
15    witness have to be at the deposition?
16    A.  Yes.
17    Q.  And then do these regulations provide a procedure for
18    how the witness's privilege is decided?
19    A.  Yes.
20    Q.  I just highlighted a little bit more of that.  Can you
21    please read what I just highlighted for the jury?
22    A.  It says:  When the witness has refused to answer a
23    question to preserve a privilege, members or staff may,
24    number one, proceed with the deposition; or, number two,
25    either at that time or at a subsequent time seek a ruling
```

1    from the chair either by telephone or otherwise.  If the

2    chair overrules any such objection and thereby orders a

3    witness to answer any question to which an objection was

4    lodged, the witness shall be ordered to answer.

5    BY MS. VAUGHN:

6    Q.  And these --

7              MR. CORCORAN:  Your Honor, could we have a

8    sidebar?

9              THE COURT:  Yes.

10             (Whereupon, the following proceedings were had at

11   sidebar outside the presence of the jury:)

12   ███████████████████████████████████

13   ██████████████████████████████

14   █████████████████████████████████████████

15   ███████████████████████████████████████████

16   █████████████████████████████████████████

17   ████████████████████████████████████████

18   █████████████████████████████████████████

19   █████████

20   ████████████████████████████████████

21   ███████████████████████████████████████████

22   █████████████████████████████████████████

23   ██████████████████

24   █████████████████

25   ██████████████████████████████████████

Amerling - REDIRECT - By Ms. Vaughn



1

2

3

4

5

6

7

8          (Whereupon, the following proceedings were had in

9     open court:)

10    BY MS. VAUGHN:

11    Q.  Ms. Amerling, who presides over the Committee's

12    proceedings and makes decisions about what is and is not

13    allowed?

14    A.  The chairman.

15    Q.  Does former President Trump?

16    A.  He does not.

17    Q.  Ms. Amerling, Mr. Corcoran asked you a lot of questions

18    about whether you had written letters or other staff or what

19    have you.

20          Do you have authority to send letters that have

21    not been approved by the Committee?

22    A.  Not letters that are signed by the chairman.  No.

23    Q.  And so when you send a letter, who is it sent on behalf

24    of?

25    A.  I'm sorry.  What's your question?

1    Q.  When you send a letter, when you sent the letters to the

2    Defendant, who was it sent on behalf of?

3    A.  Sent on behalf of the Committee.

4    Q.  Mr. Corcoran asked you several questions about whether

5    the Committee would have referred the Defendant for contempt

6    if he had produced documents at 11:00 a.m. on October 7th

7    instead of 10:00 a.m.  I want to ask you a couple followups

8    on that.

9            The original deadline in the subpoena was 10:00

10   a.m. on October 7.  Had the Committee heard anything from

11   the Defendant by that time?

12   A.  No.

13   Q.  What I mean by that is, did the Committee receive any

14   communications from the Defendant that he needed more time?

15   A.  No.

16   Q.  Did the Committee receive any communications from the

17   Defendant that he would like to find an alternative way to

18   provide documents?

19   A.  No.

20   Q.  And does the fact that a witness provides documents two

21   hours after the deadline, does that change the fact that the

22   deadline was at 10:00 a.m.?

23   A.  It does not.

24   Q.  But the Defendant, has he ever produced documents?

25   A.  No.

1    Q.  Mr. Corcoran asked you several questions about whether

2    witnesses sometimes appear later than the date that's set

3    for their deposition.

4                Do you remember those questions?

5    A.  I do.

6    Q.  What are the circumstances under which witnesses appear

7    later?  Is it because they just choose on their own to show

8    up later or is there something else going on?

9    A.  There can be a variety of reasons.  Sometimes a witness

10   is looking for representation and needs a little bit of time

11   to find an attorney.  Sometimes a witness has a scheduling

12   conflict with a specific time that is stated in the

13   subpoena, so we look to arrange a different time.

14   Q.  And in those circumstances, do the witnesses reach out

15   to the Committee and tell them that they'd like to find

16   another date that will work because they have some kind of

17   logistical obstacle?

18   A.  That's right.

19   Q.  Did the Defendant ever reach out to the Committee and

20   tell the Committee that he had a logistical issue that

21   needed to be resolved?

22   A.  He did not.

23   Q.  Mr. Corcoran asked you several questions about whether

24   you had engaged in negotiation with Mr. Costello.

25                Do you recall those questions?

1    A.   Generally, yes.

2    Q.   And we're talking about just finding different dates.

3    I'm showing you Government's Exhibit 4.   This is the

4    Defendant's October 7th letter to the Committee.

5             Is there anywhere in the October 7th letter to the

6    Committee from the Defendant where he tells the Defendant he

7    just would like to negotiate new dates?

8    A.   No.

9    Q.   And instead, what is it that he tells the Committee on

10   the second page of the letter that I'm highlighting right

11   here?

12   A.   He says:   As such, until these issues are resolved, we

13   are unable to respond to your request for documents and

14   testimony.

15   Q.   And what was the issue that had to be resolved?

16   A.   Executive privilege.

17   Q.   And when did the Committee resolve that issue with

18   respect to the Defendant's claim that it excused him?

19   A.   The Committee replied regarding its position on

20   executive privilege in a letter on October 8th and

21   reiterated that position in subsequent communications.

22   Q.   Now, even though the Committee resolved the objection by

23   October 8th, did the Defendant comply at any point after

24   that?

25   A.   He did not.

```
 1              MS. VAUGHN:  The Court's indulgence.
 2   BY MS. VAUGHN:
 3   Q.  Ms. Amerling, the Defendant asked you several questions
 4   about a book club you're in with Ms. Gaston.  I just want to
 5   clarify.  How long has it been since you all have actually
 6   attended this together?
 7   A.  And I honestly can't remember the last time our paths
 8   crossed through book group, because I haven't attended for
 9   the past year and I don't think that she had attended for
10   quite a while before then.  But I can't give you an exact
11   date.
12   Q.  And do you have any personal relationship or friendship
13   with Ms. Gaston?
14   A.  I do not.
15   Q.  And does Ms. Gaston have any bearing on your work or the
16   Committee's work?
17   A.  No.
18   Q.  Or on your testimony here today?
19   A.  No.
20   Q.  Mr. Corcoran asked you several questions about who
21   you've worked for in Congress.  And you testified earlier
22   that you have worked on a number of investigations and
23   oversight matters.
24              Are the investigations that you worked on always
25   partisan?
```

1    A.  No.  Sometimes the investigations have involved

2    collaboration between the leading Republican on the

3    Committee and the leading Democrat.  At other times, they've

4    taken different positions.

5    Q.  And on this Committee, do you support the work of just

6    one member of the Committee or all members of the Committee?

7    A.  I support the work of the entire Committee.

8    Q.  And does the entire Committee -- do they come from one

9    political party or multiple political parties?

10   A.  There are both Republican and Democratic members on the

11   Select Committee.

12   Q.  Ms. Amerling, do you believe that finding out what

13   happened on January 6th and why is a political or partisan

14   issue?

15   A.  I do not.

16            MS. VAUGHN:  Nothing further, your Honor.

17            MR. CORCORAN:  Your Honor, we have no further

18   questions of this witness.  Thank you.

19            THE COURT:  Thank you.

20            Ms. Amerling, you may be excused.  Thank you very

21   much for your testimony.

22            THE WITNESS:  Thank you, your Honor.

23            (Witness excused.)

24            THE COURT:  Here's what I'd like to do:

25   Ms. Vaughn, are you ready with your next witness?

Amerling - REDIRECT - By Ms. Vaughn

```
 1                    MS. VAUGHN:  We are, your Honor.

 2                    THE COURT:  So I'd like to take just one more

 3      brief recess.  We'll come back and do roughly an hour.

 4                    There is one scheduling issue that I need to --

 5      that I'm going to address and hopefully have guidance either

 6      at 4:00 when we come back or at 5:00.

 7                    MS. VAUGHN:  Thank you, your Honor.

 8                    THE COURT:  It'll relate to tomorrow's schedule.

 9      Thank you.

10                    (Whereupon, the jury exited the courtroom at 3:47

11      p.m. and the following proceedings were had:)

12                    THE COURT:  Are we ready to proceed, Ms. Vaughn?

13                    MS. VAUGHN:  We are, your Honor.

14                    THE COURT:  Let's bring the jury in, then, please.

15                    (Whereupon, the jury entered the courtroom at 4:10

16      p.m. and the following proceedings were had:)

17                    THE COURT:  Welcome back, ladies and gentlemen.

18                    Ms. Gaston.

19                    MS. GASTON:  Thank you, your Honor.

20                    The Government calls Special Agent Stephen Hart to

21      the stand.

22                    MS. GASTON:  Your Honor, if I may, while he's

23      coming, I have a binder of exhibits that all the parties

24      have.  It's a subset.

25                    THE COURT:  They're on the Government's exhibit
```

```
 1    list?
 2              MS. GASTON:  Yes, your Honor.
 3              THE COURT:  Very well.
 4              MS. GASTON:  (Places binder on the witness stand.)
 5              (Thereupon, the witness entered the courtroom and
 6    the following proceedings were had:)
 7              THE COURT:  Good afternoon.
 8              THE WITNESS:  Good afternoon, your Honor.
 9              THE COURT:  Ms. Lesley?
10              STEPHEN HART, GOVERNMENT WITNESS, SWORN.
11                        DIRECT EXAMINATION
12    BY MS. GASTON:
13    Q.  Good afternoon, Agent Hart.  Can you please introduce
14    yourself to the jury and spell your name?
15    A.  Certainly.  My name is Stephen Hart, S-T-E-P-H-E-N
16    H-A-R-T.
17    Q.  And how are you employed?
18    A.  I'm a special agent with the FBI.
19    Q.  And what do you do for the FBI?
20    A.  I investigate federal public corruption cases out of the
21    Washington field office.
22    Q.  Did you work on the investigation into whether Stephen
23    K. Bannon failed to comply with a congressional subpoena?
24    A.  Yes, I did.
25    Q.  Did your investigation include reviewing the Defendant's
```

 1    public statements regarding a subpoena from the Committee?

 2    A.  Yes, it did.

 3              MS. GASTON:  Showing to the witness, please, what

 4    has been marked as Government's Exhibit 10.

 5    BY MS. GASTON:

 6    Q.  Agent Hart, what is Government's Exhibit 10?

 7    A.  Exhibit 10 is a screenshot from Steve Bannon's Getter

 8    page.  That's G-E-T-T-E-R.

 9    Q.  And what is Getter?

10    A.  Getter is a social media in the form similar to Twitter

11    in which people can establish accounts, post --

12              MR. SCHOEN:  Your Honor, if I may, we have

13    outstanding objections.

14              THE COURT:  Not yet.

15              MR. SCHOEN:  No.

16              THE COURT:  Let's lay the foundation and we'll

17    have the Government move to admit it.  We'll take that up.

18              THE WITNESS:  It's a social media platform where

19    individuals and organizations can establish pages where they

20    can put statements, opinions, links to different things

21    along the internet.

22    BY MS. GASTON:

23    Q.  And have you reviewed the Defendant's Getter account?

24    A.  Yes, I have.

25    Q.  Is it a verified Getter account?

1    A.  Yes, it is.

2    Q.  And what does that mean?

3    A.  A verified account under the terms for which Getter uses

4    means that it's been through a process that Getter holds

5    somewhat close, but essentially validates the account as

6    being trustworthy.

7    Q.  And, Agent Hart, is Government's Exhibit 10 a fair and

8    accurate depiction of a post that you viewed on the

9    Defendant's Getter account?

10   A.  Yes, it is.

11            MS. GASTON:  Your Honor, I'd move to admit

12   Government's Exhibit 10 into evidence and publish to the

13   jury.

14            MR. SCHOEN:  Objection.

15            THE COURT:  Would you like to pick up the phones?

16            MR. SCHOEN:  Yes.

17            (Whereupon, the following proceedings were had at

18   sidebar outside the presence of the jury:)

19   ██████████████████████████████████████████████████████

20   ████████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   █████████████████████████████████████████████████

25   ████████████████████████████████████████████









19        (Whereupon, the following proceedings were had in

20   open court:)

21        MS. GASTON:  Thank you, your Honor.  The

22   Government moves that that be admitted into evidence and be

23   published to the jury.

24        THE COURT:  Government's Exhibit 10 is entered

25   into evidence and may be published to the jury.

Hart - DIRECT - By Ms. Gaston

```
 1                    (Whereupon, Government's Exhibit No. 10 was
 2        entered into evidence.)
 3        BY MS. GASTON:
 4        Q.  Agent Hart, do you see the screenshot in front of you?
 5        A.  Yes, I do.
 6                    MS. GASTON:  Ms. Dunn-Gordon, could we please zoom
 7        in on the part above the photograph in this post.
 8        BY MS. GASTON:
 9        Q.  So do you see the Defendant's photograph there on the
10        left?
11        A.  Yes, I do.
12        Q.  And then his name?
13        A.  Yes.
14        Q.  And then there's a red V.  What does that mean?
15        A.  That is the symbol used by Getter to show that an
16        account has been verified.
17        Q.  And is the @ sign a handle on Getter?
18        A.  Yes.
19        Q.  And what is the Getter associated with the Defendant's
20        account?
21        A.  The Getter handle is @SteveBannon.
22        Q.  What date did the Defendant make this post?
23        A.  This would be September 24th, 2021.
24        Q.  And when you were looking at the Defendant's Getter
25        account overall, did you see links that went from the Getter
```

Hart - DIRECT - By Ms. Gaston

1     page to other -- to any other page?

2     A.  Yes.

3     Q.  And what does the Defendant's Getter page link to?

4     A.  His Getter page predominantly links to another page for

5     his podcast, for the War Room.

6     Q.  Thank you, Agent Hart.

7              So looking at this post in particular on September

8     24th, 2021, what did the Defendant post?

9     A.  The statement that was posted is:  "The Bannon subpoena

10    is just the beginning.  Congress's January 6 investigation

11    is going big."

12             MS. GASTON:  Ms. Dunn-Gordon, can we zoom in on

13    the photograph and the content below it.

14             Thank you.

15    BY MS. GASTON:

16    Q.  Agent Hart, what was below that caption at the top of

17    the Defendant's post?

18    A.  Below that caption appears to be a picture of the U.S.

19    Capitol on January 6th.  And there is another title, a link

20    to an article on rollingstone.com.

21             MS. GASTON:  And then zooming out again,

22    Ms. Dunn-Gordon, please.

23    BY MS. GASTON:

24    Q.  Just to orient us in time again, Agent Hart, what day

25    was the Defendant issued a subpoena by the Select Committee?

1    A.  It was on September 23rd, 2021, the day before this

2    posting.

3    Q.  And what date did the Defendant's attorney accept

4    service?

5    A.  The 23rd.

6            MS. GASTON:  With your Honor's permission, I'm

7    just going to go add to the timeline.

8            THE COURT:  Very well.

9            MS. GASTON:  Thank you.

10   BY MS. GASTON:

11   Q.  All right, Agent Hart.  Showing to you only what's been

12   marked as Government's Exhibit 11-A, what is Government's

13   Exhibit 11-A?

14   A.  This is another Getter post from Steve Bannon's account

15   dated October 8th.  It's titled -- or the statement within

16   the posting is:  "Steve Bannon tells the January 6 Select

17   Committee that he will not comply with their subpoena."

18   Q.  First, Agent Hart, is this exhibit a fair and accurate

19   depiction of a post that you saw on the Defendant's Getter

20   account?

21   A.  Yes, it is.

22           THE COURT:  Just in the future, if you could

23   refrain from quoting from the documents until they've been

24   admitted in evidence.

25           THE WITNESS:  Certainly.

```
 1                    THE COURT:  Thank you.

 2                    THE WITNESS:  Thank you.  Sorry, your Honor.

 3                    MS. GASTON:  Your Honor, I would move to enter it

 4          into evidence and publish it to the jury.

 5                    THE COURT:  Government's Exhibit 11-A is admitted.

 6                    (Whereupon, Government's Exhibit No. 11-A was

 7          entered into evidence.)

 8                    THE COURT:  Mr. Schoen, your continuing objection

 9          is noted.

10                    MS. GASTON:  Ms. Dunn-Gordon, if we could zoom in

11          on the top of this document, please.

12                    Thank you.

13          BY MS. GASTON:

14          Q.  What was the date of this post, Agent Hart?

15          A.  This posting was October 8th, 2021.

16          Q.  And recalling the subpoena, how does October 8th, 2021,

17          relate to when the subpoena required the Defendant to

18          produce documents to the Committee?

19          A.  The subpoena required the Defendant to produce documents

20          on October 7th, 2021, the day before this posting.

21          Q.  And what is the caption of this post?

22          A.  This posting is captioned with "Steve Bannon tells the

23          January 6th Select Committee that he will not comply with

24          their subpoena."

25                    MS. GASTON:  If we could zoom out,
```

Hart - DIRECT - By Ms. Gaston

 1      Ms. Dunn-Gordon.  Could we look at the picture and the link?

 2              Thank you.

 3      BY MS. GASTON:

 4      Q.  There's a graphic there, Special Agent Hart.  Who's on

 5      the left?

 6      A.  That would be Steve Bannon.

 7      Q.  Who's on the right?

 8      A.  Former President Donald Trump.

 9      Q.  And then in the middle there is in very, very, very

10      small rendering what appears to be a letter.  Do you

11      recognize that letter?

12      A.  I do.

13      Q.  And what is that letter?

14      A.  That is a letter authored by Mr. Bannon's previous

15      attorney, Robert Costello.

16      Q.  And looking at the link, what does the link say?

17      A.  Could you say that one more time?

18      Q.  Sorry.  Looking at the link, what does the link below

19      the graphic say?

20      A.  The link below the graphic says, "Steve Bannon:  I stand

21      with Trump and the Constitution."  Then it has a link to an

22      article in the dailymail.co.uk.

23      Q.  Have you reviewed that link, Special Agent Hart?

24      A.  Yes, I have.

25      Q.  Showing to you only Government's Exhibit 11-B, what is

1   Government's Exhibit 11-B generally?

2   A.  Generally speaking, that is a copy of the article on the

3   *Daily Mail* website linked from the October 8th posting on

4   Getter.

5   Q.  Is that a fair and accurate depiction of the article as

6   you saw it when you followed the link?

7   A.  Yes, it is.

8           MS. GASTON:  Your Honor, I would move to admit

9   Government's Exhibit 11-B into evidence and publish it to

10  the jury.

11          THE COURT:  Government's Exhibit 11-B is also

12  admitted and may be published to the jury.

13          (Whereupon, Government's Exhibit No. 11-B was

14  entered into evidence.)

15          MS. GASTON:  Ms. Dunn-Gordon, could we zoom in on

16  the top above the graphic, please.

17          Thank you.

18  BY MS. GASTON:

19  Q.  Special Agent Hart, what is the date of this article?

20  A.  The date of this article is October 8th, 2021.

21  Q.  And the headline is what?

22  A.  The headline is:  Steve Bannon says, quote, "I stand

23  with Trump," end quote, as he tells January 6 Committee he

24  will not comply with subpoena.

25  Q.  And then moving on to Page 2 of this article --

```
 1              MS. GASTON:  If we could look at the first
 2    paragraph and the quote below it, please, Ms. Dunn-Gordon.
 3    BY MS. GASTON:
 4    Q.  Special Agent Hart, can you please read what appears on
 5    the screen?
 6    A.  Certainly.  "Former White House strategist Steve Bannon
 7    on Friday said he stood solidly with former President Trump
 8    and will not be cooperating with its investigation into the
 9    January 6 attack on the U.S. Capitol.  Quote:  'I stand with
10    Trump and the Constitution,' he told dailymail.com."
11    Q.  Thank you, Agent Hart.
12              MS. GASTON:  Your Honor, with your permission I'm
13    just going to add to the timeline quickly.
14              THE COURT:  Yes.
15              MS. GASTON:  Thank you.
16    BY MS. GASTON:
17    Q.  Agent Hart, in the course of your investigation, did you
18    have the opportunity to speak with Robert Costello?
19    A.  Yes, I did.
20    Q.  And who was Mr. Costello?
21    A.  Mr. Costello was an attorney for Mr. Bannon.
22    Q.  And when did you speak with Mr. Costello?
23    A.  The first time I spoke with Mr. Costello was on November
24    3rd, 2021.
25    Q.  And who was Mr. Costello as to the Defendant when you
```

1    spoke with him?

2    A.  At that time, he was representing Mr. Bannon.

3    Q.  And what were the circumstances under which you spoke

4    with him?

5    A.  Mr. Costello had reached out to the United States

6    Attorney's Office via memo and requested a meeting and a

7    discussion with the U.S. Attorney's Office regarding his

8    status as Mr. Bannon's attorney and his desire to advise the

9    U.S. Attorney's Office they should not prosecute Mr. Bannon.

10   Q.  And did he want to bring facts related to Mr. Bannon's

11   case to the United States Attorney's Office's attention?

12   A.  Yes.

13   Q.  And was he doing so as the Defendant's attorney?

14   A.  Yes, he was.

15   Q.  Did Mr. Costello offer to send the United States

16   Attorney's Office a written explanation about the facts and

17   circumstances leading to the Defendant's noncompliance with

18   the subpoena?

19   A.  Yes.  He sent a memo over.

20   Q.  And did he indicate to the U.S. Attorney's Office that

21   he was checking with the Defendant on that written

22   submission?

23   A.  Yes.

24   Q.  Did he also offer to meet and explain the facts leading

25   to the Defendant's noncompliance via videoconference with

1    the United States Attorney's Office?

2    A.  Yes, he did.

3    Q.  Did you and attorneys from the United States Attorney's

4    Office take him up on that offer?

5    A.  Yes, we did.

6    Q.  In the course of that, did he explain the facts

7    underlying the Defendant's noncompliance?

8    A.  Yes.

9    Q.  First, can you remind the jury of when Mr. Costello

10   accepted service of the subpoena from the Committee?

11   A.  Mr. Costello accepted service of the subpoena on

12   September 23rd, 2021.

13   Q.  Did he accept it on -- okay.  One moment, Agent Hart.

14   I'm going to show you something to refresh your

15   recollection.

16           Agent Hart, can I show you Government's Exhibit 3,

17   which has been admitted.

18   A.  Yes.

19   Q.  Do you see that email?

20   A.  Yes, I do.

21   Q.  When did Mr. Costello accept service of the subpoena?

22   A.  That would be September 24th.  My apologies.  One day

23   later.

24   Q.  Thank you.

25           And, Agent Hart, when you spoke with Mr. Costello,

1    did he indicate that he had then passed the subpoena on to

2    the Defendant?

3    A.  Yes, he had.

4    Q.  And can you remind the jury when the document deadline

5    for the subpoena was?

6    A.  The document deadline was October 7th, 2021.

7    Q.  And when he spoke with you, did Mr. Costello say whether

8    he and the Defendant had gathered any documents by the

9    October 7th, 2021, deadline for the Committee's subpoena?

10   A.  He said they had not gathered any documents by that

11   point.

12   Q.  And did Mr. Costello state whether he had provided the

13   Defendant with the Committee's follow-up letters regarding

14   the Defendant?

15   A.  Yes, he had.

16   Q.  He stated whether he had?

17   A.  Yeah.  He provided the letters to Mr. Bannon.

18   Q.  And what did Mr. Costello say about the Defendant's

19   involvement in the process regarding the subpoena generally?

20   A.  He said he was fully engaged throughout the entire

21   process.

22   Q.  Did Mr. Costello discuss with you the Defendant's reason

23   for not providing documents and not providing testimony?

24   A.  Yes.

25   Q.  And you're aware that in communications with the

Hart - DIRECT - By Ms. Gaston

     1    Committee, he told the Committee that the reason was related

     2    to executive privilege?

     3    A.   That's correct.

     4    Q.   In his discussions with you and other government

     5    representatives, did he give any other reason?

     6    A.   No, he did not.

     7    Q.   Did he suggest that the dates on the subpoena had moved?

     8    A.   No.

     9    Q.   Did he suggest that the Defendant was mistaken about the

    10    deadlines?

    11    A.   No.

    12    Q.   Did he suggest that he and the Defendant thought the

    13    dates were malleable?

    14    A.   No.

    15    Q.   Did he ever suggest that he was negotiating for a

    16    different date?

    17    A.   No.

    18    Q.   Did he ever say that if the Committee set another date,

    19    he would come?

    20    A.   No.

    21             MR. SCHOEN:  Your Honor, objection.

    22             THE COURT:  Would you like to go sidebar?

    23             MR. SCHOEN:  Yes.

    24             (Whereupon, the following proceedings were had at

    25    sidebar outside the presence of the jury:)



```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20        (Whereupon, the following proceedings were had in
21   open court:)
22            THE COURT:  We're back on the fully public record.
23            MS. GASTON:  Nothing further, your Honor.
24            THE COURT:  Thank you.
25            Mr. Corcoran.
```

1          MR. CORCORAN:  Thank you, your Honor.

2                    CROSS-EXAMINATION

3     BY MR. CORCORAN:

4     Q.  Agent Hart, good afternoon.

5     A.  Good afternoon, Mr. Corcoran.

6     Q.  I had a couple questions just to follow up on what you

7     were asked about your investigation and what you did and

8     didn't do.

9               First, I want to ask you about these Getter posts.

10    I think one is Government's Exhibit No. 10.

11              MR. CORCORAN:  If we could pull that up, please.

12    BY MR. CORCORAN:

13    Q.  Agent Hart, you're not suggesting to the jury that

14    anything on Government's Exhibit 10 is Steve Bannon's words,

15    are you?

16    A.  I'm attesting to what's in Government's Exhibit 10 is

17    what's being shown on his Getter page.

18    Q.  I just want to make clear, the words at the very top

19    that say, "The Bannon subpoena is just the beginning.

20    Congress's Jan. 6 investigation is going big," these aren't

21    Steve Bannon's words.  Correct?

22    A.  I don't know if they're his words or if they're words

23    that were written by someone else to whom he gave access to

24    his Getter account.

25    Q.  So you think that the statement "The Bannon subpoena is

1    just the beginning.  Congress's Jan. 6 investigation is

2    going big" was written by Mr. Bannon or somebody who works

3    with Mr. Bannon and put on Getter?

4    A.  That's a possibility.  Yes.

5    Q.  I'm going to show you what's been marked for

6    identification purposes as Defendant's Exhibit No. 39.

7              And is Defendant's Exhibit No. 39 an article from

8    *Rolling Stone* online dated September 24, 2021?

9    A.  Yes, it is.

10   Q.  And is the headline of that *Rolling Stone* article "The

11   Bannon subpoena is just the beginning.  Congress's Jan. 6

12   investigation is going big"?

13   A.  Yes.

14   Q.  And in that *Rolling Stone* article, is there a picture

15   that is the exact same picture as Government's Exhibit No.

16   10 that was just offered into evidence by the Government?

17   A.  They appear to be similar.  Yes.

18   Q.  Okay.

19              MR. CORCORAN:  Your Honor, we'd move Defendant's

20   Exhibit No. 39 into evidence.

21              MS. GASTON:  No objection.

22              THE COURT:  Defendant's Exhibit 39 is admitted and

23   can be published to the jury.

24              (Whereupon, Defendant's Exhibit No. 39 was entered

25   into evidence.)

1    BY MR. CORCORAN:

2    Q.  Agent Hart, a minute ago you said that you thought that

3    the top statement, "The Bannon subpoena is just the

4    beginning.  Congress's Jan. 6 investigation is going big" in

5    Government's Exhibit No. 10 are the words of Steve Bannon or

6    somebody associated with Steve Bannon.  Do you remember that

7    testimony?

8    A.  I do.

9    Q.  Did you when you pulled up the electronic information on

10   the Getter account click through what's on the bottom of

11   Government's Exhibit 10, which is an internet link to

12   rollingstone.com?

13   A.  Yes.

14   Q.  And this is the article that popped up.  Correct?

15   A.  That's correct.

16   Q.  So these are not -- these are not the words of

17   Mr. Bannon.  Correct?

18   A.  The title of this article could easily be copied and

19   pasted into the Getter account for Mr. Bannon to make it

20   appear as though they are his words or the words of someone

21   else who might have control over his account.

22   Q.  Let's look at the next exhibit, which is Government's

23   Exhibit 11-A.  I'm going to ask you the same question:

24   Under the words Steve Bannon at the top, it says "Steve

25   Bannon tells the January 6 Select Committee that he will not

1    comply with their subpoena."

2           My question is:  Are you suggesting to this jury

3    that those are the words of Steve Bannon?

4    A.  What I'm suggesting to the jury is those are the words

5    associated with his Getter account to which either he or

6    someone who probably works with him has access.

7    Q.  To be more precise, are you trying to tell the jury that

8    Steve Bannon stated the words "Steve Bannon tells the

9    January 6 Select Committee that he will not comply with

10   their subpoena"?

11   A.  Based upon this posting, what I'm saying is the Getter

12   account shows that those are the words affiliated with his

13   account at that time.

14   Q.  I'm going to show you what's been marked as Defense

15   Exhibit No. 40 for identification purposes, Agent Hart.  I'm

16   going to ask you, is this a *Daily Mail* article that is dated

17   July 20, 2022 -- I'm sorry -- a *Daily Mail* article that's

18   dated October 8, 2021?

19   A.  Yes, it is.

20   Q.  And in this article, does it state --

21           THE COURT:  Mr. Corcoran, let's deal with whether

22   we're going to admit this first and then -- before you read

23   it to the jury.

24   BY MR. CORCORAN:

25   Q.  Does this appear to be the same article that is related

1    to Government's Exhibit 11-A?

2    A.  Yes; in a different format than how I saw it.  But I

3    imagine that's --

4            MR. CORCORAN:  Your Honor, we'd move to admit

5    Defendant's Exhibit No. 40.

6            MS. GASTON:  No objection.

7    BY MR. CORCORAN:

8    Q.  Now --

9            THE COURT:  Defendant's Exhibit No. 40 is admitted

10   and may be published to the jury.

11           (Whereupon, Defendant's Exhibit No. 40 was entered

12   into evidence.)

13   BY MR. CORCORAN:

14   Q.  My question is this, Agent Hart:  The headline of the

15   *Daily Mail* article reads after the colon "Steve Bannon tells

16   the January 6 Select Committee that he will NOT, in capital

17   letters, comply with their subpoena."

18           And is that the same language that was in

19   Government's Exhibit 11-A?

20   A.  Yes.  It appears to be.

21   Q.  In other words, this is just -- did you click through

22   the link in Mr. Bannon's Getter account to get to the *Daily*

23   *Mail* article?

24   A.  Yes.

25   Q.  So is it fair to say that basically what you're saying

1    in terms of your testimony about these articles is that

2    somebody simply posted -- reposted another article on

3    Mr. Bannon's Getter page?  Is that what you're saying,

4    basically?

5    A.  Yeah.  Those are what the links are on the Getter page

6    postings that we looked at.

7    Q.  Let me ask you about some of the interviews that you

8    did.

9           You said that you participated in a meeting with

10   Bob Costello, who's the lawyer for Steve Bannon.  Correct?

11   Where did that meeting take place?

12   A.  It was a virtual meeting over WebEx.

13   Q.  And were you -- did your face appear on the screen so

14   that Costello and others could see?

15   A.  No, it did not.

16   Q.  So you were essentially off-screen.  Correct?

17   A.  Yes.  My -- you know, essentially a black box shows as

18   opposed to my face with my name underneath.

19   Q.  And who asked the questions during that meeting with Bob

20   Costello?

21   A.  Primarily the assistant U.S. attorneys.

22   Q.  And you're familiar in your cases with instances where

23   defense lawyers will meet with --

24           MS. GASTON:  Objection, your Honor.

25           THE COURT:  Let's let the question finish.

```
 1   BY MR. CORCORAN:
 2   Q.  You're familiar in your job with meetings where defense
 3   lawyers meet with prosecutors to try to convince them not to
 4   bring a criminal case.  Correct?
 5   A.  Yes.
 6   Q.  Those are called proffer meetings sometimes.  Correct?
 7              MS. GASTON:  Objection, your Honor.  Relevance.
 8              THE COURT:  Overruled.
 9              THE WITNESS:  Yes, they are.
10   BY MR. CORCORAN:
11   Q.  And at those meetings, the defense lawyer tries to
12   explain the evidence and the reasons why the prosecutor
13   should not bring a criminal case.  Right?
14   A.  Yes.
15   Q.  Okay.  Do you in those kinds of cases consider that an
16   FBI interview of the defense lawyer?
17              MS. GASTON:  Objection.
18              THE COURT:  Let's go on a sidebar.
19              (Whereupon, the following proceedings were had at
20   sidebar outside the presence of the jury:)
21   ███████████████████████████████████████████
22   ███████████████████████████████████████
23   ███████████████████████████████████████████
24   █████████████████
25   ███████████████████████████████████████████
```

Hart - CROSS - By Mr. Corcoran





1

2

3

4

5

6

7

8

9

10

11

12

13

14

15      (Whereupon, the following proceedings were had in

16  open court:)

17          THE COURT:  We're back from the under-seal portion

18  or the husher.

19  BY MR. CORCORAN:

20  Q.  Focusing back on when you participated in a discussion,

21  you said it was virtual that involved prosecutors in this

22  case, you and Robert Costello, the lawyer for Mr. Bannon.

23  Let me ask you a question.  And that is, have you

24  participated in similar meetings where the defense lawyer is

25  providing information to the Government in order to persuade

1   them, if possible, not to bring a criminal case?

2   A.  Yes.

3   Q.  And you understand that in those settings, the defense

4   lawyer sometimes doesn't give all the information that they

5   have.  Correct?

6   A.  That has happened.

7   Q.  Okay.  Let me ask you about your interview -- because

8   one of the other witnesses that has appeared that you

9   interviewed was Ms. Amerling, Kristin Amerling.  Did you

10  participate in that interview?

11  A.  Yes, I did.

12          MS. GASTON:  Objection, your Honor.  Scope.

13          MR. CORCORAN:  It's an investigation.

14          THE COURT:  This goes to the scope of the

15  investigation?

16          MR. CORCORAN:  Yes.

17          THE COURT:  I'll allow a couple questions.

18  BY MR. CORCORAN:

19  Q.  When you spoke with -- when you were questioning

20  Ms. Amerling, were you trying to learn what you could about

21  the facts to determine whether or not a crime of contempt of

22  Congress had been committed?

23          MS. GASTON:  Objection, your Honor.  Scope.  This

24  is outside the scope of direct.

25          THE COURT:  I understood the objection before to

1    be about scope of direct.

2              I'm going to allow a little leeway here.  So

3    overruled.

4              THE WITNESS:  Would you repeat the question?  I'm

5    sorry.

6    BY MR. CORCORAN:

7    Q.  Was your goal in interviewing Kristin Amerling to learn

8    about facts that bear on whether a crime was committed here?

9    A.  The goal or the discussion with Ms. Amerling was to get

10   her interpretation of the events as she understood them and

11   to provide any potential information she may have relevant

12   to the case.

13   Q.  Did you impress upon her that it was important to be

14   truthful and forthcoming about information that dealt with

15   your investigation of this matter?

16             MS. GASTON:  Objection, your Honor.  Improper

17   attempted impeachment.

18             THE COURT:  Improper attempted impeachment.

19   Sustained.

20   BY MR. CORCORAN:

21   Q.  When you interview any witness, do you try to determine

22   whether that person has a bias?

23   A.  I would imagine that everyone we speak to has a bias of

24   some kind.

25   Q.  And is --

1           MS. GASTON:  Objection, your Honor.  This is

2     improper as to -- it's improper to try to impeach other

3     witnesses through this witness.

4           MR. CORCORAN:  We can go on the husher if you

5     want, your Honor, and talk.

6           THE COURT:  I'm going to allow the question.

7           Objection overruled.

8     BY MR. CORCORAN:

9     Q.  Did you learn in that interview that Ms. Amerling has

10    known the prosecutor for 15 years?

11    A.  No.  I don't think so.

12    Q.  Now, I want to ask about other potential witnesses that

13    you spoke with to try to determine whether or not the crime

14    of contempt of Congress took place here.  Okay?

15          MS. GASTON:  Objection, your Honor.  Relevance and

16    scope.

17          THE COURT:  What's the question?  Is there a

18    question?

19          MR. CORCORAN:  It was a heading.

20          I'd like to ask the witness about --

21          THE COURT:  What's the question?

22    BY MR. CORCORAN:

23    Q.  The question is, sir:  Did you interview for purposes of

24    this case the 200-plus members of Congress who voted not to

25    refer Stephen Bannon to the U.S. Attorney's Office for

```
 1    contempt of Congress?
 2              MS. GASTON:  Objection.  Relevance and scope.
 3              THE COURT:  The objection is sustained.  The
 4    jury --
 5              You don't have to answer the question.
 6              MR. CORCORAN:  Thank you, your Honor.
 7              THE COURT:  Thank you.
 8              Ms. Gaston, any redirect?
 9              MS. GASTON:  Just very briefly, your Honor.
10                    REDIRECT EXAMINATION
11    BY MS. GASTON:
12    Q.  Agent Hart, Mr. Corcoran asked you some questions about
13    whether you knew certain words were the Defendant's.
14              Do you remember that?
15    A.  Yes, I do.
16    Q.  Looking at Exhibit 11-B, the second page, there's a
17    quote from the Defendant.
18              THE COURT:  Is there a question?
19              MS. GASTON:  I'm just waiting for it to appear.
20    Sorry.
21              THE COURT:  Oh, I apologize.
22    BY MS. GASTON:
23    Q.  There's a quote there from the Defendant.  Right?
24    A.  Yes, there is.
25    Q.  And those are his words.  Right?
```

1    A.  Yes, they are.

2    Q.  And what did he say?

3    A.  He said, "I stand with Trump and the Constitution."

4    Q.  And last question, Agent Hart:  In your experience in

5    conversations in which attorneys try to convince the

6    Government not to charge their clients, do they go to

7    lengths to provide any information that shows that their

8    client is innocent?

9    A.  Yes.

10           MS. GASTON:  Nothing further.

11           MR. CORCORAN:  One question, your Honor.

12           THE COURT:  Very well.

13                      RECROSS-EXAMINATION

14   BY MR. CORCORAN:

15   Q.  Just on that last question.  The prosecutor asked you

16   about a statement saying that Steve Bannon stood with Trump

17   and the Constitution.  Earlier, you mentioned that in your

18   discussion with Bob Costello he raised the issue and

19   advanced the issue of executive privilege.  Is that correct?

20   A.  Yes.

21   Q.  Do you understand that executive privilege is a

22   privilege based in the Constitution?

23   A.  Yes.

24           MR. CORCORAN:  Thank you.

25           THE COURT:  Thank you, sir.  You may be excused.

```
 1                    THE WITNESS:  Thank you.

 2                    THE COURT:  Thank you for your testimony.

 3                    (Witness excused.)

 4                    MS. VAUGHN:  Your Honor, the Government rests.

 5                    THE COURT:  So here's what we're going to do:

 6       We're going to recess for the afternoon/day.

 7                    There is one scheduling issue, as I had suggested

 8       earlier today, that requires us to start a little bit later

 9       in the morning than we would have otherwise.  So we are --

10       the plan is to start at 11:00 a.m. tomorrow and to pick up

11       with the jury at that time.

12                    I suppose, given that we're starting late, if it

13       turns out that the parties have issues that they would like

14       to discuss with me before the jury is here, please inform

15       Ms. Lesley perhaps as early as 10:30 or something so that we

16       could perhaps take those up.

17                    Mr. Corcoran?

18                    MR. CORCORAN:  I think we can do it at 10:30.  But

19       we'll make a motion for judgment of acquittal after -- since

20       the defense has rested in the morning in ten minutes or

21       something.

22                    THE COURT:  Understood.

23                    Why don't we do that at 10:30.

24                    MR. CORCORAN:  Okay.

25                    THE COURT:  We'll do that at 10:30.
```

1          And then, depending on what happens with that, we

2     would resume, assuming it's not granted -- I'm not

3     prejudging it, of course -- we would then move to your case

4     and any evidence you're going to present at 11:00.

5               MR. CORCORAN:  Very well, your Honor.  Thank you.

6               THE COURT:  Thank you.

7               Anything, Ms. Lesley, that I need to cover?

8               THE COURTROOM DEPUTY:  No, sir.

9               THE COURT:  Thank you all.

10              (Whereupon, the jury exited the courtroom at 4:59

11     p.m. and the following proceedings were had:)

12              (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1 <u>**CERTIFICATE**</u>

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                    Dated this 20th day of July, 2022.

11

12               <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 126:12

## 0

**000458** [1] - 36:1

## 1

**1** [1] - 24:10
**10** [19] - 3:10, 5:3, 5:17, 42:21, 81:1, 81:2, 92:4, 92:6, 92:7, 93:7, 93:12, 97:24, 98:1, 110:10, 110:14, 110:16, 111:16, 112:5, 112:11
**100** [1] - 6:14
**100-6** [1] - 1:23
**10:00** [5] - 14:6, 14:11, 85:7, 85:9, 85:22
**10:30** [4] - 124:15, 124:18, 124:23, 124:25
**10th** [2] - 79:15, 79:16
**11** [5] - 5:19, 5:20, 7:22, 8:10
**11-A** [8] - 3:11, 100:12, 100:13, 101:5, 101:6, 112:23, 114:1, 114:19
**11-B** [7] - 3:11, 102:25, 103:1, 103:9, 103:11, 103:13, 122:16
**117th** [1] - 7:25
**11:00** [3] - 85:6, 124:10, 125:4
**13** [1] - 17:19
**13th** [1] - 23:14
**14** [2] - 67:7, 72:5
**14th** [7] - 30:23, 40:11, 40:12, 40:23, 40:25, 70:3, 70:11
**15** [8] - 27:25, 38:7, 38:8, 42:20, 42:21, 43:11, 121:10
**15-and-a-half-page** [1] - 38:22
**15th** [6] - 21:18, 23:15, 29:24, 30:6, 32:15, 75:24
**16** [1] - 37:25
**16-page** [2] - 38:22, 40:10

**17** [2] - 42:16, 42:17
**18** [2] - 29:14, 30:25
**18th** [3] - 29:16, 29:21, 30:14
**19** [1] - 39:14
**192** [2] - 28:11, 75:2
**194** [2] - 28:12, 75:2
**19th** [7] - 36:9, 36:24, 39:16, 39:24, 65:8, 65:16, 76:13
**1:21** [1] - 1:7
**1:25** [1] - 6:22

## 2

**2** [8] - 28:11, 72:20, 74:5, 75:2, 77:7, 81:2, 81:3, 103:25
**20** [6] - 1:6, 12:8, 12:13, 12:19, 41:5, 113:17
**200-plus** [1] - 121:24
**20001** [2] - 2:4, 126:14
**202** [2] - 2:4, 126:15
**2021** [45] - 14:1, 14:11, 17:19, 27:25, 29:14, 29:21, 30:21, 30:23, 36:7, 36:18, 36:25, 39:12, 39:14, 39:17, 42:13, 61:15, 62:14, 65:9, 65:24, 66:3, 66:6, 69:14, 71:20, 74:13, 75:12, 75:17, 75:24, 76:13, 76:22, 77:16, 78:13, 78:14, 98:23, 99:8, 100:1, 101:15, 101:16, 101:20, 103:20, 104:24, 106:12, 107:6, 107:9, 111:8, 113:18
**2022** [18] - 1:6, 60:4, 60:6, 62:10, 64:7, 67:8, 67:14, 68:22, 70:17, 71:12, 77:18, 78:21, 78:24, 79:1, 79:3, 79:13, 113:17, 126:10
**20530** [1] - 1:17
**20th** [1] - 126:10
**21** [1] - 68:22
**21-00670** [1] - 1:3
**21202** [1] - 1:21
**21st** [3] - 36:18, 39:11, 76:22
**23** [3] - 36:7, 60:5, 69:14
**23rd** [4] - 71:20,

**100:1, 100:5, 106:12
**24** [1] - 111:8
**24th** [3] - 98:23, 99:8, 106:22
**2800** [1] - 1:23
**2:43** [1] - 55:15
**2nd** [1] - 42:13

## 3

**3** [2] - 1:10, 106:16
**3-B** [3] - 7:24, 8:9, 8:19
**30** [8] - 3:13, 60:2, 62:1, 62:8, 64:1, 64:2, 64:19, 68:6
**31** [10] - 3:13, 63:23, 63:25, 64:6, 64:14, 65:2, 66:25, 68:6, 72:21
**32** [6] - 3:14, 67:3, 67:4, 68:7, 68:8, 70:2
**333** [2] - 2:3, 126:14
**354-3269** [2] - 2:4, 126:15
**36106** [1] - 1:24
**39** [6] - 3:14, 111:6, 111:7, 111:20, 111:22, 111:24
**3:00** [1] - 59:10
**3:47** [1] - 90:10
**3rd** [1] - 104:24

## 4

**4** [4] - 12:25, 13:6, 14:19, 87:3
**40** [7] - 3:15, 38:3, 38:5, 113:15, 114:5, 114:9, 114:11
**40-page** [1] - 37:8
**400** [1] - 1:20
**4:00** [1] - 90:6
**4:10** [1] - 90:15
**4:59** [1] - 125:10

## 5

**5** [9] - 14:14, 15:6, 15:7, 16:2, 16:17, 73:15, 73:16, 74:5, 74:21
**50** [1] - 37:12
**519** [1] - 3:6
**521** [1] - 3:12
**555** [1] - 1:16
**574** [1] - 3:13
**577** [1] - 3:13

**580** [1] - 3:14
**582** [1] - 3:6
**5:00** [1] - 90:6

## 6

**6** [13] - 17:16, 21:9, 99:10, 100:16, 103:23, 104:9, 110:20, 111:1, 111:11, 112:4, 112:25, 113:9, 114:16
**603** [1] - 3:7
**610** [1] - 3:10
**613** [1] - 3:11
**615** [1] - 3:11
**622** [1] - 3:7
**624** [1] - 3:14
**626** [1] - 3:15
**634** [1] - 3:7
**6706** [1] - 2:3
**6:00** [1] - 29:14
**6th** [4] - 71:25, 89:13, 99:19, 101:23

## 7

**7** [3] - 27:22, 81:5, 85:10
**7th** [11] - 14:1, 14:6, 14:11, 30:21, 40:15, 85:6, 87:4, 87:5, 101:20, 107:6, 107:9

## 8

**8** [7] - 7:25, 8:2, 32:9, 37:12, 37:20, 77:7, 113:18
**8th** [12] - 73:17, 74:13, 75:7, 75:12, 75:17, 87:20, 87:23, 100:15, 101:15, 101:16, 103:3, 103:20

## 9

**9** [6] - 35:13, 35:25, 62:10, 64:7, 67:14, 68:14
**9-B** [8] - 3:12, 7:12, 7:17, 7:22, 8:19, 8:24, 9:2, 9:3
**900** [1] - 1:20
**9th** [10] - 60:3, 60:4, 70:13, 70:17, 71:12, 72:8, 72:12, 73:11,

**79:9, 79:13

## A

**a.m** [7] - 14:6, 14:11, 85:6, 85:7, 85:10, 85:22, 124:10
**ability** [3] - 37:22, 73:21, 126:7
**able** [3] - 6:1, 81:13
**accept** [3] - 100:3, 106:13, 106:21
**accepted** [3] - 34:18, 106:10, 106:11
**access** [2] - 110:23, 113:6
**accompanied** [2] - 5:18, 23:9
**accordingly** [1] - 74:10
**account** [18] - 92:23, 92:25, 93:3, 93:5, 93:9, 98:16, 98:20, 98:25, 100:14, 100:20, 110:24, 112:10, 112:19, 112:21, 113:5, 113:12, 113:13, 114:22
**accounts** [1] - 92:11
**accurate** [20] - 12:8, 12:11, 13:14, 14:7, 14:8, 23:5, 30:15, 37:5, 39:17, 41:16, 42:3, 44:11, 63:8, 63:18, 65:6, 65:13, 93:8, 100:18, 103:5, 126:4
**acquittal** [1] - 124:19
**acted** [1] - 5:3
**action** [3] - 13:19, 16:19, 17:9, 75:5
**Action** [1] - 1:3
**actual** [2] - 37:7, 57:3
**add** [3] - 38:5, 100:7, 104:13
**addition** [2] - 23:8, 61:12
**additional** [9] - 17:14, 29:11, 29:22, 31:5, 32:12, 32:14, 32:17, 61:8, 72:1
**address** [5] - 16:13, 21:21, 55:4, 59:17, 90:5
**addressed** [5] - 23:16, 29:13, 34:7, 36:2, 60:5

**addressing** [1] - 4:6
**adjournment** [3] - 32:24, 33:25, 65:9
**admissible** [1] - 61:17
**admission** [1] - 67:23
**admit** [7] - 60:19, 68:2, 92:17, 93:11, 103:8, 113:22, 114:4
**admitted** [15] - 9:2, 63:25, 64:1, 64:2, 66:25, 72:20, 73:15, 77:6, 97:22, 100:24, 101:5, 103:12, 106:17, 111:22, 114:9
**admitting** [4] - 60:21, 61:2, 61:25, 68:3
**advance** [2] - 39:18, 39:24
**advanced** [1] - 123:19
**advise** [1] - 105:8
**advised** [3] - 11:3, 33:18, 74:22
**advisors** [1] - 34:12
**affiliated** [1] - 113:12
**AFTERNOON** [1] - 1:5
**afternoon** [6] - 7:19, 91:7, 91:8, 91:13, 110:4, 110:5
**afternoon/day** [1] - 124:6
**agent** [5] - 42:13, 91:18, 92:6, 98:4, 110:13
**Agent** [24] - 90:20, 91:13, 93:7, 99:6, 99:16, 99:24, 100:11, 100:18, 101:14, 102:4, 102:23, 103:19, 104:4, 104:11, 104:17, 106:13, 106:16, 106:25, 110:4, 112:2, 113:15, 114:14, 122:12, 123:4
**ago** [4] - 42:20, 42:21, 79:16, 112:2
**agree** [1] - 46:21
**agreed** [1] - 67:21
**agreement** [9] - 17:25, 18:7, 21:13, 21:25, 62:22, 63:6, 63:9, 63:11
**aimed** [1] - 57:14
**al** [1] - 77:8
**Alabama** [1] - 1:24
**alleged** [1] - 64:21

**allow** [9] - 6:16, 22:1, 38:15, 44:21, 45:22, 66:14, 119:17, 120:2, 121:6
**allowed** [3] - 57:16, 57:25, 84:13
**allows** [1] - 62:24
**alternative** [2] - 4:18, 85:17
**AMANDA** [1] - 1:14
**AMERICA** [1] - 1:3
**American** [1] - 66:12
**Amerling** [36] - 3:6, 5:16, 6:4, 7:3, 7:17, 9:6, 21:8, 55:12, 62:6, 64:5, 65:5, 67:6, 68:12, 69:25, 70:3, 70:11, 70:15, 70:23, 71:13, 72:21, 73:10, 73:14, 79:5, 80:8, 81:1, 84:11, 84:17, 88:3, 89:12, 89:20, 119:9, 119:20, 120:7, 120:9, 121:9
**AMERLING** [1] - 7:8
**answer** [20] - 12:19, 13:23, 22:22, 22:25, 23:3, 23:23, 23:25, 28:25, 30:24, 35:18, 37:22, 80:3, 81:9, 81:13, 81:14, 81:22, 82:3, 82:4, 122:5
**answered** [1] - 5:15
**answers** [2] - 31:22, 73:1
**anticipate** [1] - 69:10
**apart** [1] - 9:17
**apologies** [1] - 106:22
**apologize** [2] - 5:20, 122:21
**appeals** [1] - 77:16
**appear** [15] - 8:11, 11:16, 11:21, 11:25, 12:4, 30:22, 40:13, 69:9, 86:2, 86:6, 111:17, 112:20, 113:25, 115:13, 122:19
**appearance** [4] - 10:14, 10:16, 59:24, 74:17
**aPPEARANCES** [1] - 1:13
**appeared** [2] - 33:2, 119:8
**appearing** [1] - 46:8
**appendices** [1] - 38:1
**applicable** [1] - 68:6

**applied** [1] - 28:8, 34:19
**apply** [2] - 6:9, 64:19
**approach** [2] - 7:6, 37:15
**approve** [1] - 31:19
**approved** [4] - 31:9, 36:23, 76:12, 84:21
**approving** [1] - 31:25
**April** [1] - 79:1
**argue** [1] - 6:1
**argues** [1] - 61:15
**argument** [6] - 5:6, 6:6, 6:11, 6:12, 6:13, 13:9
**arguments** [2] - 4:10, 23:16
**arrange** [1] - 86:13
**article** [19] - 99:20, 102:22, 103:2, 103:5, 103:19, 103:20, 103:25, 111:7, 111:10, 111:14, 112:14, 112:18, 113:16, 113:17, 113:20, 113:25, 114:15, 114:23, 115:2
**articles** [1] - 115:1
**articulating** [1] - 13:9
**assert** [1] - 74:1
**asserted** [2] - 22:6, 23:4, 60:22
**asserting** [2] - 23:10, 23:12
**assertion** [6] - 21:14, 22:1, 23:6, 24:5, 58:10, 74:9
**assistant** [1] - 115:21
**assists** [1] - 71:4
**associated** [3] - 98:19, 112:6, 113:5
**assuming** [3] - 24:4, 24:8, 125:2
**assumption** [1] - 23:4
**attached** [3] - 65:23, 66:18, 68:14
**attachments** [1] - 38:5
**attack** [1] - 104:9
**attempted** [2] - 120:17, 120:18
**attempting** [1] - 5:1
**attended** [5] - 43:19, 45:8, 88:6, 88:8, 88:9
**attention** [3] - 65:5, 65:19, 105:11

**attesting** [2] - 65:23, 110:16
**attorney** [10] - 8:4, 33:12, 64:8, 67:7, 86:11, 100:3, 102:15, 104:21, 105:8, 105:13
**Attorney's** [11] - 28:15, 29:5, 105:6, 105:7, 105:9, 105:11, 105:16, 105:20, 106:1, 106:3, 121:25
**ATTORNEY'S** [1] - 1:15
**attorneys** [7] - 10:3, 10:4, 10:20, 11:4, 106:3, 115:21, 123:5
**audiovisual** [1] - 71:5
**authored** [2] - 28:3, 102:14
**authority** [4] - 7:18, 71:15, 73:4, 84:20
**authorized** [1] - 15:24
**available** [4] - 8:3, 16:21, 17:6, 76:24
**Avenue** [2] - 2:3, 126:14
**aware** [9] - 11:15, 11:18, 60:3, 77:13, 78:1, 78:12, 79:5, 79:8, 107:25

## B

**back-and-forth** [1] - 11:20, 11:22, 33:11
**Baltimore** [1] - 1:21
**BANNON** [1] - 1:6
**Bannon** [101] - 4:10, 4:25, 5:5, 5:17, 5:23, 8:1, 8:8, 8:11, 8:16, 13:4, 13:12, 13:17, 14:3, 14:10, 17:21, 22:1, 22:14, 23:13, 24:11, 24:20, 27:24, 28:14, 29:10, 29:23, 30:5, 30:8, 30:20, 30:21, 32:10, 32:17, 34:7, 35:2, 36:6, 36:11, 36:24, 37:1, 37:24, 38:13, 39:21, 40:12, 40:22, 46:8, 56:2, 60:5, 61:4, 61:6, 61:13, 62:10, 62:13, 63:16, 64:8, 65:14, 65:20, 66:13, 66:14, 66:15, 66:19, 67:7, 67:15, 68:20, 69:13, 69:17, 70:19, 71:19,

71:21, 72:24, 73:23, 74:9, 75:6, 91:23, 99:9, 100:16, 101:22, 102:6, 102:20, 103:22, 104:6, 104:21, 105:2, 105:9, 107:17, 110:19, 110:25, 111:2, 111:3, 111:11, 112:3, 112:5, 112:6, 112:17, 112:19, 112:24, 112:25, 113:3, 113:8, 114:15, 115:10, 118:22, 121:25, 123:16
**Bannon's** [27] - 21:10, 21:17, 30:18, 33:4, 36:3, 46:15, 59:23, 61:9, 61:20, 64:21, 64:23, 65:25, 70:18, 70:22, 73:18, 74:3, 74:17, 74:23, 92:7, 100:14, 102:14, 105:8, 105:10, 110:14, 110:21, 114:22, 115:3
**bar** [1] - 56:3
**based** [8] - 5:8, 34:3, 46:17, 56:23, 58:11, 81:14, 113:11, 123:22
**basis** [7] - 17:2, 22:22, 44:25, 74:3, 75:9, 75:14, 77:5
**bear** [4] - 30:17, 32:21, 65:18, 120:8
**bearing** [1] - 88:15
**became** [1] - 40:13
**BEFORE** [1] - 1:10
**begin** [3] - 39:4, 39:24, 68:20
**beginning** [6] - 74:6, 99:10, 110:19, 111:1, 111:11, 112:4
**behalf** [9] - 10:12, 15:24, 31:3, 31:6, 32:17, 70:18, 84:23, 85:2, 85:3
**belief** [6] - 56:17, 57:16, 58:15, 58:18, 61:9, 64:23
**believes** [1] - 29:11
**belong** [2] - 74:2, 80:17
**below** [6] - 99:13, 99:16, 99:18, 102:18, 102:20, 104:2
**Bennie** [3] - 33:20, 64:9, 77:8
**best** [7] - 40:7, 40:8, 40:11, 41:1, 45:24,

66:12, 126:7
**better** [1] - 71:7
**between** [4] - 33:11, 73:12, 77:22, 89:2
**beyond** [1] - 44:19
**bias** [2] - 120:22, 120:23
**big** [5] - 99:11, 110:20, 111:2, 111:12, 112:4
**binder** [2] - 90:23, 91:4
**bit** [5] - 44:21, 79:14, 81:20, 86:10, 124:8
**black** [2] - 43:14, 115:17
**blond** [1] - 43:14
**Bob** [11] - 9:17, 13:3, 21:10, 27:24, 35:3, 36:2, 37:2, 46:14, 115:10, 115:19, 123:18
**body** [1] - 41:23
**book** [20] - 43:18, 43:21, 43:24, 44:3, 44:4, 44:7, 44:12, 44:14, 44:17, 44:24, 45:5, 45:6, 45:7, 45:10, 45:17, 45:25, 46:2, 46:3, 88:4, 88:8
**books** [1] - 44:7
**bottom** [3] - 13:6, 71:25, 112:10
**box** [1] - 115:17
**branch** [2] - 80:17, 80:18
**break** [1] - 4:5
**brief** [3] - 24:23, 55:4, 90:3
**briefly** [3] - 4:4, 7:18, 122:9
**bring** [12] - 4:4, 6:20, 37:10, 55:9, 58:12, 59:4, 59:9, 90:14, 105:10, 116:4, 116:13, 119:1
**bringing** [1] - 23:21
**broaden** [1] - 11:7
**brought** [1] - 75:5
**building** [1] - 69:10
**BY** [70] - 2:1, 7:10, 7:16, 8:18, 8:21, 9:5, 13:1, 14:17, 15:9, 17:4, 17:17, 21:7, 23:18, 24:7, 24:18, 27:21, 29:2, 29:8, 31:20, 35:9, 37:18, 38:20, 39:10, 40:6, 43:9, 44:22, 45:16, 46:6, 59:20, 62:5,

64:4, 65:4, 67:5, 68:11, 69:24, 70:10, 71:8, 82:5, 84:10, 88:2, 91:12, 92:5, 92:22, 98:3, 98:8, 99:15, 99:23, 100:10, 101:13, 102:3, 103:18, 104:3, 104:16, 110:3, 110:12, 112:1, 113:24, 114:7, 114:13, 116:1, 116:10, 118:19, 119:18, 120:6, 120:20, 121:8, 121:22, 122:11, 122:22, 123:14

## C

**Campaign** [1] - 42:9
**campaign** [1] - 34:12
**candidates** [1] - 42:6
**cannot** [1] - 39:7
**capacity** [1] - 75:6
**capital** [1] - 114:16
**Capitol** [4] - 12:8, 41:5, 99:19, 104:9
**caption** [3] - 99:16, 99:18, 101:21
**captioned** [1] - 101:22
**career** [4] - 41:22, 41:24, 44:16, 45:1
**careers** [1] - 46:3
**CARL** [1] - 1:10
**carry** [2] - 56:13, 56:14
**case** [17] - 4:8, 5:14, 12:21, 33:20, 42:18, 43:22, 57:2, 61:11, 65:13, 105:11, 116:4, 116:13, 118:22, 119:1, 120:12, 121:24, 125:3
**cases** [5] - 9:10, 11:15, 91:20, 115:22, 116:15
**causing** [1] - 71:1
**certain** [4] - 6:14, 41:2, 63:17, 122:13
**certainly** [6] - 4:12, 4:25, 22:9, 91:15, 100:25, 104:6
**CERTIFICATE** [1] - 126:1
**certify** [1] - 126:4
**chair** [10] - 31:3, 31:17, 31:18, 34:9,

38:19, 41:20, 41:21, 43:1, 82:1, 82:2
**chairman** [5] - 32:1, 32:11, 43:2, 84:14, 84:22
**Chairman** [44] - 14:22, 15:14, 16:2, 16:3, 16:8, 17:19, 18:4, 18:6, 21:10, 21:12, 21:16, 21:24, 22:12, 23:15, 23:20, 24:14, 24:19, 27:23, 28:2, 29:23, 30:6, 30:14, 30:25, 31:2, 31:5, 32:5, 35:14, 36:2, 36:10, 43:13, 59:22, 64:8, 65:7, 66:1, 66:11, 66:18, 67:6, 67:12, 67:17, 68:13, 68:18, 68:23, 69:12, 73:17
**chairman's** [1] - 32:15
**chairs** [4] - 41:8, 41:10, 41:18
**change** [3] - 36:6, 70:19, 85:21
**changed** [1] - 65:22
**charge** [3] - 41:9, 41:18, 123:6
**charged** [2] - 78:10, 78:17
**charges** [2] - 75:4, 79:6
**checking** [1] - 105:21
**chief** [3] - 9:13, 9:25, 10:21
**choose** [1] - 86:7
**circumstances** [6] - 63:17, 65:21, 86:6, 86:14, 105:3, 105:17
**cited** [1] - 77:4
**citizen** [2] - 35:2, 35:4
**civil** [7] - 13:19, 16:19, 16:22, 17:9, 23:21, 33:21, 75:5
**civilly** [2] - 13:18, 13:21
**claim** [2] - 77:10, 87:18
**claiming** [2] - 75:8, 79:19
**clarify** [1] - 88:5
**clear** [9] - 4:20, 13:11, 30:7, 33:14, 34:20, 39:20, 40:13, 59:5, 110:18
**clearly** [1] - 57:14

**click** [2] - 112:10, 114:21
**client** [3] - 36:5, 67:15, 123:8
**clients** [1] - 123:6
**close** [2] - 55:7, 93:5
**club** [13] - 43:21, 43:24, 43:25, 44:3, 44:4, 44:7, 44:12, 44:14, 44:17, 44:24, 45:10, 45:17, 88:4
**Code** [1] - 75:2
**collaboration** [1] - 89:2
**colon** [1] - 114:15
**Columbia** [3] - 2:2, 33:19, 126:13
**COLUMBIA** [2] - 1:1, 1:15
**coming** [1] - 90:23
**Commerce** [1] - 42:24
**committed** [2] - 119:22, 120:8
**Committee** [157] - 4:7, 5:2, 5:16, 6:12, 9:7, 9:23, 10:13, 10:23, 11:19, 11:24, 12:3, 14:11, 14:25, 15:1, 15:16, 15:19, 15:25, 16:4, 16:21, 17:6, 17:11, 17:20, 17:25, 23:5, 29:14, 29:19, 29:22, 29:24, 30:5, 30:9, 31:3, 31:7, 31:8, 31:24, 32:11, 32:25, 33:3, 33:12, 33:13, 34:5, 34:8, 34:10, 34:20, 35:21, 35:22, 36:12, 36:21, 36:23, 37:3, 37:7, 37:23, 39:9, 39:11, 39:14, 39:16, 39:18, 40:18, 41:12, 41:17, 41:18, 42:2, 42:9, 42:20, 42:23, 42:24, 43:6, 46:7, 46:12, 46:15, 57:23, 58:16, 59:25, 63:7, 63:17, 64:9, 65:8, 65:15, 66:20, 68:15, 68:21, 68:24, 69:3, 70:4, 70:12, 70:18, 71:12, 71:17, 71:19, 71:22, 71:25, 72:3, 72:5, 73:2, 73:3, 73:5, 73:6, 73:10, 73:19, 73:25, 74:10, 74:16, 74:19, 74:22, 75:1, 75:7, 75:12, 75:15, 75:17,

75:23, 76:1, 76:3, 76:4, 76:10, 76:12, 76:14, 76:23, 79:23, 79:25, 80:3, 80:5, 80:14, 80:20, 84:21, 85:3, 85:5, 85:10, 85:13, 85:16, 86:15, 86:19, 86:20, 87:4, 87:6, 87:9, 87:17, 87:19, 87:22, 89:3, 89:5, 89:6, 89:7, 89:8, 89:11, 92:1, 99:25, 100:17, 101:18, 101:23, 103:23, 106:10, 108:1, 108:18, 112:25, 113:9, 114:16
**committee** [2] - 43:1, 66:15
**Committee's** [17] - 30:18, 32:20, 57:5, 57:21, 65:17, 67:16, 68:19, 70:20, 71:14, 71:15, 73:2, 78:2, 80:11, 84:11, 88:16, 107:9, 107:13
**committees** [9] - 24:12, 24:20, 41:8, 41:9, 41:14, 41:19, 41:20, 44:13
**commonality** [1] - 44:15
**communicate** [1] - 22:12
**communicated** [5] - 13:20, 46:14, 60:11, 60:23
**communicating** [4] - 13:7, 31:6, 66:5, 66:8
**communication** [1] - 34:14
**communications** [8] - 11:7, 34:8, 34:11, 34:13, 85:14, 85:16, 87:21, 107:25
**complete** [3] - 6:15, 68:22, 126:6
**completed** [1] - 39:17
**compliance** [10] - 4:23, 5:3, 10:20, 57:5, 57:6, 64:24, 64:25, 79:9, 79:12
**complied** [4] - 4:21, 5:11, 57:22, 71:21
**complies** [1] - 61:13
**comply** [42] - 12:16, 13:17, 13:22, 30:22, 36:6, 56:21, 57:7, 61:4, 61:6, 64:22,

878

66:14, 67:16, 70:13,
70:20, 71:10, 72:8,
72:12, 72:15, 73:24,
74:3, 75:8, 75:13,
75:18, 75:21, 76:4,
76:6, 76:17, 77:1,
77:21, 78:6, 78:17,
78:21, 79:20, 80:6,
87:23, 91:23, 100:17,
101:23, 103:24,
113:1, 113:9, 114:17
    **complying** [2] -
56:18, 61:10
    **compounded** [1] -
40:14
    **concern** [1] - 4:16
    **concerning** [1] -
70:22
    **conclude** [1] - 5:8
    **concluded** [1] -
125:12
    **concrete** [1] - 59:17
    **conditional** [1] -
63:19
    **conditions** [2] -
72:16, 73:1
    **conducted** [1] - 9:13
    **confirm** [2] - 58:18,
58:20
    **conflict** [1] - 86:12
    **confusion** [1] - 56:13
    **Congress** [20] - 7:25,
12:14, 12:21, 14:12,
28:13, 28:15, 28:17,
29:4, 34:12, 39:22,
41:6, 71:16, 75:1,
79:25, 80:18, 88:21,
119:22, 121:14,
121:24, 122:1
    **Congress's** [5] -
99:10, 110:20, 111:1,
111:11, 112:4
    **congressional** [5] -
24:12, 24:20, 41:8,
42:20, 91:23
    **Congressional** [1] -
42:9
    **congressman** [1] -
44:25
    **congressmen** [1] -
44:18
    **connection** [1] -
36:11
    **consider** [16] - 18:4,
18:6, 24:19, 29:25,
30:5, 30:9, 31:17,
35:5, 40:18, 56:8,
56:9, 58:16, 71:23,
75:1, 76:4, 116:15
    **consideration** [3] -

17:24, 30:18, 32:21
    **consistent** [1] -
64:18
    **constitutes** [1] -
126:4
    **Constitution** [7] -
2:3, 102:21, 104:10,
123:3, 123:17,
123:22, 126:14
    **consultations** [1] -
32:2
    **contempt** [32] -
12:14, 12:18, 12:21,
14:12, 28:11, 28:14,
28:23, 29:25, 30:6,
32:25, 36:15, 36:17,
36:24, 37:4, 37:24,
38:12, 39:21, 40:19,
40:22, 56:19, 57:7,
57:18, 58:14, 65:1,
70:21, 75:1, 76:5,
77:5, 85:5, 119:21,
121:14, 122:1
    **content** [4] - 11:12,
16:5, 31:19, 99:13
    **context** [4] - 16:22,
22:8, 22:9, 61:24
    **CONTINUED** [1] -
7:9
    **continuing** [2] -
59:22, 101:8
    **control** [1] - 112:21
    **conversation** [1] -
14:23
    **conversations** [5] -
10:19, 11:4, 11:6,
46:1, 123:5
    **conveyed** [2] - 63:4,
63:12
    **conveying** [1] - 65:7,
66:17
    **convictions** [1] -
65:21
    **convince** [2] - 116:3,
123:5
    **cooperate** [1] - 12:3
    **cooperating** [2] -
11:18, 104:8
    **copied** [1] - 112:18
    **copy** [5] - 7:24, 8:12,
15:4, 38:1, 103:2
    **Corcoran** [25] - 5:1,
5:15, 7:4, 17:1, 37:16,
55:22, 56:6, 59:14,
62:3, 68:10, 69:20,
69:25, 80:9, 80:10,
80:25, 84:17, 85:4,
86:1, 86:23, 88:20,
109:25, 110:5,
113:21, 122:12,

124:17
    **CORCORAN** [89] -
1:18, 5:19, 5:21, 7:5,
7:10, 7:13, 7:16, 8:18,
8:21, 8:24, 9:5, 12:24,
13:1, 14:15, 14:17,
15:6, 15:9, 17:2, 17:4,
17:15, 17:17, 21:7,
23:18, 24:2, 24:7,
24:18, 27:21, 29:2,
29:8, 31:20, 35:9,
37:10, 37:17, 37:18,
38:20, 39:10, 40:6,
43:9, 44:22, 45:16,
46:6, 59:15, 59:19,
59:20, 60:15, 62:4,
62:5, 63:22, 64:4,
64:13, 65:4, 66:22,
67:3, 67:5, 67:20,
67:22, 68:11, 69:18,
82:7, 89:17, 110:1,
110:3, 110:11,
110:12, 111:19,
112:1, 113:24, 114:4,
114:7, 114:13, 116:1,
116:10, 118:19,
119:13, 119:16,
119:18, 120:6,
120:20, 121:4, 121:8,
121:19, 121:22,
122:6, 123:11,
123:14, 123:24,
124:18, 124:24, 125:5
    **Corcoran's** [1] -
57:14
    **correct** [85] - 4:17,
9:8, 9:9, 9:12, 11:17,
12:9, 12:12, 12:21,
12:22, 13:4, 13:5,
13:8, 14:2, 15:11,
15:12, 15:15, 15:20,
17:21, 17:22, 18:2,
32:13, 33:1, 33:8,
33:22, 33:23, 34:2,
35:11, 35:12, 35:15,
35:16, 36:7, 36:8,
36:19, 36:20, 37:6,
37:8, 38:9, 38:10,
39:22, 39:23, 41:6,
42:1, 42:4, 42:6, 42:7,
42:9, 42:15, 42:18,
43:3, 44:18, 45:2,
45:3, 45:12, 46:18,
62:10, 62:11, 62:14,
62:19, 63:1, 64:9,
64:10, 66:3, 67:9,
67:11, 68:17, 70:14,
72:7, 72:18, 75:11,
75:16, 75:20, 77:12,
78:5, 78:11, 108:3,
110:21, 112:14,

112:15, 112:17,
115:10, 115:16,
116:4, 116:6, 119:5,
123:19
    **Correct** [1] - 67:10
    **correctly** [1] - 6:10
    **corruption** [1] -
91:20
    **Costello** [55] - 9:17,
9:19, 13:3, 13:7,
13:11, 13:16, 13:20,
14:20, 15:17, 17:20,
17:23, 21:10, 27:24,
32:10, 32:12, 32:16,
33:5, 33:17, 33:24,
35:3, 36:2, 37:2,
46:14, 58:18, 64:7,
64:12, 65:7, 65:12,
66:1, 66:11, 66:17,
67:7, 86:24, 102:15,
104:18, 104:20,
104:21, 104:22,
104:23, 104:25,
105:5, 105:15, 106:9,
106:11, 106:21,
106:25, 107:7,
107:12, 107:18,
107:22, 115:10,
115:14, 115:20,
118:22, 123:18
    **Costello's** [2] -
15:14, 68:14
    **counsel** [9] - 8:23,
9:14, 9:25, 10:21,
21:17, 21:23, 71:4,
71:11, 73:18
    **counsels** [4] - 9:14,
10:2, 16:11, 38:18
    **couple** [4] - 80:8,
85:7, 110:6, 119:17
    **course** [3] - 36:6,
61:15, 104:17, 106:6,
125:3
    **Court** [10] - 2:1, 2:2,
13:22, 56:24, 58:7,
58:8, 77:17, 77:22,
126:12, 126:13
    **COURT** [110] - 1:1,
4:3, 5:20, 5:22, 6:3,
6:20, 7:1, 7:7, 8:20,
9:2, 16:24, 18:10,
22:15, 22:20, 22:24,
23:24, 24:16, 24:23,
28:25, 29:7, 31:12,
35:8, 37:16, 38:15,
39:6, 40:2, 43:8,
44:21, 45:15, 45:22,
46:21, 55:1, 55:20,
57:9, 57:12, 58:2,
58:23, 59:1, 59:4,

59:7, 59:9, 59:14,
59:16, 60:18, 62:3,
63:24, 64:1, 64:16,
66:24, 67:21, 67:24,
68:1, 68:10, 69:20,
70:5, 70:25, 71:2,
71:6, 82:9, 89:19,
89:24, 90:2, 90:8,
90:12, 90:14, 90:17,
90:25, 91:3, 91:7,
91:9, 92:14, 92:16,
93:15, 97:24, 100:8,
100:22, 101:1, 101:5,
101:8, 103:11,
104:14, 108:22,
109:22, 109:24,
111:22, 113:21,
114:9, 115:25, 116:8,
116:18, 118:17,
119:14, 119:17,
119:25, 120:18,
121:6, 121:17,
121:21, 122:3, 122:7,
122:18, 122:21,
123:12, 123:25,
124:2, 124:5, 124:22,
124:25, 125:6, 125:9
    **court** [12] - 16:21,
21:4, 23:21, 27:18,
33:19, 54:25, 77:16,
79:6, 84:9, 97:20,
109:21, 118:16
    **Court's** [2] - 58:11,
88:1
    **COURTROOM** [8] -
4:1, 6:24, 7:15, 21:5,
27:19, 55:19, 71:4,
125:8
    **courtroom** [9] - 6:22,
55:13, 55:15, 59:10,
59:12, 90:10, 90:15,
91:5, 125:10
    **courts** [1] - 13:18
    **cover** [2] - 46:1,
125:7
    **covered** [2] - 11:1,
11:9
    **crime** [3] - 119:21,
120:8, 121:13
    **criminal** [18] - 12:14,
12:18, 12:20, 16:22,
17:13, 29:25, 30:2,
36:24, 37:4, 75:4,
75:19, 76:10, 76:13,
76:21, 78:9, 116:4,
116:13, 119:1
    **Criminal** [1] - 1:3
    **criminally** [1] - 78:16
    **Cross** [1] - 3:3
    **CROSS** [2] - 7:9,

110:2
**CROSS-EXAMINATION** [2] - 7:9, 110:2
**crossed** [2] - 43:17, 88:8
**CRR** [3] - 2:1, 126:3, 126:12

## D

**D.C** [4] - 1:6, 1:17, 2:4, 126:14
**Daily** [5] - 103:3, 113:16, 113:17, 114:15, 114:22
**dailymail.co.uk** [1] - 102:22
**dailymail.com** [1] - 104:10
**date** [31] - 10:13, 10:18, 11:16, 11:25, 14:1, 14:2, 14:3, 28:4, 29:21, 30:25, 36:1, 36:15, 36:21, 37:1, 40:23, 46:16, 61:4, 69:8, 69:14, 71:9, 86:2, 86:16, 88:11, 98:22, 100:3, 101:14, 103:19, 103:20, 108:16, 108:18
**Dated** [1] - 126:10
**dated** [9] - 27:25, 62:10, 64:7, 67:7, 67:14, 100:15, 111:8, 113:16, 113:18
**dates** [14] - 11:21, 55:25, 56:1, 58:17, 61:4, 61:7, 61:18, 61:19, 61:21, 64:20, 87:2, 87:7, 108:7, 108:13
**DAVID** [2] - 1:22, 1:22
**DAY** [1] - 1:10
**day-to-day** [1] - 10:1
**days** [7] - 36:19, 39:8, 39:24, 40:4, 40:5, 40:8, 79:18
**deadline** [16] - 29:16, 29:17, 29:18, 29:20, 30:12, 30:14, 30:16, 30:21, 40:15, 85:9, 85:21, 85:22, 107:4, 107:6, 107:9
**deadlines** [2] - 30:11, 108:10
**deal** [1] - 113:21
**dealing** [3] - 12:11,

33:7, 33:21
**dealt** [1] - 120:14
**debate** [1] - 28:22
**December** [2] - 77:16, 78:20
**decide** [1] - 73:1
**decided** [5] - 29:24, 66:12, 71:9, 77:16, 81:18
**decides** [2] - 31:18, 57:2
**deciding** [2] - 24:21, 56:20
**decision** [2] - 30:4, 77:22
**decisions** [1] - 84:12
**default** [2] - 57:23, 61:14
**defaulted** [1] - 61:21
**Defendant** [57] - 1:7, 5:25, 58:13, 60:20, 70:12, 71:9, 72:11, 73:20, 75:7, 75:13, 75:18, 75:21, 75:23, 76:1, 76:3, 76:6, 76:10, 76:14, 76:15, 76:17, 76:21, 76:23, 77:1, 77:4, 78:6, 78:9, 78:16, 78:21, 79:6, 79:19, 80:5, 85:2, 85:5, 85:11, 85:14, 85:17, 85:24, 86:19, 87:6, 87:23, 88:3, 98:22, 99:8, 99:25, 101:17, 101:19, 104:25, 105:21, 107:2, 107:8, 107:13, 107:14, 108:9, 108:12, 122:17, 122:23
**DEFENDANT** [1] - 1:18
**Defendant's** [60] - 3:12, 3:13, 3:13, 3:14, 3:14, 3:15, 7:11, 7:22, 9:3, 33:12, 37:20, 56:17, 56:20, 60:2, 62:1, 62:7, 63:22, 63:25, 64:6, 64:14, 64:19, 65:2, 66:24, 67:4, 68:6, 68:7, 70:1, 71:11, 72:8, 72:15, 72:21, 77:20, 79:9, 87:4, 87:18, 91:25, 92:23, 93:9, 98:9, 98:19, 98:24, 99:3, 99:17, 100:3, 100:19, 105:13, 105:17, 105:25, 106:7, 107:18, 107:22,

111:6, 111:7, 111:19, 111:22, 111:24, 114:5, 114:9, 114:11, 122:13
**Defense** [4] - 7:17, 9:2, 37:11, 113:14
**defense** [15] - 4:22, 6:7, 56:19, 57:17, 57:21, 58:12, 66:22, 70:1, 115:23, 116:2, 116:11, 116:16, 118:24, 119:3, 124:20
**defer** [1] - 4:13
**defiance** [1] - 70:22
**defied** [1] - 40:12
**delay** [2] - 32:20, 33:3
**deliberate** [2] - 56:21, 64:21
**deliberately** [2] - 61:6, 61:20
**deliberation** [1] - 57:12
**demand** [3] - 40:12, 68:20, 73:9
**demanded** [1] - 14:8
**Democrat** [4] - 41:21, 41:23, 43:3, 89:3
**Democratic** [12] - 41:6, 41:10, 41:11, 41:15, 41:25, 42:2, 42:6, 42:8, 44:12, 44:18, 44:25, 89:10
**Democratic-leading** [1] - 41:11
**Democrats** [1] - 41:16
**denied** [1] - 65:9
**Department** [1] - 75:3
**depiction** [3] - 93:8, 100:19, 103:5
**depose** [1] - 8:5
**deposition** [21] - 7:18, 8:4, 8:11, 10:19, 11:2, 11:9, 11:16, 11:25, 30:23, 40:13, 46:9, 59:24, 69:10, 69:11, 69:13, 69:16, 74:18, 75:10, 81:15, 81:24, 86:3
**depositions** [5] - 11:13, 80:12, 80:21, 81:4, 81:6
**DEPUTY** [8] - 4:1, 6:24, 7:15, 21:5, 27:19, 55:19, 71:4, 125:8
**described** [7] - 5:17,

15:22, 28:6, 31:13, 35:20, 38:17, 63:19
**describes** [1] - 33:17
**describing** [1] - 41:17
**description** [1] - 23:11
**designated** [1] - 74:17
**desire** [1] - 105:8
**despite** [3] - 22:1, 57:21, 73:22
**detailed** [3] - 21:17, 61:1, 61:23
**determine** [3] - 119:21, 120:21, 121:13
**dialogue** [1] - 12:4
**different** [15] - 4:9, 8:7, 9:21, 10:2, 17:6, 31:15, 32:3, 41:19, 62:7, 86:13, 87:2, 89:4, 92:20, 108:16, 114:2
**difficult** [1] - 16:12
**direct** [11] - 11:4, 12:7, 13:25, 15:10, 17:5, 41:11, 62:6, 65:5, 65:19, 119:24, 120:1
**Direct** [1] - 3:3
**DIRECT** [1] - 91:11
**directed** [1] - 64:8
**direction** [1] - 13:17
**directions** [1] - 13:22
**directly** [1] - 41:22
**disagree** [1] - 33:9
**discuss** [6] - 14:21, 45:12, 45:18, 55:8, 107:22, 124:14
**discussed** [3] - 36:16, 59:18, 80:9
**discussing** [3] - 38:2, 61:19, 66:7
**discussion** [5] - 61:8, 105:7, 118:20, 120:9, 123:18
**discussions** [3] - 10:15, 11:12, 108:4
**dismissed** [1] - 79:6
**DISTRICT** [4] - 1:1, 1:1, 1:11, 1:15
**District** [4] - 2:2, 2:2, 33:19, 126:13
**district** [1] - 126:13
**document** [18] - 8:23, 10:19, 21:9, 23:11, 30:20, 37:7, 37:8, 37:14, 37:19, 40:15, 65:25, 67:2,

67:18, 68:2, 101:11, 107:4, 107:6
**document-by-document** [1] - 23:11
**documents** [38] - 13:13, 14:2, 14:4, 14:6, 14:10, 36:10, 36:13, 46:8, 46:11, 46:16, 59:23, 61:25, 62:19, 63:7, 63:11, 68:3, 68:20, 68:21, 68:25, 69:3, 69:7, 69:17, 72:9, 72:11, 74:10, 74:11, 75:14, 85:6, 85:18, 85:20, 85:24, 87:13, 100:23, 101:18, 101:19, 107:8, 107:10, 107:23
**Donald** [6] - 33:19, 60:4, 65:10, 77:8, 79:21, 102:8
**donation** [1] - 42:8
**donations** [1] - 42:5
**done** [2] - 6:15, 23:13
**down** [1] - 16:25
**dozens** [3] - 9:7, 10:22
**draft** [5] - 16:11, 32:18, 33:1, 35:17, 38:19
**drafted** [2] - 15:21, 15:22
**drafting** [12] - 16:10, 28:7, 32:4, 35:23, 38:11, 38:16, 38:18, 38:22, 39:4, 39:25, 40:9, 40:21
**drafts** [1] - 31:16
**Dunn** [7] - 98:6, 99:12, 99:22, 101:10, 102:1, 103:15, 104:2
**Dunn-Gordon** [7] - 98:6, 99:12, 99:22, 101:10, 102:1, 103:15, 104:2
**during** [1] - 115:19

## E

**early** [1] - 124:15
**easily** [1] - 112:18
**East** [1] - 1:20
**editing** [1] - 28:4
**EDWARDS** [2] - 2:1, 126:3
**Edwards** [1] - 126:12
**efficiency's** [1] - 55:6

**efforts** [1] - 57:5
**eight** [1] - 72:1
**either** [9] - 24:2,
41:25, 55:25, 56:11,
70:6, 81:25, 82:1,
90:5, 113:5
**electronic** [1] - 112:9
**elements** [1] - 57:3
**Eleventh** [1] - 1:16
**ELMO** [1] - 69:22
**email** [3] - 13:3,
79:14, 106:19
**emailed** [1] - 64:12
**emails** [2] - 44:6,
44:9
**emitting** [1] - 70:24
**employed** [1] - 91:17
**end** [4] - 5:14, 71:16,
74:1, 103:23
**Energy** [1] - 42:24
**enforce** [1] - 75:5
**engage** [2] - 9:19,
9:22
**engaged** [3] - 9:16,
86:24, 107:20
**enlisted** [1] - 35:3
**enter** [1] - 101:3
**entered** [15] - 6:22,
9:4, 59:10, 59:12,
62:1, 65:2, 68:9,
90:15, 91:5, 97:24,
98:2, 101:7, 103:14,
111:24, 114:11
**entire** [6] - 16:4,
16:5, 41:24, 89:7,
89:8, 107:20
**entitled** [1] - 33:19
**entry** [1] - 56:15
**environment** [1] -
43:16
**equally** [1] - 68:6
**equipment** [1] - 71:5
**erase** [1] - 57:7
**ESQ** [5] - 1:14, 1:14,
1:18, 1:19, 1:22
**essentially** [6] -
15:13, 65:12, 66:1,
93:5, 115:16, 115:17
**EST** [1] - 29:14
**establish** [2] - 92:11,
92:19
**established** [1] -
45:21
**estimate** [4] - 40:7,
40:9, 40:11, 41:1
**et** [1] - 77:8
**events** [1] - 120:10
**evidence** [32] - 4:8,
5:6, 6:8, 8:25, 9:4,
12:25, 27:23, 35:14,

60:14, 60:15, 62:2,
62:8, 64:14, 65:3,
67:19, 68:9, 72:13,
93:12, 97:22, 97:25,
98:2, 100:24, 101:4,
101:7, 103:9, 103:14,
111:16, 111:20,
111:25, 114:12,
116:12, 125:4
**EVIDENCE** [1] - 3:9
**exact** [2] - 88:10,
111:15
**exactly** [1] - 44:1
**examination** [2] -
15:10, 17:5
**EXAMINATION** [6] -
7:9, 69:23, 91:11,
110:2, 122:10, 123:13
**exchange** [2] - 56:7,
65:16
**excluded** [2] - 4:8,
6:8
**excuse** [2] - 6:4, 76:9
**excused** [9] - 56:18,
58:13, 61:10, 64:24,
87:18, 89:20, 89:23,
123:25, 124:3
**executive** [42] - 18:1,
18:8, 21:14, 22:2,
22:6, 22:14, 23:5,
23:17, 23:20, 24:6,
33:8, 33:13, 33:21,
34:6, 34:11, 34:16,
34:19, 34:24, 35:6,
56:17, 57:17, 57:20,
58:13, 58:15, 58:16,
61:9, 61:10, 62:19,
62:23, 63:5, 64:23,
65:24, 66:13, 73:21,
74:1, 77:10, 81:11,
87:16, 87:20, 108:2,
123:19, 123:21
**exhibit** [8] - 14:16,
16:16, 17:11, 24:10,
28:10, 90:25, 100:18,
112:22
**Exhibit** [93] - 3:10,
3:11, 3:11, 3:12, 3:13,
3:13, 3:14, 3:14, 3:15,
7:12, 7:17, 7:22, 8:19,
8:24, 9:2, 9:3, 12:25,
13:6, 14:14, 14:18,
14:19, 15:6, 15:7,
16:2, 16:17, 17:15,
21:8, 27:22, 32:8,
35:13, 35:25, 37:12,
37:20, 60:2, 62:1,
62:8, 63:23, 63:25,
64:6, 64:13, 64:14,
64:19, 65:2, 66:25,

67:4, 68:7, 68:8, 70:1,
72:21, 73:15, 73:16,
74:5, 74:21, 77:7,
81:2, 81:3, 87:3, 92:4,
92:6, 92:7, 93:7,
93:12, 97:24, 98:1,
100:12, 100:13,
101:5, 101:6, 102:25,
103:1, 103:9, 103:11,
103:13, 106:16,
110:10, 110:14,
110:16, 111:6, 111:7,
111:15, 111:20,
111:22, 111:24,
112:5, 112:11,
112:23, 113:15,
114:1, 114:5, 114:9,
114:11, 114:19,
122:16
**exhibits** [2] - 38:4,
90:23
**Exhibits** [1] - 68:6
**EXHIBITS** [1] - 3:9
**exited** [3] - 55:15,
90:10, 125:10
**expects** [1] - 74:16
**experience** [1] -
123:4
**expire** [1] - 71:15
**explain** [7] - 22:22,
24:1, 58:24, 66:4,
105:24, 106:6, 116:12
**explained** [1] - 68:4
**explanation** [3] -
23:1, 23:23, 105:16
**explicitly** [1] - 57:16
**explore** [5] - 21:13,
21:24, 22:4, 22:13,
23:20
**exploring** [1] - 46:13
**expressing** [1] -
63:15
**extended** [3] - 29:16,
29:17, 29:18
**extending** [1] - 58:17
**extension** [5] -
29:20, 30:11, 35:10,
35:15, 37:3
**extensive** [1] - 33:11
**extent** [1] - 4:7

**F**

**face** [2] - 115:13,
115:18
**fact** [13] - 4:20, 4:21,
34:23, 56:1, 57:4,
57:22, 60:22, 61:19,
65:23, 70:19, 80:20,

85:20, 85:21
**factor** [1] - 58:17
**facts** [9] - 5:9, 59:1,
64:24, 105:10,
105:16, 105:24,
106:6, 119:21, 120:8
**failed** [6] - 30:20,
30:21, 61:6, 70:19,
70:20, 91:23
**failure** [6] - 56:20,
57:7, 64:22, 74:23,
75:18, 76:3
**fair** [5] - 36:9, 93:7,
100:18, 103:5, 114:25
**fairly** [1] - 62:25
**familiar** [2] - 115:22,
116:2
**far** [1] - 64:1
**favor** [1] - 78:2
**FBI** [5] - 42:12,
42:13, 91:18, 91:19,
116:16
**February** [1] - 78:21
**federal** [2] - 33:18,
91:20
**Feedback** [1] - 70:24
**few** [2] - 60:10, 62:6
**fiction** [1] - 45:7
**field** [1] - 91:21
**filed** [2] - 33:7, 35:5
**filing** [3] - 33:18,
33:25, 65:10
**final** [2] - 56:24,
69:5, 69:6
**finally** [1] - 74:16
**finish** [2] - 16:25,
115:25
**first** [31] - 4:10,
12:20, 13:6, 21:12,
22:18, 24:17, 36:4,
56:17, 60:1, 60:12,
60:23, 62:9, 62:12,
62:16, 62:18, 65:6,
66:10, 67:13, 68:12,
70:3, 71:17, 71:19,
73:20, 74:14, 81:2,
100:18, 104:1,
104:23, 106:9, 110:9,
113:22
**firsthand** [1] - 31:24
**fit** [1] - 6:13
**five** [4] - 43:25, 44:1,
72:4, 72:6
**fix** [1] - 70:25
**fixed** [1] - 61:5
**floor** [1] - 28:19
**Floor** [1] - 1:16
**focus** [3] - 10:2,
10:10, 81:5
**focusing** [3] - 10:22,

67:12, 118:20
**folks** [1] - 46:3
**follow** [6] - 59:21,
70:19, 71:23, 72:16,
107:13, 110:6
**follow-up** [1] -
107:13
**followed** [1] - 103:6
**following** [24] - 6:23,
18:11, 21:3, 24:24,
27:17, 46:22, 54:24,
55:16, 55:18, 59:11,
59:13, 69:8, 82:10,
84:8, 90:11, 90:16,
91:6, 93:17, 97:19,
108:24, 109:20,
116:19, 118:15,
125:11
**followups** [1] - 85:7
**FOR** [5] - 1:1, 1:14,
1:15, 1:18, 3:5
**force** [1] - 74:25
**foregoing** [1] - 126:4
**form** [1] - 92:10
**formal** [2] - 23:6,
24:5
**formally** [1] - 34:17
**format** [1] - 114:2
**former** [16] - 34:15,
60:4, 60:12, 62:12,
62:17, 63:4, 63:15,
77:10, 78:3, 79:21,
79:22, 80:3, 84:15,
102:8, 104:6, 104:7
**forth** [4] - 11:20,
11:22, 28:11, 33:11
**forthcoming** [1] -
120:14
**forward** [1] - 24:21
**foul** [1] - 57:3
**foundation** [1] -
92:16
**Fourth** [1] - 1:16
**Friday** [1] - 104:7
**friendship** [1] -
88:12
**front** [1] - 98:4
**full** [11] - 17:1, 28:13,
28:17, 36:17, 37:4,
37:23, 38:12, 39:13,
76:20, 78:9, 126:5
**fully** [4] - 55:1,
74:18, 107:20, 109:22
**future** [5] - 46:17,
61:13, 69:11, 69:14,
100:22

881

## G

**G-E-T-T-E-R** [1] - 92:8
**GASTON** [51] - 1:14, 90:19, 90:22, 91:2, 91:4, 91:12, 92:3, 92:5, 92:22, 93:11, 97:21, 98:3, 98:6, 98:8, 99:12, 99:15, 99:21, 99:23, 100:6, 100:9, 100:10, 100:3, 101:10, 101:13, 101:25, 102:3, 103:8, 103:15, 103:18, 104:1, 104:3, 104:12, 104:15, 104:16, 109:23, 111:21, 114:6, 115:24, 116:7, 116:17, 119:12, 119:23, 120:16, 121:1, 121:15, 122:2, 122:9, 122:11, 122:19, 122:22, 123:10
**Gaston** [9] - 43:16, 44:6, 45:18, 45:21, 88:4, 88:13, 88:15, 90:18, 122:8
**gathered** [2] - 107:8, 107:10
**general** [3] - 28:6, 31:13, 31:21
**generally** [14] - 9:13, 9:15, 10:3, 10:5, 10:18, 11:5, 15:22, 16:10, 31:16, 45:7, 87:1, 103:1, 103:2, 107:19
**gentlemen** [6] - 7:1, 60:18, 64:2, 64:17, 68:1, 90:17
**Getter** [30] - 92:7, 92:9, 92:10, 92:23, 92:25, 93:3, 93:4, 93:9, 98:15, 98:17, 98:19, 98:21, 98:24, 98:25, 99:3, 99:4, 100:14, 100:19, 103:4, 110:9, 110:17, 110:24, 111:3, 112:10, 112:19, 113:5, 113:11, 114:22, 115:3, 115:5
**given** [6] - 8:9, 35:18, 46:2, 68:25, 79:20, 124:12
**goal** [2] - 120:7, 120:9

**Gordon** [7] - 98:6, 99:12, 99:22, 101:10, 102:1, 103:15, 104:2
**govern** [2] - 81:4, 81:6
**government** [5] - 73:7, 73:9, 80:16, 80:18, 108:4
**GOVERNMENT** [4] - 1:14, 3:5, 7:8, 91:10
**Government** [14] - 21:23, 28:9, 56:10, 57:9, 58:5, 61:15, 64:22, 90:20, 92:17, 97:22, 111:16, 118:25, 123:6, 124:4
**government's** [3] - 3:10, 3:11, 3:11
**Government's** [48] - 12:24, 13:6, 14:14, 14:18, 14:19, 15:7, 16:2, 16:17, 17:15, 21:8, 27:22, 32:8, 35:13, 55:21, 68:8, 73:15, 74:20, 77:7, 81:2, 81:3, 87:3, 90:25, 92:4, 92:6, 93:7, 93:12, 97:24, 98:1, 100:12, 101:5, 101:6, 102:25, 103:1, 103:9, 103:11, 103:13, 106:16, 110:10, 110:14, 110:16, 111:15, 112:5, 112:11, 112:22, 114:1, 114:19
**granted** [1] - 125:2
**graphic** [4] - 102:4, 102:19, 102:20, 103:16
**great** [1] - 71:7
**group** [8] - 43:18, 44:10, 45:5, 45:6, 45:7, 45:25, 46:4, 88:8
**guess** [1] - 44:23
**guidance** [1] - 90:5

## H

**H-A-R-T** [1] - 91:16
**H.Res** [1] - 8:2
**hair** [1] - 43:14
**half** [2] - 38:7, 38:8
**hand** [2] - 7:11, 38:11
**handed** [2] - 8:9, 37:19
**handle** [2] - 98:17,

98:21
**hard** [1] - 43:17
**harm** [1] - 57:3
**HART** [1] - 91:10
**Hart** [29] - 3:7, 90:20, 91:13, 91:15, 92:6, 93:7, 98:4, 99:6, 99:16, 99:24, 100:11, 100:18, 101:14, 102:4, 102:23, 103:19, 104:4, 104:11, 104:17, 106:13, 106:16, 106:25, 110:4, 110:13, 112:2, 113:15, 114:14, 122:12, 123:4
**head** [1] - 57:20
**headed** [1] - 41:8
**heading** [1] - 121:19
**headline** [4] - 103:21, 103:22, 111:10, 114:14
**hear** [3] - 17:1, 24:16, 61:8
**heard** [1] - 85:10
**hearing** [3] - 66:16, 66:20, 72:25
**hearings** [2] - 10:16
**held** [3] - 36:24, 40:22, 77:5
**help** [3] - 22:8, 35:3, 71:25
**helpful** [1] - 21:15
**Henry** [3] - 43:2, 44:15, 45:1
**hereby** [1] - 126:3
**highlighted** [9] - 7:21, 70:15, 72:22, 73:20, 74:7, 74:15, 81:8, 81:20, 81:21
**highlighting** [2] - 81:6, 87:10
**Hill** [2] - 12:8, 41:5
**holding** [3] - 6:5, 30:5, 32:25
**holdings** [1] - 4:18
**holds** [1] - 93:4
**honestly** [1] - 88:7
**Honor** [68] - 4:1, 5:19, 5:25, 6:19, 7:5, 7:6, 8:17, 8:24, 15:8, 17:2, 22:17, 23:2, 24:15, 37:14, 44:19, 45:13, 45:20, 56:12, 57:13, 58:4, 58:7, 58:19, 59:6, 59:15, 59:19, 60:13, 60:16, 62:4, 64:13, 64:15, 66:23, 69:18, 82:7,

98:16, 89:17, 89:22, 90:1, 90:7, 90:13, 90:19, 90:22, 91:2, 91:8, 92:12, 93:11, 97:21, 101:2, 101:3, 103:8, 104:12, 108:21, 109:23, 110:1, 111:19, 114:4, 115:24, 116:7, 119:12, 119:23, 120:16, 121:1, 121:5, 121:15, 122:6, 122:9, 123:11, 124:4, 125:5
**Honor's** [1] - 100:6
**HONORABLE** [1] - 1:10
**hopefully** [1] - 90:5
**hour** [1] - 90:3
**hours** [1] - 85:21
**House** [29] - 4:7, 4:13, 4:20, 4:24, 5:10, 7:25, 28:13, 28:17, 28:19, 36:15, 36:17, 36:22, 37:4, 37:24, 38:12, 39:13, 39:21, 41:17, 42:1, 42:23, 42:24, 69:9, 70:21, 75:3, 76:9, 76:20, 78:9, 104:6
**House's** [1] - 4:14
**husher** [3] - 55:3, 118:18, 121:4
**hypothetically** [1] - 5:9

## I

**idea** [1] - 63:15
**identification** [9] - 7:12, 37:11, 37:21, 60:2, 63:23, 64:5, 67:4, 111:6, 113:15
**identified** [1] - 74:12
**identify** [5] - 16:1, 16:7, 16:12, 28:1, 69:8
**identifying** [1] - 33:15
**imagine** [2] - 114:3, 120:23
**impeach** [1] - 121:2
**impeachment** [2] - 120:17, 120:18
**important** [3] - 57:1, 57:11, 120:13
**impress** [1] - 120:13
**improper** [5] - 57:20, 120:16, 120:18, 121:2
**IN** [1] - 3:9

**inappropriate** [1] - 73:23
**inbox** [1] - 79:14
**include** [5] - 11:7, 23:10, 72:9, 81:11, 91:25
**including** [2] - 38:1, 40:19
**incorrect** [1] - 58:1
**indeed** [2] - 66:15, 72:24
**indicate** [4] - 11:19, 67:15, 105:20, 107:1
**indicated** [1] - 61:22
**indicates** [1] - 13:16
**indicating** [5] - 12:2, 67:13, 68:13, 69:13, 69:16
**individual** [1] - 41:25
**individuals** [6] - 11:13, 12:2, 31:15, 32:3, 44:14, 92:19
**indulgence** [1] - 88:1
**inform** [1] - 124:14
**informal** [2] - 23:6, 24:5
**informally** [1] - 34:18
**information** [25] - 5:23, 29:18, 30:8, 30:17, 31:5, 31:24, 32:21, 33:3, 33:6, 33:10, 33:15, 34:10, 46:12, 61:17, 65:15, 65:18, 71:23, 71:24, 73:24, 112:9, 118:25, 119:4, 120:11, 120:14, 123:7
**informed** [1] - 34:9
**informing** [1] - 62:12
**innocent** [1] - 123:8
**instances** [1] - 115:22
**instead** [3] - 56:20, 85:7, 87:9
**instruct** [2] - 56:11, 61:12
**instructed** [2] - 5:7, 57:4
**instructing** [1] - 60:25
**instruction** [6] - 56:10, 57:1, 58:6, 58:8, 68:4, 73:22
**instructions** [11] - 23:9, 56:15, 56:24, 57:10, 59:6, 61:1, 61:16, 61:23, 64:3, 64:19, 66:25
**intends** [1] - 55:22
**intention** [1] - 74:1

**intentional** [1] - 64:21
**intentionally** [2] - 61:6, 61:20
**interest** [1] - 66:12
**interested** [3] - 33:16, 46:11, 46:13
**internet** [2] - 92:21, 112:11
**interpretation** [2] - 4:13, 120:10
**interview** [6] - 116:16, 119:7, 119:10, 120:21, 121:9, 121:23
**interviewed** [2] - 42:12, 119:9
**interviewing** [1] - 120:7
**interviews** [1] - 115:7
**introduce** [2] - 5:6, 91:13
**investigate** [1] - 91:20
**investigation** [16] - 24:13, 36:14, 71:14, 91:22, 91:25, 99:10, 104:8, 104:17, 110:7, 110:20, 111:1, 111:12, 112:4, 119:13, 119:15, 120:15
**investigations** [3] - 88:22, 88:24, 89:1
**investigative** [5] - 9:14, 9:25, 10:1, 10:2, 10:21
**invitation** [2] - 32:20, 65:17
**invocation** [3] - 28:10, 34:15, 75:13
**invoke** [2] - 65:24, 80:21
**invoked** [3] - 34:18, 34:21, 62:19
**invoking** [1] - 75:1
**involved** [13] - 9:10, 11:8, 11:12, 12:10, 12:17, 31:15, 32:3, 35:19, 35:22, 38:18, 46:3, 89:1, 118:21
**involvement** [1] - 107:19
**involves** [1] - 28:13
**involving** [2] - 12:14, 12:21
**irrelevant** [2] - 56:22, 61:11
**issue** [23] - 4:19,

10:13, 13:18, 13:19, 18:1, 18:7, 23:21, 24:4, 33:7, 33:12, 33:21, 34:8, 46:15, 60:5, 65:13, 86:20, 87:15, 87:17, 89:14, 90:4, 123:18, 123:19, 124:7
**issued** [7] - 21:17, 66:14, 71:17, 71:19, 73:5, 73:12, 99:25
**issues** [9] - 4:11, 17:24, 23:16, 29:11, 34:6, 34:22, 59:18, 87:12, 124:13
**it'll** [1] - 90:8
**Item** [1] - 81:5
**items** [1] - 38:2
**itself** [2] - 38:7, 57:6

**J**

**Jan** [4] - 110:20, 111:1, 111:11, 112:4
**January** [15] - 71:25, 77:17, 77:18, 77:23, 78:20, 89:13, 99:10, 99:19, 100:16, 101:23, 103:23, 104:9, 112:25, 113:9, 114:16
**job** [1] - 116:2
**joined** [1] - 45:10
**Judge** [1] - 63:24
**judge** [2] - 13:19, 80:11
**JUDGE** [1] - 1:11
**judges** [2] - 80:14, 80:16
**judgment** [1] - 124:19
**judicial** [1] - 80:17
**July** [23] - 1:6, 60:3, 62:10, 64:7, 67:7, 67:14, 68:14, 68:22, 70:3, 70:11, 70:13, 70:17, 71:12, 72:8, 72:12, 73:10, 79:9, 79:13, 79:14, 79:16, 113:17, 126:10
**jury** [59] - 4:4, 4:19, 4:22, 4:23, 5:7, 6:6, 6:21, 6:22, 7:2, 7:14, 16:1, 18:12, 24:25, 46:23, 55:7, 55:9, 55:15, 56:11, 56:14, 56:19, 57:2, 57:15, 57:16, 57:19, 58:12, 59:4, 59:10, 60:18,

64:3, 64:17, 68:1, 81:21, 82:11, 90:10, 90:14, 90:15, 91:14, 93:13, 93:18, 97:23, 97:25, 101:4, 103:10, 103:12, 106:9, 107:4, 108:25, 110:13, 111:23, 113:2, 113:4, 113:7, 113:23, 114:10, 116:20, 122:4, 124:11, 124:14, 125:10
**JURY** [1] - 1:10
**Justice** [1] - 75:4

**K**

**kind** [2] - 86:16, 120:24
**kinds** [1] - 116:15
**knowledge** [4] - 8:1, 8:3, 8:8, 31:9
**known** [3] - 42:17, 43:11, 121:10
**knows** [1] - 55:23
**Kristin** [3] - 3:6, 119:9, 120:7
**KRISTIN** [1] - 7:8

**L**

**ladies** [6] - 7:1, 60:18, 64:2, 64:17, 68:1, 90:17
**laid** [1] - 23:8
**language** [2] - 16:1, 114:18
**largely** [1] - 4:8
**last** [19] - 4:6, 4:17, 13:23, 14:16, 16:16, 16:17, 17:10, 17:23, 29:10, 45:17, 46:14, 67:10, 72:22, 74:6, 74:20, 77:23, 88:7, 123:4, 123:15
**late** [3] - 33:24, 67:22, 124:12
**law** [3] - 4:22, 23:21, 58:1
**LAW** [1] - 1:22
**lawful** [1] - 65:1
**lawsuit** [13] - 33:7, 33:17, 33:18, 33:20, 33:21, 34:23, 35:5, 65:10, 77:4, 77:7, 77:9, 77:13, 78:1
**lawyer** [21] - 9:17, 9:22, 10:12, 10:25, 11:7, 11:10, 13:3,

17:20, 21:10, 27:24, 32:10, 35:3, 36:3, 37:2, 46:15, 115:10, 116:11, 116:16, 118:22, 118:24, 119:4
**lawyers** [3] - 9:11, 115:23, 116:3
**lay** [1] - 92:16
**leading** [7] - 41:11, 41:23, 42:2, 89:2, 89:3, 105:17, 105:24
**leads** [1] - 71:23
**learn** [3] - 119:20, 120:7, 121:9
**leash** [1] - 56:8
**least** [5] - 5:7, 6:10, 45:8, 72:1
**leave** [4] - 4:15, 6:9, 55:12
**leeway** [1] - 120:2
**left** [5] - 55:23, 70:1, 72:3, 98:10, 102:5
**legal** [5] - 4:11, 13:9, 23:16, 28:12, 74:3
**lengths** [1] - 123:7
**Lesley** [6] - 4:3, 6:20, 55:6, 91:9, 124:15, 125:7
**letter** [99] - 13:2, 13:15, 14:20, 14:21, 14:24, 15:2, 15:5, 15:11, 15:14, 15:21, 16:3, 16:5, 16:8, 16:18, 17:19, 21:10, 23:14, 27:23, 28:2, 28:5, 29:9, 29:23, 30:10, 30:19, 31:1, 31:4, 31:10, 31:14, 31:25, 32:6, 32:9, 32:12, 32:15, 32:16, 32:18, 32:19, 32:23, 33:1, 33:2, 33:6, 33:16, 35:14, 35:17, 35:21, 36:1, 36:4, 36:19, 56:4, 56:15, 58:21, 60:8, 60:10, 60:13, 60:19, 62:7, 62:9, 62:13, 62:17, 62:20, 63:2, 63:3, 63:4, 63:9, 63:14, 64:6, 64:11, 65:6, 65:14, 65:22, 66:9, 66:19, 67:6, 67:12, 67:14, 68:14, 68:15, 69:1, 70:4, 70:11, 71:11, 73:10, 73:12, 73:17, 73:19, 73:22, 74:14, 75:23, 76:2, 77:8, 84:23, 85:1, 87:4, 87:5, 87:10,

87:20, 102:10, 102:11, 102:13, 102:14
**letters** [29] - 15:22, 15:24, 16:10, 16:11, 16:12, 28:7, 31:2, 34:9, 34:23, 35:19, 38:1, 38:17, 55:24, 56:7, 56:13, 58:6, 58:8, 58:9, 58:17, 58:19, 65:17, 84:18, 84:20, 84:22, 85:1, 107:13, 107:17, 114:17
**liability** [1] - 30:3
**light** [3] - 30:4, 33:24, 65:10
**likely** [2] - 6:9, 6:11
**limited** [4] - 55:25, 61:3, 71:14, 73:22
**limiting** [5] - 61:2, 61:16, 64:18, 66:25, 68:3
**line** [6] - 36:4, 59:2, 62:12, 62:16, 81:7
**lines** [3] - 6:7, 57:8, 74:6
**link** [13] - 99:3, 99:19, 102:1, 102:16, 102:18, 102:20, 102:21, 102:23, 103:6, 112:11, 114:22
**linked** [1] - 103:3
**links** [4] - 92:20, 98:25, 99:4, 115:5
**LISA** [2] - 2:1, 126:3
**Lisa** [1] - 126:12
**list** [1] - 91:1
**listen** [1] - 28:22
**lodged** [1] - 82:4
**logistical** [2] - 86:17, 86:20
**look** [12] - 12:24, 16:16, 17:18, 21:16, 71:22, 72:19, 74:5, 80:24, 86:13, 102:1, 104:1, 112:22
**looked** [2] - 69:1, 115:6
**looking** [6] - 86:10, 98:24, 99:7, 102:16, 102:18, 122:16
**looks** [1] - 66:21
**low** [1] - 56:4

**M**

**ma'am** [1] - 59:21
**Mail** [5] - 103:3,

113:16, 113:17,
114:15, 114:23
**mailed** [1] - 8:9
**main** [1] - 34:6
**majority** [1] - 43:5
**malleable** [2] - 56:1,
108:13
**managed** [1] - 10:20
**manages** [2] - 10:1,
10:9
**March** [1] - 78:24
**marked** [7] - 7:11,
37:20, 64:6, 92:4,
100:12, 111:5, 113:14
**Maryland** [1] - 1:21
**mask** [1] - 43:14
**material** [1] - 34:24
**materials** [2] - 5:17,
29:22
**matter** [4] - 4:20,
29:4, 79:18, 120:15
**matters** [4] - 10:3,
34:13, 60:22, 88:23
**MATTHEW** [1] - 1:18
**mean** [10] - 10:7,
21:22, 39:8, 45:5,
57:15, 66:4, 76:4,
85:13, 93:2, 98:14
**meaning** [1] - 78:3
**means** [2] - 5:11,
93:4
**meantime** [1] - 70:9
**measures** [1] - 40:19
**media** [2] - 92:10,
92:18
**meet** [5] - 44:3,
44:17, 105:24,
115:23, 116:3
**meeting** [9] - 30:5,
32:25, 44:4, 44:8,
105:6, 115:9, 115:11,
115:12, 115:19
**meetings** [4] - 116:2,
116:6, 116:11, 118:24
**meets** [1] - 44:24
**member** [4] - 31:24,
41:25, 42:2, 89:6
**members** [24] -
14:24, 15:1, 15:3,
15:23, 16:11, 29:4,
31:8, 31:16, 34:12,
35:22, 38:19, 41:6,
41:11, 41:15, 42:14,
43:5, 44:7, 44:11,
44:17, 44:24, 81:23,
89:6, 89:10, 121:24
**memo** [2] - 105:6,
105:19
**memory** [4] - 31:23,
32:1, 32:3, 32:5

**mentioned** [2] - 41:4,
123:17
**message** [1] - 31:6
**mic** [1] - 70:7
**microphone** [2] -
70:6, 71:3
**middle** [1] - 81:7,
102:9
**midnight** [1] - 79:14
**might** [6] - 11:11,
21:15, 30:17, 35:4,
112:21
**mind** [1] - 59:17
**minute** [2] - 55:8,
112:2
**minutes** [1] - 124:20
**misconduct** [6] -
30:9, 30:18, 30:19,
32:22, 33:4, 65:18
**mistaken** [1] - 108:9
**mixed** [1] - 4:21
**MOLLY** [1] - 1:14
**moment** [1] - 106:13
**Monday** [1] - 29:14
**Montgomery** [1] -
1:24
**month** [2] - 44:5,
78:22
**monthly** [4] - 44:3,
44:6, 44:18, 44:25
**months** [3] - 72:1,
72:4, 77:24
**moreover** [1] - 73:25
**morning** [3] - 65:8,
124:9, 124:20
**most** [7] - 41:5,
44:11, 44:15, 44:17,
44:24, 55:24
**motion** [1] - 124:19
**move** [20] - 6:18,
8:24, 14:14, 15:6,
17:15, 24:21, 32:8,
60:15, 63:22, 64:13,
66:22, 67:3, 67:23,
92:17, 93:11, 101:3,
103:8, 111:19, 114:4,
125:3
**moved** [1] - 108:7
**moves** [1] - 97:22
**moving** [3] - 62:16,
67:2, 103:25
**MR** [99] - 5:19, 5:21,
7:5, 7:10, 7:13, 7:16,
8:18, 8:21, 8:24, 9:5,
12:24, 13:1, 14:15,
14:17, 15:6, 15:9,
17:2, 17:4, 17:15,
17:17, 21:7, 23:18,
24:2, 24:7, 24:18,
27:21, 29:2, 29:8,

31:20, 35:9, 37:10,
37:17, 37:18, 38:20,
39:10, 40:6, 43:9,
44:22, 45:16, 46:6,
58:4, 58:24, 59:3,
59:5, 59:8, 59:15,
59:19, 59:20, 60:15,
62:4, 62:5, 63:22,
64:4, 64:13, 65:4,
66:22, 67:3, 67:5,
67:20, 67:22, 68:11,
69:18, 82:7, 89:17,
92:12, 92:15, 93:14,
93:16, 108:21,
108:23, 110:1, 110:3,
110:11, 110:12,
111:19, 112:1,
113:24, 114:4, 114:7,
114:13, 116:1,
116:10, 118:19,
119:13, 119:16,
119:18, 120:6,
120:20, 121:4, 121:8,
121:19, 121:22,
122:6, 123:11,
123:14, 123:24,
124:18, 124:24, 125:5
**MS** [96] - 5:25, 6:19,
8:17, 9:1, 16:23, 18:9,
22:17, 22:21, 24:15,
24:22, 28:24, 29:6,
31:11, 35:7, 38:14,
39:5, 40:1, 43:7,
44:19, 45:13, 45:20,
46:19, 56:12, 57:11,
57:13, 60:13, 60:17,
64:15, 67:18, 67:25,
69:22, 69:24, 70:8,
70:10, 71:1, 71:7,
71:8, 82:5, 84:10,
88:1, 88:2, 89:16,
90:1, 90:7, 90:13,
90:19, 90:22, 91:2,
91:4, 91:12, 92:3,
92:5, 92:22, 93:11,
97:21, 98:3, 98:6,
98:8, 99:12, 99:15,
99:21, 99:23, 100:6,
100:9, 100:10, 101:3,
101:10, 101:13,
101:25, 102:3, 103:8,
103:15, 103:18,
104:1, 104:3, 104:12,
104:15, 104:16,
109:23, 111:21,
114:6, 115:24, 116:7,
116:17, 119:12,
119:23, 120:16,
121:1, 121:15, 122:2,
122:9, 122:11,
122:19, 122:22,

123:10, 124:4
**Mueller** [1] - 24:13
**multiple** [1] - 89:9
**must** [1] - 69:9

**N**

**name** [5] - 16:3,
91:14, 91:15, 98:12,
115:18
**named** [1] - 45:1
**nature** [2] - 40:5,
71:14
**near** [1] - 69:11
**need** [8] - 40:18,
46:21, 58:24, 59:1,
68:5, 71:2, 90:4,
125:7
**needed** [2] - 85:14,
86:21
**needs** [2] - 23:25,
86:10
**negotiate** [2] - 10:4,
87:7
**negotiated** [2] -
10:12, 10:25
**negotiating** [1] -
108:15
**negotiation** [2] -
9:19, 86:24
**negotiations** [5] -
9:11, 9:13, 9:16, 9:22,
11:9
**never** [1] - 6:12
**new** [10] - 30:14,
30:16, 33:6, 33:10,
33:15, 34:4, 34:23,
69:1, 87:7
**newly** [1] - 35:5
**next** [5] - 13:11,
13:16, 66:10, 89:25,
112:22
**NICHOLS** [1] - 1:10
**nine** [2] - 15:3, 72:1
**noncompliance** [7] -
29:12, 40:14, 74:24,
74:25, 105:17,
105:25, 106:7
**nonfiction** [1] - 45:4
**nonpartisan** [1] -
42:14
**Northwest** [3] - 1:16,
2:3, 126:14
**NOT** [1] - 114:16
**note** [1] - 4:18
**noted** [2] - 30:10,
101:9
**notes** [1] - 126:5
**nothing** [5] - 34:14,

69:19, 89:16, 109:23,
123:10
**notice** [5] - 58:10,
63:3, 63:14, 66:2,
66:4
**notify** [2] - 76:14,
76:23
**notion** [1] - 58:1
**notions** [1] - 57:20
**November** [5] -
42:12, 78:13, 78:14,
78:20, 104:23
**number** [17] - 15:23,
17:5, 23:8, 33:20,
34:16, 34:17, 38:18,
39:8, 40:4, 40:7, 40:8,
41:7, 43:19, 81:24,
88:22

**O**

**O'Neill** [1] - 69:9
**objecting** [1] - 22:18
**objection** [51] - 8:17,
9:1, 13:7, 13:14,
14:21, 15:15, 16:23,
18:9, 22:15, 24:15,
24:22, 28:24, 29:6,
31:11, 35:7, 38:14,
39:5, 40:1, 43:7,
44:19, 45:13, 45:20,
46:19, 55:21, 60:13,
60:17, 64:15, 64:16,
67:18, 67:24, 67:25,
82:2, 82:3, 87:22,
93:14, 101:8, 108:21,
111:21, 114:6,
115:24, 116:7,
116:17, 119:12,
119:23, 119:25,
120:16, 121:1, 121:7,
121:15, 122:2, 122:3
**objections** [1] -
92:13
**obligation** [1] - 74:9
**obstacle** [1] - 86:17
**obtain** [1] - 17:12
**occasions** [2] -
12:17, 24:12
**occur** [1] - 69:11
**occurred** [2] - 4:24,
28:20
**October** [58] - 14:1,
14:6, 14:11, 17:19,
21:18, 23:14, 23:15,
27:25, 29:14, 29:16,
29:21, 29:23, 30:6,
30:14, 30:21, 30:23,
30:25, 32:15, 36:9,

36:18, 36:24, 39:11, 39:14, 39:16, 39:24, 40:11, 40:12, 40:15, 40:23, 61:14, 65:8, 65:15, 65:24, 66:3, 66:6, 73:17, 74:13, 75:7, 75:12, 75:17, 75:24, 76:13, 76:22, 85:6, 85:10, 87:4, 87:5, 87:20, 87:23, 100:15, 101:15, 101:16, 101:20, 103:3, 103:20, 107:6, 107:9, 113:18

**OF** [5] - 1:1, 1:3, 1:10, 1:15, 1:22

**off-screen** [1] - 115:16

**offense** [1] - 57:4

**offer** [17] - 70:12, 72:8, 72:9, 72:12, 72:15, 75:21, 76:17, 77:1, 77:20, 78:6, 78:17, 78:21, 79:9, 79:12, 105:15, 105:24, 106:4

**offered** [4] - 58:9, 58:10, 60:20, 111:16

**office** [2] - 69:10, 91:21

**OFFICE** [1] - 1:15

**Office** [10] - 28:15, 29:5, 105:6, 105:7, 105:9, 105:16, 105:20, 106:1, 106:4, 121:25

**Office's** [1] - 105:11

**OFFICES** [1] - 1:22

**official** [3] - 66:5, 79:22, 126:12

**Official** [1] - 2:1

**often** [2] - 12:4, 44:3

**once** [2] - 14:20, 44:5

**one** [39] - 6:3, 14:16, 16:12, 16:14, 17:11, 17:24, 18:10, 27:25, 32:24, 33:5, 33:25, 34:8, 34:16, 35:10, 35:15, 35:21, 35:23, 37:2, 38:15, 42:17, 42:19, 44:12, 45:17, 58:19, 61:18, 65:9, 70:8, 81:24, 89:6, 89:8, 90:2, 90:4, 102:17, 106:13, 106:22, 110:10, 119:8, 123:11, 124:7

**one-paragraph** [1] - 35:21

**one-week** [6] - 32:24, 33:25, 35:10, 35:15, 37:2, 65:9

**ongoing** [1] - 74:9

**online** [1] - 111:8

**open** [18] - 4:15, 6:9, 21:4, 27:18, 36:10, 36:12, 46:7, 54:25, 55:9, 55:23, 59:22, 68:24, 69:13, 69:16, 84:9, 97:20, 109:21, 118:16

**opening** [1] - 61:22

**operating** [1] - 80:1

**opinions** [1] - 92:20

**opportunity** [1] - 104:18

**opposed** [2] - 72:5, 115:18

**option** [2] - 21:13, 23:19

**order** [2] - 73:7, 118:25

**ordered** [1] - 82:4

**orders** [1] - 82:2

**organizations** [1] - 92:19

**orient** [1] - 99:24

**original** [1] - 85:9

**otherwise** [5] - 4:14, 64:25, 65:1, 82:1, 124:9

**outreach** [1] - 70:17

**outright** [2] - 12:5, 12:16

**outside** [9] - 18:12, 24:25, 43:16, 46:23, 82:11, 93:18, 108:25, 116:20, 119:24

**outstanding** [1] - 92:13

**overall** [2] - 38:3, 98:25

**overlapped** [2] - 42:19, 43:13

**overrule** [1] - 55:20

**overruled** [8] - 31:12, 39:6, 40:2, 45:23, 64:16, 116:8, 120:3, 121:7

**overrules** [1] - 82:2

**overseeing** [1] - 1:11

**Oversight** [1] - 42:23

**oversight** [2] - 12:10, 88:23

**own** [2] - 4:14, 86:7

**P**

**p.m** [8] - 1:7, 6:23, 29:14, 55:16, 59:11, 90:11, 90:16, 125:11

**Page** [7] - 24:10, 72:20, 74:5, 77:7, 81:1, 81:2, 103:25

**PAGE** [1] - 3:9

**page** [23] - 13:7, 13:11, 16:16, 21:9, 28:2, 29:9, 32:9, 64:6, 66:10, 72:23, 74:7, 74:13, 87:10, 92:8, 99:1, 99:3, 99:4, 110:17, 115:3, 115:5, 122:16

**Pages** [1] - 37:12

**pages** [5] - 37:25, 38:3, 38:7, 38:8, 92:19

**Paragraph** [7] - 5:3, 5:17, 5:19, 5:20, 7:21, 8:10, 8:19

**paragraph** [24] - 7:21, 8:12, 13:16, 16:18, 17:23, 29:10, 35:21, 35:23, 62:16, 62:21, 65:20, 66:8, 66:10, 66:17, 67:13, 68:18, 69:5, 69:6, 70:16, 73:20, 74:6, 74:15, 74:20, 104:2

**part** [7] - 13:23, 35:25, 44:20, 64:16, 79:25, 80:16, 98:7

**participate** [1] - 119:10

**participated** [4] - 40:15, 115:9, 118:20, 118:24

**particular** [2] - 56:4, 99:7

**parties** [5] - 34:13, 55:3, 89:9, 90:23, 124:13

**parties'** [1] - 60:24

**partisan** [2] - 88:25, 89:13

**party** [1] - 89:9

**passed** [1] - 107:1

**past** [3] - 12:13, 12:19, 88:9

**pasted** [1] - 112:19

**paths** [2] - 43:17, 88:7

**pen** [1] - 8:15

**people** [4] - 15:19, 45:11, 66:13, 92:11

**percent** [1] - 6:14

**perhaps** [6] - 60:19, 60:20, 61:8, 70:6, 124:15, 124:16

**permission** [3] - 79:20, 100:6, 104:12

**person** [6] - 11:24, 15:21, 29:15, 43:10, 69:9, 120:22

**personal** [6] - 10:8, 31:9, 42:5, 42:8, 75:6, 88:12

**personally** [3] - 38:21, 38:25, 45:5

**perspective** [1] - 13:9

**persuade** [1] - 118:25

**phones** [1] - 93:15

**photograph** [3] - 98:7, 98:9, 99:13

**phrase** [1] - 22:10

**phrasing** [1] - 32:23

**pick** [3] - 69:25, 93:15, 124:10

**picked** [1] - 30:25

**picture** [4] - 99:18, 102:1, 111:14, 111:15

**place** [8] - 28:5, 44:8, 62:22, 63:10, 74:17, 80:20, 115:11, 121:14

**places** [1] - 91:4

**Plaintiff** [1] - 1:4

**plan** [1] - 124:10

**platform** [1] - 92:18

**play** [2] - 38:21, 66:19

**podcast** [2] - 34:13, 99:5

**podium** [1] - 71:3

**point** [12] - 4:5, 15:4, 22:7, 40:14, 40:15, 43:10, 44:16, 45:1, 79:5, 87:23, 107:11

**points** [3] - 6:10, 60:10, 62:7

**political** [4] - 45:18, 89:9, 89:13

**politics** [1] - 46:4

**popped** [1] - 112:14

**portable** [2] - 70:7, 70:8

**portion** [2] - 39:25, 118:17

**portions** [1] - 21:20

**position** [5] - 5:10, 13:15, 21:16, 33:14, 34:3, 34:5, 59:5, 66:9, 73:23, 80:6, 87:19, 87:21

**positions** [2] - 60:24, 89:4

**possibility** [5] - 6:10, 16:18, 40:18, 75:4, 111:4

**possible** [6] - 5:5, 5:7, 9:24, 10:5, 10:15, 119:1

**possibly** [1] - 34:11

**post** [12] - 39:18, 92:11, 93:8, 98:7, 98:22, 99:7, 99:8, 99:17, 100:14, 100:19, 101:14, 101:21

**posted** [2] - 99:9, 115:2

**posting** [7] - 100:2, 100:16, 101:15, 101:20, 101:22, 103:3, 113:11

**postings** [1] - 115:6

**posts** [1] - 110:9

**potential** [6] - 4:7, 34:15, 56:13, 61:17, 120:11, 121:12

**potentially** [3] - 4:19, 30:2, 81:12

**powers** [1] - 4:15

**practice** [3] - 10:6, 10:7, 10:8

**Pratt** [1] - 1:20

**precise** [2] - 41:7, 113:7

**precisely** [1] - 63:13

**predominantly** [1] - 99:4

**prefer** [1] - 70:7

**prefers** [2] - 66:15, 72:24

**prejudging** [1] - 125:3

**premise** [2] - 33:9, 34:19

**prepare** [1] - 40:5

**preparing** [1] - 8:5

**presence** [7] - 18:12, 24:25, 46:23, 82:11, 93:18, 108:25, 116:20

**present** [2] - 28:19, 125:4

**presented** [6] - 4:11, 4:22, 6:7, 6:12, 8:4, 55:5

**preserve** [2] - 81:10, 81:23

**preserved** [1] - 22:20

**President** [28] - 18:1, 18:7, 21:14, 21:25, 22:4, 22:5, 22:12,

58:21, 60:4, 60:12, 62:9, 62:17, 62:21, 63:4, 63:15, 65:10, 65:22, 66:8, 66:11, 66:19, 68:14, 68:25, 79:21, 79:22, 80:3, 84:15, 102:8, 104:7
**president** [7] - 23:4, 23:7, 34:15, 34:17, 62:12, 62:17, 78:3
**president's** [1] - 77:10
**presidential** [1] - 34:15
**presides** [1] - 84:11
**presumption** [1] - 22:5
**previous** [1] - 102:14
**previously** [1] - 69:2
**PREVIOUSLY** [1] - 7:8
**primarily** [1] - 115:21
**private** [3] - 34:12, 35:2, 35:4
**privilege** [54] - 13:18, 18:1, 18:8, 21:14, 22:2, 22:6, 22:14, 23:5, 23:6, 23:12, 23:17, 23:21, 24:6, 33:8, 33:13, 33:22, 34:7, 34:11, 34:18, 34:19, 34:24, 35:6, 56:18, 57:17, 57:20, 58:13, 58:15, 58:16, 58:22, 61:9, 61:10, 62:19, 62:23, 63:5, 63:16, 64:23, 65:24, 66:13, 73:21, 74:8, 75:8, 75:13, 77:10, 81:10, 81:11, 81:14, 81:18, 81:23, 87:16, 87:20, 108:2, 123:19, 123:21, 123:22
**privileges** [4] - 23:10, 34:16, 74:1, 80:21
**procedure** [1] - 81:17
**procedures** [4] - 23:8, 28:11, 75:2, 80:20
**proceed** [4] - 30:4, 57:25, 81:24, 90:12
**proceeding** [9] - 12:18, 29:24, 39:9, 39:11, 39:14, 39:16, 39:19, 65:16, 76:25
**Proceedings** [1] - 125:12
**proceedings** [25] -

6:23, 18:11, 21:3, 24:24, 27:17, 46:22, 54:24, 55:16, 55:18, 59:11, 59:13, 82:10, 84:8, 84:12, 90:11, 90:16, 91:6, 93:17, 97:19, 108:24, 109:20, 116:19, 118:15, 125:11, 126:6
**process** [14] - 11:3, 16:10, 16:20, 28:5, 28:6, 31:14, 31:21, 35:19, 38:16, 39:4, 70:20, 93:4, 107:19, 107:21
**produce** [7] - 14:4, 14:5, 63:7, 74:10, 74:11, 101:18, 101:19
**produced** [5] - 69:7, 69:17, 85:6, 85:24, 126:6
**producing** [1] - 68:20
**production** [4] - 40:15, 46:16, 65:25, 69:8
**proffer** [2] - 6:1, 116:6
**prohibit** [1] - 56:6
**promise** [1] - 63:19
**proposed** [1] - 56:24
**prosecute** [1] - 105:9
**prosecution** [7] - 16:22, 17:13, 75:19, 76:11, 76:13, 76:21, 78:10
**prosecutor** [7] - 43:10, 43:14, 43:15, 43:21, 116:12, 121:10, 123:15
**prosecutors** [4] - 42:17, 42:19, 116:3, 118:21
**protect** [1] - 80:22
**provide** [19] - 11:19, 22:8, 22:9, 29:22, 30:8, 30:10, 30:20, 32:21, 62:18, 65:18, 68:22, 72:9, 74:2, 75:9, 75:14, 81:17, 85:18, 120:11, 123:7
**provided** [15] - 5:16, 5:23, 7:24, 8:1, 8:8, 8:12, 8:16, 14:10, 63:14, 65:22, 66:9, 72:11, 72:13, 107:12, 107:17
**provides** [1] - 85:20
**providing** [11] - 23:10, 29:18, 30:17,

31:5, 33:3, 46:8, 46:12, 65:15, 107:23, 118:25
**provision** [1] - 59:23
**public** [10] - 21:6, 27:20, 55:1, 66:16, 66:20, 72:25, 76:25, 91:20, 92:1, 109:22
**publicly** [1] - 76:24
**publish** [4] - 7:13, 93:12, 101:4, 103:9
**published** [5] - 97:23, 97:25, 103:12, 111:23, 114:10
**pull** [1] - 110:11
**pulled** [1] - 112:9
**punch** [1] - 59:2
**purported** [1] - 74:8
**purpose** [1] - 61:3
**purposes** [11] - 7:12, 37:11, 37:21, 60:2, 61:18, 63:23, 64:6, 67:4, 111:6, 113:15, 121:23
**pursuant** [1] - 69:14
**pursuing** [1] - 17:12
**put** [3] - 70:6, 92:20, 111:3
**putting** [2] - 15:11, 66:1

## Q

**questioning** [1] - 119:19
**questions** [27] - 4:9, 4:11, 5:2, 24:9, 55:21, 56:7, 56:16, 57:14, 61:3, 61:9, 64:20, 73:2, 74:18, 80:11, 84:17, 85:4, 86:1, 86:4, 86:23, 86:25, 88:3, 88:20, 89:18, 110:6, 115:19, 119:17, 122:12
**quickly** [1] - 104:13
**quite** [1] - 88:10
**quote** [8] - 74:1, 74:2, 103:22, 103:23, 104:2, 104:9, 122:17, 122:23
**quoting** [1] - 100:23

## R

**raise** [1] - 4:15
**raised** [5] - 4:5, 14:21, 40:16, 40:17, 123:18

**raises** [1] - 17:24
**raising** [3] - 15:15, 21:21, 34:24
**rather** [2] - 16:22, 17:12
**RDR** [3] - 2:1, 126:3, 126:12
**reach** [9] - 12:3, 17:25, 18:7, 21:13, 21:25, 62:22, 63:9, 86:14, 86:19
**reached** [2] - 34:11, 105:5
**reaching** [1] - 63:11
**read** [18] - 7:21, 21:20, 22:7, 32:16, 44:8, 45:4, 60:8, 67:13, 70:16, 72:21, 74:6, 74:14, 74:20, 81:7, 81:21, 104:4, 113:22
**reader** [1] - 13:12
**reading** [1] - 45:9
**reads** [3] - 45:7, 69:7, 114:15
**ready** [2] - 89:25, 90:12
**really** [2] - 10:10, 41:24
**reason** [6] - 6:16, 23:3, 33:5, 107:22, 108:1, 108:5
**reasoning** [1] - 56:22
**reasons** [7] - 4:9, 6:8, 22:18, 30:7, 58:20, 86:9, 116:12
**recalling** [1] - 101:16
**receipt** [2] - 67:14, 68:24
**receive** [3] - 12:15, 85:13, 85:16
**RECEIVED** [1] - 3:9
**received** [6] - 13:2, 14:20, 15:4, 23:6, 62:14, 62:18
**receiving** [2] - 36:10, 36:12
**recent** [2] - 10:16, 55:24
**recess** [5] - 55:4, 55:8, 55:17, 90:3, 124:6
**recipient** [7] - 9:18, 9:23, 10:12, 11:1, 11:8, 11:10, 23:11
**recipients** [3] - 9:11, 10:4, 11:15
**recognize** [2] - 5:10, 102:11
**recollection** [2] -

45:24, 106:15
**recommendations** [2] - 31:16, 31:18
**recommending** [7] - 28:14, 36:23, 37:24, 38:12, 39:20, 40:22, 76:12
**record** [9] - 4:2, 6:25, 14:19, 21:6, 27:20, 55:2, 55:9, 55:19, 109:22
**records** [2] - 74:11, 78:3
**RECROSS** [1] - 123:13
**RECROSS-EXAMINATION** [1] - 123:13
**red** [1] - 98:14
**Red** [1] - 3:3
**REDIRECT** [2] - 69:23, 122:10
**redirect** [4] - 21:23, 22:10, 69:21, 122:8
**refer** [4] - 37:3, 76:10, 76:21, 121:25
**reference** [2] - 63:11, 65:16
**referenced** [2] - 8:10, 17:10
**references** [1] - 68:15
**referencing** [1] - 66:2
**referral** [3] - 70:21, 75:3, 75:19
**referred** [3] - 28:15, 78:9, 85:5
**referring** [3] - 28:18, 29:4, 32:24
**refers** [1] - 16:18
**reflecting** [1] - 68:23
**refrain** [1] - 100:23
**refresh** [1] - 106:14
**refusal** [1] - 74:3
**refuse** [4] - 75:9, 81:9, 81:13, 81:14
**refused** [2] - 8:11, 81:22
**regard** [4] - 29:3, 29:9, 66:6, 68:12
**regarding** [6] - 30:8, 87:19, 92:1, 105:7, 107:13, 107:19
**regardless** [2] - 74:8, 80:6
**regulation** [3] - 5:4, 5:11, 5:18
**regulations** [5] - 7:17, 7:25, 81:4, 81:5,

886

81:17
**reiterated** [1] - 87:21
**rejected** [1] - 35:10
**rejecting** [1] - 35:15
**rejection** [1] - 57:22
**relate** [2] - 90:8,
101:17
**related** [3] - 105:10,
108:1, 113:25
**relates** [1] - 45:21
**relating** [6] - 4:9,
23:17, 29:11, 34:6,
34:13, 65:14
**relation** [1] - 79:11
**relationship** [1] -
88:12
**relevance** [15] -
16:23, 18:9, 24:22,
28:24, 29:6, 31:11,
38:14, 39:5, 40:1,
43:7, 46:19, 56:3,
116:7, 121:15, 122:2
**relevant** [15] - 4:8,
5:3, 5:15, 21:20,
36:13, 44:20, 46:10,
56:5, 58:19, 58:20,
61:14, 64:24, 69:3,
71:24, 120:11
**rely** [1] - 73:21
**remember** [8] - 17:7,
40:17, 42:10, 44:1,
86:4, 88:7, 112:6,
122:14
**remind** [2] - 106:9,
107:4
**rendering** [1] -
102:10
**repeat** [3] - 44:23,
68:5, 120:4
**repeatedly** [1] - 34:9
**rephrase** [2] - 18:5,
63:12
**replied** [1] - 87:19
**reply** [3] - 21:17,
22:8, 23:15
**report** [13] - 37:7,
37:23, 37:25, 38:11,
38:16, 38:23, 39:17,
39:18, 39:20, 39:25,
40:5, 40:10, 40:21
**reported** [1] - 41:22
**REPORTED** [1] - 2:1
**REPORTER** [1] -
63:24
**Reporter** [2] - 2:1,
126:12
**reports** [1] - 41:11
**reposted** [1] - 115:2
**representation** [1] -
86:10

**Representative** [3] -
32:10, 36:4, 45:1
**representative** [1] -
22:13
**Representatives** [2]
- 28:18, 36:17
**representatives** [1] -
108:5
**representing** [2] -
16:4, 105:2
**Republican** [4] -
41:10, 41:21, 89:2,
89:10
**Republicans** [1] -
41:15
**request** [9] - 13:13,
33:25, 34:3, 35:10,
57:6, 65:9, 73:7,
73:24, 87:13
**requested** [3] - 69:7,
69:17, 105:6
**requesting** [2] -
33:2, 57:9
**required** [8] - 4:13,
6:1, 7:23, 14:3, 56:15,
71:21, 101:17, 101:19
**requirement** [1] -
30:22
**requirements** [1] -
72:17
**requires** [1] - 124:8
**Resolution** [1] - 7:25
**resolution** [15] -
28:14, 28:23, 29:25,
30:3, 36:16, 36:18,
36:21, 36:23, 37:3,
37:8, 39:13, 40:21,
70:22, 76:5, 76:12
**resolve** [3] - 23:20,
24:4, 87:17
**resolved** [10] - 13:18,
13:19, 77:13, 77:15,
78:1, 78:2, 86:21,
87:12, 87:15, 87:22
**respect** [10] - 12:2,
16:5, 30:1, 56:25,
61:21, 63:20, 65:17,
65:24, 68:19, 87:18
**respectfully** [3] -
33:10, 33:25, 58:7
**respond** [6] - 13:12,
32:14, 32:20, 74:18,
74:23, 87:13
**responding** [1] -
68:13
**response** [3] - 15:13,
15:16, 68:22
**responsive** [4] -
59:24, 68:21, 68:25,
74:11

**rest** [1] - 57:25
**rested** [1] - 124:20
**restricted** [1] - 23:25
**rests** [1] - 124:4
**result** [2] - 75:3,
75:18
**resume** [1] - 125:2
**return** [1] - 56:1
**review** [4] - 16:11,
28:7, 31:14, 31:17
**reviewed** [5] - 15:23,
31:9, 38:19, 92:23,
102:23
**reviewing** [2] -
38:18, 91:25
**RIANE** [1] - 1:19
**rid** [1] - 22:13
**rights** [1] - 80:22
**risk** [1] - 30:2
**Road** [1] - 1:23
**Robert** [7] - 17:20,
32:9, 64:7, 67:7,
102:15, 104:18,
118:22
**role** [3] - 11:5, 15:10,
38:21
**Rolling** [3] - 111:8,
111:10, 111:14
**rollingstone.com** [2]
- 99:20, 112:12
**Room** [2] - 2:3, 99:5
**roughly** [2] - 38:3,
90:3
**rule** [2] - 5:8, 5:11
**Rule** [3] - 4:13, 4:20,
4:24
**ruled** [1] - 77:17
**Rules** [1] - 4:7
**rules** [1] - 4:14
**ruling** [1] - 81:25
**rulings** [1] - 58:12

## S

**safe** [1] - 5:13
**sake** [1] - 55:6
**saw** [5] - 15:15, 32:7,
100:19, 103:6, 114:2
**scan** [1] - 37:21
**schedule** [1] - 29:24,
90:8
**scheduling** [4] -
44:9, 86:11, 90:4,
124:7
**SCHOEN** [13] - 1:22,
1:22, 58:4, 58:24,
59:3, 59:5, 59:8,
92:12, 92:15, 93:14,
93:16, 108:21, 108:23

**Schoen** [6] - 4:5,
4:17, 6:10, 57:15,
58:3, 101:8
**scope** [8] - 36:13,
119:12, 119:14,
119:23, 119:24,
120:1, 121:16, 122:2
**screen** [2] - 104:5,
115:13, 115:16
**screenshot** [2] -
92:7, 98:4
**seal** [1] - 118:17
**second** [19] - 4:11,
4:18, 6:11, 16:25,
17:10, 17:23, 21:9,
23:19, 29:9, 32:9,
35:25, 57:1, 61:5,
61:19, 62:16, 70:16,
72:22, 87:10, 122:16
**second-to-the-last**
[2] - 17:10, 17:23
**section** [1] - 8:3
**Section** [3] - 7:24,
8:2, 8:9
**Sections** [2] - 28:11,
75:2
**see** [8] - 32:6, 37:22,
63:10, 98:4, 98:9,
98:25, 106:19, 115:14
**seek** [1] - 81:25
**seeking** [1] - 34:10
**Select** [50] - 9:7,
9:23, 10:13, 11:24,
15:16, 15:19, 16:21,
17:6, 17:11, 23:5,
29:13, 30:9, 31:6,
31:8, 31:24, 33:11,
33:13, 34:5, 34:8,
34:10, 34:19, 35:22,
36:12, 37:3, 63:7,
63:17, 64:9, 67:16,
68:15, 68:19, 68:21,
68:24, 69:3, 70:18,
70:20, 71:12, 73:25,
74:10, 74:16, 74:19,
74:22, 74:25, 78:2,
89:11, 99:25, 100:16,
101:23, 112:25,
113:9, 114:16
**Senate** [1] - 42:1
**send** [6] - 36:21,
75:23, 84:20, 84:23,
85:1, 105:15
**sense** [1] - 11:11
**sent** [11] - 29:23,
37:23, 38:12, 58:21,
70:4, 70:12, 84:23,
85:1, 85:2, 85:3,
105:19
**sentence** [10] -

16:13, 17:10, 65:6,
68:12, 68:23, 69:6,
69:12, 70:15, 72:22,
74:14
**sentences** [1] - 69:6
**separate** [2] - 17:24,
80:18
**separation** [1] - 4:15
**separation-of-**
**powers** [1] - 4:15
**September** [11] -
36:7, 60:5, 62:14,
69:14, 71:20, 98:23,
99:7, 100:1, 106:12,
106:22, 111:8
**serious** [1] - 30:1
**service** [4] - 100:4,
106:10, 106:11,
106:21
**SESSION** [1] - 1:5
**set** [7] - 17:18, 28:11,
30:14, 30:17, 55:24,
86:2, 108:18
**setting** [1] - 30:12
**settings** [1] - 119:3
**several** [7] - 34:23,
41:19, 85:4, 86:1,
86:23, 88:3, 88:20
**shall** [2] - 7:23, 82:4
**shared** [1] - 14:24
**show** [8] - 57:16,
75:9, 86:7, 98:15,
106:14, 106:16,
111:5, 113:14
**showed** [1] - 80:25
**showing** [9] - 64:5,
72:20, 73:14, 77:6,
81:1, 87:3, 92:3,
100:11, 102:25
**shown** [1] - 110:17
**shows** [5] - 57:23,
81:4, 113:12, 115:17,
123:7
**sidebar** [14] - 18:10,
18:12, 24:23, 24:25,
46:20, 46:21, 46:23,
82:8, 82:11, 93:18,
108:22, 108:25,
116:18, 116:20
**sign** [4] - 15:24,
32:6, 32:7, 98:17
**signature** [5] - 15:13,
28:7, 31:19, 35:14,
36:2
**signed** [3] - 16:3,
32:1, 84:22
**significant** [1] -
56:13
**signing** [1] - 32:6
**SILVERMAN** [1] -

1:19
similar [4] - 38:17, 92:10, 111:17, 118:24
simply [1] - 115:2
single [4] - 30:20, 38:8, 38:22, 40:10
single-spaced [3] - 38:8, 38:22, 40:10
sit [2] - 16:25, 80:14
sitting [4] - 40:3, 40:9, 41:3, 72:14
six [1] - 77:24
slightly [2] - 8:7, 9:21
SLUTKIN [1] - 1:19
small [1] - 102:10
social [2] - 92:10, 92:18
solidly [1] - 104:7
someone [4] - 73:1, 110:23, 112:20, 113:6
sometime [1] - 40:11
sometimes [6] - 86:2, 86:9, 86:11, 89:1, 116:6, 119:4
somewhat [1] - 93:5
soon [1] - 69:8
sorry [15] - 14:16, 15:7, 40:21, 63:24, 66:23, 67:20, 67:23, 69:5, 71:1, 84:25, 101:2, 102:18, 113:17, 120:5, 122:20
sought [1] - 73:24
sound [1] - 70:24
sounds [1] - 37:9
spaced [3] - 38:8, 38:22, 40:10
speaking [6] - 28:16, 31:3, 44:7, 63:13, 65:12, 103:2
Special [5] - 90:20, 102:4, 102:23, 103:19, 104:4
special [1] - 91:18
specific [5] - 14:23, 15:3, 31:23, 32:2, 86:12
specifically [7] - 10:24, 28:10, 39:7, 40:4, 40:17, 42:11, 81:6
speculation [1] - 35:7
speed [1] - 22:24
spell [1] - 91:14
spelled [1] - 30:19
spend [2] - 43:15, 45:11
staff [17] - 9:25, 10:9,

11:3, 15:23, 16:11, 31:16, 31:17, 41:9, 42:2, 42:14, 42:20, 42:22, 43:5, 43:13, 44:12, 81:23, 84:18
staffers [1] - 35:22
staffs [1] - 41:18
stage [1] - 17:18
stand [6] - 90:21, 91:4, 102:20, 103:22, 104:9, 123:3
start [7] - 37:13, 40:24, 46:2, 59:16, 79:11, 124:8, 124:10
started [2] - 40:9, 40:21
starting [1] - 124:12
state [2] - 107:12, 113:20
statement [5] - 99:9, 100:15, 110:25, 112:3, 123:16
statements [3] - 61:22, 92:1, 92:20
states [5] - 24:11, 36:5, 62:17, 62:21, 66:11
STATES [4] - 1:1, 1:3, 1:11, 1:15
States [8] - 2:2, 75:2, 105:5, 105:11, 105:15, 106:1, 106:3, 126:13
status [1] - 105:8
statutes [1] - 28:12
stay [1] - 55:7
steadfast [1] - 65:21
stenographic [1] - 126:5
step [1] - 30:1
Stephen [10] - 3:7, 36:6, 62:10, 66:13, 67:15, 69:13, 90:20, 91:15, 91:22, 121:25
STEPHEN [3] - 1:6, 91:10, 91:15
Steve [37] - 8:1, 8:8, 8:15, 13:3, 13:12, 13:17, 21:10, 27:24, 28:14, 32:17, 36:3, 38:13, 39:21, 40:22, 46:8, 46:15, 59:23, 92:7, 100:14, 100:16, 101:22, 102:6, 102:20, 103:22, 104:6, 110:14, 110:21, 112:5, 112:6, 112:24, 113:3, 113:8, 114:15, 115:10, 123:16

SteveBannon [1] - 98:21
still [1] - 46:8
Stone [3] - 111:8, 111:10, 111:14
stood [2] - 104:7, 123:16
straight [1] - 58:12
strategist [1] - 104:6
Street [2] - 1:16, 1:20
structure [1] - 41:18
structured [1] - 9:25
subject [5] - 10:2, 30:3, 34:22, 62:13, 68:3
submission [1] - 105:22
submit [1] - 29:13
subpoena [91] - 5:18, 9:11, 9:17, 9:23, 10:12, 10:17, 10:25, 11:8, 11:10, 11:17, 11:24, 12:1, 12:16, 13:8, 13:10, 14:2, 14:3, 14:8, 23:9, 24:21, 29:12, 36:7, 36:11, 40:23, 46:17, 55:25, 56:18, 56:21, 59:24, 60:6, 61:5, 61:11, 61:13, 62:13, 62:18, 64:20, 64:25, 65:13, 66:7, 66:14, 67:16, 68:16, 69:15, 70:21, 70:22, 71:18, 71:19, 71:22, 73:4, 73:7, 73:12, 74:4, 74:12, 74:18, 74:23, 74:24, 74:25, 75:5, 76:6, 76:18, 78:6, 78:18, 79:20, 85:9, 86:13, 91:23, 92:1, 99:9, 99:25, 100:17, 101:16, 101:17, 101:19, 101:24, 103:24, 105:18, 106:10, 106:11, 106:21, 107:1, 107:5, 107:9, 107:19, 108:7, 110:19, 110:25, 111:11, 112:3, 113:1, 113:10, 114:17
subpoena's [3] - 30:22, 40:12, 72:16
subpoenas [7] - 9:7, 10:5, 10:19, 10:20, 10:22, 11:16, 12:11
subsequent [2] - 81:25, 87:21
subset [1] - 90:24
sudden [6] - 70:12,

72:8, 72:12, 77:20, 79:9, 79:12
suggest [4] - 108:7, 108:9, 108:12, 108:15
suggested [1] - 124:7
suggesting [5] - 14:10, 57:15, 110:13, 113:2, 113:4
suggestion [1] - 32:23
suggests [1] - 17:25
Suite [2] - 1:20, 1:23
supervises [2] - 9:14, 10:21
support [2] - 89:5, 89:7
suppose [2] - 5:5, 124:12
Supreme [2] - 77:17, 77:22
sustained [7] - 8:20, 29:7, 35:8, 43:8, 45:15, 120:19, 122:3
SWORN [2] - 7:8, 91:10
symbol [1] - 98:15
system [1] - 70:24

**T**

table [1] - 24:4
tasks [1] - 10:9
telephone [1] - 82:1
ten [2] - 55:8, 124:20
ten-minute [1] - 55:8
tendering [1] - 37:19
Tenders [1] - 8:23
term [1] - 66:5
terms [4] - 61:24, 63:3, 93:3, 115:1
testified [16] - 9:6, 12:7, 13:2, 13:25, 14:5, 17:5, 24:11, 28:9, 28:12, 34:25, 35:2, 46:7, 70:23, 71:13, 77:9, 88:21
testify [7] - 7:23, 22:1, 22:14, 24:20, 62:18, 62:24, 63:6, 63:16, 66:16, 66:20, 72:25
testimony [30] - 11:20, 13:13, 17:7, 17:12, 30:13, 32:18, 34:4, 36:11, 36:13, 40:24, 41:13, 46:9, 46:10, 46:11, 46:16, 59:21, 62:23, 63:10,

63:20, 65:25, 69:4, 73:24, 87:14, 88:18, 89:21, 107:23, 112:7, 115:1, 124:2
text [3] - 37:25, 38:3, 38:7
THE [139] - 1:1, 1:10, 1:14, 1:15, 1:18, 3:5, 4:1, 4:3, 5:20, 5:22, 6:3, 6:20, 6:24, 7:1, 7:7, 7:15, 8:20, 9:2, 16:24, 18:10, 21:5, 22:15, 22:20, 22:24, 23:2, 23:24, 24:3, 24:16, 24:23, 27:19, 28:25, 29:1, 29:7, 31:12, 31:13, 35:8, 37:16, 38:15, 38:16, 39:6, 39:7, 40:2, 40:3, 43:8, 44:21, 45:15, 45:22, 45:24, 46:21, 55:1, 55:14, 55:19, 55:20, 57:9, 57:12, 58:2, 58:23, 59:1, 59:4, 59:7, 59:9, 59:14, 60:18, 62:3, 63:24, 64:1, 64:16, 66:24, 67:21, 67:24, 68:1, 68:10, 69:20, 70:5, 70:25, 71:2, 71:4, 71:6, 82:9, 89:19, 89:22, 89:24, 90:2, 90:8, 90:12, 90:14, 90:17, 90:25, 91:3, 91:7, 91:8, 91:9, 92:14, 92:16, 92:18, 93:15, 97:24, 100:8, 100:22, 100:25, 101:1, 101:2, 101:5, 101:8, 103:11, 104:14, 108:22, 109:22, 109:24, 111:22, 113:21, 114:9, 115:25, 116:8, 116:9, 116:18, 118:17, 119:14, 119:17, 119:25, 120:4, 120:18, 121:6, 121:17, 121:21, 122:3, 122:7, 122:18, 122:21, 123:12, 123:25, 124:1, 124:2, 124:5, 124:22, 124:25, 125:6, 125:8, 125:9
theoretically [1] - 40:16
theory [2] - 57:3, 58:25
thereby [1] - 82:2

**therefore** [3] - 6:13, 58:17, 62:22
**Thereupon** [3] - 55:17, 59:12, 91:5
**they've** [2] - 89:3, 100:23
**third** [5] - 62:21, 65:19, 68:2, 68:18, 74:13
**Thompson** [46] - 14:22, 15:14, 15:24, 16:2, 16:3, 16:9, 17:19, 18:4, 18:6, 21:11, 21:12, 21:24, 22:12, 23:20, 24:14, 24:19, 27:24, 28:2, 29:23, 30:6, 30:14, 30:25, 31:2, 31:5, 32:5, 32:11, 33:20, 35:15, 36:2, 36:5, 36:10, 59:22, 64:9, 65:7, 66:2, 66:11, 66:18, 67:6, 67:12, 67:17, 68:13, 68:19, 68:23, 69:12, 73:17, 77:8
**THOMPSON** [1] - 1:19
**Thompson's** [3] - 21:16, 22:7, 23:15
**thoughts** [1] - 33:16
**three** [3] - 24:11, 28:2, 31:4
**three-day** [1] - 31:4
**three-page** [1] - 28:2
**throughout** [2] - 41:22, 107:20
**tight** [1] - 56:8
**time-limited** [1] - 71:14
**timeline** [2] - 100:7, 104:13
**timing** [1] - 11:13
**title** [2] - 99:19, 112:18
**titled** [2] - 77:7, 100:15
**today** [13] - 38:2, 40:3, 40:9, 41:3, 60:8, 60:25, 61:19, 66:7, 68:21, 69:2, 72:14, 88:18, 124:8
**together** [3] - 15:11, 44:12, 88:6
**tomorrow** [1] - 124:10
**tomorrow's** [1] - 90:8
**took** [2] - 28:5, 121:14

**tool** [1] - 17:14
**tools** [2] - 17:6, 17:11
**top** [7] - 74:14, 99:16, 101:11, 103:16, 110:18, 112:3, 112:24
**topic** [2] - 6:17, 35:5
**topics** [4] - 11:1, 11:9, 45:18, 46:1
**total** [1] - 72:5
**TRANSCRIPT** [1] - 1:10
**transcript** [2] - 126:5, 126:6
**TRIAL** [1] - 1:10
**trial** [6] - 6:15, 12:14, 56:14, 58:1, 79:11, 79:17
**tried** [1] - 79:6
**tries** [1] - 116:11
**trouble** [1] - 71:1
**true** [3] - 42:11, 126:4, 126:5
**truly** [1] - 57:21
**Trump** [35] - 18:1, 18:7, 21:14, 21:25, 22:4, 22:6, 22:13, 33:19, 58:21, 60:4, 60:12, 62:9, 62:17, 62:21, 63:5, 63:15, 65:11, 65:22, 66:9, 66:11, 66:18, 66:19, 74:9, 77:8, 79:21, 79:22, 80:3, 84:15, 102:8, 102:21, 103:23, 104:7, 104:10, 123:3, 123:16
**Trump's** [3] - 68:15, 69:1, 73:25
**trustworthy** [1] - 93:6
**truth** [2] - 58:9, 60:21
**truthful** [1] - 120:14
**truthfully** [1] - 62:24
**try** [11] - 17:12, 17:25, 22:13, 46:1, 71:6, 71:9, 116:3, 120:21, 121:2, 121:13, 123:5
**trying** [12] - 9:24, 18:4, 18:6, 21:13, 21:15, 21:25, 22:10, 22:21, 23:20, 78:4, 113:7, 119:20
**turn** [1] - 71:2
**turns** [1] - 124:13
**Twitter** [1] - 92:10
**two** [15] - 4:9, 6:8, 17:24, 34:6, 34:17,

34:22, 36:19, 56:14, 60:19, 61:17, 64:6, 69:6, 74:6, 81:24, 85:20
**two-page** [1] - 64:6
**typically** [1] - 4:12

## U

**U.S** [9] - 28:15, 29:5, 99:18, 104:9, 105:7, 105:9, 105:20, 115:21, 121:25
**ultimately** [1] - 31:18
**unable** [2] - 13:12, 87:13
**uncommon** [1] - 11:23
**under** [10] - 10:17, 42:2, 63:17, 73:1, 73:4, 86:6, 93:3, 105:3, 112:24, 118:17
**under-seal** [1] - 118:17
**underlying** [1] - 106:7
**underneath** [1] - 115:18
**understood** [4] - 4:25, 119:25, 120:10, 124:22
**United** [7] - 75:2, 105:5, 105:11, 105:15, 106:1, 106:3, 126:13
**united** [1] - 2:2
**UNITED** [4] - 1:1, 1:3, 1:11, 1:15
**unlawful** [1] - 65:1
**unless** [2] - 7:23, 72:13
**unusual** [4] - 11:20, 12:5, 12:15, 46:4
**up** [22] - 7:15, 14:16, 15:19, 22:25, 29:21, 37:10, 44:14, 59:21, 69:25, 71:23, 75:9, 86:8, 92:17, 93:15, 106:4, 107:13, 110:6, 110:11, 112:9, 112:14, 124:10, 124:16
**urge** [1] - 36:5
**US-000449** [1] - 29:10
**US-000457** [1] - 35:25
**US-00419** [1] - 13:11
**US-464** [2] - 37:12,

37:13
**USC** [1] - 28:11
**uses** [1] - 93:3

## V

**valid** [1] - 57:17
**validates** [1] - 93:5
**variety** [3] - 44:14, 46:1, 86:9
**various** [2] - 23:10, 38:1
**Vaughn** [10] - 5:24, 16:24, 22:15, 24:16, 58:2, 69:21, 70:5, 71:6, 89:25, 90:12
**VAUGHN** [47] - 1:14, 5:25, 6:19, 8:17, 9:1, 16:23, 18:9, 22:17, 22:21, 24:15, 24:22, 28:24, 29:6, 31:11, 35:7, 38:14, 39:5, 40:1, 43:7, 44:19, 45:13, 45:20, 46:19, 56:12, 57:11, 57:13, 60:13, 60:17, 64:15, 67:18, 67:25, 69:22, 69:24, 70:8, 70:10, 71:1, 71:7, 71:8, 82:5, 84:10, 88:1, 88:2, 89:16, 90:1, 90:7, 90:13, 124:4
**verified** [3] - 92:25, 93:3, 98:16
**via** [3] - 13:3, 105:6, 105:25
**videoconference** [1] - 105:25
**view** [3] - 4:14, 14:5, 74:23
**viewed** [1] - 93:8
**viewing** [1] - 37:11
**views** [1] - 55:9
**violated** [1] - 5:8
**violations** [1] - 4:7
**virtual** [2] - 115:12, 118:21
**voluntarily** [1] - 45:11
**vote** [9] - 28:13, 28:16, 28:17, 28:20, 28:22, 29:3, 36:15, 36:21, 38:12
**voted** [7] - 29:4, 36:17, 37:3, 39:13, 76:10, 76:20, 121:24
**vs** [1] - 1:5

## W

**wait** [1] - 16:24
**waiting** [1] - 122:19
**waive** [7] - 5:6, 57:6, 62:23, 63:5, 63:16, 64:25, 66:13
**waived** [2] - 4:10, 5:1
**waiver** [2] - 6:13, 63:20
**wants** [1] - 56:10
**War** [1] - 99:5
**warned** [1] - 75:17
**Washington** [5] - 1:6, 1:17, 2:4, 91:21, 126:14
**Waxman** [4] - 43:2, 43:13, 44:16, 45:2
**WebEx** [1] - 115:12
**website** [1] - 103:3
**week** [18] - 4:6, 32:12, 32:14, 32:17, 32:24, 33:1, 33:2, 33:5, 33:25, 35:5, 35:10, 35:15, 37:2, 46:14, 46:16, 65:9, 67:10, 77:23
**week's** [1] - 32:20
**weeks** [2] - 11:16, 11:25
**welcome** [4] - 7:1, 7:3, 46:10, 90:17
**welcomes** [1] - 69:3
**whichever** [1] - 70:7
**WHITE** [2] - 1:19, 1:19
**White** [1] - 104:6
**whole** [2] - 39:21, 46:1
**willful** [2] - 74:24
**willing** [5] - 11:19, 66:15, 66:19, 67:16, 72:24
**willingness** [1] - 24:19
**window** [1] - 31:4
**withdrawing** [1] - 58:22
**withhold** [2] - 75:14, 78:4
**witness** [36] - 7:6, 7:23, 7:24, 12:5, 12:14, 12:18, 12:20, 22:17, 22:21, 22:24, 23:24, 37:15, 37:19, 56:7, 59:9, 59:12, 73:2, 73:8, 81:9, 81:15, 81:22, 82:3, 82:4, 85:20, 86:9,

86:11, 89:18, 89:23,
89:25, 91:4, 91:5,
92:3, 120:21, 121:3,
121:20, 124:3

**WITNESS** [19] - 7:8,
23:2, 24:3, 29:1,
31:13, 38:16, 39:7,
40:3, 45:24, 55:14,
89:22, 91:8, 91:10,
92:18, 100:25, 101:2,
116:9, 120:4, 124:1

**witness's** [3] - 37:11,
73:5, 81:18

**WITNESSES** [1] - 3:5

**witnesses** [11] -
10:17, 11:18, 12:15,
80:12, 80:21, 86:2,
86:6, 86:14, 119:8,
121:3, 121:12

**word** [9] - 11:6,
13:21, 16:14, 28:1,
28:4, 33:15, 37:9,
42:10

**word-for-word** [1] -
28:4

**words** [21] - 4:21,
16:8, 32:6, 110:14,
110:18, 110:21,
110:22, 112:5,
112:16, 112:20,
112:24, 113:3, 113:4,
113:8, 113:12,
114:21, 122:13,
122:25

**works** [2] - 111:2,
113:6

**write** [2] - 8:15, 36:5

**writes** [2] - 60:12,
68:19

**writing** [1] - 29:13

**written** [6] - 16:8,
84:18, 105:16,
105:21, 110:23, 111:2

**wrote** [5] - 16:2,
18:3, 28:3, 30:6, 60:4

---

## Y

**year** [4] - 45:8, 45:25,
60:3, 88:9

**years** [11] - 12:8,
12:13, 12:19, 41:5,
42:17, 42:20, 42:21,
43:11, 43:20, 44:1,
121:10

**yes-or-no** [2] -
22:10, 23:19

**yourself** [2] - 10:11,
91:14

---

## Z

**Zelda** [1] - 1:23

**zoom** [5] - 98:6,
99:12, 101:10,
101:25, 103:15

**zooming** [1] - 99:21