### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                                   CR Action
                                   No. 1:21-670

       vs.                              Washington, DC
                                   July 21, 2022
STEPHEN K. BANNON,

                                   10:38 a.m.
                 Defendant.

                 TRANSCRIPT OF JURY TRIAL - DAY FOUR
               BEFORE THE HONORABLE CARL J. NICHOLS
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the U.S.:**            **AMANDA ROSE VAUGHN**
                            **MOLLY GULLAND GASTON**
                            U.S. ATTORNEYS OFC. FOR D.C.
                            555 4th Street NW
                            Washington, DC  20001
                            202-252-1793

**For the Defendant:**      **DAVID I. SCHOEN**
                            DAVID I. SCHOEN, ATTORNEY AT LAW
                            2800 Zelda Road, Suite 100-6
                            Montgomery, AL  36106
                            334-395-6611

                            **MATTHEW EVAN CORCORAN**
                            **RIANE WHITE**
                            SILVERMAN THOMPSON SLUTKIN WHITE
                            201 N. Charles Street, 25th Floor
                            Baltimore, MC  21201
                            410-385-2225

**Reported By:**         **LORRAINE T. HERMAN, RPR, CRC**
                            Official Court Reporter
                            U.S. District & Bankruptcy Courts
                            333 Constitution Avenue, NW
                            Room 4700-C
                            Washington, DC 20001
                            lorraine_herman@dcd.uscourts.gov

1           **P R O C E E D I N G S**

2               **DEPUTY CLERK:**  Good morning, Your Honor.  This is

3       criminal case year 2021-0670, *United States of America*

4       *versus Stephen K. Bannon.*

5               Counsel, please come forward and introduce

6       yourselves for the record, beginning with the government.

7               **MS. VAUGHN:**  Good morning, Your Honor.

8               Amanda Vaughn and Molly Gaston and paralegal

9       specialist Quiana Dunn-Gordon and FBI Special Agent Frank

10      D'Amico.

11              **THE COURT:**  Good morning.

12              **MR. SCHOEN:**  Good morning, Your Honor.  David

13      Schoen and Evan Corcoran.  Steve Bannon is at the table and

14      Ms. Riane White also.

15              I want to ask, logistically -- so I don't want to

16      keep going back and forth.  I think I know what the Court

17      wants to cover first, but I just wanted the Court to be

18      aware before we worry about a jury.

19              We drew up two additional proposed jury

20      instructions just this morning.  The government hasn't had a

21      chance to see them, but we brought hard copies to give the

22      government.  I don't know if we should file those on ECF

23      or --

24              **THE COURT:**  So, clearly, I need to finalize the

25      jury instructions before we do closings, because my plan is

1      to instruct the jury before we get to closings.

2              Even in my draft jury instructions, there were

3      some that had been flagged as "if applicable," and I need to

4      go through with the -- or at least in my view and with the

5      parties to see if there's agreement that they do or do not

6      apply.  Then, as I imagine and as was always has been clear,

7      we need to finalize them for all purposes before we get to

8      the jury.  So I agree there needs to be a step here.

9              What I would like to have happen in the first

10     instance is for the parties to confer and to submit -- it

11     need not be through a filing, but to submit through the

12     chambers' email that we've been using, their respective

13     positions around areas of disagreement and, frankly, areas

14     of agreement.

15             **MR. SCHOEN:**  Just on these two new ones, the Court

16     means?

17             **THE COURT:**  No, the government, I assume, may have

18     some of its own proposed instructions.

19             **MS. VAUGHN:**  We do, Your Honor.

20             **THE COURT:**  The government -- and then there, of

21     course, may be a question of whether the parties agree that,

22     as to the draft that I already provided, that they -- where

23     we included in brackets "if applicable", I would like the

24     parties to discuss whether they, in fact, believe they are

25     applicable or not.

1        **MR. SCHOEN:**  Yes, Your Honor.  I didn't mean to

2  make the Court jump ahead to that.  I was really just asking

3  about these two new ones how the Court -- I get it was much

4  more informative than I asked for.  Thank you very much.

5        **THE COURT:**  Yeah.  Okay.

6        **MR. SCHOEN:**  Second thing, just logistically, as

7  the Court knows, without the jury in the box, we intend to

8  file a Rule 29 motion this morning.

9        **THE COURT:**  Yes.

10        **MR. SCHOEN:**  So one other issue that was

11  outstanding, I raised on July 19th, and we talked about it

12  on Page 521 and 522 of the transcript.  The Court doesn't

13  need the transcript.  It's a very simple issue.  I had said

14  that we need a ruling on the so-called -- you know, the

15  Motion to Dismiss or to exclude the evidence based on the

16  quashing of the subpoenas and the filing motion number ECF

17  No. 116.

18        And I raised it with the Court, and the Court

19  said -- I said I need a ruling.  The Court said, Well, I

20  think the proper way to handle this is, when the government

21  rests their case, then you can make a showing, make a

22  proffer to me as to what you needed Chairman Thompson to

23  testify to.

24        **THE COURT:**  Yes.

25        **MR. SCHOEN:**  So that was basically how we were

1   going to go.  But some suggestion was made that, since part

2   of the relief is excluding evidence, that maybe the Court

3   wanted to hear, in connection with the Rule 29 or before the

4   Rule 29, whatever the Court wanted, I just wanted to know

5   one way or the other.

6       **THE COURT:**  So I certainly think it's appropriate

7   to hear argument now on that question.  Or it could be after

8   the close of the defense case so that the defense could say,

9   We just put on what we could put on, but here's how we have

10  been precluded from putting on additional evidence.

11      **MR. SCHOEN:**  In fairness, Judge, the other day we

12  didn't contemplate argument.  The Court just asked me to

13  make a proffer.  I don't know if the government came ready

14  to discuss the motion.

15      **MS. VAUGHN:**  The government is always ready,

16  Your Honor.

17      **MR. SCHOEN:**  Like the Marine Corps.

18      **THE COURT:**  Here's what I'd like to do.  Because

19  the Motion for Judgment of Acquittal was mentioned in front

20  of the jury yesterday, I'd like to take that up, both the

21  question of the motion and the question of what, if

22  anything, we do to cure any potential prejudice.  Let's do

23  that first.

24          I then have another issue that I need to raise

25  with the parties that would be on the husher.  We'll do

1    that.  And then I'll now think about how I want to handle

2    the Thompson motion, so to speak.

3              MR. SCHOEN:  Thank you, Your Honor.

4              THE COURT:  Mr. Corcoran, are you going to present

5    the Motion for Judgment of Acquittal?

6              MR. CORCORAN:  I am, Your Honor.

7              THE COURT:  Okay.

8              MR. CORCORAN:  Do you want to discuss the other

9    motion first?

10             THE COURT:  I do, please.

11             So here's my question.  So for the record, as I

12   recall, you indicated before the jury was excused, in the

13   presence of the jury, that you would be filing a Motion for

14   Judgment of Acquittal this morning.  So the jury has heard

15   that that's at least a possibility.

16             I communicated to the parties last night that I

17   wanted to address whether there was any potential prejudice

18   from the jury having heard that and, if so, whether that

19   could be cured here this morning.

20             So I'd like to hear -- I actually think I need to

21   hear that issue together with the merits of the motion.

22             MR. CORCORAN:  On that issue, Your Honor, we don't

23   think that that passing comment in front of the jury is

24   prejudicial to either party and don't see that there's any

25   need to do anything.

1    **THE COURT:**  What if the jury -- if we get to the

2    jury today, what if the jury believes, as a result of that

3    comment, that I've denied the motion?

4            Wouldn't that mean the jury might think that I

5    have passed on something relating to the strength of the

6    government's claims in a way that's harmful to Mr. Bannon?

7    **MR. CORCORAN:**  We don't -- you know, we don't see

8    that as a possibility given the discussion in the case so

9    far.  But if, in an abundance of caution, the Court does

10   want to address it in some way, I think that the proper way

11   to do it -- and I can -- would be to essentially to repeat

12   in the first paragraph what's already been said to the jury.

13           And that is -- with a slight change just because

14   of the timing -- "At the start of this trial, I described my

15   responsibilities as the judge and your responsibilities as

16   the jury.  My responsibility is to conduct this trial in an

17   orderly, fair and efficient manner, rule on legal questions

18   that come up in the course of the trial and instruct you

19   about the law that applies to this case."

20           That's essentially already been said.  And then

21   the next part is, "During trial you may have heard reference

22   to objections, motions, briefs and the like.  The

23   discussions of the lawyers on those legal issues and my

24   rulings are not evidence and are not to be considered by you

25   as you determine the facts in the case."

1          In other words, it's simply reiterating something

2     that's already been said.

3          **THE COURT:**  Okay.  So on the motion itself?

4          **MR. CORCORAN:**  Your Honor, we'd ask the Court to

5     grant our Motion for Judgment of Acquittal.  The government

6     has rested its case, and they have not presented evidence

7     upon which a reasonable person could find beyond a

8     reasonable doubt that Mr. Bannon is guilty of the charge --

9     the charges of contempt of Congress.

10         Obviously, the law is pretty straightforward, and

11    the key at this point is whether the Court, when weighing

12    the evidence introduced at trial and drawing inferences from

13    that evidence, could find that a reasonable mind could

14    fairly conclude guilty beyond a reasonable doubt.

15         And we acknowledge that that's not a high

16    threshold.  But it's a threshold that needs to be considered

17    in light of the evidence in every case.  And in this case,

18    it's abundantly clear that there was no evidence presented

19    that the defendant is guilty.  There is no evidence

20    presented that a reasonable mind could find that Mr. Bannon

21    has committed the crimes.

22         The key, I think, is the evidence that was

23    presented was limited to two witnesses, Ms. Amerling and

24    Mr. Hart.  Our Motion for Judgment of Acquittal does not

25    pertain really to Mr. Hart, because he didn't add much to

1     the case at all.

2              It's really a one-witness case and the issue,

3     really, is what did Ms. Amerling say on the key points?

4     First, with regard to whether the defendant was subpoenaed

5     by the Select Committee to provide testimony or produce

6     papers, at best, the testimony was equivocal.

7              We asked the witness what human being drafted this

8     subpoena?  What human being came up with the dates in the

9     subpoena of October 7th, 2021 and October 14th, 2021, and

10    she couldn't answer.  She couldn't answer.

11             She did say that it was -- in order for the

12    subpoena to be valid, it had to be signed by

13    Chairman Thompson, but she couldn't answer whether or not --

14    she certainly didn't see him sign it.  She relied upon the

15    general practice of the Committee that said that she thought

16    perhaps he would have signed it.  So on the first element,

17    the evidence is simply barren, from which a reasonable juror

18    could find that Mr. Bannon was subpoenaed.

19             The second element is pertinence.  And our motion

20    really doesn't address pertinence.  The third is that

21    Mr. Bannon failed to comply or refused to comply with the

22    subpoena.  And, again, I am setting forth the elements as

23    the Court has determined them under the *Licavoli* standard.

24             **THE COURT:**  I understand.

25             You are basing your Motion for Judgment of

1    Acquittal based on the elements as I have defined them?

2           **MR. CORCORAN:**  That's correct.  Of course, as I

3    said many times, we're not waiving the positions that we

4    have taken --

5           **THE COURT:**  Well understood.

6           **MR. CORCORAN:**  So the third point is that

7    Mr. Bannon failed to comply or refused to comply with the

8    subpoena.  On that issue, again, it all hinges on

9    Ms. Amerling's testimony.  And she testified, although she

10   said that these dates were not open, it was clear through

11   her testimony, first of all, that the dates were in flux.

12   And I'll describe that, especially with regard to Count 2,

13   in a moment.

14          But even the dates themselves in the subpoena, she

15   was unable to identify why those dates were in the subpoena

16   at all.  She was unable to identify who put those dates in

17   the subpoena and that's a critical issue.  And there is

18   interplay, and I know Mr. Schoen will discuss the issue that

19   was raised with regard to the Motion to Quash the subpoena.

20   But I'll mention it in brief here because it does play into

21   our Motion for Judgment of Acquittal.

22          That is, under the Sixth Amendment, a defendant

23   has the right to confront the witnesses against them,

24   particularly through cross-examination.

25          We were provided and the government requested

1    access to one witness, and that was Ms. Amerling.  We were

2    not provided with a number of other key witnesses, material

3    witnesses, who we believe would have provided exculpatory

4    evidence.  And based upon the testimony of Ms. Amerling

5    yesterday, clearly would have provided exculpatory evidence

6    in a new way that we could not have conceived before trial.

7         And that is this:  Chairman Thompson, as the

8    evidence in the case has indicated, Chairman Thompson is the

9    sole person authorized to sign the subpoena.  Without his --

10   him signing the subpoena, it is not valid.  That was the

11   testimony of Ms. Amerling.

12        And yet, when we cross-examined her, she didn't

13   know whether or not he signed it or not.  She couldn't say

14   for certain whether he signed it or not.  Had he been

15   available to us, we could have presented evidence on the

16   topic of whether he signed the subpoena or not, whether it

17   was a valid subpoena or not.

18        Secondly, and critically, we asked Ms. Amerling

19   about the back-and-forth between her, as the lawyer for the

20   Committee, and Bob Costello, as the lawyer for Mr. Bannon.

21   And the letters that went back and forth and were admitted

22   for a limited purpose are essentially the paper trail of the

23   communications or negotiations between the lawyers about the

24   dates and about compliance and about whether Mr. Bannon

25   committed the crime or crimes of contempt of Congress.

1          We asked her at every step, with regard to each of

2    these exhibits, who wrote the letter on behalf of the Select

3    Committee and she couldn't answer.  She said that there was

4    essentially several different staff involved.  I asked her

5    to pinpoint language that she wrote.  She was unable to do

6    so.

7          Critically, I asked her whether she could identify

8    any word in each of the Select Committee letters that

9    Chairman Thompson had written.  Essentially, identify one

10   word in this given letter, this given exhibit, which was a

11   Committee letter, that was the word of Chairman Thompson.

12         And she couldn't answer.  She couldn't point to

13   one word in the letter that indicated it was Mr. Thompson's

14   word.  Again, he's under subpoena.  He's accepted service of

15   subpoena.  The House moved to quash his subpoena.  We asked

16   for documents, drafts and things like that of these letters,

17   and the Motion to Quash was granted as well with regard to

18   those materials.

19         If he was here -- and again, I'm just giving a

20   shortened version of what will be presented in a separate

21   motion by Mr. Schoen.  But if he was here, we would have

22   presented evidence to the jury, I believe, that he did

23   not -- he was not the author of those letters based on what

24   we heard yesterday.  And so that they were not, in fact, an

25   official position of the Select Committee.

1          In light of that and in light of the

2     information -- the evidence that was presented from

3     Mr. Costello which indicated at every step of the way we've

4     got an objection -- I'm just talking about the way it's

5     presented as evidence in the case.

6          There's an objection based on privilege that's

7     been presented to the Committee.  Work it out.  Here are two

8     options.  Option one, communicate with President Trump and

9     seek an executive privilege.  Option two, go to a court with

10    a civil action to try to remove this obstacle of privilege

11    so that I can testify.  That's been the consistent message

12    all along.

13          So given that, no reasonable juror could find that

14    Mr. Bannon refused to comply with dates that we understand

15    now are in flux, are open, such that he committed a crime.

16          Finally, on the fourth element, which is that his

17    failure or refusal to comply was willful, there's simply no

18    evidence that the jury could consider right now that bears

19    on whether or not the intent that Mr. Bannon had on

20    October 14th, with regard to the testimony and October 18th

21    with regard to the documents, was a willful default.  A

22    default -- and again, I don't think that -- I'm not certain

23    here, but I don't think that the default has been -- has yet

24    been defined.

25          But default, in our view, is not meeting a legal

1    obligation.  And in this case, there has been no showing

2    that, on the 14th of December -- of October 2021 or the 18th

3    of October '21, Mr. Bannon had a legal obligation to comply

4    with the subpoena.

5         In fact -- and this goes specifically to whether

6    the Court should dismiss Count 2 on our Motion for Judgment

7    of Acquittal.  The dates are moving.  In other words, the

8    date on the subpoena for the production of documents is

9    October 7, 2021.

10        The jury -- the indictment alleges a different

11   date; and that is that Mr. Bannon has committed the offense

12   of contempt of Congress and he is essentially guilty of

13   Count 2 if he has not provided documents by a different

14   date, October 18, 2021.

15        That's a difference.  That's a variance.  And no

16   reasonable juror could find that, based on the testimony

17   presented by Ms. Amerling, that Mr. Bannon committed the

18   crime of contempt of Congress with regard to the production

19   of documents on October 18th.  And I use the word "on"

20   because many times indictments use the words "on or about",

21   and there are instructions to the jury that would describe

22   what that means.

23        That's not what happened here.  In the indictment,

24   in Count 2, there is a precise date that the jury would have

25   to find beyond a reasonable doubt that, on October 18th,

1    2021, Mr. Bannon committed a crime.

2              No reasonable juror could conclude that he

3    committed a crime on that date because the date on the

4    subpoena is October 7th, and there was no testimony at all

5    that indicates that, on October 18th, Mr. Bannon did

6    anything --

7              **THE COURT:**  The word is actually "by".

8              **MR. CORCORAN:**  Is it "by"?  Okay.

9              **THE COURT:**  It is "by".

10             **MR. CORCORAN:**  "By" in the indictment?

11             **THE COURT:**  The indictment says "by October 18th,

12    2021".

13             **MR. CORCORAN:**  Okay.  Still.

14             **THE COURT:**  Still?

15             **MR. CORCORAN:**  I buy that.

16             **THE COURT:**  I buy it too.

17             **MR. CORCORAN:**  My point is the same that the date

18    couldn't have shifted.  We didn't hear any evidence.

19             **THE COURT:**  I understand.  The point isn't really

20    about on or by.  Your point is, the date.  Is it October 7th

21    or is it October 18th?

22             **MR. CORCORAN:**  Yeah.

23             That's under the Supreme Court case of *U.S. versus*

24    *Bryan*, 339 U.S. 323 at 330, holds that default, you know,

25    does not mature until the return date.  And so, in our view,

1    the return date is, in terms of the government's meeting its

2    burden, either the date on the subpoena or it's open.  It's

3    an open date.

4              And, of course, our position, as you heard through

5    our questioning and as we expect will be the position we

6    take throughout, is that this was an ongoing negotiation.

7              The last piece of evidence, Your Honor, that I

8    want to reference in terms of our Motion for Judgment of

9    Acquittal are pieces of evidence, but I think the key one --

10   if I could grab it -- is Defendant's Exhibit No. 32 which is

11   in evidence.

12             **THE COURT:**  Can I just note a housekeeping thing?

13             **MR. CORCORAN:**  Yes, Your Honor.

14             **THE COURT:**  I don't recall having received copies

15   of at least some of the defendant's trial exhibits,

16   including the most recent ones, and maybe even any exhibit

17   above number 16.  I just want to ask if you could provide

18   Ms. Lesley with copies of all of the defendant's trial

19   exhibits.

20             **MR. CORCORAN:**  Absolutely.

21             **THE COURT:**  Thank you.

22             **MR. CORCORAN:**  And just as a --

23             **THE COURT:**  I recall the letter.

24             **MR. CORCORAN:**  Yeah.  You recall the letter.

25             Again, just so the record is complete on that,

1  these are things that only came up in cross-examination so

2  we didn't see --

3          **THE COURT:**  I understand.

4          **MR. CORCORAN:**  Of course some were created after

5  the date of the filing of our exhibits.

6          **THE COURT:**  Yes.  It is not a -- I'm not

7  suggesting that you should have provided a copy of the

8  letter that was dated as late as that letter.  I just need

9  copies of them.

10         **MR. CORCORAN:**  Absolutely.

11         The key point with regard to our Motion for

12 Judgment of Acquittal is Exhibit 32 provided in evidence in

13 the limited way that it is, which is simply to show that

14 notice has been provided from the Chairman of the Select

15 Committee to Mr. Bannon through his lawyer, Robert Costello.

16         That evidence, together with everything that was

17 said by Ms. Amerling in testimony, leaves no possibility

18 that a reasonable juror could find that Mr. Bannon committed

19 a crime back in October of 2021 with regard to his position

20 on the subpoena.

21         Defendant's Exhibit 32, which is in evidence,

22 specifically talks about the subpoena dated September 23,

23 2021.  So the evidence shows this is oriented towards

24 exhibit -- Government's Exhibit No. 2, the subpoena in this

25 case.  It's not a new subpoena.  It's not a new invitation.

1   It's not a new communication.

2          And the letter, in pertinent part, states:  I am

3   in receipt of your letter dated July 9, 2021 in which you

4   indicate your client, Stephen K. Bannon, is now willing to

5   comply with the Select Committee's subpoena.  That letter,

6   which is also in evidence, is Mr. Costello's notice to the

7   Committee, a change has occurred, attached is President

8   Trump's letter and, because of that change, we are willing

9   to speak with you about documents and testimony.

10          The response of Chairman Thompson on July 14th

11   was, "With respect to the Select Committee's demand for

12   documents, Mr. Bannon should begin producing responsive

13   documents today to the Select Committee and provide a

14   complete response by July 21, 2022.  And then, after he has

15   produced all of the requested documents, we will identify

16   dates soon following that production on which he must then

17   appear in person in the O'Neill House office building for

18   deposition.  We anticipate that the deposition will occur in

19   the near future."

20          The importance is that, even with the limited

21   purpose that this -- I'm sorry, the limited use of this

22   evidence by the jury, they will be able to understand that

23   compliance with the January 23, 2021 subpoena is still

24   allowed.  That's the use of the word by the Chairman in

25   Defendant's 32, "comply".

1          And compliance can involve production of documents

2     now and testimony on a later date to be determined.  We

3     believe that that exhibit, together with Ms. Amerling's

4     testimony, leaves a -- no reasonable juror could find beyond

5     a reasonable doubt the elements of the crimes charged.

6     Thank you, Your Honor.

7          **THE COURT:**  Thank you, Mr. Corcoran.

8          Ms. Vaughn?

9          **MS. VAUGHN:**  Good morning, Your Honor.

10          Trying all inferences in favor of the government,

11    the defendant has failed to meet his burden that no

12    reasonable juror could find the defendant guilty in this

13    case.

14          I'll start with element 1.  The defendant claims

15    that the government has not provided sufficient evidence for

16    a reasonable juror that the defendant was subpoenaed.

17    There's a subpoena.  It's signed by Chairman Thompson.  We

18    presented evidence that it was sent to defendant's lawyer,

19    and we presented evidence that his lawyer sent it to the

20    defendant.

21          It seems that Mr. Corcoran's argument, with

22    respect to this element, is that the government also was

23    required to prove who made the initial decision on the

24    dates, why the dates were chosen or who wrote the letters.

25    That's not an element of the offense and it's irrelevant.

1          The Committee acts as a body.  Ms. Amerling

2    testified that she is familiar with Chairman Thompson's

3    signature and recognized it as such on the subpoena.  He's

4    authorized the letters before they went out.  He authorized

5    the subpoena before it went out.  The body of the Committee

6    subpoenaed the defendant.

7          The defendant concedes that the government has

8    provided sufficient evidence on element 2.  On element 3,

9    that the defendant failed to comply or refused to comply,

10   the government has presented sufficient evidence.

11         Mr. Corcoran made similar arguments with respect

12   to this element as he did with the first, but again, the

13   reason for the dates are irrelevant.  The dates are on the

14   subpoena.  The Committee made clear in its letters to the

15   defendant that those were the dates and that he had violated

16   them.  And the evidence is clear the defendant did not

17   provide documents by October 7th and did not come for his

18   deposition on October 14th.

19         With respect to the defendant's intent, the

20   government, again, has provided sufficient evidence on this

21   point.  The defendant did not provide any records by

22   October 7th at 10 a.m.  The fact that that was not a mistake

23   was made clear in his letter later that day that he did not

24   intend to comply, and it was made clear by Mr. Costello's

25   admission that they had not gathered a single document to

1    provide to the Committee by that time.

2          The defendant also showed his willfulness in

3    failing to comply with the October 14th date.  He posted on

4    GETTR, "I will not comply" on October 8th.  He did not come

5    for his deposition.  And in case there was any doubt left,

6    he sent another letter the night before saying, "I'm not

7    coming".  So the government has provided sufficient evidence

8    and the defendant's motion should be denied.

9          **THE COURT:**  What about the question of prejudice

10   and the fact that the jury heard about the Motion for

11   Judgment of Acquittal?  What, if anything, should I do?

12         **MS. VAUGHN:**  I think most jurors probably don't

13   know what a Motion for Judgment of Acquittal, and I think,

14   drawing their attention back to it, could create prejudice.

15   I think we can move forward without it.

16         If the Court's inclined, I agree with Mr. Corcoran

17   that the Court can just give the instruction it gave -- I'm

18   not sure what the proposed instruction was that Mr. Corcoran

19   provided, but the Court already has instructions on --

20         **THE COURT:**  He basically read it.  It says as

21   follows:  "At the start of this trial, I described my

22   responsibilities as the judge and your responsibilities as

23   the jury.  My responsibility is to conduct this trial in an

24   orderly, fair and efficient manner, to rule on legal

25   questions that come up in the course of the trial and

1    instruct you about the law that applies to this case."

2              "During trial, you may have heard reference to

3    objections, motions, briefs and the like.  The discussions

4    of the lawyers on those legal issues and my rulings are not

5    evidence and are not to be considered by you as you

6    determine the facts in this case or in the case."

7              **MS. VAUGHN:**  Yes.  It looks like the first part is

8    taken from Instruction 2.101, the function of the Court.

9    The second part -- I'm not sure if that's 2.105.

10             **MR. CORCORAN:**  Your Honor, the second part is

11   original product.

12             **MS. VAUGHN:**  Ah.  Thank you.

13             To the extent that the Court wants to give an

14   instruction, there is -- the last paragraph of 2.102

15   describes the Court's function and 2.105 describes the

16   attorneys' functions and how the jury should judge all of

17   these things.

18             In our view, if the Court were concerned, it could

19   give these instructions that it's also going to give again

20   at the end of the case.  We would respectfully suggest that

21   we not tell the jury why they're being instructed on this

22   again, because it would just draw attention back to it.

23             **THE COURT:**  So both parties, it seems to me, are

24   agreeing that, as to this motion, the fact that the jury

25   learned there might be this motion submitted today, that I

1    should not remind them of that motion.  I shouldn't attempt

2    to cure prejudice by saying something like, you heard about

3    this motion yesterday.  I don't want you to think that I've

4    decided in any way that would indicate that I have a view of

5    the case.  Basically, both parties agree I shouldn't mention

6    it at all.

7            And then the other question is whether and to what

8    extent I give a fairly generic instruction about the

9    respective roles and responsibilities of me and them and the

10   fact that, you know, I shouldn't take -- they shouldn't take

11   anything that I've said as a view of the case, some version

12   of that.  I know there's a disagreement about exactly what I

13   say but a fairly generic instruction.

14           **MS. VAUGHN:**  To clarify, the government doesn't

15   think there has been any prejudice, such that an instruction

16   isn't required, but to the extent that the Court believes

17   that one is, we don't have any objection to doing that.

18           **MR. CORCORAN:**  We agree that no instruction is

19   needed at this time, and it will be covered in the Court's

20   final jury instruction.

21           **THE COURT:**  I may or may not agree with that.  All

22   right.  I want to discuss another issue with the parties on

23   the husher.

24           (Sidebar discussion.)

25           ███████████    ██████████████████████████



914



1

2

3          (Sidebar discussion concluded.)

4          **DEPUTY CLERK:**  We are now back on the public

5    record.

6          **THE COURT:**  I'd like to take a brief recess.  I

7    want to consider the Motion for Judgment of Acquittal, the

8    parties' views around prejudice.  I'll just spend five

9    minutes and then I'll come back and discuss that.

10         And then I also want to think about when an

11   appropriate time to hear from you, Mr. Schoen, is on the

12   motion relating to the granted Motion to Quash congressional

13   scheme.  Okay?  So we're in recess for five minutes.

14         **DEPUTY CLERK:**  All rise.

15    (Recess at 11:15 a.m. until 11:23 a.m.)

16         **DEPUTY CLERK:**  We are now back on the record.

17         **THE COURT:**  Thank you, Ms. Lesley.

18         With respect to the Motion for Judgment of

19   Acquittal, as was made pretty clear here, I was concerned

20   about its having been mentioned in front of the jury and

21   what the jury might hypothesize if they are called back in

22   here to continue the case and whether they might think that

23   that reflected -- they would infer that that reflected a

24   judgment by me about the motion.

25         So my plan or at least my thinking coming in here

1      was that I was going to do two things, one of which I am

2      still going to do.

3              I am going to reserve judgment, reserve decision

4      on the Motion for Judgment of Acquittal, as I am permitted

5      to do under Rule 29(b), because I thought that reserving

6      judgment was the way to most reduce the potential prejudice

7      to the jury.

8              And then I was going to -- what I had been

9      thinking I would do is I was going to then instruct the jury

10     that they had heard of this motion and that, in order to

11     ensure that they didn't think that I was deciding the merits

12     or the strength or anything of the case one way or the

13     other, that I was going to reserve decision.  I was going to

14     tell the jury that.

15             But both parties are -- the parties are in

16     agreement that raising the question with the jury would

17     effectively put it in their heads more than it otherwise is

18     and would run the risk of more prejudice or some prejudice,

19     more prejudice, than making either no mention of it or any

20     instruction whatsoever about legal issues or giving them

21     some very benign instruction about my role as judge deciding

22     legal issues and that they shouldn't take anything I say or

23     do or otherwise to interfere with their duties.

24             So in light of the parties' shared view that I

25     shouldn't say anything about the Motion for Judgment of

1    Acquittal, I'm not going to do so.  I am going to give the

2    jury a very, very basic instruction about my role versus

3    theirs.

4         And so I'm reserving decision on the Motion for

5    Judgment of Acquittal.  Obviously, I have to decide it later

6    as a result based on the arguments as they are presented to

7    me today, and I am not going to say anything about the

8    motion to the jury that I'm going to give them whenever they

9    come back, a very basic instruction about my role.

10        As to Mr. Schoen, your argument about the -- in

11   your renewed motion regarding the implications of my

12   granting the Motion to Quash, if you could come forward.  I

13   have sort of a procedural question for you, which is, Is

14   this really a Motion to Dismiss the indictment or is it

15   something different now?  Is it like a Sixth Amendment

16   argument, Motion for Judgment of Acquittal?  And is it

17   appropriate to take up now or later?  Would you prefer to

18   take it up later?

19        **MR. SCHOEN:**  I really was sold on the Court's

20   approach originally.  I mean, that is, that, listen, you

21   know -- yes, it's a Motion to Dismiss.  That Motion to

22   Dismiss was filed when it was filed.

23        **THE COURT:**  Yes.

24        **MR. SCHOEN:**  And those are the arguments.

25        I think we've made a motion, Rule 29 motion.  I

1     think that, given the Court's real interest -- listen, two

2     things I've learned since I got into this case and have been

3     reinforced to me, the Court's a whole lot smarter than I am,

4     reinforced at every appearance, and secondly, the Court

5     likes to cut to the chase.

6              So the Court indicated the other day that its real

7     interest in this motion is, Listen, we've briefed the issues

8     on whether dismissal is appropriate.  If dismissal is not

9     appropriate, is exclusion another remedy.  The Court has all

10    that.  I don't think we need to discuss that too much.  So

11    the Court said, I need to know what it is you wanted from

12    Thompson.

13             **THE COURT:**  Yes.

14             **MR. CORCORAN:**  So I think that makes sense, and

15    that's why I thought the Court's idea about doing it during

16    our case makes sense.

17             I think we'll have to think logistically, if

18    that's the case, about -- I don't know if the Court intends

19    next to bring in the jury or not, but I think --

20             **THE COURT:**  So let me ask you this question, if

21    you're prepared to answer it.  If we have -- imagine we

22    don't have argument right now on the proffer that you would

23    be prepared to make --

24             **MR. SCHOEN:**  Right.

25             **THE COURT:**  -- what's your plan?

1          **MR. SCHOEN:**  May I have just one second?  I just

2     want to say logistically --

3          **THE COURT:**  Yes.

4          (Discussion between counsel off the record.)

5          (Brief pause.)

6          **MR. SCHOEN:**  I'll put it this way, Your Honor, I

7     think for the defense case we do not need the jury.  In

8     other words, I want to just -- we'll make a proffer to the

9     Court so the Court is ensured -- has an assurance that

10    everyone has been fully informed of their rights and so on.

11    I know the Court would do that anyway, but in any event, we

12    would just make a proffer that we cannot make in the

13    presence of the jury.

14          So I need to make a proffer on the Thompson

15    issue --

16          **THE COURT:**  Yeah.

17          **MR. SCHOEN:**  And then --

18          **THE COURT:**  So I guess I was asking a bigger --

19          **MR. SCHOEN:**  Actually I know what the Court was

20    asking.

21          **THE COURT:**  Why don't we go ahead and do that?

22    Why don't you make the proffer you're prepared to make on

23    Thompson.

24          **MR. SCHOEN:**  Okay.

25          **THE COURT:**  I'll hear from the government and its

1    response to that.  I'll have to think through whether and to

2    what extent that proffer and the government's response leads

3    me to conclude that relief is warranted.

4             Then my real -- the question I was really getting

5    to is, Is the defense going to be putting on a case,

6    assuming that we're bringing the jury back here?

7             **MR. SCHOEN:**  I understood that, Your Honor.  The

8    answer is, No.

9             **THE COURT:**  Okay.

10            **MR. SCHOEN:**  But way of proffer I do have to make

11   those -- so that would be the defense case.

12            **THE COURT:**  Understood.

13            **MR. SCHOEN:**  I just lost my --

14            **MS. VAUGHN:**  Your Honor, may I?

15            **THE COURT:**  Ms. Vaughn, yes.

16            **MS. VAUGHN:**  I just wanted to make a proposal,

17   just thinking about the most efficient way to use the jury's

18   time here.

19            **THE COURT:**  Yes.

20            **MS. VAUGHN:**  It sounds like the parties have

21   already figured out what proposals they have for the final

22   jury instructions.

23            **THE COURT:**  Yes.

24            **MS. VAUGHN:**  To present them to the Court.

25            So our proposal would be to send the jury to an

1      early lunch.  We can confer for 20 minutes on the jury

2      instructions, provide our results to the Court, and then we

3      could have a charge conference when the jury comes back for

4      lunch, go right into instructions and closings.

5               **MR. SCHOEN:**  If I may, that may be the best

6      course, but another suggestion would be that we go forward

7      with this and then rest.  And then we would be prepared to,

8      you know, after lunch then --

9               **THE COURT:**  But you are not -- as I understand it,

10     at least, you are not intending to put on any evidence to

11     the jury?

12              **MR. SCHOEN:**  Correct, Your Honor.

13              **THE COURT:**  Okay.  So the jury has now heard all

14     of the evidence it will hear.  There are then two or three

15     things that occur -- could occur before the jury gets this

16     case, if it does.

17              One is that there's a discussion around and a

18     finalization of jury instructions.  That has to happen

19     before any closings.

20              The second is the proffer/argument around -- I'll

21     put it this way -- the congressional subpoena-related motion

22     that would, in Mr. Bannon's view, obviously take this case

23     from the jury.

24              And then I have reserved on the judgment for

25     motion -- the Motion for Judgment of Acquittal because I was

1    concerned about prejudice to the jury and the like.  My plan

2    had been to reserve judgment until after the jury

3    deliberates, assuming we get there.

4            I guess, in theory, if we're at the end of the

5    defense case in the evidentiary sense, you might -- I take

6    it you do not have -- as a result, you do not have a

7    separate motion for judgment after the defense case.  It's

8    different from this proffer.  Fair enough?

9            **MR. SCHOEN:**  Certainly.  We are not putting on a

10   defense case.

11           **THE COURT:**  Yes.

12           **MR. SCHOEN:**  What I need to make, Your Honor, is

13   simply the Thompson proffer, discuss that issue.

14           **THE COURT:**  Yes.

15           **MR. SCHOEN:**  And then the explanation that --

16   Mr. Bannon won't be testifying and I would explain

17   Mr. Bannon's decision, informed decision and so on.

18           **THE COURT:**  Yes.  Yes.  Let's do that.

19           Let's go ahead -- I am trying to be respectful, in

20   part, of the jury's time, but I also want to do this in an

21   efficient manner.  I also want to make sure that I have

22   adequate time to consider your argument for the judgment

23   relating to the Thompson, et cetera, testimony.  I would

24   like to do the following.

25           I would like to take a recess.  I would like the

1    parties to confer around jury instructions and then to just

2    submit those to us.  Whatever you're -- whatever you discuss

3    to us so that we can, at least, be looking at them and

4    addressing them while we also then come back after the

5    recess and hear the proffer, both around the Thompson

6    information and Mr. Bannon's decision not to testify, the

7    government's arguments to the contrary.

8            Depending on how the arguments go, I will decide

9    whether I can resolve the question there or if I have to

10   reserve again.  And then we can just go forward.  And we

11   will see then, whether we're in a position to instruct the

12   jury, based on the instructions as agreed or as I have

13   sifted through them.  And if we are at that point, then we

14   can instruct the jury and do closings.

15           But I don't think we're there yet, because I want

16   the parties to meet and confer around the instructions.  I

17   want to hear you, Mr. Schoen, on the Motion to Quash

18   implications and from the government, of course, have some

19   time to think about that.

20           So we're going to go into a recess until 1:00.

21   Okay.

22           **MR. SCHOEN:**  How does the Court handle the charge

23   conference logistically, again?  In here, open Court?

24           **THE COURT:**  So I was assuming that we -- there is

25   substantial agreement on at least a lot of the instructions

1    but some disagreement on some.  I was planning to just do it

2    in here and to hear from the parties on the positions once

3    articulated to us and see what they are.  In an informal

4    way, I get that these will not be filings.  These are -- the

5    way I like to have it is emailed to me to the chambers email

6    with the parties' respective positions.  It need not be

7    formal areas of disagreement and we can just discuss them.

8           But my plan, though, is -- so to go into a recess

9    right now.  To tell the jury that, at a minimum, they have

10   until 1 to go have lunch.  At 1:00 to hear from you,

11   Mr. Schoen, around your proffer and your arguments, to hear

12   from the government.

13          And then, once I've heard that, to then take up

14   the jury instructions questions.  But we will at least have

15   from you before 1, I hope, your views on instructions.

16   Okay?

17          And then we'll take it from there.  But thank you

18   for letting us know of the plans.  Okay?

19          **DEPUTY CLERK:**  All rise.

20       (Recess at 11:36 a.m. until 1:07 p.m.)

21          **DEPUTY CLERK:**  Good afternoon, Your Honor, we are

22   back on the record.

23          **THE COURT:**  Good afternoon, everyone.  Mr. Schoen?

24          **MR. SCHOEN:**  Thank you, Your Honor.

25          First, my focus is going to be like this.  I want

1    to just give a two-minute/one-minute background on why I

2    thought this issue was important.  And then I just want to

3    focus on the specific areas on why we wanted

4    Chairman Thompson.  When I say "Chairman Thompson," i mean

5    Committee members.

6              **THE COURT:**  Yes.

7              **MR. SCHOEN:**  Thank you, Your Honor.

8              As the Court knows, our view is -- has been badly

9    stymied in being able to present a defense in the case based

10   on the Court's ruling, after careful consideration of the

11   defenses we proposed and the Court's conclusions.  We

12   believe that in that kind of --

13             **THE COURT:**  Some of which, as you know, I believed

14   I was bound by D.C. Circuit precedent that I am not even

15   sure is right.

16             **MR. SCHOEN:**  Thank you, Your Honor.  Understood.

17             **THE COURT:**  Yes.

18             **MR. SCHOEN:**  So in that universe, the defense

19   needs to find as many areas of material for its defense as

20   possible, principally, through cross-examination, but also

21   through calling witnesses that we believe have relative

22   noncumulative evidence to provide on the fundamental issues

23   before the Court.

24             Now, we also would propose to examine those

25   witnesses on issues the Court has ruled out.  We understand

1  that we wouldn't be able to examine them on them.  But to

2  preserve the record, those would include issues like the

3  rules issues, composition of the Committee, and so on, that

4  the Court has ruled out.  But that would be part of our

5  reason for wanting to have first-hand input from the

6  Committee members themselves.

7           **THE COURT:**  Yes.

8           **MR. SCHOEN:**  That won't be my focus today.

9           Secondly, is this overall approach that the

10  government has taken, and specifically through its witness,

11  Ms. Amerling yesterday -- whenever that was, I think it was

12  yesterday.

13           **THE COURT:**  Yesterday and the day before.

14           **MR. SCHOEN:**  Yes, sir.  Thank you, Your Honor.

15           Through Ms. Amerling that Mr. Bannon's approach

16  was that he simply ignored the subpoena; that he decided he

17  was above the law; and that he simply refused to comply for

18  no appropriate reason.

19           Well, he certainly didn't ignore the subpoena.  So

20  we would want to examine these witnesses, the Committee

21  members, Chairman Thompson himself, to whom Mr. Costello's

22  letters were directed, to make the point that Mr. Costello

23  and Mr. Bannon didn't ignore them when they wrote their

24  letters, each of which are in evidence now.

25           But the idea that Mr. Bannon thought he was above

1    the law is belied by the letters.  Mr. Bannon from Day 1

2    said that he wanted to comply -- take it back a step.  I

3    know the Court's aware of this.  I'm just sort of setting

4    the stage in a sense.

5             Mr. Bannon is contacted by his lawyer Costello.

6    Is told that he has a subpoena -- a congressional subpoena

7    from this Committee, and then he tells him he's been advised

8    that he been advised -- he, Costello, has been advised that

9    executive privilege has been invoked.  This is all in

10   Costello's Declaration ECF 30-1.

11            But anyway, so he tells them that and he tells

12   them -- to again cut to the chase -- you're bound by

13   executive privilege.  Your hands are tied.  You may not

14   comply with the subpoena.  I, Costello, have studied these

15   OLC opinions.  They support us.

16            They apply to you and your hands are bound.

17   You're caught as a pawn between a fight between a form

18   President and this Committee.  There's nothing you can do

19   about it.  You're not permitted by law to do anything about

20   it.

21            That's not -- and on top of that, Costello --

22   Bannon, through Costello, contacts the Committee,

23   Chairman Thompson again, to tell him, Bannon is looking for

24   a way to comply.  He wants to comply.  So here are some

25   options.  Either work out the privilege with former

1      President Trump or let's go before a court.  It should be a

2      court that decides whether the privilege is valid.

3              **THE COURT:**  I know all of this.

4              **MR. SCHOEN:**  Yes, Your Honor.  Let me tie it in.

5              **THE COURT:**  Yeah.

6              **MR. SCHOEN:**  The Committee members themselves,

7      Chairman Thompson particularly, but the Committee members,

8      are aware of that process.  They made a decision not to

9      pursue that process.

10             Had they wanted the information and documents and

11     testimony from Mr. Bannon, that was the process readily open

12     to them and that, if they're right about privilege, would

13     have led to getting that information.  Because what Bannon

14     said is, if a judge orders me to comply, I will comply.  I'm

15     paraphrasing.  So had they gone before a judge, a judge of

16     their right, would have said either privilege isn't valid or

17     it's not so broad or you still have to respond in some

18     manner and he would have complied with that.

19             They chose not to.  Now we would have examined the

20     Committee members about the accommodation process, about

21     that route and about why they made a decision, if Bannon's

22     information and testimony was so important to them as

23     Ms. Amerling testified but as we would want to hear from the

24     Committee members, then why not go that route?  Why did they

25     choose to go criminal and so on?

1          Okay.  So I'll go down a list now, Your Honor, of

2   things that we -- with the kind of, I think the kind of

3   specificity the Court had in mind, I hope anyway.  Again why

4   did -- I'll use Chairman Thompson for shorthand for the

5   other witnesses, but focus on him particularly because the

6   letters are back and forth with him.

7          Why did Chairman Thompson believe Bannon's

8   testimony was important?  What was it that he thought was

9   pertinent about the Committee's work specifically from the

10  Committee's perspective, not from a staffer's perspective?

11         For all of these, our position is a staffer is

12  simply neither competent to testify about this nor the

13  appropriate person nor the person who the jury should be

14  hearing from on our issues on cross-examination.

15         **THE COURT:**  Given the Committee acts as a body,

16  would that entitle you to have every single member of the

17  Committee here?  Why does Chairman Thompson matter?  If nine

18  members or eight members of the Committee said, No, we don't

19  want you to do this, why is a single member in a

20  multi-member body like this particularly important on

21  something like pertinence?

22         **MR. SCHOEN:**  I do think we would be entitled to

23  have the whole Committee here, quite frankly.  But

24  Chairman Thompson, for example, is a decision-maker and he's

25  the leader of the Committee.  So that's why

1    Chairman Thompson.  And I think we're not greedy.  It would

2    suffice to us to have Chairman Thompson here without waiving

3    the reasons I have for the other issues.

4          Now, if the Committee's work was so important,

5    then why not give Bannon a one-week extension when he asked

6    for it toward the end.  That period is particularly

7    important for issues I'll get to in a second.

8          Was it important, Chairman Thompson for --

9    important enough for the Committee to wait or to take one of

10   those other steps that Bannon suggested for compliance?  And

11   if not, why not?

12         Again, the Committee's work is ongoing.  They're

13   still hearing from witnesses.  They're lining people up for

14   their television hearings.  What harm would there have been

15   in giving Bannon an extension?

16         What did Chairman Thompson mean in the language

17   that he used in his letter on October 15th, when he asked

18   Mr. Bannon to submit any reasons that he had for continued

19   noncompliance by October 18th?  Why October 18th?  What kind

20   of reasons did he have in mind?  What kind of reasons might

21   have persuaded Chairman Thompson to, in his words, change

22   course?

23         What did he mean -- what did Chairman Thompson

24   mean in the language he used on October 19th, a day after --

25   I mean -- yeah, a day after he had been in touch with

1       Costello and the contempt -- he insisted on going forward

2       with the contempt vote?

3                   What did he mean when he urged Bannon to change

4       course?  I'm reading from the first paragraph.  "I write,

5       yet again, to urge your client, Stephen K. Bannon, to change

6       course and comply with the September 23, 2021 subpoena from

7       the Select Committee to investigate the January 6th attack

8       on the United States Capitol.  Select Committee."

9                   What did he mean?  And what would the impact be of

10      Mr. Bannon complying?  We heard the other day that, if he

11      had complied by 11:00 instead of 10:00, that might have had

12      a consequence, a positive consequence for Bannon.  So what

13      did it mean if he complied after the 18th, after the dates

14      in the indictment?

15                  Remember, again -- well, I'll talk in one

16      second -- one date is on October 14th so that -- in Count 1,

17      if the government were to prove that Mr. Bannon failed to

18      comply on October 15th, he's not guilty under Count 1.

19                  On Count 2 it is by October 18th.  But why

20      October 18th?  October 7th is the date for that one in the

21      subpoena.  Why is that date changed?

22                  **THE COURT:**  Why.  Why -- what element or issue in

23      the case as it exists now does any of this go to?

24                  **MR. SCHOEN:**  It goes to the direct defense that

25      the Court has permitted, the belief the dates were flexible.

1          **THE COURT:**  But the belief has to be -- is about

2     Mr. Bannon's belief.

3          **MR. SCHOEN:**  Yes, Your Honor.  So Mr. Bannon's

4     belief, when he gets a letter on October 19th, after the

5     18th --

6          **THE COURT:**  But the letter comes in and the letter

7     says what it says.  Mr. Bannon, I presume, is not talking to

8     Mr. Thompson nor is Mr. Costello.  So how can what is in

9     Mr. Thompson's head inform the mens rea of the defendant?

10          **MR. SCHOEN:**  Because Mr. Thompson wrote the

11     letter.  The defendant gets the letter.

12          **THE COURT:**  The letter is the letter.

13          **MR. SCHOEN:**  The defendant gets the letter.  He

14     has to --

15          **THE COURT:**  But the defendant's mens rea is -- the

16     defendant, in mid-October, has a set of information in front

17     of him.  That information is the letters.  And the letters,

18     in his view, may be ambiguous or they may present some

19     question.  But what does Chairman Thompson's testimony tell

20     us about Mr. Bannon's mens rea since it, by definition, was

21     not known to Mr. Bannon what Mr. Thompson thought in his

22     head?

23          **MR. SCHOEN:**  Well, that's part of the issue.  The

24     fact that it's a question is a reason to have the

25     discussion.

1          **THE COURT:**  No, but are you saying that Mr. Bannon

2     had any information about what was in Mr. Thompson's head

3     other than what's reflected in the letters?

4          **MR. SCHOEN:**  No, Your Honor.  That's exactly why

5     we need him on the witness stand because we don't have --

6          **THE COURT:**  But how can that go to mens rea?  You

7     just said it goes to Mr. Bannon's belief that the dates were

8     flexible.

9          **MR. SCHOEN:**  If we're right and the reason he

10    moved it is because the dates are flexible and we get that

11    from Chairman Thompson on the witness stand, then

12    Mr. Bannon's -- the jury certainly --

13         **THE COURT:**  That doesn't go to mens rea, but maybe

14    it goes to whether the dates were in fact not fixed, not

15    mens rea.

16         **MR. SCHOEN:**  Well, that's certainly part of the

17    equation.  If the dates were in fact not fixed, that

18    certainly goes to support Mr. Bannon's belief as a

19    reasonable, fair belief.  And the fact, quite frankly, that

20    the indictment and the subpoena have different dates,

21    supports the idea that the date was malleable.  The 18th

22    seems to be just an arbitrary date.  So if it's the 18th of

23    October, why isn't it the 23rd of December?

24         All right.  So --

25         **THE COURT:**  Do you concede that what was in -- do

1    you concede that what was in Mr. Bannon's head at the time

2    from -- in terms of information from the Committee was only

3    what was reflected in the letters?

4             MR. SCHOEN:  About the dates, I think that's

5    right.  I mean, there were public statements made by the

6    Committee about what, we believe, reflects an agenda.

7             THE COURT:  Mr. Bannon and Mr. Costello didn't

8    have any communications with Mr. Thompson at the time.

9    Correct?

10            MR. SCHOEN:  Correct.  I mean --

11            THE COURT:  I mean oral communications?

12            MR. SCHOEN:  Correct, Your Honor.

13            THE COURT:  Okay.  Keep going.

14            MR. SCHOEN:  I'm sorry.

15            I lost my train of thought for a second.

16            THE COURT:  Sorry.  Take your time.

17            MR. SCHOEN:  Yeah.  Yeah.

18            THE COURT:  You were going through the various

19    items in which you --

20            MR. SCHOEN:  Yeah, the Court obviously knew that,

21    but --

22            THE COURT:  Would like a congressional person to

23    testify about.  I didn't mean to undue --

24            MR. SCHOEN:  In any event, the progression

25    continued.  What did Mr. Thompson mean -- it's the same

1      effect.

2              **THE COURT:**  Right.

3              **MR. SCHOEN:**  What does Mr. Thompson mean in his

4      January 4th letter, he appreciates Mr. Bannon -- January

5      14th letter -- I keep saying January -- July 14th letter in

6      which he appreciates Mr. Bannon's willingness to comply.  So

7      we would want to examine Chairman Thompson about that.

8              And, Judge, the idea that just the letters speak

9      for themselves reminds me -- certainly there are some

10     distinctions, but reminds me of the confrontation clause

11     issue that the Court noted in *Crawford versus Washington*,

12     for example.  They had the wife's letter.  She was

13     unavailable.  They had a marital privilege, but the letter

14     just wasn't good enough, the Supreme Court told us.

15             So these letters have meaning behind them.  And

16     even if they're just offered for notice, the question is,

17     was that notice reasonable?  In other words, the Court

18     raised the issue the other day --

19             **THE COURT:**  Wait.  Wait.  Wait.  Why is the

20     question reasonable?  What's that issue?  I hadn't heard

21     that before.

22             **MR. SCHOEN:**  Because, if one of the reasons Bannon

23     thinks that the dates are flexible is, if the Committee is

24     going to yield eventually on executive privilege or one of

25     those issues, then the reasonableness of the Committee's

1    position is relevant to that idea, or it's just, you know,

2    completely off the wall that Bannon could think that, and

3    again, that's a question for the jury.

4         All right.  If Chairman Thompson thought that

5    Mr. Bannon -- again, this goes to the dates issue, how firm

6    are they, and the default question.

7         If Chairman Thompson thought that Mr. Bannon

8    already had defaulted on the subpoena, then what would make

9    him think that he has the right to demand continued

10   compliance?  Why does he use the term "compliance"?  Why

11   don't they, in their July 14th letter, use the word

12   "default" if they think there's been a default?

13        Now, Ms. Amerling went through the subpoena and

14   what she said, as a staffer, they suspected about -- I don't

15   mean any disrespect by saying "staffer".  I'm sure it's very

16   important position.

17        **THE COURT:**  I understand.  It's a distinction

18   between staff and member.

19        **MR. SCHOEN:**  Yes, Your Honor.

20        Ms. Amerling went through the subpoena and what

21   they suspected about Bannon and intended to show through

22   Bannon.  The significance of Bannon not complying under the

23   auspices of the pertinency -- if pertinency is the word or

24   pertinence is the word?  But we need to discuss, whichever

25   word that is -- pertinency I'll call it for now -- with

1    Chairman Thompson.

2            It's the Committee's perspective on pertinence

3    that's important.  So if pertinence is independently

4    relevant through testimony on the stand here as an element

5    for the government or as a defense that it's not pertinent,

6    we need to examine a Committee member, a person who has the

7    authority on behalf of the United States Congress or that

8    Committee, to make those decisions.  What's his perspective

9    as the decision-maker and go through each reason with him.

10           Now, Ms. Amerling referred constantly to

11   Mr. Bannon's misconduct throughout her testimony.  But we

12   would want to establish with Chairman Thompson, as the

13   Committee representative, the authorized Committee

14   representative, the leader of the Committee, about

15   Mr. Bannon's actual willingness to comply and his position

16   that, if privilege were not valid and a judge said so or it

17   weren't so broad and a judge said so, then he would have

18   complied fully.

19           We want to establish with the Committee,

20   Chairman Thompson, that Chairman Thompson knew at all times

21   that Mr. Bannon was acting on the advice of counsel.  And I

22   understand that may be an issue the Court wouldn't permit

23   today, but I still say this is one of the things we would

24   want to examine him on.  But that he wasn't acting on some

25   inexplicable intransigence.  Rather, he had specific reasons

1     which he thought the Committee should yield on and they had

2     notice of that.

3              That's, you know, the purpose of we say these

4     letters are for.  They had notice that that was Mr. Bannon's

5     position.  He offered a way out.  The entire presentation we

6     saw from Ms. Amerling was that, "He had no intention ever of

7     complying, he never produced anything for that reason and

8     for no good reason and it was all misconduct."

9              That's not the story of the case.  If Mr. Bannon

10     is going to be handcuffed and not able use his defenses to

11     explain the story of the case, then we need, through

12     cross-examination, to be able to get out that story of the

13     case to the extent permissible within the narrowed defense

14     the Court has permitted through a member of the Committee.

15             We want to know -- I may be repeating this, but

16     that wouldn't be the first time, I'm sure.  We want to

17     develop through Chairman Thompson whether the Committee

18     considered either of the options.  The Court heard the

19     questions to Ms. Amerling the other day, but Ms. Amerling is

20     not competent to answer that question.

21             Whether the Committee, the Committee members, the

22     members of Congress, the elected members of Congress,

23     authorized members of Congress, whether they considered, for

24     the American people, either of the options that Mr. Bannon

25     offered.  If they really wanted to get Bannon's testimony

1    for this January 6th Committee, did they consider the

2    options that he offered?

3            And Chairman Thompson, isn't this a normal course

4    to pursue?  Haven't you pursued this course, you,

5    Chairman Thompson, speaking institutionally -- hasn't this

6    institution pursued the course of a civil enforcement

7    proceeding in the past?  And haven't the courts said that

8    ultimately the courts are the ultimate arbiter of these

9    kinds of disputes?

10           Because we heard from Ms. Amerling the other day

11   that Bannon, through Costello, was told over and over again,

12   This Committee rejects your privilege claim.  Well, the

13   courts have said, it's a tension; that's a --

14   separation-of-powers issue.

15           When the President or former President invokes

16   privilege, it's presumptively valid.  It's presumptively

17   privilege.  And it's not for Chairman Thompson or any other

18   member of Congress to seek to override that unilaterally.

19           There was a question, as the Court is well aware,

20   whether that's a justiciable question in the first place.

21   The Court certainly in this district indicates that it is.

22   So why didn't Chairman Thompson take that option?

23           I talked about the presumptive validity.  I'd want

24   to question him about that.

25           Why would he, Chairman Thompson -- knowing this

1    historic tension and its resolution by the courts in the

2    past, why, if he wanted that information, wouldn't he pursue

3    that course?  Why would he expect Mr. Bannon to be satisfied

4    by what we have said -- although not admissible in evidence

5    I understand, but we have said is a purely partisan

6    political agenda to get Bannon?

7         And by the public statements, the reason we think

8    those are independently important is that those public

9    statements, some of which we cite in the opposition to

10   Motion to Quash papers, indicates that partisan agenda.

11        Another issue, quite frankly, and I don't know

12   that the Court would permit it but that we would want to

13   examine Chairman Thompson on to preserve for the record

14   would be the extraordinary conflicts that mar this

15   Committee.

16        Chairman Thompson brought a lawsuit against

17   President Trump alleging that former President Trump was

18   directly responsible for the events of January 6th and that

19   he, Chairman Thompson, was personally injured.  When he

20   withdrew from that lawsuit to become chairman, he said that,

21   in his withdrawal motion, he stands by the allegations or

22   words to that effect.

23        Mr. Raskin, Mr. Schiff have written books on the

24   events of January 6th.  They have a reputational and perhaps

25   financial interest in ensuring that the Committee's

1      conclusions are consistent with their books.

2              We want to examine those members about that.  It's

3      a matter of bias, in choosing this course and in

4      determining, to put it in in our framework, in determining

5      whether the dates were fixed or were malleable.  And maybe

6      they were moved in their decision-making process on that by

7      their conflicts, by their bias.

8              Ms. Amerling imbued the Committee the other day

9      with this sincere desire to investigate fully and get to all

10     the facts but from some perspectives.  We say this question

11     is a lot more complicated.  I don't believe that, under the

12     Court's -- under the narrow defense we have here, this would

13     be admissible evidence.  But it is a reason we would want to

14     try to examine Chairman Thompson and that is, did the

15     Committee ever really want to hear from differing

16     perspectives?

17             We know, at least from the media, that members

18     suggested, recommended by Mr. McCarthy, were kept off of the

19     Committee, Jordan, Banks.  And from their perspective, it

20     was because they wanted to broaden the investigation to

21     include other issues relevant to the events of January 6th.

22     We'd want to examine the members here and why those

23     decisions were made.

24             Chairman Thompson -- this is also directly

25     relevant, I think.  Chairman Thompson has made public

1    statements to the effect that anyone who invokes

2    privilege -- and in this case it was a Fifth Amendment

3    privilege.  Anyone who invokes privilege must have something

4    to hide.  Therefore, again carrying it one step further, it

5    would be reasonable to believe that he simply flatly rejects

6    privilege claims in response to a subpoena; and that he

7    believes he unilaterally has the authority to reject them

8    and that it doesn't need to be brought to a Court; and that

9    hopefully he would be moved, swayed from that position by

10   reason over the course of time so that those dates would

11   move, in the sense that Mr. Bannon would be able to comply,

12   they would go before a judge or President Trump would have

13   removed the privilege earlier than he did now.

14          We say that eliminating instruction in the letters

15   doesn't obviate the need to examine the letter writer

16   himself; and that's why -- you know, I think that *Crawford*

17   *versus Washington* is relevant there.

18          And also, you know, a case like -- *United States*

19   *versus Nobles* in which defense investigator wanted to

20   testify consistent with the defense theory but he refused

21   to -- the defense refused to produce his report and so they

22   kept the testimony out.

23          Here, I think the similarity is we need the

24   underlying evidence of these opinions or conclusions that

25   Ms. Amerling, who has no authority to make them or to speak

1     on them, gave to us.

2          Now, Ms. Amerling said -- and I think -- well,

3     Ms. Amerling said that Mr. -- I think she was parsing words

4     a bit or this is just how she understood it or the question

5     wasn't sufficiently clear.  But, in any event, she answered

6     that -- again, I'm paraphrasing.  I don't have the

7     transcript in front of me.

8          Mr. Bannon never asked for an extension of time to

9     produce documents.  He just asked for an extension for *Trump*

10    *versus Thompson* decision that came out.  We would want to

11    talk to Chairman Thompson about that.  Now he's a party to

12    that lawsuit, and it's particularly important for this

13    question, the question of the dates, whether the dates would

14    have been moved for this reason, two reasons.

15         *Trump versus Thompson* lawsuit dealt, in part, with

16    exactly one of the issues before this committee -- before it

17    evolved here.  Does a currently-sitting President take

18    precedence on the issue of the invocation of privilege over

19    a former President?

20         Now, the D.C. Circuit opined to some degree on

21    that, but Justice Kavanaugh wrote a very clear statement in

22    the denial of circuit in which he said, that part of the

23    D.C. Circuit opinion is out.

24         Of course, a former President has the right to

25    invoke privilege.  We decided that in *Nixon versus GSA*.

1   When there's a tension between the two, there has to be a

2   question of what's going to be determined.

3           So what happened here?  On the 18th of October,

4   this fellow Jonathan Su, S-U, on behalf of President Biden

5   wrote a letter to Mr. Costello in which he went through a

6   couple of things.  It's only two or three paragraphs long.

7   But he said, "On the 18th of October, President Biden's

8   determination that an assertion of privilege is not

9   justified with respect to these subjects applies to your

10  client's deposition testimony and to any documents your

11  client may possess concerning either subject."

12          That's on the 18th of October.  That's the day

13  that Mr. Costello asked for a one-week extension to study

14  *Trump versus Thompson*.  That's one of the issues in *Trump*

15  *versus Thompson*.  Does President Biden have the authority to

16  tell Bannon, Costello, you don't have privilege no matter

17  what former President Trump said.  That was on the 18th.  He

18  asked for a one-week extension.  Why didn't they move that

19  deadline given that?  Because, we say, because they had a

20  televised contempt referral vote scheduled for the 19th

21  already and that was more important.

22          But in terms of getting the information and

23  complying with the subpoena, maybe they would move the dates

24  if it weren't about posturing.  And maybe one day they would

25  say it's not about posturing.  We want to get your

945

1    information.  And maybe that's what they said on July 14th,

2    when they talked about welcoming his compliance of the

3    subpoena, his willingness to comply with the subpoena.

4            The last two or three points, Judge.  Sorry I've

5    taken up a lot of your time already.

6            **THE COURT:**  No, I want to hear it, and I think

7    it's important to have the full proffer.

8            **MR. SCHOEN:**  Thank you, Your Honor.

9            So Ms. Amerling testified.  This is a pure-dates

10   issue again.  Ms. Amerling testified that she didn't know

11   why the 7th was changed to the 18th.  That may not have been

12   exactly what she said, but the issue around this is, the

13   subpoena requires production of documents by the 7th.

14           The indictment requires the production of -- or

15   finds a default if the -- asks the jury to find a default,

16   willful default, if the documents were not produced by the

17   18th.

18           I want to know from the Committee, the Chairman,

19   why did that date change?  Was that an arbitrary date?

20   Didn't that reflect the idea that the dates in the subpoena

21   or that date at least in the subpoena, October 7th, was a

22   flexible, malleable --

23           **THE COURT:**  What does the Chairman have anything

24   to do with the indictment?

25           **MR. SCHOEN:**  Nothing to do with the indictment.

1     We would present him with the indictment.  And the idea is,

2     this indictment charges the willful default.  So what's the

3     interchange?  What's the connection between the date --

4           **THE COURT:**  Does he have any personal knowledge of

5     the indictment?

6           **MR. SCHOEN:**  I have no idea.  We would ask him

7     that.  It's another reason -- good idea, Judge.  It's

8     another reason we need him on the stand.  I would ask him

9     whether he had any personal knowledge about the indictment.

10          **THE COURT:**  You have to make a proffer that it's

11    likely that he would have such knowledge.  Yes, I

12    understand, he may have personal knowledge of what's going

13    on in the Committee.

14          **MR. SCHOEN:**  Well, then there must be a one-way --

15    not "must be," there might be then a one-way channel between

16    Ms. Amerling and Chairman Thompson, because she certainly

17    seemed to know every thought and idea that he had.  She's

18    not competent to testify to them.  So Ms. Amerling worked

19    closely with these prosecutors and so on.

20          **THE COURT:**  Remind me, was Ms. Amerling asked

21    about the date of the 18th in the indictment?

22          **MR. SCHOEN:**  I thought she was asked why did the

23    date change from the 7th to the 18th.  She said the date --

24    something like, the date didn't change.  She was asked about

25    that.

1          **THE COURT:**  Okay.

2          **MR. SCHOEN:**  I know the Court's aware of it.  I

3     don't have to set up the dichotomy, but again, the subpoena

4     charges documents by the 7th, testify on the 14th.

5     Indictment charges documents by the 18th.  Testify on the

6     14th.

7          And so the dates and this theory is independently

8     critically relevant to a finding of guilt or innocence --

9     not guilt, because of that date.  Because this indictment,

10    Mr. Corcoran alluded to it earlier, the indictment is not an

11    on or about date.  Dates matter here.  Indictment charges on

12    the 14th.

13         Another question is, why -- you know, was there

14    this flexibility that the date for compliance, at least in

15    the indictment, is by the 18th?  Is that from input from the

16    Committee?

17         And if not, then what do we mean here when we say,

18    every time Chairman Thompson wrote a letter, the

19    government -- seems to be the government's position, when he

20    wrote a letter, he was just asking for the information still

21    even though he used the words "compliance" and referred to

22    the subpoena, he just meant, oh, you've already defaulted.

23    We just want that information in any event.

24         What did they mean then when he said, again, in

25    his letter of the 15th, "Give us any objections you have or

1   other material you want to supply to us to convince us of

2   your position, Costello, by the 18th, and that's not the

3   date in the subpoena."

4           The other things where I said, Your Honor, earlier

5   I just used shorthand because they clearly would not have

6   been admissible here, but we would want to preserve the

7   record to examine Chairman Thompson on the rules that the

8   Court has ruled out.

9           **THE COURT:**  Yes.

10          **MR. SCHOEN:**  Specifically on the 3(b) issue, which

11  seems to be possibly in play based on that portion of the

12  transcript.  We would want to examine -- Ms. Amerling's

13  position was, Well, of course, we waited for him at the

14  deposition and would have given him a copy of it at the

15  deposition.  However, we would have wanted to examine

16  Chairman Thompson on the Committee's practice with other

17  witnesses.

18          I am advised that at least the following witnesses

19  were given a copy of Rule 3(b) with their subpoena:  Kerik,

20  Navarro, someone named Christina Bobb and Giuliani.  I

21  cannot make a representation to the Court that that's 100

22  percent accurate.  That's how I've been advised.

23          I thought I heard something.  Sorry.

24          **THE COURT:**  Let me ask you this question which is

25  related to the procedural question I asked earlier.  Is this

1   akin to a Rule 29 motion in the sense that I can deliberate

2   on it, reserve my decision on it, as I have with the Motion

3   for Judgment of Acquittal, while the jury deliberates?

4           MR. SCHOEN:  Thinking on the fly, Judge, in my

5   view there is absolutely no reason why not.  We're not

6   putting on evidence.  It's always better to have a more

7   contemplative decision.  I don't have to tell this Court

8   that.  This Court, as I said earlier, is way up there.

9           And by the way, I meant it as a compliment that

10  the Court is much smarter than I am.  I know that's not a

11  high threshold but I meant it as a compliment.  I think the

12  Court's the smartest guy in the room.

13          THE COURT:  Just trying to do my job.  Just trying

14  to do my job.

15          MR. SCHOEN:  Doing it very copiously and with --

16  respectfully, Judge, with the kind of demeanor that I think

17  we would all want to see in our judges.

18          THE COURT:  Very nice of you, Mr. Schoen.  Thank

19  you.  I'd like to hear from the government now.

20          MR. SCHOEN:  Thank you.

21          THE COURT:  Ms. Vaughn, let's start procedurally.

22  What is the government's view about whether -- or by when

23  must I decide this question?

24          MS. VAUGHN:  Your Honor, this question would be

25  answered on a Motion to Dismiss the Indictment.  The Rule 29

1    standard is whether the government has presented sufficient

2    evidence at the end of its case for a reasonable juror to

3    decide.

4             **THE COURT:**  Uh-huh.

5             **MS. VAUGHN:**  So whether they've had the ability to

6    put on a defense that they're allowed to put on is a

7    question separate from whether we've met our initial burden.

8    It would be a ruling on the indictment to dismiss it.

9             I imagine that would have to happen before a

10   verdict, but I honestly would have to look into that more.

11            **THE COURT:**  Let me ask you a different question.

12   In light of the arguments that have been made, is it the

13   government's position still that it will not call

14   Mr. Thompson or that Mr. Thompson will not appear?

15            **MS. VAUGHN:**  To answer that, Your Honor, if I

16   could just go back to first principles.  So to return to the

17   standard that governs this question, the closest thing --

18   because where another branch uncontrolled by the prosecution

19   invokes an immunity to prevent a witness from being

20   available, there's really not a lot of precedent on that.

21   The closest thing is, when the government refuses to give

22   Fifth Amendment immunity to a witness to make them available

23   to the defense.

24            The standard there is that, to be entitled to

25   dismissal, the defense has to show some kind of misconduct

1    on the part of the government.  And that is something beyond

2    just simply saying we're not going to immunize this person.

3    And they also have to show the question they plan to ask or

4    questions and what the answers that they have a

5    nonspeculative reason to think they will get, what those are

6    that are materially-exculpatory and noncumulative.

7          So in deciding this issue, the Court doesn't even

8    have to reach the substance of anything that Mr. Schoen just

9    said because the entire argument was, Let's just bring them

10   in here and find out what they have to say.  They have no

11   nonspeculative basis to think that any member of that

12   Committee has any materially-exculpatory noncumulative

13   information.

14         That's for two reasons:  First, nothing they asked

15   for goes to the elements of the offense in this case.  I

16   think the through-line of everything that Mr. Schoen said

17   that they wanted is really just trying to get at personal

18   motives of members.  There is no element of the offense

19   here, that the Committee's request for the information, the

20   issuance of the subpoena, the refusal to give an extension,

21   there is no element of the offense that those steps have to

22   be reasonable in some way.

23         So questioning Chairman Thompson about, Well, why

24   didn't you go to the court?  Why didn't you go talk to

25   former President Trump?  That's irrelevant.

1          **THE COURT:**  What about on the question of whether

2     the dates were flexible?

3          **MS. VAUGHN:**  Ms. Amerling testified that the

4     Committee -- first of all, just to step back.  The Committee

5     is a body.  There is no rule of law under which, for

6     example, if a corporation's position were at issue, the CEO

7     would have to come in and testify every time.

8          Ms. Amerling testified that she was involved in

9     all of the conversations, advising the members.  She

10     testified from first-hand knowledge what the Committee's

11     position was.  And then she testified that that position was

12     communicated to the defendant through the letters.  There's

13     no other channel of communication on this.  There's no other

14     evidence that there were any other dates out there.

15          So the question of whether the dates were fixed,

16     the evidence in the record is the evidence.  It's pure

17     spe --

18          First of all, it would be irrelevant if there was

19     some member of the Committee who was secretly hiding in

20     their office saying, Well, I know we sent a subpoena out

21     that says October 7th, but I think it should be October 8th.

22     That's irrelevant to the position of the body.

23          The only evidence is the letters, which

24     Ms. Amerling said was consistent with what she knows from

25     her personal knowledge to be the position of the Committee.

1       She is an agent of the Committee and was completely

2       competent to testify about its positions.

3              Mr. Schoen said that, when the Court asked what

4       that goes to in the case, he offered two things.  Whether it

5       goes to the defendant's belief that the dates were flexible,

6       which I think the Court already addressed.  There is no

7       evidence that the defendant had any information in his mind

8       from the Committee other than the letters.

9              And he, second, said that the dates were not

10      fixed.  But again, I just addressed that.  The position of

11      the body is in evidence.  They have no -- they've offered

12      nothing to conclude that some other member of the Committee

13      would have different or exculpatory evidence on that point.

14             The motion should just be denied.

15      **THE COURT:**  So I know the government -- I

16      understand the government's position is it's very consistent

17      with what we have talked about before.  Nothing that

18      Mr. Schoen articulated or proffered warrants dismissal of

19      the indictment or any other judgment in the defendant's

20      favor.

21             In light of that, I take it that your answer is,

22      No, the government isn't -- or Chairman Thompson is not

23      presently prepared, notwithstanding the arguments that have

24      been presented, to appear voluntarily or otherwise here.

25      **MS. VAUGHN:**  The Committee has asserted they are a

1    different branch of government.

2            **THE COURT:**  I understand that.  I'm saying your

3    understanding is that Mr. Thompson has no present intention

4    to testify in response to the subpoena, voluntarily or

5    otherwise.  So, for lack of a better word, there is no way

6    to have his testimony cure the objections that Mr. Bannon

7    has raised.

8            I recognize the government thinks they're

9    meritless.  I'm just saying that that is not a possibility?

10           **MS. VAUGHN:**  Not in the government's view.

11           **THE COURT:**  Right.  So I have to resolve the

12   motion however one styles it?

13           **MS. VAUGHN:**  Yes.

14           And also it's just -- we can't even go back to the

15   Committee and ask them if we don't -- if there's not even a

16   relevant question to see if he has the answer to.

17           There's just -- Mr. Schoen talked for a long time.

18   I didn't hear a specific question that they had for

19   Chairman Thompson to which they have a reasonable basis to

20   believe he has exculpatory information on.  It just seems

21   very premature to get to the question of, Would the

22   Committee consider waiving?

23           I have no idea.  I wouldn't even know what to go

24   back and ask them for.

25           **THE COURT:**  All right.  I want to turn to the jury

1    instructions because I have all of the parties here.  I'm

2    going to take a recess after we do that, and I will come

3    back and talk about what I intend to do on the Motion to

4    Dismiss the Indictment or for other relief and the

5    instructions.

6              So can we go through the instructions?

7              **MS. VAUGHN:**  Yes, I'm just going to --

8              **THE COURT:**  Of course.  And I saw the government's

9    email -- Mr. Schoen, did you want to respond to something

10   you heard from Ms. Vaughn about?

11             **MR. SCHOEN:**  I just wanted to make one point,

12   Judge, so that we're not seen as conceding it.  I don't

13   concede that this conduct is required in this case.  There

14   are cases that say otherwise, the *Lieutenant Calley* case

15   from the Fifth Circuit, for example, from my day and other

16   cases.  There are cases in which there was no misconduct,

17   *Fernandez* and so on.

18             **THE COURT:**  Thank you.  Thank you.

19             Okay.  So as to the instructions, walk through

20   them if that's okay.  Can we -- whoever on Mr. Bannon's side

21   is going to sort of have the lead, so to speak, what I

22   thought we could do is we could just walk instruction by

23   instruction.

24             I think a lot of the initial ones are agreed upon.

25   We can do this relatively quickly.

1            I will have changed the format of these to provide

2    to the jury.  It will include a case caption.  I won't

3    include the form number.  They're just going to be called

4    Instruction 1, 2, 3, 4.

5            I will be adding an instruction that I'm not sure

6    that -- I just can't recall whether it was proposed by the

7    parties.  It was a form instruction that will be Instruction

8    1 that I will be providing the jury with a copy of the

9    instructions.

10           **MS. VAUGHN:**  It is in your original proposal.

11           **THE COURT:**  It is?  Okay.  We adopted that.

12           Instruction 2 will be the role of the Court which

13   I believe the parties are in agreement on.

14           Instructions 3 and 4, role of the jury and

15   recollection, I don't believe we have any proposals to

16   eliminate.

17           **MS. VAUGHN:**  Oh, yes.  I'm sorry, Your Honor.

18   That's correct.

19           **THE COURT:**  Okay.  Eliminate or otherwise edit.

20           Instruction -- what was Instruction 2.104,

21   evidence in the case, judicial notice, stipulations,

22   depositions, I don't believe that that is applicable.

23           **MS. VAUGHN:**  We agree.

24           **MR. CORCORAN:**  We agree, Your Honor.

25           **THE COURT:**  So that will be removed.  The next one

1    is statements of counsel.  Everyone agrees that that is in?

2              **MR. CORCORAN:**  Yes, Your Honor.

3              **MS. VAUGHN:**  Yes, Your Honor.

4              **THE COURT:**  The next one is indictment is not

5    evidence, also in?

6              **MR. SCHOEN:**  Yes, Your Honor.

7              **MS. VAUGHN:**  Yes, Your Honor.

8              **THE COURT:**  The next one is burden of proof and

9    presumption of innocence, also in?

10             **MR. CORCORAN:**  Yes.

11             **THE COURT:**  Ms. Vaughn?

12             **MS. VAUGHN:**  Yes, Your Honor.

13             **THE COURT:**  Next one, reasonable doubt, also in?

14             **MR. CORCORAN:**  Yes.

15             **MS. VAUGHN:**  Your Honor, the Court had indicated

16   that it was going to use the U.S. District Court one in the

17   note instead of the --

18             **THE COURT:**  Yes, that is the plan.  We will double

19   check that, in fact, that is the one.

20             **MS. VAUGHN:**  Thank you.

21             **THE COURT:**  Direct and circumstantial evidence,

22   in?

23             **MR. CORCORAN:**  Yes.

24             **MS. VAUGHN:**  Yes, Your Honor.

25             **THE COURT:**  Nature of charges not to be

1    considered, in?

2              **MS. VAUGHN:**  Yes, Your Honor.

3              **MR. CORCORAN:**  Yes.

4              **THE COURT:**  Inadmissible and stricken evidence,

5    that is applicable, and I believe the likewise sentence at

6    the bottom is inapplicable however?

7              **MS. VAUGHN:**  Yes, Your Honor.  We disagree.

8              **MR. CORCORAN:**  Yes, Your Honor.

9              **THE COURT:**  Okay.

10             Credibility of witnesses is in?

11             **MS. VAUGHN:**  Yes, Your Honor.

12             **MR. CORCORAN:**  (No response)

13             **THE COURT:**  There is the question of whether the

14   bracketed language in the fourth-to-last paragraph should be

15   included.  My instinct is to include if there isn't any harm

16   in including.  Is there any objection to including it?

17   Mr. Corcoran?

18             **MR. CORCORAN:**  No objection, Your Honor.

19             **MS. VAUGHN:**  No objection.

20             **THE COURT:**  Thank you.  That's credibility of

21   witnesses.

22             The next one is police officer's testimony.

23   Obviously, we had an agent testify here.  So it is

24   applicable in a sense.  Mr. Corcoran, what do you think?

25             **MR. CORCORAN:**  We don't think it is appropriate,

1   Your Honor.

2            **THE COURT:**  Okay.  Ms. Vaughn?

3            **MS. VAUGHN:**  No objection to excluding it,

4   Your Honor.

5            **THE COURT:**  Okay.  We'll exclude police officer's

6   testimony.

7            Right of defendant not to testify is in.  Everyone

8   agrees.  Correct?

9            **MR. CORCORAN:**  Agree, Your Honor.

10           **MS. VAUGHN:**  Agree.

11           **THE COURT:**  Defendant is witness, not applicable.

12   Correct?

13           **MR. CORCORAN:**  Agree, Your Honor.

14           **MS. VAUGHN:**  Yes.

15           **THE COURT:**  Evaluation of prior inconsistent

16   statement of a witness.  Ms. Vaughn?

17           **MS. VAUGHN:**  Not applicable, Your Honor.

18           **MR. CORCORAN:**  Agree.

19           **THE COURT:**  Okay.

20           Evaluation of prior consistent statement of a

21   witness?

22           **MS. VAUGHN:**  Not applicable.

23           **MR. CORCORAN:**  We agree.

24           **THE COURT:**  Motive is in?

25           **MS. VAUGHN:**  Agree.

1          **MR. CORCORAN:**  Agree, Your Honor.

2          **THE COURT:**  Multiple counts, in?

3          **MR. CORCORAN:**  Agree.

4          **MS. VAUGHN:**  Agree.

5          **THE COURT:**  Unanimity in, yes?

6          **MS. VAUGHN:**  Agree.

7          **MR. CORCORAN:**  Yes.

8          **THE COURT:**  Verdict form explanation in, yes?

9          **MS. VAUGHN:**  Agree.

10          **MR. CORCORAN:**  Yes.

11          **THE COURT:**  Redacted exhibits inapplicable?

12          **MS. VAUGHN:**  Agree.

13          **MR. CORCORAN:**  Agree.

14          **THE COURT:**  Exhibits during deliberations in?

15          **MS. VAUGHN:**  Agree.

16          **MR. CORCORAN:**  Agree.

17          **THE COURT:**  Selection of foreperson in?

18          **MS. VAUGHN:**  Agree.

19          **MR. CORCORAN:**  Agree.

20          **THE COURT:**  Cautionary instruction on publicity,

21  communication and research in?

22          **MS. VAUGHN:**  Agree.

23          **MR. CORCORAN:**  Agree.

24          **THE COURT:**  Note taking by jurors in?

25          **MS. VAUGHN:**  Agree.

1          **MR. CORCORAN:**  Agree.

2          **THE COURT:**  Communications between Court and jury

3     during jury's deliberations in?

4          **MS. VAUGHN:**  Agree.

5          **MR. CORCORAN:**  Agree.

6          **THE COURT:**  Excusing alternate jurors, I'm going

7     to modify this a little bit.  The first three sentences are

8     still applicable.  I would intend to say -- it says, "We

9     selected two seats to be the alternate seats before any of

10    you entered the courtroom.  We excused one juror for health

11    issues.  Since the rest of you have remained healthy and

12    attentive, I can now excuse the juror in seat --" and I'm

13    not going to mention the seat on the public record here.

14         **MS. VAUGHN:**  That's fine for the government,

15    Your Honor.

16         **THE COURT:**  Do the parties want to get on the

17    husher to discuss which seat that would be?

18         **MR. CORCORAN:**  I just have one other suggestion

19    would be to --

20         **THE COURT:**  Yes.

21         **MR. CORCORAN:**  For consideration -- to excuse the

22    two jurors who would no longer be on the jury without

23    bringing them into the courtroom.

24         **THE COURT:**  At all?

25         **MR. CORCORAN:**  At all.

1          **THE COURT:**  So one of them is not here.

2          **MR. CORCORAN:**  Right.

3          **THE COURT:**  And the other one would we'd just not

4    bring into the courtroom; that would be fine too.  Well,

5    Ms. Vaughn, what do you think about that?

6          **MS. VAUGHN:**  Your Honor, they should be brought

7    into the courtroom for the instructions because, if

8    something were to happen in deliberations and a juror needed

9    to be replaced and they had to start over, the alternate

10   would have already been instructed.

11         **THE COURT:**  So before Mr. Corcoran's suggestion, I

12   was actually going to say that I was also going to give this

13   instruction about excusing alternate jurors after the

14   closings and before we send the jurors to deliberate.  Any

15   objections to doing it that way?

16         **MR. CORCORAN:**  No objection, Your Honor.

17         **THE COURT:**  Okay.  So I will give this instruction

18   with the modification I just mentioned.  I will do it after

19   closings, essentially to say, the 12 who are going are the

20   12 and this one person is staying.

21         Okay.

22         Proof of state of mind is in?

23         **MS. VAUGHN:**  No objection.

24         **MR. CORCORAN:**  Agree.

25         **THE COURT:**  Elements of the offense.

1              Okay.  The government has proposed some edits.  I

2    need to hear from counsel -- well, I also recall that

3    Mr. Schoen, you were going to propose two additional

4    instructions.  So it seems to me we have the government's

5    proposed edits to the elements of the offense and you have

6    proposed two additional instructions that are the issues to

7    discuss.

8              So how should we handle them?  Ms. Vaughn, do you

9    want to start with your position on why these edits make

10   sense to the elements instruction?

11             **MS. VAUGHN:**  Yes, Your Honor.

12             Yes, Your Honor, because I think the two proposals

13   that the defendant sent us are additional instructions, not

14   these, so we can go ahead and address this?

15             **THE COURT:**  Yes.

16             **MS. VAUGHN:**  So with respect to -- I'll start with

17   the paragraph that is no defense to contempt of Congress.

18             We thought it was necessary to add in legal advice

19   he received from his attorney or someone else just to ensure

20   that there's no suggestion that a mistake could count as

21   advice, if he was misinformed in some way about sort of the

22   root requirement of the subpoena that you must be by this

23   date.

24             Then the executive privilege changes.

25   Mr. Corcoran elicited from Ms. Amerling yesterday an

1    explanation of what executive privilege is and things like

2    that to make clear to the jury that it's not their decision

3    whether executive privilege actually, as a matter of law,

4    excused the defendant.  We think it's necessary to tell them

5    that.

6              **THE COURT:**  I have not held that.  And it's

7    different from telling them it's not their issue from

8    saying, in my view, as a matter of law, executive privilege

9    cannot excuse the defendant.

10             **MS. VAUGHN:**  I apologize, Your Honor.  We've

11   always had a little bit of confusion on our table on whether

12   that issue was teed up sufficiently and resolved.

13             **THE COURT:**  I know.

14             **MS. VAUGHN:**  Our goal here was to just make it

15   clear to the jury that it doesn't matter --

16             **THE COURT:**  I was inclined to strike: "I am also

17   instructing you that, as a matter of law, executive

18   privilege did not excuse the defendant from complying with

19   the subpoena."

20             I'm just saying, potentially, "it is not a defense

21   to contempt of Congress that the defendant did not comply

22   with the subpoena because of his understanding or belief of

23   what the law required or allowed or a misunderstanding or

24   belief that he had a privilege, which is executive

25   privilege, excusing him from complying."

1           Do you object to that?

2           **MS. VAUGHN:**  Could we propose adding that the jury

3   is not to consider whether executive privilege did, in fact,

4   excuse?  Maybe just replace the language we have on the

5   matter of law at the beginning and say that you're not to --

6   wherever it's appropriate but add that?

7           **THE COURT:**  Okay.  I'll hear from Mr. Schoen or

8   Mr. Corcoran on that.  Okay.  What about the last paragraph?

9           **MS. VAUGHN:**  The last paragraph, we tried to stick

10  to what the Court instructed them on this issue yesterday.

11          **THE COURT:**  Yes.

12          **MS. VAUGHN:**  And incorporate it into the final

13  instruction.  But this is getting at that idea of later

14  compliance is not a waiver.

15          **THE COURT:**  Okay.  Thank you.

16          **MS. VAUGHN:**  Thank you, Your Honor.

17          **THE COURT:**  Mr. Schoen?

18          Why don't you come to the podium?  I think it's

19  just easier for the court reporter if you have the

20  information.

21          **MR. SCHOEN:**  I'll make it brief, Your Honor.

22          Our objection is that -- first of all, we do

23  believe that we teed up, so to speak, executive privilege as

24  a defense.  I addressed that in Document 107 to try to make

25  it clear then, if it weren't clear.

1          In any event, I think the Court said this, but we
2    think it would be inappropriate to use the redline version
3    that tells the jury executive privilege is not an excuse.
4    And then our objection is that it weights it too much as to
5    what their -- what wouldn't be a defense in this case.  We
6    already -- unfortunately, we know that too well, but I don't
7    think that has to be hammered like this to the jury because
8    I think they're going to be confused as to what is a
9    defense.
10          And the last part, if that is intended to deal
11   with waiver, we have submitted our proposal on waiver of
12   default.  I assume that is.  I mean, I sent it to the
13   government.  I thought the idea was the government was
14   forwarding it all to the Court.
15          **THE COURT:**  They may have.  We've just been in
16   here.  I'm not sure I've seen them --
17          **MR. SCHOEN:**  I don't know that that's the case.  I
18   didn't speak to the government.  Mr. Corcoran did.
19          **THE COURT:**  The instructions that Mr. Corcoran and
20   Mr. Schoen have proposed to you.
21          **MS. VAUGHN:**  I did not.  I got them shortly before
22   I came in and let them know my position, but I don't have
23   time to --
24          **THE COURT:**  Do you have versions of them printed?
25          **MR. SCHOEN:**  Yes, Your Honor.

1          **THE COURT:**  I'd be happy to take a look at the

2     printed version.

3          **MR. CORCORAN:**  Your Honor, just one point

4     procedurally.

5          **THE COURT:**  Yeah.

6          **MR. CORCORAN:**  It would be great to be able to see

7     things printed out once the Court has --

8          **THE COURT:**  Yes.

9          **MR. CORCORAN:**  -- come up with a decision on some

10    of these things.

11         **THE COURT:**  Yes.

12         **MR. CORCORAN:**  Most of it's not disputed.

13         The reason I raise that is just, trying to follow

14    what was offered as an amendment by the government to --

15         **THE COURT:**  Oh, yeah.  We're not going to do this

16    on the fly.

17         **MR. CORCORAN:**  Yeah.

18         **THE COURT:**  Yeah.

19         **MR. CORCORAN:**  And really the point that I wanted

20    to make because I heard a change that's talk about executive

21    privilege and use the words "in fact" and something about

22    the jury not considering it, which I think would be

23    objectionable from our standpoint because the fact of

24    executive privilege is something that they can consider.

25    Even though they can't consider it as a legal defense --

 1              **THE COURT:**  I understand.  Yes.  We'll try to

 2      parse this carefully.

 3              **MR. SCHOEN:**  I'm hopeful there's nothing

 4      objectionable in there, Your Honor.  I just don't know.  I

 5      only got it, as government counsel said, shortly before we

 6      showed up here at 1:00.

 7              **MS. VAUGHN:**  I'm sorry.

 8              **MR. SCHOEN:**  I am just saying I only got it from

 9      the government about a quarter to 1 or something like that.

10              **THE COURT:**  All right.  Okay.

11              So there are two additional proposed jury

12      instructions.  The government has them.  Correct,

13      Ms. Vaughn?

14              **MS. VAUGHN:**  Yes, Your Honor.  We've considered

15      them.  We object.

16              **THE COURT:**  Do you object to them entirely or do

17      you have problems with the specific language?

18              **MS. VAUGHN:**  We object to them entirely,

19      Your Honor.

20              **THE COURT:**  Do you want to come to the podium and

21      tell me why?

22              **MS. VAUGHN:**  The second one is the waiver

23      argument, which is not available under the law.

24              The first one -- so for a defendant to be entitled

25      to an instruction on the theory of the defense, there has to

1    be sufficient evidence in the record to support it.

2          So there are two issues with this instruction:

3    One, is it instructs the jury on unavailable defenses under

4    the law suggesting that they are, in fact, available.  And

5    it puts facts in front of the jury that are not in evidence.

6          So I'll start at the beginning.  The sentence,

7    "The defendant contends that he believed that the dates for

8    compliance with the subpoena were not fixed and were

9    flexible and subject to change and that therefore, he did

10   not act willfully."

11         There's no evidence in the record about the

12   defendant's belief that the dates were not fixed and were

13   flexible.  So there's nothing -- there's no sufficient

14   evidence to provide that instruction to the jury.

15         And then the idea that, if you find that he

16   honestly and reasonably believed, there is no evidence about

17   the defendant's past experience with subpoenas.  The

18   suggestion that the jury can find he acted willfully if they

19   think he acted in an honest and reasonable belief on an

20   executive privilege, that's a mistake of law defense that's

21   not available.

22         This line about his belief that negotiations were

23   ongoing as part of an "accommodation" process; that, again,

24   appears to be a reference to this idea that the defendant

25   has been raising the whole time that the law requires

1      Congress to go to a court because he made an executive

2      privilege claim.  That's a mistake of law defense.

3            The rest appears to return to --

4            **THE COURT:**  Let me ask you this question.  So I

5      understand the points.  On the elements of the offense, once

6      we get to willfully, there's a paragraph that defines

7      willfully generally -- in general, what willfully is,

8      deliberate and intentional means this.

9            Then the government has proposed at least one

10     paragraph about -- well, a paragraph about what doesn't

11     count or what isn't required.  Obviously, Mr. Schoen says

12     that's basically putting too weight on what can't count or

13     what is irrelevant.

14           If you want that language, would you object to a

15     sentence that says, you know, if one would not act

16     deliberately or intentionally if he believed that the dates

17     were flexible or something like that?

18           Basically -- you have a paragraph that defines

19     willful in general.  Then there is a paragraph, from the

20     government's perspective, that says, this that and these

21     other things are irrelevant.  And Mr. Schoen has said that's

22     sort of putting your thumb on the scale of what can't count.

23           But you could either eliminate some of those

24     things or you could put some weight back on what could

25     count.

1          **MS. VAUGHN:**  I disagree with Mr. Schoen's

2    characterization.

3          **THE COURT:**  I suspected that but what if I don't?

4          **MS. VAUGHN:**  So the instruction on the meaning of

5    willfulness does say already that deliberate and intentional

6    does not mean by accident, mistake or inadvertence.

7          **THE COURT:**  Yes.

8          **MS. VAUGHN:**  The defendant is not entitled to the

9    instruction -- the specific instruction he wants, as long as

10   whatever it is he is entitled to is appropriately

11   represented in the instruction.

12         **THE COURT:**  Why isn't what the government wants

13   then included within that first paragraph?

14         **MS. VAUGHN:**  Because it doesn't make clear that a

15   mistake of law is not the kind of mistake that's being

16   discussed there.  And particularly, with the evidence we

17   have in our case, I have no doubt that, if there is not that

18   language in the instruction, we are going to hear argument

19   in closing that he just made a mistake because he thought

20   executive privilege was the claim, what have you.

21         We think it's essential that those instructions be

22   included.  We do not think that the jury would have a clear

23   understanding of what a mistake is under the law without it.

24         **THE COURT:**  Okay.  Thank you.

25         Mr. Schoen?

1          **MR. SCHOEN:**  As Your Honor has previously held,

2    mistake of fact accordingly is a defense to the law.  The

3    jury wouldn't intuitively know that, so they have to be

4    advised about that.

5          **THE COURT:**  We're not going to be gilding the lily

6    on anything here.  Right?

7          **MR. SCHOEN:**  This reflects the defense theory in

8    the case.  Now, if some of the specifics were left out, I

9    would still object, but it would be a correct proposition of

10   the law and it would at least be something toward the

11   defense theory.

12         By that I mean first sentence:  "The defendant,

13   Stephen K. Bannon, contends that he believed that the dates

14   for compliance with the subpoena were not fixed and were

15   flexible and subject to change and that, therefore, he did

16   not act willfully in failing to comply with the subpoenas by

17   the date set out in the indictment."  That is his defense

18   theory.  It's a defense theory and he's entitled to it.

19         By the way, this idea that, because he didn't

20   testify and put on evidence, he can't show his belief is

21   simply wrong.  That's what cross-examination is for, to make

22   that a plausible inference to be drawn.

23         Now, "If you find that Mr. Bannon honestly and

24   reasonably believed, based on the exchange of" -- I now have

25   plugged in here the factors that we had discussed with the

1    Court that could be considered.

2              **THE COURT:**  Uh-huh.

3              **MR. SCHOEN:**  So that's why it draws it

4    specifically to this defense theory in this case.

5              We find that Mr. Bannon honestly and reasonably

6    believed, based on the exchange of letters between his

7    lawyer -- I guess the Court doesn't need me to read it out

8    loud probably.

9              **THE COURT:**  No, I don't.

10             **MR. SCHOEN:**  Up until --

11             **THE COURT:**  No, I understand.

12             **MR. SCHOEN:**  The word "process".

13             **THE COURT:**  Your point is that this is consistent

14   with your theory.

15             **MR. SCHOEN:**  Yes.

16             **THE COURT:**  It is only identifying evidence that

17   is in or is, like, reasonably inferred from evidence that is

18   in, for example, Mr. Bannon's past experience with subpoenas

19   which one of the letters references.  Executive privilege is

20   obviously in.  Exchange of letters are obviously in.  And

21   therefore, that this is legitimate.

22             Okay.  Let's talk about the waiver of default.

23             **MR. SCHOEN:**  Yes, Your Honor.

24             **THE COURT:**  So what is the best case for the

25   proposition that the Committee could waive a default here?

1          **MR. SCHOEN:**  Well, I say that the contract

2     principle cases apply to this.  Do I have a criminal case

3     that says we apply contract principles in this situation for

4     default?  I don't.  But that may just reflect my research

5     skills.

6          We do know, as I said the other day, that we apply

7     contract principles in criminal law all the time, and

8     *Santobello* is probably the best example of that.  But it

9     certainly logically applies.  And again, this is our theory

10    of defense.

11         I don't have a case that says it doesn't apply.

12         **THE COURT:**  An absence of evidence --

13         **MR. SCHOEN:**  I cite the civil case as a principle

14    of law.

15         **THE COURT:**  Okay.  I understand the parties'

16    positions.  We're going to take another recess.

17         **MS. VAUGHN:**  Your Honor, I do have another

18    objection I need to raise.

19         **THE COURT:**  Okay.  Of course.

20         **MS. VAUGHN:**  I'm sorry I didn't raise this

21    earlier, but the listing of evidence that they believe

22    supports their theory in the instruction, we think is

23    improper.  It's to point the jury -- to use a court's

24    instruction to point the jury to specific evidence that goes

25    to the defendant's theory.

1          **THE COURT:**  Thank you.

2          So here's what I'm going to do.  I'm going to go

3    back to chambers.  I'm going to reflect on the motion, the

4    renewed motion, the proffer of evidence from Mr. Schoen, the

5    government's position and these instructions and the

6    parties' respective positions.

7          Assuming we're going forward with instructions, my

8    plan is to finalize them and to communicate them to the

9    parties before we come back and I tell you where I am, for

10   example, on that motion or the instructions.

11         I will get them out to the parties.  You will

12   have, what we would consider to be, the final versions and

13   what I would intend, assuming we do this to instruct the

14   jury on so that you have the actual documents, Word

15   documents.

16         If you would like me to print them we could do

17   that too, Mr. Corcoran, or we could attempt to.

18         **MR. CORCORAN:**  I think just sending them to us is

19   great, Your Honor.

20         **THE COURT:**  Okay.  So we're in recess again.

21         **DEPUTY CLERK:**  All rise.

22         **MR. CORCORAN:**  Your Honor, just one quick

23   question.  Just wondering what you think we might accomplish

24   for the rest of the day just for planning purposes.

25         **THE COURT:**  So on the -- let me ask this question:

1   If we are going to get to closings, the jury instructions

2   would take me, if we do them, probably take me 15 to 20

3   minutes.  They have been paired down somewhat.  They're not

4   even full pages.

5           If we get past the jury instructions, how long are

6   the parties' closings?  Ms. Vaughn, how long would your

7   closing be?

8           **MS. VAUGHN:**  The government's closing is 30

9   minutes, and we wouldn't expect rebuttal to be more than

10  15-20 minutes depending.

11          **THE COURT:**  Mr. Corcoran, do you have a sense of

12  how long your closing would be?

13          **MR. CORCORAN:**  I think in the same range that was

14  just mentioned, which is why I raised it.  It's just whether

15  to argue and have them not deliberate at all or --

16          **THE COURT:**  Do you have a view?

17          **MR. CORCORAN:**  I'm fine with -- I think starting

18  in the morning in terms of hearing the instructions, hearing

19  the argument and then setting to work so that there's --

20          **THE COURT:**  In the morning when they're fresh,

21  they haven't been sitting around?

22          **MR. CORCORAN:**  Absolutely.  No forgetting.

23          **MS. VAUGHN:**  We've been here all day, Your Honor.

24  We think we should just do it.  We have three hours left in

25  the day.  We think --

1          **THE COURT:**  Well, that assumes I can get this done

2     quickly.  And what I'm -- so I don't think there's any

3     reason to split the instructions from the closings.  I think

4     they should be done together.  The problem is, if I take a

5     while to do -- to finalize the instructions to get them out

6     to the parties to think about the motion that I have to

7     consider, and if we are not back on the record until 2:45 or

8     3:00, then there's at least the risk that we take -- well,

9     maybe we --

10         **MS. VAUGHN:**  We have no objection if we are forced

11    to rebut tomorrow morning or something because we don't get

12    through it.  But I think -- I mean if we go until 5:15 I

13    mean --

14         **THE COURT:**  I know.  The jury got here late too.

15         **MR. CORCORAN:**  Our position -- I like Ms. Vaughn's

16    position.  They're ready to go whenever and we feel the same

17    way.

18         **THE COURT:**  Yes, of course.

19         **MR. CORCORAN:**  But I think the real issue here is,

20    in my mind, having the jury hear the instructions and the

21    argument of counsel that is pertinent to the instructions or

22    will be considered in the framework of the instructions and

23    then begin their work.  What I certainly don't want to

24    happen is run late or to have only the government open, have

25    them thinking about that overnight --

1          **THE COURT:**  That is not going to happen.

2          Here's -- we are either going to do all of the

3    instructions, closings today or all of that tomorrow

4    morning.  It sort of depends on how quickly I can get done

5    with the instructions.  If I can do it very quickly, then I

6    think we have plenty of time and deal with the motion.

7          If it takes -- if, for whatever reason, I am

8    delayed and just can't get it done, then I think what I'll

9    have to do is I'll come back and say, in light of that, it's

10   better to let it pend till tomorrow.

11         I know I'm the holdup at this point, so let me go

12   do the work.

13         **MS. VAUGHN:**  Thank you, Your Honor.

14         **MR. CORCORAN:**  Just, from our perspective, you're

15   not the holdup in the sense that we want to -- we'd have the

16   chance to look at the instructions and consider them --

17         **THE COURT:**  Of course.

18         **MR. CORCORAN:**  -- on behalf of Mr. Bannon.

19         **MR. SCHOEN:**  Judge, should I give you Mr. Bannon's

20   fully-informed position on his testimony and rest before we

21   leave here?

22         **THE COURT:**  Yes.  Yes.  That's prudent.  Thank

23   you.

24         **MR. SCHOEN:**  Judge, so that the Court is clear,

25   we've discussed with Mr. Bannon his right to testify and

1    gone over is it carefully.  I'd like to just read two

2    paragraphs that will, I think, fully inform the Court as to

3    his reasons why he's not testifying.  And I've gone over

4    this with Mr. Bannon.

5         The defendant, Mr. Bannon, understands that he has

6    the right to testify on his own behalf, and he has very much

7    wanted to do so since the day he was indicted.  He has

8    wanted to testify publicly in this case under oath to tell

9    the Court, the jury and the public exactly what the true

10   facts of the case are.

11        However, on the advice of counsel, in this case,

12   me and Mr. Corcoran and support of the team, he has decided

13   not to testify because he understands that he would be

14   barred from telling the true facts and explaining why he did

15   what he did and why he did not do what he did not do in

16   relation to the Committee's subpoena.

17        He wanted to testify under oath to explain that,

18   at all times, he believed he was doing what the law required

19   him to do, based on his lawyer's advice and the other

20   factors mentioned in Mr. Costello's declaration, ECF30-1.

21   If Mr. Bannon were to testify, his testimony would have been

22   consistent with the narrative in Mr. Costello's declaration,

23   ECF30-1.

24        Mr. Bannon's experienced lawyer, Mr. Costello,

25   received the subpoena from the Committee, and he told

1    Mr. Bannon he had received it.  Mr. Costello then told

2    Mr. Bannon that he, Costello, had received notice that

3    former President Trump had invoked executive privilege.

4    From that point forward, Mr. Costello, as Mr. Bannon's

5    lawyer, told him that executive privilege had been invoked

6    and he was not permitted by law to comply with the subpoena.

7         Mr. Bannon followed and relied on the advice and

8    directives of his experienced lawyer at all times and in all

9    regards with respect to the subpoena.  He relied as well on

10   the OLC opinions that were relevant and that his lawyer

11   brought to his attention, and he and Mr. Costello reasonably

12   believed they applied to him.

13        Since Mr. Bannon would be barred from testifying

14   about his reliance on the advice of counsel and on facts

15   supporting his defenses of executive privilege, public

16   authority and entrapment by estoppel, as would Mr. Costello,

17   Mr. Bannon will not be testifying and he will not call

18   Mr. Costello as a witness, who he otherwise would have

19   called for the same reasons, the Court's orders barring

20   these defenses and testimony relevant to and in support of

21   those barred defenses.

22        And I say this last part with most respect to the

23   Court.  I know the Court thought it out carefully and the

24   Court has opined at length on its reasoning.  Thank you,

25   Your Honor.

1          **THE COURT:**  Thank you.

2          Let me just ask one question.  Mr. Bannon, have

3    you conferred with counsel and do you knowingly and

4    intentionally waive your right to testify based on the

5    advice that Mr. Schoen has just described?

6          **THE DEFENDANT:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  Thank you very much.  And thank

8    you, Mr. Schoen, for reminding me of that.

9          **MR. SCHOEN:**  Thank you, Your Honor.  Ms. Vaughn.

10          **MS. VAUGHN:**  Your Honor, I'm sorry thinking about

11    the schedule more.  It's not clear to me how long the

12    defense would like to consider the instructions afterward.

13    So now I'm concerned that it will be more time the jury is

14    sitting around, and then we'll end up telling them to leave

15    anyway.

16          **THE COURT:**  Which I would like to.

17          **MS. VAUGHN:**  Maybe we should just let them go and

18    come back.

19          **THE COURT:**  Mr. Corcoran, how long do you think?

20          **MR. CORCORAN:**  Your Honor, I was just going to say

21    we're --

22          **THE COURT:**  It seems to me.  I'm sorry.

23          There really are three substantive ones.  It's the

24    two that you've proposed and it's the edits from the

25    government on the elements.  How long, after I've gotten

1    them back to you, would you want to have time to rebut

2    those?

3          **MR. CORCORAN:**  It's hard to estimate, but we'll

4    try to be as fast as we can.  As I said, we have no

5    objection to the, you know, dismissing the jury today as a

6    practical matter.  As you know, you know, we've tried to be

7    efficient in the case on so many different levels.

8          **THE COURT:**  Yes.

9          **MR. CORCORAN:**  And in terms of the promise to the

10   jury, there was the possibility that a defense case would

11   have put us into next week.  So just, in efficiency terms,

12   we're happy to dismiss the jury today, Your Honor.

13         **MS. VAUGHN:**  We reluctantly agree, Your Honor.

14         **THE COURT:**  Okay.  All right.

15         Then we're going to do that.  We are going to

16   recess.  We will allow the jury to go home.  I will go back

17   and consider the instructions first and get them to the

18   parties so you can start (inaudible) them.  Then I will also

19   consider the pending, renewed Motion to Dismiss and what I

20   intend to do with that.

21         When we communicate the jury instructions to the

22   parties by email just will be my final view, we will let the

23   parties know whether I intend to come back on the record

24   relatively soon on the motion or if, instead, we'll just do

25   it the morning, but I'll be respectful of everyone's time.

1      **MR. SCHOEN:**  One other suggestion from the

2    government.

3      **THE COURT:**  Yes.

4      **MS. VAUGHN:**  There is a hearing tonight, and so we

5    thought it might be prudent to bring the jury in, give them

6    the cautionary instruction on media and meeting,

7    particularly tell them to not to watch anything tonight

8    given that we don't know what might come up in them.

9      **THE COURT:**  Mr. Corcoran, what do you think about

10   that?

11     **MR. CORCORAN:**  Your Honor, I think the Court's

12   already instructed them, and so we don't see the need for an

13   additional instruction.

14     **MS. VAUGHN:**  We also think the defense needs to

15   rest in front of the jury to create the record in front of

16   the jury and let them know that tomorrow we're just closing.

17     **THE COURT:**  We could do that in the morning.

18     **MS. VAUGHN:**  (Nodded head.)

19     **THE COURT:**  Right?

20     **MS. VAUGHN:**  (Nodded head.)

21     **THE COURT:**  It seems to me that there is the

22   inefficiency of just getting the jury down here and the like

23   but it's not that.

24          I don't think we need to instruct the jury again

25   on the cautionary instruction.  That's not a reason to bring

1    them in, in my view.  I think I would just like to talk to

2    them about where we are.

3              So, Ms. Lesley, can you bring them in just to let

4    them know we're dismissing them for today?

5              **MR. SCHOEN:**  Judge, we don't have any objection

6    either way on that.  I was just leaving it up to the Court.

7              **THE COURT:**  Yes.

8              **MR. SCHOEN:**  I was mindful -- it's up to the Court

9    whether I say that or not.  We were mindful the other day.

10   We were asked not to bring the jury's attention to that CNN

11   special in particular.  I don't know how --

12             **THE COURT:**  I don't intend to tell the jury about

13   the motion -- or judgment of acquittal.  I don't want to

14   bring to them the attention any specific thing that they

15   shouldn't be watching, but I may give them another reminder

16   that they should keep not talking to anyone about this case

17   at all.

18             Ms. Lesley, I'd like to go into a recess while you

19   gather the jury.  Okay?  Then, once you have them and we're

20   ready to go, we can go back on the record.  Okay?

21             So we're in recess.

22             **DEPUTY CLERK:**  All rise.  Court is in recess.

23        (Recess at 2:23 p.m. until 2:32 p.m.)

24             **DEPUTY CLERK:**  All rise.  This honorable court is

25   now in session.

1          **THE COURT:**  Ms. Lesley, would you please bring the

2     jury in?

3              (Jury enters the courtroom.)

4          **DEPUTY CLERK:**  Please be seated and come to order.

5          Your Honor, we are now back on the record.

6          **THE COURT:**  Thank you.

7          Mr. Schoen or Mr. Corcoran, I think you had one

8     small thing to do as to your case before I talk to the jury.

9          **MR. CORCORAN:**  Your Honor, the defense rests.

10         **THE COURT:**  Thank you, Mr. Corcoran.

11         Ladies and gentlemen of the jury, thank you for

12    your patience today.  As you just heard, the defense has

13    also rested its case.

14         We've considered the most efficient way to

15    proceed, and what we're going to do is we're going to

16    release you for the day.  What we're going to do is, in the

17    morning, first thing in the morning, I'm going to give you

18    final instructions, which are basically the instructions

19    that you will be using to deliberate.  And you will hear

20    from the parties in their closing arguments, and then you

21    will go off and deliberate.

22             That's the first thing I wanted to tell you.

23             The second thing is, as you all know, we have 13

24    jurors now and not 14.  That juror had a health issue that

25    caused her to be unable to continue to serve.  It is not

1    anything contagious.  It's not COVID.  It's not something

2    that any of you have to worry about having caught from her

3    or anything like that, so please don't worry.  But as often

4    happens and the reason we have two alternates is in case

5    something like this comes up.  So we excused her this

6    morning after she communicated what had happened with the

7    doctor's appointment she had this morning.  So we now have

8    13 jurors who will be here tomorrow morning.

9              The last thing I'd like to just remind you.  I

10   know you've heard it from me a lot this week so forgive me

11   but it's just a reminder.  Again, I'm not going to read the

12   whole instruction.

13             Do not talk to anyone about this case, whether in

14   the courthouse, outside the courthouse, any other jurors.

15   Do not read about this case.  Do not read or watch TV or

16   videos about this matter or related matters through the end

17   of your deliberations.

18             Obviously, when you deliberate tomorrow, you will

19   necessarily be talking with one another about this case but,

20   until then, the same instructions I gave you before apply,

21   and you are to not communicate with anyone about the case

22   and all of those things.

23             So, again, I want to thank you very much for your

24   patience today.  I think, as often happens in these cases,

25   there is a lot of discussion with the lawyers that occurs

1    outside the presence of the jury.  The fact that we did that

2    really has no effect on what you will ultimately be asked to

3    do, which is to decide the facts given my legal instructions

4    to you tomorrow.  Sometimes those discussions are helpful in

5    ways that it will improve the case as it goes to you

6    tomorrow.

7            So with all of that, I thank you again for being

8    here today, and you are excused for the rest of the day.

9    And we will start tomorrow morning at 9 a.m.  Okay?

10           Thank you, Ms. Lesley.

11           (Jurors exited the courtroom.)

12       **THE COURT:**  I just want to say that, now that

13   we've excused the jury, I think the plan is still the same.

14   I'm going to go back, finalize the instructions, communicate

15   them to the parties.  Then you'll have them, be able to

16   consider them overnight and the like.  And then I will

17   communicate at the same time what my plan is on the motion

18   that was argued earlier.  Okay?

19           So we are now in recess again.  Thank you.

20       **DEPUTY CLERK:**  All rise.

21       (Recess taken at 2:36 p.m.)

22

23

24

25

1                     **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    _____July 21, 2022_____          /s/_____
10              **DATE**                    **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    **C E R T I F I C A T E**

2

3         I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9    _____July 21, 2022_____          ___/s/_____
                **Date**                              **Lorraine T. Herman**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK: [11]**
891/2 915/4 915/14
915/16 924/19 924/21
975/21 984/22 984/24
985/4 987/20
**MR. CORCORAN: [75]**
895/6 895/8 895/22
896/7 897/4 899/2
899/6 904/8 904/10
904/13 904/15 904/17
904/22 905/13 905/20
905/22 905/24 906/4
906/10 911/10 912/18
914/7 914/13 914/22
918/14 956/24 957/2
957/10 957/14 957/23
958/3 958/8 958/12
958/18 958/25 959/9
959/13 959/18 959/23
960/1 960/3 960/7
960/10 960/13 960/16
960/19 960/23 961/1
961/5 961/18 961/21
961/25 962/2 962/16
962/24 967/3 967/6
967/9 967/12 967/17
967/19 975/18 975/22
976/13 976/17 976/22
977/15 977/19 978/14
978/18 981/20 982/3
982/9 983/11 985/9
**MR. SCHOEN: [85]**
891/12 892/15 893/1
893/6 893/10 893/25
894/11 894/17 895/3
917/19 917/24 918/24
919/1 919/6 919/17
919/19 919/24 920/7
920/10 920/13 921/5
921/12 922/9 922/12
922/15 923/22 924/24
925/7 925/16 925/18
926/8 926/14 928/4
928/6 929/22 931/24
932/3 932/10 932/13
932/23 933/4 933/9
933/16 934/4 934/10
934/12 934/14 934/17
934/20 934/24 935/3
935/22 936/19 945/8
945/25 946/6 946/14
946/22 947/2 948/10
949/4 949/15 949/20

966/11 966/15 966/21
966/17 966/25 968/3
968/8 972/1 972/7
973/3 973/10 973/12
973/15 973/23 974/1
974/13 978/19 978/24
981/9 983/1 984/5
984/8
**MS. VAUGHN: [85]**
891/7 892/19 894/15
908/9 910/12 911/7
911/12 912/14 913/2
914/4 914/16 914/20
920/14 920/16 920/20
920/24 949/24 950/5
950/15 952/3 953/25
954/10 954/13 955/7
956/10 956/17 956/23
957/3 957/7 957/12
957/15 957/20 957/24
958/2 958/7 958/11
958/19 959/3 959/10
959/14 959/17 959/22
959/25 960/4 960/6
960/9 960/12 960/15
960/18 960/22 960/25
961/4 961/14 962/6
962/23 963/11 963/16
964/10 964/14 965/2
965/9 965/12 965/16
966/21 968/7 968/14
968/18 968/22 971/1
971/4 971/8 971/14
974/17 974/20 976/8
976/23 977/10 978/13
981/10 981/17 982/13
983/4 983/14 983/18
983/20
**THE COURT: [214]**
**THE DEFENDANT: [1]**
981/6

**'**
**'21 [1]** 903/3

**/**
**/s [2]** 988/9 989/9

**0**
**0670 [1]** 891/3

**1**
**10 a.m [1]** 909/22
**100 [1]** 948/21
**100-6 [1]** 890/15

**107 [1]** 968/24
**10:00 [1]** 931/11
**10:38 [1]** 890/6
**116 [1]** 893/17
**11:00 [1]** 931/11
**11:15 [1]** 915/15
**11:23 [1]** 915/15
**11:36 [1]** 924/20
**12 [2]** 962/19 962/20
**13 [2]** 985/23 986/8
**14 [1]** 985/24
**14th [14]** 898/9 902/20
903/2 907/10 909/18
910/3 931/16 935/5
935/5 936/11 945/1
947/4 947/6 947/12
**15 [1]** 976/2
**15-20 [1]** 976/10
**15th [3]** 930/17 931/18
947/25
**16 [1]** 905/17
**1793 [1]** 890/13
**18 [1]** 903/14
**18th [26]** 902/20 903/2
903/19 903/25 904/5
904/11 904/21 930/19
930/19 931/13 931/19
931/20 932/5 933/21
933/22 944/3 944/7
944/12 944/17 945/11
945/17 946/21 946/23
947/5 947/15 948/2
**19th [4]** 893/11 930/24
932/4 944/20
**1:00 [3]** 923/20 924/10
968/6
**1:07 [1]** 924/20
**1:21-670 [1]** 890/3

**2**
**2.101 [1]** 911/8
**2.102 [1]** 911/14
**2.104 [1]** 956/20
**2.105 [2]** 911/9 911/15
**20 [3]** 921/1 976/2
976/10
**20001 [2]** 890/12
890/24
**201 [1]** 890/19
**202-252-1793 [1]**
890/13
**2021 [12]** 898/9 898/9
903/2 903/9 903/14
904/1 904/12 906/19

906/23 907/3 907/23
931/6
**2021-0670 [1]** 891/3
**2022 [4]** 890/5 907/14
988/9 989/9
**21 [4]** 890/5 907/14
988/9 989/9
**21201 [1]** 890/19
**2225 [1]** 890/20
**23 [3]** 906/22 907/23
931/6
**23rd [1]** 933/23
**25th [1]** 890/19
**2800 [1]** 890/15
**29 [7]** 893/8 894/3
894/4 916/5 917/25
949/1 949/25
**2:23 [1]** 984/23
**2:32 [1]** 984/23
**2:36 [1]** 987/21
**2:45 [1]** 977/7

**3**
**30 [1]** 976/8
**30-1 [1]** 927/10
**32 [4]** 905/10 906/12
906/21 907/25
**323 [1]** 904/24
**330 [1]** 904/24
**333 [1]** 890/23
**334-395-6611 [1]**
890/16
**339 [1]** 904/24
**36106 [1]** 890/16
**3:00 [1]** 977/8

**4**
**410-385-2225 [1]**
890/20
**4700-C [1]** 890/23
**4th [2]** 890/12 935/4

**5**
**521 [1]** 893/12
**522 [1]** 893/12
**555 [1]** 890/12
**5:15 [1]** 977/12

**6**
**6611 [1]** 890/16
**670 [1]** 890/3
**6th [5]** 931/7 939/1
940/18 940/24 941/21

**8**

**8th [2]** 910/4 952/21

**9**

**9 a.m [1]** 987/9

**A**

**a.m [6]** 890/6 909/22 915/15 915/15 924/20 987/9
**ability [1]** 950/5
**able [8]** 907/22 925/9 926/1 938/10 938/12 942/11 967/6 987/15
**about [99]** 891/18 893/3 893/11 895/1 896/19 900/19 900/23 900/24 900/24 902/4 903/20 904/20 906/22 907/9 910/9 910/10 911/1 912/2 912/8 912/12 915/10 915/20 915/24 916/20 916/21 916/25 917/2 917/7 917/9 917/10 918/15 918/18 920/17 922/1 923/19 927/19 927/19 928/12 928/20 928/20 928/21 929/9 929/12 932/1 932/20 933/2 934/4 934/6 934/23 935/7 936/14 936/21 937/14 939/23 939/24 941/2 943/11 944/24 944/25 945/2 946/9 946/21 946/24 947/11 949/22 951/23 952/1 953/2 953/17 955/3 955/10 962/5 962/13 963/21 965/8 967/20 967/21 968/9 969/11 969/16 969/22 970/10 970/10 972/4 973/22 977/6 977/25 980/14 981/10 983/9 984/2 984/12 984/16 986/2 986/13 986/15 986/16 986/19 986/21
**above [5]** 905/17 926/17 926/25 988/5 989/5
**above-entitled [2]** 988/5 989/5
**absence [1]** 974/12

**absolutely [4]** 905/20 906/10 949/5 976/22
**abundance [1]** 896/9
**abundantly [1]** 897/18
**accepted [1]** 901/14
**access [1]** 900/1
**accident [1]** 971/6
**accommodation [2]** 928/20 969/23
**accomplish [1]** 975/23
**accordingly [1]** 972/2
**accurate [1]** 948/22
**acknowledge [1]** 897/15
**acquittal [21]** 894/19 895/5 895/14 897/5 897/24 899/1 899/21 903/7 905/9 906/12 910/11 910/13 915/7 915/19 916/4 917/1 917/5 917/16 921/25 949/3 984/13
**act [3]** 969/10 970/15 972/16
**acted [2]** 969/18 969/19
**acting [2]** 937/21 937/24
**action [2]** 890/3 902/10
**acts [2]** 909/1 929/15
**actual [2]** 937/15 975/14
**actually [5]** 895/20 904/7 919/19 962/12 964/3
**add [3]** 897/25 963/18 965/6
**adding [2]** 956/5 965/2
**additional [7]** 891/19 894/10 963/3 963/6 963/13 968/11 983/13
**address [4]** 895/17 896/10 898/20 963/14
**addressed [3]** 953/6 953/10 965/24
**addressing [1]** 923/4
**adequate [1]** 922/22
**admissible [3]** 940/4 941/13 948/6
**admission [1]** 909/25
**admitted [1]** 900/21
**adopted [1]** 956/11
**advice [8]** 937/21

**advised [6]** 927/7 927/8 927/8 948/18 948/22 972/4
**advising [1]** 952/9
**after [18]** 894/7 906/4 907/14 921/8 922/2 922/7 923/4 925/10 930/24 930/25 931/13 931/13 932/4 955/2 962/13 962/18 981/25 986/6
**afternoon [2]** 924/21 924/23
**afterward [1]** 981/12
**again [35]** 898/22 899/8 901/14 901/19 902/22 905/25 909/12 909/20 911/19 911/22 923/10 923/23 927/12 927/23 929/3 930/12 931/5 931/15 936/3 936/5 939/11 942/4 943/6 945/10 947/3 947/24 953/10 969/23 974/9 975/20 983/24 986/11 986/23 987/7 987/19
**against [2]** 899/23 940/16
**agenda [3]** 934/6 940/6 940/10
**agent [3]** 891/9 953/1 958/23
**agree [33]** 892/8 892/21 910/16 912/5 912/18 912/21 956/23 956/24 959/9 959/10 959/13 959/18 959/23 959/25 960/1 960/3 960/4 960/6 960/9 960/12 960/13 960/15 960/16 960/18 960/19 960/22 960/23 960/25 961/1 961/4 961/5 962/24 982/13
**agreed [2]** 923/12 955/24
**agreeing [1]** 911/24
**agreement [5]** 892/5 892/14 916/16 923/25 956/13

**965/18 963/24 979/11** 979/19 980/7 980/14 981/5
**agrees [2]** 957/1 959/8
**Ah [1]** 911/12
**ahead [4]** 893/2 919/21 922/19 963/14
**akin [1]** 949/1
**AL [1]** 890/16
**all [53]** 892/7 898/1 899/8 899/11 899/16 902/12 904/4 905/18 907/15 908/10 911/16 912/6 912/21 915/14 918/9 921/13 924/19 927/9 928/3 929/11 933/24 936/4 937/20 938/8 941/9 949/17 952/4 952/9 952/18 954/25 955/1 961/24 961/25 965/22 966/14 968/10 974/7 975/21 976/15 976/23 978/2 978/3 979/18 980/8 980/8 982/14 984/17 984/22 984/24 985/23 986/22 987/7 987/20
**allegations [1]** 940/21
**alleges [1]** 903/10
**alleging [1]** 940/17
**allow [1]** 982/16
**allowed [3]** 907/24 950/6 964/23
**alluded [1]** 947/10
**along [1]** 902/12
**already [15]** 892/22 896/12 896/20 897/2 910/19 920/21 936/8 944/21 945/5 947/22 953/6 962/10 966/6 971/5 983/12
**also [24]** 891/14 907/6 908/22 910/2 911/19 915/10 922/20 922/21 923/4 925/20 925/24 941/24 942/18 951/3 954/14 957/5 957/9 957/13 962/12 963/2 964/16 982/18 983/14 985/13
**alternate [4]** 961/6 961/9 962/9 962/13
**alternates [1]** 986/4
**although [2]** 899/9 940/4
**always [4]** 892/6 894/15 949/6 964/11

# A

am [17] 895/6 898/22 907/2 916/1 916/3 916/4 917/1 917/7 918/3 922/19 925/14 948/18 949/10 964/16 968/8 975/9 978/7

AMANDA [2] 890/10 891/8

ambiguous [1] 932/18

amendment [5] 899/22 917/15 942/2 950/22 967/14

AMERICA [2] 890/2 891/3

American [1] 938/24

Amerling [32] 897/23 898/3 900/1 900/4 900/11 900/18 903/17 906/17 909/1 926/11 926/15 928/23 936/13 936/20 937/10 938/6 938/19 938/19 939/10 941/8 942/25 943/2 943/3 945/9 945/10 946/16 946/18 946/20 952/3 952/8 952/24 963/25

Amerling's [3] 899/9 908/3 948/12

another [14] 894/24 910/6 912/22 918/9 921/6 940/11 946/7 946/8 947/13 950/18 974/16 974/17 984/15 986/19

answer [11] 898/10 898/10 898/13 901/3 901/12 918/21 920/8 938/20 950/15 953/21 954/16

answered [2] 943/5 949/25

answers [1] 951/4

anticipate [1] 907/18

any [44] 894/22 895/17 895/24 901/8 904/18 905/16 909/21 910/5 912/4 912/15 912/17 916/19 919/11 921/10 921/19 930/18 931/23 933/2 934/8 934/24 936/15 939/17 943/5 944/10 946/4 946/9

947/23 947/25 951/17 951/12 952/14 953/7 953/19 956/15 958/15 958/16 961/9 962/14 966/1 977/2 984/5 984/14 986/2 986/14

anyone [5] 942/1 942/3 984/16 986/13 986/21

anything [17] 894/22 895/25 904/6 910/11 912/11 916/12 916/22 916/25 917/7 927/19 938/7 945/23 951/8 972/6 983/7 986/1 986/3

anyway [4] 919/11 927/11 929/3 981/15

apologize [1] 964/10

appear [3] 907/17 950/14 953/24

appearance [1] 918/4

APPEARANCES [1] 890/9

appears [2] 969/24 970/3

applicable [10] 892/3 892/23 892/25 956/22 958/5 958/24 959/11 959/17 959/22 961/8

applied [1] 980/12

applies [4] 896/19 911/1 944/9 974/9

apply [7] 892/6 927/16 974/2 974/3 974/6 974/11 986/20

appointment [1] 986/7

appreciates [2] 935/4 935/6

approach [3] 917/20 926/9 926/15

appropriate [9] 894/6 915/11 917/17 918/8 918/9 926/18 929/13 958/25 965/6

appropriately [1] 971/10

arbiter [1] 939/8

arbitrary [2] 933/22 945/19

are [83] 892/24 895/4 896/24 896/24 898/25 900/22 902/7 902/15 902/15 903/7 903/21

905/9 906/7 907/8 909/13 909/13 911/4 911/5 911/23 915/4 915/16 915/21 916/15 916/15 917/6 917/24 921/9 921/10 921/14 922/9 923/13 924/3 924/4 924/21 926/24 927/13 927/16 927/24 928/8 929/6 933/1 933/10 935/9 935/23 936/6 938/4 939/8 940/8 941/1 951/5 951/6 953/25 955/14 955/16 955/24 956/13 961/7 962/19 962/19 963/6 963/13 968/11 969/2 969/4 969/5 970/21 971/18 973/20 976/1 976/5 977/7 977/10 978/2 979/10 981/23 982/15 984/2 985/5 985/18 986/21 987/4 987/8 987/19

areas [5] 892/13 892/13 924/7 925/3 925/19

argue [1] 976/15

argued [1] 987/18

argument [13] 894/7 894/12 908/21 917/10 917/16 918/22 921/20 922/22 951/9 968/23 971/18 976/19 977/21

arguments [9] 909/11 917/6 917/24 923/7 923/8 924/11 950/12 953/23 985/20

around [11] 892/13 915/8 921/17 921/20 923/1 923/5 923/16 924/11 945/12 976/21 981/14

articulated [2] 924/3 953/18

as [98] 892/3 892/6 892/6 892/22 893/6 893/22 895/11 896/2 896/8 896/15 896/15 896/25 898/22 899/1 899/2 900/7 900/19 900/20 901/17 902/5 905/4 905/5 905/22 906/8 906/8 909/1

909/13 909/12 910/20 910/22 910/22 911/5 911/24 912/11 915/19 916/4 916/21 917/6 917/6 917/10 921/9 922/6 923/12 923/12 925/8 925/13 925/19 925/19 927/17 928/22 928/23 929/15 931/23 933/18 936/14 937/4 937/5 937/9 937/12 939/19 949/2 949/8 949/9 949/11 955/12 955/19 963/20 964/3 964/8 964/17 965/23 966/4 966/8 967/14 967/25 968/5 969/23 971/9 971/9 972/1 974/6 974/13 979/2 980/4 980/9 980/16 980/18 982/4 982/4 982/4 982/5 982/6 985/8 985/12 985/23 986/3 986/24 987/5

ask [14] 891/15 897/4 905/17 918/20 946/6 946/8 948/24 950/11 951/3 954/15 954/24 970/4 975/25 981/2

asked [22] 893/4 894/12 898/7 900/18 901/1 901/4 901/7 901/15 930/5 930/17 943/8 943/9 944/13 944/18 946/20 946/22 946/24 948/25 951/14 953/3 984/10 987/2

asking [4] 893/2 919/18 919/20 947/20

asks [1] 945/15

asserted [1] 953/25

assertion [1] 944/8

assume [2] 892/17 966/12

assumes [1] 977/1

assuming [5] 920/6 922/3 923/24 975/7 975/13

assurance [1] 919/9

attached [1] 907/7

attack [1] 931/7

attempt [2] 912/1 975/17

attention [5] 910/14

## A

attention... [4] 911/22
980/11 984/10 984/14
attentive [1] 961/12
attorney [2] 890/15
963/19
ATTORNEYS [1]
890/11
attorneys' [1] 911/16
auspices [1] 936/23
author [1] 901/23
authority [5] 937/7
942/7 942/25 944/15
980/16
authorized [5] 900/9
909/4 909/4 937/13
938/23
available [6] 900/15
950/20 950/22 968/23
969/4 969/21
Avenue [1] 890/23
aware [5] 891/18 927/3
928/8 939/19 947/2

## B

back [34] 891/16
900/19 900/21 906/19
910/14 911/22 915/4
915/9 915/16 915/21
917/9 920/6 921/3
923/4 924/22 927/2
929/6 950/16 952/4
954/14 954/24 955/3
970/24 975/3 975/9
977/7 978/9 981/18
982/1 982/16 982/23
984/20 985/5 987/14
background [1] 925/1
badly [1] 925/8
Baltimore [1] 890/19
Bankruptcy [1] 890/22
Banks [1] 941/19
BANNON [76] 890/5
891/4 891/13 896/6
897/8 897/20 898/18
898/21 899/7 900/20
900/24 902/14 902/19
903/3 903/11 903/17
904/1 904/5 906/15
906/18 907/4 907/12
922/16 926/23 926/25
927/1 927/5 927/22
927/23 928/11 928/13
930/5 930/10 930/15

931/10 931/12 931/17
932/7 932/21 933/1
934/7 935/4 935/22
936/2 936/5 936/7
936/21 936/22 936/22
937/21 938/9 938/24
939/11 940/3 940/6
942/11 943/8 944/16
954/6 972/13 972/23
973/5 978/18 978/25
979/4 979/5 979/21
980/1 980/2 980/7
980/13 980/17 981/2
Bannon's [23] 921/22
922/17 923/6 926/15
928/21 929/7 932/2
932/3 932/20 933/7
933/12 933/18 934/1
935/6 937/11 937/15
938/4 938/25 955/20
973/18 978/19 979/24
980/4
barred [3] 979/14
980/13 980/21
barren [1] 898/17
barring [1] 980/19
based [14] 893/15
899/1 900/4 901/23
902/6 903/16 917/6
923/12 925/9 948/11
972/24 973/6 979/19
981/4
basic [2] 917/2 917/9
basically [6] 893/25
910/20 912/5 970/12
970/18 985/18
basing [1] 898/25
basis [2] 951/11
954/19
be [128]
bears [1] 902/18
because [41] 891/25
894/18 896/13 897/25
899/20 903/20 904/3
907/8 911/22 916/5
921/25 923/15 928/13
929/5 932/10 933/5
933/10 935/22 939/10
941/20 944/19 944/19
946/16 947/9 947/9
948/5 950/18 951/9
955/1 962/7 963/12
964/22 966/7 967/20

967/23 970/21 971/6
971/19 972/19 977/11
979/13
become [1] 940/20
been [42] 892/3 892/6
892/12 894/10 896/12
896/20 897/2 900/14
902/7 902/11 902/23
902/24 903/1 906/14
912/15 915/20 916/8
918/2 919/10 922/2
925/8 927/7 927/8
927/8 927/9 930/14
930/25 936/12 943/14
945/11 948/6 948/22
950/12 953/24 962/10
966/15 969/25 976/3
976/21 976/23 979/21
980/5
before [33] 890/8
891/18 891/25 892/1
892/7 894/3 895/12
900/6 909/4 909/5
910/6 921/15 921/19
924/15 925/23 926/13
928/1 928/15 935/21
942/12 943/16 943/16
950/9 953/17 961/9
962/11 962/14 966/21
968/5 975/9 978/20
985/8 986/20
begin [2] 907/12
977/23
beginning [3] 891/6
965/5 969/6
behalf [5] 901/2 937/7
944/4 978/18 979/6
behind [1] 935/15
being [7] 898/7 898/8
911/21 925/9 950/19
971/15 987/7
belied [1] 927/1
belief [14] 931/25
932/1 932/2 932/4
933/7 933/18 933/19
953/5 964/22 964/24
969/12 969/19 969/22
972/20
believe [17] 892/24
900/3 901/22 908/3
925/12 925/21 929/7
934/6 941/11 942/5
954/20 956/13 956/15
956/22 958/5 965/23

believed [9] 925/13
969/7 969/16 970/16
972/13 972/24 973/6
979/18 980/12
believes [3] 896/2
912/16 942/7
benign [1] 916/21
best [4] 898/6 921/5
973/24 974/8
better [3] 949/6 954/5
978/10
between [11] 900/19
900/23 919/4 927/17
927/17 936/18 944/1
946/3 946/15 961/2
973/6
beyond [5] 897/7
897/14 903/25 908/4
951/1
bias [2] 941/3 941/7
Biden [2] 944/4 944/15
Biden's [1] 944/7
bigger [1] 919/18
bit [3] 943/4 961/7
964/11
Bob [1] 900/20
Bobb [1] 948/20
body [7] 909/1 909/5
929/15 929/20 952/5
952/22 953/11
books [2] 940/23
941/1
both [5] 894/20 911/23
912/5 916/15 923/5
bottom [1] 958/6
bound [3] 925/14
927/12 927/16
box [1] 893/7
bracketed [1] 958/14
brackets [1] 892/23
branch [2] 950/18
954/1
brief [4] 899/20 915/6
919/5 965/21
briefed [1] 918/7
briefs [2] 896/22 911/3
bring [9] 918/19 951/9
962/4 983/5 983/25
984/3 984/10 984/14
985/1
bringing [2] 920/6
961/23
broad [2] 928/17

**B**

broad... [1] 937/17
broaden [1] 941/20
brought [5] 891/21
940/16 942/8 962/6
980/11
Bryan [1] 904/24
building [1] 907/17
burden [4] 905/2
908/11 950/7 957/8
buy [2] 904/15 904/16

**C**

call [3] 936/25 950/13
980/17
called [4] 893/14
915/21 956/3 980/19
Calley [1] 955/14
calling [1] 925/21
came [5] 894/13 898/8
906/1 943/10 966/22
can [31] 893/21 896/11
902/11 905/12 908/1
910/15 910/17 921/1
923/3 923/9 923/10
923/14 924/7 927/18
932/8 933/6 949/1
955/6 955/20 955/25
961/12 963/14 967/24
969/18 977/1 978/4
978/5 982/4 982/18
984/3 984/20
can't [7] 954/14 956/6
967/25 970/12 970/22
972/20 978/8
cannot [3] 919/12
948/21 964/9
Capitol [1] 931/8
caption [1] 956/2
careful [1] 925/10
carefully [3] 968/2
979/1 980/23
CARL [1] 890/8
carrying [1] 942/4
case [74] 891/3 893/21
894/8 896/8 896/19
896/25 897/6 897/17
897/17 898/1 898/2
900/8 902/5 903/1
904/23 906/25 908/13
910/5 911/1 911/6
911/6 911/20 912/5
912/11 915/22 916/12
918/2 918/16 918/18

919/7 920/5 920/11
921/16 921/22 922/5
922/7 922/10 925/9
931/23 938/9 938/11
938/13 942/2 942/18
950/2 951/15 953/4
955/13 955/14 956/2
956/21 966/5 966/17
971/17 972/8 973/4
973/24 974/2 974/11
974/13 979/8 979/10
979/11 982/7 982/10
984/16 985/8 985/13
986/4 986/13 986/15
986/19 986/21 987/5
cases [5] 955/14
955/16 955/16 974/2
986/24
caught [2] 927/17
986/2
caused [1] 985/25
caution [1] 896/9
cautionary [3] 960/20
983/6 983/25
CEO [1] 952/6
certain [2] 900/14
902/22
certainly [12] 894/6
898/14 922/9 926/19
933/12 933/16 933/18
935/9 939/21 946/16
974/9 977/23
certify [2] 988/4 989/4
cetera [1] 922/23
chairman [58] 893/22
898/13 900/7 900/8
901/9 901/11 906/14
907/10 907/24 908/17
909/2 925/4 925/4
926/21 927/23 928/7
929/4 929/7 929/17
929/24 930/1 930/2
930/8 930/16 930/21
930/23 932/19 933/11
935/7 936/4 936/7
937/1 937/12 937/20
937/20 938/17 939/3
939/5 939/17 939/22
939/25 940/13 940/16
940/19 940/20 941/14
941/24 941/25 943/11
945/18 945/23 946/16
947/18 948/7 948/16
951/23 953/22 954/19

**Chairman
Thompson's [2]** 909/2
932/19
chambers [2] 924/5
975/3
chambers' [1] 892/12
chance [2] 891/21
978/16
change [12] 896/13
907/7 907/8 930/21
931/3 931/5 945/19
946/23 946/24 967/20
969/9 972/15
changed [3] 931/21
945/11 956/1
changes [1] 963/24
channel [2] 946/15
952/13
characterization [1]
971/2
charge [3] 897/8 921/3
923/22
charged [1] 908/5
charges [6] 897/9
946/2 947/4 947/5
947/11 957/25
Charles [1] 890/19
chase [2] 918/5 927/12
check [1] 957/19
choose [1] 928/25
choosing [1] 941/3
chose [1] 928/19
chosen [1] 908/24
Christina [1] 948/20
circuit [5] 925/14
943/20 943/22 943/23

**Chairman Thompson
[50]** 893/22 898/13
900/7 900/8 901/9
901/11 907/10 908/17
925/4 925/4 926/21
927/23 929/4 929/7
929/17 929/24 930/1
930/2 930/8 930/16
930/21 930/23 933/11
935/7 936/4 936/7
937/1 937/12 937/20
937/20 938/17 939/3
939/5 939/17 939/22
939/25 940/13 940/16
940/19 941/14 941/24
941/25 943/11 946/16
947/18 948/7 948/16
951/23 953/22 954/19

circumstantial [1]
957/21
cite [2] 940/9 974/13
civil [3] 902/10 939/6
974/13
claim [3] 939/12 970/2
971/20
claims [3] 896/6
908/14 942/6
clarify [1] 912/14
clause [1] 935/10
clear [18] 892/6
897/18 899/10 909/14
909/16 909/23 909/24
915/19 943/5 943/21
964/2 964/15 965/25
965/25 971/14 971/22
978/24 981/11
clearly [3] 891/24
900/5 948/5
client [3] 907/4 931/5
944/11
client's [1] 944/10
close [1] 894/8
closely [1] 946/19
closest [2] 950/17
950/21
closing [6] 971/19
976/7 976/8 976/12
983/16 985/20
closings [11] 891/25
892/1 921/4 921/19
923/14 962/14 962/19
976/1 976/6 977/3
978/3
CNN [1] 984/10
COLUMBIA [1] 890/1
come [20] 891/5
896/18 909/17 910/4
910/25 915/9 917/9
917/12 923/4 952/7
955/2 965/18 967/9
968/20 975/9 978/9
981/18 982/23 983/8
985/4
comes [3] 921/3 932/6
986/5
coming [2] 910/7
915/25
comment [2] 895/23
896/3
committed [8] 897/21
900/25 902/15 903/11

**C**

committed... [4]
903/17 904/1 904/3
906/18
committee [71] 898/5
898/15 900/20 901/3
901/8 901/11 901/25
902/7 906/15 907/7
907/13 909/1 909/5
909/14 910/1 925/5
926/3 926/6 926/20
927/7 927/18 927/22
928/6 928/7 928/20
928/24 929/15 929/17
929/18 929/23 929/25
930/9 931/7 931/8
934/2 934/6 935/23
937/6 937/8 937/13
937/13 937/14 937/19
938/1 938/14 938/17
938/21 938/21 939/1
939/12 940/15 941/8
941/15 941/19 943/16
945/18 946/13 947/16
951/12 952/4 952/4
952/19 952/25 953/1
953/8 953/12 953/25
954/15 954/22 973/25
979/25
Committee's [13]
907/5 907/11 929/9
929/10 930/4 930/12
935/25 937/2 940/25
948/16 951/19 952/10
979/16
communicate [6]
902/8 975/8 982/21
986/21 987/14 987/17
communicated [3]
895/16 952/12 986/6
communication [3]
907/1 952/13 960/21
communications [4]
900/23 934/8 934/11
961/2
competent [4] 929/12
938/20 946/18 953/2
complete [2] 905/25
907/14
completely [2] 936/2
953/1
compliance [12]
900/24 907/23 908/1
930/10 936/10 936/10

945/2 947/4 947/21
965/14 969/8 972/14
complicated [1]
941/11
complied [4] 928/18
931/11 931/13 937/18
compliment [2] 949/9
949/11
comply [30] 898/21
898/21 899/7 899/7
902/14 902/17 903/3
907/5 907/25 909/9
909/9 909/24 910/3
910/4 926/17 927/2
927/14 927/24 927/24
928/14 928/14 931/6
931/18 935/6 937/15
942/11 945/3 964/21
972/16 980/6
complying [6] 931/10
936/22 938/7 944/23
964/18 964/25
composition [1] 926/3
concede [2] 933/25
934/1 955/13
concedes [1] 909/7
conceding [1] 955/12
conceived [1] 900/6
concerned [4] 911/18
915/19 922/1 981/13
concerning [1] 944/11
conclude [4] 897/14
904/2 920/3 953/12
concluded [1] 915/3
conclusions [3]
925/11 941/1 942/24
conduct [3] 896/16
910/23 955/13
confer [4] 892/10
921/1 923/1 923/16
conference [2] 921/3
923/23
conferred [1] 981/3
conflicts [2] 940/14
941/7
confront [1] 899/23
confrontation [1]
935/10
confused [1] 966/8
confusion [1] 964/11
Congress [12] 897/9
900/25 903/12 903/18
937/7 938/22 938/22
938/23 939/18 963/17

964/2 976/8
congressional [4]
915/12 921/21 927/6
934/22
connection [2] 894/3
946/3
consequence [2]
931/12 931/12
consider [15] 902/18
915/7 922/22 939/1
954/22 965/3 967/24
967/25 975/12 977/7
978/16 981/12 982/17
982/19 987/16
consideration [2]
925/10 961/21
considered [10]
896/24 897/16 911/5
938/18 938/23 958/1
968/14 973/1 977/22
985/14
considering [1]
967/22
consistent [8] 902/11
941/1 942/20 952/24
953/16 959/20 973/13
979/22
constantly [1] 937/10
Constitution [1]
890/23
contacted [1] 927/5
contacts [1] 927/22
contagious [1] 986/1
contemplate [1]
894/12
contemplative [1]
949/7
contempt [9] 897/9
900/25 903/12 903/18
931/1 931/2 944/20
963/17 964/21
contends [2] 969/7
972/13
continue [2] 915/22
985/25
continued [3] 930/18
934/25 936/9
contract [3] 974/1
974/3 974/7
contrary [1] 923/7
conversations [1]
952/9
convince [1] 948/1
copies [4] 891/21

905/14 905/18 906/9
copiously [1] 949/15
copy [4] 906/7 948/14
948/19 956/8
CORCORAN [21]
890/7 891/13 895/4
908/7 909/11 910/16
910/18 947/10 958/17
958/24 963/25 965/8
966/18 966/19 975/17
976/11 979/12 981/19
983/9 985/7 985/10
Corcoran's [2] 908/21
962/11
corporation's [1]
952/6
Corps [1] 894/17
correct [12] 899/2
921/12 934/9 934/10
934/12 956/18 959/8
959/12 968/12 972/9
988/4 989/4
Costello [24] 900/20
902/3 906/15 926/22
927/5 927/8 927/14
927/21 927/22 931/1
932/8 934/7 939/11
944/5 944/13 944/16
948/2 979/24 980/1
980/2 980/4 980/11
980/16 980/18
Costello's [6] 907/6
909/24 926/21 927/10
979/20 979/22
could [40] 894/7 894/8
894/9 895/19 897/7
897/13 897/13 897/20
898/18 900/6 900/15
901/7 902/13 902/18
903/16 904/2 905/10
905/17 906/18 908/4
908/12 910/14 911/18
917/12 921/3 921/15
936/2 950/16 955/22
955/22 963/20 965/2
970/23 970/24 970/24
973/1 973/25 975/16
975/17 983/17
couldn't [8] 898/10
898/10 898/13 900/13
901/3 901/12 901/12
904/18
counsel [10] 891/5
919/4 937/21 957/1

# C

counsel... [6]  963/2
968/5 977/21 979/11
980/14 981/3
count [12]  899/12
903/6 903/13 903/24
931/16 931/18 931/19
963/20 970/11 970/12
970/22 970/25
counts [1]  960/2
couple [1]  944/6
course [23]  892/21
896/18 899/2 905/4
906/4 910/25 921/6
923/18 930/22 931/4
931/6 939/3 939/4
939/6 940/3 941/3
942/10 943/24 948/13
955/8 974/19 977/18
978/17
court [93]  890/1
890/22 891/16 891/17
892/15 893/2 893/3
893/7 893/12 893/18
893/18 893/19 894/2
894/4 894/12 896/9
897/4 897/11 898/23
902/9 903/6 904/23
910/17 910/19 911/8
911/13 911/18 912/16
918/4 918/6 918/9
918/11 918/18 919/9
919/9 919/11 919/19
920/24 921/2 923/22
923/23 925/8 925/23
925/25 926/4 928/1
928/2 929/3 931/25
934/20 935/11 935/14
935/17 937/22 938/14
938/18 939/19 939/21
940/12 942/8 948/8
948/21 949/7 949/8
949/10 951/7 951/24
953/3 953/6 956/12
957/15 957/16 961/2
965/10 965/19 966/1
966/14 967/7 970/1
973/1 973/7 978/24
979/2 979/9 980/23
980/23 980/24 984/6
984/8 984/22 984/24
988/3 989/3
court's [16]  910/16
911/15 912/19 917/19

courthouse [2]  986/14
925/10 925/11 927/3
941/12 947/2 949/12
974/23 980/19 983/11
courthouse [2]  986/14
986/14
courtroom [6]  961/10
961/23 962/4 962/7
985/3 987/11
courts [5]  890/22
939/7 939/8 939/13
940/1
cover [1]  891/17
covered [1]  912/19
COVID [1]  986/1
CR [1]  890/3
Crawford [2]  935/11
942/16
CRC [1]  890/21
create [2]  910/14
983/15
created [1]  906/4
credibility [2]  958/10
958/20
crime [6]  900/25
902/15 903/18 904/1
904/3 906/19
crimes [3]  897/21
900/25 908/5
criminal [4]  891/3
928/25 974/2 974/7
critical [1]  899/17
critically [3]  900/18
901/7 947/8
cross [7]  899/24
900/12 906/1 925/20
929/14 938/12 972/21
cross-examination [6]
899/24 906/1 925/20
929/14 938/12 972/21
cross-examined [1]
900/12
cure [3]  894/22 912/2
954/6
cured [1]  895/19
currently [1]  943/17
currently-sitting [1]
943/17
cut [2]  918/5 927/12

# D

D'Amico [1]  891/10
D.C [4]  890/11 925/14
943/20 943/23

date [36]  903/8 903/11
903/14 903/24 904/3
904/3 904/17 904/20
904/25 905/1 905/2
905/3 906/5 908/2
910/3 931/16 931/20
931/21 933/21 933/22
945/19 945/19 945/21
946/3 946/21 946/23
946/23 946/24 947/9
947/11 947/14 948/3
963/23 972/17 988/9
989/9
dated [3]  906/8 906/22
907/3
dates [43]  898/8
899/10 899/11 899/14
899/15 899/16 900/24
902/14 903/7 907/16
908/24 908/24 909/13
909/13 909/15 931/13
931/25 933/7 933/10
933/14 933/17 933/20
934/4 935/23 936/5
941/5 942/10 943/13
943/13 944/23 945/9
945/20 947/7 947/11
952/2 952/14 952/15
953/5 953/9 969/7
969/12 970/16 972/13
DAVID [3]  890/14
890/15 891/12
day [24]  890/7 894/11
909/23 918/6 926/13
927/1 930/24 930/25
931/10 935/18 938/19
939/10 941/8 944/12
944/24 955/15 974/6
975/24 976/23 976/25
979/7 984/9 985/16
987/8
Day 1 [1]  927/1
DC [3]  890/4 890/12
890/24
dcd.uscourts.gov [1]
890/24
deadline [1]  944/19
deal [2]  966/10 978/6
dealt [1]  943/15
December [2]  903/2
933/23
decide [5]  917/5 923/8
949/23 950/3 987/3
decided [4]  912/4

decides [1]  928/2
deciding [3]  916/11
916/21 951/7
decision [17]  908/23
916/3 916/13 917/4
922/17 922/17 923/6
928/8 928/21 929/24
937/9 941/6 943/10
949/2 949/7 964/2
967/9
decision-maker [2]
929/24 937/9
decision-making [1]
941/6
decisions [2]  937/8
941/23
declaration [3]  927/10
979/20 979/22
default [16]  902/21
902/22 902/23 902/25
904/24 936/6 936/12
936/12 945/15 945/15
945/16 946/2 966/12
973/22 973/25 974/4
defaulted [2]  936/8
947/22
defendant [36]  890/6
890/14 897/19 898/4
899/22 908/11 908/12
908/14 908/16 908/20
909/6 909/7 909/9
909/15 909/16 909/21
910/2 932/9 932/11
932/13 932/16 952/12
953/7 959/7 959/11
963/13 964/4 964/9
964/18 964/21 968/24
969/7 969/24 971/8
972/12 979/5
defendant's [14]
905/10 905/15 905/18
906/21 907/25 908/18
909/19 910/8 932/15
953/5 953/19 969/12
969/17 974/25
defense [42]  894/8
894/8 919/7 920/5
920/11 922/5 922/7
922/10 925/9 925/18
925/19 931/24 937/5
938/13 941/12 942/19
942/20 942/21 950/6
950/23 950/25 963/17

**D**

**defense... [20]** 964/20 965/24 966/5 966/9 967/25 968/25 969/20 970/2 972/2 972/7 972/11 972/17 972/18 973/4 974/10 981/12 982/10 983/14 985/9 985/12

**defenses [6]** 925/11 938/10 969/3 980/15 980/20 980/21

**defined [2]** 899/1 902/24

**defines [2]** 970/6 970/18

**definition [1]** 932/20

**degree [1]** 943/20

**delayed [1]** 978/8

**deliberate [8]** 949/1 962/14 970/8 971/5 976/15 985/19 985/21 986/18

**deliberately [1]** 970/16

**deliberates [2]** 922/3 949/3

**deliberations [4]** 960/14 961/3 962/8 986/17

**demand [2]** 907/11 936/9

**demeanor [1]** 949/16

**denial [1]** 943/22

**denied [3]** 896/3 910/8 953/14

**depending [2]** 923/8 976/10

**depends [1]** 978/4

**deposition [7]** 907/18 907/18 909/18 910/5 944/10 948/14 948/15

**depositions [1]** 956/22

**describe [2]** 899/12 903/21

**described [3]** 896/14 910/21 981/5

**describes [2]** 911/15 911/15

**desire [1]** 941/9

**determination [1]** 944/8

**determine [2]** 896/25 911/6

**determined [3]** 898/23 908/2 944/2

**determining [2]** 941/4 941/4

**develop [1]** 938/17

**dichotomy [1]** 947/3

**did [40]** 898/3 898/11 901/22 904/5 909/12 909/16 909/17 909/21 909/23 910/4 928/24 929/4 929/7 930/16 930/20 930/23 930/23 931/3 931/9 931/13 934/25 939/1 941/14 942/13 945/19 946/22 947/24 955/9 964/18 964/21 965/3 966/18 966/21 969/9 972/18 979/14 979/15 979/15 979/15 987/1

**didn't [23]** 893/1 894/12 897/25 898/14 900/12 904/18 906/2 916/11 926/19 926/23 934/7 934/23 939/22 944/18 945/10 945/20 946/24 951/24 951/24 954/18 966/18 972/19 974/20

**difference [1]** 903/15

**different [11]** 901/4 903/10 903/13 917/15 922/8 933/20 950/11 953/13 954/1 964/7 982/7

**differing [1]** 941/15

**direct [2]** 931/24 957/21

**directed [1]** 926/22

**directives [1]** 980/8

**directly [2]** 940/18 941/24

**disagree [2]** 958/7 971/1

**disagreement [4]** 892/13 912/12 924/1 924/7

**discuss [13]** 892/24 894/14 895/8 899/18 912/22 915/9 918/10 922/13 923/2 924/7 936/24 961/17 963/7

**discussed [3]** 971/16 972/25 978/25

**discussion [7]** 896/8 912/24 915/3 919/4 921/17 932/25 986/25

**discussions [3]** 896/23 911/3 987/4

**dismiss [10]** 893/15 903/6 917/14 917/21 917/22 949/25 950/8 955/4 982/12 982/19

**dismissal [4]** 918/8 918/8 950/25 953/18

**dismissing [2]** 982/5 984/4

**disputed [1]** 967/12

**disputes [1]** 939/9

**disrespect [1]** 936/15

**distinction [1]** 936/17

**distinctions [1]** 935/10

**district [6]** 890/1 890/1 890/8 890/22 939/21 957/16

**do [92]** 891/25 892/5 892/5 892/19 894/18 894/22 894/22 894/25 895/8 895/10 895/25 896/11 901/5 910/11 916/1 916/2 916/5 916/9 916/23 917/1 919/7 919/11 919/21 920/10 922/6 922/6 922/18 922/20 922/24 923/14 924/1 927/18 927/19 929/19 929/22 933/25 933/25 945/24 945/25 947/17 949/13 949/14 955/2 955/3 955/22 955/25 958/24 961/16 962/5 962/18 963/8 965/1 965/22 966/24 967/15 968/16 968/16 968/20 971/22 974/2 974/6 974/17 975/2 975/13 975/16 976/2 976/11 976/16 976/24 977/5 978/2 978/5 978/9 978/12 979/7 979/15 979/15 979/19 981/3 981/19 982/15 982/20 982/24 983/9 983/17 985/8 985/15 985/16 986/13 986/15 986/15 987/3

**doctor's [1]** 986/7

**document [2]** 909/25 965/24

**documents [20]** 901/16 902/21 903/8 903/13 903/19 907/9 907/12 907/13 907/15 908/1 909/17 928/10 943/9 944/10 945/13 945/16 947/4 947/5 975/14 975/15

**does [17]** 896/9 897/24 899/20 904/25 921/16 923/22 929/17 931/23 932/19 935/3 936/10 943/17 944/15 945/23 946/4 971/5 971/6

**doesn't [12]** 893/12 898/20 912/14 933/13 942/8 942/15 951/7 964/15 970/10 971/14 973/7 974/11

**doing [5]** 912/17 918/15 949/15 962/15 979/18

**don't [54]** 891/15 891/22 894/13 895/22 895/24 896/7 896/7 902/22 902/23 905/14 910/12 912/3 912/17 918/10 918/18 918/22 919/21 919/22 923/15 929/18 933/5 936/11 936/14 940/11 941/11 943/6 944/16 947/3 949/7 954/15 955/12 956/15 956/22 958/25 965/18 966/6 966/17 966/22 968/4 971/3 973/9 974/4 974/11 977/2 977/11 977/23 983/8 983/12 983/24 984/5 984/11 984/12 984/13 986/3

**done [4]** 977/1 977/4 978/4 978/8

**double [1]** 957/18

**doubt [7]** 897/8 897/14 903/25 908/5 910/5 957/13 971/17

**down [3]** 929/1 976/3 983/22

**draft [2]** 892/2 892/22

**drafted [1]** 898/7

**D**

drafts [1] 901/16
draw [1] 911/22
drawing [2] 897/12
910/14
drawn [1] 972/22
draws [1] 973/3
drew [1] 891/19
Dunn [1] 891/9
Dunn-Gordon [1]
891/9
during [5] 896/21
911/2 918/15 960/14
961/3
duties [1] 916/23

**E**

each [4] 901/1 901/8
926/24 937/9
earlier [7] 942/13
947/10 948/4 948/25
949/8 974/21 987/18
early [1] 921/1
easier [1] 965/19
ECF [3] 891/22 893/16
927/10
ECF30 [2] 979/20
979/23
ECF30-1 [2] 979/20
979/23
edit [1] 956/19
edits [4] 963/1 963/5
963/9 981/24
effect [4] 935/1 940/22
942/1 987/2
effectively [1] 916/17
efficiency [1] 982/11
efficient [6] 896/17
910/24 920/17 922/21
982/7 985/14
eight [1] 929/18
either [11] 895/24
905/2 916/19 927/25
928/16 938/18 938/24
944/11 970/23 978/2
984/6
elected [1] 938/22
element [13] 898/16
898/19 902/16 908/14
908/22 908/25 909/8
909/8 909/12 931/22
937/4 951/18 951/21
elements [9] 898/22
899/1 908/5 951/15

962/25 963/3 963/10
970/5 981/25
elicited [1] 963/25
eliminate [3] 956/16
956/19 970/23
eliminating [1] 942/14
else [1] 963/19
email [4] 892/12 924/5
955/9 982/22
emailed [1] 924/5
end [6] 911/20 922/4
930/6 950/2 981/14
986/16
enforcement [1] 939/6
enough [3] 922/8
930/9 935/14
ensure [2] 916/11
963/19
ensured [1] 919/9
ensuring [1] 940/25
entered [1] 961/10
enters [1] 985/3
entire [2] 938/5 951/9
entirely [2] 968/16
968/18
entitle [1] 929/16
entitled [8] 929/22
950/24 968/24 971/8
971/10 972/18 988/5
989/5
entrapment [1] 980/16
equation [1] 933/17
equivocal [1] 898/6
especially [1] 899/12
essential [1] 971/21
essentially [7] 896/11
896/20 900/22 901/4
901/9 903/12 962/19
establish [2] 937/12
937/19
estimate [1] 982/3
estoppel [1] 980/16
et [1] 922/23
et cetera [1] 922/23
Evaluation [2] 959/15
959/20
EVAN [2] 890/17
891/13
even [13] 892/2 899/14
905/16 907/20 925/14
935/16 947/21 951/7
954/14 954/15 954/23
967/25 976/4
event [5] 919/11

934/24 943/5 947/23
966/1
events [3] 940/18
940/24 941/21
eventually [1] 935/24
ever [2] 938/6 941/15
every [8] 897/17 901/1
902/3 918/4 929/16
946/17 947/18 952/7
everyone [4] 919/10
924/23 957/1 959/7
everyone's [1] 982/25
everything [2] 906/16
951/16
evidence [72] 893/15
894/2 894/10 896/24
897/6 897/12 897/13
897/17 897/18 897/19
897/22 898/17 900/4
900/5 900/8 900/15
901/22 902/2 902/5
902/18 904/18 905/7
905/9 905/11 906/12
906/16 906/21 906/23
907/6 907/22 908/15
908/18 908/19 909/8
909/10 909/16 909/20
910/7 911/5 921/10
921/14 925/22 926/24
940/4 941/13 942/24
949/6 950/2 952/14
952/16 952/16 952/23
953/7 953/11 953/13
956/21 957/5 957/21
958/4 969/1 969/5
969/11 969/14 969/16
971/16 972/20 973/16
973/17 974/12 974/21
974/24 975/4
evidentiary [1] 922/5
evolved [1] 943/17
exactly [5] 912/12
933/4 943/16 945/12
979/9
examination [6]
899/24 906/1 925/20
929/14 938/12 972/21
examine [14] 925/24
926/1 926/20 935/7
937/6 937/24 940/13
941/2 941/14 941/22
942/15 948/7 948/12
948/15
examined [2] 900/12

example [7] 929/24
935/12 952/6 955/15
973/18 974/8 975/10
exchange [3] 972/24
973/6 973/20
exclude [2] 893/15
959/5
excluding [2] 894/2
959/3
exclusion [1] 918/9
exculpatory [6] 900/3
900/5 951/6 951/12
953/13 954/20
excuse [6] 961/12
961/21 964/9 964/18
965/4 966/3
excused [6] 895/12
961/10 964/4 986/5
987/8 987/13
excusing [3] 961/6
962/13 964/25
executive [22] 902/9
927/9 927/13 935/24
963/24 964/1 964/3
964/8 964/17 964/24
965/3 965/23 966/3
967/20 967/24 969/20
970/1 971/20 973/19
980/3 980/5 980/15
exhibit [8] 901/10
905/10 905/16 906/12
906/21 906/24 906/24
908/3
exhibits [6] 901/2
905/15 905/19 906/5
960/11 960/14
exists [1] 931/23
exited [1] 987/11
expect [3] 905/5 940/3
976/9
experience [2] 969/17
973/18
experienced [2]
979/24 980/8
explain [3] 922/16
938/11 979/17
explaining [1] 979/14
explanation [3] 922/15
960/8 964/1
extension [7] 930/5
930/15 943/8 943/9
944/13 944/18 951/20
extent [5] 911/13

**E**

extent... [4] 912/8
912/16 920/2 938/13
extraordinary [1]
940/14

**F**

fact [18] 892/24
901/24 903/5 909/22
910/10 911/24 912/10
932/24 933/14 933/17
933/19 957/19 965/3
967/21 967/23 969/4
972/2 987/1
factors [2] 972/25
979/20
facts [8] 896/25 911/6
941/10 969/5 979/10
979/14 980/14 987/3
failed [5] 898/21 899/7
908/11 909/9 931/17
failing [2] 910/3
972/16
failure [1] 902/17
fair [4] 896/17 910/24
922/8 933/19
fairly [3] 897/14 912/8
912/13
fairness [1] 894/11
familiar [1] 909/2
far [1] 896/9
fast [1] 982/4
favor [2] 908/10
953/20
FBI [1] 891/9
feel [1] 977/16
fellow [1] 944/4
Fernandez [1] 955/17
Fifth [3] 942/2 950/22
955/15
fight [1] 927/17
figured [1] 920/21
file [2] 891/22 893/8
filed [2] 917/22 917/22
filing [4] 892/11
893/16 895/13 906/5
filings [1] 924/4
final [6] 912/20 920/21
965/12 975/12 982/22
985/18
finalization [1] 921/18
finalize [5] 891/24
892/7 975/8 977/5
987/14

finally [1] 902/16
financial [1] 940/25
find [17] 897/7 897/13
897/20 898/18 902/13
903/16 903/25 906/18
908/4 908/12 925/19
945/15 951/10 969/15
969/18 972/23 973/5
finding [1] 947/8
finds [1] 945/15
fine [3] 961/14 962/4
976/17
firm [1] 936/5
first [28] 891/17 892/9
894/23 895/9 896/12
898/4 898/16 899/11
909/12 911/7 924/25
926/5 931/4 938/16
939/20 950/16 951/14
952/4 952/10 952/18
961/7 965/22 968/24
971/13 972/12 982/17
985/17 985/22
first-hand [2] 926/5
952/10
five [2] 915/8 915/13
fixed [8] 933/14
933/17 941/5 952/15
953/10 969/8 969/12
972/14
flagged [1] 892/3
flatly [1] 942/5
flexibility [1] 947/14
flexible [11] 931/25
933/8 933/10 935/23
945/22 952/2 953/5
969/9 969/13 970/17
972/15
Floor [1] 890/19
flux [2] 899/11 902/15
fly [2] 949/4 967/16
focus [4] 924/25 925/3
926/8 929/5
follow [1] 967/13
followed [1] 980/7
following [3] 907/16
922/24 948/18
follows [1] 910/21
forced [1] 977/10
foregoing [2] 988/4
989/4
foreperson [1] 960/17
forgetting [1] 976/22
forgive [1] 986/10

form [4] 927/17 956/3
956/7 960/8
formal [1] 924/7
format [1] 956/1
former [8] 927/25
939/15 940/17 943/19
943/24 944/17 951/25
980/3
forth [5] 891/16 898/22
900/19 900/21 929/6
forward [8] 891/5
910/15 917/12 921/6
923/10 931/1 975/7
980/4
forwarding [1] 966/14
FOUR [1] 890/7
fourth [2] 902/16
958/14
framework [2] 941/4
977/22
Frank [1] 891/9
frankly [4] 892/13
929/23 933/19 940/11
fresh [1] 976/20
front [8] 894/19 895/23
915/20 932/16 943/7
969/5 983/15 983/15
full [2] 945/7 976/4
fully [5] 919/10 937/18
941/9 978/20 979/2
fully-informed [1]
978/20
function [2] 911/8
911/15
functions [1] 911/16
fundamental [1]
925/22
further [1] 942/4
future [1] 907/19

**G**

GASTON [2] 890/11
891/8
gather [1] 984/19
gathered [1] 909/25
gave [3] 910/17 943/1
986/20
general [3] 898/15
970/7 970/19
generally [1] 970/7
generic [2] 912/8
912/13
gentlemen [1] 985/11
get [27] 892/1 892/7

893/8 896/1 922/3
924/4 930/7 933/10
938/12 938/25 940/6
941/9 944/25 951/5
951/17 954/21 961/16
970/6 975/11 976/1
976/5 977/1 977/5
977/11 978/4 978/8
982/17
gets [4] 921/15 932/4
932/11 932/13
getting [5] 920/4
928/13 944/22 965/13
983/22
GETTR [1] 910/4
gilding [1] 972/5
Giuliani [1] 948/20
give [19] 891/21
910/17 911/13 911/19
911/19 912/8 917/1
917/8 925/1 930/5
947/25 950/21 951/20
962/12 962/17 978/19
983/5 984/15 985/17
given [11] 896/8
901/10 901/10 902/13
918/1 929/15 944/19
948/14 948/19 983/8
987/3
giving [3] 901/19
916/20 930/15
go [41] 892/4 894/1
902/9 919/21 921/4
921/6 922/19 923/8
923/10 923/20 924/8
924/10 928/1 928/24
928/25 929/1 931/23
933/6 933/13 937/9
942/12 950/16 951/24
951/24 954/14 954/23
955/6 963/14 970/1
975/2 977/12 977/16
978/11 981/17 982/16
982/16 984/18 984/20
984/20 985/21 987/14
goal [1] 964/14
goes [11] 903/5
931/24 933/7 933/14
933/18 936/5 951/15
953/4 953/5 974/24
987/5
going [58] 891/16
894/1 895/4 911/19
916/1 916/2 916/3

G

**going... [51]** 916/8
916/9 916/13 916/13
917/1 917/1 917/7
917/8 920/5 923/20
924/25 931/1 934/13
934/18 935/24 938/10
944/2 946/12 951/2
955/2 955/7 955/21
956/3 957/16 961/6
961/13 962/12 962/12
962/19 963/3 966/8
967/15 971/18 972/5
974/16 975/2 975/2
975/3 975/7 976/1
978/1 978/2 981/20
982/15 982/15 985/15
985/15 985/16 985/17
986/11 987/14
**gone [3]** 928/15 979/1
979/3
**good [10]** 891/2 891/7
891/11 891/12 908/9
924/21 924/23 935/14
938/8 946/7
**Gordon [1]** 891/9
**got [6]** 902/4 918/2
966/21 968/5 968/8
977/14
**gotten [1]** 981/25
**government [47]**
891/6 891/20 891/22
892/17 892/20 893/20
894/13 894/15 897/5
899/25 908/10 908/15
908/22 909/7 909/10
909/20 910/7 912/14
919/25 923/18 924/12
926/10 931/17 937/5
947/19 949/19 950/1
950/21 951/1 953/15
953/22 954/1 954/8
961/14 963/1 966/13
966/13 966/18 967/14
968/5 968/9 968/12
970/9 971/12 977/24
981/25 983/2
**government's [15]**
896/6 905/1 906/24
920/2 923/7 947/19
949/22 950/13 953/16
954/10 955/8 963/4
970/20 975/5 976/8
**governs [1]** 950/17

**grab [1]** 905/10
**grant [1]** 897/5
**granted [2]** 901/17
915/12
**granting [1]** 917/12
**great [2]** 967/6 975/19
**greedy [1]** 930/1
**GSA [1]** 943/25
**guess [3]** 919/18
922/4 973/7
**guilt [2]** 947/8 947/9
**guilty [6]** 897/8 897/14
897/19 903/12 908/12
931/18
**GULLAND [1]** 890/11
**guy [1]** 949/12

H

**had [48]** 891/20 892/3
893/13 898/12 900/14
901/9 902/19 903/3
909/15 909/25 916/8
916/10 922/2 928/10
928/15 929/3 930/18
930/25 931/11 931/11
933/2 935/12 935/13
936/8 937/25 938/1
938/4 938/6 944/19
946/9 946/17 950/5
953/7 954/18 957/15
958/23 962/9 964/11
964/24 972/25 980/1
980/2 980/3 980/5
985/7 985/24 986/6
986/7
**hadn't [1]** 935/20
**hammered [1]** 966/7
**hand [2]** 926/5 952/10
**handcuffed [1]** 938/10
**handle [4]** 893/20
895/1 923/22 963/8
**hands [2]** 927/13
927/16
**happen [6]** 892/9
921/18 950/9 962/8
977/24 978/1
**happened [3]** 903/23
944/3 986/6
**happens [2]** 986/4
986/24
**happy [2]** 967/1
982/12
**hard [2]** 891/21 982/3
**harm [2]** 930/14

**harmful [1]** 896/6
**Hart [2]** 897/24 897/25
**has [73]** 892/6 895/14
897/6 897/21 898/23
899/23 900/8 902/23
902/23 903/1 903/11
903/13 906/14 907/7
907/14 908/11 908/15
909/7 909/10 909/20
910/7 910/19 912/15
918/9 919/9 919/10
921/13 921/18 925/8
925/25 926/4 926/10
927/6 927/8 927/9
931/25 932/1 932/14
932/16 936/9 937/6
938/14 941/25 942/7
942/25 943/24 944/1
948/8 950/1 950/25
951/12 953/25 954/3
954/7 954/16 954/20
963/1 966/7 967/7
968/12 968/25 969/25
970/9 970/21 972/1
979/5 979/6 979/7
979/12 980/24 981/5
985/12 987/2
**hasn't [2]** 891/20
939/5
**have [167]**
**haven't [3]** 939/4
939/7 976/21
**having [5]** 895/18
905/14 915/20 977/20
986/2
**he [142]**
**he's [9]** 901/14 901/14
909/3 927/7 929/24
931/18 943/11 972/18
979/3
**head [6]** 932/9 932/22
933/2 934/1 983/18
983/20
**heads [1]** 916/17
**health [2]** 961/10
985/24
**healthy [1]** 961/11
**hear [23]** 894/3 894/7
895/20 895/21 904/18
915/11 919/25 921/14
923/5 923/17 924/2
924/10 924/11 928/23
941/15 945/6 949/19

**heard [20]** 895/14
895/18 896/21 901/24
905/4 910/10 911/2
912/2 916/10 921/13
924/13 931/10 935/20
938/18 939/10 948/23
955/10 967/20 985/12
986/10
**hearing [5]** 929/14
930/13 976/18 976/18
983/4
**hearings [1]** 930/14
**held [2]** 964/6 972/1
**helpful [1]** 987/4
**her [11]** 899/11 900/12
900/19 901/1 901/4
901/7 937/11 952/25
985/25 986/2 986/5
**here [48]** 892/8 895/14
899/20 901/19 901/21
902/7 902/23 903/23
915/19 915/22 915/25
920/6 920/18 923/23
924/2 927/24 929/17
929/23 930/2 937/4
941/12 941/22 942/23
943/17 944/3 947/11
947/17 948/6 951/10
951/19 953/24 955/1
958/23 961/13 962/1
964/14 966/16 968/6
972/6 972/25 973/25
976/23 977/14 977/19
978/21 983/22 986/8
987/8
**here's [5]** 894/9
894/18 895/11 975/2
978/2
**herman [6]** 890/21
890/24 988/3 988/9
989/3 989/9
**hide [1]** 942/4
**hiding [1]** 952/19
**high [2]** 897/15 949/11
**him [22]** 898/14
900/10 927/7 927/23
929/5 929/6 932/17
933/5 936/9 937/9
937/24 939/24 946/1
946/6 946/8 946/8
948/13 948/14 964/25
979/19 980/5 980/12

1000

**H**

**himself [2]** 926/21 942/16
**hinges [1]** 899/8
**his [44]** 900/9 901/15 902/16 906/15 906/19 908/11 908/19 909/17 909/23 910/2 910/5 927/5 930/17 930/21 932/18 932/21 935/3 937/8 937/15 938/10 940/21 942/21 945/2 945/3 947/25 953/7 954/6 963/19 964/22 969/22 972/17 972/20 973/6 978/20 978/25 979/3 979/6 979/19 979/21 980/8 980/10 980/11 980/14 980/15
**historic [1]** 940/1
**holds [1]** 904/24
**holdup [2]** 978/11 978/15
**home [1]** 982/16
**honest [1]** 969/19
**honestly [4]** 950/10 969/16 972/23 973/5
**Honor [85]** 891/2 891/7 891/12 892/19 893/1 894/16 895/3 895/6 895/22 897/4 905/7 905/13 908/6 908/9 911/10 919/6 920/7 920/14 921/12 922/12 924/21 924/24 925/7 925/16 926/14 928/4 929/1 932/3 933/4 934/12 936/19 945/8 948/4 949/24 950/15 956/17 956/24 957/2 957/3 957/6 957/7 957/12 957/15 957/24 958/2 958/7 958/8 958/11 958/18 959/1 959/4 959/9 959/13 959/17 960/1 961/15 962/6 962/16 963/11 963/12 964/10 965/16 965/21 966/25 967/3 968/4 968/14 968/19 972/1 973/23 974/17 975/19 975/22 976/23 978/13 980/25 981/6 981/9 981/10
981/20 982/12 982/17
983/11 985/5 985/9
**honorable [2]** 890/8 984/24
**hope [2]** 924/15 929/3
**hopeful [1]** 968/3
**hopefully [1]** 942/9
**hours [1]** 976/24
**House [2]** 901/15 907/17
**housekeeping [1]** 905/12
**how [21]** 893/3 893/25 894/9 895/1 911/16 923/8 923/22 932/8 933/6 936/5 943/4 948/22 963/8 976/5 976/6 976/12 978/4 981/11 981/19 981/25 984/11
**however [4]** 948/15 954/12 958/6 979/11
**huh [2]** 950/4 973/2
**human [2]** 898/7 898/8
**husher [3]** 894/25 912/23 961/17
**hypothesize [1]** 915/21

**I**

**I'd [10]** 894/18 894/20 895/20 915/6 939/23 949/19 967/1 979/1 984/18 986/9
**I'll [22]** 895/1 899/12 899/20 908/14 915/8 915/9 919/6 919/25 920/1 921/20 929/1 929/4 930/7 931/15 936/25 963/16 965/7 965/21 969/6 978/8 978/9 982/25
**I'm [43]** 901/19 902/4 902/22 906/6 907/21 910/6 910/17 911/9 917/1 917/4 917/8 927/3 928/14 931/4 934/14 936/15 938/16 943/6 954/2 954/9 955/1 955/7 956/5 956/17 961/6 961/12 964/20 966/16 968/3 968/7 974/20 975/2 975/2 975/3 976/17
981/13 981/22 985/17 986/11 987/14
**I've [10]** 896/3 912/3 912/11 918/2 924/13 945/4 948/22 966/16 979/3 981/25
**idea [16]** 918/15 926/25 933/21 935/8 936/1 945/20 946/1 946/6 946/7 946/17 954/23 965/13 966/13 969/15 969/24 972/19
**identify [5]** 899/15 899/16 901/7 901/9 907/15
**identifying [1]** 973/16
**ignore [2]** 926/19 926/23
**ignored [1]** 926/16
**imagine [3]** 892/6 918/21 950/9
**imbued [1]** 941/8
**immunity [2]** 950/19 950/22
**immunize [1]** 951/2
**impact [1]** 931/9
**implications [2]** 917/11 923/18
**importance [1]** 907/20
**important [14]** 925/2 928/22 929/8 929/20 930/4 930/7 930/8 930/9 936/16 937/3 940/8 943/12 944/21 945/7
**improper [1]** 974/23
**improve [1]** 987/5
**inadmissible [1]** 958/4
**inadvertence [1]** 971/6
**inapplicable [2]** 958/6 960/11
**inappropriate [1]** 966/2
**inaudible [1]** 982/18
**inclined [2]** 910/16 964/16
**include [5]** 926/2 941/21 956/2 956/3 958/15
**included [4]** 892/23 958/15 971/13 971/22
**including [3]** 905/16 958/16 958/16

**inconsistent [1]** 959/15
**incorporate [1]** 965/12
**independently [3]** 937/3 940/8 947/7
**indicate [2]** 907/4 912/4
**indicated [6]** 895/12 900/8 901/13 902/3 918/6 957/15
**indicates [3]** 904/5 939/21 940/10
**indicted [1]** 979/7
**indictment [26]** 903/10 903/23 904/10 904/11 917/14 931/14 933/20 945/14 945/24 945/25 946/1 946/2 946/5 946/9 946/21 947/5 947/9 947/10 947/11 947/15 949/25 950/8 953/19 955/4 957/4 972/17
**indictments [1]** 903/20
**inefficiency [1]** 983/22
**inexplicable [1]** 937/25
**infer [1]** 915/23
**inference [1]** 972/22
**inferences [2]** 897/12 908/10
**inferred [1]** 973/17
**inform [2]** 932/9 979/2
**informal [1]** 924/3
**information [19]** 902/2 923/6 928/10 928/13 928/22 932/16 932/17 933/2 934/2 940/2 944/22 945/1 947/20 947/23 951/13 951/19 953/7 954/20 965/20
**informative [1]** 893/4
**informed [3]** 919/10 922/17 978/20
**initial [3]** 908/23 950/7 955/24
**injured [1]** 940/19
**innocence [2]** 947/8 957/9
**input [2]** 926/5 947/15
**insisted [1]** 931/1
**instance [1]** 892/10
**instead [3]** 931/11 957/17 982/24

**I**

**instinct [1]** 958/15
**institution [1]** 939/6
**institutionally [1]**
939/5
**instruct [8]** 892/1
896/18 911/1 916/9
923/11 923/14 975/13
983/24
**instructed [4]** 911/21
962/10 965/10 983/12
**instructing [1]** 964/17
**instruction [42]**
910/17 910/18 911/8
911/14 912/8 912/13
912/15 912/18 912/20
916/20 916/21 917/2
917/9 942/14 955/22
955/23 956/4 956/5
956/7 956/7 956/12
956/20 956/20 960/20
962/13 962/17 963/10
965/13 968/25 969/2
969/14 971/4 971/9
971/9 971/11 971/18
974/22 974/24 983/6
983/13 983/25 986/12
**instructions [52]**
891/20 891/25 892/2
892/18 903/21 910/19
911/19 920/22 921/2
921/4 921/18 923/1
923/12 923/16 923/25
924/14 924/15 955/1
955/5 955/6 955/19
956/9 956/14 962/7
963/4 963/6 963/13
966/19 968/12 971/21
975/5 975/7 975/10
976/1 976/5 976/18
977/3 977/5 977/20
977/21 977/22 978/3
978/5 978/16 981/12
982/17 982/21 985/18
985/18 986/20 987/3
987/14
**instructs [1]** 969/3
**intend [8]** 893/7
909/24 955/3 961/8
975/13 982/20 982/23
984/12
**intended [2]** 936/21
966/10
**intending [1]** 921/10

**intends [1]** 918/18
**intent [2]** 902/19
909/19
**intention [2]** 938/6
954/3
**intentional [2]** 970/8
971/5
**intentionally [2]**
970/16 981/4
**interchange [1]** 946/3
**interest [3]** 918/1
918/7 940/25
**interfere [1]** 916/23
**interplay [1]** 899/18
**intransigence [1]**
937/25
**introduce [1]** 891/5
**introduced [1]** 897/12
**intuitively [1]** 972/3
**investigate [2]** 931/7
941/9
**investigation [1]**
941/20
**investigator [1]**
942/19
**invitation [1]** 906/25
**invocation [1]** 943/18
**invoke [1]** 943/25
**invoked [3]** 927/9
980/3 980/5
**invokes [4]** 939/15
942/1 942/3 950/19
**involve [1]** 908/1
**involved [2]** 901/4
952/8
**irrelevant [7]** 908/25
909/13 951/25 952/18
952/22 970/13 970/21
**is [285]**
**isn't [9]** 904/19 912/16
928/16 933/23 939/3
953/22 958/15 970/11
971/12
**issuance [1]** 951/20
**issue [33]** 893/10
893/13 894/24 895/21
895/22 898/2 899/8
899/17 899/18 912/22
919/15 922/13 925/2
931/22 932/23 935/11
935/18 935/20 936/5
937/22 939/14 940/11
943/18 945/10 945/12
948/10 951/7 952/6

**intends [1]** 918/18
964/7 964/12 965/10
977/19 985/24
**issues [19]** 896/23
911/4 916/20 916/22
918/7 925/22 925/25
926/2 926/3 929/14
930/3 930/7 935/25
941/21 943/16 944/14
961/11 963/6 969/2
**it [193]**
**it's [63]** 893/13 894/6
897/1 897/16 897/18
898/2 902/4 905/2
905/2 906/25 906/25
907/1 908/17 908/25
911/19 917/21 922/7
928/17 932/24 933/22
934/25 936/1 936/15
936/17 937/2 937/5
939/13 939/16 939/16
939/17 941/2 943/12
944/6 944/25 945/7
946/7 946/7 946/10
949/6 952/16 953/16
954/14 964/2 964/4
964/6 964/7 965/6
965/18 967/12 971/21
972/18 974/23 976/14
978/9 981/11 981/23
981/24 982/3 983/23
984/8 986/1 986/1
986/11
**items [1]** 934/19
**its [14]** 892/18 897/6
905/1 909/14 915/20
918/6 919/25 925/19
926/10 940/1 950/2
953/2 980/24 985/13
**itself [1]** 897/3

**J**

**January [9]** 907/23
931/7 935/4 935/4
935/5 939/1 940/18
940/24 941/21
**January 6th [5]** 931/7
939/1 940/18 940/24
941/21
**job [2]** 949/13 949/14
**Jonathan [1]** 944/4
**Jordan [1]** 941/19
**judge [21]** 890/8
894/11 896/15 910/22
911/16 916/21 928/14

928/15 928/15 935/8
937/16 937/17 942/12
945/4 946/7 949/4
949/16 955/12 978/19
978/24 984/5
**judges [1]** 949/17
**judgment [29]** 894/19
895/5 895/14 897/5
897/24 898/25 899/21
903/6 905/8 906/12
910/11 910/13 915/7
915/18 915/24 916/3
916/4 916/6 916/25
917/5 917/16 921/24
921/25 922/2 922/7
922/22 949/3 953/15
984/13
**judicial [1]** 956/21
**July [10]** 890/5 893/11
907/3 907/10 907/14
935/5 936/11 945/1
988/9 989/9
**jump [1]** 893/2
**juror [13]** 898/17
902/13 903/16 904/2
906/18 908/4 908/12
908/16 950/2 961/10
961/12 962/8 985/24
**jurors [10]** 910/12
960/24 961/6 961/22
962/13 962/14 985/24
986/8 986/14 987/11
**jury [111]**
**jury's [4]** 920/17
922/20 961/3 984/10
**just [105]**
**Justice [1]** 943/21
**justiciable [1]** 939/20
**justified [1]** 944/9

**K**

**Kavanaugh [1]** 943/21
**keep [4]** 891/16 934/13
935/5 984/16
**kept [2]** 941/18 942/22
**Kerik [1]** 948/19
**key [6]** 897/11 897/22
898/3 900/2 905/9
906/11
**kind [8]** 925/12 929/2
929/2 930/19 930/20
949/16 950/25 971/15
**kinds [1]** 939/9
**knew [2]** 934/20

# K

**knew...** [1] 937/20
**know** [59] 891/16
891/22 893/14 894/4
894/13 896/7 899/18
900/13 904/24 910/13
912/10 912/12 917/21
918/11 918/18 919/11
919/19 921/8 924/18
925/13 927/3 928/3
936/1 938/3 938/15
940/11 941/17 942/16
942/18 945/10 945/18
946/17 947/2 947/13
949/10 952/20 953/15
954/23 964/13 966/6
966/17 966/22 968/4
970/15 972/3 974/6
977/14 978/11 980/23
982/5 982/6 982/6
982/23 983/8 983/16
984/4 984/11 985/23
986/10
**knowing** [1] 939/25
**knowingly** [1] 981/3
**knowledge** [6] 946/4
946/9 946/11 946/12
952/10 952/25
**known** [1] 932/21
**knows** [3] 893/7 925/8
952/24

# L

**lack** [1] 954/5
**Ladies** [1] 985/11
**language** [8] 901/5
930/16 930/24 958/14
965/4 968/17 970/14
971/18
**last** [10] 895/16 905/7
911/14 945/4 958/14
965/8 965/9 966/10
980/22 986/9
**late** [3] 906/8 977/14
977/24
**later** [6] 908/2 909/23
917/5 917/17 917/18
965/13
**law** [26] 890/15 896/19
897/10 911/1 926/17
927/1 927/19 952/5
964/3 964/8 964/17
964/23 965/5 968/23
969/4 969/20 969/25

970/2 972/4 973/6 973/23
972/2 972/10 974/7
974/14 979/18 980/6
**lawsuit** [4] 940/16
940/20 943/12 943/15
**lawyer** [11] 900/19
900/20 906/15 908/18
908/19 927/5 973/7
979/24 980/5 980/8
980/10
**lawyer's** [1] 979/19
**lawyers** [4] 896/23
900/23 911/4 986/25
**lead** [1] 955/21
**leader** [2] 929/25
937/14
**leads** [1] 920/2
**learned** [2] 911/25
918/2
**least** [15] 892/4 895/15
905/15 915/25 921/10
923/3 923/25 924/14
941/17 945/21 947/14
948/18 970/9 972/10
977/8
**leave** [2] 978/21
981/14
**leaves** [2] 906/17
908/4
**leaving** [1] 984/6
**led** [1] 928/13
**left** [3] 910/5 972/8
976/24
**legal** [11] 896/17
896/23 902/25 903/3
910/24 911/4 916/20
916/22 963/18 967/25
987/3
**legitimate** [1] 973/21
**length** [1] 980/24
**Lesley** [6] 905/18
915/17 984/3 984/18
985/1 987/10
**let** [14] 918/20 928/4
948/24 950/11 966/22
970/4 975/25 978/10
978/11 981/2 981/17
982/22 983/16 984/3
**let's** [7] 894/22 922/18
922/19 928/1 949/21
951/9 973/22
**letter** [34] 901/2
901/10 901/11 901/13
905/23 905/24 906/8

906/8 907/2 907/3
907/5 907/8 909/23
910/6 930/17 932/4
932/6 932/6 932/11
932/11 932/12 932/12
932/13 935/4 935/5
935/5 935/12 935/13
936/11 942/15 944/5
947/18 947/20 947/25
**letters** [25] 900/21
901/8 901/16 901/23
908/24 909/4 909/14
926/22 926/24 927/1
929/6 932/17 932/17
933/3 934/3 935/8
935/15 938/4 942/14
952/12 952/23 953/8
973/6 973/19 973/20
**letting** [1] 924/18
**levels** [1] 982/7
**Licavoli** [1] 898/23
**Lieutenant** [1] 955/14
**light** [7] 897/17 902/1
902/1 916/24 950/12
953/21 978/9
**like** [44] 892/9 892/23
894/17 894/18 894/20
895/20 896/22 901/16
911/3 911/7 912/2
915/6 917/15 920/20
922/1 922/24 922/25
922/25 924/5 924/25
926/2 929/20 929/21
934/22 942/18 946/24
949/19 964/1 966/7
968/9 970/17 973/17
975/16 977/15 979/1
981/12 981/16 983/22
984/1 984/18 986/3
986/5 986/9 987/16
**likely** [1] 946/11
**likes** [1] 918/5
**likewise** [1] 958/5
**lily** [1] 972/5
**limited** [5] 897/23
900/22 906/13 907/20
907/21
**line** [2] 951/16 969/22
**lining** [1] 930/13
**list** [1] 929/1
**listen** [3] 917/20 918/1
918/7
**listing** [1] 974/21
**little** [2] 961/7 964/11

**logically** [1] 974/9
**logistically** [5] 891/15
893/6 918/17 919/2
923/23
**long** [9] 944/6 954/17
971/9 976/5 976/6
976/12 981/11 981/19
981/25
**longer** [1] 961/22
**look** [3] 950/10 967/1
978/16
**looking** [2] 923/3
927/23
**looks** [1] 911/7
**lorraine** [6] 890/21
890/24 988/3 988/9
989/3 989/9
**lost** [2] 920/13 934/15
**lot** [8] 918/3 923/25
941/11 945/5 950/20
955/24 986/10 986/25
**loud** [1] 973/8
**lunch** [4] 921/1 921/4
921/8 924/10

# M

**made** [16] 894/1
908/23 909/11 909/14
909/23 909/24 915/19
917/25 928/8 928/21
934/5 941/23 941/25
950/12 970/1 971/19
**make** [31] 893/2
893/21 893/21 894/13
918/23 919/8 919/12
919/12 919/14 919/22
919/22 920/10 920/16
922/12 922/21 926/22
936/8 937/8 942/25
946/10 948/21 950/22
955/11 963/9 964/2
964/14 965/21 965/24
967/20 971/14 972/21
**maker** [2] 929/24
937/9
**makes** [2] 918/14
918/16
**making** [2] 916/19
941/6
**malleable** [3] 933/21
941/5 945/22
**manner** [4] 896/17
910/24 922/21 928/18
**many** [4] 899/3 903/20

**M**

many... **[2]** 925/19
982/7
mar **[1]** 940/14
Marine **[1]** 894/17
marital **[1]** 935/13
material **[3]** 900/2
925/19 948/1
materially **[2]** 951/6
951/12
materially-exculpatory
**[2]** 951/6 951/12
materials **[1]** 901/18
matter **[13]** 929/17
941/3 944/16 947/11
964/3 964/8 964/15
964/17 965/5 982/6
986/16 988/5 989/5
matters **[1]** 986/16
MATTHEW **[1]** 890/17
mature **[1]** 904/25
may **[21]** 892/17
892/21 896/21 911/2
912/21 912/21 919/1
920/14 921/5 921/5
927/13 932/18 932/18
937/22 938/15 944/11
945/11 946/12 966/15
974/4 984/15
maybe **[10]** 894/2
905/16 933/13 941/5
944/23 944/24 945/1
965/4 977/9 981/17
MC **[1]** 890/19
McCarthy **[1]** 941/18
me **[35]** 893/22 894/12
911/23 912/9 915/24
917/7 918/3 918/20
920/3 924/5 928/4
928/14 935/9 935/10
943/7 946/20 948/24
950/11 963/4 968/21
970/4 973/7 975/16
975/25 976/2 976/2
978/11 979/12 981/2
981/8 981/11 981/22
983/21 986/10 986/10
mean **[25]** 893/1 896/4
917/20 925/4 930/16
930/23 930/24 930/25
931/3 931/9 931/13
934/5 934/10 934/11
934/23 934/25 935/3
936/15 947/17 947/24

966/12 971/8 972/12
977/12 977/13
meaning **[2]** 935/15
971/4
means **[3]** 892/16
903/22 970/8
meant **[3]** 947/22
949/9 949/11
media **[2]** 941/17
983/6
meet **[2]** 908/11
923/16
meeting **[3]** 902/25
905/1 983/6
member **[10]** 929/16
929/19 929/20 936/18
937/6 938/14 939/18
951/11 952/19 953/12
members **[18]** 925/5
926/6 926/21 928/6
928/7 928/20 928/24
929/18 929/18 938/21
938/22 938/22 938/23
941/2 941/17 941/22
951/18 952/9
mens **[6]** 932/9 932/15
932/20 933/6 933/13
933/15
mention **[4]** 899/20
912/5 916/19 961/13
mentioned **[5]** 894/19
915/20 962/18 976/14
979/20
meritless **[1]** 954/9
merits **[2]** 895/21
916/11
message **[1]** 902/11
met **[1]** 950/7
mid **[1]** 932/16
mid-October **[1]**
932/16
might **[11]** 896/4
911/25 915/21 915/22
922/5 930/20 931/11
946/15 975/23 983/5
983/8
mind **[7]** 897/13
897/20 929/3 930/20
953/7 962/22 977/20
mindful **[2]** 984/8
984/9
minimum **[1]** 924/9
minute **[2]** 925/1 925/1
minutes **[6]** 915/9

915/13 924/11 976/3
976/9 976/10
misconduct **[4]** 937/11
938/8 950/25 955/16
misinformed **[1]**
963/21
mistake **[10]** 909/22
963/20 969/20 970/2
971/6 971/15 971/15
971/19 971/23 972/2
misunderstanding **[1]**
964/23
modification **[1]**
962/18
modify **[1]** 961/7
MOLLY **[2]** 890/11
891/8
moment **[1]** 899/13
Montgomery **[1]**
890/16
more **[11]** 893/4
916/17 916/18 916/19
941/11 944/21 949/6
950/10 976/9 981/11
981/13
morning **[21]** 891/2
891/7 891/11 891/12
891/20 893/8 895/14
895/19 908/9 976/18
976/20 977/11 978/4
982/25 983/17 985/17
985/17 986/6 986/7
986/8 987/9
most **[7]** 905/16
910/12 916/6 920/17
967/12 980/22 985/14
motion **[72]** 893/8
893/15 893/16 894/14
894/19 894/21 895/2
895/5 895/9 895/13
895/21 896/3 897/3
897/5 897/24 898/19
898/25 899/19 899/21
901/17 901/21 903/6
905/8 906/11 910/8
910/10 910/13 911/24
911/25 912/1 912/3
915/7 915/12 915/12
915/18 915/24 916/4
916/10 916/25 917/4
917/8 917/11 917/12
917/14 917/16 917/21
917/21 917/25 917/25
918/7 921/21 921/25

921/25 922/7 923/7
940/10 940/21 949/1
949/2 949/25 953/14
954/12 955/3 975/3
975/4 975/10 977/6
978/6 982/19 982/24
984/13 987/17
motions **[2]** 896/22
911/3
Motive **[1]** 959/24
motives **[1]** 951/18
move **[4]** 910/15
942/11 944/18 944/23
moved **[5]** 901/15
933/10 941/6 942/9
943/14
moving **[1]** 903/7
Mr **[9]** 895/4 932/10
932/20 935/3 935/4
940/23 943/3 973/5
980/1
Mr. **[147]**
Mr. Bannon **[52]** 896/6
897/8 897/20 898/18
898/21 899/7 900/20
900/24 902/14 902/19
903/3 903/11 903/17
904/1 904/5 906/15
906/18 907/12 922/16
926/23 926/25 927/1
927/5 928/11 930/18
931/10 931/17 932/7
932/21 933/1 934/7
936/5 936/7 937/21
938/9 938/24 940/3
942/11 943/8 954/6
972/23 978/18 978/25
979/4 979/5 979/21
980/1 980/2 980/7
980/13 980/17 981/2
Mr. Bannon's **[19]**
921/22 922/17 923/6
926/15 932/2 932/3
933/7 933/12 933/18
934/1 935/6 937/11
937/15 938/4 955/20
973/18 978/19 979/24
980/4
Mr. Corcoran **[18]**
908/7 909/11 910/16
910/18 947/10 958/17
958/24 963/25 965/8
966/18 966/19 975/17
976/11 979/12 981/19

**M**

**Mr. Corcoran... [3]**
983/9 985/7 985/10
**Mr. Corcoran's [2]**
908/21 962/11
**Mr. Costello [11]**
902/3 926/22 932/8
934/7 944/5 944/13
979/24 980/4 980/11
980/16 980/18
**Mr. Costello's [5]**
907/6 909/24 926/21
979/20 979/22
**Mr. Hart [2]** 897/24
897/25
**Mr. McCarthy [1]**
941/18
**Mr. Schiff [1]** 940/23
**Mr. Schoen [25]**
899/18 901/21 915/11
917/10 923/17 924/11
924/23 949/18 951/8
951/16 953/3 953/18
954/17 955/9 963/3
965/7 965/17 966/20
970/11 970/21 971/25
975/4 981/5 981/8
985/7
**Mr. Schoen's [1]**
971/1
**Mr. Thompson [7]**
932/8 932/21 934/8
934/25 950/14 950/14
954/3
**Mr. Thompson's [3]**
901/13 932/9 933/2
**Ms [3]** 957/11 976/6
981/9
**Ms. [52]** 891/14 897/23
898/3 899/9 900/1
900/4 900/11 900/18
903/17 905/18 906/17
908/3 908/8 909/1
915/17 920/15 926/11
926/15 928/23 936/13
936/20 937/10 938/6
938/19 938/19 939/10
941/8 942/25 943/2
943/3 945/9 945/10
946/16 946/18 946/20
948/12 949/21 952/3
952/8 952/24 955/10
959/2 959/16 962/5
963/8 963/25 968/13

**Ms. Amerling [32]**
897/23 898/3 900/1
900/4 900/11 900/18
903/17 906/17 909/1
926/11 926/15 928/23
936/13 936/20 937/10
938/6 938/19 938/19
939/10 941/8 942/25
943/2 943/3 945/9
945/10 946/16 946/18
946/20 952/3 952/8
952/24 963/25
**Ms. Amerling's [3]**
899/9 908/3 948/12
**Ms. Lesley [6]** 905/18
915/17 984/3 984/18
985/1 987/10
**Ms. Riane [1]** 891/14
**Ms. Vaughn [9]** 908/8
920/15 949/21 955/10
959/2 959/16 962/5
963/8 968/13
**Ms. Vaughn's [1]**
977/15
**much [9]** 893/3 893/4
897/25 918/10 949/10
966/4 979/6 981/7
986/23
**multi [1]** 929/20
**multi-member [1]**
929/20
**Multiple [1]** 960/2
**must [6]** 907/16 942/3
946/14 946/15 949/23
963/22
**my [39]** 891/25 892/2
892/4 895/11 896/14
896/16 896/23 904/17
910/21 910/23 911/4
915/25 915/25 916/21
917/2 917/9 917/11
920/4 920/13 922/1
924/8 924/25 926/8
934/15 949/2 949/4
949/13 949/14 955/15
958/15 964/8 966/22
974/4 975/7 977/20
982/22 984/1 987/3
987/17

**N**

**named [1]** 948/20

**narrative [1]** 979/22
**narrow [1]** 941/12
**narrowed [1]** 938/13
**Nature [1]** 957/25
**Navarro [1]** 948/20
**near [1]** 907/19
**necessarily [1]** 986/19
**necessary [2]** 963/18
964/4
**need [30]** 891/24
892/3 892/7 892/11
893/13 893/14 893/19
894/24 895/20 895/25
906/8 918/10 918/11
919/7 919/14 922/12
924/6 933/5 936/24
937/6 938/11 942/8
942/15 942/23 946/8
963/2 973/7 974/18
983/12 983/24
**needed [3]** 893/22
912/19 962/8
**needs [4]** 892/8
897/16 925/19 983/14
**negotiation [1]** 905/6
**negotiations [2]**
900/23 969/22
**neither [1]** 929/12
**never [2]** 938/7 943/8
**new [6]** 892/15 893/3
900/6 906/25 906/25
907/1
**next [8]** 896/21 918/19
956/25 957/4 957/8
957/13 958/22 982/11
**nice [1]** 949/18
**NICHOLS [1]** 890/8
**night [2]** 895/16 910/6
**nine [1]** 929/17
**Nixon [1]** 943/25
**no [62]** 890/3 892/17
893/17 897/18 897/19
902/13 902/17 903/1
903/15 904/2 904/4
905/10 906/17 906/24
908/4 908/11 912/18
916/19 920/8 926/18
929/18 933/1 933/4
938/6 938/8 942/25
944/16 945/6 946/6
949/5 951/10 951/18
951/21 952/5 952/13
952/13 953/6 953/11
953/22 954/3 954/5

954/23 955/16 958/12
958/18 958/19 959/3
961/22 962/16 962/23
963/17 963/20 969/11
969/13 969/16 971/17
973/9 973/11 976/22
977/10 982/4 987/2
**Nobles [1]** 942/19
**Nodded [2]** 983/18
983/20
**noncompliance [1]**
930/19
**noncumulative [3]**
925/22 951/6 951/12
**nonspeculative [2]**
951/5 951/11
**normal [1]** 939/3
**not [184]**
**note [3]** 905/12 957/17
960/24
**noted [1]** 935/11
**nothing [7]** 927/18
945/25 951/14 953/12
953/17 968/3 969/13
**notice [8]** 906/14
907/6 935/16 935/17
938/2 938/4 956/21
980/2
**notwithstanding [1]**
953/23
**now [38]** 894/7 895/1
902/15 902/18 907/4
908/2 915/4 915/16
917/15 917/17 918/22
921/13 924/9 925/24
926/24 928/19 929/1
930/4 931/23 936/13
936/25 937/10 942/13
943/2 943/11 943/20
949/19 961/12 972/8
972/23 972/24 981/13
984/25 985/5 985/24
986/7 987/12 987/19
**number [4]** 893/16
900/2 905/17 956/3
**NW [2]** 890/12 890/23

**O**

**O'Neill [1]** 907/17
**oath [2]** 979/8 979/17
**object [6]** 965/1
968/15 968/16 968/18
970/14 972/9
**objection [15]** 902/4

**O**

**objection... [14]** 902/6
912/17 958/16 958/18
958/19 959/3 962/16
962/23 965/22 966/4
974/18 977/10 982/5
984/5
**objectionable [2]**
967/23 968/4
**objections [5]** 896/22
911/3 947/25 954/6
962/15
**obligation [2]** 903/1
903/3
**obstacle [1]** 902/10
**obviate [1]** 942/15
**obviously [9]** 897/10
917/5 921/22 934/20
958/23 970/11 973/20
973/20 986/18
**occur [3]** 907/18
921/15 921/15
**occurred [1]** 907/7
**occurs [1]** 986/25
**October [39]** 898/9
898/9 902/20 902/20
903/2 903/3 903/9
903/14 903/19 903/25
904/4 904/5 904/11
904/20 904/21 906/19
909/17 909/18 909/22
910/3 910/4 930/17
930/19 930/19 930/24
931/16 931/18 931/19
931/20 931/20 932/4
932/16 933/23 944/3
944/7 944/12 945/21
952/21 952/21
**October 14th [4]** 898/9
902/20 910/3 931/16
**October 18th [10]**
902/20 903/19 903/25
904/5 904/11 904/21
930/19 930/19 931/19
931/20
**October 7 [1]** 903/9
**October 7th [7]** 898/9
904/4 904/20 909/17
909/22 931/20 945/21
**OFC [1]** 890/11
**off [4]** 919/4 936/2
941/18 985/21
**offense [8]** 903/11
908/25 951/15 951/18

951/21 962/25 963/5
970/5
**offered [7]** 935/16
938/5 938/25 939/2
953/4 953/11 967/14
**office [2]** 907/17
952/20
**officer's [2]** 958/22
959/5
**official [4]** 890/22
901/25 988/3 989/3
**often [2]** 986/3 986/24
**oh [3]** 947/22 956/17
967/15
**okay [41]** 893/5 895/7
897/3 904/8 904/13
915/13 919/24 920/9
921/13 923/21 924/16
924/18 929/1 934/13
947/1 955/19 955/20
956/11 956/19 958/9
959/2 959/5 959/19
962/17 962/21 963/1
965/7 965/8 965/15
968/10 971/24 973/22
974/15 974/19 975/20
981/7 982/14 984/19
984/20 987/9 987/18
**OLC [2]** 927/15 980/10
**once [5]** 924/2 924/13
967/7 970/5 984/19
**one [56]** 893/10 894/5
898/2 900/1 901/9
901/13 902/8 905/9
912/17 916/1 916/12
919/1 921/17 925/1
930/5 930/9 931/15
931/16 931/20 935/22
935/24 937/23 942/4
943/16 944/13 944/14
944/18 944/24 946/14
946/15 954/12 955/11
956/25 957/4 957/8
957/13 957/16 957/19
958/22 961/10 961/18
962/1 962/3 962/20
967/3 968/22 968/24
969/3 970/9 970/15
973/19 975/22 981/2
983/1 985/7 986/19
**one-way [2]** 946/14
946/15
**one-week [3]** 930/5
944/13 944/18

**one-witness [1]** 898/2
**ones [5]** 892/15 893/3
905/16 955/24 981/23
**ongoing [3]** 905/6
930/12 969/23
**only [8]** 906/1 934/2
944/6 952/23 968/5
968/8 973/16 977/24
**open [7]** 899/10
902/15 905/2 905/3
923/23 928/11 977/24
**opined [2]** 943/20
980/24
**opinion [1]** 943/23
**opinions [3]** 927/15
942/24 980/10
**opposition [1]** 940/9
**option [3]** 902/8 902/9
939/22
**options [5]** 902/8
927/25 938/18 938/24
939/2
**oral [1]** 934/11
**order [3]** 898/11
916/10 985/4
**orderly [2]** 896/17
910/24
**orders [2]** 928/14
980/19
**oriented [1]** 906/23
**original [2]** 911/11
956/10
**originally [1]** 917/20
**other [42]** 893/10
894/5 894/11 895/8
897/1 900/2 903/7
912/7 916/13 918/6
919/8 929/5 930/3
930/10 931/10 933/3
935/17 935/18 938/19
939/10 939/17 941/8
941/21 948/1 948/4
948/16 952/13 952/13
952/14 953/8 953/12
953/19 954/4 955/15
961/18 962/3 970/21
974/6 979/19 983/1
984/9 986/14
**otherwise [7]** 916/17
916/23 953/24 954/5
955/14 956/19 980/18
**our [33]** 897/5 897/24
898/19 899/21 902/25
903/6 904/25 905/4

905/5 905/8 906/5
906/11 911/18 918/16
920/25 921/2 925/8
926/4 929/11 929/14
941/4 949/17 950/7
964/11 964/14 965/22
966/4 966/11 967/23
971/17 974/9 977/15
978/14
**out [23]** 902/7 909/4
909/5 920/21 925/25
926/4 927/25 938/5
938/12 942/22 943/10
943/23 948/8 951/10
952/14 952/20 967/7
972/8 972/17 973/7
975/11 977/5 980/23
**outside [2]** 986/14
987/1
**outstanding [1]**
893/11
**over [7]** 939/11 939/11
942/10 943/18 962/9
979/1 979/3
**overall [1]** 926/9
**overnight [2]** 977/25
987/16
**override [1]** 939/18
**own [2]** 892/18 979/6

**P**

**p.m [4]** 924/20 984/23
984/23 987/21
**Page [1]** 893/12
**pages [1]** 976/4
**paired [1]** 976/3
**paper [1]** 900/22
**papers [2]** 898/6
940/10
**paragraph [13]** 896/12
911/14 931/4 958/14
963/17 965/8 965/9
970/6 970/10 970/10
970/18 970/19 971/13
**paragraphs [2]** 944/6
979/2
**paralegal [1]** 891/8
**paraphrasing [2]**
928/15 943/6
**parse [1]** 968/2
**parsing [1]** 943/3
**part [16]** 894/1 896/21
907/2 911/7 911/9
911/10 922/20 926/4

**P**

**part... [8]** 932/23
933/16 943/15 943/22
951/1 966/10 969/23
980/22
**particular [1]** 984/11
**particularly [8]** 899/24
928/7 929/5 929/20
930/6 943/12 971/16
983/7
**parties [27]** 892/5
892/10 892/21 892/24
894/25 895/16 911/23
912/5 912/22 916/15
916/15 920/20 923/1
923/16 924/2 955/1
956/7 956/13 961/16
975/9 975/11 977/6
982/18 982/22 982/23
985/20 987/15
**parties' [6]** 915/8
916/24 924/6 974/15
975/6 976/6
**partisan [2]** 940/5
940/10
**party [2]** 895/24
943/11
**passed [1]** 896/5
**passing [1]** 895/23
**past [5]** 939/7 940/2
969/17 973/18 976/5
**patience [2]** 985/12
986/24
**pause [1]** 919/5
**pawn [1]** 927/17
**pend [1]** 978/10
**pending [1]** 982/19
**people [2]** 930/13
938/24
**percent [1]** 948/22
**perhaps [2]** 898/16
940/24
**period [1]** 930/6
**permissible [1]** 938/13
**permit [2]** 937/22
940/12
**permitted [5]** 916/4
927/19 931/25 938/14
980/6
**person [9]** 897/7 900/9
907/17 929/13 929/13
934/22 937/6 951/2
962/20
**personal [5]** 946/4

946/9 946/12 951/17
952/25
**personally [1]** 940/19
**perspective [7]** 929/10
929/10 937/2 937/8
941/19 970/20 978/14
**perspectives [2]**
941/10 941/16
**persuaded [1]** 930/21
**pertain [1]** 897/25
**pertinence [6]** 898/19
898/20 929/21 936/24
937/2 937/3
**pertinency [3]** 936/23
936/23 936/25
**pertinent [4]** 907/2
929/9 937/5 977/21
**piece [1]** 905/7
**pieces [1]** 905/9
**pinpoint [1]** 901/5
**place [1]** 939/20
**plan [10]** 891/25
915/25 918/25 922/1
924/8 951/3 957/18
975/8 987/13 987/17
**planning [2]** 924/1
975/24
**plans [1]** 924/18
**plausible [1]** 972/12
**play [2]** 899/20 948/11
**please [5]** 891/5
895/10 985/1 985/4
986/3
**plenty [1]** 978/6
**plugged [1]** 972/25
**podium [2]** 965/18
968/20
**point [19]** 897/11
899/6 901/12 904/17
904/19 904/20 906/11
909/21 923/13 926/22
953/13 955/11 967/3
967/19 973/13 974/23
974/24 978/11 980/4
**points [3]** 898/3 945/4
970/5
**police [2]** 958/22
959/5
**political [1]** 940/6
**portion [1]** 948/11
**position [28]** 901/25
905/4 905/5 906/19
923/11 929/11 936/1
936/16 937/15 938/5

948/13 950/13 952/6
952/11 952/11 952/22
952/25 953/10 953/16
963/9 966/22 975/5
977/15 977/16 978/20
**positions [7]** 892/13
899/3 924/2 924/6
953/2 974/16 975/6
**positive [1]** 931/12
**possess [1]** 944/11
**possibility [5]** 895/15
896/8 906/17 954/9
982/10
**possible [1]** 925/20
**possibly [1]** 948/11
**posted [1]** 910/3
**posturing [2]** 944/24
944/25
**potential [3]** 894/22
895/17 916/6
**potentially [1]** 964/20
**powers [1]** 939/14
**practical [1]** 982/6
**practice [2]** 898/15
948/16
**precedence [1]** 943/18
**precedent [2]** 925/14
950/20
**precise [1]** 903/24
**precluded [1]** 894/10
**prefer [1]** 917/17
**prejudice [12]** 894/22
895/17 910/9 910/14
912/2 912/15 915/8
916/6 916/18 916/18
916/19 922/1
**prejudicial [1]** 895/24
**premature [1]** 954/21
**prepared [5]** 918/21
918/23 919/22 921/7
953/23
**presence [3]** 895/13
919/13 987/1
**present [6]** 895/4
920/24 925/9 932/18
946/1 954/3
**presentation [1]** 938/5
**presented [17]** 897/6
897/18 897/20 897/23
900/15 901/20 901/22
902/2 902/5 902/7
903/17 908/18 908/19
909/10 917/6 950/1

**presently [1]** 953/23
**preserve [3]** 926/2
940/13 948/6
**President [18]** 902/8
907/7 927/18 928/1
939/15 939/15 940/17
940/17 942/12 943/17
943/19 943/24 944/4
944/7 944/15 944/17
951/25 980/3
**President Biden [2]**
944/4 944/15
**President Biden's [1]**
944/7
**presume [1]** 932/12
**presumption [1]** 957/9
**presumptive [1]**
939/23
**presumptively [2]**
939/16 939/16
**pretty [2]** 897/10
915/19
**prevent [1]** 950/19
**previously [1]** 972/1
**principally [1]** 925/20
**principle [2]** 974/2
974/13
**principles [3]** 950/16
974/3 974/7
**print [1]** 975/16
**printed [3]** 966/24
967/2 967/7
**prior [2]** 959/15 959/20
**privilege [43]** 902/6
902/9 902/10 927/9
927/13 927/25 928/2
928/12 928/16 935/13
935/24 937/16 939/12
939/16 939/17 942/2
942/3 942/3 942/6
942/13 943/18 943/25
944/8 944/16 963/24
964/1 964/3 964/8
964/18 964/24 964/25
965/3 965/23 966/3
967/21 967/24 969/20
970/2 971/20 973/19
980/3 980/5 980/15
**probably [4]** 910/12
973/8 974/8 976/2
**problem [1]** 977/4
**problems [1]** 968/17
**procedural [2]** 917/13

**P**

**procedural... [1]** 948/25
**procedurally [2]** 949/21 967/4
**proceed [1]** 985/15
**proceeding [1]** 939/7
**proceedings [2]** 988/5 989/5
**process [7]** 928/8 928/9 928/11 928/20 941/6 969/23 973/12
**produce [3]** 898/5 942/21 943/9
**produced [3]** 907/15 938/7 945/16
**producing [1]** 907/12
**product [1]** 911/11
**production [6]** 903/8 903/18 907/16 908/1 945/13 945/14
**proffer [17]** 893/22 894/13 918/22 919/8 919/12 919/14 919/22 920/2 920/10 921/20 922/8 922/13 923/5 924/11 945/7 946/10 975/4
**proffer/argument [1]** 921/20
**proffered [1]** 953/18
**progression [1]** 934/24
**promise [1]** 982/9
**proof [2]** 957/8 962/22
**proper [2]** 893/20 896/10
**proposal [4]** 920/16 920/25 956/10 966/11
**proposals [3]** 920/21 956/15 963/12
**propose [3]** 925/24 963/3 965/2
**proposed [12]** 891/9 892/18 910/18 925/11 956/6 963/1 963/5 963/6 966/20 968/11 970/9 981/24
**proposition [2]** 972/9 973/25
**prosecution [1]** 950/18
**prosecutors [1]** 946/19

**prove [2]** 900/23 931/17
**provide [10]** 898/5 905/17 907/13 909/17 909/21 910/1 921/2 925/22 956/1 969/14
**provided [14]** 892/22 899/25 900/2 900/3 900/5 903/13 906/7 906/12 906/14 908/15 909/8 909/20 910/7 910/19
**providing [1]** 956/8
**prudent [2]** 978/22 983/5
**public [8]** 915/4 934/5 940/7 940/8 941/25 961/13 979/9 980/15
**publicity [1]** 960/20
**publicly [1]** 979/8
**pure [2]** 945/9 952/16
**pure-dates [1]** 945/9
**purely [1]** 940/5
**purpose [3]** 900/22 907/21 938/3
**purposes [2]** 892/7 975/24
**pursue [3]** 928/9 939/4 940/2
**pursued [2]** 939/4 939/6
**put [13]** 894/9 894/9 899/16 916/17 919/6 921/10 921/21 941/4 950/6 950/6 970/24 972/20 982/11
**puts [1]** 969/5
**putting [6]** 894/10 920/5 922/9 949/6 970/12 970/22

**Q**

**quarter [1]** 968/9
**quash [7]** 899/19 901/15 901/17 915/12 917/12 923/17 940/10
**quashing [1]** 893/16
**question [46]** 892/21 894/7 894/21 894/21 895/11 910/9 912/7 916/16 917/13 918/20 920/4 923/9 932/19 932/24 935/16 935/20 936/3 936/6 938/20

939/10 939/20 939/24 941/10 943/4 943/13 943/13 944/2 947/13 948/24 948/25 949/23 949/24 950/7 950/11 950/17 951/3 952/1 952/15 954/16 954/18 954/21 958/13 970/4 975/23 975/25 981/2
**questioning [2]** 905/5 951/23
**questions [5]** 896/17 910/25 924/14 938/19 951/4
**Quiana [1]** 891/9
**quick [1]** 975/22
**quickly [4]** 955/25 977/2 978/4 978/5
**quite [3]** 929/23 933/19 940/11

**R**

**raise [4]** 894/24 967/13 974/18 974/20
**raised [6]** 893/11 893/18 899/19 935/18 954/7 976/14
**raising [2]** 916/16 969/25
**range [1]** 976/13
**Raskin [1]** 940/23
**Rather [1]** 937/25
**rea [6]** 932/9 932/15 932/20 933/6 933/13 933/15
**reach [1]** 951/8
**read [6]** 910/20 973/7 979/1 986/11 986/15 986/15
**readily [1]** 928/11
**reading [1]** 931/4
**ready [4]** 894/13 894/15 977/16 984/20
**real [4]** 918/1 918/6 920/4 977/19
**really [16]** 893/2 897/25 898/2 898/3 898/20 904/19 917/14 917/19 920/4 938/25 941/15 950/20 951/17 967/19 981/23 987/2
**reason [21]** 909/13 926/5 926/18 932/24 933/9 937/9 938/7

938/8 940/7 941/13 942/10 943/14 946/7 946/8 949/5 951/5 967/13 977/3 978/7 983/25 986/4
**reasonable [24]** 897/7 897/8 897/13 897/14 897/20 898/17 902/13 903/16 903/25 904/2 906/18 908/4 908/5 908/12 908/16 933/19 935/17 935/20 942/5 950/2 951/22 954/19 957/13 969/19
**reasonableness [1]** 935/25
**reasonably [5]** 969/16 972/24 973/5 973/17 980/11
**reasoning [1]** 980/24
**reasons [10]** 930/3 930/18 930/20 930/20 935/22 937/25 943/14 951/14 979/3 980/19
**rebut [2]** 977/11 982/1
**rebuttal [1]** 976/9
**recall [6]** 895/12 905/14 905/23 905/24 956/6 963/2
**receipt [1]** 907/3
**received [5]** 905/14 963/19 979/25 980/1 980/2
**recent [1]** 905/16
**recess [18]** 915/6 915/13 915/15 922/25 923/5 923/20 924/8 924/20 955/2 974/16 975/20 982/16 984/18 984/21 984/22 984/23 987/19 987/21
**recognize [1]** 954/8
**recognized [1]** 909/3
**recollection [1]** 956/15
**recommended [1]** 941/18
**record [21]** 891/6 895/11 905/25 915/5 915/16 919/4 924/22 926/2 940/13 948/7 952/16 961/13 969/1 969/11 977/7 982/23 983/15 984/20 985/5 988/5 989/5

1009

# R

records [1]  909/21
Redacted [1]  960/11
redline [1]  966/2
reduce [1]  916/6
reference [4]  896/21
905/8 911/2 969/24
references [1]  973/19
referral [1]  944/20
referred [2]  937/10
947/21
reflect [3]  945/20
974/4 975/3
reflected [4]  915/23
915/23 933/3 934/3
reflects [2]  934/6
972/7
refusal [2]  902/17
951/20
refused [7]  898/21
899/7 902/14 909/9
926/17 942/20 942/21
refuses [1]  950/21
regard [10]  898/4
899/12 899/19 901/1
901/17 902/20 902/21
903/18 906/11 906/19
regarding [1]  917/11
regards [1]  980/9
reinforced [2]  918/3
918/4
reiterating [1]  897/1
reject [1]  942/7
rejects [2]  939/12
942/5
related [3]  921/12
948/25 986/16
relating [3]  896/5
915/12 922/23
relation [1]  979/16
relative [1]  925/21
relatively [2]  955/25
982/24
release [1]  985/16
relevant [9]  936/1
937/4 941/21 941/25
942/17 947/8 954/16
980/10 980/20
reliance [1]  980/14
relied [3]  898/14 980/7
980/9
relief [3]  894/2 920/3
955/4
reluctantly [1]  982/13

remained [1]  961/11
remedy [1]  918/9
Remember [1]  931/15
remind [3]  912/1
946/20 986/9
reminder [2]  984/15
986/11
reminding [1]  981/8
reminds [2]  935/9
935/10
remove [1]  902/10
removed [2]  942/13
956/25
renewed [3]  917/11
975/4 982/19
repeat [1]  896/11
repeating [1]  938/15
replace [1]  965/4
replaced [1]  962/9
report [1]  942/21
Reported [1]  890/21
reporter [4]  890/22
965/19 988/3 989/3
representation [1]
948/21
representative [2]
937/13 937/14
represented [1]
971/11
reputational [1]
940/24
request [1]  951/19
requested [2]  899/25
907/15
required [6]  908/23
912/16 955/13 964/23
970/11 979/18
requirement [1]
963/22
requires [3]  945/13
945/14 969/25
research [2]  960/21
974/4
reserve [6]  916/3
916/3 916/13 922/2
923/10 949/2
reserved [1]  921/24
reserving [2]  916/5
917/4
resolution [1]  940/1
resolve [2]  923/9
954/11
resolved [1]  964/12
respect [9]  907/11

908/22 909/14 909/19
915/18 944/9 963/16
980/9 980/22
respectful [2]  922/19
982/25
respectfully [2]  911/20
949/16
respective [4]  892/12
912/9 924/6 975/6
respond [2]  928/17
955/9
response [7]  907/10
907/14 920/1 920/2
942/6 954/4 958/12
responsibilities [5]
896/15 896/15 910/22
910/22 912/9
responsibility [2]
896/16 910/23
responsible [1]  940/18
responsive [1]  907/12
rest [7]  921/7 961/11
970/3 975/24 978/20
983/15 987/8
rested [2]  897/6
985/13
rests [2]  893/21 985/9
result [3]  896/2 917/6
922/6
results [1]  921/2
return [4]  904/25
905/1 950/16 970/3
RIANE [2]  890/18
891/14
right [28]  899/23
902/18 912/22 918/22
918/24 921/4 924/9
925/15 928/12 928/16
933/9 933/24 934/5
935/2 936/4 936/9
943/24 954/11 954/25
959/7 962/2 968/10
972/6 978/25 979/6
981/4 982/14 983/19
rights [1]  919/10
rise [6]  915/14 924/19
975/21 984/22 984/24
987/20
risk [2]  916/18 977/8
Road [1]  890/15
Robert [1]  906/15
role [5]  916/21 917/2
917/9 956/12 956/14
roles [1]  912/9

room [2]  890/23
949/12
root [1]  963/22
ROSE [1]  890/10
route [2]  928/21
928/24
RPR [1]  890/21
rule [11]  893/8 894/3
894/4 896/17 910/24
916/5 917/25 948/19
949/1 949/25 952/5
ruled [3]  925/25 926/4
948/8
rules [2]  926/3 948/7
ruling [4]  893/14
893/19 925/10 950/8
rulings [2]  896/24
911/4
run [2]  916/18 977/24

# S

S-U [1]  944/4
said [48]  893/13
893/19 893/19 893/19
896/12 896/20 897/2
898/15 899/3 899/10
901/3 906/17 912/11
918/11 927/2 928/14
928/16 929/18 933/7
936/14 937/16 937/17
939/7 939/13 940/4
940/5 940/20 943/2
943/3 943/22 944/7
944/17 945/1 945/12
946/23 947/24 948/4
949/8 951/9 951/16
952/24 953/3 953/9
966/1 968/5 970/21
974/6 982/4
same [8]  904/17
934/25 976/13 977/16
980/19 986/20 987/13
987/17
Santobello [1]  974/8
satisfied [1]  940/3
saw [2]  938/6 955/8
say [30]  894/8 898/3
898/11 900/13 912/13
916/22 916/25 917/7
919/2 925/4 937/23
938/3 941/10 942/14
944/19 944/25 947/17
951/10 955/14 961/8
962/12 962/19 965/5

# S

**say... [7]** 971/5 974/1 978/9 980/22 981/20 984/9 987/12
**saying [12]** 910/6 912/2 933/1 935/5 936/15 951/2 952/20 954/2 954/9 964/8 964/20 968/8
**says [11]** 904/11 910/20 932/7 932/7 952/21 961/8 970/11 970/15 970/20 974/3 974/11
**scale [1]** 970/22
**schedule [1]** 981/11
**scheduled [1]** 944/20
**scheme [1]** 915/13
**Schiff [1]** 940/23
**SCHOEN [28]** 890/14 890/15 891/13 899/18 901/21 915/11 917/10 923/17 924/11 924/23 949/18 951/8 951/16 953/3 953/18 954/17 955/9 963/3 965/7 965/17 966/20 970/11 970/21 971/25 975/4 981/5 981/8 985/7
**Schoen's [1]** 971/1
**seat [3]** 961/12 961/13 961/17
**seated [1]** 985/4
**seats [2]** 961/9 961/9
**second [12]** 893/6 898/19 911/9 911/10 919/1 921/20 930/7 931/16 934/15 953/9 968/22 985/23
**secondly [3]** 900/18 918/4 926/9
**secretly [1]** 952/19
**see [12]** 891/21 892/5 895/24 896/7 898/14 906/2 923/11 924/3 949/17 954/16 967/6 983/12
**seek [2]** 902/9 939/18
**seemed [1]** 946/17
**seems [9]** 908/21 911/23 933/22 947/19 948/11 954/20 963/4 981/22 983/21
**seen [2]** 955/12 966/16

**Select [1]** 893/8
901/2 901/8 901/25 906/14 907/5 907/11 907/13 931/7 931/8
**selected [1]** 961/9
**Selection [1]** 960/17
**send [2]** 920/25 962/14
**sending [1]** 975/18
**sense [10]** 918/14 918/16 922/5 927/4 942/11 949/1 958/24 963/10 976/11 978/15
**sent [6]** 908/18 908/19 910/6 952/20 963/13 966/12
**sentence [4]** 958/5 969/6 970/15 972/12
**sentences [1]** 961/7
**separate [3]** 901/20 922/7 950/7
**separation [1]** 939/14
**September [2]** 906/22 931/6
**serve [1]** 985/25
**service [1]** 901/14
**session [1]** 984/25
**set [3]** 932/16 947/3 972/17
**setting [3]** 898/22 927/3 976/19
**several [1]** 901/4
**shared [1]** 916/24
**she [39]** 898/10 898/10 898/11 898/13 898/14 898/14 898/15 899/9 899/9 899/14 899/16 900/12 900/13 901/3 901/3 901/5 901/5 901/7 901/12 901/12 909/2 935/12 936/14 943/3 943/4 943/5 945/10 945/12 946/16 946/22 946/23 946/24 952/8 952/9 952/11 952/24 953/1 986/6 986/7
**She's [1]** 946/17
**shifted [1]** 904/18
**shortened [1]** 901/20
**shorthand [2]** 929/4 948/5
**shortly [2]** 966/21 968/5

**should [21]** 891/22 903/6 906/7 907/12 910/8 910/11 911/16 912/1 928/1 929/13 938/1 952/21 953/14 958/14 962/6 963/8 976/24 977/4 978/19 981/17 984/16
**shouldn't [7]** 912/1 912/5 912/10 912/10 916/22 916/25 984/15
**show [5]** 906/13 936/21 950/25 951/3 972/20
**showed [2]** 910/2 968/6
**showing [2]** 893/21 903/1
**shows [1]** 906/23
**side [1]** 955/20
**Sidebar [2]** 912/24 915/3
**sifted [1]** 923/13
**sign [2]** 898/14 900/9
**signature [1]** 909/3
**signed [6]** 898/12 898/16 900/13 900/14 900/16 908/17
**significance [1]** 936/22
**signing [1]** 900/10
**SILVERMAN [1]** 890/18
**similar [1]** 909/11
**similarity [1]** 942/23
**simple [1]** 893/13
**simply [11]** 897/1 898/17 902/17 906/13 922/13 926/16 926/17 929/12 942/5 951/2 972/21
**since [6]** 894/1 918/2 932/20 961/11 979/7 980/13
**sincere [1]** 941/9
**single [3]** 909/25 929/16 929/19
**sir [1]** 926/14
**sitting [3]** 943/17 976/21 981/14
**situation [1]** 974/3
**Sixth [2]** 899/22 917/15
**skills [1]** 974/5

**SLUTKIN [1]** 890/18
**small [1]** 985/8
**smarter [2]** 918/3 949/10
**smartest [1]** 949/12
**so [139]**
**so-called [1]** 893/14
**sold [1]** 917/19
**sole [1]** 900/9
**some [31]** 892/3 892/18 894/1 896/10 905/15 906/4 912/11 916/18 916/21 923/18 924/1 924/1 925/13 927/24 928/17 932/18 935/9 937/24 940/9 941/10 943/20 950/25 951/22 952/19 953/12 963/1 963/21 967/9 970/23 970/24 972/8
**someone [2]** 948/20 963/19
**something [19]** 896/5 897/1 912/2 917/15 929/21 942/3 946/24 948/23 951/1 955/9 962/8 967/21 967/24 968/9 970/17 972/10 977/11 986/1 986/5
**Sometimes [1]** 987/4
**somewhat [1]** 976/3
**soon [2]** 907/16 982/24
**sorry [10]** 907/21 934/14 934/16 945/4 948/23 956/17 968/7 974/20 981/10 981/22
**sort [6]** 917/13 927/3 955/21 963/21 970/22 978/4
**sounds [1]** 920/20
**spe [1]** 952/17
**speak [7]** 895/2 907/9 935/8 942/25 955/21 965/23 966/18
**speaking [1]** 939/5
**special [2]** 891/9 984/11
**specialist [1]** 891/9
**specific [7]** 925/3 937/25 954/18 968/17 971/9 974/24 984/14
**specifically [6]** 903/5

1011

S

**specifically... [5]**
906/22 926/10 929/9
948/10 973/4
**specificity [1]** 929/3
**specifics [1]** 972/8
**spend [1]** 915/8
**split [1]** 977/3
**staff [2]** 901/4 936/18
**staffer [3]** 929/11
936/14 936/15
**staffer's [1]** 929/10
**stage [1]** 927/4
**stand [4]** 933/5 933/11
937/4 946/8
**standard [4]** 898/23
950/1 950/17 950/24
**standpoint [1]** 967/23
**stands [1]** 940/21
**start [10]** 896/14
908/14 910/21 949/21
962/9 963/9 963/16
969/6 982/18 987/9
**starting [1]** 976/17
**state [1]** 962/22
**statement [3]** 943/21
959/16 959/20
**statements [5]** 934/5
940/7 940/9 942/1
957/1
**states [8]** 890/1 890/2
890/8 891/3 907/2
931/8 937/7 942/18
**staying [1]** 962/20
**step [6]** 892/8 901/1
902/3 927/2 942/4
952/4
**STEPHEN [5]** 890/5
891/4 907/4 931/5
972/13
**steps [2]** 930/10
951/21
**Steve [1]** 891/13
**stick [1]** 965/9
**still [12]** 904/13 904/14
907/23 916/2 928/17
930/13 937/23 947/20
950/13 961/8 972/9
987/13
**stipulations [1]**
956/21
**story [3]** 938/9 938/11
938/12
**straightforward [1]**

997/10
**Street [2]** 890/12
890/19
**strength [2]** 896/5
916/12
**stricken [1]** 958/4
**strike [1]** 964/16
**studied [1]** 927/14
**study [1]** 944/13
**styles [1]** 954/12
**stymied [1]** 925/9
**Su [1]** 944/4
**subject [3]** 944/11
969/9 972/15
**subjects [1]** 944/9
**submit [1]** 892/10
892/11 923/2 930/18
**submitted [2]** 911/25
966/11
**subpoena [65]** 898/8
898/9 898/12 898/22
899/8 899/14 899/15
899/17 899/19 900/9
900/10 900/16 900/17
901/14 901/15 901/15
903/4 903/8 904/4
905/2 906/20 906/22
906/24 906/25 907/5
907/23 908/17 909/3
909/5 909/14 921/21
926/16 926/19 927/6
927/6 927/14 931/6
931/21 933/20 936/8
936/13 936/20 942/6
944/23 945/3 945/3
945/13 945/20 945/21
947/3 947/22 948/3
948/19 951/20 952/20
954/4 963/22 964/19
964/22 969/8 972/14
979/16 979/25 980/6
980/9
**subpoena-related [1]**
921/21
**subpoenaed [4]** 898/4
898/18 908/16 909/6
**subpoenas [4]** 893/16
969/17 972/16 973/18
**substance [1]** 951/8
**substantial [1]** 923/25
**substantive [1]** 981/23
**such [4]** 902/15 909/3
912/15 946/11
**suffice [1]** 930/2

**sufficient [8]** 908/19
909/8 909/10 909/20
910/7 950/1 969/1
969/13
**sufficiently [2]** 943/5
964/12
**suggest [1]** 911/20
**suggested [2]** 930/10
941/18
**suggesting [2]** 906/7
969/4
**suggestion [7]** 894/1
921/6 961/18 962/11
963/20 969/18 983/1
**Suite [1]** 890/15
**supply [1]** 948/1
**support [5]** 927/15
933/18 969/1 979/12
980/20
**supporting [1]** 980/15
**supports [2]** 933/21
974/22
**Supreme [2]** 904/23
935/14
**sure [8]** 910/18 911/9
922/21 925/15 936/15
938/16 956/5 966/16
**suspected [3]** 936/14
936/21 971/3
**swayed [1]** 942/9

T

**table [2]** 891/13
964/11
**take [26]** 894/20 905/6
912/10 912/10 915/6
916/22 917/17 917/18
921/22 922/5 922/25
922/13 924/17 927/2
930/9 934/16 939/22
943/17 953/21 955/2
967/1 974/16 976/2
976/2 977/4 977/8
**taken [5]** 899/4 911/8
926/10 945/5 987/21
**takes [1]** 978/7
**taking [1]** 960/24
**talk [9]** 931/15 943/11
951/24 955/3 967/20
973/22 984/1 985/8
986/13
**talked [5]** 893/11
939/23 945/2 953/17
954/17

**talking [4]** 902/4 932/7
984/16 986/19
**talks [1]** 906/22
**team [1]** 979/12
**teed [2]** 964/12 965/23
**televised [1]** 944/20
**television [1]** 930/14
**tell [14]** 911/21 916/14
924/9 927/23 932/19
944/16 949/7 964/4
968/21 975/9 979/8
983/7 984/12 985/22
**telling [3]** 964/7
979/14 981/14
**tells [4]** 927/7 927/11
927/11 966/3
**tension [3]** 939/13
940/1 944/1
**term [1]** 936/10
**terms [7]** 905/1 905/8
934/2 944/22 976/18
982/9 982/11
**testified [9]** 899/9
909/2 928/23 945/9
945/10 952/3 952/8
952/10 952/11
**testify [22]** 893/23
902/11 923/6 929/12
934/23 942/20 946/18
947/4 947/5 952/7
953/2 954/4 958/23
959/7 972/20 978/25
979/6 979/8 979/13
979/17 979/21 981/4
**testifying [4]** 922/16
979/3 980/13 980/17
**testimony [29]** 898/5
898/6 899/9 899/11
900/4 900/11 902/20
903/16 904/4 906/17
907/9 908/2 908/4
922/23 928/11 928/22
929/8 932/19 937/4
937/11 938/25 942/22
944/10 954/6 958/22
959/6 978/20 979/21
980/20
**than [9]** 893/4 916/17
916/19 918/3 933/3
942/13 949/10 953/8
976/9
**thank [37]** 893/4 895/2
905/21 908/6 908/7
911/12 915/17 924/17

**T**

**thank... [29]**  924/24 925/7 925/16 926/14 945/8 949/18 949/20 955/18 955/18 957/20 958/20 965/15 965/16 971/24 975/1 978/13 978/22 980/24 981/1 981/7 981/7 981/9 985/6 985/10 985/11 986/23 987/7 987/10 987/19

**that [603]**

**that's [59]**  895/15 896/6 896/20 897/2 897/15 899/2 899/17 902/6 902/11 903/15 903/15 903/23 904/23 907/24 908/25 911/9 918/15 918/18 927/21 929/25 932/23 933/4 933/16 934/4 936/3 937/3 938/3 938/9 939/13 939/20 942/16 944/12 944/12 944/14 945/1 948/2 948/21 948/22 949/10 951/14 951/25 952/22 955/20 956/18 958/20 961/14 966/17 967/20 969/20 969/20 970/2 970/12 970/21 971/15 972/21 973/3 978/22 983/25 985/22

**their [23]**  892/12 893/21 910/14 916/17 916/23 919/10 926/23 928/16 930/14 936/11 941/1 941/6 941/7 941/7 941/19 948/19 952/20 964/2 964/7 966/5 974/22 977/23 985/20

**theirs [1]**  917/3

**them [78]**  891/21 892/7 898/23 899/1 899/23 906/9 909/16 912/1 912/9 916/20 917/8 920/24 923/3 923/4 923/13 924/7 926/1 926/1 926/23 927/11 927/12 928/12 928/22 935/15 942/7 942/25 943/1 946/18

950/22 951/9 954/11 954/24 955/20 961/23 962/1 963/8 964/4 964/7 965/10 966/16 966/21 966/22 966/24 968/12 968/15 968/16 968/18 975/8 975/8 975/11 975/16 975/18 976/2 976/15 977/5 977/25 978/16 981/14 981/17 982/1 982/17 982/18 983/5 983/7 983/8 983/12 983/16 984/1 984/2 984/3 984/4 984/4 984/14 984/15 984/19 987/15 987/15 987/16

**themselves [4]**  899/14 926/6 928/6 935/9

**then [65]**  892/6 892/20 893/21 894/24 895/1 896/20 907/14 907/16 912/7 915/9 915/10 916/8 916/9 919/17 920/4 921/2 921/7 921/7 921/8 921/14 921/24 922/15 923/1 923/4 923/10 923/11 923/13 924/13 924/13 924/17 925/2 927/7 928/24 930/5 933/11 935/25 936/8 937/17 938/11 946/14 946/15 947/17 947/24 952/11 963/24 965/25 966/4 969/15 970/9 970/19 971/13 976/19 977/8 977/23 978/5 978/8 980/1 981/14 982/15 982/18 984/19 985/20 986/20 987/15 987/16

**theory [13]**  922/4 942/20 947/7 968/25 972/7 972/11 972/18 972/18 973/4 973/14 974/9 974/22 974/25

**there [61]**  892/2 892/8 892/20 895/17 897/18 897/19 899/17 901/3 903/1 903/21 903/24 904/4 910/5 911/14 911/25 912/15 921/14 922/3 923/9 923/15 923/24 924/17 930/14

934/5 935/9 939/19 942/17 944/1 946/14 946/15 947/13 949/5 949/8 950/24 951/18 951/21 952/5 952/14 952/14 952/18 953/6 954/5 955/13 955/16 955/16 958/13 958/15 958/16 968/4 968/11 968/25 969/2 969/16 970/19 971/16 971/17 981/23 982/10 983/4 983/21 986/25

**there's [24]**  892/5 895/24 902/6 902/17 908/17 912/12 921/17 927/18 936/12 944/1 950/20 952/12 952/13 954/15 954/17 963/20 968/3 969/11 969/13 969/13 970/6 976/19 977/2 977/8

**therefore [4]**  942/4 969/9 972/15 973/21

**these [27]**  892/15 893/3 899/10 901/2 901/16 906/1 911/17 911/19 924/4 924/4 926/20 927/14 929/11 935/15 938/3 939/8 942/24 944/9 946/19 956/1 963/9 963/14 967/10 970/20 975/5 980/20 986/24

**they [83]**  892/5 892/22 892/24 892/24 897/6 901/24 907/22 909/4 909/25 912/10 915/21 915/22 915/23 916/10 916/11 916/22 917/6 917/8 920/21 924/3 924/9 926/23 927/15 927/16 928/8 928/10 928/15 928/19 928/21 928/24 932/18 935/12 935/13 936/6 936/11 936/12 936/14 936/21 938/1 938/4 938/23 938/25 939/1 940/24 941/6 941/20 942/12 942/21 944/18 944/19 944/23 944/24 945/1 945/2 947/24 948/5 951/3 951/3 951/4

951/9 951/10 951/14 951/17 953/11 953/25 954/18 954/19 962/6 962/9 966/15 967/24 967/25 969/4 969/18 972/3 974/21 976/3 976/21 977/4 980/12 984/14 984/16

**they're [12]**  911/21 928/12 930/12 930/13 935/16 950/6 954/8 956/3 966/8 976/3 976/20 977/16

**they've [2]**  950/5 953/11

**thing [10]**  893/6 905/12 950/17 950/21 984/14 985/8 985/17 985/22 985/23 986/9

**things [17]**  901/16 906/1 911/17 916/1 918/2 921/15 929/2 937/23 944/6 948/4 953/4 964/1 967/7 967/10 970/21 970/24 986/22

**think [92]**  891/16 893/20 894/6 895/1 895/20 895/23 896/4 896/10 897/22 902/22 902/23 905/9 910/12 910/13 910/15 912/3 912/15 915/10 915/22 916/11 917/25 918/1 918/10 918/14 918/17 918/17 918/19 919/7 920/1 923/15 923/19 926/11 929/2 929/22 930/1 934/4 936/2 936/9 936/12 940/7 941/25 942/16 942/23 943/2 943/3 945/6 949/11 949/16 951/5 951/11 951/16 952/21 953/6 955/24 958/24 958/25 962/5 963/12 964/4 965/18 966/1 966/2 966/7 966/8 967/22 969/19 971/21 971/22 974/22 975/18 975/23 976/13 976/17 976/24 976/25 977/2 977/3 977/6 977/12 977/19 978/6 978/8

1013

# T

**think... [10]** 979/2
981/19 983/9 983/11
983/14 983/24 984/1
985/7 986/24 987/13
**thinking [6]** 915/25
916/9 920/17 949/4
977/25 981/10
**thinks [2]** 935/23
954/8
**third [2]** 898/20 899/6
**this [149]**
**THOMPSON [72]**
890/18 893/22 895/2
898/13 900/7 900/8
901/9 901/11 907/10
908/17 918/12 919/14
919/23 922/13 922/23
923/5 925/4 925/4
926/21 927/23 928/7
929/4 929/7 929/17
929/24 930/1 930/2
930/8 930/16 930/21
930/23 932/8 932/10
932/21 933/11 934/8
934/25 935/3 935/7
936/4 936/7 937/1
937/12 937/20 937/20
938/17 939/3 939/5
939/17 939/22 939/25
940/13 940/16 940/19
941/14 941/24 941/25
943/10 943/11 943/15
944/14 944/15 946/16
947/18 948/7 948/16
950/14 950/14 951/23
953/22 954/3 954/19
**Thompson's [5]**
901/13 909/2 932/9
932/19 933/2
**those [29]** 891/22
896/23 899/15 899/16
901/18 901/23 909/15
911/4 917/24 920/11
923/2 925/24 926/2
930/10 935/25 937/8
940/8 940/8 941/2
941/22 942/10 951/5
951/21 970/23 971/21
980/21 982/2 986/22
987/4
**though [3]** 924/8
947/21 967/25
**thought [20]** 898/15

926/25 929/8 932/21
934/15 936/4 936/7
938/1 946/17 946/22
948/23 955/22 963/18
966/13 971/19 980/23
983/5
**three [6]** 921/14 944/6
945/4 961/7 976/24
981/23
**threshold [3]** 897/16
897/16 949/11
**through [31]** 892/4
892/11 892/11 899/10
899/24 905/4 906/15
920/1 923/13 925/20
925/21 926/10 926/15
927/22 934/18 936/13
936/20 936/21 937/4
937/9 938/11 938/14
938/17 939/11 944/5
951/16 952/12 955/6
955/19 977/12 986/16
**through-line [1]**
951/16
**throughout [2]** 905/6
937/11
**thumb [1]** 970/22
**tie [1]** 928/4
**tied [1]** 927/13
**till [1]** 978/10
**time [25]** 910/1 912/19
915/11 920/18 922/20
922/22 923/19 934/1
934/8 934/16 938/16
942/10 943/8 945/5
947/18 952/7 954/17
966/23 969/25 974/7
978/6 981/13 982/1
982/25 987/17
**times [5]** 899/3 903/20
937/20 979/18 980/8
**timing [1]** 896/14
**today [13]** 896/2
907/13 911/25 917/7
926/8 937/23 978/3
982/5 982/12 984/4
985/12 986/24 987/8
**together [4]** 895/21
906/16 908/3 977/4
**told [6]** 927/6 935/14
939/11 979/25 980/1
980/5
**tomorrow [9]** 977/11

978/9 978/10 983/2
986/8 986/18 987/4
987/6 987/9
**tonight [2]** 983/4
983/7
**too [8]** 904/16 918/10
962/4 966/4 966/6
970/12 975/17 977/14
**top [1]** 927/21
**topic [1]** 900/16
**touch [1]** 930/25
**toward [2]** 930/6
972/10
**towards [1]** 906/23
**trail [1]** 900/22
**train [1]** 934/15
**transcript [7]** 890/7
893/12 893/13 943/7
948/12 988/4 989/4
**trial [13]** 890/7 896/14
896/16 896/18 896/21
897/12 900/6 905/15
905/18 910/21 910/23
910/25 911/2
**tried [2]** 965/9 982/6
**true [4]** 979/9 979/14
988/4 989/4
**Trump [12]** 902/8
928/1 940/17 940/17
942/12 943/9 943/15
944/14 944/14 944/17
951/25 980/3
**Trump's [1]** 907/8
**try [5]** 902/10 941/14
965/24 968/1 982/4
**trying [6]** 908/10
922/19 949/13 949/13
951/17 967/13
**turn [1]** 954/25
**TV [1]** 986/15
**two [26]** 891/19 892/15
893/3 897/23 902/7
902/9 916/1 918/1
921/14 925/1 943/14
944/1 944/6 945/4
951/14 953/4 961/9
961/22 963/3 963/6
963/12 968/11 969/2
979/1 981/24 986/4
**two-minute/one-minut
e [1]** 925/1

# U

**U.S [6]** 890/10 890/11

979/3 978/10 983/16
890/22 904/23 904/24
957/16
**Uh [2]** 950/4 973/2
**Uh-huh [2]** 950/4
973/2
**ultimate [1]** 939/8
**ultimately [2]** 939/8
987/2
**unable [4]** 899/15
899/16 901/5 985/25
**Unanimity [1]** 960/5
**unavailable [2]** 935/13
969/3
**uncontrolled [1]**
950/18
**under [15]** 898/23
899/22 901/14 904/23
916/5 931/18 936/22
941/11 941/12 952/5
968/23 969/3 971/23
979/8 979/17
**underlying [1]** 942/24
**understand [17]**
898/24 902/14 904/19
906/3 907/22 921/9
925/25 936/17 937/22
940/5 946/12 953/16
954/2 968/1 970/5
973/11 974/15
**understanding [3]**
954/3 964/22 971/23
**understands [2]** 979/5
979/13
**understood [5]** 899/5
920/7 920/12 925/16
943/4
**undue [1]** 934/23
**unfortunately [1]**
966/6
**unilaterally [2]** 939/18
942/7
**UNITED [7]** 890/1
890/2 890/8 891/3
931/8 937/7 942/18
**universe [1]** 925/18
**until [11]** 904/25
915/15 922/2 923/20
924/10 924/20 973/10
977/7 977/12 984/23
986/20
**up [23]** 891/19 894/20
896/18 898/8 906/1
910/25 917/17 917/18
924/13 930/13 945/5

1014

**U**

up... [12] 947/3 949/8 964/12 965/23 967/9 968/6 973/10 981/14 983/8 984/6 984/8 986/5
upon [4] 897/7 898/14 900/4 955/24
urge [1] 931/5
urged [1] 931/3
us [16] 900/15 923/2 923/3 924/3 924/18 927/15 930/2 932/20 935/14 943/1 947/25 948/1 948/1 963/13 975/18 982/11
use [13] 903/19 903/20 907/21 907/24 920/17 929/4 936/10 936/11 938/10 957/16 966/2 967/21 974/23
used [4] 930/17 930/24 947/21 948/5
using [2] 892/12 985/19

**V**

valid [7] 898/12 900/10 900/17 928/2 928/16 937/16 939/16
validity [1] 939/23
variance [1] 903/15
various [1] 934/18
VAUGHN [14] 890/10 891/8 908/8 920/15 949/21 955/10 957/11 959/2 959/16 962/5 963/8 968/13 976/6 981/9
Vaughn's [1] 977/15
verdict [2] 950/10 960/8
version [4] 901/20 912/11 966/2 967/2
versions [2] 966/24 975/12
versus [11] 891/4 904/23 917/2 935/11 942/17 942/19 943/10 943/15 943/25 944/14 944/15
very [16] 893/4 893/13 916/21 917/2 917/2 917/9 936/15 943/21

949/15 949/18 983/16 954/21 978/5 979/6 981/7 986/23
videos [1] 986/16
view [17] 892/4 902/25 904/25 911/18 912/4 912/11 916/24 921/22 925/8 932/18 949/5 949/22 954/10 964/8 976/16 982/22 984/1
views [2] 915/8 924/15
violated [1] 909/15
voluntarily [1] 953/24 954/4
vote [2] 931/2 944/20
vs [1] 890/4

**W**

wait [4] 930/9 935/19 935/19 935/19
waited [1] 948/13
waive [2] 973/25 981/4
waiver [5] 965/14 966/11 966/11 968/22 973/22
waiving [3] 899/3 930/2 954/22
walk [2] 955/19 955/22
wall [1] 936/2
want [55] 891/15 891/15 895/1 895/8 896/10 905/8 905/17 912/3 912/22 915/7 915/10 919/2 919/8 922/20 922/21 923/15 923/17 924/25 925/2 926/20 928/23 929/19 935/7 937/12 937/19 937/24 938/15 938/16 939/23 940/12 941/2 941/13 941/15 941/22 943/10 944/25 945/6 945/18 947/23 948/1 948/6 948/12 949/17 954/25 955/9 961/16 963/9 968/20 970/14 977/23 978/15 982/1 984/13 986/23 987/12
wanted [22] 891/17 894/3 894/4 894/4 895/17 918/11 920/16 925/3 927/2 928/10 938/25 940/2 941/20 942/19 948/15 951/17

979/8 979/17 985/22
wanting [1] 926/5
wants [5] 891/17 911/13 927/24 971/9 971/12
warranted [1] 920/3
warrants [1] 953/18
was [145]
Washington [5] 890/4 890/12 890/24 935/11 942/17
wasn't [3] 935/14 937/24 943/5
watch [2] 983/7 986/15
watching [1] 984/15
way [32] 893/20 894/5 896/6 896/10 896/10 900/6 902/3 902/4 906/13 912/4 916/6 916/12 919/6 920/10 920/17 921/21 924/4 924/5 927/24 938/5 946/14 946/15 949/8 949/9 951/22 954/5 962/15 963/21 972/19 977/17 984/6 985/14
ways [1] 987/5
we [238]
we'd [4] 897/4 941/22 962/3 978/15
we'll [9] 894/25 918/17 919/8 924/17 959/5 968/1 981/14 982/3 982/24
we're [27] 899/3 915/13 920/6 922/4 923/11 923/15 923/20 930/1 933/9 949/5 951/2 955/12 967/15 972/5 974/16 975/7 975/20 981/21 982/12 982/15 983/16 984/4 984/19 984/21 985/15 985/15 985/16
we've [13] 892/12 902/3 917/25 918/7 950/7 964/10 966/15 968/14 976/23 978/25 982/6 985/14 987/13
week [5] 930/5 944/13 944/18 982/11 986/10
weighing [1] 897/11
weight [2] 970/12

weights [1] 966/4
welcoming [1] 945/2
well [22] 893/19 899/5 901/17 926/19 931/15 932/23 933/16 939/12 939/19 943/2 946/14 948/13 951/23 952/20 962/4 963/2 966/6 970/10 974/1 977/1 977/8 980/9
went [6] 900/21 909/4 909/5 936/13 936/20 944/5
were [50] 892/2 893/25 899/10 899/11 899/15 899/25 900/1 900/21 901/24 906/4 908/24 909/15 911/18 926/22 931/17 931/25 933/7 933/14 933/17 934/5 934/18 937/16 941/5 941/5 941/6 941/18 941/23 945/16 948/19 952/2 952/6 952/14 952/15 953/5 953/9 962/8 963/3 969/8 969/8 969/12 969/12 969/22 970/17 972/8 972/14 972/14 979/21 980/10 984/9 984/10
weren't [3] 937/17 944/24 965/25
what [119]
what's [9] 896/12 918/25 933/3 935/20 937/8 944/2 946/2 946/3 946/12
whatever [5] 894/4 923/2 923/2 971/10 978/7
whatsoever [1] 916/20
when [25] 893/20 897/11 900/12 915/10 917/22 921/3 925/4 926/23 930/5 930/17 931/3 932/4 939/15 940/19 944/1 945/2 947/17 947/19 947/24 949/22 950/21 953/3 976/20 982/21 986/18
whenever [3] 917/8 926/11 977/16
where [5] 892/22

**W**

**where... [4]** 948/4 950/18 975/9 984/2
**wherever [1]** 965/6
**whether [46]** 892/21 892/24 895/17 895/18 897/11 898/4 898/13 900/13 900/14 900/16 900/16 900/24 901/7 902/19 903/5 912/7 915/22 918/8 920/1 923/9 923/11 928/2 933/14 938/17 938/21 938/23 939/20 941/5 943/13 946/9 949/22 950/1 950/5 950/7 952/1 952/15 953/4 956/6 958/13 964/3 964/11 965/3 976/14 982/23 984/9 986/13
**which [39]** 897/7 898/17 901/10 902/3 902/16 905/10 906/13 906/21 907/3 907/6 907/16 916/1 917/13 925/13 926/24 934/19 935/6 938/1 940/9 942/19 943/22 944/5 948/10 948/24 952/5 952/23 953/6 954/19 955/16 956/12 961/17 964/24 967/22 968/23 973/19 976/14 981/16 985/18 987/3
**whichever [1]** 936/24
**while [4]** 923/4 949/3 977/5 984/18
**WHITE [3]** 890/18 890/18 891/14
**who [15]** 899/16 900/3 901/2 908/23 908/24 929/13 937/6 942/1 942/3 942/25 952/19 961/22 962/19 980/18 986/8
**whoever [1]** 955/20
**whole [4]** 918/3 929/23 969/25 986/12
**whom [1]** 926/21
**why [51]** 899/15 908/24 911/21 918/15 919/21 919/22 925/1 925/3 928/21 928/24 928/24 929/3 929/7

929/17 929/18 929/25 930/5 930/11 930/19 931/19 931/21 931/22 931/22 933/4 933/23 935/19 936/10 936/10 939/22 939/25 940/2 940/3 941/22 942/16 944/18 945/11 945/19 946/22 947/13 949/5 951/23 951/24 963/9 965/18 968/21 971/12 973/3 976/14 979/3 979/14 979/15
**wife's [1]** 935/12
**will [49]** 899/18 901/20 905/5 907/15 907/18 907/22 910/4 912/19 921/14 923/8 923/11 924/4 924/14 928/14 950/13 950/14 951/5 955/2 956/1 956/2 956/5 956/7 956/8 956/12 956/25 957/18 962/17 962/18 975/11 975/11 977/22 979/2 980/17 980/17 981/13 982/16 982/16 982/18 982/22 982/22 985/19 985/19 985/21 986/8 986/18 987/2 987/5 987/9 987/16
**willful [5]** 902/17 902/21 945/16 946/2 970/19
**willfully [6]** 969/10 969/18 970/6 970/7 970/7 972/16
**willfulness [2]** 910/2 971/5
**willing [2]** 907/4 907/8
**willingness [3]** 935/6 937/15 945/3
**withdrawal [1]** 940/21
**withdrew [1]** 940/20
**within [2]** 938/13 971/13
**without [6]** 893/7 900/9 910/15 930/2 961/22 971/23
**witness [12]** 898/2 898/7 900/1 926/10 933/5 933/11 950/19 950/22 959/11 959/16 959/21 980/18

**witnesses [13]** 897/23 899/23 900/2 900/3 925/21 925/25 926/20 929/5 930/13 948/17 948/18 958/10 958/21
**won't [3]** 922/16 926/8 956/2
**wondering [1]** 975/23
**word [15]** 901/8 901/10 901/11 901/13 901/14 903/19 904/7 907/24 936/11 936/23 936/24 936/25 954/5 973/12 975/14
**words [10]** 897/1 903/7 903/20 919/8 930/21 935/17 940/22 943/3 947/21 967/21
**work [8]** 902/7 927/25 929/9 930/4 930/12 976/19 977/23 978/12
**worked [1]** 946/18
**worry [3]** 891/18 986/2 986/3
**would [119]**
**wouldn't [9]** 896/4 926/1 937/22 938/16 940/2 954/23 966/5 972/3 976/9
**write [1]** 931/4
**writer [1]** 942/15
**written [2]** 901/9 940/23
**wrong [1]** 972/21
**wrote [9]** 901/2 901/5 908/24 926/23 932/10 943/21 944/5 947/18 947/20

**Y**

**yeah [13]** 893/5 904/22 905/24 919/16 928/5 930/25 934/17 934/17 934/20 967/5 967/15 967/17 967/18
**year [1]** 891/3
**yes [69]** 893/1 893/9 893/24 905/13 906/6 911/7 917/21 917/23 918/13 919/3 920/15 920/19 920/23 922/11 922/14 922/18 922/18 925/6 925/17 926/7 926/14 928/4 932/3

936/1 946/11 948/9 954/13 955/7 956/17 957/2 957/3 957/6 957/7 957/10 957/12 957/14 957/18 957/23 957/24 958/2 958/3 958/7 958/8 958/11 959/14 960/5 960/7 960/8 960/10 961/20 963/11 963/12 963/15 965/11 966/25 967/8 967/11 968/1 968/14 971/7 973/15 973/23 977/18 978/22 978/22 981/6 982/8 983/3 984/7
**yesterday [9]** 894/20 900/5 901/24 912/3 926/11 926/12 926/13 963/25 965/10
**yet [4]** 900/12 902/23 923/15 931/5
**yield [2]** 935/24 938/1
**you [182]**
**you'll [1]** 987/15
**you're [8]** 918/21 919/22 923/2 927/12 927/17 927/19 965/5 978/14
**you've [3]** 947/22 981/24 986/10
**your [122]**
**Your Honor [81]** 891/2 891/7 891/12 892/19 894/16 895/3 895/6 895/22 897/4 905/7 905/13 908/6 908/9 911/10 919/6 920/7 920/14 921/12 922/12 924/21 924/24 925/7 925/16 926/14 928/4 929/1 932/3 934/12 936/19 945/8 948/4 949/24 950/15 956/17 956/24 957/2 957/3 957/6 957/7 957/12 957/15 957/24 958/2 958/7 958/8 958/11 958/18 959/1 959/4 959/9 959/13 959/17 960/1 961/15 962/6 962/16 963/11 963/12 964/10 965/16 965/21 966/25 967/3 968/4

## Y

**Your Honor... [17]**
968/14 968/19 972/1
973/23 974/17 975/19
975/22 976/23 978/13
980/25 981/6 981/9
982/12 982/13 983/11
985/5 985/9
**yourselves [1]**  891/6

## Z

**Zelda [1]**  890/15