## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | CRIMINAL NO. 21-cr-670 (CJN) |
| STEPHEN K. BANNON, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A HEARING

The United States hereby opposes defendant's Motion for a Hearing, ECF 185 ("Motion").

## I.    Introduction.

Seven months after he was sentenced, the defendant now attempts to dredge up complaints and allegations that were previously raised and addressed.   The defendant neither points to any new facts nor seeks any specific relief.[1]   Instead, the defendant lodges reckless allegations – accusing the government of bad faith and of lying to the Court.   The Court should reject the defendant's attempt to taint these proceedings and stigmatize the prosecutors with baseless misconduct claims.   Inasmuch as the defendant's accusations are baseless, there is no reason for a hearing.   The motion should also be denied because it is untimely.

---

[1] In his proposed Order, the defendant requests:

(A) A copy of any and all subpoenas and Orders that were issued and that were directed to third parties in an effort to obtain email and telephone records for Robert J. Costello, Esq. (or any counsel for Mr. Bannon), along with all documents submitted in connection with any and all applications for any such court Order or subpoena; and (B) A list of all third parties on whom a subpoena, court Order or other process was served in the effort to obtain email and telephone records for Robert J. Costello, Esq. (or any counsel for Mr. Bannon).

Motion at 5.   But, as set forth below, the government has already provided all relevant documents to the Court and the defendant.

II.     **Procedural Posture.**

At the conclusion of a four-day trial, on July 22, 2022, a jury found the defendant, Stephen K. Bannon, guilty of two counts of Contempt of Congress.    ECF No. 135, Verdict Form.    The defendant filed post-trial pleadings, which raised numerous substantive and procedural claims. ECF Nos. 141, 142, 144, 146.    The Court denied the defendant's post-trial motions on September 2, 2022.    ECF No. 147, Order Denying Motion for New Trial and Supplement to Motion to Dismiss.    On October 21, 2022, this Court sentenced the defendant to four months' incarceration. ECF No. 161, Judgment.    The defendant filed his Notice of Appeal on November 4, 2022.    ECF No. 166.    And the case is now pending before the D.C. Circuit.

On January 4, 2023, the defendant filed a "Notice Of Outstanding Issue Regarding Government Misconduct" (ECF # 182) ("Notice").    Then, on May 30, 2023, ten months after the verdict, nine months after the Court denied the defendant's post-trial motions, and seven months after sentencing, the defendant filed his Motion, in which he resurrects his pretrial complaints about the government's investigation of the telephone and email records of his original attorney, Robert Costello.

III.    **The Defendant's Belated Motion Should be Denied.**

The defendant's assertions of government misconduct are baseless.    Moreover, the defendant's Motion is untimely.    The Motion, therefore, should be denied.

A.     **The Government's Investigative Steps Were Appropriate and Taken in Good Faith.**

As he has done repeatedly, the defendant accuses the government of misconduct.    This time, the defendant claims the government improperly sought the grand-jury subpoenas and Stored Communications Act ("SCA") Orders associated with Mr. Costello's telephone and email accounts and misled the Court with respect to the legal process associated with Mr. Costello's

2

records.   *See* Notice at 4-5.   The government conducted an appropriate investigation and acted in accordance with its discovery and ethical obligations.

The government has disclosed to the defendant all of the materials it received in response to the subpoenas and SCA Orders.   In response to the defendant's Motion to Compel, ECF No. 26, the government provided the Court and the defendant with the underlying grand-jury subpoenas and SCA applications.   *See* March 16, 2022, Tr. at 90-92.   When the Court inquired of the government as to the basis for obtaining these materials, the government explained its rationale on the record.   *Id*. at 80-81.   And when it became clear that the defendant would not dispute that he knew of the Congressional subpoena, the government agreed not to introduce any evidence regarding Mr. Costello's records.   *See* July 11, 2022, Tr. at 29.

Nevertheless, the defendant has claimed that the justification for seeking Mr. Costello's records was "specious" and a "pretextual lie."   *See* Notice at 4-5.   But he has never identified any improper purpose that motivated the government's conduct.   The government never sought the contents of any communications, much less communications that implicated the attorney-client privilege.   *See* ECF No. 31 at 13-14 (compiling cases finding that records that show only the dates and times of communications between and attorney and client are not privileged); *see also United States v. Suggs*, 531 F. Supp. 2d 13, 23 n. 16 (D.D.C. 2008) ("It is the substance of the communications which is protected . . . not the fact that there have been communications.") (citations omitted).

Moreover, the government had a valid reason to seek the grand-jury subpoenas and SCA Orders.   In order to prove contempt of Congress, the government was required to show that the defendant willfully failed to comply with a Congressional subpoena.   *See* March 16, 2022, Tr. at 87-89 (Court describing elements of offense, including discussion of willfulness).   As the

3

government has repeatedly pointed out, the government bore the burden of proving the essential elements of the offense, including the defendant's knowledge of the subpoena.   *See id*. at 11-13. All the communications between the Select Committee and the defendant passed through Mr. Costello.   Accordingly, the government issued grand-jury subpoenas and obtained SCA Orders— two of the most common-place legal tools used in criminal investigations—that sought basic subscriber information and toll records regarding telephone numbers and email addresses the government had reason to believe belonged to Mr. Costello.   As the government explained, these were directed specifically at establishing defendant's knowledge and notice of the subpoena.   *See* ECF 36-1, Surreply at 1-2.

The defendant has tried to twist these routine investigative steps in a misguided attempt to cast aspersions on the prosecution.   Chiefly, the defendant argues that his knowledge of the subpoena was never in dispute, so these investigative steps were unnecessary.   *See* Notice at 4-5. While it is true that the defendant eventually conceded that he knew of the subpoena, the government conducted its investigation before the defendant made this concession.   The government could not predict which defenses or legal theories the defendant might choose to raise or whether those theories might shift from one defense to another as the case progressed.   *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 69–70 (1991) ("In the federal courts, '[a] simple plea of not guilty . . . puts the prosecution to its proof as to all elements of the crime charged.'").   Had the defendant claimed Mr. Costello did not communicate to him the existence of the subpoena, for example, the nature and timing of their communications would have been highly relevant.   As the government pointed out when addressing this issue with the Court, defendant's attacks are classic examples of "Monday morning quarterbacking."   *See* March 16, 2022, Tr. at 80.

4

Relatedly, the defendant attempts to impugn the integrity of the investigation by invoking internal DOJ policies regarding subpoenas issued to attorneys. *See* Notice at 6. Specifically, the defendant contends the government "shockingly represented" that DOJ policy did not require supervisory approval in order to obtain the subscriber information and toll records for Mr. Costello's accounts. *Id.* But there is nothing shocking about the government's representations to the Court. As the government explained the first time the defendant raised this issue, the DOJ guidance is clear on its face: approval is only required for subpoenas issued "to an attorney" and it is not required for subpoenas issued to third parties, such as service providers. *See* DOJ Manual § 9-13.410.[2]

---

[2] In any event, the guidance explicitly states that it does not create any rights or circumscribe otherwise lawful investigative steps. *Id.* at § 9-13.410 (F). *See also United States v. Caceris*, 440 U.S. 741, 755-756 (1979) (failure of law enforcement agent to follow internal guidelines does not give rise to an enforceable right); *United States v. Williams*, 827 F.3d 1134, 1152 n.7 (D.C. Cir. 2016) (finding policy in DOJ Manual "not judicially enforceable in a criminal case) (citations omitted).

Accordingly, the defendant's questions about the government's compliance with its own policies is misplaced. It is not appropriate to inquire as to how the government implements its internal policies. "Article III of the Constitution limits the exercise of the judicial power to 'Cases' or 'Controversies,'" a "fundamental limitation" that "preserves the 'tripartite structure' of our Federal Government, prevents the Federal Judiciary from 'intrud[ing] upon the powers given to the other branches,' and 'confines the federal courts to a properly judicial role.'" *Town of Chester, New York v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). "Our legal system does not contemplate an inquisitorial role for federal judges." *In re United States*, 398 F.3d 615, 617 (7th Cir. 2005) (per curiam). Particularly when dealing with actions of the Executive Branch, separation of powers principles constrain the courts' inherent and supervisory authority. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 15 (1972) (separation of powers forbids courts from becoming "continuing monitors of the wisdom and soundness of Executive action"); *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 131 (1940) ("The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to them.") (citation omitted).

On the rare occasions when a district court has attempted to supervise prosecutorial decision making, the appellate courts have prohibited such actions. *See, e.g.*, *In re United States*,

The defendant has also claimed that the government targeted Mr. Costello's social-media habits and sought information extending back to March 2021, months before the Select Committee issued the subpoena to the defendant.  *See* Notice at 3.  This is incorrect.  The government provided both the Court and the defendant with the relevant subpoenas and SCA applications. *See* March 16, 2022, Tr. at 90-92 (Court notes it reviewed documents in camera and confirms the government's offer to produce the underlying documents to defendant).  Thus, as the defendant is well aware, the legal process at issue sought only telephone numbers and email accounts and was limited to September and October 2021, the dates relevant to the investigation.  *See* March 16, 2022, Tr. at 90-91.  Defendant's contention that the government's subpoenas and SCA Orders were overbroad is meritless.

Finally, the defendant criticizes the government for obtaining records belonging to a different "Robert Costello," who was not involved in the defendant's representation.  *See* Notice at 6.  The defendant claims that the government "simply [made] up email addresses that had some form of the name Robert Costello."  *Id.*  Relatedly, the defendant claims that the government

---

503 F.3d 638, 643 (7th Cir. 2007) (issuing writ of mandamus, precluding the court from "requiring access to information about ongoing investigations or deliberations within the Executive Branch.").   The circuit court noted that while the district court's inquiry consisted of "questions a United States Attorney might well ask of an Assistant United States Attorney; they are not appropriate questions for the Judicial Branch to ask of the Executive Branch."  *Id.* at 641.  The court also noted that "[m]ultiple privileges cover the internal deliberations of the Executive Branch, just as they do for the Judicial Branch's internal deliberations."  *Id.*; *see also In re United States*, 398 F.3d at 618 (finding that "[t]he fundamental problem with [the court's] inquiry is that the United States Attorney is not answerable to a judge for the deliberations among his staff . . . [t]he intra-office conversations and memoranda that the judge wants to see are covered by multiple privileges . . . [h]ow the United States reaches its litigating positions, who said what to whom within the prosecutor's office, and so on, are for the Attorney General and the President to evaluate . . . [although] [j]udges often are tempted to seek a larger role in the conduct of litigants, [that] temptation must be resisted in order to maintain separation between executive and judicial roles.").

submitted an SCA application based on "recklessly and demonstrably false representations," and that the government's failure to correct the mistake reflects a lack of candor to the Court.   *Id*. These accusations are baseless and belied by the record.   With respect to this process, the government mistakenly included an ultimately irrelevant email address.   *See* ECF No. 36-1 at 3-4.   But, "[s]ometimes investigations take wrong turns or hit dead-ends," and sometimes, "investigative paths are pursued based on a mistaken belief."   *Id*.   Making a mistake, while pursuing investigative leads with the goal of obtaining potentially relevant evidence, does not constitute bad faith.   Nor does the defendant offer any plausible theory – because there is none – as to why the government would take such action in bad faith.

**B.     The Defendant's Belated Motion Re-Raises Fully Litigated Issues and Does Not Seek a Remedy.**

As the defendant has conceded, the grand-jury subpoenas and SCA orders associated with Mr. Costello's telephone and email records were the subject of extensive litigation before this Court.   *See* Notice at 1-2.   Indeed, the Court addressed the subject during multiple hearings, reviewed the subpoenas and SCA documents in camera, and issued rulings limiting the use of any information obtained pursuant to the documents.   *See, e.g.,* March 16, 2022, Tr. at 61-90; June 15, 2022, Tr. at 129-30; July 11, 2022, Tr. at 137.   The Court found no prejudice to the defendant, however, and declined to dismiss the indictment for that reason.   *See* June 15, 2022, Tr. at 129-30.   The Court expressed some concern with the government's conduct, but it noted that the issue should be resolved "after trial[,] not during it."   June 15, 2022, Tr. at 129-30; July 11, 2022, Tr. 137.

Notwithstanding the Court's invitation, the defendant did not raise the issue of Mr. Costello's records after the jury returned its verdict.   The defendant conducted extensive post-

trial litigation.   *See, e.g.*, ECF No. 141 (supplement to previously filed Motion to Dismiss); ECF No. 142 (motion for a new trial).   Yet at no point in the post-trial proceedings—when the parties were still before the Court and available to answer questions about the specific legal process involved—did the defendant raise any issue about Mr. Costello's records.   Once the defendant filed his notice of appeal on November 2, 2022, the proceedings before this Court should have concluded.   Instead, the defendant waited an additional two months to "remind" the Court of the "relevant events and chronology," Notice at 2, regarding Mr. Costello's records and an additional five months to file his Motion requesting a hearing.

Although the government does not dispute this Court's jurisdiction to consider the Motion, the timing of the filing and the failure to request any specific relief suggest that the defendant is merely attempting to manufacture a controversy where there is none.   And although the Court stated that questions about Mr. Costello's records should be resolved after trial, it did not grant the defendant license to forgo raising this issue until some indefinite point in the future.   Because the defendant failed to raise any purported outstanding issue in a timely fashion, this Court should not condone the defendant's efforts to draw out this matter.

**IV.     Conclusion**

In sum, the defendant fails to point to anything improper about the government's conduct in the investigation in this matter.     Nor does he sustain his claim about lack of candor to the Court. The Court should not indulge defendant's attempt to malign the prosecution—particularly when the claims are baseless and untimely.     The defendant's motion should, therefore, be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/*John Crabb Jr.*
Christopher R. Howland (DE 5556)
John Crabb Jr. (N.Y. Bar No. 2367670)
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7106
christopher.howland@usdoj.gov