\

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 21-670 (CJN) |
| v. | : | |
| STEPHEN K. BANNON, | : | |
| *Defendant*. | : | |

## REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A HEARING ON THE GOVERNMENT'S MISCONDUCT

On May 30, 2023, Mr. Bannon filed a Motion for a Hearing regarding the Government's misconduct in this case [ECF# 185]. That Motion followed Mr. Bannon's January 4, 2023 Notice, reminding the Court that the matter was outstanding, that the Court had expressed its concern about the Government's conduct and about the Government's response after having been confronted with the underlying misconduct, and that the Court had indicated that it thought the matter appropriately should be addressed "at a later date after trial." [ECF# 182 & 185-1, quoting from July 11, 2022 Hearing Tr. at 137; June 15, 2022 Hearing Tr. at 129-130].

On June 13, 2023, the Government filed its Opposition to Mr. Bannon's Motion for a Hearing [ECF# 187]. Mr. Bannon now files his Reply.

### Introduction

The Government's Opposition to the Motion makes it crystal clear that this Court must take forceful action in this matter or this kind of outrageous misconduct surely will be repeated. In response not just to the Motion, but to the Court's earlier notice to government counsel that the Court had serious issues with their conduct vis a vis defense counsel and with their failure to

understand why their conduct was problematic,[1] the Government's Opposition takes no accountability for its misconduct, offers no apology, includes patently and demonstrably false representations to the Court, and it claims to the Court that what it did here in seeking access to defense counsel's personal and professional telephone records, emails, and social media practices, without any supervisory authority or legally cognizable reason, were just "routine investigative steps."[2]  That is shocking; but perhaps even more offensive and frightening is government counsel's warning to the Court in its Opposition that the Court has no right to question its conduct, confusing reference to its policy manual as a guidepost for expected/accepted protocol with trying to enforce an internal policy to exclude evidence in a criminal case.  [See ECF# 187 at 5-6, n.2].  Mr. Bannon does not seek sanctions based on a violation of internal DOJ policy; rather he cites that policy as some evidence that the prosecutors acted recklessly and without regard to their own policy and that they were not candid with the Court when they attempted to explain why that policy purportedly did not apply.

### Some Preliminary Observations about the Government's Opposition

There are a couple of primary features to the Government's Opposition that stand out:

### The Government Knew Mr. Bannon Was Aware of the Subpoena

First, the Government's purported explanation for why it used the Stored Communications Act and grand jury subpoenas for its extraordinarily intrusive effort to obtain all of defense counsel Robert J. Costello's phone records, email records, and social media

---

[1] **The Court:** "I do continue to have serious issues with how the government treated the situation of Mr. Bannon's counsel and also how the government does not appear to have any issue with its conduct. But, in my view, those issues are better left to be addressed at a later date after trial." [June 15, 2022 Hearing Tr. at 129-130].

[2] ECF# 187 at 4.

records  - to ensure that Mr. Bannon "knew of" the subpoena (ECF# 187 at 3; March 16, 2022 Hearing at 11-13) - continues to make no sense for at least two reasons:

The January 6th Committee staff had every opportunity to serve Mr. Bannon personally and directly with the subpoena if it were in any way concerned about whether he would actually learn about the subpoena if it were just provided to his lawyer.  But instead of serving him personally, Committee staff asked Mr. Costello, in writing, if he would accept service of the subpoena for Mr. Bannon.  Mr. Costello, in writing, expressly agreed to extend this courtesy to the Committee, and formally notified the Committee that he had accepted service of the subpoena for Mr. Bannon, for which the Committee thanked him on September 24, 2021.[3]

At no time ever was there any question whatsoever raised as to whether Mr. Bannon knew about the subpoena. Government counsel rewarded Mr. Costello's courtesy in accepting service of the subpoena for Mr. Bannon at the Committee's request, by giving themselves license to obtain subpoenas and at least one Stored Communications Act Order[4] which they then used  to

---

[3]  Attached hereto as Exhibit 1 is the Bates Stamped email exchange between the Committee and Mr. Costello asking him whether he would accept service of the subpoena for Mr. Bannon, confirming that he had accepted service for Mr. Bannon, and thanking Costello for confirming that he had accepted the subpoena for Mr. Bannon.  This correspondence was in September of 2021, well before any subpoena was issued or SCA Order was applied for seeking Mr. Costello's personal records.  The Government's claim now that it issued the subpoenas and applied for the SCA Order before it knew whether Bannon knew about the subpoena [ECF# 187 at 3 & 4] cannot be reconciled with the record in this case, including the express written confirmation of service in the manner the Committee requested and the Committee's expression of thanks for his acceptance. The assurance the Government had that Mr. Bannon knew about the subpoena and never even suggested that that was a contested issue was made clear by counsel at all times. There was no later event that somehow provided more of an assurance.  The Government's claim that its subpoenas pre-dated any such assurance or concession [ECF# 187 at 4] is simply false.

[4] In its Opposition, the Government represents to the Court that in response to the motion to compel, it "provided the Court and the defendant with the underlying subpoenas and SCA **Orders**."  [ECF# 187 at 3] (emphasis added).  This representation is false, as will be discussed below.  Rather than providing these materials in response to our motion to compel, the Government vigorously opposed producing its subpoenas or other evidence of the means it used

obtain defense counsel's personal and professional emails, phone records, and social media records, along with other citizens' private records.

At no time, ever, did any member of the prosecution team (3 AUSAs and 4 FBI Agents) question whether Mr. Bannon had actually received or knew of the subpoena. If the Committee (or Government counsel) actually had any question about it, the simple and direct course would have been to ask Mr. Costello to provide a statement from Mr. Bannon acknowledging its receipt. On no planet does it make sense to instead obtain a court order authorizing the FBI and Government counsel to intrude on Mr. Costello's private communications, attorney-client phone email and records, and social media to determine whether Bannon had the subpoena, rather than taking this immediately available simple step. But of course, in truth, the Committee and government counsel well knew this was never an issue and government counsel just concocted this phony justification to avoid accountability. Permitting their misconduct to go unchecked, would be to license them to violate their duty of candor to the Court with impunity.

---

to obtain defense counsel's records, other than a single SCA Application, which it agreed to produce under seal. [See ECF## 31, 36-1]. The Court directed the Government to provide the subpoenas and other efforts to the Court and Government counsel confirmed that it could provide them only to the Court on an *ex parte* basis. [March 16, 2022 Tr. at 97-98]. One SCA Application was provided to defense counsel, at the Court's direction and no subpoenas were provided by the Government. Indeed, the very citation on which the Government relies for its claim that it already has provided the defense with the subpoenas demonstrates that only the one SCA Application was provided to the defense and none of the subpoenas. [See ECF# 187 at 3, citing March 16, 2022 Tr. at 90-92]. To be sure no transmission by the Government was missed, the undersigned emailed current government counsel and advised them that their assertion did not comport with any of defense counsel's records and we have no record of ever having received the subpoenas or any other SCA Application. Government counsel was asked to provide any evidence on which its assertion was based. [Exhibit 2]. Government counsel never responded to that email. A question Mr. Bannon has raised all along is whether there was more than one SCA Application and Order. The Opposition now gives rise to that question once again, given the representation that the Government purportedly provided us with the "SCA Orders" in the plural.

Moreover, government counsel was aware that there was no issue as to whether Mr. Bannon received the subpoena from the relevant correspondence the Committee provided with its referral **and** from a memorandum Mr. Costello sent to government counsel *before* the subpoenas were issued and the Stored Communications Act Application was filed with the Court.[5]  Indeed, it included this information in its SCA Application.[6]

These prosecutors had been in regular communication with Mr. Costello about the case since well before it issued the subpoenas or applied for any SCA Order for his personal and professional email, telephone, and social media records.  At the heart of all communication between Mr. Costello and the Committee and Mr. Costello and these prosecutors was the advice of counsel defense.  Mr. Costello advised the prosecutors in writing and orally that any and all actions or failure to act by Mr. Bannon with respect to the subpoena were entirely based on advice and directions Mr. Costello gave to Mr. Bannon.

It is difficult to conceive how, under any reasonable scenario, these prosecutors in good-faith could have believed that a defense could also have been that Mr. Bannon never received or

---

[5] See Costello October 29, 2021 Memorandum to government counsel, [ECF# 182-1, Exh. A, p.2] (recounting the Committee's request that Mr. Costello accept service of the subpoena for Mr. Bannon and Mr. Costello's agreement to do so).  Government counsel applied for the Stored Communications Order that we know about on November 10, 2021, 12 days after they already had been apprised in writing by Mr. Costello that he had accepted service of the subpoena for Mr. Bannon (October 29, 2021 memorandum) and well after it knew that the Committee was fully satisfied that Mr. Bannon had been apprised of the subpoena (Exhibit 1).

[6] See ECF# 1 (Sealed) in 1:21-sc-03533-ETH at 3.  Government counsel advised the Court in its SCA Application that it was imperative that the provider (Google LLC) be directed by the Court not to notify any person that it was turning over these personal records to the Government because the evidence could be tampered with or destroyed by Mr. Bannon and that therefore the Application had to be maintained under seal as well.  *Id.* at 7-8.  It never explains how Mr. Bannon or anyone else would have destroyed or altered Google's records concerning emails that had been sent or received or who visited Google Hangouts.  There is no legitimate basis in fact at all for its assertions in this regard in its SCA Application.

even knew about the subpoena.  The two would be completely irreconcilable.  And certainly, it could not have believed such a defense was possible in sufficient measure to justify the wholesale effort at obtaining defense counsel's private phone, email, and social media records, knowing the special status accorded to attorney records.

This is especially so, given that the whole purpose of the communications between defense counsel and these prosecutors was for defense counsel to argue against an indictment for Mr. Bannon.  As noted, the Government had every opportunity to simply insist as a condition of such discussions or for any other reason, that Mr. Bannon provide a one-line declaration acknowledging receipt of the Committee subpoena, consistent with Mr. Costello's repeated assertions that he had.

### The Subpoenas and SCA Order(s) Would Not Serve the Claimed Purpose

Secondly, the Government's Opposition still provides no explanation at all for why or how obtaining Mr. Costello's phone records and email records, let alone his "Google Hangout" history, would have satisfied it as to whether Mr. Bannon had been apprised of the subpoena.  Surely, Government counsel is not suggesting it can divine the substance of a phone conversation, an email exchange, or a visit in a Google Hangout room between Messrs. Costello and Bannon from a telephone number or an email address.  That of course, is above and beyond the equally obvious and relevant question as to why the Government excluded from its search the actual email address it knew was, in fact, the right Mr. Costello's email, from having corresponded with him repeatedly by email.  Nothing about the Government's conduct makes any sense at all – at least in terms of finding a legitimate reason for its misconduct.

**The Government's Response is Filled with MisRepresentations of Record Facts**

Third, the Government's Response is filled with demonstrably false representations of material facts as will be addressed in detail below.  The irony in responding to a motion seeking a hearing concerning Government misconduct by making patently false misrepresentations of material facts and offering purported justifications for the misconduct that make no sense on any level and that are belied by the record is inescapable.  But when one considers that this is coming from the "Public Integrity" division of the United States Attorney's Office, the matter should be much more concerning that simply ironic.

**Reply to specific assertions in the Government's Opposition**

**The Issues Raised Have Not Previously Been Addressed in this Context and are Timely Raised.**

Government counsel complain that the issues raised in the Motion "were previously raised and addressed."  [ECF# 187 at 1].  That, of course, is not at all true.  The Court expressly advised the parties that it would only address the subject matter of this Motion, focusing on the Government's misconduct, after the trial had concluded and, of course, as government counsel well know, that consideration has not yet happened. **[7]**

---

[7]  **The Court: "**Questions about the government's conduct regarding the subpoenas or subpoena for Mr. Costello's email and phone records or efforts to procure that information, questions about that conduct in my mind remain a matter for resolution after trial not during it."  [July 11, 2022 Hearing Tr. at 137].

Government counsel complain that Mr. Bannon "attempts to dredge up" the allegations "seven months after he was sentenced."  [ECF# 187 at 1].  This too is disingenuous at best.  Mr. Bannon had no control over when "after trial" the Court had in mind to take up what it characterized as its "serious issues" with the Government's conduct and its failure to appreciate why its conduct was problematic.  [June 15, 2022 Tr. at 129-130].  Mr. Bannon was sentenced on October 21, 2022.  [Minute Entry for October 21, 2022].  On January 4, 2023, having heard nothing yet about taking up this matter, which the Court had said it wanted to take up after the trial, Mr. Bannon filed a Notice, reminding the Court that the matter remained outstanding and reiterating the relevant facts.  [ECF# 182].  Between Mr. Bannon's sentencing on October 21, 2022 and the

**Mr. Bannon Seeks Specific Relief**

Government counsel also complain that Mr. Bannon does not seek any specific relief in

his Motion.  [ECF# 187 at 1].  That is not true.

Mr. Bannon expressly seeks to have a hearing on government counsel's misconduct, their

failure to recognize the seriousness of their misconduct, and for the Court to consider, after

hearing from government counsel, what sanction is appropriate to oppose.

Mr. Bannon also seeks to finally be provided by the Government with evidence of the

efforts, in addition to the single SCA Application that has been produced, that it used to try to

obtain Mr. Costello's personal and professional records in advance of the hearing.  [ECF# 185 at

3, 5].  As noted, the Government's claim in its Opposition that it already provided the documents

[ECF# 187 at 1, n.1; 3; 6][8] is not correct.  However, since government counsel assert (albeit

---

time that Notice was filed, litigation continued in the trial court and relevant transcripts were
being re-numbered and filed anew.  [ECF## 163, 165, 170-179].  There was neither the passage
of "seven months" as government counsel falsely claims, nor any undue delay and there certainly
has been no prejudice to the Government from any timing concern, nor is any even alleged.  The
Government concedes the Court's jurisdiction as it must.  [ECF# 187 at 8].

[8] On each occasion in its Opposition that government counsel represent to the Court that in
response to the Motion to Compel, the Government provided the defense with all of the
underlying grand jury subpoenas and SCA Applications they cite to Pages 90-92 of the transcript
from the March 16, 2022 oral argument on a series of motions.  Its representations are absolutely
not supported by that citation; in fact, quite the opposite is true.  In response to Mr. Bannon's
Motion to Compel, ECF# 26, the Government vigorously objected to producing any of the
underlying subpoenas or other methods used to obtain defense counsel Costello's professional
and person records.  [See ECF# 31 at 10-13; see also ECF# 26-1, 26-2].  Indeed, the Government
even sought leave to file a Sur-reply on the subject, and in it continued to adamantly oppose any
disclosure of the underlying documents, with the exception of a single SCA Application.  [ECF#
36-1].  The transcript to which government counsel now cite in the Opposition in support of their
representation that they provided all underlying subpoenas and SCA Applications to the
Defendant reflects, instead, that only the single SCA Application was provided by the
Government to the Defendant.  The other materials were only provided to the Court on an *ex
parte* basis, at the Court's direction.  [March 16, 2022 Tr. at 90-92].  As earlier noted, in an
abundance of caution, in light of the repeated representations on this subject in the Opposition,
the undersigned sent an email to the authors of the Opposition on June 16, 2023, advising that

incorrectly) that they already provided all of the same to the Defendant, they should have no issue with actually providing all such documents now.

### The Government Seeks to Minimize Its Misconduct and Misrepresents the Facts

Throughout the Government's Opposition, government counsel attempt to minimize the seriousness and magnitude of the misconduct by mischaracterizing what the prosecutors in this case actually did.  They refer to their broad use of grand jury subpoenas and "SCA Orders" to obtain defense counsel telephone records, email correspondence, and social media practices as simply the use of "two of the most common-place legal tools in criminal investigations," [See e.g., ECF# 187 at 4], and they complain that Mr. Bannon has tried to "twist these routine investigative steps in a misguided attempt to cast aspersions on the prosecution."  [*Id.*].  As for the complaint about the hundreds of records government counsel sought and obtained through the SCA Order and subpoenas, through made-up email addresses, government counsel professes to take great offense, characterizing the same as just a matter of "the government mistakenly includ(ing) an ultimately irrelevant email address."  [ECF# 187 at 7].

### The Government Did Not Just Make a "Mistake" as to One Email Address

The Government's characterization of their actions bears little resemblance to reality.  First, of all, this was not at all a matter of "mistakenly includ(ing) an ultimately irrelevant email address."  Rather, as the Court previously has been advised (and as government counsel well know), government counsel simply made up several email addresses that included the name Robert Costello and actively sought email records, phone records and more for each of those

---

their representations could not be reconciled with the records of any of Mr. Bannon's defense counsel, and asking government counsel to provide support for its representations, by referring to where, when, and how the Government provided these subpoenas and other documents to the defense. [Exhibit 2].  No response from government counsel has been received.

made-up email addresses that it had no legitimate reason to believe belonged to defense counsel

Robert J. Costello – if they had taken the process seriously enough to do just a basic amount of

investigation first, before authorizing a major privacy intrusion.  The defense is aware of at least

four inapplicable email addresses the Government used to obtain email correspondence and

much more.  [See ECF## 26 at 2-6; 34 at 5-11]. And they did not just "ultimately" turn out to be

irrelevant.  There was no reason to believe they belonged to defense counsel Robert J. Costello

*ab initio*.  A simple internet search ahead of time, by one of the 4 FBI Special Agents or one of

the 3 seasoned prosecutors from the "public integrity" unit, would have shown the Robert

Costello owners of the emails they searched to be, in one case some thirty years younger than

defense counsel Costello, and in other instances to live in completely different places and have a

different middle initial.

### Government Counsel Procured an SCA Order Under False Pretenses

It most certainly was not a matter of just one "mistaken" email search.  In the case of the

Stored Communications Act Application, for example, these  prosecutors, as officers of the

Court, falsely represented to a court in this District that "according to law enforcement databases

and (Google LLC) subscriber records," the Google account "robertcostello@gmail.com" is

subscribed to the Robert Costello who is defense counsel in this case and that defense counsel

Costello logged into the subject account many times between September 22, 2021 and October

21, 2021."  [See ECF# 1 (Sealed) in 1:21-sc-03533-ETH at ¶¶ 23-24].[9]  In truth, the Robert

---

[9] The Court should require the Government to produce evidence of the "law enforcement databases" and "PROVIDER subscriber records" which government counsel represented to the Court tied this account to defense counsel Costello.  They also should be required to produce the subscriber records which they represented to the Court established that defense counsel Costello logged into this account.

Costello whose Google accounts were invaded by the SCA Order was a man thirty years younger who lived in a completely different place from defense counsel Costello.

These were material representations made to a court in this District to obtain an intrusive Stored Communications Act Order based on false pretenses. Each of the prosecutors in the case, Mr. Cooney, Ms. Gaston, and Ms. Vaughn filed the SCA Application together and each bears responsibility for the false pretenses under which it was procured and the resulting inexcusable invasion of privacy.

This single SCA Order alone, led to the production of some 598 documents from Google, going back as far as March 5, 2021.[10] Google's production under the SCA Order the Government obtained under false pretenses included not just email addresses and dates, times, and duration of correspondence, but also detailed information about SMS text messages for a

---

[10] Government counsel complains that Mr. Bannon has asserted that they sought information through the SCA extending back at least as far as March of 2021, many months before the Committee subpoena even was issued. They characterize that assertion as "incorrect" and represent to the Court that we know that the "legal process at issue sought only telephone numbers and email accounts and was limited to September and October 2021." They refer to the claim that the subpoenas and SCA Orders were overbroad as "meritless." [ECF# 187 at 6]. The Government's assertions once again are demonstrably untrue. Mr. Bannon urges the Court to review the SCA Application and the attached Proposed Order and "Attachment A" that are a part of the document – all filed under seal on November 10, 2021. The materials and information the Government asked the Court to order Google to produce to the Government is extraordinarily broad and is only limited to the timeframe the Government cites with respect to certain discrete documents and information. As to the rest there is no temporal limitation at all. Indeed, as government counsel should know, its production to the defense of the fruits of that SCA Order directed to Google LLC indisputably included documents going back to March 2021. [Govt. Bates Stamp: 001151-001249].

Perhaps even more significantly, the SCA Application puts the lie to the claim made to this Court that the SCA Order and subpoenas were only sought to show that Mr. Bannon was aware of the Committee subpoena. The SCA Application expressly asks the Court to Order Google LLC to provide all billing records for the accounts, including the means and source or payment, with credit card and bank account numbers to be provided, and much more, without any date limitation. [See Doc. 1-1 in 1:21-sc-03533-ETH (sealed)].

number which also belongs to a different Robert Costello.  The production also included Google

Hangouts information.  Further the SCA Order production revealed that the Government

apparently had earlier taken another shot in the dark with Google and had a grand jury subpoena

issued for records associated with the made-up email address Robert.Costello@gmail.com.  [See

ECF# 34 at 6-8].

    There are at least four made-up email addresses for which government counsel either

sought a Stored Communications Act Order or had grand jury subpoenas issued to obtain for

some variation on Robert Costello, directing the demands to Google (twice), Comcast, and

Yahoo [ECF# 26 at 2-6] – a far cry from "mistakenly" including "an ultimately irrelevant email

address."  [ECF# 187 at 7.

### The Government Takes No Responsibility for Its Misconduct

    Tellingly, not only is there no indication in the record that government counsel ever went

back to the court that issued the SCA Order to advise the court that the information these

prosecutors had provided to the court to secure an SCA Order was completely erroneous; but it is

now clear that government counsel knew or should have known before they even sought the

SCA Order that their system for identifying Mr. Costello's email address, if they had a system,

was not reliable.  By November 9, 2021, it is clear that government counsel knew, for example,

that its shot in the dark by grand jury subpoena to Yahoo, with a made-up email address for Mr.

Costello was just that.  [ECF# 34 at 9 and ECF# 34-4].  Surely, the Government had an

obligation to apprise the court of this when, on November 10, 2021, it sought an SCA Order for a

made-up Gmail account and other Google account information for a made-up account that it had

no real basis for believing actually belonged to defense counsel Robert J. Costello.  There is no

such equivocation in the SCA Application.

**The Government Inexcusably Invaded Mr. Costello's Professional and Personal
Privacy**

The Government's Opposition further minimizes its actions with respect to phone records
that actually are defense counsel Robert J. Costello's.  The Government obtained by subpoena
mobile phone records of at least 1550 phone calls and text messages to which defense counsel
was a party, with the records showing to whom calls and texts were sent and from whom they
were received. [ECF# 34 at 10].   Government counsel then obtained by subpoena phone records
for defense counsel's home phone, his law firm's office phone, and some unknown number that
was not his [*Id.*].  Obtaining his personal home phone records is particularly offensive for one set
of reasons; but obtaining defense counsel law firm office phone records, without any supervisory
authority, perhaps most clearly reflects a complete disregard for the rationale behind not just the
DOJ policy on obtaining attorney records, but the jurisprudence in this District that makes clear
the danger to the sanctity of the attorney-client privilege that flows from recklessly seeking
attorney records.  (See hereinbelow)

The Government now has a record of phone numbers for Mr. Costello's clients and
prospective clients having nothing to do with this case, phone numbers for witnesses he might
have interviewed and whose identity he intended to keep private for a variety of strategic
reasons, and phone numbers for prospective clients who perhaps would not want anyone
knowing they called an attorney for advice.  This conduct by government counsel severely
undermines, for no legitimately cognizable reason, the fundamental nature of a private law
practice.

It remains a puzzle as to why, if government counsel's true agenda was to search defense
counsel's email records to see whether and when he had contact with Mr. Bannon, it never
sought records from the one email address it actually knew was one that Mr. Costello used from

their own regular email correspondence with him.  Just as with its attempts to get records from the made-up accounts, of course this would not have established in any way whether Mr. Bannon knew about the Committee subpoena; but it is one more piece in the story that further undermines the Government's claim about the reason it deemed it appropriate to use its office, the grand jury, and the office of a court in this District to invade the privacy of Mr. Costello and others named Costello.

### The Government's Failure to Acknowledge Its Misconduct is Astonishing

The Government closes its Opposition by arguing to the Court that Mr. Bannon has failed to "point to anything improper about the government's conduct in the investigation in this matter.  Nor does he sustain his claim about lack of candor to the Court."  [ECF# 187 at 9].  That is nothing short of astonishing on this record.

The prosecutors abused the grand jury subpoena process to obtain voluminous personal email, text, and social media records for innocent citizens having nothing to do with this case, simply by making up email addresses, perhaps hoping one might get a lucky hit, and simply not caring about the intrusion on the privacy it caused for these other citizens. They then used it to obtain private phone records from Mr. Costello's law firm and his home phone, without regard to the implications of the same for his other clients and their privacy and ability to depend on keeping the fact that they are communicating with a lawyer private.

Mr. Cooney, Ms. Gaston, and Ms. Vaughn then falsely represented to a court in this District that another email address it made up belonged to defense counsel and that an intrusive Order under the Stored Communications Act was needed to get all of the records, including emails, text messages, and social media practices, along with billing records and credit card

information, and more with the idea that somehow these records would demonstrate whether or not Mr. Bannon received the Committee subpoena.

In addition, these same prosecutors argued to this Court that its actions were perfectly acceptable and comported with Department of Justice policy on obtaining attorney records because supervisory authority is only required when the attorney records are obtained directly from the attorney and not when these same attorney records are obtained secretly from third party sources by subpoena or a Court Order.  Apparently, in the latter case, there is no need for a check to be put into place to curb the efforts of an overzealous prosecutor?

The Government wants the Court to believe that this is all just standard practice, that false representations in and omissions from an SCA Application do not reflect a lack of candor to the tribunal, and neither does an absurd representation about DOJ policy.  If they are right, then we are all in a lot more trouble than we have recognized.[11]

**The Government's Opposition Makes the Imposition of Sanctions Imperative**

The Government's Opposition makes clear that appropriate sanctions must be imposed against the prosecutors who took the underlying actions against defense counsel, without seeking any supervisory authority, more removed from their zeal to win this case by all means and at all

---

[11] Government counsel also oppose the motion because, they say, Mr. Bannon has never identified "any improper purpose that motivated the government's conduct."  [ECF# 187 at 3].  It should not be Mr. Bannon's obligation to suggest, let alone prove, the motive(s) behind government counsel's sanctionable misconduct.  It might well have been motivated by a desire to get access to information from Mr. Costello's private phone and email records about other clients or which witnesses he has communicated with regarding this case or perhaps it was motivated by the hope of driving a wedge between counsel and his client by showing in discovery that the attorney's records were sought, perhaps creating a conflict for defense counsel concerned about what the records might have exposed.  The conduct was demonstrably and undeniably improper and government counsel have not been candid with the Court. It is not for Mr. Bannon to try to divine why these prosecutors have behaved as they have; their conduct cannot be condoned, whatever the motivation.

costs, abandoning their ethical obligations and abusing the extraordinarily intrusive tools available to them.  Mr. Bannon believes it is for the Court to determine what sanctions are appropriate, after a hearing at which these issues can be fully addressed.  The prosecutors whose conduct is at issue, AUSAs Cooney, Vaughn, and Gaston, should be required to appear and, of course, should be given full notice and an additional opportunity to be heard, if they so desire.

### The Court Clearly Has Authority to Act and Must Send a Powerful Message

Federal courts are vested with inherent power to remedy the misconduct of attorneys and parties practicing before them. *U.S. v. Butera*, 677 F.2d 1376, 1383 (11th Cir. 1982); *United States v. Modica*, 663 F.2d 1173, 1182-86 (2d Cir. 1981)). Available sanctions include "(1) contempt citations; (2) fines; (3) public reprimands; (4) suspension from the court's bar; (5) removal or disqualification from office; and (6) recommendations to bar associations to take disciplinary action." *United States v. Wilson*, 149 F.3d 1298, 1304 (11th Cir. 1998), (citing Bennett L. Gershman, *Prosecutorial Misconduct* Ch. 13 (1997)); *see also United States v. Helmandollar*, 852 F.2d 498, 502 (9th Cir. 1988) ("We note that a variety of sanctions exist to address acts of prosecutorial misconduct, including: appellate reversal; contempt citations; reprimand in a published opinion that specifically identifies the offending prosecutor or government agents by name; removal from office; discipline by the legal profession; and civil actions for damages.").  See also LCrR 57.23, 57.24, 57.26, 57.27.

This Court must at least make some public statement making clear that what these prosecutors did went beyond acceptable bounds.  Their failure to appreciate that requires some disciplinary action including a public reprimand, referral to District of Columbia Bar disciplinary officials, and referral to the Department of Justice's Office of Professional Responsibility and Office of the Inspector General, especially in light of representations made to the Court by

government counsel that when it comes to obtaining attorney records related to an attorney-client relationship, they understand DOJ policy to require supervisory authority only when the records are sought directly from the attorney and not when they are sought through third party subpoenas or Stored Communications Act Orders. [March 16, 2022 Tr. at 13-14]. The Government also should be required to destroy all copies of the records they obtained and certify that they have not maintained any copy anywhere.

Further, some public reprimand is required in light of the cavalier approach and continuing attitude government counsel have taken at all relevant times toward the extraordinary intrusions on the privacy of other people named Robert Costello, whose personal records they obtained through gross negligence, at the very least. Even this is shamefully minimized in the Opposition, with government counsel referring to the matter as the Government "mistakenly included an ultimately irrelevant email address." [ECF# 187 at 7]. Rather, this was the wholesale invasion of the private email and phone records and social media practices of several wrong Robert Costellos and several accounts, notwithstanding the use of 4 FBI Special Agents and 3 federal prosecutors in the effort. Surely, given the obvious indications that the accounts at issue were not tied to the Robert J. Costello who served as Mr. Bannon's defense counsel, had this intrusion been considered for the serious matter it is, it would have been avoided very easily.

### The Government's Conduct Was Harmful

Government counsel argues that the prosecutors' actions caused no harm. [ECF# 187 at 3]. Mr. Bannon has no obligation in this context to show that harm occurred; but, of course, it did.

Government counsel ignores a whole body of law that describes the harm inherent to taking investigative steps that involve attorney records. *See e.g.,* Sara Sun Beale et al., *Grand*

*Jury Law and Practice § 6:10 (2d ed., rev. Dec. 2018)* (In light of the attorney-client privilege, subpoenas that are directed at attorneys "raise special concerns.*"); In re Grand Jury Investigation,* 2019 U.S. Dist. LEXIS 86801, *29-*30, 2019 WL 2179116 (D. D.C., March 4, 2019); *In re Public Defender Serv.,* 831 A.2d. 890, 900 (D.C. App. 2003), *quoting from, Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998).* Privileged communications are "traditionally deemed worthy of maximum legal protection." *Haines v. Liggett Group, Inc., 975 F.2d 81, 90 (3rd Cir. 1992).* The privilege derives from the recognition that "sound legal advice or advocacy serves public ends. . . ." *In re Ti.B., 762 A.2d 20, 28 (D.C. 2000) (quoting Martin v. Lauer, 222 U.S. App. D.C. 302, 310, 686 F.2d 24, 32 (1982)).*

It also just as well settled that subpoenas for attorney records or testimony "implicate serious policy concerns." *In re Public Defender Serv.*, 831 A.2d. at 899 (D.C. App. 2003), citing, *In re Grand Jury Matters*, 751 F.2d. 13, 18 (1st Cir. 1984).

"Particularly when an attorney is representing the client in a pending case, 'the mere issuance of the subpoena may undermine the integrity of the attorney-client relationship.'" *Id.*; *In re Grand Jury Subpoena to Attorney (Under Seal)*, 679 F. Supp. 1403, 1411 (N.D.W. Va. 1988).

The very specter of a subpoena for an attorney's testimony or records "can raise doubts in the client's mind as to his lawyer's unfettered devotion to his client's interests and thus impair or at least impinge upon the attorney-client relationship." *In re Grand Jury Investigation (Sturgis)*, 412 F. Supp. 943, 946 (E.D. Pa. 1976).

In this case, Mr. Costello has made clear the impact finding out about this surreptitious activity by the Government in seeking his attorney records has had on him.  [ECF# 182-1]. Additionally, the Government now has a permanent record of all phone calls, emails, contacts he

has had with other clients, or witnesses in this or other cases, or potential clients who might not have wanted anyone, let alone the Government, knowing he or she had reached out to Mr. Costello in contemplation of needing an attorney.  These are some of the very reasons, subpoenas for attorney records raise special concerns.  The Government is not entitled to this private information and it certainly was not entitled to abuse the Stored Communications Act or grand jury subpoena power to achieve that harm.

Finally, on this point, the assertion that there was no harm here because the Government did not obtain the content of Mr. Costello's conversations is simply wrong and ignores the harm from privacy intrusions even outside the attorney-client arena well recognized and explained by the United States Supreme Court.  *See e.g., Carpenter v. United States*, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018); *Riley v. California*, 573 U.S. 373 (2014)..

The Department of Justice has recognized these inherent, serious concerns when a subpoena is directed to attorney records and at least one court in this district has noted the same, citing the DOJ Manual.  *See In re Grand Jury Investigation*, 2019 U.S. Dist. LEXIS 86801, *30 (D.D.C., March 4, 2019) (citing U.S. Dep't of Justice, Justice Manual § 9-13.410).  That policy, as has been noted, requires "close control" to be maintained over any effort to obtain attorney records and requires prosecutors to make "all reasonable attempts" to obtain the information sought from attorney records, and expressly directs that these attempts "shall include reasonable efforts to first obtain the information voluntarily."  *Id*. at 9-13.410 B.  Here, of course, as has been noted, Mr. Costello received the subpoena for Mr. Bannon at the Committee's express request, Costello confirmed that he accepted it for Mr. Bannon, and the Committee thanked him for that.  [Exhibit 1].  Government counsel was fully apprised of that, both from the Committee's records and from Mr. Costello's memorandum to government counsel, which predated the

subpoenas and the SCA Order.  Again, if there were any question, and if, *arguendo*, government counsel's agenda in obtaining Mr. Costello's records genuinely was for the purpose of ensuring that Mr. Bannon knew about the subpoena, consistent with DOJ policy of first requesting information that would otherwise be the subject of a subpoena voluntarily, all government counsel had to do was ask Mr Costello to provide a statement directly from Mr. Bannon acknowledging receipt of the Committee subpoena.

The disingenuousness of its claim regarding the purported need for the subpoenas and SCA Order(s) is revealed by its claim that the attorney records were no longer needed "… when it became clear that the defendant would not dispute that he knew of the Congressional subpoena …."  [ECF# 187 at 3.  That is complete nonsense.  There never in any way, shape, or form was a dispute about that; moreover, if an assurance by a Bannon attorney that Bannon had received the subpoena was insufficient, such that the Government claims it needed the SCA Order(s) and subpoenas, why would it have been satisfied later by nothing more than an attorney assurance on the subject? The Government never asked for nor received a statement on the subject from Mr. Bannon; so it makes no sense to argue that it needed the subpoenas and SCA Order(s) because it only had an attorney assurance that he had received it; but it recognized that there was no need for the subpoenas and SCA Orders, once the attorney "conceded" that Bannon had received the subpoena.  They had that "concession" at all relevant times.

## Conclusion

Mr. Bannon respectfully asks the Court to hold a Hearing to address this matter and to discuss the assessment of sanctions against Mr. Cooney, Ms. Gaston, and Ms. Vaughn, as the Court deems appropriate and commensurate with their misconduct in this case.  Their response to the issues raised here and the concerns the Court has expressed about the conduct described

20

herein, as well as the approach taken in the Opposition to the Motion for a Hearing, make it clear

that if the Court does not take action, they will take it as license to continue to engage in such

outrageous misconduct with impunity.  That would be a very bad thing for the integrity of the

system. It is a matter of public and institutional importance for the Court to address this conduct.

Dated: June 20, 2023

Respectfully submitted,

    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: Schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of June, 2023, a copy of the foregoing Reply

was served *via* the Court's CM/ECF system on all properly registered parties and counsel.

    /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)