**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                                        CR Action
                                            No. 1:21-670

         vs.                            Washington, DC
                                        July 14, 2022
STEPHEN K. BANNON,
                                        10:06 a.m.
              Defendant.

        TRANSCRIPT OF IN-PERSON MOTIONS HEARING
              AND PRETRIAL CONFERENCE
        **BEFORE THE HONORABLE CARL J. NICHOLS**
             UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the U.S.:**          **AMANDA ROSE VAUGHN**
                           **MOLLY GULLAND GASTON**
                           U.S. ATTORNEYS OFC. FOR D.C.
                           555 4th Street NW
                           Washington, DC  20001
                           202-252-1793


**For the Defendant:**     **DAVID I. SCHOEN**
                           DAVID I. SCHOEN, ATTORNEY AT LAW
                           2800 Zelda Road, Suite 100-6
                           Montgomery, AL  36106
                           334-395-6611


                           **MATTHEW EVAN CORCORAN**
                           **RIANE WHITE**
                           SILVERMAN THOMPSON SLUTKIN WHITE
                           201 N. Charles Street, 25th Floor
                           Baltimore, MC  21201
                           410-385-2225


**Reported By:**           **LORRAINE T. HERMAN, RPR, CRC**
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue, NW
                           Room 4700-C
                           Washington, DC 20001


*** Recorded by stenotype shorthand and this transcript was
     produced by computer-aided transcription.

1              **P R O C E E D I N G S**

2         (Proceedings started at 10:06 a.m.)

3              **DEPUTY CLERK:**  Good morning, Your Honor.  This is

4    criminal case year 2021-670, *United States of America versus*

5    *Stephen K. Bannon*, who is not present.

6              Counsel, please come forward and introduce

7    yourselves for the record, beginning with the government.

8              **MS. VAUGHN:**  Good morning, Your Honor.  Amanda

9    Vaughn and Molly Gaston for the United States.

10             **THE COURT:**  Good morning, Counsel.

11             **MR. CORCORAN:**  Good morning, Your Honor.  Evan

12   Corcoran and David Schoen, and with us is Riane White, and

13   we've got a pro hac motion for --

14             **THE COURT:**  Yes, I saw that this morning, and that

15   seemed fine to me, and it is granted.  Welcome, Ms. White.

16             So it seems to me that there are a couple pending

17   motions that I would like to hear argument on and then just

18   general trial preparation issues.  Why don't we start with

19   the renewed Motion to Continue, which is ECF No. 108.

20             Mr. Schoen, will that be you?

21             **MR. SCHOEN:**  Yes, Your Honor.  Good morning,

22   Your Honor.

23             **THE COURT:**  Good morning.

24             **MR. SCHOEN:**  Your Honor, I really don't have much

25   to offer in the way of additional argument.  I think the

1    issues are raised.  The arguments are essentially the same

2    as we raised the other day.  And there are simply

3    additional, I believe, inflammatory, overly-prejudicial

4    developments.  And I don't need to speak just to hear myself

5    talk.  I know the Court's read the papers.

6            The hearings continued.  We enclosed or attached

7    the link to the --

8            **THE COURT:**  Yes.

9            **MR. SCHOEN:**  -- excerpt from there, the video and

10   the text.

11           And then there is this one-hour-long special

12   documentary on Mr. Bannon, called "Divided We Fall," set to

13   air on Sunday night, the eve of the trial, and being

14   promoted regularly.  I wanted to submit this one because

15   there's now a new, in my view at least, more inflammatory

16   trailer even that highlights it.

17           There are other things going on.  There are these

18   articles, a new disclosure, by Mother Jones Magazine about

19   some tapes that they say would indicate sort of the idea of

20   election fraud was Mr. Bannon's idea and all of that.  And,

21   again, something like that, of course, could come up at any

22   point in time.  The point here is the cumulative effect.

23   These hearings were scheduled for a finite period of time.

24   We discussed all of that the other day, Your Honor.  The

25   bottom line from our perspective is there's just no reason

1    to have this trial starting now.

2              **THE COURT:**  We could ask, for example, on Monday

3    if, as a result of the voir dire questions and the like, if

4    someone -- whatever the answers are from a potential juror,

5    we can explore with that juror whether and to what extent

6    that person, for example, watched the CNN piece or had seen

7    the Committee hearings this week.  Correct?

8              **MR. SCHOEN:**  Right.

9              The problem, Your Honor, is -- I tried to raise in

10   the paper, which we see all the time in jury selection is if

11   we -- once it's exposed to a group and they weren't familiar

12   with it before, then the risk is increased, in my view at

13   least, to prejudice the rest of the group that hasn't heard.

14   It comes up all the time.

15             I had a case, for example, in New York,

16   prospective juror stood up and said -- it was a Russian

17   Mafia case -- I think all Russians are guilty.

18             **THE COURT:**  I guess I should explain to you then

19   how jury selection in this case is going to work.  We're

20   going to be in the Ceremonial Courtroom so that every single

21   potential juror will be in the gallery, spread out.  Many

22   more people can sit in the ceremonial courtroom than in this

23   one.  I'm going to read to the jurors each of the voir dire

24   questions that I think are appropriate from what the parties

25   have proposed.

1         While we are at it, I'll just tell you, I've been

2    through them.  And I will be circulating to the parties this

3    afternoon, very likely, a Word document that would reflect

4    my take on the appropriate questions that would be asked.

5         Each question -- I think the parties did a very

6    good job of proposing them this way -- will be answerable

7    yes or no.  For "yes" answers, and only "yes" answers, I'll

8    ask the jurors to write the question to which they have a

9    "yes" answer on an index card.  We'll provide them with

10   index cards.

11        Then for the whole pool, I will collect the index

12   cards.  We will then excuse the entire pool.  I will have

13   each juror come in one by one off the list, and we will

14   discuss with that juror, and only in the presence of that

15   juror, why the juror answered "yes" to questions whatever,

16   and explore with them whether and to what extent they can be

17   seated in light of their answers.

18        So I don't intend to have any juror say anything

19   about his or her answer in the presence of other jurors,

20   one; and two, I don't intend to ask any questions of the

21   jurors when they're in the group setting that would expose

22   them to information that they wouldn't otherwise be aware

23   of.

24        **MR. SCHOEN:**  Your Honor, the second part of that

25   process was what I was referring to by individually

1    sequestered voir dire, of course, and that's what I think

2    would be -- without waiving our position that this can't be

3    cured by jury selection --

4             **THE COURT:**  Yes.  And that is definitely

5    preserved.  No doubt about it.

6             **MR. SCHOEN:**  Thank you, Your Honor.

7             Your Honor, my position is both of the motions

8    today are fully briefed, but obviously if the government

9    wants to speak on its motion, then --

10            **THE COURT:**  So let's do this:  I want to hear from

11   the government very briefly on the Motion to Continue Trial,

12   and then I want to hear from the government on their Motion

13   to Exclude the Most Recent Letters, and then I will hear

14   from you on that or Mr. Corcoran, once we've heard the

15   government's position, because I want to explore some things

16   with them that you might want to respond to.

17            **MR. SCHOEN:**  Yes, Your Honor.  Thank you.

18            **THE COURT:**  Thank you.

19            Ms. Gaston.

20            **MS. GASTON:**  Good morning, Your Honor.

21            **THE COURT:**  Good morning.

22            **MS. GASTON:**  I'm handling the Motion to Continue,

23   and then Ms. Vaughn will handle the Motion in Limine.

24            So I won't spend much of the Court's time because

25   what the Court just described is exactly what the government

1    expected to happen in voir dire.  And because of that, we

2    don't expect the jury to be exposed to things each other

3    juror may or may not have seen.

4         **THE COURT:**  Does the government think I should ask

5    the jury, the venire, questions about the very most-recent

6    set of hearings of the Committee?

7         **MS. GASTON:**  No, Your Honor.

8         The government believes that the proposed voir

9    dire that the parties jointly sent to the Court is

10   sufficient in that it asks the jurors if they have viewed

11   any of the hearings, if they have read or seen coverage of

12   the hearings in general --

13        **THE COURT:**  And if we get a "yes" answer to that

14   question, we can explore individually, outside the presence

15   of other jurors, whether and to what extent that has

16   happened.

17        **MS. GASTON:**  Exactly, Your Honor.

18        It seems that the defense is making some

19   assumptions about the viewership of the jury pool here, the

20   reach of some of these publications and channels that we

21   just don't think will bear out, and that we -- we think that

22   we will find a jury pool that, perhaps, has not seen the

23   hearings, has not really reviewed coverage, may not even

24   know who the defendant is.

25        And so we would just ask, to get to voir dire, ask

1      those questions, and --

2              **THE COURT:**  And see where we are.  And if it turns

3      out that, in fact, we cannot find 14 jurors who are

4      sufficiently unfamiliar, unbiased, et cetera, then we would

5      have to start again.

6              **MS. GASTON:**  Exactly.  We would be shocked if that

7      were the case but --

8              **THE COURT:**  I'm very hopeful it won't be, but as I

9      said, I'm open to considering what happens, of course, if

10     that, in fact, is the case.

11             And, of course, I will be very open to each side's

12     arguments about whether a particular juror's answers to the

13     questions require excusal -- yeah, them to be excused for

14     cause.

15             **MS. GASTON:**  Yes.  Thank you, Your Honor.

16             **THE COURT:**  Thank you.

17             So, Ms. Vaughn.

18             **MS. VAUGHN:**  Yes, Your Honor.

19             **THE COURT:**  I've read the parties' papers

20     regarding Mr. Bannon's -- the letter to Mr. Bannon and then

21     the letter that Mr. Bannon sent to the Committee.  It seems

22     to me that something we haven't really explored yet is what

23     evidence might be relevant to the question of default.

24             Obviously the government proposes a definition in

25     its brief, the Merriam-Webster's definition, that there has

1    to be a -- well, I'll just pull it out.

2              **MS. VAUGHN:**  A failure to comply --

3              **THE COURT:**  Yes.  A failure to --

4              **MS. VAUGHN:**  -- do something required.

5              **THE COURT:**  "A failure to do something required by

6    duty of law and failure to appear at the required time in a

7    legal proceeding."  So that's the question of default; and

8    that's not the same question as mens rea.

9              It's just, "Did Mr. Bannon make a default?"  And

10   then the question then is, "Did he fail to appear at the

11   required time in a legal proceeding or --" at least from the

12   government's perspective "-- or did he fail to do something

13   required by duty or law?"  That's clearly an element of the

14   offense.  This is in your Reply brief at Page 3.

15             **MS. VAUGHN:**  Yeah.

16             **THE COURT:**  And it seems to me, but I'd like to

17   have your view on this, doesn't that mean that the jury has

18   to decide what the required time for the production of

19   documents, on the one hand, or the appearance at the

20   deposition was?  Was there a required time and what was it?

21   And then, Did Mr. Bannon fail to act consistent with that

22   requirement.  Those are jury questions.  Correct?

23             **MS. VAUGHN:**  Yes.

24             **THE COURT:**  Okay.

25             So putting aside mens rea, would -- does the

1  government concede that evidence relating to whether there

2  was a date certain to respond is relevant and goes to the

3  jury?

4          **MS. VAUGHN:**  Yes.

5          **THE COURT:**  Okay.

6          So, for example, I'm not saying that this is this

7  case, but if you had a situation where you had a return date

8  and a subpoena but a substantial back-and-forth, including,

9  perhaps, an argument or an implied, leaving-open of the

10  return date or willingness to negotiate a new one, that

11  would all be relevant in the government's view?

12          **MS. VAUGHN:**  Yes.

13          **THE COURT:**  Okay.

14          **MS. VAUGHN:**  And I think there is a temporal

15  element to that too, which goes to this later evidence.

16          **THE COURT:**  Okay.

17          But let's just focus on what happened in October

18  of 2021.  It seems to me that the implications of those --

19  the element and the way one thinks about what it means to

20  make default is that Mr. Bannon would be entitled to, if he

21  wishes, put on evidence that would tend to show that the

22  return dates were not hard and fast.

23          **MS. VAUGHN:**  Well, I think it's hard to completely

24  separate default from his intent because if he --

25          **THE COURT:**  I agree they may be related, but the

1      government has to prove that he had an obligation to appear

2      on a particular date and that he failed to do so.

3            **MS. VAUGHN:**  Yes.

4            **THE COURT:**  And if Mr. Bannon offers evidence that

5      shows that that date actually wasn't the date, for whatever

6      reason, then there wouldn't be a default; or at least the

7      jury would have to consider that evidence in deciding what

8      the date for his obligation was.  Correct?

9            **MS. VAUGHN:**  Yes.

10            If there was evidence that the Committee had

11      excused the charge -- so we charged October 14th as the date

12      for testimony and October 18th as the date for document

13      production.

14            So if there was some evidence that the Committee

15      had pushed those dates prior to his default, that would be

16      evidence that --

17            **THE COURT:**  What about evidence after those dates

18      that would tend to suggest that those dates were actually in

19      flux?  Why does it matter when the evidence, the letter, the

20      conversation, whatever, occurred, so long as it goes to the

21      question of whether the dates were hard and fast?

22            **MS. VAUGHN:**  Well, that's why it's difficult to

23      separate default from his intent because the -- so

24      another -- the definition of default that the government

25      relies on in its proposed jury instructions, for example, is

1    *Bryan*, which says default is, of course, a failure to comply

2    with the summons.

3              So the fact that there is a clear date set, and he

4    doesn't comply by that date, that is the moment in time at

5    which his default is judged.  So was the date of the 14th

6    set at that time, and by the 14th did he have the intent to

7    deliberately not comply.

8              **THE COURT:**  I get that.

9              But imagine -- I'm not saying that the evidence

10   supports this argument.  I'm just exploring the temporal

11   question, which is, imagine the government said, It has

12   always been our position, it's always been clear that

13   October 14th was the deadline to appear for the deposition.

14   And Mr. Bannon says, But Mr. Thompson told Mr. Costello --

15   I'm not saying this happened.

16             **MS. VAUGHN:**  Yeah.

17             **THE COURT:**  I'm just saying for example -- on

18   October 16th, that he had always intended that that date

19   would be a flexible one.

20             **MS. VAUGHN:**  That would seem like evidence to

21   impeach -- to use for impeachment purposes, the evidence --

22             **THE COURT:**  Why wouldn't it go to whether

23   October 14th was a hard and fast deadline?

24             **MS. VAUGHN:**  Because it's a post hoc statement

25   about what the intent of the Committee was at the time of

1    the default.

2         THE COURT:  But it's from the Chairman of the

3    Committee talking about what his view of the return date

4    was.

5         MS. VAUGHN:  Right.  So that could be impeachment

6    of the Committee witnesses or Thompson --

7         THE COURT:  Why wouldn't it just be evidence of

8    whether that date was hard and fast?

9         Let me put it this way:  I think the government

10   concedes that, appropriately in my view, default is a

11   question for the jury.  There are two parts of default.  One

12   is, what was the date that the obligation was required to

13   happen and did the defendant do it?

14        At least, it seems to me, the question of was the

15   date hard and fast is one on which there could be disputed

16   evidence.  I'm not saying there is.  I'm just saying it

17   could be.

18        So then the jury would have to decide, based on

19   the evidence -- the jury will have to decide based on the

20   evidence, did Mr. Bannon, for example, have an obligation to

21   appear for a deposition on October 14th, or was that

22   deadline malleable or not as set in stone as the government

23   has said?  And I get the government's view is that its case

24   is very strong, but I think these are clear jury questions.

25        Then the issue is in my mind, what, if any,

1    relevance, either on that question of default or perhaps

2    even on mens rea, would these later letters have?

3        So imagine, hypothetically, the case is made to

4    the jury that the return dates were malleable, to be

5    negotiated, flexible, not as hard and fast as the government

6    says, and that evidence is there; and the government, of

7    course, has its position on why that wouldn't be sufficient

8    or whatever.

9        And then Mr. Bannon says, Well, and also,

10   inconsistent with my view that the return date was

11   malleable, to be negotiated, et cetera, I later offered to

12   appear.  And that was all consistent.  So why wouldn't that

13   be relevant?

14       **MS. VAUGHN:**  I mean, that's no different from a

15   fraud defendant arguing, I always intended to pay back the

16   money, which courts consistently hold is irrelevant to the

17   issue of whether or not --

18       **THE COURT:**  It's not really the same.  It's saying

19   that the date wasn't hard and fast.  The element of the

20   element, that there had to be an obligation and a particular

21   deadline, he would say it was a malleable date.  There is no

22   similar requirement in a fraud case.

23       He just says, that element, you can't prove it.

24   The reason is, it was a malleable date.  And the evidence I

25   want to put on to show that it was malleable is what

1    happened in October and then my later offer in July to show

2    up.

3             **MS. VAUGHN:**  That just completely erases criminal

4    contempt, Your Honor.  There could be ten defaults.  If the

5    Committee says you have to appear on this day and he doesn't

6    appear, he's in default.  Then the Committee says --

7             **THE COURT:**  I'm not saying it's a strong argument.

8    I'm just asking why the evidence is altogether irrelevant,

9    the government wants to exclude it altogether.

10            **MS. VAUGHN:**  Because the crime of default is

11   complete at the time.  So if the defendant was not aware

12   that the Committee still wanted his information after

13   October 14th; that at the time he defaulted on October 14th,

14   it really has no bearing on his intention to defy the

15   subpoena.

16            And it also creates this perverse incentive where

17   people can just refuse to comply with government orders, go

18   to the brink and then say, Actually, I always intended to

19   comply.  I thought I could comply whenever I wanted to.

20            **THE COURT:**  Well, I'm not saying this is going to

21   be a successful argument, nor am I saying that the

22   government doesn't have evidence to show that these dates

23   weren't malleable.  I'm just saying that if the question of

24   malleability is at least -- has to go to the jury, and if

25   there is some evidence to that question, why isn't later

1      conduct at least potentially relevant to that question?

2              **MS. VAUGHN:**  Well, the Supreme Court in *Quinn* says

3      that for there to be a chargeable offense under the statute,

4      there has to exist at that time a clear-cut choice between

5      compliance and contempt.  So it is temporal.  It's tied to

6      the date of the alleged default.

7              **THE COURT:**  And Mr. Bannon says, or may say, There

8      wasn't a clear-cut choice.  I thought that the dates were

9      malleable.

10             **MS. VAUGHN:**  If he wants to put on evidence that

11     at the time he didn't show up on the 14th, he believed that

12     the dates were malleable, he can do that.  If he wants to

13     argue that he read the Committee's October 8th letter as an

14     invitation for a continuing dialogue past the 14th, he can

15     do that.

16             But the fact that the Committee, afterward, is

17     still trying to get information that it's entitled to is not

18     evidence -- it doesn't provide any evidence of what the

19     clear-cut choice was at the charged time.

20             **THE COURT:**  So in the government's view, should I

21     be excluding any and all evidence after the date that it

22     says the contempt on the deposition subpoena was completed?

23             **MS. VAUGHN:**  The government thinks that that is

24     not relevant to determining whether, on the 14th or the

25     18th, he had a clear-cut choice.

1      **THE COURT:**  So any testimony or documents about

2  events that happened after October 18th is, in the

3  government's view, irrelevant and excludable?

4      **MS. VAUGHN:**  Yeah.  There could be, obviously,

5  instances where it's impeachment evidence.

6      **THE COURT:**  No, I'm talking about, sort of, direct

7  evidence rather than just impeachment.

8      **MS. VAUGHN:**  We don't believe that it provides

9  direct evidence of the defendant's intent and the

10  Committee's provision of a clear-cut choice at the time of

11  the default.

12      **THE COURT:**  Okay.  We've been talking about

13  default.  Obviously I well understand the questions around

14  mens rea.

15      Mr. Bannon has also made an argument about waiver

16  of default.  Can you just address the government's view on

17  that as well?

18      **MS. VAUGHN:**  There's just no support that the

19  government can find in the law that Congress or a Court in a

20  contempt of Court case can waive a criminal offense by just

21  continuing to get -- to try to get compliance.  That would,

22  essentially, turn the criminal contempt statute into a civil

23  contempt statute where someone can erase the past

24  noncompliance by simply complying later.

25      And so the flip side of that is someone can erase

1    their past noncompliance by the government entity seeking

2    it -- continuing to seek it.  It would create this perverse

3    incentive for the government to abandon its efforts to

4    enforce the law or gather information or get testimony or

5    whatever it might be that they are trying to get.  Um -- but

6    it does seem to me to go back to our earlier discussion

7    that, at least in theory, post October 18th statements could

8    go to the question of whether there was actually a clear

9    choice, a clear and cut choice, to appear on a particular

10   date.  Wouldn't it be relevant at least?

11           Imagine, from the government's perspective, a much

12   different scenario where the parties are really negotiating

13   return dates, when to appear and the like.  And rather than

14   send a letter that says, We think you are now in default,

15   there's just a contempt referral -- or I'm sorry, a contempt

16   resolution and then a contempt referral.

17           And while that is going on, the Chairman of the

18   Committee says to the person it's negotiating with, Hey, I

19   always intended these dates to be flexible.  I wanted to

20   work this out.  And even though that happened after the date

21   the government alleges that default occurred, why wouldn't

22   that later statement be at least relevant to the question of

23   whether the date was hard and fast?

24           **MS. VAUGHN:**  Well, I guess when I say "impeachment

25   evidence," that's kind of what I mean.

1          **THE COURT:**  Okay.

2          **MS. VAUGHN:**  So if Ms. Amerling is testifying and

3     she says, Here is the letter that we sent on the 8th, and we

4     said, You're going to be in default if you don't show up, if

5     there was evidence that she knew the Chairman had expressed

6     something contrary to that letter or had expressed something

7     that undermined the clear words of the letter, that might be

8     relevant.

9          But as far as, sort of, the Committee's -- the

10    individual members', sort of, internal thoughts about

11    whether they still want to try to get compliance and things

12    like that, that's not really relevant.  The relevance is

13    what did the letter -- or what do the communications to the

14    defendant mean?

15         So if there's evidence that they didn't mean what

16    they said they meant, then that would be one thing.  But

17    mere evidence that they're continuing to try to get

18    compliance doesn't really undermine the meaning of the prior

19    letters.

20         **THE COURT:**  I get the impeachment argument, but

21    what if Mr. Bannon wanted to testify and say, Two days after

22    the government took the position that I had missed my

23    clear-cut deadline, Mr. Thompson was telling me it wasn't a

24    real deadline; he wanted me to appear the next week and we

25    should work it out?

1          **MS. VAUGHN:**  That couldn't possibly inform his

2     intent at the time.  It wouldn't be relevant.

3          **THE COURT:**  Wouldn't it go to whether there was a

4     default?  Whether that was, in fact, a hard and fast

5     deadline?

6          **MS. VAUGHN:**  Well, the default is really about

7     what was given to the defendant as a choice.

8          So if the defendant doesn't know about things, it

9     really can't be a choice that he's presented with.  And,

10    again, I think it would go more to this idea of, I'm reading

11    the words on the paper, but there's some evidence later that

12    those words, at that time, did not mean what they meant.  So

13    in your hypothetical, Chairman Thompson's words are sort of

14    backward-facing, like, I didn't mean what I said there.

15         Whereas the evidence that we're talking about is

16    more, You're in default.  We would still like this

17    information.  It's just not the same kind of evidence.

18         **THE COURT:**  Understood.  I get it.  Thank you.

19         Mr. Schoen or -- will you be addressing this as

20    well?

21         **MR. SCHOEN:**  Yeah.

22         **THE COURT:**  Thank you, Ms. Vaughn.

23         **MR. SCHOEN:**  Yes, Your Honor.

24         The Court's right on with its questions, I mean,

25    quite frankly.  This isn't a matter of Chairman Thompson

1    just insisting that they get the information still.  They

2    would really like to get it afterwards.  His words are, on

3    October 19th, "We continue to expect immediate compliance by

4    Mr. Bannon."  Compliance with what?  Compliance with the

5    subpoena that was still open.

6         The contempt referral to Speaker Pelosi, "Continue

7    all efforts to enforce the subpoena."  What subpoena, if

8    there's already been -- and by the way, the logical

9    conclusion of the government's --

10        **THE COURT:**  Well, one can default on a subpoena

11   and still have it be operative and binding on them.  Those

12   are not inconsistent.

13        **MR. SCHOEN:**  I would respectfully disagree with

14   that, Your Honor.  If he defaulted on the subpoena, then the

15   subpoena was extinguished.  That's my position, at least.

16        **THE COURT:**  Okay.

17        **MR. SCHOEN:**  The logical conclusion of the

18   government's argument, I think, points out just how sick,

19   I'll say, the definition of "willfulness" is from *Licavoli*

20   that we're applying.

21        When the government's theory -- when

22   Chairman Thompson wrote to Mr. Costello on the 19th, "Change

23   of course.  We expect compliance with the subpoena," they

24   could have gotten -- Bannon could have come in that day,

25   testified fully, given them all of the documents, and then

1    they would charge him with criminal contempt still, because

2    according to their definition, he willfully defaulted on

3    the 14th.

4           That can't possibly be the way our system works.

5    It would strip away completely what we've been told in the

6    cases is the constitutionally-mandated accommodation

7    process.  We don't look at this in a vacuum.

8           There was a back-and-forth.  What did

9    President Biden's letter mean through this Jonathan Su on

10   the 18th when he said, on the 18th -- or after the 14th and

11   testimony has occurred already -- and he wrote in there,

12   "There's really no reason now not to comply.  We've already

13   said we don't think privilege applies. I know you may have

14   thought there were some privileges that you had from your

15   discussions with Trump or White House staff, but we've

16   analyzed that.  We don't think so.  Now there's no obstacle

17   to you testifying."

18          The date had already passed on the 14th, according

19   to the government.  The government chose the date to indict

20   -- for the indictment.  They chose not an on-or-about date.

21   They just chose the 14th for his testimony.  Any evidence

22   before or afterwards that shows that wasn't the firm date,

23   that they would have accepted compliance, would have

24   considered it to be compliance after that date, is relevant

25   for the jury.

1          It's not for government counsel to take that away

2   from the jury and decide, Well, actually what he meant was

3   this or what he meant was that.  And this is another

4   reason -- it's not just for impeachment.  It's another

5   reason why Chairman Thompson's presence under subpoena in

6   court is essential.  This goes to the accommodation process.

7   It goes to the back-and-forth; What's meant by compliance in

8   your letter?

9          I think that pretty much --

10          **THE COURT:**  What about -- so it seems to me, as

11  you heard my questioning of Ms. Vaughn, the government has

12  to prove, to prove default, that there was a clear date and

13  obligation and that Mr. Bannon didn't comply with it.  That

14  goes to just the question of the element of default.

15          You've hinted at this argument about waiver of

16  default.  And is your view that that is a separate question

17  from whether there was a default?  Is it, like, that there

18  was a default but it was excused somehow?

19          **MR. SCHOEN:**  I think the arguments are

20  intertwined; that is, that -- listen, the idea that we're

21  transforming this from criminal to civil doesn't hold any

22  water.  We apply civil contract principles in the criminal

23  realm all the time; that's *Santobello*, for example.

24          And so here it applies equally in force that

25  insistence on compliance after a default date arguably works

1    a waiver of the default.  But it also means that there was

2    no default at the time --

3              **THE COURT:**  Right.

4              It would be -- or at least one could argue that

5    it's irrelevant to the question of the component of the

6    default element about whether there was actually an

7    obligation to appear on a particular date.

8              **MR. SCHOEN:**  Right.  And we look at conduct before

9    or after that to determine whether that obligation was a

10   firm obligation that existed or whether it didn't really

11   exist or whether it existed and was waived.

12             **THE COURT:**  Thank you, Mr. Schoen.

13             So I want to just address a couple of other issues

14   before I take -- I think I am going to take a brief recess

15   and then just come back and decide the pending motions.  But

16   just while -- yes, please.

17             **MR. SCHOEN:**  I'm sorry.  May I ask a housekeeping

18   question, though, before?

19             **THE COURT:**  Yes.

20             **MR. SCHOEN:**  First of all, I assume I can sit

21   down, but I think --

22             **THE COURT:**  Well, I do have one question for you

23   that is in the way of housekeeping, which is the --

24   Mr. Bannon, you filed -- lodged your exhibit list last

25   night, I believe.  Do you have any objection to giving the

1    government some time to prepare its objections to your list?

2             **MS. VAUGHN:**  We're ready, Your Honor.

3             **THE COURT:**  You're ready in what sense?

4             **MS. VAUGHN:**  We can address them today.  We sent

5    the objections to the defense this morning.

6             **THE COURT:**  Okay.  Great.  Then you don't have to

7    take a position on that question.

8             **MR. SCHOEN:**  My question, Your Honor, was I made

9    the point -- and I think it's important for us -- that

10   during the course of the trial, or in the next couple of

11   days, I feel it's essential to make a record on any other

12   prejudicial publicity.  I'm trying to think for the Court,

13   though, what's the best way for me to do it.

14            I mean, I saw the shot today, or whenever it was,

15   last night, in the motion, This is the fourth time they're

16   filing.  It may be 10 times or 20 times I'd have to file.  I

17   don't need to call each one a Motion to Continue, I just

18   want to put the evidence in the record.

19            **THE COURT:**  Well, first of all, we can state --

20   and I recognize that you have a continuing objection to this

21   trial occurring on Monday, assuming I deny your pending

22   motion; and that that continuing objection is based on any

23   and all publicity that occurs up through and including the

24   end of the trial date.

25            **MR. SCHOEN:**  The question is for the Court of

1    Appeals, how will they -- I'd like to put in the record --

2            **THE COURT:**  Sure.  I would go ahead and lodge

3    motions --

4            **MR. SCHOEN:**  Okay.

5            **THE COURT:**  -- with whatever evidence you'd like

6    to support.

7            **MR. SCHOEN:**  I can call it a "Notice," if that's

8    preferrable.

9            **THE COURT:**  Yes, that's fine, yes.  And I think

10   it's very well-preserved.  But I understand that you would

11   want it as part of the record when it wouldn't normally be

12   so.  A notice and/or a motion is fine by me.

13           **MR. SCHOEN:**  Thank you, Your Honor.

14           **THE COURT:**  Thank you.

15           So just by way of housekeeping stuff, let me just

16   address a few issues.  As I already said -- I already

17   described, I believe, how voir dire will happen, assuming

18   we're going to trial on Monday.

19           It will be in the ceremonial courtroom down the

20   hall.  I will circulate to the parties today Word versions

21   of the questions that I intend to ask the jurors in a group.

22           As I said, those questions will be, hopefully,

23   amenable to yes-or-no answers.  I will ask the jurors to

24   write down the number of the question or questions only as

25   to which they have "yes" answers.

1          I'll then collect the note cards, and we will call

2     the jurors into the ceremonial courtroom one by one to do

3     what we normally do as a bench conference, but because of

4     COVID, the Court would prefer that we do it in a larger,

5     open setting; and so that will be in the ceremonial

6     courtroom.

7          And we're doing it over there so that we can do

8     the questions to the jury pool as a group in the ceremonial

9     courtroom rather than here, because all of them wouldn't fit

10    in here.  That's how we'll do voir dire on Monday, assuming

11    we're going to trial.

12         As to jury instructions, I have gone through the

13    parties' proposed jury instructions, and I will also be

14    circulating back to the parties today a draft set of

15    instructions.  Obviously some of them are dependent on what

16    happens at trial.  Right?  Whether there's been a prior

17    inconsistent statement.  There are plenty of agreed-upon

18    instructions that may or may not be used.

19         I also recognize, of course, that this is just a

20    set of draft instructions that will have to change depending

21    on -- or may change depending on how the trial goes.  So it

22    is not set in stone, but I would like the parties' continued

23    view on them.  I think it is easier to get them out today

24    rather than to wait until we're midstream in trial.

25         So as to -- I already dealt with the Motion to

1    Appear Pro Hac Vice from Ms. White.  I don't think I have

2    addressed, and I am going to grant, the Motion to Withdraw

3    as Attorney by Mr. Costello.  I think the government didn't

4    have an opposition to that before.  I think it's appropriate

5    and it's granted.  I had intended to deal with that last

6    hearing.

7            As to the other two motions, I'd like to take a

8    brief recess, and I will come back and discuss them.  And

9    then I'm happy to discuss any other issues, trial exhibit

10   objections and the like when we come back.  Okay?

11           (Recess from 10:40 a.m. to 10:55 a.m.)

12           **THE COURT:**  Thank you, Ms. Lesley.

13           So, Mr. Bannon has filed a renewed Motion to

14   Continue, ECF No. 108 for the same reasons that I denied the

15   prior Motion to Continue earlier this week, I'm going to

16   deny this Motion to Continue.  Mr. Bannon still, in my view,

17   has not shown sufficient cause warranting the further delay

18   or a delay of this trial.

19           As I said at the hearing earlier this week, I am

20   cognizant of concerns about publicity and bias and whether

21   we can seat a jury that is going to be appropriate and fair.

22           But, as I said before, I believe the appropriate

23   course is to go through the voir dire process, and I have

24   every intention of getting a jury that is going to be

25   appropriate and fair and unbiased.  But if we can't find 14

1    jurors who are so, I will then entertain the question of

2    whether we should continue the trial.  But we are going to

3    do the voir dire first.

4           As to the Motion in Limine to Exclude Evidence or

5    Argument, which is about whether the two recent letters, the

6    letter from President Trump to Mr. Bannon and from

7    Mr. Bannon to the Committee, are excluded for all purposes,

8    I am going to deny/hold that motion in abeyance.  Here is

9    why:  At the last hearing, I granted in part and denied in

10   part a number of evidentiary motions from the government on

11   the grounds that it was at least possible that Mr. Bannon

12   could proffer, outside the presence of the jury, the

13   argument that either the return date, the obligation date

14   under the subpoenas, was not the date the government says or

15   that he did not deliberately, intentionally not comply with

16   his obligations to appear on those dates, perhaps because he

17   believed that those dates were not operative.

18          And so I denied the government's motion insofar as

19   it would necessarily have precluded such evidence or

20   testimony.  And I basically said, I haven't yet required

21   Mr. Bannon to make a proffer about that kind of argument.

22   It's too early.  We are not at trial.  If he's able to make

23   a proffer, then that evidence might come in.

24          It seems to me, therefore, that this evidence we

25   are talking about now is at least potentially relevant,

1     potentially relevant, if such proffers are made, to the

2     question of whether there was a clear-cut obligation to show

3     up on the particular dates.  Either in the sense that just

4     the dates were the dates or in the sense that Mr. Bannon

5     acted deliberately and intentionally in not complying with

6     them, in the sense of *Licavoli*, because he believed the

7     dates were not, in fact, the dates.

8             If he makes that proffer and we hear evidence on

9     those questions, I think it's at least hypothetically

10    possible that he could argue that these letters, the more

11    recent letters, are consistent with that understanding at

12    the time.

13            But as with the other evidence about the dates and

14    his belief at the time about the dates, I am going to need a

15    proffer from Mr. Bannon at trial -- I'm not requiring it

16    yet, before this information goes in front of the jury.  So

17    whether we call it motion denied or held in abeyance pending

18    the trial, that's where we are.

19            So we're still going to be at trial Monday.  I am

20    not absolutely excluding evidence of the letter to the

21    Committee or the letter from President Trump to Mr. Bannon.

22          **MR. SCHOEN:**  May I ask a question?

23          **THE COURT:**  Yes, Mr. Schoen.

24          **MR. SCHOEN:**  Logistic question.  How exactly does

25    the Court see this working chronologically?  In other words,

1    this evidence is directly relevant for cross-examination

2    when the government puts on its case-in-chief.  I don't need

3    to go into --

4              **THE COURT:**  The cross.  I agree.

5              So logistically, I think I need to know more

6    then -- before the cross begins, I would like, essentially

7    outside of the jury, so the direct will have happened and

8    the cross -- assuming you will want to do the cross, I want

9    to have a conversation outside of the presence of the jury

10   about what you intend to show through the cross, as it

11   relates to elements that we have discussed are clearly

12   relevant in my view in this case.  And I'll just want to

13   understand what you intend to elicit through the use of

14   these documents if you would like to use them.

15             **MR. SCHOEN:**  I understand, Your Honor.  I thought

16   the Court meant something else.

17             I did want to take exception to the idea that

18   Mr. Bannon himself would have to make a proffer as to what

19   his belief was at the time.  I think this evidence is

20   directly relevant on cross-examination regardless of

21   whether -- of what Mr. Bannon's belief was.

22             **THE COURT:**  Fair enough.

23             **MR. SCHOEN:**  I think it goes independently as to

24   whether there was a default or whether there was a waiver of

25   default.

1          **THE COURT:**  Fair enough.

2          Yes, so I basically think that as it relates to

3     these two letters and/or -- I just want to make sure that --

4     this is obviously complicated in a sense because -- I agree

5     with you that *Licavoli* is very distorting in a sense; and

6     that evidence that might naturally be relevant to willful

7     default and the like, if willfulness required known

8     avoidance of a legal duty, ba, ba, ba, the line between its

9     exclusion and not is a little bit unclear.  I'm obviously,

10    in my view, bound by that.

11         And I just want to make sure that I have time to

12    police that line before we get into evidence that starts to

13    sound a lot more like an incorrect view of willfulness in

14    light of *Licavoli*.

15         **MR. SCHOEN:**  Understood, Your Honor.

16         It doesn't matter who or what I agree with, it

17    doesn't matter what the Court agrees with, but I would

18    say --

19         **THE COURT:**  Yes.

20         **MR. SCHOEN:**  -- back to the earlier discussion, I

21    do see the two as conceptually independent, that is, whether

22    there was a default or waiver of default and the other

23    element, the willful element.

24         **THE COURT:**  I agree.  I agree.  The government has

25    to prove that there was a default and it has to prove that

1    it was deliberate and intentional.  Those are separate.

2              **MR. SCHOEN:**  Thank you, Your Honor.

3              **THE COURT:**  They're related but they're separate.

4              **MR. SCHOEN:**  Yes, Your Honor.

5         Thank you, Your Honor.

6              **MS. VAUGHN:**  Your Honor, can I ask one follow-up

7    question?  We would also ask that before the defense argues

8    about this evidence in opening, that they either refrain

9    from doing so or we evaluate their proffer before they do

10   that.

11             **THE COURT:**  So that's a fair point.

12        Is the defense prepared to discuss that now or

13   would you like to have some time to discuss what you would

14   like your opening to say and then to have that conversation

15   before the openings?  That is to say, perhaps after we've

16   done jury selection but before we do openings.

17             **MR. CORCORAN:**  I don't think there's a need for

18   either of that.  We're not going to mention the letters in

19   opening.

20             **THE COURT:**  Very well.  Thank you.

21        So what other logistical things should we discuss

22   today?  We've talked about voir dire.  We've talked about

23   jury instructions.  We've talked about the trial starting on

24   Monday at 9 a.m. -- well, jury selection will begin at 9

25   a.m. on Monday in the ceremonial courtroom.

1          I have -- I now have exhibit lists from both

2    parties, and I have witness lists from both parties.  It

3    sounds like the government -- while the defendant's exhibit

4    list was a little late, the government has now had the

5    opportunity to lodge objections to them.

6          Ms. Vaughn, is it your view that I should be

7    hearing argument on those objections at this time?

8          **MS. VAUGHN:**  Your Honor, we don't have any problem

9    with addressing objections to both parties' exhibits now in

10   an effort to make the trial efficient.  And, obviously, if

11   there are issues that are going to rely on what testimony

12   comes in at trial --

13         **THE COURT:**  I must admit I would rather wait.

14         **MS. VAUGHN:**  Okay.

15         **THE COURT:**  It seems to me that we have the

16   technology to have the particular document published to me

17   only.  If the witness needs to be asked a couple questions

18   where the jury hasn't seen the document, we can do that.

19   And I would rather take up specific objections now where we

20   know what the specific issue is, why it's being introduced

21   rather than just doing it, in a sense, a little bit

22   acontextually.

23         **MS. VAUGHN:**  I think that's fine with the

24   government.

25         **THE COURT:**  We're not talking about a ton of

1    exhibits also.  I don't know that we're -- by my count we
2    have something like 35 total exhibits having been proposed.
3    I don't know if there's overlap.  I think there is a little
4    bit of overlap, so maybe a total of 25 to 30 nonoverlapping
5    exhibits.
6            It seems to me that we can do this trial
7    efficiently by taking up any objections to particular
8    exhibits as they are offered.
9            **MS. VAUGHN:**  That works for the government.
10           There are a couple other matters the government
11   would like to address.
12           **THE COURT:**  Yes.
13           **MS. VAUGHN:**  We would like to invoke the rule on
14   witnesses [sic] now or notify the Court that we want to do
15   that so that they are all excluded.
16           **THE COURT:**  Yes.
17           **MS. VAUGHN:**  It doesn't look like any of the
18   defendant's proposed exhibits include anything that we did
19   not already know about or have.  But the government has been
20   requesting, has never received reciprocal discovery, so we
21   just wanted to notify the Court and the defendant that
22   should he offer something we've never seen or never been
23   provided in reciprocal discovery at trial, we plan to move
24   to exclude that evidence.
25           **THE COURT:**  Okay.  So you are preemptively

1    notifying the defendant that you will seek to exclude

2    evidence that you are not presently aware of.

3           **MS. VAUGHN:**  And letting the Court know that in

4    our view, to the extent there's reciprocal discovery, those

5    obligations have not been complied with.

6           And then we had a couple of other questions about

7    how the Court plans to handle jury selection.

8           **THE COURT:**  Yes.

9           **MS. VAUGHN:**  Is it the Court's practice to allow

10   the attorneys to ask follow-up questions during individual

11   voir dire?  Obviously understanding that there are limits on

12   how long we can do that and the scope of what we can ask.

13          **THE COURT:**  So here is how I normally do it.  I

14   don't prevent lawyers from asking questions.  Typically what

15   I will do is, I will pose some inquiry to the juror about

16   the reasons for the "yes" answers, explore a little bit

17   what's sort of obvious from the card.  Why did you answer

18   "yes" to Question 10?  Can you tell us a little more about

19   that?  Ba, ba, ba.

20          And then depending how that goes, I may say to the

21   government or defense counsel, Do you have anything you'd

22   like to follow up on?  And then see what counsel says.  So I

23   do not prohibit, altogether, questioning by counsel of the

24   of the jurors.  But I typically, for lack of a better word,

25   do the first set.  Okay?

1    **MS. VAUGHN:**  Got it.

2    And does the Court anticipate doing simultaneous

3    strikes for our peremptories or alternating?

4    **THE COURT:**  I think in this case, that we should

5    do alternating.

6    **MS. VAUGHN:**  Okay.

7    **THE COURT:**  Yeah.

8    **MS. VAUGHN:**  I think that was all the other

9    matters the government had questions on.

10   Thank you, Your Honor.

11   **THE COURT:**  Thank you.

12   Please.  Mr. Corcoran.

13   **MR. CORCORAN:**  Your Honor, with regard to

14   exhibits -- we agree with the Court's approach obviously.

15   One thing, and that is the use of exhibits in

16   opening by the government.  We would ask -- there are a

17   couple of exhibits, really I think just two, that are for

18   Mr. Bannon's Gettr account, which are articles, essentially,

19   and pictures of him.  And we would just ask that any exhibit

20   that we have objected to not be used or displayed to the

21   jury in opening by the defense.

22   **THE COURT:**  I agree with that.

23   I mean, I suppose you may not know what you intend

24   to do, but at least right now where I haven't ruled one way

25   or the other on whether a document's going to be admitted, I

1    would like those objected-to exhibits not to be used during

2    your openings.

3              If either party believes that it wants to use,

4    during the opening, a document to which there's an

5    objection, then we should discuss those documents now.

6              **MR. CORCORAN:**  The other housekeeping issue is,

7    we've asked the government to see the original of the

8    Subpoena.  The original, wet, signed copy of the Subpoena.

9    And essentially have not gotten that.  And we'd ask either

10   this weekend or bring it Monday.

11             There's not going to be a chain of custody issue.

12   We're not going to raise any chain of custody objection, if

13   an FBI agent -- the lawyers can bring it, essentially.  But

14   we would like to see the original.

15             Thank you.

16             **THE COURT:**  Okay.  Thank you, Mr. Corcoran.

17             Ms. Vaughn, what are your positions on these

18   two questions?

19             **MS. VAUGHN:**  Well, Your Honor, the government

20   doesn't have the original with the wet signature.  We only

21   ever got a copy from Congress.  So we can't provide that.

22             And the government doesn't plan to use any

23   exhibits in opening, but this does raise concerns because

24   obviously the government plans to discuss the correspondence

25   back and forth, and the defendant has objected to all

1    correspondence that his own attorney didn't write.

2         So I understand the Court's view that we should

3    wait, but that really does have a bearing on the

4    government's opening to be able to reference their

5    back-and-forth.

6         **THE COURT:**  So, for example, the government would

7    intend to discuss, potentially at least, Exhibit 5, which is

8    the October 8th, 2021 letter from Chairman Thompson to

9    Mr. Costello.

10        **MS. VAUGHN:**  Correct.  That one and the one on

11   the  15th [sic].

12        **THE COURT:**  Okay.  I didn't hear Mr. Corcoran

13   mention those documents.  I did, in a sense.

14        But, Mr. Corcoran, does Mr. Bannon object to

15   discussing, not showing maybe, but discussing at least --

16        **MS. VAUGHN:**  Yeah, we don't plan to show anything.

17        **THE COURT:**  -- those two letters in opening?  They

18   are not the documents about the Gettr account, as I

19   understand it.

20        **MS. VAUGHN:**  Correct.

21        **MR. CORCORAN:**  Discussing the letter, if

22   discussing the letters includes sending out their content,

23   then we would have the same hearsay objection that we've

24   raised to the exhibit.

25        If discussing the letters is limited to a letter

1      was sent in response, a letter -- you know, sort of in

2      general terms that doesn't get into the content of the

3      letter, we don't have an objection to that.

4              **THE COURT:**  So, Ms. Vaughn, just to be very clear

5      about it, you are talking about which letters exactly?

6              **MS. VAUGHN:**  So -- I mean, the admission of these

7      letters is the government's case.  Because they're

8      notifications to the defendant of the Committee's position.

9      So we're talking about -- they object to the October 8th

10     letter to the defendant and --

11             **THE COURT:**  I get -- yeah.

12             **MS. VAUGHN:**  These are the ones we plan to mention

13     in opening --

14             **THE COURT:**  That's my question.

15             **MS. VAUGHN:**  -- and with our first witness.

16             **THE COURT:**  Okay.

17             **MS. VAUGHN:**  And the October 15th letter.

18             **THE COURT:**  So those two.  So that's Exhibits 5

19     and 7.

20             **MS. VAUGHN:**  And Exhibit 9, the government doesn't

21     plan to use that in its case-in-chief.

22             **THE COURT:**  Okay.  And there are objections from

23     Mr. Bannon that they are hearsay and hearsay within hearsay.

24             **MS. VAUGHN:**  Uh-huh.

25             **THE COURT:**  So what's the government's response to

1        that?

2                **MS. VAUGHN:**  They are not being offered for the

3        truth.  So we're not offering the letters to prove what the

4        Committee's position was.  We're offering the letters to

5        show that the defendant was put on notice of what the

6        Committee's position was.

7                And in addition, there are comments in there like

8        directions to comply that are not actually assertions of

9        fact such that they would even qualify as hearsay, they're

10       imperative statements.

11               And the evidence about what the Committee's

12       position was is just going to come in through a witness who

13       was there and has personal knowledge.  These letters are

14       just the evidence that the defendant was made aware of the

15       position.  So we're not offering them for their truth.

16               **THE COURT:**  Okay.  Thank you, Ms. Vaughn.

17               Mr. Corcoran, what do you say?

18               **MR. CORCORAN:**  So, if I heard the government's

19       position correct that Exhibit 5, for example, which is the

20       one that I'm looking at here, is offered not for the truth

21       of any statement that's made in there but simply in some

22       ways that notice was given to the defendant on some subject.

23       And my response is that I don't believe that that's

24       accurate.

25               So this is a three-page letter that is setting

1   forth the position of a person on a lot of different issues.

2   In other words, it's a statement about a lot of different

3   things and legal positions; that person is

4   Chairman Thompson.  And as you know, we've subpoenaed him to

5   appear.

6           And so it certainly might be a different question

7   as to the admissibility of this document if he appeared in

8   court and was subject to cross-examination about what is

9   asserted in this letter.

10          In terms of notice, for instance, that he got a

11  subpoena or something like that, that will be, I understand

12  it, established through a witness that is being provided to

13  the government, somebody who was on their list,

14  Ms. Amerling, staff member, the only staff member who had

15  any communication with -- well, not the only staff member

16  but the main staff member who had communication with

17  Mr. Costello.

18          So these are not her words, but she will be able

19  to testify if the notice that the government seeks to

20  establish -- they'll be able to establish that through her

21  testimony, which of course, will be subject to

22  cross-examination here as required by the Sixth Amendment.

23          But to simply allow the government, as Ms. Vaughn

24  has said, you know, to make their whole case through

25  letters, lengthy letters, describing legal positions on a

43

1    topic, hearsay within hearsay, without allowing any

2    cross-examination of the person who is making that

3    statement, is error, Your Honor.

4              **THE COURT:**  So let's be a little bit more

5    specific, I suppose, if we can.  Let's imagine we take the

6    second paragraph in the letter -- sorry -- the paragraph

7    that says "Second."  "Second, the Select Committee has not

8    received any assertion, formal or otherwise, of any

9    privilege from Mr. Trump.  That sentence appears in here."

10             One question is whether this letter is being

11   offered for the truth of the fact that the Select Committee

12   has not received any assertion, formal or otherwise, of my

13   privilege from Mr. Trump.

14             I hear Ms. Vaughn to be saying that the letter is

15   not being offered for the truth of that underlying fact.

16   But I think your argument then is, But the letter is being

17   offered to prove the fact that that is the Select

18   Committee's -- was the Select Committee's position, and that

19   is an out-of-court statement by someone that that is the

20   Select Committee's position and it is, therefore, offered to

21   prove the truth of that matter.

22             Do I understand that correctly?

23             **MR. CORCORAN:**  That's right.

24             And maybe the better way to proceed, because these

25   are lengthy letters, is if the government is saying, We are

1    offering this letter for a nonhearsay purpose that's

2    contained in the letter to provide the Court and defense

3    counsel with a redacted letter that just shows what their --

4    what the nonhearsay purpose of the letter would be.

5            Because, as I said, most of the letter citing

6    cases, talking about, you know, purported privileges, all

7    this kind of stuff, it's not sort of plain vanilla,

8    nonhearsay purpose.  And anything that is kind of a plain

9    vanilla, we're offering this letter to let the jury know

10   that Mr. -- that at least we sent a letter providing notice,

11   can be done in a redacted way that eliminates all of the

12   hearsay stuff.

13           **THE COURT:**  Thank you, Mr. Corcoran.

14           Ms. Vaughn.

15           **MS. VAUGHN:**  So, Your Honor, the government, to

16   show a willful default, has to show that when a witness

17   makes some sort of objection to appearing, that he's not

18   left hanging; that the Committee makes clear to him, We are

19   rejecting your reason for not appearing.  That's exactly

20   what this is.

21           It doesn't matter if it's true whether this was --

22   for the purposes of the relevance of this letter, it doesn't

23   matter if it was true that that was the Committee's

24   position.  Ms. Amerling is going to testify independently, I

25   was part of this.  This is our position.

1          This letter is only relevant because it shows that

2     the defendant was aware that his objections had been

3     rejected and that he was being directed to appear; that's

4     the relevance of this letter.

5          So we're not offering this to prove the

6     separate --

7          **THE COURT:**  What do you intend -- I don't mean to

8     get into your trial strategy, but since the most imminent

9     thing is what you intend to say in your opening about this

10    letter, what is it that you intend to say?

11         **MS. VAUGHN:**  So we intend to point out that the

12    defendant responded to the Committee subpoena by raising an

13    objection and claiming that he did not have to appear

14    because he had a privilege; and that the Committee then

15    responded and rejected that the supposed privilege was a

16    basis not to appear and then directed him to the proper

17    procedures of what he was supposed to do to comply with the

18    subpoena.

19         So I could go paragraph by paragraph, but none of

20    this is offered to prove that he -- it doesn't matter if the

21    Committee was right about its position on what executive

22    privilege was or was not.  We're not offering it to prove

23    that their claim that you don't have executive privilege is

24    actually true.

25         **THE COURT:**  But you are offering it to prove that

1    the Committee's position was this position --

2            **MS. VAUGHN:**   That's not --

3            **THE COURT:**   -- arising in an out-of-court

4    statement offered to prove that that was, in fact, the

5    Committee's statement -- position at the time.

6            **MS. VAUGHN:**   That's not the purpose that we are

7    entering this letter for.

8            **THE COURT:**   Okay.

9            **MS. VAUGHN:**   Ms. Amerling is going to testify

10   separately that we got a subpoena -- or we got a letter from

11   him asserting that he had this privilege.   The Committee did

12   not think that it provided a basis for his noncompliance, so

13   we sent him a letter notifying him of that fact.

14           **THE COURT:**   Okay.   That seems fine to me for

15   purposes of opening.

16           The question of whether the letter can be used

17   beyond that, I think I need to hear more on.   Because I

18   think the government agrees -- or do you agree, that the

19   letter at least would present a hearsay question if it was

20   being offered to prove the truth of, for example, the

21   statement that the Select Committee has not received any

22   assertion, formal or otherwise, of any privilege of

23   Mr. Trump.   That would be a hearsay problem.

24           **MS. VAUGHN:**   Select Committee -- if we offered it

25   to prove that they have not received the assertion, that

1    would be a hearsay problem.

2         We actually don't care if they ever received an

3    assertion.  What matters for the point of this case was that

4    the defendant was made aware that his position had been

5    rejected and that he was directed to appear.

6         Tellingly, I think, the defendant does not appear

7    to object to -- or I think the defendant is seeking to

8    enter, in his own case, his own agent statements to the

9    Committee, which are clearly hearsay when offered by him if

10   he's taking this same position that the assertions and the

11   letters are being offered for hearsay.  But they are not.

12   They're being offered to show that there was notice going

13   back and forth about the various --

14        **THE COURT:**  About what the positions were, not

15   whether the positions were --

16        **MS. VAUGHN:**  Exactly.

17        **THE COURT:**  -- whether the underlying facts were

18   true.

19        But what about Mr. Corcoran's argument that they

20   are being offered to prove that this is an out-of-court

21   statement being offered to prove that this was, in fact, the

22   Committee's position at the time?

23        **MS. VAUGHN:**  We are just not offering it to prove

24   that.

25        **THE COURT:**  You're offering it to prove that

1   notice was provided to the defendant that that was the

2   Committee's position at the time?

3           MS. VAUGHN:  Exactly.

4           THE COURT:  Just as Mr. Bannon will offer -- you

5   would probably acknowledge is appropriate -- that he can

6   offer these letters not to prove the underlying fact of his

7   position at the time, but that he provided notice to the

8   Committee at the time of his position.

9           MS. VAUGHN:  When he offers them, yes.

10          THE COURT:  Yes, exactly.

11          MS. VAUGHN:  Obviously when we offer his letters,

12  they're statements of a party opponent --

13          THE COURT:  That's what -- yes.

14          MS. VAUGHN:  But, for example, so the D.C.

15  Circuit, in *Hall*, 945 F3d. 507, that is a case where the

16  defendant's trying to offer his attorney's statements to him

17  that his fraud conduct was legal.  It's not being offered to

18  prove it's actually legal, it's just being offered to prove

19  that that was the defendant's belief.

20          THE COURT:  So here's what we're going to do for

21  purposes of the opening.  I think it's fine for the

22  government to mention these letters.  It sounded to me like

23  the government is going to mention them in less detail --

24          MS. VAUGHN:  Yeah.

25          THE COURT:  -- than would be provided through the

1    letter itself, if it's either through a witness or if the

2    government had been proposing, which it's not, to show them

3    to the jury.

4         It does seem to me that it is not a hearsay

5    problem to introduce something for the -- to establish that

6    notice of a position was provided rather than the truth of

7    the position.  But I don't have to confront all of those

8    nuances at this moment for purposes of the opening because

9    your representations about what you intend your opening to

10   be are sufficient to me, because they don't get into, it

11   seems to me, even the really core potential hearsay issues.

12   Okay?

13        **MS. VAUGHN:**  And if it would be helpful to the

14   Court, we're happy to provide the authority that we're

15   relying on for their admission at trial.

16        **THE COURT:**  It might be helpful.  It seems to me

17   that both parties have this issue.  I don't want to

18   overburden folks with a ton of briefing.  You have a lot

19   going on.

20        But I would ask that perhaps by midday Monday -- I

21   suspect we'll still be in the middle of jury selection --

22   that the parties set out for me, in five pages or less,

23   their views about whether these letters back and forth --

24   because obviously Mr. Bannon was sending letters to the

25   Committee and the Committee was sending letters to

1    Mr. Bannon -- whether and to what extent they're admissible

2    and for what purposes.

3              **MS. VAUGHN:**  Thank you.

4              **THE COURT:**  Thank you.

5              So that's that question.  There was another

6    question you had raised, Mr. Corcoran.

7              **MR. CORCORAN:**  Well, yes.  Just the original

8    Subpoena.  We want to see it.

9              **THE COURT:**  Yes.

10             **MR. CORCORAN:**  And the counsel kind of brushed it

11   off and said, We don't have it.  But we're entitled to see

12   it, and they have the ability to get it, I'm sure, and track

13   that down.

14             **THE COURT:**  Ms. Vaughn, why can't the House

15   witness bring it?

16             **MS. VAUGHN:**  I mean, we can ask, but we don't have

17   any ability to force them to give us things.  It's just like

18   their Discovery Motion early on that Congress is not part of

19   the prosecution team.

20             **THE COURT:**  I could order it.

21             **MS. VAUGHN:**  Mr. Letter might say speech or

22   debate, you know.  I don't know.  I just don't know how they

23   will -- I guess -- I don't know what the relevancy of it is.

24             **THE COURT:**  It's not totally clear to me either,

25   but it also seems like something that we should spend

1    essentially no time fighting over.

2              So I would like you to reach out to the House and

3    ask them, at my direction -- and you can communicate it's

4    coming from me -- to please provide you and, thereby defense

5    counsel, with the original copy of the Subpoena.  And to

6    notify me by 4 p.m. tomorrow if that's not going to happen.

7              **MS. VAUGHN:**  And just, logistically, does the

8    Court mean bring it on Monday or just that we need to

9    arrange separately --

10             **THE COURT:**  Make an arrangement.  I think Monday

11   morning would be fine.

12             **MS. VAUGHN:**  -- for them to view it?

13             **THE COURT:**  Yes, for them to view it.

14             **MS. VAUGHN:**  Okay.  Great.

15             **THE COURT:**  Any other topics for today?

16             (No response)

17             Thank you, Counsel.

18             Thank you, Counsel.

19             See you Monday morning.

20             (Proceedings concluded at 11:25 a.m.)

21

22

23

24

25

1              **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8

9

10    ___July 14, 2022___          ___/s/_____
                **DATE**                      **Lorraine T. Herman**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:** [1] 2/3
**MR. CORCORAN:** [9] 2/11 33/17 37/13 38/6 39/21 41/18 43/23 50/7 50/10
**MR. SCHOEN:** [28] 2/21 2/24 3/9 4/8 5/24 6/6 6/17 20/21 20/23 21/13 21/17 23/19 24/8 24/17 24/20 25/8 25/25 26/4 26/7 26/13 30/22 30/24 31/15 31/23 32/15 32/20 33/2 33/4
**MS. GASTON:** [6] 6/20 6/22 7/7 7/17 8/6 8/15
**MS. VAUGHN:** [75]
**THE COURT:** [116]

**/**
**/s** [1] 52/10

**1**
**10** [2] 25/16 36/18
**100-6** [1] 1/15
**108** [2] 2/19 28/14
**10:06** [2] 1/6 2/2
**10:40** [1] 28/11
**10:55** [1] 28/11
**11:25** [1] 51/20
**14** [4] 1/5 8/3 28/25 52/10
**14th** [15] 11/11 12/5 12/6 12/13 12/23 13/21 15/13 15/13 16/11 16/14 16/24 22/3 22/10 22/18 22/21
**15th** [2] 39/11 40/17
**16th** [1] 12/18
**1793** [1] 1/13
**18th** [6] 11/12 16/25 17/12 18/7 22/10 22/10
**19th** [2] 21/3 21/22

**2**
**20** [1] 25/16
**20001** [2] 1/13 1/24
**201** [1] 1/19
**202-252-1793** [1] 1/13
**2021** [2] 10/18 39/8
**2021-670** [1] 2/4
**2022** [2] 1/5 52/10
**21201** [1] 1/19
**2225** [1] 1/20
**25** [1] 35/4
**25th** [1] 1/19
**2800** [1] 1/15

**3**
**30** [1] 35/4
**333** [1] 1/23
**334-395-6611** [1] 1/16
**35** [1] 35/2
**36106** [1] 1/16

**4**
**410-385-2225** [1] 1/20
**4700-C** [1] 1/23
**4th** [1] 1/12

**5**
**507** [1] 48/15
**555** [1] 1/12

**6**
**6611** [1] 1/16
**670** [2] 1/3 2/4

**8**
**8th** [4] 16/13 19/3 39/8 40/9

**9**
**945** [1] 48/15

**A**
**a.m** [7] 1/6 2/2 28/11 28/11 33/24 33/25 51/20
**abandon** [1] 18/3
**abeyance** [2] 29/8 30/17
**ability** [2] 50/12 50/17
**able** [4] 29/22 39/4 42/18 42/20
**about** [53]
**above** [1] 52/5
**above-entitled** [1] 52/5
**absolutely** [1] 30/20
**accepted** [1] 22/23
**accommodation** [2] 22/6 23/6
**according** [2] 22/2 22/18
**account** [2] 37/18 39/18
**accurate** [1] 41/24
**acknowledge** [1] 48/5
**acontextually** [1] 34/22
**act** [1] 9/21
**acted** [1] 30/5
**Action** [1] 1/3
**actually** [10] 11/5 11/18 15/18 18/8 23/2 24/6 41/8 45/24 47/2 48/18
**addition** [1] 41/7
**additional** [1] 2/25 3/3
**address** [5] 17/16 24/13 25/4 26/16 35/11
**addressed** [1] 28/2
**addressing** [2] 20/19 34/9
**admissibility** [1] 42/7
**admissible** [1] 50/1
**admission** [2] 40/6 49/15
**admit** [1] 34/13
**admitted** [1] 37/25
**after** [11] 11/17 15/12 16/21 17/2 18/20 19/21 22/10 22/24 23/25 24/9

**afternoon** [1] 5/3
**afterward** [1] 16/16
**afterwards** [2] 21/2 22/22
**again** [3] 3/21 8/5 20/10
**agent** [2] 38/13 47/8
**agree** [9] 10/25 31/4 32/4 32/16 32/24 32/24 37/14 37/22 46/18
**agreed** [1] 27/17
**agreed-upon** [1] 27/17
**agrees** [2] 32/17 46/18
**ahead** [1] 26/2
**aided** [1] 1/25
**air** [1] 3/13
**AL** [1] 1/16
**all** [22] 3/20 3/24 4/10 4/14 4/17 10/11 14/12 16/21 21/7 21/25 23/23 24/20 25/15 25/23 27/9 29/7 35/15 37/8 38/25 44/6 44/11 49/7
**alleged** [1] 16/6
**alleges** [1] 18/21
**allow** [2] 36/9 42/23
**allowing** [1] 43/1
**already** [8] 21/8 22/11 22/12 22/18 26/16 26/16 27/25 35/19
**also** [9] 14/9 15/16 17/15 24/1 27/13 27/19 33/7 35/1 50/25
**alternating** [2] 37/3 37/5
**altogether** [3] 15/8 15/9 36/23
**always** [6] 12/12 12/12 12/18 14/15 15/18 18/19
**am** [7] 15/21 24/14 28/2 28/19 29/8 30/14 30/19

**AMANDA** [2] 1/11 2/8
**amenable** [1] 26/23
**Amendment** [1] 42/22
**AMERICA** [2] 1/2 2/4
**Amerling** [4] 19/2 42/14 44/24 46/9
**analyzed** [1] 22/16
**another** [4] 11/24 23/3 23/4 50/5
**answer** [4] 5/9 5/19 7/13 36/17
**answerable** [1] 5/6
**answered** [1] 5/15
**answers** [8] 4/4 5/7 5/7 5/17 8/12 26/23 26/25 36/16
**anticipate** [1] 37/2
**any** [30] 3/21 5/18 5/20 7/11 13/25 16/18 16/21 17/1 22/21 23/21 24/25 25/11 25/22 28/9 34/8 35/7 35/17 37/19 38/12 38/22 41/21 42/15 43/1 43/8 43/8 43/12 46/21 46/22 50/17 51/15
**anything** [5] 5/18 35/18 36/21 39/16 44/8
**Appeals** [1] 26/1
**appear** [20] 9/6 9/10 11/1 12/13 13/21 14/12 15/5 15/6 18/9 18/13 19/24 24/7 28/1 29/16 42/5 45/3 45/13 45/16 47/5 47/6
**appearance** [1] 9/19
**APPEARANCES** [1] 1/10
**appeared** [1] 42/7
**appearing** [2]

Case 1:21-cr-00670-CJN Document 131 Filed 04/20/23 Page 54 of 65

**A**

appearing... [2] 44/17 44/19
appears [1] 43/9
applies [2] 22/13 23/24
apply [1] 23/22
applying [1] 21/20
approach [1] 37/14
appropriate [7] 4/24 5/4 28/4 28/21 28/22 28/25 48/5
appropriately [1] 13/10
are [68]
arguably [1] 23/25
argue [3] 16/13 24/4 30/10
argues [1] 33/7
arguing [1] 14/15
argument [16] 2/17 2/25 10/9 12/10 15/7 15/21 17/15 19/20 21/18 23/15 29/5 29/13 29/21 34/7 43/16 47/19
arguments [3] 3/1 8/12 23/19
arising [1] 46/3
around [1] 17/13
arrange [1] 51/9
arrangement [1] 51/10
articles [2] 3/18 37/18
as [47] 3/2 4/3 8/8 9/8 11/11 11/12 11/20 13/22 13/22 14/5 14/5 16/13 17/17 19/9 19/9 20/7 20/19 23/10 26/11 26/16 26/22 26/24 27/3 27/8 27/12 27/25 28/3 28/7 28/19 28/22 29/4 29/18 30/13 31/10 31/18 31/23 32/2 32/21 35/8 39/18 41/9 42/4

42/4 42/22 42/23 44/5 48/4
aside [1] 9/25
ask [20] 4/2 5/8 5/20 7/4 7/25 7/25 24/17 26/21 26/23 30/22 33/6 33/7 36/10 36/12 37/16 37/19 38/9 49/20 50/16 51/3
asked [3] 5/4 34/17 38/7
asking [2] 15/8 36/14
asks [1] 7/10
asserted [1] 42/9
asserting [1] 46/11
assertion [5] 43/8 43/12 46/22 46/25 47/3
assertions [2] 41/8 47/10
assume [1] 24/20
assuming [4] 25/21 26/17 27/10 31/8
assumptions [1] 7/19
attached [1] 3/6
attorney [3] 1/15 28/3 39/1
attorney's [1] 48/16
attorneys [2] 1/12 36/10
authority [1] 49/14
Avenue [1] 1/23
avoidance [1] 32/8
aware [6] 5/22 15/11 36/2 41/14 45/2 47/4
away [2] 22/5 23/1

**B**

ba [6] 32/8 32/8 32/8 36/19 36/19 36/19
back [14] 10/8 14/15 18/6 22/8 23/7 24/15 27/14

28/6 28/10 32/20 38/25 39/5 47/13 49/23
backward [1] 20/14
backward-facing [1] 20/14
Baltimore [1] 1/19
Bankruptcy [1] 1/22
BANNON [34] 1/5 2/5 3/12 8/20 8/21 9/9 9/21 10/20 11/4 12/14 13/20 14/9 16/7 17/15 19/21 21/4 21/24 23/13 24/24 28/13 28/16 29/6 29/7 29/11 29/21 30/4 30/15 30/21 31/18 39/14 40/23 48/4 49/24 50/1
Bannon's [4] 3/20 8/20 31/21 37/18
based [3] 13/18 13/19 25/22
basically [2] 29/20 32/2
basis [2] 45/16 46/12
be [88]
bear [1] 7/21
bearing [2] 15/14 39/3
because [24] 3/14 6/15 6/24 7/1 10/24 11/23 12/24 15/10 22/1 27/3 27/9 29/16 30/6 32/4 38/23 40/7 43/24 44/5 45/1 45/14 46/17 49/8 49/10 49/24
been [14] 5/1 12/12 12/12 17/12 21/8 22/5 27/16 35/2 35/19 35/22 36/5 45/2 47/4 49/2
before [15] 1/8 4/12 22/22 24/8 24/14 24/18 28/4 28/22 30/16 31/6

28/6 28/10 32/20 
33/15 33/16
begin [1] 33/24
beginning [1] 2/7
begins [1] 31/6
being [15] 3/13 34/20 41/2 42/12 43/10 43/15 43/16 45/3 46/20 47/11 47/12 47/20 47/21 48/17 48/18
belief [4] 30/14 31/19 31/21 48/19
believe [6] 3/3 17/8 24/25 26/17 28/22 41/23
believed [3] 16/11 29/17 30/6
believes [2] 7/8 38/3
bench [1] 27/3
best [1] 25/13
better [2] 36/24 43/24
between [2] 16/4 32/8
beyond [1] 46/17
bias [1] 28/20
Biden's [1] 22/9
binding [1] 21/11
bit [5] 32/9 34/21 35/4 36/16 43/4
both [5] 6/7 34/1 34/2 34/9 49/17
bottom [1] 3/25
bound [1] 32/10
brief [4] 8/25 9/14 24/14 28/8
briefed [1] 6/8
briefing [1] 49/18
briefly [1] 6/11
bring [4] 38/10 38/13 50/15 51/8
brink [1] 15/18
brushed [1] 50/10
Bryan [1] 12/1

**C**

call [4] 25/17 26/7 27/1 30/17
called [1] 3/12
can [32] 4/5 4/22 5/16 7/14 15/17 16/12 16/14 17/16

1/23 9 17/20 17/23 17/25 21/10 24/20 25/4 25/19 26/7 27/7 28/21 33/6 34/18 35/6 36/12 36/12 36/18 38/13 43/5 44/11 46/16 48/5 50/16 51/3
can't [7] 6/2 14/23 20/9 22/4 28/25 38/21 50/14
cannot [1] 8/3
card [2] 5/9 36/17
cards [3] 5/10 5/12 27/1
care [1] 47/2
CARL [1] 1/8
case [20] 2/4 4/15 4/17 4/19 8/7 8/10 10/7 13/23 14/3 14/22 17/20 31/2 31/12 37/4 40/7 40/21 42/24 47/3 47/8 48/15
cases [2] 22/6 44/6
cause [2] 8/14 28/17
ceremonial [7] 4/20 4/22 26/19 27/2 27/5 27/8 33/25
certain [1] 10/2
certainly [1] 42/6
certify [1] 52/4
cetera [2] 8/4 14/11
chain [2] 38/11 38/12
Chairman [9] 13/2 18/17 19/5 20/13 20/25 21/22 23/5 39/8 42/4
Chairman Thompson [4] 20/25 21/22 39/8 42/4
Chairman Thompson's [1] 23/5
change [3] 21/22 27/20 27/21
channels [1] 7/20
charge [2] 11/11

# C

**charge...** [1] 22/1
**chargeable** [1] 16/3
**charged** [2] 11/11 16/19
**Charles** [1] 1/19
**chief** [2] 31/2 40/21
**choice** [9] 16/4 16/8 16/19 16/25 17/10 18/9 18/9 20/7 20/9
**chose** [3] 22/19 22/20 22/21
**chronologically** [1] 30/25
**Circuit** [1] 48/15
**circulate** [1] 26/20
**circulating** [2] 5/2 27/14
**citing** [1] 44/5
**civil** [3] 17/22 23/21 23/22
**claim** [1] 45/23
**claiming** [1] 45/13
**clear** [17] 12/3 12/12 13/24 16/4 16/8 16/19 16/25 17/10 18/8 18/9 19/7 19/23 23/12 30/2 40/4 44/18 50/24
**clear-cut** [7] 16/4 16/8 16/19 16/25 17/10 19/23 30/2
**clearly** [3] 9/13 31/11 47/9
**CNN** [1] 4/6
**cognizant** [1] 28/20
**collect** [2] 5/11 27/1
**COLUMBIA** [1] 1/1
**come** [9] 2/6 3/21 5/13 21/24 24/15 28/8 28/10 29/23 41/12
**comes** [2] 4/14 34/12
**coming** [1] 51/4

**Comments** [1] 41/7
**Committee** [28] 4/7 7/6 8/21 11/10 11/14 12/25 13/3 13/6 15/5 15/6 15/12 16/16 18/18 29/7 30/21 43/7 43/11 44/18 45/12 45/14 45/21 46/11 46/21 46/24 47/9 48/8 49/25 49/25
**Committee's** [15] 16/13 17/10 19/9 40/8 41/4 41/6 41/11 43/18 43/18 43/20 44/23 46/1 46/5 47/22 48/2
**communicate** [1] 51/3
**communication** [2] 42/15 42/16
**communications** [1] 19/13
**complete** [1] 15/11
**completed** [1] 16/22
**completely** [3] 10/23 15/3 22/5
**compliance** [12] 16/5 17/21 19/11 19/18 21/3 21/4 21/4 21/23 22/23 22/24 23/7 23/25
**complicated** [1] 32/4
**complied** [1] 36/5
**comply** [12] 9/2 12/1 12/4 12/7 15/17 15/19 15/19 22/12 23/13 29/15 41/8 45/17
**complying** [2] 17/24 30/5
**component** [1] 24/5
**computer** [1] 1/25
**computer-aided** [1] 1/25
**concede** [1] 10/1
**concedes** [1] 13/10

**conceptually** [1] 32/21
**concerns** [2] 28/20 38/23
**concluded** [1] 51/20
**conclusion** [2] 21/9 21/17
**conduct** [3] 16/1 24/8 48/17
**conference** [2] 1/8 27/3
**confront** [1] 49/7
**Congress** [3] 17/19 38/21 50/18
**consider** [1] 11/7
**considered** [1] 22/24
**considering** [1] 8/9
**consistent** [3] 9/21 14/12 30/11
**consistently** [1] 14/16
**Constitution** [1] 1/23
**constitutionally** [1] 22/6
**constitutionally-mandated** [1] 22/6
**contained** [1] 44/2
**contempt** [11] 15/4 16/5 16/22 17/20 17/22 17/23 18/15 18/15 18/16 21/6 22/1
**content** [2] 39/22 40/2
**continue** [10] 2/19 6/11 6/22 21/3 21/6 25/17 28/14 28/15 28/16 29/2
**continued** [2] 3/6 27/22
**continuing** [6] 16/14 17/21 18/2 19/17 25/20 25/22
**contract** [1] 23/22
**contrary** [1] 19/6
**conversation** [3] 11/20 31/9 33/14

**copy** [3] 38/8 38/21 51/5
**CORCORAN** [10] 1/17 2/12 6/14 37/12 38/16 39/12 39/14 41/17 44/13 50/6
**Corcoran's** [1] 47/19
**core** [1] 49/11
**correct** [7] 4/7 9/22 11/8 39/10 39/20 41/19 52/4
**correctly** [1] 43/22
**correspondence** [2] 38/24 39/1
**Costello** [5] 12/14 21/22 28/3 39/9 42/17
**could** [16] 3/21 4/2 13/5 13/15 13/17 15/4 15/19 17/4 18/7 21/24 21/24 24/4 29/12 30/10 45/19 50/20
**couldn't** [1] 20/1
**counsel** [11] 2/6 2/10 23/1 36/21 36/22 36/23 44/3 50/10 51/5 51/17 51/18
**count** [1] 35/1
**couple** [7] 2/16 24/13 25/10 34/17 35/10 36/6 37/17
**course** [11] 3/21 6/1 8/9 8/11 12/1 14/7 21/23 25/10 27/19 28/23 42/21
**court** [27] 1/1 1/22 6/25 7/9 16/2 17/19 17/20 23/6 25/12 25/25 27/4 30/25 31/16 32/17 35/14 35/21 36/3 36/7 37/2 42/8 43/19 44/2 46/3 47/20 49/14 51/8 52/3
**Court's** [6] 3/5 6/24 20/24 36/9 37/14 39/2
**courtroom** [7]

4/20 4/22 26/19 27/2 27/6 27/9 33/25
**courts** [2] 1/22 14/16
**coverage** [2] 7/11 7/23
**COVID** [1] 27/4
**CR** [1] 1/3
**CRC** [1] 1/21
**create** [1] 18/2
**creates** [1] 15/16
**crime** [1] 15/10
**criminal** [7] 2/4 15/3 17/20 17/22 22/1 23/21 23/22
**cross** [10] 31/1 31/4 31/6 31/8 31/8 31/10 31/20 42/8 42/22 43/2
**cross-examinatio n** [5] 31/1 31/20 42/8 42/22 43/2
**cumulative** [1] 3/22
**cured** [1] 6/3
**custody** [2] 38/11 38/12
**cut** [8] 16/4 16/8 16/19 16/25 17/10 18/9 19/23 30/2

# D

**D.C** [2] 1/12 48/14
**date** [39] 10/2 10/7 10/10 11/2 11/5 11/5 11/8 11/11 11/12 12/3 12/4 12/5 12/18 13/3 13/8 13/12 13/15 14/10 14/19 14/21 14/24 16/6 16/21 18/10 18/20 18/23 22/18 22/19 22/20 22/22 22/24 23/12 23/25 24/7 25/24 29/13 29/13 29/14 52/10
**dates** [20] 10/22 11/15 11/17 11/18 11/21 14/4 15/22 16/8 16/12 18/13 18/19 29/16 29/17 30/3 30/4 30/4

**D**

dates... [4] 30/7 30/7 30/13 30/14
**DAVID** [3] 1/14 1/15 2/12
**day** [4] 3/2 3/24 15/5 21/24
**days** [2] 19/21 25/11
**DC** [3] 1/4 1/13 1/24
**deadline** [7] 12/13 12/23 13/22 14/21 19/23 19/24 20/5
**deal** [1] 28/5
**dealt** [1] 27/25
**debate** [1] 50/22
**decide** [5] 9/18 13/18 13/19 23/2 24/15
**deciding** [1] 11/7
**default** [44] 8/23 9/7 9/9 10/20 10/24 11/6 11/15 11/23 11/24 12/1 12/5 13/1 13/10 13/11 14/1 15/6 15/10 16/6 17/11 17/13 17/16 18/14 18/21 19/4 20/4 20/6 20/16 21/10 23/12 23/14 23/16 23/17 23/18 23/25 24/1 24/2 24/6 31/24 31/25 32/7 32/22 32/22 32/25 44/16
**defaulted** [3] 15/13 21/14 22/2
**defaults** [1] 15/4
**defendant** [23] 1/6 1/14 7/24 13/13 14/15 15/11 19/14 20/7 20/8 35/21 36/1 38/25 40/8 40/10 41/5 41/14 41/22 45/2 45/12 47/4 47/6 47/7 48/1
**defendant's** [5] 17/9 34/3 35/18 48/16 48/19
**defense** [8] 7/18

36/21 37/21 44/2 51/4
**definitely** [1] 6/4
**definition** [5] 8/24 8/25 11/24 21/19 22/2
**defy** [1] 15/14
**delay** [2] 28/17 28/18
**deliberate** [1] 33/1
**deliberately** [3] 12/7 29/15 30/5
**denied** [4] 28/14 29/9 29/18 30/17
**deny** [3] 25/21 28/16 29/8
**deny/hold** [1] 29/8
**dependent** [1] 27/15
**depending** [3] 27/20 27/21 36/20
**deposition** [4] 9/20 12/13 13/21 16/22
**described** [2] 6/25 26/17
**describing** [1] 42/25
**detail** [1] 48/23
**determine** [1] 24/9
**determining** [1] 16/24
**developments** [1] 3/4
**dialogue** [1] 16/14
**did** [18] 5/5 9/9 9/10 9/12 9/21 12/6 13/13 13/20 19/13 20/12 22/8 29/15 31/17 35/18 36/17 39/13 45/13 46/11
**didn't** [8] 16/11 19/15 20/14 23/13 24/10 28/3 39/1 39/12
**different** [5] 14/14 18/12 42/1 42/2 42/6

**difficult** [1] 17/22
**dire** [12] 4/3 4/23 6/1 7/1 7/9 7/25 26/17 27/10 28/23 29/3 33/22 36/11
**direct** [3] 17/6 17/9 31/7
**directed** [3] 45/3 45/16 47/5
**direction** [1] 51/3
**directions** [1] 41/8
**directly** [2] 31/1 31/20
**disagree** [1] 21/13
**disclosure** [1] 3/18
**discovery** [4] 35/20 35/23 36/4 50/18
**discuss** [9] 5/14 28/8 28/9 33/12 33/13 33/21 38/5 38/24 39/7
**discussed** [2] 3/24 31/11
**discussing** [5] 39/15 39/15 39/21 39/22 39/25
**discussion** [2] 18/6 32/20
**discussions** [1] 22/15
**displayed** [1] 37/20
**disputed** [1] 13/15
**distorting** [1] 32/5
**DISTRICT** [4] 1/1 1/1 1/9 1/22
**Divided** [1] 3/12
**do** [39] 6/10 9/4 9/5 9/12 11/2 13/13 16/12 16/15 19/13 24/22 24/25 25/13 27/2 27/3 27/4 27/7 27/10 29/3 31/8 32/21 33/9 33/16 34/18 35/6 35/14 36/12 36/13 36/15 36/21 36/23 36/25 37/5

45/7 45/17 46/18 48/20
**document** [6] 5/3 11/12 34/16 34/18 38/4 42/7
**document's** [1] 37/25
**documentary** [1] 3/12
**documents** [7] 9/19 17/1 21/25 31/14 38/5 39/13 39/18
**does** [12] 7/4 9/25 11/19 18/6 30/24 37/2 38/23 39/3 39/14 47/6 49/4 51/7
**doesn't** [18] 9/17 12/4 15/5 15/22 16/18 19/18 20/8 23/21 32/16 32/17 35/17 38/20 38/22 40/2 40/20 44/21 44/22 45/20
**doing** [4] 27/7 33/9 34/21 37/2
**don't** [35] 2/18 2/24 3/4 5/18 5/20 7/2 7/21 17/8 19/4 22/7 22/13 22/16 25/6 25/17 28/1 31/2 33/17 34/8 35/1 35/3 36/14 39/16 40/3 41/23 45/7 45/23 47/2 49/7 49/10 49/17 50/11 50/16 50/22 50/22 50/23
**done** [2] 33/16 44/11
**doubt** [1] 6/5
**down** [4] 24/21 26/19 26/24 50/13
**draft** [2] 27/14 27/20
**during** [4] 25/10 36/10 38/1 38/4
**duty** [3] 9/6 9/13 32/8

**E**

**each** [6] 4/23 5/5

45/3 7/2 8/11 25/17
**earlier** [4] 18/6 28/15 28/19 32/20
**early** [2] 29/22 50/18
**easier** [1] 27/23
**ECF** [2] 2/19 28/14
**effect** [1] 3/22
**efficient** [1] 34/10
**efficiently** [1] 35/7
**effort** [1] 34/10
**efforts** [2] 18/3 21/7
**either** [9] 14/1 29/13 30/3 33/8 33/18 38/3 38/9 49/1 50/24
**election** [1] 3/20
**element** [10] 9/13 10/15 10/19 14/19 14/20 14/23 23/14 24/6 32/23 32/23
**elements** [1] 31/11
**elicit** [1] 31/13
**eliminates** [1] 44/11
**else** [1] 31/16
**enclosed** [1] 3/6
**end** [1] 25/24
**enforce** [2] 18/4 21/7
**enough** [2] 31/22 32/1
**enter** [1] 47/8
**entering** [1] 46/7
**entertain** [1] 29/1
**entire** [1] 5/12
**entitled** [4] 10/20 16/17 50/11 52/5
**entity** [1] 18/1
**equally** [1] 23/24
**erase** [2] 17/23 17/25
**erases** [1] 15/3
**error** [1] 43/3
**essential** [2] 23/6 25/11
**essentially** [7] 3/1 17/22 31/6 37/18 38/9 38/13 51/1

**E**

establish [3] 42/20 42/20 49/5
established [1] 42/12
et [2] 8/4 14/11
et cetera [2] 8/4 14/11
evaluate [1] 33/9
EVAN [2] 1/17 2/11
eve [1] 3/13
even [6] 3/16 7/23 14/2 18/20 41/9 49/11
events [1] 17/2
ever [2] 38/21 47/2
every [2] 4/20 28/24
evidence [56]
evidentiary [1] 29/10
exactly [9] 6/25 7/17 8/6 30/24 40/5 44/19 47/16 48/3 48/10
examination [5] 31/1 31/20 42/8 42/22 43/2
example [12] 4/2 4/6 4/15 10/6 11/25 12/17 13/20 23/23 39/6 41/19 46/20 48/14
exception [1] 31/17
excerpt [1] 3/9
excludable [1] 17/3
exclude [5] 6/13 15/9 29/4 35/24 36/1
excluded [2] 29/7 35/15
excluding [2] 16/21 30/20
exclusion [1] 32/9
excusal [1] 8/13
excuse [1] 5/12
excused [3] 8/13 11/11 23/18
executive [2]

exhibit [9] 24/24 28/9 34/1 34/3 37/19 39/7 39/24 40/20 41/19
Exhibit 9 [1] 40/20
exhibits [12] 34/9 35/1 35/2 35/5 35/8 35/18 37/14 37/15 37/17 38/1 38/23 40/18
exist [2] 16/4 24/11
existed [2] 24/10 24/11
expect [3] 7/2 21/3 21/23
expected [1] 7/1
explain [1] 4/18
explore [5] 4/5 5/16 6/15 7/14 36/16
explored [1] 8/22
exploring [1] 12/10
expose [1] 5/21
exposed [2] 4/11 7/2
expressed [2] 19/5 19/6
extent [5] 4/5 5/16 7/15 36/4 50/1
extinguished [1] 21/15

**F**

F3d [1] 48/15
facing [1] 20/14
fact [14] 8/3 8/10 12/3 16/16 20/4 30/7 41/9 43/11 43/15 43/17 46/4 46/13 47/21 48/6
facts [1] 47/17
fail [3] 9/10 9/12 9/21
failed [1] 11/2
failure [5] 9/2 9/3 9/5 9/6 12/1
fair [5] 28/21 28/25 31/22 32/1 33/11

fair [1] 3/12
familiar [1] 4/11
far [1] 19/9
fast [9] 10/22 11/21 12/23 13/8 13/15 14/5 14/19 18/23 20/4
FBI [1] 38/13
feel [1] 25/11
few [1] 26/16
fighting [1] 51/1
file [1] 25/16
filed [2] 24/24 28/13
filing [1] 25/16
find [4] 7/22 8/3 17/19 28/25
fine [7] 2/15 26/9 26/12 34/23 46/14 48/21 51/11
finite [1] 3/23
firm [2] 22/22 24/10
first [5] 24/20 25/19 29/3 36/25 40/15
fit [1] 27/9
five [1] 49/22
flexible [3] 12/19 14/5 18/19
flip [1] 17/25
Floor [1] 1/19
flux [1] 11/19
focus [1] 10/17
folks [1] 49/18
follow [3] 33/6 36/10 36/22
follow-up [2] 33/6 36/10
force [2] 23/24 50/17
foregoing [1] 52/4
formal [3] 43/8 43/12 46/22
forth [8] 10/8 22/8 23/7 38/25 39/5 42/1 47/13 49/23
forward [1] 2/6
fourth [1] 25/15
frankly [1] 20/25
fraud [4] 3/20 14/15 14/22 48/17
front [1] 30/16

fully [2] 67/8 21/25
further [1] 28/17

**G**

gallery [1] 4/21
GASTON [3] 1/11 2/9 6/19
gather [1] 18/4
general [3] 2/18 7/12 40/2
get [22] 7/13 7/25 12/8 13/23 16/17 17/21 17/21 18/4 18/5 19/11 19/17 19/20 20/18 21/1 21/2 27/23 32/12 40/2 40/11 45/8 49/10 50/12
getting [1] 28/24
Gettr [2] 37/18 39/18
give [1] 50/17
given [3] 20/7 21/25 41/22
giving [1] 24/25
go [11] 12/22 15/17 15/24 18/6 18/8 20/3 20/10 26/2 28/23 31/3 45/19
goes [10] 10/2 10/15 11/20 23/6 23/7 23/14 27/21 30/16 31/23 36/20
going [31] 3/17 4/19 4/20 4/23 15/20 18/17 19/4 24/14 26/18 27/11 28/2 28/15 28/21 28/24 29/2 29/8 30/14 30/19 33/18 34/11 37/25 38/11 38/12 41/12 44/24 46/9 47/12 48/20 48/23 49/19 51/6
gone [1] 27/12
good [9] 2/3 2/8 2/10 2/11 2/21 2/23 5/6 6/20 6/21
got [6] 2/13 37/1 38/21 42/10 46/10 46/10
gotten [2] 21/24 38/9

government [59]
government's [16] 6/15 9/12 10/11 13/23 16/20 17/3 17/16 18/11 21/9 21/18 21/21 29/18 39/4 40/7 40/25 41/18
grant [1] 28/2
granted [3] 2/15 28/5 29/9
Great [2] 25/6 51/14
grounds [1] 29/11
group [5] 4/11 4/13 5/21 26/21 27/8
guess [3] 4/18 18/24 50/23
guilty [1] 4/17
GULLAND [1] 1/11

**H**

hac [2] 2/13 28/1
had [27] 4/6 4/15 10/7 10/7 11/1 11/10 11/15 12/18 14/20 16/25 19/5 19/6 19/22 22/14 22/18 28/5 34/4 36/6 37/9 42/14 42/16 45/2 45/14 46/11 47/4 49/2 50/6
hall [2] 26/20 48/15
hand [1] 9/19
handle [2] 6/23 36/7
handling [1] 6/22
hanging [1] 44/18
happen [4] 7/1 13/13 26/17 51/6
happened [7] 7/16 10/17 12/15 15/1 17/2 18/20 31/7
happens [2] 8/9 27/16
happy [2] 28/9 49/14
hard [10] 10/22

**H**

**hard... [9]** 10/23 11/21 12/23 13/8 13/15 14/5 14/19 18/23 20/4
**has [29]** 7/15 7/22 7/23 8/25 9/17 11/1 12/11 13/23 14/7 15/14 15/24 16/4 17/15 22/11 23/11 28/13 28/17 32/24 32/25 34/4 35/19 35/20 38/25 41/13 42/24 43/7 43/12 44/16 46/21
**hasn't [2]** 4/13 34/18
**have [69]**
**haven't [3]** 8/22 29/20 37/24
**having [1]** 35/2
**he [46]** 9/10 9/12 10/20 10/24 11/1 11/2 12/3 12/6 12/18 14/21 14/23 15/5 15/13 16/10 16/11 16/11 16/12 16/12 16/13 16/14 16/25 19/24 21/14 22/2 22/10 22/11 23/2 23/3 29/15 29/16 30/6 30/8 30/10 35/22 42/7 42/10 45/3 45/13 45/14 45/17 45/20 46/11 47/5 48/5 48/7 48/9
**he's [5]** 15/6 20/9 29/22 44/17 47/10
**hear [9]** 2/17 3/4 6/10 6/12 6/13 30/8 39/12 43/14 46/17
**heard [4]** 4/13 6/14 23/11 41/18
**hearing [5]** 1/7 28/6 28/19 29/9 34/7
**hearings [7]** 3/6 3/23 4/7 7/6 7/11 7/12 7/23
**hearsay [15]** 39/23 40/23 40/23 40/23 41/9 43/1

43/7 44/12 46/15 46/23 47/1 47/9 47/11 49/4 49/11
**held [1]** 30/17
**helpful [2]** 49/13 49/16
**her [3]** 5/19 42/18 42/20
**here [11]** 3/22 7/19 19/3 23/24 27/9 27/10 29/8 36/13 41/20 42/22 43/9
**here's [1]** 48/20
**HERMAN [3]** 1/21 52/3 52/10
**Hey [1]** 18/18
**highlights [1]** 3/16
**him [10]** 22/1 37/19 42/4 44/18 45/16 46/11 46/13 46/13 47/9 48/16
**himself [1]** 31/18
**hinted [1]** 23/15
**his [26]** 5/19 10/24 11/8 11/15 11/23 12/5 13/3 15/12 15/14 20/1 21/2 22/21 29/16 30/14 31/19 39/1 45/2 46/12 47/4 47/8 47/8 48/6 48/8 48/11 48/16 48/17
**hoc [1]** 12/24
**hold [3]** 14/16 23/21 29/8
**Honor [35]** 2/3 2/8 2/11 2/21 2/22 2/24 3/24 4/9 5/24 6/6 6/7 6/17 6/20 7/7 7/17 8/15 18/8 15/4 20/23 21/14 25/2 25/8 26/13 33/4 33/5 33/6 34/8 37/10 37/13 38/19 43/3 44/15
**HONORABLE [1]** 1/8
**hopeful [1]** 8/8
**hopefully [1]** 26/22

**Hour [1]** 3/17
**House [3]** 22/15 50/14 51/2
**housekeeping [4]** 24/17 24/23 26/15 38/6
**how [12]** 4/19 21/18 26/1 26/17 27/10 27/21 30/24 36/7 36/12 36/13 36/20 50/22
**huh [1]** 40/24
**hypothetical [1]** 20/13
**hypothetically [2]** 14/3 30/9

**I**

**I'd [4]** 9/16 25/16 26/1 28/7
**I'll [6]** 5/1 5/7 9/1 21/19 27/1 31/12
**I'm [26]** 4/23 6/22 8/8 8/9 10/6 12/9 12/10 12/15 12/17 13/16 13/16 15/7 15/8 15/20 15/23 17/6 18/15 20/10 24/17 25/12 28/9 28/15 30/15 32/9 41/20 50/12
**I've [2]** 5/1 8/19
**idea [5]** 3/19 3/20 20/10 23/20 31/17
**imagine [5]** 12/9 12/11 14/3 18/11 43/5
**immediate [1]** 21/3
**imminent [1]** 45/8
**impeach [1]** 12/21
**impeachment [7]** 12/21 13/5 17/5 17/7 18/24 19/20 23/4
**imperative [1]** 41/10
**implications [1]** 10/18
**implied [1]** 10/9
**important [1]** 25/9
**incentive [2]**

**include [1]** 35/18
**includes [1]** 39/22
**including [2]** 10/8 25/23
**inconsistent [3]** 14/10 21/12 27/17
**incorrect [1]** 32/13
**increased [1]** 4/12
**independent [1]** 32/21
**independently [2]** 31/23 44/24
**index [3]** 5/9 5/10 5/11
**indicate [1]** 3/19
**indict [1]** 22/19
**indictment [1]** 22/20
**individual [2]** 19/10 36/10
**individually [2]** 5/25 7/14
**inflammatory [2]** 3/3 3/15
**inform [1]** 20/1
**information [7]** 5/22 15/12 16/17 18/4 20/17 21/1 30/16
**inquiry [1]** 36/15
**insistence [1]** 23/25
**insisting [1]** 21/1
**insofar [1]** 29/18
**instance [1]** 42/10
**instances [1]** 17/5
**instructions [7]** 11/25 27/12 27/13 27/15 27/18 27/20 33/23
**intend [12]** 5/18 5/20 26/21 31/10 31/13 37/23 39/7 45/7 45/9 45/10 45/11 49/9
**intended [5]** 12/18 14/15 15/18 18/19 28/5

**intent [6]** 10/24 11/23 12/6 12/25 17/9 20/2
**intention [2]** 15/14 28/24
**intentional [1]** 33/1
**intentionally [2]** 29/15 30/5
**internal [1]** 19/10
**intertwined [1]** 23/20
**introduce [2]** 2/6 49/5
**introduced [1]** 34/20
**invitation [1]** 16/14
**invoke [1]** 35/13
**irrelevant [4]** 14/16 15/8 17/3 24/5
**is [146]**
**isn't [2]** 15/25 20/25
**issue [6]** 13/25 14/17 34/20 38/6 38/11 49/17
**issues [8]** 2/18 3/1 24/13 26/16 28/9 34/11 42/1 49/11
**it [137]**
**it's [39]** 4/11 9/9 10/23 11/22 12/12 12/24 13/2 14/18 14/18 15/7 16/5 16/17 17/5 18/18 20/17 23/1 23/4 23/4 24/5 25/9 25/11 26/10 28/4 28/5 29/22 30/9 34/20 42/2 44/7 44/21 48/17 48/18 48/18 48/21 49/1 49/2 50/17 50/24 51/3
**its [12]** 6/9 8/25 11/25 13/23 14/7 18/3 20/24 25/1 31/2 32/8 40/21 45/21
**itself [1]** 49/1

**J**

**jointly** [1] 7/9
**Jonathan** [1] 22/9
**Jones** [1] 3/18
**JUDGE** [1] 1/9
**judged** [1] 12/5
**July** [3] 1/5 15/1
52/10
**juror** [11] 4/4 4/5
4/16 4/21 5/13
5/14 5/15 5/15
5/18 7/3 36/15
**juror's** [1] 8/12
**jurors** [12] 4/23
5/8 5/19 5/21 7/10
7/15 8/3 26/21
26/23 27/2 29/1
36/24
**jury** [38] 4/10
4/19 6/3 7/2 7/5
7/19 7/22 9/17
9/22 10/3 11/7
11/25 13/11 13/18
13/19 13/24 14/4
15/24 22/25 23/2
27/8 27/12 27/13
28/21 28/24 29/12
30/16 31/7 31/9
33/16 33/23 33/24
34/18 36/7 37/21
44/9 49/3 49/21
**just** [57]

**K**

**kind** [6] 18/25
20/17 29/21 44/7
44/8 50/10
**knew** [1] 19/5
**know** [20] 3/5
7/24 20/8 22/13
31/5 34/20 35/1
35/3 35/19 36/3
37/23 40/1 42/4
42/24 44/6 44/9
50/22 50/22 50/22
50/23
**knowledge** [1]
41/13
**known** [1] 32/7

**L**

**lack** [1] 36/24
**larger** [1] 27/4
**last** [4] 24/24

**late** [1] 34/4
**later** [8] 10/15
14/2 14/11 15/1
15/25 17/24 18/22
20/11
**law** [5] 1/15 9/6
9/13 17/19 18/4
**lawyers** [2] 36/14
38/13
**least** [20] 3/15
4/13 9/11 11/6
13/14 15/24 16/1
18/7 18/10 18/22
21/15 24/4 29/11
29/25 30/9 37/24
39/7 39/15 44/10
46/19
**leaving** [1] 10/9
**leaving-open** [1]
10/9
**left** [1] 44/18
**legal** [7] 9/7 9/11
32/8 42/3 42/25
48/17 48/18
**lengthy** [2] 42/25
43/25
**Lesley** [1] 28/12
**less** [2] 48/23
49/22
**let** [3] 13/9 26/15
44/9
**let's** [4] 6/10
10/17 43/4 43/5
**letter** [45] 8/20
8/21 11/19 16/13
18/14 19/3 19/6
19/7 19/13 22/9
23/8 29/6 30/20
30/21 39/8 39/21
39/25 40/1 40/3
40/10 40/17 41/25
42/9 43/6 43/10
43/14 43/16 44/1
44/2 44/3 44/4
44/5 44/9 44/10
44/22 45/1 45/4
45/10 46/7 46/10
46/13 46/16 46/19
49/1 50/21
**letters** [26] 6/13
14/2 19/19 29/5
30/10 30/11 32/3
33/18 39/17 39/22

39/23 39/5 40/7
41/3 41/4 41/13
42/25 42/25 43/25
47/11 48/6 48/11
48/22 49/23 49/24
49/25
**letting** [1] 36/3
**Licavoli** [4] 21/19
30/6 32/5 32/14
**light** [2] 5/17
32/14
**like** [36] 2/17 3/21
4/3 9/16 12/20
18/13 19/12 20/14
20/16 21/2 23/17
26/1 26/5 27/22
28/7 28/10 31/6
31/14 32/7 32/13
33/13 33/14 34/3
35/2 35/11 35/13
35/17 36/22 38/1
38/14 41/7 42/11
48/22 50/17 50/25
51/2
**likely** [1] 5/3
**Limine** [2] 6/23
29/4
**limited** [1] 39/25
**limits** [1] 36/11
**line** [3] 3/25 32/8
32/12
**link** [1] 3/7
**list** [5] 5/13 24/24
25/1 34/4 42/13
**listen** [1] 23/20
**lists** [2] 34/1 34/2
**little** [7] 32/9 34/4
34/21 35/3 36/16
36/18 43/4
**lodge** [2] 26/2
34/5
**lodged** [1] 24/24
**logical** [2] 21/8
21/17
**Logistic** [1] 30/24
**logistical** [1]
33/21
**logistically** [2]
31/5 51/7
**long** [3] 3/11
11/20 36/12
**look** [3] 22/7 24/8
35/17
**looking** [1] 41/20

**LORRAINE** [3]
1/21 52/3 52/10
**lot** [4] 32/13 42/1
42/2 49/18

**M**

**made** [7] 14/3
17/15 25/8 30/1
41/14 41/21 47/4
**Mafia** [1] 4/17
**Magazine** [1] 3/18
**main** [1] 42/16
**make** [11] 9/9
10/20 25/11 29/21
29/22 31/18 32/3
32/11 34/10 42/24
51/10
**makes** [3] 30/8
44/17 44/18
**making** [2] 7/18
43/2
**malleability** [1]
15/24
**malleable** [9]
13/22 14/4 14/11
14/21 14/24 14/25
15/23 16/9 16/12
**mandated** [1]
22/6
**Many** [1] 4/21
**matter** [9] 11/19
20/25 32/16 32/17
43/21 44/21 44/23
45/20 52/5
**matters** [3] 35/10
37/9 47/3
**MATTHEW** [1]
1/17
**may** [14] 7/3 7/3
7/23 10/25 16/7
22/13 24/17 25/16
27/18 27/18 27/21
30/22 36/20 37/23
**maybe** [3] 35/4
39/15 43/24
**MC** [1] 1/19
**me** [28] 2/15 2/16
8/22 9/16 10/18
13/9 13/14 18/6
19/23 19/24 23/10
25/13 26/12 26/15
29/24 34/15 34/16
35/6 46/14 48/22
49/4 49/10 49/11

49/16 49/22 50/24
51/4 51/6
**mean** [15] 9/17
14/14 18/25 19/14
19/15 20/12 20/14
20/24 22/9 25/14
37/23 40/6 45/7
50/16 51/8
**meaning** [1]
19/18
**means** [2] 10/19
24/1
**meant** [6] 19/16
20/12 23/2 23/3
23/7 31/16
**member** [4] 42/14
42/14 42/15 42/16
**members'** [1]
19/10
**mens** [4] 9/8 9/25
14/2 17/14
**mention** [5] 33/18
39/13 40/12 48/22
48/23
**mere** [1] 19/17
**Merriam** [1] 8/25
**Merriam-Webster'
s** [1] 8/25
**midday** [1] 49/20
**middle** [1] 49/21
**midstream** [1]
27/24
**might** [9] 6/16
8/23 18/5 19/7
29/23 32/6 42/6
49/16 50/21
**mind** [1] 13/25
**missed** [1] 19/22
**MOLLY** [2] 1/11
2/9
**moment** [2] 12/4
49/8
**Monday** [12] 4/2
25/21 26/18 27/10
30/19 33/24 33/25
38/10 49/20 51/8
51/10 51/19
**money** [1] 14/16
**Montgomery** [1]
1/16
**more** [10] 3/15
4/22 20/10 20/16
30/10 31/5 32/13
36/18 43/4 46/17

**M**

**morning [12]** 2/3 2/8 2/10 2/11 2/14 2/21 2/23 6/20 6/21 25/5 51/11 51/19
**most [4]** 6/13 7/5 44/5 45/8
**most-recent [1]** 7/5
**Mother [1]** 3/18
**motion [21]** 2/13 2/19 6/9 6/11 6/12 6/22 6/23 25/15 25/17 25/22 26/12 27/25 28/2 28/13 28/15 28/16 29/4 29/8 29/18 30/17 50/18
**motions [7]** 1/7 2/17 6/7 24/15 26/3 28/7 29/10
**move [1]** 35/23
**Mr [3]** 21/22 44/10 50/21
**Mr. [57]**
**Mr. Bannon [31]** 3/12 8/20 8/21 9/9 9/21 10/20 11/4 12/14 13/20 14/9 16/7 17/15 19/21 21/4 23/13 24/24 28/13 28/16 29/6 29/7 29/11 29/21 30/4 30/15 30/21 31/18 39/14 40/23 48/4 49/24 50/1
**Mr. Bannon's [4]** 3/20 8/20 31/21 37/18
**Mr. Corcoran [8]** 6/14 37/12 38/16 39/12 39/14 41/17 44/13 50/6
**Mr. Corcoran's [1]** 47/19
**Mr. Costello [4]** 12/14 28/3 39/9 42/17
**Mr. Schoen [4]** 2/20 20/19 24/12 30/23
**Mr. Thompson [2]** 12/14 19/23

**Mr. Trump [3]** 43/9 43/13 46/23
**Ms [5]** 6/19 19/2 34/6 38/17 44/14
**Ms. [15]** 2/15 6/23 8/17 20/22 23/11 28/1 28/12 40/4 41/16 42/14 42/23 43/14 44/24 46/9 50/14
**Ms. Amerling [3]** 42/14 44/24 46/9
**Ms. Lesley [1]** 28/12
**Ms. Vaughn [9]** 6/23 8/17 20/22 23/11 40/4 41/16 42/23 43/14 50/14
**Ms. White [2]** 2/15 28/1
**much [4]** 2/24 6/24 18/11 23/9
**must [1]** 34/13
**my [20]** 3/15 4/12 5/4 6/7 13/10 13/25 14/10 15/1 19/22 21/15 23/11 25/8 28/16 31/12 32/10 35/1 40/14 41/23 43/12 51/3
**myself [1]** 3/4

**N**

**naturally [1]** 32/6
**necessarily [1]** 29/19
**need [8]** 3/4 25/17 30/14 31/2 31/5 33/17 46/17 51/8
**needs [1]** 34/17
**negotiate [1]** 10/10
**negotiated [2]** 14/5 14/11
**negotiating [2]** 18/12 18/18
**never [3]** 35/20 35/22 35/22
**new [4]** 3/15 3/18 4/15 10/10
**next [2]** 19/24 25/10
**NICHOLS [1]** 1/8

**night [3]** 3/13 24/25 25/15
**no [18]** 1/3 2/19 3/25 5/7 6/5 7/7 14/14 14/21 15/14 17/6 17/18 22/12 22/16 24/2 26/23 28/14 51/1 51/16
**noncompliance [3]** 17/24 18/1 46/12
**none [1]** 45/19
**nonhearsay [3]** 44/1 44/4 44/8
**nonoverlapping [1]** 35/4
**normally [3]** 26/11 27/3 36/13
**not [90]**
**note [1]** 27/1
**notice [11]** 26/7 26/12 41/5 41/22 42/10 42/19 44/10 47/12 48/1 48/7 49/6
**notifications [1]** 40/8
**notify [3]** 35/14 35/21 51/6
**notifying [2]** 36/1 46/13
**now [14]** 3/15 4/1 18/14 22/12 22/16 29/25 33/12 34/1 34/4 34/9 34/19 35/14 37/24 38/5
**nuances [1]** 49/8
**number [2]** 26/24 29/10
**NW [2]** 1/12 1/23

**O**

**object [3]** 39/14 40/9 47/7
**objected [3]** 37/20 38/1 38/25
**objected-to [1]** 38/1
**objection [9]** 24/25 25/20 25/22 38/5 38/12 39/23 40/3 44/17 45/13
**objections [10]** 25/1 25/5 28/10

**34/6 34/7 34/9 34/19 35/7 40/22 45/2
**obligation [11]** 11/1 11/8 13/12 13/20 14/20 23/13 24/7 24/9 24/10 29/13 30/2
**obligations [2]** 29/16 36/5
**obstacle [1]** 22/16
**obvious [1]** 36/17
**obviously [13]** 6/8 8/24 17/4 17/13 27/15 32/4 32/9 34/10 36/11 37/14 38/24 48/11 49/24
**occurred [3]** 11/20 18/21 22/11
**occurring [1]** 25/21
**occurs [1]** 25/23
**October [17]** 10/17 11/11 11/12 12/13 12/18 12/23 13/21 15/1 15/13 15/13 16/13 17/2 18/7 21/3 39/8 40/9 40/17
**October 14th [4]** 12/23 13/21 15/13 15/13
**OFC [1]** 1/12
**off [2]** 5/13 50/11
**offense [3]** 9/14 16/3 17/20
**offer [7]** 2/25 15/1 35/22 48/4 48/6 48/11 48/16
**offered [19]** 14/11 35/8 41/2 41/20 43/11 43/15 43/17 43/20 45/20 46/4 46/20 46/24 47/9 47/11 47/12 47/20 47/21 48/17 48/18
**offering [10]** 41/3 41/4 41/15 44/1 44/9 45/5 45/22 45/25 47/23 47/25
**offers [2]** 11/4 48/9

**Official [2]** 1/22 52/3
**Okay [23]** 9/24 10/5 10/13 10/16 17/12 19/1 21/16 25/6 26/4 28/10 34/14 34/25 36/25 37/6 38/16 39/12 40/16 40/22 41/16 46/8 46/14 49/12 51/14
**once [2]** 4/11 6/14
**one [26]** 3/11 3/14 4/23 5/13 5/13 5/20 9/19 10/10 10/19 12/19 13/11 13/15 19/16 21/10 24/4 24/22 25/17 27/2 27/2 33/6 37/15 37/24 39/10 39/10 41/20 43/10
**one-hour-long [1]** 3/11
**ones [1]** 40/12
**only [8]** 5/7 5/14 26/24 34/17 38/20 42/14 42/15 45/1
**open [5]** 8/9 8/11 10/9 21/5 27/5
**opening [15]** 33/8 33/14 33/19 37/16 37/21 38/4 38/23 39/4 39/17 40/13 45/9 46/15 48/21 49/8 49/9
**openings [3]** 33/15 33/16 38/2
**operative [2]** 21/11 29/17
**opponent [1]** 48/12
**opportunity [1]** 34/5
**opposition [1]** 28/4
**order [1]** 50/20
**orders [1]** 15/17
**original [6]** 38/7 38/8 38/14 38/20 50/7 51/5
**other [21]** 3/2 3/17 3/24 5/19 7/2

# O

other... [16] 7/15
24/13 25/11 28/7
28/9 30/13 30/25
32/22 33/21 35/10
36/6 37/8 37/25
38/6 42/2 51/15
otherwise [4]
5/22 43/8 43/12
46/22
our [9] 3/25 6/2
12/12 18/6 22/4
36/4 37/3 40/15
44/25
out [15] 4/21 7/21
8/3 9/1 18/20
19/25 21/18 27/23
39/22 43/19 45/11
46/3 47/20 49/22
51/2
outside [4] 7/14
29/12 31/7 31/9
over [2] 27/7 51/1
overburden [1]
49/18
overlap [2] 35/3
35/4
overly [1] 3/3
overly-prejudicial
[1] 3/3
own [3] 39/1 47/8
47/8

# P

p.m [1] 51/6
page [2] 9/14
41/25
pages [1] 49/22
paper [2] 4/10
20/11
papers [1] 3/5
8/19
paragraph [4]
43/6 43/6 45/19
45/19
part [6] 5/24
26/11 29/9 29/10
44/25 50/18
particular [8]
8/12 11/2 14/20
18/9 24/7 30/3
34/16 35/7
parties [11] 4/24
5/2 5/5 7/9 18/12

20/20 27/14 34/2
34/2 49/17 49/22
parties' [4] 8/19
27/13 27/22 34/9
parts [1] 13/11
party [2] 38/3
48/12
passed [1] 22/18
past [3] 16/14
17/23 18/1
pay [1] 14/15
Pelosi [1] 21/6
pending [4] 2/16
24/15 25/21 30/17
people [2] 4/22
15/17
peremptories [1]
37/3
perhaps [6] 7/22
10/9 14/1 29/16
33/15 49/20
period [1] 3/23
person [6] 1/7 4/6
18/18 42/1 42/3
43/2
personal [1]
41/13
perspective [3]
3/25 9/12 18/11
perverse [2]
15/16 18/2
pictures [1] 37/19
piece [1] 4/6
plain [2] 44/7
44/8
plan [5] 35/23
38/22 39/16 40/12
40/21
plans [2] 36/7
38/24
please [4] 2/6
24/16 37/12 51/4
plenty [1] 27/17
point [6] 3/22
3/22 25/9 33/11
45/11 47/3
points [1] 21/18
police [1] 32/12
pool [5] 5/11 5/12
7/19 7/22 27/8
pose [1] 36/15
position [31] 6/2
6/7 6/15 12/12
14/7 19/22 21/15

28/7 40/8 41/4
41/6 41/12 41/15
41/19 42/1 43/18
43/20 44/24 44/25
45/21 46/1 46/1
46/5 47/4 47/10
47/22 48/2 48/7
48/8 49/6 49/7
positions [5]
38/17 42/3 42/25
47/14 47/15
possible [2]
29/11 30/10
possibly [2] 20/1
22/4
post [2] 12/24
18/7
potential [3] 4/4
4/21 49/11
potentially [4]
16/1 29/25 30/1
39/7
practice [1] 36/9
precluded [1]
29/19
preemptively [1]
35/25
prefer [1] 27/4
preferrable [1]
26/8
prejudice [1] 4/13
prejudicial [2] 3/3
25/12
preparation [1]
2/18
prepare [1] 25/1
prepared [1]
33/12
presence [6] 5/14
5/19 7/14 23/5
29/12 31/9
present [2] 2/5
46/19
presented [1]
20/9
presently [1] 36/2
preserved [2] 6/5
26/10
President [3]
22/9 29/6 30/21
President Biden's
[1] 22/9
President Trump
[1] 29/6

pretty [1] 23/9
prevent [1] 36/14
principles [1]
23/22
prior [4] 11/15
19/18 27/16 28/15
privilege [9]
22/13 43/9 43/13
45/14 45/15 45/22
45/23 46/11 46/22
privileges [2]
22/14 44/6
pro [2] 2/13 28/1
probably [1] 48/5
problem [5] 4/9
34/8 46/23 47/1
49/5
procedures [1]
45/17
proceed [1] 43/24
proceeding [2]
9/7 9/11
proceedings [3]
2/2 51/20 52/5
process [4] 5/25
22/7 23/6 28/23
produced [1]
1/25
production [2]
9/18 11/13
proffer [7] 29/12
29/21 29/23 30/8
30/15 31/18 33/9
proffers [1] 30/1
prohibit [1] 36/23
promoted [1]
3/14
proper [1] 45/16
proposed [6]
4/25 7/8 11/25
27/13 35/2 35/18
proposes [1] 8/24
proposing [2] 5/6
49/2
prosecution [1]
50/19
prospective [1]
4/16
prove [23] 11/1
14/23 23/12 23/12
32/12 32/25 41/3
43/17 43/21 45/5
45/20 45/22 45/25

46/4 46/20 46/25
47/20 47/21 47/23
47/25 48/6 48/18
48/18
provide [6] 5/9
16/18 38/21 44/2
49/14 51/4
provided [7]
35/23 42/12 46/12
48/1 48/7 48/25
49/6
provides [1] 17/8
providing [1]
44/10
provision [1]
17/10
publications [1]
7/20
publicity [3]
25/12 25/23 28/20
published [1]
34/16
pull [1] 9/1
purported [1]
44/6
purpose [4] 44/1
44/4 44/8 46/6
purposes [7]
12/21 29/7 44/22
46/15 48/21 49/8
50/2
pushed [1] 11/15
put [7] 10/21 13/9
14/25 16/10 25/18
26/1 41/5
puts [1] 31/2
putting [1] 9/25

# Q

qualify [1] 41/9
question [39] 5/5
5/8 7/14 8/23 9/7
9/8 9/10 11/21
12/11 13/11 13/14
14/1 15/23 15/25
16/1 18/8 18/22
23/14 23/16 24/5
24/18 24/22 25/7
25/8 25/25 26/24
29/1 30/2 30/22
30/24 33/7 36/18
40/14 42/6 43/10
46/16 46/19 50/5
50/6

**Q**

questioning [2]
23/11 36/23
questions [23]
4/3 4/24 5/4 5/15
5/20 7/5 8/1 8/13
9/22 13/24 17/13
20/24 26/21 26/22
26/24 27/8 30/9
34/17 36/6 36/10
36/14 37/9 38/18
Quinn [1] 16/2
quite [1] 20/25

**R**

raise [3] 4/9
38/12 38/23
raised [4] 3/1 3/2
39/24 50/6
raising [1] 45/12
rather [8] 17/7
18/13 27/9 27/24
34/13 34/19 34/21
49/6
rea [4] 9/8 9/25
14/2 17/14
reach [2] 7/20
51/2
read [5] 3/5 4/23
7/11 8/19 16/13
reading [1] 20/10
ready [2] 25/2
25/3
real [1] 19/24
really [16] 2/24
7/23 8/22 14/18
15/14 18/12 19/12
19/18 20/6 20/9
21/2 22/12 24/10
37/17 39/3 49/11
realm [1] 23/23
reason [7] 3/25
11/6 14/24 22/12
23/4 23/5 44/19
reasons [2] 28/14
36/16
received [6]
35/20 43/8 43/12
46/21 46/25 47/2
recent [4] 6/13
7/5 29/5 30/11
recess [3] 24/14
28/8 28/11
reciprocal [3]

35/20 35/23 36/2
recognize [2]
25/20 27/19
record [6] 2/7
25/11 25/18 26/1
26/11 52/5
Recorded [1]
1/25
redacted [2] 44/3
44/11
reference [1] 39/4
referral [3] 18/15
18/16 21/6
referring [1] 5/25
reflect [1] 5/3
refrain [1] 33/8
refuse [1] 15/17
regard [1] 37/13
regarding [1]
8/20
regardless [1]
31/20
regularly [1] 3/14
rejected [3] 45/3
45/15 47/5
rejecting [1]
44/19
related [2] 10/25
33/3
relates [2] 31/11
32/2
relating [1] 10/1
relevance [4]
14/1 19/12 44/22
45/4
relevancy [1]
50/23
relevant [19] 8/23
10/2 10/11 14/13
16/1 16/24 18/10
18/22 19/8 19/12
20/2 22/24 29/25
30/1 31/1 31/12
31/20 32/6 45/1
relies [1] 11/25
rely [1] 34/11
relying [1] 49/15
renewed [2] 2/19
28/13
Reply [1] 9/14
Reported [1] 1/21
Reporter [2] 1/22
52/3
representations
[1] 49/9

requesting [1]
35/20
require [1] 8/13
required [11] 9/4
9/5 9/6 9/11 9/13
9/18 9/20 13/12
29/20 32/7 42/22
requirement [2]
9/22 14/22
requiring [1]
30/15
resolution [1]
18/16
respectfully [1]
21/13
respond [2] 6/16
10/2
responded [2]
45/12 45/15
response [4] 40/1
40/25 41/23 51/11
rest [1] 4/13
result [1] 4/3
return [8] 10/7
10/10 10/22 13/3
14/4 14/10 18/13
29/13
reviewed [1] 7/23
RIANE [2] 1/18
2/12
right [9] 4/8 13/5
20/24 24/3 24/8
27/16 37/24 43/23
45/21
risk [1] 4/12
Road [1] 1/15
Room [1] 1/23
ROSE [1] 1/11
RPR [1] 1/21
rule [1] 35/13
ruled [1] 37/24
Russian [1] 4/16
Russians [1] 4/17

**S**

said [17] 4/16 8/9
12/11 13/23 19/4
19/16 20/14 22/10
22/13 26/16 26/22
28/19 28/22 29/20
42/24 44/5 50/11
same [7] 3/1 9/8
14/18 20/17 28/14
39/23 47/10

Santobello [1]
23/23
saw [2] 2/14
25/14
say [16] 3/19 5/18
14/21 15/18 16/7
18/24 19/21 21/19
32/18 33/14 33/15
36/20 41/17 45/9
45/10 50/21
saying [13] 10/6
12/9 12/15 12/17
13/16 13/16 14/18
15/7 15/20 15/21
15/23 43/14 43/25
says [16] 12/1
12/14 14/6 14/9
14/23 15/5 15/6
16/2 16/7 16/22
18/14 18/18 19/3
29/14 36/22 43/7
scenario [1]
18/12
scheduled [1]
3/23
SCHOEN [7] 1/14
1/15 2/12 2/20
20/19 24/22 30/23
scope [1] 36/12
seat [1] 28/21
seated [1] 5/17
second [4] 5/24
43/6 43/7 43/7
see [10] 4/10 8/2
30/25 32/21 36/22
38/7 38/14 50/8
50/11 51/19
seek [2] 18/2 36/1
seeking [2] 18/1
47/7
seeks [1] 42/19
seem [3] 12/20
18/6 49/4
seemed [1] 2/15
seems [14] 2/16
7/18 8/21 9/16
10/18 13/14 23/10
29/24 34/15 35/6
46/14 49/11 49/16
50/25
seen [6] 4/6 7/3
7/11 7/22 34/18
35/22
Select [7] 43/7

4/3/1 43/17 43/18
43/20 46/21 46/24
selection [7] 4/10
4/19 6/3 33/16
33/24 36/7 49/21
send [1] 18/14
sending [3] 39/22
49/24 49/25
sense [8] 25/3
30/3 30/4 30/6
32/4 32/5 34/21
39/13
sent [7] 7/9 8/21
19/3 25/4 40/1
44/10 46/13
sentence [1] 43/9
separate [6]
10/24 11/23 23/16
33/1 33/3 45/6
separately [2]
46/10 51/9
sequestered [1]
6/1
set [10] 3/12 7/6
12/3 12/6 13/22
27/14 27/20 27/22
36/25 49/22
setting [3] 5/21
27/5 41/25
she [3] 19/3 19/5
42/18
shocked [1] 8/6
shorthand [1]
1/25
shot [1] 25/14
should [12] 4/18
7/4 16/20 19/25
29/2 33/21 34/6
35/22 37/4 38/5
39/2 50/25
show [14] 10/21
14/25 15/1 15/22
16/11 19/4 30/2
31/10 39/16 41/5
44/16 44/16 47/12
49/2
showing [1]
39/15
shown [1] 28/17
shows [4] 11/5
22/22 44/3 45/1
sic [2] 35/14
39/11
sick [1] 21/18

**S**

side [1] 17/25
side's [1] 8/11
signature [1]
38/20
signed [1] 38/8
SILVERMAN [1]
1/18
similar [1] 14/22
simply [4] 3/2
17/24 41/21 42/23
simultaneous [1]
37/2
since [1] 45/8
single [1] 4/20
sit [2] 4/22 24/20
situation [1] 10/7
Sixth [1] 42/22
SLUTKIN [1] 1/18
so [82]
some [15] 3/19
6/15 7/18 7/20
11/14 15/25 20/11
22/14 25/1 27/15
33/13 36/15 41/21
41/22 44/17
somebody [1]
42/13
somehow [1]
23/18
someone [4] 4/4
17/23 17/25 43/19
something [13]
3/21 8/22 9/4 9/5
9/12 19/6 19/6
31/16 35/2 35/22
42/11 49/5 50/25
sorry [3] 18/15
24/17 43/6
sort [9] 3/19 17/6
19/9 19/10 20/13
36/17 40/1 44/7
44/17
sound [1] 32/13
sounded [1]
48/22
sounds [1] 34/3
speak [2] 3/4 6/9
Speaker [1] 21/6
Speaker Pelosi
[1] 21/6
special [1] 3/11
specific [3] 34/19
34/20 43/5

speech [1] 50/20
spend [2] 6/24
50/25
spread [1] 4/21
staff [5] 22/15
42/14 42/14 42/15
42/16
start [2] 2/18 8/5
started [1] 2/2
starting [2] 4/1
33/23
starts [1] 32/12
state [1] 25/19
statement [11]
12/24 18/22 27/17
41/21 42/2 43/3
43/19 46/4 46/5
46/21 47/21
statements [5]
18/7 41/10 47/8
48/12 48/16
STATES [5] 1/1
1/2 1/9 2/4 2/9
statute [3] 16/3
17/22 17/23
stenotype [1]
1/25
STEPHEN [2] 1/5
2/5
still [11] 15/12
16/17 19/11 20/16
21/1 21/5 21/11
22/1 28/16 30/19
49/21
stone [2] 13/22
27/22
stood [1] 4/16
strategy [1] 45/8
Street [2] 1/12
1/19
strikes [1] 37/3
strip [1] 22/5
strong [2] 13/24
15/7
stuff [3] 26/15
44/7 44/12
Su [1] 22/9
subject [3] 41/22
42/8 42/21
submit [1] 3/14
subpoena [19]
10/8 15/15 16/2
21/5 21/7 21/7
21/10 21/14 21/15

subpoenaed [1]
42/4
subpoenas [1]
29/14
substantial [1]
10/8
successful [1]
15/21
such [3] 29/19
30/1 41/9
sufficient [4] 7/10
14/7 28/17 49/10
sufficiently [1]
8/4
suggest [1] 11/18
Suite [1] 1/15
summons [1]
12/2
Sunday [1] 3/13
support [2] 17/18
26/6
supports [1]
12/10
suppose [2]
37/23 43/5
supposed [2]
45/15 45/17
Supreme [1] 16/2
sure [4] 26/2 32/3
32/11 50/12
suspect [1] 49/21
system [1] 22/4

**T**

take [9] 5/4 23/1
24/14 24/14 25/7
28/7 31/17 34/19
43/5
taking [2] 35/7
47/10
talk [1] 3/5
talked [3] 33/22
33/22 33/23
talking [9] 13/3
17/6 17/12 20/15
29/25 34/25 40/5
40/9 44/6
tapes [1] 3/19
team [1] 50/19
technology [1]

tell [2] 5/1 36/18
telling [1] 19/23
Tellingly [1] 47/6
temporal [3]
10/14 12/10 16/5
ten [1] 15/4
tend [2] 10/21
11/18
terms [2] 40/2
42/10
testified [1] 21/25
testify [4] 19/21
42/19 44/24 46/9
testifying [2] 19/2
22/17
testimony [8]
11/12 17/1 18/4
22/11 22/21 29/20
34/11 42/21
text [1] 3/10
than [8] 4/22 17/7
18/13 27/9 27/24
34/21 48/25 49/6
Thank [24] 6/6
6/17 6/18 8/15
8/16 20/18 20/22
24/12 26/13 26/14
28/12 33/2 33/5
33/20 37/10 37/11
38/15 38/16 41/16
44/13 50/3 50/4
51/17 51/18
that [368]
that's [29] 6/1 9/7
9/8 9/13 11/22
14/14 18/25 19/12
21/15 23/23 26/7
26/9 27/10 30/18
33/11 34/23 40/14
40/18 41/21 41/23
43/23 44/1 44/19
45/3 46/2 46/6
48/13 50/5 51/6
their [15] 5/17
6/12 18/1 22/2
33/9 39/4 39/22
41/15 42/13 42/24
44/3 45/23 49/15
49/23 50/18
them [26] 5/2 5/6
5/9 5/16 5/22 6/16
8/13 21/11 21/25
25/4 27/9 27/15

27/23 27/23 28/8
30/6 31/14 34/7
41/15 48/9 48/23
49/2 50/17 51/3
51/12 51/13
then [42] 2/17
3/11 4/12 4/18
5/11 5/12 6/9 6/12
6/13 6/23 8/4 8/20
9/10 9/10 9/21
11/6 13/18 13/25
14/9 15/1 15/6
15/18 18/16 19/16
21/14 21/25 24/15
25/6 27/1 28/9
29/1 29/23 31/6
33/14 36/6 36/20
36/22 38/5 39/23
43/16 45/14 45/16
theory [2] 18/7
21/21
there [57]
there's [15] 3/15
3/25 17/18 18/15
19/15 20/11 21/8
22/12 22/16 27/16
33/17 35/3 36/4
38/4 38/11
thereby [1] 51/4
therefore [2]
29/24 43/20
these [19] 3/17
3/23 7/20 13/24
14/2 15/22 18/19
30/10 31/14 32/3
38/17 40/6 40/12
41/13 42/18 43/24
48/6 48/22 49/23
they [39] 3/19
4/11 5/8 5/16 5/22
7/10 7/11 10/25
18/5 19/11 19/15
19/16 19/16 20/12
21/1 21/1 21/23
22/1 22/20 22/21
22/23 26/1 26/25
33/8 33/9 35/8
35/15 39/17 40/9
40/23 41/2 41/9
46/25 47/2 47/11
47/19 49/10 50/12
50/22
they'll [1] 42/20
they're [10] 5/21

**T**

**they're... [9]**
19/17 25/15 33/3
33/3 40/7 41/9
47/12 48/12 50/1

**thing [3]** 19/16
37/15 45/9

**things [8]** 3/17
6/15 7/2 19/11
20/8 33/21 42/3
50/17

**think [47]** 2/25
4/17 4/24 5/5 6/1
7/4 7/21 7/21
10/14 10/23 13/9
13/24 18/14 20/10
21/18 22/13 22/16
23/9 23/19 24/14
24/21 25/9 25/12
26/9 27/23 28/1
28/3 28/4 30/9
31/5 31/19 31/23
32/2 33/17 34/23
35/3 37/4 37/8
37/17 43/16 46/12
46/17 46/18 47/6
47/7 48/21 51/10

**thinks [2]** 10/19
16/23

**this [84]**

**THOMPSON [8]**
1/18 12/14 13/6
19/23 20/25 21/22
39/8 42/4

**Thompson's [2]**
20/13 23/5

**those [21]** 8/1
9/22 10/18 11/15
11/17 11/18 20/12
21/11 26/22 29/16
29/17 30/9 33/1
34/7 36/4 38/1
38/5 39/13 39/17
40/18 49/7

**though [3]** 18/20
24/18 25/13

**thought [4]** 15/19
16/8 22/14 31/15

**thoughts [1]**
19/10

**three [1]** 41/25

**three-page [1]**
41/25

**through [13]** 5/2

28/23 31/10 31/13
41/12 42/12 42/20
42/24 48/25 49/1

**tied [1]** 16/5

**time [36]** 3/22
3/23 4/10 4/14
6/24 9/6 9/11 9/18
9/20 12/4 12/6
12/25 15/11 15/13
16/4 16/11 16/19
17/10 20/2 20/12
23/23 24/2 25/1
25/15 30/12 30/14
31/19 32/11 33/13
34/7 46/5 47/22
48/2 48/7 48/8
51/1

**times [2]** 25/16
25/16

**today [8]** 6/8 25/4
25/14 26/20 27/14
27/23 33/22 51/15

**told [2]** 12/14
22/5

**tomorrow [1]**
51/6

**ton [2]** 34/25
49/18

**too [2]** 10/15
29/22

**took [1]** 19/22

**topic [1]** 43/1

**topics [1]** 51/15

**total [2]** 35/2 35/4

**totally [1]** 50/24

**track [1]** 50/12

**trailer [1]** 3/16

**transcript [3]** 1/7
1/25 52/4

**transcription [1]**
1/25

**transforming [1]**
23/21

**trial [26]** 2/18
3/13 4/1 6/11
25/10 25/21 25/24
26/18 27/11 27/16
27/21 27/24 28/9
28/18 29/2 29/22
30/15 30/18 30/19
33/23 34/10 34/12
35/6 35/23 45/8
49/15

**true [5]** 44/21
44/23 45/24 47/18
52/4

**Trump [6]** 22/15
29/6 30/21 43/9
43/13 46/23

**truth [8]** 41/3
41/15 41/20 43/11
43/15 43/21 46/20
49/6

**try [3]** 17/21
19/11 19/17

**trying [4]** 16/17
18/5 25/12 48/16

**turn [1]** 17/22

**turns [1]** 8/2

**two [11]** 5/20
13/11 19/21 28/7
29/5 32/3 32/21
37/17 38/18 39/17
40/18

**two questions [1]**
38/18

**typically [2]** 36/14
36/24

**U**

**U.S [3]** 1/11 1/12
1/22

**Uh [1]** 40/24

**Uh-huh [1]** 40/24

**Um [1]** 18/5

**unbiased [2]** 8/4
28/25

**unclear [1]** 32/9

**under [3]** 16/3
23/5 29/14

**underlying [3]**
43/15 47/17 48/6

**undermine [1]**
19/18

**undermined [1]**
19/7

**understand [8]**
17/13 26/10 31/13
31/15 39/2 39/19
42/11 43/22

**understanding [2]**
30/11 36/11

**Understood [2]**
20/18 32/15

**unfamiliar [1]** 8/4

**UNITED [5]** 1/1

**until [1]** 27/24

**up [13]** 3/21 4/14
4/16 15/2 16/11
19/4 25/23 30/3
33/6 34/19 35/7
36/10 36/22

**upon [1]** 27/17

**us [4]** 2/12 25/9
36/18 50/17

**use [7]** 12/21
31/13 31/14 37/15
38/3 38/22 40/21

**used [4]** 27/18
37/20 38/1 46/16

**V**

**vacuum [1]** 22/7

**vanilla [2]** 44/7
44/9

**various [1]** 47/13

**VAUGHN [14]**
1/11 2/9 6/23 8/17
20/22 23/11 34/6
38/17 40/4 41/16
42/23 43/14 44/14
50/14

**venire [1]** 7/5

**versions [1]**
26/20

**versus [1]** 2/4

**very [11]** 5/3 5/5
6/11 7/5 8/8 8/11
13/24 26/10 32/5
33/20 40/4

**Vice [1]** 28/1

**video [1]** 3/9

**view [22]** 3/15
4/12 9/17 10/11
13/3 13/10 13/23
14/10 16/20 17/3
17/16 23/16 27/23
28/16 31/12 32/10
32/13 34/6 36/4
39/2 51/12 51/13

**viewed [1]** 7/10

**viewership [1]**
7/19

**views [1]** 49/23

**voir [12]** 4/3 4/23
6/1 7/1 7/8 7/25
26/17 27/10 28/23
29/3 33/22 36/11

**vs [1]** 1/4

**W**

**wait [3]** 27/24
34/13 39/3

**waive [1]** 17/20

**waived [1]** 24/11

**waiver [5]** 17/15
23/15 24/1 31/24
32/22

**waiving [1]** 6/2

**want [18]** 6/10
6/12 6/15 6/16
14/25 19/11 24/13
25/18 26/11 31/8
31/8 31/12 31/17
32/3 32/11 35/14
49/17 50/8

**wanted [7]** 3/14
15/12 15/19 18/19
19/21 19/24 35/21

**wants [5]** 6/9 15/9
16/10 16/12 38/3

**warranting [1]**
28/17

**was [102]**

**Washington [3]**
1/4 1/13 1/24

**wasn't [5]** 11/5
14/19 16/8 19/23
22/22

**watched [1]** 4/6

**water [1]** 23/22

**way [12]** 2/25 5/6
10/19 13/9 21/8
22/4 24/23 25/13
26/15 37/24 43/24
44/11

**ways [1]** 41/22

**we [110]**

**we'd [1]** 38/9

**we'll [3]** 5/9 27/10
49/21

**we're [25]** 4/19
20/15 21/20 23/20
25/2 26/18 27/7
27/11 27/24 30/19
33/18 34/25 35/1
38/12 40/9 41/3
41/4 41/15 44/9
45/5 45/22 48/20
49/14 49/14 50/11

**we've [14]** 2/13
6/14 17/12 22/5
22/12 22/15 33/15
33/22 33/22 33/23

**W**

we've... **[4]** 35/22 38/7 39/23 42/4
Webster's **[1]** 8/25
week **[4]** 4/7 19/24 28/15 28/19
weekend **[1]** 38/10
Welcome **[1]** 2/15
well **[21]** 9/1 10/23 11/22 14/9 15/20 16/2 17/13 17/17 18/24 20/6 20/20 21/10 23/2 24/22 25/19 26/10 33/20 33/24 38/19 42/15 50/7
well-preserved **[1]** 26/10
were **[15]** 3/23 8/7 10/22 11/18 11/21 14/4 16/8 16/12 22/14 29/17 30/4 30/7 47/14 47/15 47/17
weren't **[2]** 4/11 15/23
wet **[2]** 38/8 38/20
what **[77]**
what's **[4]** 23/7 25/13 36/17 40/25
whatever **[7]** 4/4 5/15 11/5 11/20 14/8 18/5 26/5
when **[14]** 5/21 11/19 18/13 18/24 21/21 21/21 22/10 26/11 28/10 31/2 44/16 47/9 48/9 48/11
whenever **[2]** 15/19 25/14
where **[11]** 8/2 10/7 15/16 17/5 17/23 18/12 30/18 34/18 34/19 37/24 48/15
Whereas **[1]** 20/15
whether **[38]** 4/5 5/16 7/15 8/12 10/1 11/21 12/22 13/8 14/17 16/24

18/6 18/23 19/9 20/3 20/4 23/17 24/6 24/9 24/10 24/11 27/16 28/20 29/2 29/5 30/2 30/17 31/21 31/24 31/24 32/21 37/25 43/10 44/21 46/16 47/15 47/17 49/23 50/1
which **[20]** 2/19 4/10 5/8 10/15 12/1 12/5 12/11 13/15 14/16 24/23 26/25 29/5 37/18 38/4 39/7 40/5 41/19 42/21 47/9 49/2
while **[4]** 5/1 18/17 24/16 34/3
WHITE **[6]** 1/18 1/18 2/12 2/15 22/15 28/1
who **[10]** 2/5 7/24 8/3 29/1 32/16 41/12 42/13 42/14 42/16 43/2
whole **[2]** 5/11 42/24
why **[16]** 2/18 5/15 11/19 11/22 12/22 13/7 14/7 14/12 15/8 15/25 18/21 23/5 29/9 34/20 36/17 50/14
will **[38]** 2/20 4/21 5/2 5/6 5/11 5/12 5/12 5/13 6/13 6/23 7/21 7/22 8/11 13/19 20/19 26/1 26/17 26/19 26/20 26/22 26/23 27/1 27/5 27/13 27/20 28/8 29/1 31/7 31/8 33/24 36/1 36/15 36/15 42/11 42/18 42/21 48/4 50/23
willful **[3]** 32/6 32/23 44/16
willfully **[1]** 22/2
willfulness **[3]** 21/19 32/7 32/13
willingness **[1]**

10/10
wishes **[1]** 10/21
Withdraw **[1]** 28/2
within **[2]** 40/23 43/1
without **[2]** 6/2 43/1
witness **[8]** 34/2 34/17 40/15 41/12 42/12 44/16 49/1 50/15
witnesses **[2]** 13/6 35/14
won't **[2]** 6/24 8/8
word **[3]** 5/3 26/20 36/24
words **[8]** 19/7 20/11 20/12 20/13 21/2 30/25 42/2 42/18
work **[3]** 4/19 18/20 19/25
working **[1]** 30/25
works **[3]** 22/4 23/25 35/9
would **[66]**
wouldn't **[12]** 5/22 11/6 12/22 13/7 14/7 14/12 18/10 18/21 20/2 20/3 26/11 27/9
write **[3]** 5/8 26/24 39/1
wrote **[2]** 21/22 22/11

**Y**

yeah **[9]** 8/13 9/15 12/16 17/4 20/21 37/7 39/16 40/11 48/24
year **[1]** 2/4
yes **[41]** 2/14 2/21 3/8 5/7 5/7 5/7 5/9 5/15 6/4 6/17 7/13 8/15 8/18 9/3 9/23 10/4 10/12 11/3 11/9 20/23 24/16 24/19 26/9 26/9 26/23 26/25 30/23 32/2 32/19 33/4 35/12 35/16 36/8 36/16 36/18 48/9 48/10 48/13 50/7

50/9 51/1 15
yet **[3]** 8/22 29/20 30/16
York **[1]** 4/15
you **[83]**
you'd **[2]** 26/5 36/21
You're **[4]** 19/4 20/16 25/3 47/25
You've **[1]** 23/15
your **[54]**
Your Honor **[32]** 2/3 2/8 2/11 2/21 2/22 2/24 3/24 4/9 5/24 6/6 6/7 6/20 7/7 7/17 8/15 8/18 15/4 20/23 21/14 25/2 25/8 26/13 31/15 32/15 33/2 33/5 33/6 34/8 37/10 38/19 43/3 44/15
yourselves **[1]** 2/7

**Z**

Zelda **[1]** 1/15