**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 21-cr-00670 (CJN) |
|  | : |  |
| v. | : |  |
|  | : |  |
| STEPHEN K. BANNON, | : |  |
|  | : |  |
| *Defendant*. | : |  |
|  | : |  |

**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO
LIFT STAY OF SENTENCE PENDING APPEAL [ECF #193] WITH INCORPORATED
MEMORANDUM OF POINTS AND AUTHORITIES**

On May 14, 2024, the Government filed a Motion to Lift Stay of Sentence Pending Appeal in this case (ECF #193). The Court issued a Minute Order, directing the Defendant, Mr. Bannon, to respond to the Motion, and specifically directing the Defendant to address in the Response "whether the Court has the authority to grant the Motion in light of the Court of Appeals' stay of the mandate." [Minute Order of May 14, 2024]. In accordance with LCrR 47 (b) & (e), Mr. Bannon now files his Response in Opposition to the Government's Motion.

Mr. Bannon sets out below why the Court lacks the authority to grant the relief requested by the Government, in light of the stay of the mandate and why, if the Court finds it has such authority, the Government's Motion must be denied on the merits.

**Relevant Background**

**The Court's Findings In Favor of Bail Pending Appeal**

As the Court is aware, following his conviction of two counts of contempt of Congress under 2 U.S.C. § 192, the Court sentenced Mr. Bannon to concurrent four (4) month sentences of imprisonment. [Tr. 10/21/2022 at 76]. The Court then carefully considered the parties'

submissions on bail pending appeal, made the appropriate findings under 18 U.S.C. §3143(b) in support of releasing Mr. Bannon from his sentence, and advised the parties that the Court agreed that Mr. Bannon "should not have to serve his sentence while he appeals." [*Id.*] The Court went on to announce that it found multiple "substantial questions" for the appeal, including, *inter alia*, "what it should mean for a defendant to willfully make default under the contempt of Congress statute and what evidence a defendant should be permitted to introduce on that question." [*Id.* at 77].

The Court formalized those findings in an Order Staying Sentence Pending Appeal, making the specific findings again that Mr. Bannon is neither a flight risk nor a danger to any person, that his appeal is not taken for purposes of delay, but "rather raises a substantial question of law that is likely to result in a reversal or an order for a new trial." [ECF #168].

**This Court and The Appeals Court Panel Have Concluded, as the Government Has Argued, that They are Bound by the Holding in *Licavoli*.**

On the primary issue of what "willfully" means in the context of the contempt of Congress statute and in arriving at its decision to grant the Government's multiple motions in limine to bar Mr. Bannon from putting on any evidence in any form regarding the reasons behind his response to the subpoena or his reliance on the advice of his counsel who told him that he was not permitted as a matter of law to comply with the subpoena and that the subpoena was invalid, unlawful, and unconstitutional, the Court repeatedly expressed its obligation to follow the Circuit Court's 1961 decision in *Licavoli v. U.S.*, 294 F.2d 207 (D.C. Cir. 1961), notwithstanding the Court's considerable doubt that that case was correctly decided or had continued vitality, in light of subsequent decisions construing "willfully" in the criminal context.

Indeed, the Court indicated that it might have a different view on "willfully" if this were a matter of first impression and would allow evidence of advice of counsel; but its hands were

tied by the decision in *Licavoli*. [ECF #49 at 3].  It repeated this theme throughout the case, asserting, finally, "As I've stressed many times, I have serious reservations that the Court of Appeals' interpretation of 'willfully' is consistent with the modern understanding of the word. It's not consistent with modern case law surrounding the use of that term, let alone the traditional definition of the word.  But as I've previously held and I reiterate again today, I am bound by *Licavoli* and its holdings."  [7/11/2022 Tr. at 115].

And just as this Court consistently made rulings based on its view that it was bound by *Licavoli*, the Government argued on appeal that the conviction was compelled by *Licavoli* and it that the appeals court panel had to reject Mr. Bannon's arguments because the panel decision in *Licavoli* has never been expressly overruled and the panel that would hear the appeal in this case did not have authority to overrule the *Licavoli* panel.  [See e.g. ECF #158; Govt Brief on appeal at 34-48].  The Court of Appeals panel agreed and concluded that it was bound by *Licavoli*.

[Exhibit 1]

**Only the En Banc Court or the United States Supreme Court Have the Authority to Overrule the *Licavoli* Decision; Therefore the "Substantial Questions" Maintain Their Status Until Those Courts Have Considered Them.**

Where, as here, the Government has argued that the result in this case was compelled by *Licavoli*, and that neither this Court nor  the panel that heard the first stage of this appeal had the authority to overrule *Licavoli,* and where, as here, the panel agreed and so based its decision, the Government's argument that the panel's decision resolved any "substantial question" about the application of *Licavoli* when Executive Privilege has been invoked or its continued vitality in light of the evolution of the meaning of "willfully" since 1961must be rejected.

By the Government's own account, these issues can only be fully reviewed on their merits by the Court of Appeals sitting en banc or by the United States Supreme Court; therefore

there is no basis for considering the removal of the stay of the sentence pending appeal until the

appeals process has fully run its course.  All of the §3143(b) factors that supported the original

decision to stay the sentence pending appeal remain fully intact and in full force to the same

degree. This is emphatically so when the four (4) months sentence imposed would have run its

course by the time the appeals process runs its course, causing irreparable harm if and when the

judgment is reversed by one of those courts competent to consider the issues on the merits.[1]

Surely, this Court was well aware of the principle that one panel cannot ordinarily

overrule another panel, as the Government has argued, when it made the decision that Mr.

Bannon "should not have to serve his sentence while he appeals" and did not intend for that

principle to be limited to the panel appeal or it would have been a futile exercise.  In the context

of this case, "while he appeals" must include the process through rehearing en banc and, if

necessary, through a decision by the United States Supreme Court, for those are the only bodies

the Government would acknowledge can overrule the *Licavoli* panel.  The issues raised here are

significant enough to warrant analysis by both of those bodies in light of recent "willfulness"

jurisprudence.

The fact that the panel that heard this case acknowledged at the outset of its Opinion the

binding impact of *Licavoli,* completely undermines the Government's claim that there no longer

is a "substantial question" for appeal. [Exhibit 1 at 2, 7]. The panel decision is based

fundamentally on the principle that one panel cannot overrule another.  *See e.g.*, *Citizens for*

*Responsibility & Ethics v. FEC*, 993 F.3d 880, 893 (D.C. Cir. 2021), citing, *U.S. v. Eshetu*, 898

---

[1] It is well-settled that unnecessary incarceration constitutes irreparable harm.  *Ramirez v. United States Immigration & Customs Enf't*, 310 F. Supp. 3d 7 (D.D.C. 2018); *Seretse-Khama v. Ashcroft*, 215 F. Supp. 37, 50 n.20 (D.D.C. 2004) (collecting cases); *United States v. Vilar*, 2013 U.S. Dist. LEXIS 208219, *24 (S.D.N.Y., November 19, 2013).

F.3d 36, 37 (D.C. Cir. 2018) ("One panel cannot overrule another") and therefore provides no material change in the factors this Court relied on in granting Mr. Bannon's release while he appeals.  It certainly provides no basis for changing that status before the appeal runs its full course through a petition for rehearing en banc and a decision on a petition for a writ of certiorari in the United States Supreme Court.  Indeed, as the Court's Order directing this Response recognizes, in conjunction with its Opinion affirming the conviction, the Court of Appeals issued a separate Order staying the issuance of the Mandate until seven (7) days after rehearing or rehearing en banc has been resolved.  [Exhibit 2].

In the context of this case, the relief the Government seeks would render the Mandate Rule a nullity, cause irreparable harm, and make any eventual victory on the important constitutional principles at issue purely a pyrrhic victory, for the entire sentence imposed would have been fully served before the "substantial questions" have been resolved.  That might serve a political agenda; but it would be a grave injustice and would undermine the very raison d'etre behind 18 U.S.C. § 3143(b) and the Mandate Rule.[2]

### The Court Lacks Authority to Grant the Relief the Government Seeks

In its Motion, the Government asks this Court to lift the stay of the execution of the sentence this Court granted following the conviction in this case, notwithstanding the fact that the Court of Appeals expressly ordered that the issuance of the Mandate is stayed until seven (7) days after Mr. Bannon's petition for rehearing and/or rehearing en banc is resolved.  [Exhibit "2"].

---

[2] "A court of appeals' judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed."  Rule 41, Federal Rules of Appellate Procedure, Notes of Advisory Committee on 1998 Amendments.

Granting the Government's Motion to have the sentence fully executed now before the mandate is issued and before the conclusion of the appeals process Mr. Bannon intends to pursue to the fullest extent, would make the Court's Order staying the issuance of the mandate until seven (7) days after the petition for rehearing/rehearing en banc is resolved meaningless.  It would also render FRAP 41(c) meaningless ("The mandate is effective when issued") as well as the provisions of FRAP 41(d), which provides the process for staying the mandate pending the filing of a petition for certiorari in the United States Supreme Court.  The harm caused truly would be irreparable and unjust if the judgment, already fully executed, is then reversed on further review.

The only basis the Government offers for the relief it requests is that the appeals court panel has issued its decision and, according to the Government, this removes the "substantial question" factor under 18 U.S.C. § 3143(b)(1)(B), even though no mandate has yet been issued and the appeals Court expressly stayed such issuance for rehearing or rehearing en banc.[3]  [ECF #193 at 1-2].  This runs contrary to the principles surrounding the significance of the issuance of the mandate recognized in this Circuit.

In *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997), the Court wrote:

"The relationship between district court jurisdiction and the issuance of the appeals court mandate is clear and well-known: The filing of a notice of appeal, including an interlocutory appeal, "confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the

---

[3] Clearly the affirmance of a judgment of conviction and sentence by a panel does not *a fortiori* establish that there is no "substantial question" remaining for purposes of § 3143, irrespective of the issuance of the mandate.  The provision for bail pending appeal expressly provides for release when a defendant has filed an appeal or petition for certiorari and meets the appropriate criteria.  *See* 18 U.S.C. § 3143 (b)(1).  If the defendant is filing a petition for certiorari, he has lost his appeal already, and perhaps even rehearing en banc; nevertheless the statute expressly recognizes in (b)(1)(B) that a "substantial question" can still arise even though the defendant's claim(s) has (have) been rejected by the court of appeals.

appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 74 L. Ed. 2d 225, 103 S. Ct. 400 (1982) (per curiam). The district court does not regain jurisdiction over those issues until the court of appeals issues its mandate. *Johnson v. Bechtel Assocs. Prof'l Corp.,* 255 U.S. App. D.C. 198, 801 F.2d 412, 415 (D.C. Cir. 1986) (per curiam)."

*Accord, Greater New Orleans Fair Hous. Action Ctr. v. United States HUD*, 2010 U.S. Dist.

LEXIS 115214, *7-*8 (D.D.C. October 4, 2010).

In *DeFries*, the district court had dismissed one count of the indictment against the

defendant and the Government took an interlocutory appeal.  The Court of Appeals reversed the

dismissal of the count and remanded the case for a trial on all counts, including on the newly

reinstated count.  The defendant's trial went forward after the panel decision but before the

mandate was issued and he was convicted on the charge at issue.  Notwithstanding the months of

trial that had taken place, the Court of Appeals concluded that the verdict had to be set aside

solely because the mandate had not issued when they went to trial and notwithstanding the

appellate panel's decision that the count at issue had been improperly dismissed and should go

forward.  *Id.* at 1302-03.  The *DeFries* Court recognized the hardship but, nevertheless, wrote:

> "In reaching this conclusion, we fully understand that appellants' trial took several months, consuming thousands of hours of court and lawyer time. The mandate rule, however, is clear, well-established, and grounded in solid considerations of efficient judicial administration. Because "jurisdiction is the power to act," it is essential that well-defined, predictable rules identify which court has that power at any given time. *Kusay v. United States,* 62 F.3d 192, 194 (7th Cir. 1995). The mandate rule prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds a case, ruling on motions and hearing evidence, after which the appeals court reverses its original decision on rehearing. That we ultimately sustained the district court's jurisdiction in this case is of no moment; district court jurisdiction cannot turn on retrospective examination of appeals court action. Where, as here, our mandate had not issued, the district court lacked jurisdiction to proceed with trial whether we later sustained its jurisdiction or not. Fully aware that our mandate had not issued, the district court chose to proceed with trial. If the government wishes, the district court must now rehear the case.[4]

*Defries*, 129 F.3d at 1302-03.  These principles should be applied here to prevent the irreparable harm that would result from, in effect, ordering the sentence imposed in this case to be fully executed before the panel decision can be reviewed by the en banc Court and by the Supreme Court if necessary.

**The Effect of Granting the Government's Motion Would be to Require the Full Execution of the Judgment Before Appellate Review by a Court With the Authority to Overrule *Licavoli*.**

To be clear, the Government's Motion is not a request that this Court modify or revoke conditions of relief because of any alleged violation of those conditions; rather it is a request to take action based on a material "aspect of the case involved in the appeal," with unalterable and irreparable consequences – before the mandate has been issued.[5]  This is exactly the kind of thing that the Court in *DeFries* held a District court should not do before the mandate issues and for the very reasons discussed in *DeFries*.

The Government here is asking this Court to fully execute its judgment, still on appeal, before the mandate issues.  That most assuredly is not a procedural or ancillary matter in any way shape or form.  This would have the practical effect of treating Court the panel opinion as a

---

[5] See also, Jennifer L. Swize, *The Appellate Mandate:  What It Is and Why It Matters*, Winter 2012 ABA Appellate Practice , Vol. 31 No. 2:

> "Until the mandate issues, however, the appellate court's judgment is not final, and that court retains jurisdiction to decide rehearing petitions or otherwise amend its opinion or judgment.  During this same period before the mandate issues (and, indeed, since the initiation of the appeal), the district court lacks jurisdiction, except for matters unrelated to the merits of the appeal or that are merely procedural, such as requests for attorney fees and costs or conferences to schedule anticipated future proceedings."

final decision on appeal.  This the Court cannot and should not do before the mandate issues, especially where, as here, that would have the effect of irretrievably punishing the Defendant by having him serve his entire sentence of incarceration, before any final judgment and while the appellate process likely to result in a reversal remains ongoing.

The Government asks this Court to take this irreparable final action – have Mr. Bannon serve the entire prison sentence flowing from his conviction – based on the merits of a decision from a panel they argued had no authority to revisit the underlying merits of a primary "substantial question" on appeal because it was bound by *Licavoli* and to do so now, knowing that Mr. Bannon will seek rehearing/rehearing en banc, that the Court expressly stayed the issuance of the mandate until after rehearing/rehearing en banc is resolved, and that there is no final judgment in the case.

Under *DeFries*, it would appear that this Court does not have the authority to take such action, based as it is, by definition, on "aspects of the case involved in the appeal" on the merits and especially, given the length of sentence at issue, where such action would have the practical effect and the irreparable impact for Mr. Bannon, of pre-judging the balance of the important future steps in the appeals process.

**The Out of Circuit Authority Cited by the Government is Distinguishable.**

The Government's Motion, in a footnote, cites two cases in support of its assertion that this Court has the authority before the mandate issues to revoke Mr. Bannon's bail under the present circumstances based on the appellate panel's affirmance alone, and not on any alleged violation of bail conditions.  [ECF #193 at 3, n.2].  These cases are *United States v. Krzyske*, 857 F.2d 1089, 1090 (6th Cir. 1988) and *United States v. Sullivan* 631 F. Supp. 1539, 1540 (E.D. Pa.

1986).  Neither these cases nor the handful of others that have come to a similar conclusion[6] are binding authority on this Court and, in any event, each is materially distinguishable.[7]

In some of the cases that permit such action before the mandate has issued, it is sought and taken only after rehearing and rehearing en banc have been denied.  Some seem to mix the idea of "jurisdiction" with a prediction of the likelihood of success.  They vary in their distinguishability.

But the primary distinctions between each of those decisions that permitted such relief and the instant case are that (1) none involved a sentence that would be fully served before the appeals process could be fully pursued and (2) none involved a situation like that presented here in which on the primary appellate issue, the Government argued that the panel was bound by an earlier panel decision, thereby making the panel decision a foregone conclusion, changing nothing about the factors that led the district court to grant bail pending appeal originally.  In the instant case, unlike any of the other cases cited by the Government or otherwise reported, the Government's argument on appeal was that only the en banc Court of Appeals or the United

---

[6] *See e.g*, *United States v. Black*, 543 F.2d 35 97th Cir. 1976); *United States v. Mikell*, 2010 U.S. Dist. LEXIS 2256, 2010 WL 148673 (E.D. Mich., January 12, 2010); *United States v. Lynch*, 2018 U.S. Dist. LEXIS 97364 (W.D. Pa., June 11, 2018); United States v. Vilar, 2013 U.S. Dist. LEXIS 208219 (S.D.N.Y., November 19, 2013).

[7] In *Krzyske*, for example, at the time the court was considering the issue, rehearing and rehearing en banc already had been denied.  857 F.2d at 1090.  In the instant case, as noted, it is the appeals process after the panel decision that is of primary importance, given the Government's argument and the panel's conclusion, that the panel could not overrule the *Licavoli* panel.  Additionally, the sentence involved was five (5) years), not one that would be completed with the appeals process still pending as in the instant case.  In *Sullivan*, the court characterized the question of jurisdiction before the mandate issued as an "interesting" one and concluded that it had jurisdiction.  Its "jurisdictional" conclusion, however, was based on what the court believed was the conclusiveness of the panel's decision on the merits, altering the district court's view of "substantial question" status. *Sullivan*, 631 F. Supp. at 1541-42.  The sentence was for two years and not one that would have been fully executed before the next steps in the appeals process could be pursued.

States Supreme Court could overrule *Licavoli*. Under these circumstances, the Government should welcome maintaining the status quo while these important issues are resolved by the en banc Court or the Supreme Court in the interests of justice.[8]

**Under the *DeFries* Court's Approach, the Court Should Find It Has No Authority to Grant the Requested Relief, Since It Would Effectively Mean Executing the Judgment in Full Before the Mandate Issues.**

The undersigned has not found any case from within this Circuit on the question in the precise procedural posture presented here. Mr. Bannon respectfully submits that in the context presented here, based on the decision in *DeFries*, the course of action permitted by these other courts before the mandate is issued is not permissible in this Circuit where the Motion is premised on the notion that the panel decision resolved any "substantial question," notwithstanding (1) the Mandate Rule and its effect, (2) the express Order from the Circuit court that the mandate is stayed until rehearing and rehearing en banc have been resolved, (3) the Government's own argument that the panel's decision was a foregone conclusion because it was bound by *Licavoli*, and (4) the fact that taking the action the Government seeks would effectively and irreparably ensure that Mr. Bannon would serve his full sentence before the appeals process, which might well reverse judgment of conviction and sentence, runs its course. That would be a most unjust result and is totally avoidable by fair and reasonable means. The Court must deny the Government's motion and keep bail pending appeal in place through the conclusion of the appeals process for the same reasons it originally found bail pending appeal appropriate and just.

---

[8] As the Court wrote in *Strickler v.* Greene, 527 U.S. 263, 281 (1999), "Within the federal system, for example, we have said that the United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Berger* v. *United States*, 295 U.S. 78, 88 (1935).

<u>**The Court Must Deny the Government's Motion on The Merits**</u>

Even if *arguendo*, the Court finds it has the authority to grant the Government's Motion, the Motion must be denied on the merits.

**An Evaluation of the §3143(b) Factors Reaffirms the Court's Original Grant of the Stay.**

In each case that entertained such a motion by the Government, the court engaged in an evaluation of the §3143(b)(1)(B) factors. Here any such evaluation must lead to the same conclusion at which this Court arrived originally. The finding that Mr. Bannon met all criteria for bail pending appeal originally remains just as fully valid and correct today.

As noted above, this Court made findings orally and in a formal Order evaluating and applying the statutory criteria for Mr. Bannon's release while he pursues his appeal, concluded that he satisfies such criteria, and ordered that he remain free during the appeal process. [10/21/2022 Tr. at 76-77; ECF #168]. The same support for that conclusion and especially for finding multiple "substantial questions" within the meaning of 18 U.S.C. §1343(b) justifying a stay of the sentence while Mr. Bannon pursues the appeals process applies in full force today and the appellate panel's decision does not affect that analysis.

Specifically, this Court found the following with respect to Mr. Bannon's release from his sentence under 18 U.S.C. §3143(b), while he pursued his appeal:

> "In particular, I find that Mr. Bannon is not likely to flee or pose a danger to the safety of any person or the community;[9] and that such an appeal would not be taken for the purpose of delay but rather would raise substantial questions of law.

---

[9] U.S. Probation agreed with this assessment: "The defendant is a good candidate for voluntary surrender as he is compliant with the conditions of his release, has appeared for all scheduled Court appearances, and is not an apparent flight risk or a danger to the community." 18 USC § 3143(a)(2). Doc. 150 at 3.

In particular, as I've noted throughout this case, there is a substantial question regarding what it should mean for a defendant to willfully make default under the contempt of Congress statute and what evidence a defendant should be permitted to introduce on that question.

This case also raises substantial questions about the effect of the congressional subpoena recipients' invocation of the Speech of Debate Clause, and questions regarding whether and to what extent the Committee was formed and operate(d) in compliance with its rules.

Mr. Bannon's appeals would present those substantial questions. So if Mr. Bannon files an appeal, as he has stated is his intention, I will enter an order releasing him from serving his term of incarceration until his appeal is resolved."

10/22/2022 Tr. at 76-77

This Court reiterated its conclusions in a written Order on November 7, 2022:

"Pursuant to 18 U.S.C. §3143(b), and as the Court explained at the Defendant's sentencing hearing, the Court finds that Defendant Stephen K. Bannon (a) is not likely to flee or pose a danger to the safety of any other person or the community if released and (b) that his appeal is not taken for the purpose of delay but rather raises a substantial question of law that is likely to result in a reversal or an order for a new trial. Accordingly, it is **ORDERED** that the sentence in this case shall be STAYED pending Stephen K. Bannon's appeal of his conviction." [ECF #168].

At all times during this case, Mr. Bannon has complied with all conditions of release.

Moreover, Mr. Bannon is fully committed to pursuing the full appeals process required to reverse his conviction, through review by the United States Supreme Court if necessary.

### The "Substantial Questions" for Appeal Remain for En Banc Review and Certiorari

### "Willfully," Advice of Counsel, and Executive Privilege

A primary issue this Court has recognized as raising a "substantial question" justifying release during the appeal process is, as the Court characterized it, "what it should mean for a defendant to willfully make default under the contempt of Congress statute and what evidence a defendant should be permitted to introduce on that question." Tr. 10/21/2022 at 76-77.

Mr. Bannon assumes the Court's familiarity with the facts and arguments surrounding this issue and will only set them out here to the degree necessary to frame the issue in order to demonstrate the continued status of the issue as a "substantial question" under §3143(b) for the remainder of the appeals process.

Before trial, the Government successfully moved to preclude Mr. Bannon from raising an advice of counsel defense based on the Court's decision in *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961) (holding that good faith reliance on advice of counsel is not a defense to Contempt of Congress under 2 U.S.C. § 192). Defense counsel argued that *Licavoli's* holding could not be reconciled with later developments in the law and that, in any event, *Licavoli* was inapposite because the facts of that case did not involve an assertion of executive privilege or a dispute between the branches of government. [Doc. 30]. The Court held that controlling precedent established in *Licovoli* required it to grant the Government's Motion.

After barring Bannon from presenting to the jury his reasons for responding as he did to the subpoena – purportedly because the reasons for "noncompliance" were irrelevant as a matter of law - the court allowed the government to put before the jury its false, concocted reasons for Mr. Bannon's failure to comply.  Government counsel argued repeatedly and with impunity that Mr. Bannon "ignored" the subpoena, "thumbed his nose" at the Committee, had "no justification" for doing so and that he did it because he thinks he is "above the law" and "didn't care" and "had contempt" for the Committee, and more. [7/19/2022 Tr. at 520-523].[10]  The

_____

[10] The Court also permitted government counsel to argue to the jury that Congress had unilateral authority to require compliance with its subpoena notwithstanding the invocation of executive privilege. [e.g., 7/22/2022 Tr. at 1047,1053].  Under no cognizable jurisprudential principle, consistent with the constitutional concept of separation of powers, is Congress like a "referee" or in any way recognized as an appropriate arbiter over a conflict between Article 1 and Article 2 branch interests, especially given the constitutional presumption of validity for the invocation of executive privilege.  Only an Article 3 court can serve in that role.  Separation of Powers also

government was allowed to argue to the jury that executive privilege did not matter nor did Bannon's belief that he could not lawfully apply or that his attorney so advised him [7/22/2022 Tr. at 1052-53]. Throughout the trial and especially in opening and closing arguments, government counsel repeatedly exploited the order barring Mr. Bannon from explaining his actions and misrepresented them. Government counsel told the jury the "whole case is about a guy who just refused to show up" [7/19/2022 Tr. at 523]. That was demonstrably false and demeans our fundamental constitutional principle of separation of powers.

Bannon was barred from putting on any evidence or argument that he believed he responded to the subpoena in the only way the law permitted, once executive privilege was invoked and that he acted in the manner his experienced lawyer directed him that he had to act as a matter of law. (ECF #30-1; ECF #49). He was barred from putting his defense theory before the jury in any manner and the jury was instructed on the elements and other relevant issues (e.g. Instructions 24 and 25) in a manner that further denied Bannon's ability to defend.[11]

In *Licavoli*, the D.C. Circuit held that "willfully makes default" under 2 U.S.C. §192 simply means a "deliberate, intentional failure" and does not require a showing of evil motive or purpose. *Id*. at 209. Indeed, it held that "willfully" in the context of this statute does not require any awareness or belief by the defendant that his conduct in

---

bars the legislative branch from ordering an executive branch official to take action. [ECF #58-10 at 29, n. 28]; *INS v. Chadha*, 462 U.S. 917 (1983).

[11]  The jury expressly was instructed, over Mr. Bannon's objections, not to consider his true reasons. [ECF #129 at 27-28]. Bannon's requested jury instructions were rejected and his objections to the jury instructions given were overruled. See e.g. [ECF #120; ECF #126; 7/22/2022 Tr. at 1019-1024]. Additionally, the court was provided with a proffer as to what Mr. Bannon and Mr. Costello would testify to, but for the court's conclusion denying the defenses and the right to tell his story regarding his response to the subpoena [7/21/2022 Tr. at 978-980].

response to the subpoena was wrong or against the law or any belief that it was. The *Licavoli* panel also found that advice of counsel is not a defense to a charge under the statute.  The *mens rea* inquiry for a conviction, according to the panel, is simply whether a subpoena was issued and received and whether the defendant fully complied, with any reason other than "accident" unavailing as a defense.  The <u>*Licavoli*</u> court found that:

> "[I]t has been established since the Sinclair case, supra, that reliance upon advice of counsel is no defense to a charge of refusing to answer a question, such reliance is not a defense to a charge of failure to respond. The elements of intent are the same in both cases. All that is needed in either event is a deliberate intention to do the act. Advice of counsel does not immunize that simple intention. It might immunize if evil motive or purpose were an element of the offense. But such motive or purpose is not an element of either of these offenses. We are of the opinion that the doctrine laid down in Sinclair applies also to a charge of willfully making default. Advice of counsel cannot immunize a deliberate, intentional failure to appear pursuant to a lawful subpoena lawfully served."

*Id.* at 209.

Almost forty years after the *Licavoli* decision, the Supreme Court repeatedly has clarified that "willfulness" requires knowledge that one's conduct is unlawful. *Bryan v. United States*, 524 U.S., 184 196 (1998) (to establish "willfulness" the Government must prove that a defendant knew his conduct was unlawful); *Ratzlaff v. United States*, 510 U.S. 135, 138 (1994) ("to give effect to the statutory 'willfulness' specification, the Government had to prove [the defendant] knew the structuring he undertook was unlawful"). *See also*, *Ruan v. U.S.*, 142 S. Ct. 2370, 213 L. Ed. 2d 706 (June 27, 2022); *Rehaif v. U.S.*, 588 U.S. ___, 139 S. Ct. 2191, 2195, 204 L. Ed. 2d 594 (2019) & at 2205 (Alito, J. dissenting) (juxtaposing "knowingly" and "willfully")

Indeed, this Circuit has recognized a progression over time in the Supreme Court's construction of the word "willfully." *See*, *e.g.*, *United States v. Burden*, 934 F.3d 675, 692-692 (D.C. Cir. 2019) (discussing Supreme Court approach to reading "willfully" as requiring proof

that a defendant had a "culpable state of mind" and knew that his acts were unlawful to convict under a criminal statute; collecting cases). District courts have applied this principle as well. *See United States v. Zeese*, 437 F. Supp. 3d 86, 94 (D.D.C. 2020) ("Generally, 'in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'") (citation omitted).[12]

While "willfully" might fairly be said to have different meanings under different statutes, based on years of clear jurisprudence from the Supreme Court and this Circuit, the threshold under any criminal statute requires some knowledge or belief by the defendant that the conduct at issue was wrong and each of these cases make the point in the strongest of terms. The panel asserted that it was beyond its authority to consider the definition in any context other than §192 in light of the *Licavoli* panel decision. This makes rehearing en banc absolutely essential.

The alternative would be to send Mr. Bannon to prison based on a decision that is irreconcilable with the evolved baseline criminal law definition of "willfully," without waiting for a court that has full authority to overrule *Licavoli* to consider the question almost six decades later and after much greater clarity on the issue from the United States Supreme Court in those intervening years.

---

[12] Mr. Bannon also at all times before this Court and on appeal has argued that if the *Licavoli* standard of "willfulness" is applied when Executive Privilege is invoked, making even that invocation no justification defense for not complying, the statute as applied violates the Separation of Powers doctrine and is otherwise unconstitutional. How and when to invoke Executive Privilege is the exclusive prerogative of the President or former President and it is presumptively valid when invoked and Congress is not the arbiter of its validity or the breadth of a protective assertion. [See Bannon Brief on appeal at 23-30]. He respectfully submits that that is a related "substantial question" for rehearing/rehearing en banc and certiorari, if necessary.

Mr. Bannon has contended, at every opportunity, that *Licovoli* is outdated and cannot be reconciled with modern jurisprudence for any criminal statute that requires "willful" action. This Court has acknowledged Mr. Bannon's arguments, as reflected below:

- "I think that the D.C. Circuit may very well have gotten this wrong; that makes sense to me, what you just said. The problem is, I'm not writing on a clean slate here." Hr'g Tr. 35:25-36:3, Mar. 16, 2022.

- "The defendant was charged with violating 2 US Code Section 192. As relevant here, that statute covers any individual who "willfully makes default" on certain Congressional summonses. The defendant argues he's entitled to argue at trial that he cannot have been "willfully" in default, because he relied in good faith, on the advice of counsel, in not complying with the Congressional subpoena. He points to many Supreme Court cases defining "willfully," including *Bryan v. United States*, 524 U.S. 184, 1998, to support his reading of the statute. If this were a matter of first impression, the Court might be inclined to agree with defendant and allow this evidence in. But there is binding precedent from the Court of Appeals, *Licavoli v. United States*, 294 F.2d 207, D.C. Circuit 1961, that is directly on point." *Id.* at 86:25-87:15.

- "Second, the defendant notes that in the sixth [sic] decade since *Licavoli*, the Supreme Court has provided clarity on the meaning of "willfully" in criminal statutes. Clarity that favors defendant. That might very well be true. But none of that precedent dealt with the charge under 2 U.S. Code, Section 192. *Licavoli* did. Thus, while this precedent might furnish defendant with arguments to the Court of Appeals on why *Licavoli* should be overruled, this court has no power to disregard a valid and on-point or seemingly on-point holding from a higher court." *Id.* at 89:3-12.

- "I noted in my prior decision that I have serious questions as to whether *Licavoli* correctly interpreted the mens rea requirement of "willfully", but it nevertheless remains binding authority." Hr'g Tr. 126:6-9, June 15, 2022.

- "As I've stressed many times, I have serious reservations that the Court of Appeals' interpretation of willfully is consistent with the modern understanding of the word.  It's not consistent with modern case law surrounding the use of the term, let alone the traditional definition of the word.  But as I've previously held and I reiterate today, I am bound by *Licavoli* and its holdings."  July 11, 2022 Tr. at 115.

Because Contempt of Congress prosecutions are so rare, the D.C. Circuit has not had occasion to address the viability of *Licavoli* in light of the evolution of the criminal law on the *mens rea* element. This case presents a unique chance to update the law. The current state of the law burdens subpoenaed congressional witnesses with navigating complex legal principles – such as executive privilege – that are the argot of lawyers, not laymen. The inherent risks of this approach cannot be understated. Executive privilege is critical to the proper functioning of the executive branch because it protects the confidentiality of executive decision-making, ensures that Presidential advisors can provide candid advice, and preserves the autonomy and independence of the executive branch. *See Trump v. Thompson*, 20 F. 4th 10 (2021).

The facts of this case show that Mr. Bannon's conduct was based on his good-faith reliance on his lawyer's advice. Every pre-indictment communication in this case was between attorneys. The Select Committee sought service of the subpoena not on Mr. Bannon, but *via* his attorney, Mr. Costello. The communications that followed between the Select Committee and Mr. Bannon were all conducted through attorneys. Based upon clear authority, Mr. Costello provided legal advice to Mr. Bannon. Mr. Costello provided legal justifications for Mr. Bannon's position to the Select Committee and received responses back from Select Committee attorneys. Mr. Costello provided advice to Mr. Bannon, and Mr. Bannon acted on that advice. Indeed, Mr. Costello's Declaration [ECF #30-1] and Mr. Bannon's proffer make clear that Mr. Bannon acted at all times with respect to the subpoena in the only manner he understood from his attorney that the law permitted.  Mr. Costello's advice, followed by Mr. Bannon, included the following:

- The Select Committee subpoena was invalid, based on long-standing U.S. Department of Justice authority, because the Select Committee would not allow former President Donald J. Trump's counsel to be present at Mr. Bannon's deposition, so as to protect executive privilege;

- A former White House official does not violate 2 U.S.C. § 192 when a President invokes executive privilege in response to a congressional subpoena, based upon U.S. Department of Justice authority;

- Mr. Bannon could not waive executive privilege, since the privilege belonged to former President Trump;

- Because former President Trump asserted executive privilege, Mr. Bannon was not in a position to determine what documents or testimony he could lawfully provide to the Select Committee; and

- Consistent with prior experience, the lawyers involved would attempt to reach an accommodation between the two political branches, or the matter would be determined by a court of law.

The jury was not permitted to hear any of this. Interestingly, in *Licavoli* at least the defendant was allowed to tell his story to the jury and explain why he did not comply. So did the defendant in *Townsend v. U.S.*, 95 F.2d 352 (D.C. Cir.), *cert. denied*, 303 U.S. 664 (1938).

If the Court of Appeals sitting en banc or the United States Supreme Court overrules the holding in *Licavoli* in accordance with current Supreme Court precedent, or otherwise decides it is inapplicable under the circumstances of Mr. Bannon's case, where Executive Privilege has been invoked, the judgment here would be reversed. Given this, Mr. Bannon qualifies for release pending appeal under § 3143(b)(1)(B)(i)&(ii). See also §3143(b)(1)(B)(iv) in light of the four (4) month sentence imposed. Because Mr. Bannon continues to meet all the requirements for release pending appeal under the provisions of § 3143(b)(1), this Court should release Mr. Bannon so that the execution of his sentence his stayed through the completion of the appeals process.

Nothing about the panel decision on this issue in any way lessens the "substantial question" status of this issue. The panel's decision is based fundamentally on the notion that it had no authority to overrule the *Licavoli* panel's decision and therefore upheld *Licavoli's*

conclusion that under this statute, in contrast to the traditional and modern meaning of "willfully" in the criminal law, as set forth in cases from this Circuit and very recently from the United States Supreme Court, the reason for non-compliance with the subpoena is irrelevant as a matter of law and advice of counsel is deemed to be no defense at all.  This is consistent with the position the Government urged the panel to take in its brief.

The questions of what "willfully" means under this statute, in light of the evolution of the term in the criminal law since the 1961 *Licavoli* decision and whether advice of counsel is a viable defense, especially where, as here, executive privilege was invoked, remain vitally important for the Circuit court sitting en banc or the United States Supreme Court to answer, not bound by the panel decision in *Licavoli*.

### **The Panel Decision Reflects Material Errors of Law and Omits Material Facts**

In addition to the conflict between the decision in the case at bar and decisions from the United States Supreme Court and from this Circuit on the meaning of "willfully" and related issues discussed above, and the exceptional importance of these issues which satisfy the criteria for rehearing en banc pursuant to FRAP 35 (a) & (b), the panel decision also overlooks or misapprehends material points of law and facts in the instant case, satisfying the criteria for panel rehearing under FRAP 40(a)(2).

Some examples of the material errors with respect to the facts and law will be discussed below.  There are more.  These are relevant not only to demonstrate that seeking rehearing/rehearing en banc is an important part of the appeals process in this case, but also it is relevant to why the Government's Motion asking the Court to fully execute Mr. Bannon's sentence in this case, before the mandate is issued and while the appeals process is continuing, must be denied.

**The Rehearing Process is Vitally Important in This Case.**

The panel decision attempts to relegate all authority that demonstrates that the definition of "willfully" in *Licavoli* cannot be reconciled with the subsequent sixty years of jurisprudence on the meaning of "willfully" in the criminal context with the general notion that "willfully" means different things depending on the statute.  This is completely unavailing and impermissibly diminishes the constitutional underpinnings of that jurisprudence, both from this Circuit and from the United States Supreme Court.

The cases relied on by Mr. Bannon demonstrate that courts since *Licavoli* have emphasized that there is a constitutional threshold for the nature of the *mens rea* that is required to impose criminal liability and incarceration under a criminal statute that requires a defendant to have acted "willfully" and that threshold is not limited to certain statutes.  The strict liability standard applied here from *Licavoli,* held to require nothing more than whether the defendant received a subpoena and complied, irrespective of any reason or justification (other than accident) falls well below the threshold for "willful" conduct justifying a criminal conviction and sentence of incarceration based on well settled and fundamental jurisprudence from the United States Supreme Court and this Circuit since *Licavoli* discussed above.

Perhaps most relevant to the issue now before this Court, is the question of whether the *Licavoli* definition can be reconciled with the definition of "willfully" as it has evolved.  That is a question the panel could not and did not meaningfully address because it deemed itself bound by *Licavoli* with respect to the meaning of "willfully" under §192.  That is a primary question for rehearing en banc and for a petition for writ of certiorari in the United States Supreme Court.

It should be axiomatic by now that in our system of criminal justice, we do not convict people criminally and incarcerate them without satisfying the threshold definition of "willfully"

reflected in the recent Supreme Court cases and without letting them put forward justification defenses. *See e.g.,* H. Packer, *Mens Rea and the Supreme Court*, 1962 Sup. Ct. Rev. 107, 147-152 (1962); Dubin, *Mens Rea Reconsidered: A Plea for a Due Process of Criminal Responsibility*, 18 Stan. L. Rev. 322 (1966); Note, *Criminal Liability Without Fault: A Philosophical Perspective*, 75 Colum. L. Rev. 1517 (1975).[13]

Additionally, in the context of this case, the question of whether, if the strict liability definition of *Licavoli* applies - such that no reason for noncompliance other than accident is a defense to a congressional committee subpoena – this violates the constitutional separation of powers doctrine when executive privilege is invoked will have to be answered by the en banc Court or the United States Supreme Court.

Mr. Bannon respectfully submits in his appeal that the application of *Licavoli* in this context, ignores the presumption of validity to which the invocation of executive privilege is entitled, it ignores the concept of a "protective assertion," it impermissibly violates the exclusive prerogative of the President or former President, and it punishes the defendant for preserving a privilege he has been told is not his to waive, especially where as here, he did not know the parameters of the protective assertion. Mr. Bannon will gladly expound on these arguments; but this Court has made it clear on several occasions that it is fully familiar with the arguments Mr. Bannon made before this Court and raises on his appeal. This is another related argument that

---

[13] The Department of Justice itself has expressed doubt that the "willfulness" element of §192 can be satisfied when resistance to the subpoena is based on the invocation of executive privilege and whether criminal *mens rea* can be established when relying on an OLC Opinion. [ECF #58-10 at 36, N.34]; See also Model Penal Code §2.04(3)(b).

must be addressed by the en banc Court or the United States Supreme Court.  It is exceptionally important.[14]

 To say that no other cases under 2 U.S.C. §192 define "willfully" is not very meaningful and, in any event, is circular.  Prosecutions are so rare under the statute that it arguably has fallen into desuetude.  Moreover, every case brought under the statute comes before the same court and, as the Government argued and this panel found, their position is that any panel is bound by *Licavoli*; therefore nothing relevant has changed with respect to the criteria for bail pending appeal.

---

[14] The manner in which the panel avoided dealing with this issue reflects misapprehensions with respect to applicable legal authority and mistakes of facts.  The panel wrote that there were no constitutional concerns for it to consider regarding the invocation of Executive Privilege purportedly because President Trump did not communicate his protection assertion directly to the Committee and Mr. Bannon "never raised executive privilege as an affirmative defense to the contempt charges in (sic) district court."  [Exhibit 1 at 10].  The panel then cites for support to this mistaken premise this Court's comments that the role of Executive privilege in excusing compliance was "unteed-up."

 First of all, the Court errs in implying that Congress can dictate the manner and to whom the President communicates his invocation of Executive Privilege and the breadth of the invocation.  That is exclusively the President's prerogative and his invocation is presumptively valid when made.  Any other understanding of the respective roles would violate the separation of powers doctrine.  *See Senate Select Committee on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974); *U.S. v. Nixon*, 418 U.S. 683, 708-709 (1974).  Indeed, in this case President Trump communicated his invocation to Messrs. Meadows and Scavino through the same medium and they were not prosecuted (Mr. Bannon sought discovery on that issue and the Court denied it.  ECF #86).

 Secondly, the panel appears to have entirely overlooked Mr. Bannon's July 13, 2022 filing which followed the Court's July 11, 2022 comment that the issues did not appear to have been put forward yet; so it was premature to rule on it. [7/11/2022 Tr. at 139]. On July 13, 2022, Mr. Bannon expressly addressed this issue and made it crystal clear that he had at all times raised the invocation of Executive Privilege as an affirmative defense to compliance with the subpoena. [ECF #107 at 6-9].  See also ECF #41 distinguishing *Licavoli* based on the invocation of Executive Privilege.  This is a significant error in the panel's decision.

**The Panel's Error Regarding *Townsend v. U.S.*, 95 F.2d 352 (D.C. Cir.), *cert denied* 303 U.S. 664 (1938) is Appropriate for Rehearing and Rehearing En Banc.**

To say that no other case under this statute has found that a defendant should be able to put on a defense of advice of counsel if there is evidence to support it is just plain wrong. [Exhibit 1 at 10]

The panel acknowledged that a panel can overrule a prior panel if there is conflicting "on-point" authority that pre-dated the panel's decision at issue. [Exhibit 1 at 7, citing *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011)].

At oral argument, one member of the panel asked what the best authority would be on the *mens rea* that deals with 2 U.S.C. §192, rather than just what "willfully" means in the context of other statutes. The undersigned answered that the decision in *Townsend v. U.S.*, 95 F.2d 352 (D.C. Cir.), *cert denied* 303 U.S. 664 (1938), a panel decision which post-dated *Sinclair* and pre-dated *Licavoli*, would be a prime candidate.

In its Opinion, the panel refers to this exchange, and in 10, n. 1, dismisses *Townsend* as a case which actually supports *Licavoli*. That is an extraordinarily unfair dismissal of *Townsend*.

Any reader of the decision in *Townsend* must ineluctably come to the firm conclusion that the Court in *Townsend* without any question understood "willfully" as used in §192 to mean, among other things, that if a defendant sought out the advice of counsel with respect to a Committee subpoena, received legal advice from the lawyer on the matter and then acted pursuant to and consistent with that advice, this absolutely would provide a defense to charges under §192 and should be put before a jury. The *Townsend* court clearly understood such a principle to be compelled decisions from the United States Supreme Court's decisions in *Murdock* and *Williamson* but then noted that the defendant in *Townsend* never proffered any

25

evidence to support an advice of counsel defense and therefore it was not error to fail to put such a defense before the jury.

Indeed, after first describing the decisions in *United States v. Murdock*, 290 U.S. 389 (1933) and in *Williamson v. United States*, 207 U.S. 425 (1908) and their emphasis on honest, good-faith belief being a defense to a criminal charge of acting "willfully," with their holdings extending beyond their facts,[15] the Court in *Townsend* made clear that the only reason evidence of advice of counsel was not a defense in that case under 2 U.S.C. §192 was because Mr. Townsend had not put forward any evidence that he had relied on the advice of counsel.[16] The panel in the instant case simply is mistaken in asserting that Bannon has not identified any case under this statute pre-dating *Licavoli* that reflects a contrary view on the meaning of "willfully" or on the defense provided by an honest reliance on the advice of counsel.  It was wrong to

---

[15] "However, the Supreme Court has also held - perhaps on the theory that willfulness is a type of specific intent - that where the crime involves willful intent, an accused may show justification by proving that he "honestly and in good faith seeks advice of a lawyer as to what he may lawfully do * * * and fully and honestly lays all the facts before his counsel, and in good faith and honesty follows such advice, relying upon it and believing it to be correct, and only intends that his acts shall be lawful, * * * even if such advice were an inaccurate construction of the law." *Williamson v. United States*, 207 U.S. 425, 453, 28 S.Ct. 163, 173, 52 L.Ed. 278. In *United States v. Murdock, supra*, the Supreme Court has extended this exception to the general rule even farther as applied to the particular facts of that case…."  *Townsend* 95 F.2d at 358-59.

[16] "In the present case, therefore, no such situation exists as in the *Williamson* Case or in the *Murdock* Case. There is nothing in the excluded evidence to indicate that appellant submitted the question of his duty to attend the committee hearings to an attorney and acted honestly upon that advice, relying upon it and believing it to be correct. There is nothing in the excluded evidence to indicate that there was any uncertainty in the mind of the appellant as to the law or as to his duty to attend. In other words, there is nothing in the excluded evidence to take the present case out of the general rule regarding mistake of law, or to bring it within the exceptions stated in the *Williamson* and *Murdock* Cases. Consequently there was no reason to send the evidence to the jury upon the ground of good faith or honest belief."  *Townsend*, 95 F.2d at 360-61.

dismiss *Townsend* as it did by writing that it "only further confirms" the holding in *Licavoli* and in the instant case.  That simply is not true.[17]

There are many more errors of law and fact in the panel's decision.  The panel presents an account of the communications between Messrs. Costello and Clark that misrepresents the actual record, for it has overlooked a good deal of what Mr. Costello provided to the Court on the subject in his Declarations, including additional conversations with Mr. Clark that contradict the conclusion the panel decision reached about the gist of their communications.  Additionally, Mr. Bannon respectfully submits that the panel's analysis of the entrapment by estoppel defense and the role of the OLC opinions misapprehends the law applicable to that defense, conflicts with the

---

[17] Tellingly, the panel in the instant case also fails to acknowledge the jury instructions given in *Townsend* which certainly cannot be reconciled with the decision in the instant case and it fails to acknowledge that Mr. Townsend, like Mr. Licavoli, and in sharp contrast to Mr. Bannon, were both permitted to testify fully at trial and explain their actions and their reasons vis a vis the subpoena.  The following is what the Court in *Townsend* wrote about the jury instructions given in that case vis a vis "willfully."

"Appellant's rights were adequately protected on this score, in any event, because the instruction given by the court defined willfully in the extremest terms. **The court told the jury that the word "implies not only knowledge of the thing but a determination with a bad intent to do it or to omit doing it in the ordinary sense in which it is used in that statute [it] means not merely voluntarily but with bad purpose. It is frequently understood as signifying an evil intent without justification or excuse."** *Townsend*, 95 F.2d at 358. (emphasis added).

The *Townsend* Court referred to the additional following jury instruction as well in finding that the defendant's rights vis a vis "willfully" under §192 were adequately protected:

 ""The jury is instructed that if you believe that the reasons stated by the defendant in his refusal to remain longer at the Committee hearing were given in good faith and based upon his actual belief you should consider those reasons in determining whether or not his refusal to remain was wilful." *Townsend*, 95 F.2d at 361.

In no way, shape, or form was it fair or accurate for the panel in the instant case to write that the decision in *Townsend* "only further confirms" the holdings in *Licavoli* and the instant case on the evidence of the defendant's *mens rea* with respect to his action vis a vis the subpoena that a defendant should be able to introduce.

decision in *U.S. v. Pennsylvania Industrial Chemical Corp.*, 461 F.2d 468 (3d Cir. 1972),

*modified and remanded*, 411 U.S. 655 (1973). and confuses the Court's gatekeeping role with the

jury's role in assessing the reasonableness of the defendant's reliance on the OLC opinions *in

pari materia* and, indeed, usurps the jury's role in its evaluation of the issue.[18] [Exhibit 1 at 11-

13].

The citation here of some of the errors of facts and law is not intended in any way to be

an exhaustive list.  Rather, it is intended to be an illustrative list demonstrating the significance

of the rehearing and rehearing en banc process for this appeal and the gravely wrong, unfair, and

unjust mistake it would be to grant the Government's Motion and withdraw the stay of the

sentence in this case before the full appeals process is completed.

---

[18] The irony of a recent development involving both Executive Privilege and OLC opinions is inescapable and must be noted.  On May 16, 2024, current Associate Attorney General Uriarte wrote to a congressional committee considering a contempt of Congress citation for Attorney General Garland for refusing to produce a subpoenaed recording of President Biden's interview with Special Counsel Hur.  This was an interview for which the transcripts already had been provided.  The refusal to comply with the subpoena was based on a claim (reportedly suggested by Attorney General Garland) that President Biden had invoked Executive Privilege with respect to the recording.  The recording was with a person (Special Counsel Hur) who certainly was not a part of the Executive Branch inner circle; nor was he otherwise situated in a position the Government has argued in the instant case is a prerequisite for the invocation of Executive Privilege.  The invocation is identified as a "protective assertion" with respect to any additional material.

Mr. Uriarte implored the committee not to return a contempt citation, writing that "It is the longstanding position of the executive branch held by administrations of both parties that an official who asserts the President's claim of executive privilege cannot be prosecuted for criminal contempt of Congress."  Interestingly, in light of the Government's position in the instant case, his argument is based on large part, on OLC Opinions that he appears to read *in pari materia*, citing several which certainly were not positions expressly on this subject or in response to an individual inquiry.  Rather the principles and rationale underlying them are relied on by the Associate Attorney General.  [Exhibit 3].  Compare, Exhibit 1 at 13, rejecting purported reliance on principles and underlying rationales.

Mr. Bannon also relies on the additional issues this Court found to constitute "substantial questions" for purposes of a stay of the sentence during the appeals process under 18 U.S.C. §3143(b), including but not limited to the arguments regarding the Committee's composition and Rules violations and the impact of quashing the subpoenas.  Mr. Bannon will further develop these arguments and others and their continued support for the stay of sentence at the Court's request.  He relies on his original submission concerning the same unless and until the Court directs further discussion.

<u>Conclusion</u>

Based on the foregoing, it is respectfully submitted that the Court should deny the Government's Motion, both because it has no authority to grant the motion in the absence of the mandate and on the merits because granting the Motion would be gravely unjust and unfair, would have the practical effect of rendering the further pursuit of the next important steps in the appeals process ineffectual.  The irreparable harm of an unnecessary and unlawful incarceration on a judgment which is likely to be reversed by either the en banc Court or the United States Supreme Court will have been done if the stay of sentence is removed.  There is no basis for doing so and any balancing of relevant factors overwhelmingly dictates the denial of the Government's Motion.

Respectfully submitted,
  /s/ David I. Schoen
David I. Schoen (D.C. Bar No. 391408)
David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (917) 941-7952
Facsimile: (917) 591-7586
Email: schoenlawfirm@gmail.com

*Counsel for Defendant Stephen K. Bannon*

29

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of May, 2024, a copy of the foregoing Response

was served *via* the Court's CM/ECF system on all properly registered parties and counsel.

    /s/ David I. Schoen
    David I. Schoen (D.C. Bar No. 391408)