IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:21-cr-670-CJN |
| STEPHEN K. BANNON, | ) |
| Defendant. | ) |

**MOTION TO REIMPOSE BAIL PENDING APPEAL OR IMPOSE A PERIOD OF SUPERVISED RELEASE**

Stephen K. Bannon respectfully submits this motion to reimpose bail pending appeal, or alternatively to impose a period of supervised release, given developments since this Court's last ruling.

The Court is familiar with this case and its procedural history, so Mr. Bannon elides a lengthy recitation. At sentencing, the Court granted bail pending appeal to Mr. Bannon but later granted the government's motion to reconsider that decision on June 6, 2024, after the D.C. Circuit's May 10 panel opinion rejected Mr. Bannon's arguments on direct appeal.

As explained below, significant events subsequent to this Court's June 6 decision warrant reimposing the Court's original grant of bail.

**STANDARD**

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983). And that is especially true for "bond determinations, [which] remain with the district court even during the

1

pendency of the appeal." *United States v. Mikell*, 2010 WL 148673, at *5 (E.D. Mich. Jan. 12, 2010).

To quote a case heavily relied upon in the government's own motion to rescind bail (*see* ECF 196 at 2): "As circumstances may change, the district court is best equipped to respond to such changes" in the bail context. *United States v. Krzyske*, 857 F.2d 1089, 1091 (6th Cir. 1988). Indeed, the government previously insisted that this Court "'retains jurisdiction over the person of the defendant at least for the limited purposes of reviewing, altering or amending the conditions under which that court released the defendant.'" ECF No. 196 at 2 (quoting *United States v. Black*, 543 F.2d 35, 37 (7th Cir. 1976)).

Accordingly, "'[i]n view of the fact that, during the pendency of an appeal, facts may come to light which render it advisable for the district court to alter the conditions" of bail, the District Court retains authority to adjust or entirely rescind its prior decision on bail, as this Court has done once already. *Id.*[1]

## I. The Court Should Reimpose Bail Pending Appeal.

At the June 6, 2024, hearing on the government's motion to revoke bail pending appeal, this Court relied on the fact that the D.C. Circuit's May 10 panel opinion had not only rejected Mr. Bannon's arguments about the *mens rea* requirement for 2 U.S.C. 192, but also seemed to endorse

---

[1] The government may claim that the law-of-the-case doctrine warrants denial of this motion, but it is well recognized that "disposition of the bail issue will not be the law of the case" because of the frequently changing facts relevant to bail determinations. *United States v. Stemm*, 835 F.2d 732, 734 (10th Cir. 1987); *see* Wright & Miller, *18B Fed. Prac. & Proc. Juris.* § 4478.5 (3d ed.) ("[L]aw of the case is not established by … refusal to admit [the defendant] to bail pending appeal."). In any event, the D.C. Circuit has recognized that law-of-the-case does not apply when "the relevant facts have somehow changed," which is precisely what Mr. Bannon argues here. *Kimberlin v. Quinlan*, 199 F.3d 496, 501 (D.C. Cir. 1999).

2

the correctness of *Licavoli*. This bore on the question of whether there still existed a substantial legal issue on appeal for purposes of bail.

For example, this Court said, "Well, the one thing we know is that no one wrote separately to say, Hey, I'm bound by *Licavoli*, but I'm not so sure about it." Tr.18:14-16. And the Court later stated, "[N]o one wrote separately to say something like, I am bound by *Licavoli*, but I have concerns about it." Tr.30:14-15. And in announcing its decision, the Court referenced the fact that it was tying Mr. Bannon's surrender date to "a week after the *en banc* petition is due," Tr.32:23-24, perhaps to allow Mr. Bannon the benefit of the D.C. Circuit's consideration of that petition.

Several events since this Court's June 6, 2024, ruling warrant reimposing bail pending appeal, so Mr. Bannon is not forced to serve his entire sentence before the *en banc* D.C. Circuit or Supreme Court—i.e., the only courts with authority to overrule *Licavoli*—can hear his case on the merits.

    **A.**    **Judge Walker Found That the *Mens Rea* Issue Presents a Close Question.**

A member of the May 10 D.C. Circuit panel decision—Judge Walker—has now written separately and articulated that he indeed *does* have concerns with *Licavoli* and that he had joined the panel opinion, at least in part, simply because he concluded *Licavoli* was binding, not because he thought it was correct or that the Supreme Court would agree with it.

Judge Walker's June 20, 2024, dissent from the denial of release pending appeal stated that "the panel felt obliged to disregard the Supreme Court's 'general rule' [regarding the meaning of 'willfully' in criminal statutes] because *Licavoli* remained binding in this Circuit." *United States v. Bannon*, 2024 WL 3082040, at *2 (D.C. Cir. June 20, 2024) (Walker, J., dissenting). "For a court unbound by *Licavoli*, like the Supreme Court, the proper interpretation of 'willfully' in

3

Section 192 is 'a close question or one that very well could be decided the other way.'" *Id.* at *3 (Walker, J., dissenting).

Judge Walker's dissent concluded: "Because the Supreme Court is not bound by *Licavoli*, because *Licavoli*'s interpretation of 'willfully' is a close question, and because that question may well be material, Bannon should not go to prison before the Supreme Court considers his forthcoming petition for certiorari." *Id.* (Walker, J., dissenting).

That is exactly the type of statement this Court referenced at the June 6 hearing. *See* Tr.18:14-16, Tr.30:14-15. A member of the original panel has now raised questions about *Licavoli*.

This demonstrates the issue is at least substantial, especially given that the points raised in Judge Walker's dissents have a habit of turning into majority opinions. *See, e.g.*, *Loper Bright Enterprises, Inc. v. Raimondo*, 45 F.4th 359, 372 (D.C. Cir. 2022) (Walker., J., dissenting), *vacated and remanded*, 144 S. Ct. 2244 (2024); *Am. Lung Ass'n v. EPA*, 985 F.3d 914, 995 (D.C. Cir. 2021) (Walker, J., concurring in part and dissenting in part), *rev'd and remanded sub nom. W. Virginia v. EPA*, 597 U.S. 697 (2022).

**B.   A Grant or Dissent from Denial of *En Banc* Is Very Likely at the D.C. Circuit.**

Another subsequent development confirms the substantiality of the *mens rea* issue. Mr. Bannon filed his *en banc* petition on July 15, 2024 (the D.C. Circuit extended the due date), and the D.C. Circuit promptly called for the government to submit a response on "the meaning of 'willfully' in 2 U.S.C. § 192 and whether we should revisit *Licavoli v. United States*, 294 F.2d 207 (D.C. Cir. 1961)." Order, *United States v. Bannon*, No. 22-3086 (D.C. Cir. July 22, 2024).

4

Calling for a response is rare—the D.C. Circuit has done so in only *seven* other cases (two of which are related) during the entirety of 2024.² This alone signals the substantiality of the *mens rea* issue.

But more importantly: the government filed its response to the petition on July 31, 2024, and nearly a full month has now passed without any subsequent order from the D.C. Circuit. This is consistent with two outcomes: either the D.C. Circuit will grant rehearing, or there will be a denial accompanied by a written dissent.

The statistics bear this out. The government's response has been pending for 29 days now. Looking at D.C. Circuit cases where the Court ordered a response to an *en banc* petition in the last 20 months, the *longest* it then took the Court to summarily deny *en banc* was 25 days (measured from when the response was filed).³ The average such time for summary denial was a mere 16.3 days, and sometimes it was as short as 8 days.⁴ In other words, when the Court gets the *en banc* response and is no longer interested in the case, the Court promptly issues a summary denial.

By contrast, in the last three cases where the Court denied *en banc* over a separate written opinion, it has taken a *minimum* of 35 days—with an average of 69.7 days—for the Court to issue

---

² *See United States v. Kerrick*, No. 22-3014 (Aug. 6, 2024); *Fed. Educ. Ass'n Stateside Region v. FLRA*, No. 22-1220 (July 15, 2024); *Noble v. Nat'l Ass'n of Letter Carriers*, No. 23-7012 (July 1, 2024); *Nat'l Ass'n of Realtors v. United States*, No. 23-5065 (May 21, 2024); *J.G. Kern Enter., Inc. v. NLRB*, No. 22-1287 (Apr. 16, 2024); *End Citizens United PAC v. FEC*, No. 22-5277 (Feb. 22, 2024); *Campaign Legal Ctr. v. FEC*, No. 22-5339 (Feb. 22, 2024).

³ *See Nat'l Ass'n of Realtors v. United States*, 23-5065.

⁴ *See Noble v. Nat'l Ass'n of Letter Carriers*, No. 23-7012 (23 days); *J.G. Kern Enter., Inc. v. NLRB*, No. 22-1287 (8 days); *United States v. Trump*, No. 23-3190 (23 days); *Valancourt Books, LLC v. Garland*, No. 21-5203 (15 days); *Am. Elec. Power Serv. Corp. v. FERC*, No. 22-1097 (21 days); *Longmont United Hospital v. NLRB*, No. 22-1262 (12 days); *West Flagler Assocs., Ltd. v. Haaland*, No. 21-5265 (11 days); *United States v. Douglas*, No. 21-3032 (17 days); *Khadr v. United States*, No. 21-1218 (10 days); *Perez v. Kipp DC Supporting Corp.*, No. 22-7021 (16 days); *George v. Molson Coors Beverage Co.*, No. 22-7111 (14 days).

the dissents (again, measured from when the response was filed).[5] And in the last case in which the D.C. Circuit granted an *en banc* petition, 136 days passed between the response and the order announcing the grant.[6]

Over a significant sample size, if the Court has not summarily denied the *en banc* petition within 25 days of the response being filed, the odds of a grant or a separate opinion accompanying a denial have been 100%.[7] Mr. Bannon's case has now surpassed that 25-day threshold—it is at 29 days and counting.

Either a grant or a dissent from denial would necessarily demonstrate the *mens rea* issue here is one on which reasonable minds could differ—i.e., it is "substantial." *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). And such action would also necessarily be an intervening and changed circumstance since this Court's last decision on bail.

Accordingly, these significant developments, which post-date the revocation of bail, demonstrate that circumstances have changed and that bail should be reimposed.

\* \* \*

This Court need not wait to see whether the D.C Circuit grants *en banc* or issues dissents from denial. As indicated at the June 6, 2024, hearing, the statutory inquiry is whether there is a substantial question, and it is sufficient that a judge of the original panel has now expressed concerns, and that the timing of the proceeding confirms the D.C. Circuit itself is now apparently strongly considering granting *en banc* on the *mens rea* issue, or issuing dissents from denial.

---

[5] *See In re Search of Info. Stored at Twitter, Inc.*, No. 23-5044 (112 days); *Guffey v. Mauskopf*, No. 20-5183 (35 days); *Wash. Alliance of Tech. Workers v. DHS*, No. 21-5028 (62 days).

[6] *See Al-Hela v. Biden*, No. 19-5079.

[7] Even if counsel has somehow overlooked a case during this time, the odds of a grant or dissent from denial would still be nearly 95%.

On that score, one issue warrants additional discussion. The government previously contended that because Mr. Bannon lost at the panel stage, he cannot now obtain bail unless he shows it is "likely" that he obtains *en banc* or certiorari review. *See, e.g.*, Tr.10:12-12:3. He meets that threshold, but just as importantly, the government is proposing the wrong test.

The bail statute expressly applies to cases where the movant has already lost at the circuit court—e.g., where he has filed "a petition for writ of certiorari," 18 U.S.C. § 3143(b)(1)—yet the statute nowhere changes the test or requires an additional showing in such circumstances.

Thus, there is only one test under § 3143, regardless of which phase the proceedings are in, and it requires a "two-part inquiry." *Perholtz*, 836 F.2d at 555. The Court first decides whether "the appeal raise[s] a substantial question." *Id.* The Court then *separately* looks at whether a new trial or lessened sentence would "likely" result "*if* that question is resolved in appellants' favor." *Id.* Accordingly, the Court assumes the issue is resolved in the defendant's favor and asks whether the defendant would likely then get a new trial or sentence.

Contrary to the government's position in this Court, the "phrase 'likely to result in reversal or an order for a new trial' cannot reasonably be construed to require the … court to predict the probability of reversal." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). "The federal courts are not to be put in the position of bookmakers who trade on the probability of ultimate outcome. Instead, that language must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal." *Id.*

Accordingly, "all" circuit courts have "concluded that the statute does not require" a showing that the lower court "committed reversible error." *Pollard*, 778 F.2d at 1181–82.

The Solicitor General has previously agreed that § 3143 doesn't impose the same standard as for a stay pending appeal: because "'the statutory standard for determining whether a convicted

7

defendant is entitled to be released pending a certiorari petition is clearly set out in 18 U.S.C. 3143(b),' … the application should be evaluated using the standard prescribed in Section 3143(b), *rather than under the stay factors that the Court applies when Congress has not established the governing criteria*." Memo. for the U.S. in Opposition 15, *McDonnell v. United States*, 15A218 (Aug. 26, 2015) (emphasis added).

Thus, at most, the fact that Mr. Bannon lost at the panel stage goes to whether the *mens rea* issue remains a substantial question (it does, as explained above), but unlike someone seeking a *stay* pending appeal, Mr. Bannon need not independently show there is a likelihood of *en banc* or certiorari review.[8]

### C. The Government's Subsequent Actions.

An additional relevant and subsequent development is that the government has now admitted it can identify only one criminal case *ever* where the Supreme Court has allegedly interpreted "willfully" or "willfulness" in a specific criminal statute to mean only "intentional[ly]" or "deliberately." Opp.23, *Bannon v. United States*, No. 23A1129 (U.S. June 26, 2024) (citing *Browder v. United States*, 312 U.S. 335, 341–42 (1941)).

The contours of *Browder*'s *mens rea* holding are opaque, and it seems the Supreme Court has not cited it for the proposition the government claims. In any event, the statutory *mens rea* in *Browder*—"willfully and knowingly"—is one that the government itself has repeatedly said *still*

---

[8] The government has previously cited *McGee v. Alaska*, 463 U.S. 1339 (1983) (Rehnquist, J., in chambers), and *Julian v. United States*, 463 U.S. 1308 (1983) (Rehnquist, J., in chambers), as looking to the probability the Supreme Court would grant review in the context of a bail motion, *see* Resp.17, *Navarro v. United States*, No. 23A843 (U.S. Mar. 18, 2024). But those cases "arose before the enactment of the Bail Reform Act," thus they do "not set the standard for review under the Bail Reform Act, and furthermore would require inappropriate speculation by this Court." *United States v. Nacchio*, 608 F. Supp. 2d 1237, 1240 n.6 (D. Colo. 2009). The Supreme Court has not cited those cases even once since the Bail Reform Act was passed forty years ago.

"requires knowledge of unlawfulness" in other contexts. *Id.* at 24 n.8 (citing government's position on a "knowingly and willfully" *mens rea*).

The fact that the government has now finally admitted it struggles to find *even one* Supreme Court case adopting its interpretation of "willfully" in a criminal statute is significant given that well over a century of caselaw squarely supports Mr. Bannon's position that "willfully" in the criminal context requires knowledge of unlawfulness. *See Bryan v. United States*, 524 U.S. 184, 191–92 (1998); *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994); *Screws v. United States*, 325 U.S. 91, 101 (1945); *Felton v. United States*, 96 U.S. 699, 702 (1877).

*  *  *

For all these reasons, the Court should reimpose its order granting bail pending appeal, so Mr. Bannon is not forced to serve his entire sentence before the *en banc* D.C. Circuit or Supreme Court—i.e., the only courts with authority to overrule *Licavoli*—can hear his case on the merits.

**II.     Alternatively, the Court Should Impose a Period of Supervised Release.**

If the Court does not reimpose bail pending appeal, the Court should alternatively impose a period of supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A). Under that provision, the Court can reduce the overall sentence (even just a few days off each conviction will trigger the provision) and then impose supervised release (our request would be a term of supervised release of just a few days).

Mr. Bannon has been informed by experts on the First Step Act's implementation that restructuring the sentence in this manner would allow him to have the opportunity to earn good time credits under the First Step Act for successful participation in productive activities while incarcerated—something that is available to most inmates, especially those serving sentences for non-violent offenses. *See, e.g., United States v. Oprea*, 2023 WL 6958690 (D.N.H. Oct. 20, 2023)

9

(reducing original sentence by a month and imposing a one-year term of supervised release so the defendant could benefit from First Step Act time credits); *United States v. Perez Sanchez*, 2024 WL 1069884, at *5 (E.D.N.Y. Mar. 12, 2024).

To be sure, Mr. Bannon must show extraordinary and compelling reasons for a resentencing, 18 U.S.C. § 3582(c)(1)(A)(i), but courts have found that "modify[ing] [a] sentence to include a [short] term of supervised release so that [the defendant] may benefit from a new BOP earned-time credit rule promulgated pursuant to the First Step Act" will "constitute 'extraordinary and compelling' circumstances warranting" relief, *United States v. Nunez-Hernandez*, 2023 WL 3166466, at *1 (D. Minn. Apr. 27, 2023); *but cf.* Order at 2, *United States v. Navarro*, No. 1:22-cr-200, ECF No. 177 (May 20, 2024).

Further, Mr. Bannon's case presents compelling circumstances because of the subsequent developments discussed above—namely the realistic prospect that the D.C. Circuit will grant *en banc* or issue dissents from denial on the core issue in this case, either of which would demonstrate this case raises substantial issues and that Mr. Bannon should not have to serve his entire sentence before the *en banc* D.C. Circuit or Supreme Court can hear his case.

Further, the Probation Office's Sentencing Recommendation recognized that the Court could impose supervised release for up to a year for Mr. Bannon. Although the Probation Office made no recommendation regarding supervised release, that likely was a result of the Probation Office's recommendation that Mr. Bannon serve only the minimum term of imprisonment under the statute (i.e., 30 days).

Accordingly, if the Court does not reimpose bail pending appeal, Mr. Bannon respectfully requests that the Court reduce his sentence (even a few days per conviction would suffice) and

impose a period of supervised release (again, even a few days per conviction would suffice) so he can be eligible to utilize First Step Act credits.

## CONCLUSION

The Court should grant this motion and reimpose bail pending appeal, or alternatively reduce Mr. Bannon's sentence and impose a period of supervised release.

August 29, 2024

By:   */s/ R. Trent McCotter*

R. Trent McCotter
DC Bar # 1011329
BOYDEN GRAY PLLC
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

M. Evan Corcoran
SILVERMAN THOMPSON SLUTKIN WHITE
400 East Pratt Street, Suite 900
Baltimore, MD 21202
(410) 385-2225
ecorcoran@silvermanthompson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will serve all registered attorneys in this case.

  */s/ R. Trent McCotter*
R. Trent McCotter