**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**STEPHEN K. BANNON,**<br><br>Defendant. | Case No. 1:21-cr-00670-CJN |

# UNOPPOSED MOTION TO VACATE THE JUDGMENT AND DISMISS THE INDICTMENT

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE GOVERNMENT HAS CONCLUDED AS A MATTER OF PROSECUTORIAL DISCRETION THAT CONTINUED PURSUIT OF THIS CASE IS INAPPROPRIATE ........ 4

A. Dismissal Is In The Interests Of Justice ........ 4

B. The Government's Unopposed And Authoritative Position That Dismissal Is In The Interests Of Justice Compels Granting The Motion To Dismiss ........ 7

C. Even Assuming Some Review Is Proper, The Government's Explanation Is Sufficient ........ 11

II. *THORPE* DOES NOT BAR THIS COURT FROM DISMISSING THE INDICTMENT UNDER RULE 48(A). ........ 12

III. ALTERNATIVELY, THE COURT SHOULD VACATE THE JUDGMENT UNDER RULE 33(A) AND THEN GRANT THIS MOTION ........ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Association of Am. Physicians & Surgeons v. Clinton*,
997 F.2d 898 (D.C. Cir. 1993) .......... 10

*Bondi v. VanDerStok*,
145 S. Ct. 857 (2025) .......... 3

*Bronsozian v. United States*,
590 U.S. 901 (2020) .......... 13, 14
No. 17-50197, ECF No. 69 (9th Cir. June 24, 2020) .......... 13
No. 16-cr-196 (SVW), ECF No. 150 (C.D. Cal. June 30, 2020) .......... 13

*Bryan v. United States*,
524 U.S. 184 (1998) .......... 6

*Cheek v. United States*,
498 U.S. 192 (1991) .......... 6

*City of Cleveland, Ohio v. Federal Power Comm'n*,
561 F.2d 344 (D.C. Cir. 1977) .......... 13

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 9

*Eberhart v. United States*,
546 U.S. 12 (2005) .......... 15

*Heckler v. Chaney*,
470 U.S. 821 (1985) .......... 10

*Hirabayashi v. United States*,
828 F.2d 591 (9th Cir. 1987) .......... 13

*ICC v. Brotherhood of Locomotive Eng'rs*,
482 U.S. 270 (1987) .......... 7, 10

*In re Aiken Cnty.*,
725 F.3d 255 (D.C. Cir. 2013) .......... 7

**In re United States*,
345 F.3d 450 (7th Cir. 2003) .......... 8, 9, 10, 11

**Licavoli v. United States*,
294 F.2d 207 (D.C. Cir. 1961) .......... 2, 3, 5

*Newman v. United States*,
382 F.2d 479 (D.C. Cir. 1967) .......... 7

*Petite v. United States*,
361 U.S. 529 (1960)....................13

*Ratzlaf v. United States*,
510 U.S. 135 (1994)....................5

*Rice v. Rivera*,
617 F.3d 802 (4th Cir. 2010)....................14

*Rinaldi v. United States*,
434 U.S. 22 (1977)....................8, 10, 12

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007)....................5

*Trump v. United States*,
603 U.S. 593 (2024)....................7

**United States v. Ammidown*,
497 F.2d 615 (D.C. Cir. 1973)....................9, 10, 11

*United States v. Armstrong*,
517 U.S. 456 (1996)....................9

*United States v. Bannon*,
101 F.4th 16 (D.C. Cir. 2024)....................2
No. 22-3086, 2025 WL 1503223 (D.C. Cir. May 27, 2025)....................2, 3

*United States v. Bryan*,
339 U.S. 323 (1950)....................6

**United States v. Fokker Servs. B.V.*,
818 F.3d 733 (D.C. Cir. 2016)....................7, 8, 10, 11

*United States v. HSBC Bank USA, N.A.*,
863 F.3d 125 (2d Cir. 2017)....................9

*United States v. Knight*,
981 F.3d 1095 (D.C. Cir. 2020)....................13

*United States v. Murdock*,
290 U.S. 389 (1933)....................6

*United States v. Nixon*,
418 U.S. 683 (1974)....................10

*United States v. Smith*,
467 F.3d 785 (D.C. Cir. 2006)....................14

**United States v. Thorpe*,
148 F.4th 768 (D.C. Cir. 2025)....................4, 12, 13, 14

**Wayte v. United States*,
470 U.S. 598 (1985)....................8, 11

**Constitutional Provisions**

U.S. Const. art. II ....................7, 9

U.S. Const. art. II, § 1, cl. 1 ....................7

U.S. Const. art. II, § 2, cl. 1 ....................7

U.S. Const. art. II, § 3 ....................7

U.S. Const. art. III ....................7, 9

U.S. Const. amend. V ....................6

**Statutes**

2 U.S.C. § 192 ....................1, 2, 5

18 U.S.C. § 922(a)(1)(A) ....................6

**Rules**

Fed. R. Crim. P. 11 ....................9

Fed. R. Crim. P. 33 ....................1, 14, 15

Fed. R. Crim. P. 48 ....................1, 13, 14

Fed. R. Crim. P. 48(a) ....................1, 3, 4, 8, 9, 10, 11, 12, 13, 14, 15

Sup. Ct. R. 10 ....................12

**Other Authorities**

The White House, *Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021* (Jan. 20, 2025) ....................5

Charles A. Wright & Arthur R. Miller, 3B *Federal Practice and Procedure: Criminal*, § 802 (4th ed. 2026 update) .................... 12-13

## INTRODUCTION

The United States respectfully renews its Unopposed Motion to Dismiss the Indictment under Rule 48(a) of the Federal Rules of Criminal Procedure. The United States has determined that dismissal is in the interests of justice because, in an exercise of its prosecutorial discretion, the Executive Branch does not believe that it is appropriate to pursue contempt of Congress charges against a former advisor to the President who did not comply with a subpoena investigating the events of January 6, 2021, based on an asserted belief that he was protected by executive privilege. That is especially so because the United States harbors significant doubts about the fairness of Defendant's trial and whether D.C. Circuit precedent improperly foreclosed Defendant from raising a defense that he did not "willfully" violate 2 U.S.C. § 192 in light of his belief that compliance with the subpoena was unnecessary due to executive privilege. In these circumstances, the United States no longer wishes to pursue this prosecution. This Court lacks authority under Rule 48(a) to reject an unopposed dismissal that reflects the Department of Justice's authoritative position. But even assuming any review could be proper, the policy-laden grounds for dismissal asserted above are not susceptible to judicial second-guessing.

Nor does the judgment of conviction constrain the Court's power to vacate the judgment and grant this motion. Bannon has not exhausted the direct-appeal process, so the judgment is not "final" within the meaning of D.C. Circuit precedent addressing Rule 48. Regardless, the spirit of the D.C. Circuit's mandate plainly contemplates vacatur as necessary to consider this motion. Indeed, the Supreme Court and D.C. Circuit remanded this case precisely so that this Court would consider the motion. Even if that were not the case, the interests of justice would require vacating the judgment under Rule 33, then granting this motion.

All roads lead to the same destination: vacatur of the judgment, dismissal of the indictment, and an end to these proceedings.

## BACKGROUND

"Bannon, a former advisor to President Donald Trump, invoked executive privilege and refused to comply with a legislative subpoena seeking information about the events of January 6." *United States v. Bannon*, No. 22-3086, 2025 WL 1503223, at *3 (D.C. Cir. May 27, 2025) (Rao, J., dissenting). "Bannon was charged with two counts of 'willfully mak[ing] default' on a Congressional subpoena in violation of section 192" of Title 2 of the United States Code. *Id.* at *4. At trial, "Bannon argued section 192 requires the government to prove he defaulted willfully, that is, with knowledge that his default was unlawful." *Id.* "To negate willfulness, Bannon asked to present evidence that he relied in good faith on advice from counsel that he was not required to comply with the subpoena because the materials sought were protected by executive privilege." *Id.* This Court "rejected Bannon's request and explained that while it 'might be inclined to agree with Bannon and allow this evidence in' if this were a matter of first impression," the D.C. Circuit's decision in *Licavoli v. United States*, 294 F.2d 207, 208 (D.C. Cir. 1961), "foreclosed Bannon's defense." *Id.* at *4. "A jury convicted Bannon of violating section 192," and "Bannon spent four months in prison." *Id.* at *5.

Bannon appealed his conviction. But a panel of the D.C. Circuit held that *Licavoli* foreclosed Bannon's argument about 2 U.S.C. § 192's willfulness requirement. *United States v. Bannon*, 101 F.4th 16, 18 (D.C. Cir. 2024). The D.C. Circuit then denied Bannon's petition for rehearing en banc. *See Bannon*, 2025 WL 1503223, at *1. Judge Rao, joined in relevant part by Judge Henderson and Judge Walker, dissented. *Id.* at *3–11. In their view, the D.C. Circuit should have taken the case en banc "to overrule *Licavoli*." *Id.* at *5. Judge Katsas separately noted that "the prosecution of former Executive Branch officials for good-faith but mistaken privilege assertions raises questions that are troubling." *Id.* at *1. Judge Katsas also recognized the

"significant tension between *Licavoli* and more recent Supreme Court decisions," though in his view that tension was "something that only the Supreme Court can fix." *Id.* at *1.

Bannon filed a petition for a writ of certiorari in October 2025. He argued, *inter alia*, that "to prove 'willfulness,' the Government must demonstrate that an individual knew that his conduct was unlawful." Petition for Writ of Certiorari at 3, Case No. 25-453 (U.S. Oct. 10, 2025) (quoting *Bondi v. VanDerStok*, 145 S. Ct. 857, 877 (2025) (Kavanaugh, J., concurring)). Bannon explained that "[t]he proper *mens rea* was critical" to his case because Bannon had "relied in good faith on his attorney's advice to delay compliance with a subpoena . . . until executive privilege disputes were first resolved, as they had been on three prior occasions involving [his] testimony." *Id.* at 4.

On February 9, 2026, while Bannon's petition was pending before the Supreme Court, the United States moved this Court to dismiss the indictment under Rule 48(a). ECF No. 207. As the United States explained, "[t]he government has determined in its prosecutorial discretion that dismissal of this criminal case is in the interests of justice." *Id.* Bannon did not oppose the motion. The United States then asked the Supreme Court to "grant [the] petition for a writ of certiorari, vacate the judgment of the court of appeals, and remand the case to the district court for further consideration in light of the government's pending motion to dismiss the indictment." Brief for the United States at 4, Case No. 25-453 (U.S. Feb. 9, 2026).

Consistent with that request, the Supreme Court granted the petition or a writ of certiorari, vacated the judgment of the court of appeals, and remanded the case:

> [I]t is ordered and adjudged by this Court that the petition for writ of certiorari is granted. The judgment of the above court in this cause is vacated, and the case is

> remanded to the United States Court of Appeals for the District of Columbia Circuit for further consideration in light of the pending motion to dismiss the indictment.

Judgment, Case No. 25-453 (U.S. May 8, 2026).

On remand, the D.C. Circuit ordered the case further "remanded to the district court with instructions to address the pending motion to dismiss the indictment with prejudice pursuant to Fed. R. Crim. P. 48(a)." Order, Case No. 22-3086 (D.C. Cir. Aug. 12, 2026). That order was incorporated in the D.C. Circuit's mandate. Mandate, Case No. 22-3086 (D.C. Cir. Aug. 12, 2026).

This Court then denied the motion to dismiss without prejudice on the ground that the motion lacked a sufficiently detailed explanation. ECF No. 211 at 3-4. The Court also instructed that any renewed motion should "address the relevance of *United States v. Thorpe*, 148 F.4th 768 (D.C. Cir. 2025), *cert denied*, 146 S. Ct. 1459 (2026)." ECF No. 211 at 4 n.2.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE GOVERNMENT HAS CONCLUDED AS A MATTER OF PROSECUTORIAL DISCRETION THAT CONTINUED PURSUIT OF THIS CASE IS INAPPROPRIATE

Dismissal is in the interests of justice because the Department of Justice no longer wishes to pursue contempt of Congress charges against a former advisor to the President who did not comply with a subpoena investigating the events of January 6, 2021, based on an asserted belief that he was protected by executive privilege. The constitutional separation of powers requires granting the Government's motion explaining the policy rationale for its authoritative position declining to continue this prosecution. But even if some judicial review of the Government's policy rationale were proper, there would be no basis to reject the Government's explanation.

#### A. Dismissal Is In The Interests Of Justice

As an exercise of prosecutorial discretion, the Department of Justice no longer wishes to pursue this case. President Trump has expressed grave concerns about the Biden Administration's

prosecutions related to the events of January 6, 2021, granting a large number of pardons and commutations. *See, e.g.*, The White House, *Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021*, https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/ (Jan. 20, 2025). In light of those actions by the Chief Executive, the Department has determined that it is inconsistent with this Administration's enforcement priorities to seek affirmance of a criminal conviction of a former advisor to President Trump who did not comply with a subpoena related to January 6 based on an asserted belief that executive privilege applied.

That is especially so given the Department's significant doubts about the fairness of Defendant's trial. As discussed above, 2 U.S.C. § 192 prohibits "willfully" defaulting on a congressional subpoena, and Defendant sought to negate that element of the crime on the ground that he sincerely believed that compliance with the subpoena was not legally required in light of executive privilege. This Court and the D.C. Circuit foreclosed him from raising that defense under *Licavoli*, which held that "a deliberate, intentional failure" to respond to a congressional subpoena, "without more," is "sufficient" to establish willfulness under Section 192, regardless of the defendant's "motive" for not responding. 294 F.2d at 208. That holding is in serious tension with Supreme Court precedent: "When the term 'willful' or 'willfully' has been used in a criminal statute, [the Court] ha[s] regularly read the modifier as limiting liability to knowing violations"—that is, when a defendant "acted with knowledge that his conduct was unlawful." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 n.9 (2007) (citing *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994) ("To establish that a defendant willfully violated the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (internal

quotation marks and alteration omitted)), and *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (same as to willfully engaging in the business of dealing in firearms in violation of 18 U.S.C. § 922(a)(1)(A)).

To be sure, while willfulness generally requires that "the defendant knew of the duty purportedly imposed by the provision of the statute or regulation he is accused of violating," it is generally "irrelevant" to willfulness that the defendant held a sincere but mistaken belief that the duty imposed was "invalid and unenforceable" because it was "unconstitutional." *Cheek v. United States*, 498 U.S. 192, 201, 205-06 (1991); *cf. United States v. Bryan*, 339 U.S. 323, 325, 330 (1950) (describing the government as having "made out a prima facie case of willful default" where a party "intentionally failed to comply" with a congressional subpoena that she "had been validly served," in a case where the party "refused to comply with the subpoena because[,] 'after consulting with counsel[,] [she] came to the conclusion that the subpoena was not valid' because the Committee had no constitutional right to demand the books and records"). But as an exception to that rule, the Supreme Court has held that it *is* relevant to willfulness if the defendant possessed "a good-faith, actual belief" that the Self-Incrimination Clause provided a "privilege[] not to answer." *Cheek*, 498 U.S. at 205 n.10 (citing *United States v. Murdock*, 290 U.S. 389 (1933)). And there is a serious argument that claims of executive privilege should be treated analogously. Regardless of what the correct legal answer ultimately may be, the Department of Justice does not believe that this case—involving a former advisor to the President subpoenaed about the events of January 6—is an appropriate one to force continued litigation of the issue.

For all of the foregoing reasons, separately and collectively, the Department of Justice has determined, as an exercise of its prosecutorial discretion, that dismissal of this case is in the interests of justice.

**B. The Government's Unopposed And Authoritative Position That Dismissal Is In The Interests Of Justice Compels Granting The Motion To Dismiss**

Under Article II, "[t]he executive Power shall be vested in a President." U.S. Const. art. II, § 1, cl. 1. The President "shall have Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II, § 2, cl. 1. And the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Thus, the "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute." *Trump v. United States*, 603 U.S. 593, 620 (2024). This authority "embraces decisions about … whether to dismiss charges once brought." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 737 (D.C. Cir. 2016); *accord In re Aiken Cnty.*, 725 F.3d 255, 263 (D.C. Cir. 2013) ("The Presidential power of prosecutorial discretion" includes the "indubitable" power to "direct that the criminal be prosecuted no further.").

By contrast, Article III does not give federal judges prosecutorial power. "[A]s an incident of the constitutional separation of powers, . . . the courts are not to interfere with the free exercise of the discretionary power of the attorneys of the United States in their control over criminal prosecutions." *Newman v. United States*, 382 F.2d 479, 481 (D.C. Cir. 1967) (Burger, J.). That means "authority over criminal charging decisions resides fundamentally with the Executive, without the involvement of—and without oversight power in—the judiciary." *Fokker*, 818 F.3d at 741. A "corollary" of "[t]he Executive's exclusive authority" is that "neither the Judicial nor Legislative Branches may directly interfere with the prosecutorial discretion of the Executive by directing the Executive Branch to prosecute particular individuals." *Aiken*, 725 F.3d at 263. Likewise, "the refusal to prosecute cannot be the subject of judicial review." *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). "Judicial supervision in this area . . . entails systemic costs of particular concern" given that the decision to pursue a prosecution turns on policy

factors "ill-suited to judicial review," such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607–08 (1985).

As a result, "the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination of whether to dismiss charges." *Fokker*, 818 F.3d at 742. A court cannot deny a Rule 48(a) motion 'based on a disagreement with the prosecution's exercise of charging authority" or with the prosecution's determination that further proceedings "would not serve the public interest." *Id.* at 742–43.

Consistent with that understanding, "[t]he principal object" of Rule 48(a)'s "'leave of court' requirement" is "to protect a defendant against prosecutorial harassment." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam). In certain circumstances, a prosecutor could infringe a defendant's due process rights by "charging, dismissing, and recharging . . . over the defendant's objection." *Id*.

But where a defendant consents to dismissal with prejudice, such concerns cannot possibly arise. *See In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (holding that Rule 48(a) empowers a court to "protect a defendant from the government's harassing him," but not to deny a motion to dismiss where "the defendant ha[s] agreed to it"). In those circumstances, the court's sole remaining role under Rule 48(a) is to ensure that an individual prosecutor who moves to dismiss is not "acting alone" in an unauthorized fashion, but rather "at the direction or with the approval of the Justice Department." *In re United States*, 345 F.3d at 454. For example, if the circumstances suggest that an individual "prosecutor appears motivated by bribery, animus toward the victim, or a desire to attend a social event rather than trial," or a similar rogue "bad faith" fact-pattern, then Rule 48(a) permits a court to ensure that the Department of Justice stands behind the dismissal

motion as reflecting the authoritative position of the United States. *United States v. HSBC Bank USA*, *N.A.*, 863 F.3d 125, 141 (2d Cir. 2017). Importantly, though, the government is entitled to a "presumption of regularity . . . in the absence of clear evidence to the contrary." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted). And here, there is no risk of a random prosecutor gone rogue, because the Department of Justice is conveying its official view of the matter through senior leadership after the Solicitor General requested that the Supreme Court remand the case so that this Court could consider the Rule 48(a) motion.

When, as here, there is no potential harm to a defendant because a motion to dismiss is unopposed, and no potential harm to the Government because the Department of Justice is conveying its authoritative position, there is no basis for a court to deny a Rule 48(a) motion and insist that the prosecution continue over both parties' objection. To hold otherwise would encroach on the Executive's Article II powers while exceeding the Judiciary's Article III powers. It would also threaten to subject defendants to the possibility of conviction "without the concurrence of all three branches" (Congress in defining the offense, the Executive in deciding to prosecute, and the Judiciary in adjudicating the proceedings). *In re United States*, 345 F.3d at 454. Rule 48(a) would be unconstitutional to the extent it contemplated such results. And courts avoid an interpretation "which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Nor does *United States v. Ammidown* require an unconstitutional inquiry into the Executive's motivations in these circumstances. *See* 497 F.2d 615 (D.C. Cir. 1973). To begin, insofar as the D.C. Circuit there indicated that requiring "a statement of reasons and underlying factual basis" for dismissal may be proper, that language is dicta because *Ammidown* involved a plea under Rule 11 rather than a motion to dismiss under Rule 48(a). *See id.* at 620. And that dicta has not withstood the test of time. In the years since *Ammidown*, the D.C. Circuit has recognized

that the Executive is entitled to "confidentiality" in its "decisionmaking process." *Association of Am. Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993). And the Supreme Court has repeatedly emphasized "the special province of the Executive Branch" with respect to decisions not to prosecute. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985); *accord, e.g.*, *Locomotive Eng'rs*, 482 U.S. at 283 ("[T]he refusal to prosecute cannot be the subject of judicial review . . ."); *United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute . . . ."). Against this backdrop, the D.C. Circuit has more recently read *Ammidown* to support the proposition "that courts generally lack authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion." *Fokker*, 818 F.3d at 750 (citing, *e.g.*, *Ammidown*, 497 F.2d at 621–22). In all events, *Ammidown* certainly provides no authority for second-guessing the type of policy-laden rationale that the Department of Justice has chosen to provide here in light of this Court's prior order. *Ammidown*'s dicta cannot plausibly be extended to authorize second-guessing such a quintessential exercise of prosecutorial discretion, especially in light of intervening precedents such as *Fokker*.

In sum, the constitutional separation of powers leaves no room for a court to deny leave or conduct a freewheeling inquiry into the government's motivations when the United States offers an unopposed and authoritative decision that a prosecution should not continue. Indeed, the Seventh Circuit has stated that it was "unaware . . . of any appellate decision that actually upholds a denial of a motion to dismiss a charge" based on a district judge's own assessment of "bad faith" or "the public interest." *In re United States*, 345 F.3d at 453; *cf. Rinaldi*, 434 U.S. at 29 n.15 (explaining that it was "unnecessary to decide" whether some lower courts had acted impermissibly in asserting the power to deny unopposed motions to dismiss when such motions were, in those courts' subjective views, "clearly contrary to the public interest"). "The Constitution

does place judicially enforceable limits on the powers of the nonjudicial branches of the government . . . but they are the limits found in the Constitution and thus do not include 'bad faith' and 'against the public interest.'" *In re United States*, 345 F.3d at 453. When "the government wants to dismiss . . . with prejudice, and that is what [the defendant] wants as well," "[a] judge in our system does not have the authority to tell prosecutors which crimes to prosecute or when to prosecute them." *Id.* at 452–53 (quotation omitted); *accord Fokker*, 818 F.3d at 742.

Accordingly, the Government's unopposed and authoritative assertion that the public interest supports dismissal of the indictment requires granting the Rule 48(a) motion without further inquiry.

### C. Even Assuming Some Review Is Proper, The Government's Explanation Is Sufficient

Although there is no basis to review the Government's unopposed and authoritative position on dismissal, the United States has supplied the underlying basis for its conclusion that dismissal is in the interests of justice. Even under a broad reading of *Ammidown*, the United States need only include a "statement of reasons" with some "factual basis" that is not "conclusory." ECF No. 211 at 3. The United States has provided such a statement by explaining its policy reasons for not continuing to pursue this prosecution related to the events of January 6 against a former advisor to the President who asserted a belief that he was shielded by executive privilege. *See* Part I.A, *supra*. Because that explanation informs the Court of the Government's reasoning, nothing more is required. Indeed, given that the explanation is based on prosecutorial policy, it is incompatible with judicial second-guessing. Rejecting such a policy rationale would not only exceed the Court's "exceedingly narrow" role at this stage, ECF No. 211 at 3 (internal quotation marks omitted), but also require the Court to examine issues "not readily susceptible to the kind of analysis the courts are competent to undertake," *Wayte*, 470 U.S. at 607.

## II. *THORPE* DOES NOT BAR THIS COURT FROM DISMISSING THE INDICTMENT UNDER RULE 48(A).

The Supreme Court necessarily concluded that the motion to dismiss the indictment filed in this Court was a "compelling reason[]" to grant Bannon's petition for a writ of certiorari. Sup. Ct. R. 10. The Supreme Court thus "vacated" the D.C. Circuit's judgment and remanded "for further consideration in light of the pending motion to dismiss the indictment." Judgment, Case No. 25-453 (U.S. May 8, 2026). The D.C. Circuit then ordered this Court "to address the pending motion to dismiss the indictment." Order, Case No. 22-3086 (D.C. Cir. Aug. 12, 2026). In denying that motion without prejudice, this Court asked the United States to address in any renewed motion "whether *Thorpe* bars this Court from dismissing the indictment under Rule 48(a)" because "the judgment of *this* Court has not been vacated" as a formal matter by the D.C. Circuit. ECF No. 211 at 4 n.2.

To the contrary, *Thorpe* confirms that the Court may consider and grant this Rule 48(a) motion. In *Thorpe*, the government had moved to dismiss most of the defendant's convictions after the defendant "had exhausted appellate review." *Thorpe*, 148 F.4th at 770. The district court denied the motion, and the D.C. Circuit affirmed, because "the government cannot dismiss criminal charges when a judgment is final." *Id.* at 772. But in doing so, the D.C. Circuit made clear that "Supreme Court decisions . . . allow the government to pursue a rule 48(a) dismissal on direct appeal," that is, before "a defendant has exhausted appellate review of his criminal conviction." *Id.* at 776 (citing *Rinaldi*, 434 U.S. at 25 n.8); *see also id.* at 776–77 (holding that the government cannot "'dismiss' [the defendant']s convictions after they became final *on direct review*" (emphasis added)); Charles A. Wright & Arthur R. Miller, 3B Fed. Prac. & Proc. Crim. § 802 (4th ed. 2026 Update) ("Rule 48(a) continues to apply even after conviction and sentencing

while the case is on direct appeal, and the same standard applies to a government request for dismissal at that stage as applies if the request came prior to trial.”).[1]

Furthermore, an appellate court need not vacate a district court’s judgment before the district court may dismiss an indictment. An appellate court may, for example, “direct the District Court to vacate its judgment and to dismiss the indictment.” *Id.* at 777 (quoting *Petite v. United States*, 361 U.S. 529, 531 (1960) (per curiam)). No magic words are required; if “either the letter or spirit of the mandate” contemplates vacatur, a district court is “without power to do anything which is contrary.” *Cf. City of Cleveland, Ohio v. Federal Power Comm’n*, 561 F.2d 344, 346 (D.C. Cir. 1977). Thus, when the Supreme Court vacated a Ninth Circuit judgment and remanded “for further consideration in light of the pending application to vacate the judgment and dismiss the indictment,” and the Ninth Circuit remanded without expressly vacating the judgment, the district court vacated the judgment itself and dismissed the indictment with prejudice under Rule 48(a). *Bronsozian v. United States*, 590 U.S. 901 (2020); Order, *United States v. Bronsozian*, No. 17-50197, ECF No. 69 (9th Cir. June 24, 2020); Order, *United States v. Bronsozian*, No. 16-cr-196 (SVW), ECF No. 150 (C.D. Cal. June 30, 2020).

This Court should do the same. Bannon’s conviction is not “final” within the meaning of *Thorpe* because Bannon has not exhausted the appellate process. In fact, the Supreme Court *vacated* the D.C. Circuit’s judgment, which means that even the first rung of appellate review has

[1] *See also Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) (“There is no precedent for applying Rule 48 to vacate a conviction after the trial *and appellate proceedings have ended*.” (emphasis added)). Earlier in *Thorpe* itself, while the case was on direct appeal, the D.C. Circuit had explained: “[e]ven now, the prosecution may seek dismissal of some or all of the charges against Thorpe under Rule 48(a).” *Thorpe*, 148 F.4th at 771 (quoting *United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020)).

not concluded, let alone possible further review in the Supreme Court. This is nothing like the scenario in *Thorpe*, where a defendant had exhausted all avenues for direct review.

Indeed, the Supreme Court and D.C. Circuit remanded to this Court precisely so that this Court would consider the government's Rule 48(a) motion. Those orders would not make sense if this Court could not do so. And the spirit of the D.C. Circuit's mandate plainly contemplates that this Court can and should vacate Bannon's judgment of conviction as necessary to grant the Rule 48(a) motion, as in *Bronsozian*. The fact that the D.C. Circuit remanded without also vacating this Court's judgment—which it plainly could have done, just as the Supreme Court vacated the D.C. Circuit's judgment—is immaterial as a matter of both form and substance. It thus would be pointless to require the parties to ask the D.C. Circuit to vacate this Court's judgment just so this Court can do what the D.C. Circuit already directed it to do—decide the Rule 48(a) motion.

## III. ALTERNATIVELY, THE COURT SHOULD VACATE THE JUDGMENT UNDER RULE 33(A) AND THEN GRANT THIS MOTION

If the Court concludes that it can address the Government's Rule 48(a) motion only if the judgment has been vacated, Rule 33 provides a basis for vacatur.

Under Rule 33(a), "the court may vacate any judgment . . . if the interest of justice so requires." Although the text of the rule refers to a "defendant's motion," the D.C. Circuit has indicated that the government itself can seek relief under Rule 33: Courts may "arriv[e] at the same destination" contemplated by a Rule 48(a) motion "if the government . . . ma[kes] an unopposed motion for retrial under Rule 33, *and then* move[s] to dismiss the . . . indictment under Rule 48." *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006); *see also Rice v. Rivera*, 617 F.3d 802, 809 (4th Cir. 2010) (adopting *Smith*).

The United States thus alternatively seeks vacatur under Rule 33(a) insofar as necessary to facilitate resolution of its Rule 48(a) motion. For all the reasons discussed above, the interest of

justice requires vacatur under Rule 33(a) if needed to dismiss under Rule 48(a). And the United States hereby waives the time limitation set forth in Rule 33(b)(2). *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (explaining that parties can waive or forfeit "untimeliness" because Rule 33's time restrictions are "nonjurisdictional").

**CONCLUSION**

For the foregoing reasons, the Court should vacate the judgment of conviction and dismiss the indictment.

Date: November 5, 2026

Aakash Singh
*Associate Deputy Attorney General*

*/s/* Michael Weisbuch
Michael Weisbuch
*Deputy Associate Attorney General*
D.C. Bar # 1743257
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Michael.weisbuch@usdoj.gov
(202) 514-9500

Henrique Carneiro
*Counsel to the Associate Attorney General*

*Counsel for United States of America*

**Certificate of Service**

I hereby certify that on November 5, 2026, I filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, thereby serving all counsel who have appeared in this case.

*/s/* Michael Weisbuch
Michael Weisbuch
*Deputy Associate Attorney General*